**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br>　　　　　　　Plaintiff,<br><br>　v.<br><br>LEHMAN BROTHERS INC.<br>　　　　　　　Debtor. | Adversary Proceeding No.<br><br>08-01420 (JMP) |

**DECLARATION OF ESZTER FARKAS**

Pursuant to 28 U.S.C. § 1746, Eszter Farkas declares as follows:

1. I am associated with the law firm of Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb"), counsel to Barclays Capital Inc. ("Barclays") with respect to the purchase of certain assets of Lehman Brothers Holdings Inc. ("Lehman"). I make this Declaration in support of Barclays' Motion For Relief Concerning Certain Contracts Erroneously Posted With The "Closing Date Contracts."

2. On September 17-18, 2008, I was a member of a Cleary Gottlieb team working with representatives of Barclays and Lehman to finalize the list of Closing Date Contracts, as defined in Paragraph 12(b) of this Court's Order (I) Approving the Break-Up Fee and Expense Reimbursement, (II) Certain Matters Relating to Competing Bids, if Any, (III) Approving the Form and Manner of Sale Notices And (IV) Setting The Sale Hearing Date in Connection with The Sale of Certain of The Debtors' Assets, dated September 17, 2008. This list was to be posted to http://chapter11.epiqsystems.com/lehman (the "Website").

3. At 7:48 p.m. on September 18, 2008, Patrick Coster (then of Lehman, now of Barclays) sent me, via email, an Excel spreadsheet containing the list of non-IT contracts designated by

Barclays as Closing Date Contracts. A true and correct copy of the spreadsheet in printed form is attached to this Declaration as Exhibit A.

4.  I opened the spreadsheet and saw only "Y," for "Yes," in each of the rows in Column Z, labeled "Critical." Because the spreadsheet could not be posted to the Website in Excel format, I sent it to my colleague, Mario Mendolaro, and asked him to reformat it and convert it into a PDF document so that it could be posted to the Website.

5.  Mr. Mendolaro reformatted the spreadsheet consistent with our discussions and converted it to a PDF document to be posted to the Website. He sent it to me, via email, at 11:36 p.m. on September 18, and I sent it, via email, to be posted to the Website at 11:37 p.m. A true and correct copy of my 11:37 p.m. email requesting that the PDF document be posted to the Website is attached to this Declaration as Exhibit B. A true and correct copy, in printed form, of the PDF document as it was posted to the Website is attached as Exhibit C.

6.  On October 1, 2008, I discovered that, in addition to the contracts that Barclays had designated as Closing Date Contracts, the spreadsheet I received from Mr. Coster on September 18 also contained approximately 179 contracts that Barclays had not designated as Closing Date Contracts, and had in fact specifically designated not to be Closing Date Contracts. The rows containing information regarding such contracts had largely been minimized, or "hidden," so that they were not visible when I opened and viewed the spreadsheet Mr. Coster had sent me on September 18. The hidden rows each contained "N," for "No," in Column Z, labeled "Critical." A true and correct copy, in printed form, of the spreadsheet that I received from Mr. Coster on September 18 with the hidden rows revealed is attached to this Declaration as Exhibit D. The spreadsheet also contained several additional rows designated "N" in Column Z that had not been hidden. The "N" designation in Column Z for all of these contracts (the hidden rows as

2

well as the rows designated "N" that had not been hidden) reflects that Barclays did not designate them as Closing Date Contracts.

7.     Based on conversations with Mr. Mendolaro, I understand that when he reformatted the spreadsheet on September 18, he globally re-sized all rows to make the row size consistent and deleted certain columns, including the "Critical" column. On or about October 1, 2008, I determined, along with other Cleary Gottlieb colleagues, that the reformatting of the document had erroneously caused the hidden rows containing the contracts Barclays had not designated as Closing Date Contracts (and the other several contracts designated "N") to appear in the reformatted spreadsheet and the PDF document that was posted to the Website without their accompanying "N" designations.

8.     As a result of this error, the list of Closing Date Contracts that was posted to the Website on September 18 inadvertently contained approximately 179 contracts that Barclays did not designate as Closing Date Contracts, and that Barclays had in fact expressly designated not to be Closing Date Contracts.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 9th day of October, 2008.

                                                                               s/Eszter Farkas
                                                                                Eszter Farkas