# EXHIBIT A

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 08-13555

- - - - - - - - - - - - - - - - - - -x

In the Matter of:


LEHMAN BROTHERS HOLDINGS, INC., et al.


      Debtors.


- - - - - - - - - - - - - - - - - - -x


          United States Bankruptcy Court

          One Bowling Green

          New York, New York


          September 19, 2008

          4:36 PM


B E F O R E:

HON. JAMES M. PECK

U.S. BANKRUPTCY JUDGE

1   going to ask that question.   So --

2   THE COURT:   I hate to be that predictable.

3   MR. MILLER:   There is a document -- maybe it'd be

4   better, Your Honor, if we do it orally.

5   THE COURT:   Fine.

6   MR. MILLER:   My partner, Ms. Fife, will do that.   And

7   with some assistance from Ms. --

8   THE COURT:   Let me just check on something because --

9   and this is purely technical.   During the first phase of the

10  hearing, I was told that those people who are listening in

11  spillover courtrooms had a very hard time hearing me.   I'm

12  having some difficulty as compared with our last hearing with

13  the amplification coming out of the podium.   And I just want to

14  make sure that we're not suffering system overload.   Okay.

15  That's on.   And let me also make the announcement, whenever

16  anyone speaks for the record, this is always true here, but

17  given the number of people, please identify yourself before

18  speaking.

19  MS. FIFE:   Thank you, Your Honor.   Lori Fife from

20  Weil Gotshal & Manges on behalf of the debtors.   Let me try to

21  summarize the changes that were made to the transaction.   In

22  terms of the economic changes, they result largely because of

23  the markets, unfortunately.   And from the time that the

24  transaction was actually entered into till now, the markets

25  dropped and the value of the securities dropped as well.

1    So, originally, we were selling assets that had a
2 value of seventy -- approximately seventy billion dollars.  And
3 today, Your Honor, we're only selling assets that have a value
4 of 47.4 billion dollars.

5    Barclays is assuming liabilities, however, of 45.5
6 billion dollars in connection with those assets.  So that has
7 not changed from the original transaction.  There was an upside
8 sharing in the original transaction.  There was going to be a
9 true-up twelve months later on and that has been eliminated
10 from this transaction.

11    Barclays is still agreeing to pay the cure amounts on
12 any leases that it assumes or that we assume and assign to it.
13 Barclays is also agreeing to the same employee compensation
14 arrangements.  And it is also agreeing to pay the 250 million
15 dollars of goodwill to LBI.

16    With respect to the real estate assets, Your Honor,
17 that was -- we had said at the last hearing, I believe, it was
18 approximately a billion dollars.  Since that time, an appraisal
19 has come in and it is below that amount.  The contact had a
20 provision which allowed the purchaser really to purchase the
21 building at the appraised amount.  So we have some negotiations
22 to go, but I believe that the purchase price will come down by
23 approximately a hundred million dollars.

24    There were two other real estate properties also
25 which we received appraisals for which, similarly, were lower

1   spigots get turned on and off and how the pipeline is filled

2   and then emptied.  So each day -- there are several different

3   clearinghouses.  And each day the trades are matches and then

4   either a net number goes to Lehman or from Lehman to DTC or any

5   of its clearing companies.  There was a depository that holds

6   all of the securities.  The residential mortgages that you've

7   heard about that were going to be split fifty/fifty are in the

8   DTC registry.  We hold them now.  They are there.  Originally,

9   the idea for the original transaction was to split those

10  fifty/fifty between Barclays and the estate.  But in order to

11  facilitate the settlement of these accounts, the additional

12  fifty percent was needed so that DTC would not be at risk for

13  the settlement.  So the --

14          THE COURT:  So this modification principally is for

15  the benefit of your client?

