James B. Kobak, Jr.
Christopher K. Kiplok
Jeffrey S. Margolin
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS INC.,<br><br>Debtor. | Case No. 08-01420 (JMP) SIPA |

## SUMMARY SHEET[1]

| | |
|---|---|
| **Name and Role of Applicant:** | Hughes Hubbard & Reed LLP<br>Counsel to the Trustee |
| **Compensation Period:** | September 13, 2008 through January 31, 2009 |
| **Fees Incurred for Counsel:** | $14,261,785.26 |
| **Expenses Requested for Counsel:** | $213,820.88 |
| **Prior Fees and Expenses Requested by Counsel:** | None |
| **Blended Hourly Rate for Fees Incurred during Compensation Period:** | $482.42 |

---

1. Fees reflect a voluntary 10% discount from Hughes Hubbard & Reed LLP's standard rates at the request of the Securities Investor Protection Corporation. The Trustee seeks compensation as a member of Hughes Hubbard & Reed LLP and will not seek separate trustee commissions pursuant to section 326 of the Bankruptcy Code.

# Hours, Rate, and Fees for Services Rendered in 2008

## Trustee (2008 Data)

| Name | Department | Law School Graduation | Hours | Hourly Rate[2] | Fees |
|------|-----------|------------------------|-------|-------------|------|
| J W Giddens | Bankruptcy | 1966 | 858.20 | $787.50 | $675,832.50 |

## Partner (2008 Data)

| Name | Department | Law School Graduation | Hours | Hourly Rate | Fees |
|------|-----------|------------------------|-------|-------------|------|
| N H Bassen | Labor | 1973 | 4.20 | $765.00 | $3,213.00 |
| A H Braiterman | Tax | 1980 | 87.60 | $787.50 | $68,985.00 |
| S Loomis Cave | Litigation | 1997 | 587.30 | $585.00 | $343,570.50 |
| J R Coleman | Litigation | 1985 | 297.70 | $630.00 | $187,551.00 |
| E S Friedenberg | Corporate | 1981 | 758.60 | $742.50 | $563,260.50 |
| S J Greene | Corporate | 1987 | 331.90 | $675.00 | $224,032.50 |
| N Graff | Litigation | 1992 | 3.30 | $585.00 | $1,930.50 |
| S L Harrison | Employment | 1975 | 130.35 | $787.50 | $102,650.63 |
| J K Hoyns | Corporate | 1979 | 79.60 | $787.50 | $62,685.00 |
| J B Kobak | Litigation | 1969 | 864.95 | $742.50 | $642,225.38 |
| K E Lee | Litigation | 1992 | 197.10 | $630.00 | $124,173.00 |
| C B Levine | Corporate | 1983 | 774.80 | $652.50 | $505,557.00 |
| D Lubell | Bankruptcy | 1987 | 624.70 | $630.00 | $393,561.00 |
| S Luger | Corporate | 1980 | 343.90 | $765.00 | $263,083.50 |
| Y Okamoto | Corporate | 1976 | 34.00 | $787.50 | $26,775.00 |
| S D Rothman | Litigation | 1990 | 218.00 | $630.00 | $137,340.00 |
| C Samuelson | Corporate | 1996 | 100.85 | $607.50 | $61,266.38 |
| D H Slate | Bankruptcy | 1977 | 3.70 | $652.50 | $2,414.25 |
| R Stern | Bankruptcy | 1979 | 0.80 | $675.00 | $540.00 |
| S Sultanik | Real Estate | 1978 | 318.40 | $675.00 | $214,920.00 |
| G A Tsougarakis | Litigation | 1986 | 30.10 | $675.00 | $20,317.50 |
| D W Wiltenburg | Bankruptcy | 1974 | 655.90 | $720.00 | $472,248.00 |
| M A Weinstein | Litigation | 1993 | 19.10 | $585.00 | $11,173.50 |

---

2. Neither the hourly rates in these charts nor the Fees for any individual reflect a voluntary fee reduction of $11,000 for November 2008 which was deducted from the aggregate Total Fees. Overall, during the Compensation Period, HHR voluntarily reduced its fees by $81,175.25.

## Counsel (2008 Data)

| Name | Department | Law School Graduation | Hours | Hourly Rate | Fees |
|---|---|---|---|---|---|
| A Chowhan | Litigation | 1997 | 236.00 | $585.00 | $138,060.00 |
| F A Goudie | Corporate | 1997 | 5.10 | $540.00 | $2,754.00 |
| J Habinsky | Employment | 1996 | 7.20 | $585.00 | $4,212.00 |
| W M Josel | Corporate | 1992 | 3.40 | $535.50 | $1,820.70 |
| D G Liston | Litigation | 1993 | 55.40 | $585.00 | $32,409.00 |
| S P McSloy | Corporate | 1988 | 504.80 | $562.50 | $283,950.00 |
| J J Pastore | Corporate | 1984 | 51.90 | $585.00 | $30,361.50 |
| Y Saito | Litigation | 1992 | 55.90 | $585.00 | $32,701.50 |

## Associates (2008 Data)

| Name | Department | Law School Graduation | Hours | Hourly Rate | Fees |
|---|---|---|---|---|---|
| M A Alvarez | Corporate | 2008 | 129.60 | $292.50 | $37,908.00 |
| T Andriotis | Litigation | 2004 | 456.10 | $450.00 | $205,245.00 |
| M N Bellomo | Real Estate | 2006 | 84.80 | $396.00 | $33,580.80 |
| J Bermudez | Corporate | 2008 | 361.20 | $292.50 | $105,651.00 |
| J Button | Litigation | 2008 | 348.80 | $351.00 | $122,428.80 |
| R Chamie | Litigation | 2006 | 609.60 | $396.00 | $241,401.60 |
| S Choi | Litigation | 2007 | 49.50 | $351.00 | $17,374.50 |
| A Danner | Corporate | 2007 | 443.20 | $351.00 | $155,563.20 |
| M Darden | Litigation | 2008 | 285.40 | $292.50 | $83,479.50 |
| J Director | Corporate | 2008 | 91.80 | $292.50 | $26,851.50 |
| G Douvas | Corporate | 1999 | 302.70 | $540.00 | $163,458.00 |
| G Farrell | Litigation | 2008 | 275.80 | $292.50 | $80,671.50 |
| C Fitzgerald | Labor | 2000 | 2.20 | $517.50 | $1,138.50 |
| A B Frelinghuysen | Bankruptcy | 2007 | 1,010.25 | $351.00 | $354,597.75 |
| T Furst | Real Estate | 1972 | 47.60 | $585.00 | $27,846.00 |
| G Glemann | Bankruptcy | 2006 | 286.30 | $396.00 | $113,374.80 |
| J Goodman | Litigation | 2004 | 610.10 | $450.00 | $274,545.00 |
| M C Gragg | Litigation | 2006 | 259.00 | $396.00 | $102,564.00 |
| W Hennessey | Litigation | 2004 | 92.20 | $450.00 | $41,490.00 |
| J E Hwang | Litigation | 2007 | 364.90 | $351.00 | $128,079.90 |
| U A Ike | Corporate | 2006 | 6.60 | $396.00 | $2,613.60 |
| Y Ishii | Litigation | Foreign Atty | 36.70 | $292.50 | $10,734.75 |
| U Idachaba | Corporate | 2006 | 158.00 | $396.00 | $62,568.00 |
| C Kiplok | Bankruptcy | 2000 | 804.30 | $517.50 | $416,225.25 |
| J LoPiccolo | Litigation | 2003 | 381.60 | $477.00 | $182,023.20 |
| J Margolin | Bankruptcy | 2002 | 984.30 | $490.50 | $482,799.15 |
| J E Pace | Litigation | 2007 | 233.90 | $351.00 | $82,098.90 |
| C Parris | Litigation | 2008 | 94.60 | $292.50 | $27,670.50 |
| L Pisciotta | Litigation | 2000 | 5.20 | $517.50 | $2,691.00 |

