James B. Kobak, Jr.
Christopher K. Kiplok
Jeffrey S. Margolin
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>     LEHMAN BROTHERS INC.,<br><br>                    Debtor. | Case No. 08-01420 (JMP) SIPA |

**SUMMARY SHEET**[1]

| | |
|---|---|
| **Name and Role of Applicant:** | Hughes Hubbard & Reed LLP<br>Counsel to the Trustee |
| **Compensation Period:** | February 1, 2009 through May 31, 2009 |
| **Fees Incurred for Counsel:** | $15,211,140.98 |
| **Expenses Requested for Counsel:** | $132,764.74 |
| **Blended Hourly Rate for Fees Incurred during Compensation Period:** | $461.03 |
| **Prior Fees and Expenses Approved for Counsel on Interim Basis:** | $12,330,615.02 |
| **Prior Fees Incurred by Counsel Held-Back Subject to Approval:** | $2,138,278.17 |

---

1.    Fees reflect a voluntary 10% discount from Hughes Hubbard & Reed LLP's standard rates at the request of the Securities Investor Protection Corporation ("SIPC"). The Trustee seeks compensation as a member of Hughes Hubbard & Reed LLP and will not seek separate trustee commissions pursuant to section 326 of the Bankruptcy Code.

Hours, Rate, and Fees for Services Rendered from February 1, 2009 through May 31, 2009[2]

**Trustee**

| Name | Department | Law School Graduation | Hours | Rate | Fees |
|---|---|---|---|---|---|
| J W Giddens | Bankruptcy | 1966 | 608.40 | $832.50 | $506,493.00 |

**Partner**

| Name | Department | Law School Graduation | Hours | Rate | Fees |
|---|---|---|---|---|---|
| R Abramson | Intellectual Property | 1976 | 8.70 | $450.00 | $3,915.00 |
| B Hamza Bassey | Litigation | 1998 | 5.70 | $630.00 | $3,591.00 |
| J H Bluck | Corporate | 1982 | 43.90 | $787.50 | $34,571.25 |
| A H Braiterman | Tax | 1980 | 87.50 | $832.50 | $72,843.75 |
| S Loomis Cave | Litigation | 1997 | 535.20 | $630.00 | $337,176.00 |
| J R Coleman | Litigation | 1985 | 272.60 | $675.00 | $184,005.00 |
| E S Friedenberg | Corporate | 1981 | 617.70 | $787.50 | $486,438.75 |
| N Graff | Lit/Bankr. | 1992 | 74.50 | $630.00 | $46,935.00 |
| F Goudie | Corporate | 1997 | 65.40 | $585.00 | $38,259.00 |
| S J Greene | Corporate | 1987 | 200.70 | $720.00 | $144,504.00 |
| S L Harrison | Employment | 1975 | 54.40 | $832.50 | $45,288.00 |
| J K Hoyns | Corporate | 1979 | 116.50 | $832.50 | $96,986.25 |
| D S Klein | Litigation | 1981 | 9.40 | $697.50 | $6,556.50 |
| J B Kobak | Litigation | 1969 | 658.50 | $787.50 | $518,568.75 |
| K E Lee | Litigation | 1992 | 619.90 | $675.00 | $418,432.50 |
| C B Levine | Corporate | 1983 | 696.40 | $675.00 | $470,070.00 |
| D Lubell | Bankruptcy | 1987 | 625.50 | $675.00 | $422,212.50 |
| S Luger | Corporate | 1980 | 236.70 | $810.00 | $191,727.00 |
| W R Maguire | Litigation | 1985 | 63.20 | $765.00 | $48,348.00 |
| TVH Mayer | Litigation | 1977 | 21.50 | $810.00 | $17,415.00 |
| S D Rothman | Litigation | 1990 | 277.90 | $675.00 | $187,582.50 |
| C Samuelson | Corporate | 1996 | 2.50 | $652.50 | $1,631.25 |
| S Sultanik | Real Estate | 1978 | 215.60 | $720.00 | $155,232.00 |
| G A Tsougarakis | Litigation | 1986 | 167.90 | $720.00 | $120,888.00 |
| D W Wiltenburg | Bankruptcy | 1974 | 416.70 | $765.00 | $318,775.50 |
| M A Weinstein | Litigation | 1993 | 70.80 | $630.00 | $44,604.00 |
| J F Wood | Litigation | 1996 | 72.40 | $630.00 | $45,612.00 |

2.    Neither the hourly rates in these charts nor the Fees for any individual reflect a voluntary fee reduction of $39,553.43, at the request of SIPC for the Compensation Period which was deducted from the aggregate Total Fees.  Overall, during the Compensation Period, HHR voluntarily reduced its fees by $132,492.22.

## Counsel

| Name | Department | Law School Graduation | Hours | Rate | Fees |
|------|-----------|----------------------|-------|------|------|
| H Berenson | Litigation | 1997 | 53.50 | $562.50 | $30,093.75 |
| A Chowhan | Litigation | 1997 | 145.00 | $612.00 | $88,740.00 |
| J Greilsheimer | Litigation | 1997 | 79.30 | $612.00 | $48,531.60 |
| J Habinskey | Labor | 1996 | 0.40 | $612.00 | $244.80 |
| W M Josel | Corporate | 1992 | 113.80 | $562.50 | $64,012.50 |
| R Lipman | Litigation | 1984 | 139.20 | $562.50 | $78,300.00 |
| S P McSloy | Corporate | 1988 | 502.60 | $589.50 | $296,282.70 |
| J J Pastore | Corporate | 1984 | 9.60 | $612.00 | $5,875.20 |
| Y Saito | Litigation | 1992 | 9.10 | $612.00 | $5,569.20 |

