Abby F. Rudzin
Suzzanne Uhland
O'MELVENY & MYERS LLP
Times Square Tower
Seven Times Square
New York, NY  10036
Phone:  (212) 326-2000
Facsimile: (212) 326-2061

*Attorneys for Olivant Investments Switzerland S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| | |
| LEHMAN BROTHERS, INC. | Case No. 08-01420 (JMP) SIPA |
| | |
| Debtor. | |

**OBJECTION OF OLIVANT INVESTMENTS SWITZERLAND S.A.**
**TO TRUSTEE'S DETERMINATION OF CLAIM**

Olivant Investments Switzerland S.A. ("OISSA"), by and through its undersigned

counsel, hereby files this Objection (the "Objection") to the Trustee's Determination of Claim

dated September 2, 2009 (the "Trustee's Determination"), in which James W. Giddens (the

"Trustee") stated that the claim that OISSA submitted against Lehman Brothers Inc. (the

"Debtor") on a Customer Claim Form on January 30, 2009 ("OISSA's Claim"), attached hereto

as Exhibit A and assigned Claim Number 800002702, was DENIED.  OISSA files this

objection for two independent reasons:  (i) despite numerous and repeated attempts, OISSA has

not been able to obtain information on assets valued at more than $1.7 billion that should have

been held in custody, and OISSA deserves the opportunity to conduct discovery it needs to prove its claim, particularly given evidence indicating that the Debtor controlled OISSA's assets; and (ii) the Trustee's purported reason for denying OISSA's Claim—in favor of an Omnibus Claim by LBIE (as defined below)—is legally wrong and insufficient because (a) on information and belief, OISSA was a brokerage customer of the Debtor; (b) it is uncertain whether the Omnibus Claim adequately covers OISSA's claim given the apparent information deficiencies regarding LBIE customer assets; and (c) it is uncertain whether any recovery under the Omnibus Claim would inure to OISSA.

In support of the Objection, OISSA respectfully states as follows:

## BACKGROUND

1.      In early 2008, OISSA, a public limited liability company (*société anonyme*) incorporated under the laws of the Grand Duchy of Luxembourg, and its affiliate, Olivant Limited ("OL"), set out to effectuate a strategic investment and acquire a significant voting interest in the Swiss financial institution UBS AG.  As described more fully below, Lehman Brothers International (Europe) ("LBIE," and together with Lehman Brothers Holdings Inc., the Debtor, and other U.S. and European affiliates, individually or collectively, "Lehman Brothers") and other members of Lehman Brothers were engaged by OL in March 2008 and by OISSA itself in April 2008 to provide advisory and other services for OL and OISSA's strategic investment in UBS AG shares.

2.      On or about March 10, 2008, OL contacted Jeremy M. Isaacs (a member of Lehman Brothers' executive committee who at the time served as CEO for Lehman Brothers' European, Middle East, and Asia-Pacific groups) and Michael Tory (at that time head of Lehman Brothers' Corporate Finance group in the UK and OL's relationship manager at

Lehman Brothers) to inquire whether Lehman Brothers would advise and assist with the strategic investment in UBS AG shares.  Full disclosure of the nature of the project and its objectives was made to Messrs. Isaacs and Tory in order for Lehman Brothers to decide whether it would act as advisor and securities custodian for the strategy.   Upon information and belief, Mr. Isaacs consulted with Richard Fuld (then global CEO and Chairman of Lehman Brothers) over the weekend of March 15-16, 2008, before confirming that Lehman Brothers would assist OL and subsequently OISSA in accomplishing the investment strategy, including accumulating and maintaining the UBS AG shares.

3.      As an administrative matter, to structure the acquisition and maintenance of the shares in furtherance of this strategy, Lehman Brothers required that OISSA execute a prime brokerage agreement.  Accordingly, on April 15, 2008, OISSA entered into an International Prime Brokerage Agreement with Lehman Brothers' UK broker, LBIE.  Between April 15 and July 16, 2008, in furtherance of OISSA's strategic objectives, OISSA acquired through Lehman Brothers 81,600,280 shares of UBS AG common stock, which amount represented approximately a 2.78% stake in UBS AG.  As of July 16, 2008, the value of OISSA's holdings in UBS AG, which Lehman Brothers held or should have held in trust for OISSA, equaled CHF 2.26 billion, or approximately 2.20 billion in U.S. Dollars.   Notwithstanding the prime brokerage agreement with LBIE, OISSA believed that it was not simply an LBIE prime brokerage client but a client of Lehman Brothers generally given the negotiations with Lehman Brothers global leadership and the latter's commitment to advise and assist OISSA and OL on the strategic investment.

4.      On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings Inc.

("LBHI") filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code,

and LBIE was placed in insolvency administration in the UK.

5.      On September 19, 2008 (the "Filing Date"), this Court entered an order under

the Securities Investor Protection Act of 1970, as amended ("SIPA"), commencing the

Debtor's liquidation proceeding.

6.      In total, Lehman Brothers held 81,600,280 shares of UBS AG common stock

for credit to OISSA on the Filing Date.  Based on the closing price in New York for UBS AG

shares on the Filing Date, the value of the OISSA account on that day was $1,750,326,006.

7.      Despite the massive size of OISSA's equities position, no Lehman Brothers

entity has been able to locate the property to date.  The limited information available to OISSA

suggests that the Debtor was, at the Filing Date, the principal brokerage service provider for

OISSA's immense stake in UBS AG shares and, at one stage at least, had physical custody of

OISSA's shares:

> a.      OISSA received a September 12, 2008 position report, attached hereto as
> Exhibit B, showing the number of UBS AG shares in OISSA's Lehman
> Brothers account number 05606841; the position report was generated by
> Capital Markets Prime Services, which on information and belief is a New
> York-based Lehman Brothers business unit.

> b.      OL received a UBS AG proxy form for an October 2, 2008 Extraordinary
> General Meeting from "Lehman Brothers Prime Brokerage."  The UBS
> AG proxy form is attached hereto as Exhibit C.  Lehman Brothers Prime
> Brokerage has a New York address.  The account number on the proxy
> form is "056068414," which is identical to OISSA's account number for
> the prime brokerage account opened with LBIE — *i.e.*, "05606841" — but
> with an extra digit   The proxy form also refers to "Olivant Limited
> PBCG," which is similar to references made in other documents generated
> by LBIE regarding OISSA's prime brokerage account.  This proxy form
> apparently relates to OISSA's UBS AG holdings.

> c.      Upon information and belief, Lehman Brothers Prime Brokerage was one
> of the Debtor's business units.

      d.      Communications with LBHI's counsel has revealed that any shares transferred to Lehman Brothers entities in New York would have been transferred to the Debtor for custody.

8.      Furthermore, communications from LBIE's UK Administrators (the "Administrators") seem to confirm that LBIE transferred OISSA's UBS AG shares:

      a.      On September 17, 2008, the Administrators informed OISSA that it was thought that LBIE had transferred OISSA's UBS AG shares.

      b.      OISSA recently acquired access to an "Interim Position and Balance Statement" (the "Statement") that the Administrators posted on an Internet-based "Client Information Portal." (The stated intent for issuing the Statement is to allow the client to identify and begin reconciling discrepancies between the client's and LBIE's records.) According to the Statement, as of September 12, 2008, LBIE held no assets in "custody or charge long positions" for OISSA; instead, the entirety of OISSA's security entitlement, a staggering 81,600,280 UBS AG shares, is accounted for as "Rehypothecated Assets." The Statement appears to be an admission by the Administrators that LBIE no longer controls OISSA's assets.

9.      Accordingly, upon information and belief, the Debtor received OISSA's UBS AG shares from LBIE or another Lehman Brothers affiliate with notice that those shares were to be held for OISSA as a client of Lehman Brothers and to be maintained in such a manner as to enable OISSA to effectuate its investment strategy, including without limitation by affording OISSA the opportunity to vote its shares.

