Hearing Date and Time: To be obtained by Trustee
Objection Date and Time: To be determined

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 S. Grand Ave. #3400
Los Angeles, CA 90046
(213) 687-5000
Van C. Durrer II

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Andrew M. Thau

Attorneys for JA Solar Holdings Co., Ltd.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
: 
: 
In re LEHMAN BROTHERS  :  Chapter 11
 INC.,  :  Case No. 08-01420 (JMP) SIPA
: 
 Debtor.  :
: 
------------------------------------------------------------:

# OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM NO. 800002542

JA Solar Holdings Co., Ltd. ("JA Solar") hereby objects to the determination (the "Determination") of James W. Giddens, Trustee ("Trustee"), under the Securities Investor Protection Act of 1970, as amended ("SIPA"), denying Claim Number 800002542 (the "Claim"), as set forth in the Notice of Trustee's Determination of Claim dated September 14, 2009 ("Notice").

**PRELIMINARY STATEMENT**

1. JA Solar objects to the Determination because the Trustee states as bases for denying the Claim that JA Solar supposedly did not have a direct relationship with Lehman Brothers Inc. ("LBI") and that LBI owes no obligation to JA Solar as a potential creditor of another Lehman or non-Lehman entity. In fact, LBI does have a direct relationship with JA Solar in that LBI serves as the Collateral Agent to JA Solar under the ADS Lending Agreement (defined below) and has incurred obligations to JA Solar under the ADS Lending Agreement, including the obligation to turnover approximately $75 million in collateral.

2. JA Solar does not object to the Determination to the extent that JA Solar is determined not to have a customer claim against LBI. The Determination, however, should be without collateral estoppel or res judicata effects on any determination of whether JA Solar has a valid general creditor claim against LBI.[1]

**BACKGROUND**

3. On or about May 13, 2008, JA Solar, Lehman Brothers International (Europe) ("LBIE"), and LBI entered into the ADS Lending Agreement dated as of May 13, 2008 (the "ADS Lending Agreement"). Pursuant to the ADS Lending Agreement, JA Solar loaned 6,562,760 American Depositary Shares of JA Solar ("ADSs") to LBIE. LBI served as the Borrowing Agent to LBIE as well as the Collateral Agent to JA Solar under the ADS Lending Agreement. A true and correct copy of the ADS Lending Agreement is attached hereto as Exhibit A.

---

[1] As detailed below, JA Solar has in fact also filed a general creditor claim against LBI alleging substantially the same facts as bases for liability as the Claim.

2

4.      The ADS Lending Agreement was designed to facilitate JA Solar's public offering of up to $400 million in aggregate principal amount of 4.50% senior convertible notes due 2013 (the "Convertible Notes"). The Convertible Notes are convertible into American Depositary Shares of JA Solar. In connection with the offering of the Convertible Notes, JA Solar entered into a capped call transaction with Lehman Brothers OTC Derivatives Inc. (the "Capped Call Transaction"). LBI acted as Agent and Calculation Agent under the Capped Call Transaction.

5.      Pursuant to the ADS Lending Agreement, JA Solar loaned the ADSs to LBIE to facilitate privately negotiated transactions or short sales by which investors in the Convertible Notes could hedge their investment in the Convertible Notes and/or by which counterparties to the capped call transactions could hedge the capped call transactions.

6.      On September 15, 2008, Standard & Poor's issued a Credit Downgrade to LBIE as the term Credit Downgrade is defined in Section 1 of the ADS Lending Agreement. Under section 3(a) of the ADS Lending Agreement, by September 17, 2008 at 10:00 a.m. New York City time (the "Posting Deadline"), LBIE was to have transferred to LBI collateral with a market value at least equal to the market value of the loaned ADSs as of the close of business on the business day immediately preceding such transfer, for deposit to a securities account maintained on the books of LBI. As documented in the Claim, JA Solar's stock closed at $11.38 per share on September 16, 2008. Thus, if LBIE posted collateral on September 17, 2009, it was required to post collateral with a market value of at least $74,684,208 (6,562,760 shares multiplied by $11.38/share) to an account maintained on the books of LBI by the Posting Deadline.

7.      On September 15, 2008, LBIE was placed in administration proceedings in the United Kingdom, triggering an event of default under section 11(a)(iv) of the ADS Lending

Agreement. On September 18, 2008, JA Solar sent LBI written communication (the "September 18th Letter") demanding an accounting and turnover of all Collateral as well as exercising its right to terminate the ADS Lending Agreement pursuant to section 11(a) of the agreement. A true and correct copy of the September 18th Letter is attached hereto as Exhibit B.

8. Pursuant to section 6(c) of the ADS Lending Agreement, as a result of JA Solar's termination of the ADS Lending Agreement, LBIE was required to deliver all loaned ADSs to The Bank of New York for cancellation no later than September 22, 2008. LBIE took no such action. On October 29, 2008, JA Solar sent a follow up letter (the "October 29th Letter") to LBI, calling LBI's attention to this provision as well as reiterating JA Solar's demands for an accounting and turnover of collateral. JA Solar has received no response to the October 29th Letter from LBI. On November 13, 2008, JA Solar forwarded its demands for an accounting and turnover of collateral by written communication (the "November 13th Letter") to the Trustee. JA Solar has received no response to the November 13th Letter. True and correct copies of the October 29th Letter and the November 13th Letter are attached hereto as Exhibits C and D respectively.

