**Hearing Date: November 18, 2009 at 10:00 a.m. (prevailing Eastern Time)**

David Dunn
Katie M. Lachter
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

    and

Stuart G. Stein
Craig H. Ulman
Khang V. Tran
HOGAN & HARTSON L.L.P.
Columbia Square
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

*Attorneys for Westernbank Puerto Rico*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------ x
In re:                                                       :
                                                             :
   LEHMAN BROTHERS INC.,                                     :   Case No. 08-01420 (JMP) SIPA
                                                             :
                  Debtor.                                    :
                                                             :
------------------------------------------------------------ x
```

**OBJECTION OF WESTERNBANK PUERTO RICO TO MOTION FOR ORDER
APPROVING TRUSTEE'S ALLOCATION OF PROPERTY OF THE ESTATE**

       Westernbank Puerto Rico ("Westernbank"), by counsel, submits this objection to the Motion for Order Approving Trustee's Allocation of Property of the Estate (the "Allocation Motion") (Docket No. 1866) filed by James W. Giddens, Trustee for the SIPA Liquidation of Lehman Brothers Inc. (the "Trustee"), and in support hereof, states as follows:

## BACKGROUND FACTS

1.  As of September 19, 2008, the date of the commencement of the liquidation of Lehman Brothers Inc. ("LBI"), Westernbank (including its International Division) maintained two accounts with LBI through which it was party to open repurchase agreements with LBI, under which Westernbank had the right to purchase, and LBI was obligated to sell, specified securities whose aggregate market value (as of that date) exceeded the repurchase price by approximately $140 million.

2.  Westernbank has filed timely customer claims against LBI totaling approximately $140 million (the "Westernbank Claims") but has not yet received any notices of determination pursuant to the Order . . . Specifying Procedures and Forms for Filing , Determination, and Adjudication of Claims . . . (Docket No. 241). The Trustee's counsel has reported informally that the Trustee expects to make a determination that Westernbank's claims do not constitute customer claims. The Trustee has made that determination with respect to other, similar claims arising from repurchase agreements with LBI. Westernbank intends to contest any such determination vigorously. 1/

3.  Through the Allocation Motion, filed October 5, 2009, the Trustee seeks authority to treat certain general categories of assets as "Customer Property," as defined in 15 U.S.C. § 78*lll*(4), and to make interim distributions and maintain reserves based on what the Trustee "believes to be prudent." Allocation Motion, Exh. B (proposed Order), at 2.

## OBJECTION

4.  Notwithstanding its heading, the Allocation Motion does not identify, or ask the Court to approve, any allocation of, or even any "proposed methodology for the

---

1/ Nothing contained in this Opposition should be construed to suggest that Westernbank's claims are not customer claims.

allocation of," Allocation Motion at 1, specific LBI estate property or specific amounts of such property. Instead, the Allocation Motion asks the Court to endorse "underlying" asset allocation "principles," id. ¶ 4, that the Trustee could then apply in the future in apportioning assets, making interim distributions and maintaining reserves, as and when he "believes it prudent." Id., Exh. B, at 2. The Trustee proposes that his future allocations of items to Customer Property under this sweeping advance authorization "<u>be deemed final</u> with respect to the property so allocated." Id. ¶ 156 (emphasis added).

5. The Allocation Motion argues that –

> An order establishing customer property allocation and the principles underlying such allocation is <u>necessary and appropriate at this juncture</u> in order to create a basis on which the Trustee can proceed on a timely basis with interim and final distributions to customers and other creditors of the LBI Estate. [Allocation Motion ¶ 4 (emphasis added).]

Elsewhere, however, the Allocation Motion recognizes that interim distributions to LBI customers cannot proceed until there is "determination of (or a sufficient basis to estimate) . . . the allowable customer claims," id. ¶ 2, and resolution of "disputes involving large dollar values." Id. ¶ 72.

6. Westernbank does not object to an approved and appropriate allocation of LBI estate property, made at a time when claimants and the Court are in a position to assess the consequences of that allocation and the propriety of proposed distributions and proposed reserves for disputed claims. But that time has not yet arrived. The Allocation Motion is premature and incomplete, and the sweeping authority the Trustee seeks is simply unwarranted.

### A. The Allocation Motion Is Premature and Incomplete

7. Instead of proposing an actual allocation of LBI property, the Allocation Motion identifies four broad categories of LBI assets that the Trustee would be authorized to allocate to customer property:

a. Reserved or segregated customer property;
b. Assets that can be traced back to customer property;
c. Resources provided through the use or realization of customer debits; and
d. Amounts corresponding to shortfalls in customer property because of LBI's failure to comply with applicable laws, rules and regulation. (Allocation Motion ¶¶ 122-32.)

These categories closely correspond to the categories of assets identified as "customer property" under 15 U.S.C. § 78*lll*(4), the Securities Investor Protection Act ("SIPA") definition of "customer property." The Trustee does not need the Court's blessing (or a 62-page Allocation Motion) for allocation principles reflected in the SIPA. The Trustee should obtain the Court's approval for his proposed <u>application</u> of those principles, <u>i.e.</u>, an actual allocation of assets, when he is in a position to make one; but the Trustee appears to be months away from reaching that position.

