SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
J. Gregory Milmoe
Andrew M. Thau

*Attorneys for BlackRock Financial Management Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    Case No. 08-01420 (JMP) SIPA
                In re                        :

LEHMAN BROTHERS, INC,                        :

                            Debtor.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## OBJECTION TO TRUSTEE'S DETERMINATION OF CLAIM

BlackRock Financial Management Inc. and its advisory affiliates,[1] as

investment advisors (collectively, in such capacity, the "Advisor") on behalf of BIA

Investments LLC (collectively with the Advisor, the "Customer"), hereby submit this

objection to the denial and reclassification of the Customer's claim number 900007964

(the "Claim") filed against Lehman Brothers Inc. (the "Debtor"), and in support thereof

respectfully represent as follows:

---

[1]    Including, but not limited to, BlackRock Investment Management LLC, BlackRock Advisers LLC,
       BlackRock Capital Management, BlackRock Japan Co. Ltd., BlackRock (Channel Islands) Ltd.,
       BlackRock Investment Management (Australia) Ltd., BlackRock Investment Management (UK) Ltd.,
       State Street Research & Management Company, BlackRock Fund Managers Ltd., and BlackRock
       International.

## BACKGROUND

1.      Beginning on September 15, 2008, Lehman Brothers Holdings Inc. and certain of its affiliates filed voluntary petitions under chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code"), 11 U.S.C. §§ 101 et seq.

2.      On September 19, 2008 (the "Commencement Date"), a proceeding was commenced under the Securities Investor Protection Act of 1970, as amended ("SIPA"), 15 U.S.C. §§ 78aaa - 78*lll*, with respect to the Debtor, a securities broker-dealer. James W. Giddens was appointed as trustee (the "Trustee") under SIPA to liquidate the Debtor's assets.

3.      The Customer filed a timely proof of claim, attached hereto as Exhibit A, asserting that the Claim, which arose from pre-Commencement Date transactions, is entitled to "customer" status under SIPA.

4.      On or about October 2, 2009, the Trustee served a notice (the "Determination Notice"), attached hereto as Exhibit B, upon the Customer denying "customer" status and reclassifying the Claim as a general creditor claim. The Determination Notice does not specify a rationale for denying "customer" status to the Claim.

5.      The Customer objects to the Determination Notice and asserts that the Claim is entitled to "customer" status under SIPA.[2]

---

[2]     The Customer and the Trustee negotiated a consensual extension of time to respond to the Determination Notice.

## THE CLAIM

6.      The Claim arises from the Customer's financing transaction with the Debtor in which the Customer agreed to transfer to the Debtor certain securities (CUSIP 31412FSD6 (FNMA 1/1 1Yr CMT ARM Aug 1, 2030), the "Securities") against the transfer of funds by the Debtor, with a simultaneous agreement by the Debtor to transfer to the Customer such securities at a later date (the "Reverse Repo"). The Reverse Repo was documented pursuant to a Master Repurchase Agreement, dated as of October 25, 1994 (as amended, supplemented or modified, the "MRA").

7.      On September 9, 2008, the Customer entered into the Reverse Repo with the Debtor effective September 11, 2008. In exchange for principal of $162,442,000, the Customer posted collateral having an aggregate initial par value of $405,076,575, which included $31,534,523 in original par amount of the Securities (the "Initial Collateral"). As the overall market value of the Initial Collateral exceeded the required credit support amount, the Customer made a collateral call. In order to satisfy this collateral call, the Debtor on September 12, 2008, delivered to the Customer $1,650,000 in original par value of the Securities (the "Credit Support Collateral"). The Initial Collateral and the Credit Support Collateral were delivered under a Federal Reserve Bank securities clearing "repo start" status ("RPST"), through which the deliverer of the Securities retained "economic ownership" of any future interest and principal payments made on the Securities.

8.      The Reverse Repo matured on September 17, 2008. As a result, the Debtor was supposed to return the full amount of the Initial Collateral to the Customer, and the Customer was supposed to return the full amount of the Credit Support Collateral to the Debtor. However, as the Debtor had a short position in the Securities, it was

unable to return the full amount of the Initial Collateral. Consequently, with the intent to net the Initial Collateral owed by the Debtor to the Customer against the Credit Support Collateral owed by the Customer to the Debtor, the Debtor delivered to the Customer $29,884,523 of original par amount of the Securities. Nevertheless, as far as the Federal Reserve Bank book-entry system was concerned, (i) the Initial Collateral was not fully closed out (an open balance of $1,650,000 original par amount remained) and (ii) the Credit Support Collateral RPST was still open (also an open balance of $1,650,000 original par value).

9.      On October 30, 2008 the Debtor instructed a service message to reverse the RPST on the Initial Collateral. On January 16, 2009 the Customer instructed a service message to reverse the RPST on the Credit Support Collateral. As a result, for each of the record dates preceding the January 16, 2009 Customer's instruction, *i.e.*, September 30, 2008; October 31, 2008; November 30, 2008; and December 31, 2008, the Debtor has received the principal and interest payments that were due to the Customer on the open position of the Initial Collateral. The total amount of payments due to the Customer is $81,329.23, as set forth in the Customer's proof of claim.

10.      The Customer Claim relates to the aforementioned interest and principal payments due from the Debtor for the open position of the Initial Collateral that remained in RPST during the time period from September 17, 2008 through January 16, 2009, even though the Reverse Repo had been closed out on September 17, 2008, and the payments should have been directed to the Customer.

## **ARGUMENT**

11.      The Customer seeks a determination that it is a "customer" under SIPA and, therefore, the Claim constitutes a "customer" claim under SIPA. *See* 15 U.S.C. §

78*lll*(2). Under SIPA, "customer" claims are entitled to (i) recover against "customer property," id. § 78*lll*(4) on the basis of their "net equity," id. § 78*lll*(11) and (ii) receive advances from a fund maintained by the Securities Investor Protection Corp. (the "SIPC").

