**SEWARD & KISSEL LLP**
Ronald L. Cohen (RC 3897)
Justin L. Shearer (JS 1823)
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

Attorneys for Claren Road Credit Master Fund, Ltd.
**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| **IN RE:** | : | |
| | : | |
| **LEHMAN BROTHERS INC.,** | : | Case No. 08-01420 (JMP) SIPA |
| | : | |
| **Debtor.** | : | |
| | : | |

## OBJECTION OF CLAREN ROAD CREDIT MASTER FUND, LTD. TO TRUSTEE'S DETERMINATION OF CLAIM

Claren Road Credit Master Fund, Ltd. (the "Claimant"), by its undersigned

counsel, hereby objects (the "Objection") to the Notice of Trustee's Determination of Claim

Numbers 900004590, 900005056 and 900006420 (the "Denial") by James W. Giddens as

Trustee for Lehman Brothers Inc. (the "Trustee"), and respectfully represents as follows:

A.    Background

1.    LBI was a broker-dealer registered with the United States Securities and

Exchange Commission (the "SEC") under the Securities and Exchange Act of 1934, as amended,

15 U.S.C. § 78o(6) (the "Exchange Act").  LBI also was a member of the Securities Investor

Protection Corporation ("SIPC") and currently is being liquidated before this Court pursuant to

the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. § 78aaa *et seq.* ("SIPA").

2. Claimant opened a prime brokerage account with LBI (the "PB Account") pursuant to a Customer Account Agreement Prime Brokerage, dated December 28, 2005 (the "PBA"). Claimant also entered into a Margin Lending Agreement with LBI and its affiliate Lehman Brothers International Europe ("LBIE") that was arranged by LBI, dated December 28, 2005 (the "MLA"), and a Global Master Securities Lending Agreement with LBIE arranged by LBI, dated December 28, 2005 (the "GMSLA"). Each of the PBA, MLA and the GMSLA (collectively, the "Agreements") is expressly governed by the laws of the State of New York.

3. LBI designated the Claimant account with the numbers 948-01783 and 056-01785. Claimant never opened a prime brokerage account or had a customer account agreement with LBIE. To its knowledge, Claimant's communications and dealings regarding the PB Account were only with LBI representatives in New York.

4. Upon information and belief, LBI improperly transferred to its affiliate, LBIE, or permitted LBIE to retain, Claimant's securities and cash balances, including cash proceeds from transferred securities, far in excess of the amounts necessary or permitted to collateralize any Claimant borrowing from LBIE.

5. On January 26, 2009, Claimant filed a customer proof of claim with the Trustee for cash and securities in, or that should have been in, the PB Account (the "Claim"). By notice dated March 25, 2010, the Trustee denied the Claim, asserting that Claimant's prime brokerage account 056-01783 is with LBIE. The Denial further stated that account 948-01783 was empty as of September 19, 2008. Claimant objects to the Denial.

B.     Claimant is a "Customer" under SIPA

6.     Claimant is a "customer" of LBI as defined under SIPA.  Under SIPA, a "customer" is defined as a:

> person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.  The term "customer" includes any person who has a claim against the debtor arising out of sales or *conversions* of such securities, and any person who has deposited cash with the debtor for purposes of purchasing securities . . . .

15 U.S.C. § 78*lll*(2) (emphasis added).

7.     Claimant asserts customer property claims against LBI for securities and cash balances that LBI, as Claimant's prime broker, was required by contract and law to maintain for Claimant's benefit.  Under SIPA, "customer property" is defined to include "cash and securities . . . at any time received, acquired or held by or for the account of a debtor from or for the securities account of a creditor, and the proceeds of any such property transferred by the debtor, including property unlawfully converted."  *Id.* at § 78lll(4).

8.     Pursuant to the PBA, Claimant deposited and entrusted securities and/or cash to LBI for the purpose of trading in the securities markets.  The securities and cash balances at issue were "received, acquired, or held" for Claimant in the ordinary course of LBI's business as a broker/dealer, under the PBA for transactions in the PB Account.

9.     As of the close of business on September 19, 2008, Claimant had entrusted to LBI securities and cash balances that have not been returned to Claimant.  Accordingly, Claimant is a customer of LBI and has valid customer property claims against LBI in connection with securities and cash balances that were required to be in LBI's possession or

control and LBI's failure to return the securities or the net equity value of such securities and cash balances to Claimant.[1]

C.     The Prime Brokerage Agreement

10.     Pursuant to the PBA, the PB Account is "subject to the applicable laws, rules and regulations of all U.S. . . . federal, state and self-regulatory authorities."  PBA, ¶ 2 at 1. Applicable laws, rules, regulations and regulatory authorities of the United States of America, include, among others, the Exchange Act, SIPA, the SEC, SIPC and the rules of the Board of Governors of the Federal Reserve System.

