PLEASE CAREFULLY REVIEW THIS NOTICE AND MOTION AND THE
ATTACHMENTS HERETO TO DETERMINE WHETHER THIS MOTION AFFECTS
YOUR CLAIM(S)

James B. Kobak, Jr.
David W. Wiltenburg
Christopher K. Kiplok
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| | Case No. 08-01420 (JMP) SIPA |
| LEHMAN BROTHERS INC., | Rel. Docket Nos. 1706, 2127, |
| | 2273 and 3277 |
| Debtor. | |

**NOTICE OF TRUSTEE'S MOTION FOR AN ORDER CONFIRMING THE TRUSTEE'S
DETERMINATIONS REGARDING CERTAIN CLAIMS RELATING TO FOREIGN
CURRENCY TRANSACTIONS AND EXPUNGING OBJECTIONS THERETO**

**PARTIES RECEIVING THIS NOTICE OF MOTION SHOULD REVIEW THE
MOTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE
MOTION AND/OR IN THE EXHIBITS ATTACHED THERETO.**

**PLEASE TAKE NOTICE** that on July 19, 2010, James W. Giddens (the "Trustee"), as

trustee for the liquidation of the business of Lehman Brothers Inc. ("Debtor" or "LBI") under the

Securities Investor Protection Act of 1970, as amended ("SIPA"), 15 U.S.C. § 78aaa *et. seq.*, by

and through his undersigned counsel filed a motion (the "ISDA FX Motion") for an order

confirming the Trustee's determination regarding certain claims relating to foreign currency transactions filed by Absa Bank Limited (Claim No. 900003370), Banco de Mexico (Claim No. 900004741), RIC-RIF Non-US Fund (Claim No. 900004642) and Lehman Brothers GTAA Unit Trust I (Claim No. 800003085) (collectively, the "ISDA FX Claimants," and such claims, the "ISDA FX Claims"), and expunging the ISDA FX Claimants' objections to the determinations (the "ISDA FX Order"), and that a hearing on the ISDA FX Motion, if necessary, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **August 19, 2010 at 10:00 a.m.** (prevailing Eastern time) or as soon thereafter as counsel may be heard (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to the ISDA FX Motion and entry of the ISDA FX Order must (i) be in writing; (ii) state the name and address of the objecting party and nature of the claim or interest of such party; (iii) state with particularity the legal and factual bases of such objection; (iv) conform to the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules; (v) be filed with the Bankruptcy Court, together with proof of service, electronically, in accordance with General Order M-399, (available at the Court's website, www.nysb.uscourts.gov) by registered users of the Court's Electronic Case Files system, and by all other parties in interest, on a 3.5 inch disk or CD-ROM, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word proceeding format no later than **August 12, 2010 at 4:00 p.m.** (prevailing Eastern time) (the "Response Deadline"); and (vi) be served on (a) Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York, 10004, Attn: Christopher K. Kiplok, Esq., and Jeffrey S. Margolin, Esq.; (b) Securities Investor Protection Corporation, 805 Fifteenth Street, N.W., Suite

800, Washington, DC 20005, Attn: Kenneth J. Caputo, Esq.; (c) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq., Lori R. Fife, Esq., Shai Y. Waisman, Esq., and Jacqueline Marcus, Esq.; and (d) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., with a courtesy copy to the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601.

**PLEASE TAKE FURTHER NOTICE** that if no objections are timely filed and served with respect to the ISDA FX Motion, the Trustee may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which may be entered with no further notice or opportunity to be heard offered to any party.

Dated: New York, New York
      July 19, 2010

<div style="margin-left:40%">

HUGHES HUBBARD & REED LLP

By:   /s/ David W. Wiltenburg
     James B. Kobak, Jr.
     David W. Wiltenburg
     Christopher K. Kiplok
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
Email: kobak@hugheshubbard.com

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of
Lehman Brothers Inc.

</div>

James B. Kobak, Jr.
David W. Wiltenburg
Christopher K. Kiplok
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>        LEHMAN BROTHERS INC.,<br><br>                                          Debtor. | Case No. 08-01420 (JMP) SIPA<br><br>Rel. Docket Nos.<br>    1706, 2127, 2273, 3277 |

## MOTION FOR AN ORDER CONFIRMING THE TRUSTEE'S DETERMINATIONS REGARDING CERTAIN CLAIMS RELATING TO FOREIGN CURRENCY TRANSACTIONS <u>AND EXPUNGING OBJECTIONS THERETO</u>

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT .................................................................................. 2

