Richard G. Menaker
Samuel F. Abernethy
Karen Kim
MENAKER & HERRMANN LLP
10 East 40th Street
New York, New York 10016
Telephone: (212) 545-1900
Facsimile: (212) 545-1656

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation
of Lehman Brothers Inc.

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Case No. 08-01420 (JMP) SIPA |
| LEHMAN BROTHERS INC., | |
| Debtor. | |

## TRUSTEE'S OPPOSITION TO MOTION OF RBS N.V. (FORMERLY KNOWN AS ABN AMRO BANK N.V.) TO DISMISS TRUSTEE'S JUNE 29, 2011 MOTION OR FOR ALTERNATIVE AND RELATED RELIEF

James W. Giddens (the "Trustee"), as Trustee for the liquidation of the

business of Lehman Brothers Inc. ("Debtor" or "LBI") pursuant to the Securities Investor

Protection Act ("SIPA") of 1970, as amended ("SIPA"), 15 U.S.C.A. §§ 78aaa *et seq.*,

hereby opposes the motion of RBS N.V. (formerly known as ABN AMRO Bank N.V.)

(hereinafter, "RBS") for an order dismissing, without prejudice, the LBI Trustee's

motion, dated June 29, 2011, or alternatively, converting the LBI Trustee's motion to an

adversary proceeding complaint, requiring application of certain bankruptcy and local rules, and staying all non-discovery-related proceedings in respect of the LBI Trustee's motion pending a determination by the District Court with respect to RBS N.V.'s motion to withdraw the reference, filed August 2, 2011 (the "RBS motion").

The RBS motion, which constitutes an attempt to cut off consideration of the Trustee's earlier filed contested proceeding under Sections 105(a) and 362 of the Bankruptcy Code and Bankruptcy Rule 9014, is misconceived because it ignores the major predicate for the Trustee's motion -- namely, that RBS has conceded in writing that it is holding $347,501,344 in cash belonging to the LBI estate. After deducting the sum of $1,562,719 scheduled in RBS's proof of claim in this proceeding, the net amount being withheld is $345,938,625 (the "Withheld Funds"). RBS's only claimed defense is its claim of a right to cross-affiliate ("triangular") setoff. Resolution of that defense is exclusively a matter of bankruptcy law.

## A. The Trustee's Motion

1. In the interest of brevity, the Trustee incorporates by reference the jurisdictional and procedural description set forth in his June 29, 2011 Motion for an Order Enforcing the Automatic Stay and the Stays in the Liquidation Order and Compelling Payment of Amounts Payable by RBS N.V. (the "Trustee's motion"). As the Court is aware, on September 19, 2008, the District Court entered the Order Commencing Liquidation of LBI (the "Liquidation Order," Docket No. 1) appointing the Trustee and removing the case to this Court pursuant to the Securities Investor Protection Act ("SIPA") § 78eee(b)(4), *not* under 28 U.S.C. § 157 and the S.D.N.Y. Standing Order.

2.     The Liquidation Order authorized the Trustee to take immediate possession of the property of LBI, wherever located and notified all persons and entities that the automatic stay provisions of Bankruptcy Code Section 362(a) operate as a stay of, among other things, "any act to obtain possession of property of the estate or property from the estate" (Liquidation Order ¶¶ I, II, III.C, XII and XIV). The Liquidation Order also ordered that all entities are stayed and enjoined from directly or indirectly retaining or setting off, or interfering with any assets or property owned by LBI (*id.* ¶ IV). The automatic stay and the stays provided for in the Liquidation Order are hereinafter referred to as the "Stays."

3.     Pursuant to his mandate, the Trustee investigated certain matters relating to an ISDA Master Agreement dated March 16, 1998, entered into between LBI and ABN AMRO Bank N.V. ("ABN") for the purpose of engaging in certain currency transactions as subsequently amended and supplemented (*see* June 29, 2011 Declaration of Samuel F. Abernethy ("Abernethy Decl.") Exs. A-C). The Trustee learned that on September 14, 2008, and again on September 22, 2008, ABN sent letters under Section 6(a) of the ISDA Master Agreement giving notice of an event of default under that agreement and declaring Early Termination of the Agreement ("Early Termination").

