FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------:
: Chapter 11
In re: :
: Case No. 08-13555 (JMP)
LEHMAN BROTHERS HOLDINGS INC., *et al.*, :
: (Jointly Administered)
Debtors. :
:
---------------------------------------------------------------:
:
In re :
:
LEHMAN BROTHERS INC., :
: Case No. 08-01420 (JMP) (SIPA)
Debtor. :
:
---------------------------------------------------------------:

**MEMORANDUM DECISION DENYING MOTION**
**TO STRIKE CERTAIN OBJECTIONS TO CLAIM OF JPMORGAN**
**CHASE BANK, N.A. BASED ON TRIPARTY REPO-RELATED LOSSES**

WACHTELL, LIPTON, ROSEN & KATZ
*Attorneys for Defendant JPMorgan Chase Bank, N.A.*
51 West 52nd Street
New York, New York 10019

    Harold S. Novikoff, Esq.
    Douglas K. Mayer, Esq.
    Ian Boczko, Esq.
    Emil A. Kleinhaus, Esq.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
*Attorneys for the Official Committee of Unsecured Creditors*
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543

    John B. Quinn, Esq.
    Erica P. Taggart, Esq.
    Tyler G. Whitmer, Esq.

51 Madison Avenue, 22nd Floor
New York, New York 10010-1601

    Susheel Kirpalani, Esq.
    Andrew J. Rossman, Esq.
    James C. Tecce, Esq.

CURTIS, MALLET-PROVOST, COLT & MOSLE, LLP
*Attorneys for Plaintiff Lehman Brothers Holdings Inc.*
101 Park Avenue
New York, New York 10178-0061

    Joseph D. Pizzurro, Esq.
    Lynn P. Harrison, III, Esq.
    Michael J. Moscato, Esq.
    Nancy E. Delaney, Esq.
    Peter J. Behmke, Esq.
    Cindi M. Giglio, Esq.

**JAMES M. PECK**
**UNITED STATES BANKRUPTCY JUDGE**

### *Introduction*

JPMorgan Chase Bank, N.A. ("JPMorgan") has brought a motion (the "Motion") to strike certain of the grounds for relief set forth in an objection to its proofs of claim against Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers Inc. ("LBI") in relation to losses that it allegedly incurred in the unwinding of complex triparty repo transactions. *See* Mot., ECF No. 25782. The objection to the amounts claimed by JPMorgan is dated August 31, 2011, ECF No. 19604 (the "Objection" or "Obj.") and is being prosecuted by LBHI and its Official Committee of Unsecured Creditors (the "Committee," and together with LBHI, the "Objectors").

The Objectors argue that JPMorgan's claims as LBI's triparty repo custodian are greatly overstated because (i) JPMorgan did not sell the collateral securing its position in a commercially reasonable manner, (ii) certain of the losses are traceable to the actions of Barclays Capital Inc. ("Barclays") and have already been settled, and (iii) JPMorgan improperly has added

postpetition interest to the claim. *See* Obj. 2. JPMorgan moves to strike those parts of the Objection that are based upon its settlement with Barclays and its claim for postpetition interest.

This motion practice is a calculated effort by JPMorgan to preemptively cut away portions of the Objection. This effort is taking place within the context of an ongoing larger multi-layered litigation concerning the net amounts that may ultimately be payable by these parties to one another, either by an agreed reconciliation and settlement or after a final judicial determination. Reference is made to the Court's recent decision of April 19, 2012 for a more detailed description of the significant prepetition financial relationships that existed among JPMorgan, LBI and LBHI and of the various causes of action currently being pursued by the Objectors against JPMorgan. *See Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings Inc.)*, 469 B.R. 415 (Bankr. S.D.N.Y. 2012). The Motion being considered now represents one isolated aspect of this much broader conflict between the parties.

For the reasons stated in this decision, the Motion is denied. Motions to strike are generally disfavored, and the benefit of any doubt at the pleading stage properly should go to the Objectors. Allowing the Objectors the opportunity to continue advancing all points raised in the Objection and to present evidence in support of their multiple arguments to reduce the amount of JPMorgan's claim is appropriate and does not prejudice JPMorgan, especially in a setting such as this in which granting the Motion would not yield any measurable savings of time and expense or help to resolve other issues in dispute. Denial of the Motion is procedural and is not an indicator of how the Court will decide the substantive points raised in the Motion.

