| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**SOUTHERN DISTRICT OF NEW YORK** | FOR PUBLICATION |

In re:

LEHMAN BROTHERS INC.,

　　　　　　　　　　　　　　　　Debtor.

Case No. 08-01420 (JMP)
(SIPA)

### MEMORANDUM OPINION GRANTING THE TRUSTEE'S TWENTY-EIGHTH OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS (LATE-FILED CLAIMS)

HUGHES HUBBARD & REED LLP
*Attorneys for James W. Giddens, as*
*Trustee for the SIPA Liquidation of Lehman Brothers Inc.*
One Battery Park Plaza
New York, New York 10004

　　　James B. Kobak, Jr., Esq.
　　　Meaghan C. Gragg, Esq.

SECURITIES INVESTOR PROTECTION CORPORATION
*Attorneys for Securities Investor Protection Corporation*
805 15th Street, N.W., Suite 800
Washington, DC 20005

　　　Kenneth J. Caputo, Senior Associate General Counsel

AARON AKMAN
*Pro Se*
45 North 8th Ave.
Highland Park, NJ 08904

GRACE GATHUNGU
*Pro Se*
510 Dolphin Lane
Holbrook, NY 11741

DEAN MONKSFIELD
*Pro Se*
17 Hadfield Road
Stanford Le Hope
Essex, United Kingdom

ANDRE VERDERAME
*Pro Se*
93 Heatherhill Road
Cresskill, New Jersey 07626

ROSEN & ASSOCIATES, P.C.
*Attorneys for Mario A. Monello*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100

    Sanford Rosen, Esq.
    Nancy L. Kourland, Esq.

JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

*Introduction*

The provisions of the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. §§ 78aaa et seq. ("SIPA"), governing the filing of claims in this largest ever broker-dealer liquidation impose time limits that subject all customers and claimants to a well-defined deadline with few permitted exceptions. SIPA mandates that all claims against the estate must be filed within six months after the date of commencement of the case and by its express language does not accommodate late claims unless the claimant has moved for an extension before expiration of the bar date. Only limited classes of potential claimants even qualify to request such an extension. The standards are designed to be tough, and they are.

SIPA, as written, does not tolerate garden variety excuses for the failure to comply with the bar date for claims, even in situations where the claimant has only constructive notice by publication of the filing deadline and is able to show a plausible excuse for having missed the deadline. The omnibus objection to late-filed claims brought by James W. Giddens (the "Trustee"), as trustee for the liquidation of Lehman Brothers Inc. ("LBI") under SIPA, calls for an examination and application of this very strict procedural requirement. Consistent with the

letter of the law as written, the seemingly harsh result is that all claims presently before the Court are untimely and will be disallowed and expunged.

The Trustee has objected to certain claims that were filed after the bar date and seeks an order under section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), applicable to this case pursuant to sections 78fff(b) and 78fff-1(a) of SIPA, and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, disallowing and expunging these claims (the "Twenty-Eighth Omnibus Objection to General Creditor Claims" or the "Motion"). [ECF No. 5775.] The Securities Investor Protection Corporation ("SIPC") supports the Motion.[1] [ECF No. 6319.]

Responses to the Motion have been filed by various affected claimants: Aaron Akman ("Akman Response") [ECF No. 5888]; Grace Gathungu ("Gathungu Response") [ECF No. 5874]; Dean R. Monksfield ("Monksfield Response") [ECF No. 6323 Ex. C]; Stephen H. Thomas ("Thomas Response") [ECF No. 5864]; Andre Verderame ("Verderame Response") [ECF No. 6323 Ex. B]; and Mario Monello ("Monello Response") [ECF No. 6062] (collectively the "Respondents").[2] Mario Monello also filed a Cross Motion of Mario A. Monello Pursuant to Rule 9006(b)(a) of the Federal Rules of Bankruptcy Procedure to Deem as Timely Late-Filed Proofs of Claim (the "Monello Cross-Motion"). [ECF No. 6062.]

