**REED SMITH LLP**
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile:  (212) 521-5450
    Michael J. Venditto

*Attorneys for Sybase Inc.*

Hearing Date: February 27, 2014 at 10 a.m.
Response Deadline: February 3, 2014 at 4 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS INC.,<br><br>　　　　　　　　　　Debtor. | Chapter 11<br>Case No. 08-01420 (JMP) SIPA<br><br>*Refers to*: ECF No. 8015 |

**RESPONSE OF SYBASE INC. TO THE TRUSTEE'S**
**ONE HUNDRED NINETIETH OMNIBUS OBJECTION TO**
**GENERAL CREDITOR CLAIMS (NO LIABILITY CLAIMS)**

Sybase Inc. ("Sybase") hereby responds to the Trustee's One Hundred Ninetieth Omnibus Objection to General Creditor Claims (No Liability Claims) [ECF No. 8015] (the "Omnibus Objection") filed by James W. Giddens (the "Trustee"), as trustee for the liquidation of the business of Lehman Brothers Inc. ("LBI"), under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), with respect to claim number 8002242 (the "Sybase Claim") filed by Sybase against LBI in the above-captioned proceeding.[1]

### I.    SUMMARY OF RESPONSE

1.    The Omnibus Objection consists of the Trustee's generalized assertions about forty-one (41) distinct claims. Notably, the Omnibus Objection raises no specific objection to the Sybase Claim, which is predicated on LBI's breach of its contractual obligations to Sybase.

---

[1]    Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Omnibus Objection.

US_ACTIVE-116246273-SKKAM-347374-60004

2. The Trustee's generalizations, which pertain to other claims filed by other creditors, are insufficient to overcome the *prima facie* validity of the Sybase Claim.

3. The Omnibus Objection should be denied insofar it refers to the Sybase Claim because the Trustee has failed to carry his evidentiary burden.

## II. FACTUAL BACKGROUND

### A. LBI'S Breach of the Institutional Client Agreement

4. On or about August 23, 2001, Sybase and LBI entered into an Institutional Client Agreement (the "Agreement") pursuant to which LBI agreed to act as broker or dealer for Sybase upon the terms set forth in the Agreement.[2]

5. In the Agreement, LBI agreed to certain limitations on the acceptable investments for the account of Sybase. The Agreement provided, *inter alia*, that LBI was authorized to buy and sell seven (7) categories of "products." Additionally, the Agreement required LBI to comply with the investment limitations set forth in the "Sybase Investment Policy" that was annexed to the Agreement. The Sybase Investment Policy defined "Eligible Investments" and set "specific guidelines of tenor, dollar amount and composition of the portfolio." Sybase Investment Policy at 1.

6. These guidelines included three (3) criteria for the selection among Eligible Investments. The first criteria was: "Preservation of capital (safety)." The second criteria was: "Liquidity (convertibility to cash)." The third criteria was: "Yield (rate of return)."

7. Finally, the Sybase Investment Policy included composition requirements that set concentration limitations, by both issuer and investment category.

---

[2] The agreement was originally entered into by New Era of Networks, Inc., which Sybase had acquired in April 2001; accordingly, as used herein references to "Sybase" include New Era of Networks, Inc.

- 2 -

8.  The Sybase Claim arises from LBI's breach of the Agreement by LBI's underwriting, marketing and/or selling to Sybase approximately $28.9 million in auction rate securities ("ARS"), without full and fair disclosure, and in violation of the Agreement.

9.  To be an Eligible Investment under the Agreement, ARS had to meet two criteria. They had to be rated at least "A"; and, they had to have a maturity of less than 49 days.

10. The Sybase Investment Policy also had two concentration limitations that applied to ARS:

   a.  ARS could not constitute more than 50% of the entire Sybase portfolio; and

   b.  Not more than the greater of $5 million or 10% of the portfolio could be invested in the ARS of any single issuer.[3]

11. The investment by LBI of the entirety of Sybase's funds in ARS was a violation of the Agreement.

12. Beginning in 2007, auctions for the ARS that LBI purchased for the Sybase account began to fail due to insufficient bids from buyers. On or about September 30, 2008, Sybase received the account statement for its brokerage account, which reflected that the value of its ARS had declined to only $111,977.22.

13. As a result of LBI's breach of the Agreement, Sybase has suffered significant damages both in market value and liquidity losses.

**B.  The Lehman Bankruptcy and SIPA Cases**

14. On September 15, 2008, Lehman Brothers Holdings, Inc., followed periodically thereafter by certain of its subsidiaries (collectively, the "Chapter 11 Debtors"), not including LBI, commenced voluntary Chapter 11 cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")

---

[3]  Since the Sybase account was originally $28.9 million, the per issuer limitation was $5 million.