16          MR. HIRSHON:  Correct.  And for the transaction,

17  because without it trading would have stopped.  There would be

18  no business to sell because there would have been no -- no

19  trades cleared today.  So it was to facilitate the transaction

20  as a friend to the transaction that this was done so that the

21  business continues to operate today.  Now, the arrangement is

22  that the whole six billion dollars of residential mortgages

23  will be there and subject to settlement.  But the anticipation

24  is that once all these claims settle, the trades that are from

25  Wednesday through Monday settle, there will not be a need for

1    all of that collateral.  So what the amendment to the APA says

2    is that the fifty percent will be returned, as long as it's

3    there.  If something really terrible happens in the world and

4    the settlements don't work and we have to use that collateral,

5    then there will be nothing to return.  But the anticipation is

6    that if the world remains somewhat stable that the fifty

7    percent that was now transferred to Barclays will be

8    transferred back to Lehman.  That is the expectation.

9            THE COURT:  All right.  I appreciate that

10   explanation.

11           One comment before you continue, Ms. Fife.  I'm just

12   once again hearing the Geiger counter.  And we are connected to

13   two extra courtrooms and I know that there are people

14   participating at various occasions by telephone through

15   CourtCall.  And I'm hearing increased static on the line.  So,

16   I'm just going to request everybody who is participating in

17   this hearing, whether by telephone or in person, who has an

18   electronic device to shut it off.  And if you're on the phone,

19   since you're just listening, please mute your phone.

20           MS. FIFE:  Thank you, Your Honor.  I'll continue

21   going through some of the changes, if that's okay.  There was a

22   provision in a deal originally which required the debtors to

23   transfer 700 million dollars in cash to Barclays.  And that is

24   no longer the case.  There's no cash that's being transferred

25   to Barclays.

1    case to protect the public customers and ensure stability and

2    preservation of customer interests. Their actions are to be

3    commended, Your Honor. And I believe, Your Honor, that the

4    SIPC proceeding has been referred, I hope, to Your Honor.

5          THE COURT: I've seen Judge Lynch's order. I have a

6    certified copy of it and the order includes a decretal

7    paragraph removing those proceedings to this court. I'm

8    satisfied that the seal is in fact genuine and I'm prepared to

9    proceed with full authority.

10         MR. MILLER: And, Your Honor, Mr. Giddens is here

11    with Mr. Kevin (sic) Caputo from SIPC and the president of

12    SIPC, Your Honor, Mr. Stephen Harbeck who's sitting in the jury

13    box.

14         THE COURT: Gentlemen, welcome.

15         MR. GIDDENS: Thank you, Your Honor.

16         MR. MILLER: Barclays, Your Honor, has extended the

17    sale to enable this extraordinary transaction and hopefully to

18    be consummated. Yesterday, as Your Honor has heard, Barclays

19    basically stepped into the shoes of the Federal Reserve in

20    connection with the Primary Dealer Credit Facility as to the

21    45.5 billion dollars Lehman borrowed last Monday and received

22    the collateral that Lehman had posted in connection therewith.

23         Because of the circumstances this week, Your Honor,

24    the operations of LBI have resulted in approximately 300,000

25    sales, which is very significant. In addition, Your Honor,

1    they're not affirmatively -- I think not affirmatively going to

2    stand up and say --

3            MR. DESPINS:  Why don't I address that, Your Honor?

4            MR. MILLER:  Sure.

5            THE COURT:  I think that would be helpful.

6            MR. MILLER:  Don't change your position.

7            MR. DESPINS:  Good afternoon, Your Honor.  Luc

8    Despins with Milbank Tweed, proposed counsel for the committee.

9    I'm here with my partners, Paul Aronson and Dennis Dunne.  The

10   headline is we are not objecting, Your Honor, but although

11   we'll have some minor comments to the form of order, which we

12   don't need to detain the court order at this point.  And the

13   reason we're not objecting is really based on the lack of a

14   viable alternative.  And, Your Honor, we're still a little bit

15   puzzled by the statement by Mr. Miller that we're not

16   affirmatively supporting.  And that's correct.  We're not

17   affirmatively supporting the transaction, Your Honor, because

18   there has been insufficient time for us to really do all the

19   due diligence that we would feel should be done to take that

20   next step of saying yes, this is the best deal and we're

21   supportive actively.  We've met with the debtor.  They've been

22   very cooperative.  I don't want to imply that they have not

23   been but we have not had time to test the assumptions and do

24   all the due diligence we would normally do.  So that is, Your

25   Honor, the distinction.