| Name | Department | Law School Graduation | Hours | Hourly Rate | Fees |
|---|---|---|---|---|---|
| J N Poulos | Litigation | 2001 | 535.00 | $504.00 | $269,640.00 |
| N Reed | Litigation | 2000 | 557.60 | $517.50 | $288,558.00 |
| D Rowe | Corporate | 1999 | 327.70 | $540.00 | $176,958.00 |
| J Sczesnik | Litigation | 2008 | 333.30 | $292.50 | $97,490.25 |
| D Smith | Bankruptcy | 2008 | 423.00 | $292.50 | $123,727.50 |
| M M Stead | Tax | 2006 | 73.90 | $396.00 | $29,264.40 |
| K A Taylor | Corporate | 1997 | 39.20 | $585.00 | $22,932.00 |
| M Termini | Litigation | 2005 | 481.50 | $423.00 | $203,674.50 |
| S L Terrill | Employment | 1997 | 344.70 | $585.00 | $201,649.50 |
| Y Windham | Corporate | 2008 | 27.20 | $292.50 | $7,956.00 |

## Paralegals (2008 Data)

| Name | Hours | Hourly Rate | Fees |
|---|---|---|---|
| W S Bagg | 5 | $216.00 | 1,080.00 |
| M R Bronen | 609.7 | $198.00 | 120,720.60 |
| J Cirker | 42.5 | $216.00 | 9,180.00 |
| S Dedushi | 24.7 | $198.00 | 4,890.60 |
| S Dalrymple | 26.6 | $216.00 | 5,745.60 |
| M C Disare | 427.4 | $198.00 | 84,625.20 |
| K M Donnoe | 5 | $198.00 | 990.00 |
| A Geyer | 411.1 | $198.00 | 81,397.80 |
| S Johnsen | 3.5 | $198.00 | 693.00 |
| J Y Kim | 4 | $198.00 | 792.00 |
| S E Koerber | 551.7 | $198.00 | 109,236.60 |
| S J LaRussa | 47.2 | $198.00 | 9,207.00 |
| T Lorenzo | 11.5 | $207.00 | 2,380.50 |
| M L Marcellino | 4.2 | $198.00 | 831.60 |
| N Major | 252.5 | $198.00 | 49,995.00 |
| N Mohebbi | 216.7 | $201.69 | 43,706.70 |
| H Nejati | 9.1 | $198.00 | 1,801.80 |
| J R Ousley | 4.8 | $198.00 | 950.40 |
| K E Perez | 33.2 | $198.00 | 6,573.60 |
| D M Placid | 27.8 | $198.00 | 5,504.40 |
| E L Sharpe | 417.9 | $198.00 | 82,744.20 |
| C Safdari | 7 | $198.00 | 1,386.00 |
| J R Clancy | 7.5 | $198.00 | 1,485.00 |
| E Schaefer | 4 | $220.50 | 882.00 |
| P E Smith | 22.5 | $220.50 | 4,961.25 |
| C Martenson | 60.6 | $216.00 | 13,089.60 |

**Litigation Support (2008 Data)**

| Name | Hours | Hourly Rate | Fees |
|------|-------|-------------|------|
| M Carrington | 55.6 | $189.00 | 10,508.40 |
| F Chang | 18.4 | $189.00 | 3,477.60 |
| H Coley | 11.3 | $315.00 | 3,559.50 |
| A L Dyke | 23.7 | $189.00 | 4,479.30 |
| F Joseph | 8.5 | $225.00 | 1,912.50 |
| T Lin | 3.7 | $225.00 | 832.50 |
| B J Milesi | 61.4 | $270.00 | 16,578.00 |
| **2008 Totals** | **23,624.10** | | **$11,319,296.46** |

# Hours, Rate, and Fees for Services Rendered in 2009[3]

## Trustee (2009 Data)

| Name | Department | Law School Graduation | Hours | Hourly Rate | Fees |
|------|-----------|------------------------|-------|-------------|------|
| J W Giddens | Bankruptcy | 1966 | 180.30 | $832.50 | $150,099.75 |

## Partner (2009 Data)

| Name | Department | Law School Graduation | Hours | Hourly Rate | Fees |
|------|-----------|------------------------|-------|-------------|------|
| A H Braiterman | Tax | 1980 | 25.40 | $832.50 | $21,145.50 |
| S Loomis Cave | Litigation | 1997 | 177.50 | $630.00 | $111,825.00 |
| J R Coleman | Litigation | 1985 | 71.30 | $675.00 | $48,127.50 |
| E S Friedenberg | Corporate | 1981 | 188.60 | $787.50 | $148,522.50 |
| S J Greene | Corporate | 1987 | 52.60 | $720.00 | $37,872.00 |
| F A Goudie | Corporate | 1997 | 2.40 | $585.00 | $1,404.00 |
| N Graff | Litigation | 1992 | 2.90 | $630.00 | $1,827.00 |
| S L Harrison | Employment | 1975 | 23.30 | $832.50 | $19,397.25 |
| J K Hoyns | Corporate | 1979 | 16.10 | $832.50 | $13,403.25 |
| J B Kobak | Litigation | 1969 | 181.30 | $787.50 | $142,773.75 |
| K E Lee | Litigation | 1992 | 148.60 | $675.00 | $100,305.00 |
| C B Levine | Corporate | 1983 | 159.30 | $675.00 | $107,527.50 |
| D Lubell | Bankruptcy | 1987 | 169.10 | $675.00 | $114,142.50 |
| S Luger | Corporate | 1980 | 92.40 | $810.00 | $74,844.00 |
| M Luskin | Litigation | 1977 | 0.50 | $675.00 | $337.50 |
| S D Rothman | Litigation | 1990 | 42.90 | $675.00 | $28,957.50 |
| C Samuelson | Corporate | 1996 | 2.00 | $652.50 | $1,305.00 |
| D E Schnapp | Corporate | 1994 | 2.00 | $697.50 | $1,395.00 |
| S Sultanik | Real Estate | 1978 | 56.20 | $720.00 | $40,464.00 |
| G A Tsougarakis | Litigation | 1986 | 13.10 | $720.00 | $9,432.00 |
| D W Wiltenburg | Bankruptcy | 1974 | 164.50 | $765.00 | $125,842.50 |
| M A Weinstein | Litigation | 1993 | 21.20 | $630.00 | $13,356.00 |

---

3.  On January 1, 2009, the Trustee's and HHR's hourly rates increased.  Also, for associates and other attorneys, the 2009 hourly rate reflects a maturation increase.