## Associates

| Name | Department | Law School Graduation | Hours | Rate | Fees |
|------|-----------|----------------------|-------|------|------|
| M A Alvarez | Corporate | 2008 | 431.70 | $319.50 | $137,928.15 |
| T Andriotis | Litigation | 2004 | 516.30 | $477.00 | $246,275.10 |
| M N Bellomo | Real Estate | 2006 | 128.30 | $423.00 | $54,270.90 |
| J Benton | Litigation | 2000 | 9.50 | $544.50 | $5,172.75 |
| J Bermudez | Corporate | 2008 | 568.80 | $319.50 | $181,731.60 |
| E Blumenfeld | Litigation | 1999 | 2.00 | $567.00 | $1,134.00 |
| A Bogdan | Labor | 2006 | 4.60 | $423.00 | $1,945.80 |
| Y Bowden | Litigation | 2007 | 375.60 | $378.00 | $141,976.80 |
| S Carroll | Corporate | 2005 | 17.50 | $450.00 | $7,875.00 |
| R Chamie | Litigation | 2006 | 702.60 | $423.00 | $297,199.80 |
| S Choi | Litigation | 2007 | 246.00 | $378.00 | $92,988.00 |
| B M Collings | Litigation | 2008 | 68.10 | $319.50 | $21,757.95 |
| A Danner | Corporate | 2007 | 342.40 | $378.00 | $129,427.20 |
| M Darden | Litigation | 2008 | 547.90 | $319.50 | $175,054.05 |
| J Director | Corporate | 2008 | 66.80 | $319.50 | $21,342.60 |
| G Douvas | Corporate | 1999 | 427.50 | $567.00 | $242,392.50 |
| G Farrell | Litigation | 2008 | 591.80 | $319.50 | $189,080.10 |
| K Fones | Litigation | 2005 | 29.10 | $450.00 | $13,095.00 |
| A B Frelinghuysen | Bankruptcy | 2007 | 858.80 | $378.00 | $324,626.40 |
| A L Frisbee | Litigation | 2008 | 1.00 | $319.50 | $319.50 |
| D Frost | Litigation | 2008 | 12.60 | $319.50 | $4,025.70 |
| J Gallagher | Litigation | 2005 | 57.30 | $450.00 | $25,785.00 |
| G Glemann | Bankruptcy | 2006 | 344.80 | $423.00 | $145,850.40 |
| J Goodman | Litigation | 2004 | 237.90 | $477.00 | $113,478.30 |
| M C Gragg | Litigation | 2006 | 729.10 | $423.00 | $308,409.30 |
| I Greber-Raines | Litigation | 2007 | 243.40 | $378.00 | $92,005.20 |
| C J Hail | Litigation | 2007 | 27.90 | $378.00 | $10,546.20 |

| Name | Department | Law School Graduation | Hours | Rate | Fees |
|---|---|---|---|---|---|
| A Hassan | Litigation | 2007 | 221.50 | $378.00 | $83,727.00 |
| W Hennessey | Litigation | 2004 | 133.60 | $477.00 | $63,727.20 |
| M Hickey | Litigation | 2002 | 119.00 | $319.50 | $38,020.50 |
| J E Hwang | Litigation | 2007 | 889.20 | $378.00 | $336,117.60 |
| U Idachaba | Corporate | 2006 | 475.50 | $423.00 | $201,136.50 |
| U A Ike | Corporate | 2006 | 308.40 | $423.00 | $130,453.20 |
| J Jenkelowitz | Corporate | 2005 | 79.30 | $423.00 | $33,543.90 |
| K C Kettle | Litigation | 2007 | 447.60 | $378.00 | $169,192.80 |
| S Khemani | Litigation | 2005 | 305.00 | $450.00 | $137,250.00 |
| C Kiplok | Bankruptcy | 2000 | 807.20 | $544.50 | $439,520.40 |
| K M Lane | Litigation | 2004 | 361.50 | $319.50 | $115,499.25 |
| C Lo | Corporate | 2007 | 175.60 | $378.00 | $66,376.80 |
| J LoPiccolo | Litigation | 2003 | 657.10 | $504.00 | $331,178.40 |
| J Margolin | Bankruptcy | 2002 | 816.90 | $517.50 | $422,745.75 |
| D McCallen | Litigation | 2005 | 4.50 | $319.50 | $1,437.75 |
| S McCoubrey | Litigation | 2007 | 168.50 | $378.00 | $63,693.00 |
| B E McEvoy | Corporate | 2006 | 132.70 | $423.00 | $56,132.10 |
| N Milburn | Bankruptcy | 2008 | 9.60 | $319.50 | $3,067.20 |
| C W Mills | Litigation | 2005 | 172.70 | $450.00 | $77,715.00 |
| G Mullaj | Corporate | 2008 | 303.20 | $319.50 | $96,872.40 |
| C M O'Leary | Litigation | 2007 | 60.20 | $319.50 | $19,233.90 |
| N Oxford | Litigation | 1999 | 207.10 | $567.00 | $117,425.70 |
| J E Pace | Litigation | 2007 | 360.20 | $378.00 | $136,155.60 |
| R C Paolino | Litigation | 2008 | 243.70 | $319.50 | $77,862.15 |
| C Parris | Corporate | 2008 | 425.70 | $319.50 | $136,011.15 |
| J N Poulos | Litigation | 2001 | 700.00 | $531.00 | $371,700.00 |
| C Pozo | Corporate | 2004 | 2.50 | $477.00 | $1,192.50 |
| G Reddy | Litigation | 2008 | 139.70 | $319.50 | $44,634.15 |
| N Reed | Litigation | 2000 | 425.70 | $544.50 | $231,793.65 |
| H R Resnick | Corporate | 2004 | 228.00 | $477.00 | $108,756.00 |
| D Rowe | Tax | 1999 | 92.00 | $567.00 | $52,164.00 |
| M Sahouri | Corporate | 2008 | 169.70 | $319.50 | $54,219.15 |
| J Sczesnik | Litigation | 2008 | 530.60 | $319.50 | $169,526.70 |
| D Smith | Bankruptcy | 2008 | 282.20 | $319.50 | $90,162.90 |
| A Spjute | Litigation | 2003 | 3.70 | $504.00 | $1,864.80 |
| M M Stead | Tax | 2006 | 267.60 | $423.00 | $113,194.80 |
| F Tabatabai | Litigation | 2006 | 307.60 | $423.00 | $130,114.80 |
| K A Taylor | Corporate | 1997 | 127.90 | $585.00 | $74,821.50 |
| M Termini | Litigation | 2005 | 456.80 | $450.00 | $205,560.00 |
| S L Terrill | Employment | 1997 | 293.40 | $612.00 | $179,560.80 |
| L Townsend | Real Estate | 2001 | 252.10 | $531.00 | $133,865.10 |
| J S Trager | Litigation | 2001 | 99.80 | $378.00 | $37,724.40 |
| J Turk | Litigation | 2002 | 493.80 | $517.50 | $255,541.50 |
| Y Windham | Corporate | 2008 | 529.20 | $319.50 | $169,079.40 |

## Paralegals

| Name | Hours | Rate | Fees |
|---|---|---|---|
| M R Bronen | 538.40 | $207.00 | $111,448.80 |
| S Dalrymple | 96.40 | $225.00 | $21,690.00 |
| M C Disare | 741.10 | $207.00 | $153,407.70 |
| K Donnoe | 84.20 | $207.00 | $17,429.40 |
| M Ehlenbach | 42.50 | $207.00 | $8,797.50 |
| N Garton | 165.50 | $207.00 | $34,258.50 |
| A Geyer | 523.80 | $207.00 | $108,426.60 |
| S E Koerber | 604.10 | $207.00 | $125,048.70 |
| N Major | 263.50 | $207.00 | $54,544.50 |
| M M Mascetti | 3.20 | $216.00 | $691.20 |
| N Mohebbi | 144.60 | $216.00 | $31,233.60 |
| N Nartowitz | 1.40 | $216.00 | $302.40 |
| J R Ousley | 0.50 | $207.00 | $103.50 |
| C Safdari | 7.50 | $207.00 | $1,552.50 |
| E L Sharpe | 531.00 | $207.00 | $109,917.00 |
| K E Perez | 2.50 | $207.00 | $517.50 |
| M R Voizard | 13.90 | $207.00 | $2,877.30 |
| P Volkmar | 24.90 | $207.00 | $5,154.30 |
| S Wukoson | 12.20 | $207.00 | $2,525.40 |