10.      OISSA filed its SIPA customer claim number 800002702 before the applicable bar date.

11.      Shortly after September 2, 2009, OISSA received the Trustee's Determination, attached hereto as Exhibit D. In denying OISSA's Claim, the Trustee provided the following summary explanation:

      The above-referenced account(s) (the "Account") is with Lehman Brothers International (Europe) ("LBIE"), not LBI. LBIE has filed claims with the Trustee for funds or property held or believed to be held by LBI for the benefit of LBIE's customers.

12.     The Trustee's explanation appears to relate to a January 20, 2009 press release (the "Press Release") issued by the Administrators, and attached hereto as Exhibit E, indicating that they intended "to submit an omnibus claim on behalf of each of LBIE's customers whose cash, securities or other assets were (or should have been) held by LBI on the Filing Date" (the "Omnibus Claim").  Among the reasons given for filing the Omnibus Claim was "each customer's right to obtain the maximum protection afforded under SIPA."  The Press Release further indicates that the Trustee asked LBIE to obtain authorization from its putative clients to file a claim on their behalf, and that such entities "may wish to pursue their rights in the SIPA proceeding by filing a claim on their own behalf with the Trustee as well" (emphasis in original).  Finally, the Press Release states that "LBIE faces issues including missing or inaccessible records and IT data that complicate the compilation of claims [and] [c]onsequently, LBIE cannot guarantee that the omnibus claim that it files on behalf of certain of its customers will identify every customer with securities, cash or other assets held by LBI through LBIE."

13.     OISSA has repeatedly attempted in written and oral communications to ascertain which entity or entities currently control or exercise custody over the UBS AG shares.  In its search, OISSA has written to Lehman Brothers, the Trustee, the Administrators, counsel to Barclays Capital Inc., which on information and belief may have acquired some or all of OISSA's assets in its purchase of the Debtor's business in September 2008, and Citibank N.A., which on information and belief might have served in the spring of 2008 as a custodian of OISSA's UBS AG shares.  To date, OISSA has not learned relevant information from these sources.  Indeed, counsel to Citibank N.A. has indicated that they are unable to provide information regarding assets Citibank N.A. held for Lehman Brothers, including Lehman

Brothers customer assets, without an instruction from Lehman Brothers or a formal discovery request.  Lehman Brothers has refused to grant that instruction.  In order to determine whether OISSA's shares may have been included in the transfer of the Debtor's business to Barclays Capital Inc., OISSA is currently negotiating the form of the Barclays Capital Inc. confidentiality agreement that OISSA will sign to access Schedules A and B to the clarifying letter dated as of September 20, 2008, to the Asset Purchase Agreement, dated as of September 16, 2008, as amended and supplemented, among the Debtor, LBHI, LB 745 LLC, and Barclays Capital Inc.

## ARGUMENT

14.     There are two independent reasons the Court should not confirm the Trustee's Determination.   First, a confirmation would be premature and would deprive OISSA of its rights under SIPA and the Bankruptcy Code and Rules, as incorporated in SIPA, to conduct discovery of facts essential to its claim.  OISSA's informal discovery efforts have to date not yielded information.  Second, under SIPA, OISSA qualifies as a customer of the Debtor, and the Trustee therefore has a duty to return customer property to OISSA.  Given OISSA's legal status as a customer of the Debtor, the uncertainty of the scope of the Omnibus Claim, and whether any recovery thereunder would inure to OISSA, the Omnibus Claim cannot substitute for OISSA's Claim under SIPA.

**A.     OISSA Should Be Allowed Ample Time to Conduct Necessary Discovery Before the Court Rules on the Validity of Its Customer Claim**

15.     OISSA has a due process right to conduct discovery of facts necessary to establish its claim; expunging OISSA's Claim without first allowing OISSA to undertake such discovery would violate that right.  *See In re Dana Corp.*, 574 F.3d 129, 147-51 (2d Cir. 2009) (holding that bankruptcy court and district court inappropriately authorized disallowance and

7

expungement of claim when creditor's request for additional discovery before disallowance was denied); *see also* 10 COLLIER ON BANKRUPTCY ¶ 9014.05 (15th ed. rev. 2009) ("[D]ue process must still be afforded to all parties in a dispute whether that dispute is classified as an adversary proceeding or a contested matter. This is why *Rule 9014* makes certain of the [Federal Rules of Bankruptcy Procedure] in Part VII applicable to contested matters.")

16.     The Trustee denied OISSA's customer claim without even confirming or denying that the Debtor held as of the Filing Date an immense concentration of UBS AG shares in its prime brokerage unit or otherwise, let alone giving OISSA an opportunity to inspect the Debtor's records.   OISSA's information request could hardly be called unreasonable given (a) the nature of its holdings (a huge number of single name shares) and (b) the information recited above that suggests its shares were maintained by the Debtor on the Filing Date.   Despite numerous attempts to obtain information on the current whereabouts of its shares from various Lehman Brothers entities and third parties, OISSA has to date received no information on its shares other than the communication with and the Statement posted by the Administrators suggesting that all of OISSA's shares had been transferred by LBIE.

17.     Therefore, OISSA is forced to avail itself of the procedural safeguards contained in the Court's November 7, 2008 *Order Approving Form and Manner of Publication and Mailing of Notice of Commencement; Specifying Procedures and Forms for Filing, Determination, and Adjudication of Claims; Fixing a Meeting of Customers and Creditors; and Fixing Interim Reporting Pursuant to SIPA* (the "Procedures Order") [Docket No. 241], and Rule 9014 of the Federal Rules of Bankruptcy Procedure.[1]   Both the Procedures Order and

---

[1] Relevant provisions of the Bankruptcy Code (11 U.S.C. §101 *et seq.*) and the Federal Rules of Bankruptcy Procedure apply in a SIPA proceeding pursuant to 15 U.S.C. §78fff(b).

Rule 9014 provide that filing an opposition to the Trustee's determination commences a contested matter.[2]

18.     If OISSA continues to be unable to obtain information through informal means, OISSA intends to exercise its rights under the Federal Rules of Bankruptcy Procedure to aggressively pursue formal discovery against the Trustee and other Lehman Brothers entities in this contested matter.  Bankruptcy Rule 9014 governs contested matters and incorporates virtually all Federal Rules of Civil Procedure governing discovery.  Fed. R. Bankr. P. 9014. Federal Rule of Civil Procedure 26(b)(1), incorporated by Bankruptcy Rule 7026, authorizes a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."[3]

19.     Therefore, in light of (a) evidence pointing to the Debtor as the holder on the Filing Date of OISSA's assets and (b) OISSA's inability thus far to obtain information on its assets relevant to its claim, the Court should allow OISSA the opportunity to exercise its right under the Bankruptcy Rules to conduct discovery relevant to its claim and should not summarily confirm the Trustee's Determination.

---

[2] The first ordered paragraph of the Procedures Order states that "[i]f a claimant is aggrieved by the determination of the Trustee, the claimant shall be afforded the opportunity to have the matter heard by the court as a contested matter under Rule 9014 of the Bankruptcy Rules . . . ."  *See* Fed. R. Bankr. P. 9014, advisory committee's note (noting that contested matters include, for example, objections to proofs of claim); *see also In re Worldcom, Inc.*, 372 B.R. 159, 164 (Bankr. S.D.N.Y. 2007) (stating that an objection to a proof of claim commences a contested matter and thereby invokes many of the discovery provisions contained in Part VII of the Federal Rules of Bankruptcy Procedure).

[3] *See also In re Symington*, 209 B.R. 678, 684 (Bankr. D. Md. 1997) (noting that discovery under the Federal Rules in contested matters gives each party a reciprocal right to discovery); *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (noting that discovery is made pursuant to Part VII of the Bankruptcy Rules once a contested matter is commenced).  Where extensive discovery is appropriate in order to resolve an objection to a proof of claim, a party should have ample time to conduct all discovery that is thought to be required.  3-51 COLLIER ON BANKRUPTCY PRACTICE GUIDE, ¶ 51.08 (2009).