9. The loaned ADSs have yet to be returned to JA Solar as required under the ADS Lending Agreement. Pursuant to the ADS Lending Agreement, LBI, as Collateral Agent, should be maintaining an account containing approximately $75 million of JA Solar's collateral. JA Solar is entitled to the return of the loaned ADSs and/or the turnover of collateral in this account to the extent of JA Solar's damages for LBI's breach of the ADS Lending Agreement.

10. On September 19, 2008, the United States District Court for the Southern District of New York entered an Order placing LBI into a liquidation proceeding pursuant to SIPA and removed the liquidation proceeding to this Court.

11. On or about January 29, 2009, JA Solar filed the Claim in this case. At the time the Claim was filed, JA Solar was unclear as to whether its claim against LBI was properly classified as a customer claim or a general creditor claim. In an abundance of caution and in order to preserve its rights, JA Solar filed another claim (the "<u>General Creditor Claim</u>") on or about January 30, 2009 as a general creditor claim.[2] The General Creditor Claim alleges substantially the same facts and bases for liability as the Claim.

## ARGUMENT

12. The Notice sets forth three reasons for the Trustee's denial of the Claim: (a) the Claim allegedly shows that JA Solar had a relationship with another Lehman or non-Lehman entity, not a direct relationship with LBI, (b) the cash and/or securities claimed were not held in a customer account with LBI and (c) LBI allegedly owes no obligation to JA Solar as a potential creditor of another Lehman or non-Lehman entity.

13. JA Solar objects to the Determination to the extent that it is based on the allegations that JA Solar did not have a direct relationship with LBI or that LBI owes no obligations to JA Solar. While it is true that JA Solar had a direct relationship with LBIE with respect to the ADS Lending Agreement, JA Solar also had a direct relationship with LBI. As detailed above, LBI served as Collateral Agent to JA Solar under the ADS Lending Agreement and owed fiduciary duties to JA Solar.

14. In addition, regardless of whether JA Solar's relationship with LBI can be classified as a direct relationship, it is clear that LBI has incurred liability to JA Solar under the ADS Lending Agreement. As detailed above, as Collateral Agent, LBI should be maintaining an

---

[2] There is no public claims register in these proceedings, but the claims agent in these proceedings, Epiq Bankruptcy Solutions, LLC, has informed JA Solar that the General Creditor Claim has been assigned claim number 000002851.

5

account with approximately $75 million worth of JA Solar's collateral. Under the terms of the ADS Lending Agreement, LBI is obligated to turn this collateral over to JA Solar.

15. JA Solar does not object to a determination that it does not have a customer claim against LBI. JA Solar, however, is concerned that if the Claim is denied on the bases that JA Solar did not have a direct relationship with LBI or that LBI does not owe any obligations to JA Solar, that this determination will have collateral estoppel or res judicata effects on the determination of validity of the General Creditor Claim. Thus, JA Solar objects to the Determination to the extent that the Trustee is denying the Claim on these bases.

16. Alternatively, JA Solar requests that the Determination and any denial of the Claim be without prejudice to any rights that JA Solar has with respect to the General Creditor Claim and have no collateral estoppel or res judicata effects on any determination of the validity of the General Creditor Claim.

## RELIEF REQUESTED AND RESERVATION OF RIGHTS

17. As JA Solar has a direct relationship with LBI under the ADS Lending Agreement and LBI is accountable to JA Solar for approximately $75 million in collateral, the Claim should be denied solely on the basis that it is not a valid customer claim given that the collateral was not held in a customer account with LBI.

18. Alternatively, the Determination and any denial of the Claim should be without prejudice to any rights that JA Solar has with respect to the General Creditor Claim and have no collateral estoppel or res judicata effects on any determination of the validity of the General Creditor Claim.

19. Pursuant to the Notice and the Court Order (Docket No. 241) entered on November 7, 2008, JA Solar requests a hearing on this matter.

20. JA Solar reserves the right to revise, supplement or amend this Objection, and any failure to object on a particular ground or grounds shall not be construed as a waiver of JA Solar's right to object on any additional grounds.

21. JA Solar reserves all rights set forth in Federal Rule of Bankruptcy Procedure 9014, including, without limitation, rights of discovery.

22. JA Solar reserves all objections as to the competence, relevance, materiality, privilege or admissibility of evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever.

23. JA Solar incorporates by reference all reservations of rights set forth in the Claim and the General Creditor Claim.

Dated: Los Angeles, California
       October 13, 2009

    Skadden, Arps, Slate, Meagher & Flom LLP

    By:    _s/ Van C. Durrer II_
          Van C. Durrer II
    300 S Grand Ave. #3400
    Los Angeles, CA 90071
    Telephone: 213-687-5000
    Facsimile: 213-687-5600
    E-Mail: van.durrer@skadden.com

    Andrew M. Thau
    Four Times Square
    New York, New York 10036
    Telephone: 212-735-3000
    Facsimile: 212-735-2000
    E-Mail: andrew.thau@skadden.com

    Attorneys for JA Solar Holdings Co., Ltd.