8. The Trustee asserts that his "Proposed Allocation Approach is Consistent With Prior SIPA Liquidations," Allocation Motion at 26; but the records in the prior liquidations that are cited in the Motion belie that assertion. In the liquidations cited by the Trustee the courts were asked to approve allocations of specific amounts of estate property. In the one cited liquidation that involved a proposed interim allocation of estate property, the SIPA trustee submitted tables specifying sources of funds and precise amounts to be allocated between customer property and general estate property, and the Bankruptcy Court approved an interim allocation based on those tables. See <u>In re Park South Securities, LLC</u>, No. 03-08024A, Application of Trustee for Order Approving (1) Initial Allocation of Property to the Customer Fund and General Estate and (2) Authorizing Interim Distribution from Customer Fund to Customers and the Securities Investor Protection Corporation, as Subrogee ¶¶ 22-24 (Bankr. S.D.N.Y. July 6, 2004); Order Approving Initial Allocation of Property to the Customer Fund and the General Estate and Distribution of Customer Fund Authorizing Interim [*sic*] at 3-4

(Bankr. S.D.N.Y. August 5, 2004). Similar information was presented in the other cases cited in the Allocation Motion, see ¶¶ 56-57, permitting the Bankruptcy Courts and the claimants to assess whether the proposed allocations were proper and consistent with SIPA. 2/  In this case, by contrast, the Trustee proposes nothing more than a general set of principles, under which he could make future allocations that would be "deemed to be final."  Thus, the Trustee's proposed approach here would deviate from the practice followed in the very SIPA liquidations that the Trustee himself has identified as precedents.

        9.      The Trustee acknowledges that even interim distributions to customers will depend on resolution of claims.  See id. ¶ 72 ("The Trustee would like to be in a position to proceed with interim distributions to customers following determination of allowable customer claims . . . although some of the disputes involving large dollar values will have to be resolved before distributions can proceed.") (Emphasis added.)  Until the Trustee is in a position to resume making distributions, and to establish appropriate reserves, an allocation of customer property – in whatever form and pursuant to whatever general principles – will be unnecessary.

---

2/     Other than Park South Securities, the cases cited by the Trustee involved requests to allocate estate property in conjunction with final reports.  In each case, the proposed allocation was supported by worksheets, tables and/or explanatory text describing a specific allocation of estate property.  See, e.g., In re A.R. Baron & Co., Case No. 96-8831A, Trustee's Application for Orders Approving the Allocation of Property of the Estate between the Customer Property Fund and the General Estate and Approving Final Distributions, Exh. A (Affidavit of Bruce E. Baker) ¶¶ 4-7 (Bankr. S.D.N.Y. May 5, 2003) (filed by James W. Giddens, as Trustee for the Liquidation of the Business of A.R. Baron & Co., Inc.); SIPC v. Austin Securities, Inc., Adv. No. 05-1144, Trustee's Investigatory and Final Reports and Account, Exh. B (Bankr. E.D.N.Y. Oct. 22, 2007); SIPC v. MJK Clearing, Inc., Adv. Proc. No. 01-4257, Notice of Hearing and Motion to Approve Trustee's Customer Fund Determination and Allocation, Final Distribution to Customers and Distributions to SIPC ¶¶ 14-18 & Exh. A. (Bankr. D. Minn. May 10, 2004); In re Cygnet Securities, Inc., Adv. Proc. No. 97-2651, Trustee's Final Report and Account, Allocation of Property and Request for Approval of Distribution of the Fund of Customer Property and Finding of No Distribution to General Creditors, Disposition of Books and Records, Assignment or Abandonment of Estate Property, and Other Relief ¶¶ 36-42 (Bankr. D.N.J. Nov. 15, 2004).