12. With respect to a SIPA debtor, a "customer" is

> [A]ny person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities account of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.

Id. § 78*lll*(2). Further, this definition "includes any person who has a claim against the debtor arising out of sales or conversions of such securities." *Id.*

13. The Securities giving rise to the Claim are clearly "securities" under SIPA.[3] The Debtor's financing trade with the Customer was clearly within the "ordinary course of its business" as a "broker or dealer". Id. §§ 78*lll*(2) The Securities have been acquired "from or for the securities account" of the Customer. Moreover, the Debtor received, acquired and held the Securities with a view to their resale back to the Customer. Therefore, the nature of the relationship created by the MRA fits squarely within the definition of "customer" under SIPA.

14. We believe that denying the Claim "customer" status is inconsistent with SIPA, the legislative intent embodied by SIPA, and with prior case law. The primary purpose of SIPA is "to provide protection for investors if the broker-dealer with whom

---

[3]    SIPA's definition of "security" includes "any note, stock, treasury stock, bond, debenture, evidence of indebtedness, any collateral trust certificate . . . any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase or sell any of the foregoing, and any other instrument commonly known as a security." 15 U.S.C. § 78*lll*(14).

they are doing business encounters financial troubles." H.R. Rep. No. 91-1613, at 1 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 5254, 5255.  The Second Circuit has observed that SIPA's legislative history uses the term "'investors'. . . synonymously with 'customers,' indicating that, in the eyes of Congress, [SIPA] would protect capital markets by instilling confidence" in investors.  *SIPC v. Morgan, Kennedy & Co.*, 533 F.2d 1314, 1317 (2d Cir. 1976).

15.     SIPA's definition of "customer" is strikingly similar to the definition of "customer" in the stockbroker liquidation provisions of the Bankruptcy Code.  *Compare* 15 U.S.C. § 78*lll*(2) *with* 11 U.S.C. § 741(2).  As such, it is significant, as noted by a bankruptcy court in this District, that "[t]he sole legislative statement addressed to the [Bankruptcy] Code definition of 'customer' reveals that such descriptive term comprehends 'anybody that interacts with the debtor in a capacity that concerns securities transactions.'"  *In re SSIW Corp.*, 7 B.R. 735, 738 (Bankr. S.D.N.Y. 1980).  Indeed, the Reverse Repo transaction, in which the Customer and the Debtor engaged, and which forms the basis of the Claim, was related to trading in the securities market.

16.     The *Bevill, Bresler* court noted that Congress enacted SIPA to "protect individual investors from financial hardship, insulate the economy from the disruption which can follow the failure of major financial institutions, and to maintain public confidence in the capital markets." *See In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 67 B.R. 557, 602 (D.N.J. 1986).  Focusing on "the size and economic importance of the repurchase market," the court determined that providing "investors in this market with the protections afforded 'customers' under SIPA will significantly advance" SIPA's

goals. *Id.* As the Customer is clearly a participant of the repurchase market, the result should be no different here.

17.    Several courts have held that parties to repurchase transactions are "customers" under SIPA. *See id.* at 602 (holding that repo and reverse repo participants were "customers" of a debtor broker-dealer under SIPA); *see also City of Elkins v. Davidson* (In re Swink & Co.), 142 B.R. 874, 878-79 (Bankr. E.D. Ark. 1992) (holding that the parties to a repurchase transaction had contemplated a relationship in which they would trade in securities as broker-dealer and customer and that the broker-dealer had acted in a fiduciary capacity).

18.    In holding that parties to reverse repurchase agreements were "customers" under SIPA, the court in *Bevill, Bresler* noted that (i) reverse repurchase agreements were an integral part of the broker-dealer's ordinary course of business, (ii) the broker-dealer maintained computerized accounts for each reverse repurchase customer in which purchases and sales pursuant to reverse repurchase transactions were duly recorded, and (iii) the securities underlying the reverse repurchase transactions were received and/or acquired by the broker-dealer with a view to their resale back to the reverse repo participants on a predetermined future date. 67 B.R. at 597-98. The Customer's relationship with the Debtor satisfies each of these requirements.

19.    A number of courts have construed a claimant's status as a "customer" or a creditor as dependant on whether the claimant entrusted cash or securities to the broker-dealer debtor. *See, e.g., SIPC v. Executive Sec. Corp.*, 556 F.2d 98, 99 (2d Cir. 1977) (per curiam). In the present situation the Customer is clearly "customer" of the Debtor, not its creditor. In the *Bevill, Bresler* case, the court reasoned that the reverse repurchase

transaction participants were not creditors of the debtor because the risks and potential rewards of the transactions were "unquestionably *market-related* risks and rewards which are entirely distinct from and additional to any credit risk associated with the solvency of the broker as a financial intermediary." *See Bevill, Bresler*, 67 B.R. at 601.

20.     The Customer entrusted the Securities to the Debtor by transacting with the Debtor, as a dealer.  Therefore, the Customer's ability to receive the benefits of its investments depended on the Debtor fulfilling its obligations pursuant to the MRA terms and a well-established course of dealing.  Upon maturity of the Reverse Repo and return of the Initial Collateral to the Customer, it was entitled to receive interest and principal payments that were made on the Securities in the full amount of $31,534,523 original par value.  However, until January 2009, the Debtor was still receiving interest and principal payments on the open balance of $1,650,000 original par value, and, thus owes these amounts to the Customer.

21.     For all of the reasons stated above, the Claim should be allowed as a customer claim for purposes of SIPA.

## **RESERVATION OF RIGHTS**

22.     The Customer reserves all rights with respect to the Claim asserted herein.

The Customer further reserves all rights to amend or supplement this Objection or file a

reply to any response to this Objection filed by the Trustee.