11.     Under the PBA's boilerplate provisions, LBI was authorized *within the limits of applicable law and regulations* to lend either to itself or to others, at its own risk, any securities held on behalf of Claimant for any amounts due from Claimant to Lehman Brothers. PBA, ¶ 19(a).  The PBA further provides that, in addition to the limits set by securities laws and regulations, LBI may only transfer securities from the PB Account to other accounts maintained by Lehman Brothers entities "in order to satisfy any of [Claimant]'s obligations to Lehman Brothers." *Id.*, ¶ 27.

D.     The Margin Lending Agreement

12.     In connection with the PBA, LBI had Claimant enter into the MLA with LBIE and LBI, pursuant to which LBIE would make loans to Claimant in connection with Claimant's transactions in the PB Account and LBI would be agent for LBIE and LBI to facilitate transfers of securities in connection with such loans.

---

[1]     To the extent Claimant were determined to be a "customer" of LBIE, it would still have a "customer" claim against LBI if LBIE transferred Claimant's customer assets to LBI or they were otherwise held by LBI for the benefit of LBIE, because these assets would have been transferred in LBIE's capacity as broker or dealer in connection with transactions for Claimant as its customer.  Because Claimant is not a broker or dealer or bank, Claimant would be a separate customer of LBI with respect to the customer assets held by LBI. *See* 15 U.S.C. § 78fff-3(a)(5).

13.     The MLA makes clear that the lending was to be made "in connection with transactions entered into by Borrower [i.e., Claimant] in the Lehman Brothers Inc. Customer Account Agreement – Prime Brokerage [i.e., the PBA]." MLA, Intro.

14.     Under the MLA, Claimant authorized LBIE -- "*within the limits of applicable law and regulations* [including the Exchange Act]" -- to lend either to itself or to others "any or all Collateral," which could then be "pledged, repledged, hypothecated or rehypothecated . . . for any amounts due to [LBIE] thereon or for a greater sum." MLA, ¶ 5(c) at 3 (emphasis added). The MLA did not, nor did it purport to, override the PBA.

E.     The Global Master Securities Lending Agreement

15.     In connection with the PBA and the MLA, LBI required Claimant to enter into the GMSLA with LBIE, which provided for LBIE's lending of securities to Claimant against Claimant's transfer of collateral to LBIE.

16.     Under the GMSLA, margin and collateral requirements were, expressly, to be governed by the MLA. GMSLA, Schedule ¶¶ 1 and 8.

## DISCUSSION OF THE AGREEMENTS

17.     The Agreements[2] established a prime broker relationship between LBI and Claimant and a lending relationship between Claimant, LBIE and LBI within the scope of the prime brokerage relationship. LBI was appointed by each of Claimant and Claimant's borrowings, if any, from LBIE in connection with transactions in the PB Account. LBI was not authorized to transfer collateral or securities, and LBIE was not authorized to retain securities or cash balances, in excess of amounts necessary and legally permissible to collateralize borrowings.

---

[2]     Copies of the Agreements may be obtained by contacting undersigned counsel.

18.	As noted above, since the commencement of the Lehman Brothers insolvency proceedings, it has come to light that LBI in fact failed to maintain possession or control of securities and cash balances in excess of any securities and cash balances properly transferred to LBIE to meet Claimant's borrowing obligations.

19.	Rule 15c3-3(b)(1) of the Exchange Act provides that a broker dealer, such as LBI, "shall promptly obtain and shall thereafter *maintain the physical possession or control of* all fully-paid securities and excess margin securities carried by a broker or dealer for the account of customers."  17 C.F.R. 240.15c3-3(b)(1) (emphasis added).  The term "excess margin securities" is defined thereunder as securities carried for the account of a customer in a general account "having a market value in excess of 140 percent of the total of the debit balances in the customer's account or accounts . . . which the broker or dealer identifies as not constituting margin securities."  17 C.F.R. 240.15c3-3(a)(5); *see also* 17 C.F.R. 240.15c3-3(a)(4).  Thus, LBI was permitted only to transfer, pledge, repledge, hypothecate or rehypothecate Claimant's securities the total value of which did not exceed 140% of Claimant's outstanding debit balance. LBI was required to maintain possession or control of any fully paid or excess margin securities so that they could be withdrawn from the PB Account by Claimant and without any payment to any person.