BACKGROUND ....................................................................................................... 4

STATEMENT OF FACTS ......................................................................................... 5

ARGUMENT ............................................................................................................ 8

    I.     THE ISDA FX CLAIMS ARE NOT CUSTOMER CLAIMS WITHIN
        THE MEANING OF SIPA ................................................................................8

          A.     SIPA EXPRESSLY EXCLUDES FOREIGN CURRENCY AND
                FORWARD TRANSACTIONS FROM ITS DEFINITION OF
                SECURITIES ............................................................................8

          B.     EXPANSION OF CUSTOMER STATUS BEYOND THE
                STATUTORY DEFINITION WOULD DEFEAT THE
                PURPOSES OF SIPA BY DILUTING THE RECOVERY OF
                ACTUAL SECURITIES CUSTOMERS....................................................10

    II.    THE ISDA FX CLAIMS ARE NOT CUSTOMER CLAIMS WITHIN
        THE MEANING OF THE COMMODITIES SUBCHAPTER............................13

CONCLUSION........................................................................................................ 16

# TABLE OF AUTHORITIES

Page(s)

CASES

In re A.R. Baron Co., 226 B.R. 790 (Bankr. S.D.N.Y. 1998) ......................................12

In re Adler Coleman Clearing Corp., 204 B.R. 111 (Bankr. S.D.N.Y. 1997) ........................11, 12

In re Adler, Coleman Clearing Corp., 216 B.R. 719 (Bankr. S.D.N.Y. 1998) ..............................11

In re Carolina First Sec. Group, Inc., 173 B.R. 884 (Bankr. M.D.N.C. 1994) ..............................12

Co Petro Marketing Group, Inc., v. Commodity Futures Trading Commission (In re Co Petro Marketing Group, Inc.), 680 F.2d 566 (9th Cir. 1982)....................................14

Cohen v. Army Moral Support Fund (In re Bevill, Bresler & Schulman Asset Management Corp.), 67 B.R. 557 (D.N.J. 1986) ........................................12

In re Hanover Square Sec., 55 B.R. 235 (Bankr. S.D.N.Y. 1985)................................12

In re MV Sec., Inc., 48 B.R.156 (Bankr. S.D.N.Y. 1985) ............................................12

In re Omni Mut., Inc., 193 B.R. 678 (S.D.N.Y. 1996) ..........................................8, 11

Ravis v. Day (In re Investors Sec. Corp.), 6 B.R. 420 (Bankr. W.D. Pa. 1980)............................14

Sec. Investor Prot. Corp. v. Morgan, Kennedy & Co., 533 F.2d 1314 (2d Cir. 1976) ................11

Sec. Investor Prot. Corp. v. Pepperdine Univ. (In re Brentwood Sec., Inc.), 925 F.2d 325 (9th Cir. 1991)....................................................................8

Sec. Investor Prot. Corp. v. Wise (In re Stalvey & Assocs.), 750 F.2d 464 (5th Cir. 1985) .........11

SEC v. F.O. Baroff Co., Inc., 497 F.2d 280 (2d Cir. 1974)....................................12, 14

State Bank of Spring Hill v. Bucyrus Grain Co., Inc. (In re Bucyrus Grain Co., Inc.), 127 B.R. 45 (D. Kan. 1988) ................................................14

STATUTES AND RULES

11 U.S.C. §§ 761 - 767 et seq. ..........................................................3

15 U.S.C. § 78aaa et. seq. ..............................................................1

15 U.S.C. § 78c(a)(55)(A) ..............................................................9

15 U.S.C. § 78fff(b) ....................................................................13

15 U.S.C. § 78fff-2(b) ................................................................................................ 11

15 U.S.C. § 78fff-2(c)(B) ........................................................................................... 10

15 U.S.C. § 78*lll*(2) .................................................................................................... 8

15 U.S.C. § 78lll(14) .................................................................................................... 9

REGULATIONS

17 C.F.R. § 190.08(a)(2)(iii) ....................................................................................... 14

17 C.F.R. § 190.10(e) .................................................................................................. 14

OTHER AUTHORITIES

A Note on the Wholesale Nature of OTC Derivatives, *available at*:
    www.isda.org/c_and_a/pdf/otc-deriv-0206.pdf ....................................................... 5

Farlex Financial Dictionary, *available at*:  http://financial-
    dictionary.thefreedictionary.com/Foreign+Currency+Forward+Contract ................ 5

Rules and Regulations Commodities Futures Trading Commission, Fed. Reg. 8716 (March1,
    1983) (Codified at 17 C.F.R. Pt. 190) ................................................................... 14

James B. Kobak, Jr.
David W. Wiltenburg
Christopher K. Kiplok
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

LEHMAN BROTHERS INC.,

Debtor.