4.     Under Section 6(d) of the ISDA Master Agreement, upon an Early Termination, the terminating party is required to provide a statement setting forth the net amount owed as of a so-called Early Termination Date. By letter dated May 14, 2009, ABN submitted such a statement by which it acknowledged that it owed to LBI a "Close-out Amount" of $347,501,344, consisting of LBI's cash collateral in the amount of

$53,999,000 and an unpaid close-out currency balance owed by ABN to LBI in the amount of $293,502,344 (Abernethy Decl. Ex. G). ABN advised in the same letter it was "exercising [its] right of setoff-off arising under certain Terms of Agreement" between LBI and its affiliates and an entity affiliated with ABN called RBS Securities, Inc., f/k/a Greenwich Capital Markets, Inc. Inc. ("RBS Securities") (*id.*). The letter referred to over $917 million in claims against LBI and two LBI affiliates, Lehman Brothers International (Europe) and Lehman Brothers Special Financing Inc. (*id.*).

5.     Objecting to the purported triangular setoff as violating the mutuality requirement of Section 553(a) of the Bankruptcy Code, the Trustee made a demand for payment of the aggregate "Close-out Amount" admitted by ABN, now known as RBS N.V. The parties, through their various representatives conferred from time to time in an effort to resolve differences, ultimately without success.

6.     Of the sums ABN claimed should be set off against the "Close-out Amount," only the sum of $1,562,719 scheduled in the RBS proof of claim constituted a claim that satisfied the mutuality requirement. All other amounts alleged to be a basis for setoff are in fact based upon claims against LBI affiliates or by RBS affiliates, and they therefore do not meet the mutuality requirement. For this reason, the Trustee has repeatedly advised RBS as successor to ABN that its continued holding of the Withheld Funds is improper.

7.     RBS has nevertheless continued to hold the Withheld Funds without having sought relief from the Stays. It was because of this failure to honor the Stays that

on June 29, 2011, following prior notice to RBS, the Trustee's motion was filed seeking

relief under Sections 105(a) and 362 of the Bankruptcy Code.

8.      The basis for the Trustee's motion is straightforward. The Withheld

Funds -- i.e., both the cash collateral and the unpaid currency balance -- constitute

"property of the estate" under Section 541(a)(1) as "legal or equitable interests of the

debtor in property as of the commencement of the case." Such property is improperly

withheld from the Trustee in violation of Section 362(a)(3) and (7) because the

withholding constitutes an "act to obtain possession of property of the estate or property

from the estate or to exercise control over property of the estate" under clause (3), and

involves a purported "setoff of any debt owing to the debtor that arose before the

commencement of the case under this title against any claim against the debtor" under

clause (7).

## B.      The RBS Motion

9.      RBS at the outset responded to the Trustee's motion by seeking to

delay its consideration indefinitely, first through requests for lengthy extensions and for a

bifurcation of procedural from substantive issues, and then through an application to the

Court by telephone conference in which similar enlarged scheduling was requested. In

addition, as early as July 11, 2011, counsel for RBS advised of his intention to bring a

motion in the District Court to withdraw the reference of this matter, a prospect that was

reiterated in counsel's July 19, 2011 letter to the Court and during the telephone

conference with the Court.

10.     The requests for extension have resulted already in a substantial enlargement of the time for RBS to respond to the Trustee's motion and an adjournment of the date for hearing that motion. This has enabled RBS to file the motion now before the Court, which constitutes a kind of preemptive strike aimed again at putting off indefinitely the consideration of the Trustee's motion.

11.     RBS's motion seeks an order dismissing the Trustee's motion "for failing to comply with Rule 7001(1) of the Federal Rules of Bankruptcy Procedure," or alternatively converting the Trustee's motion to an adversary proceeding and then staying that proceeding pending a decision by the District Court on a parallel motion by RBS to withdraw the reference (RBS Mot. 2). That parallel motion to withdraw the reference was filed on August 16, 2011.

12.     The conduct of RBS in this matter may be compared with the course followed by several other similarly situated parties -- UBS, Metavante and Swedbank are obvious examples --against which either the Trustee or the parent company debtor also brought motions under Sections 105(d) and 362 to recover property of the estate and which opposed those motions on the merits without multiplying the proceedings. Simply stated, the present motion by RBS is a dilatory tactic, insupportable as a matter of law. It should be denied.

## ARGUMENT

**I.      RBS's Request to Dismiss the Trustee's Motion Should Be Denied:
The Motion Properly Seeks Wrongfully Withheld Estate Property.**

13.      The major premise of the RBS motion is mistaken. The Trustee does not seek to enforce the payment terms of a contract. The duty to pay has already been conceded in the May 14, 2009 letter of ABN (now known as RBS) reconciling amounts due under the ISDA Master Agreement. That admission is annexed to the Trustee's motion (Abernethy Decl. Ex. G). For the Court's convenience, another copy appears as an Appendix to this opposition paper.