### *Factual Background And Procedural History*

JPMorgan served as the principal clearing bank for LBI as well as the agent for LBI's tri-party repurchase agreements. *See* Obj. ¶ 11. In its capacity as LBI's clearing bank, JPMorgan facilitated the clearance and settlement of securities trades by LBI. *See* Obj. ¶¶ 11, 13.

3

JPMorgan acted as agent and intermediary for LBI and its tri-party repo investors who purchased LBI's securities. In this capacity, each morning JPMorgan would advance funds to LBI to "unwind" all of LBI's triparty repo trades. Obj. ¶¶ 13-14.

This "intraday" loan was secured by the repurchased securities and other LBI assets until LBI transferred these assets again after the close of the trading day in a repurchase transaction involving the same or a different counterparty. Obj. ¶ 14. All of this trading activity and financing took place in accordance with a certain Clearance Agreement between LBI and Chase Manhattan Bank, as predecessor-in-interest to JPMorgan, entered into on June 15, 2000 (the "Clearance Agreement"). *See* Kleinhaus Decl.[1] Ex. A (Clearance Agreement); Obj. ¶ 12. LBHI was not a party to the Clearance Agreement. *Id.*

In August 2008, however, JPMorgan presented LBHI with a set of agreements, including a guaranty (the "August Guaranty"), a security agreement (the "August Security Agreement"), and an amendment to the Clearance Agreement (collectively, the "August Agreements"). Obj. ¶ 16; *see* Kleinhaus Decl. Ex. C (August Guaranty); Kleinhaus Decl. Ex. D (August Security Agreement). By entering into the August Guaranty, LBHI guaranteed the obligations of LBI in relation to the Clearance Agreement, and these obligations were secured under the August Security Agreement. *Id.*

Two weeks later, JPMorgan presented LBHI with another set of agreements, including a guaranty (the "September Guaranty"), a security agreement (the "September Security Agreement"), and other related documents (collectively, the "September Agreements"). Obj. ¶17; s*ee* Kleinhaus Decl. Ex. E (September Guaranty); Kleinhaus Decl. Ex. F (September Security Agreement). The September Guaranty covered "all obligations and liabilities of [all of

---

[1] Citations to "Kleinhaus Decl." are to that certain Declaration of Emil A. Kleinhaus in Support of JPMorgan's Motion to Strike, dated February 24, 2012, ECF No. 25783.

4

LBHI's direct and indirect subsidiaries] to [JPMorgan] of whatever nature." Obj. ¶ 17; Kleinhaus Decl. Ex. E, §1 (September Guaranty).

*JPMorgan's Deficiency Claim*

On September 19, 2008, prior to the commencement later that day of LBI's SIPA liquidation case,[2] JPMorgan unwound certain of LBI's triparty repo trades resulting in an obligation to JPMorgan in the amount of $25,279,675,964. Obj. ¶¶ 2, 21. Securities held in LBI's clearance account served as collateral for that obligation. The Objectors assert that these securities, according to JPMorgan's records, had a market value of $27,218,845,261 and that cash and other incoming payments totaled $3,489,450,764. Obj. ¶ 22. JPMorgan was also holding $8.6 billion of LBHI cash and money market funds. Obj. ¶ 19. The transfer of those funds is the subject of the adversary proceeding (defined below) that is pending against JPMorgan.

JPMorgan filed Proof of Claim No. 4939 against LBI on May 29, 2009 (the "LBI Proof of Claim") to recover the deficiency resulting from the outstanding $25,279,675,964 in extensions of credit owed by LBI under the Clearance Agreement. Obj. ¶ 2; Kleinhaus Decl. Ex. B, Ex. B, at 3 (LBI Proof of Claim). On September 22, 2009, JPMorgan filed Proof of Claim No. 6642 against LBHI (the "LBHI Proof of Claim," and together with the LBI Proof of Claim, the "Proofs of Claim") in connection with LBHI's obligations under the August and September Guaranties. Kleinhaus Decl. Ex. B (LBHI Proof of Claim). JPMorgan amended the LBI Proof of Claim on March 31, 2010 and the LBHI Proof of Claim on April 1, 2010, after the parties entered into a certain Collateral Disposition Agreement, dated March 16, 2010 (the "CDA"). Obj. ¶ 38; Kleinhaus Decl. Ex. B (LBHI Proof of Claim); Kleinhaus Decl. Ex. B, Ex. B (LBI Proof of Claim).