---

[1] SIPC is deemed to be a party in interest in all matters arising under a SIPA liquidation proceeding. 15 U.S.C. § 78eee(d).

[2] Several additional responses were filed — ZPR International, Inc. [ECF No. 6083]; CA, Inc. [ECF No. 5930]; and Adam Epstein [ECF No. 6323 Ex. D] — but the hearing on these claim objections has been adjourned to September 18, 2013. This Memorandum Decision does not address these adjourned responses directly, but the Court's ruling necessarily will impact the treatment of similarly situated claimants.

3

The Trustee filed an Omnibus Reply to Certain Responses to the Twenty-Eighth Omnibus Objection to General Creditor Claims and an Opposition to the Cross-Motion of Mario A. Monello (the "Reply"). [ECF No. 6323.] Annexed to the Reply is the declaration of James Katchadurian ("Katchadurian Declaration"). [ECF No. 6323 Ex. A.] Mario Monello filed a Sur-Reply. [ECF No. 6390.]

A hearing on the Motion was held on June 19, 2013. During oral argument, counsel for SIPC noted that controlling authority with respect to late filed claims in cases arising under SIPA can compel outcomes that at times may seem draconian. That observation is correct. Upon consideration of the Motion and each of the responses, the Court agrees with the Trustee and SIPC and finds, based on the facts presented, that it does not have the discretion to grant any relief from the firm and final deadline established by the Claims Process Order (as defined below). Therefore, for the reasons stated in this Memorandum Decision, the Twenty-Eighth Omnibus Objection to General Creditor Claims is granted as to all claim objections not otherwise adjourned or withdrawn, and the Monello Cross-Motion is denied.

*Background*

The SIPA case for LBI was commenced at the end of a tumultuous week in September 2008 that began with the chapter 11 filing of Lehman Brothers Holdings Inc. ("LBHI"). In furtherance of the administration of LBI's liquidation, on November 7, 2008 the Court entered an order Approving Form and Manner of Publication and Mailing of Notice of Commencement; Specifying Procedures and Forms for Filing, Determination, and Adjudication of Claims; Fixing a Meeting of Customers and Other Creditors; and Fixing Interim Reporting Pursuant to SIPA (the "Claims Process Order"). [ECF No. 241.]

4

The Claims Process Order specified the requirements for the Trustee to give notice of a June 1, 2009 deadline for filing claims against LBI (the "Bar Date") (i) by publication in the December 1, 2008, editions of *The New York Times, The Wall Street Journal* and *The Financial Times* and (ii) by mail to "persons who, as identified from LBI's books and records, may potentially assert claims as customers or general creditors on December 1, 2008." *Id.* The Trustee complied with the publication notice requirements and published additional notice in the December 1, 2008, edition of *The International Herald Tribune*. *See* Affs. of Publication, ECF Nos. 396-399.

The Trustee engaged a third-party vendor to mail printed notices of the Bar Date to all potential customers or general creditors whose names and addresses appeared in LBI's books and records (each, a "Mailed Notice" and together, the "Mailed Notices"). *See* Aff. of Service, ECF No. 391; Katchadurian Decl. ¶ 4. In accordance with the Claims Process Order, the notice given by publication and the Mailed Notices was calculated to notify all potential customers and general creditors that it was essential to file a claim on or before the Bar Date, and the Trustee's compliance with these procedures fulfilled the requirements of the notice provisions of SIPA. *See* Claims Process Order at 2, ECF No. 241.

The Respondents have objected to the Motion on a variety of grounds, but, in general, each of them contends that his or her late filed claim should be allowed because the notice procedures of the Claims Process Order failed to give them actual notice of the filing deadline. They do not challenge the adequacy of the procedures themselves. They focus instead on the unfairness in disallowing their claims under circumstances when they did not know about or understand the obligation to file their claims against LBI before the June 1, 2009 Bar Date. Their individual arguments are summarized below.