- 3 -

15. On September 17, 2008, the Chapter 11 Debtors filed a motion seeking authority to (i) sell certain of their assets to Barclays Capital, Inc. ("BCI"), free and clear of liens, claims, interests and encumbrances, pursuant to a September 16, 2008 Asset Purchase Agreement (the "Sale Motion"), and (ii) to assume and assign to BCI certain of Lehman's Business, defined in the Asset Purchase Agreement as meaning "the U.S. and Canadian investment banking and capital market businesses of Seller including the fixed income and equities cash trading, brokerage, dealing, trading and advisory businesses, investment banking operations and LBI's business as a futures commission merchant."

16. On September 19, 2008, a SIPA liquidation proceeding was commenced in the United States District Court for the Southern District of New York (the "SIPA Proceeding"). That same day, United States District Judge Gerard E. Lynch entered an Order Commencing Liquidation (the "LBI Liquidation Order").

17. The LBI Liquidation Order, *inter alia*, appointed the Trustee for the liquidation of the business of LBI and removed the SIPA Proceeding to this Court.

18. On September 20, 2008, the Bankruptcy Court issued an Order granting the Sale Motion, thereby authorizing the sale of certain assets and businesses to BCI pursuant to the Asset Purchase Agreement.

19. On December 11, 2008, Sybase received notice that the SIPA Trustee had assumed, and purported to assign, the Agreement to BCI, pursuant to the Asset Purchase Agreement.[4]

---

[4] The notice also asserted that the "cure amount" due upon assumption was zero and required that objections to the cure amount be made within ten (10) days from the date of the letter. On December 19, 2008, Sybase served and filed a written objection to the zero dollar cure amount based on LBI's breach of the Agreement and the resulting claims of Sybase.

- 4 -

20. LBI is indebted to Sybase for the damages sustained by Sybase as a consequence of LBI's breach of the Agreement. Consequently, on January 29, 2009, in accordance with the Customer Claims Process Order, Sybase filed the Sybase Claim.

**C.     The Trustee's Omnibus Objection**

21. On January 6, 2014, the Trustee filed the Omnibus Objection to forty-one (41) general creditor claims. The only mention of the Sybase Claim is on page 10 of Exhibit A, where the Trustee gives the following rationale for disallowance: "no legal or factual justification for asserting a claim against LBI. Claims are insufficient as a matter of law." [ECF No. 8015 at p. 51]

22. This cryptic explanation for listing the Sybase Claim on Exhibit A is seemingly intended to bootstrap some unspecified segment of the arguments laid out in the body of the Omnibus Objection. However, as explained below, none of this potpourri of legal arguments applies to the facts or circumstances set out in the Sybase Claim.

23. Significantly, the Omnibus Objection does not deny that LBI breached the Agreement. Nor does it dispute that Sybase suffered economic injury as a result of that breach.

### III.     ARGUMENT

**A.     The Trustee's Objection Fails to Meet His Initial Evidentiary Burden**

24. The Omnibus Objection is insufficient, as a matter of law, and should be overruled.

25. Section 502(a) of the Bankruptcy Code provides that a filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). "A properly completed proof of claim is *prima facie* evidence of the validity and amount of a claim." *In re MF Global Holdings*, No. 11-02790, 2012 Bankr. LEXIS 5297, *9 (Bankr. S.D.N.Y. Nov. 13, 2012) (citing Fed. R. Bankr. P. 3001(f)).

26. When the Trustee objects to a proof of claim, he "bears the initial burden of providing evidence to show that the proof of claim should not be allowed." *Id.* If the Trustee fails to carry this burden, the court "'shall allow' the claim." *In re Today's Destiny, Inc.*, No. 05-90080, 2008 WL 5479109, *4 (Bankr. S.D. Tex. Nov. 26, 2008) (quoting 11 U.S.C. § 502(b)). On the other hand, if the Trustee "puts forth sufficient evidence to rebut a proof of claim's *prima facie* validity, the claim is not per se denied. . . . Rather, the proof of claim simply loses the presumption of validity." *Id.* (citations omitted).

27. Sybase properly filed a proof of claim that set forth the basis for its monetary claim, *i.e.*, LBI's breach of the Agreement. This constitutes *prima facie* evidence of the validity and amount of the Sybase Claim. The Trustee's generalized assertions pertaining to other proofs of claim do not overcome the *prima facie* validity of the Sybase Claim.

28. The Trustee offers only a conclusory statement that in reliance on an undisclosed "analysis by the Trustee's counsel of the No Liability Claims listed on Exhibit A and other relevant documents and materials, the Trustee has identified the No Liability Claims as claim for which LBI is not liable." Omnibus Objection, p. 17. Such a self-serving assertion is insufficient to overcome the facial validity of the Sybase Claim.