## Counsel (2009 Data)

| Name | Department | Law School Graduation | Hours | Rate | Fees |
|---|---|---|---|---|---|
| A Chowhan | Litigation | 1997 | 74.40 | $612.00 | $45,532.80 |
| W M Josel | Corporate | 1992 | 27.20 | $562.50 | $15,300.00 |
| S P McSloy | Corporate | 1988 | 85.80 | $589.50 | $50,579.10 |
| J J Pastore | Corporate | 1984 | 2.50 | $612.00 | $1,530.00 |
| Y Saito | Litigation | 1992 | 15.90 | $612.00 | $9,730.80 |

## Associates (2009 Data)

| Name | Department | Law School Graduation | Hours | Rate | Fees |
|---|---|---|---|---|---|
| M A Alvarez | Corporate | 2008 | 18.10 | $319.50 | $5,782.95 |
| T Andriotis | Litigation | 2004 | 142.80 | $477.00 | $68,115.60 |
| M N Bellomo | Real Estate | 2006 | 26.70 | $423.00 | $11,294.10 |
| J Benton | Litigation | 2000 | 10.30 | $544.50 | $5,608.35 |
| J Bermudez | Corporate | 2008 | 110.50 | $319.50 | $35,304.75 |
| R Chamie | Litigation | 2006 | 146.20 | $423.00 | $61,842.60 |
| A Danner | Corporate | 2007 | 58.40 | $378.00 | $22,075.20 |
| M Darden | Litigation | 2008 | 72.50 | $319.50 | $23,163.75 |
| G Douvas | Corporate | 1999 | 121.30 | $567.00 | $68,777.10 |
| G Farrell | Litigation | 2008 | 30.80 | $319.50 | $9,840.60 |
| A B Frelinghuysen | Bankruptcy | 2007 | 221.50 | $378.00 | $83,727.00 |
| G Glemann | Bankruptcy | 2006 | 84.20 | $423.00 | $35,616.60 |
| J Goodman | Litigation | 2004 | 165.70 | $477.00 | $79,038.90 |
| M C Gragg | Litigation | 2006 | 102.50 | $423.00 | $43,357.50 |
| W Hennessey | Litigation | 2004 | 44.60 | $477.00 | $21,274.20 |
| J E Hwang | Litigation | 2007 | 186.40 | $378.00 | $70,459.20 |
| U Idachaba | Corporate | 2006 | 13.20 | $423.00 | $5,583.60 |
| U A Ike | Corporate | 2006 | 37.50 | $423.00 | $15,862.50 |
| Y Ishii | Litigation | Foreign Attorney | 19.10 | $319.50 | $6,102.45 |
| J Jenkelowitz | Corporate | 2005 | 11.20 | $423.00 | $4,737.60 |
| S Khemani | Litigation | 2005 | 76.80 | $450.00 | $34,560.00 |
| C Kiplok | Bankruptcy | 2000 | 198.90 | $544.50 | $108,301.05 |
| J LoPiccolo | Litigation | 2003 | 105.50 | $504.00 | $53,172.00 |
| J Margolin | Bankruptcy | 2002 | 194.70 | $517.50 | $100,757.25 |
| G Mullaj | Corporate | 2008 | 20.20 | $319.50 | $6,453.90 |
| J E Pace | Litigation | 2007 | 79.90 | $378.00 | $30,202.20 |
| C Parris | Corporate | 2008 | 17.90 | $319.50 | $5,719.05 |
| J N Poulos | Litigation | 2001 | 78.30 | $531.00 | $41,577.30 |
| N Reed | Litigation | 2000 | 85.70 | $544.50 | $46,663.65 |
| H R Resnick | Corporate | 2004 | 2.10 | $477.00 | $1,001.70 |
| D Rowe | Tax | 1999 | 36.60 | $567.00 | $20,752.20 |
| J Sczesnik | Litigation | 2008 | 63.20 | $319.50 | $20,192.40 |

| Name | Department | Law School Graduation | Hours | Hourly Rate | Fees |
|------|-----------|------|-------|------|------|
| D Smith | Bankruptcy | 2008 | 138.20 | $319.50 | $44,154.90 |
| M M Stead | Tax | 2006 | 49.10 | $423.00 | $20,769.30 |
| K A Taylor | Corporate | 1997 | 9.70 | $585.00 | $5,674.50 |
| M Termini | Litigation | 2005 | 35.70 | $450.00 | $16,065.00 |
| S L Terrill | Employment | 1997 | 95.20 | $612.00 | $58,262.40 |
| Y Windham | Corporate | 2008 | 38.30 | $319.50 | $12,236.85 |

## Paralegals (2009 Data)

| Name | Hours | Rate | Fees |
|------|-------|------|------|
| M R Bronen | 154.70 | $207.00 | $32,022.90 |
| S Dalrymple | 21.00 | $225.00 | $4,725.00 |
| M C Disare | 176.70 | $207.00 | $36,576.90 |
| A Geyer | 122.10 | $207.00 | $25,274.70 |
| S E Koerber | 108.60 | $207.00 | $22,480.20 |
| N Major | 83.50 | $207.00 | $17,284.50 |
| M M Mascetti | 3.50 | $216.00 | $756.00 |
| N Mohebbi | 32.60 | $216.00 | $7,041.60 |
| E L Sharpe | 158.40 | $207.00 | $32,788.80 |
| K E Perez | 0.50 | $207.00 | $103.50 |
| C Safardi | 4.00 | $207.00 | $828.00 |

## Litigation Support (2009 Data)

| Name | Hours | Rate | Fees |
|------|-------|------|------|
| M Carrington | 36.30 | $202.50 | $7,350.75 |
| T Lin | 9.80 | $225.00 | $2,205.00 |
| B J Milesi | 42.30 | $283.50 | $11,992.05 |
| **2009 Totals** | **5,902.80** | | **$2,942,488.80** |

## Combined Totals (2008 & 2009):

| | | |
|------|------|------|
| **Hours:** | **29,526.90** | |
| **Fees:** | | **$14,261,785.26** |

James B. Kobak, Jr.
Christopher K. Kiplok
Jeffrey S. Margolin
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| LEHMAN BROTHERS INC., | Case No. 08-01420 (JMP) SIPA |
| Debtor. | |

**FIRST APPLICATION OF HUGHES HUBBARD & REED LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM SEPTEMBER 13, 2008 THROUGH JANUARY 31, 2009**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Hughes Hubbard & Reed LLP ("HHR"), as counsel to James W. Giddens

(the "Trustee")[1] as Trustee for the liquidation of Lehman Brothers Inc. ("Debtor" or

"LBI"), for its first application (the "Application") for an order pursuant to section

78eee(b)(5) of the Securities Investor Protection Act ("SIPA"), 15 U.S.C.§ 78eee(b)(5),[2]

---

1.  The Trustee seeks compensation as a member of HHR and not seek separate trustee commissions pursuant to section 326 of the Bankruptcy Code.