## Litigation Support

| Name | Hours | Rate | Fees |
|---|---|---|---|
| M Carrington | 81.40 | $202.50 | $16,483.50 |
| H Coley | 43.10 | $328.50 | $14,158.35 |
| A L Dyke | 5.50 | $202.50 | $1,113.75 |
| F Joseph | 71.20 | $261.00 | $18,583.20 |
| T Lin | 24.70 | $225.00 | $5,557.50 |
| B J Milesi | 170.50 | $283.50 | $48,336.75 |
| T Shah | 20.40 | $202.50 | $4,131.00 |

| | | | |
|---|---|---|---|
| **Total Hours:** | **32,993.70** | | |
| **Fees Requested:** | | | **$15,211,140.98** |

James B. Kobak, Jr.
Christopher K. Kiplok
Jeffrey S. Margolin
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>      LEHMAN BROTHERS INC.,<br><br>                          Debtor. | Case No. 08-01420 (JMP) SIPA |

**SECOND APPLICATION OF HUGHES HUBBARD & REED LLP FOR ALLOWANCE OF
INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT
OF ACTUAL AND NECESSARY EXPENSES INCURRED
<u>FROM FEBRUARY 1, 2009 THROUGH MAY 31, 2009</u>**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

            Hughes Hubbard & Reed LLP ("HHR"), as counsel to James W. Giddens (the

"Trustee") [1] as Trustee for the liquidation of Lehman Brothers Inc. ("Debtor" or "LBI"), for its

second application (the "Application") for an order pursuant to section 78eee(b)(5) of the

---

1.     The Trustee seeks compensation as a member of HHR and will not seek separate trustee commissions
        pursuant to section 326 of the Bankruptcy Code.

Securities Investor Protection Act ("SIPA"), 15 U.S.C.§ 78eee(b)(5),[2] sections 330 and 331 of the Bankruptcy Code, Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), allowing and awarding interim compensation for services performed by HHR for the period commencing February 1, 2009 through and including May 31, 2009 (the "Compensation Period") and reimbursement of HHR's actual and necessary expenses incurred during the Compensation Period, respectfully represents:

## PRELIMINARY STATEMENT

1.  During the Compensation Period, the Trustee and his counsel continued to work diligently to protect customers of this failed broker dealer, in accordance with SIPA, under the supervision of this Court and in consultation with SIPC and numerous regulatory agencies. At each step of the way, the Trustee's first and foremost goal has been to promptly address questions and concerns of customers, creditors and other interested constituencies.

2.  In initiating the largest customer claims process since SIPA's enactment in 1970, the Trustee and HHR did not wait until passage of the June 1, 2009 bar date to begin the reconciliation process. Throughout the Compensation Period, the Trustee provided regular updates on the claims process through reports by counsel to the Court at omnibus hearings and statements on his websites (www.lehmantrustee.com). The Trustee implemented a program whereby a telephone call-out center staffed by HHR attorneys contacted over 2,500 claimants and their representatives to provide substantive status updates, address questions or concerns, and notify claimants of any missing information or other deficiencies in claim forms. This program supplemented the Trustee's and HHR's responses to several hundred phone calls,

---

2.  References hereinafter to provisions of SIPA shall omit "15 U.S.C."

emails and letters, at times *per day*, from customers and other interested parties regarding the status of the claims process and other LBI matters.

3.      The Trustee and counsel also continued liquidating remaining LBI assets as promptly as possible, resulting in significant value to the estate, while vigorously defending the estate with respect to a number of general litigation matters and adversary proceedings.  In accordance with SIPA § 78fff-1(d), the Trustee, through HHR and his financial professionals, initiated an investigation concerning the acts, conduct, property, liabilities, and financial condition of LBI so that lessons may hopefully be learned from its failure.  The Trustee's First Interim Report focused on the broad spectrum of these activities, challenges and accomplishments during the Compensation Period.

4.      The LBI case is extremely complex and involves many novel issues under SIPA, the Bankruptcy Code, and other relevant law.  The Trustee's ability to call on resources of HHR in such areas as corporate, real estate, employment, tax, banking, litigation and (others) has ensured that the Trustee has conducted the liquidation efficiently, and in a manner beneficial to the customers, creditors, and other stakeholders of LBI.   The following discussion and the materials attached to this Application cover the major categories of services for which allowance of compensation is sought.

## BACKGROUND

5.      Commencing on September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. ("LBHI") and certain of its subsidiaries (collectively, the "Chapter 11 Debtors") commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases have been consolidated for procedural purposes only

and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

6. On September 19, 2008 (the "Filing Date"), the Honorable Gerard E. Lynch, Judge of the United States District Court for the Southern District of New York, entered the Order Commencing Liquidation (the "LBI Liquidation Order") pursuant to the provisions of SIPA in the case captioned Securities Investor Protection Corporation v. Lehman Brothers Inc., Case No. 08-CIV-8119 (GEL).

7. The LBI Liquidation Order: (i) appointed the Trustee for the liquidation of the business of the Debtor pursuant to section 78eee(b)(3) of SIPA; (ii) appointed HHR counsel to the Trustee pursuant to section 78eee(b)(3) of SIPA; and (iii) removed this case to this Court pursuant to section 78eee(b)(4) of SIPA.

8. On November 7, 2008, the Court entered the Order Regarding Disinterestedness of the Trustee and Counsel to the Trustee (Docket No. 243) finding that the Trustee and HHR are disinterested pursuant to provisions section 78eee(b)(6) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a) and are therefore in compliance with the disinterestedness requirement in section 78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014(a).

9. On April 8, 2009, the Court entered an Order (Docket No. 953) approving HHR's First Interim Application for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred from September 13, 2008 through January 31, 2009 and awarding HHR an interim allowance of $12,116,908.74 for professional services rendered and $213,706.28 as reimbursement for actual and necessary

expenses HHR incurred during that period. An additional $2,138,278.17 in fees incurred by

HHR during that period have been held-back and remain subject to approval by the Court.

## COMPENSATION REQUESTED

10. This Application has been prepared in accordance with the Amended

Guidelines for Fees and Disbursements of Professionals in Southern District of New York

Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines") and the

Amended Order Pursuant to Section 78eee(b)(5) of SIPA, Sections 105, 330 and 331 of the

Bankruptcy Code, Bankruptcy Rule 2016(a) and Local Bankruptcy Rule 2016-1 Establishing

Procedures Governing Interim Monthly Compensation of Trustee and Hughes Hubbard & Reed

LLP (Docket No. 919) (the "Amended Administrative Fee Order," together with the Local

Guidelines, the "Guidelines"). Pursuant to the Local Guidelines, the certification of James B.