**B.     Substitution of the Omnibus Claim for OISSA's Claim Is
         Impermissible Under SIPA**

20.     Under SIPA, the Trustee's primary duty is to return customer property.  *See* 15

U.S.C. § 78fff(a) ("The purposes of a liquidation proceeding under this chapter shall be—

(1) as promptly as possible after the appointment of a trustee in such liquidation proceeding,

and in accordance with the provisions of this chapter— . . . (B) to distribute customer property

and (in advance thereof or concurrently therewith) otherwise satisfy net equity claims of

customers to the extent provided in this section.")

21.     SIPA defines a "customer" as:

> any person (including any person with whom the debtor deals as
> principal or agent) who has a claim on account of securities
> received, acquired, or held by the debtor in the ordinary course of
> its business as a broker or dealer from or for the securities accounts
> of such person for safekeeping, with a view to sale, to cover
> consummated sales, as collateral security, or for purposes of
> effecting transfer.  The term "customer" includes any person who
> has a claim against the debtor arising out of sales or conversions of
> such securities . . . .

15 U.S.C. § 78lll(2).  Based on the information recited above and belief, the Debtor received

and holds securities acquired by Lehman Brothers for OISSA as a brokerage client.  Therefore,

OISSA qualifies as a customer of the Debtor under SIPA.  *See S.E.C. v. Bove & Co.*, 378 F.

Supp. 697, 699-700 (S.D.N.Y. 1974) (SIPA customer status is granted to those persons who

"have entrusted his securities to the debtor in liquidation."); *see also S.E.C. v. E.P. Seggos &

Co.*, 416 F. Supp. 280, 283 (S.D.N.Y. 1976) (noting that critical determination to establishing

customer status was whether the debtor was actually ever in possession of the securities).

22.     Based on the language of the Trustee's Determination, the Trustee purports to

satisfy his duty under SIPA for OISSA's shares by denying OISSA's Claim in favor of the

Omnibus Claim.  However, for several reasons, the Omnibus Claim cannot legally substitute

for OISSA's Claim.  First, based on information recited above and belief, OISSA is a brokerage service customer of the Debtor, and therefore the Trustee's statutory duty runs directly to OISSA.  Second, it is not clear that the Omnibus Claim even includes a claim for OISSA's shares or otherwise adequately protects OISSA's interests, particularly given the admission in the Press Release that the Administrators' information on LBIE client assets is incomplete.  Third, even assuming that the Omnibus Claim does include a claim for OISSA's shares, the Administrators clearly have duties to persons other than OISSA, and there is no guarantee that any recovery of OISSA's shares under the Omnibus Claim would inure to OISSA.  The Court's intervention is particularly important where, as here, (a) there is a claim to customer property valued in excess of $1.7 billion and (b) there has been no indication from Lehman Brothers that the amounts or securities due to OISSA have been identified and are protected.

## NOTICE

23.     Notice of this Objection has been served on counsel to the Trustee.  OISSA requests that the Court approve the manner of service set forth herein and in the Procedures Order to the extent it conflicts with the notice procedures outlined by the *Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures and Related Relief* [Docket No. 240].

## NO PRIOR RELIEF

24.     The relief requested in this Objection has not been sought previously before this Court or any other court.

## <u>CONCLUSION</u>

WHEREFORE, OISSA respectfully requests that a hearing be scheduled on this contested matter in accordance with the Procedures Order, with the hearing to be set after OISSA has had a full and fair opportunity to conduct discovery in support of its SIPA customer claim.

Dated:   October 2, 2009
           New York, New York

                                      /s/ Abby F. Rudzin
                                  Abby F. Rudzin
                                  Suzzanne Uhland
                                  O'MELVENY & MYERS LLP
                                  Times Square Tower
                                  Seven Times Square
                                  New York, NY 10036
                                  Phone:  (212) 326-2000
                                  Facsimile: (212) 326-206
                                  arudzin@omm.com
                                  suhland@omm.com

*Attorneys for Olivant Investments*
*Switzerland S.A.*

# EXHIBIT A

Customer Claim No. 800002702

**CUSTOMER CLAIM FORM LEHMAN BROTHERS INC. FILING CONFIRMATION**

Your customer claim form in the SIPA liquidation of Lehman Brothers Inc. was successfully filed on 1/30/2009 6:15 AM Please print this page as proof of your filing.

**Claim Number**
800002702

| **First Name** | **Middle Initial** | **Last Name** |
|---|---|---|
| | | |

| **Business Name** | **Representative Name** |
|---|---|
| Olivant Investments Switzerland SA | TREVOR LAIN |

**Mailing Address**
13-15, Avenue De La Liberté
L-1931 LUXEMBOURG

| **City** | **State** | **Zip Code** |
|---|---|---|
| LUXEMBOURG | | L1931 |

Item 1

**LBI owes me a credit or cash in the amount of:**
0.0000

**I owe LBI a debit or cash in the amount of:**
0.0000

**Debit balance to be paid:**
0.0000

Item 2

**LBI owes me securities:**
Yes

| Name of Security | Type of Security | CUSIP | Transaction Date | Amount | Number of Shares |
|---|---|---|---|---|---|
| UBS AG | Share | H89231338 | 04/15/2008 | N/A | 11,750,000.00 |
| UBS AG | Share | H89231338 | 04/15/2008 | N/A | 4,411,329.00 |
| UBS AG | Share | H89231338 | 04/15/2008 | N/A | 2,500,000.00 |
| UBS AG | Share | H89231338 | 04/15/2008 | N/A | 4,638,500.00 |
| UBS AG | Share | H89231338 | 04/15/2008 | N/A | 400,000.00 |
| UBS AG | Share | H89231338 | 04/23/2008 | N/A | 78,238.00 |
| UBS AG | Share | H89231338 | 04/24/2008 | N/A | 139,359.00 |
| UBS AG | Share | H89231338 | 04/28/2008 | N/A | 1,195,871.00 |
| UBS AG | Share | H89231338 | 04/30/2008 | N/A | 2,285,894.00 |
| UBS AG | Share | H89231338 | 05/06/2008 | N/A | 1,340,756.00 |
| UBS AG | Share | H89231338 | 05/07/2008 | N/A | 1,159,244.00 |
| UBS AG | Share | H89231338 | 05/08/2008 | N/A | 1,000,000.00 |
| UBS AG | Share | H89231338 | 05/09/2008 | N/A | 500,000.00 |
| UBS AG | Share | H89231338 | 05/13/2008 | N/A | 1,000,000.00 |

| UBS AG | Share | H89231338 | 05/14/2008 | N/A | 890,000.00 |
|--------|-------|-----------|------------|-----|------------|
| UBS AG | Share | UBS AG | 05/15/2008 | N/A | 87,523.00 |
| UBS AG | Share | H89231338 | 05/16/2008 | N/A | 750,000.00 |
| UBS AG | Share | H89231338 | 05/19/2008 | N/A | 165,375.00 |
| UBS AG | Share | H89231338 | 05/20/2008 | N/A | 1,500,000.00 |
| UBS AG | Share | H89231338 | 05/21/2008 | N/A | 1,500,000.00 |
| UBS AG | Share | H89231338 | 05/22/2008 | N/A | 2,500,000.00 |
| UBS AG | Share | H89231338 | 05/23/2008 | N/A | 2,500,000.00 |
| UBS AG | Share | H89231338 | 05/26/2008 | N/A | 2,500,000.00 |
| UBS AG | Share | H89231338 | 05/27/2008 | N/A | 1,000,000.00 |
| UBS AG | Share | H89231338 | 06/17/2008 | N/A | 27,557,691.00 |
| UBS AG | Share | H89231338 | 07/01/2008 | N/A | 2,000,000.00 |
| UBS AG | Share | H89231338 | 07/02/2008 | N/A | 2,500,000.00 |
| UBS AG | Share | H89231338 | 07/03/2008 | N/A | 435,500.00 |
| UBS AG | Share | H89231338 | 07/04/2008 | N/A | 1,000,000.00 |
| UBS AG | Share | H89231338 | 07/07/2008 | N/A | 1,000,000.00 |
| UBS AG | Share | H89231338 | 07/08/2008 | N/A | 220,000.00 |
| UBS AG | Share | H89231338 | 07/15/2008 | N/A | 750,000.00 |
| UBS AG | Share | H89231338 | 07/16/2008 | N/A | 345,000.00 |