10. While this case has been pending for more than a year, it also is the largest and most complex SIPA liquidation ever conducted. As the Allocation Motion recognizes, an enormous amount of preparatory work remains to be done before the Trustee could apply the allocation principles that he asks the Court to endorse. For example, under the authority of 15 U.S.C. § 78*lll*(4)(D), the Trustee proposes to allocate all or most general estate assets to the fund of customer property, in order to make up for shortfalls in customer property arising from LBI's alleged non-compliance with applicable laws and regulations. See Allocation Motion ¶¶ 130-32. The Trustee admits, however, that "final reconciliations [of the shortfalls] are not complete," id. ¶ 132, and that the specific instances of non-compliance shortfalls described in the Allocation Motion "represent only what has been discovered in the liquidation to date, and it is likely that other items will emerge as the determination of customer claims continues," id. ¶ 117. As the Trustee acknowledges, the "process of marshalling assets of the LBI Estate is ongoing," id. ¶ 134. It involves very substantial assets, including the PIK Notes representing the value of former LBI subsidiaries that were preliminarily valued at $1.6 billion, id. ¶ 135, and contested motions by the Trustee, Lehman Brothers Holdings Inc. ("LBHI") and the Official Committee of Unsecured Creditors in the Chapter 11 cases of LBHI and its debtor affiliates (the "LBHI Creditors' Committee") that are scheduled for argument in late March 2010 and possible evidentiary hearings extending into May 2010. 3/

---

3/ See Trustee's Motion for Relief Pursuant to the Sale Orders or, Alternatively, for Certain Limited Relief under Rule 60(b) (LBI Docket No. 1971, filed in unsealed form Oct. 16, 2009); Motion of Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al., Pursuant to 11 U.S.C. § 105(a), Fed. R. Bankr. P. 60(b), and Fed. R. Bankr. P. 9024 (LBI Docket No. 1960, filed in unsealed form Oct. 15, 2009); In re Lehman Brothers Holdings Inc., Case No. 08-13555, Debtors' Motion for an Order, Pursuant to Fed. R. Civ. P. 60 . . . Modifying the September 20, 2008 Sale Order . . . (Docket No.5169,. filed in unsealed form Oct. 15, 2009) (the "LBHI Debtors' Rule 60(b) Motion); Trustee's Joinder in the LBHI Debtors' Rule 60(b) Motion (Docket No. 5173, filed September 15, 2009); Scheduling Order Concerning Certain Motions

11. In this case, unlike a conventional bankruptcy case, creditors and other parties in interest lack the information that they would need in order to monitor application of general allocation principles by the Trustee. Neither the Trustee nor LBI has filed schedules of assets and liabilities or a statement of financial affairs that could have provided meaningful information about LBI's condition as of September 19, 2008. The Trustee has filed one interim report, which provides only limited information about the assets and liabilities of the LBI estate; and that report was filed five months ago. See Trustee's First Interim Report for the Period September 19, 2008 Through May 29, 2009 ¶¶ 52-63 (Docket No. 1151). There is no creditors' committee overseeing the case, and the United States Trustee plays no role. The LBHI Creditors' Committee bears no responsibility for customers and creditors of LBI. Until the Trustee is in a position to propose specific allocations of LBI estate property, together with the details of any proposed interim distributions and proposed reserves for disputed claims, in a form that will permit meaningful review by the Court and claimants, the Trustee does not need, and the Court should not grant, any special authority to allocate estate assets, let alone the <u>carte blanche</u> authority sought in the Allocation Motion.

**B. The Proposed Order Would Give the Trustee Unwarranted Authority**

12. The Trustee's proposed Order, <u>see</u> Allocation Motion, Exh. B, compounds the failings of the Allocation Motion. The Trustee proposes that this Court authorize him (a) to make an allocation based on his "determination that the assets identified in the Motion as 'core customer property,' or property having equivalent value, are part of and fully constitute 'Customer Property'"; and (b) to allocate general estate property to the customer property fund to make up for shortfalls that the "Trustee determines would . . . have been set aside or held for the

---

Filed by LBHI, SIPA Trustee and Creditors Committee, entered October 27, 2009 (LBI Docket No. 1989).

benefit of customers" but for LBI's non-compliance with applicable laws and regulations. Id. at 2. In neither case would the Trustee's actions be subject to further disclosure to or review by the Court or by claimants. See Allocation Motion ¶ 136 (proposed allocations to Customer Property "should be deemed final").

13. The proposed Order would also authorize the Trustee to begin making interim distributions that "the Trustee believes to be prudent based on allowed and pending customer claims, the extent of Customer Property available, and any other contingencies for which the Trustee believes it prudent to reserve." Claimants against the LBI estate are entitled to more than assurances that Trustee will exercise prudence in wielding the sweeping authority that would be granted in the proposed Order. That is especially true for holders of disputed customer claims, and holders of customer claims that are not yet the subject of notices of determination. If the Trustee resumes making distributions on allowed customer claims while other customer claims remain in dispute, protection of the holders of the disputed claims could depend entirely on the adequacy of the reserves for disputed claims established and maintained by the Trustee. The Court and the affected claimants should be informed of, and should have an opportunity to assess the adequacy of, such reserves before any further distributions are made. Until the Trustee has issued notices of determination with respect to all filed customer claims, even the parameters for such reserves will remain uncertain.

## CONCLUSION

WHEREFORE, Westernbank requests that this Court deny the Allocation Motion without prejudice and grant such other and further relief as this Court deems appropriate.

New York, New York
October 30, 2009

**HOGAN & HARTSON L.L.P.**

By:   /s/ David Dunn
      David Dunn
      Katie M. Lachter
      875 Third Avenue
      New York, NY 10022
      Telephone: (212) 918-3000
      Facsimile: (212) 918-3100

      and

      Stuart G. Stein
      Craig H. Ulman
      Khang V. Tran
      HOGAN & HARTSON L.L.P.
      Columbia Square
      555 Thirteenth Street, N.W.
      Washington, D.C. 20004-1109
      Telephone:  (202) 637-5600
      Facsimile:  (202) 637-5910

      *Attorneys for Westernbank Puerto Rico*