Dated: New York, New York
      November 16, 2009

                      Skadden, Arps, Slate, Meagher & Flom LLP

                      By: */s/ J. Gregory Milmoe*
                            J. Gregory Milmoe
                      Andrew M. Thau
                      Four Times Square
                      New York, New York 10036
                      Telephone: 212-735-3000
                      Facsimile: 212-735-2000
                      E-Mail: gregory.milmoe@skadden.com
                                  andrew.thau@skadden.com

                      *Attorneys for BlackRock Financial*
                      *Management Inc. and its Advisory Affiliates*

## Exhibit A





**CUSTOMER CLAIM FORM**
**LEHMAN BROTHERS INC.**

Account Name: BlackRock Financial Mgmt. and its advisory affiliates*

Daytime Phone: 212-810-3001

Account Number: BIA

Email: peter.vaughan@blackrock.com

A/C: BIA INVESTMENTS, LLC

Contact Person: Peter Vaughan, Managing Director (Legal)

Address: 40 East 52nd St.

New York, NY 10022

Taxpayer ID:



FILED / RECEIVED

MAY 2 9 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

# PLEASE NOTE

- A SEPARATE CLAIM FORM SHOULD BE FILED FOR EACH ACCOUNT.

- TO BE ELIGIBLE FOR THE MAXIMUM PROTECTION AFFORDED UNDER THE SECURITIES INVESTOR PROTECTION ACT ("SIPA"), ALL CUSTOMER CLAIMS SHOULD BE RECEIVED BY THE TRUSTEE ON OR BEFORE JANUARY 30, 2009; THE TRUSTEE WILL DETERMINE WHETHER CLAIMS MEET THE STATUTORY REQUIREMENTS FOR "CUSTOMER" CLAIMS UNDER SIPA; INCLUSION OF A CLAIM OR CLAIM TYPE ON THIS CLAIM FORM IS NOT DETERMINATIVE OF CUSTOMER STATUS UNDER SIPA.

- THE DEADLINE FOR FILING ALL CLAIMS IS JUNE 1, 2009. NO CLAIM WILL BE ALLOWED IF IT IS RECEIVED AFTER THAT DATE.

- ALL CLAIMS ARE DATED AS OF THE DATE RECEIVED BY THE TRUSTEE.

- YOU MAY FILE YOUR CLAIM ELECTRONICALLY ONLINE AT WWW.LEHMANTRUSTEE.COM OR SEND YOUR COMPLETED AND SIGNED CLAIM FORM TO THE TRUSTEE VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED.

- IF YOUR ACCOUNT HAS BEEN TRANSFERRED TO ANOTHER BROKERAGE FIRM, BUT YOU BELIEVE YOU HAVE A CLAIM FOR PROPERTY OWED TO YOU BY LEHMAN BROTHERS INC., YOU MUST FILE A CLAIM TO PROTECT YOUR RIGHTS.

- LEHMAN BROTHERS INC. IS THE ONLY LEHMAN ENTITY THAT IS A DEBTOR IN THIS SIPA LIQUIDATION PROCEEDING. THIS CUSTOMER CLAIM FORM APPLIES ONLY TO LEHMAN BROTHERS INC. AND DOES NOT APPLY TO ANY OTHER LEHMAN ENTITY, INCLUDING ANY ENTITY IN A PROCEEDING UNDER CHAPTER 11 OF TITLE 11 OF THE UNITED STATES CODE.

\* Including, but not limited to, BlackRock Investment Management LLC, BlackRock Advisers LLC, BlackRock Capital Management, BlackRock Japan Co. Ltd., BlackRock (Channel Islands) Ltd., BlackRock Investment Management (Australia) Ltd., BlackRock Investment Management (UK) Ltd., State Street Research & Management Company, BlackRock Fund Managers Ltd. and BlackRock International.

This claim form must be completed electronically online at www.lehmantrustee.com
or mailed promptly, together with supporting documentation, to the following:

If by first class mail:

Lehman Brothers Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
P.O. Box 6389
Portland, OR 97228-63 89

If by overnight mail:

Lehman Brothers Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
10300 SW Allen Blvd
Beaverton, OR 97005

1.  **CLAIM FOR MONEY BALANCES OR CASH AS OF SEPTEMBER 19, 2008:**

    a.    LBI owes me a credit or cash in the amount of:    $ 81,329.23

    b.    I owe LBI a debit or cash in the amount of:    $_____

    c.    If you wish to repay the debit balance listed in point b.
above please insert the amount you wish to repay and
attach a check payable to "James W. Giddens, Trustee
for the SIPA Liquidation of Lehman Brothers Inc." If
you wish to make a payment, **it must be enclosed** with
this claim form.    $_____

*BlackRock reserves the right to (a) amend, update, or supplement this claim at any time and in
any respect; (b) file additional claims; and (c) amend, update, or supplement the claim to
include additional amounts (including, but not limited to, damages, attorneys' fees, costs and
expenses) due and owing under the agreements.

2.  **CLAIM FOR SECURITIES AS OF SEPTEMBER 19, 2008:**

    <u>**Please Do Not Claim Any Securities You Have In Your Possession**</u>

| | | YES | NO |
|---|---|---|---|
| a. | LBI owes me securities: | | ☒ |
| b. | I owe LBI securities: | | ☒ |
| c. | If yes to either, please list below (or in additional pages as necessary): | | ☒ |

2

| Trade Date of Transaction (mm/dd/yyyy) | Name of Security | CUSIP | Number of Shares or Face Amount of Bonds | |
|---|---|---|---|---|
| | | | LBI Owes Me (Long) | I Owe LBI (Short) |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

If additional space is needed, attach additional pages providing the information in the exact format above.