20.	In documents and communications with Claimant, including, but not limited to, the Lehman Brothers Client Asset Protection Overview Statement, Version 3.08 (the "Client Protection Statement"), furnished by LBI to Claimant, LBI specifically acknowledged the integration of Rule 15c3-3, and the attendant control requirement and rehypothecation limitation placed on a broker/dealer such as LBI, within the PBA.  In the Client Protection Statement, LBI (and Lehman Brothers) affirmatively represents and affirms that the rehypothecation rules only permit LBI to rehypothecate customer securities in "an amount up to

6

140% of the customer's debit balance." Client Protection Statement at 2. Moreover, the Client Protection Statement underscores that the purpose of Rule 15c3-3 is "to ensure that the broker-dealer [LBI] *always* has enough protected assets to make all customers whole with respect to their net equity claims against the broker-dealer [LBI]." *Id.* (emphasis added).

21. The Client Protection Statement further confirms that the PB Account is a protected customer account under SIPA. *Id.* at 2, 3.

22. Claimant did not authorize LBI (or LBIE) to transfer, lend, re-lend, pledge, repledge, hypothecate or rehypothecate Claimant's securities and cash balances in amounts exceeding the legally permissible limit under Rule 15c3-3 for conveyance of securities or cash balances. LBI failed to act in accordance with the PBA and Claimant's understanding of and reasonable expectations in connection with the PBA and the securities laws and regulations incorporated therein.

## LBI CONVERTED CLAIMANT'S SECURITIES AND CASH

23. LBI, apparently, did not and does not have possession or control of Claimant's excess securities and cash balances because LBI improperly engaged in the unauthorized transfer of Claimant's customer property.

24. Accordingly, Claimant asserts a customer property claim for conversion as against LBI for all cash balances and securities required to be in LBI's possession or control.

## BREACH OF CONTRACT

25. In addition to a conversion of Claimant's customer property, LBI's conduct in improperly engaging in the unauthorized excessive transferring, loaning, re-loaning, pledging, repledging, hypothecating or rehypothecating of Claimant's customer property constitutes a breach of the PBA. LBI breached the PBA by violating Rule 15c3-3, which is incorporated therein. LBI also breached the PBA by not adhering to the non-Rule 15c3-3

limitations contained therein.

26.     By reason of the foregoing, Claimant is entitled to recover the excess securities and cash balances as customer property that should have been in its PB Account that were improperly transferred to and permitted to remain at LBIE.

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

27.     It was neither understood nor reasonably anticipated -- as LBI did not disclose to Claimant -- that vast quantities of Claimant's securities, far in excess of the permissible limits necessary to satisfy its margin obligation under the securities laws and regulations, would be transferred and not available for return to Claimant, along with cash balances.  LBI engaged in bad faith conduct by exploiting its position as the broker/dealer under the PBA, with control over the implementation of the terms thereof.  By abusing its discretion and engaging in the improper and excessive transfer of Claimant's securities, LBI placed Claimant -- to its detriment -- in an impossible position that frustrated the purpose and protections of the PBA.

28.     By reason of the foregoing, LBI has acted arbitrarily, unreasonably and in violation of the covenant of good faith and fair dealing implied in every contract under New York law, and Claimant is entitled to recover as customer property all excess securities and cash balances that should have been in LBI's possession or control save for LBI's violations of the PBA and applicable law.

## BREACH OF FIDUCIARY DUTY

29.     As Claimant's agent under the PBA and MLA, LBI owed not just contractual duties to Claimant, but also fiduciary duties.  By improperly transferring securities and cash to LBIE, LBI breached its fiduciary duties to Claimant and is liable for the damages of such breach.

## **RESERVATION OF RIGHTS**

30.     Claimant expressly reserves its right to replace, amend and/or supplement this Objection to include any claim at law or in equity and to seek discovery with respect thereto. The filing of this Objection shall not be deemed a waiver of any claim in law or equity that the Claimant may have against LBI.  Furthermore, nothing contained herein shall be construed as a waiver of any rights or remedies of Claimant with respect to any claims against any of LBI's affiliates or the right to assert claims that are otherwise warranted in any related or unrelated action.

Dated: New York, New York
         April 9, 2010

SEWARD & KISSEL LLP


By:   /s/ Ronald L. Cohen
Ronald L. Cohen (RC 3897)
Justin L. Shearer (JS 1823)
One Battery Park Plaza
New York, New York  10004
Tel.: (212) 574-1200
Fax: (212) 480-8421
Email: cohen@sewkis.com
       shearer@sewkis.com

Attorneys for Claren Road Credit
Master Fund, Ltd.