Case No. 08-01420 (JMP) SIPA

Rel. Docket Nos.
   1706, 2127, 2273, 3277.

**MOTION FOR AN ORDER CONFIRMING THE TRUSTEE'S
DETERMINATIONS REGARDING CERTAIN CLAIMS
RELATING TO FORWARD FOREIGN CURRENCY TRANSACTIONS
AND EXPUNGING OBJECTIONS THERETO**

James W. Giddens (the "Trustee"), as trustee for the liquidation of the business of

Lehman Brothers Inc. (the "Debtor" or "LBI") under the Securities Investor Protection Act of

1970, as amended ("SIPA"), 15 U.S.C. § 78aaa *et. seq.*,[1] respectfully requests entry of an order

upholding the Trustee's determination of certain claims arising out of forward foreign currency

---

1.   Hereinafter all references to SIPA will replace "15 U.S.C." with "SIPA."

transactions closed out pursuant to certain International Swap Dealers Association Master Agreements entitled Multicurrency - Cross Border (the "ISDA Agreements").[2]

The following claimants have objected to the Trustee's determination that claims arising out of forward transactions to purchase or sell foreign currency are not "customer" claims within the meaning of SIPA: Banco de Mexico (Claim No. 900004741); Absa Bank Limited (Claim No. 900003370); Lehman Brothers GTAA (Claim No. 800003085); and RIC-RIF Non-US Fund (Claim No. 900004642); (together, the "ISDA FX Claimants," and such claims against the Debtor the "ISDA FX Claims"). In support of the present Motion, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Trustee's determinations, which deny each of the ISDA FX Claimants customer status under SIPA and convert their asserted customer claims to general creditor claims, should be confirmed because the ISDA FX Claimants are not customers under SIPA. The ISDA FX Claimants are sophisticated parties who entered into contracts with LBI to purchase or sell designated foreign currencies at designated dates subsequent to the Filing Date in this proceeding, and now claim damages for LBI's breach. They never entrusted "securities" to be held in a "securities account" with LBI as a securities broker dealer, essential elements of customer status under SIPA. Likewise, they did not deposit cash with LBI for the purpose of purchasing securities. Even assuming, contrary to fact, that entrustment of property had occurred, the forward foreign currency transactions underlying these claims are expressly

---

2. RIC-RIF Non-US Fund was not a party to an ISDA Agreement but rather was a party to a "Letter of Representations Warranty and Undertaking" which effectively incorporated the ISDA Agreement by reference by providing that in the event of default the outstanding FX trades would be closed out pursuant to sections 5 and 6 of the form ISDA Master Agreement dated 1992 as adopted by the International Swaps and Derivatives Association.

excluded from SIPA's definition of "security," which also clearly places these claims outside the statutory coverage.

2.      The objections filed by the ISDA FX Claimants to the Trustee's determinations fail to take account of the relevant statutory provisions, including the definition of customer and the exclusion of currency transactions from SIPA coverage, noted above. Instead they largely rely on the Commodity Broker Liquidation subchapter of chapter 7 of the Bankruptcy Code (the "<u>Commodities Subchapter</u>"), which is codified as subchapter IV of chapter 7 in the U.S. Bankruptcy Code (the "<u>Bankruptcy Code</u>"). 11 U.S.C. §§ 761 - 767 *et seq.* However, even under those provisions the ISDA FX Claims are based on contracts -- forward contracts that were simply bilateral agreements between the claimants and LBI -- that are specifically excluded from coverage under the Commodities Subchapter.

3.      As contracting parties that dealt with LBI under ISDA Agreements, the ISDA FX Claimants are, at best, unsecured creditors of the LBI general estate. Upon the commencement of this proceeding, the ISDA FX Claimants exercised rights to terminate the ISDA Agreements under Bankruptcy Code safe harbor provisions and are now claiming breach damages, together with interest and attorneys' fees, as additional contractual remedies under the ISDA Agreements. These are unsecured claims against general funds of the LBI estate, not claims entitling their holders to share in the fund of "customer property" held by the Trustee for distribution to customers.

4.      Where the type of forward contract activity that is the basis for the ISDA FX Claims is specifically excluded by both SIPA and the Commodities Subchapter, and the minimum conditions for customer status under SIPA are plainly not met, the Trustee's position must be confirmed.