14.      The sum admitted by ABN consists of cash collateral ($53,999,000) and the liquidated amount of the currency balance owed by ABN (now RBS) to LBI as of the early termination date of the ISDA Master Agreement ($293,502,344). ABN, by its May 14, 2009 letter, concedes that the Trustee has "legal or equitable interests" in the Withheld Funds, which accordingly qualifies them as "property of the estate" under Section 541(a)(1) of the Bankruptcy Code. *Am-Haul Carting, Inc. v. Contractors Cas. & Sur. Co.*, 33 F.Supp 2d 235, 251-52 (S.D.N.Y. 1998) citing *In re Nemko, Inc.*, 143 B.R. 980, 985 (Bankr. E.D.N.Y. 1992). RBS's continued withholding of such property constitutes a violation of the Stays, including in particular a violation of Section 362(a)(3) and (7) of the Bankruptcy Code.

15.      Stay violations are properly brought to the Bankruptcy Court's attention by way of motion in a contested proceeding. *In re Lehman Bros. Holdings, Inc.*, 433 B.R. 101 (Bankr. S.D.N.Y. 2010), *aff'd*, 445 B.R. 130 (S.D.N.Y. 2011) (granting

motion for order enforcing automatic stay and requiring bank to release funds held back based on alleged right of setoff); *In re Sullivan*, 367 B.R. 54, 56-57 (Bankr. N.D.N.Y. 2007) (granting motion claiming violations of the automatic stay provisions and seeking actual, statutory and punitive damages against creditor); *Town of Hempstead Employees Fed. Credit Union v. Wicks (In re Wicks)*, 176 B.R. 695 (Bankr. E.D.N.Y. 1995), *aff'd*, 215 B.R. 316 (E.D.N.Y. 1997) (granting motion under §§ 362(a)(3), 362(a)(7) and 362(h) for willful violation of automatic stay and awarding damages and attorneys' fees); *In re Hooker Investments, Inc.*, 116 B.R. 375 (Bankr. S.D.N.Y. 1990) (granting motion for violation of the automatic stay).

16.    RBS nevertheless  argues that the relief sought by the Trustee may only be obtained under Bankruptcy Rule 7001 and that it would be "deprived of procedural rights and protections it is entitled to under Part VII of the Bankruptcy Rules" if the Trustee is permitted to proceed by motion (RBS Mot. 9). As the foregoing cases demonstrate, RBS is wrong. Indeed, in *Hooker Investments*, the court explicitly held that the debtor properly proceeded by way of motion because it was seeking an order declaring that the automatic stay was violated and damages for such violation, which was not among the ten proceedings enumerated in Bankruptcy Rule 7001.  *Id.* at 378. Likewise in this contested matter, the Trustee seeks a ruling that RBS's continued withholding of the Withheld Funds constitutes a violation of the Stays, including the automatic stay of Section 362(a), a ruling not provided for in Bankruptcy Rule 7001.

17.    The court in *Hooker Investments* also rejected precisely the argument RBS now makes about being "deprived of procedural rights and protections."

As stated by Judge Brozman, the courts "have recognized that the due process safeguards contained in a motion brought in a contested matter under Bankruptcy Rule 9014 are no different from those in an adversary proceeding." *Id.*, citing *Fidelity Mortgage Investors v. Camelia Builders, Inc. (In re Fidelity Mortgage Investors)*, 550 F.2d. 47 (2d Cir. 1976), and *Fortune & Faal v. Zumbrun (In re Zumbrun)*, 88 B.R. 250 (9th Cir. B.A.P. 1988). Rule 9014, subdivision (a), expressly requires that "reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought" in a contested matter, and subdivision (c) incorporates many of the procedural protections of the Part 7 rules. Further, RBS's submission of its present motion belies its claim that it has lost out on the opportunity to move to dismiss the proceeding. Its claim of "prejudice" is baseless.

18. None of the authorities cited by RBS (RBS Mot. 10-11) involves the withholding of estate property in violation of the automatic stay. In every instance the cases concern disputes explicitly required to be resolved by adversary proceeding. Thus, *In re DeArakie*, 199 B.R. 821 (Bankr. S.D.N.Y. 1996), *In re Innovative Commc'n Co., LLC*, No. 07-cv-105, 2008 WL 2354907 (D.V.I.), and *In re Snow*, 201 B.R. 968 (Bankr. C.D. Cal. 1996), were all proceedings for injunctions, a form of relief expressly covered by Bankruptcy Rule 7001(7). *SLW Capital LLC v. Mansaray*, 530 F.3d 230 (3d Cir. 2008), concerned an effort by the assignee of a mortgage to determine the validity of its interest in the property, which is provided for under Bankruptcy Rule 7001(2). *In re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990), determined that creditors of a Chapter 7

debtor had no standing to file a motion seeking turnover of debtor's pension fund account to the bankruptcy trustee.