---

[2] SIPA refers to the Securities Investor Protection Act of 1970, 15 U.S.C. §78aaa et seq., as amended.

The amended LBI Proof of Claim states that, as of March 15, 2010, the amount of the deficiency had been reduced to $6,333,781,099 (the "Deficiency Claim") "principally by application of the sale proceeds of securities collateral … pledged by [LBI] pursuant to the Clearance Agreement to secure such claims … ."  Obj. ¶2; Kleinhaus Decl. Ex. B, Ex. B, at 3 (LBI Proof of Claim).  The Proofs of Claim also seek $280,224,670 in postpetition interest on the Deficiency Claim through the date of execution of the CDA (the "Interest Claim"). Kleinhaus Decl. Ex. B, Ex. B, at 3 (LBI Proof of Claim).

*The Settlement With Barclays*

In the hectic days immediately following commencement of the LBHI bankruptcy, a dispute arose between JPMorgan and Barclays based on the failure of Barclays to rollover a certain $15.8 billion repo.  JPMorgan asserted that Barclays had reneged on an undertaking to refinance extensions of credit by JPMorgan to LBI under the Clearance Agreement and that as a result, JPMorgan was required to unwind a $15.8 billion overnight repo on September 18, 2008. *See* Obj. ¶ 25.  JPMorgan and Barclays, with the active encouragement of the Federal Reserve Bank of New York, promptly engaged in talks regarding their dispute, resulting in a September 22, 2008 Services and Settlement Agreement (the "SSA").  Obj. ¶ 25; Kleinhaus Decl. Ex. G (SSA).

The SSA contained a settlement and mutual release between JPMorgan and Barclays whereby (i) JPMorgan and Barclays released each other with respect to certain disputes, including losses claimed as a result of Barclays' failure to roll over the $15.8 billion repo, and (ii) Barclays agreed to withdraw a then pending lawsuit against Bear Stearns Asset Management, an entity that recently had been acquired by JPMorgan (the "Bear Stearns Lawsuit").  Obj. ¶ 25; Kleinhaus Decl. Ex. G (SSA).

6

More particularly, section 4 of the SSA provided that "JPMorgan and [Barclays] shall be deemed to forever release … all claims … in any way relating to the clearing, settlement and other processing services provided by JPMorgan to LBI … including without limitation any disputes relating to a repurchase agreement allegedly agreed to on or about September 18, 2008 in respect of approximately $15.8 billion face amount of securities, and … in consideration of the release granted to it in immediately preceding clause (a), [Barclays] shall promptly cause the [Bear Stearns Lawsuit] … to be withdrawn." Kleinhaus Decl. Ex. G, §4 (SSA).

On December 5, 2008, JPMorgan and Barclays entered into a second settlement agreement (the "December Settlement Agreement") finally resolving the issues between them, including a dispute over $7 billion allegedly due from JPMorgan. Obj. ¶¶ 25, 27; Kleinhaus Decl. Ex. H (December Settlement Agreement). Under the terms of the December Settlement Agreement, JPMorgan kept much of this $7 billion in cash, but in exchange agreed to transfer billions of dollars in securities and cash claimed by Barclays. Obj. ¶ 27; Kleinhaus Decl. Ex. H, § 1 (December Settlement Agreement). This agreement still required Barclays to withdraw the Bear Stearns Lawsuit, a litigation of unknown value at the time that has been estimated by one witness to be worth approximately $400 million. *See* Kleinhaus Decl. Ex. H §4(a) (December Settlement Agreement); Obj. ¶82; Whitmer Decl.[3] Ex. 5, Keegan Tr. 237:19-238:10 (describing lawsuit as worth about $400 million).

JPMorgan and Barclays also released each other from all claims relating to the $7 billion that had been sought by Barclays, the $45 billion reverse repurchase transaction between Barclays and LBI for the refinancing of the Federal Reserve Bank of New York's Primary

---

[3] Citations to "Whitmer Decl." are to that certain Declaration of Tyler G. Whitmer in Support of Objectors' Opposition to JPMorgan's Motion to Strike Portions of Objection to Proofs of Claim No. 66462 Against Lehman Brothers Holdings Inc. and No. 4939 Against Lehman Brothers Inc. Regarding Triparty Repo-Related Losses, dated March 26, 2012, ECF No. 27167.

Dealer Credit Facility and other financings, and the securities delivered by LBI to Barclays on September 18, 2008, as well as triparty repos related to LBI. Kleinhaus Decl. Ex. H, §§ 4(b), 4(c), and 4(e) (December Settlement Agreement).