No Mailed Notice was sent to Respondent Thomas because the Trustee did not identify him as a known claimant from LBI's books and records. *See* Katchadurian Decl. ¶ 13. The Thomas Response urges that Thomas's late-filed compensation-based claim [Claim No. 6119] should be allowed because: (i) he did not receive actual notice of the Bar Date, (ii) he only learned of the Bar Date when attempting to file a claim in the LBHI chapter 11 case, and (iii) certain other mailings that he received from LBI and LBHI did not give notice of the Bar Date. *See* Thomas Resp. ¶¶ 1-9. The Mailed Notices were sent to all of the other Respondents, and only the Mailed Notice sent to Respondent Gathungu was returned as undeliverable. *See* Katchadurian Decl. ¶¶ 5, 6, 9-11.

The Akman Response argues that Akman's compensation-based claim [Claim No. 6127] should be allowed on grounds of either excusable neglect or laches because: (i) he never received actual notice of the Bar Date, (ii) he was suffering from a depressed mental state in the wake of the LBI bankruptcy and the subsequent termination of his employment, (iii) he was confused as to the separate filing deadlines that applied to the LBI and LBHI cases, and (iv) he believed his claim had been accepted by the Trustee due to the three-and-one-half-year delay between the filing of his claim on September 21, 2009 and the date of the Motion. *See* Akman Resp. 1-3.

The Gathungu claim [Claim No. 6197] relates to securities held by LBI on Gathungu's behalf, and, in the Gathungu Response, the claimant cites to a letter accompanying her claim. *See* Gathungu Resp. 1. The letter explains that Gathungu had submitted information on June 3, 2008 in an effort to recover securities moved from her account to LBI's "abandoned properties" account as a result of her not having been in contact with LBI for eight years. [Claim No. 6197.] She asserts that she never received a response regarding the status of her account or any actual notice of the bar date. *Id.*

6

The Monksfield Response relates to a claim for unpaid wages [Claim No. 6129] and concedes that this claim was filed after the Bar Date. Monksfield argues for an exception because he missed the bar date due to "an overload of documentation." *See* Monksfield Resp. 1. Similarly, the Verderame Response in connection with Verderame's claim for unpaid severance pay [Claim No. 6246] concedes that his claim was filed after the Bar Date. The Verderame Claim originally was filed against LBHI rather than LBI. Verderame asks for an equitable exception to the Bar Date in the LBI case, arguing that the late filing should be excused due to having mistakenly filed the claim in the wrong case. *See* Verderame Resp. ¶¶ 2-6.

The Monello Response states that Monello's claims are based on deferred compensation [Claim No. 6123] and shares in LBI's Private Employee Equity Fund [Claim No. 6132]. The Monello Cross-Motion requests a finding that his late-filed claims should be deemed timely filed under the excusable neglect standard of FED. R. BANKR. P. 9006(b) because Monello allegedly did not receive actual notice of the Bar Date due to a chronic problem of mail not being delivered properly to his address and because he believed erroneously that he needed to file his proofs of claim in the LBHI case. *See* Monello Resp. ¶¶ 1-21.

The Mailed Notices to Akman, Verderame, and Monksfield were sent to the same addresses that they submitted on their late-filed proof of claim forms (and, in the case of Akman and Monksfield, these addresses also were provided with their responses), and the Mailed Notices sent to Monello and Gathungu were sent to the same addresses that appeared on the documentation supporting their proofs of claim. *See* Katchadurian Decl. ¶¶ 4-13.

These various objections to the Motion and requests by the Respondents that they be excused from the consequences of not having complied with the Bar Date must be considered in light of the strict governing legal standards discussed below.