29. Only if "the presumption of *prima facie* validity is overcome—*e.g.*, the objecting party establishes that the proof of claim lacks a sound legal basis—the burden shifts to the claimant to support its proof of claim unless the claimant would not bear that burden outside of bankruptcy." *MF Global Holdings*, 2012 Bankr. LEXIS 5297, at *9 (citing *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("A proof of claim is *prima facie* evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion. The burden then shifts to the claimant if the objector produces evidence equal in force to the prima

- 6 -

facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.") (internal quotation marks and citations omitted); 4 Collier on Bankruptcy ¶ 502.02[2][f]). The claimant need only "prove its claim by a preponderance of the evidence." *Id.* at \*10-11 (citing *Best Payphones, Inc. v. Verizon N.Y., Inc. (In re Best Payphones, Inc.)*, No. 05-6531, 2006 WL 647618, at \*4 (S.D.N.Y. Mar. 14, 2006); *Oneida Ltd.*, 400 B.R. at 389).

30.  The Trustee has provided no evidence at all with respect to the Sybase Claim; indeed, he barely mentions it. Because the Trustee has failed to meet his evidentiary burden, the Trustee's objection must be overruled. *See Today's Destiny*, 2008 WL 5479109, at \*4.

**B.  The Trustee's Assertion that Many Claimants Have Failed to Alleged Fraud with Particularity is Not Applicable to the Sybase Claim**

31.  The Trustee asserts that "many" of the forty-one (41) No Liability Claims are premised on alleged fraud by LBI with respect to ARS. Omnibus Objection, p. 17. However, the Court and creditors are left to speculate which claims are part of the "many" and which are not.

32.  Ironically, while the Trustee does not identify which claims are problematic, he asks the Court to make particularized findings about the adequacy of the allegations in each of these unspecified claims. According to the Trustee, the Court should look at each of them and determine if they satisfy the pleading requirements of Fed. R. Civ. P. 9(b). *See* Omnibus Objection, pp. 17-21.

33.  Rule 9(b) requires that complaints in a federal action must plead fraud with specificity. Assuming *arguendo* that Rule 9(b) should be extrapolated to bankruptcy proofs of claim, its application would have no impact on the Sybase Claim. Sybase has alleged breach of

- 7 -

contract, not fraud. Therefore, the Trustee's arguments about compliance with Rule 9(b) are not applicable and afford no basis on which to disallow the Sybase Claim.

**C.     The General ARS Disclosures Do Not Foreclose Liability on the Sybase Claim**

34.    Again without addressing the specific facts related to the Sybase Claim, the Trustee contends that general disclosures from LBI regarding ARS, news articles, and other general information regarding ARS "precluded any reasonable reliance on alleged misstatements or omissions" by the Claimants. *See* Omnibus Objection, pp. 22-25. The Trustee's assertions regarding reasonable reliance raise very fact-specific issues.

35.    Assuming that the Trustee could substantiate his factual assertions about disclosure and reliance, it would not provide any basis to disallow Sybase's contract claims. As recounted above, the Sybase Claim is based on LBI's breach of the Agreement. A breach of contract claim has no reliance element. The only requirements for a breach of contract claim are (1) the existence of a contract between the plaintiff and the defendant; (2) the plaintiff's performance under the contract; (3) the defendant's breach of the contract; and (4) damages. *See E1 Entertainment U.S. LP v. Real Talk Entertainment, Inc.*, 09-650139, 2013 WL 6985387, *4 (N.Y. Sup. Dec. 23, 2013).

36.    Although the Trustee also contends that ARS disclosures could be the basis for dismissal of common law claims, the single case cited by the Trustee relating to a breach of contract claim is readily distinguishable. *See* Omnibus Objection, p. 24 (citing *Cellular S. Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 516 F. App'x 30 (2d Cir. 2013). In *Cellular S.*, the appellate court affirmed the district court's dismissal of a breach of contract claim because the plaintiff failed to allege the existence of a contract. *Celluar S. Inc.*, 516 Fed. Appx. at *32 (citing *In re Merrill Lynch Auction Rate Sec. Litig.*, 886 F. Supp. 2d 340, 345-46, 347-48 (S.D.N.Y.

Pg 9 of 12

2012)).  Here, there is no dispute that the Agreement is an existing, valid, and enforceable contract that was assumed by the Trustee..

37.     As a matter of law, the general ARS disclosures referenced by the Trustee do not foreclose liability on the Sybase Claim.