2.  References hereinafter to provisions of SIPA shall omit "15 U.S.C."

sections 330 and 331 of the Bankruptcy Code, Rule 2016(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), allowing and awarding interim

compensation for services performed by HHR for the period commencing September 13,

2008 through and including January 31, 2009 (the "Compensation Period") and

reimbursement of HHR's actual and necessary expenses incurred during the

Compensation Period, respectfully represents:

## PRELIMINARY STATEMENT

       1.     Five months have elapsed since the District Court's determination

(upon application by SIPC) that the customers of LBI were "in need of protection" under

SIPA, thus initiating this proceeding to liquidate the largest broker dealer ever to fail.

Due to the efforts of the Trustee and his counsel, this initial period has achieved customer

protection through transfer of accounts to solvent brokers, as contemplated by SIPA

where failure is due to causes other than fraud affecting customer accounts.  To date,

approximately 139,000 customer accounts representing approximately $140 billion in

customer property have been transferred.  These numbers are many times greater than

comparable numbers in any prior case, and hopefully will not be seen again in the future.

       2.     Also during the Compensation Period, the Trustee and HHR

initiated a claims process for all customers and creditors of LBI.  As of February 13,

2009, the Trustee has received claims representing more than 70,000 potential customers

and other creditors.  These figures already far exceed the number of claims to be

administered in any prior liquidation, though the final claims bar date is not until June 1,

2009.

3.      Given the task of gaining control of and liquidating the vast enterprise that was LBI, the Trustee and his counsel have also dealt (and put in place the means to deal going forward) with issues spanning a broad spectrum of legal and administrative specialties and disciplines.  The Trustee's ability to call on the resources of HHR in such areas as corporate, real estate, employment, tax, banking, litigation (and others) has been of material assistance in achieving results, establishing protocols, and directing the efforts of the Trustee's financial professionals.  Beyond issues that may be handled pursuant to work plans or protocols, many issues that could not have been anticipated were especially challenging during the initial phase of this proceeding.

4.      The Trustee believes that, during the Compensation Period, his counsel and staff have met extraordinary challenges efficiently, and in a manner beneficial to the customers, creditors, and other stakeholders of LBI.   The following discussion and the materials attached to this Application cover the major categories of services for which allowance of compensation is sought.

## BACKGROUND

5.      Commencing on September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. ("LBHI") and certain of its subsidiaries (collectively, the "Chapter 11 Debtors") commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

6.      On September 19, 2008 (the "Filing Date"), the Honorable Gerard E. Lynch, Judge of the United States District Court for the Southern District of New

York, entered the Order Commencing Liquidation (the "LBI Liquidation Order") pursuant to the provisions of SIPA in the case captioned Securities Investor Protection Corporation v. Lehman Brothers Inc., Case No. 08-CIV-8119 (GEL).

7.      The LBI Liquidation Order: (i) appointed the Trustee for the liquidation of the business of the Debtor pursuant to section 78eee(b)(3) of SIPA; (ii) appointed HHR counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and (iii) removed this case to this Court pursuant to section 78eee(b)(4) of SIPA.

8.      On November 7, 2008, the Court entered the Order Regarding Disinterestedness of the Trustee and Counsel to the Trustee (Docket No. 243) finding that the Trustee and HHR are disinterested pursuant to provisions section 78eee(b)(6) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a) and are therefore in compliance with the disinterestedness requirement in section 78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a).

## COMPENSATION REQUESTED

9.      This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements of Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines") and the Order Pursuant to Section 78eee(b)(5) of SIPA, Sections 105, 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a) and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing Interim Monthly Compensation of Trustee and Hughes Hubbard & Reed LLP (Docket No. 245), dated November 7, 2008 (the "Administrative Fee Order," together with the Local Guidelines, the "Guidelines").

Pursuant to the Local Guidelines, the certification of James B. Kobak, Jr., Esq. regarding compliance with the same is attached hereto as Exhibit A.

10.     The Trustee expended 1038.50 hours in the rendition of professional services and HHR expended 28,488.40 hours in the rendition of professional and paraprofessional services on behalf of the Trustee during the Compensation Period, resulting in a blended hourly rate of $482.42 for fees incurred.

11.     Prior to filing this Application, HHR provided SIPC,[3] in accordance with the Administrative Fee Order, monthly fee statements setting forth HHR's fees for services rendered and expenses incurred beginning September 13, 2008 through January 31, 2009.  In connection with preparing each of the four monthly statements and this Application, HHR has voluntarily adjusted its fees by $81,175.25 and written off expenses in the amount of $178,438.14 customarily charged to other clients.

12.     In addition, at SIPC's request, HHR's fees in this case reflect a 10% public interest discount from HHR's standard rates.  This discount has resulted in an additional voluntary reduction during the Compensation Period of $1,426,178.53.  Such fees are reasonable based on the customary compensation charged by comparably skilled practioners in the Chapter 11 Cases and comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

13.     Pursuant to the Administrative Fee Order, on November 17, 2008, HHR filed its statement of fees and expenses incurred in connection with this case from the period of September 13, 2008 through October 31, 2008 (the "September-October

---

3.  The United States Trustee does not play a role in a SIPA proceeding as to professional compensation matters or otherwise.  See, e.g., Bankruptcy Rule 2002(k).  Such function is generally mirrored by SIPC's role in the proceeding.

2008 Fee Statement").  The September-October 2008 Fee Statement reflected fees of $5,125,244.20 and expenses of $62,353.86.  As no objections were made to the September-October 2008 Fee Statement, HHR received a payment in the amount of $4,162,550.10, including $4,100,196.24 for services rendered after subtracting the Court-ordered 20% holdback and $62,353.86 for expenses incurred during September and October 2008.

14. Pursuant to the Administrative Fee Order, on December 12, 2008, HHR filed its statement of fees and expenses incurred in November 2008 (the "November 2008 Fee Statement").  The November 2008 Fee Statement reflected fees of $3,159,513.71 and expenses of $63,133.94.  As no objections were made to the November 2008 Fee Statement, HHR received a payment in the amount of $2,590,744.91, including $2,527,610.97 for services rendered after subtracting the Court-ordered 20% holdback and $63,133.94 for expenses incurred during November 2008.

15. Pursuant to the Administrative Fee Order, on January 21, 2009, HHR filed its statement of fees and expenses incurred in December 2008 (the "December 2008 Fee Statement").  The December 2008 Fee Statement reflected fees of $3,034.538.55 and expenses of $47,461.92.  As of the filing of this Application, HHR has not received any payment for services and expenses incurred in December 2008.

16. Pursuant to the Administrative Fee Order, on February 13, 2009, HHR filed its statement of fees and expenses incurred in January 2009 (the "January 2009 Fee Statement").  The January 2009 Fee Statement reflected fees of $2,942,488.80 and expenses of $40,870.16.  As of the filing of this Application, HHR has not received any payment for services and expenses incurred in January 2009.

17.     Exhibit B annexed hereto provides a schedule of the expenses for which reimbursement is requested.  The requested expenses are customarily charged to and paid by HHR's bankruptcy and non-bankruptcy clients.  No first class or other luxury travel, meals or accommodations have been charged herein.  In addition, HHR has <u>not charged</u> for a number of categories of expenses regularly charged to and paid by HHR's clients including <u>overtime meals</u>, <u>internal copies and after-hours travel services</u>.  These amounts combine to a voluntary reduction of $178,438.14.