Kobak, Jr., Esq. regarding compliance with the same is attached hereto as Exhibit A.

11. The Trustee expended 608.40 hours in the rendition of professional

services and HHR expended 32,385.30 hours in the rendition of professional and

paraprofessional services on behalf of the Trustee during the Compensation Period, resulting in a

blended hourly rate of $461.03 for fees incurred.

12. Prior to filing this Application, HHR provided SIPC,[3] in accordance with

the Amended Administrative Fee Order, monthly fee statements setting forth HHR's fees for

services rendered and expenses incurred beginning February 1, 2009 through May 31, 2009. In

connection with the four monthly statements and this Application, HHR has voluntarily adjusted

---

3. The United States Trustee does not play a role in a SIPA proceeding as to professional compensation matters or otherwise. See, e.g., Bankruptcy Rule 2002(k). Such function is generally mirrored by SIPC's role in the proceeding.

its fees by $132,492.22 and written off expenses in the amount of $93,955.30 customarily charged to other clients.

13. In addition, at SIPC's request, HHR's fees in this case reflect a 10% public interest discount from HHR's standard rates. This discount has resulted in an additional voluntary reduction during the Compensation Period of $1,525,069.45. Such fees are reasonable based on the customary compensation charged by comparably skilled practioners in the Chapter 11 Cases and comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

14. Pursuant to the Amended Administrative Fee Order, HHR timely filed its statement of fees and expenses incurred in connection with this case from the period February 1, 2009 through February 28, 2009 (the "February 2009 Fee Statement") reflecting fees of $2,802,112.06 and expenses of $26,396.35. As no objections were made to the February 2009 Fee Statement, HHR received a payment in the amount of $2,408,191.60, including $2,381,795.25 for services rendered after subtracting the Court-ordered 15% holdback and $26,396.35 for expenses incurred during February 2009.

15. Pursuant to the Amended Administrative Fee Order, HHR timely filed its statement of fees and expenses incurred in connection with this case from the period March 1, 2009 through March 31, 2009 (the "March 2009 Fee Statement") reflecting fees of $3,323,145.20 and expenses of $20,707.41. As no objections were made to the March 2009 Fee Statement, HHR received a payment in the amount of $2,845,375.83, including $2,824,673.42 for services rendered after subtracting the Court-ordered 15% holdback and $20,702.41 for expenses incurred during March 2009.

16.     Pursuant to the Amended Administrative Fee Order, HHR timely filed its statement of fees and expenses incurred in connection with this case from the period April 1, 2009 through April 30, 2009 (the "April 2009 Fee Statement") reflecting fees of $4,319,327.57 and expenses of $34,918.96.  As no objections were made to the April 2009 Fee Statement, HHR received a payment in the amount of $3,706,347.39, including $3,671,428.43 for services rendered after subtracting the Court-ordered 15% holdback and $34,918.96 for expenses incurred during April 2009.

17.     Pursuant to the Amended Administrative Fee Order, HHR timely filed its statement of fees and expenses incurred in connection with this case from the period May 1, 2009 through May 31, 2009 (the "May 2009 Fee Statement") reflecting fees of $4,766,556.15 and expenses of $50,747.02.  As of the filing of this Application, HHR has not received any payment for services and expenses incurred during May 2009.

18.     Exhibit B annexed hereto provides a schedule of the expenses for which reimbursement is requested.  The requested expenses are customarily charged to and paid by HHR's bankruptcy and non-bankruptcy clients.  No first class or other luxury travel, meals or accommodations have been charged herein.  In addition, HHR has not charged for a number of categories of expenses regularly charged to and paid by HHR's clients including overtime meals, internal copies and after-hours travel services.  These amounts combine to a voluntary reduction of $93,955.30.

19.     Exhibit C annexed hereto is a summary by project categories of services performed by HHR.[4]

20.     Exhibit D annexed hereto is HHR's detailed monthly time records, subject to redaction for the attorney-client privilege where necessary, reflecting the time spent by HHR in connection with the liquidation.

20.     Exhibit E annexed hereto is a detailed listing of all expenses incurred by HHR in connection with the liquidation.

21.     There is no agreement or understanding between the Trustee, HHR and any other person, other than members of HHR, for sharing of compensation to be received for services rendered in this case.

22.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not classified or processed prior to the preparation of this Application, HHR reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## SUMMARY OF SERVICES

23.     A SIPA proceeding contemplates liquidation of the business of the broker-dealer, with special provisions regarding "customer" assets.  Accordingly, the Trustee's and HHR's services (highlighted here and summarized in greater detail below) have encompassed all

---

4.      Beginning for services rendered on April 1, 2009, HHR implemented eleven (11) additional matter numbers, which, in addition to the thirty-one (31) matter numbers that existed previously, established forty-two (42) separate matter numbers for project categories to permit a more detailed analysis of the fees incurred.  HHR did not incur fees during the Compensation Period for several of the established matter numbers.  Given the multitude of attorneys involved and the number of task codes, overlaps and inconsistencies are inevitable despite HHR's best efforts to ensure that work on a specific topic is billed to a single task code.

of the critical, initial aspects of the liquidation of the international enterprise that was LBI, with a particular emphasis on the protection and return of customer accounts wherever possible.

24.     As claims were filed manually and electronically, during the Compensation Period, HHR created dedicated teams to investigate and determine, in coordination with SIPC and the Trustee's financial advisors, over 12,000 customer claims involving over 85,000 accounts, and over 8,000 general creditor claims filed prior to the June 1, 2009 bar date.  HHR also developed teams to begin reconciling omnibus claims filed by the Chapter 11 Debtors, Lehman Brothers International (Europe) ("LBIE") and Barclays Capital Inc. ("Barclays") cognizant that determinations of these claims are critical to stakeholders in the Chapter 11 Cases and the LBIE administration and to former LBI customers now at Barclays.

25.     As noted above, at each step of the way, the Trustee and HHR sought to keep customers and creditors informed about the process and to timely address concerns.  As a result, while certain matters have engendered controversy and litigation resulting from Lehman's collapse, to date, nearly every customer and creditor has submitted to this orderly process thereby avoiding unnecessary expenditure of estate and judicial resources.

26.     While the transfers of LBI's "Private Investment Management (PIM)" customer accounts to Barclays and "Private Asset Management (PAM)" customer accounts to Neuberger Berman occurred shortly after the commencement of the case, during the Compensation Period, the Trustee and HHR continued to research and coordinate residual PIM and PAM international and domestic securities transfers to Barclays and Neuberger Berman respectively.