**I owe LBI securities:**
No


Item 3


**claim based on a commodity futures account:**
No

**Amount of Claim:**
$0.00

**Basis for Claim:**


**Claim has been estimated:**
No


Supporting Documentation


| File Name |
|-----------|
| OISSA Attachment 1 - Bloomberg screen prints of UBS AG share price and conversion rate on 07162008.pdf |
| OISSA Attachment 2 - International Prime Brokerage Agreement.pdf |
| OISSA Attachment 3 - OIS Positions Report 09122008.pdf |
| OISSA Attachment 4 - Statement from PwC re reliance on LBIE records.pdf |
| OISSA Attachment 5 - Record of UBS AG share acquisitions.pdf |
| OISSA Attachment 6 - Bloomberg screen print showing historical closing prices for UBS AG shares in New York.pdf |

OISSA Attachment 7 - UBS AG Proxy Form.pdf
OISSA Attachment 8-1 - Email seeking confirmation shares being transferred to OISSA Account.pdf
OISSA Attachment 8-2 - Trade confirmation attached to OISSA email.pdf
OISSA Attachment 9 - LB confirmation that shares transferred to OISSA Account.pdf
OISSA Attachment 10 - Letters to LBPB NY.pdf
OISSA Attachment 11 - Power of Attorney.pdf
OISSA Reservation of Rights Addendum to SIPC Claim.pdf

**Item 4 - 11**

**4. Does your claim in any way relate to an entity other than Lehman Brothers Inc. (for example, Lehman Brothers Holdings Inc., or another Lehman subsidiary)?**          Yes

Olivant Investments Switzerland SA ("OISSA") reserves the right to amend and expand the brief details that follow. The Reservation of Rights Addendum submitted herewith forms part of and qualifies this customer claim. From March 2008, Lehman Brothers International Europe ("LBIE" and together with its U.S. and European affiliates, "Lehman Brothers") and other members of Lehman Brothers were engaged by Olivant Limited ("OL") and, from April 2008, OL's affiliate OISSA to provide advisory and other services in relation to OL and OISSA's strategic investment in UBS AG shares. In particular, during the week beginning March 10, 2008, OL, in order to effectuate the investment strategy subsequently implemented through OISSA by OL and its co-investors, approached Jeremy M. Isaacs (a member of Lehman Brothers' executive committee who served as CEO at that time for Europe, the Middle East and Asia-Pacific) and Michael Tory (head at that time of Lehman Brothers' Corporate Finance in the UK and OL's relationship manager at Lehman Brothers) to enquire whether Lehman Brothers would advise and assist with the strategic investment in UBS AG shares, including as advisor and custodian of the UBS AG shares. Full disclosure of the nature of the project and its objectives was made to Messrs. Isaacs and Tory in order for Lehman Brothers to decide whether it would act as advisor and securities custodian for the strategy, including its compliance with the requirement that the investors have constant access to the UBS AG shares. We understand that over the weekend of March 15-16, Mr. Isaacs consulted with Richard Fuld (then global CEO and Chairman of Lehman Brothers, based in New York) before confirming that Lehman Brothers would assist with the investment strategy. Accordingly, it is OISSA's position that the very highest levels of Lehman Brothers in Europe and in the U.S. were fully aware of the objectives of the investment strategy. Therefore, the highest levels of Lehman Brothers knew that the investment was a strategic stake and that OISSA would require access to its shares in UBS AG at all times in order to exercise influence over UBS AG. Between March 31 and July 16, 2008 (inclusive), in furtherance of those strategic objectives, OL and OISSA between them acquired a 2.78% stake in UBS AG, the value of which at the time of purchase was approximately CHF 2.26 billion (or USD 2.20 billion as at July 16, 2008, at a CHF-USD rate of 0.9830 (according to the Bloomberg screen print for July 16, 2008, submitted herewith as Attachment 1)). In furtherance of the investment strategy, LBIE entered into two International Prime Brokerage Agreements, the first with OL on March 31, 2008, the second with OISSA on April 15, 2008. (The International Prime Brokerage Agreement between OISSA and LBIE is submitted herewith as Attachment 2.) As of September 19, 2008, LBIE and/or its affiliates held 81,600,280 shares of UBS AG common stock for credit to OISSA. OISSA is submitting herewith a position report dated September 12, 2008, showing the number of UBS AG shares in OISSA's Lehman Brothers account, account number 05606841

(Attachment 3). OISSA has not withdrawn or otherwise caused the transfer of any UBS AG shares from its account since the September 12, 2008 position report was generated; LBIE's UK Administrators have instructed LBIE's clients not to rely on any information provided by any Lehman Brothers' source after 07:56 on September 15, 2008 (such instructions submitted herewith as Attachment 4). OISSA is also submitting a record of its share acquisitions in furtherance of the investment strategy (Attachment 5). Based on the closing price for UBS AG shares in New York on September 19, 2008 of $21.45 per share (a screen print from Bloomberg showing the closing price of UBS AG shares in New York on September 19, 2008, is submitted herewith as Attachment 6), the value of the OISSA account on that day was $1,750,326,006. Based on communication from LBIE's UK Administrators, OISSA believes that LBIE may have transferred some or all of OISSA's UBS AG shares to LBI. While the precise arrangement that led to any such transfer is not known, OISSA asserts that such shares constitute property of OISSA regardless of how the transfer was structured. Pursuant to the agreement by Lehman Brothers' senior management to assist in the investment strategy, LBI holds OISSA's shares either as custodian or in trust for the benefit of OISSA. A further indication that OISSA's UBS AG shares were held by Lehman Brothers in New York was a UBS AG proxy form for an October 2, 2008 Extraordinary General Meeting that OL received from "Lehman Brothers Prime Brokerage" with a New York address (submitted herewith as Attachment 7). OL and OISSA believe this proxy form relates to OISSA's shareholding in UBS AG. The account number on the proxy form is 056068414, which is the same as OISSA's Lehman Brothers account number of 05606841 but with an extra digit; the proxy form also refers to "Olivant Limited PBCG" like some other documents generated by LBIE that related to OISSA's prime brokerage account (see, for example, the concurrently submitted position report that lists OISSA as the "fund" and Olivant Limited PBCG as the "client" (Attachment 3) and related email correspondence in which a Lehman Brothers' representative explains that the UBS AG shares were booked to OISSA's account (Attachments 8 - 9)). OISSA has written to Lehman Brothers Prime Brokerage seeking information about any UBS AG shares held by Lehman Brothers Prime Brokerage, but has not received a response to its letters (OISSA's letters are submitted herewith as Attachment 10). We understand that Lehman Brothers Prime Brokerage was a business unit of LBI. Accordingly, OISSA believes that LBI received OISSA's UBS AG shares from LBIE with notice that those shares were to be held for OISSA as a client of LBIE and LBI. OISSA reserves all its rights under or in connection with the engagement and agreements referred to above.

**5. Has there been any change in your account since September 19, 2008?**                    No

**6. Are you or were you a party to a repurchase or reverse repurchase agreement, director, officer, partner, shareholder, lender to, or capital contributor of LBI?**                    No

**7. Are you related to, or do you have any business venture with, any of the persons specified in "6" above, or any employee or other person associated in any way with LBI? If so, give name(s).**                    No

**8. Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of LBI?**                    No

**9. Is this claim being filed on behalf of a customer of a broker or dealer or bank? If so, provide documentation with respect to each customer on whose behalf you are claiming.**                    No

Please see explanation to question 4 above, as well as the attached (uploaded) documents referenced therein.