3. **COMMODITY FUTURES CLAIMS**

                                                                     YES    NO

Do you have a claim based on a commodity futures account?              ☒

If the answer to the above question is "yes," please state the amount, and explain the basis for your claim below, attaching additional pages and supporting documents as necessary:

Amount of Claim: _____

Basis for Claim: _____

_____

_____

_____

**WHEN COMPLETING SECTIONS 1 THROUGH 3 PLEASE KEEP IN MIND:**

- If you cannot compute the amount of your claim, you may file an estimated claim. In that case, please indicate that your claim is an estimated claim.

- Proper documentation can speed the review, allowance, and satisfaction of your claim.

- Please enclose: copies of your last LBI account statement; purchase or sale confirmation slips; copies of checks that relate to the securities or cash you claim; and any other documentation or correspondence you believe will be of assistance in processing your claim.

- Please explain any differences between the securities or cash claimed and the cash balance and securities positions on your last account statement.

- If, at any time, you complained in writing about the handling of your account to any person or entity or regulatory authority, and the complaint relates to the cash and/or securities that you are

now seeking, please be sure to provide with your claim copies of the complaint and all related correspondence, as well as copies of any replies that you received.

**PLEASE MARK THE APPROPRIATE ANSWER FOR ITEMS 4 THROUGH 11.**

**NOTE:** **IF "Y" IS MARKED FOR ANY ITEM, PROVIDE A DETAILED EXPLANATION ON A SIGNED ATTACHMENT. IF SUFFICIENT DETAILS ARE NOT PROVIDED, THIS CLAIM FORM WILL BE RETURNED FOR YOUR COMPLETION.**

|   |   | YES | NO |
|---|---|---|---|
| 4. | Does your claim in any way relate to an entity other than Lehman Brothers Inc. (for example, Lehman Brothers Holdings Inc., or another Lehman subsidiary)? | | ☒ |
| 5. | Has there been any change in your account since September 19, 2008? | | ☒ |
| 6. | Are you or were you a party to a repurchase or reverse repurchase agreement, director, officer, partner, shareholder, lender to, or capital contributor of LBI? | | ☒ |
| 7. | Are you related to, or do you have any business venture with, any of the persons specified in "6" above, or any employee or other person associated in any way with LBI? If so, give name(s). | | ☒ |
| 8. | Are or were you a person who, directly or indirectly and through agreement or otherwise, exercised or had the power to exercise a controlling influence over the management or policies of LBI? | | ☒ |
| 9. | Is this claim being filed on behalf of a customer of a broker or dealer or bank? If so, provide documentation with respect to each customer on whose behalf you are claiming. | | ☒ |
| 10. | Have you ever given any discretionary authority to any person to execute securities transactions with or through LBI on your behalf? Give names, addresses and phone numbers. | | ☒ |
| 11. | Have you or any member of your family ever filed a claim under the Securities Investor Protection Act of 1970? If so, give name of that broker. | | ☒ |

Please list the full name, address, phone number, and email address of anyone assisting you in the preparation of this claim form:

Full name: _____

Address: _____

_____

Phone number: _____

Email address: _____

If more than one person is assisting you, attach additional pages providing the information in the exact format above.

**IT IS A VIOLATION OF FEDERAL LAW TO FILE A FRAUDULENT CLAIM. CONVICTION CAN RESULT IN A FINE OF UP TO $50,000 OR IMPRISONMENT OF UP TO FIVE YEARS OR BOTH.**

**THE FOREGOING CLAIM IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION AND BELIEF.**

Date _____ 5.27.99 _____ Signature _____

Peter Vaughan
Managing Director
BlackRock Financial Management

(If ownership of the account is shared, all must sign above. Give each owner's name, address, phone number, and extent of ownership on a signed separate sheet. If other than a personal account, *e.g.*, corporate, trustee, custodian, etc., also state your capacity and authority. Please supply the trust agreement or other proof of authority.)

5

### BIA Investments, LLC (BIA)
### Proof of Claim Form

The attached claim relates to certain interest and principal payments due from Lehman Brothers Inc. ("LBI") for certain collateral that had been pledged by LBI to BIA Investments, LLC ("BIA"), a BlackRock Financial Management, Inc. ("BlackRock") advisory client, which remained in "repo start" status[1] ("RPST") during the time period from September 17, 2008 through January 16, 2009 even though the related trade had been closed out on September 17, 2008.

On September 9, 2008, BIA entered into a financing trade ("reverse repo") with LBI with effect from September 11. In exchange for principal of $162,442,000, BIA posted collateral having an aggregate initial par value of $405,076,575 (the "Initial Collateral"). The Initial Collateral was delivered to LBI under RPST. Included in this amount was $31,534,523 in original par amount of CUSIP 31412FSD6 (FNMA 1/1 1Yr CMT ARM Aug 1, 2030).

On September 12, 2008, LBI delivered to BIA under RPST $1,650,000 in original par value of CUSIP 31412FSD6 (the "Credit Support Collateral") in order to satisfy a collateral call that had been made by BlackRock on behalf of BIA, as the overall market value of the Initial Collateral exceeded the required credit support amount.

On September 17, 2008, the maturity date of the reverse repo, LBI was unable to return the full amount of the Initial Collateral as LBI was short position in CUSIP 31412FSD6. Subsequently, on September 17, LBI delivered to BIA $29,884,523 original par amount of CUSIP 31412FSD6 versus payment of $20,449,678.89 under "close repo" status ("CLRP"). The overall intention was to net the Initial Collateral position owed to BIA against the Credit Support Collateral owed back to LBI. However, the CLRP transaction left two issues unresolved: i) the Initial Collateral RPST was not fully closed out (an open balance of $1,650,000 original par amount remained); and ii) the Credit Support Collateral RPST was still open (also an open balance of $1,650,000 original par value).