<u>BACKGROUND</u>

5.     On September 19, 2008 (the "<u>Filing Date</u>"), the Honorable Gerard E. Lynch, United States District Court, Southern District of New York, entered an Order finding that LBI's customers were in need of protection and commencing liquidation of LBI pursuant to the provisions of SIPA in the case captioned *Securities Investor Protection Corp. v. Lehman Brothers Inc.*, Case No. 08-CIV-8119 (GEL) (the "<u>LBI Liquidation Order</u>").

6.     The LBI Liquidation Order, *inter alia*, (i) appointed James W. Giddens as trustee for the liquidation of the business of LBI pursuant to section § 78eee(b)(3) of SIPA, and (ii) removed this case to the United States Bankruptcy Court, Southern District of New York (the "<u>Court</u>") in the case captioned *In re Lehman Brothers Inc.*, Case No. 08-01420 (JMP) (the "<u>SIPA Proceeding</u>") pursuant to section § 78eee(b)(4) of SIPA.

7.     The SIPA Proceeding is by far the largest and most complex stock broker liquidation in U.S. history.  In the course of the Trustee's ongoing efforts to effectuate the liquidation of LBI, administer the LBI estate, and otherwise perform his obligations under SIPA, the Trustee and his professionals have diligently performed their duties under SIPA and the Bankruptcy Code to marshal all assets, analyze claims against the LBI estate, and resolve claim issues.

8.     On November 7, 2008, upon the Trustee's motion, the Court entered the Order Approving Form and Manner of Publication and Mailing of Notice of Commencement; Specifying Procedures and Forms for Filing, Determination, and Adjudication of Claims; Fixing a Meeting of Customers and Creditors; and Fixing Interim Reporting Pursuant to SIPA (the "<u>LBI Claims Process Order</u>," Docket No. 241).  On July 13, 2010, the Court entered the Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and

9007 Implementing Certain Notice and Case Management Procedures and Related Relief (the "Amended Case Management Order", Docket No. 3466). Beginning December 1, 2008, consistent with SIPA § 78fff-2(a)(1) and the LBI Claims Process Order, the Trustee, among other things, provided formal notice of the claims process to more than 905,000 potential customer and general creditor claimants.

## STATEMENT OF FACTS

9. As shown in tabular form in Exhibit A hereto, each of the ISDA FX Claimants was a party to an ISDA Agreement with LBI, pursuant to which it entered into various spot and forward foreign currency transactions (each a "Transaction").[3] A forward foreign currency transaction is an agreement between two parties to exchange a certain amount in currencies at a certain rate at a certain time. See Farlex Financial Dictionary, http://financial-dictionary.thefreedictionary.com/Foreign+Currency+Forward+Contract. These over-the-counter derivatives traded pursuant to ISDA Agreements are predominantly used and traded by "large, sophisticated entities." See A Note on the Wholesale Nature of OTC Derivatives, www.isda.org/c_and_a/pdf/otc-deriv-0206.pdf. The ISDA FX Claimants declared early termination on bankruptcy or insolvency grounds in or around September 2008, and now claim termination damages under the ISDA Agreements or the value of their open Transactions.

10. Banco de Mexico and LBI were parties to an ISDA Agreement dated January 29, 2007, (the "Banco de Mexico ISDA Agreement") pursuant to which Banco de Mexico and LBI engaged in various Transactions. As set forth in Banco de Mexico's Limited Objection to Trustee's Determination of Claim (the "Banco de Mexico Objection"; Docket

---

3. As provided by the Banco de Mexico, Absa, and RIC-RIF in their claims and objections, the ISDA Master Agreements and RIC's Letter of Representations Warranty and Undertaking are attached hereto as Exhibits B through D. For the Court's convenience, the exhibits were individually Bates Stamped and numbered by the Trustee.

No. 1706), on September 23, 2008, Banco de Mexico delivered written notice to LBI designating September 24, 2008 as the early termination date with respect to all outstanding Transactions. (Banco de Mexico Objection ¶ 3.)  On January 30, 2009, Banco de Mexico filed a claim for $5,825,963, essentially a damages claim for LBI's default pursuant to the Banco de Mexico ISDA Agreement (the "Banco de Mexico Claim").  On July 7, 2009, the Trustee requested that Banco de Mexico submit additional information.  On August 19, 2009, the Trustee determined the Banco de Mexico Claim, denying customer status under SIPA, and reclassifying it to a general creditor claim in an unliquidated amount.  On September 17, 2009, Banco de Mexico objected to the Trustee's determination of its claim.  Banco de Mexico's objection is "limited" in the sense that, if the objection to denial of customer status is unsuccessful, Banco de Mexico does not object to the Trustee's reclassification of its claim to a general creditor claim.  (Banco de Mexico Objection at Pg. 2, Fn. 2)