19.     RBS argues that the Trustee "only has a contested contract claim" rather than a right to property of the LBI estate (RBS Mot. 14, ¶ 22). But the parties are past the point of a contract dispute; ABN long ago conceded that it was holding the liquidated sum of $345,938,625 due to LBI in consequence of its early termination of the ISDA Master Agreement between the parties, and RBS as successor to ABN is bound by that admission. The Trustee does not, therefore, seek recognition of contract rights; he seeks to undo RBS's triangular setoff in violation of the Stays, contrary to applicable law, and a declaration that RBS must end its interference with the LBI estate's right to the Withheld Funds.

20.     At no time has RBS brought a motion to lift the Stays for the purpose of establishing a permanent right to retain the Withheld Funds. Just as a bank needs permission to exercise the right of setoff after the automatic stay takes effect, *Swedbank v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.)*, 433 B.R. 109 (Bankr. S.B.N.Y. 2010), a creditor may not indefinitely hold property of the estate without obtaining permission from the Bankruptcy Court. *See, e.g., In re Wicks, supra*, 215 B.R. at 318-20. Significantly, in *Wicks* the debtor obtained relief from a banking creditor's unapproved, extended withholding of deposited funds, by means of a motion under Section 362(a) of the Bankruptcy Code. *Accord, In re Cullen*, 329 B.R. 52, 56 (Bankr. N.D. Iowa 2005); *In re Orr*, 234 B.R. 249, 255 (Bankr. N.D.N.Y. 1999).

21.     RBS's conduct bears striking similarities to the conduct in which Bank of America engaged, and which this Court has previously addressed. *In re Lehman Bros. Holdings Inc.*, 439 B.R. 811 (Bankr. S.D.N.Y. 2010). As an initial matter, RBS's entire basis for denying that the Withheld Funds constitute "property of the estate" is the fact that RBS has already converted those funds through a so-called triangular setoff. In fact, RBS has even done Bank of America one better. Unlike Bank of America, which at least sought ratification (albeit retroactively) of its setoff, RBS never sought permission or approval from the Court but took action unsupported by law. As the Court stated with regard to Bank of America, "[t]his deliberately aggressive and calculated strategy seems to be a current example of the old aphorism that possession is nine-tenths of the law". Here, like Bank of America, RBS "has done nothing to alter the legal analysis as to the underlying issue . . . . the questions to be decided are purely legal, namely, *whether the funds taken by [the party] were properly subject to being set off under the circumstances and whether such a setoff is permissible under applicable law without first obtaining stay relief.*" *Id.* at 816 (emphasis added).

22.     RBS's discussion of *Citizens Bank v. Strumpf*, 516 U.S. 16, 21 (1995), is entirely beside the point (*see* RBS Mot. 12-13). The Trustee does not seek a ruling on whether the LBI estate has a "right to payment" under a contract, so the distinction in *Strumpf* between cash on deposit at a bank and a depositor's rights in connection with a deposit account is irrelevant here. The Withheld Funds were long ago conceded by ABN to be due and payable to the LBI estate, and the only reason they continue to be withheld is that RBS purports to have exercised a triangular setoff for

which it has never sought or received Bankruptcy Court approval. Such conduct in fact violates the teaching in *Strumpf* that a creditor must move promptly to obtain Bankruptcy Court approval, as the bank did there, if the creditor wishes to engage in post-petition self-help with respect to the property. In the words of the court in *In re Orr* (interpreting *Strumpf*), for a creditor "to maintain a freeze or hold on a debtor's account indefinitely without seeking relief from the automatic stay would make Code § 362(a)(7) superfluous. Ultimately, it is for the Court to determine whether an entity has the right to setoff that it may exercise." 234 B.R. at 255.

23.     In sum, the Trustee has proceeded in accordance with the procedural requirements of the Bankruptcy Code to obtain relief in connection with the Withheld Funds. RBS's due process rights are in all respects preserved. Its contention that the Bankruptcy Rules have been dishonored is without merit, and its characterization of the relief requested should be rejected.