*The Claims Objection and Motion to Strike*

The Objectors filed the Objection on August 31, 2011, and JPMorgan responded on November 15, 2011.[4] In accordance with an agreed briefing schedule, JPMorgan filed the Motion on February 24, 2012 seeking to strike the portions of the Objection relating to the value of consideration received by JPMorgan under its settlement with Barclays and its Interest Claim. On March 26, 2012, the Objectors filed a brief in opposition to the Motion (the "Opposition") and on April 11, 2012, JPMorgan filed its reply (the "Reply"). The Court heard oral argument on the Motion at a hearing held on April 26, 2012 (the "Hearing"). *See generally*, Hr'g Tr., April 26, 2012, ECF No. 27739.

### ***Motions To Strike Are Disfavored And Rarely Granted***

The Objection and related pleadings are treated as a contested matter and governed by Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). JPMorgan has asked, pursuant to Bankruptcy Rule 9014(c), that the Court apply Bankruptcy Rule 7012(b) to the Objection and strike certain defenses to the Proofs of Claim as legally insufficient.[5] Because motions to strike are generally viewed unfavorably, JPMorgan bears a heavy burden in its current procedural challenge to the Objection.

"Motions to strike are viewed with disfavor and [are] infrequently granted." *Wireless Ink Corp. v. Facebook, Inc.*, 787 F. Supp. 2d 298, 313 (S.D.N.Y. 2011) (citing *RSM Prod. Corp.*

---

[4] On that same date, the trustee in the LBI SIPA liquidation filed a statement indicating that he takes no position with respect to the Objection.

[5] Bankruptcy Rule 7012(b) makes applicable Federal Rule of Civil Procedure 12(f), which provides that "[t]he court may strike from a pleading an insufficient defense … ." Fed. R. Civ. P. 12(f).

*v. Fridman*, 643 F. Supp. 2d 382, 394 (S.D.N.Y. 2009)); *see also Freydl v. Meringolo*, No. 09 Civ. 07196 (BSJ)(KNF), 2011 U.S. Dist. LEXIS 67744, *3 (S.D.N.Y. Jun. 16, 2011) (noting that "[m]otions to strike are generally disfavored, but are within the district court's sound discretion.") (citation omitted); *SEC v. Lorin*, 869 F. Supp. 1117, 1120 (S.D.N.Y. 1994) ("Rule 12(f) motions are not favored and will not be granted routinely") (citation omitted); 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1381 (2012) ("Motions to strike a defense as insufficient are not favored by the federal courts because of their somewhat dilatory and often harassing character.").

This harsh assessment is consistent with Second Circuit authority. A motion to strike a defense on the basis of legal insufficiency "is not favored and will not be granted 'unless it appears to a certainty that plaintiffs would not succeed despite any state of the facts which could be proved in support of the defense.'" *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984) (citations omitted), *vacated on other grounds*, 478 U.S. 1015 (1986). In addition, "[t]he Second Circuit has instructed that, as a general proposition, 'courts should not tamper with the pleadings unless there is a strong reason for doing so.'" *Wireless Ink Corp.*, 787 F. Supp. 2d at 314 (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).

Also, to prevail on a motion to strike, "the movant must first show that it is prejudiced by the inclusion of the defense." *SEC v. Lorin*, 869 F. Supp. at 1120 (citing *Shell Oil Co. v. U.S. EEOC*, 523 F. Supp. 79, 83 (E.D. Mo. 1981) (noting that "[t]he Court should defer action on a motion to strike a pleading and leave the sufficiency of the allegations for a determination on the merits where there is no showing of prejudicial harm to the moving party.") (citation omitted)); *see also* 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1381

(2012) (noting that "even when technically appropriate and well-founded, Rule 12(f) motions often are not granted in the absence of a showing of prejudice to the moving party.").

"In order for a court to strike a defense as insufficient: '(1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense.'" *Coach Inc. v. Kmart Corp.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010) (citing *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 111 (S.D.N.Y. 2005)). The same standard that applies to motions to dismiss generally applies to motions to strike, and courts "thus will deem the non-moving party's well-pleaded facts to be admitted, draw all reasonable inferences in the pleader's favor, and resolve all doubts in favor of denying the motion to strike." *Diesel Props S.R.L. v. Greystone Business Credit II LLC*, No. 07 Civ. 9580(HB), 2008 U.S. Dist. LEXIS 92988, *12 (S.D.N.Y. Nov. 6, 2008) (citations omitted).