7

*Discussion*

*Filing Deadlines for Claims in SIPA Proceedings are Narrowly Construed*

*The Statutory Time Limitation, Exceptions, and Policy of SIPA*

SIPA provides that "[t]o the extent consistent with the provisions of [SIPA], a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of [the Bankruptcy Code]." 15 U.S.C. § 78fff. SIPA contains a plainly-worded and mandatory time limitation of six months for filing claims against the debtor while providing the limited right to extend this deadline for cause shown within the six-month time period. It provides that

> [n]o claim of a customer or other creditor of the debtor which is received by the trustee after the expiration of the six-month period beginning on the date of publication of notice … shall be allowed, except that the court may, upon application within such period and for cause shown, grant a reasonable, fixed extension of time for the filing of a claim by the United States, by a State or political subdivision thereof, or by an infant or incompetent person without a guardian.

15 U.S.C. § 78fff-2.

This rather rigid approach to time limitations differs from customary bankruptcy practice in setting bar dates and reflects Congress's response to the policies underlying the SIPA statutory scheme — namely, ensuring the systematic integrity of the securities industry, restoring investor confidence, and "upgrad[ing] the financial responsibility requirements for registered brokers and dealers." *See SIPC v. Barbour*, 421 U.S. 412, 415-16 (1975) (citing S. Rep. No. 91-1218, pp. 2-4 (1970); H.R. Rep. No. 91-1613, pp. 2-4 (1970), and U.S. Code Cong. & Admin. News 1970, p. 5254.). Congress enacted SIPA to address the systematic integrity of the financial system and the inability of bankruptcy proceedings to otherwise effectively preserve and timely return creditor funds held by broker-dealers. *See id.* at 417 (citing 15 U.S.C. § 78fff(a)) ("[A SIPA]

8

trustee is empowered and directed by [SIPA] to return customer property, complete open transactions, enforce rights of subrogation, and liquidate the business of the member … he is not empowered to reorganize or rehabilitate the business.").

Given these policy objectives of SIPA and the explicit statutory language concerning time limitations, extensions of time are limited to a narrow class of claimants (governmental units, infants and incompetents without guardians) and must be requested before the expiration of the six-month time period. Under this structure, extensions of the time period for filing claims in SIPA cases are permitted only when the express statutory requirements are satisfied. This differs from the familiar "excusable neglect" standard that applies to late filed claims in chapter 11 cases. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1993) (footnote and citation omitted) ("The "excusable neglect" standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases. The rules' differentiation between Chapter 7 and Chapter 11 filings corresponds with the differing policies of the two chapters. Whereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors.").

The aim of a SIPA case is not reorganization but the prompt return of customer property, and that goal, like the goal of prompt closure and distribution in chapter 7, justifies a strict six-month time limitation for filing claims against the debtor broker-dealer, a limitation period that by design may be extended only in those circumstances that are specified in the SIPA statute.

*Equitable Discretion to Extend Deadline for Filing Claims is Limited Under SIPA*

The statutory time limitations for filing a claim in a SIPA case are clearly delineated and do not allow the Court to fashion judicial exceptions to such filing deadlines. *Miller v. Austin*,

9

72 B.R. 893, 896-99 (S.D.N.Y. 1987) ("[I]t is clear from the face of the statute that the six-month time limit for filing is subject to extension at the discretion of the court in only three specified instances," and "the 'excusable neglect' exception contained in . . . Rule 9006(b)(1) of the Bankruptcy Rules[] is inapplicable to SIPC liquidations."). This conclusion is consistent with the wording of the SIPA statute, the legislative history of the provision and SIPA's policy goals. *See* Act to Amend the Securities Investor Protection Act of 1970, Pub. L. No. 95-283, 92 Stat. 259 and 261-2 (1978) (amending SIPA to include the stand-alone limitations of 15 U.S.C. § 78fff-2(a)(3) and eliminate references to equitable extensions of time available under the Bankruptcy Act).