**D.    Other Claimants' Agreements and Second Circuit Authority Do Not Foreclose Liability on the Sybase Claim**

38.     Again without addressing the specific facts related to the Sybase Claim, the Trustee asserts that "Claimants' ARS purchases resulted in trade confirmations that referenced the LBI ARS Disclosures and stated the purchases were conclusive unless objected to in writing within 10 days" and that "LBI also sent Claimants monthly portfolio summaries and statements that identified each of their ARS holdings."  Omnibus Objection, p. 26.  The Trustee offers no evidence that Sybase received such trade confirmations or monthly portfolio summaries and statements.  But even if there were such confirmations or portfolio summaries and statements, the supposed obligation of Sybase to object in writing would not bar a claim based on LBI's breach of the Agreement.  *See Ambac Assur. UK Ltd. v. J.P. Morgan Inv. Management, Inc.*, 88 A.D.3d 1, 928 N.Y.S.2d 253 (1st Dep't 2011) (obligation of investor to "object in writing" as to any act or transaction within a period of ninety days from the date of receipt of any statement from investment manager did not bar breach of contract and other claims that were based on failure of investment manager to manage accounts in accordance with investment objective, since conduct at issue, that manager did not follow course of action with respect to accounts despite its awareness of declining subprime securities market and its own divestiture of such securities, would not have shown on any statement).

39.     The Trustee further asserts that the claims of creditors who were parties to a *Cash Management Brokerage Agreement* are foreclosed by certain limitation of liability provisions in

- 9 -

those agreements. Omnibus Objection, p. 26-27. The Trustee does not allege that Sybase had a Cash Management Brokerage Agreement with LBI or otherwise agreed to a limitation of liability provision.[5] The Trustee's assertions regarding limitation of liability provisions in LBI's agreements with other creditors affords no basis for disallowing the Sybase Claim.

**E.    The Trustee's Assertion that Other Claimants' Cannot Establish Loss Causation for their Federal Securities and State Tort Claims is Not Germane to the Sybase Claim**

40.    The Trustee also contends that the Claimants have not established loss causation, and therefore their Section 10(b), Rule 10(b)-5, and tort claims fail as a matter of law. Omnibus Objection, p. 28. According to the Trustee, the Court should disallow and expunge these claims. *See* Omnibus Objection, pp. 28-30. Sybase has not alleged Section 10(b), Rule 10(b)-5, or tort claims. The Trustee's general assertions are again not germane to the breach of contract claim of Sybase; they do not warrant expunging the Sybase Claim.

**F.    The Sybase Claim Does Not Include Exemplary Damages or Interest**

41.    Finally, the Trustee argues that several of the claims include demands for punitive or exemplary damages. Omnibus Objection, p. 30. According to the Trustee, to the extent not disallowed in their entirety, the No Liability Claims that seek punitive damages or interest should be subordinated or disallowed. *See* Omnibus Objection, pp. 30-31. Sybase seeks only compensatory damages; it has not demanded either punitive or exemplary damages. Once again, the Trustee's general assertions are not germane to the Sybase Claim and do not warrant either expunging or subordinating the Sybase Claim.

---

[5]    The Agreement between Sybase and LBI was denominated as an "Institutional Client Agreement."

## IV. CONCLUSION

42. The Omnibus Objection is a shotgun approach to an apparently diverse universe of ARS related claims. But the Sybase Claim is not in the target zone of the Trustee's arguments. His objection should, therefore, be overruled.

For all of the foregoing reasons, the Sybase respectfully requests that the Court (i) deny the Omnibus Objection as to the Claim, and (ii) grant other relief as the Court deems appropriate.

Dated: February 3, 2014
New York, New York

    Respectfully submitted,

    **REED SMITH LLP**

    By: *s/ Michael J. Venditto*
        Michael J. Venditto
        599 Lexington Avenue
        New York, New York 10022
        Telephone: (212) 521-5400
        Facsimile: (212) 521-5450

    *Attorneys for Sybase Inc.*

# **CERTIFICATE OF SERVICE**

I, Sarah K. Kam, declare under penalty of perjury that on February 3, 2014, I caused a copy of the *RESPONSE OF SYBASE INC. TO THE TRUSTEE'S ONE HUNDRED NINETIETH OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS (NO LIABILITY CLAIMS)* to be served upon the following by overnight mail:

Honorable Shelley Chapman
One Bowling Green, Courtroom 621
New York, New York 10004

Hughes Hubbard & Reed LLP
Attn: Meaghan C. Gragg, Esq.
One Battery Park Plaza
New York, New York 10004-1482

Securities Investor Protection Corporation
Attn: Kenneth J. Caputo, Esq.
805 Fifteenth Street, N.W., Suite 800
Washington, DC 20005

Weil, Gotshal & Manges LLP
Attn: Maurice Horowtiz, Esq. and Lori R. Fife
767 Fifth Avenue
New York, New York 10153

The Office of the United States Trustee for Region 2
U.S. Federal Office Building
Attn: William K. Harrington, Esq., Susan Golden, Esq., and Andrea Schwartz, Esq.
201 Varick Street, Suite 1006
New York, New York 10014