18.     Exhibit C annexed hereto is a summary by project categories of services performed by HHR from November 1, 2008 through January 31, 2009.[4]

19.     Exhibit D annexed hereto is HHR's detailed monthly time records, subject to redaction for the attorney-client privilege where necessary, reflecting the time spent by HHR in connection with the liquidation.

20.     Exhibit E annexed hereto is a detailed listing of all expenses incurred by HHR in connection with the liquidation.

21.     There is no agreement or understanding between the Trustee, HHR and any other person, other than members of HHR, for sharing of compensation to be received for services rendered in this case.

22.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, HHR reserves the

---

4.     Beginning for services rendered on November 1, 2008, HHR implemented thirty-one (31) separate matter numbers for project categories to permit a more detailed analysis of the fees incurred.  Given the multitude of attorneys involved and the number of task codes, overlaps and inconsistencies are inevitable despite HHR's best efforts to ensure that work on a specific topic is billed to a single task code.

right to request additional compensation for such services and reimbursement of such expenses in a future application.

## SUMMARY OF SERVICES

23.     A SIPA proceeding contemplates liquidation of the business of the broker-dealer, with special provisions regarding "customer" assets.  Accordingly, the Trustee's and HHR's services (highlighted here and summarized in greater detail below) have encompassed all of the critical, initial aspects of the liquidation of the international enterprise that was LBI, with a particular emphasis on the protection and return of customer accounts wherever possible.

24.     Within hours of commencement of this proceeding, the Trustee, with HHR's assistance, began the unprecedented task of carrying out LBI's role in the sale of substantial assets, including the bulk transfer of LBI's "Private Investment Management (PIM)" accounts to Barclays Capital Inc. ("Barclays") and "Private Asset Management (PAM)" accounts to Neuberger Berman.  Together, the PIM/PAM bulk transfers totaled more than 135,000 accounts comprising some $140 billion in client assets.

25.     Shortly after commencement, the Trustee announced a series of protocols for the treatment of certain investment products and client relationships, including a protocol for the consensual resolution and return of prime brokerage assets at LBI.  Through extensive efforts during the Compensation Period, more than $3 billion in prime brokerage assets were returned to over 300 entities throughout the world.

26.     The Trustee and HHR also moved promptly to implement a claims process for customers and other creditors in keeping with SIPA.  On December 1, 2008,

claims filing information was mailed to more than 905,000 potential customer and general creditor claimants. The largest SIPA claims process in history was thus put in motion within weeks of the Trustee's appointment, setting a bar date for all claims against the estate of June 1, 2009.

27. Beyond SIPA's customer protection mandate, the general administration of this liquidation has also involved efforts unprecedented in a broker-dealer liquidation. In that connection, the Trustee and HHR devoted substantial time to coordinating with the Chapter 11 Debtors, Lehman Brothers International (Europe) ("LBIE"), and the many other Lehman Brothers-related insolvency proceedings around the globe. Moreover, unlike any prior SIPA liquidation to date, the Trustee and HHR have spent substantial time coordinating with, investigating, and where possible resolving disputes involving Barclays as the acquirer of substantial LBI assets.

28. In addition, the Trustee, with the assistance of HHR, has begun the task of marshalling estate assets. These efforts have and continue to include: closures and sales of offices; collection and centralization of scores of bank accounts and other deposits totaling nearly $3.7 billion to date; pursuing thorough accountings from and otherwise investigating setoffs or seizure and liquidation of collateral by LBI's clearing banks and organizations; reviewing intercompany balances and claims including the Payment In-Kind ("PIK") note received prior to the Trustee's appointment in return for the transfer of nearly all of LBI's 271 direct and indirect subsidiaries; reviewing and returning hundreds of millions of dollars in post-petition cash wires misdirected to the estate; and beginning the Trustee's investigation of the collapse of the debtor pursuant to SIPA § 78fff-1(d).

29.     Through all of these services the Trustee and HHR made every effort to keep customers and other interested parties informed of their efforts—responding at times to several hundred phone calls, emails, and letters *per day*, establishing a website for centralized distillation of as much information as possible, and holding a meeting of customers and other creditors on December 17, 2008.

30.     The Trustee and HHR have also been cognizant that their efforts, as with the efforts of professionals in other SIPA proceedings, bear on the public interest. In that connection, the Trustee, along with HHR, regularly met and coordinated their efforts with the Securities and Exchange Commission, the Federal Reserve Bank of New York, the Commodities Futures Trading Commission, the Financial Industry Regulatory Authority, and the British Financial Services Authority. Most importantly, the Trustee and HHR have consulted and worked intimately with SIPC in all aspects of the liquidation.

## DETAILED DESCRIPTION OF SERVICES

31.     The following is a more detailed overview of certain of the significant services rendered by HHR, including the Trustee, during the Compensation Period, organized in accordance with HHR's internal system of project or work codes.

a.   Asset Analysis (031164.00002):  Identifying assets, determining their valuation, and soliciting bids from interested third parties for the sale of such assets.

b.   Asset Disposition (General) (031164.00003):  Identifying and assessing LBI investments for potential asset disposition, including:

- Pursuant to expedited procedures for asset sales with a purchase price under $10 million, selling LBI's interests in Lehman China and India businesses to Nomura International PLC, generating a recovery of $1.2 million for the estate.

- Drafting and negotiating a purchase agreement and related documents for the sale of LBI's proprietary shares in The Clearing Corporation to Barclays Capital Inc.

- Conducting preparatory due diligence for potential sales of other LBI private equity investments.

c. <u>Automatic Stay (Relief Actions) (031164.00004)</u>: Evaluating and responding to numerous requests seeking relief from the automatic stay, including, with respect to motions for relief from the automatic stay filed by Carlos Manalac, Financial Security Assurance, Inc., DnB Nor Bank ASA, and Cargill Investment Group, Ltd., successfully negotiating and filing favorable, court-approved automatic stay relief stipulations that preserve the estate's rights with respect to those entities.

d. <u>Banking and Cash Management (031164.00005)</u>: Coordinating the marshalling and management of LBI and client assets for the benefit of the estate and its customers and creditors by:

- Establishing certain accounts with the trust group of Union Bank, N.A. (formerly known as Union Bank of California, N.A.) in New York to: (i) collect funds and securities owned by LBI for its own account, including amounts owed to LBI by third parties; and (ii) collect and disburse funds and securities belonging to LBI customers.

- Identifying, investigating and processing the return of misdirected wires erroneously deposited in LBI accounts, resulting in the successful return of 76 misdirected wires totaling approximately $391 million.

- Obtaining a Court Order authorizing the Trustee to use LBI bank accounts to facilitate payment of payroll and accounts payable obligations on behalf of other Lehman entities and Barclays in the transition period following entry of the Sale Order.

- Reissuing payroll checks to certain LBI employees that were dishonored as a result of the commencement of the liquidation proceeding.

- Cooperating with Alvarez & Marsal in allowing LBHI to flow payroll and accounts payable through certain LBI bank accounts provided that LBHI first deposits new funds into the accounts before any such payments are made.