27.     A by-product of the bulk transfers of the PIM and PAM accounts is the numerous requests to the Trustee for the return of funds alleged to have been sent in error to LBI

bank accounts, including in some cases wires intended for the benefit of parties that were previously LBI customers but whose accounts were transferred after the Commencement Date. During the Compensation Period, the Trustee obtained Court approval (see Docket No. 1017) for implementing procedures for the process of investigating and returning misdirected funds. Throughout the Compensation Period, HHR assisted the Trustee in this project, investigating the misdirected funds claims and preparing stipulations for court authorization for return of the funds (where appropriate), that has resulted in the Trustee returning approximately 400 misdirected fund transfers, aggregating approximately $478.4 million.

        28.    Another by-product of the Barclays' asset sale was that Barclays acquired and/or took possession of certain LBI books and records and LBI electronic information systems and became the employer of LBI personnel with knowledge of the nature and extent, the location, and the means of gaining access to underlying information relating to the business of LBI. As a result, the Trustee was left with indirect and imperfect access to critical information and an overall continuing need to rely on Barclays and its employees for access to such information. During the Compensation Period, the Trustee and HHR, along with the Trustee's financial advisors, attempted to address this informational gap by entering into a systems access agreement with Barclays, approved by the Bankruptcy Court on April 22, 2009 (see Docket No. 1018), that acknowledges the Trustee's right to LBI Data (as defined in the agreement), which, consistent with the LBI Liquidation Order, is required by the Trustee to effect the liquidation of LBI, and perform his duties under SIPA and the Bankruptcy Code. As this agreement does not fully address the Trustee's informational requirements, HHR, on behalf of the Trustee, has continued discussions with Barclays regarding a definitive Transition Services Agreement ("TSA"). In addition, HHR has engaged in negotiations with the Chapter 11 Debtors regarding a

separate potential TSA that would afford the Trustee, among other things, access to LBI information currently maintained by the Chapter 11 Debtors.

29.     Beyond SIPA's customer protection mandate, the general administration of this liquidation has also involved efforts unprecedented in a broker-dealer liquidation.  In that connection, the Trustee and HHR have devoted substantial time to coordinating and monitoring the Chapter 11 Cases, the LBIE administration and many other Lehman Brothers-related insolvency proceedings around the globe.  Moreover, the Trustee and HHR have conducted meetings regularly with the principals in these insolvency proceedings in order to, among other things, exchange information, provide guidance on the status of proceedings and foster open lines of communication as the next phases of these insolvency proceedings begin.

30.     The Trustee, with the assistance of HHR, has also begun the task of reconstructing the collapse of LBI through numerous informal interviews and document requests to third-parties and review of voluminous internal LBI email and other correspondence and memoranda created prior to the Filing Date.  As this investigation continues, HHR has also staffed dedicated teams for certain matters arising from or relating to the asset sale to Barclays, the transfer of nearly all of LBI's 271 direct and indirect subsidiaries prior to the Trustee's appointment, and the liquidation of LBI collateral prior to the Filing Date.

31.     The Trustee and HHR have also been cognizant that their efforts, as with efforts of professionals in other SIPA proceedings, bear on the public interest.  In that connection, the Trustee, along with HHR, regularly met and coordinated their efforts with the Securities and Exchange Commission, the Federal Reserve Bank of New York, the Commodities Futures Trading Commission, the Financial Industry Regulatory Authority, and the British

Financial Services Authority.  Most importantly, the Trustee and HHR have consulted and worked intimately with SIPC in all aspects of the liquidation.

## DETAILED DESCRIPTION OF SERVICES

32.     The following is a more detailed overview of certain of the significant services rendered by HHR, including the Trustee, during the Compensation Period, organized in accordance with HHR's internal system of project or work codes.

a.  Asset Analysis (031164.00002):  Identifying assets, determining asset valuation, and soliciting bids from interested third parties for the sale of such assets, including soliciting bids for certain residual commodities and collectibles maintained by the estate.

b.  Asset Disposition (General) (031164.00003):  Identifying and assessing LBI investments for potential asset disposition, including:

- Liquidating securities related to LBI's membership on the NYSE, in accordance with SIPA, generating a recovery of nearly $13 million.

- Conducting preparatory due diligence for potential sales of LBI private equity investments.

- Coordinating with certain governmental entities regarding unclaimed property held by such entities on behalf of LBI.

c.  Automatic Stay (Relief Actions) (031164.00004):  Evaluating and responding to numerous requests seeking relief from the automatic stay, including drafting the Trustee's Objection to Motion of Markit Group Limited for Relief from Automatic Stay to Terminate Data Services Agreement and Associated Addenda.

d.  Banking and Cash Management (031164.00005):  Coordinating the marshalling and management of LBI and client assets for the benefit of the estate and its customers and creditors by:

- Identifying, investigating and processing the return of misdirected wires erroneously deposited in LBI accounts (including obtaining court approval of procedures for misdirected wires discussed above), resulting, to date, in the successful return of 400 misdirected wires totaling approximately $478.4 million.

- Cooperating with Alvarez & Marsal in allowing LBHI to flow payroll and accounts payable through certain LBI bank accounts provided that LBHI first deposits new funds into the accounts before any such payments are made.

- Investigating, negotiating and engaging in discussion with holders of LBI collateral, including clearing banks and depositories and exchanges, with a view to reducing excess proceeds as determined by the Trustee and his financial advisors at Deloitte & Touche LLP ("Deloitte") to possession and negotiating required confidentiality agreements.

- Investigating and analyzing whether certain financial institutions' setoffs against funds held in LBI accounts were permissible under the "safe-harbor" provisions of the Bankruptcy Code.

e. <u>Barclays' Asset Sale (031164.00006)</u>:  Carrying out LBI's role in the sale of substantial assets, including:

- Coordinating terms and means of access to LBI's books and records and negotiating a potential Transition Services Agreement and an access agreement with Barclays.

- Negotiating a Systems Access Agreement with Barclays and subsequently drafting the Trustee's Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Approving a Systems Access Agreement with Barclays Capital Inc. approved by the Court on April 22, 2009.

f. <u>Brokerage Account Issues and Account Transfers (031164.00007)</u>:  With respect to the transfer of prime brokerage accounts ("PBAs"):

- Processing claims related to PBAs at LBI and tracking account transfers under the prime brokerage protocol of October 14, 2008.

- Analyzing potential negative exposure to other Lehman entities with respect to PBAs that were not transferred and collaborating with other Lehman entities worldwide for a solution to exposure issues.

- Reconciling PBAs to determine whether PBA claimants have net equity claims to customer property.

- Analyzing and assessing treatment of financial products in PBAs.

g. <u>Business Operations/Strategic Planning (031164.00008)</u>:  Expeditiously obtaining control over business operations, including:

- Working with administrative staff and Deloitte to streamline the management and liquidation of LBI's remaining assets through the establishment and maintenance of a Trustee's office and hiring additional personnel.