**10. Have you ever given any discretionary authority to any person to execute securities transactions with or through LBI on your behalf? Give names, addresses and phone numbers.**

No

**11. Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? If so, give name of that broker.**

No

### Preparer and Signature Information

**Full Name:**
Trevor Lain

**Address (line 1):**
O'Melveny & Myers LLP

**Address (line 2):**
Two Embarcadero Center, 28th Floor

**City:**
San Francisco

**State/Province:**
CA

**Country:**
UNITED STATES

**Postal Code:**
94111

**Phone Number:**
415-984-8802

**Email Address:**
tlain@omm.com

# EXHIBIT B

September 12, 2008 Position Report

# LEHMAN BROTHERS | Capital Markets Prime Services

| FUND: | OLIVANT INV SWITZERLAND SA | | | |
| CLIENT: | OLIVANT LIMITED PROG | ACCOUNT: | 05600641 | |
| BASE: | CHF | PERIOD: Sep-12-08 to Sep-12-08 | RUN DATE: Sep-12-08 11:13:45 PM | |

# TD Positions - Detail (Long/Short)

| DESCRIPTION | | | LEHMAN IDENTIFIER | QUANTITY | MARKET PRICE | LOCAL MARKET VALUE | BASE MARKET VALUE | % PORTFOLIO |
|---|---|---|---|---|---|---|---|---|
| **CHF - Swiss Franc : Equity** | | | | | | | | |
| **Long** | | | | | | | | |
| Ubs AG | Shr | Chf 0.10chf | B18YFJ4 | 81,600,280.00 | 23.520000 | 1,919,238,585.60 | 1,919,238,585.60 | 100.00 |
| **Total Long : Equity** | | | | | | 1,919,238,585.60 | 1,919,238,585.60 | 100.00 |
| **Total Swiss Franc : Equity** | | | | | | 1,919,238,585.60 | 1,919,238,585.60 | 100.00 |
| **Total Swiss Franc** | | | | | | 1,919,238,585.60 | 1,919,238,585.60 | 100.00 |
| **Grand Total** | | | | | | 1,919,238,585.60 | 1,919,238,585.60 | 100.00 |

This report or fax has been produced as a courtesy by Lehman Brothers' clients and does not take the place of customer account statement(s) or any trade confirmation. To the extent there is a conflict between this report and a customer account statement(s) or trade confirmation, the customer account statement(s) or the relevant trade confirmation is to be regarded as authoritative. The information and data in this report or file ("Information"), including but not limited to prices, quotes, statistics and analytics, may have been obtained from external sources ("Providers"). Lehman Brothers, on its behalf and on behalf of the Providers, disclaims all representations and warranties that the Information is accurate or complete, and neither Lehman Brothers nor the Providers are responsible or liable for actions that you take or do not take based on the Information. Further, the Information is intended solely for your internal use except as required by applicable law or regulation. Clients trading on contracts for differences or an equity swap basis do not have ownership of any underlying stock or any right to give instructions with regard to voting of the stock. The Information is not intended for tax or regulatory purposes and may not be used as the basis for any tax or regulatory submission or claim. Please consult your tax advisor or legal advisor as appropriate. IRS Circular 230 Disclosure: Lehman Brothers and its affiliates do not provide tax advice. Accordingly, please be advised that any discussion of US tax matters contained within the Information is not intended or written to be used and cannot be used for the purpose of (i) avoiding US tax related penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

From:   Origin ID: APCA  (415)984-8700
Trevor Lain
O'Melveny & Myers LLP
Two Embarcadero Center
28th Floor
San Francisco, CA 941113305



Ship Date: 18SEP09
ActWgt: 1 LB
CAD: 2731180/WBUS0200
Account#: S *********

Delivery Address Bar Code



SHIP TO: (415)984-8802          BILL SENDER

**Epiq Bankruptcy Solutions, LLC**
**Attn: Lehman Brothers Holdings**
**757 Third Avenue, 3rd Floor**

**New York, NY 10017**

Ref #    0635015.00001-Lain
Invoice #
PO #
Dept #



TRK#    7915 0664 8810          **MON - 21SEP        A1**
0201                            **STANDARD OVERNIGHT**
                                **DSR**

**SB OGSA**                     **10017**
                                **NY-US**
                                **EWR**



FOLD on this line and place in shipping pouch with **bar code and delivery address** visible

1. Fold the first printed page in half and use as the shipping label.
2. Place the label in a waybill pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.
3. Keep the second page as a receipt for your records. The receipt contains the terms and conditions of shipping and information useful for tracking your package.

# EXHIBIT C

UBS AG Proxy Form for October 2, 2008 Extraordinary General Meeting

UBS AG SPECIAL MEETING TO BE HELD ON 10/02/08
FOR HOLDERS AS OF 09/03/08
24510    3-0230

YOU MAY ENTER YOUR VOTING INSTRUCTIONS AT 1-800-454-8683,
OR WWW.PROXYVOTE.COM UP UNTIL 11:59 PM EASTERN TIME THE
DAY BEFORE THE CUT-OFF OR MEETING DATE.

H89231338

**DIRECTORS**

↑ 0666 7901 6334

**PROPOSAL(S)**

**DIRECTORS RECOMMEND**

1A - ELECTION OF DIRECTOR: SALLY BOTT ————————— ›››    FOR —›››

1B - ELECTION OF DIRECTOR: RAINER-MARC FREY ————————— ›››    FOR —›››

1C - ELECTION OF DIRECTOR: BRUNO GEHRIG ————————— ›››    FOR —›››

1D - ELECTION OF DIRECTOR: WILLIAM G. PARRETT ————————— ›››    FOR —›››

2 - AMENDMENTS TO THE ARTICLES OF ASSOCIATION: ADJUSTMENT TO THE NEW —›››    FOR —›››
UBS CORPORATE GOVERNANCE EFFECTIVE AS OF 1 JULY 2008

3 - IN CASE OF AD-HOC SHAREHOLDERS' MOTIONS DURING THE EXTRAORDINARY —›››    ›››
GENERAL MEETING, I/WE AUTHORIZE MY/OUR PROXY TO ACT IN
ACCORDANCE WITH THE BOARD OF DIRECTORS

*NOTE* PLEASE BE ADVISED THAT THE ONLY VALID VOTING OPTIONS FOR
THE ABOVE PROPOSAL ARE EITHER 'FOR' OR 'AGAINST' ONLY

*NOTE* SUCH OTHER BUSINESS AS MAY PROPERLY COME BEFORE THE
MEETING OR ANY ADJOURNMENT THEREOF
*NOTE* IN ORDER TO HAVE YOUR SHARES VOTED, YOUR INSTRUCTIONS
MUST BE RECEIVED NO LATER THAN SEPTEMBER 26, 2008 AT 12:00 P.M.
EDT

RECEIVED
0 6 OCT 2008

scanned

---

UBS AG
10/02/08

**DIRECTORS**
(MARK "X" FOR ONLY ONE BOX)
THIS SPACE INTENTIONALLY LEFT BLANK

PLEASE INDICATE YOUR VOTING

INSTRUCTIONS FOR EACH PROPOSAL

USE NUMBER ONLY

|  | FOR | AGAINST | ABSTAIN |
|---|---|---|---|
| 1A |  |  |  |
| 1B |  |  |  |
| 1C |  |  |  |

PLEASE INDICATE YOUR PROPOSAL SELECTION BY
FIRMLY PLACING AN "X" IN THE APPROPRIATE
NUMBERED BOX WITH BLUE OR BLACK INK

SEE VOTING INSTRUCTION NO. ___3___ ON REVERSE

AC:  056686414

H89231338

0666 7901 6334
77Q

↑ PLACE "X" HERE IF YOU PLAN TO ATTEND
AND VOTE YOUR SHARES AT THE MEETING

|  | FOR | AGAINST | ABSTAIN |
|---|---|---|---|
| 1D |  |  |  |
| 2 |  |  |  |
| 3 |  |  |  |

|  | FOR | AGAINST | ABSTAIN |
|---|---|---|---|
|  | DO NOT USE | | |
|  | DO NOT USE | | |
|  | DO NOT USE | | |
|  | DO NOT USE | | |
|  | DO NOT USE | | |