On October 30, 2008 LBI instructed a service message to reverse the RPST on the Initial Collateral. BIA, however, did not instruct a similar service message to reverse the RPST on the Credit Support Collateral until January 16, 2009, and consequently, LBI would have received the principal and interest payments that were due to BIA on the open position of $1,650,000 original par value October through January scheduled payment dates. The amounts being claimed by BIA are reflected in the table, below. A copy of the confirmation of the reverse repo entered into on September 9, 2008 is attached as Exhibit A. Attached as Exhibit B is a screenshot from Bloomberg representing the relevant interest and principal payment history for 1,650,000 original par value of CUSIP 31412FSD6.

| Pay Date | Interest Payment | Principal Payment | Total Amount Due to BIA |
|---|---|---|---|
| 10/25/2008 | $4,612.86 | $9,043.83 | $13,656.69 |
| 11/25/2008 | $4,390.68 | $20,578.09 | $24,968.77 |
| 12/25/2008 | $4,133.51 | $17,567.24 | $21,700.75 |
| 01/25/2008 | $3,967.51 | $17,035.51 | $21,003.02 |
| | | TOTAL | $81,329.23 |

---

[1]     "Repo start" is a Federal Reserve Bank securities clearing status through which the deliverer of a security retains "economic ownership" of any future interest and or principal payments that are made on the security. A "close repo" would be used when the trade matures or collateral is otherwise returned.

From: RICHARD BOHART, LEHMAN BROTHERS, INC
To: TRADE SUPPORT, BLACKROCK FINANCIAL
Subject: Fwd:Lehman Trade Details
Date: 09/09, 2008  15:28:57


----- Original Message -----
From: rbohart@lehman.com
At:  9/09 15:28:34


The information provided herein does not replace or supercede your Lehman
Brothers confirmation. In the case of any conflict, the information contained
in your Lehman Brothers confirmation shall prevail.

---------------------------------------------------------------------------
---------------------------------------

This Message is intended only for the personal and confidential use of the
designated recipient(s) named above. If you are not intended recipient of this
message you are hereby notified that any review, dissemination, distribution or
copying of this message is strictly prohibited. This communication is for
information purposes only and should not be regarded as an offer to sell or as
a solicitation of an offer to buy any financial product, an official
confirmation of any transaction, or as an official statement of Lehman Brothers
Inc., its subsidiaries or affiliates. An e-mail transmission cannot be
guaranteed to be secure or error-free. Therefore, we do not represent that this
information is complete or accurate and it should not be relied upon as such.
All information is subject to change without notice.



- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - -

This message is intended only for the personal and confidential use of the
designated recipient(s) named above.  If you are not the intended recipient of
this message you are hereby notified that any review, dissemination,
distribution or copying of this message is strictly prohibited.  This
communication is for information purposes only and should not be regarded as an
offer to sell or as a solicitation of an offer to buy any financial product, an
official confirmation of any transaction, or as an official statement of Lehman
Brothers.  Email transmission cannot be guaranteed to be secure or error-free.
Therefore, we do not represent that this information is complete or accurate
and it should not be relied upon as such.  All information is subject to change
without notice.

| TradeType | ContractId | CollateralId | Version | Principal | ParAmount | StartDate | EndDate | Security | Rate | Price | Margin | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RR | 20080909-19754 | 20080909-39241 | 0 | 162,442,000.00 | 405,076,575.00 | 9/11/2008 | 10/14/2008 | 3128JRZG4 | | 100.598 | 103.093 | FHLMC ARMS |
| RR | 20080909-19754 | 20080909-39242 | 0 | 7,468,000.00 | 7,968,028.00 | 9/11/2008 | | 3128LUW69 | | 99.446 | 103.093 | FHLMC GOLD ARM 30 |
| RR | 20080909-19754 | 20080909-39240 | 0 | 7,709,000.00 | 8,529,504.00 | 9/11/2008 | | 3128JRZE9 | | 99.266 | 103.093 | FHLMC ARMS |
| RR | 20080909-19754 | 20080909-39243 | 0 | 7,090,000.00 | 7,723,923.00 | 9/11/2008 | | 3128PJWT0 | | 99.139 | 103.093 | GOLD 10 YEAR POOL |
| RR | 20080909-19754 | 20080909-39244 | 0 | 10,500,000.00 | 11,769,553.00 | 9/11/2008 | | 3128G2A37 | | 99.167 | 103.093 | FHLMC GOLD ARM 30 |
| RR | 20080909-19754 | 20080909-39245 | 0 | 5,167,000.00 | 6,573,484.00 | 9/11/2008 | | 31294LWG2 | | 99.143 | 103.093 | GOLD 10 YEAR POOL |
| RR | 20080909-19754 | 20080909-39246 | 0 | 7,256,000.00 | 8,398,255.00 | 9/11/2008 | | 31295KS96 | | 99.466 | 103.093 | FHLMC ARMS |
| RR | 20080909-19754 | 20080909-39247 | 0 | 1,678,283.00 | 50,000,000.00 | 9/11/2008 | | 31295KS96 | | 99.466 | 103.093 | FHLMC ARMS |
| RR | 20080909-19754 | 20080909-39248 | 0 | 1,678,283.00 | 50,000,000.00 | 9/11/2008 | | 31295KS96 | | 99.466 | 103.093 | FHLMC ARMS |
| RR | 20080909-19754 | 20080909-39249 | 0 | 1,678,283.00 | 50,000,000.00 | 9/11/2008 | | 31295KS96 | | 99.466 | 103.093 | FHLMC ARMS |
| RR | 20080909-19754 | 20080909-39250 | 0 | 127,151.00 | 3,788,116.00 | 9/11/2008 | | 31402RQB8 | | 98.46 | 103.093 | FNMA ARMS |
| RR | 20080909-19754 | 20080909-39251 | 0 | 2,932,000.00 | 6,205,697.00 | 9/11/2008 | | 31406C8U7 | | 98.408 | 103.093 | FNMA ARMS |
| RR | 20080909-19754 | 20080909-39252 | 0 | 10,228,000.00 | 22,000,000.00 | 9/11/2008 | | 31406C6V5 | | 98.821 | 103.093 | FNMA ARMS |
| RR | 20080909-19754 | 20080909-39253 | 0 | 3,166,000.00 | 7,000,000.00 | 9/11/2008 | | 31409VTX1 | | 100.824 | 103.093 | FNMA ARMS |
| RR | 20080909-19754 | 20080909-39254 | 0 | 7,821,000.00 | 21,121,677.00 | 9/11/2008 | | 31409XK40 | | 98.684 | 103.093 | FNMA ARMS |
| RR | 20080909-19754 | 20080909-39255 | 0 | 5,465,000.00 | 10,412,915.00 | 9/11/2008 | | 31411WPG6 | | 99.47 | 103.093 | FNMA ARMS |
| RR | 20080909-19754 | 20080909-39256 | 0 | 7,210,000.00 | 12,593,754.00 | 9/11/2008 | | 31412FSD6 | | 97.998 | 103.093 | FNMA ARMS |
| RR | 20080909-19754 | 20080909-39257 | 0 | 20,444,000.00 | 31,534,523.00 | 9/11/2008 | | 31412ML44 | | 98.44 | 103.093 | FNMA FIXED RATE |
| RR | 20080909-19754 | 20080909-39258 | 0 | 11,323,000.00 | 22,764,899.00 | 9/11/2008 | | 31414QLL9 | | 99.854 | 103.093 | FNMA FIXED RATE |
| RR | 20080909-19754 | 20080909-39236 | 0 | 6,152,000.00 | 7,226,720.00 | 9/11/2008 | | 3128JRCX2 | | 99.078 | 103.093 | FHLMC ARMS |
| RR | 20080909-19754 | 20080909-39238 | 0 | 2,983,000.00 | 9,507,704.00 | 9/11/2008 | | 3128JRLH7 | | 99.598 | 103.093 | FHLMC ARMS |
| RR | 20080909-19754 | 20080909-39235 | 0 | 6,998,000.00 | 13,710,204.00 | 9/11/2008 | | 3128JN2E4 | | 99.336 | 103.093 | FHLMC GOLD ARM |
| RR | 20080909-19754 | 20080909-39237 | 0 | 7,546,000.00 | 9,128,215.00 | 9/11/2008 | | 3128JRF76 | | 100.72 | 103.093 | FHLMC ARMS |
| RR | 20080909-19754 | 20080909-39239 | 0 | 8,868,000.00 | 24,699,353.00 | 9/11/2008 | | 3128JRZA7 | | 99.528 | 103.093 | FHLMC ARMS |
| RR | 20080909-19754 | | 0 | 10,954,000.00 | 12,220,051.00 | 9/11/2008 | | | | | | |