11.     Absa Bank Limited ("Absa") and LBI were parties to an ISDA Agreement dated as of December 15, 1997 (the "Absa ISDA Agreement") pursuant to which Absa and LBI engaged in various Transactions.  As set forth in Absa Bank Limited's Objection to Trustee's Determination of Claim (the "Absa Objection"; Docket No. 2127), on September 19, 2008, Absa Bank sent LBI a Notice of Early Termination which designated September 19, 2008 as the early termination date with respect to all outstanding Transactions.  (Absa Objection ¶ 3.)  On January 29, 2009, Absa filed a claim against the LBI estate for $215,600.00, essentially a damages claim for LBI's default pursuant to the Absa ISDA Agreement (the "Absa Claim").  On November 3, 2009, the Trustee determined the Absa Claim, denying customer status under SIPA, and reclassifying it to a general creditor claim in an unliquidated amount.  On December 1, 2009, Absa objected to the Trustee's determination of its claim.  The Absa Objection is "limited" in the

sense that, if the objection to denial of customer status is unsuccessful, Absa does not object to

the Trustee's reclassification of its customer claim to a general creditor claim. (Id. at Pg. 1, Fn.

1.)

12.    Lehman Brothers GTAA Unit Trust I ("GTAA") and LBI were parties to

an ISDA Agreement dated as of February 2, 2006 (the "GTAA ISDA Agreement") pursuant to

which GTAA and LBI entered into various Transactions.  As documented in GTAA's general

creditor claim[4], on September 18, 2008, GTAA sent LBI a Notice of Early Termination which

designated September 18, 2008 as the early termination date with respect to all outstanding

Transactions.   On January 30, 2009, GTAA filed a claim for $1,008,354.00 (the "GTAA

Claim"), essentially a damages claim for LBI's breach.  On March 18, 2010, the Trustee

determined the GTAA Claim, denying customer status under SIPA, and reclassifying it to a

general creditor claim in an unliquidated amount.  On May 17, 2010, GTAA objected to the

Trustee's determination (the "GTAA Objection"; Docket No 3277).[5]

13.    RIC-RIF Non-US Fund ("RIC") and LBI were parties to an agreement

pursuant to which RIC and LBI engaged in forward and spot foreign exchange Transactions.  On

January 27, 2009, RIC filed a claim for $34,460.75 (the "RIC Claim"), essentially a damages

claim for LBI's breach.  On November 9, 2009, the Trustee determined RIC's claim, denying

customer status under SIPA, and reclassifying it to a general creditor claim in an unliquidated

amount.  On December 7, 2009, RIC objected to the Trustee's determination (the "RIC

Objection"; Docket No. 2273).

---

4.   On May 28, 2009 a general creditor claim was filed under the name "Neuberger Berman GTAA Unit Trust 1"
     which is related to the same foreign currency transactions as the GTAA Claim (the "GTAA General Creditor
     Claim").

5.   The Trustee extended GTAA's time to object until May 17, 2010,

14.     As set forth in the Affidavit of Daniel T. McIsaac in Support of Trustee's Motion for an Order Confirming the Trustee's Determinations Regarding Certain Claims Relating to Foreign Currency Transactions, sworn to on March 14, 2010 (the "FX Aff."), the SEC and other rules affecting segregation and secure holding of customer property do not apply to the obligations of LBI pursuant to foreign currency trades under ISDA Agreements.  (See FX Aff. at ¶¶ 3, 4.)  Accordingly, no property was set aside or held separately by LBI to cover the alleged obligations that are the basis for the ISDA FX Claims.  (Id. at ¶ 5.)

## ARGUMENT

15.     The Trustee submits that there is no issue as to any material fact related to these claims and that a judicial determination that they are not customer claims within the meaning of either SIPA or the Commodities Subchapter is appropriate at this time.

## I.     THE ISDA FX CLAIMS ARE NOT CUSTOMER CLAIMS WITHIN THE MEANING OF SIPA.

### A.     SIPA Expressly Excludes Foreign Currency And Forward Transactions From Its Definition Of Securities.

16.     SIPA defines a "customer" as a person who:

> has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.