24.     RBS argues in the alternative that the Trustee's motion should be converted to a complaint and that an adversarial proceeding should be deemed to have been commenced instead of a contested proceeding (RBS Mot. 17). For the reasons stated above, that exercise would be wasteful and unnecessary. Nevertheless, to avoid delay and in an excess of caution, on August 19, 2011, the Trustee filed an adversary complaint seeking the same relief as the Trustee's motion (Adv. Proc. No. 11-02548). The Trustee has advised RBS that he intends to hold the adversary proceeding in abeyance pending determination of the issues raised by the RBS motion and has consented to an extension

of RBS's time to respond so that it need not address the complaint until after the Court has ruled on the issues presented here.

## II.    RBS's Request for a Stay Should Be Denied.

25.     In the alternative, RBS demands a stay of "all non-discovery related proceedings … pending a determination by the District Court with respect to RBS N.V.'s motion to withdraw the reference" (RBS Mot. 18). The placement of this argument at the end of the motion is revealing. If RBS genuinely believed this matter did not belong in the Bankruptcy Court, it would surely have presented that point front and center. Instead, only after arguing passionately and at length that the case should be heard as an adversary proceeding under the Bankruptcy Code and Bankruptcy Rules does RBS suggest, as a fallback, that the Trustee's motion should be stayed so that RBS can try its hand in another forum. There is good reason for RBS to have treated this argument as an afterthought -- the request for a stay is without merit.

26.     The grounds for issuance of a stay pending a motion in the District Court to withdraw the reference are well-established. Bankruptcy Rule 5011(c) provides explicitly that proceedings are not stayed upon filing of a reference withdrawal motion unless either the Bankruptcy Court or the District Court so orders. *In re Chrysler LLC*, No. 09-50002 (AJG), 2009 WL 7386569 *1 (Bankr. S.D.N.Y.). As stated in the Rule:

> The filing of a motion for withdrawal of a case or proceeding … shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion.

"The moving party bears the burden of proof in demonstrating that a stay of proceedings pending a determination of a motion to withdraw the reference would be proper." *Id.*

27.    For RBS to succeed on its request for a stay, it "must demonstrate (a) the likelihood of prevailing on the merits; (b) that the movant will suffer irreparable harm if the stay is denied; (c) that the Debtor[] will not be substantially harmed by the stay; and (d) that the public interest will be served by granting the stay." *In re Dana Corp.*, No. 06-10354, 2007 WL 2908221, at *1 (Bankr. S.D.N.Y.). RBS cannot satisfy this standard.

28.    First, RBS is unlikely to prevail on the merits of its request in the District Court to withdraw the reference. RBS asserts that its request is governed by Section 157 of the Judicial Code, and more specifically 28 U.S.C. § 157(d), which "provides for either permissive withdrawal of the reference, upon a showing of cause, or mandatory withdrawal of reference if consideration of certain other federal statutes is necessary." *In re Eagle Enterprises, Inc.*, 259 B. R. 83, 87 (E.D.Pa. 2001).[1] Mandatory withdrawal is appropriate only where resolution of the claims will require "substantial and material" interpretation of non-code federal statutes that have more than a de minimis impact on interstate commerce. *Id.* Since RBS makes no claim that this is the case here, instead alleging that New York and English contract law is involved, its request cannot be based on mandatory withdrawal.

---

[1] The SIPA liquidation was removed to this court pursuant to SIPA's specific removal provision, 15 U.S.C. § 78eee(b)(4), not under 28 U.S.C. § 157, a fact RBS ignores. Because of this, the District Court will have additional grounds to deny RBS's request to withdraw the reference that need not be addressed at this time.

29.     Permissive withdrawal of the reference arises from the language in 28 U.S.C. § 157(d) that authorizes a District Court to assume responsibility for the case "for cause shown." In this regard, the courts distinguish, as a threshold matter, between whether the proceeding is "core" or "non-core" to the bankruptcy case. "Core" proceedings are "those that directly relate to a bankruptcy court's central functions." *In re Salander O'Reilly Galleries*, No. 07-30005, 2011 WL 2837494, at *1 (Bankr. S.D.N.Y.). They include, without limitation, under 28 U.S.C. § 157(b) such proceedings as "(A) matters concerning the administration of the estate;"(C) counterclaims by the estate against persons filing claims against the estate;" "(E) orders to turn over property of the estate;" and "(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims …". In contrast, matters that are only "related to" the bankruptcy and could be brought in an alternative forum were the debtor not before the Bankruptcy Court are "non-core" proceedings. *In re Salander O'Reilly Galleries, supra*, at *5.