Thus, a motion to strike is rarely granted, and for good reason. As the Second Circuit has noted "[e]ven when a defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits. To do otherwise would be to run the risk of offering an advisory opinion on an abstract and hypothetical set of facts." *Salcer*, 744 F.2d at 939 (internal quotations and citations omitted). In light of these extremely tough standards and for the reasons discussed in the following section, the Court has concluded that the Motion should be denied.

*Discussion*

The Motion takes issue with two discrete grounds for the Objection and contends that these grounds should be summarily eliminated. As to issues involving Barclays and the

10

December Settlement Agreement, the Motion argues that the complicated facts and circumstances relating to resolution of that separate repo-related dispute are entirely unrelated to JPMorgan's claims against LBI and LBHI arising under the Clearance Agreement and the September Agreements. Despite the fact that repo collateral posted by LBI was involved in that dispute and its settlement, JPMorgan submits that this really is no more than a distraction because the facts as to Barclays are completely distinct and do not give rise to any proper deductions from the Deficiency Claim.

The second issue raised by JPMorgan in the Motion – the right to include a claim for postpetition interest – is portrayed as a plain vanilla, fully settled legal issue as to which the facts simply do not matter. As to that question, JPMorgan declares that it has an absolute entitlement to the Interest Claim regardless of the factual setting – even though winning the point does not yield a predictable economic benefit due to the risk that the Interest Claim, even if carved out of the Objection, may still be subordinated and stripped of any real value. In part for that reason, the prosecution of the Motion has taken on more of a tactical than a practical feel.

JPMorgan eventually may succeed in convincing the Court that the Objection should not be granted as to both the settlement with Barclays and the Interest Claim, but the Court is not prepared to reach that conclusion at the pleading stage. Not only are the standards for striking defenses quite stringent in their application, but the procedural setting here and the vigorous opposition of the Objectors also compel denial of the Motion. The intensity and complexity of the disputes are also material factors in the Court's thinking. To state it simply, if there is that much to fight about, the fight should take place later in the proceedings.

The Motion targets particular aspects of a factually complex claims reconciliation process in relation to highly sophisticated financing arrangements. As to that broader inquiry,

11

JPMorgan's motives and behavior are plainly relevant considerations, and the evidence to be adduced necessarily will impact the outcome. The issues identified by JPMorgan as legally insufficient are important ones that are not free from doubt, and they are best understood and evaluated after careful consideration of a fully developed record. In short, as the Court sees it, the points raised in the Motion do not lend themselves to the sort of dismissive summary disposition urged by JPMorgan. Other more specific reasons to deny the Motion are stated below.

*Those Aspects Of The Objection That Are Based On The Settlement With Barclays Will Not Be Stricken*

The Objection seeks to reduce the amount sought in the Proofs of Claim on the theory that JPMorgan received consideration from Barclays that should be offset against amounts stated in the Proofs of Claim. The Objectors submit, as a result, that the Deficiency Claim should be reduced by an amount equal to the value attributable to dismissal of the Bear Stearns Lawsuit together with any losses that were caused by Barclays and later settled. Obj. ¶ 82.

JPMorgan argues that this portion of the Objection is built upon the faulty premise that it is seeking to recover on the same claim for which payment has already been made and urges that the defense to the Deficiency Claim is flawed and should be stricken. Mot. 2; Reply 3. JPMorgan submits that there is no potential for double payment by Lehman because the obligation of LBI and LBHI as reflected in the Deficiency Claim remains the same regardless of the actions of Barclays and terms of the December Settlement Agreement. Mot.16-17.

In evaluating this prong of the Motion, the Court has considered whether the Objection as it relates to the December Settlement Agreement is a foreseeable source of any substantial prejudice to JPMorgan. It is not. The claimed prejudice is the speculative extra time and expense needed to develop facts regarding the value of the Bear Stearns Lawsuit that was

12

released in the December Settlement Agreement. 4/26/12 Hr'g Tr. 69:9-22. While it has been held that the inclusion of a defense that "would require additional discovery and would expand the length and scope of the trial" may constitute prejudice to a plaintiff under some circumstances,[6] that is not the case here.