*SIPA Notice Requirements*

Section 78fff-2(a)(1) of SIPA governs the manner for giving notice to both customers and creditors in a SIPA liquidation. The section provides that

> [p]romptly after the appointment of the trustee, such trustee shall cause notice of the commencement of proceedings under this section to be published in one or more newspapers of general circulation in the form and manner determined by the court, and at the same time shall cause a copy of such notice to be mailed to each person who, from the books and records of the debtor, appears to have been a customer of the debtor with an open account within the past twelve months, to the address of such person as it appears from the books and records of the debtor. Notice to creditors other than customers shall be given in the manner prescribed by Title 11, except that such notice shall be given by the trustee.

15 U.S.C. § 78fff-2.

Title 11 ordinarily calls for notice to be given by mail, although bankruptcy courts may decide that notifying creditors by publication is sufficient or desirable under the circumstances. FED. R. BANKR. P. 2002(l) ("The court may order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."). Here, the form and

10

manner of notice prescribed under the Claims Process Order and implemented by the Trustee were appropriate and fully consistent with the noticing requirements of SIPA. Everything was done that reasonably could have been done to provide actual or publication notice to all known brokerage customers and other parties with potential claims against LBI.

Despite proof of mailing of the Mailed Notices, certain of the Respondents complain that they did not receive actual written notice of the Bar Date, and they urge that an exception should be made for this reason. The cause for not having received the Mailed Notices that used addresses taken from LBI's books and records is unexplained. None of the Respondents have produced "direct and substantial evidence" to rebut the "presumption that the addressee of a properly addressed and mailed notice actually receives that notice." *In re Chicago P'ship Bd., Inc.*, 236 B.R. 249, 256 (Bankr. N.D. Ill. 1999) (citations and internal quotation marks omitted). Thus, the Trustee has satisfied his obligation to give notice to customers by mailing notices of the Bar Date.

The Mailed Notices were addressed properly, based on LBI's books and records. While using these addresses is required, "due process does not require that the interested party actually receive the notice." *SIPC v. Stellatos (In re Blinder, Robinson & Co., Inc.)*, 124 F.3d 1238, 1243 (10th Cir. 1997) (citation omitted). Additionally, although notice by publication alone is insufficient for known creditors in bankruptcy, "[i]t is well settled that constructive notice of the claims bar date by publication satisfies the requirements of due process for unknown creditors." *In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 48 (Bankr. D. Del. 2012) (citations omitted).

Notwithstanding the argument that for whatever reason the Mailed Notices of the Bar Date were not received by certain of the Respondents (and for purposes of this discussion, the Court assumes that such assertions are true without testing their credibility), the Trustee has

11

shown his diligent compliance with the Claims Process Order and with the notice provisions of SIPA. Importantly, notice of the Bar Date is still adequate regardless of actual receipt by the Respondents because the Trustee properly relied upon addresses taken directly from LBI's records and followed procedures that were "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Adler, Coleman Clearing Corp.*, 204 B.R. 99, 106-7 (Bankr. S.D.N.Y. 2001) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The procedures for giving notice, both by mail and by publication, were entirely appropriate and were followed here in a manner that complied fully with the Claims Process Order. The Trustee did all that was required of him. From the point of view of the affected claimants, not having received the printed notice of the Bar Date (or perhaps not having paid attention to it and later recognizing the error) may well lead to a feeling that claim preclusion is unfair under the circumstances. But such a feeling, while an understandable personal reaction, disregards the policy goals embedded in the statute. The deadlines have been set purposefully, and equitable pleas for special exceptions are beyond the scope of the statutory language and are unavailing. No relief may be granted from the deadlines imposed in the Claims Process Order because the six-month time limitation for filing claims is fixed and the SIPA statute does not accommodate any of the excuses for failing to file a timely claim against LBI.