- Investigating, negotiating and discussing with holders of LBI collateral, including clearing banks and depositories and exchanges, with a view to reducing excess proceeds as determined by the Trustee and his accountants with Deloitte & Touche LLP ("Deloitte") to possession and negotiating required confidentiality agreements.

e. Barclays' Asset Sale (031164.00006): Carrying out LBI's role in the sale of substantial assets, including:

- Researching Barclays' claims under the Asset Purchase Agreement ("APA") and where appropriate facilitating the transfer of purchased assets.

- Investigating, and where possible resolving, disputes related to the acquisition, including the $7 billion settlement agreement approved by the Court on December 22, 2008 related to a repurchase agreement among LBI, Barclays and JP Morgan Chase Bank, N.A. entered into prior to the Filing Date.

- Coordinating terms and means of access to LBI's books and records and negotiating potential Transition Services Agreement and an access agreement with Barclays as well as related agreements with LBHI.

f. Brokerage Account Issues and Account Transfers (031164.00007): Effectuating the orderly transfer of approximately $140 billion in customer assets to more than 100,000 individual accounts by:

- Overseeing all phases of account transfers to new broker-dealers: (i) Private Asset Management ("PAM") accounts to Neuberger Berman/Ridge; (ii) Private Investment Management ("PIM") accounts to Barclays; and (iii) prime brokerage accounts to new broker dealers of the account holders' choosing.

- Facilitating and manually authorizing PIM and PAM asset transfers and handling other operational matters in conjunction with Deloitte, Barclays, legacy LBI personnel and the Securities and Exchange Commission ("SEC").

- Establishing a process to expedite the transfer of prime brokerage account assets (with extensive research on accounts and discussions with accountholders) in advance of the formal claims process to provide customers immediate access to their property, thereby allowing for the transfer of over $3 billion of assets, valued

as the Filing Date, in approximately 300 prime brokerage accounts from mid-October through the customer claim-filing deadline.

- Establishing open lines of communication with account managers and their counsel to explain the process of transferring prime brokerage accounts and to reconcile account balances.

- Continuing the process of finalizing transfers, negotiating settlements, purchasing securities as necessary, and participating in discussion with other Lehman entities regarding cross entity exposure, balance disputes and various operational hurdles.

- Working with account holders (representing large dollar values that present either large margin debits or significant cross-entity exposure) to reach mutually agreeable transfers involving partial distributions, and partial liquidations to satisfy margin debits and releases from claims.

- Analyzing account exposure based on liens or borrowings with other Lehman entities and collaborating with other Lehman entities to work towards a global solution to exposure issues.

- Negotiating and documenting a settlement agreement with Barclays and DTCC, pursuant to which LBI would compensate Barclays for securities sold or transferred in connection with the wind-down of LBI's account (to settle other LBI obligations), which were customer property that should have been received by Barclays for the benefit of customers pursuant to the APA.

g. Business Operations/Strategic Planning (031164.00008):
   Expeditiously obtaining control over business operations, including:

- Interviewing and appointing Marshall Levinson, a former Bear Stearns executive, as Chief Liquidating Officer of the estate, and working with Mr. Levinson in streamlining the management and liquidation of LBI's remaining assets through the establishment of a Trustee's office and hiring additional personnel.

- Coordinating with Deloitte in developing work streams to effectively manage the liquidation, and coordinating activities with numerous other parties, including Alvarez & Marsal, Barclays and its counsel, LBIE and its counsel, and informal meetings and discussions with the Creditors' Committee in the Chapter 11 cases.

- Resolving outstanding issues related to regulatory and employment matters arising from the operation and winding down of LBI-

13

operated branch offices, including those located in Mexico, England and China.

h.  Case Administration (031164.00009):

   • Drafting a motion and obtaining an order establishing certain case management procedures, including, *inter alia*, electronic notice procedures and omnibus hearing dates.

   • Preparing for and participating in LBI omnibus hearings on October 2, 2008, October 16, 2008, November 5, 2008, November 20, 2008, December 3, 2008, December 16, 2008, December 22, 2008, January 14, 2009 and January 28, 2009.

   • Ensuring effective use of all attorneys' time and avoidance of duplicative efforts, in light of the size of this proceeding and the number of projects involved herein, by conducting numerous internal team meetings and discussions.

   • Establishing and updating a free-access website (www.lehmantrustee.com) to provide public access to all case filings and additional case information, posting notices or information on that and other websites and setting up and staffing dedicated phone lines for inquiries.

i.  Claims Administration (SIPC and General Creditor) (031164.00010 and .000011):  To implement an orderly and efficient claims process:

   • Drafting, in coordination with SIPC, the Application for Entry of an Order Approving Form and Manner of Publication and Mailing of Notice of Commencement; Specifying Procedures and Forms for Filing, Determination, and Adjudication of Claims; Fixing a Meeting of Customers and Other Creditors; and Fixing Interim Reporting Pursuant to SIPA approved by the Court on November 7, 2008.

   • Coordinating with the Trustee's claims agent, Epiq Bankruptcy Solutions, LLC ("Epiq"), to ensure that all potential customers and creditors of LBI, over 900,000, were properly noticed via the mailing and publication pursuant to SIPA.

   • Developing an electronic claims filing system, the first of its kind in a SIPA liquidation.

- Negotiating and developing omnibus claim filing protocols for large institutions including, *inter alia*, LBIE, Barclays, and PIMCO.

- Establishing and implementing protocols for review and determination of over 70,000 filed claims to date.

j.  <u>Customer Inquiries and Research (031164.00012)</u>:

- Organizing attorney call center teams and correspondence tracking systems.

- Responding promptly to numerous telephone calls, sometimes in the hundreds per day, and letters received from customers, creditors and other parties in interest concerning the commencement of the liquidation, the consequence of filing customer and general creditor claims against the estate, the rights of customers under SIPA and creditors under the Bankruptcy Code, and related issues.

k.  <u>Derivatives, Repos and F/X Issues (031164.00013)</u>:  With respect to issues arising from the closeout of derivative, repurchase, and foreign exchange transactions:

- Developing a systematic approach to capture the value of repurchase and reverse repurchase transactions as well as stock lending transactions, all of which are documented pursuant to industry forms of master agreement.

- Assembling the relevant documents to approach counterparties where closeout amounts are owed to LBI in accordance with market practice.

- Addressing the closeout of foreign exchange transactions and the resolution of certain intercompany issues arising from those transactions, including the assertion of a setoff by one of LBI's banks that was involved with the clearance of foreign exchange products on behalf of LBI and its affiliates.

- Consensually resolving a disputed foreign exchange trade with the counterparty and the clearing bank to close the trade, resulting in a gain of approximately $48 million to the LBI estate.

- Establishing a procedure for the recapture of the value of terminated trades to confirm transaction values and settle discrepancies on a cooperative basis with market counterparties.

l.  Executory Contracts (031164.00014):  In connection with issues related to executory contracts to which LBI is a party:

- Evaluating LBI executory contracts not assigned to Barclays as part of the APA.

- Obtaining orders: (i) extending the Trustee's time to assume and assign or reject executory contracts; and (ii) establishing procedures for assuming and assigning or rejecting contracts.

- Facilitating the process of rejecting, terminating and assigning executory contracts, including entering into stipulations to assign Administrative Agency Agreements to Lehman Brothers Commercial Paper Inc. ("LCPI") and intellectual property licenses to Barclays, and terminating or rejecting certain vendor agreements.