- Coordinating with Deloitte in developing work streams to effectively manage the liquidation, and coordinating activities with numerous other parties, including Alvarez & Marsal, Barclays and its counsel, LBIE and its counsel, and informal meetings and discussions with the Creditors' Committee in the Chapter 11 cases.

- Resolving outstanding issues related to regulatory and employment matters arising from the operation and winding down of LBI-operated branch offices, including those located in Mexico, England and China.

- Monitoring budget and related administrative matters for the estate.

h.  Case Administration (031164.00009):

- Preparing for and participating in LBI omnibus hearings on February 11, 2009, February 25, 2009, March 11, 2009, March 25, 2009, April 7, 2009, April 23, 2009, and May 13, 2009.

- Ensuring effective use of all attorneys' time and avoidance of duplicative efforts – given the size of this proceeding and the number of projects involved herein – by conducting numerous internal team meetings and discussions.

- Maintaining and updating a free-access website (www.lehmantrustee.com) to provide public access to all case filings and additional case information, posting notices or information on that and other websites and setting up and staffing dedicated phone lines for inquiries.

i.  Claims Administration (SIPC and General Creditor) (031164.00010 and .000011):  To carry out an orderly and efficient claims process:

- Maintaining an electronic claims filing system, the first of its kind in a SIPA liquidation.

- Negotiating and developing omnibus claim filing protocols for large institutions including, *inter alia*, LBIE, Barclays, PIMCO and Bank of New York Mellon.

- Establishing and implementing protocols for review and determination of over 12,000 customer claims, as well as omnibus claims for Barclays (based on more than 72,000 accounts) and LBIE (based on another 1,100

accounts), and over 8,000 general creditor claims, all received prior to the June 1, 2009 bar date.

- Implementing a telephone call-out center and contacting over 2,500 claimants and their representatives to provide status updates, address questions or concerns, and notify claimants of any missing information or other deficiencies in claim forms.

- Drafting Trustee's opposition to Teva Pharmaceutical Works Company's and Teva Hungary Pharmaceutical Marketing Private Limited Company's for entry motion for entry of an a) authorizing future dividend payments be made to a non-LBI account, or, in the alternative, (b) modifying the automatic stay. The Court subsequently denied Teva's motion at a hearing on June 3, 2009.

j. Customer Inquiries and Research (031164.00012):

- Organizing attorney call center teams and correspondence tracking systems.

- Responding promptly to numerous telephone calls, sometimes in the hundreds per day, and letters received from customers, creditors and other parties in interest concerning the commencement of the liquidation, the consequence of filing customer and general creditor claims against the estate, the rights of customers under SIPA and creditors under the Bankruptcy Code, and related issues.

k. Derivatives, Repos and F/X Issues (031164.00013): With respect to issues arising from the closeout of derivative, repurchase, and foreign exchange transactions:

- Developing and maintaining a systematic approach to capture the value of foreign exchange derivatives transactions, repurchase and reverse repurchase transactions, stock lending transactions and TBAs ("to be announced" trades on mortgage-related securities) which has resulted in the recovery of approximately $245 million.

- Assembling the relevant documents to approach counterparties where closeout amounts are owed to LBI in accordance with market practice.

- Working with counterparties and their counsel who have come forward to settle the closeout value of transactions on a consensual basis.

- Evaluating the entire financial products portfolio and taking necessary steps to secure values due to the LBI estate, including through the making

of demands and pursuit of legal action as necessary to assist in recovery efforts.

l.  Executory Contracts (031164.00014):  In connection with issues related to executory contracts to which LBI is a party:

   - Drafting the Trustee's Motion to extend the deadline to assume or reject executory contracts and certain unexpired leases, pursuant to section 365(d)(1) of the Bankruptcy Code approved by the Court on March 25, 2009.

   - Assuming and assigning certain agreements to the Chapter 11 Debtors and Neuberger Berman to facilitate a potential reorganization effort by certain Chapter 11 Debtors and the Neuberger Berman asset sale.

   - Agreeing with several counterparties to terminate executory contracts upon agreement to return outstanding fees owed to LBI pursuant to such contracts.

   - Reviewing thousands of executory contracts resulting in rejection of several hundred contracts, upon notice to the counterparties, to minimize administrative expenses.

m.  Fee Applications (Trustee and HHR) (031164.000015):

   - Drafting the First Application of Hughes Hubbard & Reed LLP for Allowance of Interim Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred From September 13, 2009 through January 31, 2009 approved by the Court on April 8, 2009.

   - Preparing monthly fee statements.

n.  File, Docket and Calendar Maintenance (031164.00016):

   - Maintaining and distributing numerous calendars and dockets to remind and warn of upcoming deadlines, responsibilities, and hearings.

   - Organizing, reviewing and indexing documents and pleadings, as well as other paralegal functions arising from the constant flow of paperwork.

o.  Governmental and Third-Party Investigations (031164.00017):  Focusing on requests from governmental and third parties conducting investigations along with overseeing certain ongoing investigations by the Trustee, including:

- Producing over 500,000 pages of documents as well as over hundreds of gigabytes of data in electronic form to governmental and third parties.

- Responding in due course to a growing number of non-party subpoenas issued in connection with various litigations and arbitrations throughout the United States.

- Conducting confidential investigations related to purported pre- and post-petition actions by third parties.

p. Insurance (031164.00018):

- Consulting with members of the risk management department at LBI to identify insurance policies that may apply to losses to the estate or LBI's customers (or losses for which the estate may be held responsible).

- Providing insurers with notice under two lines of coverage and information necessary to secure coverage and comply with the policies' terms and conditions.

- Meeting with excess insurance providers.

q. Intellectual Property (031164.00019):

- Reviewing LBI's existing agreements and potential agreements that may be entered into to facilitate the liquidation.

r. Intercompany Claims and PIK Notes (031164.00020):  In an effort to untangle the complex Lehman corporate structure and bring value to the estate:

- Investigating the intercompany relationships and transactions between LBI and other Lehman entities including LBHI and Lehman Commercial Paper Inc. ("LCPI").

- Communicating with LCPI regarding numerous potential intercompany claims that allegedly emerge from various pre-petition loan agreements wherein securities may have been held by LBI pursuant to agreements by and among LCPI, as administrative agent, and respective borrower entities and other agents and lenders.

- Investigating intercompany relationships and transactions and responding to inquiries and requests from other Lehman entities and their counsel.

- Meeting with LBHI and its counsel, Alvarez & Marsal, and LBHI's investment bankers to discuss the valuation of the PIK Notes and pressing

to obtain information regarding the transferred subsidiaries, the transferred intellectual property, and other underlying facts and assumptions.

s.  <u>LBHI Matters (031164.00021)</u>:

- Reviewing all pleadings filed in the Chapter 11 Cases (over 1,000 docket entries during the Compensation Period) and reporting on key developments in the Chapter 11 cases to the Trustee and SIPC.