LEHMAN BROTHERS PRIME BROKERAGE
745 7TH AVENUE 8 FLR
NEW YORK, NY 10019

|  | FOR | AGAINST | ABSTAIN |
|---|---|---|---|
|  | DO NOT USE | | |
|  | DO NOT USE | | |
|  | DO NOT USE | | |

OLIVANT LIMITED
P&CC
REGENCY COURT
GLATENY ESPLANADE
ST PETER PORT GY13WQ
GG

X

01

22,882

24510



NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

# BUSINESS REPLY MAIL

FIRST-CLASS MAIL     PERMIT NO. 1319     FARMINGDALE NY

POSTAGE WILL BE PAID BY ADDRESSEE

## PROXY SERVICES

FARMINGDALE NY 11735-9585

URGENT
(IF NOT VOTING BY TELEPHONE OR VIA THE INTERNET)
To Expedite Processing of Your Vote Please Ensure
   - Please Sign and Date Form.
   - P.O. Box 9138 Appears in the Front Window.
   - Bar Code Appears in Window to the Left.

Before sealing make sure barcode appears through window above

**REMINDER: FOR YOUR CONVENIENCE, VOTE BY PHONE OR INTERNET**
If you have a touch-tone telephone, please utilize our toll free proxy voting service. To register your vote, simply call the number on the upper left portion of your voting form. To vote via the Internet, visit our website at www.proxyvote.com. If you respond by telephone or Internet, do not return your voting form, keep it for your records.

**POSTAGE MUST BE AFFIXED IF MAILED OUTSIDE THE UNITED STATES**



**UBS AG**
P.O. Box, CH-8098 Zurich
Tel. +41-44-234 11 11

Board of Directors

Tel. +41-44-236 67 69
Fax +41-44-235 82 20
sh-shareholder-services@ubs.com

8 September 2008

**Extraordinary General Meeting of UBS AG on 2 October 2008, 10.30 a.m.,
St. Jakobshalle, Brüglingerstrasse 21, Basel**

Dear Shareholder

On behalf of our Board of Directors, we would like to invite you to the Extraordinary General Meeting of Shareholders. Please find enclosed the agenda with explanations to the different items. If you plan to attend the Extraordinary General Meeting in person or to appoint a proxy of your choice, we kindly ask you to return enclosure 1 to us, duly completed and signed, so that an admission card may be issued. Only registered shareholders who are entered in the share register may be appointed as proxies. Spouses who are not shareholders in their own right may not act as proxies.

We shall, however, be glad to represent your shares at the Extraordinary General Meeting as a corporate proxy. If this is your preference, we invite you to fill out the form of proxy with your voting instructions and return it to us.

If you appoint us as proxy without expressly indicating how you wish your votes to be cast, your shares will be voted in accordance with the proposals of the Board of Directors.

Sincerely yours,

UBS AG

Peter Kurer
Chairman

Luzius Cameron
Company Secretary

 **UBS**

**Request for an Admission Card**

Enclosure 1

Registered shareholder with voting rights

I/we request UBS AG to issue an admission card for the Extraordinary General Meeting on 2 October 2008, made out to:

□  my/our name

□  my/our proxy

| | |
|---|---|
| Family name | _____ |
| Given name | _____ |
| Address | _____ |
| City/State | _____ |
| Postal code | _____ |

and to send it to:

□  my/our address

□  my/our proxy

Date    _____     Signature    _____

**Please reply by 25 September 2008**



UBS

# Invitation
## to the Extraordinary General Meeting of UBS AG

**Thursday, 2 October 2008, 10:30 a.m.**
(Doors open at 9:30 a.m.)

**St.Jakobshalle**
Brüglingerstrasse 21, Basel

UBS

UBS AG
P.O. Box, CH-8098 Zurich
P.O. Box, CH-4002 Basel

www.ubs.com

**A. Motion**

The Board of Directors proposes to adjust the Articles of Association to the new UBS corporate governance effective as of 1 July 2008 and that the title of Article 20, Articles 20 para. 1, 21 para. 2, 24 lit. e, 29 and 30 of the Articles of Association be replaced by the following:

| Current Version | Proposed New Version |
|---|---|
| *Title of Article 20* | *Title of Article 20* |
| Organization, Chairman's Office | Organization |
| *Article 20 para. 1* | *Article 20 para. 1* |
| ¹The Board of Directors shall elect a Chairman's Office from among its members. It shall be composed of the Chairman and at least one Vice Chairman. | ¹The Board of Directors shall elect a Chairman and at least one Vice Chairman from among its members. |
| *Article 21 para. 2* | *Article 21 para. 2* |
| ... | ... |
| The Board of Directors shall also be convened if one of its members or the Group Executive Board submits a written request to the Chairman's Office to hold such a meeting | ²The Board of Directors shall also be convened if one of its members or the Group Chief Executive Officer submits a written request to the Chairman to hold such a meeting. |
| *Article 24 lit. e* | *Article 24 lit. e* |
| ... | ... |
| e) Appointment and removal of the President and the members of the Group Executive Board and the head of Group Internal Audit | e) Appointment and removal of (i) the Group Chief Executive Officer, (ii) such other members of the Group Executive Board as the Organization Regulations require to be appointed by the Board of Directors, and (iii) the Head of Group Internal Audit |
| *Article 29* | *Article 29* |
| The Group Executive Board is composed of the President and at least three other members. | The Group Executive Board is composed of the Group Chief Executive Officer and at least three other members as further set forth in the Organization Regulations. |

# Organizational Issues

**Admission Cards for the Extraordinary General Meeting**

Shareholders recorded in the Share Register of UBS AG *in Switzerland* may order their admission cards by sending the order form attached to this invitation to the following address until 25 September 2008: UBS AG, Shareholder Services, P.O. Box, CH-8098 Zurich.

Shareholders recorded in the Share Register *in the United States of America* may request their admission cards, in writing, at the following address until 25 September 2008: BNY Mellon Shareowner Services, Proxy Processing, P.O. Box 3510, S. Hackensack, NJ 07606-9210.

Previously issued admission cards will become invalid if the corresponding shares are sold prior to the Extraordinary General Meeting. These cards will be recalled if the Share Register is informed of the sale.

**Total number of shares and voting rights**

The total number of shares issued by UBS AG currently stands at 2,932,574,213. Each share carries one vote, meaning that 2,932,574,213 voting rights currently exist. Pursuant to Art. 659a para. 1 of the Swiss Code of Obligations, the voting rights of treasury shares and the rights associated therewith are suspended. The same applies to shares that have not been entered in the Share Register (dispo-shares) and shares that have been registered without voting rights. The total number of shares that entitle holders to attend and vote at the Extraordinary General Meeting is 1,617,965,602.

**Representation at the Extraordinary General Meeting**

Shareholders may be represented at the Extraordinary General Meeting by their legal representative or, with a written proxy, by their custodial bank or by any other shareholder entitled to vote at the Extraordinary General Meeting. In addition, every shareholder has the option of having his or her shares represented at the Extraordinary General Meeting, free of charge, by:
- UBS AG, P.O. Box, CH-8098 Zurich as a corporate or custody proxy
- Altorfer Duss & Beilstein AG (Dr. Urs Zeitner, Attorney and Notary) P.O. Box, CH-8010 Zurich as an independent proxy.

Basel and Zurich, 8 September 2008

UBS AG
For the Board of Directors:

Peter Kurer, Chairman

## Item 1

### Election of New Members of the Board of Directors

The Board of Directors proposes that Sally Bott, Rainer-Marc Frey, Bruno Gehrig and William G. Parrett be elected to the Board of Directors for a term of office to expire at the 2009 Annual General Meeting.