# Daily Summary for 9/12/2008

| Counterparty | Portfolio | Exposure | Ind Amt | Total Exposure | Support Req (Broker) | Support Req (Fund) | Collateral Pledged (Fund) | Collateral Pledged (Broker) | Non-Netting | Collateral To Receive | Collateral To Deliver | Reviewed By |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LEH | BIA | 1,134,931 | 0 | 1,134,931 | 1,134,931 | 0 | 0 | 0 | | 1,134,931 | 0 | fperrone |
| **Total LEH** | **BIA** | **1,134,931** | **0** | **1,134,931** | **1,134,931** | **0** | **0** | **0** | | **1,134,931** | **0** | **fperrone** |

# BlackRock

LEHMAN BROTHERS INC. (LEH) vs. BIA Investments, LLC (BIA) for 9/12/2008

Report created on 9/12/2008 6:21:00

|  | **Portfolio** | **Broker** |
|---|---|---|
| Exposure | 1,134,931 | |
| Ind Amt | | |
| | | |
| Total Exposure | 1,134,931 | |
| Threshold | 0 | 0 |
| | | |
| Credit Support Req | 0 | 1,134,931 |
| Collateral Pledged | 0 | 0 |
| | | |
| Min Transfer Amt | 500,000 | 500,000 |

| **BIA To Deliver** | 0 |
|---|---|
| **BIA To Receive** | 1,134,931 |

**Credit Terms**

| Agreement Currency | USD |
|---|---|
| Statement Currency | USD |
| FX Rate(USD/USD) | 1 |
| Netting | Yes |
| Rounding (Deliver) | None |
| Rounding (Return) | None |

The valuation information which appears in this statement is provided for your information only and does not create any independent obligation to enter into, transfer and assign, or terminate derivative transactions at indicated prices. The valuations reflect the subjective opinion of BlackRock and were performed as of the date on the statement based on market data as of that date. Although BlackRock makes no representations or guarantees regarding the accuracy, reliability or completeness of the pricing information, BlackRock has obtained the information on which it is based from sources it believes to be reliable. All price indications are subject to change without notice, and BlackRock reserves the right to use different valuation models in the future. BlackRock is not liable for any damages, including loss of profits, which may result from any reliance on this information.