SIPA § 78*lll*(2) (emphasis added).  "Customer" may also include a person whose claim is based on cash deposited with the debtor "*for the purpose of purchasing securities.*"  Id. (emphasis added); see In re Omni Mut., Inc., 193 B.R. 678, 681 (S.D.N.Y. 1996) (citing Sec. Investor Prot. Corp. v. Pepperdine Univ. (In re Brentwood Sec., Inc.), 925 F.2d 325, 327 (9th Cir. 1991) (noting that "[a]n investor is entitled to compensation from the SIPC only if he has entrusted

cash or securities to a broker-dealer who becomes insolvent; if an investor has not so entrusted cash or securities, he is not a customer and therefore not entitled to recover from the SIPC trust fund")).

17.     The ISDA FX Claimants are not securities customers under SIPA because their claims are based on a type of trading activity that is specifically excluded from the SIPA definition of security:

> The term 'security' means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, any collateral trust certificate, preorganization certificate or subscription, transferable share, voting trust certificate, certificate of deposit, certificate of deposit for a security, or any security future as that term is defined in section 78c(a)(55)(A) of this title … any put, call, straddle, option, or privilege on any security, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege **entered into on a national securities exchange relating to foreign currency**… and any other instrument commonly known as a security.  **Except as specifically provided above, the term "security" does not include any currency, or any commodity or related contract or futures contract ….**

SIPA § 78lll(14) (emphasis added).

18.     As the ISDA FX Claimants essentially admit, the transactions at issue are forward contracts related to foreign currencies, none of which was "entered into on a national securities exchange," the only condition under which a transaction related to foreign currency could conceivably be deemed a securities transaction under SIPA.  (See Exhibit A)  The ISDA FX Claimants do not seek the return of any property deposited with LBI -- these are simply claims for termination damages under the ISDA Agreements or for the value of open foreign currency forward contracts.

19.     In light of the foregoing, the Trustee's determination that the ISDA FX Claims are not "customer claims" for securities under SIPA is correct as a matter of law.

**B.** **Expansion Of Customer Status Beyond The Statutory Definition Would Defeat The Purposes Of SIPA By Diluting The Recovery Of Actual Securities Customers.**

20.     As set forth in detail in the Trustee's Motion for Order Approving Trustee's Allocation of Property of the Estate (the "Allocation Motion"; Docket No. 1866), SIPA forms part of a comprehensive federal regulatory and statutory scheme for the protection of investors who entrust property to SEC-regulated broker dealers for the purpose of engaging in securities transactions.  (Allocation Motion ¶¶ 26-55).  The purpose of the federal scheme of customer protection is to foster confidence that the securities of such investors will be held in secure custody, and that cash obligations will be backed by a Reserve Account deposit as required by SEC rules, so that there will be full protection regarding both cash and securities obligations in the event of a liquidation.  (Id.)  Securities investors rely on these protections when they entrust their property to the care of a regulated broker dealer such as LBI.  (See id. (discussing the SEC regulatory scheme of broker-dealers and the "Reserve Formula").)

21.     SIPA's provisions defining "customer" and "customer property" are designed to implement the federal customer protection scheme by creating a fund of customer property consisting of the property that was segregated and securely held for customers, together with such "other" property as would have been set aside for securities customers upon full compliance with applicable SEC rules.  (Id. at ¶¶ 45-50.)  Only securities customers as defined in SIPA are entitled to share pro rata in the fund of customer property.  See SIPA § 78fff-2(c)(B).

22.     Allowing "customer" treatment for claims that are not based on entrustment to a broker dealer of securities (or cash for the purpose of purchasing securities), and therefore not covered by the federal scheme of customer protection, would defeat the purposes of SIPA by diluting the recovery of actual securities customers who relied on the protections of the

federal scheme. As set forth in the following paragraphs, courts in SIPA liquidations have accordingly taken great care to assure that only persons who are within SIPA's protected class are granted customer status under SIPA.

23.     First, SIPA places principal reliance on the "books and records of the debtor" in identifying customer obligations. See SIPA § 78fff-2(b) (stating that debtor's obligations to its customers must be "ascertainable from the books and records of the debtor or . . . otherwise established to the satisfaction of the trustee"); In re Adler, Coleman Clearing Corp., 216 B.R. 719, 723 (Bankr. S.D.N.Y. 1998) (stating that in order to prevail, claimants must prove they are "customers" and that the property in their accounts is "customer property" under SIPA); In re Adler Coleman Clearing Corp., 204 B.R. 111, 115 (Bankr. S.D.N.Y. 1997) ("claimants must prove that they are 'customers'").

24.     Foreign currency forward contracts are not protected under regulatory schemes applicable to securities broker dealers, and, as a result, the Reserve Formula does not include credits corresponding to a broker's obligations related to them. (FX Aff. at ¶ 3.) The Trustee's review of LBI's books and records revealed that obligations to the ISDA FX Claimants were excluded from the Reserve Formula in accordance with applicable rules and regulations dictating non-customer treatment of foreign currency forward contracts. (Id. at ¶ 5.).