30.     Here, the contested matter brought by the Trustee against RBS is a core proceeding. The Trustee's motion to enforce the Stays, including the automatic stay of Section 362(a) of the Bankruptcy Code, seeks to vindicate an essential component of the administration of the estate, as contemplated by 28 U.S.C. § 157(b)(2)(A). The only legal issues are basic bankruptcy law issues -- whether RBS and certain of its affiliates may engage in triangular setoff against property of the estate under the mutuality requirement of Section 553(a) of the Bankruptcy Code, and whether the safe harbor of

- 15 -

Section 560 of the Bankruptcy Code provides an exception to that mutuality rule. These are not state law issues, and RBS's attempt to re-characterize them as somehow involving a "contested contract claim" under New York or English law is baseless.

31.     RBS's reliance on *Stern v. Marshall*, _U.S._, 131 S.Ct. 2594 (2011) (RBS Mot. 10-11) is misplaced for the same reason.  Unlike the state law tort action in that case, which was "in no way derived from or dependent upon bankruptcy law," the Trustee's motion here "stems from the bankruptcy itself" and is therefore properly within the Bankruptcy Court's power to adjudicate. 131 S.Ct. at 2618. Moreover, *Stern v. Marshall* confirms that RBS's filing of a proof of claim constituted consent to Bankruptcy Court core jurisdiction. Such consent permits this Court to act where, given the claimant's own debt to the estate, adjudication of the claim "become[s] integral to the restructuring of the debtor-creditor relationship." 131 S.Ct. at 2617, quoting with approval, *Langenkamp v. Culp*, 498 U.S. 42, 45 (1990) (*per curiam*).

32.     Given the centrality of bankruptcy law and SIPA estate administration to the issues raised by the Trustee's motion, RBS must surmount a steep hurdle to show a likelihood that it will somehow succeed before the District Court on its motion to withdraw the reference. *See In re Dana Corp.*, *supra*, at *2 (objection to government's claims was a core proceeding, and application of other federal law to largely factual issues was unlikely to divest bankruptcy court of jurisdiction); *In re Chrysler LLC*, *supra*, at *2 (existence of substantial issues of law prevented movant from clearly demonstrating a substantial likelihood of success on the withdrawal motion). Here

RBS cannot get over that hurdle, and for this reason alone its request for a stay should be denied.

33.     Nor can RBS satisfy the other prerequisites for the issuance of a stay. There can be no irreparable harm to RBS from having to respond to the Trustee's motion on the merits in this Court. As explained above, RBS has in these proceedings the full panoply of rights required by principles of due process. If it wins on the Trustee's motion, its effort to change the forum will have proved unnecessary. If it loses, it still has the right of appeal to the same District Court where the issues, which are essentially legal, will be heard *de novo*. In any event, its expedited request in the District Court may result in a ruling even before this Court hears the Trustee's motion, which is currently scheduled for argument on October 20, 2011. The Trustee is responding expeditiously in the District Court in the interest of a prompt resolution of RBS's request to withdraw the reference.

34.     RBS argues that it will be "prejudiced" in the absence of a stay because it will then have to "fight simultaneous litigation on two fronts" (RBS Mot. 19-20). RBS can hardly claim to be prejudiced by multiple proceedings it has brought upon itself.  In any event, much of the work on both fronts is already done.  And even if the District Court were to withdraw the reference, it would still be free to direct that the Bankruptcy Court address the matter and submit proposed findings of fact and conclusions of law, with any final order or judgment being entered by the District Judge after considering this Court's recommendations. 28 U.S.C. § 157(c)(1). As the Second Circuit has emphasized, "hearing core matters in a district court could be an inefficient

allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and circumstances." *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993). Thus, RBS's supposed concern that a ruling by this Court would "be under a cloud" as to constitutionality (RBS Mot. 20) would be obviated by treating any such ruling as a recommendation under Section 157(c)(1) subject to *de novo* consideration in the District Court.

35.    The remaining two requirements for a stay -- lack of substantial harm to the debtor and lack of adverse impact on the public interest, are in effect merged in a SIPA proceeding -- since the Trustee is a creature of statute and serves a public function. While RBS is surely correct (RBS Mot. 20) that the Trustee has a great deal on his plate, now and in the immediate future, it is very much in the public interest that the wrongful withholding of $345 million be promptly addressed, and the Trustee is treating the matter as a priority. This is particularly the case in view of the Trustee's publicly stated intention to make an initial distribution in 2012. If he is correct that the Withheld Funds are property of the LBI estate and not subject to triangular setoff for lack of mutuality, it is critical that such property be returned at an early date.