The valuation of the Bear Stearns Lawsuit is a routine matter that should not require extensive or expensive discovery. The process of placing a value on any lawsuit is necessarily an inexact one, but professionals look into their crystal balls and do it quite often, at least within a range of values based on assumptions as to the likelihood of success in establishing liability and proving damages. The Court understands that someone has already suggested a value of $400 million. That may or may not be a fair or reliable estimate, but it is an indication that estimates are possible. This simply should not be a difficult process for experienced professionals.

Moreover, as the Court observed at the Hearing, in seeking to explain its version of the facts in order to distinguish the circumstances of its complex dealings with Barclays from the Deficiency Claim, JPMorgan has presented technical distinctions that are hard to follow without the benefit of a record that includes all relevant information concerning details of the settlement with Barclays and the consequences of that settlement. *See* 4/26/12 Hr'g Tr. 81:3-6. Regardless of the merits of a theory that possibly may be proven later, seeking to strike defenses based on the settlement with Barclays is premature at this point.

*The Objection Directed To The Interest Claim Will Not Be Stricken*

The Objection to the Interest Claim points out that if the Objectors prevail in the adversary proceeding brought against JPMorgan (the "Adversary Proceeding")[7] and succeed in

---

[6] *See Coach, Inc.*, 756 F. Supp. 2d at 426 (citing *Specialty Minerals, Inc.*, 395 F. Supp.2d at 114).
[7] *See* Case No. 10-3266, ECF Nos. 1 and 19.

divesting JPMorgan of the collateral at issue in the Adversary Proceeding, there would no longer be any basis for allowing the Interest Claim. Obj. ¶ 85. Additionally, they argue that the extraordinary and unique circumstances of the case justify relief from the Interest Claim notwithstanding the literal language of section 506(b) of the Bankruptcy Code. Obj. ¶¶ 86-87.

Their position is that the right to postpetition interest is not absolute and there are times when under equitable principles postpetition interest ought to be disallowed or reduced. Opp'n 22. The circumstances cited here by the Objectors are that (i) JPMorgan charged LBHI over $280 million in interest on a purported deficiency while holding $8.6 billion in collateral; (ii) JPMorgan not only held this cash collateral, but was able to profit from the use of these funds in its regular banking operations; and (iii) JPMorgan routinely delayed in timely applying proceeds from the sales of securities. Obj. ¶¶ 87-88.

JPMorgan bases its argument on the decision of the United States Supreme Court in *United States v. Ron Pair Enters., Inc.*[8] holding that the right to postpetition interest is "unqualified" and providing that postpetition interest is to be paid on all oversecured claims. Mot. 19. The Objectors, however, rely on language in *Ron Pair* stating "that the plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute would produce a result demonstrably at odds with the intention of its drafters." Opp'n 23 (citing *Ron Pair*, 489 U.S. at 242. (internal citation omitted) (alteration in original)). The Objectors contend that this is such a "rare case."

These arguments regarding the impact of *Ron Pair* on the Interest Claim need not be resolved now. Not only are the legal issues related to the Interest Claim vigorously disputed by the parties, but it is unknown at this point whether JPMorgan is even an oversecured creditor. 4/26/12 Hr'g Tr. 71:23-24-72:1-5. Furthermore, should JPMorgan succeed in demonstrating that

---

[8] 489 U.S. 235 (1989).

it is entitled to postpetition interest, the practical impact is uncertain because it may not be able to collect anything on the Interest Claim if the Objectors otherwise prevail in the Adversary Proceeding. Counsel for JPMorgan acknowledged as much at the Hearing. 4/26/12 Hr'g Tr. 87:11-24.

Thus, similar to the portion of the Motion addressed to the settlement with Barclays, it is not proper to determine the Interest Claim on the basis of the pleadings. In addition, the decision not to strike the Objection to the Interest Claim does not prejudice JPMorgan in any respect. The right, if any, one day to realize something of value on the Interest Claim is derivative of other claims and defenses with respect to the Deficiency Claim and the Adversary Proceeding. As such, JPMorgan will be engaged in litigating the same contextual issues regardless of whether the Motion is granted as to the Interest Claim.

## *Conclusion*

For the reasons stated, JPMorgan has not shown that it is appropriate on the present record to strike any portion of the Objection. The Motion is denied, without prejudice, as premature. The Objectors shall submit a form of order consistent with this Memorandum Decision.

Dated: New York, New York
       July 3, 2012

                                             *s/ James M. Peck*
                                             Honorable James M. Peck
                                             United Stated Bankruptcy Judge