### *Respondents Are Not Entitled to Relief Under a Standard of "Manifest Injustice"*

The Monello Response and the Monello Cross-Motion argue that the Court can grant relief from the harsh consequences of the six-month time limitation in order to avoid a result that would be manifestly unjust. Monello submits that his confusion as to the separate filing deadlines in the LBHI and LBI cases and the fact that he did not receive notice of the Bar Date

due to persistent problems with his home mail delivery offer a reasonable excuse for the late filing of his claim and that the Court may grant him an exception from strict compliance with the Bar Date because it would be manifestly unfair under the circumstances to disallow his claim for deferred compensation owed to him by LBI. That argument relies upon language in *Miller v. Austin*, but misses the central point of that case. *Miller* stands for the proposition that bankruptcy courts do not have the discretion to override the clear time limitations imposed by SIPA.

In *Miller*, the United States District Court for the Southern District of New York held that it was error for a bankruptcy court to rely on bankruptcy precedent in allowing an extension of the deadline for filing claims in a SIPA case because doing so "disregards the long-established rule that except in the most unusual cases ... the equitable power should not be used to extend the statutory six months period fixed by Congress." *Miller*, 72 B.R. at 898 (internal quotation marks and citation omitted). In *dicta*, the court does mention certain instances that might satisfy a manifest injustice standard in a bankruptcy case but did not state that an exception based on unusual circumstances or any other equitable concept is available in the context of a SIPA proceeding. *Id.* The court noted that in cases unrelated to SIPA, "courts have allowed the time period for filing to be extended in only two circumstances: (i) where the claimant received inadequate notice; and (ii) where an officer of the bankruptcy court committed an error relied upon by the claimant." *Id.*

Mr. Monello contends that the analysis in *Miller* allows for the possibility that the period for filing a SIPA claim may be extended to prevent manifest injustice in appropriate cases and argues that his situation presents the kind of exceptional circumstances that would justify granting equitable relief from the harsh consequences of the Bar Date. But even if the Court were to accept the concept of an equitable remedy to deal with those extremely rare situations

13

that seem to cry out for relief,[3] none of the Respondents have shown that adherence to the time limitations prescribed by SIPA would be manifestly unjust under the relatively mundane circumstances that have been alleged here.

Mr. Monello and the other Respondents have raised issues that arguably may fit within the category of excusable neglect but not the more exacting standard that would be invoked to prevent manifest injustice. The facts alleged are routine in nature and insufficient to support any finding of truly exceptional extenuating circumstances. Ordinary confusion about such things as the proper name of the Lehman affiliate that is obligated to the claimant, the filing of claims by mistake in the wrong cases or problems with mail delivery are not sufficient to justify any exceptions to the Bar Date. Like the factual circumstances in *Miller*, the Respondents have alleged the "types of occurrences [that] can be expected" in a SIPA liquidation. 72 B.R. at 899. Accordingly, equitable relief is not available, and the Bar Date will be enforced in accordance with its terms as to Mr. Monello and the other Respondents.

## *Conclusion*

For the reasons stated, the six-month time limitation for filing claims in SIPA cases is mandatory and must be strictly construed. It would be an abuse of discretion for the Court to grant the exceptional relief sought by the Respondents. The Motion is granted, and the late-filed

---

[3] The Court does not wish to speculate regarding what would need to be shown by a claimant to demonstrate a right to an equitable exception based on manifest injustice. Conceivably, no sufficient showing can ever be made. However, if a case for an exception were to be seriously considered, something truly extraordinary would need to be shown involving an occurrence or circumstance that makes it virtually impossible or impracticable to file the claim on time. An example would be a disruptive event that temporarily impairs the claimant's ability to manage his, her or its affairs (*e.g.*, a life-threatening accident, an unexpected serious medical emergency or a major natural disaster that destroys business records and interrupts ordinary operations of a business). No such excuses have been shown by any of the Respondents.

claims of the Respondents are disallowed and expunged.  The Trustee is directed to submit an

order consistent with this Memorandum Decision.

    SO ORDERED.

Dated: New York, New York
       July 11, 2013



/s/ James M. Peck
_____
Honorable James M. Peck
United States Bankruptcy Judge