- Negotiating agreements with at least three issuers of auction rate securities whereby LBI's status as broker-dealer and/or marketing agent for the issuers' securities has been terminated in exchange for payment to the estate of amounts owed for LBI's services with respect to the securities, thereby allowing the issuers to enlist the services of other broker-dealers to resume the auction process for these securities, which has otherwise been stalled since at least the start of LBI's liquidation proceedings.  These agreements have provided for the recovery of hundreds of thousands of dollars of estate assets while, at the same time, providing an avenue by which LBI's former auction rate securities customers can liquidate their positions in those securities.

m.  Fee Applications (Trustee and HHR) (031164.000015):

- Drafting the Trustee's Application for Entry of an Order Regarding Disinterestedness of the Trustee and Counsel to the Trustee approved by Court on November 7, 2008.

- Drafting the Administrative Fee Order also approved by Court on November 7, 2008.

- Preparing monthly fee statements.

n.   File, Docket and Calendar Maintenance (031164.00016):

- Maintaining and distributing numerous calendars and dockets to remind and warn of upcoming deadlines, responsibilities, and hearings.

- Organizing, reviewing and indexing documents and pleadings, as well as other paralegal functions arising from the constant flow of paperwork.

o.   Governmental and Third-Party Investigations (031164.00017): Focusing on requests from governmental and third parties conducting investigations along with overseeing certain ongoing investigations by the Trustee, including:

- Producing nearly 400,000 pages of documents as well as over 142 terabytes of data in electronic form to governmental and third parties (the rough equivalent of 3.2 billion emails of data).

- Responding in due course to a growing number of non-party subpoenas issued in connection with various litigations and arbitrations throughout the United States.

- Conducting confidential investigations related to purported pre-and post-petition actions by third parties.

p.   Insurance (031164.00018):

- Consulting with members of the risk management department at LBI to identify insurance policies that may apply to losses to the estate or LBI's customers (or losses for which the estate may be held responsible).

- Providing insurers with notice under two lines of coverage and information necessary to secure coverage and comply with the policies' terms and conditions.

- Meeting with excess insurance providers.

q.   Intellectual Property (031164.00019):  Reviewing LBI's existing agreements and potential agreements that may be entered into to facilitate the liquidation.

r.   Intercompany Claims and PIK Notes (031164.00020):  In an effort to untangle the complex Lehman corporate structure and bring value to the estate:

- Initiating a valuation of the PIK note provided to the LBI estate at the Barclays closing in exchange for the upstreaming of nearly all LBI subsidiaries to the parent level. Meeting with the Chapter 11 Debtors, Alvarez & Marsal, and the Debtors' investment bankers to understand the methodology likely to be proposed by those entities and underlying facts and assumptions.

- Investigating intercompany relationships and transactions and responding to inquiries and requests from other Lehman entities and their counsel.

- Communicating with Lehman Commercial Paper Inc. ("LCPI") regarding numerous, potential intercompany claims that allegedly emerge from various pre-petition loan agreements wherein securities may have been held by LBI pursuant to agreements by and among LCPI, as administrative agent, and respective borrower entities and other agents and lenders.

s. <u>LBHI Matters (031164.00021)</u>: To effectively monitor and coordinate with the Chapter 11 Debtors:

- Reviewing all pleadings filed in the Chapter 11 Cases (2,698 docket entries through January 31, 2009) and reporting on key developments in the Chapter 11 cases to the Trustee and SIPC.

- Weekly, and on occasion daily, coordination with both the Debtors' counsel and Committee counsel and related Chapter 11 case professionals (including Alvarez & Marsal).

- Meeting and coordinating with the LBHI examiner to avoid duplication of ongoing investigations.

t. <u>LBIE Matters (031164.00022)</u>: To effectively monitor and coordinate with the administration of LBIE:

- Negotiating and executing a letter agreement with the joint administrators of LBIE outlining the procedures necessary to allow for the preparation, filing and reconciliation process related to an omnibus claim filed by LBIE in the LBI proceeding.

- Drafting and proposing to the joint administrators of LBIE a cross-border insolvency protocol.

- Responding to various inquiries relevant to both the SIPA liquidation and the U.K. liquidation proceeding, including ongoing

dialogues with respect to customers who maintained accounts at both LBI and LBIE.

- Meeting regularly, in conjunction with Deloitte professionals, with LBIE's counsel and other professionals (including PricewaterhouseCoopers LLP (UK)).

u. Litigation (Non-Bankruptcy and Adversary Proceedings (31164.00023 and .00024):

- Overseeing the filing in several dozen cases of notices of the commencement of the LBI liquidation and the effect of the automatic stay provisions of 11 U.S.C. § 362 and the LBI Liquidation Order (together, the "Automatic Stay").

- Enforcing the automatic stay with respect to litigation in which LBI is a named party (as of the Filing Date, LBI was a party to over 65 litigations and arbitrations).

- Defending against five adversary proceedings filed in this Court, including successfully negotiating the voluntary dismissal of claims in one action, and moving to dismiss in another action.

- Briefing objections to Rule 2004 requests by the Newport Global entities, the Deferred Compensation Parties, and Bank of New York Mellon and, thereafter, working with Newport Global, Deferred Compensation Parties and the Harbinger Funds and Piper Jaffray in an attempt to informally resolve their individual information requests without incurring additional significant expense to the estate.

- Responding to other threatened litigation.

v. Non-Legal Staff Administration (031164.00025):  Interviewing, negotiating terms with and hiring certain former LBI personnel to assist the Trustee with all facets of the liquidation, and overseeing and coordinating with Deloitte and with "ring-fenced" former LBI employees now employed by Barclays.

w. Other Foreign Proceedings (31164.00026):  After identifying approximately 178 Lehman entities in insolvency-type proceedings in approximately sixteen different jurisdictions worldwide (and, in most cases, determining the date on which each entity entered such proceedings):

- Working to understand Lehman affiliate intercompany balances from an LBI perspective and meeting with representatives from such affiliates to address what information the Trustee would require to recognize intercompany claims – for example, Lehman Brothers Japan ("LBJ"), where initial balances indicate that LBJ will likely be filing a claim in the LBI proceeding.

- Identifying Lehman entities in foreign jurisdictions that are also in insolvency proceedings where the potential for an LBI claim exists. At this time, the Trustee has identified 18 Lehman entities in seven jurisdictions (the U.S., the U.K., France, Germany, Hong Kong, the Netherlands, and Singapore) that, from a general ledger perspective, show an LBI receivable. LBI claim forms have already been filed against one entity in the U.K., one entity in Singapore, and one entity in Germany.

x. <u>Real Estate (31164.00027)</u>: To minimize administrative cost to the estate in connection with the disposition of real property leases held by LBI:

- Negotiating an agreement with LBHI regarding the payment of rent at the leased premises that were occupied by LBHI or Barclays and the transfer of designation rights to such leases to LBHI.

- Consensually resolving several objections and claims involving deposits, letters of credit, subleases, the abandonment of property, and obtaining extensions of the Trustee's time to assume or reject LBI's remaining five leases.

- Drafting motions to reject 13 LBI leases resulting in substantial savings of administrative expenses to the estate.