- Weekly, and on occasion daily, coordination with both the Debtors' counsel and Committee counsel and related Chapter 11 case professionals (including Alvarez & Marsal).

- Meeting and coordinating with the LBHI examiner to avoid duplication of ongoing investigations.

- Finalizing PAM account conversion to Neuberger Berman, including reconciliation of outstanding deliverables and replacement of missing securities.

t.  <u>LBIE Matters (031164.00022)</u>:  To effectively monitor and coordinate with the administration of LBIE:

- On February 20, 2009, filing an application in the High Court of Justice of England and Wales for recognition of the SIPA liquidation of LBI as a foreign main proceeding in accordance with the United Nations Model Law on Cross-Border Insolvency (as enacted by the Cross-Border Insolvency Regulations 2006), which was granted by the High Court on March 30, 2009.

- Responding to various inquiries relevant to both the SIPA liquidation and the U.K. liquidation proceeding, including ongoing dialogues with respect to customers who maintained accounts at both LBI and LBIE.

- Meeting regularly, in conjunction with Deloitte professionals, with LBIE's counsel and other professionals (including PricewaterhouseCoopers LLP (U.K.)).

- Continuing discussions with LBIE Administrators regarding the Trustee's claims to several hundred million dollars of property that was or should have been segregated by LBIE.

- Liaising with Norton Rose LLP ("Norton Rose") as U.K. Counsel to monitor and coordinate with representatives in the U.K. liquidation proceeding.

u. Litigation (Non-Bankruptcy and Adversary Proceedings (31164.00023 and .00024):

- Overseeing the filing in several dozen cases of notices of the commencement of the LBI liquidation and the effect of the automatic stay provisions of section 362 of the Bankruptcy Code and the LBI Liquidation Order.

- Enforcing the automatic stay with respect to litigation in which LBI is a named party (as of the Filing Date, LBI was a party to over 65 litigations and arbitrations).

- As of the end of the Compensation Period, defending against seven adversary proceedings filed in this Court, including successfully negotiating the voluntary dismissal of claims in one action, moving to dismiss in two actions, and reaching a settlement agreement in a fourth.

- Briefing an objection to the Rule 2004 request by Carret P.T., L.P. # 2 and Evansville Insurance Ltd. (Court denied the request at a March 25, 2009 hearing) and working with Newport Global entities, Deferred Compensation Parties, and SunTrust Bank in an attempt to informally resolve their individual information requests without incurring additional significant expense to the estate.

- Responding to other threatened litigation.

v. Other Foreign Proceedings (31164.00026): To monitor the numerous insolvency proceedings of Lehman entities in the various jurisdictions worldwide and evaluate intercompany claims:

- Identifying and researching the claims of Lehman affiliates, including claims filed against LBI by foreign Lehman entities in the U.K., Switzerland, Singapore, Luxembourg, Japan, Hong Kong and Germany.

- Identifying Lehman entities in foreign jurisdictions that are also in insolvency proceedings where the potential for an LBI claim exists. Initial identification of claims based on general ledger balances has been expanded to include claims based on margin posted at Lehman affiliates for trading on various exchanges, analysis of the LBI stock record, trade unwinds and various other intercompany accounts. LBI claims have been filed against one entity in the U.K., one entity in Singapore, two entities in Germany, and two entities in Hong Kong.

- Researching potential claims against entities in France, the Netherlands, Switzerland and other entities in the U.K.

w.  Real Estate (31164.00027):  To minimize administrative cost to the estate in connection with the disposition of real property leases held by LBI:

- Negotiating an agreement with LBHI regarding the payment of rent at the leased premises that were occupied by LBHI or Barclays and the transfer of designation rights to such leases to LBHI subsequently approved by the Court.

- Receiving notice of specific real property that may be owned by LBI and investigating the ownership of such assets.

x.  Retention and Fee Matters of Other Professionals (31164.00028):

- Interviewing, negotiating terms with and hiring certain former LBI personnel to assist the Trustee with all facets of the liquidation, and overseeing and coordinating with Deloitte and with "ring-fenced" former LBI employees now employed by Barclays.

- Monitoring fee requests from Deloitte, Norton Rose, EPIQ and certain tax and other specialists.

- Drafting the Joint Motion of the Trustee and the Securities Investor Protection Corporation for an Order Authorizing Employment of Counsel Utilized in the Ordinary Course approved by the Court on April 8, 2009.

y.  SEC, Federal Reserve and other Regulatory Matters (31164.00029):

- Meeting and coordinating regularly with the Securities and Exchange Commission, the Federal Reserve Bank of New York, the Commodities Futures Trading Commission, the Financial Industry Regulatory Authority, and the British Financial Services Authority.

z.  Tax and Employee Benefit Matters (31164.00030): LBI is included in consolidated federal income tax returns filed by LBHI, as well as consolidated and combined state income tax returns in a number of states.  In connection with potential assets and liabilities arising from LBI's tax obligations, both pre-petition and post-petition:

- Maintaining ongoing discussions with LBHI's counsel, who are handling substantial federal refund claims for the years 1997 through 2000 and audits for 2000 through 2007 where the IRS is asserting deficiencies, and monitoring the status of state tax refunds that have been claimed on consolidated and combined returns recently filed by LBHI.

- Evaluating LBI's entitlement to a share of refund claims based on joint filings, and, with respect to independently filed returns, recovering for the benefit of the estate approximately $6 million in refunds owed to LBI or LBI-subsidiaries by various state and foreign tax authorities.

- Coordinating responses to the IRS with outside counsel, now engaged by LBHI, in connection with an ongoing IRS investigation of LBI regarding possible tax shelter promotion penalties that began pre-bankruptcy.

- Through the end of the Compensation Period, coordinating the issuance of approximately 70,000 IRS Form 1099s to LBI's former customers (and filing an extension request with the IRS to accomplish this task), 2.5 million Forms 1099-B to former indirect brokerage customers, and 5,500 Forms 1042-S to former customers who are foreign persons.

- Determining amounts owed to the LBI estate as a result of over 270 employee loans that were in collection as of the Filing Date and analyzing the most efficient means to maximize collection of those amounts through a minimum of administrative expense.

- Responding to employee and payroll issues, including Voluntary Employees' Beneficiary Association (VEBA) and PBGC issues.

aa. Trustee's Reports to Courts and Creditors (031164.00031):

- Formulating and implementing a work plan for the Trustee's investigation of Lehman's failure in coordination with the plan proposed by the LBHI examiner and investigations undertaken by LBHI and its Creditors' Committee.

- Collecting and organizing documents related to the investigation.

- Sending document preservation requests to hundreds of former LBI personnel.

- Receiving and reviewing thousands of documents from numerous financial institutions and interviewing employees of those institutions.

- Reviewing hundreds of thousands of pages of internal LBI emails, including those of numerous high-level officers during the critical months leading up to the Filing Date, account records, contractual agreements, and other documents from LBI's information systems.