### 1.4. William G. Parrett

#### A. Motion

The Board of Directors proposes that William G. Parrett be elected as an independent member of the Board of Directors.

#### B. Explanations

William G. Parrett (1945) served his entire career with Deloitte Touche Tohmatsu, a global organization of member firms that operates with 160,000 people in nearly 140 countries. He was Chief Executive Officer from 2003 until his retirement in 2007. Between 1999 and 2003, he was a Managing Partner of Deloitte & Touche USA LLP. William G. Parrett founded the U.S. National Financial Services Industry Group (1995) and the Global Financial Services Industry Group (1997) of Deloitte, both of which he led as Chairman. In his 40 years of experience in professional services, William G. Parrett served public, private, governmental, and state-owned clients worldwide with distinction in order to achieve superior financial performance and growth.

In addition, William G. Parrett is an independent director of Eastman Kodak Co., USA, Blackstone Group LP, USA, and Thermo Fisher Scientific Inc., USA. He also is the Chairman of the Boards of Directors of the United States Council for International Business and of United Way of America, a member of the Board of Trustees of Carnegie Hall, and a member of the Executive Committee of the International Chamber of Commerce. William G. Parrett has a Bachelor in accounting of the St. Francis College, New York, and is a certified public accountant. He is a US citizen.

Subject to his election, the Board of Directors intends to appoint William G. Parrett as a member of the Audit Committee.

### 1.1. Sally Bott

**A. Motion**

The Board of Directors proposes that Sally Bott be elected as an independent member of the Board of Directors.

**B. Explanations**

Sally Bott (1949) serves as Group Human Resources Director of BP plc, which she joined in early 2005, and is a member of its Group Executive Committee. Sally Bott spent most of her career in finance. Between 2000 and 2005 she was a Managing Director at Marsh & McLennan, a US based global risk and insurance services business, and Head of HR for Marsh, Inc. From 1994 to 1997, she served for Barclays plc in different Human Resources roles. In 1970, she joined Citibank as a Research Analyst, where she subsequently took her first HR role as Director and rose steadily working primarily across investment and wholesale banking with a range of geographic responsibilities until 1993.

In addition, Sally Bott is a member of the Board of the Royal College of Music in London. She has a Bachelor in Economics of the Manhattanville College, USA, and followed courses towards a Masters in Economics at the New York University She is a US citizen.

Subject to her election, the Board of Directors intends to appoint Sally Bott as a member of the Human Resources and Compensation Committee.

### 1.2. Rainer-Marc Frey

**A. Motion**

The Board of Directors proposes that Rainer-Marc Frey be elected as an independent member of the Board of Directors.

**B. Explanations**

Rainer-Marc Frey (1963) is the founder and Chairman of Horizon21, a thematically based investment manager which takes long-term investment views on various industry sectors. In 1992 he founded RMF Investment Group (RMF), one of the first hedge fund groups in Europe, and became Chief Executive Officer. RMF was acquired by Man Group Plc in 2002. Between 2002 and 2004, he held a number of senior roles within Man Group Plc and was the largest individual shareholder. From 1989 to 1992, prior to founding RMF, Rainer-Marc Frey served as a Director at Salomon Brothers Inc. in Zurich, Frankfurt and London, where he mainly was involved with equity derivatives. Between 1987 and 1989 he worked for Merrill Lynch Inc. covering equity, fixed income and swaps markets with the primary focus on equity derivatives.

In addition, Rainer-Marc Frey is a member of the Board of Directors of DKSH, Zurich, and a member of the Advisory Board of Invision Private Equity AG, Zug. He holds a degree in economics from the University of St. Gallen (Switzerland). He is a Swiss citizen.

Subject to his election, the Board of Directors intends to appoint Rainer-Marc Frey as a member of the Risk Committee and of the Strategy Committee.

### 1.3. Bruno Gehrig

**A. Motion**

The Board of Directors proposes that Bruno Gehrig be elected as an independent member of the Board of Directors.

**B. Explanations**

Bruno Gehrig (1946) has been Chairman of Swiss Life Holding since 2003. Between 1996 and 2003 he served at the Swiss National Bank starting as a member of the Governing Board and becoming Vice Chairman in 2000. From 1992 to 1996, he was a Professor at the University of St. Gallen and concurrently served as a member of the Swiss Federal Banking Commission. Between 1989 and 1991, he held the position of CEO at Cantrade Private Banking Group. Bruno Gehrig worked for the former Union Bank of Switzerland (UBS) between 1981 and 1989, where he started as Chief Economist before assuming responsibility for Securities Sales & Trading.

In addition, Bruno Gehrig is the Vice Chairman of the Board of Directors of Roche Holding AG, Basel, and the Chairman of the Swiss Luftfahrtstiftung, Zug. He studied Economics at the University of Berne (Switzerland), where he also did his PhD studies. He completed postgraduate studies at the University of Rochester, New York. He is a Swiss citizen.

Subject to his election, the Board of Directors intends to appoint Bruno Gehrig as a member of the Audit Committee.

# Status Report of the Board of Directors

**The Chairman of the Board of Directors will report on the following matters:**

(i)   New corporate governance of UBS AG as of 1 July 2008

(ii)  Strategic repositioning of UBS AG including implementation

(iii) Implementation of the remediation programme following the investigation of the Swiss Federal Banking Commission

The Board of Directors will make this status report for information purposes and outside of the agenda items of the Extraordinary General Meeting. No resolution will be adopted under this item.

# Item 2

**Amendments to the Articles of Association**

Adjustment to the new UBS corporate governance effective as of 1 July 2008 (Title of Article 20, Articles 20 para. 1, 21 para. 2, 24 lit. e, 29 and 30 of the Articles of Association)

**Status Report of the Board of Directors**

**Agenda Item 1**
**Elections of New Members of the Board of Directors**
1.1. Sally Bott
1.2. Rainer-Marc Frey
1.3. Bruno Gehrig
1.4. William G. Parrett

**Agenda Item 2**
**Amendments to the Articles of Association**
Adjustment to the new UBS corporate governance effective as of 1 July 2008 (Title of Article 20, Articles 20 para. 1, 21 para. 2, 24 lit. e, 29 and 30 of the Articles of Association)

# Introduction

**Requests for the Inclusion of Items on the Agenda**
On 13 August 2008, UBS AG published a notice in the Swiss Official Commercial Gazette (Schweizerisches Handelsamts-blatt), various Swiss and international newspapers as well as on its website at *www.ubs.com/shareholder-meeting*. Qualifying shareholders were invited to submit their requests for the inclusion of individual items on the agenda by 29 August 2008. No requests were submitted.

*Article 30*

[1] The Group Executive Board is responsible for the management of the Group. It is the supreme executive body as defined by the Swiss Federal Law on Banks and Savings Banks. It implements the Group strategy decided by the Board of Directors and ensures the execution of the decisions of the Board of Directors and the Chairman's Office. It is responsible for the Group's results.

[2] The Group Executive Board has the following principal responsibilities:

a) Preparing and proposing Group strategy and the fundamental policy decisions necessary for their implementation, the Organization Regulations and the basic organizational structure of the Group

b) Exercising such functions and authorities as shall be assigned to it by the Organization Regulations

c) Regularly informing the Board of Directors, as prescribed by Art. 25, item b of these Articles of Association, and submitting the documents in accordance with Art. 25, items a and c of these Articles of Association

[3] The functions and authorities of the Group Executive Board and other management units designated by the Board of Directors are to be defined by the Organization Regulations.

*Article 30*

[1] The Group Executive Board, acting under the leadership of the Group Chief Executive Officer, is responsible for the management of the Group. It is the supreme executive body as defined by the Swiss Federal Law on Banks and Savings Banks. It implements the Group strategy decided by the Board of Directors and ensures the execution of the decisions of the Board of Directors. It is responsible for the Group's results.