**Exposure**

| CUSIP | Broker Trd ID | Td Num | Trade Date | Maturity | Product | Sec Ccy | Notional | Exposure | Ind Amt | FX Rate |
|---|---|---|---|---|---|---|---|---|---|---|
| 3128JN2E4 | | 261 | 09/09/2008 | 09/01/2037 | FH 3/1 12M LIBOR ARM 3/1 | USD | -9,128,215 | -8,013,885 | 0 | 1.0000 |
| 3128JRCX2 | | 261 | 09/09/2008 | 07/01/2030 | FH 1Y 1/1 CMT ARM | USD | -9,507,704 | -3,220,684 | 0 | 1.0000 |
| 3128JRF76 | | 261 | 09/09/2008 | 02/01/2031 | FH 1/1 1Y CMT ARM | USD | -24,699,353 | -9,317,534 | 0 | 1.0000 |
| 3128JRLH7 | | 261 | 09/09/2008 | 04/01/2030 | FHLMC 1/1 1YR CMT ARM 1/1 | USD | -13,710,204 | -7,471,012 | 0 | 1.0000 |
| 3128JRZA7 | | 261 | 09/09/2008 | 08/01/2029 | FHLMC 1/1 1Y TSY ARM 1/1 | USD | -12,220,051 | -11,626,555 | 0 | 1.0000 |
| 3128JRZE9 | | 261 | 09/09/2008 | 09/01/2029 | FHLMC 1/1 1Y TSY ARM 1/1 | USD | -7,723,923 | -7,557,342 | 0 | 1.0000 |
| 3128JRZG4 | | 261 | 09/09/2008 | 08/01/2029 | FH 3/3 3Y TSY ARM 3/3 | USD | -7,968,028 | -7,930,496 | 0 | 1.0000 |
| 3128LUW69 | | 261 | 09/09/2008 | 10/01/2037 | FH 3/1 1YR LIBOR ARM 3/1 | USD | -8,529,504 | -8,182,059 | 0 | 1.0000 |
| 3128PJWT0 | | 261 | 09/09/2008 | 02/01/2018 | FGOLD 15YR | USD | -11,769,553 | -11,016,730 | 0 | 1.0000 |
| 3128Q2A37 | | 261 | 09/09/2008 | 01/01/2038 | FH 3/1 1Y TSY ARM 3/1 | USD | -6,573,484 | -5,495,881 | 0 | 1.0000 |
| 31294LWQ2 | | 261 | 09/09/2008 | 02/01/2018 | FGOLD 15YR | USD | -8,598,255 | -7,612,792 | 0 | 1.0000 |
| 31295KS96 | | 261 | 09/09/2008 | 07/01/2029 | FHLMC 10/1 HYBRID ARM 10/1 | USD | -153,788,116 | -5,479,279 | 0 | 1.0000 |
| 31402RQB8 | | 261 | 09/09/2008 | 05/01/2035 | FN 5/1 6M LIBOR ARM 5/1 | USD | -6,205,697 | -3,105,788 | 0 | 1.0000 |
| 31406C6U7 | | 261 | 09/09/2008 | 05/01/2035 | FNMA 1/1 1YR CMT ARM 1/1 | USD | -22,000,000 | -10,818,962 | 0 | 1.0000 |
| 31406C6V5 | | 261 | 09/09/2008 | 08/01/2033 | FNMA 1/1 11TH DISTRICT COF ARM 1/1 | USD | -7,000,000 | -3,335,396 | 0 | 1.0000 |
| 31409VTX1 | | 261 | 09/09/2008 | 01/01/2033 | FNMA 1/1 1YR CMT ARM 1/1 | USD | -21,121,677 | -8,249,149 | 0 | 1.0000 |
| 31409XK40 | | 261 | 09/09/2008 | 10/01/2028 | FNMA 1/1 1Y CMT ARM 1/1 | USD | -10,412,915 | -5,824,574 | 0 | 1.0000 |
| 31411WPG6 | | 261 | 09/09/2008 | 12/01/2032 | FNMA 1/1 1YR CMT ARM 1/1 | USD | -12,593,754 | -7,661,339 | 0 | 1.0000 |
| 31412FSD6 | | 261 | 09/09/2008 | 08/01/2030 | FNMA 1/1 1YR CMT ARM 1/1 | USD | -31,534,523 | -21,855,883 | 0 | 1.0000 |
| 31412MLA4 | | 261 | 09/09/2008 | 03/01/2018 | FNMA 10YR | USD | -12,764,899 | -11,934,893 | 0 | 1.0000 |
| 31414QLL9 | | 261 | 09/09/2008 | 02/01/2018 | FNMA 10YR | USD | -7,226,720 | -6,487,885 | 0 | 1.0000 |
| **Total (21)** | | **261** | **09/09/2008 (21)** | **(21)** | | **USD** | **-405,076,575** | **-172,198,118** | **0** | **1.0000** |

**Collateral Pledged  (None)**

**Collateral Held  (None)**

| Agency | FN | WAC | 4.891 | Issuer Washington Mutual Bank | | State | %CurBal |
|--------|-----|-----|-------|-------------------------------|--|-------|---------|
| Pool | 924016 | WAM | 191 | Coupon 3.749 | Issued 06/01/07 | IL | 24% |
| CUSIP | 31412FSD6 | WALA | 164 | | Maturity 08/01/30 | MI | 24% |
| Type | FNARM | Amort | Level Pay ▓ | Orig Amt | 1,650,000.00 | IN | 16% |

| Date | 2007 | | 2008 ✓ | | 2009 ✓ | |
|------|-----------|-----------|-----------|-----------|-----------|-----------|
| | Principal ▓ | Interest ▓ | Principal | Interest | Principal | Interest |
| Jan | | | 55,641.18 | 7,434.35 | 17,035.51 | 3,967.51 |
| Feb | | | 16,854.96 | 7,009.14 | 5,846.25 | 3,765.99 |
| Mar | | | 16,780.43 | 6,799.53 | 9,922.19 | 3,659.07 |
| Apr | | | 50,265.85 | 6,523.37 | 14,293.80 | 3,451.31 |
| May | | | 32,936.41 | 6,034.77 | 9,463.81 | 3,221.11 |
| Jun | | | 17,973.58 | 5,708.27 | | |
| Jul | 70,255.15 | 8,971.88 | 9,394.24 | 5,434.02 | | |
| Aug | 47,580.79 | 8,578.01 | 43,405.23 | 5,252.65 | | |
| Sep | 16,025.53 | 8,323.48 | 33,257.50 | 4,866.98 | | |
| Oct | 57,958.89 | 8,220.00 | 9,043.83 | 4,612.86 | | |
| Nov | 14,702.97 | 7,866.88 | 20,578.09 | 4,390.68 | | |
| Dec | 41,650.08 | 7,703.35 | 17,567.24 | 4,133.51 | | |