25.     Second, courts have emphasized the need to consider whether a person claiming customer status falls within the specific group for whom Congress tailored special protection. See Sec. Investor Prot. Corp. v. Wise (In re Stalvey & Assocs.), 750 F.2d 464, 468 (5th Cir. 1985) (stating that "'[c]ustomer' . . . is a statutorily defined term of art as used in SIPA"); Sec. Investor Prot. Corp. v. Morgan, Kennedy & Co., 533 F.2d 1314, 1316-18 (2d Cir. 1976) (narrowly interpreting definition of "customer"); In re Omni Mut., Inc., 193 B.R. at 680

(stating that "'customer' is a term of art [that] should be construed narrowly"); <u>In re A.R. Baron Co.</u>, 226 B.R. 790, 795 (Bankr. S.D.N.Y. 1998) (summarizing that courts take a restrictive view of intended scope of customer protection under SIPA); <u>In re MV Sec., Inc.</u>, 48 B.R.156, 160 (Bankr. S.D.N.Y. 1985) (Second Circuit has approved a narrow interpretation of the 'customer' definition in SIPA); <u>In re Carolina First Sec. Group, Inc.</u>, 173 B.R. 884, 888 (Bankr. M.D.N.C. 1994) (noting that "judicial interpretations of 'customer' status support a narrow interpretation of the SIPA's provisions"); <u>In re Hanover Square Sec.</u>, 55 B.R. 235, 238 (Bankr. S.D.N.Y. 1985) (similar).

   26. Third, even assuming (contrary to fact) that the claims here did involve securities rather than excluded currency forward contracts, the claims of a party who dealt with LBI only on the basis of an ISDA Agreement governing contractual relationships would typically not be entitled to customer status. The hallmark of customer status is the entrustment of securities and related cash to a broker-dealer, and the broker/customer fiduciary relationship that results when a broker holds such property for the benefit of another. <u>See</u> <u>SEC v. F.O. Baroff Co.</u>, 497 F.2d 280, 282-84 (2d Cir. 1974) (SIPA protection denied because claimant did not entrust property to broker-dealer and the underlying transaction did not have the "indicia of the fiduciary relationship between a broker and his public customer"); <u>In re Adler, Coleman Clearing Corp.</u>, 204 B.R. at 115 (claimants must show that they entrusted their assets to the debtor as a broker-dealer for the purposes of trading); <u>Cohen v. Army Moral Support Fund (In re Bevill, Bresler & Schulman Asset Management Corp.)</u>, 67 B.R. 557, 600 (D.N.J. 1986) (one of the factors that governs customer status is whether the transactions arose out of "the type of fiduciary relationship which generally characterizes the relationship between a broker-dealer and its customers").

27.     The ISDA Agreements expressly disclaim any fiduciary duty.  (See  Ex. C 023; Ex. D 012)  Rather than entrusting property to LBI, the ISDA FX Claimants entered into complex, negotiated contracts with LBI as an equally sophisticated counterparty.  The ISDA Agreements set forth in minute detail the rights and duties of each party, and do not refer to SIPA or suggest any right to share in property set aside for customers.  Where the parties to these agreements were not securities investors and did not rely on SIPA protection, it would be inequitable and in contravention of statutory purposes to allow them to share *pro rata* with persons who *did* so rely -- the securities customers who entrusted their property to LBI against the background of SIPA and the federal scheme of customer protection.  It would be a rare case where such a structured relationship between sophisticated parties contained "indicia of the fiduciary relationship between a broker and his public customer" as identified by the Second Circuit in *Baroff*, or could be interpreted to create a statutorily protected customer relationship to the detriment of the intended beneficiaries of SIPA -- actual securities customers of LBI.

## II.     THE ISDA FX CLAIMS ARE NOT CUSTOMER CLAIMS WITHIN THE MEANING OF THE COMMODITIES SUBCHAPTER.

28.     In a liquidation of a futures commission merchant (an "FCM") pursuant to the Commodities Subchapter, no trustee, consistent with his statutory duties (See SIPA § 78fff(b)), could allow the ISDA FX Claims as customer claims.  As set forth below, the ISDA FX Claimants are not "customers" of LBI under the Commodities Subchapter, because foreign currency forward contracts are specifically excluded from coverage, and a trustee liquidating under the Commodities Subchapter could not appropriately grant to such parties a right to share in customer property.