## CONCLUSION

For all these reasons, the motion of RBS N.V. to dismiss the Trustee's motion, or alternatively, (i) to convert the motion to an adversary proceeding complaint, (ii) to apply the Part VII Bankruptcy Rules, and (iii) to stay the proceeding pending a determination of its motion to withdraw the reference in the District Court, should be denied in all respects.

Dated: New York, New York
        August 22, 2011

                                        Respectfully submitted,

                                        MENAKER & HERRMANN LLP


                                        By: /s/ Richard G. Menaker
                                               Richard G. Menaker

                                        10 East 40th Street
                                        New York, NY 10016
                                        Telephone:  (212) 545-1900
                                        Facsimile:   (212) 545-1656

                                        Special Counsel for James W. Giddens
                                        Trustee for the SIPA Liquidation of
                                        Lehman Brothers Inc.

# APPENDIX

**RECEIVED MAY 1 5 2009**

*For*

*LBI*

*O20894ABAA*



**✖ RBS**
*The Royal Bank of Scotland*

**BY COURIER**

Lehman Brothers Inc.
745 Seventh Avenue
New York, NY 10019
U.S.A.

Attention: Derivatives Legal

Lehman Brothers Inc.
3 World Financial Center, 7th Floor
New York, NY 10285
U.S.A.
Fax: +00 1 212 528 6865

Attention: Jonathan D Williams

Copy to:

Lehman Brothers Inc.
1271 6th Avenue, 40th Floor
New York, NY 10020
U.S.A.
Fax: +00 1 212 526 7672
Email: derivativeslegal@lehman.com

**Global Banking & Markets**
ABN AMRO Bank N.V., London Branch
135 Bishopsgate
London EC2M 3UR
Telephone: +44 (0) 20 7678 8000
Facsimile: +44 (0) 20 7857 9000
www.rbs.com

14 May 2009

Dear Sirs,

### STATEMENT UNDER SECTION 6(d)(i) OF THE ISDA MASTER AGREEMENT

Introduction

We refer to the 1992 ISDA Master Agreement (Multicurrency-Cross Border) between us, ABN AMRO Bank N.V., and you, Lehman Brothers Inc., and dated as of 16 March 1998, as amended and supplemented, (the **Master Agreement**) and the Transactions thereunder, as listed in the attached Appendix.

By virtue of our execution of the Close-out Amount Multilateral Agreement dated 29 August 2008, certain of the provisions of the Master Agreement have been amended. References in this notice to the Master Agreement are to the Master Agreement as so amended.

We refer also to the Credit Support Annex between us, ABN AMRO Bank N.V., and you, Lehman Brothers Inc., and dated as of 16 March 1998 (the CSA).

Terms not otherwise defined in this letter shall have the same meanings set out in the Master Agreement.

ABN AMRO Bank N.V. refers you to its notice dated as of 14 September, 2008 designating an Early Termination Date of 15 September, 2008 in respect of Section 5(a)(vii) of the Master Agreement.

DMS#79626954 v 1

ABN AMRO Bank N.V Branch Reg. No. In England BR001029. Incorporated in The Netherlands with limited liability. Authorised by De Nederlandsche Bank.
ABN AMRO Bank N.V is an authorised agent of The Royal Bank of Scotland plc.

This letter constitutes the statement required by Section 6(d) of the Master Agreement.

**Close-out Amount**

Pursuant to the terms of the Master Agreement, we have determined a Close-out Amount in respect of each Terminated Transaction or each group of Terminated Transactions, as specified in the Appendix to this letter.

The Termination Currency specified in Part 1 of the Schedule to the Master Agreement is the freely-convertible currency selected by the Non-defaulting Party or the party that is not the Affected Party. We have selected United States Dollars (**USD**) as the Termination Currency and have where necessary determined Termination Currency Equivalents of each Close-out Amount on or about 15 September, 2008 as specified in the Appendix to this letter.

Pursuant to Section 6(e), subject to our right of set-off specified below, the amount otherwise **payable by us to you** (excluding interest at the Applicable Rate) is USD 347,501,344, determined on the following basis:

1. Sum of Termination Currency Equivalents of the
   Close-out Amounts:                                              USD 23,147,889

   PLUS

2. Termination Currency Equivalent of the
   Unpaid Amounts owed to ABN (including
   the Value of the Credit Support Balance which
   we have determined, pursuant to Paragraph 6
   of the CSA, to be USD 0):                                       USD 210,048,565

   LESS

3. Termination Currency Equivalent of the
   Unpaid Amounts owed by ABN (including
   the Value of the Credit Support Balance which
   we have determined, pursuant to Paragraph 6
   of the CSA, to be USD 53,999,000):                              USD 580,697,798

   TOTAL:                                                          USD (347,501,344)

Without giving effect to our right of set-off, this amount would be due on the date of this letter together with interest thereon in U.S. Dollars from and including the Early Termination Date at the Applicable Rate.