- Receiving notice of specific real property that may be owned by LBI and investigating the ownership of such assets.

y. <u>Retention and Fee Matters of Other Professionals</u> (31164.00028):

- Drafting Norton Rose LLP as U.K. Counsel to monitor and coordinate with representatives in the U.K. liquidation proceeding.

- Drafting and negotiating engagements between the Trustee and Deloitte, EPIQ and certain tax and other specialists.

z. <u>SEC, Federal Reserve and other Regulatory Matters (31164.00029)</u>:

- Meeting and coordinating regularly with the Securities and Exchange Commission, the Federal Reserve Bank of New York, the Commodities Futures Trading Commission, the Financial Industry Regulatory Authority, and the British Financial Services Authority.

aa. <u>Tax and Employee Benefit Matters (31164.00030)</u>: LBI is included in consolidated federal income tax returns filed by LBHI, as well as consolidated and combined state income tax returns in a number of states. In connection with potential assets and liabilities arising from LBI's tax obligations, both pre-petition and post-petition:

- Maintaining ongoing discussions with LBHI's counsel, who are handling substantial federal refund claims for the years 1997 through 2000 and audits for 2000 through 2007 where the IRS is asserting deficiencies, and monitoring the status of state tax refunds that have been claimed on consolidated and combined returns recently filed by LBHI.

- Evaluating LBI's entitlement to a share of refund claims based on joint filings, and, with respect to independently filed returns, recovering for the benefit of the estate approximately $4 million in refunds owed to LBI or LBI-subsidiaries by various state and foreign tax authorities.

- Coordinating responses to the IRS with outside counsel, now engaged by LBHI, in connection with an ongoing IRS investigation of LBI regarding possible tax shelter promotion penalties that began pre-bankruptcy.

- Coordinating the issuance of approximately 120,000 IRS Form 1099s to LBI's former customers (and filing an extension request with the IRS to accomplish this task).

- Responding to employee and payroll issues, including Voluntary Employees' Beneficiary Association (VEBA) and PBGC issues.

bb. <u>Trustee's Reports to Courts and Creditors (031164.00031)</u>:

- Organizing and conducting the Trustee's Meeting of Customers and Creditors held on December 17, 2008.

- Drafting an application to the Court, approved on January 15, 2009, for omnibus authority to issue subpoenas to investigate and

report on the collapse of Lehman and make recommendations for future SIPA liquidations.

- Formulating a work plan for the Trustee's investigation of Lehman's failure in coordination with the plan proposed by the LBHI examiner and investigations undertaken by LBHI and its Creditors' Committee.

- Collecting and organizing documents related to the investigation.

## ACTUAL AND NECESSARY EXPENSES INCURRED BY HHR

32.     As set forth in Exhibits B and E attached hereto, HHR has incurred $213,820.88 in expenses in providing professional services during the Compensation Period.  Regarding these expenses, HHR charges for both external copying and computer research at the providers' cost without markup.  The basis for these rates is HHR's calculation of the actual cost of these services.  These charges are intended to cover HHR's direct operating costs, which costs are not incorporated into the HHR hourly billing rates.  Only clients who actually use services of the types set forth in Exhibits B and E are separately charged for such services.  This "unbundling" of such expenses results in a fairer allocation of such costs and allows HHR to pass such costs on to each client in proportion to that client's use of such services.  As noted above, HHR has <u>not</u> <u>charged</u> for a number of categories of expenses regularly charged to and paid by HHR's clients including <u>overtime</u> <u>meals</u>, <u>internal copies</u> <u>and</u> <u>after-hours</u> <u>travel</u> <u>services</u>.

33.     HHR charges $50.00 per hour for Word Processing services. Since the beginning of the liquidation, these services have been primarily used to revise heavily edited documents, format documents requiring unique and specialized formatting or scan agreements or exhibits that are time-sensitive in nature.  This work is not saved until the end of the day and then sent to Word Processing after-hours.  In addition, due to

the location of certain regulators, customers, creditors and other parties in interest in relation to HHR's New York offices, frequent long distance telephone calls and conference call services were required. On occasion, overnight delivery of documents and other materials were required as a result of the exigencies and circumstances of the liquidation. The disbursements for such services are not included in HHR's overhead for the purpose of setting billing rates and HHR has made every effort to minimize its disbursements in these cases. The actual expenses incurred in providing professional services were necessary, reasonable and justified under the circumstances to serve the needs of the estate, its customers and creditors.

## HHR'S REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

34.     HHR, including the Trustee, may submit applications to the Court for compensation for services rendered and reimbursement for expenses during the course of the liquidation, which may be done on an interim basis. SIPA §§ 78eee(b)(5)(A)-(B). Whenever an application for compensation and reimbursement of expenses is filed, SIPC shall file its recommendation with respect to such fees and expenses with the Court prior to the hearing on such application. Id. at § 78eee(b)(5)(C). The Court "shall place considerable reliance on the recommendation of SIPC" as to the allowances requested in such applications, and to the extent that such allowances are to be paid by SIPC, without reasonable expectation of recoupment, the court shall award the amounts recommended by SIPC. Id.; see e.g., Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 274 n.21 (1992) (recognizing that "SIPC's recommendation to court on trustee's compensation is entitled to considerable reliance and is, under certain circumstances, binding."); In re Donald Sheldon & Co, Inc. 153 B.R. 661, 668 (Bankr.

S.D.N.Y. 1993) (SIPA requires . . . that "[W]e place considerable reliance on the recommendation of SIPC in ruling on [the Trustee's] application [for fees]").

35.     At this time, the Trustee anticipates that there will be sufficient funds available from the general estate to satisfy administrative expenses of the estate, including professional fees, without seeking to requisition funds from SIPC in order to pay these expenses.  As a result, in determining the allowance of HHR's compensation, while "considerable reliance" shall be placed on SIPC's recommendation, the Court must duly consider the nature, extent and value of the services rendered.  SIPA at § 78eee(b)(5)(C).

36.     HHR submits that its request for interim allowance of compensation is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to section 78eee(b)(5) of SIPA.

37.     In the instant case, HHR respectfully submits that the services for which it seeks compensation in this Application, as highlighted above, at the time rendered, were believed to be necessary for and beneficial to LBI's estate, customers, creditors and other parties-in-interest.  HHR further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to these constituencies.  In sum, the services rendered by HHR were necessary and beneficial and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved.  Accordingly, approval of the compensation sought herein is warranted.

## <u>CONCLUSION</u>

HHR respectfully submits that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter Orders as follows: (i) allowing and awarding $14,261,785.26 as an interim payment for professional services rendered by HHR during the Compensation Period and $213,820.88 as interim reimbursement of the actual and necessary costs and expenses incurred by HHR in connection with the rendition of such services; and (ii) granting HHR such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
        February 17, 2009

HUGHES HUBBARD & REED LLP

By: /s/ James B. Kobak, Jr.
        James B. Kobak, Jr.
        Christopher K. Kiplok
        Jeffrey S. Margolin
    One Battery Park Plaza
    New York, New York 10004
    Telephone:  (212) 837-6000
    Facsimile:  (212) 422-4726
    Email:  kobak@hugheshubbard.com

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of
Lehman Brothers Inc.