- Coordinating investigative efforts with the Examiner appointed in the LBHI case as practicable and appropriate.

bb. Trustee's Interim Reports to Court (031164.00032):  In connection with the Trustee's First Interim Report for the Period September 19, 2008 through May 29, 2009 (the "First Interim Report"):

- Drafting and editing comprehensive summaries of key aspects of the liquidation proceeding and administration of the estate, including customer account transfers, claims processing, Trustee's investigation, settlements, inter-affiliate claims, misdirected funds government and third party investigations, litigation, tax matters, real estate, and other activities and pending matters.

- Preparing exhibits to the First Interim Report regarding the current financial condition of the estate, key work streams, claims processing, and other matters.

cc. Barclays Claims (031164.00033):

- Negotiating agreement with Barclays for Barclays to file a single, protective omnibus claim on behalf of its newly acquired customers.

- Processing over 1700 claims filed by PIM account holders that have filed individual SIPA customer claims outside of the Barclays' omnibus claim.

- Researching Barclays' claims under the Asset Purchase Agreement and where appropriate facilitating the transfer of purchased assets.

dd. LBHI Claims (031164.00034):

- Analyzing the Chapter 11 Debtors' omnibus claims and reconciling them with LBI's records, a process that involves the continued exchange of information with the Debtors' counsel and Alvarez & Marsal.

ee. LBIE Claims (031164.00035):

- Analyzing LBIE's omnibus claims and reconciling them with LBI's records, a process that involves the continued exchange of information with the LBIE Administrators and their professional advisors.

ff. Special Projects (031164.00037 through 00039):

- Implementing designated teams for potential upcoming issues in the liquidation.

gg. <u>DTCC Investigation (031164.00040)</u>:

- Reviewing factual details and legal basis for DTCC's activities during the week of September 22, 2008.

- Reviewing the liquidation of collateral by DTCC.

hh. <u>Avoidance Actions (031164.00042)</u>:

- Implementing a dedicated team to review transfers made by LBI within 90 days of the Filing Date to third-parties and within one year of the Filing Date to LBI "insiders."

## **<u>ACTUAL AND NECESSARY EXPENSES INCURRED BY HHR</u>**

33.     As set forth in Exhibits B and E attached hereto, HHR has incurred $132,764.74 in expenses in providing professional services during the Compensation Period. Regarding these expenses, HHR charges for both external copying and computer research at the providers' cost without markup.  The basis for these rates is HHR's calculation of the actual cost of these services.  These charges are intended to cover HHR's direct operating costs, which costs are not incorporated into the HHR hourly billing rates.  Only clients who actually use services of the types set forth in Exhibits B and E are separately charged for such services.  This "unbundling" of such expenses results in a fairer allocation of such costs and allows HHR to pass such costs on to each client in proportion to that client's use of such services.  As noted above, HHR has <u>not</u> <u>charged</u> for a number of categories of expenses regularly charged to and paid by HHR's clients including <u>overtime</u> <u>meals,</u> <u>internal copies</u> <u>and</u> <u>after-hours</u> <u>travel</u> <u>services</u>.

34.     HHR charges $50.00 per hour for Word Processing services.  Since the beginning of the liquidation, these services have been primarily used to revise heavily edited documents, format documents requiring unique and specialized formatting or scan agreements or exhibits that are time-sensitive in nature.  This work is not saved until the end of the day and then sent to Word Processing after-hours.  In addition, due to the location of certain regulators,

customers, creditors and other parties in interest in relation to HHR's New York offices, frequent long distance telephone calls and conference call services were required. On occasion, overnight delivery of documents and other materials were required as a result of the exigencies and circumstances of the liquidation. The disbursements for such services are not included in HHR's overhead for the purpose of setting billing rates and HHR has made every effort to minimize its disbursements in these cases. The actual expenses incurred in providing professional services were necessary, reasonable and justified under the circumstances to serve the needs of the estate, its customers and creditors.

## HHR'S REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

35.     HHR, including the Trustee, may submit applications to the Court for compensation for services rendered and reimbursement for expenses during the course of the liquidation, which may be done on an interim basis. SIPA §§ 78eee(b)(5)(A)-(B). Whenever an application for compensation and reimbursement of expenses is filed, SIPC shall file its recommendation with respect to such fees and expenses with the Court prior to the hearing on such application. Id. at § 78eee(b)(5)(C). The Court "shall place considerable reliance on the recommendation of SIPC" as to the allowances requested in such applications, and to the extent that such allowances are to be paid by SIPC, without reasonable expectation of recoupment, the court shall award the amounts recommended by SIPC. Id.; see e.g., Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 274 n.21 (1992) (recognizing that "SIPC's recommendation to court on trustee's compensation is entitled to considerable reliance and is, under certain circumstances, binding."); In re Donald Sheldon & Co, Inc. 153 B.R. 661, 668 (Bankr. S.D.N.Y. 1993) (SIPA requires . . . that "[w]e place considerable reliance on the recommendation of SIPC in ruling on [the Trustee's] application [for fees]").

36.     At this time, the Trustee anticipates that there will be sufficient funds available from the general estate to satisfy administrative expenses of the estate, including professional fees, without seeking to requisition funds from SIPC in order to pay these expenses. As a result, in determining the allowance of HHR's compensation, while "considerable reliance" shall be placed on SIPC's recommendation, the Court must duly consider the nature, extent and value of the services rendered.  SIPA at § 78eee(b)(5)(C).

37.     HHR submits that its request for interim allowance of compensation is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to section 78eee(b)(5) of SIPA.

38.     In the instant case, HHR respectfully submits that the services for which it seeks compensation in this Application, as highlighted above, at the time rendered, were believed to be necessary for and beneficial to LBI's estate, customers, creditors and other parties-in-interest.  HHR further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to these constituencies.  In sum, the services rendered by HHR were necessary and beneficial and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved. Accordingly, approval of the compensation sought herein is warranted.

## CONCLUSION

HHR respectfully submits that the services rendered during the Compensation Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter an Order as follows: (i) allowing and awarding $15,211,140.98 as an interim payment for professional services rendered by HHR during the Compensation Period and $132,764.74 as an interim reimbursement of the actual and

necessary costs and expenses incurred by HHR in connection with the rendition of such services;

and (ii) granting HHR such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
     July 16, 2009

                                    HUGHES HUBBARD & REED LLP

                                    By: /s/ James B. Kobak, Jr.
                                        James B. Kobak, Jr.
                                        Christopher K. Kiplok
                                        Jeffrey S. Margolin
                                    One Battery Park Plaza
                                    New York, New York 10004
                                    Telephone:  (212) 837-6000
                                    Facsimile:  (212) 422-4726
                                    Email:  kobak@hugheshubbard.com

                                    Attorneys for James W. Giddens, Trustee for
                                    the SIPA Liquidation of Lehman Brothers
                                    Inc.