[2] The responsibilities and authorities of the Group Executive Board and other management units designated by the Board of Directors are defined by the Organization Regulations.

**B. Explanations**
As of 1 July 2008, the Board of Directors amended the governance structure of UBS AG and the new organization regulations of the company became effective as of the same date. The new model clarifies the separation of responsibilities between the Board and the Group Executive Board and abolishes the Chairman's Office.

As a result, the Articles of Association will have to be amended accordingly.

# EXHIBIT D

Notice of Determination

James W. Giddens
Trustee for the SIPA Liquidation of Lehman Brothers Inc.
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd Floor
New York, NY 10017

*In re* Lehman Brothers Inc.

Case No. 08-01420 (JMP) SIPA

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

September 2, 2009

**VIA UPS OVERNIGHT**

OLIVANT INV SWITZERLAND SA
TREVOR LAIN
O'MELVENY & MYERS LLP
TWO EMBARCADERO CENTER, 28TH FLOOR
SAN FRANCISCO, CA 94111

> Re: Claim Number(s):   800002702
> Account Number(s):  05606841

Dear Claimant:

### PLEASE READ THIS NOTICE CAREFULLY.

The liquidation of the business of Lehman Brothers Inc. ("LBI") is being conducted by James W. Giddens, Trustee (the "Trustee") under the Securities Investor Protection Act of 1970, as amended ("SIPA") pursuant to an order entered on September 19, 2008 by the United States District Court for the Southern District of New York. You have submitted the above-referenced claim(s) (the "Claim") as a customer claim in this proceeding. This Notice is applicable only to the claim(s) and/or accounts identified above. If you filed other claims, additional notices will be issued.

The Trustee has made the following determination regarding your Claim:

Your Claim is DENIED. The above-referenced account(s) (the "Account") is with Lehman Brothers International (Europe) ("LBIE"), not LBI. LBIE has filed claims with the Trustee for funds or property held or believed to be held by LBI for the benefit of LBIE's customers.

**PLEASE TAKE NOTICE:** If you disagree with this determination and desire a hearing before Bankruptcy Judge James M. Peck, you MUST file your written opposition, setting forth (i) the claim number; (ii) a detailed statement of the reasons for your objection to the Trustee's determination; (iii) copies of any document or other writing upon which you rely; and (iv) mailing, phone, and email contact information, with the United States Bankruptcy Court and the Trustee within THIRTY DAYS of the date of this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must file your opposition in accordance with the above procedure electronically with the Court on the docket of *In re* Lehman Brothers Inc., Case No. 08-01420 (JMP) SIPA in accordance with General Order M-242 (available at www.nysb.uscourts.gov/orders/orders2.html) by registered users of the Court's case filing system and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), Microsoft Word or any other Windows-based word processing format.

If you do not have means to file your opposition electronically, you may mail your opposition to:

> Clerk of the United States Bankruptcy Court
> Southern District of New York
> One Bowling Green
> New York, New York 10004

**PLEASE TAKE FURTHER NOTICE:** You must serve your opposition upon the Trustee's counsel by mailing a copy to:

> Hughes Hubbard & Reed LLP
> One Battery Park Plaza
> New York, NY 10004
> Attn: LBI Hearing Request
>
> Attorneys for James W. Giddens, Trustee for
> the SIPA Liquidation of Lehman Brothers Inc.

> Very Truly Yours,
>
> James W. Giddens
> Trustee for the SIPA Liquidation of
> Lehman Brothers Inc.

# EXHIBIT E

LBIE Administrators' January 20, 2009 Press Release



United Kingdom home

# Lehman Brothers International (Europe) (in administration) – Update on Client Money and Client Assets held by Lehman Brothers Inc.

### SIPA customer claims - Action required

On 19 September 2008 (the "Filing Date"), the United States District Court for the Southern District of New York entered an Order granting the application of the Securities Investor Protection Corporation for issuance of a Protective Decree adjudicating that the customers of Lehman Brothers Inc. ("LBI") are in need of the protection afforded by the Securities Investor Protection Act of 1970, as amended ("SIPA"). James W. Giddens (the "Trustee") was appointed trustee for the liquidation of the business of LBI, and Hughes Hubbard & Reed LLP was appointed as counsel to the Trustee.

On 1 December 2008, the Trustee informed customers of LBI who wish to be eligible for the maximum protection that may be afforded to them under SIPA that they must file claims with the Trustee by 30 January 2009. Claims filed in LBI's SIPA proceeding will be subject to the jurisdiction of the United States Bankruptcy Court for the Southern District of New York.

This statement is to notify you that, in addition to filing a claim on behalf of Lehman Brothers International (Europe) (in administration) ("LBIE") by the 30 January 2009 deadline, the Joint Administrators, acting as LBIE's agent and without any personal liability (the "Administrators"), intend to submit an omnibus claim on behalf of each of LBIE's customers whose cash, securities or other assets were (or should have been) held by LBI on the Filing Date. Note, however, the omnibus claim will not include cash, securities or other assets that were booked by customers directly with LBI, i.e. for a claimant that is a direct customer of both LBIE and LBI, LBIE's omnibus claim will only include cash, securities and other assets of such customer held by LBI through LBIE. The reasons that the Administrators are submitting claims on behalf of certain LBIE's customers as described above are to seek to preserve (i) each customer's right to obtain the maximum protection afforded under SIPA and (ii) the value of any security or other interest, if applicable, that LBIE may have over any proceeds of each customer's recovery from LBI's estate. LBIE cannot make any representation regarding actual recoveries to be obtained from LBI's estate in respect of any of its claims.

LBIE is undertaking an extensive review of its books and records to identify customers with potential claims against LBI. Notwithstanding LBIE's considerable efforts to retrieve and analyse as much customer data as possible, LBIE faces issues including missing or inaccessible records and IT data that complicate the compilation of claims. Consequently, LBIE cannot guarantee that the omnibus claim that it files on behalf of certain of its customers will identify every customer with securities, cash or other assets held by LBI through LBIE and neither the Administrators nor LBIE accept any liability arising out of any inaccuracies or deficiencies in the information provided. LBIE's customers may wish to pursue their rights in the SIPA proceeding by filing a claim on their own behalf with the Trustee as well.

Further, the Trustee has asked LBIE to provide customer

Lehman Brothers International (Europe) (in administration) Contact Details ■

Bookmark with:

signatures evidencing LBIE's authority to file claims on behalf
of its customers.  LBIE has agreed to use reasonable efforts to
obtain customer signatures without prejudice to any argument
that LBIE is authorised to file claims on behalf of its customers
on any other basis.  Additionally, the Trustee has indicated
that receipt of responses to questions 4 – 11 on the SIPA
claim form by LBIE's customers may help to expedite the
Trustee's claim determination process.  LBIE has prepared a
customer authorisation form (the "Customer Authorisation") to
evidence LBIE's authority to file a claim on each customer's
behalf and to permit each customer to respond to the
questions the Trustee has posed to each claimant in the SIPA
claims process. The Administrators urge LBIE's customers to
sign and return Customer Authorisations, duly completing
questions 1 – 8 thereof, to the Administrators at the address
set forth below as soon as possible.  LBIE is advised that
returning a signed Customer Authorisation to LBIE will not
prejudice a customer's right to file a SIPA claim on its own
behalf against LBI on or before 30 January 2009.

Copies of the Trustee's Notice of the SIPA claims process,
claim forms, and other background information on the SIPA
liquidation may be found at www.sipc.org under
Proceedings/Liquidation and on the Trustee's website,
www.lehmantrustee.com.

Click here to download a copy of the Customer Authorisation.

Executed Customer Authorisations should be be emailed in
PDF to clientpositionresponses@lbia-eu.com or sent as soon
as possible to:

Cathy Stewart
Trust Property Team
Lehman Brothers International (Europe)
25 Bank Street
London
E14 5LE

Any questions regarding this information should be directed to
clientpositionresponses@lbia-eu.com

■ Delicious   ▪ Facebook   Digg   reddit