Australia 61 2 9777 8600 Brazil 5511 3048 4500 Europe 44 20 7330 7500 Germany 49 69 9204 1210 Hong Kong 852 2977 6000
Japan 81 3 3201 8900      Singapore 65 6212 1000      U.S. 1 212 318 2000      Copyright 2009 Bloomberg Finance L.P.
SN 767326 G509-150-0 27-May-2009 22:08:05

## BLACKROCK FINANCIAL MANAGEMENT, INC.

### CERTIFICATE OF AUTHORITY

I, Daniel R. Waltcher, hereby certify that I am a Managing Director and Assistant Secretary of BlackRock Financial Management, Inc. and its U.S. advisory affiliates (collectively, "BlackRock"), and that, as such, Peter Vaughan, Managing Director of BlackRock Financial Management, Inc. is authorized to certify as to the matters addressed in the attached Customer Claim Form of Lehman Brothers Inc. on behalf of BlackRock. Each customer for whom these claims are being filed has executed an investment agreement which authorizes BlackRock to make all investment decisions and take all related actions with respect to the accounts.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Authority as of the 27th day of January, 2009.

BLACKROCK FINANCIAL
MANAGEMENT, INC.

By: _____
Name: Daniel R. Waltcher
Title: Managing Director

STATE OF NEW YORK      }
                       }
COUNTY OF NEW YORK     }

Before me, the undersigned authority, on this day personally appeared Daniel R. Waltcher, known to me to be the person whose name is subscribed to the foregoing instruments, and acknowledged to me that he/she signed the same for the purposes and considerations therein expressed.

Sworn to before me this 27th day of January, 2009.

_____
Notary Public - State of New York

TINA STEWART
NOTARY PUBLIC - State of New York
No. 01ST6145421
Qualified in Queens County
Commission Expires 5/8/10

## **Exhibit B**

James W. Giddens
Trustee for the SIPA Liquidation of Lehman Brothers Inc.
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd Floor
New York, NY 10017

*In re* Lehman Brothers Inc.

Case No. 08-01420 (JMP) SIPA

## NOTICE OF TRUSTEE'S DETERMINATION OF CLAIM

October 2, 2009

**VIA UPS OVERNIGHT**

BLACKROCK FINANCIAL MGMT
PETER VAUGHAN
A/C BIA INVESTMENTS LLC
40 EAST 52ND ST
NEW YORK, NY 10022

Re:  Claim Number(s):  900007964
Account Number(s):  BIA

Dear Claimant:

### PLEASE READ THIS NOTICE CAREFULLY

The liquidation of the business of Lehman Brothers Inc. ("LBI") is being conducted by James W. Giddens, Trustee (the "Trustee") under the Securities Investor Protection Act of 1970, as amended ("SIPA") pursuant to an order entered on September 19, 2008 by the United States District Court for the Southern District of New York. You have submitted the above-referenced claim(s) (the "Claim") as a customer claim in this proceeding. This Notice is applicable only to the claim(s) and/or accounts identified above. If you filed other claims, additional notices will be issued.

The Trustee has made the following determination regarding your Claim:

Your claim for customer treatment of cash and/or securities under the SIPA is DENIED. The cash and/or securities that you claimed are not customer property pursuant to SIPA. As such, your claim is not entitled to treatment as a customer claim eligible to share from the fund of customer property or SIPA cash advances.

Although the Trustee has denied your claim for customer treatment under SIPA, he is converting your claim to a general creditor claim on the Debtor's estate, similar to a claim in an ordinary bankruptcy case. No determination is being made as to the validity or allowed amount of the claim at this time. After the determination of customer claims, the Trustee will address all general creditor claims and you will receive a further notification as to the Trustee's determination of your general creditor claim.

With respect to the determination of your claim as a general creditor claim, you do not need to take any further action at this time. The Trustee will send you a further notification once he has made a determination of your claim as a general creditor claim.

**PLEASE TAKE NOTICE:** If you disagree with the determination that your claim is Denied as a customer claim and desire a hearing before Bankruptcy Judge James M. Peck, you MUST file your written opposition, setting forth (i) the claim number; (ii) a detailed statement of the reasons for your objection to the Trustee's determination; (iii) copies of any document or other writing upon which you rely; and (iv) mailing, phone, and email contact information, with the United States Bankruptcy Court and the Trustee within THIRTY DAYS of the date of this notice.

**PLEASE TAKE FURTHER NOTICE:** If you do not properly and timely file a written opposition, the Trustee's determination with respect to your claim will be deemed confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** If you properly and timely file a written opposition, a hearing date for this controversy will be obtained by the Trustee and you will be notified of that hearing date. Your failure to appear personally or through counsel at such hearing will result in the Trustee's determination with respect to your claim being confirmed by the Court and binding on you.

**PLEASE TAKE FURTHER NOTICE:** You must file your opposition in accordance with the above procedure electronically with the Court on the docket of *In re* Lehman Brothers Inc., Case No. 08-01420 (JMP) SIPA in accordance with General Order M-242 (available at www.nysb.uscourts.gov/orders/orders2.html) by registered users of the Court's case filing system and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), Microsoft Word or any other Windows-based word processing format.

If you do not have means to file your opposition electronically, you may mail your opposition to:

Clerk of the United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004

**PLEASE TAKE FURTHER NOTICE:** You must serve your opposition upon the Trustee's counsel by mailing a copy to:

> Hughes Hubbard & Reed LLP
> One Battery Park Plaza
> New York, NY 10004
> Attn: LBI Hearing Request
>
> Attorneys for James W. Giddens, Trustee for
> the SIPA Liquidation of Lehman Brothers Inc.

> Very Truly Yours,
>
> James W. Giddens
> Trustee for the SIPA Liquidation of
> Lehman Brothers Inc.

cc: Andrew M. Thau
    Skadden, Arps, Slate, Meagher & Flom LLP
    Four Times Square
    New York, NY 10036-6522