29.     The rules promulgated by the CFTC regulating liquidations under the Commodities Subchapter (the "CFTC Rules") exclude from the definition of "customer"

claimants with claims based on forward contracts. 17 C.F.R. §190.10(e) ("[A]n entity for or with whom the debtor deals who holds a claim against the debtor solely on account of a forward contract will not be deemed to be a customer"). Forward contracts are also specifically excluded from customer property. 17 C.F.R. §190.08(a)(2)(iii); (See FX Aff. ¶4.) The CFTC stated that it promulgated the above provisions excluding claims for forward contracts from customer status because "the [CFTC] does not think it wise to leave it unclear whether its rules apply to forward contracts." Rules and Regulations Commodities Futures Trading Commission, Fed. Reg. 8716, 8737-38 (March 1, 1983) (codified at 17 C.F.R. pt. 190).

30.     Further, the contention that the foreign currency transactions entered into by the ISDA FX Claimants are "commodities contracts" as defined in the Commodities Subchapter because they are asserted to be "similar" to commodity contracts (See Banco de Mexico Objection ¶ 9; Absa Objection ¶ 9) has been specifically rejected. Indeed, the CFTC release accompanying the foregoing rules regarding forward contracts states that "a forward contract is a contract **which is not** a commodity contract." Rules and Regulations Commodities Futures Trading Commission, 48 Fed. Reg. at 8738.

31.     More fundamentally, as with the SIPA regime, the Commodities Subchapter protects only those parties that maintain a fiduciary, deposit-based relationship with the broker. See Co Petro Mkg Group, Inc., v. Commodity Futures Trading Comm'n (In re Co Petro Mktg Group, Inc.), 680 F.2d 566, 571 (9th Cir. 1982) (the purpose of the Commodities Subchapter is to protect the "deposit" customer-broker relationship characteristic of the fiduciary status of a broker to his customer); State Bank of Spring Hill v. Bucyrus Grain Co., Inc. (In re Bucyrus Grain Co., Inc.), 127 B.R. 45, 49 (D. Kan. 1988) (similar); cf. Ravis v. Day (In re Investors Sec. Corp.), 6 B.R. 420, 424 (Bankr. W.D. Pa. 1980) (it is essential in determining

customer status whether the claimant entrusted funds to the broker-dealer in such a manner that a fiduciary relationship was created). As stated above, the ISDA FX Claimants entrusted no property to LBI.

32. It is in the nature of FX Forward Contracts that remained open and unperformed on the Filing Date that deposit or "entrustment" of property did not occur, only an exchange of contractual promises. This is recognized in the CFTC rules governing the setting aside of property owed to commodities customers, which are analogous to the SEC's Customer Protection Rule. Thus, consistent with the rules excluding forward contracts and parties claiming under them from customer status, CFTC Rules 1.20 and 30.7, which require segregation of futures related customer property, do not include a segregation reference to foreign currency forward contracts. (See FX Aff. at ¶¶ 4-5.)

33. Any duty that a SIPA trustee might have toward commodities customers would be to return property segregated for a class of customers to the extent that their accounts had not been transferred (which was not the case with respect to LBI's accounts, which were transferred). That duty presupposes a fund of segregated property which does not exist here. Where applicable rules do not contemplate any credit in the Reserve Formula corresponding to cash obligations owed to ISDA Counterparties transacting in foreign currency forwards, LBI would not be expected to reserve any funds corresponding to these obligations. And LBI's books and records confirm that LBI in fact did not include foreign currency-related obligations to the FX Forward Claimants in its reserve calculations and that no funds were reserved to cover any such amounts. (Id. at ¶ 5.)

34. Consistent with the foregoing, the ISDA Agreements expressly disclaim the existence of a fiduciary relationship. (Ex. C 023; Ex. D 012) In the absence of

"entrustment" of property or the holding of property for the benefit of customers pursuant to applicable rules, the essential fiduciary relationship that defines customer status is lacking, and no customer claim can be recognized, nor is there any fund of property in which these claimants are entitled to share, either under SIPA or under the Commodities Subchapter.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that this Court issue an order in the form attached hereto as Exhibit E: (i) confirming the Trustee's determination denying the ISDA FX Claimants' claims as customer claims and reclassifying them to general creditor claims in an undetermined amount; (ii) expunging the ISDA FX Objections; and (iii) granting such additional and further relief as the Court deems just.

Dated: New York, New York
July 19, 2010

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By: _____
James B. Kobak, Jr.
David W. Wiltenburg
Christopher K. Kiplok
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of
Lehman Brothers Inc.