DMS#796454 v 1

**Set-off**

We hereby notify you that we are exercising our right of set-off arising under certain Terms of Agreement ("Terms") delivered from time to time accompanying 10b-10 confirmations and/or on a quarterly basis to certain of your affiliates. Pursuant to the Terms, you and each of your affiliates agreed that upon the occurrence of certain defaults and certain insolvency events with respect to yourselves and or your affiliates, which events have occurred, that RBS Securities Inc. (f/k/a Greenwich Capital Markets, Inc.) (d/b/a/ RBS GreenwichCapital) and each of its affiliates (each an "RBS Party" and, collectively, the "RBS Parties") would be entitled to set-off any obligation owing by it to you against any obligation owing by you or any of your affiliates to any RBS Party. In addition, pursuant to the Terms, you and each of your affiliates subject to the Terms granted to the RBS Parties a security interest in all securities, money and other property, and all proceeds of any of the foregoing now or hereafter held or carried by an RBS Party for you as collateral security for the payment of any and all obligations and liabilities of you or your affiliates to an RBS Party. The Terms further provide that the applicable affiliate shall be liable to each RBS Party for all costs and expenses, including attorney's fees and expenses, incurred in connection with the enforcement or collection by a RBS Party of its rights or claims under the Terms.

We refer to

(i)     the 1992 ISDA Master Agreement between The Royal Bank of Scotland plc and Lehman Brothers Inc., dated as of November 25, 1996, as amended and supplemented, and the Transactions thereunder. Attached hereto is a copy of the statement required by Section 6(d) of such Master Agreement which is being delivered to you on the date hereof and indicates an amount due to our affiliate, The Royal Bank of Scotland plc, of USD 40,023,040, plus interest as described therein.

(ii)    the 1992 ISDA Master Agreement between ABN AMRO Bank N.V. and Lehman Brothers International (Europe), dated as of January 24, 1997, as amended and supplemented, and the Transactions thereunder. Attached hereto is a copy of the statement required by Section 6(d) of such Master Agreement which is being delivered to Lehman Brothers International (Europe) on the date hereof and indicates an amount due to ABN AMRO Bank N.V. of USD 85,722,057, plus interest as described therein, and,

(iii)   the 1992 ISDA Master Agreement between The Royal Bank of Scotland plc and Lehman Brothers Special Financing Inc., dated as of September 15, 2003, as amended and supplemented, and the Transactions thereunder. Attached hereto is a copy of the statement required by Section 6(d) of such Master Agreement which is being delivered to you on the date hereof and indicates an amount due to our affiliate The Royal Bank of Scotland plc, of USD 791,596,534, plus interest as described therein.

Accordingly, pursuant to the Terms, ABN AMRO Bank N.V., as an RBS Party, exercises its right to set-off (and foreclose upon collateral held against) its obligations under the Master Agreement, as specified above (the "Obligations"), against the obligations of Lehman Brothers Inc., Lehman Brothers International (Europe), and Lehman Brothers Special Financing Inc., as specified in the immediately preceding paragraphs and in the order so specified (to the extent not satisfied by the payment of or other other rights of set-off effected against such obligations), such that the Obligations shall be set-off (and collateral applied against), first against the obligations of Lehman Brothers Inc. referred to in clause (i) of the immediately preceding paragraph, and any portion of the

DMS#796454 v 1

Obligations remaining after giving effect to such set-off shall be set-off (and collateral applied), second against the obligations of Lehman Brothers International (Europe) referred to in clause (ii) of the immediately preceding paragraph, and so forth

Please note that pursuant to Section 11 of the Master Agreement, we will, in due course, be claiming under the indemnity for our reasonable out-of-pocket expenses including without limitation legal fees and Stamp Taxes incurred by reason of the enforcement and protection of our rights under the Master Agreement and the CSA and/or by reason of the early termination of the Transactions, including, but not limited to, costs of collection.

We reserve all our rights to make amendments to this statement.

Yours faithfully,

*M.K. May*

**ABN AMRO Bank N.V.**

Michele May
Authorised Signatory

Sarah Hannan
**Authorised Signatory**