Hearing Date and Time:  March 27, 2014 at 10:00 a.m. (Prevailing Eastern Time)
Response Date and Time:  March 7, 2014 at 4:00 p.m. (Prevailing Eastern Time)

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:(212) 837-6000
Facsimile: (212) 422-4726

*Attorneys for James W. Giddens,*
*Trustee for the SIPA Liquidation of Lehman Brothers Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>    LEHMAN BROTHERS INC.,<br><br>                                    Debtor. | Case No. 08-01420 (SCC) SIPA |

### NOTICE OF TRUSTEE'S OBJECTION TO THE GENERAL CREDITOR PROOF OF CLAIM OF LOBDELL CAPITAL PARTNERS LP (CLAIM NO. 2387)

**PLEASE TAKE NOTICE** that on February 14, 2014, James W. Giddens (the

"Trustee"), as trustee for the liquidation of the business of Lehman Brothers Inc. (the "Debtor"

or "LBI"), under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. §§ 78aaa

*et seq.* ("SIPA"), by and through his undersigned counsel, filed an objection to general creditor

claim number 2387, filed by Lobdell Capital Partners LP (the "Objection").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Objection will be held, if

necessary, before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the

United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 621, One

Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **March 27, 2014 at**

**10:00 a.m. (Prevailing Eastern Time)** or as soon thereafter as counsel may be heard (the

"Hearing").

**PLEASE TAKE FURTHER NOTICE** that responses, if any, to the Objection must:

(i) be in writing; (ii) state the name and address of the responding party and nature of the claim

or interest of such party; (iii) state with particularity the legal and factual bases of such response; (iv) conform to the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules; (v) be filed with the Bankruptcy Court, together with proof of service, electronically, in accordance with General Order M-399 by registered users of the Court's Electronic Case Filing system, and by all other parties in interest, on a 3.5 inch disk, compact disk, or flash drive, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format no later than **March 7, 2014 at 4:00 p.m. (Prevailing Eastern Time)** (the "Response Deadline"); and (vi) be served on (a) Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004, Attn: Meaghan C. Gragg, Esq.; (b) the Securities Investor Protection Corporation, 805 Fifteenth Street, N.W., Suite 800, Washington, DC 20005, Attn: Kenneth J. Caputo, Esq.; and (c) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Maurice Horwitz, Esq. and Lori R. Fife, Esq., with a courtesy copy to the chambers of the Honorable Shelley C. Chapman, Courtroom 621, One Bowling Green, New York, New York, 10004.

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Objection, the Trustee may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Objection, which may be entered with no further notice or opportunity to be heard offered to any party.

Dated: New York, New York
February 14, 2014

HUGHES HUBBARD & REED LLP

By: /s/ James B. Kobak, Jr.
    James B. Kobak, Jr.
    Christopher K. Kiplok
    Robert B. Funkhouser
    Meaghan C. Gragg
    Jordan E. Pace
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile:  (212) 422-4726
E-mail: kobak@hugheshubbard.com

*Attorneys for James W. Giddens,*
*Trustee for the SIPA Liquidation of*
*Lehman Brothers Inc.*

**Hearing Date and Time:  March 27, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Date and Time:  March 7, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:(212) 837-6000
Facsimile: (212) 422-4726

*Attorneys for James W. Giddens,*
*Trustee for the SIPA Liquidation of Lehman Brothers Inc.*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re:

　　　　LEHMAN BROTHERS INC.,

　　　　　　　　　　　　Debtor.

Case No. 08-01420 (SCC) SIPA

## THE TRUSTEE'S OBJECTION TO THE GENERAL CREDITOR
## PROOF OF CLAIM OF LOBDELL CAPITAL PARTNERS LP (CLAIM NO. 2387)

# TABLE OF CONTENTS

**Page**

RELIEF REQUESTED.................................................................................................1

JURISDICTION AND VENUE ...................................................................................2

BACKGROUND ..........................................................................................................2

BACKGROUND OF THE CLAIM...............................................................................4

    Lobdell and the Opportunities Fund .......................................................................4

    Lobdell Conducts Due Diligence Into the Opportunities Fund ...............................5

    Lobdell Invests in the Opportunities Fund and the Fund Incurs Losses...................5

    Lobdell Uncovers Alleged Irregularities in the
    Fund's Financial Statements and Informs the SEC ..................................................6

    The SEC Intervenes and a Receiver Is Appointed....................................................6

    Procedural Posture ..................................................................................................8

ARGUMENT .................................................................................................................9

I.     LOBDELL'S CAUSES OF ACTION ARE
      BARRED BY THE STATUTES OF LIMITATIONS .......................................9

II.    LOBDELL DOES NOT ALLEGE SUFFICIENT FACTS TO
      SUPPORT ANY OF ITS CAUSES OF ACTION AGAINST LBI...................12

    A.    Negligence:  LBI Did Not Owe Any Duty to Lobdell...........................12

    B.    Negligent Misrepresentation:  LBI Did Not Intend to
        Induce Lobdell's Reliance on Any Alleged Statements .......................13

    C.    Fraud:  Lobdell Does Not Plead Fraud with the Required Particularity...............14

    D.    Aider/Abettor Liability:  LBI Did Not Intend to Facilitate Any Tort....................16

    E.    Failure to Supervise and Failure to Observe High Commercial
        Standards:  There Is No Private Right of Action for Violation of FINRA
        Rules ....................................................................................................16

RESERVATION OF RIGHTS ....................................................................................17

NOTICE.......................................................................................................................17

NO PRIOR RELIEF REQUESTED ...........................................................................17

CONCLUSION............................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Adelphia Commc'ns Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660
(Bankr. S.D.N.Y. Feb. 20, 2007) ..............................................................................9

*Asbestosis Claimants v. U.S. Lines Reorganization Trust (In re U.S. Lines, Inc.)*, 262 B.R.
223 (S.D.N.Y. 2001), *aff'd sub nom. In re U.S. Lines, Inc.*, 318 F.3d 432 (2d Cir.
2003) ........................................................................................................................10

*Atmosphere Sciences, LLC v. Schneider Advanced Techs., Inc.*, No. 12 Civ. 3223 (SAS),
2012 U.S. Dist. LEXIS 135099 (S.D.N.Y. Sept. 19, 2012)....................................14

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ........................................12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................12

*In re Brill*, 318 B.R. 49 (Bankr. S.D.N.Y. 2004)...........................................................10

*Cyr v. McGorvan*, 206 Cal. App. 4th 645 (Cal. Ct. App. 2012)...................................10

*In re DJK Residential LLC*, 416 B.R. 100 (Bankr. S.D.N.Y. 2009)..............................14

*ECA v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) .......................................15

*Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.)*, 398 B.R. 736
(S.D.N.Y. 2008)........................................................................................................12

*Gerard v. Ross*, 204 Cal. App. 3d 968 (Cal Ct. App. 1988) ........................................16

*Gurfein v. Ameritrade, Inc.*, 312 F. App'x 410................................................................16

*In re Hess*, 404 B.R. 747 (Bankr. S.D.N.Y. 2009) ........................................................9

*Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980) ........................................16

*Kosovich v. Metro Homes, LLC*, No. 09 Civ. 6992 (JSR), 2009 U.S. Dist. LEXIS 121390
(S.D.N.Y. Dec. 30, 2009), *aff'd on other grounds*, 405 F. App'x 540 (2d Cir. 2010) ............14

*Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros.
Holdings Inc.)*, 469 B.R. 415 (Bankr. S.D.N.Y. 2012)............................................15

*Lomaglio Assocs. Inc. v. LBK Mortg. Corp.*, 876 F. Supp. 41 (S.D.N.Y. 1995)............................14

*In re Oneida Ltd.*, 400 B.R. 384 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Peter J. Solomon
Co. v. Oneida Ltd.*, No. 09 Civ. 2229 (DC) (S.D.N.Y. 2010)...................................9

*Pereira v. Grecolas Ltd. (In re Saba Enters.)*, 421 B.R. 626, 642 (Bankr. S.D.N.Y. 2009) .........15

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436
    (7th Cir. 2011)..................................................................................................................14

*Richman v. Goldman Sachs Group, Inc.*, 868 F. Supp. 2d 261 (S.D.N.Y. 2012)........................16

*In re Rockefeller Ctr. Props.*, 272 B.R. 524 (Bankr. S.D.N.Y. 2000) ...........................................9

*Shamsian v. Atl. Richfield Co.*, 107 Cal. App. 4th 967 (Cal. Ct. App. 2003) ...............................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ...............................................15

*U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586 (1970) .............................................12

*William L. Lyon & Assocs., Inc. v. Superior Ct.*, 204 Cal. App. 4th 1294 (Cal. Ct. App.
    2012) ...........................................................................................................................10, 11

**STATUTES**

11 U.S.C. § 502.......................................................................................................................1, 9, 12

11 U.S.C. § 558..................................................................................................................................9

15 U.S.C. § 78aa...............................................................................................................................2

15 U.S.C. §§ 78aaa *et seq.* ..............................................................................................................1

15 U.S.C. § 78eee .........................................................................................................................2, 3

15 U.S.C. § 78fff................................................................................................................................1

15 U.S.C. § 78fff-1 ...........................................................................................................................1

15 U.S.C. § 78fff-2 ...........................................................................................................................3

Cal. Code Civ. P. § 339...................................................................................................................10

Cal. Corp. Code § 25401..................................................................................................................10

Cal. Corp. Code § 25504 *et seq.* ...............................................................................................10, 16

Cal. Corp. Code § 25506..................................................................................................................10

**RULES**

Fed. R. Bankr. P. 7009.....................................................................................................................14

Fed. R. Bankr. P. 9014.....................................................................................................................14

**Hearing Date and Time:  March 27, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Date and Time:  March 7, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:(212) 837-6000
Facsimile: (212) 422-4726

*Attorneys for James W. Giddens,*
*Trustee for the SIPA Liquidation of Lehman Brothers Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

    LEHMAN BROTHERS INC.,                           Case No. 08-01420 (SCC) SIPA

                              Debtor.


**THE TRUSTEE'S OBJECTION TO THE GENERAL CREDITOR**
**PROOF OF CLAIM OF LOBDELL CAPITAL PARTNERS LP (CLAIM NO. 2387)**

# TABLE OF CONTENTS

Page

RELIEF REQUESTED ....................................................................................................1

JURISDICTION AND VENUE .......................................................................................2

BACKGROUND ..............................................................................................................2

BACKGROUND OF THE CLAIM...................................................................................4

    Lobdell and the Opportunities Fund ........................................................................4

    Lobdell Conducts Due Diligence Into the Opportunities Fund ................................5

    Lobdell Invests in the Opportunities Fund and the Fund Incurs Losses..................5

    Lobdell Uncovers Alleged Irregularities in the
    Fund's Financial Statements and Informs the SEC ..................................................6

    The SEC Intervenes and a Receiver Is Appointed...................................................6

    Procedural Posture ...................................................................................................8

ARGUMENT .....................................................................................................................9

I.      LOBDELL'S CAUSES OF ACTION ARE
        BARRED BY THE STATUTES OF LIMITATIONS ......................................9

II.     LOBDELL DOES NOT ALLEGE SUFFICIENT FACTS TO
       SUPPORT ANY OF ITS CAUSES OF ACTION AGAINST LBI...................12

      A.    Negligence:  LBI Did Not Owe Any Duty to Lobdell...........................12

      B.    Negligent Misrepresentation:  LBI Did Not Intend to
          Induce Lobdell's Reliance on Any Alleged Statements .......................13

      C.    Fraud:  Lobdell Does Not Plead Fraud with the Required Particularity...............14

      D.    Aider/Abettor Liability:  LBI Did Not Intend to Facilitate Any Tort...................16

      E.    Failure to Supervise and Failure to Observe High Commercial
          Standards:  There Is No Private Right of Action for Violation of FINRA
          Rules ...................................................................................................16

RESERVATION OF RIGHTS .........................................................................................17

NOTICE............................................................................................................................17

NO PRIOR RELIEF REQUESTED .................................................................................17

CONCLUSION..................................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Adelphia Commc'ns Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660
(Bankr. S.D.N.Y. Feb. 20, 2007) .............................................................................9

*Asbestosis Claimants v. U.S. Lines Reorganization Trust (In re U.S. Lines, Inc.)*, 262 B.R.
223 (S.D.N.Y. 2001), *aff'd sub nom. In re U.S. Lines, Inc.*, 318 F.3d 432 (2d Cir.
2003) ......................................................................................................................10

*Atmosphere Sciences, LLC v. Schneider Advanced Techs., Inc.*, No. 12 Civ. 3223 (SAS),
2012 U.S. Dist. LEXIS 135099 (S.D.N.Y. Sept. 19, 2012)....................................14

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ........................................12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................................12

*In re Brill*, 318 B.R. 49 (Bankr. S.D.N.Y. 2004)...........................................................................10

*Cyr v. McGorvan*, 206 Cal. App. 4th 645 (Cal. Ct. App. 2012)....................................................10

*In re DJK Residential LLC*, 416 B.R. 100 (Bankr. S.D.N.Y. 2009)..............................................14

*ECA v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009) ........................................................15

*Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.)*, 398 B.R. 736
(S.D.N.Y. 2008)......................................................................................................12

*Gerard v. Ross*, 204 Cal. App. 3d 968 (Cal Ct. App. 1988) .........................................................16

*Gurfein v. Ameritrade, Inc.*, 312 F. App'x 410..............................................................................16

*In re Hess*, 404 B.R. 747 (Bankr. S.D.N.Y. 2009) ..........................................................................9

*Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980) ........................................................16

*Kosovich v. Metro Homes, LLC*, No. 09 Civ. 6992 (JSR), 2009 U.S. Dist. LEXIS 121390
(S.D.N.Y. Dec. 30, 2009), *aff'd on other grounds*, 405 F. App'x 540 (2d Cir. 2010) ............14

*Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros.
Holdings Inc.)*, 469 B.R. 415 (Bankr. S.D.N.Y. 2012)...........................................15

*Lomaglio Assocs. Inc. v. LBK Mortg. Corp.*, 876 F. Supp. 41 (S.D.N.Y. 1995)...........................14

*In re Oneida Ltd.*, 400 B.R. 384 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Peter J. Solomon
Co. v. Oneida Ltd.*, No. 09 Civ. 2229 (DC) (S.D.N.Y. 2010)...................................9

*Pereira v. Grecolas Ltd. (In re Saba Enters.)*, 421 B.R. 626, 642 (Bankr. S.D.N.Y. 2009) .........15

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436 (7th Cir. 2011) ................................................................................................................14

*Richman v. Goldman Sachs Group, Inc.*, 868 F. Supp. 2d 261 (S.D.N.Y. 2012) ........................16

*In re Rockefeller Ctr. Props.*, 272 B.R. 524 (Bankr. S.D.N.Y. 2000) ...........................................9

*Shamsian v. Atl. Richfield Co.*, 107 Cal. App. 4th 967 (Cal. Ct. App. 2003) ...............................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ...............................................15

*U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586 (1970) .............................................12

*William L. Lyon & Assocs., Inc. v. Superior Ct.*, 204 Cal. App. 4th 1294 (Cal. Ct. App. 2012) ...........................................................................................................................10, 11

**STATUTES**

11 U.S.C. § 502 ..................................................................................................................1, 9, 12

11 U.S.C. § 558 ................................................................................................................................9

15 U.S.C. § 78aa .............................................................................................................................2

15 U.S.C. §§ 78aaa *et seq.* ..........................................................................................................1

15 U.S.C. § 78eee .......................................................................................................................2, 3

15 U.S.C. § 78fff ............................................................................................................................1

15 U.S.C. § 78fff-1 .........................................................................................................................1

15 U.S.C. § 78fff-2 .........................................................................................................................3

Cal. Code Civ. P. § 339 ................................................................................................................10

Cal. Corp. Code § 25401 ..............................................................................................................10

Cal. Corp. Code § 25504 *et seq.* ...........................................................................................10, 16

Cal. Corp. Code § 25506 ..............................................................................................................10

**RULES**

Fed. R. Bankr. P. 7009 ..................................................................................................................14

Fed. R. Bankr. P. 9014 ..................................................................................................................14

Fed. R. Civ. P. 9 ..................................................................................................................14

Fed. R. Civ. P. 12 ................................................................................................................12

FINRA Rule 2110 ...............................................................................................................16

FINRA Rule 3010 ...............................................................................................................16

SEC Rule 10b-5 ..................................................................................................................10

**LEGISLATIVE AND ADMINISTRATIVE MATERIALS**

United States Securities and Exchange Commission, SEC Brings Emergency Action
Against Jon E. Hankins, Tenet Asset Mgmt., LLC, and Tenet Capital Partners
Convertible Opportunities Fund, LP (June 25, 2005), *at*
http://www.sec.gov/litigation/litreleases/lr19283.htm .......................................................7, 12

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

James W. Giddens (the "Trustee"), as Trustee for the liquidation of the business of

Lehman Brothers Inc. (the "Debtor" or "LBI") under the Securities Investor Protection Act of

1970, as amended, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"),[1] by and through his undersigned

counsel, respectfully represents as follows:

## **RELIEF REQUESTED**

1.      The Trustee files this Objection (the "Objection") pursuant to section 502(b) of

title 11 of the United States Code (the "Bankruptcy Code"), as made applicable to this

proceeding pursuant to sections 78fff(b) and 78fff-1(a) of SIPA, seeking disallowance and

expungement of the general creditor claim filed by Lobdell Capital Partners LP (the "Claimant"

or "Lobdell"), represented by claim number 2387 (annexed hereto as Exhibit A) (the "Claim").

The Trustee's proposed order (the "Proposed Order") is annexed hereto as Exhibit C.

2.      The Claim arises from an investment Lobdell made in early May 2005 in the

Tenet Capital Partners Convertible Opportunities Fund, LP (the "Opportunities Fund" or the

"Fund") after conducting its own due diligence for at least two months.  In late May and early

June 2005, Lobdell began asserting alleged fraud by the Fund, including alleged irregularities in

the Fund's financial statements.  Lobdell unsuccessfully attempted to redeem its investment.

When that did not work, Lobdell informed the United States Securities and Exchange

Commission (the "SEC"), which later filed a complaint against the Fund.

3.      More than two years later, in August 2007, Lobdell brought an action (the

"California Action") against LBI in California state court for various negligence and fraud

---

1.   For convenience, subsequent references to SIPA may omit "15 U.S.C."

causes of action.  Notwithstanding Lobdell's own extensive, independent due diligence effort;

the fact that any alleged fraud was committed by the Fund and its manager; and the fact that LBI

had no role in the alleged fraud, Lobdell alleged that LBI was responsible for its losses because

an LBI employee had allegedly promoted the Fund to Lobdell.  The California Action was stayed

in favor of arbitration before the Financial Industry Regulatory Authority (the "FINRA

Arbitration").  Lobdell now asserts the same causes of action in its Claim.

4.      LBI is not liable to Lobdell because Lobdell did not commence either the

California Action or the FINRA Arbitration until after the relevant statutes of limitations had

expired.  Moreover, as a matter of law, each of Lobdell's causes of action lacks a legal or factual

basis.  Accordingly, the Trustee requests that the Claim be disallowed and expunged in its

entirety.

## JURISDICTION AND VENUE

5.      Following removal to this Court for all purposes as required for SIPA cases by

section 78eee(b)(4) of SIPA, this Court has "all of the jurisdiction, powers, and duties conferred

by [SIPA] upon the court to which application for the issuance of the protective decree was

made."  SIPA § 78eee(b)(4).

6.      Venue is proper in this Court pursuant to SIPA § 78eee(a)(3) and 15 U.S.C.

§ 78aa.

## BACKGROUND

7.      On September 19, 2008 (the "Filing Date"), the Honorable Gerard E. Lynch,

United States District Court, Southern District of New York, entered the Order Commencing

Liquidation (the "LBI Liquidation Order," ECF No. 1) pursuant to the provisions of SIPA in the

case captioned *Securities Investor Protection Corporation v. Lehman Brothers Inc.*, Case No. 08-

CIV-8119 (GEL).  The LBI Liquidation Order, *inter alia*, (i) appointed the Trustee for the

liquidation of the business of LBI pursuant to section 78eee(b)(3) of SIPA; and (ii) removed the

case to this Court for all purposes as required in SIPA cases by section 78eee(b)(4) of SIPA, in

the case captioned *In re Lehman Brothers Inc.*, Case No. 08-01420 (the "SIPA Proceeding").

8.      On November 7, 2008, the Court entered the Order Approving Form and Manner

of Publication and Mailing of Notice of Commencement; Specifying Procedures and Forms for

Filing, Determination, and Adjudication of Claims; Fixing a Meeting of Customers and Other

Creditors; and Fixing Interim Reporting Pursuant to SIPA (the "Claims Process Order," ECF No.

241).  Beginning on December 1, 2008, consistent with SIPA section 78fff-2(a)(1), the Trustee

mailed more than 905,000 claims packages with filing information to former LBI customers and

other potential claimants (the "Claims Process Notice") and posted claims filing information on

the Trustee's website (www.lehmantrustee.com) and SIPC's website (www.sipc.org).  The

Trustee also published notice of the claims process in *The New York Times*, *The Wall Street

Journal*, and *The Financial Times*.

9.      Pursuant to SIPA § 78fff-2(a)(3) and the Customer Claims Process Order,

customer claims seeking maximum protection under SIPA must have been received by the

Trustee on or before January 30, 2009.  All customer claims and general creditor claims must

have been received by the Trustee by June 1, 2009 and no claims of any kind will be allowed

unless received by the Trustee on or before June 1, 2009 (the "Pre-Filing Bar Date").  In addition

to the Pre-Filing Bar Date, on September 19, 2013, the Bankruptcy Court entered an order (the

"Administrative Bar Date Order") that established October 31, 2013 (the "Administrative Bar

Date") as the deadline to file a proof of claim for administrative expense claims against the LBI

estate, as further described in the Administrative Bar Date Order, with respect to such

administrative expenses arising between September 19, 2008 and August 31, 2013. The

Administrative Bar Date has now passed. A copy of the Customer Claims Process Order was

made publicly available at [www.lehmantrustee.com](www.lehmantrustee.com). The Trustee's website allowed claimants

filing electronically to upload documents as part of their claim submission and thereby comply

with the instructions to include supporting documentation set forth in the Proof of Claim.

## **BACKGROUND OF THE CLAIM**[2]

### **Lobdell and the Opportunities Fund**

10.     Lobdell was a hedge fund investor. (Statement of Claim dated Jan. 28, 2008, in

*Lobdell Capital Partners LP. v. Lehman Bros. Inc.*, FINRA Case No. 05-06077 (the "Statement

of Claim") ¶ 1, annexed as Exhibit 1 to the Declaration of Jordan E. Pace, annexed hereto as

Exhibit B (the "Pace Decl.").)  Lobdell's general partner was Lobdell Capital Management LLC

("LCM"). (*Id.* ¶ 2.)  Martin Lobdell was the managing director of LCM. (Decl. of Martin

Lobdell, executed on June 16, 2005 (the "Lobdell SEC Decl.") ¶ 1, annexed as Exhibit 2 to the

Pace Decl.)

11.     The Opportunities Fund was a hedge fund founded in 2004 and managed by Jon

E. Hankins ("Hankins"). (Statement of Claim ¶ 5.)  Tenet Asset Management, LLC ("Tenet")

was the investment advisor to and general partner of the Fund. (*Id.*)  The Fund allegedly

represented that its investment strategy was to be diversified, conservative, and fully hedged.

(*Id.* ¶¶ 5, 11.)

12.     From February 1, 2005, to March 1, 2005, LBI allegedly acted as prime broker for

the Opportunities Fund through Tenet. (*Id.* ¶¶ 6-19.)  As part of its prime brokerage services

---

2.    The facts recited herein are allegations taken from the Statement of Claim submitted by Lobdell in support of
the Claim, unless otherwise indicated. The Trustee reserves all rights to challenge the veracity and relevance of
any of these facts.

during that period, LBI allegedly located investors for the Fund and recommended the Fund to

investors. (*Id.*) On March 1, 2005, LBI voluntarily terminated its relationship with Tenet after

Tenet allegedly failed to satisfy margin calls. (*Id.* ¶¶ 18-19.)

**Lobdell Conducts Due Diligence Into the Opportunities Fund**

13.     In February or March of 2005, Martin Lobdell learned about the Opportunities

Fund through an employee of LCM. (Lobdell SEC Decl. ¶ 2.) That employee, in turn, had

learned about the Fund through "a network of other investors and through industry databases."

(*Id.*) Martin Lobdell also received an introduction to and positive reference for Hankins from

Golden Gate Financial Group LLC. (Letter from James E. Grand, counsel for Lobdell, to Susan

Brune, Receiver for the Opportunities Fund, dated Oct. 27, 2005 (the "Letter to the Receiver") at

3, annexed as Exhibit 3 to the Pace Decl.)

14.     Between February and May of 2005, Martin Lobdell and employees of LCM

conducted extensive due diligence into the Fund, including communicating directly with Hankins

and reviewing documentation provided by Hankins. (Lobdell SEC Decl. ¶¶ 4-11; Addendum to

the Decl. of Martin Lobdell, executed on June 20, 2005 (the "Lobdell SEC Decl. Addendum")

¶ 3, annexed as Exhibit 4 to the Pace Decl.)

15.     On or about May 4, 2005, William H. Price ("Price"), a senior vice president at

LBI, allegedly promoted the Fund to Lobdell or LCM. (Statement of Claim ¶¶ 19, 24-30.) Price

allegedly failed to disclose the investments by the Fund or the margin calls that caused LBI to

terminate its relationship with Tenet and the Fund two months earlier. (*Id.*)

**Lobdell Invests in the Opportunities Fund and the Fund Incurs Losses**

16.     On May 6 or 7, Lobdell invested $3,600,000 in the Opportunities Fund. (*Id.* ¶ 33;

Lobdell SEC Decl. ¶¶ 12-13.)

5

17.    Beginning in February 2005, the Fund allegedly took large, concentrated, unhedged short positions in Google, Inc. ("Google").  (Statement of Claim ¶¶ 12-17.)  The Fund allegedly lost $15-20 million as a result of its short sales of Google.  (*Id.* ¶ 32.)

**Lobdell Uncovers Alleged Irregularities in the
Fund's Financial Statements and Informs the SEC**

18.    Soon after making its investment in the Fund, Lobdell uncovered alleged irregularities in the Fund's financial statements and other documentation.  (*See* Lobdell SEC Decl. ¶¶ 14-24; Lobdell SEC Decl. Addendum ¶ 2.)  On May 26, 2005, Lobdell unsuccessfully attempted to redeem its entire investment in the Fund.  (Lobdell SEC Decl. ¶ 25.)

19.    In early June 2005, Lobdell's counsel informed the following entities of the alleged irregularities that Lobdell had uncovered in the Fund's financial statements:  (i) the Fund's auditor, Rothstein Kass; (ii) the Fund's administrator, Olympia Capital; (iii) Banc of America; and (iv) the SEC.  (Letter to the Receiver at 4.)

**The SEC Intervenes and a Receiver Is Appointed**

20.    On June 22, 2005, the SEC filed a complaint against Hankins, Tenet, and the Fund in the United States District Court for the Southern District of New York, alleging violations of various federal securities laws.  (Complaint, *SEC v. Hankins*, No. 05 CV 5808 (KMW) (S.D.N.Y. filed June 22, 2005) (ECF No. 1) (the "SEC Complaint"), annexed as Exhibit 5 to the Pace Decl.)

21.    On June 22, 2005, the SEC filed a motion for a temporary restraining order against Hankins, Tenet, and the Fund.  (Emergency Application for a Temporary Restraining Order, Preliminary Injunction, Order to Show Cause, and Order Appointing a Receiver and

Granting Other Relief, *SEC v. Hankins*, No. 05 CV 5808 (KMW) (S.D.N.Y. filed June 22,

2005[3]) (ECF No. 4) (the "SEC TRO Motion"), annexed as Exhibit 6 to the Pace Decl.)

22.     In support of the SEC TRO Motion, the SEC filed a declaration executed by

Martin Lobdell on June 16, 2005, and an addendum to that declaration, executed on June 20,

2005, both attesting to Lobdell's involvement with the Fund, including its extensive due

diligence, its investment, its uncovering of alleged irregularities, and its attempted redemption.

(*See generally* Lobdell SEC Decl.; Lobdell SEC Decl. Addendum.)  Neither the declaration nor

the addendum refer to LBI or Price but instead indicate that Lobdell learned of the Fund

independently, through "a network of other investors and through industry databases."  (Lobdell

SEC Decl. ¶ 2.)

23.     On June 23, 2005, Judge Wood granted the SEC TRO Motion and appointed

Susan Brune (the "Receiver") as receiver for Tenet and the Fund.  (Order to Show Cause,

Temporary Restraining Order, and Order Appointing a Receiver and Granting Other Relief, *SEC*

*v. Hankins*, No. 05 CV 5808 (KMW) (S.D.N.Y. entered June 23, 2005) (ECF No. 3), annexed as

Exhibit 7 to the Pace Decl.)

24.     On June 24, 2005, the SEC issued a release describing the allegations against

Hankins and the Fund, including "conceal[ing] from investors large investment losses" and

"distribut[ing] to at least one investor"—Lobdell—"altered audited financial statements."  (SEC,

SEC Brings Emergency Action Against Jon E. Hankins, Tenet Asset Mgmt., LLC, and Tenet

Capital Partners Convertible Opportunities Fund, LP (June 25, 2005) (the "SEC Release"), *at*

http://www.sec.gov/litigation/litreleases/lr19283.htm, annexed as Exhibit 8 to the Pace Decl.)

---

3.   The SEC TRO Motion was not docketed on the court's electronic filing system until June 26, 2005.

25.     On July 29, 2005, the Receiver filed her first report, detailing the Fund's investments (including its lack of diversification and unhedged short selling of Google) and the losses incurred by the Fund.  (Decl. and Report of Receiver, *SEC v. Hankins et al.*, No. 05 CV 5808 (KMW) (S.D.N.Y. filed July 29, 2005) (ECF No. 27) (the "Receiver's First Report") Ex. 6-7, annexed as Exhibit 9 to the Pace Decl.)

26.     The receivership proceeded until termination on October 13, 2006.  (Order, *SEC v. Hankins*, No. 05 CV 5808 (KMW) (S.D.N.Y. entered Oct. 13, 2006) (ECF No. 54), annexed as Exhibit 10 to the Pace Decl.)  The receivership distributed $1,715,055.11 to Lobdell in two installments.  (Sixth Decl. and Report of Receiver, *SEC v. Hankins*, No. 05 CV 5808 (KMW) (S.D.N.Y. filed Nov. 11, 2005) (ECF No. 47) Ex. H, annexed as Exhibit 11 to the Pace Decl.; Eighth Decl. and Report of Receiver, *SEC v. Hankins*, No. 05 CV 5808 (KMW) (S.D.N.Y. filed Aug. 3, 2006) (ECF No. 52) Ex. D, annexed as Exhibit 12 to the Pace Decl.)

**Procedural Posture**

27.     On August 15, 2007, Lobdell and LCM filed a complaint against LBI in California Superior Court.  (Statement of Claim ¶ 35.)  On November 16, 2007, the California court ordered the parties to submit the dispute to arbitration before the Financial Industry Regulatory Authority ("FINRA").  (*Id.*)

28.     On January 28, 2008, Lobdell and LCM filed the Statement of Claim in the FINRA Arbitration.  (*See generally* Statement of Claim.)

29.     On January 29, 2009, Lobdell filed a general unsecured creditor proof of claim on the LBI estate seeking $1,884,944 and attaching the Statement of Claim.

## ARGUMENT

30.     A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Peter J. Solomon Co. v. Oneida Ltd.*, No. 09 Civ. 2229 (DC) (S.D.N.Y. 2010); *In re Adelphia Commc'ns Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

## I.     LOBDELL'S CAUSES OF ACTION ARE BARRED BY THE STATUTES OF LIMITATIONS

31.     LBI is not liable to Lobdell because Lobdell initiated the California Action after the statutes of limitations on each of its causes of action had expired.[4]  A claim rendered unenforceable by the statute of limitations is not allowable under Bankruptcy Code sections 502(b)(1) and 558.  *In re Hess*, 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009).  Section 502(b)(1) provides that a claim is allowable unless it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."  11 U.S.C. § 502(b)(1).  In addition, section 558 provides that the estate "shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation . . . ."  11 U.S.C. § 558.  As a result, "the plain language of §§ 502(b)(1) and 558 indicates that if the applicable state statute of limitations bars enforceability of a claim, it is not allowable."  *In re Hess*, 404 B.R. at 749 (chapter 13 debtor

_____

4.   The Trustee does not concede that Lobdell's action was properly commenced by the filing of the complaint in the California Action on August 15, 2007, or that any statute of limitations was tolled by the filing of that complaint.  Instead, Lobdell may have commenced its action only when it filed the Statement of Claim on January 28, 2008.  Since Lobdell's causes of action were untimely based on either date, the Trustee will use the earlier date for the purposes of this Objection.

entitled to assert statute of limitations defense); *accord Asbestosis Claimants v. U.S. Lines Reorganization Trust (In re U.S. Lines, Inc.)*, 262 B.R. 223 (S.D.N.Y. 2001) (plan trustee entitled to assert statute of limitations defense), *aff'd sub nom. In re U.S. Lines, Inc.*, 318 F.3d 432 (2d Cir. 2003); *In re Brill*, 318 B.R. 49, 53 (Bankr. S.D.N.Y. 2004) (trustee entitled to assert statute of limitations defense).

32.    The Statement of Claim asserts six causes of action:  (i) negligence; (ii) negligent misrepresentation; (iii) fraud; (iv) aider/abettor liability under California Corporations Code § 25504 *et seq.*; (v) failure to supervise; and (vi) failure to observe high commercial standards. Under California law,[5] Lobdell's four negligence-based claims (negligence, negligent misrepresentation, failure to supervise, and failure to observe high commercial standards) are subject to a two-year statute of limitations.  *See* Cal. Code Civ. P. § 339(1); *Cyr v. McGorvan*, 206 Cal. App. 4th 645, 651 (Cal. Ct. App. 2012) (negligence actions against any kind of professional are subject to the two-year limitations period of § 339(1)).  The statute of limitations begins to run when "the aggrieved party discovers the negligent conduct causing the loss or damage." *William L. Lyon & Assocs., Inc. v. Superior Ct.*, 204 Cal. App. 4th 1294, 1313 (Cal. Ct. App. 2012).  Lobdell's claims for fraud[6] and aider/abettor liability are subject to a limitations period of two years from discovery of the wrongdoing or five years from the wrongdoing, whichever expires first.  *See* Cal. Corp. Code § 25506(b).  Each of Lobdell's causes of action were untimely, therefore, unless they were asserted within two years of Lobdell discovering that

---

5.    The Claim does not indicate where any of the operative facts occurred.  Since the Statement of Claim cites California law, the Trustee assumes, for the purposes of this Objection only, that federal law and California law govern the substance of Lobdell's causes of action.

6.    Because the Statement of Claim frames Lobdell's fraud cause of action as based on alleged misrepresentations made in connection with Lobdell's purchase of a security, it should be treated as a securities fraud cause of action under the California Securities Law of 1968 (see Cal. Corp. Code § 25401(b)) or SEC Rule 10b-5 (rather than common law fraud).  The statute of limitations is the same under state and federal securities laws.

LBI's conduct allegedly caused its losses.  *See William L. Lyon & Assocs.*, 204 Cal. App. 4th at

1313 ("'A plaintiff need not be aware of specific 'facts' necessary to establish the claim . . . .  So

long as a suspicion exists, it is clear that the plaintiff must go find the facts; she [or he] cannot

wait for the facts to find her [or him].'" (citation omitted)).

33.    All of Lobdell's causes of action are based on statements allegedly made by Price

around May 4, 2005.  (Statement of Claim ¶ 24.)  Allegedly in reliance on those statements,

Lobdell invested $3.6 million in the Opportunities Fund on May 6 or 7, 2005.  (*Id.* ¶ 33.)

Lobdell claims it lost $1,884,944 as a result of that investment.  (*Id.*)  By May 26, 2005, Lobdell

and its counsel had uncovered alleged fraud in the operation of the Fund and attempted to

redeem Lobdell's investment.  (*See id.* ¶¶ 14-25; Letter to the Receiver at 3-4.)  In early June,

Lobdell informed, among others, the SEC and the Fund's auditor.  (Letter to the Receiver at 4.)

The auditor resigned the next day and "sent an email to all of the Fund's investors informing

them that it had resigned and its audit reports should not be relied upon."  (*Id.*)  On June 22,

2005, in light of the alleged fraud uncovered by Lobdell, the SEC filed a complaint and a motion

for a temporary restraining order against the Fund and various others.  (*See generally* SEC

Complaint.)  The SEC's complaint described in detail the losses incurred by the Fund and the

alleged misdeeds causing the losses.  (*See id.* ¶¶ 1-5.)  In support of the SEC's motion, Martin

Lobdell executed a declaration and addendum dated June 16, 2005, and June 20, 2005,

respectively, stating that Lobdell had attempted to recover its investment in late May 2005 due to

alleged irregularities with the Fund's financial statements.  (*See* Lobdell SEC Decl. ¶¶ 20-29;

Lobdell SEC Decl. Addendum ¶¶ 2, 5.)  Lobdell already knew that it had allegedly invested in

the Fund in reliance on alleged statements by Price.  By June 16, 2005, therefore, Lobdell had,

for purposes of the statutes of limitations, discovered that it was allegedly injured by the

investment it made based on Price's alleged statements.[7]  Based on the two-year limitations

period, Lobdell's causes of action are untimely unless they were asserted by June 16, 2007.

Since Lobdell did not commence the California Action until August 15, 2007—nearly two

months too late—its causes of action are all time-barred.  Accordingly, the Trustee requests that

the Claim be disallowed and expunged in its entirety.

## II.    LOBDELL DOES NOT ALLEGE SUFFICIENT FACTS TO SUPPORT ANY OF ITS CAUSES OF ACTION AGAINST LBI

34.    Lobdell's Claim should be disallowed and expunged on the additional and

independent ground that it does not allege facts "sufficient 'to raise a right to relief above the

speculative level.'"  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.

2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Flake v. Alper*

*Holdings USA, Inc. (In re Alper Holdings USA, Inc.)*, 398 B.R. 736, 748 (S.D.N.Y. 2008)

(applying the standards of a Rule 12(b)(6) motion to a challenge to a proof of claim under 11

U.S.C. § 502(c)).  One or more essential elements of each of Lobdell's causes of action are

unsupported by any factual allegations.

### A.    Negligence:  LBI Did Not Owe Any Duty to Lobdell

35.    Lobdell's first cause of action, for negligence, requires the existence of a legal

duty of care.  *U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 594 (1970).  However,

Lobdell does not allege any facts that support the existence of any legal duty owed by LBI to

Lobdell.  Specifically, Lobdell does not allege that it was a client of LBI, that it engaged LBI as a

---

7.    In addition, the SEC issued a public release on June 24, 2005, describing its allegations that the Fund and
Hankins "conceal[ed] from investors large investment losses" and "distribut[ed] to at least one investor"—
Lobdell—"altered audited financial statements."  (SEC Release.)  Also, the court-appointed receiver for the
Opportunities Fund filed her first report on July 29, 2005, detailing Lobdell's investment, the Opportunities
Fund's investments (including its lack of diversification and unhedged short selling of Google), and the losses
incurred by the Opportunities Fund.  (*See* Receiver's First Report Ex. 6-7.)  This report was served on Lobdell
via its counsel.  (*Id.*, Aff. of Service.)

broker, analyst, or any form of investment advisor, or that any other special relationship existed between it and LBI. Lobdell's Claim therefore lacks an essential element of negligence. Accordingly, the Trustee requests that the Claim be disallowed and expunged to the extent it claims negligence.

### B. Negligent Misrepresentation: LBI Did Not Intend to Induce Lobdell's Reliance on Any Alleged Statements

36.    Lobdell's second cause of action, for negligent misrepresentation, also fails as a matter of law. Among other necessary elements, negligent misrepresentation requires proof of intent to induce reliance on a misrepresentation. *See, e.g., Shamsian v. Atl. Richfield Co.*, 107 Cal. App. 4th 967, 983 (Cal. Ct. App. 2003). Other than an unsupported, conclusory allegation, there is nothing in the Statement of Claim—that is, no factual allegations—suggesting that LBI intended that Lobdell rely on Price's alleged statements and invest in the Fund. Rather, the factual allegations suggest a lack of such intent.

37.    Lobdell alleges that LBI acted as a prime broker for Tenet and the Opportunities Fund and earned fees for locating or introducing investors. (Statement of Claim ¶¶ 6-8.) However, LBI voluntarily terminated its prime brokerage relationship with Tenet and the Fund on March 1, 2005, meaning that it would no longer earn fees for locating or introducing investors. (*Id.* ¶ 18.) Lobdell does not allege that LBI promoted the Fund to Lobdell until around May 4, 2005—over two months later. (*Id.* ¶ 24.) By that time, LBI had no incentive, financial or otherwise, to locate or introduce investors to the Fund. Lobdell does not, therefore, allege any plausible factual basis on which to conclude that LBI intended to induce Lobdell's reliance on Price's alleged statements, negating an essential element of the cause of action. Accordingly, the Trustee requests that the Claim be disallowed and expunged to the extent it claims negligent misrepresentation.

13

### C.    Fraud:  Lobdell Does Not Plead Fraud with the Required Particularity

38.    Lobdell's third cause of action, for fraud, does not meet the pleading requirements

for a fraud claim in bankruptcy.  "In determining whether a party has met their burden in

connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set

forth in the Federal Rules of Civil Procedure," including Rule 9.  *In re DJK Residential LLC*, 416

B.R. 100, 106-07 (Bankr. S.D.N.Y. 2009); *see also* Fed. R. Bankr. P. 7009 & 9014(c) (applying

Rule 9 to contested matters in bankruptcy proceedings).  Rule 9(b) requires that, "[i]n alleging

fraud or mistake, a party must state with particularity the circumstances constituting fraud or

mistake."  Fed. R. Civ. P. 9(b).  "The particularity requirement [of Rule 9(b)] ensures that

plaintiffs do their homework before filing suit and protects defendants from baseless suits that

tarnish reputations."  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,

631 F.3d 436, 439 (7th Cir. 2011).  Lobdell attempts to blame LBI for the failure of Lobdell's

own due diligence and for the fraud allegedly perpetrated by the Fund, but does not make

sufficient factual allegations to state a cause of action for fraud.

39.    "Although Rule 9(b) does not require plaintiffs to set forth their evidence in the

complaint, the complaint must give particulars regarding 'the fraudulent content of the speech,

the time and place at which the statements were made, and the identity of individuals making the

fraudulent statements.'"  *Atmosphere Sciences, LLC v. Schneider Advanced Techs., Inc.*, No. 12

Civ. 3223 (SAS), 2012 U.S. Dist. LEXIS 135099, at *18 (S.D.N.Y. Sept. 19, 2012) (quoting

*Lomaglio Assocs. Inc. v. LBK Mortg. Corp.*, 876 F. Supp. 41, 44 (S.D.N.Y. 1995)); *see, e.g.,*

*Kosovich v. Metro Homes, LLC*, No. 09 Civ. 6992 (JSR), 2009 U.S. Dist. LEXIS 121390, at *9

(S.D.N.Y. Dec. 30, 2009) (dismissing fraud and misrepresentation claims because, in part,

plaintiff failed to specify the "precise content of the alleged misstatements"), *aff'd on other*

*grounds*, 405 F. App'x 540 (2d Cir. 2010).  Lobdell's allegations fail to specify many of the

14

particulars of Price's allegedly fraudulent statements, including their precise content, their form

(whether in person, over the telephone, or via e-mail), to whom they were made, where they

were made, and when precisely they were made.  Without those particulars, Lobdell has no cause

of action for fraud.

40.    Moreover, a claimant must state with particularity, "at a minimum, 'facts that give

rise to a strong inference of fraudulent intent.'"  *Lehman Bros. Holdings Inc. v. JPMorgan Chase

Bank, N.A. (In re Lehman Bros. Holdings Inc.*) , 469 B.R. 415, 434 (Bankr. S.D.N.Y. 2012)

(quoting *Pereira v. Grecolas Ltd. (In re Saba Enters.)*, 421 B.R. 626,642 (Bankr. S.D.N.Y.

2009)).  The "strong inference" requirement can be met either by alleging facts that:

"(1) defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial

evidence of conscious misbehavior or recklessness." *ECA v. JP Morgan Chase Co*., 553 F.3d

187, 198 (2d Cir. 2009); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 323-

24 (2007) (taking "into account plausible opposing inferences," including "plausible,

nonculpable explanations for the defendant's conduct" when evaluating whether the "strong

inference" requirement is met).  Once LBI terminated its prime brokerage relationship with the

Fund, it no longer had any motive to promote the Fund or to mislead potential investors, and

Lobdell does not make any factual allegations otherwise.  Lobdell's factual allegations also do

not make a strong circumstantial case that LBI was conscious of its alleged wrongdoing or acted

recklessly.

41.    Since Lobdell has not pleaded with sufficient particularity, it has failed to state a

cause of action for fraud.  Accordingly, the Trustee requests that the Claim be disallowed and

expunged to the extent it claims fraud.

### D.    Aider/Abettor Liability:  LBI Did Not Intend to Facilitate Any Tort

42.    Lobdell's fourth cause of action is for aider/abettor liability under section 25504

of the California Corporations Code.  Under California law, in order to state a cause of action for

aider/abettor liability, one must allege that the defendant acted with "the intent of facilitating the

commission of [the underlying] tort."  *Gerard v. Ross*, 204 Cal. App. 3d 968, 983 (Cal Ct. App.

1988).  As with the negligent misrepresentation cause of action, the element of intent for this

cause of action is unsupported by any factual allegations and, in fact, contradicted by the factual

allegations.  Since LBI had previously terminated its relationship with Tenet and the Fund after

Tenet missed margin calls (Statement of Claim ¶¶ 18-19), LBI had no reason to solicit additional

investors in the Fund or to facilitate the commission of any fraud.  Therefore, nothing in the

claim supports a finding of intent.  Accordingly, the Trustee requests that the Claim be

disallowed and expunged to the extent it claims aider/abettor liability.

### E.    Failure to Supervise and Failure to Observe High Commercial Standards:  There Is No Private Right of Action for Violation of FINRA Rules

43.    Lobdell's fifth and sixth causes of action, for failure to supervise and failure to

observe high commercial standards, are both grounded in FINRA rules, specifically FINRA

Rules 3010 and 2110.  (*See* Statement of Claim ¶¶ 58-60, 63.)  However, there is no private right

of action or civil liability for violation of FINRA rules.  *See, e.g., Richman v. Goldman Sachs

Group, Inc.*, 868 F. Supp. 2d 261, 275 (S.D.N.Y. 2012) (dismissing claims premised on violation

of FINRA Rules 3010 and 2010 because "such rules do not confer private rights of action"

(citation omitted)); *see also Gurfein v. Ameritrade, Inc.*, 312 F. App'x 410, 414 (no private right

of action to enforce NASD or NYSE rules); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 680-81

(9th Cir. 1980) (same).  Lobdell's causes of action therefore fail as a matter of law.  Accordingly,

16

the Trustee requests that the Claim be disallowed and expunged to the extent it claims failure to supervise or failure of observe high commercial standards.

## RESERVATION OF RIGHTS

44.     The Claim may be objectionable on a number of additional grounds.  The Trustee reserves all rights to object on any other basis to the Claim or any portion of the Claim for which the Court does not grant the relief requested herein.

## NOTICE

45.     Notice of this Objection has been provided to:  (i) the Claimant via overnight mail; and (ii) the list of parties requesting notice of pleadings in accordance with the Court's Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(a) and 9007 Implementing Certain Notice and Case Management Procedures and Related Relief entered by the Court on July 13, 2010 (ECF No. 3466), and will be immediately available for inspection upon filing with the Court  at the Trustee's website, www.lehmantrustee.com.  The Trustee submits that no other or further notice need be provided.

## NO PRIOR RELIEF REQUESTED

46.     No previous request for the relief requested herein has been made by the Trustee to this or any other Court.

## **CONCLUSION**

47.    For the reasons stated herein, the Trustee respectfully requests entry of an order

granting the relief requested herein and such other and further relief as is just.


Dated: New York, New York
        February 14, 2014

                                        HUGHES HUBBARD & REED LLP


                                        By: /s/ James B. Kobak, Jr.
                                            James B. Kobak, Jr.
                                            Christopher K. Kiplok
                                            Robert B. Funkhouser
                                            Meaghan C. Gragg
                                            Jordan E. Pace
                                        One Battery Park Plaza
                                        New York, New York 10004
                                        Telephone:  (212) 837-6000
                                        Facsimile:   (212) 422-4726
                                        E-mail: kobak@hugheshubbard.com

                                        *Attorneys for James W. Giddens,*
                                        *Trustee for the SIPA Liquidation of*
                                        *Lehman Brothers Inc.*

**EXHIBIT A**

**Filed: USBC - Southern District of New York**
**SIPC v. Lehman Brothers Inc.**
**08-01420 (JMP)**

**Bankruptcy Claim #**                    **000002387**

RECEIVED

JAN 2 9 2009

LEGAL SERVICES

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT    Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Lehman Brothers, Inc. | Case Number:<br>08-01420 (JMP) SIPA |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Name and address where notices should be sent:

    1000028516 LBI 12/1/2008 *78000005224*
    LOBDELL CAPITAL PARTNERS
    C/O PATRICK BALDWIN BALDWIN LAW GROUP 530 OAK GROVE
Telephone number:  AVENUE SUITE 207
    MENLO PARK CA 94205

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:**_____
  (*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**    $ _1,884,944_____

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:**    SEE ENCLOSED STATEMENT OF CLAIM
(See instruction #2 on reverse side.)

**3.** Last four digits of any number by which creditor identifies debtor: _____

    **3a.** Debtor may have scheduled account as: _____
    (See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:**    ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
**Describe:**

**Value of Property:**$_____    **Annual Interest Rate**___%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any: $**_____    **Basis for perfection:** _____

**Amount of Secured Claim: $**_____    **Amount Unsecured: $**_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**Amount entitled to priority:**

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 1/20/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY |
|---|---|---|

MARTIN LOBDELL, AUTHORIZED REPRESENTATIVE OF LOBDELL CAPITAL PARTNERS LP AND MANAGING DIRECTOR OF LOBDELL CAPITAL MANAGEMENT LLC

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

### _____DEFINITIONS_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

### _____INFORMATION_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

1

PATRICK BALDWIN, ESQ. (SBC # 93337)
CHRISTOPHER P. MADER, ESQ. (SBC # 199605)

2

BALDWIN LAW GROUP

3

530 Oak Grove Avenue, Suite 207
Menlo Park, CA 94025

4

Phone: (650) 326-8195
Fax:    (650) 326-0467

5

6

Attorneys for Claimants
Lobdell Capital Partners LP and

7

Lobdell Capital Management LLC

8

9

**BEFORE THE FINANCIAL INDUSTRY REGULATORY AUTHORITY**

10

11

LOBDELL CAPITAL PARTNERS LP, and     )   **FINRA CASE NO.**
LOBDELL CAPITAL MANAGEMENT LLC,      )

12

                                      )   **STATEMENT OF CLAIM**
              Claimants,              )

13

      v.                              )

14

                                      )
LEHMAN BROTHERS, INC.,                )

15

                                      )
              Respondents.            )

16

                                      )

17

                                      )

18

Claimants LOBDELL CAPITAL PARTNERS LP and LOBDELL CAPITAL MANAGEMENT

19

LLC file the within Statement of Claim against Respondent LEHMAN BROTHERS, INC. as

20

follows:

21

I.        **PARTIES**

22

1.        Claimant LOBDELL CAPITAL PARTNERS LP ("Claimant Lobdell") is a Delaware

23

Limited Partnership with its principal place of business in San Francisco, California.  Claimant

24

Lobdell is a hedge fund investor.

25

2.        Claimant LOBDELL CAPITAL MANAGEMENT LLC ("Claimant Lobdell Capital

26

Management") is a Limited Liability Company formed under Michigan law with its principal place

27

of business in San Francisco, California.  Claimant Lobdell Capital Management is the General

28

1    Partner of Claimant Lobdell.

2    3.          Respondent LEHMAN BROTHERS, INC. ("Lehman") is a FINRA registered broker-

3    dealer with principal offices in New York, San Francisco and London. Lehman provided custodial,

4    prime broker and Capital Introductions services to Tenet.

5    4.          Claimants are informed and believe, and on that basis allege, that Lehman directed,

6    approved, and ratified the acts described in this Statement of Claim that were performed by

7    Lehman's employees, officers, directors, representatives, and other persons or entities under

8    Lehman's control.

9              *A.          Third Parties Relevant to the Action*

10   5.          The Tenet Capital Partners Convertible Opportunities Fund, LP ("Opportunities Fund")

11   is a hedge fund that was founded by Jon E. Hankins ("Hankins") in 2004. Tenet Asset

12   Management, LLC ("Tenet") was the investment advisor to and General Partner of the

13   Opportunities Fund. The Opportunities Fund represented that it would employ a "synthetic

14   convertible bond arbitrage" investment strategy. This investment strategy was represented as

15   conservative and fully hedged, such that the fund would have low volatility.

16   II.    **FACTS**

17             *A.          Lehman Acts as Prime Broker for the Opportunities Fund*

18   6.          Tenet entered into an Agreement with Lehman on or about February 1, 2005 pursuant to

19   which Lehman acted as Prime Broker for Tenet. Prime Broker services consist of custodial and

20   record keeping services, transaction execution and settlement, transfer of record ownership of

21   securities, receipt and delivery of securities sold, borrowed and/or loaned, financing of transactions

22   through margin loans, compliance with margin and maintenance requirements, custody of funds

23   and securities, tendering of securities in connection with tender offers, mergers or corporate

24   reorganizations, and maintenance of accounts and records for each transaction. Providing Prime

25   Broker services to hedge funds is a lucrative and substantial part of Lehman's business.

26   Lehman conducts a "Capital Introductions Business"

27

28

STATEMENT OF CLAIM
- 2 -

1             ***B.***       ***Lehman's Capital Introductions Business***

2  7.        As part of its Prime Brokerage services, Lehman conducts a "Capital Introductions

3  Business" where it locates investors for hedge funds and recommends hedge funds to investors.

4  The hedge funds Lehman typically recommends to investors are those for which Lehman already

5  provides Prime Broker services or for which it seeks to provide such services. Commencing in

6  early 2004, and continuing thereafter Lehman provided Capital Introduction Services for the

7  Opportunities Fund.

8  8.        Lehman's Prime Broker and Capital Introduction Services for hedge funds are a highly

9  profitable part of Lehman's business. The more funds that are invested in hedge funds for which

10  Lehman acts as Prime Broker, the more fees Lehman earns from its Prime Broker services.

11  9.        Lehman cultivated and maintained a relationship of trust and confidence with Claimants

12  so that Claimants would be receptive to Lehman's promotion of hedge funds. Lehman held itself

13  out as a reliable source of hedge fund investments to Claimants.

14             ***C.***       ***Lehman Terminates its Prime Brokerage Relationship with Tenet***

15  10.      On or about February 22, 2005, almost immediately upon Lehman's commencement of

16  Prime Broker services for the Opportunities Fund, Tenet deviated substantially from its represented

17  investment strategy.

18  11.      According to Tenet, the Opportunities Fund would adhere to a "synthetic convertible

19  bond arbitrage" investment strategy that was conservative, non-directional, fully hedged, and with

20  low volatility. The fund would not invest more than 5% of its assets in any one stock or otherwise

21  concentrate the fund's assets in any one issue – that is to say the fund had a "position limit" of 5%.

22  12.      In early February 2005 while Lehman was the Prime Broker for the Opportunities Fund,

23  the Opportunities Fund incurred substantial losses as a result of Tenet having taken large,

24  concentrated "naked" "short" positions in shares of Google, Inc. ("Google").

25  13.      The holder of a "short" position believes the price of a security will decrease in the near

26  future. To take advantage of this projected price decline, the account holder sells those securities

27  "short." The account holder does so by borrowing shares of the company from a broker-dealer and

28  selling those borrowed shares to a third party at the current price. The borrower must thereafter

1    "repay" the lending brokerage firm with an equal number of shares at a specified date. If the short

2    seller is correct, and the price of the shares does drop, the short seller may then buy the shares on

3    the open market at the lower price and "repay" the brokerage firm with cheaper shares, resulting in

4    a profit to the short seller.

5    14.    If the short seller does not hold the shares elsewhere, or does not otherwise hedge its

6    risk by owning or purchasing some form of the position with a value expected to move in the

7    opposite direction of the shorted securities, the short position is characterized as "naked."

8    15.    The Opportunities Fund shorted Google without any offsetting or hedging positions.

9    Holding such "naked" "short" positions in the Opportunities Fund without accompanying offsetting

10    hedging positions was entirely contrary to and an extreme departure from the investment strategy of

11    the Opportunities Fund.

12    16.    In particular, the "naked" "short" positions in Google held by the Opportunities Fund

13    were acutely troublesome because (1) the uncovered positions in Google represented 450% of the

14    funds equity – clearly contrary to the fund's position limits; and, (2) Google was widely considered

15    to be an investment with exceptional growth potential. Hankins made an incredibly large "bet" that

16    Google would decrease in value. Such "bets" were clearly inconsistent with the fund's stated

17    conservative investment strategy of being fully hedged at all times.

18    17.    When Google increased in value, the Opportunities Fund was forced to purchase

19    Google shares at a significant increased value and thereby incurred huge losses in the fund.

20    18.    *Lehman terminated its relationship with Tenet on or about March 1, 2005* because

21    Tenet shorted Google, which resulted in significant margin calls at Lehman that Tenet immediately

22    could not satisfy. Management, supervisory and/or decision-making employees of Lehman knew

23    that Hankins and Tenet had shorted "naked" a significant number of shares of Google, which was

24    inconsistent with Tenet's represented conservative fully hedged arbitrage strategy.

25    19.    At all times relevant herein William H. Price was a Senior Vice President of Prime

26    Brokerage Operations for Lehman, responsible for sales and marketing of Lehman's Prime Broker

27    services, and was acting as the authorized agent of Lehman and within the scope of his authority.

28    Upon information and belief, Price acted as the Lehman account executive responsible for Tenet

1 | and the Opportunities Fund. Price signed the letter terminating Lehman's relationship with Tenet

2 | when Tenet could not satisfy the margin calls caused by shorting Google naked.

3 |           **D.**       ***Lehman's Promotion of Tenet to Claimants***

4 | 20.         Lehman represents that through its "Capital Introductions Business" it "provides a

5 | uniquely customized, highly efficient approach to connecting the right investors to the right hedge

6 | fund managers . . . Lehman makes the most suitable introductions through both [its] significant

7 | knowledge of a manager's strategies, people, risk and performance and our clear understanding of

8 | investor's goals and objectives." The more funds Lehman's Capital Introduction Services is able to

9 | drive toward hedge funds for which Lehman acts as Prime Broker, the more lucrative that Prime

10 | Broker relationship becomes for Lehman.

11 | 21.         Commencing in 2004 Lehman recommended, endorsed and marketed Tenet and the

12 | Opportunities Fund to potential investors. Lehman initiated, arranged and participated in

13 | conference sales calls and meetings, and otherwise promoted Tenet. Lehman relied on its

14 | relationships with investors, including Claimants (which Lehman fostered by holding itself out as a

15 | reliable source of investment advice), so that Lehman could successfully promote the Opportunities

16 | Fund.

17 | 22.         Since early 2004, Lehman regularly invited Claimants to attend Lehman Capital

18 | Introduction events and meetings. Claimants did indeed attend such events and meetings, wherein

19 | Lehman promoted hedge funds to Claimants. Lehman, in particular through Price, frequently

20 | communicated with Claimants for the purpose of promoting hedge funds.

21 | 23.         To achieve diversification, Claimant Lobdell invests in various hedge funds having

22 | different investment parameters, styles, strategies and risk profiles. Claimants informed Price that

23 | they were seeking a conservative, fully hedged investment with low volatility.

24 | 24.         On or about May 4th, 2005, Price promoted the Opportunities Fund to Claimants. Price

25 | informed Claimants that Hankins had created an innovative synthetic convertible arbitrage strategy

26 | that limited an investor's exposure to market risk. Price informed Claimants that the Opportunities

27 | Fund was performing well.

28 |

25.        Price further represented to Claimants that Hankins was a reputable investment manager with a successful track record and the Opportunities Fund was a successful fund that warranted investment by Claimant Lobdell.

26.        Price further represented to Claimants that the strategy of the Opportunities Fund had limited capacity due to its focus on more niche investment opportunities, and thus did not intend to take incoming investments beyond $100 Million, and that once the fund's Assets Under Management ("AUM") (or total investment in the fund) neared that amount, Claimant Lobdell may lose its opportunity to invest in the fund. Price further informed Claimants that Price was aware of new capital being invested in the fund. Thus, Price impressed upon Claimants that Claimant Lobdell not only should invest in the Opportunities Fund, but that Claimant Lobdell should invest in the fund without delay.

27.        Claimants asked Price if he had any concerns about Hankins or Tenet, and whether Price knew of any problems at the Opportunities Fund. Price did not disclose to Claimants that there were margin calls, highly concentrated positions or that Lehman had terminated its relationship with Tenet and the Opportunities Fund. Rather, Price made statements constituting an endorsement and recommendation of the Opportunities Fund.

28.        Price did not disclose to Claimants any issues with the Opportunities Fund, the synthetic convertible arbitrage strategy or with Hankins. Price failed to disclose and concealed, among other things, that Tenet had already incurred significant margin calls at Lehman, Tenet failed to satisfy the margin calls, and Lehman's termination of its Prime Broker relationship with Tenet as a result of the shorting of Google.

29.        In February 2005, management, supervisory and/or decision-making employees of Lehman knew that (1) Tenet was not following the synthetic convertible bond arbitrage investment strategy Price had represented but in fact had taken concentrated naked short positions in Google, (2) Tenet's transactions in the Opportunities Fund were contrary to Tenet's represented investment strategy and not suitable for and contrary to Claimant Lobdell's investment objectives as disclosed to Lehman, (3) Tenet did not use a fully hedged trading strategy and in connection with the Google

transactions was not hedged at all, (4) Tenet severely concentrated the investments in the Opportunities Fund, (5) the manner in which Tenet invested caused extreme volatility rather than low volatility, and (6) the represented investment strategy of Tenet, if followed, would not have generated margin calls.

30.    At no time did Price or any person at Lehman disclose to Claimants that: (1) almost immediately in the relationship between Lehman and Tenet, Tenet had received margin calls, (2) Tenet did not immediately meet the margin calls at Lehman (thereby indicating financial difficulty), (3) Lehman had terminated its relationship with Tenet two months earlier in March 2005 due to the margin calls generated by the naked shorting of Google, (4) that Tenet's transactions in the Opportunities Fund were inconsistent with its stated investment strategy, or (5) that Tenet had, and was, losing massive sums of money.

31.    Had Lehman disclosed to Claimants Tenet's margin calls and that it had terminated its relationship with Tenet over Tenet's failure to satisfy the margin calls and the concentrated shorting of Google, Claimants would have known Tenet's transactions were inconsistent with Tenet's and Hankins' written and oral representations and with Claimant Lobdell's stated investment objectives and risk tolerance, and Claimant Lobdell would not have invested in the Opportunities Fund.

32.    Upon information and belief, since its inception the Opportunities Fund has lost a total of between $15 Million and $20 Million, in connection with naked short sales of Google contrary to the stated investment strategy of the fund.

### E.    Lobdell's Investment in the Opportunities Fund

33.    As the result of Lehman's promotional efforts on behalf of Tenet, Lehman's recommendations that the Opportunities Fund was a suitable investment, and Price's representations on May 4th, 2005, Claimant Lobdell invested $3,600,000 in the Opportunities Fund on or about May 7th, 2005 *via* wire transfer to a Tenet account at Lehman per the instructions of Lehman. Claimant Lobdell has lost approximately $1,884,944 as a result of its investment in the Opportunities Fund.

34.    As a further result of Claimant Lobdell's losses incurred by investing in the

1  Opportunities Fund, Claimant Lobdell Capital Management has experienced substantial

2  withdrawals of capital from its fund of hedge funds, resulting in current and future annual revenue

3  losses. Claimant Lobdell Capital Management's fund of hedge funds performance track record has

4  also been irreparably harmed, and Claimant Lobdell Capital Management's reputation as an

5  investment manager has been severely damaged making Claimant Lobdell Capital Management's

6  future ability to attract future capital investment into its hedge funds doubtful, therefore

7  jeopardizing future business prospects for Claimant Lobdell Capital Management.

8  35.     Claimants filed a Complaint in California Superior Court, County of San Francisco on

9  August 15, 2007 concerning the matters alleged herein. On November 16, 2007, the Court Ordered

10  this matter to arbitration upon the Motion of Lehman, stating that if FINRA refused to exercise

11  jurisdiction over the Claim, the Court would reconsider its Order.

12  36.     Based on the foregoing, Claimants allege the following causes of action against

13  Lehman:

14  **III.     CLAIMS FOR RELIEF**

15  **FIRST CLAIM FOR RELIEF**

16  **Negligence**

17

18  37.     Claimants incorporate herein by reference all of the facts and each of the allegations set

19  forth above.

20  38.     By virtue of Lehman's activities, recommendations, representations and relationship to

21  Claimants, including but not limited to Lehman's holding itself out as a reliable source of hedge

22  fund investments; Lehman's undertaking activities such as offering hedge fund investments and

23  solicitation of investments; Lehman's promotion and recommendation of the Opportunities Fund to

24  Claimants; Lehman's knowledge that Claimants were relying on Lehman for Lehman's hedge fund

25  investment expertise; and, Lehman's knowledge that Claimants relied on its hedge fund investment

26

27  expertise and recommendation in deciding whether to invest in the Opportunities Fund, Lehman

28

owed Claimants a duty to exercise reasonable care to provide informed, complete, and accurate information regarding hedge fund investments.

39.       By virtue of the acts complained of above, Lehman breached its duty of reasonable care to Claimants and acted carelessly, negligently and /or recklessly, so as to expose Claimants to an unreasonable risk of harm by, among other things, failing to disclose to Claimants that (1) Hankins and Tenet had engaged in trading absolutely inconsistent with Tenet's stated and represented investment strategy, and that as a result Tenet had incurred margin calls, (2) Tenet was not following the conservative synthetic convertible bond arbitrage investment strategy Price had represented, (3) Tenet's transactions in the Opportunities Fund were not suitable for and contrary to Claimant Lobdell's stated investment objectives as disclosed to Lehman, (4) Tenet did not use a fully hedged trading strategy, rather Tenet severely concentrated the investments in the Opportunities Fund and that the manner in which Tenet invested caused extreme volatility, (5) almost immediately in the relationship between Lehman and Tenet, Tenet had received margin calls not immediately met by Tenet (thereby indicating financial difficulty), and (6) Lehman had terminated its relationship with Tenet due to the margin calls generated by the massive and concentrated naked shorting of Google two months prior to promoting Tenet.

40.       Lehman knew, or in the exercise of reasonable care should have known, its actions and omissions posed an unreasonable risk of harm of which the Claimants were unaware.  Had Lehman exercised reasonable care Claimants would not have been damaged, as set forth below.

41.       Claimants have been damaged by Lehman's conduct as set forth herein.

## SECOND CLAIM FOR RELIEF

### Negligent Misrepresentation

42.       Claimants incorporate herein by reference all of the facts and each of the allegations set forth above.

43.      By virtue of Lehman's activities, recommendations, representations and relationship to Claimants, including but not limited to Lehman's holding itself out as a reliable source of hedge fund investments; Lehman's undertaking activities such as offering hedge fund investments and solicitation of investments; Lehman's promotion and recommendation of the Opportunities Fund to Claimants; Lehman's knowledge that Claimants were relying on Lehman for Lehman's hedge fund investment expertise; and, Lehman's knowledge that Claimants relied on its hedge fund investment expertise and recommendation in deciding whether to invest in the Opportunities Fund, Lehman owed Claimants a duty to exercise reasonable care to provide informed, complete, and accurate information regarding hedge fund investments.

44.      Lehman intentionally or with reckless disregard for the truth, made material misrepresentations, omitted to state material facts necessary to make the statements it made not misleading, and suppressed facts, of which Lehman had actual knowledge, including but not limited to (1) Hankins and Tenet had engaged in trading inconsistent with Tenet's stated and represented investment strategy, and that as a result Tenet had incurred margin calls, (2) Tenet was not following the synthetic convertible bond arbitrage investment strategy Price had represented, (3) Tenet's transactions in the Opportunities Fund were not suitable for and contrary to Claimants' stated investment objectives as disclosed to Lehman, (4) Tenet did not use a fully hedged trading strategy, rather Tenet severely concentrated the investments in the Opportunities Fund and that the manner in which Tenet invested caused extreme volatility, (5) almost immediately in the relationship between Lehman and Tenet, Tenet had received margin calls not immediately met by Tenet (thereby indicating financial difficulty), and (6) Lehman had terminated its relationship with Tenet due to the margin calls generated by the shorting of Google two months prior to promoting Tenet.

45.        Lehman intended that Claimants rely on said misrepresentations, omissions and misleading statements.  Given that, among other things Lehman held itself out as a reliable source of hedge fund investments, Claimants reasonably and justifiably relied on said misrepresentations and misleading statements, and made the investment in the Opportunities Fund because of Price's promotion of the Opportunities Fund.  Claimants were ignorant of the true facts, and had they known the true facts they would not have invested in the Opportunities Fund.

46.        Lehman knew, or in the exercise of reasonable care should have known, its actions and omissions posed an unreasonable risk of harm of which the Claimants were unaware.  Lehman had actual knowledge its representations were untrue when it made them and intended that Claimants rely on said misrepresentations and misleading statements.  Price had actual knowledge the representations he made to Claimants concerning the Opportunities Fund were untrue when made, and/or he made no effort to ascertain the true facts.  Had Lehman exercised reasonable care Claimants would not have been damaged.

47.        Claimants have been damaged by Lehman's negligent conduct, as set forth herein.

## THIRD CLAIM FOR RELIEF

### Fraud

48.        Claimants incorporate herein by reference all of the facts and each of the allegations set forth above.

49.        Lehman recommended Tenet and Hankins as investment advisers to Claimants and further recommended that Claimants invest in the Opportunities Fund.

50.        In connection with making the recommendations to Claimants, Lehman intentionally or with reckless disregard for the truth, made material misrepresentations, omitted to state material facts necessary to make the statements it made not misleading, and suppressed facts, of which Lehman had actual knowledge, including but not limited to (1) that Tenet was not following the

1  synthetic convertible bond arbitrage investment strategy Price had represented, (2) that Tenet's

2  transactions in the Opportunities Fund were contrary to Tenet's represented investment strategy and

3  not suitable for and contrary to Claimants' stated investment objectives as disclosed to Lehman, (3)

4  that Tenet did not use a fully hedged trading strategy, (4) that Tenet severely concentrated the

5  investments in the Opportunities Fund, (5) that the manner in which Tenet invested caused extreme

6  volatility, (6) that the represented investment strategy of Tenet, if followed, would not have

7  generated margin calls, and (7) that Lehman had terminated its relationship with Tenet due to the

8  margin calls generated by the shorting of Google two months prior to promoting Tenet.

9  51.        Lehman had actual knowledge its representations were untrue when they made them and

10  intended that Claimants rely on said misrepresentations and misleading statements.  Price had

11  actual knowledge the representations he made to Claimants concerning the Opportunities Fund

12  were untrue when made, and/or he made no effort to ascertain the true facts.  Given Claimants'

13  relationship with Lehman and, among other things, Lehman's holding itself out as a reliable source

14  of hedge fund investments, Claimants reasonably relied on said misrepresentations and misleading

15  statements, and made its investment in the Opportunities Fund because Price's promotion of the

16  Opportunities Fund.  Claimants were ignorant of the true facts, and had they known the true facts

17  they would not have invested in the Opportunities Fund.

18  52.        Claimants have been damaged by Lehman's conduct as set forth herein.

### FOURTH CLAIM FOR RELIEF

#### Aider/Abettor Liability—Violation of *California Corporations Code §25504, et seq.*

53.        Claimants incorporate herein by reference all of the facts and each of the allegations set
forth above.

54.        *California Corporations Code* §25504 provides "every broker-dealer or agent who
materially aids in the act or transaction constituting the violation, are also liable jointly and
severally with and to the same extent as such person . . .".

55.        Lehman is liable for aiding and abetting the fraud of Hankins and Tenet, because Lehman was aware of the fraud, helped conceal it, and proximately caused the primary harm to Claimant. Lehman knowingly and substantially advanced the commission of the fraud by, among other things, failing to disclose to Claimants (1) that Hankins and Tenet had engaged in trading inconsistent with Tenet's stated and represented investment strategy, and that as a result Tenet had incurred margin calls, (2) that Tenet was not following the synthetic convertible bond arbitrage investment strategy Price had represented, (3) that Tenet's transactions in the Opportunities Fund were not suitable for and contrary to Claimant Lobdell's stated investment objectives, (4) that Tenet did not use a fully hedged trading strategy, Tenet severely concentrated the investments in the Opportunities Fund and that the manner in which Tenet invested caused extreme volatility, (5) that almost immediately in the relationship between Lehman and Tenet, Tenet had received margin calls not immediately met by Tenet (thereby indicating financial difficulty), and (6) that Lehman had terminated its relationship with Tenet due to the margin calls generated by the shorting of Google.

56.        As a proximate result of Lehman's conduct, Claimants have been damaged by as set forth herein.

## FIFTH CLAIM FOR RELIEF

### Failure to Supervise

57.        Claimants incorporate herein by reference all of the facts and each of the allegations set forth above.

58.        Lehman, a FINRA registered securities broker-dealer, is subject to the rules and regulations of the FINRA, among others.

59.        Lehman was required under FINRA Rule 3010, as well as other rules, to supervise and monitor the transactions it executed for Tenet and the Opportunities Fund. Among other things, Lehman was required to review the trading activities of Tenet and the Opportunities Fund to ensure the trading was consistent with the Opportunities Fund's stated investment strategies and

1    investment objectives.  Lehman was required to enforce applicable federal, state, S.E.C. and

2    FINRA rules regarding supervision and the extension of credit and failed to do so.

3    60.        Lehman failed to supervise the transactions that it executed for Tenet as required by

4    Rule 3010.

5
6    61.        Claimants have been damaged by Lehman's failure to supervise in an amount to be

7    proven at trial.

8                              **SIXTH CLAIM FOR RELIEF**

9                      <u>**Failure to Observe High Commercial Standards**</u>

10
11   62.        Claimants incorporate herein by reference all of the facts and each of the allegations set

12   forth above.

13   63.        As a registered securities Broker-Dealer, Lehman is subject to the rules and regulations

14   of the FINRA.  FINRA Rule 2110 requires members to observe high standards of commercial

15   honor and just and equitable principles of trade.

16   64.        By its conduct herein, Lehman failed to observe the high standards of commercial honor

17   required of it.

18   65.        Claimants have been damaged by Lehman's conduct in an amount to be proven at trial.

                              **PRAYER FOR RELIEF**

19   WHEREFORE, Claimants request that this Arbitration Panel award them damages in an amount to

20   be proven at hearing, but not limited to:

21       1.        Compensatory damages in a sum according to proof at trial;

22
23       2.        Prejudgment and Post judgment interest at the legal rate from the date of the

24                 transactions herein until the date judgment is entered;

25       3.        Rescission of the Claimants' investments pursuant to Cal. Corps. Code

26                 Section 25501, which entitles Claimants to receive the purchase price of the

27                 subject security plus interest thereon at the legal rate;

28       4.        Consequential damages relating to Claimants' loss of reputation, business

                              STATEMENT OF CLAIM

and ongoing management fees;

     5.     Reasonable and necessary attorneys fees, costs and expenses; and,

     6.     Such other and further relief as the Panel deems appropriate under the circumstances.

Claimants demand a hearing on the issues set forth above.

DATED: January 28, 2008          BALDWIN LAW GROUP

                                  By: _____
                                  PATRICK BALDWIN, ESQ.
                                  CHRISTOPHER P. MADER, ESQ.
                                  Attorneys for Claimants
                                  Lobdell Capital Partners LP and
                                  Lobdell Capital Management LLC

## Interest Calculation for Claim of Lobdell Capital Partners

Principal Amount of Claim:                    $1,884,944

Interest Rate:                                10%

Period:                                       May 7, 2005 to January 28, 2009

**Total Accrued Interest:**                   **$703,880.00**

**Extr**

This envelope is for use with the following services:

**UPS Next Day Air®**
**UPS Worldwide Express™**
**UPS 2nd Day Air®**

10300 SW ALLEN BLVD
BEAVERTON OR 97005-4833

P: YELLOW s:300    I:5D

Call 1-

323-1547    X    1500

1Z9844FY231000 0363

Apply shipping documents on this side.

Do not use this envelope for:

**UPS Ground**

- For UPS N
envelopes
and electr
is selected
than those
rates for the applicable weight.

- For UPS Worldwide Express, the UPS
be used only for documents of no con
is no limit on the weight or number of

- Do not use UPS 2nd Day Air services
over 13 ounces in this envelope. For U
UPS Express Envelopes weighing one
to the corresponding rates for the ap

- Do not send cash or cash equivalent.

**UPS** | **UPS Next Day Air** Saver® | WEIGHT LTR | DIMENSIONAL WEIGHT | LARGE PACKAGE | SHIPPER RELEASE

**Shipping Document**

# Saver

SHIPMENT FROM

UPS ACCOUNT NO.   **9844FY**

REFERENCE NUMBER

~Lobdell
File

TELEPHONE
650-326-8191

**BALDWIN LAW GROUP**

530 OAK GROVE AVE RM 207

**MENLO PARK**    CA  94025-3255

DELIVERY TO

**UPS Next Day Air** Saver® 1P

TELEPHONE

Lehman Brothers Inc. Claims Processing
c/o Epiq Bankruptcy Solutions LLC
10300 SW Allen Blvd
Beaverton, OR 97005

1Z 984 4FY 23 1000 0363

SHIPMENT ID NUMBER   **9844 FY79 XFY**

0201952542608 1/02 8

United Parcel Service, Louisville, KY

International Shipping Notice — Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or the Convention on the Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.

010195101  11/03  S1  United Parcel Service, Louisville, KY

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

LEHMAN BROTHERS INC.,

Debtor.

Case No. 08-01420 (SCC) SIPA

## DECLARATION OF JORDAN E. PACE IN SUPPORT OF
## THE TRUSTEE'S OBJECTION TO THE GENERAL CREDITOR
## PROOF OF CLAIM OF LOBDELL CAPITAL PARTNERS LP (CLAIM NO. 2387)

Pursuant to 28 U.S.C. § 1746, I, Jordan E. Pace, hereby declare as follows:

1.      I am an attorney duly admitted to practice in this Court and an associate at the law firm of Hughes Hubbard & Reed LLP, attorneys for James W. Giddens, trustee for the SIPA liquidation of Lehman Brothers Inc. ("LBI").  I submit this declaration in support of the Trustee's Objection to the General Creditor Proof of Claim of Lobdell Capital Partners LP (Claim No. 2387) (the "Objection").

2.      Attached hereto as Exhibit 1 is a true and correct copy of the Statement of Claim, dated January 28, 2008, filed by Claimant Lobdell Capital Partners LP ("Lobdell") in *Lobdell Capital Partners LP v. Lehman Bros. Inc.*, FINRA Case No. 05-06077.

3.      Attached hereto as Exhibit 2 is a true and correct copy of the declaration of Martin Lobdell, executed on June 16, 2005 (the "Lobdell SEC Declaration"), and filed in *SEC v. Hankins*, No. 05 CV 5808 (KMW) (S.D.N.Y.) (the "SEC Action"), without the exhibits originally attached thereto.[1]

---

1.  The declaration was filed in the SEC Action with its pages in the incorrect order.  The copy attached hereto as Exhibit 2 has the pages in the correct order.

4.      Attached hereto as <u>Exhibit 3</u> is a true and correct copy of a letter from James E. Grand, counsel for Lobdell, to Susan Brune, Receiver for the Tenet Capital Partners Convertible Opportunities Fund, LP (the "<u>Opportunities Fund</u>" or the "<u>Fund</u>"), dated October 27, 2005.

5.      Attached hereto as <u>Exhibit 4</u> is a true and correct copy of an addendum to the Lobdell SEC Declaration, executed on June 20, 2005, and filed in the SEC Action.

6.      Attached hereto as <u>Exhibit 5</u> is a true and correct copy of the Complaint filed on June 22, 2005, by the Securities and Exchange Commission (the "<u>SEC</u>") in the SEC Action.

7.      Attached hereto as <u>Exhibit 6</u> is a true and correct copy of the Emergency Application for a Temporary Restraining Order, Preliminary Injunction, Order to Show Cause, and Order Appointing a Receiver and Granting Other Relief filed on June 22, 2005, by the SEC in the SEC Action.

8.      Attached hereto as <u>Exhibit 7</u> is a true and correct copy of the Order to Show Cause, Temporary Restraining Order, and Order Appointing a Receiver and Granting Other Relief entered on June 23, 2005, in the SEC Action.

9.      Attached hereto as <u>Exhibit 8</u> is a true and correct copy of a release issued by the SEC on June 24, 2005, related to the SEC Action.

10.      Attached hereto as <u>Exhibit 9</u> is a true and correct copy of the first Declaration and Report of Receiver filed on July 29, 2005, by the Receiver for the Fund in the SEC Action, with only relevant exhibits thereto attached.

11.      Attached hereto as <u>Exhibit 10</u> is a true and correct copy of the Order terminating the receivership of the Fund entered on October 13, 2006, in the SEC Action.

12.      Attached hereto as <u>Exhibit 11</u> is a true and correct copy of the Sixth Declaration and Report of Receiver filed on November 11, 2005, by the Receiver for the Fund in the SEC Action, with only relevant exhibits thereto attached.

13.      Attached hereto as <u>Exhibit 12</u> is a true and correct copy of the Eighth Declaration and Report of Receiver filed on August 3, 2006, by the Receiver for the Fund in the SEC Action, with only relevant exhibits thereto attached.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 14, 2014.

       /s/ Jordan E. Pace       

Jordan E. Pace

**EXHIBIT 1**

PATRICK BALDWIN, ESQ. (SBC # 93337)
CHRISTOPHER P. MADER, ESQ. (SBC # 199605)
BALDWIN LAW GROUP
530 Oak Grove Avenue, Suite 207
Menlo Park, CA 94025
Phone: (650) 326-8195
Fax:   (650) 326-0467

Attorneys for Claimants
Lobdell Capital Partners LP and
Lobdell Capital Management LLC

## BEFORE THE FINANCIAL INDUSTRY REGULATORY AUTHORITY

| | |
|---|---|
| LOBDELL CAPITAL PARTNERS LP, and<br>LOBDELL CAPITAL MANAGEMENT LLC,<br><br>        Claimants,<br><br>  v.<br><br>LEHMAN BROTHERS, INC.,<br><br>        Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**FINRA CASE NO.**

**STATEMENT OF CLAIM**

Claimants LOBDELL CAPITAL PARTNERS LP and LOBDELL CAPITAL MANAGEMENT
LLC file the within Statement of Claim against Respondent LEHMAN BROTHERS, INC. as
follows:

I.      **PARTIES**

1.      Claimant LOBDELL CAPITAL PARTNERS LP ("Claimant Lobdell") is a Delaware
Limited Partnership with its principal place of business in San Francisco, California.  Claimant
Lobdell is a hedge fund investor.

2.      Claimant LOBDELL CAPITAL MANAGEMENT LLC ("Claimant Lobdell Capital
Management") is a Limited Liability Company formed under Michigan law with its principal place
of business in San Francisco, California.  Claimant Lobdell Capital Management is the General

1    Partner of Claimant Lobdell.

2    3.        Respondent LEHMAN BROTHERS, INC. ("Lehman") is a FINRA registered broker-

3    dealer with principal offices in New York, San Francisco and London.  Lehman provided custodial,

4    prime broker and Capital Introductions services to Tenet.

5    4.        Claimants are informed and believe, and on that basis allege, that Lehman directed,

6    approved, and ratified the acts described in this Statement of Claim that were performed by

7    Lehman's employees, officers, directors, representatives, and other persons or entities under

8    Lehman's control.

9            *A.*       ***Third Parties Relevant to the Action***

10   5.        The Tenet Capital Partners Convertible Opportunities Fund, LP ("Opportunities Fund")

11   is a hedge fund that was founded by Jon E. Hankins ("Hankins") in 2004.  Tenet Asset

12   Management, LLC ("Tenet") was the investment advisor to and General Partner of the

13   Opportunities Fund.  The Opportunities Fund represented that it would employ a "synthetic

14   convertible bond arbitrage" investment strategy.  This investment strategy was represented as

15   conservative and fully hedged, such that the fund would have low volatility.

16   **II.       FACTS**

17           *A.*       ***Lehman Acts as Prime Broker for the Opportunities Fund***

18   6.        Tenet entered into an Agreement with Lehman on or about February 1, 2005 pursuant to

19   which Lehman acted as Prime Broker for Tenet.  Prime Broker services consist of custodial and

20   record keeping services, transaction execution and settlement, transfer of record ownership of

21   securities, receipt and delivery of securities sold, borrowed and/or loaned, financing of transactions

22   through margin loans, compliance with margin and maintenance requirements, custody of funds

23   and securities, tendering of securities in connection with tender offers, mergers or corporate

24   reorganizations, and maintenance of accounts and records for each transaction.  Providing Prime

25   Broker services to hedge funds is a lucrative and substantial part of Lehman's business.

26   Lehman conducts a "Capital Introductions Business"

27

28

1          **B.**        *Lehman's Capital Introductions Business*

2    7.        As part of its Prime Brokerage services, Lehman conducts a "Capital Introductions

3    Business" where it locates investors for hedge funds and recommends hedge funds to investors.

4    The hedge funds Lehman typically recommends to investors are those for which Lehman already

5    provides Prime Broker services or for which it seeks to provide such services. Commencing in

6    early 2004, and continuing thereafter Lehman provided Capital Introduction Services for the

7    Opportunities Fund.

8    8.        Lehman's Prime Broker and Capital Introduction Services for hedge funds are a highly

9    profitable part of Lehman's business. The more funds that are invested in hedge funds for which

10   Lehman acts as Prime Broker, the more fees Lehman earns from its Prime Broker services.

11   9.        Lehman cultivated and maintained a relationship of trust and confidence with Claimants

12   so that Claimants would be receptive to Lehman's promotion of hedge funds. Lehman held itself

13   out as a reliable source of hedge fund investments to Claimants.

14         **C.**        *Lehman Terminates its Prime Brokerage Relationship with Tenet*

15   10.       On or about February 22, 2005, almost immediately upon Lehman's commencement of

16   Prime Broker services for the Opportunities Fund, Tenet deviated substantially from its represented

17   investment strategy.

18   11.       According to Tenet, the Opportunities Fund would adhere to a "synthetic convertible

19   bond arbitrage" investment strategy that was conservative, non-directional, fully hedged, and with

20   low volatility. The fund would not invest more than 5% of its assets in any one stock or otherwise

21   concentrate the fund's assets in any one issue – that is to say the fund had a "position limit" of 5%.

22   12.       In early February 2005 while Lehman was the Prime Broker for the Opportunities Fund,

23   the Opportunities Fund incurred substantial losses as a result of Tenet having taken large,

24   concentrated "naked" "short" positions in shares of Google, Inc. ("Google").

25   13.       The holder of a "short" position believes the price of a security will decrease in the near

26   future. To take advantage of this projected price decline, the account holder sells those securities

27   "short." The account holder does so by borrowing shares of the company from a broker-dealer and

28   selling those borrowed shares to a third party at the current price. The borrower must thereafter

1   "repay" the lending brokerage firm with an equal number of shares at a specified date. If the short

2   seller is correct, and the price of the shares does drop, the short seller may then buy the shares on

3   the open market at the lower price and "repay" the brokerage firm with cheaper shares, resulting in

4   a profit to the short seller.

5   14.      If the short seller does not hold the shares elsewhere, or does not otherwise hedge its

6   risk by owning or purchasing some form of the position with a value expected to move in the

7   opposite direction of the shorted securities, the short position is characterized as "naked."

8   15.      The Opportunities Fund shorted Google without any offsetting or hedging positions.

9   Holding such "naked" "short" positions in the Opportunities Fund without accompanying offsetting

10   hedging positions was entirely contrary to and an extreme departure from the investment strategy of

11   the Opportunities Fund.

12   16.      In particular, the "naked" "short" positions in Google held by the Opportunities Fund

13   were acutely troublesome because (1) the uncovered positions in Google represented 450% of the

14   funds equity – clearly contrary to the fund's position limits; and, (2) Google was widely considered

15   to be an investment with exceptional growth potential. Hankins made an incredibly large "bet" that

16   Google would decrease in value. Such "bets" were clearly inconsistent with the fund's stated

17   conservative investment strategy of being fully hedged at all times.

18   17.      When Google increased in value, the Opportunities Fund was forced to purchase

19   Google shares at a significant increased value and thereby incurred huge losses in the fund.

20   18.      *Lehman terminated its relationship with Tenet on or about March 1, 2005* because

21   Tenet shorted Google, which resulted in significant margin calls at Lehman that Tenet immediately

22   could not satisfy. Management, supervisory and/or decision-making employees of Lehman knew

23   that Hankins and Tenet had shorted "naked" a significant number of shares of Google, which was

24   inconsistent with Tenet's represented conservative fully hedged arbitrage strategy.

25   19.      At all times relevant herein William H. Price was a Senior Vice President of Prime

26   Brokerage Operations for Lehman, responsible for sales and marketing of Lehman's Prime Broker

27   services, and was acting as the authorized agent of Lehman and within the scope of his authority.

28   Upon information and belief, Price acted as the Lehman account executive responsible for Tenet

1  and the Opportunities Fund. Price signed the letter terminating Lehman's relationship with Tenet

2  when Tenet could not satisfy the margin calls caused by shorting Google naked.

3  **D.      Lehman's Promotion of Tenet to Claimants**

4  20.      Lehman represents that through its "Capital Introductions Business" it "provides a

5  uniquely customized, highly efficient approach to connecting the right investors to the right hedge

6  fund managers . . . Lehman makes the most suitable introductions through both [its] significant

7  knowledge of a manager's strategies, people, risk and performance and our clear understanding of

8  investor's goals and objectives." The more funds Lehman's Capital Introduction Services is able to

9  drive toward hedge funds for which Lehman acts as Prime Broker, the more lucrative that Prime

10  Broker relationship becomes for Lehman.

11  21.      Commencing in 2004 Lehman recommended, endorsed and marketed Tenet and the

12  Opportunities Fund to potential investors. Lehman initiated, arranged and participated in

13  conference sales calls and meetings, and otherwise promoted Tenet. Lehman relied on its

14  relationships with investors, including Claimants (which Lehman fostered by holding itself out as a

15  reliable source of investment advice), so that Lehman could successfully promote the Opportunities

16  Fund.

17  22.      Since early 2004, Lehman regularly invited Claimants to attend Lehman Capital

18  Introduction events and meetings. Claimants did indeed attend such events and meetings, wherein

19  Lehman promoted hedge funds to Claimants. Lehman, in particular through Price, frequently

20  communicated with Claimants for the purpose of promoting hedge funds.

21  23.      To achieve diversification, Claimant Lobdell invests in various hedge funds having

22  different investment parameters, styles, strategies and risk profiles. Claimants informed Price that

23  they were seeking a conservative, fully hedged investment with low volatility.

24  24.      On or about May 4th, 2005, Price promoted the Opportunities Fund to Claimants. Price

25  informed Claimants that Hankins had created an innovative synthetic convertible arbitrage strategy

26  that limited an investor's exposure to market risk. Price informed Claimants that the Opportunities

27  Fund was performing well.

28

STATEMENT OF CLAIM
- 5 -

25.        Price further represented to Claimants that Hankins was a reputable investment manager with a successful track record and the Opportunities Fund was a successful fund that warranted investment by Claimant Lobdell.

26.        Price further represented to Claimants that the strategy of the Opportunities Fund had limited capacity due to its focus on more niche investment opportunities, and thus did not intend to take incoming investments beyond $100 Million, and that once the fund's Assets Under Management ("AUM") (or total investment in the fund) neared that amount, Claimant Lobdell may lose its opportunity to invest in the fund. Price further informed Claimants that Price was aware of new capital being invested in the fund. Thus, Price impressed upon Claimants that Claimant Lobdell not only should invest in the Opportunities Fund, but that Claimant Lobdell should invest in the fund without delay.

27.        Claimants asked Price if he had any concerns about Hankins or Tenet, and whether Price knew of any problems at the Opportunities Fund. Price did not disclose to Claimants that there were margin calls, highly concentrated positions or that Lehman had terminated its relationship with Tenet and the Opportunities Fund. Rather, Price made statements constituting an endorsement and recommendation of the Opportunities Fund.

28.        Price did not disclose to Claimants any issues with the Opportunities Fund, the synthetic convertible arbitrage strategy or with Hankins. Price failed to disclose and concealed, among other things, that Tenet had already incurred significant margin calls at Lehman, Tenet failed to satisfy the margin calls, and Lehman's termination of its Prime Broker relationship with Tenet as a result of the shorting of Google.

29.        In February 2005, management, supervisory and/or decision-making employees of Lehman knew that (1) Tenet was not following the synthetic convertible bond arbitrage investment strategy Price had represented but in fact had taken concentrated naked short positions in Google, (2) Tenet's transactions in the Opportunities Fund were contrary to Tenet's represented investment strategy and not suitable for and contrary to Claimant Lobdell's investment objectives as disclosed to Lehman, (3) Tenet did not use a fully hedged trading strategy and in connection with the Google

transactions was not hedged at all, (4) Tenet severely concentrated the investments in the Opportunities Fund, (5) the manner in which Tenet invested caused extreme volatility rather than low volatility, and (6) the represented investment strategy of Tenet, if followed, would not have generated margin calls.

30.       At no time did Price or any person at Lehman disclose to Claimants that: (1) almost immediately in the relationship between Lehman and Tenet, Tenet had received margin calls, (2) Tenet did not immediately meet the margin calls at Lehman (thereby indicating financial difficulty), (3) Lehman had terminated its relationship with Tenet two months earlier in March 2005 due to the margin calls generated by the naked shorting of Google, (4) that Tenet's transactions in the Opportunities Fund were inconsistent with its stated investment strategy, or (5) that Tenet had, and was, losing massive sums of money.

31.       Had Lehman disclosed to Claimants Tenet's margin calls and that it had terminated its relationship with Tenet over Tenet's failure to satisfy the margin calls and the concentrated shorting of Google, Claimants would have known Tenet's transactions were inconsistent with Tenet's and Hankins' written and oral representations and with Claimant Lobdell's stated investment objectives and risk tolerance, and Claimant Lobdell would not have invested in the Opportunities Fund.

32.       Upon information and belief, since its inception the Opportunities Fund has lost a total of between $15 Million and $20 Million, in connection with naked short sales of Google contrary to the stated investment strategy of the fund.

**E.        Lobdell's Investment in the Opportunities Fund**

33.       As the result of Lehman's promotional efforts on behalf of Tenet, Lehman's recommendations that the Opportunities Fund was a suitable investment, and Price's representations on May 4th, 2005, Claimant Lobdell invested $3,600,000 in the Opportunities Fund on or about May 7th, 2005 *via* wire transfer to a Tenet account at Lehman per the instructions of Lehman. Claimant Lobdell has lost approximately $1,884,944 as a result of its investment in the Opportunities Fund.

34.       As a further result of Claimant Lobdell's losses incurred by investing in the

1   Opportunities Fund, Claimant Lobdell Capital Management has experienced substantial

2   withdrawals of capital from its fund of hedge funds, resulting in current and future annual revenue

3   losses. Claimant Lobdell Capital Management's fund of hedge funds performance track record has

4   also been irreparably harmed, and Claimant Lobdell Capital Management's reputation as an

5   investment manager has been severely damaged making Claimant Lobdell Capital Management's

6   future ability to attract future capital investment into its hedge funds doubtful, therefore

7   jeopardizing future business prospects for Claimant Lobdell Capital Management.

8   35.        Claimants filed a Complaint in California Superior Court, County of San Francisco on

9   August 15, 2007 concerning the matters alleged herein. On November 16, 2007, the Court Ordered

10  this matter to arbitration upon the Motion of Lehman, stating that if FINRA refused to exercise

11  jurisdiction over the Claim, the Court would reconsider its Order.

12  36.        Based on the foregoing, Claimants allege the following causes of action against

13  Lehman:

14  **III.    CLAIMS FOR RELIEF**

15  **FIRST CLAIM FOR RELIEF**

16  **Negligence**

17

18  37.        Claimants incorporate herein by reference all of the facts and each of the allegations set

19  forth above.

20  38.        By virtue of Lehman's activities, recommendations, representations and relationship to

21  Claimants, including but not limited to Lehman's holding itself out as a reliable source of hedge

22  fund investments; Lehman's undertaking activities such as offering hedge fund investments and

23  solicitation of investments; Lehman's promotion and recommendation of the Opportunities Fund to

24  Claimants; Lehman's knowledge that Claimants were relying on Lehman for Lehman's hedge fund

25  investment expertise; and, Lehman's knowledge that Claimants relied on its hedge fund investment

26

27  expertise and recommendation in deciding whether to invest in the Opportunities Fund, Lehman

28

owed Claimants a duty to exercise reasonable care to provide informed, complete, and accurate information regarding hedge fund investments.

39.        By virtue of the acts complained of above, Lehman breached its duty of reasonable care to Claimants and acted carelessly, negligently and /or recklessly, so as to expose Claimants to an unreasonable risk of harm by, among other things, failing to disclose to Claimants that (1) Hankins and Tenet had engaged in trading absolutely inconsistent with Tenet's stated and represented investment strategy, and that as a result Tenet had incurred margin calls, (2) Tenet was not following the conservative synthetic convertible bond arbitrage investment strategy Price had represented, (3) Tenet's transactions in the Opportunities Fund were not suitable for and contrary to Claimant Lobdell's stated investment objectives as disclosed to Lehman, (4) Tenet did not use a fully hedged trading strategy, rather Tenet severely concentrated the investments in the Opportunities Fund and that the manner in which Tenet invested caused extreme volatility, (5) almost immediately in the relationship between Lehman and Tenet, Tenet had received margin calls not immediately met by Tenet (thereby indicating financial difficulty), and (6) Lehman had terminated its relationship with Tenet due to the margin calls generated by the massive and concentrated naked shorting of Google two months prior to promoting Tenet.

40.        Lehman knew, or in the exercise of reasonable care should have known, its actions and omissions posed an unreasonable risk of harm of which the Claimants were unaware. Had Lehman exercised reasonable care Claimants would not have been damaged, as set forth below.

41.        Claimants have been damaged by Lehman's conduct as set forth herein.

## SECOND CLAIM FOR RELIEF

### Negligent Misrepresentation

42.        Claimants incorporate herein by reference all of the facts and each of the allegations set forth above.

43.     By virtue of Lehman's activities, recommendations, representations and relationship to Claimants, including but not limited to Lehman's holding itself out as a reliable source of hedge fund investments; Lehman's undertaking activities such as offering hedge fund investments and solicitation of investments; Lehman's promotion and recommendation of the Opportunities Fund to Claimants; Lehman's knowledge that Claimants were relying on Lehman for Lehman's hedge fund investment expertise; and, Lehman's knowledge that Claimants relied on its hedge fund investment expertise and recommendation in deciding whether to invest in the Opportunities Fund, Lehman owed Claimants a duty to exercise reasonable care to provide informed, complete, and accurate information regarding hedge fund investments.

44.     Lehman intentionally or with reckless disregard for the truth, made material misrepresentations, omitted to state material facts necessary to make the statements it made not misleading, and suppressed facts, of which Lehman had actual knowledge, including but not limited to (1) Hankins and Tenet had engaged in trading inconsistent with Tenet's stated and represented investment strategy, and that as a result Tenet had incurred margin calls, (2) Tenet was not following the synthetic convertible bond arbitrage investment strategy Price had represented, (3) Tenet's transactions in the Opportunities Fund were not suitable for and contrary to Claimants' stated investment objectives as disclosed to Lehman, (4) Tenet did not use a fully hedged trading strategy, rather Tenet severely concentrated the investments in the Opportunities Fund and that the manner in which Tenet invested caused extreme volatility, (5) almost immediately in the relationship between Lehman and Tenet, Tenet had received margin calls not immediately met by Tenet (thereby indicating financial difficulty), and (6) Lehman had terminated its relationship with Tenet due to the margin calls generated by the shorting of Google two months prior to promoting Tenet.

45.        Lehman intended that Claimants rely on said misrepresentations, omissions and misleading statements. Given that, among other things Lehman held itself out as a reliable source of hedge fund investments, Claimants reasonably and justifiably relied on said misrepresentations and misleading statements, and made the investment in the Opportunities Fund because of Price's promotion of the Opportunities Fund. Claimants were ignorant of the true facts, and had they known the true facts they would not have invested in the Opportunities Fund.

46.        Lehman knew, or in the exercise of reasonable care should have known, its actions and omissions posed an unreasonable risk of harm of which the Claimants were unaware. Lehman had actual knowledge its representations were untrue when it made them and intended that Claimants rely on said misrepresentations and misleading statements. Price had actual knowledge the representations he made to Claimants concerning the Opportunities Fund were untrue when made, and/or he made no effort to ascertain the true facts. Had Lehman exercised reasonable care Claimants would not have been damaged.

47.        Claimants have been damaged by Lehman's negligent conduct, as set forth herein.

## THIRD CLAIM FOR RELIEF

### Fraud

48.        Claimants incorporate herein by reference all of the facts and each of the allegations set forth above.

49.        Lehman recommended Tenet and Hankins as investment advisers to Claimants and further recommended that Claimants invest in the Opportunities Fund.

50.        In connection with making the recommendations to Claimants, Lehman intentionally or with reckless disregard for the truth, made material misrepresentations, omitted to state material facts necessary to make the statements it made not misleading, and suppressed facts, of which Lehman had actual knowledge, including but not limited to (1) that Tenet was not following the

STATEMENT OF CLAIM
- 11 -

1   synthetic convertible bond arbitrage investment strategy Price had represented, (2) that Tenet's

2   transactions in the Opportunities Fund were contrary to Tenet's represented investment strategy and

3   not suitable for and contrary to Claimants' stated investment objectives as disclosed to Lehman, (3)

4   that Tenet did not use a fully hedged trading strategy, (4) that Tenet severely concentrated the

5   investments in the Opportunities Fund, (5) that the manner in which Tenet invested caused extreme

6

7   volatility, (6) that the represented investment strategy of Tenet, if followed, would not have

8   generated margin calls, and (7) that Lehman had terminated its relationship with Tenet due to the

9   margin calls generated by the shorting of Google two months prior to promoting Tenet.

10   51.      Lehman had actual knowledge its representations were untrue when they made them and

11   intended that Claimants rely on said misrepresentations and misleading statements.  Price had

12   actual knowledge the representations he made to Claimants concerning the Opportunities Fund

13   were untrue when made, and/or he made no effort to ascertain the true facts.  Given Claimants'

14

15   relationship with Lehman and, among other things, Lehman's holding itself out as a reliable source

16   of hedge fund investments, Claimants reasonably relied on said misrepresentations and misleading

17   statements, and made its investment in the Opportunities Fund because Price's promotion of the

18   Opportunities Fund.  Claimants were ignorant of the true facts, and had they known the true facts

19   they would not have invested in the Opportunities Fund.

20   52.      Claimants have been damaged by Lehman's conduct as set forth herein.

21

22                          **FOURTH CLAIM FOR RELIEF**

23   <u>Aider/Abettor Liability—Violation of *California Corporations Code §25504, et seq.*</u>

24   53.      Claimants incorporate herein by reference all of the facts and each of the allegations set

25   forth above.

26   54.      *California Corporations Code* §25504 provides "every broker-dealer or agent who

27   materially aids in the act or transaction constituting the violation, are also liable jointly and

28   severally with and to the same extent as such person . . .".

55.      Lehman is liable for aiding and abetting the fraud of Hankins and Tenet, because Lehman was aware of the fraud, helped conceal it, and proximately caused the primary harm to Claimant. Lehman knowingly and substantially advanced the commission of the fraud by, among other things, failing to disclose to Claimants (1) that Hankins and Tenet had engaged in trading inconsistent with Tenet's stated and represented investment strategy, and that as a result Tenet had incurred margin calls, (2) that Tenet was not following the synthetic convertible bond arbitrage investment strategy Price had represented, (3) that Tenet's transactions in the Opportunities Fund were not suitable for and contrary to Claimant Lobdell's stated investment objectives, (4) that Tenet did not use a fully hedged trading strategy, Tenet severely concentrated the investments in the Opportunities Fund and that the manner in which Tenet invested caused extreme volatility, (5) that almost immediately in the relationship between Lehman and Tenet, Tenet had received margin calls not immediately met by Tenet (thereby indicating financial difficulty), and (6) that Lehman had terminated its relationship with Tenet due to the margin calls generated by the shorting of Google.

56.      As a proximate result of Lehman's conduct, Claimants have been damaged by as set forth herein.

### FIFTH CLAIM FOR RELIEF

#### Failure to Supervise

57.      Claimants incorporate herein by reference all of the facts and each of the allegations set forth above.

58.      Lehman, a FINRA registered securities broker-dealer, is subject to the rules and regulations of the FINRA, among others.

59.      Lehman was required under FINRA Rule 3010, as well as other rules, to supervise and monitor the transactions it executed for Tenet and the Opportunities Fund. Among other things, Lehman was required to review the trading activities of Tenet and the Opportunities Fund to ensure the trading was consistent with the Opportunities Fund's stated investment strategies and

investment objectives. Lehman was required to enforce applicable federal, state, S.E.C. and FINRA rules regarding supervision and the extension of credit and failed to do so.

60.     Lehman failed to supervise the transactions that it executed for Tenet as required by Rule 3010.

61.     Claimants have been damaged by Lehman's failure to supervise in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### Failure to Observe High Commercial Standards

62.     Claimants incorporate herein by reference all of the facts and each of the allegations set forth above.

63.     As a registered securities Broker-Dealer, Lehman is subject to the rules and regulations of the FINRA. FINRA Rule 2110 requires members to observe high standards of commercial honor and just and equitable principles of trade.

64.     By its conduct herein, Lehman failed to observe the high standards of commercial honor required of it.

65.     Claimants have been damaged by Lehman's conduct in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Claimants request that this Arbitration Panel award them damages in an amount to be proven at hearing, but not limited to:

1.     Compensatory damages in a sum according to proof at trial;

2.     Prejudgment and Post judgment interest at the legal rate from the date of the transactions herein until the date judgment is entered;

3.     Rescission of the Claimants' investments pursuant to Cal. Corps. Code Section 25501, which entitles Claimants to receive the purchase price of the subject security plus interest thereon at the legal rate;

4.     Consequential damages relating to Claimants' loss of reputation, business

and ongoing management fees;

     5.     Reasonable and necessary attorneys fees, costs and expenses; and,

     6.     Such other and further relief as the Panel deems appropriate under the

circumstances.

Claimants demand a hearing on the issues set forth above.

DATED: January 28, 2008              BALDWIN LAW GROUP

                                    *By:* _____

                                      PATRICK BALDWIN, ESQ.
                                      CHRISTOPHER P. MADER, ESQ.
                                      Attorneys for Claimants
                                      Lobdell Capital Partners LP and
                                      Lobdell Capital Management LLC

## Interest Calculation for Claim of Lobdell Capital Partners

Principal Amount of Claim:                    $1,884,944

Interest Rate:                                10%

Period:                                       May 7, 2005 to January 28, 2009


**Total Accrued Interest:**                   **$703,880.00**

**EXHIBIT 2**

### Declaration of Martin Lobdell

I, MARTIN LOBDELL, pursuant to 28 U.S.C. § 1746, declare as follows:

1.    I am 37 years old and reside in San Francisco, California. I am currently employed as the Managing Director of Lobdell Capital Management LLC ("Lobdell Capital"). I make this declaration to set forth my dealings with Jon E. Hankins ("Hankins"), Tenet Asset Management, LLC ("Tenet"), Tenet Capital Partners Convertible Opportunities Fund, LP ("Convertible Opportunities Fund"), and Tenet Offshore Capital Partners, Ltd. ("Offshore Capital Partners").

2.    I first learned of the Convertible Opportunities Fund in or around February or March 2005 through Isela Rosales ("Rosales"), an employee of Lobdell Capital, who learned of the fund through a network of other investors and through industry databases.

3.    It is my understanding that Hankins is the investment manager of the Convertible Opportunities Fund and the Offshore Capital Partners (together, the "Funds"), which are both hedge funds.

4.    In or around February or early March 2005, Rosales emailed Hankins and requested he provide me with information about the Convertible Opportunities Fund.

5.    On March 3, 2005, Hankins emailed Rosales information about the Convertible Opportunities Fund, including a private placement memorandum relating to the Convertible Opportunities Fund, a limited partnership agreement, a subscription agreement relating to the Convertible Opportunities Fund, and a Tenet marketing handout indicating that the Convertible Opportunities Fund had 32.53% return in 2004. Attached as Ex. A are true and accurate copies of Hankins' email to Rosales, dated March 3, 3005, and the attached offering documents and marketing material.

6.      On March 4, 2005, Hankins emailed Rosales stating that the Convertible
Opportunities Fund currently had $34 million in equity, the Offshore Capital Partners
currently had $7.25 million in equity, and Hankins had managed other accounts valued at
$7.5 million.  Hankins attached a spreadsheet showing the Convertible Opportunities
Fund had a 32.54% rate of return in 2004.  Attached as Ex. B is a true and accurate copy
of the email Hankins sent to Rosales, dated March 4, 2005.

7.      On April 12, 2005, Hankins emailed Rosales stating that the Convertible
Opportunities Fund had a 1.44% return in January 2005, a 7.16% return in February
2005, and a 3.94% return in March 2005.  Attached as Ex. C is a true and accurate copy
of the email Hankins sent to Rosales, dated April 12, 2005.

8.      On May 3, 2005, Hankins emailed Rosales Tenet's due diligence report, monthly
attribution report, reference list, and Tenet contact information.  Attached as Ex. D is a
true and accurate copy of the email Hankins sent Rosales, dated May 3, 2005, and the
attached documents.

9.      On May 6, 2005, Hankins emailed me a copy of his trading strategy for the
Convertible Opportunities Fund.  Attached as Ex. E is a true and accurate copy of the
email and attachment that I received from Hankins on May 6, 2005.

10.     On May 6, 2005 Hankins faxed me a copy of a side letter, dated May 1, 2005,
executed by Hankins and Lobdell Capital, waiving the Convertible Opportunities Fund's
one-year lock-up period for investments ("Side Letter").  Attached as Ex. F is a true and
accurate copy of the Side Letter I received from Hankins, dated May 6, 2005.

11.     Prior to Lobdell Capital making an investment in the Convertible Opportunities
Fund, I requested Hankins provide me with a copy of the Convertible Opportunities

2

Fund's 2004 audited financial statements, and Hankins said he would send it when
completed.

12.     On or about May 6, 2005, Lobdell Capital invested $3,600,000 in the Convertible
Opportunities Fund.  Attached as Ex. G is a letter from Olympia Capital Associates, LP
("Olympia"), the Funds' administrator, dated May 9, 2005, confirming Lobdell Capital's
$3,600,000 investment in the Convertible Opportunities Fund.

13.     On May 9, 2005, Hankins emailed Erin Hattersley ("Hattersley"), an employee of
Lobdell Capital, and confirmed he received a wire transfer of $3.6 million from Lobdell
Capital.  Attached as Ex. H is a true and accurate copy of the email Hankins sent to
Hattersley, dated May 9, 2005.

14.     On May 9, 2005, I sent an email to Hankins requesting copies of the Convertible
Opportunities Fund's 2004 audited financial statements, monthly attribution of returns,
and a portfolio snapshot.  Attached as Ex. I is a true and accurate copy of the email I sent
Hankins, dated May 9, 2005.

15.     On May 16, 2005, Hankins emailed me the Funds monthly attribution which
stated the Funds had a 1.51% return in April 2005.  Attached as Ex. J are true and
accurate copies of the email and attachment I received from Hankins, dated May 16,
2005.

16.     On May 16, 2005, Hankins faxed me a copy of the Offshore Capital Partners'
portfolio snapshot as of May 10, 2005.  Attached as Ex. K is a true and accurate copy of
the fax I received from Hankins, dated May 16, 2005.

17.     On May 18, 2005, Hankins informed me that he sent me copies of the Convertible
Opportunities Fund's 2004 audited financial statements and information on convergences

3

by Federal Express ("First Federal Express Package"). On May 22, 2005, I emailed

Hankins to follow up on the status of the First Federal Express Package, and asked if he

could fax me the documents. Attached as Ex. L is a true and accurate copy of this email I

sent to Hankins, dated May 22, 2005.

18.     On May 25, 2005, Hankins informed me that he sent me the Convertible

Opportunities Fund's 2004 audited financial statements on May 24, 2005 by Federal

Express ("Second Federal Express Package").

19.     I have not received the First Federal Express Package or the Second Federal

Express Package that Hankins said he sent to me.

20.     On May 24, 2005, Hankins faxed me a copy of the Convertible Opportunities

Fund's 2004 audited financial statements ("First Audit Fax"). However, the First Audit

Fax was missing pages 3, 4, 5, and 8 of the audit report. Attached as Ex. M is a true and

accurate copy of the First Audit Fax.

21.     On May 24 or May 25, 2005, I informed Hankins that the First Audit Report was

missing pages 3, 4, 5, and 8 of the audit report. Hankins again faxed me a copy of the

Convertible Opportunities Fund's 2004 audited financial statements, which included

pages 5 and 8, but was missing pages 3 and 4 ("Second Audit Fax"). Attached as Ex. N

is a true and accurate copy of the Second Audit Fax. Page 8 of the Second Audit Fax was

illegible. On May 25, 2005, I emailed Hankins to inform him that the Second Audit Fax

was still missing pages 3 and 4 and that page 8 was illegible. Attached as Ex. O is a true

and accurate copy of the email I sent Hankins on May 25, 2005.

22.     On May 25, 2005, Hankins emailed Chris Smith ("Smith"), an employee of

Lobdell Capital, a scanned copy of page 8 of the Convertible Opportunities Fund's 2004

4

audited financial statements ("Third Audit Fax"). Attached as Ex. P is a true and
accurate copy of the Third Audit Fax. Page 8 of the Convertible Opportunities Fund's
2004 audited financial statements stated that the fund had a total return after reallocation
to general partner of 32.4% in 2004. On May 25, 2005, Smith emailed Hankins about the
status of pages 3 and 4 of the audit report. On May 25, 2005, Hankins emailed Smith that
he was scanning those pages. Attached as Ex. Q is a true and accurate copy of Smith's
email to Hankins, dated May 25, 2005, and Hankins' email to Smith, dated May 25,
2005.

23.     On May 26, Hankins sent me a copy of pages 3 and 4 of the Convertible
Opportunities Fund's 2004 audited financial statements. Attached as Ex. R is a true and
accurate copy of the May 26, 2005 email from Hankins. Page 3 of the Convertible
Opportunities Fund's 2004 audited financial statements listed the fund's investment
income, expenses, and net investment income. Page 4 stated the fund had $23,890,000 in
Capital Contributions, $645,000 in Capital withdrawals, and a total Partners Capital of
$31,222,181.

24.     Hankins did not ever tell me that the Convertible Opportunities Fund's 2004
audited financial statements that he sent to Lobdell Capital had been altered in any way.

25.     On May 26, 2005, I sent a letter to Hankins and Olympia to redeem 100% of
Lobdell Capital's interest in Convertible Opportunities Fund as of May 31, 2005.
Attached as Ex. S is a true and accurate copy of Lobdell Capital's letters to Hankins
requesting redemption of Lobdell Capital's investment in the Convertible Opportunities
Fund, dated May 26, 2005.

26.     On June 1, 2005, Hankins faxed me the following documents: a letter dated June 1, 2005, from Tenet addressed to Olympia authorizing Lobdell Capital's redemption of its investment; and the Side Letter. On June 1, 2005, Melanie Westcott ("Westcott"), an employee of Olympia, confirmed by email that Olympia received these documents. Attached as Ex. T is a true and accurate copy of the documents Hankins sent to me on June 1, 2005, and Westcott's email confirming receipt of those documents, dated June 1, 2005.

27.     On June 1, 2005, Smith emailed Westcott to confirm that Olympia wired out Lobdell Capital's redemption and the amount of the redemption. Westcott replied by email on June 1, 2005 that Hankins had instructed Olympia to not wire out any funds until Hankins consulted with his attorney. On June 2, 2005, I received an email from Mariclena Recine ("Recine"), an employee of Olympia, that Hankins had to wire Olympia funds before Olympia could make any payments. Attached as Ex. U is a true and accurate copy of Smith's email to Westcott, dated June 1, 2005, Westcott's email to Smith, dated June 1, 2005, and the email I received from Recine, dated June 2, 2005.

28.     On or about June 3, 2005, Hankins he told me the Convertible Opportunities Fund had a positive return for the month of May 2005.

29.     On June 7, 2005, Hankins emailed Recine and copied me on the email, that Hankins instructed Banc of America Securities ("BOA") to wire funds to Olympia's account today to cover a portion of Lobdell Capital's redemption. On June 8, 2005, Hankins faxed me a letter from Tenet, addressed to BOA, dated June 7, 2005, requesting $3,000,000 be wired to Olympia. Attached as Ex. V and W are true and accurate copies

6

of Hankin's email to Recine, dated June 7, 2005, and Hankins' fax to me dated June 8,

2005.


I declare under penalty of perjury that the foregoing is true and correct.


Executed: San Francisco, California
Date: June 16, 2005

Martin Lobdell


7

**EXHIBIT 3**

# THE SECURITIES LAW GROUP LLP

### 388 MARKET STREET, SUITE 400
### SAN FRANCISCO, CA 94111

JAMES E. GRAND
ATTORNEY AT LAW

D: (415) 354-2852
F: (415) 354-2882

JGRAND@TSLG-LAW.COM

SAN FRANCISCO
T: (415) 623-2770

LOS ANGELES
T: (310) 691-8653

TOLL FREE (WITHIN THE U.S.)
T: (877) 516-8070

WEB: WWW.TSLG-LAW.COM

October 27, 2005

*VIA FACSIMILE AND OVERNIGHT DELIVERY*

Susan Brune
Brune & Richard LLP
80 Broad Street
New York, NY 10004

Dear Ms. Brune:

I write this letter to serve notice that we believe certain actions by you and by attorneys for Golden Gate Financial Group LLC et al ("Golden Gate or "Petitioners")[1], Patrick Baldwin, Esq. and George Eshoo, Esq., constitute violations of Rule 11 (the "Rule") under the Rules of Federal Procedure for which we are prepared to intervene in this matter and file a motion for sanctions unless they are immediately remedied.

Our first concern is that the above-referenced Memorandum in Opposition was submitted unsigned to you by Petitioners' attorneys despite their clear intention that it would ultimately be filed with the U. S. District Court. Separately, we are concerned that you would submit Petitioners' unsigned memorandum to the Court in support of your most recent declaration and report. If this was simply an oversight we would not be raising this issue. However, the fact that the Memorandum in Opposition contains such serious and baseless claims <u>and</u> it was unsigned leads us to conclude that the lack of signatures was not a mere oversight. Rather, it appears to be an intentional maneuver by Mssrs. Baldwin and Eshoo to distance themselves from potential claims for libel and sanctions under Rule 11.[2]

---

[1] The various petitioners are in reality just one petitioner, Golden Gate Financial Group LLC. Verona Partners LLC, Multi Strategy Fund LP, Golden Gate Strategy Offshore Fund Ltd., and Orion VP Absolute Return Fund LP are affiliated vehicles in each case sponsored by Golden Gate Financial Group LLC.

[2] We do not allege that Brune & Richard had any improper motives in filing the unsigned document. We also do not address the question, however, of whether Brune & Richard may itself be subject to sanctions under the Rule for its failure to make a reasonable investigation of the facts and the law before submitting this paper.

Under Section 11(a) of the Rule, every pleading, motion, or other paper presented to a federal district court in a civil action must be signed. The Memorandum in Opposition is a "paper" within the meaning of the Rule. It was intended to be, and was, filed with a federal district court. Its signature block contains a line for the signature each of the Petitioner's attorneys, followed in each case by the attorneys' typewritten name. The lines for the attorneys' signatures are blank. A typed name is not sufficient to meet the requirements of the Rule. Giebelhaus v. Spindrift Yachts, 938 F.2d. 962, 966 (9th Cir. 1991) (rule "contemplates greater assent ... than is evidenced by a typewritten name"). As the Memorandum in Opposition is a paper within the meaning of the Rule, and it is unsigned, it was filed with a federal district court in violation of Rule 11(a).

An unsigned document must be stricken if it is not corrected promptly after the attorney or party has been informed of the omission. Fed. R. Civ. P. 11(a). By this notice, I am asking that you strike the Memorandum in Opposition or that Petitioners' attorneys each promptly sign the Memorandum in Opposition. If the signatures are forthcoming, kindly forward the signed copy to my attention as soon as possible.

Before the Petitioners' attorneys sign and refile this document, they should be advised that they will be certifying and refiling a document which we believe violates Rule 11(b) for which we also may intervene and move for sanctions. Rule 11 places an affirmative duty on attorneys and litigants to make a reasonable factual investigation of the facts and the law before signing and submitting any pleading, motion or other paper. Fed. R. Civ, P. 11(b). Attorneys and parties are required to "think first and file later." Stewart v. RCA Corp., 790 F.2d 624, 633 (7th Cir. 1986) (requirements of Fed. R. Civ. P. 11 discussed on appeal affirming sanctions decision). They may not "drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation." Land v. Chicago Truck Drivers Union, 25 F.3d. 509, 517-18 (7th Cir. 1994) (reasonable investigation would have revealed no legal basis for asserting claim). See also, Coonts v. Potts, 316 F.3d. 745, 753-754 (8th Cir. 2003) (district court did not abuse its discretion in assessing sanctions against attorney when it found that claims were not warranted under applicable law).

Rule 11 also requires that an attorney who presents a pleading, motion or other paper to a federal district court by signing, filing, submitting, or later advocating it certifies, among other things, that its factual contentions have, or likely will have, evidentiary support. Fed. R. Civ. P. 11(b)(3) (emphasis added). An attorney may be sanctioned for presenting a claim that does not have evidentiary support. Id. See also, John v. Barron, 897 F.2d. 1387, 1391 (7th Cir. 1990) (no evidence was set forth of alleged conspiratorial meetings to support claim of alleged participation in conspiracy); West Coast Theatre Corp. v. City of Portland, 897 F.2d. 1519, 1528 (9th Cir. 1990) (plaintiffs never presented any evidence to support their claim).

The Petitioners assert a number of facts in the Memorandum in Opposition which are utterly baseless and they know to be false. What the Petitioners present under the

THE SECURITIES LAW GROUP LLP

caption "FACTUAL BACKGROUND" is notable for its absence of single fact in support of the memorandum's allegations. Rather it contains innuendo and assumptions, and even these are carefully couched in such language as "it appears," "ostensibly," "effectively," etc. The filing of this document and the making of such serious and false allegations is beyond frivolous. I was advising Mr. Lobdell during most of the period during which the Petitioners variously allege that he entered into a conspiracy with Jon Hankins ("Hankins") and committed fraud. I have first hand knowledge of Mr. Lobdell's actions and intentions during late May and early June. As an officer of the court, I can tell you that Petitioners' conspiracy theories and claims are absurd and unsupported by any facts or the reasonable interpretation of any facts.

Among other things, Petitioners assert that "the timing of the Lobdell side agreement alone would indicate that Lobdell had information of Tenet's fraud when it entered into the side agreement." It is nonsensical to aver that Mr. Lobdell invested $3.6 million in Tenet Capital Partners Convertible Opportunity Fund, LP (the "Fund") knowing at the time that Hankins was losing massive sums and lying to the Fund's investors to cover it up. Golden Gate was one of the investors that introduced Hankins to Mr. Lobdell and it served as a positive reference for Hankins during the course of Lobdell's due diligence in connection with its investment in the Fund. Mr. Lobdell's telephone records show that he and Golden Gate spoke about the Lobdell investment in the Fund as late as April 29, 2005.

Petitioner further alleges that after Mr. Lobdell discovered Hankins' lies, he sold his silence to Hankins with "the intended result ... that Hankins could continue unabated with its fraudulent activity.". Not only is this untrue, it is plainly contradicted by the pleadings and materials attached to your filings which were available for inspection by the Petitioners' attorneys if they had made even a cursory effort to review it. Mr. Lobdell redeemed because throughout May 2005 he was receiving unsatisfactory and incomplete answers to a number of generally routine questions that he put to Hankins in the course of his usual post-investment diligence.

When Mr. Lobdell submitted the redemption notice he did not know the Fund's financial statements had been falsified or that the Fund had suffered the large losses that later came to light. He began to probe further in early June only after he again was receiving incomplete and contradictory information from Hankins and Olympia Capital ("Olympia Capital"), the Fund's administrator, concerning the arrangements for wiring of Lobdell's redemption proceeds.

Contrary to the Petitioners' allegations, Mr. Lobdell made no effort to conceal his actions. Quite the contrary, he concurrently submitted his redemption notice to Hankins and Olympia Capital. Olympia Capital acknowledged receipt of Mr. Lobdell's redemption notice and requested a copy of the side letter, which it independently reviewed. By email to Mr. Lobdell on May 26, 2005 at 12:57 p.m., Olympia Capital stated: "I confirm receipt of the [Lobdell] redemption request dated May 26 for the full

redemption from the [Fund]. I will confirm acceptance, once I receive the side letter."
The following day, after receiving a copy of the side letter from Hankins, Olympia
Capital sent an email to Lobdell which states, in relevant part, "I confirm receipt and
acceptance of your redemption notice date 5/26/05, relating to the 100% redemption of
your interests in the [Fund]" (email from Olympia Capital to Lobdell dated May 27, 2005
at 7:34 a.m.).

Contrary to Petitioners' allegations, Mr. Lobdell never sought or demanded the
return of his original investment; he sought the redemption of his capital account as of the
end of May in accordance with the terms of the partnership agreement as supplemented
by the side letter. See Memorandum in Opposition, p. 2 at lines 20-32 ("it appears that
sought to pursue the matter of Tenet's falsification of audit reports unless Tenet permitted
Lobdell to exercise its alleged special withdrawal rights (effectively returning Lobdell's
investment at the expense of the remaining investors)"). Mr. Lobdell never sought the
return of its "investment." Mr. Lobdell's redemption notice and every piece of
correspondence that followed sought redemption of Lobdell's capital account. Mr.
Lobdell (and I) were led to believe at that time that its capital account was approximately
equal to its investment. Mr. Lobdell had no knowledge of the losses that occurred during
May. I personally spoke with various persons at Olympia Capital and Banc of America
in early June when the redemption was due to be paid. In response to my questions about
this, the responses from Olympia Capital and Banc of America were consistent with Mr.
Lobdell's expectations that his capital account as of May 31 was approximately equal to
its original investment. In the course of multiple telephone conversations with both
service providers (according to my notes I had four telephone calls with Olympia Capital
and two telephone calls with Banc of America), I received absolutely no indication that
the Fund had suffered material losses during May 2005.

Finally, Petitioner alleges (also without any factual basis) that Mr. Lobdell
"privately" confronted Hankins about the situation and "entered into a conspiracy ...."
This statement could not be further from the truth. In fact, it is the exact opposite of what
happened. On Mr. Lobdell's behalf, in early June I brought the Fund's financial
statements to the attention of the auditor, Rothstein Kass, and determined that they had
been falsified. Far from keeping the situation private, with Mr. Lobdell's permission
(which permission was immediately forthcoming), I immediately informed Olympia
Capital and Banc of America (in that order) that the Fund's audited financials had been
falsified and, immediately after hanging up from my telephone conversations with Mr.
Robert Sollazzo (Associate Director, Banc of America, New York) and Mr. Michael
Rogers (Banc of America, Chicago), I contacted Mr. John Nowak at the U.S. Securities
and Exchange Commission. Shortly thereafter, Mr. Lobdell himself contacted Golden
Gate. The very next day, the auditor sent an email to all of the Fund's investors
informing them that it had resigned and its audit reports should not be relied upon. I state
categorically that there was absolutely no effort whatsoever to conceal these facts or to
exploit them for Mr. Lobdell's benefit. To the contrary, I advised Mr. Lobdell not to
have any telephone or email contact with Hankins once I learned that the financial

THE SECURITIES LAW GROUP LLP

statements had been falsified and, to the best of my knowledge, he accepted this advice and had no such contact.

In closing, there are two ironies in all of this:

First, contrary to Golden Gate's absurd claims to the contrary, Mr. Lobdell was speaking with various parties at Golden Gate throughout June. Indeed, Mr. Lobdell contacted Golden Gate's president, Thomas Halen, by telephone on June 10, after we learned of the problems with the Fund's financial statements. This was one of many calls Mr. Lobdell made to Golden Gate in June to let them know what was going on as the Hankins situation continued to evolve. On several occasions, Golden Gate expressed its gratitude to Mr. Lobdell for keeping him apprised. In my view, these documentable facts, which were available to Petitioners' attorneys if they had taken the trouble to look for them, are possibly the strongest grounds for sanctions.

Second, it seems to me that Golden Gate should be thankful that Mr. Lobdell and other diligent investors acted as they did. If Mr. Lobdell had not acted in this case (along with a handful of other diligent investors) and instead did absolutely nothing like Golden Gate, there's no telling how much larger the losses could have been for all investors, including Golden Gate. What would have happened if my client did not put in his redemption notice, bring the matter to the attention of the Fund's auditor, bring the matter to the attention of the U.S. Securities and Exchange Commission and cooperate in its early investigation? As we all know now, the Fund held a massive short position in Google and the price of Google's common stock has gone up from $289.30 on June 22, 2005, the date of the Order, to $355.44 at the close of business today. When you factor in the level of margin that the Fund was employing at the inception of the receivership, the total loss in Google would be negative 102.9%—that is; the Fund's assets would have been completely wiped out.

I do not wish to dignify the Petitioners' frivolous and unfounded allegations of fraud, unclean hands, breach of fiduciary duty, tortious interference, unjust enrichment or conspiracy with a specific reply. If they wish to stand behind these claims, at the very least they must sign the Memorandum in Opposition and refile it. If they wish to avoid our motion for sanctions under Fed. R. Civ. P 11(c), I suggest they amend the Memorandum in Opposition to include facts in support of their allegations, which facts are wholly absent from unsigned document.

THE SECURITIES LAW GROUP LLP

As always, we appreciate your consideration of our position.  Please let me know by Monday, October 31, whether Brune & Richard intends to strike the Memorandum in Opposition or refile it and, if you elect to refile it, kindly provide me with a copy of the signed filing.

Sincerely yours,

THE SECURITIES LAW GROUP LLP

By:    James E. Grand, Esq.
       Counsel for Lobdell Capital
       Management, LLC

**NOTE:  Except as to facts specifically set forth herein, no waiver of the attorney-client privilege is intended or implied.**

cc:    M. Lobdell

Patrick Baldwin, Esq. (via Overnight Delivery)
Baldwin and McNamara
530 Oak Grove Ave., Suite 207
Menlo Park, CA 94025

George Eshoo, Esq. (via Overnight Delivery)
Law Offices of George Eshoo
702 Marshall Street, Suite 500
Redwood City, CA 94063

U.S. Securities and Exchange Commission (via Overnight Delivery)
ATTN:  Mr. Scott Black
3 World Trade Center
New York, NY 10281

**EXHIBIT 4**

## Lobdell Addendum

I, MARTIN LOBDELL, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I make this addendum to my declaration dated June **16**, 2005 to set forth additional information concerning my dealings with Jon E. Hankins ("Hankins"), Tenet Asset Management, LLC ("Tenet"), Tenet Capital Partners Convertible Opportunities Fund, LP ("Convertible Opportunities Fund"), and Tenet Offshore Capital Partners, Ltd. ("Offshore Capital Partners")(collectively, the "Funds").

2.      On or around May 25, 2005, after reviewing a portfolio snapshot for Offshore Capital Partners, I had a phone conversation in which I questioned Hankins regarding the portfolio snapshot. I asked Hankins why the options positions did not match with the short equity positions, as described in the investment strategy contained in the offering memorandum of the Convertible Opportunities Fund, as supplemented with the Convertible Opportunities Fund's written marketing presentation and various verbal representations. Hankins said that the snapshot contained only the larger positions in Offshore Capital Partners. Hankins assured me that its equity positions were fully hedged.

3.      In April and May 2005, I had various conversations with Hankins, in which he stated that the Funds' investments were diversified, and no one equity investment was more than five percent of the Funds' assets. In these conversations, Hankins also stated that (i) the Fund had strict limits on exposure to companies (5% maximum limit) and sectors (20% maximum limit); and (ii) the ratio of the long and short option and equity positions held for each issuer was always managed so that the set-ups (combination of positions) for each issuer were delta neutral (fully hedged).

4.     In May 2005, I requested a copy of the audited financial statement for the Convertible Opportunities Fund to confirm, among other things, that the Convertible Opportunities Fund had earned a 32% gain in 2004.

5.     In early June 2005, I had a conversation with Hankins following up on Lobdell Capital Partners LP's request to redeem its investment in the Convertible Opportunities Fund. I told Hankins that if Lobdell Capital did not have all of its investment returned in accordance with the terms of its agreement of limited partnership, as supplemented by our side letter and Hankins' assurances that the redemption notice was received and accepted, I would have to pursue this matter immediately, including "getting to the bottom of" all my questions with respect to the audit report.

     I declare under penalty of perjury that the foregoing is true and correct.

Executed: San Francisco, CA
Date: June 20, 2005

_____
Martin Lobdell

**EXHIBIT 5**

MARK K. SCHONFELD (MS-2798)
REGIONAL DIRECTOR

Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Northeast Regional Office
3 World Financial Center
Room 4300
New York, New York 10281

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                        Plaintiff,

-against-

JON E. HANKINS,
TENET ASSET MANAGEMENT, LLC, and
TENET CAPITAL PARTNERS CONVERTIBLE
OPPORTUNITIES FUND, LP,

                        Defendants.

---

JUDGE WOOD

# 05 CV 5808

05 Civ. ____ ( )

COMPLAINT



RECEIVED
JUN 2 2 2005
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff Securities and Exchange Commission ("Commission") brings this emergency

action to halt fraud by a hedge fund that is now seeking to improperly distribute assets to cover

up its misconduct. For its Complaint against Defendants Jon E. Hankins ("Hankins"), Tenet

Asset Management, LLC ("Tenet"), and Tenet Capital Partners Convertible Opportunities Fund,

LP ("Convertible Opportunities Fund") (collectively, the "Defendants"), the Commission alleges

as follows:

## SUMMARY

1.     The Commission brings this emergency action against Tenet, an investment

adviser, Hankins, its principal, and Convertible Opportunities Fund, one of two hedge funds that

maintain portfolios that Hankins, through Tenet, currently manages as its investment adviser.

The Defendants, among other things, concealed, and are continuing to conceal, from investors

large investment losses and are now seeking to unfairly honor a redemption request at inflated

values to cover up the fraud.

2.     Hankins and Tenet have recently made numerous false statements to investors of

the Convertible Opportunities Fund, as well as to investors in Tenet Offshore Capital Partners

Ltd. ("Offshore Capital Partners") (collectively, the "Funds").  In addition, from May to June 6,

2005, Hankins and Tenet managed the portfolio of another hedge fund, Cascade Fund, LLP

("Cascade"), and made misrepresentations to Cascade's principal.

3.     Within the last four months, in an effort to raise new capital for the Funds,

Hankins met with investors and made false representations concerning Tenet's investment

strategy and the Funds' performance.  Hankins also provided investors with deceptive and false

marketing materials that, among other things, grossly misrepresented the performance of the

Convertible Opportunities Fund during the period April through December 2004.  While the

marketing materials for the Convertible Opportunities Fund reflected a gain of more than 32%

during that period, the Convertible Opportunities Fund's audited financial statements for that

period reflect that the fund returned a 24% loss during the period.

4.     In addition, as recently as May 25, 2005, Hankins distributed to at least one

investor altered audited financial statements for 2004 for the Convertible Opportunities Fund.

The altered 2004 audited financial statements: (a) concealed the fund's reported $1.4 million net

2

loss in 2004; (b) falsely stated that the fund had net assets of $31.2 million when, in fact, it reported only $4.2 million; and (c) falsely stated that the fund earned 32.4% in investment returns when, in fact, it reported a 24.5% loss.

5.      By making these misrepresentations and providing false documents, the Defendants have concealed from investors losses and risky trading strategies. In April and May 2005, the Funds' accounts incurred enormous losses as a result of large, naked short positions that Hankins had placed in Google, Inc. ("Google") stock. During this time period, the price of Google stock increased, and as a result, the net value of the Funds decreased by approximately 20% in April 2005 and 40% in May 2005, by which time the Funds had incurred more than $72 million in liabilities due to having borrowed Google stock to engage in short selling. In fact, the Funds' positions in Google accounted for virtually all of the Funds' liabilities during that two-month time period. Moreover, since inception, the Funds lost a total of approximately $20 million on Google short sales. As of May 31, 2005, the net asset value in the Funds' accounts was approximately $9.9 million (Convertible Opportunities Fund) and $5.4 million (Offshore Capital Partners). The Funds continue to hold large naked short positions in Google stock.

6.      The Defendants are also seeking to improperly distribute assets to cover up the fraud. Recently, to assuage the concerns of one investor, Hankins requested that the Funds' prime broker redeem this investor's funds from the Convertible Opportunities Fund's account (a total of $3 million) at a level of redemption inconsistent with the losses incurred in the fund's accounts. Although the prime broker has not acted on Hankins' request, there is no guarantee that it will refrain from honoring future requests, nor is it obligated to do so. Moreover, Hankins' recent request suggests that he may likely attempt to make additional, improper distribution requests, and by doing so, will leave empty-handed the last investors to seek a

3

withdrawal.

7.      Given this alarming redemption request, and the other recent misrepresentations described above, the Commission brings this action to: (i) halt such ongoing fraudulent activity, and (ii) appoint a temporary and preliminary receiver over Tenet and the Convertible Opportunities Fund to, among other things, review Tenet and the Convertible Opportunities Fund's records, secure the remaining value of client accounts, address client inquiries, and perform an accounting of funds. The appointment of a temporary and preliminary receiver would also prevent the Defendants from moving or dissipating assets from the Convertible Opportunities Fund and Tenet. In addition, the Commission brings this action to obtain temporary, preliminary and permanent injunctions preventing further violations of the antifraud provisions of the federal securities laws, disgorgement, prejudgment interest thereon, and civil penalties, and to obtain other equitable relief.

## **VIOLATIONS**

8.      By virtue of the conduct alleged herein:

     a.    The Defendants, directly or indirectly, singly or in concert, have engaged and are engaging in acts, practices and courses of business, that constitute violations of Section 17(a) of the Securities Act of 1933 (the "Sec urities Act"), 15 U.S.C. § 77q(a).

     b.    The Defendants, directly or indirectly, singly or in concert, have engaged and are engaging in acts, practices and courses of business that constitute violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Ex change Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

c.    Hankins and Tenet, directly or indirectly, singly or in concert, have

engaged and are engaging in acts, practices and courses of business, that

constitute violations of Sections 206(1) and 206(2) of the Investment

Advisers Act of 1940 (the "A dvisers Act"), 15 U.S.C. §§ 80b-6(1) and

80b-6(2).

Unless the Defendants are temporarily, preliminarily and permanently restrained and

enjoined, they will continue to engage in the acts, practices and courses of business set forth in

this Complaint and in acts, practices and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

9.    The Commission brings this action pursuant to the authority conferred upon it by

Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), Section 21(d)(1) of the Exchange Act, 15

U.S.C. § 78u(d)(1), and Section 209 of the Advisers Act, 15 U.S.C. § 80b-9, seeking to restrain

and enjoin permanently the Defendants from engaging in the acts, practices and courses of

business alleged herein.

10.    The Commission also seeks, as immediate relief, a temporary restraining order

and a preliminary injunction against the Defendants, the appointment of a temporary and

preliminary receiver over Tenet and the Convertible Opportunities Fund, verified accountings by

all Defendants, an order providing for expedited discovery, and an order prohibiting the

Defendants from destroying documents.

11.    Finally, the Commission seeks a judgment ordering the Defendants to disgorge

ill-gotten gains with prejudgment interest thereon, and ordering the Defendants to pay civil

money penalties pursuant to Section 20(c) of the Securities Act, 15 U.S.C. § 77t(c), and Section

21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).  Additionally, the Commission seeks a

judgment ordering Hankins and Tenet to pay civil money penalties pursuant to Section 209 of

the Advisers Act, 15 U.S.C. § 80b-9.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to Section 22(a) of the

Securities Act, 15 U.S.C. § 77v(a), Sections 21(e) and 27 of the Exchange Act, 15 U.S.C. §§

78u(e) and 78aa, and Section 214 of the Advisers Act, 15 U.S.C. § 80b-14.

13.     Venue lies in this District pursuant to Section 22(a) of the Securities Act, 15

U.S.C. § 77v(a), Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and Section 214 of the

Advisers Act, 15 U.S.C. § 80b-14.  Certain of the transactions, acts, practices and courses of

business alleged herein occurred in the Southern District of New York, including a meeting in

New York City between Hankins and an investor in the Convertible Opportunities Fund,

during which Hankins provided the investor with marketing materials that falsely represented

the value and investments of the Convertible Opportunities Fund and its past performance.

14.     The Defendants, directly and indirectly, have each made use of the means or

instrumentalities of interstate commerce, the means or instruments of transportation or

communication in interstate commerce, and/or the mails, in connection with the transactions,

acts, practices and courses of business alleged herein.

## THE DEFENDANTS

15.     **Hankins**, age 32, resides in Powell, Tennessee.  Hankins is the managing member

of Tenet, and he makes all of the investment decisions with respect to the Funds.  Prior to

founding Tenet in 2004, Hankins worked as a portfolio manager and as a registered

representative of various broker-dealers.  He has held Series 7, 63, and 65 securities licenses.

16.     **Tenet**, a Delaware limited liability corporation located in Knoxville, Tennessee,

6

is the Funds' investment adviser and is responsible for all of the Funds' investment decisions. Hankins is principal member, managing member and its controlling person. Tenet is also the sole general partner of the Convertible Opportunities Fund.

17.     **Convertible Opportunities Fund**, a Delaware limited partnership, is a hedge fund open to U.S. persons and entities, that commenced investment activities on April 1, 2004. Tenet is its general partner and investment adviser. Since inception, 17 investors have invested a net total of approximately $22 million. As of May 31, 2005, the fund had approximately $9.9 million in net assets.

## RELEVANT ENTITIES

18.     **Offshore Capital Partners**, a Cayman Islands company, is a hedge fund open to non-U.S. persons and U.S. tax-exempt entities. Tenet is its investment adviser. In March 2005, Offshore Capital Partners commenced investment activities, and since then, approximately eight investors have deposited a total of approximately $13 million, of which, approximately $5.5 million currently remain in net assets. It employs a similar investment strategy as that of Convertible Opportunities Fund. On June 8, 2005, Offshore Capital Partners' Board of Directors notified at least one shareholder that it would discontinue operations as of June 30, 2005, and that Tenet would liquidate all remaining portfolio positions by that time.

19.     **Olympia Capital Associates, LP** and **Olympia Capital (Cayman), Ltd.** (collectively, "Olympia"), are the administrators of the Convertible Opportunities Fund and Offshore Capital Partners, respectively, which provide administrative services to the Funds, such as sending investors monthly account statements.

7

## FACTS

### A.    The Funds

20.    Tenet is the Funds' investment adviser, and Hankins controls all operations and investment decisions of the Funds.  In May 2005, Hankins and Tenet also became investment adviser to at least one other hedge fund, Cascade.

21.    For compensation for managing the Funds, Hankins, directly or indirectly, receives a 0.25% quarterly management fee (approximately 1% annually) based on the Funds' net assets and a quarterly performance allocation of 20% of the Funds' net income.

22.    Between March 2004 and at least May 2005, Hankins and Tenet solicited investors to invest approximately $35 million in the Funds.  Since as recently as March 1, 2005, the Convertible Opportunities Fund and Offshore Capital Partners have raised approximately $16.4 million and $12.6 million from investors, respectively.

23.    The Convertible Opportunities Fund's February 1, 2005 Confidential Private Placement Memorandum and the Offshore Capital Partners' March 1, 2005 Confidential Private Placement Memorandum ("Memoranda") state that the Funds seek "consistent above average returns primarily through a combination of long-term and short-term investments to achieve capital appreciation, while also attempting to preserve capital and mitigate risk through diversification of investments and hedging activities."  The Memoranda state further that most of the Funds' assets would be invested in convertible bonds and equities with arbitrage investment strategies involving the simultaneous purchase of a convertible bond and the short selling of the underlying equity.

24.    Hankins explained Tenet's investment strategy for the Funds and Cascade in various marketing materials that he provided to investors.  According to these marketing

8

materials, Hankins and Tenet followed an investment strategy, referred to as "synthetic convertible bond arbitrage," which involves investments in treasury bills, short positions of equities, and call and put option positions in those same equities. These marketing materials informed investors that Tenet's strategy provided income with consistent returns in all types of markets and that Tenet hedged against directional bets in any one particular security.

25.     From at least April 1, 2005 to the present, Hankins and Tenet deviated substantially from their stated investment strategy in the Funds.

26.     In fact, the Funds incurred substantial losses since April 1, 2005 as a result of Hankins and Tenet's decision to take large, naked short positions in Google stock. Since April 1, 2005, the net value of the Funds decreased by approximately 20% in April 2005 and approximately 40% in May 2005. At the end of April and May 2005, the Funds held collective short positions of 201,500 and 260,091 Google shares, respectively. Despite the representations in the Funds' Offering Memoranda that the Funds' investment strategy was to "preserve capital and mitigate risk through diversification of investments and hedging activities," Hankins and Tenet took no steps to hedge against, or mitigate, the risk of increases in the share price of Google stock.

27.     In fact, the Funds' naked short positions in Google accounted for the vast majority of the Funds' liabilities. As of May 31, 2005, the Funds had a total of more than $72 million in liabilities due to having borrowed Google stock to sell it short. Since inception, the Funds have lost a total of approximately $20 million on Google short sales. As of June 15, 2005, the market value of the Funds' accounts was approximately $9.7 million (Convertible Opportunities Fund) and $5.5 million (Offshore Capital Partners).

9

**B.** **Hankins and Tenet Made False and Misleading Oral and Written Statements To Investors About The Funds' Performance and Investment Strategy**

28.     Within the last four months, Hankins has distributed to various investors false and misleading marketing materials.  During this period, Hankins has also made a series of false and misleading oral misrepresentations to investors.

29.     For example, since February 2005, Hankins distributed to at least four investors performance data showing that the Convertible Opportunities Fund had a 32.53% gain in 2004.  This performance data was false.  Given that Hankins made all investment decisions for the fund, Hankins knew or was reckless in not knowing that such data was false.

30.     In addition, in March 2005, the Convertible Opportunities Fund's auditor provided Hankins with its 2004 audited financial statements, which reported a 24% <u>loss</u> for 2004.  Shortly after receiving the audited financial statements, Hankins discussed with the Convertible Opportunities Fund's auditor that the fund reported a loss in 2004.

31.     On April 18, 2005, the Convertible Opportunities Fund's administrator, Olympia, warned Hankins in an email that the performance data in Tenet's marketing materials "do not reconcile with our numbers for the [Convertible Opportunities] Fund."

32.     In and around April and May 2005, Hankins orally told several of the Funds' investors, and provided them with Tenet's marketing materials stating, that the Funds' investments were diversified because no one equity investment was comprised more than five percent of the Funds' assets.  The marketing materials and Hankins also stated that the Funds held fully-hedged positions in their investments.  These statements were false and misleading.

33.     On May 16, 2005, Hankins sent to one investor certain marketing materials which stated, among other things, that the Funds had a positive return in April 2005.  This statement

10

was false and misleading. On June 3, 2005, Hankins told the same investor that the Convertible Opportunities Fund had a positive return in May 2005.

34.     Hankins knew or was reckless in not knowing that the statements above were false and misleading. At the time, the Funds' accounts held, and continue to hold, naked, un-hedged short positions in Google. On May 31, 2005, the Funds' positions in Google accounted for virtually all of the Funds' liabilities and represented more than 450% of the net market value of the Funds' equity. In April and May 2005, the Funds had approximate losses of 20% and 40%, respectively.

### C.     Hankins Provided An Investor with Falsified Financial Records

35.     In approximately May 2005, Hankins fraudulently altered certain financial records of the Funds and provided those altered records to an investor.

### i.     Falsified May 10, 2005 Position Statement

36.     On May 6, 2005, Lobdell Capital Management LLC ("Lobdell Capital") invested $3.6 million in the Convertible Opportunities Fund. On May 9, 2005, Martin Lobdell ("Lobdell"), Lobdell Capital's principal, requested that Hankins provide him with a copy of the Convertible Opportunities Fund's "portfolio snapshot," which is a listing of the fund's securities positions.

37.     On May 16, 2005, Hankins sent Lobdell a copy of Offshore Capital Partners' "portfolio snapshot" as of May 10, 2005. Not only did Hankins send Lobdell the "portfolio snapshot" of a different fund, but he also altered the "portfolio snapshot" to delete reference to a 96,996 share short position in Google with a corresponding liability of approximately $22 million. In addition, Hankins altered the "portfolio snapshot" to delete reference to the total short equity position showing an approximate $24 million liability.

11

38.    After Lobdell questioned Hankins about the document, Hankins said that the "portfolio snapshot" he sent was merely a representation of the larger positions in the fund. During this conversation, Hankins told Lobdell that all of the fund's positions were hedged.

39.    As of May 10, 2005, Google was the largest short equity position in the Funds, and it was not hedged. Accordingly, Hankins knew or was reckless in not knowing that the "portfolio snapshot" he sent to Lobdell contained false and misleading representations about the fund's performance.

### ii.    Falsified Audited Financial Statements

40.    During May 2005, Lobdell made repeated requests to Hankins for a copy of the Convertible Opportunities Fund's 2004 audited financial statements. On May 24 and 25, 2005, Hankins began faxing to Lobdell portions of the 2004 audited financial statements.

41.    Rather than faxing Lobdell a complete copy of the actual 2004 audited financial statements of the Convertible Opportunities Fund, Hankins altered key portions of the 2004 audited financial statements and sent it to Lobdell and Lobdell Capital. Hankins did not disclose to Lobdell or Lobdell Capital that Hankins had altered the 2004 audited financial statements.

42.    The altered audited financial statements: (a) concealed the fund's reported $1.4 million net loss; (b) falsely stated that the fund had net assets of $31.2 million when, in fact, it reported only $4.2 million; and (c) falsely stated that the fund earned 32.4% when, in fact, it reported a loss of 24.5%.

### D.    Hankins' Other Recent False Statements to Investors

43.    In April, May and June 2005, Hankins made other false and misleading statements to existing investors about the Funds' performance for those months.

44.    For example, Hankins made false and misleading statements to at least two of the

12

Funds' investors regarding the Funds' failure to distribute monthly account statements for April and May 2005.

45.     In May 2005, Steve Dabbah ("Dabbah"), representing himself and another investor, requested copies of the Funds' net asset value calculations for April 2005.  On June 6, 2005, Hankins told Dabbah that he could not provide monthly account statements for April and May 2005 because: (i) the Funds had recently changed prime brokers; (ii) there was a problem regarding the transfer of certain assets of the Funds; and (iii) the net asset value calculation could not be computed.  In particular, Hankins explained that there was a problem with respect to the transfer of a 3,800 share short position in Google stock in Offshore Partners Capital and a 6,200 short position in Google stock in the Convertible Opportunities Fund.  Hankins also said that these transfer problems made it difficult to calculate the Funds' net asset values.  Hankins knew or was reckless in not knowing that these statements were false and misleading.

46.     First, although the Convertible Opportunities Fund changed prime brokers in April 2005, neither the old nor the new prime broker had any problem or issue concerning the transfer of any of that fund's assets.

47.     Second, Offshore Capital Partners only had one prime broker; it never changed.

48.     Third, while Olympia prepared to distribute account information to investors of the Funds showing their net asset values and, consequentially, large losses in April 2005, Hankins refused to authorize Olympia to distribute the performance numbers.

49.     In addition to making false statements about his failure to provide account statements, on June 7, 2005, Hankins falsely assured Dabbah that the Funds had a positive gain in both April and May 2005.  As of June 7, 2005, however, Hankins knew that the Funds had suffered substantial losses in both April and May 2005.

13

50.      On June 9, 2005, when Hankins discussed the purported problems transferring Google short positions from one prime broker to another, Hankins falsely told Dabbah that the Funds had "closed out" their positions in Google in the middle of May 2005. Hankins knew or was reckless in not knowing that this statement was false and misleading. In fact, the Funds had not closed out their positions in Google. As of May 31, 2005, the Funds held a combined short position of 260,091 shares in Google stock.

**E.      Hankins Made False Statements About Investments For the Cascade Fund**

51.      Hankins also made false and misleading statements to Charles Bernard ("Bernard"), the President of Cascade, about Tenet's investment management of that fund.

52.      Bernard had access to Cascade's daily positions, and he quickly realized that Tenet's strategy of being short approximately 6,000 shares in Google was losing money. On or around May 17, 2005, Bernard contacted Hankins to question how a 6,000 share Google short position fit into Hankins' investment strategy, given that it was not hedged against the risk of any increase in Google's stock price. Hankins told Bernard that Cascade's account inaccurately reflected the true value of Cascade's investments. Specifically, Hankins stated that: (i) the trade blotter at the prime broker was allocated incorrectly between Cascade's account and the Funds' accounts, and instead of being short approximately 6,000 shares of Google, Cascade's account should be short only 500 shares and the other short shares properly belonged to the Funds; (ii) a call option in Google that would hedge against the risk that Google's price would increase should have been allocated to Cascade's account; and (iii) Cascade's account had actually gained between one and two percentage points since Tenet began managing Cascade. Hankins knew or was reckless in not knowing that these statements were false.

53.      Instead of gaining one to two percent as Hankins stated, Cascade lost

14

approximately $310,000, or 29% of its initial $1.05 million investment. On June 6, 2005, Bernard revoked Hankins' trading authority in Cascade.

**F.      Hankins' Recent Request For Redemption**

54.       On May 26, 2005, Lobdell Capital requested to redeem its interest in the Convertible Opportunities Fund as of May 31, 2005. In early June 2005, in a conversation regarding Lobdell Capital's redemption request, Lobdell told Hankins that, if Lobdell Capital did not have all of its investment returned, then Lobdell would immediately pursue his concern that Hankins had provided him with altered documents.

55.       Hankins then requested a redemption from the Funds' prime broker that would disadvantage the Funds' other investors. Specifically, on or around June 8, 2005, Hankins requested that the Funds' prime broker redeem $3 million from the Convertible Opportunities Fund as a redemption of Lobdell Capital's $3.6 million investment. This redemption request represents 83% of Lobdell Capital's $3.6 million investment. As noted above, however, the Convertible Opportunities Fund lost approximately 40% of its value during May 2005. Accordingly, the value of Lobdell Capital's net investment as of the end of May 2005 was approximately $2.16 million. A redemption of $3 million of Lobdell Capital's investment would disadvantage other investors by allowing Lobdell to take out of the fund more money than its investment is currently worth. This would leave less available funds in the Convertible Opportunities Fund's portfolio for the redemption of other investors, who have already suffered significant losses to their investments. Accordingly, the prime broker has not acted on Hankins' request.

**FIRST CLAIM FOR RELIEF**
**Violations of Section 17(a) of the Securities Act**
**(All Defendants)**

56.     Paragraphs 1 through 55 are realleged and incorporated by reference as if fully set forth herein.

57.     From at least February 2005 to the present, the Defendants, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by the use of the mails, directly and indirectly, have employed, and are employing, devices, schemes and artifices to defraud.

58.     From at least February 2005 to the present, the Defendants, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by the use of the mails, directly and indirectly, have obtained, and are obtaining, money and property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and have engaged, and are engaging, in transactions, practices or courses of business which have operated, and will operate, as a fraud and deceit upon investors.

59.     The Defendants knew, or were reckless in not knowing, that the representations and omissions set forth herein were false and misleading.

60.     By reason of the activities described herein, the Defendants have violated, and are violating, Sections 17(a) of the Securities Act, 15 U.S.C. §77q(a).

16

## SECOND CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### (All Defendants)

61.     Paragraphs 1 through 55 are realleged and incorporated by reference as if fully set forth herein.

62.     From at least February 2005 to the present, the Defendants, in connection with the purchase and sale of securities, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, or of the mails, have employed, and are employing, devices, schemes and artifices to defraud; have made, and are making, untrue statements of material fact, and have omitted, and are omitting, to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and have engaged, and are engaging, in acts, practices, and courses of business which operate as a fraud and deceit upon investors.

63.     Defendants knew, or were reckless in not knowing, that the representations and omissions set forth herein were false and misleading.

64.     By reason of the activities described herein, the Defendants have violated, and are violating, Section 10(b) of the Exchange Act, 15 U.S.C. §§78j(b), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder.

## THIRD CLAIM FOR RELIEF
### Violations of Sections 206(1) and 206(2) of the Advisers Act
### (Hankins and Tenet)

65.     Paragraphs 1 through 55 are realleged and incorporated by reference as if fully set forth herein.

66.     Hankins and Tenet, as investment advisers, directly and indirectly, by the use of the means and instrumentalities of interstate commerce or of the mails, have employed, and are

employing, devices, schemes and artifices to defraud investors of the Funds, and have engaged, and are engaging, in transactions, practices and courses of business which operate as a fraud and deceit upon the Funds' investors.

67.     Hankins and Tenet knew, or were reckless in not knowing, that the representations and omissions set forth herein were false and misleading.

68.     By reason of the activities described herein, Hankins and Tenet have violated, and are violating, Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2).

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Commission respectfully requests that the Court grant the following relief:

### I.

An Order temporarily and preliminarily, and a Final Judgment permanently, restraining and enjoining the Defendants, their agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

### II.

An Order temporarily and preliminarily, and a Final Judgment permanently, restraining and enjoining Hankins and Tenet, their agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction

by personal service or otherwise, and each of them, from future violations of Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2).

## III.

An Order directing each of the Defendants to file with this Court and serve upon the Commission, within three (3) business days, or within such extension of time as the Commission staff agrees to, a verified written accounting, signed by each Defendant under penalty of perjury, setting forth:

(1) All assets, liabilities and property currently held directly or indirectly by or for the benefit of such Defendant, including, but not limited to, bank accounts, brokerage accounts, investments, business interests, loans, lines of credit, and real and personal property wherever situated, describing each asset and liability, its current location and amount;

(2) All money, property, assets, and other income received by such Defendant, or for his or its direct or indirect benefit, in or at any time from April 1, 2004 to the date of the accounting, describing the source, amount, disposition and current location of each of the items listed;

(3) All assets, funds, securities, real or personal property of customers of such Defendant, transferred to or for the benefit of such Defendant in or at any time from April 1, 2004 to the date of the accounting, and the disposition by such Defendant of such assets, funds, securities, real or personal property;

(4) All money, property, assets and other income transferred from such Defendant, including transfers to any bank account, brokerage account or other account, or to any individual, or entity, in or at any time from April 1, 2004 to the date of the

accounting; and

(6)     The names and last known addresses of all bailees, debtors, and other persons and

entities which are currently holding the assets, funds or property of such

Defendant.

## IV.

An Order appointing a temporary and preliminary receiver over Tenet and the

Convertible Opportunities Fund to, among other things: (1) preserve the status quo; (2) ascertain

the financial condition of Tenet and the Convertible Opportunities Fund; (3) prevent further

dissipation of the Convertible Opportunities Fund's assets, to prevent loss, damage, and injury to

investors; (4) preserve Tenet's and the Convertible Opportunities Fund's books, records and

documents; and (5) be available to respond to investor inquiries.

## V.

An Order permitting expedited discovery.

## VI.

An Order enjoining and restraining each of the Defendants, and any person or entity

acting at their direction or on their behalf, from destroying, altering, concealing, or otherwise

interfering with the access of the Commission to relevant documents, books and records.

## VII.

A Final Judgment ordering each of the Defendants to disgorge their ill-gotten gains, plus

prejudgment interest, and such other and further amount as the Court may find appropriate.

**VIII.**

A Final Judgment ordering each of the Defendants to pay civil money penalties pursuant

to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange

Act, 15 U.S.C. § 78u(d)(3), and ordering the Hankins and Tenet to pay civil money penalties

pursuant to Section 209 of the Advisers Act, 15 U.S.C. § 80b-9.

**IX.**

Such other and further relief as this Court deems just and proper.

Dated:  New York, New York
      June 22, 2005

By: _____

      Mark K. Schonfeld (MS-2798)
      Regional Director
      Attorney for Plaintiff
      SECURITIES AND EXCHANGE
      COMMISSION
      3 World Financial Center, Room 4300
      New York, NY  10281
      (212) 336-1020

Of Counsel:
Helene Glotzer
Gerald Gross
Scott L. Black
John Nowak
Sheldon Mui
Anthony Byrne

**EXHIBIT 6**

**MARK K. SCHONFELD (MS-2798)**
**REGIONAL DIRECTOR**

**Attorney for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**Northeast Regional Office**
**3 World Financial Center**
**Room 4300**
**New York, NY 10281**
**(212) 336-1020**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

|  |  |  |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| -against- | : | |
| | : | **05 Civ. ____ (  )** |
| **JON E. HANKINS,** | : | |
| **TENET ASSET MANAGEMENT, LLC, and,** | : | |
| **TENET CAPITAL PARTNERS CONVERTIBLE** | : | |
| **OPPORTUNITIES FUND, LP,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

_____ :

**EMERGENCY APPLICATION FOR A TEMPORARY RESTRAINING**
**ORDER, PRELIMINARY INJUNCTION, ORDER TO SHOW CAUSE,**
**AND ORDER APPOINTING A RECEIVER AND GRANTING OTHER RELIEF**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, plaintiff Securities and

Exchange Commission ("Commission") hereby applies to this Court for an order:

(1)    directing defendants Jon E. Hankins ("Hankins"), Tenet Asset Management, LLC

("Tenet"), and Tenet Capital Partners Convertible Opportunities Fund, LP ("Convertible

Opportunities Fund") (collectively, the "Defendants") to show cause why an order should

not be entered, pending a final disposition of this action:

(a)    preliminarily enjoining

      i.    the Defendants from violating Section 17(a) of the Securities Act of 1933

          ("Securities Act"), 15 U.S.C. § 77q(a), Section 10(b) of the Securities

          Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78j(b) and Rule 10b-

          5 thereunder, 17 C.F.R. §§ 240.10b-5;

      ii.    Hankins and Tenet from violating Sections 206(1) and 206(2) of the

          Investment Advisers Act of 1940 (the "Advisers Act"), 15 U.S.C. §§ 80b-

          6(1) and 80b-6(2);

(b)    appointing a temporary receiver for Tenet and Convertible Opportunities Fund;

(c)    directing each of the Defendants to provide an accounting;

(d)    prohibiting the destruction, alteration, or concealment of documents; and

(2)    Pending adjudication of the relief described in paragraph (1) above, an Order:

      i.    temporarily restraining the Defendants from violating Section 17(a) of the

          Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15

          U.S.C. §78j(b) and Rule 10b-5thereunder, 17 C.F.R. §§ 240.10b-5;

      ii.    temporarily restraining Hankins and Tenet from violating Sections 206(1)

          and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2);

(e)    appointing a temporary receiver for Tenet and Convertible Opportunities Fund;

(f)    directing each of the Defendants to provide an accounting; and

(g)    prohibiting the destruction, alteration, or concealment of documents; and

(3)    providing that the Commission may take expedited discovery in preparation for a hearing

on this Order to Show Cause.

The grounds supporting this application are fully set forth in the accompanying

Memorandum of Law in Support of Plaintiff's Emergency Application for a Temporary

Restraining Order, Preliminary Injunction, Order to Show Cause, and Order Appointing a

Receiver and Granting Other Relief and the declarations Richard Anderson, Charles Bernard,

Steve Dabbah (including addendum), Thomas Damico, Kelly Easterling, Eric A. Elefante,

Martin Lobdell (including addendum), Robert Luzzo, Nancy Mishkin, George O'Kane, William

H. Price, and David Zandstra, and Anthony T. Byrne, and exhibits attached thereto.  A proposed

form of Order is filed herewith.

Dated:        New York, New York
              June 22, 2005

                                        Respectfully submitted,
                                        Mark K. Schonfeld (MS-2798)


                                        __s_____
                                        By Anthony Byrne (AB-7148)

                                        Securities and Exchange Commission
                                        3 World Financial Center, Room 4300
                                        New York, New York  10281-1022
                                        Telephone (212) 336-0040

                                        Attorney for Plaintiff

Of Counsel:
Helene T. Glotzer
Gerald A. Gross
Scott Black
John Nowak
Sheldon Mui

**EXHIBIT 7**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/23/05

———————————————————

SECURITIES AND EXCHANGE COMMISSION,  :

          Plaintiff,  :

        -against-  :

JON E. HANKINS,  :
TENET ASSET MANAGEMENT, LLC, and  :
TENET CAPITAL PARTNERS CONVERTIBLE  :
OPPORTUNITIES FUND, LP,  :

          Defendants.  :

———————————————————

05 Civ. 5808 ¼ (KMW)

## [~~Proposed~~] ORDER TO SHOW CAUSE, TEMPORARY RESTRAINING ORDER, AND ORDER APPOINTING A RECEIVER AND GRANTING OTHER RELIEF

Upon the application of plaintiff United States Securities and Exchange Commission (the "Commission") for an order:

(1)    Directing defendants Jon E. Hankins ("Hankins"), Tenet Asset Management, LLC ("Tenet"), and Tenet Capital Partners Convertible Opportunities Fund, LP ("Convertible Opportunities Fund") (collectively, the "Defendants") to show cause why an order should not be entered pending adjudication of this action:

    (a)    preliminarily enjoining the Defendants from violating Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78j(b), and Rule 10b-5thereunder, 17 C.F.R. §§ 240.10b-5;

(b)    preliminarily enjoining Hankins and Tenet from violating Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 (the "Advisers Act"), 15 U.S.C. §§ 80b-6(1) and 80b-6(2);

(c)    appointing a temporary receiver for Tenet and Convertible Opportunities Fund;

(d)    directing each of the Defendants to provide an accounting;

(e)    prohibiting the destruction, alteration, or concealment of documents; and

(2)    Pending adjudication of the relief described in paragraph (1) above,

(a)    temporarily restraining the Defendants from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 thereunder, 17 C.F.R. §§ 240.10b-5;

(b)    temporarily restraining Hankins and Tenet from violating Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2);

(c)    appointing a temporary receiver for Tenet and Convertible Opportunities Fund;

(d)    directing each of the Defendants to provide an accounting; and

(e)    prohibiting the destruction, alteration, or concealment of documents; and

(3)    providing that the Commission may take expedited discovery in preparation for a hearing on this Order to Show Cause.

(4)    The Court has considered (1) the Commission's Complaint, (2) the Memorandum of Law in Support of Plaintiff's Application, and (3) the Declaration of Richard Anderson, Declaration of Charles Bernard, Declaration of Steve Dabbah, Addendum to Declaration of Steve Dabbah, Declaration of Thomas Damico, Declaration of Kelly Easterling, Declaration of Eric A. Elefante, Declaration of Martin Lobdell, Addendum to Declaration

2

of Martin Lobdell, Declaration of Robert Luzzo, Declaration of Nancy Mishkin, Declaration of George O'Kane, Declaration of William H. Price, and Declaration of David Zandstra, and the Exhibits thereto.

(5)    Based upon the foregoing documents, the Court finds that a proper showing has been made for the relief granted herein in that the Commission has made a sufficient and <u>prima facie</u> showing that:

    (a)    Defendants have violated, and, unless temporarily restrained, will continue to violate, Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5, as charged in the Complaint;

    (b)    Hankins and Tenet have violated, and, unless temporarily restrained, will continue to violate, Sections 206(1) and 206(2) of the Advisers Act, as charged in the Commission's Complaint;

    (c)    the appointment of a temporary receiver is necessary to:  (i) to preserve the <u>status quo</u>; (ii) to ascertain the financial condition of Tenet and the Convertible Opportunities Fund; (iii) to prevent further dissipation of Tenet's and the Convertible Opportunities Fund's assets, to prevent loss, damage, and injury to investors; (iv) to preserve Tenet's and the Convertible Opportunities Fund's books, records and documents; and (v) to be available to respond to investor inquiries; and

    (d)    a Temporary Restraining Order restraining the Defendants from violating Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder,  restraining Hankins and Tenet from violating Sections 206(1) and

3

206(2) of the Advisers Act, prohibiting the destruction, alteration or concealment of documents, and requiring the Defendants to provide an accounting, is necessary to preserve the status quo.

**NOW, THEREFORE,**

## I.

**IT IS HEREBY ORDERED** that, pending a hearing and determination of the plaintiff Commission's Application for a Preliminary Injunction ("Commission's Application"), the Defendants, and each of them, their agents, servants, employees, and attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, or otherwise, are temporarily restrained from, directly or indirectly, singly or in concert, in the offer or sale of any security, or in connection with the purchase or sale of any security, by use of any means or instrument of transportation or communication in, or any instrumentality of, interstate commerce, or of the mails, or of any facility of any national securities exchange:

(a)     employing any device, scheme or artifice to defraud;

(b)     obtaining any money or property by means of, or otherwise making, any untrue statement of material fact or omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaging in any act, transaction, practice or course of business which operates or would operate as a fraud or deceit upon the purchaser, or any other person; or

(d)     engaging in any act, practice, or course of business which is fraudulent, deceptive,

        or manipulative,

in violation of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule

10b-5 thereunder.

## II.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the

Commission's Application, Hankins and Tenet, their agents, servants, employees, and attorneys-

in-fact, and those persons in active concert or participation with them who receive actual notice

of this Order by personal service, facsimile service, or otherwise, are temporarily restrained from,

directly or indirectly, singly or in concert, while acting as an investment adviser or associated

person of an investment adviser, by use of any means or instrument of transportation or

communication in, or any instrumentality of, interstate commerce, or of the mails:

(a)     employing any device, scheme or artifice to defraud any advisory client or

        prospective client; or

(b)     engaging in any transaction, practice or course of business which operates or

        would operate as a fraud or deceit upon any advisory client or prospective client,

in violation of Sections 206(1) and 206(2) of the Advisers Act.

## III.

**IT IS FURTHER ORDERED,** that, pending further order of this Court, *Susan*

*Brune* be, and hereby is, appointed to act as temporary receiver for Tenet and the

Convertible Opportunities Fund to 1) to preserve the status quo; (2) to ascertain the financial

condition of the Tenet and Convertible Opportunities Fund; (3) to prevent further dissipation of

5

Tenet's and the Convertible Opportunities Fund's assets, to prevent loss, damage, and injury to investors; (4) to preserve Tenet's and the Convertible Opportunities Fund's books, records and documents; and (5) to be available to respond to investor inquiries. To effectuate the foregoing, the temporary receiver is hereby empowered to:

(1)    take and retain immediate possession, custody, and control of all assets and property and the books, documents and records of original entry of Tenet and the Convertible Opportunities Fund;

(2)    take all steps he deems necessary to secure and protect the assets and property of Tenet and the Convertible Opportunities Fund, including but not limited to the premises, files, and information systems;

(3)    engage and employ persons, in his discretion, to assist him in carrying out his duties and responsibilities hereunder, including accountants, attorneys, registered investment advisers, and experts;

(4)    acquire and retain all rights and powers which Tenet and the Convertible Opportunities Fund has to manage, control, operate and maintain its businesses (including, but not limited to, the power to direct, hire, suspend, and terminate personnel), and to possess, receive, or use income, earnings, rents, and profits with full power to commence, maintain, defend or participate in legal proceedings, to sue for, collect, receive and take into possession all goods, chattels, rights, general intangibles, choses in action, credits, monies, effects, lands, books and records of account, and other papers, including exclusive authority to make expenditures on behalf of Tenet and the Convertible

6

Opportunities Fund, with a view to preventing loss, damage, and injury to public investors, and preserving the assets and the records of Tenet and the Convertible Opportunities Fund; and

(5)     open and close bank accounts, securities accounts and commodities accounts; purchase or sell securities and commodities contracts in any such account of Tenet and the Convertible Opportunities Fund; honor client requests for redemptions or to otherwise transfer funds and accounts away from Tenet and the Convertible Opportunities Fund; and execute checks or otherwise disburse money from those bank or securities accounts of Tenet and the Convertible Opportunities Fund to pay its obligations in the normal course of business;

(6)     if appropriate, file for relief and protection under the Federal Bankruptcy Code, on behalf of Tenet and the Convertible Opportunities Fund, after notice to all parties in this action;

(7)     report to the Court and the parties within 30 days, the following information for Tenet and the Convertible Opportunities Fund:

i.      The amount of cash on hand;

ii.     The amounts remaining due or owed as of the close of business on June 21, 2005 to Tenet and the Convertible Opportunities Fund clients;

iii.    Any other monthly income and expenses of Tenet and the Convertible Opportunities Fund; and

iv.     Whether a bankruptcy filing is appropriate for Tenet and the Convertible Opportunities Fund;

7

(8)     report to the Court and the parties by July 22, 2005, subject to such reasonable

        extensions as the Court may grant, the following information for Tenet and the

        Convertible Opportunities Fund:

        i.      all assets, liabilities, money, funds, securities, and real or personal property

                currently held directly or indirectly by or for the benefit of Tenet and the

                Convertible Opportunities Fund, including, but not limited to, bank

                accounts, brokerage accounts, investments, business interests, and real and

                personal property, wherever situated, identifying and describing each asset

                and liability, its current location and amount;

        ii.     all money, assets, funds, securities, and real or personal property received

                by Tenet or the Convertible Opportunities Fund for Tenet's or the

                Convertible Opportunities Fund's direct or indirect benefit, at any time

                from April 1, 2004, to the date of the accounting, describing the source,

                amount, disposition and current location of each of the items listed;

        iii.    all money, assets, funds, securities, and real or personal property disbursed

                by Tenet or the Convertible Opportunities Fund for the direct or indirect

                benefit of Hankins, at any time from April 1, 2004, to the date of the

                accounting, describing the source and recipient, amount, and date of

                disbursement of each of the items listed;

        iv.     the names, last known addresses, and account-identifying information of

                all financial institutions, bailees, creditors, and other persons and entities

                that are currently holding any money, assets, funds, securities, real or

8

personal property for the direct or indirect benefit of Tenet or the

Convertible Opportunities Fund; and

(9)     take such further action as the Court shall deem equitable, just and appropriate

under the circumstances upon proper application.

## IV.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the

Commission's Application, the Defendants file with this Court and serve upon plaintiff

Commission, within three (3) business days, or within such extension of time as the Commission

staff agrees to, a verified written accounting, signed by each of the Defendants under penalty of

perjury, setting forth:

(1)     All assets, liabilities and property currently held directly or indirectly by or for the

benefit of such Defendant, including but not limited to bank accounts, brokerage

accounts, investments, business interests, loans, lines of credit, and real and

personal property wherever situated, describing each asset and liability, its current

location and amount;

(2)     All money, property, assets, and other income received by such Defendant, or for

their direct or indirect benefit, in or at any time from April 1, 2004 to the date of

the accounting, describing the source, amount, disposition and current location of

each of the items listed;

(3)     All assets, funds, securities, real or personal property of customers of such

Defendant, transferred to or for the benefit of such Defendant in or at any time

9

Notwithstanding the foregoing, the date that Defendants are to file materials referenced in this Section for concerning assets, liabilities, property and other income as they relate to matters unrelated to Tenet and Convertible Opportunities Fund shall be 10 business days.

from April 1, 2004 to the date of the accounting, and the disposition by such

Defendant of such assets, funds, securities, real or personal property;

(4)   All money, property, assets and other income transferred from such Defendant,

including transfers to any bank account, brokerage account or other account, or to

any individual, or entity, in or at any time from April 1, 2004 to the date of the

accounting; and

(5)   The names and last known addresses of all bailees, debtors, and other persons and

entities, which are currently holding the assets, funds, or property of such

Defendant.

Each Defendant shall serve such sworn statement of asset identifying information by hand

delivery, facsimile transmission or overnight courier service on the Commission's counsel,

Anthony T. Byrne, Senior Counsel, Securities and Exchange Commission, 3 World Financial

Center, Room 4300, New York, NY, 10281-1022.

## V.

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the

Commission's Application, the Defendants, and any person or entity acting at their direction or

on their behalf, are restrained from destroying, altering, concealing any and all documents, books,

and records that are in the possession, custody or control of any of the Defendants, or their

subsidiaries, affiliates, predecessors, successors, officers, agents, employees, servants,

accountants, or attorneys-in-fact, that refer or relate to the allegations of the Complaint, herein.

This paragraph applies to all forms of information, including but not limited to, information

stored on computer memory or posted on, made available in or sent or received through,

10

electronic mail, the World Wide Web, Internet news groups, electronic bulletin board systems, online interactive conversational spaces or chat rooms, classified advertising sections of any online services, fax-back services, on in any other location accessible by modem communications.

**VI.**

**IT IS FURTHER ORDERED** that, pending a hearing and determination of the Commission's Application,

(1)     the Defendants and each of their creditors, principals, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, or otherwise, be and hereby are, restrained and enjoined from filing a voluntary or involuntary petition in bankruptcy on behalf of or against the Defendants, without first seeking leave from this Court, with at least twenty-four (24) hours notice to the Commission. Leave shall be granted only after a hearing before this Court and upon such conditions as necessary to protect this Court's jurisdiction over the subject matter of this action; and

(2)     no creditor of or claimant against the Defendants, or any person acting on behalf of such creditor or claimant, shall take any action to interfere with the taking control, possession, or management of the assets transferred to the temporary receiver under this Order, nor interfere in any way with the exclusive jurisdiction of this Court over the receivership estate.

**VII.**

11

**IT IS FURTHER ORDERED** that the Defendants show cause, if there be any, to this

Court at 3:00 p.m. on the 15 day of July 2005, in Room 15-B of the United States

Courthouse, 500 Pearl St, New York, New York 10007, why this Court should not enter

an Order pursuant to Rule 65 of the Federal Rules of Civil Procedure, Section 20 of the

Securities Act, Section 21 of the Exchange Act, and Section 209 of the Advisers Act,

preliminarily enjoining the Defendants from committing further violations of Section 17(a) of the

Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and preliminarily

enjoining Hankins and Tenet from violations of Sections 206(1) and 206(2) of the Advisers Act.

## VIII.

**IT IS FURTHER ORDERED,** that the Tenet and the Convertible Opportunities Fund

show cause at that time why this Court should not also enter an Order appointing or continuing

the appointment of a receiver for Tenet and the Convertible Opportunities Fund to 1) to preserve

the status quo; (2) to ascertain the financial condition of Tenet and the Convertible Opportunities

Fund; (3) to prevent further dissipation of Tenet and the Convertible Opportunities Fund's assets,

to prevent loss, damage, and injury to investors; (4) to preserve Tenet's and the Convertible

Opportunities Fund's books, records and documents; and (5) to be available to respond to

investor inquiries. To effectuate the foregoing, the temporary receiver is hereby empowered to:

(1)     take and retain immediate possession, custody, and control of all assets and

property and the books, documents and records of original entry of Tenet and the

Convertible Opportunities Fund;

(2)     take all steps he deems necessary to secure and protect the assets and property of

Tenet and the Convertible Opportunities Fund, including but not limited to the

premises, files, and information systems;

(3)     engage and employ persons, in his discretion, to assist him in carrying out his

duties and responsibilities hereunder, including accountants, attorneys, registered

investment advisers, and experts;

(4)     acquire and retain all rights and powers which Tenet and the Convertible

Opportunities Fund has to manage, control, operate and maintain its businesses

(including, but not limited to, the power to direct, hire, suspend, and terminate

personnel), and to possess, receive, or use income, earnings, rents, and profits

with full power to commence, maintain, defend or participate in legal

proceedings, to sue for, collect, receive and take into possession all goods,

chattels, rights, general intangibles, choses in action, credits, monies, effects,

lands, books and records of account, and other papers, including exclusive

authority to make expenditures on behalf of Tenet and the Convertible

Opportunities Fund, with a view to preventing loss, damage, and injury to public

investors, and preserving the assets and the records of Tenet and the Convertible

Opportunities Fund; and

(5)     open and close bank accounts, securities accounts and commodities accounts;

purchase or sell securities and commodities contracts in any such account of Tenet

and the Convertible Opportunities Fund; honor client requests for redemptions or

to otherwise transfer funds and accounts away from Tenet and the Convertible

13

Opportunities Fund; and execute checks or otherwise disburse money from those bank or securities accounts of Tenet and the Convertible Opportunities Fund to pay its obligations in the normal course of business;

(6)     if appropriate, file for relief and protection under the Federal Bankruptcy Code, on behalf of Tenet and the Convertible Opportunities Fund, after notice to all parties in this action;

(7)     report to the Court and the parties within 30 days, the following information for Tenet and the Convertible Opportunities Fund:

    i.     The amount of cash on hand;

    ii.     The amounts remaining due or owed as of the close of business on June 21, 2005 to Tenet and the Convertible Opportunities Fund clients;

    iii.     Any other monthly income and expenses of Tenet and the Convertible Opportunities Fund; and

    iv.     Whether a bankruptcy filing is appropriate for Tenet and the Convertible Opportunities Fund;

(8)     report to the Court and the parties by July 22, 2005, subject to such reasonable extensions as the Court may grant, the following information for Tenet and the Convertible Opportunities Fund:

    i.     all assets, liabilities, money, funds, securities, and real or personal property currently held directly or indirectly by or for the benefit of Tenet and the Convertible Opportunities Fund, including, but not limited to, bank accounts, brokerage accounts, investments, business interests, and real and

14

personal property, wherever situated, identifying and describing each asset

and liability, its current location and amount;

ii.    all money, assets, funds, securities, and real or personal property received

by Tenet or the Convertible Opportunities Fund for Tenet's or the

Convertible Opportunities Fund's direct or indirect benefit, at any time

from April 1, 2004, to the date of the accounting, describing the source,

amount, disposition and current location of each of the items listed;

iii.    all money, assets, funds, securities, and real or personal property disbursed

by Tenet or the Convertible Opportunities Fund for the direct or indirect

benefit of Hankins, at any time from April 1, 2004, to the date of the

accounting, describing the source and recipient, amount, and date of

disbursement of each of the items listed;

iv.    the names, last known addresses, and account-identifying information of

all financial institutions, bailees, creditors, and other persons and entities

that are currently holding any money, assets, funds, securities, real or

personal property for the direct or indirect benefit of Tenet or the

Convertible Opportunities Fund; and

(9)    take such further action as the Court shall deem equitable, just and appropriate

under the circumstances upon proper application.

## IX.

**IT IS FURTHER ORDERED** that, the Defendants show cause at that time why this

Court should not also enter an Order directing that they each file with this Court and serve upon

15

plaintiff Commission, within three (3) business days, or within such extension of time as the Commission staff agrees to, a verified written accounting, signed by each of the Defendants under penalty of perjury, setting forth:

(1)    All assets, liabilities and property currently held directly or indirectly by or for the benefit of such Defendant, including but not limited to bank accounts, brokerage accounts, investments, business interests, loans, lines of credit, and real and personal property wherever situated, describing each asset and liability, its current location and amount;

(2)    All money, property, assets, and other income received by such Defendant, or for their direct or indirect benefit, in or at any time from April 1, 2004 to the date of the accounting, describing the source, amount, disposition and current location of each of the items listed;

(3)    All assets, funds, securities, real or personal property of customers of such Defendant, transferred to or for the benefit of such Defendant in or at any time from April 1, 2004 to the date of the accounting, and the disposition by such Defendant of such assets, funds, securities, real or personal property;

(4)    All money, property, assets and other income transferred from such Defendant, including transfers to any bank account, brokerage account or other account, or to any individual, or entity, in or at any time from April 1, 2004 to the date of the accounting; and

(5)     The names and last known addresses of all bailees, debtors, and other persons and

        entities, which are currently holding the assets, funds, or property of such

        Defendant.

Each Defendant shall serve such sworn statement of asset identifying information by hand

delivery, facsimile transmission or overnight courier service on the Commission's counsel,

Anthony T. Byrne, Senior Counsel, Securities and Exchange Commission, 3 World Financial

Center, Room 4300, New York, NY, 10281-1022.

## X.

**IT IS FURTHER ORDERED** that the Defendants show cause at that time why this

Court should not also enter an Order enjoining and restraining them, and any person or entity

acting at their direction or on their behalf, from destroying, altering, concealing any and all

documents, books, and records that are in the possession, custody or control of any of the

Defendants, or their subsidiaries, affiliates, predecessors, successors, officers, agents, employees,

servants, accountants, or attorneys-in-fact, that refer or relate to the allegations of the Complaint,

herein.  This paragraph applies to all forms of information, including but not limited to,

information stored on computer memory or posted on, made available in or sent or received

through, electronic mail, the World Wide Web, Internet news groups, electronic bulletin board

systems, online interactive conversational spaces or chat rooms, classified advertising sections of

any online services, fax-back services, on in any other location accessible by modem

communications.

## XI.

**IT IS FURTHER ORDERED** that discovery is expedited as follows: pursuant to Rules 26, 30, 31, 33, 34, 36 and 45 of the Federal Rules of Civil Procedure ("F.R.C.P."), and without the requirement of a meeting pursuant to F.R.C.P. 26(f), the Commission may:

(1)     Take depositions, subject to two (2) calendar days' notice by facsimile or otherwise;

(2)     Obtain the production of documents, within three calendar (3) days from service by facsimile or otherwise of a request or subpoena, from the Defendants, or any other persons or entities, including non-party witnesses;

(3)     Obtain other discovery from the Defendants, including further interrogatories and requests for admissions, within three calendar (3) days from the date of service by facsimile or otherwise on the Defendants of such other discovery requests, interrogatories, or requests for admissions; and

(4)     Service of any discovery requests, notices, or subpoenas may be made by personal service, facsimile, overnight courier, or first-class mail on an individual, entity or the individual's or entity's attorney.

## XII.

*The Court notes that the Commission* ~~IT IS FURTHER ORDERED~~ that *has already served defense counsel with* a copy of this Order and the papers supporting the Commission's Application ~~be served upon the Defendants, or upon the Defendants' attorney, on or before _____ .m. June\_\_\_, 2005 by personal delivery, facsimile, overnight courier or first-class mail.~~

## XIII.

18

~~IT IS FURTHER ORDERED that the Defendants shall deliver any opposing papers in response to the Order to Show Cause above no later than _____, June ____, 2005, _____.m.~~ *moot. KMW*

Service shall be made by delivering the papers, using the most expeditious means available, by that date and time, to the Northeast Regional Office of the Commission at 3 World Financial Center, Room 4300, New York, New York 10281, Attn: Anthony T. Byrne, Esq., or such other place as counsel for the Commission may direct in writing. The Commission shall have until _____, June ____, 2005, at ____ __.m., to serve, by the most expeditious means available, any reply papers upon the Defendants or upon their counsel.

## XIV.

    **IT IS FURTHER ORDERED** that this Order shall be, and is, binding upon the Defendants, and each of their officers, agents, servants, employees, attorneys-in-fact, subsidiaries, affiliates, predecessors, successors and related entities, and those persons in active concert or participation with them who receive actual notice of this Order by personal service, facsimile service, or otherwise.

_____
UNITED STATES DISTRICT JUDGE

Issued at :    __4__ : __40__ _p_ .m.
       June __22__, 2005
       New York, New York

19

**EXHIBIT 8**



## U.S. Securities and Exchange Commission

**U.S. SECURITIES AND EXCHANGE COMMISSION**

**Litigation Release No. 19283 /June 24, 2005**

***SECURITIES AND EXCHANGE COMMISSION v. JON E. HANKINS, ET AL.*, Civil Action No. 05CV5808 (KMW) (S.D.N.Y.)**

**SEC BRINGS EMERGENCY ACTION AGAINST JON E. HANKINS, TENET ASSET MANAGEMENT, LLC, AND TENET CAPITAL PARTNERS CONVERTIBLE OPPORTUNITIES FUND, LP.**

The Securities and Exchange Commission announced that on June 22, 2005, it filed an emergency enforcement action to halt fraudulent conduct concerning a hedge fund, Tenet Capital Partners Convertible Opportunities Fund, LP ("Convertible Opportunities Fund"), its investment adviser, Tenet Asset Management, LLC ("Tenet") and Tenet's principal, Jon E. Hankins ("Hankins") (collectively, the "Defendants"). Also on June 22, 2005, the court granted the Commission's application for a temporary restraining order which included, among other things, the appointment of a temporary receiver over the Convertible Opportunities Fund and Tenet.

The Complaint alleges that the Convertible Opportunities Fund, Tenet, and Hankins concealed, and are continuing to conceal, from investors large investment losses and are seeking to unfairly honor a redemption request at inflated values to cover up the fraud. In particular, Hankins and Tenet have recently made numerous false statements to investors of the Convertible Opportunities Fund, as well as to investors in another hedge fund managed by Tenet and Hankins, Tenet Offshore Capital Partners Ltd. ("Offshore Capital Partners") (collectively, the "Funds").

The Complaint also alleges that within the last four months, in an effort to raise new capital for the Funds, Hankins met with investors and made false representations concerning Tenet's investment strategy and the Funds' performance. Hankins also provided investors with deceptive and false marketing materials that, among other things, grossly misrepresented the performance of the Convertible Opportunities Fund during the period April through December 2004. While the marketing materials for the Convertible Opportunities Fund reflected a gain of more than 32% during that period, the Convertible Opportunities Fund's audited financial statements for that period reflect that the fund returned a 24% loss during the period.

In addition, as recently as May 25, 2005, Hankins distributed to at least one investor altered audited financial statements for 2004 for the Convertible Opportunities Fund. The altered 2004 audited financial statements: (a) concealed the fund's reported $1.4 million net loss in 2004; (b) falsely stated that the fund had net assets of $31.2 million when, in fact, it reported only $4.2 million; and (c) falsely stated that the fund earned 32.4% in investment returns when, in fact, it reported a 24.5% loss.

The Complaint further alleges that Defendants are also seeking to improperly distribute assets to cover up the fraud. Recently, to assuage the concerns of one investor, Hankins requested that the Funds' prime broker redeem this investor's funds from the Convertible Opportunities Fund's account (a total of $3 million) at a level of redemption inconsistent with the losses incurred in the fund's accounts. Although the prime broker has not

acted on Hankins' request, thereby guarantee that it will refrain from honoring future requests, nor is it obligated to do so. Moreover, Hankins' recent request suggests that he may likely attempt to make additional, improper distribution requests, and by doing so, will leave empty-handed the last investors to seek a withdrawal.

The complaint charges all the Defendants with violating Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder. The complaint further charges Hankins and Tenet with violating Sections 206(1) and 206(2) of the Investment Advisers Act.

The Court granted, among other emergency relief, a temporary restraining order which included the appointment of a temporary receiver over the Convertible Opportunities Fund and Tenet. In its enforcement action, the Commission is seeking additional emergency relief, including orders enjoining the Defendants, preliminarily and permanently, from committing future violations of the foregoing federal securities laws, and a final judgment ordering the Defendants to disgorge ill-gotten gains, and assessing civil penalties.

*http://www.sec.gov/litigation/litreleases/lr19283.htm*

---

Home | Previous Page                                      Modified: 06/25/2005

**EXHIBIT 9**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,    :

        Plaintiff,      :

      -against-     :

JON E. HANKINS,          :
TENET ASSET MANAGEMENT, LLC, and
TENET CAPITAL PARTNERS CONVERTIBLE  :
OPPORTUNITIES FUND, LP,

             :
      Defendants.
             :
--------------------------------------------------------------------------------x

05 Civ. 5808 (KMW)

DECLARATION
AND REPORT
OF RECEIVER

SUSAN E. BRUNE declares under penalty of perjury as follows:

   1.   I am the temporary receiver appointed by the Court in the above-captioned

matter, by an Order dated June 22, 2005. I make this report to inform the Court of the progress

of the temporary receivership and, on behalf of Tenet Asset Management, LLC (the

"Management Company") and Tenet Capital Partners Convertible Opportunities Fund, LP (the

"Fund"), to provide an accounting.

   2.   I have submitted with this Declaration and Report of Receiver a proposed

order for the Court's endorsement. I respectfully request that the Court endorse the proposed

order on August 5, 2005, provided that neither counsel for the Securities and Exchange

Commission nor counsel for Mr. Hankins states that he wishes to be heard on the matters

addressed in this report or the proposed order.

I.  Summary

   3.   I have engaged my law firm Brune & Richard LLP to assist me in carrying

out my duties. I have also engaged Eisner LLP to serve as accountant; Baker, Donelson,

Bearman, Caldwell & Berkowitz, PC to serve as local counsel in Tennessee; and Jacobs, Chase, Frick, Kleinkopf & Kelley, LLC to serve as local counsel in Colorado. With the assistance of those firms, I have secured and reviewed the relevant records, have removed a state court complaint brought against the Management Company in Colorado, and have prepared an accounting.

A.    The Management Company

4.    The Management Company, which was a single-member limited liability company with Jon E. Hankins as its sole member, has, for all practical purposes, ceased functioning. It is virtually without assets, and has a few small liabilities. It was also recently named as a defendant in a lawsuit in Jefferson County, Colorado.

5.    Schedules relating to the accounting for the Management Company are attached as Exhibits 1, 2 and 3. Exhibit 1 shows the Management Company's current cash position.

B.    The Fund

6.    On June 24, 2005, I wrote to the Fund investors, letting them know of my appointment and my plan to liquidate the Fund's holdings. Hearing no objection, I directed Banc of America Securities to liquidate the Fund's holdings. Thereafter, I caused the resulting cash position to be transferred to an interest-bearing account at Citibank. I also directed the Fund's administrator Olympia Capital Associates, LP ("Olympia") to send $85,396.18 belonging to the Fund to the Fund's Citibank account, which Olympia did on July 27, 2005. As of yesterday, July 28, 2005, the Fund had a total of $8,930,334.28 on deposit at Citibank.

7. Other than the expenses of the temporary receivership, the Fund has no significant commercial creditors. As discussed below, however, one investor, Lobdell Capital Management LLC ("Lobdell"), takes the position that it is a creditor.

8. Schedules relating to the accounting of the Fund are attached as Exhibits 4 through 8. Exhibit 4 shows the Fund's current cash position.

9. According to Eisner LLP's analysis, the Fund lost $14,217,001.00 overall. Of those losses, $13,786,800.83 can be accounted for by Mr. Hankins' substantial wrong way bets on Google. *See* Exhibits 6 and 7.

C. The Temporary Receivership

10. The Management Company and Fund records have, with a significant exception discussed below, been preserved. I have also taken the steps necessary to marshal the assets of these entities and to identify their creditors. No investor has expressed any interest in having the Fund continue. Nor, in the absence of an active advisor, would it make any sense for the Fund to continue. Accordingly, as contemplated by Sections 13.01, 13.02 and 13.03 of the Fund's Amended and Restated Limited Partnership Agreement, dated February 1, 2005, a copy of which is attached as Exhibit 9, and pursuant to the authority granted under the Order, I propose to dissolve the Fund and to make distributions to investors.

11. If this approach is acceptable to the Court, I will submit by report to the Court on September 9, 2005 an interim plan for distribution to creditors and investors. Once an interim plan is approved and distribution made, I will cause to have prepared the Fund tax returns, including K-1s for investors. Thereafter, I will distribute any remaining funds, pursuant to an approved final plan of distribution.

## II.    The Records

### A.    The Management Company Offices

12.    On the morning of June 24, 2005, paralegal Erin Yoshino of my firm and I went to the offices of the Management Company, located at 111 North Central Avenue, on the second floor of a converted cotton warehouse in Knoxville, Tennessee. When we arrived, the offices were locked. Neighboring tenants told us that no one had been in the offices for awhile.

13.    Eventually, Mr. Hankins arrived. I introduced myself as the temporary receiver. He allowed Ms. Yoshino and me into the offices. I immediately suggested to Mr. Hankins that he call his counsel, so that he would be properly advised on how to handle our visit. He called his counsel and thereafter directed us to the files of the Management Company and the Fund.

14.    By and large, the records were stored in Mr. Hankins' private office. A few loose papers were located by the receptionist's desk and in the only other private office, which appeared to be vacant. The offices were modestly furnished with basic office furniture, Bloomberg terminals and computers.

15.    As Mr. Hankins stood by, we gathered the paper records. Some of the records were stored in files; many appeared to have been thrown haphazardly into drawers in Mr. Hankins' office. We also downloaded onto disks copies of the relevant computer records from the hard drive of the computer in Mr. Hankins' office.

16.    On July 7, 2005, Mr. Hankins asserted, through counsel, that he personally owned one of the computers and one of the monitors in the Management Company's offices. We asked for documentary proof of this assertion. Mr. Hankins did not provide any.

17.     On July 27, 2005, when local counsel went to the Management Company's offices, they discovered that the computer and two large monitors that had been located in Mr. Hankins office had been removed.  In response to my inquiries, Mr. Hankins' counsel informed me that his client had removed the items.  I demanded that Mr. Hankins return the computer and monitors.  Mr. Hankins has yet to do so.

18.     Mr. Hankins is forbidden by this Court's order of July 13, 2005 from "destroying, altering or concealing any and all documents, books, and records that are in [his] possession, custody or control that related to the allegations of the Complaint herein."  It is clear that the order encompasses "information stored on computer memory."  *See* Order Granting Preliminary Injunction and Other Relief on Consent, Section IV.  While we made copies of much of the data on the computer's hard drive, in taking the computer Mr. Hankins has taken original records pertaining to the Complaint in this matter.

B.     Other Sources of Records

19.     After reviewing the materials gathered from the Management Company offices, it became clear that significant records were missing, including back statements from Bear Stearns, MS Howells, Lehman Brothers, Banc of America and AmSouth Bank.  We contacted the relevant institutions and obtained duplicate records.

20.     In addition to the records retrieved from the Management Company offices and the relevant financial institutions, Olympia maintained records relating to the Fund.  Olympia made a production to the SEC, which we have reviewed.  Olympia has also produced an "Unaudited Estimated Statement of Assets and Liabilities as of June 30, 2005," which Olympia has distributed to Fund investors.

III.     The Current Financial Condition of the Management Company

21.     As stated above, the Management Company is without meaningful assets. It has a bank balance of $3,514.71 at AmSouth Bank, account number 0042175291, East Town Mall Office, 5005 Washington Pike, Knoxville, Tennessee 37917. In theory, the Management Company also has a $6,000 receivable for management fees from the Fund.

22.     The Management Company does not have any monthly income or expenses. Its offices are closed and its accounts with vendors such as telephone service providers, internet service providers and the like have been terminated.

23.     The Management Company's office furnishings are of no real value. The furniture has been returned. The Bloomberg terminals are the property of Bloomberg LP and will be returned at the beginning of next week.

24.     According to the Management Company's health insurance records, the Management Company had, as of June 2005, three employees: Jon Hankins, Robert Baker and Terri Hankins. I informed Mr. Hankins' counsel that Mr. Hankins' health benefits would be terminated, since the Management Company was not currently operating. I discharged Robert Baker, a young man who had been on the payroll as an analyst, and likewise terminated his health benefits. I understand that Terri Hankins, who is Mr. Hankins' wife, is a dental hygienist. Though she received intermittent checks and health insurance, we have found no evidence that she actually performed any services for the Management Company. Accordingly, Ms. Hankins' health benefits have also been terminated. The final bill for the insurance, which I plan to pay, is $901.62. The health benefit terminations are effective on August 1. Neither Tennessee nor federal law requires any continuation of benefits.

25.     I contacted the Management Company's Knoxville landlord and learned that the Management Company was behind on its rent, having bounced a rent check for the month of June. I proposed to the landlord that the Management Company surrender possession, in exchange for a release of all liability under the lease. The landlord agreed.

26.     The Management Company has other small creditors, such as the following:

- American Express, approximately $500.00
- American Stock Exchange, $241.60
- Bell South, $768.66
- Bloomberg LP, $9,013.50
- Comcast, approximately $60.00

The Management Company's debts total approximately $11,485.38.

27.     Before the imposition of the temporary receivership, the Management Company disbursed to Mr. Hankins' direct or indirect benefit a total of approximately $155,556.82. This included disbursements to him personally, to SunTrust Bank to pay off an equity loan, to Terri Hankins, to GMAC for a car loan and to his mother Betty Hankins. *See* Exhibit 3.

28.     The Management Company has been named in a lawsuit in Colorado. (Mr. Hankins has also been named personally). The lawsuit pertains to investments directed by the Management Company separate and apart from the Fund. The lawsuit seeks, among other things, $319,102.80, the amount that the investors allege that they lost. With the help of local counsel, the case has been removed to federal court. We expect to file an application to have it transferred to this district as a related case.

29.     The lawsuit represents a substantial contingent liability.  We have explained to counsel for the investors in that action, however, that it may not be worthwhile to prosecute a case against the Management Company, given its poor financial condition.

IV.     The Current Financial Condition of the Fund

30.     The Fund currently has $8,930,334.28 on deposit at Citibank, account numbers 48160791 and 48160994, 399 Park Avenue, New York, New York 10022.  That account bears interest, currently at a rate of 3.25%.

31.     I have terminated Olympia's contract with the Fund.  Olympia may assert a right to continued payment of a $3,000 monthly administration fee under a 90-day termination provision.  I have asked Olympia to waive that provision and to charge no further fees.  Other than that potential expense, the Fund has no monthly expenses or liabilities.

32.     Mr. Hankins has sought from the Fund indemnification and advancement of the costs of defense both in this action and in the Colorado lawsuit.  I have denied his request, and do not view him as a creditor.  Copies of the relevant correspondence are attached as Exhibit 10.

33.     Exhibit 4 reflects that the Fund disbursed a total of $143,128.00 to the Management Company.  The Fund did not disburse any funds directly to Mr. Hankins.  I assume that Mr. Hankins makes no current claim to the Funds' assets, other than his now rejected claim for indemnification.

34.     To begin the process of putting an interim plan of distribution together, I have communicated with all of the investors to confirm their investments and distributions.  In Exhibit 5, I have identified what I believe to have been the investments in and distributions from

the Fund to date. By copy of this report, I invite investors to communicate with me about any discrepancies of which they may be aware.

35. Lobdell asserts that it is a creditor because its pre-receivership redemption notice was accepted but not honored. As a consequence, Lobdell takes the position that it should be paid ahead of investors at an NAV calculated as of May 31, 2005. A copy of a memorandum from Lobdell's counsel setting forth its position is attached as Exhibit 11. I express no view at this time on the matter. By copy of this report, however, I invite other investors to correspond with me about this and any other issue they think germane to how the funds should be distributed.

## V.   The Offshore Fund

36. At the request of Olympia's offshore affiliate and in my capacity as Temporary Receiver for the Management Company, I facilitated the liquidation of the holdings of Tenet Offshore Capital Partners, Ltd (the "Offshore Fund"), an offshore fund managed by the Management Company. The Offshore Fund is not itself under receivership. The Offshore Fund's holdings remain at Banc of America in an interest-bearing account. As of yesterday, the account balance was $5,094,431.92.

37. The Offshore Fund is controlled by its board of directors. It is unclear whether Mr. Hankins still holds a board position. Whether Mr. Hankins is currently on the board is probably irrelevant, though, because the other two board seats are held by entities affiliated with Olympia.

38. I understand that a shareholder meeting for the Offshore Fund will be held on August 5, 2005, at which time it will be proposed that a liquidator be appointed to wind up

the Offshore Fund's affairs and to make distributions to its shareholders. This is to be done pursuant to Cayman Islands law, the law under which the Offshore Fund was established.

39.    I have communicated with a number of the Offshore Fund investors and have tried to facilitate the dissemination of information to them. My colleagues from Brune & Richard LLP or I will attend the shareholder meeting via telephone as representatives of the Management Company.

VI.    The Temporary Receivership

40.    Clearly, bankruptcy is not appropriate for the Fund, since it has substantial assets. It is a closer question as to whether bankruptcy would be appropriate for the Management Company, since it has few assets, some liabilities and a contingent liability in the form of the Colorado lawsuit. With the exception of the lawsuit, though, the Management Company's affairs are all but wrapped up. With the Court's permission, I would like to defer decision about whether bankruptcy is appropriate for the Management Company, with the idea that the administrative and legal costs of filing for bankruptcy would drain receivership assets and might not be necessary.

41.    As stated above, I propose to report to the Court again on September 9, 2005.

42.    The order establishing this receivership does not include any provision concerning my potential liability and that of those who work for me carrying out this Temporary Receivership. I respectfully ask that the Court order that the Temporary Receiver and all persons who may be engaged or employed by the Temporary Receiver to assist in carrying out the duties and obligations of the Temporary Receivership shall not be liable for any act or omission, unless it shall be proven that the Temporary Receiver or person acting as her agent or employee acted

or omitted to act willfully and in bad faith. I request that this provision apply to any claims arising during the term of the Temporary Receiver's appointment, even if such claims are filed after the termination of such appointment. *See Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995) ("Court appointed receivers act as arms of the court and are entitled to share the appointing judge's absolute immunity provided that the challenged actions are taken in good faith and within the scope of the authority granted to the receiver"); *Federal Home Loan Mortgage Corp. v. Tsinos*, 854 F. Supp. 113, 115-16 (E.D.N.Y. 1994) ("Indeed, receivers are typically not considered personally liable and any actions must be against the 'receivership' or the 'funds' in the receivership's possession."); 65 Am. Jur. 2d Receivers § 79 ("A receiver is an officer of the appointing court.").

43.     I make this request not out of any particular concern about potential liability, but because such a provision, setting forth the applicable standard, is often included in orders appointing receivers. This is done because lawsuits against receivers, even if meritless, can drain receivership assets and discourage qualified receivers from serving. The SEC does not oppose this request.

44.     Attached are invoices from Brune & Richard LLP (Exhibit 12), Eisner LLP (Exhibit 13) and Baker, Donelson, Bearman, Caldwell & Berkowitz, PC (Exhibit 14). Along with this Declaration and Report, I submit an order setting forth a proposed due date for my next report, proposed disbursements and a proposed limitation on receivership liability.

For the reasons stated herein, I respectfully request that the Court endorse the accompanying

proposed order.

Dated:     New York, New York
           July 29, 2005

SUSAN E. BRUNE
Brune & Richard LLP
80 Broad Street
New York, NY 10004

Tel.: (212) 668-1900
Fax:  (212) 668-0315

# Exhibit 6

# Exhibit 6a

Exhibit 6a

**Brune Re: Tenet Capital Partners Convertible Opportunity Fund**
**Summary of Realized Gain (loss) by Security**
 **For the Period March 1, 2004 through June 30, 2005**

| Description | Symbol | Realized Gain (Loss) | | | |
|---|---|---|---|---|---|
| | | Bank of America | Lehman Brothers | Bear Stearns | Total |
| GOOGLE INC | GOOG | (12,212,935.16) | 170,623.61 | (1,760,314.39) | (13,802,625.94) |
| GOOGLE FEB 195 - Option CALL | QGOUB195 | | | (6,034.38) | (6,034.38) |
| GOOGLE INC - Option | | | 1,325.03 | | 1,325.03 |
| GOOGLE FEB 200 CALL | QGOUB200 | | | 2,393.75 | 2,393.75 |
| GOOGLE FEB 200 CALL | 3Q199W9A0 | | | 2,807.13 | 2,807.13 |
| GOOGLE INC SEP 110 **** CALL | 38259P9I5 | | | 2,946.92 | 2,946.92 |
| GOOGLE INC DEC 175 **** Option CALL | QGOUL175 | | | 12,386.66 | 12,386.66 |
| | | | | | (13,786,800.83) |
| EBAY | EBAY | | | (435,707.48) | (435,707.48) |
| EBAY JAN 100 PUT | 2P799W9M1 | | | 521.98 | 521.98 |
| | | | | | (435,185.50) |
| KMART HOLDING CORPORATION | KMRT | | | (304,322.39) | (304,322.39) |
| KMART HLDG SEP 085 **** CALL | QKTQIQ | | | 4,813.81 | 4,813.81 |
| | | | | | (299,508.58) |
| INFOSPACE INC | INSP | 14,802.68 | | (267,271.61) | (252,468.93) |
| INFOSPACE CALL | QIOUGH | (15,160.12) | | | (15,160.12) |
| INFOSPACE   OCT 045 **** CALL | QIOUJ45 | | | (4,922.10) | (4,922.10) |
| INFOSPACE INC Put Apr 040 | | | 224.98 | | 224.98 |
| INFOSPACE MAY 030 PUT | QIOUQF | 1,454.93 | | | 1,454.93 |
| INFOSPACE   OCT 030 **** PUT | QIOUV30 | | | 5,604.83 | 5,604.83 |
| | | | | | (265,266.41) |
| TXU CORP | TXU | | | (220,102.69) | (220,102.69) |

Case 1:05-cv-08808-KMW   Document 27-3   Filed 07/29/05   Page 4 of 48

**Brune Re: Tenet Capital Partners Convertible Opportunity Fund**
**Summary of Realized Gain (loss) by Security**
 **For the Period March 1, 2004 through June 30, 2005**

| Description | Symbol | Realized Gain (Loss) | | | |
| | | Bank of America | Lehman Brothers | Bear Stearns | Total |
|---|---|---|---|---|---|
| SEARS HOLDING CORP | SHLD | (233,543.71) | 10,887.07 | | (222,656.64) |
| SEARS HOLDING MAY 115.0 PUT | QKTQQC | 264.98 | | | 264.98 |
| SEARS HOLDING MAY 125.0 PUT | QKTQQE | 954.95 | | | 954.95 |
| SEARS HOLDING MAY 130 PUT | QKTQQY | 1,014.95 | | | 1,014.95 |
| SEARS HOLDING PUT | QKTQRY | 3,258.18 | | | 3,258.18 |
| SEARS HOLDINGS CORP Put Apr 135 | QKTQFX | | 5,399.76 | | 5,399.76 |
| | | | | | (211,763.82) |
| | | | | | |
| ADVANCED MICRO DEVICES INC | AMD | | | (219,045.59) | (219,045.59) |
| ADVANCED MICRO DEVICES INC | 007903AE7 | | | 10,312.50 | 10,312.50 |
| | | | | | (208,733.09) |
| | | | | | |
| APPLE COMPUTER INC | AAPL | | 4,659.70 | (193,497.85) | (188,838.15) |
| APPLE COMPUTER JUL 040 CALL | QAAQGH | (12,165.19) | | | (12,165.19) |
| APPLE COMPUTER INC apr37.5 - Option | | | 2,024.90 | | 2,024.90 |
| | | | | | (198,978.44) |
| | | | | | |
| CAPITAL ONE FINANCIAL CORP | COF | | | (151,031.36) | (151,031.36) |
| CAPITAL ONE FINANCIAL CORP | COFPRC | | | (404.70) | (404.70) |
| | | | | | (151,436.06) |
| | | | | | |
| AUTODESK INC | ADSK | | | (121,416.80) | (121,416.80) |
| | | | | | |
| NASDAQ 100 SHARES | QQQQ | | | (75,463.45) | (75,463.45) |
| | | | | | |
| WEBSENSE INC | WBSN | (8,336.92) | | (64,100.50) | (72,437.42) |
| | | | | | |
| EXPRESS SCRIPTS INC COMMON | ESRX | (50,938.10) | | | (50,938.10) |
| EXPRESS SCRIPTS INC COMMON Put Apr 080 - Option | | | 124.99 | | 124.99 |
| EXPRESS SCRP MAY 085 CALL | QXTQEQ | 2,939.64 | | | 2,939.64 |
| | | | | | (47,873.47) |

Page 2 of 11

Exhibit 6a

**Brune Re: Tenet Capital Partners Convertible Opportunity Fund**
**Summary of Realized Gain (loss) by Security**
**For the Period March 1, 2004 through June 30, 2005**

| Description | Symbol | Bank of America | Lehman Brothers | Bear Stearns | Total |
|---|---|---|---|---|---|
| | | | **Realized Gain (Loss)** | | |
| INTERNATIONAL RECTIFIER CORP | IRF | | | (29,534.17) | (29,534.17) |
| INTERNATIONAL RECTIFIER CORP | 460254AE5 | | | (14,687.50) | (14,687.50) |
| | | | | | (44,221.67) |
| | | | | | |
| UNITED THERAPEUTICS | UTHR | | | (40,651.46) | (40,651.46) |
| UNITED THERAPUT NOV 035 **** CALL | QFUHKG | | | (2,633.00) | (2,633.00) |
| | | | | | (43,284.46) |
| | | | | | |
| ELECTRONIC ARTS | ERTS | 6,613.83 | | (58,921.71) | (52,307.88) |
| ELECTR ART CALL | QEZQFM | (5,380.00) | | | (5,380.00) |
| ELECTR ARTS JAN 060 **** CALL | QEZQA60 | | | (627.06) | (627.06) |
| ELECTR ART - Option | QEZQRJ | 174.99 | | | 174.99 |
| ELECTR ART MAY 045 PUT | QEZQQI | 1,112.45 | | | 1,112.45 |
| ELECTR ARTS JAN 050 PUT | 2855129M3 | | | 3,133.73 | 3,133.73 |
| ELECTR ARTS JAN37.50 PUT | QEZQM37 | | | 13,854.01 | 13,854.01 |
| | | | | | (40,039.76) |
| | | | | | |
| INHALE THERAPEUTIC SYS INC | 457191AH7 | | | (27,231.25) | (27,231.25) |
| | | | | | |
| UNUMPROVIDENT CORP | UNMPRA | | | (19,014.35) | (19,014.35) |
| | | | | | |
| VERISIGN INC | VRSN | (14,203.30) | | | (14,203.30) |
| | | | | | |
| FISHER SCIENTIFIC INTL INC NEW | FSH | | | (19,241.36) | (19,241.36) |
| FISHER SCIENTIFIC INTL INC | 338032AX3 | | | 5,312.50 | 5,312.50 |
| | | | | | (13,928.86) |
| | | | | | |
| CINERGY CORP | CIN | | | (10,641.51) | (10,641.51) |
| CINERGY CORP | CINPRI | | | (2,276.73) | (2,276.73) |
| | | | | | (12,918.24) |

Case 1:05-cv-05808-KMW    Document 27-3    Filed 07/29/05    Page 5 of 48

**Brune Re: Tenet Capital Partners Convertible Opportunity Fund**
**Summary of Realized Gain (loss) by Security**
 **For the Period March 1, 2004 through June 30, 2005**

| Description | Symbol | Realized Gain (Loss) | | | |
|---|---|---|---|---|---|
| | | Bank of America | Lehman Brothers | Bear Stearns | Total |
| SILICON IMAGE | SIMG | | | (16,058.98) | (16,058.98) |
| SILICON IMAG DEC 015 **** CALL | QQSIL15 | | | (878.00) | (878.00) |
| SILICON IMAG DEC 010 **** PUT | QQSIX10 | | | 2,068.94 | 2,068.94 |
| SILICON IMAG JAN 015 PUT | 82705T9M6 | | | 3,153.88 | 3,153.88 |
| | | | | | (11,714.16) |
| LAM RESEARCH CORP | LRCX | | | (10,065.80) | (10,065.80) |
| LAM RESEARCH | 512807AE8 | | | (1,562.50) | (1,562.50) |
| | | | | | (11,628.30) |
| BLACK & DECKER CORP | BDK | (14,204.96) | | | (14,204.96) |
| BLACK & DKR MAY 075 PUT | QBDKQO | 14.99 | | | 14.99 |
| BLACK & DKR AUG 085 CALL | QBDKHQ | 3,129.72 | | | 3,129.72 |
| | | | | | (11,060.25) |
| LOEWS CORP SUB NOTE | 540424AL2 | | | (10,500.00) | (10,500.00) |
| ELECTRONICS BOUTIQUE CORP | ELBO | (8,592.86) | | | (8,592.86) |
| PROTEIN DESIGN LABS INC | PDLI | (8,048.34) | | | (8,048.34) |
| PROTEIN DESIGN LABS INC - Option | | | 124.99 | | 124.99 |
| | | | | | (7,923.35) |
| FREESCALE SEMICONDUCTOR INC | FSLB | | | (7,215.90) | (7,215.90) |
| PUBLIC SERVICE ENTERPRISE | PEGPRP | | | (5,302.63) | (5,302.63) |
| PUBLIC SERVICE ENTERPRISE | PEG | | | (1,814.68) | (1,814.68) |
| | | | | | (7,117.31) |
| FLEXTRONICS INTERNATIONAL | FLEX | 2,561.86 | | (8,032.24) | (5,470.38) |
| FLEXTRONICS CALL | QQFLGV | (1,660.06) | | | (1,660.06) |
| FLEXTRONICS INTERNATIONAL LTD Put Mar 12.5 | | | 199.99 | | 199.99 |
| | | | | | (6,930.45) |

Exhibit 6a

**Brune Re: Tenet Capital Partners Convertible Opportunity Fund**
**Summary of Realized Gain (loss) by Security**
 **For the Period March 1, 2004 through June 30, 2005**

| Description | Symbol | Realized Gain (Loss) | | | |
|---|---|---|---|---|---|
| | | Bank of America | Lehman Brothers | Bear Stearns | Total |
| CELGENE CORP | CELG | (6,852.36) | | | (6,852.36) |
| CELGENE CORP PUT | QLQHRF | 239.98 | | | 239.98 |
| CELGENE CORP MAY 030 PUT | QLQHQF | 794.95 | | | 794.95 |
| | | | | | (5,817.43) |
| LEBERTY MEDIA INTL INC | LBTYA | | | (14,758.00) | (14,758.00) |
| LIBERTY MEDIA CORP | 530715AN1 | | | (8,125.00) | (8,125.00) |
| LIBERTY MEDIA INTL INC - RTS | LTYAR | | | (498.00) | (498.00) |
| LIBERTY MEDIA CORP | L | | | 18,697.55 | 18,697.55 |
| | | | | | (4,683.45) |
| COST PLUS NOV 040 **** CALL | QCUSK40 | | | (2,376.00) | (2,376.00) |
| NEKTAR THERAPEUTICS | NKTR | | | (2,221.04) | (2,221.04) |
| XM SATELLITE RADIO HOLDING INC | XMSR | (5,831.21) | | | (5,831.21) |
| XM SATELLITE JULY27.50 CALL | QQSYGY | 4,279.73 | | | 4,279.73 |
| | | | | | (1,551.48) |
| DIGITAL RIVR CALL | QDQIIF | (1,860.15) | | | (1,860.15) |
| DIGITAL RIVER INC Put Apr 025 | | | 74.99 | | 74.99 |
| DIGITAL RIVR PUT | QDQIRX | 214.99 | | | 214.99 |
| DIGITAL RIVER INC | DRIV | 225.43 | | | 225.43 |
| | | | | | (1,344.74) |
| AMDOCS LTD | 02342TAB5 | | | (975.00) | (975.00) |
| SANDISK CORP JULY 025 CALL | QSWQGE | (5,335.04) | | | (5,335.04) |
| SANDISK | SNDK | 4,399.83 | | | 4,399.83 |
| | | | | | (935.21) |

Case 1:05-cv-08808-KMW   Document 27-3   Filed 07/29/05   Page 7 of 48

Exhibit 6a

Case 1:05-cv-05808-KMW    Document 27-3    Filed 07/29/05    Page 8 of 48

**Brune Re: Tenet Capital Partners Convertible Opportunity Fund**
**Summary of Realized Gain (loss) by Security**
 **For the Period March 1, 2004 through June 30, 2005**

| Description | Symbol | Realized Gain (Loss) | | | |
|---|---|---|---|---|---|
| | | Bank of America | Lehman Brothers | Bear Stearns | Total |
| CAMBREX CORP DEC 025 **** CALL | QCBML25 | | | (328.00) | (328.00) |
| CAMBREX CORP | CBM | | | (280.91) | (280.91) |
| | | | | | (608.91) |
| ASK JEEVES INC March 025 - Option | | (4,300.01) | | | (4,300.01) |
| ASK JEEVES INC | ASKJ | 3,980.95 | | | 3,980.95 |
| | | | | | (319.06) |
| GENZYME-GENL MAY 055 PUT | QGZQQK | 6.99 | | | 6.99 |
| QFUHRI | QFUHRI | 9.99 | | | 9.99 |
| QIDKRG | QIDKRG | 174.99 | | | 174.99 |
| QRQBRH | QRQBRH | 174.99 | | | 174.99 |
| CERADYNE INC CALL | QAUEFF | (5,100.00) | | | (5,100.00) |
| CERADYNE INC-CALIF Mar 025 | | | 319.98 | | 319.98 |
| CERADYNE INC-CALIF | CRDN | 5,015.77 | | | 5,015.77 |
| | | | | | 235.75 |
| MEDIMMUNE MAR 025 CALL | QMEQC25 | | | (7,138.98) | (7,138.98) |
| MEDIMMUNE | MEDI | | | 2,535.99 | 2,535.99 |
| MEDIMMUNE FEB 22.5 PUT | QMEQN22 | | | 5,409.76 | 5,409.76 |
| | | | | | 806.77 |
| QEOURJ | QEOURJ | 1,299.94 | | | 1,299.94 |
| FLAMEL TECHNOLOGIES SA | FLML | | | 1,989.57 | 1,989.57 |
| UNITED STATES TREASURY BILL | 912795RU7 | | | 3,073.26 | 3,073.26 |

Exhibit 6a

Case 1:05-cv-05808-KMW    Document 27-3    Filed 07/29/05    Page 9 of 48

**Brune Re: Tenet Capital Partners Convertible Opportunity Fund**
**Summary of Realized Gain (loss) by Security**
 **For the Period March 1, 2004 through June 30, 2005**

| Description | Symbol | Realized Gain (Loss) | | | |
| --- | --- | --- | --- | --- | --- |
| | | Bank of America | Lehman Brothers | Bear Stearns | Total |
| BIOGEN IDEC | BIIB | | | (2,417.50) | (2,417.50) |
| BIOGEN IDEC JAN 055 PUT | 09062X9M7 | | | 146.99 | 146.99 |
| BIOGEN IDEC FEB 060 PUT | QIHDN60 | | | 796.97 | 796.97 |
| BIOGEN IDEC APR 065 CALL | QIHDD65 | | | 4,813.47 | 4,813.47 |
| | | | | | 3,339.93 |
| TEVA PHARMACEUTICAL INDUSTRIES ADR | TEVA | 3,396.68 | | | 3,396.68 |
| VISHAY INTERTECHNOLOGY INC | 928298AF5 | | | (18,125.00) | (18,125.00) |
| VISHAY INTERTECHNOLOGY INC | VSH | | | 22,645.33 | 22,645.33 |
| | | | | | 4,520.33 |
| PHARMACEUTICAL RES INC | 717125AC2 | | | (31,118.58) | (31,118.58) |
| PHARMACEUTICAL RESOURCES INC | PRX | | | 35,922.70 | 35,922.70 |
| | | | | | 4,804.12 |
| ADOBE SYS MAY 055 PUT | QAEQQK | 1,049.95 | | | 1,049.95 |
| ADOBE SYSTEM INC | ADBE | 4,347.65 | | | 4,347.65 |
| | | | | | 5,397.60 |
| MICROSTRATEGY INC | MSTR | 6,312.57 | | | 6,312.57 |
| RADIAN GROUP INC | 750236AF8 | | | (2,187.50) | (2,187.50) |
| RADIAN GROUP INC | RDN | | | 2,431.51 | 2,431.51 |
| RADIAN GROUP MAY 050 **** CALL | QRDNE50 | | | 6,819.58 | 6,819.58 |
| | | | | | 7,063.59 |

Case 1:05-cv-05808-KMW    Document 27-3    Filed 07/29/05    Page 10 of 48

**Brune Re: Tenet Capital Partners Convertible Opportunity Fund**
**Summary of Realized Gain (loss) by Security**
** For the Period March 1, 2004 through June 30, 2005**

| Description | Symbol | Realized Gain (Loss) | | | |
| --- | --- | --- | --- | --- | --- |
| | | Bank of America | Lehman Brothers | Bear Stearns | Total |
| REASEARCH IN CALL | QRUPFO | (26,625.00) | | | (26,625.00) |
| RESEARCH IN MOTION LTD March 05 - Option | | | (8,162.51) | | (8,162.51) |
| RESEARCH IN MAY 055 PUT | QRUPQK | 139.99 | | | 139.99 |
| RESEARCH IN MOTION LTD Put Apr 070 | | | 924.96 | | 924.96 |
| RESEARCH IN MOTION LTD - Option | | | 5,624.90 | | 5,624.90 |
| RESEARCH IN DEC 080 **** | 7A699W9X6 | | | 12,796.69 | 12,796.69 |
| RESEARCH IN MOTION LTD | RIMM | 4,927.59 | (21.24) | 19,491.97 | 24,398.32 |
| | | | | | 9,097.35 |
| ABGENIX INC | 00339BAB3 | | | (2,187.50) | (2,187.50) |
| ABGENIX INC | ABGX | | | 13,892.35 | 13,892.35 |
| | | | | | 11,704.85 |
| F5 NETWORKS CALL | QFLKGK | (14,647.51) | | | (14,647.51) |
| F5 NETWORKS INC Put Mar 050 | | | 494.98 | | 494.98 |
| F5 NETWORKS INC Apr 045 | | | 534.93 | | 534.93 |
| F5 NETWORKS MAY 040 PUT | QFLKQH | 1,189.94 | | | 1,189.94 |
| F5 NETWORKS INC | FFIV | 24,972.32 | | | 24,972.32 |
| | | | | | 12,544.66 |
| CHUBB CORPORATION | CBPRB | | | (9,251.22) | (9,251.22) |
| CHUBB CORP JUN 070 **** CALL | QCBF70 | | | 8,879.78 | 8,879.78 |
| CHUBB CORPORATION | CB | | | 14,789.83 | 14,789.83 |
| | | | | | 14,418.39 |
| BROADCOM | BRCM | | | 15,362.62 | 15,362.62 |
| AVAYA INC | 053499AA7 | | | 1,250.00 | 1,250.00 |
| AVAYA INC | AV | | | 15,289.91 | 15,289.91 |
| | | | | | 16,539.91 |

Brune Re: Tenet Capital Partners Convertible Opportunity Fund
**Summary of Realized Gain (loss) by Security**
 For the Period March 1, 2004 through June 30, 2005

| Description | Symbol | Realized Gain (Loss) | | | |
| --- | --- | --- | --- | --- | --- |
| | | Bank of America | Lehman Brothers | Bear Stearns | Total |
| SFBC INTL   SEP 035 AMEX CALL | QJQEI35 | | | (8,068.00) | (8,068.00) |
| SFBC INTL   SEP 030 AMEX PUT | QJQEU30 | | | 6,730.83 | 6,730.83 |
| SFBC INTL INC | SFCC | | | 19,883.16 | 19,883.16 |
| | | | | | 18,545.99 |
| DIAMOND OFFSHORE DRILLING INC | DO | | | 20,101.20 | 20,101.20 |
| CEPHALON INC | 156708AE9 | | | (11,875.00) | (11,875.00) |
| CEPHALON INC MAY 060 **** CALL | QCQEE60 | | | 5,609.86 | 5,609.86 |
| CEPHALON INC | CEPH | | | 29,361.17 | 29,361.17 |
| | | | | | 23,096.03 |
| AMAZON COM INC | 023135AF3 | | | (10,125.00) | (10,125.00) |
| AMAZON.COM INC - Call Option | | | (8,845.05) | | (8,845.05) |
| AMAZON.COM INC - OPTION | | | 99.99 | | 99.99 |
| AMAZON COM JAN 040 PUT | 0231359M0 | | | 446.98 | 446.98 |
| AMAZON.COM INC - OPTION | | | 749.97 | | 749.97 |
| AMAZON.COM INC - OPTION | | | 3,249.87 | | 3,249.87 |
| AMAZON.COM INC | AMZN | 474.70 | 3,150.27 | 35,125.80 | 38,750.77 |
| | | | | | 24,327.53 |
| ALEXION PHARMACEUTICALS INC | 015351AB5 | | | (5,445.00) | (5,445.00) |
| ALEXION PHAR MAY 025 **** CALL | QXQNE25 | | | 5,834.86 | 5,834.86 |
| ALEXION PHARMACEUTICALS INC | ALXN | | | 25,600.23 | 25,600.23 |
| | | | | | 25,990.09 |
| MOTOROLA INC | MEU | | | (218,869.15) | (218,869.15) |
| MOTOROLA INC JUN 020 **** CALL | QMOTF20 | | | 1,749.95 | 1,749.95 |
| MOTOROLA INC | MOT | | | 248,408.20 | 248,408.20 |
| | | | | | 31,289.00 |
| GUIDANT CORP | GDT | | | 42,738.43 | 42,738.43 |

Exhibit 6a

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 12 of 48

**Brune Re: Tenet Capital Partners Convertible Opportunity Fund**
**Summary of Realized Gain (loss) by Security**
**For the Period March 1, 2004 through June 30, 2005**

| Description | Symbol | Realized Gain (Loss) | | | |
|---|---|---|---|---|---|
| | | Bank of America | Lehman Brothers | Bear Stearns | Total |
| TERADYNE INC | 880770AD4 | | | (30,000.00) | (30,000.00) |
| TERADYNE INC | TER | | | 74,604.96 | 74,604.96 |
| | | | | | 44,604.96 |
| CYPRESS SEMICONDUCTOR CORP | CY/J05 | | | (3,750.00) | (3,750.00) |
| CYPRESS SEMI MAY22.50**** CALL | QCYE22 | | | 3,119.92 | 3,119.92 |
| CYPRESS SEMOCONDUCTOR CORP | CY | | | 46,451.70 | 46,451.70 |
| | | | | | 45,821.62 |
| TOWER AUTOMOTIVE INC | TWR | | | 45,506.42 | 45,506.42 |
| TOWER AUTOMOTIVE INC | 891707AE1 | | | 5,773.75 | 5,773.75 |
| | | | | | 51,280.17 |
| OSI PHARMAC CALL | QGHUGJ | (10,285.01) | | | (10,285.01) |
| OSI PHARMAC PUT | QGHURG | 350.98 | | | 350.98 |
| OSI PHARMACEUTICALS INC - Option | | | 374.98 | | 374.98 |
| OSI PHARMACEUTICALS INC - Option | | | 417.43 | | 417.43 |
| OSI PHARMACEUTICALS INC | OSIP | 5,975.37 | | 60,774.60 | 66,749.97 |
| | | | | | 57,608.35 |
| SEPRACOR INC | 817315AL8 | | | 750.00 | 750.00 |
| SEPRACOR INC | SEPR | | | 67,773.69 | 67,773.69 |
| | | | | | 68,523.69 |

Exhibit 6a

**Brune Re: Tenet Capital Partners Convertible Opportunity Fund**
**Summary of Realized Gain (loss) by Security**
 **For the Period March 1, 2004 through June 30, 2005**

| Description | Symbol | Realized Gain (Loss) | | | |
|---|---|---|---|---|---|
| | | Bank of America | Lehman Brothers | Bear Stearns | Total |
| PALMONE    DEC 040 **** PUT | QUPYX40 | | | (16,983.44) | (16,983.44) |
| PALMONE    SEP 050 **** CALL | QUPYI50 | | | (5,663.80) | (5,663.80) |
| PALMONE MAY22.50 PUT | QUPYQX | 14.99 | | | 14.99 |
| PALMONE INC - Option | | | 137.49 | | 137.49 |
| PALMONE CALL | QUPYHX | 2,039.69 | | | 2,039.69 |
| PALMONE    JAN 030 **** | QUPYM30 | | | 5,628.84 | 5,628.84 |
| PALMONE    SEP 030 **** PUT | QUPYU30 | | | 6,110.12 | 6,110.12 |
| PALMONE    DEC 035 **** PUT | 69713P9X7 | | | 34,825.08 | 34,825.08 |
| PALMONE INC | PLMO | (3,969.08) | | 142,760.29 | 138,791.21 |
| | | | | | 164,900.18 |
| IMCLONE SYS JAN 100 **** CALL | QQCIA100 | | | (25,220.00) | (25,220.00) |
| IMCLONE SYS JAN 050 PUT | QQCIM50 | | | (22,159.26) | (22,159.26) |
| IMCLONE SYS JAN 105 **** CALL | QCKQA105 | | | (20,820.00) | (20,820.00) |
| IMCLONE SYS JAN 110 **** CALL | QCKQA110 | | | (5,260.00) | (5,260.00) |
| IMCLONE SYSTEMS INC | IMCL | | | 1,528,718.54 | 1,528,718.54 |
| | | | | | 1,455,259.28 |
| Misc (Unreconciled) | | | | | (39.02) |
| | | **(12,555,345.93)** | **194,401.90** | **(1,856,017.95)** | **(14,217,001.00)** |

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 13 of 48

# Exhibit 6b

Exhibit 6b

**Summary of Bear Stearns 103-88018 Investment Activity**

| SETTLEMENT DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | Accrued Interest | CREDIT AMOUNT AMOUNT | Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **TOTAL CASH & CASH EQUIVALENTS** | | | | | | | | | | | |
| 4/7/2004 | 4/2/2004 | SOLD | ALEXION PHARMACEUTICALS INC | ALXN | (3,738) | 23.8835 | (0.00) | | 89,087.53 | | |
| 4/8/2004 | 4/5/2004 | SOLD | ALEXION PHARMACEUTICALS INC | ALXN | (1,235) | 23.9000 | (0.00) | | 29,454.05 | | |
| 4/22/2004 | 4/19/2004 | SOLD | ALEXION PHARMACEUTICALS INC | ALXN | (1,500) | 24.0507 | (0.00) | | 36,000.20 | | |
| 4/23/2004 | 4/20/2004 | SOLD | ALEXION PHARMACEUTICALS INC | ALXN | (600) | 24.1800 | (0.00) | | 14,477.66 | | |
| 4/27/2004 | 4/22/2004 | SOLD | ALEXION PHARMACEUTICALS INC | ALXN | (500) | 24.8000 | (0.00) | | 12,374.70 | | |
| 4/29/2004 | 4/26/2004 | SOLD | ALEXION PHARMACEUTICALS INC | ALXN | (1,500) | 25.7497 | (0.00) | | 38,548.64 | | |
| 5/4/2004 | 4/29/2004 | BOUGHT | ALEXION PHARMACEUTICALS INC | ALXN | 6,000 | 23.6200 | 142,020.00 | | (0.00) | | |
| 5/7/2004 | 5/4/2004 | SOLD | ALEXION PHARMACEUTICALS INC | ALXN | (3,000) | 22.4940 | (0.00) | | 67,330.42 | | |
| 5/13/2004 | 5/10/2004 | BOUGHT | ALEXION PHARMACEUTICALS INC | ALXN | 5,000 | 20.6843 | 103,671.50 | | (0.00) | | |
| 5/18/2004 | 5/13/2004 | SOLD | ALEXION PHARMACEUTICALS INC | ALXN | (3,000) | 20.9048 | (0.00) | | 62,562.93 | | |
| 5/20/2004 | 5/17/2004 | SOLD | ALEXION PHARMACEUTICALS INC | ALXN | (2,220) | 20.7518 | (0.00) | | 45,956.92 | | |
| 5/21/2004 | 5/18/2004 | SOLD | ALEXION PHARMACEUTICALS INC | ALXN | (2,700) | 21.0000 | (0.00) | | 56,563.67 | | |
| 5/26/2004 | 5/21/2004 | BOUGHT | ALEXION PHARMACEUTICALS INC | ALXN | 1,500 | 19.8433 | 29,839.95 | | (0.00) | | |
| 5/27/2004 | 5/24/2004 | BOUGHT | ALEXION PHARMACEUTICALS INC | ALXN | 2,493 | 19.8375 | 49,579.54 | | (0.00) | | |
| 6/3/2004 | 5/28/2004 | BOUGHT | ALEXION PHARMACEUTICALS INC | ALXN | 5,000 | 20.2791 | 101,645.50 | | (0.00) | | 25,600.23 |
| 4/6/2004 | 4/5/2004 | SOLD | CALL ALEXION PHAR MAY 025 **** | QXQNE25 | (35) | 1.7000 | (0.00) | | 5,834.86 | | |
| 5/24/2004 | | EXPIRED | CALL ALEXION PHAR MAY 025 **** | 0163519E1 | 35 | (0.0000) | (0.00) | | (0.00) | | 5,834.86 |
| 4/16/2004 | 4/13/2004 | SOLD | ABGENIX INC | ABGX | (5,000) | 14.0000 | (0.00) | | 69,748.36 | | |
| 4/19/2004 | 4/14/2004 | SOLD | ABGENIX INC | ABGX | (5,000) | 14.0950 | (0.00) | | 70,473.35 | | |
| 4/21/2004 | 4/16/2004 | SOLD | ABGENIX INC | ABGX | (3,345) | 14.0000 | (0.00) | | 46,661.65 | | |
| 4/23/2004 | 4/20/2004 | SOLD | ABGENIX INC | ABGX | (1,500) | 14.4680 | (0.00) | | 21,626.49 | | |
| 4/27/2004 | 4/22/2004 | SOLD | ABGENIX INC | ABGX | (1,000) | 14.8500 | (0.00) | | 14,799.65 | | |
| 4/28/2004 | 4/23/2004 | SOLD | ABGENIX INC | ABGX | (955) | 14.7500 | (0.00) | | 14,038.17 | | |
| 4/29/2004 | 4/26/2004 | SOLD | ABGENIX INC | ABGX | (5,000) | 18.3052 | (0.00) | | 91,273.85 | | |
| 4/30/2004 | 4/27/2004 | SOLD | ABGENIX INC | ABGX | (2,500) | 18.7308 | (0.00) | | 46,700.90 | | |
| 5/5/2004 | 4/30/2004 | BOUGHT | ABGENIX INC | ABGX | 12,000 | 16.2856 | 196,027.20 | | (0.00) | | |
| 5/6/2004 | 5/3/2004 | SOLD | ABGENIX INC | ABGX | (5,500) | 17.7051 | (0.00) | | 97,100.77 | | |
| 5/12/2004 | 5/7/2004 | BOUGHT | ABGENIX INC | ABGX | 5,000 | 16.2471 | 81,485.50 | | (0.00) | | |
| 5/13/2004 | 5/10/2004 | BOUGHT | ABGENIX INC | ABGX | 10,000 | 15.0890 | 151,390.00 | | (0.00) | | |
| 5/17/2004 | 5/12/2004 | BOUGHT | ABGENIX INC | ABGX | 2,000 | 14.8000 | 29,700.00 | | (0.00) | | |
| 5/18/2004 | 5/13/2004 | SOLD | ABGENIX INC | ABGX | (5,000) | 16.0072 | (0.00) | | 79,784.12 | | |
| 5/20/2004 | 5/17/2004 | SOLD | ABGENIX INC | ABGX | (5,000) | 15.7000 | (0.00) | | 78,248.16 | | |
| 5/21/2004 | 5/18/2004 | SOLD | ABGENIX INC | ABGX | (3,129) | 16.8800 | (0.00) | | 52,659.83 | | |
| 6/3/2004 | 5/28/2004 | BOUGHT | ABGENIX INC | ABGX | 13,000 | 15.1102 | 197,082.60 | | (0.00) | | |
| 6/10/2004 | 6/7/2004 | BOUGHT | ABGENIX INC | ABGX | 929 | 14.5400 | 13,537.65 | | (0.00) | | 13,892.35 |
| 5/21/2004 | 5/18/2004 | SOLD | ADVANCED MICRO DEVICES INC | AMD | (10,000) | 14.0200 | (0.00) | | 139,696.71 | | |
| 5/24/2004 | 5/19/2004 | SOLD | ADVANCED MICRO DEVICES INC | AMD | (13,000) | 14.7305 | (0.00) | | 190,842.01 | | |
| 7/9/2004 | 7/6/2004 | BOUGHT | ADVANCED MICRO DEVICES INC | AMD | 23,000 | 14.7846 | 341,195.80 | | (0.00) | | |
| 8/5/2004 | 8/2/2004 | SOLD | ADVANCED MICRO DEVICES INC | AMD | (2,000) | 12.2775 | (0.00) | | 24,451.42 | | |
| 8/17/2004 | 8/12/2004 | BOUGHT | ADVANCED MICRO DEVICES INC | AMD | 2,000 | 10.9500 | 22,003.00 | | (0.00) | | |
| 8/25/2004 | 8/20/2004 | SOLD | ADVANCED MICRO DEVICES INC | AMD | (3,500) | 11.8257 | (0.00) | | 41,210.98 | | |
| 9/7/2004 | 9/1/2004 | SOLD | ADVANCED MICRO DEVICES INC | AMD | (4,000) | 11.5950 | (0.00) | | 46,175.91 | | |
| 9/8/2004 | 9/2/2004 | SOLD | ADVANCED MICRO DEVICES INC | AMD | (3,500) | 11.6786 | (0.00) | | 40,696.14 | | |
| 9/14/2004 | 9/9/2004 | SOLD | ADVANCED MICRO DEVICES INC | AMD | (5,500) | 11.5091 | (0.00) | | 63,020.56 | | |

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 15 of 48

Exhibit 6b

**Summary of Bear Stearns 103-88018 Investment Activity**

| SETTLEMENT_ DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | Accrued Interest | CREDIT AMOUNT AMOUNT | Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/15/2004 | 9/10/2004 | SOLD | ADVANCED MICRO DEVICES INC | AMD | (3,000) | 12.1267 | (0.00) | | 36,226.24 | | |
| 9/16/2004 | 9/13/2004 | SOLD | ADVANCED MICRO DEVICES INC | AMD | (5,000) | 12.8860 | (0.00) | | 64,175.49 | | |
| 12/2/2004 | 11/29/2004 | BOUGHT | ADVANCED MICRO DEVICES INC | AMD | 21,000 | 21.2483 | 447,264.30 | | (0.00) | | |
| 1/14/2005 | 1/11/2005 | BOUGHT | ADVANCED MICRO DEVICES INC | AMD | 3,500 | 15.6857 | 55,077.95 | | | | (219,045.59) |
| | | | | | | | | | | | |
| 8/4/2004 | 7/30/2004 | SOLD | AMAZON.COM INC | AMZN | (3,500) | 38.8050 | (0.00) | | 135,636.32 | | |
| 8/11/2004 | 8/6/2004 | BOUGHT | AMAZON.COM INC | AMZN | 2,500 | 36.1100 | 90,403.00 | | (0.00) | | |
| 8/16/2004 | 8/11/2004 | BOUGHT | AMAZON.COM INC | AMZN | 7,500 | 36.2120 | 271,968.00 | | (0.00) | | |
| 8/18/2004 | 8/13/2004 | BOUGHT | AMAZON.COM INC | AMZN | 1,000 | 36.2700 | 36,323.00 | | (0.00) | | |
| 8/23/2004 | 8/18/2004 | BOUGHT | AMAZON.COM INC | AMZN | 1,500 | 35.9067 | 53,938.05 | | (0.00) | | |
| 8/23/2004 | 8/18/2004 | BOUGHT | AMAZON.COM INC | AMZN | 1,000 | 38.4300 | 38,483.05 | | (0.00) | | |
| 8/23/2004 | 8/18/2004 | SOLD | AMAZON.COM INC | AMZN | (9,500) | 38.4263 | (0.00) | | 364,563.30 | | |
| 8/30/2004 | 8/25/2004 | SOLD | AMAZON.COM INC | AMZN | (500) | 39.6200 | (0.00) | | 19,756.53 | | |
| 8/30/2004 | 8/25/2004 | SOLD | AMAZON.COM INC | AMZN | (5,500) | 40.0224 | (0.00) | | 219,840.04 | | |
| 9/16/2004 | 9/13/2004 | SOLD | AMAZON.COM INC | AMZN | (3,000) | 39.7327 | (0.00) | | 119,042.31 | | |
| 9/17/2004 | 9/14/2004 | SOLD | AMAZON.COM INC | AMZN | (2,000) | 41.4700 | (0.00) | | 82,835.05 | | |
| 10/27/2004 | 10/22/2004 | BOUGHT | AMAZON.COM INC | AMZN | 3,500 | 34.9186 | 122,393.10 | | (0.00) | | |
| 11/16/2004 | 11/10/2004 | SOLD | AMAZON.COM INC | AMZN | (1,750) | 38.4377 | (0.00) | | 67,173.90 | | |
| 1/13/2005 | 1/10/2005 | BOUGHT | AMAZON.COM INC | AMZN | 3,000 | 41.8000 | 125,553.00 | | | | |
| 1/27/2005 | 1/24/2005 | BOUGHT | AMAZON.COM INC | AMZN | 5,750 | 40.7600 | 234,660.50 | | | | 35,125.80 |
| | | | | | | | | | | | |
| 8/16/2004 | 8/11/2004 | BOUGHT | AVAYA INC | AV | 17,000 | 12.8836 | 219,874.20 | | (0.00) | | |
| 8/17/2004 | 8/12/2004 | BOUGHT | AVAYA INC | AV | 9,500 | 12.7805 | 121,892.75 | | (0.00) | | |
| 8/18/2004 | 8/13/2004 | BOUGHT | AVAYA INC | AV | 4,000 | 12.6050 | 50,623.00 | | (0.00) | | |
| 8/23/2004 | 8/18/2004 | SOLD | AVAYA INC | AV | (29,000) | 13.3876 | (0.00) | | 386,778.31 | | |
| 10/6/2004 | 10/1/2004 | SOLD | AVAYA INC | AV | (1,500) | 13.9867 | (0.00) | | 20,901.55 | | 15,289.91 |
| | | | | | | | | | | | |
| 9/14/2004 | 9/9/2004 | SOLD | APPLE COMPUTER INC | AAPL | (6,000) | 35.6983 | (0.00) | | 213,881.78 | | |
| 10/19/2004 | 10/14/2004 | SOLD | APPLE COMPUTER INC | AAPL | (13,000) | 45.4453 | (0.00) | | 590,122.07 | | |
| 10/29/2004 | 10/26/2004 | BOUGHT | APPLE COMPUTER INC | AAPL | 7,000 | 47.4621 | 332,587.70 | | (0.00) | | |
| 11/16/2004 | 11/11/2004 | BOUGHT | APPLE COMPUTER INC | AAPL | 12,000 | 55.3595 | 664,914.00 | | (0.00) | | (193,497.85) |
| | | | | | | | | | | | |
| 9/16/2004 | 9/13/2004 | SOLD | AUTODESK INC | ADSK | (6,000) | 46.8312 | (0.00) | | 280,677.62 | | |
| 11/29/2004 | 11/23/2004 | BOUGHT | AUTODESK INC | ADSK | 4,815 | 64.5770 | 311,182.01 | | (0.00) | | |
| 12/27/2004 | 12/21/2004 | SOLD | AUTODESK INC | ADSK | (1,185) | (0.0000) | (0.00) | | (0.00) | | |
| 1/3/2005 | 12/29/2004 | BOUGHT | AUTODESK INC | ADSK | 2,370 | 38.3084 | 90,912.41 | | | | (121,416.80) |
| | | | | | | | | | | | |
| 1/11/2005 | 1/6/2005 | SOLD | BIOGEN IDEC | BIIB | (1,950) | 65.5160 | (0.00) | | 127,652.71 | | |
| 1/25/2005 | 1/20/2005 | BOUGHT | BIOGEN IDEC | BIIB | 179 | 64.9000 | 11,670.10 | | | | |
| 1/27/2005 | 1/24/2005 | BOUGHT | BIOGEN IDEC | BIIB | 421 | 62.6000 | 26,407.60 | | | | |
| 2/23/2005 | 2/17/2005 | BOUGHT | BIOGEN IDEC | BIIB | 1,350 | 68.0926 | 91,992.51 | | | | (2,417.50) |
| | | | | | | | | | | | |
| 1/24/2005 | 1/21/2005 | BOUGHT | CALL BIOGEN IDEC APR 065 | QIHDD65 | 10 | 3.9000 | 3,953.00 | | | | |
| 1/25/2005 | 1/24/2005 | BOUGHT | CALL BIOGEN IDEC APR 065 | QIHDD65 | 20 | 3.4900 | 7,043.00 | | | | |
| 2/18/2005 | 2/17/2005 | SOLD | CALL BIOGEN IDEC APR 065 | QIHDD65 | (30) | 5.3000 | | | 15,809.47 | | 4,813.47 |

Case 1:05-cv-05808-KMW    Document 27-3    Filed 07/29/05    Page 16 of 48

Exhibit 6b

Summary of Bear Stearns 103-88018 Investment Activity

| SETTLEMENT DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | Accrued Interest | CREDIT AMOUNT AMOUNT | Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/31/2005 | 1/28/2005 | SOLD | PUT BIOGEN IDEC FEB 060 | QIHDN60 | (10) | 0.8500 | | | 796.97 | | |
| 2/22/2005 | | EXPIRED | PUT BIOGEN IDEC FEB 060 | 4D399W9N8 | 10 | | | | | | 796.97 |
| | | | | | | | | | | | |
| 9/16/2004 | 9/13/2004 | SOLD | BROADCOM | BRCM | (17,500) | 29.2995 | (0.00) | | 511,851.25 | | |
| 10/22/2004 | 10/19/2004 | SOLD | BROADCOM | BRCM | (3,500) | 28.9406 | (0.00) | | 101,111.72 | | |
| 10/29/2004 | 10/26/2004 | BOUGHT | BROADCOM | BRCM | 10,000 | 25.9850 | 260,353.00 | | (0.00) | | |
| 11/22/2004 | 11/17/2004 | SOLD | BROADCOM | BRCM | (3,000) | 30.7133 | (0.00) | | 91,984.74 | | |
| 12/6/2004 | 12/1/2004 | SOLD | BROADCOM | BRCM | (15,750) | 33.5221 | (0.00) | | 527,170.22 | | |
| 12/22/2004 | 12/17/2004 | BOUGHT | BROADCOM | BRCM | 5,697 | 31.1000 | 177,464.55 | | (0.00) | | |
| 1/3/2005 | 12/29/2004 | BOUGHT | BROADCOM | BRCM | 24,053 | 32.3341 | 778,937.76 | | | | 15,362.62 |
| | | | | | | | | | | | |
| 8/10/2004 | 8/9/2004 | BOUGHT | CALL COST PLUS NOV 040 **** | QCUSK40 | 60 | 0.3500 | 2,283.00 | | (0.00) | | |
| 8/11/2004 | 8/10/2004 | BOUGHT | CALL COST PLUS NOV 040 **** | QCUSK40 | 1 | 0.4000 | 93.00 | | (0.00) | | |
| 11/22/2004 | | EXPIRED | CALL COST PLUS NOV 040 **** | 2214859K3 | (61) | (0.0000) | (0.00) | | (0.00) | | (2,376.00) |
| | | | | | | | | | | | |
| 8/10/2004 | 8/9/2004 | BOUGHT | CALL CAMBREX CORP DEC 025 **** | QCBML25 | 5 | 0.5500 | 328.00 | | (0.00) | | |
| 12/20/2004 | | JOURNAL | CALL CAMBREX CORP DEC 025 **** | 1320119L3 | (5) | (0.0000) | (0.00) | | (0.00) | | (328.00) |
| | | | | | | | | | | | |
| 12/22/2004 | 12/17/2004 | BOUGHT | CAMBREX CORP | CBM | 500 | 25.0000 | 12,502.50 | | (0.00) | | |
| 1/18/2005 | 1/12/2005 | SOLD | CAMBREX CORP | CBM | (500) | 24.5500 | | | 12,221.59 | | (280.91) |
| | | | | | | | | | | | |
| 5/11/2004 | 5/6/2004 | SOLD | CAPITAL ONE FINANCIAL CORP | COF | (5,000) | 66.3340 | (0.00) | | 331,412.23 | | |
| 5/12/2004 | 5/7/2004 | BOUGHT | CAPITAL ONE FINANCIAL CORP | COF | 4,000 | 63.9685 | 256,074.00 | | (0.00) | | |
| 5/13/2004 | 5/10/2004 | BOUGHT | CAPITAL ONE FINANCIAL CORP | COF | 1,000 | 61.5500 | 61,600.00 | | (0.00) | | |
| 5/18/2004 | 5/13/2004 | SOLD | CAPITAL ONE FINANCIAL CORP | COF | (12,000) | 65.9000 | (0.00) | | 790,181.49 | | |
| 5/19/2004 | 5/14/2004 | SOLD | CAPITAL ONE FINANCIAL CORP | COF | (5,000) | 66.2000 | (0.00) | | 330,742.25 | | |
| 5/21/2004 | 5/18/2004 | SOLD | CAPITAL ONE FINANCIAL CORP | COF | (15,000) | 65.4889 | (0.00) | | 981,560.51 | | |
| 5/24/2004 | 5/19/2004 | SOLD | CAPITAL ONE FINANCIAL CORP | COF | (16,500) | 67.0310 | (0.00) | | 1,105,160.61 | | |
| 6/3/2004 | 5/28/2004 | BOUGHT | CAPITAL ONE FINANCIAL CORP | COF | 10,000 | 69.9975 | 700,475.00 | | (0.00) | | |
| 6/9/2004 | 6/4/2004 | SOLD | CAPITAL ONE FINANCIAL CORP | COF | (5,000) | 69.4000 | (0.00) | | 346,741.88 | | |
| 6/10/2004 | 6/7/2004 | SOLD | CAPITAL ONE FINANCIAL CORP | COF | (13,000) | 71.0954 | (0.00) | | 923,568.57 | | |
| 6/11/2004 | 6/8/2004 | BOUGHT | CAPITAL ONE FINANCIAL CORP | COF | 50,000 | 71.3324 | 3,569,120.00 | | (0.00) | | |
| 6/11/2004 | 6/8/2004 | SOLD | CAPITAL ONE FINANCIAL CORP | COF | (30,000) | 71.7933 | (0.00) | | 2,152,248.60 | | |
| 6/28/2004 | 6/23/2004 | BOUGHT | CAPITAL ONE FINANCIAL CORP | COF | 15,300 | 69.9000 | 1,070,235.00 | | (0.00) | | |
| 7/7/2004 | 7/1/2004 | BOUGHT | CAPITAL ONE FINANCIAL CORP | COF | 21,000 | 68.5905 | 1,441,450.50 | | (0.00) | | |
| 8/9/2004 | 8/4/2004 | BOUGHT | CAPITAL ONE FINANCIAL CORP | COF | 200 | 68.2000 | 13,693.00 | | (0.00) | | (151,031.36) |
| | | | | | | | | | | | |
| 9/7/2004 | 9/1/2004 | SOLD | EBAY | EBAY | (6,000) | 87.1222 | (0.00) | | 522,417.96 | | |
| 9/15/2004 | 9/10/2004 | SOLD | EBAY | EBAY | (4,000) | 89.8880 | (0.00) | | 359,340.58 | | |
| 9/16/2004 | 9/13/2004 | SOLD | EBAY | EBAY | (2,000) | 91.8299 | (0.00) | | 183,552.50 | | |
| 9/17/2004 | 9/14/2004 | SOLD | EBAY | EBAY | (8,500) | 93.7888 | (0.00) | | 796,758.14 | | |
| 9/24/2004 | 9/21/2004 | BOUGHT | EBAY | EBAY | 2,000 | 90.5850 | 181,273.00 | | (0.00) | | |
| 9/30/2004 | 9/27/2004 | BOUGHT | EBAY | EBAY | 5,000 | 89.3512 | 447,006.00 | | (0.00) | | |
| 11/16/2004 | 11/10/2004 | BOUGHT | EBAY | EBAY | 13,000 | 104.3000 | 1,356,550.00 | | (0.00) | | |
| 1/24/2005 | 1/19/2005 | BOUGHT | EBAY | EBAY | 500 | 94.6300 | 47,368.00 | | (0.00) | | |

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 17 of 48

Exhibit 6b

Summary of Bear Stearns 103-88018 Investment Activity

| SETTLEMENT_DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | Accrued Interest | CREDIT AMOUNT AMOUNT | Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/25/2005 | 1/20/2005 | BOUGHT | EBAY | EBAY | 59,500 | 85.8025 | 5,108,226.75 | | | | |
| 1/26/2005 | 1/21/2005 | BOUGHT | EBAY | EBAY | 500 | 100.0000 | 50,002.50 | | | | |
| 1/26/2005 | 1/21/2005 | BOUGHT | EBAY | EBAY | 21,500 | 85.5512 | 1,840,428.80 | | | | |
| 1/26/2005 | 1/21/2005 | SOLD | EBAY | EBAY | (15,000) | 87.0083 | | | 1,304,328.56 | | |
| 1/27/2005 | 1/24/2005 | BOUGHT | EBAY | EBAY | 15,600 | 85.7731 | 1,338,843.36 | | | | |
| 1/28/2005 | 1/25/2005 | BOUGHT | EBAY | EBAY | 19,100 | 80.5685 | 1,539,816.35 | | | | |
| 1/28/2005 | 1/25/2005 | SOLD | EBAY | EBAY | (87,100) | 82.1862 | | | 7,153,824.50 | | |
| 1/31/2005 | 1/26/2005 | SOLD | EBAY | EBAY | (14,100) | 80.6629 | | | 1,136,601.47 | | |
| 1/31/2005 | 1/26/2005 | SOLD | EBAY | EBAY | (61,300) | 81.6417 | | | 5,001,403.55 | | |
| 2/2/2005 | 1/28/2005 | BOUGHT | EBAY | EBAY | 15,000 | 81.1667 | 1,218,250.50 | | | | |
| 2/2/2005 | 1/28/2005 | BOUGHT | EBAY | EBAY | 45,000 | 81.3333 | 3,662,251.50 | | | | |
| 2/4/2005 | 2/1/2005 | BOUGHT | EBAY | EBAY | 1,300 | 79.9846 | 103,917.98 | | | | (435,707.48) |
| 7/27/2004 | 7/22/2004 | SOLD | ELECTRONIC ARTS | ERTS | (5,200) | 52.5000 | (0.00) | | 272,733.61 | | |
| 7/28/2004 | 7/23/2004 | BOUGHT | ELECTRONIC ARTS | ERTS | 1,200 | 49.7317 | 59,738.04 | | (0.00) | | |
| 8/11/2004 | 8/6/2004 | BOUGHT | ELECTRONIC ARTS | ERTS | 3,500 | 47.4800 | 166,358.00 | | (0.00) | | |
| 8/17/2004 | 8/12/2004 | BOUGHT | ELECTRONIC ARTS | ERTS | 500 | 48.6100 | 24,358.00 | | (0.00) | | |
| 8/23/2004 | 8/18/2004 | SOLD | ELECTRONIC ARTS | ERTS | (4,000) | 49.1898 | (0.00) | | 196,551.59 | | |
| 8/25/2004 | 8/20/2004 | SOLD | ELECTRONIC ARTS | ERTS | (1,500) | 49.5267 | (0.00) | | 74,210.31 | | |
| 9/15/2004 | 9/10/2004 | SOLD | ELECTRONIC ARTS | ERTS | (2,000) | 49.0225 | (0.00) | | 97,939.70 | | |
| 1/7/2005 | 1/4/2005 | BOUGHT | ELECTRONIC ARTS | ERTS | 4,000 | 59.3325 | 237,533.00 | | | | |
| 1/21/2005 | 1/18/2005 | BOUGHT | ELECTRONIC ARTS | ERTS | 2,600 | 60.7188 | 158,001.88 | | | | |
| 1/24/2005 | 1/19/2005 | BOUGHT | ELECTRONIC ARTS | ERTS | 900 | 60.3500 | 54,368.00 | | | | (58,921.71) |
| 7/23/2004 | 7/22/2004 | BOUGHT | CALL ELECTR ARTS JAN 060 **** | QEZQA60 | 60 | 1.7708 | 10,804.80 | | (0.00) | | |
| 8/11/2004 | 8/10/2004 | BOUGHT | CALL ELECTR ARTS JAN 060 **** | QEZQA60 | 1 | 0.8500 | 138.00 | | (0.00) | | |
| 8/16/2004 | 8/13/2004 | BOUGHT | CALL ELECTR ARTS JAN 060 **** | QEZQA60 | 1 | 0.8500 | 138.00 | | (0.00) | | |
| 12/14/2004 | 12/13/2004 | SOLD | CALL ELECTR ARTS JAN 060 **** | QEZQA60 | (60) | 1.6750 | (0.00) | | 9,866.76 | | |
| 12/15/2004 | 12/14/2004 | SOLD | CALL ELECTR ARTS JAN 060 **** | QEZQA60 | (2) | 3.2000 | (0.00) | | 586.98 | | (627.06) |
| 7/23/2004 | 7/22/2004 | SOLD | PUT ELECTR ARTS JAN37.50 | QEZQM37 | (96) | 0.7891 | 0.00 | | 7,287.18 | | |
| 7/26/2004 | 7/21/2004 | SOLD | PUT ELECTR ARTS JAN37.50 | QEZQM37 | (75) | 0.9000 | 0.00 | | 6,524.84 | | |
| 8/13/2004 | 8/12/2004 | SOLD | PUT ELECTR ARTS JAN37.50**** | QEZQM37 | (1) | 0.9500 | (0.00) | | 41.99 | | |
| 1/24/2005 | | EXPIRED | PUT ELECTR ART JAN 37.50 | 2855129M3 | 172 | | | | | | 13,854.01 |
| 7/27/2004 | 7/22/2004 | BOUGHT | FLEXTRONICS INTERNATIONAL | FLEX | 9,000 | 12.5000 | 112,965.00 | | (0.00) | | |
| 8/17/2004 | 8/12/2004 | BOUGHT | FLEXTRONICS INTERNATIONAL | FLEX | 4,000 | 10.1588 | 40,838.20 | | (0.00) | | |
| 8/23/2004 | 8/18/2004 | SOLD | FLEXTRONICS INTERNATIONAL | FLEX | (12,000) | 11.1267 | (0.00) | | 132,914.27 | | |
| 9/23/2004 | 9/20/2004 | SOLD | FLEXTRONICS INTERNATIONAL | FLEX | (1,000) | 12.9100 | (0.00) | | 12,856.69 | | (8,032.24) |
| 9/21/2004 | 9/16/2004 | SOLD | GOOGLE INC | GOOG | (6,050) | 114.5226 | (0.00) | | 692,540.01 | | |
| 9/22/2004 | 9/17/2004 | SOLD | GOOGLE INC | GOOG | (1,000) | 110.0000 | (0.00) | | 109,992.42 | | |
| 10/1/2004 | 9/28/2004 | SOLD | GOOGLE INC | GOOG | (2,150) | 122.8591 | (0.00) | | 264,030.38 | | |
| 10/4/2004 | 9/29/2004 | SOLD | GOOGLE INC | GOOG | (2,000) | 127.3941 | (0.00) | | 254,679.23 | | |
| 10/7/2004 | 10/4/2004 | SOLD | GOOGLE INC | GOOG | (1,100) | 135.2773 | (0.00) | | 148,743.54 | | |
| 10/19/2004 | 10/14/2004 | SOLD | GOOGLE INC | GOOG | (3,200) | 140.7278 | (0.00) | | 450,155.42 | | |

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 18 of 48

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 19 of 48

Exhibit 6b

**Summary of Bear Stearns 103-88018 Investment Activity**

| SETTLEMENT_DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | DEBIT Accrued Interest | CREDIT AMOUNT AMOUNT | CREDIT Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/20/2004 | 10/15/2004 | SOLD | GOOGLE INC | GOOG | (170) | 145.1088 | (0.00) | | 24,614.92 | | |
| 10/27/2004 | 10/22/2004 | SOLD | GOOGLE INC | GOOG | (5,770) | 177.1249 | (0.00) | | 1,021,695.25 | | |
| 10/29/2004 | 10/26/2004 | SOLD | GOOGLE INC | GOOG | (3,870) | 187.4611 | (0.00) | | 725,260.98 | | |
| 11/1/2004 | 10/27/2004 | SOLD | GOOGLE INC | GOOG | (4,840) | 185.8658 | 0.00 | | 899,421.21 | | |
| 11/2/2004 | 10/28/2004 | SOLD | GOOGLE INC | GOOG | (2,550) | 192.9806 | (0.00) | | 491,958.51 | | |
| 11/12/2004 | 11/8/2004 | SOLD | GOOGLE INC | GOOG | (8,000) | 172.3589 | (0.00) | | 1,378,435.93 | | |
| 11/16/2004 | 11/10/2004 | SOLD | GOOGLE INC | GOOG | (4,035) | 171.2547 | (0.00) | | 690,791.79 | | |
| 11/16/2004 | 11/11/2004 | SOLD | GOOGLE INC | GOOG | (7,115) | 170.4716 | (0.00) | | 1,212,518.29 | | |
| 11/17/2004 | 11/12/2004 | BOUGHT | GOOGLE INC | GOOG | 7,000 | 181.3007 | 1,269,457.90 | | (0.00) | | |
| 11/18/2004 | 11/15/2004 | BOUGHT | GOOGLE INC | GOOG | 30,000 | 185.0445 | 5,552,835.00 | | (0.00) | | |
| 11/18/2004 | 11/15/2004 | SOLD | GOOGLE INC | GOOG | (10,810) | 184.9473 | (0.00) | | 1,998,690.02 | | |
| 11/29/2004 | 11/23/2004 | SOLD | GOOGLE INC | GOOG | (2,430) | 171.1522 | (0.00) | | 415,785.61 | | |
| 12/3/2004 | 11/30/2004 | SOLD | GOOGLE INC | GOOG | (5) | 175.2300 | (0.00) | | 823.12 | | |
| 12/22/2004 | 12/17/2004 | SOLD | GOOGLE INC | GOOG | (3,000) | 182.5833 | (0.00) | | 547,572.08 | | |
| 12/23/2004 | 12/20/2004 | SOLD | GOOGLE INC | GOOG | (1,300) | 175.0000 | (0.00) | | 227,488.17 | | |
| | | SOLD | GOOGLE INC | GOOG | (5,660) | 184.5347 | (0.00) | | 1,044,155.95 | | |
| 1/24/2005 | 1/19/2005 | BOUGHT | GOOGLE INC | GOOG | 33,500 | 192.4224 | 6,447,828.40 | | | | |
| 1/26/2005 | 1/21/2005 | BOUGHT | GOOGLE INC | GOOG | 5,645 | 189.5605 | 1,070,354.27 | | | | |
| 1/26/2005 | 1/21/2005 | BOUGHT | GOOGLE INC | GOOG | 4,555 | 190.4940 | 867,930.92 | | | | |
| 1/27/2005 | 1/24/2005 | BOUGHT | GOOGLE INC | GOOG | 18,000 | 182.3944 | 3,284,002.20 | | | | |
| 1/27/2005 | 1/24/2005 | SOLD | GOOGLE INC | GOOG | (10,500) | 182.7619 | | | 1,918,408.81 | | |
| 1/28/2005 | 1/25/2005 | SOLD | GOOGLE INC | GOOG | (13,145) | 180.3223 | | | 2,369,598.39 | | |
| 1/31/2005 | 1/26/2005 | SOLD | GOOGLE INC | GOOG | (15,000) | 183.8334 | | | 2,756,660.27 | | |
| 2/3/2005 | 1/31/2005 | BOUGHT | GOOGLE INC | GOOG | 5,000 | 194.7500 | 974,003.00 | | | | |
| 2/4/2005 | 2/1/2005 | BOUGHT | GOOGLE INC | GOOG | 10,000 | 193.7400 | 1,937,903.00 | | | | (1,760,314.39) |
| 11/26/2004 | 11/24/2004 | SOLD | CALL GOOGLE INC DEC 175 **** | QGOUL175 | (13) | 9.5692 | (0.00) | | 12,386.66 | | |
| 12/20/2004 | | JOURNAL | CALL GOOGLE INC DEC 175 **** | 3Q199W9L6 | 13 | (0.0000) | (0.00) | | (0.00) | | 12,386.66 |
| 1/31/2005 | 1/28/2005 | SOLD | CALL GOOGLE FEB 195 | QGOUB195 | (44) | 8.1318 | | | 35,643.74 | | |
| 2/1/2005 | 1/31/2005 | BOUGHT | CALL GOOGLE FEB 195 | 3Q199W9B8 | 10 | 10.2000 | 10,253.00 | | | | |
| 2/2/2005 | 2/1/2005 | BOUGHT | CALL GOOGLE FEB 195 | 3Q199W9B8 | 34 | 9.2118 | 31,425.12 | | | | (6,034.38) |
| 8/3/2004 | 7/29/2004 | SOLD | INFOSPACE INC | INSP | (4,000) | 36.8100 | (0.00) | | 147,033.55 | | |
| 8/11/2004 | 8/6/2004 | BOUGHT | INFOSPACE INC | INSP | 3,500 | 34.5328 | 121,042.80 | | (0.00) | | |
| 8/17/2004 | 8/12/2004 | BOUGHT | INFOSPACE INC | INSP | 500 | 34.5900 | 17,348.00 | | (0.00) | | |
| 8/23/2004 | 8/18/2004 | SOLD | INFOSPACE INC | INSP | (4,000) | 37.1905 | (0.00) | | 148,555.51 | | |
| 8/25/2004 | 8/20/2004 | SOLD | INFOSPACE INC | INSP | (3,000) | 38.9703 | (0.00) | | 116,755.16 | | |
| 8/30/2004 | 8/25/2004 | SOLD | INFOSPACE INC | INSP | (5,000) | 39.2652 | (0.00) | | 196,068.40 | | |
| 9/7/2004 | 9/1/2004 | SOLD | INFOSPACE INC | INSP | (1,500) | 38.9733 | (0.00) | | 58,380.58 | | |
| 9/10/2004 | 9/7/2004 | SOLD | INFOSPACE INC | INSP | (4,000) | 41.4500 | (0.00) | | 165,593.12 | | |
| 9/15/2004 | 9/10/2004 | SOLD | INFOSPACE INC | INSP | (4,500) | 41.9852 | (0.00) | | 188,700.97 | | |
| 9/16/2004 | 9/13/2004 | SOLD | INFOSPACE INC | INSP | (4,000) | 43.0415 | (0.00) | | 171,958.97 | | |
| 9/30/2004 | 9/27/2004 | BOUGHT | INFOSPACE INC | INSP | 5,000 | 44.7666 | 224,083.00 | | (0.00) | | |
| 10/1/2004 | 9/28/2004 | BOUGHT | INFOSPACE INC | INSP | 2,000 | 44.3530 | 88,809.00 | | (0.00) | | |
| 10/7/2004 | 10/4/2004 | SOLD | INFOSPACE INC | INSP | (2) | 50.4500 | (0.00) | | 47.89 | | |
| 10/20/2004 | 10/15/2004 | BOUGHT | INFOSPACE INC | INSP | 4,200 | 45.0000 | 189,210.00 | | (0.00) | | |
| 11/16/2004 | 11/11/2004 | BOUGHT | INFOSPACE INC | INSP | 13,000 | 54.0514 | 703,318.20 | | (0.00) | | |
| 11/22/2004 | 11/17/2004 | BOUGHT | INFOSPACE INC | INSP | 1,802 | 45.1716 | 81,492.32 | | (0.00) | | |

Exhibit 6b

Summary of Bear Stearns 103-88018 Investment Activity

| SETTLEMENT_DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | DEBIT Accrued Interest | CREDIT AMOUNT AMOUNT | CREDIT Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/31/2005 | 1/26/2005 | SOLD | INFOSPACE INC | INSP | (35,250) | 45.9040 | | | 1,616,297.26 | | |
| 2/3/2005 | 1/31/2005 | BOUGHT | INFOSPACE INC | INSP | 5,000 | 46.8000 | 234,253.00 | | | | |
| 2/4/2005 | 2/1/2005 | BOUGHT | INFOSPACE INC | INSP | 28,000 | 46.9411 | 1,315,753.80 | | | | |
| 2/9/2005 | 2/4/2005 | BOUGHT | INFOSPACE INC | INSP | 2,250 | 44.9944 | 101,352.90 | | | | (267,271.61) |
| 8/4/2004 | 8/3/2004 | BOUGHT | CALL INFOSPACE    OCT 045 **** | QIOUJ45 | 10 | 1.4000 | 1,453.00 | | (0.00) | | |
| 8/6/2004 | 8/5/2004 | BOUGHT | CALL INFOSPACE    OCT 045 **** | QIOUJ45 | 30 | 1.0167 | 3,143.10 | | (0.00) | | |
| 8/17/2004 | 8/16/2004 | BOUGHT | CALL INFOSPACE    OCT 045 **** | QIOUJ45 | 1 | 1.0000 | 153.00 | | (0.00) | | |
| 8/18/2004 | 8/17/2004 | BOUGHT | CALL INFOSPACE    OCT 045 **** | QIOUJ45 | 1 | 1.2000 | 173.00 | | (0.00) | | |
| 10/18/2004 | | JOURNAL | CALL INFOSPACE    OCT 045 **** | 45678T9J3 | (42) | (0.0000) | (0.00) | | (0.00) | | (4,922.10) |
| 8/4/2004 | 8/3/2004 | SOLD | PUT INFOSPACE    OCT 030 **** | QIOUV30 | (10) | 1.2000 | (0.00) | | 1,146.97 | | |
| 8/6/2004 | 8/5/2004 | SOLD | PUT INFOSPACE    OCT 030 **** | QIOUV30 | (20) | 1.5000 | (0.00) | | 2,936.92 | | |
| 8/9/2004 | 8/6/2004 | SOLD | PUT INFOSPACE    OCT 030 **** | QIOUV30 | (8) | 1.7500 | (0.00) | | 1,346.96 | | |
| 8/16/2004 | 8/13/2004 | SOLD | PUT INFOSPACE    OCT 030 **** | QIOUV30 | (1) | 1.5500 | (0.00) | | 101.99 | | |
| 8/17/2004 | 8/16/2004 | SOLD | PUT INFOSPACE    OCT 030 **** | QIOUV30 | (1) | 1.2500 | (0.00) | | 71.99 | | |
| 10/18/2004 | | EXPIRED | PUT INFOSPACE    OCT 030 **** | 45678T9V6 | 40 | (0.0000) | (0.00) | | (0.00) | | 5,604.83 |
| 6/14/2004 | 6/9/2004 | SOLD | IMCLONE SYSTEMS INC | IMCL | (10,000) | 80.7618 | (0.00) | | 807,099.10 | | |
| 6/17/2004 | 6/14/2004 | SOLD | IMCLONE SYSTEMS INC | IMCL | (10,000) | 78.6006 | (0.00) | | 785,487.60 | | |
| 6/18/2004 | 6/15/2004 | SOLD | IMCLONE SYSTEMS INC | IMCL | (5,100) | 79.4199 | (0.00) | | 404,777.01 | | |
| 6/21/2004 | 6/16/2004 | SOLD | IMCLONE SYSTEMS INC | IMCL | (15,000) | 81.1384 | (0.00) | | 1,216,297.52 | | |
| 6/22/2004 | 6/17/2004 | SOLD | IMCLONE SYSTEMS INC | IMCL | (10,000) | 82.2674 | (0.00) | | 822,154.74 | | |
| 6/28/2004 | 6/23/2004 | SOLD | IMCLONE SYSTEMS INC | IMCL | (19,000) | 81.1456 | (0.00) | | 1,540,780.32 | | |
| 6/29/2004 | 6/24/2004 | BOUGHT | IMCLONE SYSTEMS INC | IMCL | 10,000 | 83.1087 | 831,587.00 | | (0.00) | | |
| 6/30/2004 | 6/25/2004 | SOLD | IMCLONE SYSTEMS INC | IMCL | (5,000) | 83.3321 | (0.00) | | 416,400.75 | | |
| 7/1/2004 | 6/28/2004 | SOLD | IMCLONE SYSTEMS INC | IMCL | (10,100) | 83.6876 | (0.00) | | 844,719.98 | | |
| 7/2/2004 | 6/29/2004 | SOLD | IMCLONE SYSTEMS INC | IMCL | (17,000) | 85.0434 | (0.00) | | 1,444,853.96 | | |
| 7/2/2004 | 7/2/2004 | BOUGHT | IMCLONE SYSTEMS INC | IMCL | 2,800 | 86.0993 | 241,218.04 | | (0.00) | | |
| 7/8/2004 | 7/2/2004 | SOLD | IMCLONE SYSTEMS INC | IMCL | (7,035) | 86.3500 | (0.00) | | 607,106.28 | | |
| 7/13/2004 | 7/8/2004 | BOUGHT | IMCLONE SYSTEMS INC | IMCL | 25,000 | 79.5169 | 1,989,172.50 | | (0.00) | | |
| 7/15/2004 | 7/12/2004 | BOUGHT | IMCLONE SYSTEMS INC | IMCL | 30,000 | 77.9662 | 2,340,486.00 | | (0.00) | | |
| 7/16/2004 | 7/13/2004 | SOLD | IMCLONE SYSTEMS INC | IMCL | (40,000) | 79.7571 | (0.00) | | 3,188,209.34 | | |
| 7/23/2004 | 7/20/2004 | SOLD | IMCLONE SYSTEMS INC | IMCL | (10,000) | 80.9000 | (0.00) | | 808,481.06 | | |
| 7/26/2004 | 7/21/2004 | BOUGHT | IMCLONE SYSTEMS INC | IMCL | 20,000 | 65.1241 | 1,306,497.00 | | (0.00) | | |
| 7/26/2004 | 7/21/2004 | BOUGHT | IMCLONE SYSTEMS INC | IMCL | 43,000 | 69.2590 | 2,980,287.00 | | (0.00) | | |
| 7/27/2004 | 7/22/2004 | BOUGHT | IMCLONE SYSTEMS INC | IMCL | 20,000 | 62.7491 | 1,255,982.00 | | (0.00) | | |
| 7/29/2004 | 7/26/2004 | BOUGHT | IMCLONE SYSTEMS INC | IMCL | 3,000 | 57.2027 | 171,761.10 | | (0.00) | | |
| 7/30/2004 | 7/27/2004 | BOUGHT | IMCLONE SYSTEMS INC | IMCL | 1,000 | 56.2900 | 56,343.00 | | (0.00) | | |
| 8/11/2004 | 8/6/2004 | BOUGHT | IMCLONE SYSTEMS INC | IMCL | 3,250 | 52.5509 | 170,955.93 | | (0.00) | | |
| 11/26/2004 | 11/22/2004 | BOUGHT | IMCLONE SYSTEMS INC | IMCL | 185 | 42.8400 | 7,978.40 | | (0.00) | | |
| 1/28/2005 | 1/21/2005 | BOUGHT | IMCLONE SYSTEMS INC | IMCL | 500 | 50.0000 | 25,002.50 | | (0.00) | | |
| 1/31/2005 | 1/26/2005 | SOLD | IMCLONE SYSTEMS INC | IMCL | (500) | 39.3500 | | | 19,621.35 | | 1,528,718.54 |
| 7/8/2004 | 7/7/2004 | BOUGHT | CALL IMCLONE SYS JAN 100 **** | QQCIA100 | 20 | 5.0000 | 10,060.00 | | (0.00) | | |
| 7/13/2004 | 7/12/2004 | BOUGHT | CALL IMCLONE SYS JAN 100 **** | QQCIA100 | 20 | 3.5000 | 7,060.00 | | (0.00) | | |
| 7/16/2004 | 7/15/2004 | BOUGHT | CAL IMCLONE SYS JAN 100 **** | QQCIA100 | 10 | 4.0000 | 4,050.00 | | (0.00) | | |
| 7/19/2004 | 7/16/2004 | BOUGHT | CALL IMCLONE SYS JAN 100 **** | QQCIA100 | 10 | 4.0000 | 4,050.00 | | (0.00) | | |

Case 1:05-cv-05808-KMW    Document 27-3    Filed 07/29/05    Page 20 of 48

Exhibit 6b

**Summary of Bear Stearns 103-88018 Investment Activity**

| SETTLEMENT_DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | Accrued Interest | CREDIT AMOUNT AMOUNT | Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/24/2005 | | EXPIRED | CALL IMCLONE SYS JAN 100 | 45245W949 | (60) | | | | | | |
| 1/24/2005 | | EXPIRED | CALL IMCLONE SYS JAN 100 | 45245W9A9 | (60) | | | | | | (25,220.00) |
| | | | | | | | | | | | |
| 7/8/2004 | 7/7/2004 | BOUGHT | CALL IMCLONE SYS JAN 105 **** | QCKQA105 | 20 | 3.8000 | 7,660.00 | | (0.00) | | |
| 7/9/2004 | 7/8/2004 | BOUGHT | CALL IMCLONE SYS JAN 105 **** | QCKQA105 | 20 | 3.4000 | 6,860.00 | | (0.00) | | |
| 7/16/2004 | 7/15/2004 | BOUGHT | CALL IMCLONE SYS JAN 105 **** | QCKQA105 | 20 | 3.1000 | 6,300.00 | | (0.00) | | |
| 1/24/2005 | | EXPIRED | CALL IMCLONE SYS JAN 105 | 4Q299W9A8 | (60) | | | | | | |
| 1/24/2005 | | EXPIRED | CALL IMCLONE SYS JAN 105 | 4Q299W9A8 | (60) | | | | | | (20,820.00) |
| | | | | | | | | | | | |
| 7/9/2004 | 7/8/2004 | BOUGHT | CALL IMCLONE SYS JAN 110 **** | QCKQA110 | 20 | 2.6000 | 5,260.00 | | (0.00) | | |
| 1/24/2005 | | EXPIRED | CALL IMCLONE SYS JAN 110 | 4Q299W9A8 | (20) | | | | | | (5,260.00) |
| | | | | | | | | | | | |
| 7/13/2004 | 7/12/2004 | SOLD | PUT IMCLONE SYS JAN 050 | QQCIM50 | (30) | 1.3500 | 0.00 | | 3,959.90 | | |
| 7/19/2004 | 7/16/2004 | SOLD | PUT IMCLONE SYS JAN 050 | QQCIM50 | (20) | 1.2500 | (0.00) | | 2,399.94 | | |
| 8/11/2004 | 8/10/2004 | SOLD | PUT IMCLONE SYS JAN 050 **** | QQCIM50 | (4) | 7.5250 | (0.00) | | 2,956.92 | | |
| 8/16/2004 | 8/13/2004 | SOLD | PUT IMCLONE SYS JAN 050 **** | QQCIM50 | (1) | 6.3000 | (0.00) | | 576.98 | | |
| 11/4/2004 | 11/3/2004 | BOUGHT | PUT IMCLONE SYS JAN 050 **** | QQCIM50 | 50 | 6.3800 | 32,053.00 | | (0.00) | | |
| 1/24/2005 | | JOURNAL | PUT IMCLONE SYS JAN 050 | 45245W9M3 | 5 | | | | | | |
| 1/24/2005 | | JOURNAL | PUT IMCLONE SYS JAN 050 | 45245W9M3 | 5 | | | | | | (22,159.26) |
| | | | | | | | | | | | |
| 5/20/2004 | 5/17/2004 | SOLD | INTERNATIONAL RECTIFIER CORP | IRF | (5,000) | 38.6500 | (0.00) | | 192,995.47 | | |
| 5/21/2004 | 5/18/2004 | SOLD | INTERNATIONAL RECTIFIER CORP | IRF | (10,000) | 38.9280 | (0.00) | | 388,770.89 | | |
| 5/24/2004 | 5/19/2004 | SOLD | INTERNATIONAL RECTIFIER CORP | IRF | (25,000) | 40.3776 | (0.00) | | 1,008,166.37 | | |
| 6/4/2004 | 6/1/2004 | BOUGHT | INTERNATIONAL RECTIFIER CORP | IRF | 5,000 | 43.6552 | 218,526.00 | | (0.00) | | |
| 6/9/2004 | 6/4/2004 | SOLD | INTERNATIONAL RECTIFIER CORP | IRF | (10,000) | 42.1558 | (0.00) | | 421,048.13 | | |
| 6/11/2004 | 6/8/2004 | BOUGHT | INTERNATIONAL RECTIFIER CORP | IRF | 40,000 | 44.1515 | 1,768,060.00 | | (0.00) | | |
| 6/11/2004 | 6/8/2004 | SOLD | INTERNATIONAL RECTIFIER CORP | IRF | (30,000) | 44.4103 | (0.00) | | 1,330,777.82 | | |
| 7/1/2004 | 6/28/2004 | BOUGHT | INTERNATIONAL RECTIFIER CORP | IRF | 15,000 | 40.3393 | 605,839.50 | | (0.00) | | |
| 7/7/2004 | 7/1/2004 | BOUGHT | INTERNATIONAL RECTIFIER CORP | IRF | 20,000 | 39.2019 | 785,038.00 | | (0.00) | | |
| 7/16/2004 | 7/13/2004 | SOLD | INTERNATIONAL RECTIFIER CORP | IRF | (10,000) | 34.8570 | (0.00) | | 348,061.84 | | |
| 7/20/2004 | 7/15/2004 | SOLD | INTERNATIONAL RECTIFIER CORP | IRF | (10,000) | 34.6500 | (0.00) | | 345,991.89 | | |
| 7/27/2004 | 7/22/2004 | BOUGHT | INTERNATIONAL RECTIFIER CORP | IRF | 15,000 | 34.5533 | 519,049.50 | | (0.00) | | |
| 8/3/2004 | 7/29/2004 | SOLD | INTERNATIONAL RECTIFIER CORP | IRF | (2,250) | 36.1778 | (0.00) | | 81,282.64 | | |
| 8/4/2004 | 7/30/2004 | SOLD | INTERNATIONAL RECTIFIER CORP | IRF | (2,250) | 38.7511 | (0.00) | | 87,072.43 | | |
| 8/6/2004 | 8/3/2004 | BOUGHT | INTERNATIONAL RECTIFIER CORP | IRF | 4,000 | 37.3935 | 149,774.00 | | (0.00) | | |
| 8/11/2004 | 8/6/2004 | BOUGHT | INTERNATIONAL RECTIFIER CORP | IRF | 5,250 | 35.6799 | 187,584.98 | | (0.00) | | |
| 8/16/2004 | 8/11/2004 | BOUGHT | INTERNATIONAL RECTIFIER CORP | IRF | 3,000 | 33.5825 | 100,900.50 | | (0.00) | | |
| 8/16/2004 | 8/11/2004 | BOUGHT | INTERNATIONAL RECTIFIER CORP | IRF | 250 | 34.1200 | 8,583.00 | | (0.00) | | |
| 8/17/2004 | 8/12/2004 | BOUGHT | INTERNATIONAL RECTIFIER CORP | IRF | 5,000 | 33.1190 | 165,848.00 | | (0.00) | | |
| 8/20/2004 | 8/17/2004 | SOLD | INTERNATIONAL RECTIFIER CORP | IRF | (500) | 33.8700 | (0.00) | | 16,881.60 | | |
| 8/23/2004 | 8/18/2004 | SOLD | INTERNATIONAL RECTIFIER CORP | IRF | (6,500) | 34.4082 | (0.00) | | 223,320.06 | | |
| 9/23/2004 | 9/20/2004 | SOLD | INTERNATIONAL RECTIFIER CORP | IRF | (1,000) | 35.3540 | (0.00) | | 35,300.17 | | (29,534.17) |
| | | | | | | | | | | | |
| 8/20/2004 | 8/17/2004 | SOLD | KMART HOLDING CORPORATION | KMRT | (7,000) | 77.0403 | (0.00) | | 538,916.48 | | |
| 8/23/2004 | 8/18/2004 | SOLD | KMART HOLDING CORPORATION | KMRT | (2,000) | 78.4700 | (0.00) | | 156,833.32 | | |
| 8/27/2004 | 8/24/2004 | SOLD | KMART HOLDING CORPORATION | KMRT | (1,000) | 76.7250 | (0.00) | | 76,670.20 | | |
| 9/7/2004 | 9/1/2004 | SOLD | KMART HOLDING CORPORATION | KMRT | (4,600) | 77.9526 | (0.00) | | 358,340.56 | | |

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 21 of 48

Exhibit 6b

**Summary of Bear Stearns 103-88018 Investment Activity**

| SETTLEMENT_ DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | Accrued Interest | CREDIT AMOUNT AMOUNT | Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/8/2004 | 9/2/2004 | SOLD | KMART HOLDING CORPORATION | KMRT | (3,000) | 80.3579 | (0.00) | | 240,915.05 | | |
| 9/9/2004 | 9/3/2004 | SOLD | KMART HOLDING CORPORATION | KMRT | (3,500) | 82.2706 | (0.00) | | 287,762.36 | | |
| 9/15/2004 | 9/10/2004 | SOLD | KMART HOLDING CORPORATION | KMRT | (2,000) | 83.0397 | (0.00) | | 165,972.51 | | |
| 9/16/2004 | 9/13/2004 | SOLD | KMART HOLDING CORPORATION | KMRT | (9,000) | 85.1769 | (0.00) | | 766,121.16 | | |
| 9/17/2004 | 9/14/2004 | SOLD | KMART HOLDING CORPORATION | KMRT | (9,500) | 88.5282 | (0.00) | | 840,520.22 | | |
| 9/21/2004 | 9/16/2004 | SOLD | KMART HOLDING CORPORATION | KMRT | (600) | 89.7817 | (0.00) | | 53,814.75 | | |
| 9/23/2004 | 9/20/2004 | BOUGHT | KMART HOLDING CORPORATION | KMRT | 2,000 | 85.8220 | 171,747.00 | | (0.00) | | |
| 9/24/2004 | 9/21/2004 | BOUGHT | KMART HOLDING CORPORATION | KMRT | 3,500 | 85.9974 | 301,168.90 | | (0.00) | | |
| 9/27/2004 | 9/22/2004 | BOUGHT | KMART HOLDING CORPORATION | KMRT | 1,000 | 84.9250 | 84,978.00 | | (0.00) | | |
| 9/30/2004 | 9/27/2004 | BOUGHT | KMART HOLDING CORPORATION | KMRT | 5,000 | 86.1422 | 430,961.00 | | (0.00) | | |
| 10/1/2004 | 9/28/2004 | BOUGHT | KMART HOLDING CORPORATION | KMRT | 1,000 | 85.0721 | 85,125.10 | | (0.00) | | |
| 11/3/2004 | 10/29/2004 | BOUGHT | KMART HOLDING CORPORATION | KMRT | 20,000 | 91.4557 | 1,830,114.00 | | (0.00) | | |
| 11/9/2004 | 11/4/2004 | BOUGHT | KMART HOLDING CORPORATION | KMRT | 9,700 | 91.3000 | 886,095.00 | | (0.00) | | (304,322.39) |
| 8/18/2004 | 8/17/2004 | BOUGHT | CALL KMART HLDG SEP 085 **** | QKTQIQ | 30 | 2.4000 | 7,293.00 | | (0.00) | | |
| 9/15/2004 | 9/14/2004 | SOLD | CALL KMART HLDG SEP 085 **** | 498780918 | (30) | 4.0667 | (0.00) | | 12,106.81 | | 4,813.81 |
| 5/21/2004 | 5/18/2004 | SOLD | LIBERTY MEDIA CORP | L | (10,000) | 10.4400 | (0.00) | | 103,897.55 | | |
| 8/12/2004 | 8/9/2004 | BOUGHT | LIBERTY MEDIA CORP | L | 10,000 | 8.4700 | 85,200.00 | | (0.00) | | 18,697.55 |
| 6/11/2004 | 6/8/2004 | SOLD | LEBERTY MEDIA INTL INC | LBTYA | (500) | (0.0000) | (0.00) | | (0.00) | | |
| 8/12/2004 | 8/9/2004 | BOUGHT | LEBERTY MEDIA INTL INC | LBTYA | 500 | 29.4100 | 14,758.00 | | (0.00) | | (14,758.00) |
| 7/28/2004 | 7/28/2004 | DISTR | RTS LIBERTY MEDIA INTL INC | LTYAR | (100) | | 0.00 | | (0.00) | | |
| 8/12/2004 | 8/9/2004 | BOUGHT | RTS LIBERTY MEDIA INTL INC | 530719111 | 100 | 4.4500 | 498.00 | | (0.00) | | (498.00) |
| 1/10/2005 | 1/5/2005 | SOLD | MEDIMMUNE | MEDI | (2,000) | 25.2305 | | | 50,356.81 | | |
| 1/11/2005 | 1/6/2005 | SOLD | MEDIMMUNE | MEDI | (652) | 25.6270 | | | 16,655.40 | | |
| 2/23/2005 | 2/17/2005 | BOUGHT | MEDIMMUNE | MEDI | 2,652 | 24.2623 | 64,476.22 | | | | 2,535.99 |
| 1/6/2005 | 1/5/2005 | BOUGHT | CALL MEDIMMUNE MAR 025 | QMEQC25 | 20 | 1.6250 | 3,313.00 | | | | |
| 1/7/2005 | 1/6/2005 | BOUGHT | CALL MEDIMMUNE MAR 025 | QMEQC25 | 10 | 1.6000 | 1,653.00 | | | | |
| 1/10/2005 | 1/7/2005 | BOUGHT | CALL MEDIMMUNE MAR 025 | QMEQC25 | 30 | 1.4333 | 4,392.90 | | | | |
| 2/18/2005 | 2/17/2005 | SOLD | CALL MEDIMMUNE MAR 025 | QMEQC25 | (60) | 0.4000 | | | 2,219.92 | | (7,138.98) |
| 1/6/2005 | 1/5/2005 | SOLD | PUT MEDIMMUNE FEB 22.5 | QMEQN22 | (40) | 0.2500 | | | 876.97 | | |
| 1/7/2005 | 1/6/2005 | SOLD | PUT MEDIMMUNE FEB 22.5 | QMEQN22 | (40) | 0.2000 | | | 676.98 | | |
| 1/10/2005 | 1/7/2005 | SOLD | PUT MEDIMMUNE FEB 22.5 | QMEQN22 | (30) | 0.2500 | | | 656.97 | | |
| 1/11/2005 | 1/10/2005 | SOLD | PUT MEDIMMUNE FEB 22.5 | QMEQN22 | (20) | 0.2500 | | | 436.98 | | |
| 1/12/2005 | 1/11/2005 | SOLD | PUT MEDIMMUNE FEB 22.5 | QMEQN22 | (20) | 0.2500 | | | 436.98 | | |
| 1/13/2005 | 1/12/2005 | SOLD | PUT MEDIMMUNE FEB 22.5 | QMEQN22 | (20) | 0.4000 | | | 736.97 | | |
| 1/14/2005 | 1/13/2005 | SOLD | PUT MEDIMMUNE FEB 22.5 | QMEQN22 | (20) | 0.3500 | | | 636.97 | | |
| 1/18/2005 | 1/14/2005 | SOLD | PUT MEDIMMUNE FEB 22.5 | QMEQN22 | (20) | 0.3500 | | | 636.97 | | |
| 1/19/2005 | 1/18/2005 | SOLD | PUT MEDIMMUNE FEB 22.5 | QMEQN22 | (1) | 0.2000 | | | 16.99 | | |
| 1/20/2005 | 1/19/2005 | SOLD | PUT MEDIMMUNE FEB 22.5 | QMEQN22 | (14) | 0.2500 | | | 296.98 | | |

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 22 of 48

Exhibit 6b

Summary of Bear Stearns 103-88018 Investment Activity

| SETTLEMENT_ DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | Accrued Interest | CREDIT AMOUNT AMOUNT | Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/22/2005 | | EXPIRED | PUT MEDIMMUNE FEB 22.5 | 5846999N4 | 225 | | | | | | 5,409.76 |
| | | | | | | | | | | | |
| 5/4/2004 | 4/29/2004 | SOLD | MOTOROLA INC | MOT | (13,200) | 19.2697 | (0.00) | | 253,694.08 | | |
| 5/5/2004 | 4/30/2004 | SOLD | MOTOROLA INC | MOT | (2,500) | 18.6500 | (0.00) | | 46,498.90 | | |
| 5/7/2004 | 5/4/2004 | SOLD | MOTOROLA INC | MOT | (5,500) | 18.4536 | (0.00) | | 101,217.42 | | |
| 5/12/2004 | 5/7/2004 | SOLD | MOTOROLA INC | MOT | (7,500) | 19.1500 | (0.00) | | 143,246.63 | | |
| 5/12/2004 | 5/12/2004 | BOUGHT | MOTOROLA INC | MOT | 20,000 | 18.5900 | 372,800.00 | | (0.00) | | |
| 5/18/2004 | 5/13/2004 | SOLD | MOTOROLA INC | MOT | (10,000) | 19.3100 | (0.00) | | 192,595.48 | | |
| 5/24/2004 | 5/19/2004 | SOLD | MOTOROLA INC | MOT | (5,400) | 19.4100 | (0.00) | | 104,541.54 | | |
| 7/9/2004 | 7/8/2004 | BOUGHT | MOTOROLA INC | MOT | 24,000 | 17.0453 | 410,287.20 | | (0.00) | | |
| 8/5/2004 | 8/2/2004 | SOLD | MOTOROLA INC | MOT | (3,000) | 15.9525 | (0.00) | | 47,703.38 | | |
| 8/11/2004 | 8/6/2004 | BOUGHT | MOTOROLA INC | MOT | 2,100 | 14.7571 | 31,097.91 | | (0.00) | | |
| 8/16/2004 | 8/11/2004 | BOUGHT | MOTOROLA INC | MOT | 1,000 | 14.3800 | 14,433.00 | | (0.00) | | |
| 8/25/2004 | 8/20/2004 | SOLD | MOTOROLA INC | MOT | (2,500) | 16.0300 | (0.00) | | 39,946.06 | | |
| 8/30/2004 | 8/25/2004 | SOLD | MOTOROLA INC | MOT | (3,000) | 16.4557 | (0.00) | | 49,212.94 | | |
| 9/7/2004 | 9/1/2004 | SOLD | MOTOROLA INC | MOT | (2,000) | 16.2675 | (0.00) | | 32,431.23 | | |
| 9/14/2004 | 9/8/2004 | SOLD | MOTOROLA INC | MOT | (2,000) | 15.8475 | (0.00) | | 31,591.25 | | |
| 9/15/2004 | 9/10/2004 | SOLD | MOTOROLA INC | MOT | (4,500) | 16.5856 | (0.00) | | 74,405.45 | | |
| 9/16/2004 | 9/13/2004 | SOLD | MOTOROLA INC | MOT | (1,500) | 16.7993 | (0.00) | | 25,120.36 | | |
| 11/16/2004 | | EXCHANGE | MOTOROLA INC | MOT | 11,858 | (0.0000) | (0.00) | | (0.00) | | |
| 11/17/2004 | | JOURNAL | MOTOROLA INC | MOT | (11,858) | (0.0000) | (0.00) | | (0.00) | | |
| 11/17/2004 | | JOURNAL | MOTOROLA INC | MOT | 11,858 | (0.0000) | (0.00) | | (0.00) | | |
| 12/8/2004 | 12/3/2004 | BOUGHT | MOTOROLA INC | MOT | 3,642 | 17.8455 | 65,178.41 | | (0.00) | | 248,408.20 |
| | | | | | | | | | | | |
| 8/12/2004 | 8/9/2004 | SOLD | DAQ 100 SHARES | QQQ | (500) | 32.8000 | (0.00) | | 16,346.61 | | |
| 8/13/2004 | 8/10/2004 | SOLD | DAQ 100 SHARES | QQQ | (28,500) | 33.1885 | (0.00) | | 944,422.11 | | |
| 8/16/2004 | 8/11/2004 | BOUGHT | DAQ 100 SHARES | QQQ | 28,000 | 32.6784 | 916,398.20 | | (0.00) | | |
| 8/17/2004 | 8/12/2004 | BOUGHT | DAQ 100 SHARES | QQQ | 8,500 | 32.4600 | 276,338.00 | | (0.00) | | |
| 8/17/2004 | 8/12/2004 | BOUGHT | DAQ 100 SHARES | QQQ | 1,000 | 32.7900 | 32,843.00 | | (0.00) | | |
| 8/23/2004 | 8/18/2004 | SOLD | DAQ 100 SHARES | QQQ | (8,500) | 33.5689 | (0.00) | | 284,900.97 | | |
| 8/30/2004 | 8/25/2004 | SOLD | DAQ 100 SHARES | QQQ | (10,000) | 34.4859 | (0.00) | | 344,347.93 | | |
| 9/7/2004 | 9/1/2004 | SOLD | DAQ 100 SHARES | QQQ | (3,500) | 34.3166 | (0.00) | | 119,927.28 | | |
| 9/8/2004 | 9/2/2004 | SOLD | DAQ 100 SHARES | QQQ | (6,500) | 34.7055 | (0.00) | | 225,252.47 | | |
| 9/14/2004 | 9/8/2004 | SOLD | DAQ 100 SHARES | QQQ | (5,000) | 34.5410 | (0.00) | | 172,447.95 | | |
| 9/15/2004 | 9/10/2004 | SOLD | DAQ 100 SHARES | QQQ | (8,000) | 34.9108 | (0.00) | | 278,876.86 | | |
| 9/16/2004 | 9/13/2004 | SOLD | DAQ 100 SHARES | QQQ | (7,000) | 35.5624 | (0.00) | | 248,577.97 | | |
| 10/1/2004 | 9/28/2004 | BOUGHT | DAQ 100 SHARES | QQQ | 5,000 | 34.3912 | 172,209.00 | | (0.00) | | |
| 10/27/2004 | 10/22/2004 | BOUGHT | DAQ 100 SHARES | QQQ | 15,000 | 36.2525 | 544,540.50 | | (0.00) | | |
| 11/16/2004 | 11/11/2004 | BOUGHT | DAQ 100 SHARES | QQQ | 20,000 | 38.3577 | 768,157.00 | | (0.00) | | (75,385.55) |
| | | | | | | | | | | | |
| 8/3/2004 | 7/29/2004 | SOLD | PALMONE INC | PLMO | (4,250) | 41.0382 | (0.00) | | 174,192.76 | | |
| 8/5/2004 | 8/2/2004 | SOLD | PALMONE INC | PLMO | (2,750) | 41.4473 | (0.00) | | 113,836.91 | | |
| 8/6/2004 | 8/3/2004 | BOUGHT | PALMONE INC | PLMO | 1,000 | 39.1450 | 39,198.00 | | (0.00) | | |
| 8/9/2004 | 8/4/2004 | SOLD | PALMONE INC | PLMO | (1,000) | 40.8350 | (0.00) | | 40,781.04 | | |
| 8/11/2004 | 8/6/2004 | BOUGHT | PALMONE INC | PLMO | 6,750 | 37.5019 | 253,478.33 | | (0.00) | | |
| 8/23/2004 | 8/18/2004 | SOLD | PALMONE INC | PLMO | (4,500) | 36.2362 | (0.00) | | 163,101.07 | | |
| 8/24/2004 | 8/19/2004 | SOLD | PALMONE INC | PLMO | (2,000) | 38.3250 | (0.00) | | 76,545.20 | | |
| 8/26/2004 | 8/23/2004 | SOLD | PALMONE INC | PLMO | (2,500) | 39.6628 | (0.00) | | 99,026.87 | | |
| 8/30/2004 | 8/25/2004 | SOLD | PALMONE INC | PLMO | (1,000) | 38.6500 | (0.00) | | 38,596.09 | | |

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 23 of 48

Exhibit 6b

**Summary of Bear Stearns 103-88018 Investment Activity**

| SETTLEMENT_ DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | Accrued Interest | CREDIT AMOUNT AMOUNT | Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/3/2004 | 8/31/2004 | BOUGHT | PALMONE INC | PLMO | 9,000 | 32.2473 | 290,678.70 | | | | |
| 9/10/2004 | 9/7/2004 | SOLD | PALMONE INC | PLMO | (4,000) | 34.2463 | (0.00) | | 136,778.99 | | |
| 11/10/2004 | 11/5/2004 | SOLD | PALMONE INC | PLMO | (13,500) | 32.2397 | (0.00) | | 434,547.76 | | |
| 11/12/2004 | 11/8/2004 | SOLD | PALMONE INC | PLMO | (1,000) | 33.2050 | (0.00) | | 33,151.22 | | |
| 11/16/2004 | 11/11/2004 | SOLD | PALMONE INC | PLMO | (1,200) | 35.0083 | (0.00) | | 41,945.97 | | |
| 11/16/2004 | 11/10/2004 | SOLD | PALMONE INC | PLMO | (10,250) | 34.1164 | (0.00) | | 349,169.41 | | |
| 11/22/2004 | 11/17/2004 | SOLD | PALMONE INC | PLMO | (6,400) | 37.1013 | (0.00) | | 237,119.76 | | |
| 11/23/2004 | 11/18/2004 | SOLD | PALMONE INC | PLMO | (4,635) | 37.5040 | (0.00) | | 173,592.22 | | |
| 11/24/2004 | 11/19/2004 | SOLD | PALMONE INC | PLMO | (6,500) | 39.1923 | (0.00) | | 254,415.98 | | |
| 11/26/2004 | 11/23/2004 | SOLD | PALMONE INC | PLMO | (5,265) | 39.4231 | (0.00) | | 207,291.51 | | |
| 12/3/2004 | 11/30/2004 | BOUGHT | PALMONE INC | PLMO | 21,800 | 35.3891 | 772,572.38 | | (0.00) | | |
| 12/13/2004 | 12/8/2004 | SOLD | PALMONE INC | PLMO | (1,500) | 37.4500 | (0.00) | | 56,095.68 | | |
| 12/16/2004 | 12/13/2004 | SOLD | PALMONE INC | PLMO | (4,100) | 43.4773 | (0.00) | | 178,044.75 | | |
| 12/22/2004 | 12/17/2004 | BOUGHT | PALMONE INC | PLMO | 13,700 | 35.0000 | 479,525.00 | | (0.00) | | |
| 12/22/2004 | 12/17/2004 | BOUGHT | PALMONE INC | PLMO | 10,000 | 33.7899 | 338,399.00 | | (0.00) | | |
| 12/22/2004 | 12/17/2004 | BOUGHT | PALMONE INC | PLMO | 10,800 | 35.0000 | 378,025.00 | | (0.00) | | |
| 12/22/2004 | 12/17/2004 | BOUGHT | PALMONE INC | PLMO | 17,000 | 33.4962 | 570,288.40 | | (0.00) | | |
| 12/27/2004 | 12/21/2004 | SOLD | PALMONE INC | PLMO | (2,000) | 31.8795 | (0.00) | | 63,654.50 | | |
| 12/28/2004 | 12/22/2004 | SOLD | PALMONE INC | PLMO | (6,000) | 32.5500 | (0.00) | | 194,992.42 | | |
| 12/29/2004 | 12/23/2004 | SOLD | PALMONE INC | PLMO | (5,000) | 31.2800 | (0.00) | | 156,143.34 | | |
| 12/31/2004 | 12/28/2004 | SOLD | PALMONE INC | PLMO | (700) | 31.6000 | (0.00) | | 22,066.48 | | |
| 1/28/2005 | 1/25/2005 | BOUGHT | PALMONE INC | PLMO | 10,000 | 24.1250 | 241,753.00 | | | | |
| 1/31/2005 | 1/26/2005 | SOLD | PALMONE INC | PLMO | (10,000) | 26.2100 | | | 261,588.37 | | 142,760.29 |
| | | | | | | | | | | | |
| 8/2/2004 | 7/30/2004 | BOUGHT | CALL PALMONE SEP 050 **** | QUPYI50 | 60 | 0.7583 | 4,732.80 | | (0.00) | | |
| 8/4/2004 | 8/3/2004 | BOUGHT | CALL PALMONE SEP 050 **** | QUPYI50 | 10 | 0.7000 | 753.00 | | (0.00) | | |
| 8/11/2004 | 8/10/2004 | BOUGHT | CALL PALMONE SEP 050 **** | QUPYI50 | 2 | 0.6250 | 178.00 | | (0.00) | | |
| 9/20/2004 | | EXPIRED | CALL PALMONE SEP 050 **** | 69713P9I0 | (72) | (0.0000) | (0.00) | | (0.00) | | (5,663.80) |
| | | | | | | | | | | | |
| 11/26/2004 | 11/24/2004 | SOLD | PALMONE JAN 030 **** | QUPYM30 | (110) | 1.7455 | (0.00) | | 18,867.05 | | |
| 11/30/2004 | 11/29/2004 | SOLD | PALMONE JAN 030 **** | QUPYM30 | (30) | 1.4333 | (0.00) | | 4,206.79 | | |
| 12/6/2004 | 12/3/2004 | BOUGHT | PALMONE JAN 030 **** | QUPYM30 | 25 | 1.2000 | 3,078.00 | | (0.00) | | |
| 12/7/2004 | 12/6/2004 | BOUGHT | PALMONE JAN 030 **** | QUPYM30 | 1 | 1.2500 | 178.00 | | (0.00) | | |
| 12/9/2004 | 12/8/2004 | BOUGHT | PALMONE JAN 030 **** | QUPYM30 | 90 | 1.3500 | 12,423.00 | | (0.00) | | |
| 12/13/2004 | 12/10/2004 | BOUGHT | PALMONE JAN 030 **** | QUPYM30 | 4 | 1.0000 | 453.00 | | (0.00) | | |
| 12/14/2004 | 12/13/2004 | BOUGHT | PALMONE JAN 030 **** | QUPYM30 | 20 | 0.6250 | 1,313.00 | | (0.00) | | 5,628.84 |
| | | | | | | | | | | | |
| 11/24/2004 | 11/23/2004 | SOLD | PUT PALMONE DEC 040 **** | QUPYX40 | (163) | 3.1181 | (0.00) | | 50,331.84 | | |
| 11/30/2004 | 11/29/2004 | SOLD | PUT PALMONE DEC 040 **** | QUPYX40 | (20) | 5.0000 | (0.00) | | 9,936.76 | | |
| 12/1/2004 | 11/29/2004 | SOLD | PUT PALMONE DEC 040 **** | 69713P9X7 | (40) | 5.7250 | (0.00) | | 22,776.46 | | |
| 12/2/2004 | 12/1/2004 | BOUGHT | PUT PALMONE DEC 040 **** | 69713P9X7 | 60 | 4.9000 | 29,583.00 | | (0.00) | | |
| 12/3/2004 | 12/2/2004 | BOUGHT | PUT PALMONE DEC 040 **** | 69713P9X7 | 150 | 4.3333 | 65,452.50 | | (0.00) | | |
| 12/7/2004 | 12/6/2004 | BOUGHT | PUT PALMONE DEC 040 **** | 69713P9X7 | 13 | 3.8000 | 4,993.00 | | (0.00) | | (16,983.44) |
| | | | | | | | | | | | |
| 8/2/2004 | 7/30/2004 | SOLD | PUT PALMONE SEP 030 **** | QUPYU30 | (10) | 0.6000 | (0.00) | | 546.98 | | |
| 8/4/2004 | 8/3/2004 | SOLD | PUT PALMONE SEP 030 **** | QUPYU30 | (70) | 0.6429 | (0.00) | | 4,287.19 | | |
| 8/5/2004 | 8/4/2004 | SOLD | PUT PALMONE SEP 030 **** | QUPYU30 | (20) | 0.6000 | (0.00) | | 1,136.97 | | |
| 8/11/2004 | 8/10/2004 | SOLD | PUT PALMONE SEP 030 **** | QUPYU30 | (2) | 0.6500 | (0.00) | | 76.99 | | |

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 24 of 48

Exhibit 6b

Summary of Bear Stearns 103-88018 Investment Activity

| SETTLEMENT_DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | DEBIT Accrued Interest | CREDIT AMOUNT AMOUNT | CREDIT Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/20/2004 | 8/19/2004 | SOLD | PUT PALMONE     SEP 030 **** | QUPYU30 | (1) | 1.1500 | (0.00) | | 61.99 | | |
| 9/20/2004 | 9/20/2004 | EXPIRED | PUT PALMONE     SEP 030 **** | 69713P9U3 | 103 | (0.0000) | (0.00) | | (0.00) | | 6,110.12 |
| | | | | | | | | | | | |
| 10/5/2004 | 9/30/2004 | SOLD | RESEARCH IN MOTION LTD | RIMM | (200) | 76.0200 | (0.00) | | 15,150.64 | | |
| 10/6/2004 | 10/1/2004 | SOLD | RESEARCH IN MOTION LTD | RIMM | (400) | 75.3538 | (0.00) | | 30,087.81 | | |
| 11/22/2004 | 11/17/2004 | SOLD | RESEARCH IN MOTION LTD | RIMM | (17,000) | 84.9005 | (0.00) | | 1,442,421.72 | | |
| 11/29/2004 | 11/23/2004 | BOUGHT | RESEARCH IN MOTION LTD | RIMM | 750 | 86.8700 | 65,205.50 | | (0.00) | | |
| 12/3/2004 | 11/30/2004 | BOUGHT | RESEARCH IN MOTION LTD | RIMM | 8,000 | 88.2500 | 706,400.00 | | (0.00) | | |
| 12/13/2004 | 12/8/2004 | SOLD | RESEARCH IN MOTION LTD | RIMM | (6,575) | 92.1328 | (0.00) | | 605,427.23 | | |
| 12/17/2004 | 12/14/2004 | BOUGHT | RESEARCH IN MOTION LTD | RIMM | 5,000 | 88.0000 | 440,253.00 | | (0.00) | | |
| 12/20/2004 | 12/15/2004 | BOUGHT | RESEARCH IN MOTION LTD | RIMM | 5,000 | 81.1710 | 406,105.00 | | (0.00) | | |
| 12/29/2004 | 12/23/2004 | BOUGHT | RESEARCH IN MOTION LTD | RIMM | 5,425 | 83.9369 | 455,631.93 | | (0.00) | | 19,491.97 |
| | | | | | | | | | | | |
| 8/6/2004 | 8/3/2004 | SOLD | SILICON IMAGE | SIMG | (1,000) | 11.7300 | (0.00) | | 11,676.72 | | |
| 8/11/2004 | 8/6/2004 | BOUGHT | SILICON IMAGE | SIMG | 750 | 10.5300 | 7,950.50 | | (0.00) | | |
| 8/23/2004 | 8/18/2004 | SOLD | SILICON IMAGE | SIMG | (4,000) | 11.4273 | (0.00) | | 45,505.13 | | |
| 12/22/2004 | 12/17/2004 | BOUGHT | SILICON IMAGE | SIMG | 1,000 | 15.0000 | 15,005.00 | | (0.00) | | |
| 1/26/2005 | 1/21/2005 | BOUGHT | SILICON IMAGE | SIMG | 750 | 15.0000 | 11,253.50 | | (0.00) | | |
| 1/26/2005 | 1/21/2005 | BOUGHT | SILICON IMAGE | SIMG | 3,250 | 15.0000 | 48,766.00 | | | | |
| 1/31/2005 | 1/26/2005 | SOLD | SILICON IMAGE | SIMG | (750) | 13.0500 | | | 9,734.17 | | (16,058.98) |
| | | | | | | | | | | | |
| 8/4/2004 | 8/3/2004 | BOUGHT | CALL SILICON IMAG DEC 015 **** | QQSIL15 | 10 | 0.8250 | 878.00 | | (0.00) | | |
| 12/20/2004 | | JOURNAL | CALL SILICON IMAG DEC 015 **** | 82705T9L8 | 10 | (0.0000) | (0.00) | | (0.00) | | (878.00) |
| | | | | | | | | | | | |
| 8/4/2004 | 8/3/2004 | SOLD | PUT SILICON IMAG DEC 010 **** | QQSIX10 | (10) | 1.0750 | (0.00) | | 1,021.97 | | |
| 8/6/2004 | 8/5/2004 | SOLD | PUT SILICON IMAG DEC 010 **** | QQSIX10 | (10) | 1.1000 | (0.00) | | 1,046.97 | | |
| 12/20/2004 | | EXPIRED | PUT SILICON IMAG DEC 010 **** | 82705T9X2 | 20 | (0.0000) | (0.00) | | (0.00) | | 2,068.94 |
| | | | | | | | | | | | |
| 7/30/2004 | 7/29/2004 | BOUGHT | CALL SFBC INTL   SEP 035 AMEX | QJQEI35 | 10 | 1.9000 | 1,953.00 | | (0.00) | | |
| 8/3/2004 | 8/2/2004 | BOUGHT | CALL SFBC INTL   SEP 035 AMEX | QJQEI35 | 8 | 1.7500 | 1,453.00 | | (0.00) | | |
| 8/4/2004 | 8/3/2004 | BOUGHT | CALL SFBC INTL   SEP 035 AMEX | QJQEI35 | 10 | 1.9000 | 1,953.00 | | (0.00) | | |
| 8/5/2004 | 8/4/2004 | BOUGHT | CALL SFBC INTL   SEP 035 AMEX | QJQEI35 | 20 | 0.8000 | 1,663.00 | | (0.00) | | |
| 8/6/2004 | 8/5/2004 | BOUGHT | CALL SFBC INTL   SEP 035 AMEX | QJQEI35 | 10 | 0.9000 | 953.00 | | (0.00) | | |
| 8/16/2004 | 8/13/2004 | BOUGHT | CALL SFBC INTL   SEP 035 AMEX | QJQEI35 | 1 | 0.4000 | 93.00 | | (0.00) | | |
| 9/20/2004 | | EXPIRED | CALL SFBC INTL   SEP 035 AMEX | 784121918 | (59) | (0.0000) | (0.00) | | (0.00) | | (8,068.00) |
| | | | | | | | | | | | |
| 8/3/2004 | 7/29/2004 | SOLD | SFBC INTL INC | SFCC | (3,500) | 33.0877 | (0.00) | | 115,626.24 | | |
| 8/5/2004 | 8/2/2004 | SOLD | SFBC INTL INC | SFCC | (1,500) | 34.8750 | (0.00) | | 52,233.27 | | |
| 8/11/2004 | 8/6/2004 | BOUGHT | SFBC INTL INC | SFCC | 4,750 | 28.7832 | 136,960.70 | | (0.00) | | |
| 8/17/2004 | 8/12/2004 | BOUGHT | SFBC INTL INC | SFCC | 250 | 28.7180 | 7,232.50 | | (0.00) | | |
| 9/22/2004 | 9/17/2004 | BOUGHT | SFBC INTL INC | SFCC | 4,100 | 30.0000 | 123,020.50 | | (0.00) | | |
| 10/27/2004 | 10/22/2004 | SOLD | SFBC INTL INC | SFCC | (300) | 29.3300 | (0.00) | | 8,745.79 | | |
| 10/28/2004 | 10/25/2004 | SOLD | SFBC INTL INC | SFCC | (3,800) | 29.1282 | (0.00) | | 110,491.56 | | 19,883.16 |
| | | | | | | | | | | | |
| 8/5/2004 | 8/4/2004 | SOLD | PUT SFBC INTL    SEP 030 AMEX | QJQEU30 | (20) | 1.6750 | (0.00) | | 3,286.92 | | |

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 25 of 48

11 of 20

Exhibit 6b

Summary of Bear Stearns 103-88018 Investment Activity

| SETTLEMENT_DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | Accrued Interest | CREDIT AMOUNT AMOUNT | Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/6/2004 | 8/4/2004 | CANCEL SELL | PUT SFBC INTL SEP 030 AMEX | QJQEU30 | 20 | 1.6750 | 3,286.92 | | (0.00) | | |
| 8/6/2004 | 8/5/2004 | SOLD | PUT SFBC INTL SEP 030 AMEX | QJQEU30 | (20) | 1.6500 | (0.00) | | 3,236.92 | | |
| 8/6/2004 | 8/4/2004 | SOLD | PUT SFBC INTL SEP 030 AMEX | QJQEU30 | (20) | 1.6750 | (0.00) | | 3,286.92 | | |
| 8/18/2004 | 8/17/2004 | SOLD | PUT SFBC INTL SEP 030 AMEX | QJQEU30 | (1) | 2.6000 | (0.00) | | 206.99 | | |
| 9/20/2004 | | JOURNAL | CALL SFBC INTL SEP 030 AMEX | 7841219U1 | 41 | (0.0000) | (0.00) | | (0.00) | | 6,730.83 |
| | | | | | | | | | | | |
| 7/14/2004 | 7/9/2004 | SOLD | SEPRACOR INC | SEPR | (10,000) | 49.6089 | (0.00) | | 495,577.39 | | |
| 7/20/2004 | 7/15/2004 | SOLD | SEPRACOR INC | SEPR | (4,400) | 51.0191 | (0.00) | | 224,258.78 | | |
| 7/26/2004 | 7/21/2004 | BOUGHT | SEPRACOR INC | SEPR | 12,000 | 46.4998 | 558,597.60 | | (0.00) | | |
| 8/10/2004 | 8/5/2004 | SOLD | SEPRACOR INC | SEPR | (250) | 44.5400 | (0.00) | | 11,081.73 | | |
| 8/11/2004 | 8/6/2004 | BOUGHT | SEPRACOR INC | SEPR | 1,750 | 43.1543 | 75,610.53 | | (0.00) | | |
| 8/25/2004 | 8/20/2004 | SOLD | SEPRACOR INC | SEPR | (1,000) | 47.7500 | (0.00) | | 47,695.88 | | |
| 8/27/2004 | 8/24/2004 | SOLD | SEPRACOR INC | SEPR | (2,500) | 49.2399 | (0.00) | | 122,968.86 | | |
| 8/30/2004 | 8/25/2004 | SOLD | SEPRACOR INC | SEPR | (1,500) | 50.3513 | (0.00) | | 75,447.18 | | |
| 10/6/2004 | 10/1/2004 | BOUGHT | SEPRACOR INC | SEPR | 2,500 | 48.6988 | 121,875.00 | | (0.00) | | |
| 11/26/2004 | 11/22/2004 | BOUGHT | SEPRACOR INC | SEPR | 3,400 | 45.0000 | 153,173.00 | | (0.00) | | 67,773.69 |
| | | | | | | | | | | | |
| 4/6/2004 | 4/1/2004 | SOLD | LAM RESEARCH CORP | LRCX | (5,260) | 25.8322 | (0.00) | | 135,611.19 | | |
| 4/8/2004 | 4/5/2004 | SOLD | LAM RESEARCH CORP | LRCX | (996) | 26.8000 | (0.00) | | 26,642.00 | | |
| 5/4/2004 | 4/29/2004 | BOUGHT | LAM RESEARCH CORP | LRCX | 5,000 | 21.9712 | 110,106.00 | | (0.00) | | |
| 5/7/2004 | 5/4/2004 | SOLD | LAM RESEARARCH CORP | LRCX | (5,000) | 22.0211 | (0.00) | | 109,852.92 | | |
| 5/18/2004 | 5/13/2004 | SOLD | LAM RESEARCH CORP | LRCX | (3,000) | 22.2267 | (0.00) | | 66,528.53 | | |
| 5/21/2004 | 5/18/2004 | SOLD | LAM RESEARCH CORP | LRCX | (3,000) | 22.4280 | (0.00) | | 67,132.42 | | |
| 5/24/2004 | 5/19/2004 | SOLD | LAM RESEARCH CORP | LRCX | (3,000) | 22.6100 | (0.00) | | 67,678.41 | | |
| 6/4/2004 | 6/1/2004 | BOUGHT | LAM RESEARARCH | LRCX | 10,000 | 24.9368 | 249,868.00 | | (0.00) | | |
| 6/22/2004 | 6/17/2004 | BOUGHT | LAM RESEARCH CORP | LRCX | 5,250 | 23.4486 | 123,367.65 | | (0.00) | | |
| 7/2/2004 | 6/29/2004 | BOUGHT | LAM RESEARCH CORP | LRCX | 6 | 25.7700 | 169.62 | | (0.00) | | (10,065.80) |
| | | | | | | | | | | | |
| 4/14/2004 | 4/8/2004 | SOLD | NEKTAR THERAPEUTICS | NKTR | (6,900) | 21.8232 | (0.00) | | 150,231.55 | | |
| 4/15/2004 | 4/12/2004 | SOLD | NEKTAR THERAPEUTICS | NKTR | (2,200) | 21.7564 | (0.00) | | 47,752.95 | | |
| 4/22/2004 | 4/19/2004 | SOLD | NEKTAR THERAPEUTICS | NKTR | (2,000) | 21.8000 | (0.00) | | 43,498.97 | | |
| 4/26/2004 | 4/21/2004 | SOLD | NEKTAR THERAPEUTICS | NKTR | (10,000) | 21.6250 | (0.00) | | 215,744.93 | | |
| 4/27/2004 | 4/22/2004 | SOLD | NEKTAR THERAPEUTICS | NKTR | (3,000) | 22.6747 | (0.00) | | 67,872.50 | | |
| 5/4/2004 | 4/29/2004 | BOUGHT | NEKTAR THERAPEUTICS | NKTR | 12,000 | 20.8800 | 251,160.00 | | (0.00) | | |
| 5/6/2004 | 5/3/2004 | SOLD | NEKTAR THERAPEUTICS | NKTR | (6,000) | 21.5867 | (0.00) | | 129,217.16 | | |
| 5/10/2004 | 5/5/2004 | SOLD | NEKTAR THERAPEUTICS | NKTR | (3,000) | 21.4570 | (0.00) | | 64,219.49 | | |
| 5/12/2004 | 5/7/2004 | BOUGHT | NEKTAR THERAPEUTICS | NKTR | 10,000 | 19.8400 | 198,900.00 | | (0.00) | | |
| 5/13/2004 | 5/10/2004 | BOUGHT | NEKTAR THERAPEUTICS | NKTR | 10,000 | 18.6861 | 187,361.00 | | (0.00) | | |
| 5/18/2004 | 5/13/2004 | SOLD | NEKTAR THERAPEUTICS | NKTR | (5,000) | 17.9649 | (0.00) | | 89,572.39 | | |
| 5/24/2004 | 5/19/2004 | SOLD | NEKTAR THERAPEUTICS | NKTR | (5,000) | 16.4586 | (0.00) | | 82,041.07 | | |
| 5/26/2004 | 5/21/2004 | SOLD | NEKTAR THERAPEUTICS | NKTR | (13,000) | 17.5731 | (0.00) | | 227,794.95 | | |
| 6/10/2004 | 6/7/2004 | BOUGHT | NEKTAR THERAPEUTICS | NKTR | 24,000 | 19.9795 | 480,708.00 | | (0.00) | | |
| 7/2/2004 | 6/29/2004 | BOUGHT | NEKTAR THERAPEUTICS | NKTR | 100 | 20.0800 | 2,038.00 | | (0.00) | | (2,221.04) |
| | | | | | | | | | | | |
| 7/14/2004 | 7/9/2004 | SOLD | TXU CORP | TXU | (5,000) | 39.3000 | (0.00) | | 196,230.40 | | |
| 9/14/2004 | 9/9/2004 | SOLD | TXU CORP | TXU | (1,500) | 43.7947 | (0.00) | | 65,612.51 | | |
| 9/15/2004 | 9/10/2004 | SOLD | TXU CORP | TXU | (2,500) | 44.3340 | (0.00) | | 110,704.40 | | |
| 11/22/2004 | 11/17/2004 | BOUGHT | TXU CORP | TXU | 9,000 | 65.8000 | 592,650.00 | | (0.00) | | (220,102.69) |

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 26 of 48

Exhibit 6b

**Summary of Bear Stearns 103-88018 Investment Activity**

| SETTLEMENT_ DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | Accrued Interest | CREDIT AMOUNT AMOUNT | Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/6/2004 | 4/1/2004 | SOLD | TERADYNE INC | TER | (5,530) | 24.3400 | (0.00) | | 134,320.55 | | |
| 4/8/2004 | 4/5/2004 | SOLD | TERADYNE INC | TER | (1,108) | 25.1300 | (0.00) | | 27,787.98 | | |
| 4/15/2004 | 4/12/2004 | SOLD | TERADYNE INC | TER | (1,500) | 24.8867 | (0.00) | | 37,254.17 | | |
| 5/4/2004 | 4/29/2004 | BOUGHT | TERADYNE INC | TER | 7,000 | 20.5661 | 144,312.70 | | (0.00) | | |
| 5/7/2004 | 5/4/2004 | SOLD | TERADYNE INC | TER | (7,500) | 20.4900 | (0.00) | | 153,296.40 | | |
| 5/12/2004 | 5/7/2004 | SOLD | TERADYNE INC | TER | (4,000) | 21.2200 | (0.00) | | 84,678.01 | | |
| 5/17/2004 | 5/12/2004 | BOUGHT | TERADYNE INC | TER | 8,000 | 20.2500 | 162,400.00 | | (0.00) | | |
| 5/20/2004 | 5/17/2004 | SOLD | TERADYNE INC | TER | (10,000) | 20.5000 | (0.00) | | 204,495.20 | | |
| 5/21/2004 | 5/18/2004 | SOLD | TERADYNE INC | TER | (5,000) | 21.1200 | (0.00) | | 105,347.52 | | |
| 6/4/2004 | 6/1/2004 | BOUGHT | TERADYNE INC | TER | 15,000 | 22.0135 | 330,952.50 | | (0.00) | | |
| 6/30/2004 | 6/25/2004 | SOLD | TERADYNE INC | TER | (10,000) | 21.8580 | (0.00) | | 218,074.88 | | |
| 7/7/2004 | 7/1/2004 | BOUGHT | TERADYNE INC | TER | 14,000 | 21.2929 | 298,800.60 | | (0.00) | | |
| 7/14/2004 | 7/9/2004 | SOLD | TERADYNE INC | TER | (30,000) | 20.7365 | (0.00) | | 620,580.44 | | |
| 7/19/2004 | 7/14/2004 | BOUGHT | TERADYNE INC | TER | 20,000 | 17.9900 | 360,800.00 | | (0.00) | | |
| 7/20/2004 | 7/15/2004 | SOLD | TERADYNE INC | TER | (10,000) | 18.2898 | (0.00) | | 182,393.72 | | |
| 7/26/2004 | 7/21/2004 | BOUGHT | TERADYNE INC | TER | 15,000 | 16.7500 | 252,000.00 | | (0.00) | | |
| 8/5/2004 | 8/2/2004 | SOLD | TERADYNE INC | TER | (750) | 17.1900 | (0.00) | | 12,839.19 | | |
| 8/9/2004 | 8/4/2004 | SOLD | TERADYNE INC | TER | (500) | 16.5300 | (0.00) | | 8,211.80 | | |
| 8/11/2004 | 8/6/2004 | BOUGHT | TERADYNE INC | TER | 4,500 | 15.5100 | 70,023.00 | | (0.00) | | |
| 8/16/2004 | 8/11/2004 | BOUGHT | TERADYNE INC | TER | 2,000 | 14.2800 | 28,663.00 | | (0.00) | | |
| 8/30/2004 | 8/25/2004 | SOLD | TERADYNE INC | TER | (3,000) | 14.1050 | (0.00) | | 42,161.00 | | |
| 9/7/2004 | 9/1/2004 | SOLD | TERADYNE INC | TER | (4,500) | 13.2047 | (0.00) | | 59,191.75 | | |
| 9/8/2004 | 9/2/2004 | SOLD | TERADYNE INC | TER | (3,500) | 13.4371 | (0.00) | | 46,850.74 | | |
| 9/14/2004 | 9/9/2004 | SOLD | TERADYNE INC | TER | (5,500) | 13.5740 | (0.00) | | 74,377.25 | | |
| 9/15/2004 | 9/10/2004 | SOLD | TERADYNE INC | TER | (1,500) | 13.8967 | (0.00) | | 20,766.56 | | |
| 9/16/2004 | 9/13/2004 | SOLD | TERADYNE INC | TER | (2,000) | 14.5500 | (0.00) | | 28,996.31 | | |
| 12/16/2004 | 12/13/2004 | BOUGHT | TERADYNE INC | TER | 20,388 | 16.5807 | 339,066.71 | | (0.00) | | 74,604.96 |
| 8/9/2004 | 8/4/2004 | SOLD | UNITED THERAPEUTICS | UTHR | (4,500) | 29.8700 | (0.00) | | 134,183.85 | | |
| 8/17/2004 | 8/12/2004 | BOUGHT | UNITED THERAPEUTICS | UTHR | 2,750 | 28.4882 | 78,483.05 | | (0.00) | | |
| 8/24/2004 | 8/19/2004 | SOLD | UNITED THERAPEUTICS | UTHR | (2,000) | 30.3700 | (0.00) | | 60,635.57 | | |
| 8/30/2004 | 8/25/2004 | SOLD | UNITED THERAPEUTICS | UTHR | (1,000) | 31.9900 | (0.00) | | 31,936.25 | | |
| 11/24/2004 | 11/19/2004 | BOUGHT | UNITED THERAPEUTICS | UTHR | 2,000 | 35.0000 | 70,100.00 | | (0.00) | | |
| 1/3/2005 | 12/29/2004 | BOUGHT | UNITED THERAPEUTICS | UTHR | 500 | 46.4000 | 23,253.00 | | | | |
| 1/27/2005 | 1/24/2005 | BOUGHT | UNITED THERAPEUTICS | UTHR | 2,250 | 42.4247 | 95,571.08 | | | | (40,651.46) |
| 8/5/2004 | 8/4/2004 | BOUGHT | CALL UTD THERAPUT NOV 035 **** | QFUHKG | 10 | 1.2500 | 1,303.00 | | (0.00) | | |
| 8/9/2004 | 8/6/2004 | BOUGHT | CALL UTD THERAPUT NOV 035 **** | QFUHKG | 10 | 1.3000 | 1,330.00 | | (0.00) | | |
| 11/22/2004 | | JOURNAL | CALL UTD THERAPUT NOV 035 **** | 91307C9K0 | (20) | (0.0000) | (0.00) | | (0.00) | | (2,633.00) |
| 8/17/2004 | 8/12/2004 | BOUGHT | VISHAY INTERTECHNOLOGY INC | VSH | 15,000 | 11.6487 | 175,483.50 | | (0.00) | | |
| 8/18/2004 | 8/13/2004 | BOUGHT | VISHAY INTERTECHNOLOGY INC | VSH | 10,500 | 11.5549 | 121,854.45 | | (0.00) | | |
| 8/23/2004 | 8/18/2004 | SOLD | VISHAY INTERTECHNOLOGY INC | VSH | (24,000) | 12.5507 | (0.00) | | 300,006.75 | | |
| 10/6/2004 | 10/1/2004 | SOLD | VISHAY INTERTECHNOLOGY INC | VSH | (1,500) | 13.3700 | (0.00) | | 19,976.53 | | 22,645.33 |
| 10/19/2004 | 10/14/2004 | SOLD | WEBSENSE INC | WBSN | (5,000) | 43.6151 | (0.00) | | 217,817.39 | | |

Exhibit 6b

Summary of Bear Stearns 103-88018 Investment Activity

| SETTLEMENT_ DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | Accrued Interest | CREDIT AMOUNT AMOUNT | Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/22/2004 | 10/19/2004 | SOLD | WEBSENSE INC | WBSN | (2,000) | 43.7035 | (0.00) | | 87,301.95 | | |
| 11/23/2004 | 11/18/2004 | SOLD | WEBSENSE INC | WBSN | (1,000) | 48.0000 | (0.00) | | 47,945.87 | | |
| 11/26/2004 | 11/22/2004 | SOLD | WEBSENSE INC | WBSN | (963) | 45.6048 | (0.00) | | 43,863.39 | | |
| 12/14/2004 | 12/9/2004 | SOLD | WEBSENSE INC | WBSN | (2,587) | 50.1222 | (0.00) | | 129,530.74 | | |
| 12/29/2004 | 12/23/2004 | BOUGHT | WEBSENSE INC | WBSN | 3,000 | 50.2463 | 150,891.90 | | (0.00) | | |
| 1/3/2005 | 12/29/2004 | BOUGHT | WEBSENSE INC | WBSN | 8,550 | 51.3728 | 439,667.94 | | | | (64,100.50) |
| | | | | | | | | | | | |
| 5/18/2004 | 5/13/2004 | SOLD | CINERGY CORP | CIN | (5,000) | 35.4500 | (0.00) | | 176,995.85 | | |
| 5/27/2004 | 5/24/2004 | BOUGHT | CINERGY CORP | CIN | 400 | 36.9100 | 14,784.00 | | (0.00) | | |
| 6/3/2004 | 5/28/2004 | BOUGHT | CINERGY CORP | CIN | 400 | 37.5338 | 15,033.52 | | (0.00) | | |
| 6/3/2004 | 5/28/2004 | BOUGHT | CINERGY CORP | CIN | 4,600 | 37.5338 | 172,885.48 | | (0.00) | | |
| 6/10/2004 | 6/7/2004 | SOLD | CINERGY CORP | CIN | (400) | 37.7900 | (0.00) | | 15,065.64 | | (10,641.51) |
| | | | | | | | | | | | |
| 5/4/2004 | 4/29/2004 | SOLD | CHUBB CORPORATION | CB | (3,500) | 70.2000 | (0.00) | | 245,519.25 | | |
| 5/7/2004 | 5/4/2004 | SOLD | CHUBB CORPORATION | CB | (1,000) | 69.5100 | (0.00) | | 69,458.37 | | |
| 5/12/2004 | 5/7/2004 | BOUGHT | CHUBB CORPORATION | CB | 3,000 | 66.7500 | 200,400.00 | | (0.00) | | |
| 5/19/2004 | 5/14/2004 | SOLD | CHUBB CORPORATION | CB | (5,000) | 67.8900 | (0.00) | | 339,192.05 | | |
| 5/20/2004 | 5/17/2004 | SOLD | CHUBB CORPORATION | CB | (2,500) | | (0.00) | | 168,633.05 | | |
| 5/21/2004 | 5/18/2004 | SOLD | CHUBB CORPORATION | CB | (5,000) | 67.4010 | (0.00) | | 336,747.11 | | |
| 5/27/2004 | 5/24/2004 | BOUGHT | CHUBB CORPORATION | CB | 10,000 | 67.0500 | 671,000.00 | | (0.00) | | |
| 6/21/2004 | 6/16/2004 | BOUGHT | CHUBB CORPORATION | CB | 4,000 | 68.2900 | 273,360.00 | | (0.00) | | 14,789.83 |
| | | | | | | | | | | | |
| 4/6/2004 | 4/1/2004 | SOLD | CEPHALON INC | CEPH | (2,625) | 57.1130 | (0.00) | | 149,786.87 | | |
| 4/8/2004 | 4/5/2004 | SOLD | CEPHALON INC | CEPH | (642) | 58.6800 | (0.00) | | 37,639.57 | | |
| 4/27/2004 | 4/22/2004 | SOLD | CEPHALON INC | CEPH | (733) | 58.0000 | (0.00) | | 42,476.35 | | |
| 5/10/2004 | 5/5/2004 | SOLD | CEPHALON INC | CEPH | (2,000) | 57.9700 | (0.00) | | 115,837.28 | | |
| 5/12/2004 | 5/7/2004 | BOUGHT | CEPHALON INC | CEPH | 4,000 | 55.1940 | 220,976.00 | | (0.00) | | |
| 5/17/2004 | 5/12/2004 | BOUGHT | CEPHALON INC | CEPH | 2,000 | 54.6390 | 109,378.00 | | (0.00) | | |
| 5/19/2004 | 5/14/2004 | SOLD | CEPHALON INC | CEPH | (5,000) | 54.6955 | (0.00) | | 273,221.10 | | |
| 5/24/2004 | 5/19/2004 | SOLD | CEPHALON INC | CEPH | 5,000 | 51.7992 | 259,246.00 | | (0.00) | | 29,361.17 |
| | | | | | | | | | | | |
| 4/5/2004 | 4/2/2004 | SOLD | CALL CEPHALON INC MAY 060 **** | QCQEE60 | (30) | 1.9000 | (0.00) | | 5,609.86 | | |
| 5/24/2004 | | EXPIRED | CALL CEPHALON INC MAY 060 **** | 1567089E1 | 30 | (0.0000) | (0.00) | | (0.00) | | 5,609.86 |
| | | | | | | | | | | | |
| 4/30/2004 | 4/29/2004 | SOLD | CALL CHUBB CORP JUN 070 **** | QCBF70 | (40) | 2.2500 | (0.00) | | 8,879.78 | | |
| 6/21/2004 | | EXPIRED | CALL CHUBB CORP JUN 070 **** | 1712329F0 | 40 | (0.0000) | (0.00) | | (0.00) | | 8,879.78 |
| | | | | | | | | | | | |
| 5/12/2004 | 5/7/2004 | SOLD | PUBLIC SERVICE ENTERPRISE | PEG | (2,000) | 41.0500 | (0.00) | | 81,998.07 | | |
| 5/18/2004 | 5/13/2004 | SOLD | PUBLIC SERVICE ENTERPRISE | PEG | (5,000) | 40.5624 | (0.00) | | 202,557.25 | | |
| 5/27/2004 | 5/24/2004 | BOUGHT | PUBLIC SERVICE ENTERPRISE | PEG | 7,000 | 40.8600 | 286,370.00 | | (0.00) | | (1,814.68) |
| | | | | | | | | | | | |
| 5/11/2004 | 5/6/2004 | BOUGHT | PUBLIC SERVICE ENTERPRISE | PEGPRP | 2,000 | 58.6500 | 117,400.00 | | (0.00) | | |
| 5/27/2004 | 5/24/2004 | SOLD | PUBLIC SERVICE ENTERPRISE | PEGPRP | (2,000) | 56.1000 | (0.00) | | 112,097.37 | | (5,302.63) |

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 28 of 48

Exhibit 6b

**Summary of Bear Stearns 103-88018 Investment Activity**

| SETTLEMENT_DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT AMOUNT Amount | DEBIT Accrued Interest | CREDIT AMOUNT AMOUNT | CREDIT Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/13/2004 | 4/12/2004 | SOLD | CALL CYPRESS SEMI MAY22.50**** | QCYE22 | (60) | 0.5500 | (0.00) | | 3,119.92 | | |
| 5/24/2004 | | EXPIRED | CALL CYPRESS SEMI MAY22.50**** | 2328069E1 | 60 | (0.0000) | (0.00) | | (0.00) | | 3,119.92 |
| | | | | | | | | | | | |
| 4/22/2004 | 4/19/2004 | SOLD | DIAMOND OFFSHORE DRILLING INC | DO | (6,100) | 24.2405 | (0.00) | | 147,568.58 | | |
| 5/7/2004 | 5/4/2004 | SOLD | DIAMOND OFFSHORE DRILLING INC | DO | (4,000) | 23.2600 | (0.00) | | 92,837.82 | | |
| 5/13/2004 | 5/10/2004 | BOUGHT | DIAMOND OFFSHORE DRILLING INC | DO | 7,000 | 21.4186 | 150,280.20 | | (0.00) | | |
| 6/3/2004 | 5/28/2004 | BOUGHT | DIAMOND OFFSHORE DRILLING INC | DO | 3,000 | 22.5400 | 67,770.00 | | (0.00) | | |
| 6/10/2004 | 6/7/2004 | BOUGHT | DIAMOND OFFSHORE DRILLING INC | DO | 100 | 21.9500 | 2,245.00 | | (0.00) | | 20,101.20 |
| | | | | | | | | | | | |
| 5/11/2004 | 5/6/2004 | BOUGHT | ERGY CORP | CINPRI | 200 | 60.7500 | 12,180.00 | | (0.00) | | |
| 5/13/2004 | 5/10/2004 | BOUGHT | ERGY CORP | CINPRI | 300 | 59.0000 | 17,750.00 | | (0.00) | | |
| 5/14/2004 | 5/11/2004 | BOUGHT | ERGY CORP | CINPRI | 1,500 | 59.0500 | 88,650.00 | | (0.00) | | |
| 5/27/2004 | 5/24/2004 | SOLD | ERGY CORP | CINPRI | (2,000) | 58.2030 | (0.00) | | 116,303.27 | | (2,276.73) |
| | | | | | | | | | | | |
| 5/21/2004 | 5/18/2004 | SOLD | FISHER SCIENTIFIC INTL INC NEW | FSH | (5,000) | 54.2976 | (0.00) | | 271,231.64 | | |
| 6/21/2004 | 6/16/2004 | SOLD | FISHER SCIENTIFIC INTL INC NEW | FSH | (5,000) | 59.7800 | (0.00) | | 298,643.00 | | |
| 6/25/2004 | 6/22/2004 | BOUGHT | FISHER SCIENTIFIC INTL INC NEW | FSH | 6,800 | 58.8000 | 400,180.00 | | (0.00) | | |
| 6/28/2004 | 6/23/2004 | BOUGHT | FISHER SCIENTIFIC INTL INC NEW | FSH | 3,200 | 58.9925 | 188,936.00 | | (0.00) | | (19,241.36) |
| | | | | | | | | | | | |
| 4/30/2004 | 4/29/2004 | SOLD | CALL MOTOROLA INC JUN 020 **** | QMOTF20 | (25) | 0.7500 | (0.00) | | 1,749.95 | | |
| 6/21/2004 | | EXPIRED | CALL MOTOROLA INC JUN 020 **** | 6200769F8 | 25 | (0.0000) | (0.00) | | (0.00) | | 1,749.95 |
| | | | | | | | | | | | |
| 4/30/2004 | 4/27/2004 | BOUGHT | OSI PHARMACEUTICALS INC | OSIP | 3,280 | 83.5000 | 274,044.00 | | (0.00) | | |
| 4/30/2004 | 4/27/2004 | BOUGHT | OSI PHARMACEUTICALS INC | OSIP | (10,000) | 87.1595 | (0.00) | | 871,074.60 | | |
| 5/3/2004 | 4/28/2004 | BOUGHT | OSI PHARMACEUTICALS INC | OSIP | 6,720 | 79.7500 | 536,256.00 | | (0.00) | | 60,774.60 |
| | | | | | | | | | | | |
| 4/26/2004 | 4/21/2004 | SOLD | PHARMACEUTICAL RESOURCES INC | PRX | (9,500) | 44.8562 | (0.00) | | 425,648.92 | | |
| 4/28/2004 | 4/23/2004 | SOLD | PHARMACEUTICAL RESOURCES INC | PRX | (2,500) | 44.2576 | (0.00) | | 110,516.41 | | |
| 5/4/2004 | 4/29/2004 | SOLD | PHARMACEUTICAL RESOURCES INC | PRX | 10,000 | 40.9000 | 409,500.00 | | (0.00) | | |
| 5/7/2004 | 5/4/2004 | SOLD | PHARMACEUTICAL RESOURCES INC | PRX | (8,000) | 40.0350 | (0.00) | | 319,872.50 | | |
| 5/10/2004 | 5/5/2004 | SOLD | PHARMACEUTICAL RESOURCES INC | PRX | (2,000) | 41.1100 | (0.00) | | 82,118.07 | | |
| 5/13/2004 | 5/10/2004 | SOLD | PHARMACEUTICAL RESOURCES INC | PRX | 10,000 | 39.0405 | 390,905.00 | | (0.00) | | |
| 5/18/2004 | 5/13/2004 | SOLD | PHARMACEUTICAL RESOURCES INC | PRX | (5,000) | 40.3200 | (0.00) | | 201,345.28 | | |
| 5/19/2004 | 5/14/2004 | SOLD | PHARMACEUTICAL RESOURCES INC | PRX | (4,000) | 40.3073 | (0.00) | | 161,025.42 | | |
| 6/2/2004 | | NAME CHG | PHARMACEUTICAL RESOURCES INC | 717125108 | 11,000 | (0.0000) | (0.00) | | (0.00) | | |
| 6/3/2004 | 5/28/2004 | BOUGHT | PHARMACEUTICAL RESOURCES INC | 717125108 | 11,000 | 42.1499 | 464,198.90 | | (0.00) | | |
| 6/3/2004 | 6/1/2004 | SOLD | PHARMACEUTICAL RESOURCES INC | 717125108 | (11,000) | (0.0000) | (0.00) | | (0.00) | | 35,922.70 |
| | | | | | | | | | | | |
| 4/6/2004 | 4/1/2004 | SOLD | RADIAN GROUP INC | RDN | (3,725) | 43.5600 | (0.00) | | 162,070.95 | | |
| 4/8/2004 | 4/5/2004 | SOLD | RADIAN GROUP INC | RDN | (278) | 45.7400 | (0.00) | | 12,685.42 | | |
| 4/16/2004 | 4/13/2004 | SOLD | RADIAN GROUP INC | RDN | (850) | 45.7118 | (0.00) | | 38,811.62 | | |
| 4/27/2004 | 4/22/2004 | SOLD | RADIAN GROUP INC | RDN | (2,500) | 48.3240 | (0.00) | | 120,682.17 | | |
| 5/13/2004 | 5/10/2004 | BOUGHT | RADIAN GROUP INC | RDN | 4,000 | 45.2818 | 181,327.20 | | (0.00) | | |
| 5/17/2004 | 5/12/2004 | BOUGHT | RADIAN GROUP INC | RDN | 3,000 | 44.8600 | 134,730.00 | | (0.00) | | |
| 5/26/2004 | 5/21/2004 | BOUGHT | RADIAN GROUP INC | RDN | 353 | 44.6600 | 15,761.45 | | (0.00) | | 2,431.51 |

Exhibit 6b

**Summary of Bear Stearns 103-88018 Investment Activity**

| SETTLEMENT_ DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | Accrued Interest | CREDIT AMOUNT AMOUNT | Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/15/2004 | 4/14/2004 | SOLD | CALL RADIAN GROUP MAY 050 **** | QRDNE50 | (75) | 0.9593 | (0.00) | | 6,819.58 | | |
| 5/24/2004 | | EXPIRED | CALL RADIAN GROUP MAY 050 **** | 7502369E3 | 75 | (0.0000) | (0.00) | | (0.00) | | 6,819.58 |
| | | | | | | | | | | | |
| 4/12/2004 | 4/6/2004 | SOLD | TOWER AUTOMOTIVE INC | TWR | (17,000) | 5.3045 | (0.00) | | 89,324.38 | | |
| 4/14/2004 | 4/8/2004 | SOLD | TOWER AUTOMOTIVE INC | TWR | (10,000) | 5.8100 | (0.00) | | 57,598.64 | | |
| 4/19/2004 | 4/14/2004 | SOLD | TOWER AUTOMOTIVE INC | TWR | (5,000) | 5.3600 | (0.00) | | 26,799.37 | | |
| 4/21/2004 | 4/16/2004 | SOLD | TOWER AUTOMOTIVE INC | TWR | (10,000) | 5.5100 | (0.00) | | 54,598.71 | | |
| 4/27/2004 | 4/22/2004 | SOLD | TOWER AUTOMOTIVE INC | TWR | (5,000) | 5.7336 | (0.00) | | 28,417.32 | | |
| 5/4/2004 | 4/29/2004 | BOUGHT | TOWER AUTOMOTIVE INC | TWR | 20,000 | 5.0236 | 101,472.00 | | (0.00) | | |
| 5/13/2004 | 5/10/2004 | BOUGHT | TOWER AUTOMOTIVE INC | TWR | 20,000 | 4.1500 | 84,000.00 | | (0.00) | | |
| 5/25/2004 | 5/20/2004 | BOUGHT | TOWER AUTOMOTIVE INC | TWR | 7,000 | 3.6300 | 25,760.00 | | (0.00) | | 45,506.42 |
| | | | | | | | | | | | |
| 5/7/2004 | 5/4/2004 | SOLD | CYPRESS SEMOCONDUCTOR CORP | CY | (10,000) | 13.9800 | (0.00) | | 139,096.73 | | |
| 5/10/2004 | 5/5/2004 | SOLD | CYPRESS SEMOCONDUCTOR CORP | CY | (10,000) | 14.9750 | (0.00) | | 149,246.49 | | |
| 5/11/2004 | 5/6/2004 | SOLD | CYPRESS SEMOCONDUCTOR CORP | CY | (5,000) | 15.0048 | (0.00) | | 74,772.24 | | |
| 5/13/2004 | 5/10/2004 | BOUGHT | CYPRESS SEMOCONDUCTOR CORP | CY | 15,000 | 14.6000 | 219,750.00 | | (0.00) | | |
| 5/17/2004 | 5/12/2004 | BOUGHT | CYPRESS SEMOCONDUCTOR CORP | CY | 5,000 | 14.2696 | 71,598.00 | | (0.00) | | |
| 5/21/2004 | 5/18/2004 | SOLD | CYPRESS SEMOCONDUCTOR CORP | CY | (5,000) | 13.7000 | (0.00) | | 68,248.39 | | |
| 5/24/2004 | 5/19/2004 | SOLD | CYPRESS SEMOCONDUCTOR CORP | CY | (5,000) | 14.1100 | (0.00) | | 70,625.34 | | |
| 5/27/2004 | 5/24/2004 | BOUGHT | CYPRESS SEMOCONDUCTOR CORP | CY | 15,000 | 14.1100 | 212,250.00 | | (0.00) | | (1,608.81) |
| | | | | | | | | | | | |
| 4/6/2004 | 4/1/2004 | SOLD | CYPRESS SEMICONDUCTOR CORP | CY | (6,650) | 20.6189 | (0.00) | | 136,779.98 | | |
| 4/8/2004 | 4/5/2004 | SOLD | CYPRESS SEMICONDUCTOR CORP | CY | (1,215) | 20.9100 | (0.00) | | 25,344.30 | | |
| 4/15/2004 | 4/12/2004 | SOLD | CYPRESS SEMICONDUCTOR CORP | CY | (1,000) | 21.1500 | (0.00) | | 21,119.50 | | |
| 4/30/2004 | 4/27/2004 | BOUGHT | S SEMICONDUCTOR CORP | CY | 8,865 | 15.1991 | 135,183.27 | | (0.00) | | 48,060.51 |

**TOTAL EQUITIES**

**Preferred Equities**

| SETTLEMENT_ DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | Accrued Interest | CREDIT AMOUNT AMOUNT | Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/10/2004 | 5/5/2004 | BOUGHT | CAPITAL ONE FINANCIAL CORP | COFPRC | 4,000 | 50.2000 | 201,000.00 | | (0.00) | | |
| 7/6/2004 | 6/30/2004 | SOLD | CAPITAL ONE FINANCIAL CORP | COFPRC | (4,000) | 50.2000 | (0.00) | | 200,595.30 | | (404.70) |
| | | | | | | | | | | | |
| 5/4/2004 | 4/29/2004 | BOUGHT | CHUBB CORPORATION | CBPRB | 10,000 | 28.7000 | 287,500.00 | | (0.00) | | |
| 6/21/2004 | 6/16/2004 | SOLD | CHUBB CORPORATION | CBPRB | (4,200) | 27.8548 | (0.00) | | 116,777.42 | | |
| 6/23/2004 | 6/18/2004 | SOLD | CHUBB CORPORATION | CBPRB | (5,200) | 27.9033 | (0.00) | | 144,833.76 | | |
| 7/6/2004 | 6/30/2004 | SOLD | CHUBB CORPORATION | CBPRB | (600) | 27.7800 | (0.00) | | 16,637.60 | | (9,251.22) |
| | | | | | | | | | | | |
| 5/3/2004 | 4/28/2004 | BOUGHT | MOTOROLA INC | MEU | 5,000 | 52.6000 | 263,250.00 | | (0.00) | | |
| 5/4/2004 | 4/29/2004 | BOUGHT | MOTOROLA INC | MEU | 2,500 | 51.6500 | 129,250.00 | | (0.00) | | |
| 5/7/2004 | 5/4/2004 | SOLD | MOTOROLA INC | MEU | (3,400) | 51.1876 | (0.00) | | 173,863.76 | | |
| 8/16/2004 | 8/11/2004 | BOUGHT | MOTOROLA INC | MEU | 2 | 41.6500 | 136.30 | | (0.00) | | |
| 8/20/2004 | 8/17/2004 | BOUGHT | MOTOROLA INC | MEU | 1 | 43.8600 | 96.86 | | (0.00) | | |
| 8/23/2004 | | PRINCIPAL | MOTOROLA INC | MEU | (0) | (0.0000) | (0.00) | | 0.25 | | |
| 11/16/2004 | | EXCHANGE | MOROLA INC | 620076208 | (4,103) | (0.0000) | (0.00) | | (0.00) | | (218,869.15) |

Case 1:05-cv-05808-KMW　Document 27-3　Filed 07/29/05　Page 30 of 48

Exhibit 6b

**Summary of Bear Stearns 103-88018 Investment Activity**

| SETTLEMENT_ DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | Accrued Interest | CREDIT AMOUNT AMOUNT | Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **TOTAL PREFERRED EQUITIES** | | | | | | | | | | | |
| **Fixed Income** | | | | | | | | | | | |
| 7/13/2004 | 7/12/2004 | BOUGHT | UNITED STATES TREASURY BILL | 912795RU7 | 325,000 | 99.2183 | 322,534.31 | | (0.00) | | |
| 7/23/2004 | 7/22/2004 | BOUGHT | UNITED STATES TREASURY BILL | 912795RU7 | 300,000 | 99.2578 | 297,823.33 | | (0.00) | | |
| 7/30/2004 | 7/29/2004 | BOUGHT | UNITED STATES TREASURY BILL | 912795RU7 | 300,000 | 99.2756 | 297,876.67 | | (0.00) | | |
| 8/5/2004 | 8/4/2004 | BOUGHT | UNITED STATES TREASURY BILL | 912795RU7 | 375,000 | 99.3198 | 372,499.38 | | (0.00) | | |
| 8/18/2004 | 8/17/2004 | BOUGHT | UNITED STATES TREASURY BILL | 912795RU7 | 300,000 | 99.3753 | 298,125.88 | | (0.00) | | |
| 9/17/2004 | 9/16/2004 | SOLD | UNITED STATES TREASURY BILL | 912795RU7 | (1,000,000) | 99.4728 | (0.00) | | 994,677.50 | | |
| 10/4/2004 | 10/1/2004 | SOLD | UNITED STATES TREASURY BILL | 912795RU7 | (600,000) | 99.5509 | (0.00) | | 597,255.33 | | 3,073.26 |
| 4/6/2004 | 4/1/2004 | BOUGHT | TERADYNE INC | 880770AD4 | 250,000 | 113.1250 | 282,812.50 | 4,453.13 | (0.00) | | |
| 6/1/2004 | 5/26/2004 | SOLD | TERADYNE INC | 880770AD4 | (250,000) | 105.8750 | (0.00) | | 264,687.50 | 1,197.92 | |
| 6/14/2004 | 6/9/2004 | BOUGHT | TERADYNE INC | 880770AD4 | 250,000 | 105.0000 | 262,500.00 | 1,536.46 | (0.00) | | |
| 11/5/2004 | 11/2/2004 | SOLD | TERADYNE INC | 880770AD4 | (250,000) | 100.2500 | (0.00) | | 250,625.00 | 520.83 | (30,000.00) |
| 7/14/2004 | 7/9/2004 | BOUGHT | SEPRACOR INC | 817315AL8 | 300,000 | 102.1250 | 306,375.00 | 6,208.33 | (0.00) | | |
| 11/8/2004 | 11/3/2004 | SOLD | SEPRACOR INC | 817315AL8 | (300,000) | 102.3750 | (0.00) | | 307,125.00 | 3,458.33 | 750.00 |
| 5/20/2004 | 5/17/2004 | BOUGHT | INTERNATIONAL RECTIFIER CORP | 460254AE5 | 250,000 | 98.3750 | 245,937.50 | 3,689.24 | (0.00) | | |
| 5/21/2004 | 5/18/2004 | BOUGHT | INTERNATIONAL RECTIFIER CORP | 460254AE5 | 500,000 | 98.5000 | 492,500.00 | 7,437.50 | (0.00) | | |
| 5/24/2004 | 5/19/2004 | BOUGHT | INTERNATIONAL RECTIFIER CORP | 460254AE5 | 1,000,000 | 98.3125 | 983,125.00 | 15,229.17 | (0.00) | | |
| 6/2/2004 | 5/27/2004 | SOLD | INTERNATIONAL RECTIFIER CORP | 460254AE5 | (750,000) | 97.3750 | (0.00) | | 730,312.50 | 12,130.21 | |
| 7/1/2004 | 6/28/2004 | SOLD | INTERNATIONAL RECTIFIER CORP | 460254AE5 | (500,000) | 97.8750 | (0.00) | | 489,375.00 | 9,798.61 | |
| 8/6/2004 | 8/3/2004 | SOLD | INTERNATIONAL RECTIFIER CORP | 460254AE5 | (250,000) | 97.8750 | (0.00) | | 244,687.50 | 619.79 | |
| 8/11/2004 | 8/6/2004 | SOLD | INTERNATIONAL RECTIFIER CORP | 460254AE5 | (250,000) | 98.1250 | (0.00) | | 245,312.50 | 767.36 | |
| 8/16/2004 | 8/11/2004 | SOLD | INTERNATIONAL RECTIFIER CORP | 460254AE5 | (250,000) | 98.0000 | (0.00) | | 245,000.00 | 914.93 | |
| 11/5/2004 | 11/2/2004 | BOUGHT | INTERNATIONAL RECTIFIER CORP | 460254AE5 | 250,000 | 99.1250 | 247,812.50 | 3,246.53 | (0.00) | | (14,687.50) |
| 4/26/2004 | 4/21/2004 | BOUGHT | AMDOCS LTD | 02342TAB5 | 30,000 | 100.0000 | 30,000.00 | 241.67 | (0.00) | | |
| 2/24/2005 | 2/18/2005 | SOLD | AMDOCS LTD | 02342TAB5 | (30,000) | 96.7500 | (0.00) | | 29,025.00 | 138.33 | (975.00) |
| 7/27/2004 | 7/22/2004 | BOUGHT | AMAZON COM INC | 023135AF3 | 300,000 | 99.7500 | 299,250.00 | 7,006.25 | (0.00) | | |
| 8/16/2004 | 8/11/2004 | SOLD | AMAZON COM INC | 023135AF3 | (300,000) | 98.3750 | (0.00) | | 295,125.00 | 593.75 | |
| 8/16/2004 | 8/11/2004 | SOLD | AMAZON COM INC | 023135AF3 | (300,000) | 98.3750 | (0.00) | | 295,125.00 | 593.75 | |
| 11/5/2004 | 11/2/2004 | BOUGHT | AMAZON COM INC | 023135AF3 | 300,000 | 100.3750 | 301,125.00 | 3,720.83 | (0.00) | | (10,125.00) |
| 8/16/2004 | 8/11/2004 | SOLD | AVAYA INC | 053499AA7 | (500,000) | 56.0000 | (0.00) | | 280,000.00 | | |
| 10/28/2004 | 10/25/2004 | BOUGHT | AVAYA INC | 053499AA7 | 500,000 | 55.7500 | 278,750.00 | | (0.00) | | 1,250.00 |
| 5/20/2004 | 5/17/2004 | BOUGHT | ADVANCED MICRO DEVICES INC | 007903AE7 | 250,000 | 98.8750 | 247,187.50 | 3,595.49 | (0.00) | | |
| 11/8/2004 | 11/3/2004 | SOLD | ADVANCED MICRO DEVICES INC | 007903AE7 | (250,000) | 103.0000 | (0.00) | | 257,500.00 | 3,199.65 | 10,312.50 |

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 31 of 48

17 of 20

Exhibit 6b

**Summary of Bear Stearns 103-88018 Investment Activity**

| SETTLEMENT_DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | Accrued Interest | CREDIT AMOUNT AMOUNT | Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/14/2004 | 4/8/2004 | BOUGHT | INHALE THERAPEUTIC SYS INC | 457191AH7 | 200,000 | 99.1250 | 198,250.00 | 3,441.67 | (0.00) | | |
| 4/15/2004 | 4/12/2004 | BOUGHT | INHALE THERAPEUTIC SYS INC | 457191AH7 | 65,000 | 99.1250 | 64,431.25 | 1,124.86 | (0.00) | | |
| 4/26/2004 | 4/21/2004 | BOUGHT | INHALE THERAPEUTIC SYS INC | 457191AH7 | 250,000 | 98.6875 | 246,718.75 | 218.75 | (0.00) | | |
| 7/2/2004 | 6/29/2004 | SOLD | INHALE THERAPEUTIC SYS INC | 457191AH7 | (515,000) | 93.6250. | (0.00) | | 482,168.75 | 3,755.21 | (27,231.25) |
| 8/18/2004 | 8/13/2004 | SOLD | VISHAY INTERTECHNOLOGY INC | 928298AF5 | (500,000) | 102.0000 | (0.00) | | 510,000.00 | 855.90 | |
| 10/28/2004 | 10/25/2004 | BOUGHT | VISHAY INTERTECHNOLOGY INC | 928298AF5 | 500,000 | 105.6250 | 528,125.00 | 4,380.21 | (0.00) | | (18,125.00) |
| 5/20/2004 | 5/17/2004 | BOUGHT | LIBERTY MEDIA CORP | 530715AN1 | 250,000 | 92.8750 | 232,187.50 | 3,038.19 | (0.00) | | |
| 9/23/2004 | 9/20/2004 | SOLD | LIBERTY MEDIA CORP | 530715AN1 | (250,000) | 89.6250 | (0.00) | | 224,062.50 | 1,652.78 | (8,125.00) |
| 4/12/2004 | 4/6/2004 | BOUGHT | TOWER AUTOMOTIVE INC | 891707AE1 | 298,000 | 98.1250 | 292,412.50 | 2,938.61 | (0.00) | | |
| 5/25/2004 | 5/20/2004 | SOLD | TOWER AUTOMOTIVE INC | 891707AE1 | (298,000) | 100.0625 | (0.00) | | 298,186.25 | 4,718.33 | 5,773.75 |
| 4/6/2004 | 4/1/2004 | BOUGHT | CYPRESS SEMICONDUCTOR CORP | CY/J05 | 250,000 | 100.6250 | 251,562.50 | 2,473.96 | (0.00) | | |
| 5/27/2004 | 5/24/2004 | SOLD | RESS SEMICONDUCTOR CORP | CY/J05 | (250,000) | 99.1250 | (0.00) | | 247,812.50 | 3,802.08 | (3,750.00) |
| 4/6/2004 | 4/1/2004 | BOUGHT | LAM RESEARCH | 512807AE8 | 250,000 | 101.6250 | 254,062.50 | 3,472.22 | (0.00) | | |
| 6/1/2004 | 5/26/2004 | SOLD | LAM RESEARARCH | 512807AE8 | (250,000) | 101.0000 | (0.00) | | 252,500.00 | | (1,562.50) |
| 4/6/2004 | 4/1/2004 | BOUGHT | CEPHALON INC | 156708AE9 | 250,000 | 99.8750 | 249,687.50 | 1,927.08 | (0.00) | | |
| 5/26/2004 | 5/21/2004 | SOLD | CEPHALON INC | 156708AE9 | (250,000) | 95.1250 | (0.00) | | 237,812.50 | 2,795.14 | (11,875.00) |
| 4/16/2004 | 4/13/2004 | BOUGHT | ABGENIX INC | 00339BAB3 | 250,000 | 97.0000 | 242,500.00 | 753.47 | (0.00) | | |
| 6/1/2004 | 5/26/2004 | SOLD | ABGENIX INC | 00339BAB3 | (250,000) | 96.1250 | (0.00) | | 240,312.50 | 1,847.22 | (2,187.50) |
| 4/7/2004 | 4/2/2004 | BOUGHT | ALEXION PHARMACEUTICALS INC | 015351AB5 | 198,000 | 101.6250 | 201,217.50 | 695.75 | (0.00) | | |
| 5/26/2004 | 5/21/2004 | SOLD | ALEXION PHARMACEUTICALS INC | 015351AB5 | (198,000) | 98.8750 | (0.00) | | 195,772.50 | 2,245.38 | (5,445.00) |
| 4/22/2004 | 4/19/2004 | BOUGHT | LOEWS CORP SUB NOTE | 540424AL2 | 300,000 | 98.6250 | 295,875.00 | 963.54 | (0.00) | | |
| 5/27/2004 | 5/24/2004 | SOLD | LOEWS CORP SUB NOTE | 540424AL2 | (300,000) | 95.1250 | (0.00) | | 285,375.00 | 1,875.00 | (10,500.00) |
| 4/28/2004 | 4/23/2004 | BOUGHT | PHARMACEUTICAL RES INC | 717125AC2 | 200,000 | 94.7500 | 189,500.00 | 447.22 | (0.00) | | |
| 4/28/2004 | 4/14/2004 | BOUGHT | PHARMACEUTICAL RES INC | 717125AC2 | 350,000 | 94.2500 | 330,431.08 | | (0.00) | | |
| 5/28/2004 | 5/25/2004 | SOLD | PHARMACEUTICAL RES INC | 717125AC2 | (550,000) | 88.8750 | (0.00) | | 488,812.50 | 2,547.57 | (31,118.58) |
| 4/6/2004 | 4/1/2004 | BOUGHT | RADIAN GROUP INC | 750236AF8 | 250,000 | 102.1250 | 255,312.50 | 1,484.38 | (0.00) | | |
| 5/26/2004 | 5/21/2004 | SOLD | RADIAN GROUP INC | 750236AF8 | (250,000) | 101.2500 | (0.00) | | 253,125.00 | 2,265.63 | (2,187.50) |

Exhibit 6b

**Summary of Bear Stearns 103-88018 Investment Activity**

| SETTLEMENT_ DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | DEBIT_AMOUNT Accrued Interest | CREDIT AMOUNT AMOUNT | CREDIT AMOUNT Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/20/2004 | 5/17/2004 | BOUGHT | FISHER SCIENTIFIC INTL INC | 338032AX3 | 250,000 | 102.1250 | 255,312.50 | 1,737.85 | (0.00) | | |
| 6/25/2004 | 6/22/2004 | SOLD | FISHER SCIENTIFIC INTL INC | 338032AX3 | (250,000) | 104.2500 | (0.00) | | 260,625.00 | 2,527.78 | 5,312.50 |

**TOTAL FIXED INCOME**

Accrued Interest

**TOTAL PORTFOLIO**

**SECURITIES/OPTIONS/CORP BONDS PURCHASED & SOLD WITHIN SAME MONTH:**

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/13/2005 | 1/12/2005 | SOLD | PUT AMAZON COM JAN 040 | 0231359M0 | (10) | 0.5000 | | | 446.98 | | |
| 1/24/2005 | | EXPIRED | PUT AMAZON COM JAN 040 | 0231359M0 | 10 | | | | | | |
| 1/24/2005 | | EXPIRED | PUT AMAZON COM JAN 040 | 0231359M0 | 10 | | | | | | 446.98 |
| | | | | | | | | | | | |
| 1/7/2005 | 1/6/2005 | SOLD | PUT BIOGEN IDEC JAN 055 | 09062X9M7 | (10) | 0.2000 | | | 146.99 | | |
| 1/24/2005 | | EXPIRED | PUT BIOGEN IDEC JAN 055 | 09062X9M7 | 10 | | | | | | 146.99 |
| | | | | | | | | | | | |
| 1/7/2005 | 1/6/2005 | SOLD | PUT ELECTR ARTS JAN 050 | 2855129M3 | (35) | 0.1500 | | | 416.98 | | |
| 1/13/2005 | 1/12/2005 | SOLD | PUT ELECTR ARTS JAN 57.5 | 2855129M3 | (35) | 0.8071 | | | 2,716.75 | | |
| 1/24/2005 | | EXPIRED | PUT ELECTR ART JAN 050 | 2855129M3 | 35 | | | | | | |
| 1/24/2005 | | EXPIRED | PUT ELECTR ART JAN 050 | 2855129M3 | 35 | | | | | | 3,133.73 |
| | | | | | | | | | | | |
| 1/12/2005 | 1/11/2005 | SOLD | PUT EBAY JAN 100 | 2P799W9M1 | (5) | 1.1500 | | | 521.98 | | |
| 1/24/2005 | | JOURNAL | PUT EBAY JAN 100 | 2P799W9M1 | 5 | | | | | | 521.98 |
| | | | | | | | | | | | |
| 7/23/2004 | 7/20/2004 | BOUGHT | FLAMEL TECHNOLOGIES SA | FLML | 7,500 | 17.7430 | 133,462.50 | | (0.00) | | |
| 7/26/2004 | 7/21/2004 | SOLD | FLAMEL TECHNOLOGIES SA | FLML | (7,500) | 18.1127 | (0.00) | | 135,452.07 | | 1,989.57 |
| | | | | | | | | | | | |
| 12/8/2004 | 12/3/2004 | SOLD | FREESCALE SEMICONDUCTOR INC | FSLB | (402) | (0.0000) | (0.00) | | (0.00) | | |
| 12/9/2004 | 12/6/2004 | BOUGHT | FREESCALE SEMICONDUCTOR INC | FSLB | 402 | 17.9000 | 7,215.90 | | (0.00) | | (7,215.90) |
| | | | | | | | | | | | |
| 7/8/2004 | 7/2/2004 | SOLD | GUIDANT CORP | GDT | (9,000) | 54.9000 | (0.00) | | 493,638.43 | | |
| 7/27/2004 | 7/22/2004 | BOUGHT | GUIDANT CORP | GDT | 9,000 | 50.0500 | 450,900.00 | | (0.00) | | 42,738.43 |
| | | | | | | | | | | | |
| 9/17/2004 | 9/16/2004 | SOLD | CALL GOOGLE INC SEP 110 **** | 38259P9I5 | (10) | 3.0000 | (0.00) | | 2,946.92 | | |
| 9/20/2004 | | JOURNAL | CALLL GOOGLE INC SEP 110 **** | 38259P9I5 | 10 | (0.0000) | (0.00) | | (0.00) | | 2,946.92 |
| | | | | | | | | | | | |
| 1/4/2005 | 1/3/2005 | SOLD | CALL GOOGLE FEB 200 | QGOUB200 | (9) | 12.7778 | | | 11,446.75 | | |
| 1/20/2005 | 1/19/2005 | BOUGHT | CALL GOOGLE FEB 200 | QGOUB200 | 9 | 10.0000 | 9,053.00 | | | | 2,393.75 |
| | | | | | | | | | | | |
| 1/10/2005 | 1/7/2005 | SOLD | CALL GOOGLE FEB 200 | 3Q199W9A0 | (60) | 4.9000 | | | 29,216.03 | | |
| 1/11/2005 | 1/10/2005 | BOUGHT | CALL GOOGLE JAN 195 | 3Q199W9A0 | 30 | 4.7333 | 14,292.90 | | | | |

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 33 of 48

Exhibit 6b

**Summary of Bear Stearns 103-88018 Investment Activity**

| SETTLEMENT_DATE | TRADE DATE | TRANSACTION | DESCRIPTION | SYMBOL | QUANITY | PRICE | DEBIT_AMOUNT Amount | DEBIT Accrued Interest | CREDIT AMOUNT AMOUNT | CREDIT Accrued Interest | Realized Gain (loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/13/2005 | 1/12/2005 | BOUGHT | CALL GOOGLE JAN 195 | 3Q199W9AO | 20 | 4.0000 | 8,063.00 | | | | |
| 1/14/2005 | 1/13/2005 | BOUGHT | CALL GOOGLE JAN 195 | 3Q199W9AO | 10 | 4.0000 | 4,053.00 | | | | 2,807.13 |
| | | | | | | | | | | | |
| 1/27/2005 | 1/24/2005 | BOUGHT | NASDAQ 100 SHARES | QQQQ | 75 | 36.6500 | 2,801.75 | | | | |
| 1/31/2005 | 1/26/2005 | SOLD | NASDAQ 100 SHARES | QQQQ | (75) | 37.0260 | | | 2,723.85 | | (77.90) |
| | | | | | | | | | | | |
| 12/8/2004 | 12/7/2004 | SOLD | PUT PALMONE   DEC 035 **** | 69713P9X7 | (180) | 1.8000 | (0.00) | | 31,856.24 | | |
| 12/9/2004 | 12/8/2004 | BOUGHT | PUT PALMONE   DEC 035 **** | 69713P9X7 | 180 | 1.4417 | 26,493.60 | | (0.00) | | |
| 12/20/2004 | 12/17/2004 | SOLD | PUT PALMONE   DEC 035 **** | 69713P9X7 | (245) | 1.2327 | (0.00) | | 29,462.44 | | |
| 12/20/2004 | | JOURNAL | PUT PALMONE   DEC 035 **** | 69713P9X7 | 245 | (0.0000) | (0.00) | | (0.00) | | 34,825.08 |
| | | | | | | | | | | | |
| 12/16/2004 | 12/15/2004 | SOLD | RESEARCH IN DEC 080 **** | 7A699W9X6 | (100) | 1.3100 | (0.00) | | 12,796.69 | | |
| 12/20/2004 | | EXPIRED | RESEARCH IN DEC 080 **** | 7A699W9X6 | 100 | (0.0000) | (0.00) | | (0.00) | | 12,796.69 |
| | | | | | | | | | | | |
| 1/20/2005 | 1/19/2005 | SOLD | PUT SILICON IMAG JAN 015 | 82705T9M6 | (10) | 0.7500 | | | 696.97 | | |
| 1/12/2005 | 1/11/2005 | SOLD | PUT SILICON IMAG JAN 015 | 82705T9MB | (30) | 0.8500 | | | 2,456.91 | | |
| 1/24/2005 | | JOURNAL | PUT SILICON IMAG JAN 015 | 82705T9M6 | 40 | | | | | | |
| 1/24/2005 | | JOURNAL | PUT SILICON IMAG JAN 015 | 82705T9M6 | 40 | | | | | | 3,153.88 |
| | | | | | | | | | | | |
| 5/11/2004 | 5/6/2004 | BOUGHT | UNUMPROVIDENT CORP | UNMPRA | 6,500 | 32.0246 | 208,484.90 | | (0.00) | | |
| 5/25/2004 | 5/20/2004 | SOLD | UNUMPROVIDENT CORP | UNMPRA | (6,500) | 29.2000 | (0.00) | | 189,470.55 | | (19,014.35) |
| | | | | | | | | | | | |
| Sub-total | | | | | | | $109,144,586.98 | | $107,288,569.03 | | ($1,856,017.95) |

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 34 of 48

20 of 20

# Exhibit 6c

**Lehman Account - Summary of Investment Activity**

| SETTLEMENT DATE | TRADE DATE | TRANSACTION | DESCRIPTION | ME QUANITY | PRICE | DEBIT AMOUNT Amount | Accrued Interest | CREDIT AMOUNT Amount | Accrued Interest | Realized Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|
| **Cash and Cash Equivalents** | | | | | | | | | | |
| **Equities - Long** | | | | | | | | | | |
| 2/7/2005 | 2/2/2005 | BOUGHT | AMAZON.COM INC | 1,000 | 36.0000 | (36,040.00) | | | | |
| 3/8/2005 | 3/3/2005 | SOLD | AMAZON.COM INC | (1,000) | 35.8800 | | | 35,838.81 | | (201.19) |
| 2/7/2005 | 2/2/2005 | BOUGHT | AMAZON.COM INC | 750 | 37.5000 | (28,155.00) | | | | |
| 2/7/2005 | 2/2/2005 | SOLD | AMAZON.COM INC | (750) | 42.0500 | | | 31,506.46 | | 3,351.46 |
| 4/20/2005 | 4/15/2005 | BOUGHT | APPLE COMPUTER INC | 9,000 | 37.5000 | (337,500.00) | | | | |
| 4/20/2005 | 4/15/2005 | BOUGHT | APPLE COMPUTER INC | 10,000 | 36.2250 | (362,650.00) | | | | |
| 4/26/2005 | 4/21/2005 | SOLD | APPLE COMPUTER INC | (19,000) | 37.1360 | | | 704,809.70 | | 4,659.70 |
| 2/8/2005 | 2/3/2005 | BOUGHT | ASK JEEVES INC | 1,500 | 26.9080 | (40,422.45) | | | | |
| 3/23/2005 | 3/18/2005 | SOLD | ASK JEEVES INC | (1,000) | 30.0000 | | | 29,999.01 | | |
| 5/9/2005 | 5/4/2005 | SOLD | ASK JEEVES INC | (500) | 28.8500 | | | 14,404.39 | | 3,980.95 |
| 3/23/2005 | 3/18/2005 | BOUGHT | CERADYNE INC-CALIF | 800 | 25.0000 | (20,000.00) | | To BOA | | |
| 3/23/2005 | 3/18/2005 | BOUGHT | FLEXTRONICS INTERNATIONAL LTD | 1,800 | 12.5000 | (22,500.00) | | To BOA | | |
| 2/10/2005 | 2/7/2005 | BOUGHT | RESEARCH IN MOTION LTD | 500 | 75.0000 | (37,520.00) | | | | |
| 3/10/2005 | 3/7/2005 | SOLD | RESEARCH IN MOTION LTD | (500) | 75.0000 | | | 37,498.76 | | (21.24) |
| 4/20/2005 | 4/15/2005 | BOUGHT | RESEARCH IN MOTION LTD | 1,000 | 70.0000 | (70,000.00) | | To BOA | | |
| 4/20/2005 | 4/15/2005 | BOUGHT | F5 NETWORKS INC | 1,800 | 45.0000 | (81,000.00) | | To BOA | | |
| 4/20/2005 | 4/15/2005 | BOUGHT | GOOGLE INC | 3,100 | 185.0000 | (573,500.00) | | To BOA | | |
| 4/20/2005 | 4/15/2005 | BOUGHT | INFOSPACE INC | 400 | 40.0000 | (16,000.00) | | To BOA | | |

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 37 of 48

**Lehman Account - Summary of Investment Activity**

Exhibit 6c

| SETTLEMENT DATE | TRADE DATE | TRANSACTION | DESCRIPTION | ME QUANITY | PRICE | Amount (DEBIT) | Accrued Interest | Amount (CREDIT) | Accrued Interest | Realized Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|
| 4/20/2005 | 4/15/2005 | BOUGHT | SEARS HOLDINGS CORP | 5,200 | 135.0000 | (702,000.00) | | | | |
| 4/22/2005 | 4/19/2005 | SOLD | SEARS HOLDINGS CORP | (5,200) | 137.1390 | | | 712,887.07 | | 10,887.07 |

**Sub-total: Equities - Long** — 22,656.75

**Equities - Short**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 2/7/2005 | 2/2/2005 | BOUGHT | GOOGLE INC | 3,000 | 204.1660 | (612,620.10) | | | | |
| 2/7/2005 | 2/2/2005 | BOUGHT | GOOGLE INC | 1,000 | 209.5960 | (209,636.00) | | | | |
| 2/7/2005 | 2/2/2005 | SOLD | GOOGLE INC | (1,000) | 210.0000 | | | 209,953.09 | | |
| 2/8/2005 | 2/3/2005 | SOLD | GOOGLE INC | (3,000) | 209.5330 | | | 628,459.21 | | |
| 2/9/2005 | 2/4/2005 | BOUGHT | GOOGLE INC | 15,000 | 204.0860 | (3,061,900.50) | | | | |
| 2/9/2005 | 2/4/2005 | SOLD | GOOGLE INC | (280) | 206.0100 | | | 57,669.70 | | |
| 2/10/2005 | 2/7/2005 | BOUGHT | GOOGLE INC | 22,000 | 198.5860 | (4,369,789.60) | | | | |
| 2/11/2005 | 2/8/2005 | SOLD | GOOGLE INC | (36,720) | 195.1530 | | | 7,164,320.93 | | |
| 2/11/2005 | 2/8/2005 | BOUGHT | GOOGLE INC | 28,280 | 198.0080 | (5,600,808.75) | | | | |
| 2/11/2005 | 2/8/2005 | SOLD | GOOGLE INC | (3,280) | 195.1530 | | | 639,950.24 | | |
| 2/11/2005 | 2/8/2005 | SOLD | GOOGLE INC | (65,000) | 197.8450 | | | 12,856,908.40 | | |
| 2/14/2005 | 2/9/2005 | SOLD | GOOGLE INC | (1,000) | 201.1500 | | | 201,103.38 | | |
| 2/15/2005 | 2/10/2005 | BOUGHT | GOOGLE INC | 15,000 | 188.1750 | (2,823,237.00) | | | | |
| 2/15/2005 | 2/10/2005 | SOLD | GOOGLE INC | (11,000) | 189.8180 | | | 2,087,491.50 | | |
| 2/16/2005 | 2/11/2005 | SOLD | GOOGLE INC | (20,500) | 188.9300 | | | 3,872,127.82 | | |
| 2/17/2005 | 2/14/2005 | SOLD | GOOGLE INC | (2,000) | 191.8750 | | | 383,657.37 | | |
| 2/18/2005 | 2/15/2005 | SOLD | GOOGLE INC | (7,000) | 191.7140 | | | 1,341,675.94 | | |
| 2/18/2005 | 2/15/2005 | BOUGHT | GOOGLE INC | 1,000 | 195.0000 | (195,040.00) | | | | |
| 2/22/2005 | 2/16/2005 | SOLD | GOOGLE INC | (5,000) | 197.2500 | | | 986,017.55 | | |
| 2/25/2005 | 2/22/2005 | SOLD | GOOGLE INC | (5,000) | 198.5000 | | | 992,267.34 | | |
| 2/28/2005 | 2/23/2005 | BOUGHT | GOOGLE INC | 7,000 | 192.2140 | (1,345,780.10) | | | | |
| 2/28/2005 | 2/23/2005 | BOUGHT | GOOGLE INC | 5,000 | 192.2000 | (961,200.00) | | | | |
| 3/1/2005 | 2/24/2005 | BOUGHT | GOOGLE INC | 22,000 | 191.6250 | | | 957,893.47 | | |
| 4/11/2005 | 4/6/2005 | SOLD | GOOGLE INC | (4,500) | 184.9100 | (4,068,919.80) | | | | |
| 4/12/2005 | 4/7/2005 | SOLD | GOOGLE INC | (12,000) | 188.9720 | | | 850,159.35 | | |
| 4/14/2005 | 4/11/2005 | SOLD | GOOGLE INC | (7,000) | 192.0370 | | | 2,303,873.67 | | |
| 4/15/2005 | 4/12/2005 | SOLD | GOOGLE INC | (6,000) | 194.3000 | | | 1,359,763.14 | | |
| 4/26/2005 | 4/21/2005 | SOLD | GOOGLE INC | (4,000) | 193.7250 | | | 1,162,061.41 | | |
| 5/9/2005 | 5/4/2005 | BUY | GOOGLE INC | 1,000 | 215.2500 | | | 860,804.01 | | |
| | | | | | 228.5000 | (228,540.00) | | | | 170,623.61 |
| 3/9/2005 | 3/4/2005 | SOLD | FLEXTRONICS INTERNATIONAL LTD | (2,500) | 13.7640 | | | 34308.86 | To BOA | |
| 3/9/2005 | 3/4/2005 | SOLD | AMAZON.COM INC | (250) | 35.9000 | | | 8,964.70 | To BOA | |
| 3/7/2005 | 3/2/2005 | SOLD | CERADYNE INC-CALIF | (477) | 28.2500 | | | 13,455.72 | To BOA | |
| 3/7/2005 | 3/2/2005 | SOLD | CERADYNE INC-CALIF | (477) | 28.0650 | | | 13,367.71 | To BOA | |
| 3/9/2005 | 3/4/2005 | SOLD | CERADYNE INC-CALIF | (200) | 29.6750 | | | 5,926.80 | To BOA | |
| 4/11/2005 | 4/6/2005 | SOLD | DIGITAL RIVER INC | (200) | 31.7500 | | | 6,341.73 | | |

2 of 6

Lehman Account - Summary of Investment Activity

Exhibit 6c

| SETTLEMENT_ DATE | TRADE DATE | TRANSACTION | DESCRIPTION | ME QUANITY | PRICE | DEBIT_AMOUNT | | CREDIT AMOUNT | | Realized Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Amount | Accrued Interest | Amount | Accrued Interest | |
| 4/12/2005 | 4/7/2005 | SOLD | DIGITAL RIVER INC | (1,000) | 31.9000 | | | 31,858.66 | | To BOA |
| 3/14/2005 | 3/9/2005 | SOLD | ELECTRONIC ARTS INC | (500) | 70.7000 | | | 35,328.83 | | To BOA |
| 4/11/2005 | 4/6/2005 | SOLD | ELECTRONICS BOUTIQUE HOLDINGS CORP | (427) | 43.2000 | | | 18,428.54 | | To BOA |
| 3/16/2005 | 3/11/2005 | SOLD | EXPRESS SCRIPTS INC COMMON | (500) | 86.3000 | | | 43,128.58 | | To BOA |
| 4/11/2005 | 4/8/2005 | SOLD | EXPRESS SCRIPTS INC COMMON | (3,500) | 87.9350 | | | 307,622.08 | | To BOA |
| 3/8/2005 | 3/8/2005 | SOLD | F5 NETWORKS INC | (1,160) | 55.5750 | | | 64,418.47 | | To BOA |
| 3/9/2005 | 3/4/2005 | SOLD | F5 NETWORKS INC | (350) | 56.3000 | | | 19,690.35 | | To BOA |
| 3/10/2005 | 3/7/2005 | SOLD | F5 NETWORKS INC | (500) | 57.9000 | | | 28,929.04 | | To BOA |
| 4/12/2005 | 4/7/2005 | SOLD | INFOSPACE INC | (2,500) | 40.5840 | | | 101,355.75 | | To BOA |
| 3/17/2005 | 3/14/2005 | SOLD | OSI PHARMACEUTICALS INC | (500) | 48.7000 | | | 24,329.19 | | To BOA |
| 4/11/2005 | 4/6/2005 | SOLD | OSI PHARMACEUTICALS INC | (1,000) | 44.6000 | | | 44,558.13 | | To BOA |
| 2/9/2005 | 3/4/2005 | SOLD | PALMONE INC | (750) | 24.2800 | | | 18,179.40 | | To BOA |
| 4/11/2005 | 4/6/2005 | SOLD | PROTEIN DESIGN LABS INC | (1,000) | 16.0000 | | | 15,959.33 | | To BOA |
| 4/12/2005 | 4/7/2005 | SOLD | PROTEIN DESIGN LABS INC | (1,000) | 15.9000 | | | 15,859.33 | | To BOA |
| 3/23/2005 | 3/18/2005 | SOLD | RESEARCH IN MOTION LTD | (500) | 80.0000 | | | 39,998.88 | | To BOA |
| 4/11/2005 | 4/6/2005 | SOLD | RESEARCH IN MOTION LTD | (1,000) | 73.8020 | | | 73,758.91 | | To BOA |
| 3/10/2005 | 3/7/2005 | SOLD | SANDISK CORP | (1,560) | 27.2010 | | | 42,370.23 | | To BOA |

**Sub-total: Equities - Short**                                                170,623.61

**Options**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 2/3/2005 | 2/2/2005 | BOUGHT | AMAZON.COM INC - Call Option | 29 | 2.9340 | (8,582.55) | | | | |
| 2/4/2005 | 2/3/2005 | BOUGHT | AMAZON.COM INC - Call Option | 5 | 0.5000 | (262.50) | | | | |
| 4/19/2005 | 4/19/2005 | OPT EXPIRE | AMAZON.COM INC | (34) | | | | | | (8,845.05) |

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 38 of 48

Lehman Account - Summary of Investment Activity

Exhibit 6c

| SETTLEMENT_ DATE | TRADE DATE | TRANSACTION | DESCRIPTION | ME QUANITY | PRICE | DEBIT_AMOUNT | | CREDIT AMOUNT | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Amount | Accrued Interest | Amount | Accrued Interest | Realized Gain/(Loss) |
| 2/3/2005 | 2/2/2005 | SOLD | AMAZON.COM INC | (20) | 0.4000 | | | 749.97 | | 749.97 |
| 2/23/2005 | 2/23/2005 | OPT EXPIRE | AMAZON.COM INC | 20 | | | | | | |
| | | | | | | | | | | |
| 2/4/2005 | 2/3/2005 | SOLD | AMAZON.COM INC | (80) | 0.3870 | | | 2,899.89 | | |
| 2/7/2005 | 2/4/2005 | SOLD | AMAZON.COM INC | (20) | 0.2000 | | | 349.98 | | |
| 2/23/2005 | 2/23/2005 | OPT EXPIRE | AMAZON.COM INC | 100 | | | | | | 3,249.87 |
| | | | | | | | | | | |
| 3/4/2005 | 3/3/2005 | SOLD | AMAZON.COM INC | (8) | 0.1500 | | | 99.99 | | 99.99 |
| 3/22/2005 | 3/22/2005 | OPT EXPIRE | AMAZON.COM INC | 8 | | | | | | |
| | | | | | | | | | | |
| 4/15/2005 | 4/14/2005 | SOLD | APPLE COMPUTER INC apr37.5 | ?? (90) | 0.2500 | | | 2,024.90 | | 2,024.90 |
| | | | | | | | | | | |
| 2/4/2005 | 2/3/2005 | BOUGHT | ASK JEEVES INC | 10 | 4.5000 | (4,525.00) | | | | |
| 3/7/2005 | 3/4/2005 | SOLD | ASK JEEVES INC March 025 | (10) | 0.2500 | | | 224.99 | | |
| 3/22/2005 | 3/22/2005 | OPT EXPIRE | ASK JEEVES INC | ?? 10 | | | | | | (4,300.01) |
| | | | | | | | | | | |
| 3/10/2005 | 3/9/2005 | BOUGHT | FLEXTRONICS INTERNATIONAL LTD Call Jul | 20 | 1.4750 | (3,000.00) | | To BOA | | |
| | | | | | | | | | | |
| 3/10/2005 | 3/9/2005 | SOLD | FLEXTRONICS INTERNATIONAL LTD Put Mar 12.5 | (20) | 0.1250 | | | 199.99 | | 199.99 |
| 3/22/2005 | 3/22/2005 | OPT EXPIRE | FLEXTRONICS INTERNATIONAL LTD Put Mar 12.5 | ?? 2 | | | | | | |
| | | | | | | | | | | |
| 4/15/2005 | 4/14/2005 | BOUGHT | APPLE COMPUTER INC july 040 | 50 | 2.6200 | (13,225.00) | | To BOA | | |
| | | | | | | | | | | |
| 2/7/2005 | 2/4/2005 | BOUGHT | RESEARCH IN MOTION LTD March 05 | 20 | 4.1000 | (8,250.00) | | | | |
| 3/22/2005 | 3/22/2005 | OPT EXPIRE | RESEARCH IN MOTION LTD March 05 | (15) | | | | | | |
| 3/7/2005 | 3/4/2005 | SOLD | RESEARCH IN MOTION LTD March 05 | (5) | 0.2000 | | | 87.49 | | (8,162.51) |
| | | | | | | | | | | |
| 2/7/2005 | 2/4/2005 | SOLD | RESEARCH IN MOTION LTD | (130) | 0.4570 | | | 5,624.90 | | 5,624.90 |
| 2/23/2005 | 2/23/2005 | OPT EXPIRE | RESEARCH IN MOTION LTD | 130 | | | | | | |
| | | | | | | | | | | |
| 4/7/2005 | 4/6/2005 | BOUGHT | RESEARCH IN MOTION LTD | 50 | 5.3000 | (26,625.00) | | To BOA | | |
| | | | | | | | | | | |
| 4/7/2005 | 4/6/2005 | SOLD | RESEARCH IN MOTION LTD Put Apr 070 | ?? (10) | 0.9500 | | | 924.96 | | 924.96 |
| | | | | | | | | | | |
| 3/3/2005 | 3/2/2005 | BOUGHT | CERADYNE INC-CALIF Jun030 | 20 | 2.5250 | (5,100.00) | | To BOA | | |
| | | | | | | | | | | |
| 3/3/2005 | 3/2/2005 | SOLD | CERADYNE INC-CALIF Mar 025 | (8) | 0.4250 | | | 319.98 | | 319.98 |
| | | | | | | | | | | |
| 4/12/2005 | 4/11/2005 | BOUGHT | DIGITAL RIVER INC Call Sep 030 | 10 | 5.3000 | (5,325.00) | | To BOA | | |

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 39 of 48

**Lehman Account - Summary of Investment Activity**                                                                Exhibit 6c

| SETTLEMENT_ DATE | TRADE DATE | TRANSACTION | DESCRIPTION | ME QUANITY | PRICE | DEBIT_AMOUNT | | CREDIT AMOUNT | | Realized Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Amount | Accrued Interest | Amount | Accrued Interest | |
| 4/12/2005 | 4/11/2005 | SOLD | DIGITAL RIVER INC Put Apr 025 | (10) | 0.1000 | | | 74.99 | | 74.99 |
| 4/19/2005 | 4/19/2005 | OPT EXPIRE | DIGITAL RIVER INC Put Apr 025 | 10 | | | | | | |
| 3/14/2005 | 3/11/2005 | BOUGHT | ELECTRONIC ARTS INC | 8 | 6.7000 | (5,380.00) | | To BOA | | |
| 3/15/2005 | 3/14/2005 | BOUGHT | F5 NETWORKS INC Call Jul 055 | 20 | 5.9500 | (11,950.00) | | To BOA | | |
| 3/16/2005 | 3/15/2005 | BOUGHT | F5 NETWORKS INC Call Jul 055 | 5 | 5.6000 | (2,812.50) | | To BOA | | |
| 3/15/2005 | 3/14/2005 | SOLD | F5 NETWORKS INC Put Mar 050 | (18) | 0.3000 | | | 494.98 | | 494.98 |
| 3/22/2005 | 3/22/2005 | OPT EXPIRE | F5 NETWORKS INC Put Mar 050 | 18 | | | | | | |
| 4/13/2005 | 4/12/2005 | SOLD | F5 NETWORKS INC Apr 045 | ?? (18) | 0.3220 | | | 534.93 | | 534.93 |
| 4/8/2005 | 4/7/2005 | BOUGHT | EXPRESS SCRIPTS INC Call May 085 | 10 | 5.4000 | (5,425.00) | | To BOA | | |
| 4/13/2005 | 4/12/2005 | SOLD | EXPRESS SCRIPTS INC COMMON Put Apr 080 | (10) | 0.1500 | | | 124.99 | | 124.99 |
| 4/19/2005 | 4/19/2005 | OPT EXPIRE | EXPRESS SCRIPTS INC COMMON Put Apr 080 | 10 | | | | | | |
| 4/7/2005 | 4/6/2005 | BOUGHT | INFOSPACE INC Call Jul 2005 | 30 | 5.0660 | (15,275.10) | | To BOA | | |
| 4/15/2005 | 4/14/2005 | SOLD | INFOSPACE INC Put Apr 040 | (10) | 25.0000 | | | 224.98 | | 224.98 |
| 4/19/2005 | 4/19/2005 | OPT EXPIRE | INFOSPACE INC Put Apr 040 | ?? 6 | | | | | | |
| 3/9/2005 | 3/8/2005 | BOUGHT | OSI PHARMACEUTICALS INC | 20 | 5.2000 | (10,450.00) | | To BOA | | |
| 3/9/2005 | 3/8/2005 | SOLD | OSI PHARMACEUTICALS INC | (10) | 0.4000 | | | 374.98 | | 374.98 |
| 3/22/2005 | 3/22/2005 | OPT EXPIRE | OSI PHARMACEUTICALS INC | 10 | | | | | | |
| 4/13/2005 | 4/12/2005 | SOLD | OSI PHARMACEUTICALS INC | (11) | 0.4040 | | | 417.43 | | 417.43 |
| 4/19/2005 | 4/19/2005 | OPT EXPIRE | OSI PHARMACEUTICALS INC | 11 | | | | | | |
| 3/4/2005 | 3/3/2005 | BOUGHT | PALMONE INC | 10 | 5.2000 | (5,225.00) | | T0 BOA | | |
| 3/8/2005 | 3/7/2005 | SOLD | PALMONE INC | (5) | 0.3000 | | | 137.49 | | 137.49 |
| 3/22/2005 | 3/22/2005 | OPT EXPIRE | PALMONE INC | 5 | | | | | | |
| 4/12/2005 | 4/11/2005 | SOLD | PROTEIN DESIGN LABS INC | (10) | 0.1500 | | | 124.99 | | 124.99 |
| 4/19/2005 | 4/19/2005 | OPT EXPIRE | PROTEIN DESIGN LABS INC | 10 | | | | | | |

Case 1:05-cv-05808-KMW   Document 27-3   Filed 07/29/05   Page 40 of 48

Lehman Account - Summary of Investment Activity

Exhibit 6c

| SETTLEMENT_ DATE | TRADE DATE | TRANSACTION | DESCRIPTION | ME QUANITY | PRICE | DEBIT_AMOUNT | | CREDIT AMOUNT | | Realized Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Amount | Accrued Interest | Amount | Accrued Interest | |
| 3/7/2005 | 3/4/2005 | BOUGHT | SANDISK CORP | 10 | 3.7000 | (3,725.00) | | | | To BOA |
| 4/25/2005 | 4/22/2005 | BOUGHT | SANDISK CORP | 10 | 2.3500 | (2,375.00) | | | | To BOA |
| 4/18/2005 | 4/15/2005 | SOLD | SEARS HOLDINGS CORP Put Apr 135 | (100) | 0.5650 | | | 5,399.76 | | 5,399.76 |
| 4/19/2005 | 4/19/2005 | OPT EXPIRE | SEARS HOLDINGS CORP Put Apr 135 | ?? 48 | | | | | | |
| 4/18/2005 | 4/15/2005 | SOLD | GOOGLE INC | (70) | 0.2140 | | | 1,325.03 | | 1,325.03 |
| 4/19/2005 | 4/19/2005 | OPT EXPIRE | GOOGLE INC | 39 | | | | | | |
| 5/13/2005 | 5/13/2005 | JOURNAL | TOA TO BANC OF AMERICA ($18,291,260.25 included in cash activity) | | | | | | | |

**Sub-total: Options**      1,121.54

**TOTAL PORTFOLIO**      194,401.90

Case 1:05-cv-05808-KMW    Document 27-3    Filed 07/29/05    Page 41 of 48

6 of 6

# Exhibit 6d

| Bank of America 118-01602-1-8 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| Trans Date | Account | Trans Code | Shares | Symbol | Price | Net Amount | Broker | Realized Gain |
| **Equities - Long** | | | | | | | | |
| | | | | | | | | |
| 06/02/2005 | 11801602 | BY | 1450 | WBSN | 54.9217 | (79,680.02) | BOFA | - |
| 06/28/2005 | 11801602 | SL | 1450 | WBSN | 49.2642 | 71,343.10 | BOFA | (8,336.92) |
| | | | | | | | | |
| | | | | | | | | |
| **Total Equities - Long** | | | | | | | | |
| | | | | | | | | |
| **Equities - Short** | | | | | | | | |
| | | | | | | | | |
| 03/04/2005 | 11801602 | SS | 250 | AMZN | 35.8588 | 8,964.70 | STUP | - |
| 06/28/2005 | 11801602 | CS | 250 | AMZN | 33.8200 | (8,490.00) | BOFA | 474.70 |
| | | | | | | | | |
| | | | | | | | | |
| 04/20/2005 | 11801602 | SS | 1000 | ADBE | 58.3000 | 58,262.56 | BOFA | - |
| 04/21/2005 | 11801602 | SS | 2000 | ADBE | 58.7250 | 117,385.09 | BOFA | - |
| 05/24/2005 | 11801602 | DS | 1000 | ADBE | - | - | | - |
| 05/24/2005 | 11801602 | DS | 2000 | ADBE | - | - | | - |
| 06/28/2005 | 11801602 | CS | 6000 | ADBE | 28.4900 | (171,300.00) | BOFA | 4,347.65 |
| | | | | | | | | |
| | | | | | | | | |
| 04/21/2005 | 11801602 | SS | 2000 | BDK | 83.1925 | 166,318.04 | BOFA | - |
| 06/28/2005 | 11801602 | CS | 2000 | BDK | 90.2015 | (180,523.00) | BOFA | (14,204.96) |
| | | | | | | | | |
| | | | | | | | | |
| 04/19/2005 | 11801602 | SS | 3000 | CELG | 38.6875 | 115,967.64 | BOFA | - |
| 06/28/2005 | 11801602 | CS | 3000 | CELG | 40.8800 | (122,820.00) | BOFA | (6,852.36) |
| | | | | | | | | |
| | | | | | | | | |
| 03/02/2005 | 11801602 | SS | 154 | CRDN | 28.2090 | 4,344.19 | STUP | - |
| 03/04/2005 | 11801602 | SS | 200 | CRDN | 29.6340 | 5,926.80 | STUP | - |
| 06/28/2005 | 11801602 | CS | 354 | CRDN | 21.7900 | (7,748.66) | BOFA | 5,015.77 |
| | | | | | | | | |
| | | | | | | | | |
| 04/06/2005 | 11801602 | SS | 200 | DRIV | 31.7087 | 6,341.73 | STUP | - |
| 04/07/2005 | 11801602 | SS | 1000 | DRIV | 31.8587 | 31,858.66 | STUP | - |
| 06/28/2005 | 11801602 | CS | 1200 | DRIV | 31.5858 | (37,974.96) | BOFA | 225.43 |
| | | | | | | | | |
| | | | | | | | | |
| 04/06/2005 | 11801602 | SS | 427 | ELBO | 43.1582 | 18,428.54 | STUP | - |
| 06/28/2005 | 11801602 | CS | 427 | ELBO | 63.2000 | (27,021.40) | BOFA | (8,592.86) |
| | | | | | | | | |
| | | | | | | | | |
| 03/09/2005 | 11801602 | SS | 500 | ERTS | 70.6577 | 35,328.83 | STUP | - |
| 06/28/2005 | 11801602 | CS | 500 | ERTS | 57.3600 | (28,715.00) | BOFA | 6,613.83 |
| | | | | | | | | |
| | | | | | | | | |
| 03/11/2005 | 11801602 | SS | 500 | ESRX | 86.2572 | 43,128.58 | STUP | - |
| 04/06/2005 | 11801602 | SS | 3500 | ESRX | 87.8920 | 307,622.08 | STUP | - |
| 05/25/2005 | 11801602 | CS | 250 | ESRX | 94.7141 | (23,713.51) | BOFA | |
| 06/27/2005 | 11801602 | DS | 3500 | ESRX | - | - | | - |
| 06/27/2005 | 11801602 | DS | 250 | ESRX | - | - | | - |
| 06/28/2005 | 11801602 | CS | 7500 | ESRX | 50.3367 | (377,975.25) | BOFA | (50,938.10) |
| | | | | | | | | |
| | | | | | | | | |
| 03/07/2005 | 11801602 | SS | 210 | FFIV | 57.8581 | 12,150.20 | STUP | - |
| 04/19/2005 | 11801602 | SS | 1000 | FFIV | 46.3424 | 46,305.50 | BOFA | - |
| 06/28/2005 | 11801602 | CS | 1210 | FFIV | 44.0483 | (53,371.04) | BOFA | 24,972.32 |

| Trans Date | Account | Trans Code | Shares | Symbol | Price | Net Amount | Broker | Realized Gain |
|---|---|---|---|---|---|---|---|---|
| **Bank of America 118-01602-1-8** | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| 03/04/2005 | 11801602 | SS | 700 | FLEX | 13.7235 | 9,606.48 | STUP | - |
| 06/28/2005 | 11801602 | CS | 700 | FLEX | 13.1500 | (9,247.00) | BOFA | 2,561.86 |
| | | | | | | | | |
| | | | | | | | | |
| 02/10/2005 | 11801602 | SS | 10000 | GOOG | 189.7720 | 1,897,719.55 | STUP | |
| 02/10/2005 | 11801602 | SS | 11500 | GOOG | 188.8843 | 2,172,169.26 | STUP | |
| 02/11/2005 | 11801602 | SS | 2000 | GOOG | 191.8287 | 383,657.37 | STUP | |
| 02/14/2005 | 11801602 | SS | 7000 | GOOG | 191.6680 | 1,341,675.94 | STUP | |
| 02/15/2005 | 11801602 | SS | 5000 | GOOG | 197.2035 | 986,017.55 | STUP | |
| 02/16/2005 | 11801602 | SS | 5000 | GOOG | 198.4535 | 992,267.34 | STUP | |
| 02/23/2005 | 11801602 | SS | 5000 | GOOG | 191.5787 | 957,893.47 | STUP | |
| 04/06/2005 | 11801602 | SS | 4500 | GOOG | 188.9243 | 850,159.35 | STUP | |
| 04/07/2005 | 11801602 | SS | 12000 | GOOG | 191.9895 | 2,303,873.67 | STUP | |
| 04/11/2005 | 11801602 | SS | 7000 | GOOG | 194.2519 | 1,359,763.14 | STUP | |
| 04/12/2005 | 11801602 | SS | 6000 | GOOG | 193.6769 | 1,162,061.41 | STUP | |
| 4/15/2005 | 11801602 | CS | 3100 | GOOG | 185.0000 | (573,500.00) | STUP | |
| 04/19/2005 | 11801602 | SS | 12000 | GOOG | 198.2469 | 2,378,503.35 | BOFA | |
| 04/20/2005 | 11801602 | SS | 3000 | GOOG | 200.8333 | 602,384.81 | BOFA | |
| 04/21/2005 | 11801602 | SS | 14500 | GOOG | 214.5146 | 3,109,896.68 | BOFA | |
| 04/21/2005 | 11801602 | SS | 4000 | GOOG | 215.2010 | 860,804.01 | STUP | |
| 04/22/2005 | 11801602 | SS | 3000 | GOOG | 226.7000 | 679,981.57 | BOFA | |
| 04/25/2005 | 11801602 | SS | 7000 | GOOG | 223.2095 | 1,562,191.34 | BOFA | |
| 05/03/2005 | 11801602 | SS | 695 | GOOG | 227.0082 | 157,729.07 | BOFA | |
| 05/04/2005 | 11801602 | SS | 20000 | GOOG | 228.6471 | 4,572,150.01 | BOFA | |
| 05/16/2005 | 11801602 | CS | 7500 | GOOG | 230.8000 | (1,731,225.00) | BOFA | |
| 05/16/2005 | 11801602 | SS | 7500 | GOOG | 230.9750 | 1,732,015.08 | BOFA | |
| 05/17/2005 | 11801602 | SS | 16000 | GOOG | 232.8625 | 3,725,164.26 | BOFA | |
| 05/18/2005 | 11801602 | SS | 14000 | GOOG | 237.6125 | 3,326,015.94 | BOFA | |
| 05/24/2005 | 11801602 | CS | 3000 | GOOG | 255.0000 | (765,090.00) | BOFA | |
| 05/26/2005 | 11801602 | CS | 2000 | GOOG | 259.0000 | (518,060.00) | BOFA | |
| 05/26/2005 | 11801602 | CS | 3000 | GOOG | 259.5000 | (778,590.00) | BOFA | |
| 05/26/2005 | 11801602 | CS | 10000 | GOOG | 260.8333 | (2,608,633.00) | BOFA | |
| 05/26/2005 | 11801602 | CS | 15000 | GOOG | 261.1875 | (3,918,262.50) | BOFA | |
| 05/27/2005 | 11801602 | CS | 10000 | GOOG | 263.3966 | (2,634,266.00) | BOFA | |
| 05/31/2005 | 11801602 | CS | 16500 | GOOG | 274.0458 | (4,522,250.70) | BOFA | |
| 06/01/2005 | 11801602 | CS | 21000 | GOOG | 285.3796 | (5,993,601.60) | BOFA | |
| 06/03/2005 | 11801602 | CS | 15000 | GOOG | 284.0500 | (4,261,200.00) | BOFA | |
| 06/06/2005 | 11801602 | CS | 11000 | GOOG | 289.9167 | (3,189,413.33) | BOFA | |
| 06/07/2005 | 11801602 | CS | 10000 | GOOG | 292.0000 | (2,920,300.00) | BOFA | |
| 06/07/2005 | 11801602 | CS | 14000 | GOOG | 293.8625 | (4,114,495.00) | BOFA | |
| 06/07/2005 | 11801602 | CS | 10000 | GOOG | 292.7500 | (2,927,800.00) | BOFA | |
| 06/28/2005 | 11801602 | CS | 25595 | GOOG | 307.4353 | (7,870,342.20) | BOFA | |
| | | | | | | | | (12,212,935.16) |
| | | | | | | | | |
| 04/07/2005 | 11801602 | SS | 2100 | INSP | 40.5423 | 85,138.83 | STUP | - |
| 06/28/2005 | 11801602 | CS | 2100 | INSP | 33.5367 | (70,553.07) | BOFA | 14,802.68 |
| | | | | | | | | |
| | | | | | | | | |
| 04/19/2005 | 11801602 | SS | 4000 | MSTR | 54.0500 | 216,070.96 | BOFA | - |
| 04/20/2005 | 11801602 | SS | 1000 | MSTR | 57.0000 | 56,962.61 | BOFA | - |
| 06/28/2005 | 11801602 | CS | 5000 | MSTR | 53.2842 | (266,721.00) | BOFA | 6,312.57 |
| | | | | | | | | |
| | | | | | | | | |
| 03/14/2005 | 11801602 | SS | 500 | OSIP | 48.6584 | 24,329.19 | STUP | - |
| 04/06/2005 | 11801602 | SS | 1000 | OSIP | 44.5581 | 44,558.13 | STUP | - |
| 06/28/2005 | 11801602 | CS | 1500 | OSIP | 41.8813 | (62,911.95) | BOFA | 5,975.37 |

| Bank of America 118-01602-1-8 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Trans Date** | **Account** | **Trans Code** | **Shares** | **Symbol** | **Price** | **Net Amount** | **Broker** | **Realized Gain** |
| 03/04/2005 | 11801602 | SS | 750 | PLMO | 24.2392 | 18,179.40 | STUP | - |
| 06/28/2005 | 11801602 | CS | 750 | PLMO | 29.4713 | (22,148.48) | BOFA | (3,969.08) |
| | | | | | | | | |
| 04/06/2005 | 11801602 | SS | 1000 | PDLI | 15.9593 | 15,959.33 | STUP | - |
| 04/07/2005 | 11801602 | SS | 1000 | PDLI | 15.8593 | 15,859.33 | STUP | - |
| 06/28/2005 | 11801602 | CS | 2000 | PDLI | 19.8735 | (39,867.00) | BOFA | (8,048.34) |
| | | | | | | | | |
| 04/06/2005 | 11801602 | SS | 500 | RIMM | 73.7589 | 36,879.45 | STUP | - |
| 06/28/2005 | 11801602 | CS | 500 | RIMM | 77.5900 | (38,830.00) | BOFA | 4,927.59 |
| | | | | | | | | |
| 03/07/2005 | 11801602 | SS | 1560 | SNDK | 27.1604 | 42,370.23 | STUP | - |
| 06/28/2005 | 11801602 | CS | 1560 | SNDK | 24.2800 | (37,970.40) | BOFA | 4,399.83 |
| | | | | | | | | |
| 04/19/2005 | 11801602 | SS | 6738 | SHLD | 138.1010 | 930,283.24 | BOFA | - |
| 05/18/2005 | 11801602 | SS | 14000 | SHLD | 141.0125 | 1,973,672.48 | BOFA | - |
| 06/17/2005 | 11801602 | CS | 2500 | SHLD | 142.8900 | (357,275.00) | BOFA | |
| 06/28/2005 | 11801602 | CS | 18238 | SHLD | 152.3813 | (2,780,224.43) | BOFA | (233,543.71) |
| | | | | | | | | |
| 04/20/2005 | 11801602 | SS | 3500 | TEVA | 32.3660 | 113,171.26 | BOFA | - |
| 04/21/2005 | 11801602 | SS | 1000 | TEVA | 33.0000 | 32,963.62 | BOFA | - |
| 06/28/2005 | 11801602 | CS | 4500 | TEVA | 31.6596 | (142,738.20) | BOFA | 3,396.68 |
| | | | | | | | | |
| 04/20/2005 | 11801602 | SS | 4000 | VRSN | 27.2417 | 108,842.10 | BOFA | - |
| 04/21/2005 | 11801602 | SS | 2000 | VRSN | 28.6375 | 57,212.60 | BOFA | - |
| 06/28/2005 | 11801602 | CS | 6000 | VRSN | 29.9830 | (180,258.00) | BOFA | (14,203.30) |
| | | | | | | | | |
| 04/19/2005 | 11801602 | SS | 1000 | XMSR | 28.3550 | 28,318.81 | BOFA | - |
| 06/28/2005 | 11801602 | CS | 1000 | XMSR | 34.0900 | (34,150.02) | BOFA | (5,831.21) |
| | | | | | | | | |
| **Total Equities - Short** | | | | | | | | |
| | | | | | | | | |
| **Options** | | | | | | | | |
| 04/14/2005 | 11801602 | BY | 50 | QAAQGH | 2.6450 | (13,225.00) | STUP | - |
| 04/18/2005 | 11801602 | BY | 20 | QAAQGH | 1.6100 | (3,280.00) | BOFA | - |
| 06/28/2005 | 11801602 | SL | 70 | QAAQGH | 0.6500 | 4,339.81 | BOFA | (12,165.19) |
| | | | | | | | | |
| 04/20/2005 | 11801602 | BY | 10 | QBDKHQ | 3.5000 | (3,535.00) | BOFA | - |
| 06/28/2005 | 11801602 | SL | 10 | QBDKHQ | 6.7000 | 6,664.72 | BOFA | 3,129.72 |
| | | | | | | | | |
| 03/02/2005 | 11801602 | BY | 20 | QAUEFF | 2.5500 | (5,100.00) | STUP | - |
| 06/17/2005 | 11801602 | SL | 20 | QAUEFF | - | - | STUP | (5,100.00) |
| | | | | | | | | |
| 04/11/2005 | 11801602 | BY | 10 | QDQIIF | 5.3250 | (5,325.00) | STUP | - |
| 06/28/2005 | 11801602 | SL | 10 | QDQIIF | 3.5000 | 3,464.85 | BOFA | (1,860.15) |
| | | | | | | | | |
| 03/11/2005 | 11801602 | BY | 8 | QEZQFM | 6.7250 | (5,380.00) | STUP | - |

| Bank of America 118-01602-1-8 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Trans Date** | **Account** | **Trans Code** | **Shares** | **Symbol** | **Price** | **Net Amount** | **Broker** | **Realized Gain** |
| 06/17/2005 | 11801602 | SL | 8 | QEZQFM | - | - | STUP | (5,380.00) |
| | | | | | | | | |
| 03/14/2005 | 11801602 | BY | 20 | QFLKGK | 5.9750 | (11,950.00) | STUP | - |
| 03/15/2005 | 11801602 | BY | 5 | QFLKGK | 5.6250 | (2,812.50) | STUP | - |
| 06/28/2005 | 11801602 | SL | 25 | QFLKGK | 0.0600 | 114.99 | BOFA | (14,647.51) |
| | | | | | | | | |
| 03/09/2005 | 11801602 | BY | 20 | QQFLGV | 1.5000 | (3,000.00) | STUP | - |
| 06/28/2005 | 11801602 | SL | 20 | QQFLGV | 0.7000 | 1,339.94 | BOFA | (1,660.06) |
| | | | | | | | | |
| 04/06/2005 | 11801602 | BY | 30 | QIOUGH | 5.0917 | (15,275.10) | STUP | - |
| 06/28/2005 | 11801602 | SL | 20 | QIOUGH | 0.0500 | 64.99 | BOFA | |
| 06/30/2005 | 11801602 | SL | 10 | QIOUGH | 0.0500 | 49.99 | BOFA | (15,160.12) |
| | | | | | | | | |
| 03/08/2005 | 11801602 | BY | 20 | QGHUGJ | 5.2250 | (10,450.00) | STUP | - |
| 06/28/2005 | 11801602 | SL | 20 | QGHUGJ | 0.1000 | 164.99 | BOFA | (10,285.01) |
| | | | | | | | | |
| 03/03/2005 | 11801602 | BY | 10 | QUPYHX | 5.2250 | (5,225.00) | STUP | - |
| 06/28/2005 | 11801602 | SL | 10 | QUPYHX | 7.3000 | 7,264.69 | BOFA | 2,039.69 |
| | | | | | | | | |
| 03/04/2005 | 11801602 | BY | 10 | QSWQGE | 3.7250 | (3,725.00) | STUP | - |
| 04/22/2005 | 11801602 | BY | 10 | QSWQGE | 2.3500 | (2,350.00) | STUP | - |
| 06/28/2005 | 11801602 | SL | 20 | QSWQGE | 0.4000 | 739.96 | BOFA | (5,335.04) |
| | | | | | | | | |
| 04/06/2005 | 11801602 | BY | 50 | QRUPFO | 5.3250 | (26,625.00) | STUP | - |
| 06/17/2005 | 11801602 | SL | 50 | QRUPFO | - | - | STUP | (26,625.00) |
| | | | | | | | | |
| 04/22/2005 | 11801602 | BY | 25 | QKTQFX | 7.8600 | (19,725.00) | BOFA | - |
| 06/17/2005 | 11801602 | SL | 25 | QKTQFX | 7.8900 | 19,725.00 | BOFA | - |
| | | | | | | | | |
| 04/20/2005 | 11801602 | BY | 10 | QQSYGY | 2.0500 | (2,085.00) | BOFA | - |
| 06/28/2005 | 11801602 | SL | 10 | QQSYGY | 6.4000 | 6,364.73 | BOFA | 4,279.73 |
| | | | | | | | | |
| 04/07/2005 | 11801602 | BY | 10 | QXTQEQ | 5.4250 | (5,425.00) | STUP | - |
| 05/16/2005 | 11801602 | SL | 10 | QXTQEQ | 8.4000 | 8,364.64 | BOFA | 2,939.64 |
| | | | | | | | | |
| **Total Options** | | | | | | | | |
| | | | | | | | | |
| **Options Short** | | | | | | | | |
| | | | | | | | | |
| 05/24/2005 | 11801602 | SS | 10 | QLQHRF | 0.2750 | 239.98 | BOFA | - |
| 06/17/2005 | 11801602 | CS | 10 | QLQHRF | - | - | STUP | 239.98 |
| | | | | | | | | |
| 05/25/2005 | 11801602 | SS | 5 | QDQIRX | 0.5000 | 214.99 | BOFA | - |
| 06/17/2005 | 11801602 | CS | 5 | QDQIRX | - | - | STUP | 214.99 |
| | | | | | | | | |
| 05/25/2005 | 11801602 | SS | 13 | QGHURG | 0.3000 | 350.98 | BOFA | - |

| Bank of America 118-01602-1-8 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Trans Date** | **Account** | **Trans Code** | **Shares** | **Symbol** | **Price** | **Net Amount** | **Broker** | **Realized Gain** |
| 06/17/2005 | 11801602 | CS | 13 | QGHURG | - | - | STUP | 350.98 |
| 05/25/2005 | 11801602 | SS | 25 | QKTQRY | 1.3333 | 3,258.18 | BOFA | - |
| 06/17/2005 | 11801602 | CS | 25 | QKTQRY | - | - | STUP | 3,258.18 |
| 05/10/2005 | 11801602 | SS | 25 | QAEQQK | 0.4500 | 1,049.95 | BOFA | - |
| 05/20/2005 | 11801602 | CS | 25 | QAEQQK | - | - | STUP | 1,049.95 |
| 05/10/2005 | 11801602 | SS | 5 | QBDKQO | 0.1000 | 14.99 | BOFA | - |
| 05/20/2005 | 11801602 | CS | 5 | QBDKQO | - | - | STUP | 14.99 |
| 06/03/2005 | 11801602 | SS | 25 | QEOURJ | 0.5500 | 1,299.94 | BOFA | - |
| 06/17/2005 | 11801602 | CS | 25 | QEOURJ | - | - | STUP | 1,299.94 |
| 04/20/2005 | 11801602 | SS | 25 | QEZQQI | 0.4750 | 1,112.45 | BOFA | - |
| 05/20/2005 | 11801602 | CS | 25 | QEZQQI | - | - | STUP | 1,112.45 |
| 06/03/2005 | 11801602 | SS | 7 | QEZQRJ | 0.3000 | 174.99 | BOFA | - |
| 06/17/2005 | 11801602 | CS | 7 | QEZQRJ | - | - | STUP | 174.99 |
| 04/21/2005 | 11801602 | SS | 10 | QFLKQH | 1.2250 | 1,189.94 | BOFA | - |
| 05/20/2005 | 11801602 | CS | 10 | QFLKQH | - | - | STUP | 1,189.94 |
| 06/03/2005 | 11801602 | SS | 3 | QFUHRI | 0.1500 | 9.99 | BOFA | - |
| 06/17/2005 | 11801602 | CS | 3 | QFUHRI | - | - | STUP | 9.99 |
| 05/09/2005 | 11801602 | SS | 1 | QGZQQK | 0.1000 | 6.99 | BOFA | - |
| 05/20/2005 | 11801602 | CS | 1 | QGZQQK | - | - | STUP | 6.99 |
| 06/03/2005 | 11801602 | SS | 7 | QIDKRG | 0.3000 | 174.99 | BOFA | - |
| 06/17/2005 | 11801602 | CS | 7 | QIDKRG | - | - | STUP | 174.99 |
| 05/02/2005 | 11801602 | SS | 10 | QIOUQF | 1.1250 | 1,089.95 | BOFA | - |
| 05/05/2005 | 11801602 | SS | 5 | QIOUQF | 0.8000 | 364.98 | BOFA | - |
| 05/20/2005 | 11801602 | CS | 15 | QIOUQF | - | - | STUP | 1,454.93 |
| 05/02/2005 | 11801602 | SS | 5 | QKTQQC | 0.6000 | 264.98 | BOFA | - |
| 05/20/2005 | 11801602 | CS | 5 | QKTQQC | - | - | STUP | 264.98 |
| 05/11/2005 | 11801602 | SS | 10 | QKTQQE | 0.4500 | 414.98 | BOFA | - |
| 05/13/2005 | 11801602 | SS | 10 | QKTQQE | 0.5750 | 539.97 | BOFA | - |
| 05/20/2005 | 11801602 | CS | 20 | QKTQQE | - | - | STUP | 954.95 |
| 05/12/2005 | 11801602 | SS | 10 | QKTQQY | 1.0500 | 1,014.95 | BOFA | - |
| 05/20/2005 | 11801602 | CS | 10 | QKTQQY | - | - | STUP | 1,014.95 |

Exhibit 6d

| Bank of America 118-01602-1-8 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Trans Date** | **Account** | **Trans Code** | **Shares** | **Symbol** | **Price** | **Net Amount** | **Broker** | **Realized Gain** |
| | | | | | | | | |
| | | | | | | | | |
| 05/10/2005 | 11801602 | SS | 10 | QLQHQF | 0.3000 | 264.98 | BOFA | - |
| 05/11/2005 | 11801602 | SS | 10 | QLQHQF | 0.4250 | 389.98 | BOFA | - |
| 05/13/2005 | 11801602 | SS | 5 | QLQHQF | 0.3500 | 139.99 | BOFA | - |
| 05/20/2005 | 11801602 | CS | 25 | QLQHQF | - | - | STUP | 794.95 |
| | | | | | | | | |
| 06/03/2005 | 11801602 | SS | 7 | QRQBRH | 0.3000 | 174.99 | BOFA | - |
| 06/17/2005 | 11801602 | CS | 7 | QRQBRH | - | - | STUP | 174.99 |
| | | | | | | | | |
| 04/20/2005 | 11801602 | SS | 5 | QRUPQK | 0.3500 | 139.99 | BOFA | - |
| 05/20/2005 | 11801602 | CS | 5 | QRUPQK | - | - | STUP | 139.99 |
| | | | | | | | | |
| 05/13/2005 | 11801602 | SS | 5 | QUPYQX | 0.1000 | 14.99 | BOFA | - |
| 05/20/2005 | 11801602 | CS | 5 | QUPYQX | - | - | STUP | 14.99 |
| | | | | | | | | |
| **Total Options - Short** | | | | | | | | |
| **Cash & Cash Equivalents** | | | | | | | | |
| **TOTAL PORTFOLIO** | | | | | | | | (12,555,345.93) |

# Exhibit 7

Exhibit 7

**Brune Re: Tenet Capital Partners Convertible Opportunity Fund**
**Analysis of Google Trading Activity**

| Purchase | Sale | Security | Units Purchased | Sold | Cost | Proceeds | Gain/Loss |
|---|---|---|---|---|---|---|---|
| **Bear Stearns** | | | | | | | |
| 11/12/04 | 09/16/04 | GOOGLE INC | 6,050 | (6,050) | 1,097,174.33 | 692,540.01 | (404,634.32) |
| 11/12/04 | 09/17/04 | GOOGLE INC | 950 | (950) | 172,283.57 | 104,492.80 | (67,790.77) |
| 11/15/04 | 09/17/04 | GOOGLE INC | 50 | (50) | 9,254.73 | 5,499.62 | (3,755.10) |
| 11/15/04 | 09/28/04 | GOOGLE INC | 2,150 | (2,150) | 397,953.18 | 264,030.38 | (133,922.80) |
| 11/15/04 | 09/29/04 | GOOGLE INC | 2,000 | (2,000) | 370,189.00 | 254,679.23 | (115,509.77) |
| 11/15/04 | 10/04/04 | GOOGLE INC | 1,100 | (1,100) | 203,603.95 | 148,743.54 | (54,860.41) |
| 11/15/04 | 10/14/04 | GOOGLE INC | 3,200 | (3,200) | 592,302.40 | 450,155.42 | (142,146.98) |
| 11/15/04 | 10/15/04 | GOOGLE INC | 170 | (170) | 31,466.07 | 24,614.92 | (6,851.15) |
| 11/15/04 | 10/22/04 | GOOGLE INC | 5,770 | (5,770) | 1,067,995.27 | 1,021,695.25 | (46,300.02) |
| 11/15/04 | 10/26/04 | GOOGLE INC | 3,870 | (3,870) | 716,315.72 | 725,260.98 | 8,945.26 |
| 11/15/04 | 10/27/04 | GOOGLE INC | 4,840 | (4,840) | 895,857.38 | 899,421.21 | 3,563.83 |
| 11/15/04 | 10/28/04 | GOOGLE INC | 2,550 | (2,550) | 471,990.98 | 491,958.51 | 19,967.54 |
| 11/15/04 | 11/08/04 | GOOGLE INC | 4,300 | (4,300) | 795,906.35 | 740,909.31 | (54,997.04) |
| 01/19/05 | 11/08/04 | GOOGLE INC | 3,700 | (3,700) | 712,148.21 | 637,526.62 | (74,621.59) |
| 01/19/05 | 11/10/04 | GOOGLE INC | 4,035 | (4,035) | 776,626.50 | 690,791.79 | (85,834.71) |
| 01/19/05 | 11/11/04 | GOOGLE INC | 7,115 | (7,115) | 1,369,441.76 | 1,212,518.29 | (156,923.47) |
| 01/19/05 | 11/15/04 | GOOGLE INC | 10,810 | (10,810) | 2,080,627.61 | 1,998,690.02 | (81,937.59) |
| 01/19/05 | 11/23/04 | GOOGLE INC | 2,430 | (2,430) | 467,708.15 | 415,765.61 | (51,942.54) |
| 01/19/05 | 11/24/04 | GOOGLE INC | 5 | (5) | 962.36 | 823.12 | (139.24) |
| 01/19/05 | 11/30/04 | GOOGLE INC | 3,000 | (3,000) | 577,417.47 | 547,572.08 | (29,845.39) |
| 01/19/05 | 12/17/04 | GOOGLE INC | 1,300 | (1,300) | 250,214.24 | 227,488.17 | (22,726.07) |
| 01/19/05 | 12/20/04 | GOOGLE INC | 1,105 | (1,105) | 212,682.10 | 203,850.23 | (8,831.87) |
| 01/21/05 | 12/20/04 | GOOGLE INC | 4,555 | (4,555) | 863,678.25 | 840,305.72 | (23,372.53) |
| 01/24/05 | 01/21/05 | GOOGLE INC | 1,090 | (1,090) | 206,676.02 | 199,149.11 | (7,526.92) |
| 01/24/05 | 01/21/05 | GOOGLE INC | 4,555 | (4,555) | 867,930.92 | 832,224.01 | (35,706.91) |
| 01/24/05 | 01/24/05 | GOOGLE INC | 4,855 | (4,855) | 885,768.37 | 887,035.69 | 1,267.32 |
| 01/25/05 | 01/24/05 | GOOGLE INC | 13,145 | (13,145) | 2,398,233.83 | 2,369,598.39 | (28,635.44) |
| 01/31/05 | 01/26/05 | GOOGLE INC | 5,000 | (5,000) | 974,003.00 | 918,886.76 | (55,116.24) |
| 02/01/05 | 01/26/05 | GOOGLE INC | 10,000 | (10,000) | 1,937,903.00 | 1,837,773.51 | (100,129.49) |
| | **Total Bear Stearns** | | 113,700 | (113,700) | $21,404,314.69 | $19,644,000.30 | ($1,760,314.39) |
| | | | | | | | |
| **Lehman Brothers** | | | | | | | |
| 2/2/2005 | 2/3/2005 | GOOGLE INC | 3,000 | (3,000) | 612,620.10 | 628,459.21 | 15,839.11 |
| 2/2/2005 | 2/2/2005 | GOOGLE INC | 1,000 | (1,000) | 209,636.00 | 209,953.09 | 317.09 |
| 2/4/2005 | 2/8/2005 | GOOGLE INC | 15,000 | (15,000) | 3,061,900.50 | 2,934,677.12 | (127,223.38) |
| 2/7/2005 | 2/8/2005 | GOOGLE INC | 22,000 | (22,000) | 4,369,789.60 | 4,351,569.00 | (18,220.60) |
| 2/8/2005 | Var 2/05 | GOOGLE INC | 28,280 | (28,280) | 5,600,808.75 | 5,520,659.52 | (80,149.23) |
| 2/10/2005 | 2/8/2005 | GOOGLE INC | 15,000 | (15,000) | 2,823,237.00 | 2,966,978.86 | 143,741.86 |
| 2/15/2005 | 2/8/2005 | GOOGLE INC | 1,000 | (1,000) | 195,040.00 | 201,103.38 | 6,063.38 |
| 2/22/2005 | 2/8/2005 | GOOGLE INC | 7,000 | (7,000) | 1,345,780.10 | 1,384,590.14 | 38,810.04 |
| 2/23/2005 | 2/8/2005 | GOOGLE INC | 5,000 | (5,000) | 961,200.00 | 988,992.95 | 27,792.95 |
| 2/24/2005 | Var 2/05 | GOOGLE INC | 22,000 | (22,000) | 4,068,919.80 | 4,271,340.24 | 202,420.44 |
| 5/4/2005 | 2/10/2005 | GOOGLE INC | 1,000 | (1,000) | 228,540.00 | 189,771.95 | (38,768.05) |
| | **Total Lehman Brothers** | | 120,280 | (120,280) | $23,477,471.85 | $23,648,095.46 | $170,623.61 |
| | | | | | | | |
| **Bank of America** | | | | | | | |
| 4/15/2005 | 02/10/2005 | GOOGLE INC | 3,100 | (3,100) | 573,500.00 | 588,293.06 | 14,793.06 |
| 05/16/2005 | 02/10/2005 | GOOGLE INC | 6,900 | (6,900) | 1,592,727.00 | 1,309,426.49 | (283,300.51) |
| 05/16/2005 | 02/10/2005 | GOOGLE INC | 600 | (600) | 138,498.00 | 113,330.57 | (25,167.43) |
| 05/24/2005 | 02/10/2005 | GOOGLE INC | 3,000 | (3,000) | 765,090.00 | 566,652.85 | (198,437.15) |
| 05/26/2005 | 02/10/2005 | GOOGLE INC | 3,000 | (3,000) | 778,590.00 | 566,652.85 | (211,937.15) |
| 05/26/2005 | 02/10/2005 | GOOGLE INC | 4,900 | (4,900) | 1,279,965.75 | 925,532.99 | (354,432.76) |
| 05/26/2005 | 02/11/2005 | GOOGLE INC | 2,000 | (2,000) | 518,060.00 | 383,657.37 | (134,402.63) |

1 of 2

Exhibit 7

**Brune Re: Tenet Capital Partners Convertible Opportunity Fund**
**Analysis of Google Trading Activity**

| Date | | Security | Units | | Cost | Proceeds | Gain/Loss |
|---|---|---|---|---|---|---|---|
| Purchase | Sale | | Purchased | Sold | | | |
| 05/26/2005 | 02/14/2005 | GOOGLE INC | 7,000 | (7,000) | 1,828,522.50 | 1,341,675.94 | (486,846.56) |
| 05/26/2005 | 02/15/2005 | GOOGLE INC | 5,000 | (5,000) | 1,304,316.50 | 986,017.55 | (318,298.95) |
| 05/26/2005 | 02/16/2005 | GOOGLE INC | 5,000 | (5,000) | 1,304,316.50 | 992,267.34 | (312,049.16) |
| 05/26/2005 | 02/23/2005 | GOOGLE INC | 3,100 | (3,100) | 809,774.25 | 593,893.95 | (215,880.30) |
| 05/27/2005 | 02/23/2005 | GOOGLE INC | 1,900 | (1,900) | 500,510.54 | 363,999.52 | (136,511.02) |
| 05/27/2005 | 04/06/2005 | GOOGLE INC | 4,500 | (4,500) | 1,185,419.70 | 850,159.35 | (335,260.35) |
| 05/27/2005 | 04/07/2005 | GOOGLE INC | 3,600 | (3,600) | 948,335.76 | 691,162.10 | (257,173.66) |
| 05/31/2005 | 04/07/2005 | GOOGLE INC | 8,400 | (8,400) | 2,302,236.72 | 1,612,711.57 | (689,525.15) |
| 05/31/2005 | 04/11/2005 | GOOGLE INC | 7,000 | (7,000) | 1,918,530.60 | 1,359,763.14 | (558,767.46) |
| 05/31/2005 | 04/12/2005 | GOOGLE INC | 1,100 | (1,100) | 301,483.38 | 213,044.59 | (88,438.79) |
| 06/01/2005 | 04/12/2005 | GOOGLE INC | 4,900 | (4,900) | 1,398,507.04 | 949,016.82 | (449,490.22) |
| 06/01/2005 | 04/19/2005 | GOOGLE INC | 12,000 | (12,000) | 3,424,915.20 | 2,378,503.35 | (1,046,411.85) |
| 06/01/2005 | 04/20/2005 | GOOGLE INC | 3,000 | (3,000) | 856,228.80 | 602,384.81 | (253,843.99) |
| 06/01/2005 | 04/21/2005 | GOOGLE INC | 1,100 | (1,100) | 313,950.56 | 235,923.20 | (78,027.36) |
| 06/03/2005 | 04/21/2005 | GOOGLE INC | 13,400 | (13,400) | 3,806,672.00 | 2,873,973.48 | (932,698.52) |
| 06/03/2005 | 04/21/2005 | GOOGLE INC | 1,600 | (1,600) | 454,528.00 | 344,321.60 | (110,206.40) |
| 06/06/2005 | 04/21/2005 | GOOGLE INC | 2,400 | (2,400) | 695,872.00 | 516,482.41 | (179,389.59) |
| 06/06/2005 | 04/22/2005 | GOOGLE INC | 3,000 | (3,000) | 869,840.00 | 679,981.57 | (189,858.43) |
| 06/06/2005 | 04/25/2005 | GOOGLE INC | 5,600 | (5,600) | 1,623,701.33 | 1,249,753.07 | (373,948.26) |
| 06/07/2005 | 04/25/2005 | GOOGLE INC | 1,400 | (1,400) | 408,842.00 | 312,438.27 | (96,403.73) |
| 06/07/2005 | 05/03/2005 | GOOGLE INC | 695 | (695) | 202,960.85 | 157,729.07 | (45,231.78) |
| 06/07/2005 | 05/04/2005 | GOOGLE INC | 7,905 | (7,905) | 2,308,497.15 | 1,807,142.29 | (501,354.86) |
| 06/07/2005 | 05/04/2005 | GOOGLE INC | 12,095 | (12,095) | 3,554,629.79 | 2,765,007.72 | (789,622.07) |
| 06/07/2005 | 05/16/2005 | GOOGLE INC | 1,905 | (1,905) | 559,865.21 | 439,931.83 | (119,933.38) |
| 06/07/2005 | 05/16/2005 | GOOGLE INC | 5,595 | (5,595) | 1,638,104.10 | 1,292,083.25 | (346,020.85) |
| 06/07/2005 | 05/17/2005 | GOOGLE INC | 4,405 | (4,405) | 1,289,695.90 | 1,025,584.29 | (264,111.61) |
| 06/28/2005 | 05/17/2005 | GOOGLE INC | 11,595 | (11,595) | 3,565,408.00 | 2,699,579.97 | (865,828.03) |
| 06/28/2005 | 05/18/2005 | GOOGLE INC | 14,000 | (14,000) | 4,304,934.20 | 3,326,015.94 | (978,918.26) |
| **Total Bank of America** | | | **176,695** | **(176,695)** | **$49,327,029.33** | **$37,114,094.17** | **($12,212,935.16)** |
| | | | | | | | |
| **Total Google (Long/Short)** | | | **410,675** | **(410,675)** | **$94,208,815.87** | **$80,406,189.93** | **($13,802,625.94)** |
| **Other Google Trading (Options)** | | | | | | | **$15,825.11** |
| **Total Google Per Exhibit 3** | | | | | | | **($13,786,800.83)** |

Exhibit 7

**Brune Re: Tenet Capital Partners Convertible Opportunity Fund**
**Analysis of Google Trading Activity**

| Date | Purchase /(Sale) | Security | Units Purchased | Units Sold | Cummulative Units | Price | Cost | Proceeds |
|------|------|------|------|------|------|------|------|------|
| 09/16/04 | SOLD | GOOGLE INC | | (6,050) | (6,050) | 114.5226 | (0.00) | 692,540.01 |
| 09/17/04 | SOLD | GOOGLE INC | | (1,000) | (7,050) | 110.0000 | (0.00) | 109,992.42 |
| 09/28/04 | SOLD | GOOGLE INC | | (2,150) | (9,200) | 122.8591 | (0.00) | 264,030.38 |
| 09/29/04 | SOLD | GOOGLE INC | | (2,000) | (11,200) | 127.3941 | (0.00) | 254,679.23 |
| 10/04/04 | SOLD | GOOGLE INC | | (1,100) | (12,300) | 135.2773 | (0.00) | 148,743.54 |
| 10/14/04 | SOLD | GOOGLE INC | | (3,200) | (15,500) | 140.7278 | (0.00) | 450,155.42 |
| 10/15/04 | SOLD | GOOGLE INC | | (170) | (15,670) | 145.1088 | (0.00) | 24,614.92 |
| 10/22/04 | SOLD | GOOGLE INC | | (5,770) | (21,440) | 177.1249 | (0.00) | 1,021,695.25 |
| 10/26/04 | SOLD | GOOGLE INC | | (3,870) | (25,310) | 187.4611 | (0.00) | 725,260.98 |
| 10/27/04 | SOLD | GOOGLE INC | | (4,840) | (30,150) | 185.8858 | 0.00 | 899,421.21 |
| 10/28/04 | SOLD | GOOGLE INC | | (2,550) | (32,700) | 192.9806 | (0.00) | 491,958.51 |
| 11/08/04 | SOLD | GOOGLE INC | | (8,000) | (40,700) | 172.3589 | (0.00) | 1,378,435.93 |
| 11/10/04 | SOLD | GOOGLE INC | | (4,035) | (44,735) | 171.2547 | (0.00) | 690,791.79 |
| 11/11/04 | SOLD | GOOGLE INC | | (7,115) | (51,850) | 170.4716 | (0.00) | 1,212,518.29 |
| 11/12/04 | BOUGHT | GOOGLE INC | 7,000 | | (44,850) | 181.3007 | 1,269,457.90 | (0.00) |
| 11/15/04 | BOUGHT | GOOGLE INC | 30,000 | | (14,850) | 185.0445 | 5,552,835.00 | (0.00) |
| 11/15/04 | SOLD | GOOGLE INC | | (10,810) | (25,660) | 184.9473 | (0.00) | 1,998,690.02 |
| 11/23/04 | SOLD | GOOGLE INC | | (2,430) | (28,090) | 171.1522 | (0.00) | 415,765.61 |
| 11/24/04 | SOLD | GOOGLE INC | | (5) | (28,095) | 175.2300 | (0.00) | 823.12 |
| 11/30/04 | SOLD | GOOGLE INC | | (3,000) | (31,095) | 182.5833 | (0.00) | 547,572.08 |
| 12/17/04 | SOLD | GOOGLE INC | | (1,300) | (32,395) | 175.0000 | (0.00) | 227,488.17 |
| 12/20/04 | SOLD | GOOGLE INC | | (5,660) | (38,055) | 184.5347 | (0.00) | 1,044,155.95 |
| 01/19/05 | BOUGHT | GOOGLE INC | 33,500 | | (4,555) | 192.4224 | 6,447,828.40 | |
| 01/21/05 | BOUGHT | GOOGLE INC | 5,645 | | 1,090 | 189.5605 | 1,070,354.27 | |
| 01/21/05 | BOUGHT | GOOGLE INC | 4,555 | | 5,645 | 190.4940 | 867,930.92 | |
| 01/24/05 | BOUGHT | GOOGLE INC | 18,000 | | 23,645 | 182.3944 | 3,284,002.20 | |
| 01/24/05 | SOLD | GOOGLE INC | | (10,500) | 13,145 | 182.7619 | | 1,918,408.81 |
| 01/25/05 | SOLD | GOOGLE INC | | (13,145) | 0 | 180.3223 | | 2,369,598.39 |
| 01/26/05 | SOLD | GOOGLE INC | | (15,000) | (15,000) | 183.8334 | | 2,756,660.27 |
| 01/31/05 | BOUGHT | GOOGLE INC | 5,000 | | (10,000) | 194.7500 | 974,003.00 | |
| 02/01/05 | BOUGHT | GOOGLE INC | 10,000 | | 0 | 193.7400 | 1,937,903.00 | |
| 02/02/05 | BOUGHT | GOOGLE INC | 3,000 | | 3,000 | 204.1660 | 612,620.10 | |
| 02/02/05 | BOUGHT | GOOGLE INC | 1,000 | | 4,000 | 209.5960 | 209,636.00 | |
| 02/02/05 | SOLD | GOOGLE INC | | (1,000) | 3,000 | 210.0000 | | 209,953.09 |
| 02/03/05 | SOLD | GOOGLE INC | | (3,000) | 0 | 209.5330 | | 628,459.21 |
| 02/04/05 | BOUGHT | GOOGLE INC | 15,000 | | 15,000 | 204.0860 | 3,061,900.50 | |
| 02/04/05 | SOLD | GOOGLE INC | | (280) | 14,720 | 206.0100 | | 57,669.70 |
| 02/07/05 | BOUGHT | GOOGLE INC | 22,000 | | 36,720 | 198.5860 | 4,369,789.60 | |
| 02/08/05 | SOLD | GOOGLE INC | | (36,720) | 0 | 195.1530 | | 7,164,320.93 |
| 02/08/05 | BOUGHT | GOOGLE INC | 28,280 | | 28,280 | 198.0080 | 5,600,808.75 | |
| 02/08/05 | SOLD | GOOGLE INC | | (3,280) | 25,000 | 195.1530 | | 639,950.24 |
| 02/08/05 | SOLD | GOOGLE INC | | (65,000) | (40,000) | 197.8450 | | 12,856,908.40 |
| 02/09/05 | SOLD | GOOGLE INC | | (1,000) | (41,000) | 201.1500 | | 201,103.38 |
| 02/10/05 | BOUGHT | GOOGLE INC | 15,000 | | (26,000) | 188.1750 | 2,823,237.00 | |
| 02/10/05 | SOLD | GOOGLE INC | | (11,000) | (37,000) | 189.8180 | | 2,087,491.50 |
| 02/10/05 | SOLD | GOOGLE INC | | (20,500) | (57,500) | 188.9300 | | 3,872,127.82 |
| 02/11/05 | SOLD | GOOGLE INC | | (2,000) | (59,500) | 191.8750 | | 383,657.37 |
| 02/14/05 | SOLD | GOOGLE INC | | (7,000) | (66,500) | 191.7140 | | 1,341,675.94 |
| 02/15/05 | BOUGHT | GOOGLE INC | 1,000 | | (65,500) | 195.0000 | 195,040.00 | |
| 02/15/05 | SOLD | GOOGLE INC | | (5,000) | (70,500) | 197.2500 | | 986,017.55 |
| 02/16/05 | SOLD | GOOGLE INC | | (5,000) | (75,500) | 198.5000 | | 992,267.34 |
| 02/22/05 | BOUGHT | GOOGLE INC | 7,000 | | (68,500) | 192.2140 | 1,345,780.10 | |

1 of 2

Exhibit 7

**Brune Re: Tenet Capital Partners Convertible Opportunity Fund**
**Analysis of Google Trading Activity**

| Date | Purchase /(Sale) | Security | Units Purchased | Units Sold | Cummulative Units | Price | Cost | Proceeds |
|---|---|---|---|---|---|---|---|---|
| 02/23/05 | BOUGHT | GOOGLE INC | 5,000 | | (63,500) | 192.2000 | 961,200.00 | |
| 02/23/05 | SOLD | GOOGLE INC | | (5,000) | (68,500) | 191.6250 | | 957,893.47 |
| 02/24/05 | BOUGHT | GOOGLE INC | 22,000 | | (46,500) | 184.9100 | 4,068,919.80 | |
| 04/06/05 | SOLD | GOOGLE INC | | (4,500) | (51,000) | 188.9720 | | 850,159.35 |
| 04/07/05 | SOLD | GOOGLE INC | | (12,000) | (63,000) | 192.0370 | | 2,303,873.67 |
| 04/11/05 | SOLD | GOOGLE INC | | (7,000) | (70,000) | 194.3000 | | 1,359,763.14 |
| 04/12/05 | SOLD | GOOGLE INC | | (6,000) | (76,000) | 193.7250 | | 1,162,061.41 |
| 04/15/05 | BOUGHT | GOOGLE INC | 3,100 | | (72,900) | 185.0000 | 573,500.00 | |
| 04/19/05 | SOLD | GOOGLE INC | | (12,000) | (84,900) | 198.2469 | | 2,378,503.35 |
| 04/20/2005 | SOLD | GOOGLE INC | | (3,000) | (87,900) | 200.8333 | | 602,384.81 |
| 04/21/05 | SOLD | GOOGLE INC | | (4,000) | (91,900) | 215.2500 | | 860,804.01 |
| 04/21/2005 | SOLD | GOOGLE INC | | (14,500) | (106,400) | 214.5146 | | 3,109,896.68 |
| 04/22/2005 | SOLD | GOOGLE INC | | (3,000) | (109,400) | 226.7000 | | 679,981.57 |
| 04/25/2005 | SOLD | GOOGLE INC | | (7,000) | (116,400) | 223.2095 | | 1,562,191.34 |
| 05/03/2005 | SOLD | GOOGLE INC | | (695) | (117,095) | 227.0082 | | 157,729.07 |
| 05/04/05 | BOUGHT | GOOGLE INC | 1,000 | | (116,095) | 228.5000 | 228,540.00 | |
| 05/04/2005 | SOLD | GOOGLE INC | | (20,000) | (136,095) | 228.6471 | | 4,572,150.01 |
| 05/16/2005 | BOUGHT | GOOGLE INC | 7,500 | | (128,595) | 230.8000 | 1,731,225.00 | - |
| 05/16/2005 | SOLD | GOOGLE INC | | (7,500) | (136,095) | 230.9750 | | 1,732,015.08 |
| 05/17/2005 | SOLD | GOOGLE INC | | (16,000) | (152,095) | 232.8625 | | 3,725,164.26 |
| 05/18/2005 | SOLD | GOOGLE INC | | (14,000) | (166,095) | 237.6125 | | 3,326,015.94 |
| 05/24/2005 | BOUGHT | GOOGLE INC | 3,000 | | (163,095) | 255.0000 | 765,090.00 | - |
| 05/26/2005 | BOUGHT | GOOGLE INC | 2,000 | | (161,095) | 259.0000 | 518,060.00 | - |
| 05/26/2005 | BOUGHT | GOOGLE INC | 3,000 | | (158,095) | 259.5000 | 778,590.00 | - |
| 05/26/2005 | BOUGHT | GOOGLE INC | 10,000 | | (148,095) | 260.8333 | 2,608,633.00 | - |
| 05/26/2005 | BOUGHT | GOOGLE INC | 15,000 | | (133,095) | 261.1875 | 3,918,262.50 | - |
| 05/27/2005 | BOUGHT | GOOGLE INC | 10,000 | | (123,095) | 263.3966 | 2,634,266.00 | - |
| 05/31/2005 | BOUGHT | GOOGLE INC | 16,500 | | (106,595) | 274.0458 | 4,522,250.70 | - |
| 06/01/2005 | BOUGHT | GOOGLE INC | 21,000 | | (85,595) | 285.3796 | 5,993,601.60 | - |
| 06/03/2005 | BOUGHT | GOOGLE INC | 15,000 | | (70,595) | 284.0500 | 4,261,200.00 | - |
| 06/06/2005 | BOUGHT | GOOGLE INC | 11,000 | | (59,595) | 289.9167 | 3,189,413.33 | - |
| 06/07/2005 | BOUGHT | GOOGLE INC | 10,000 | | (49,595) | 292.0000 | 2,920,300.00 | - |
| 06/07/2005 | BOUGHT | GOOGLE INC | 14,000 | | (35,595) | 293.8625 | 4,114,495.00 | - |
| 06/07/2005 | BOUGHT | GOOGLE INC | 10,000 | | (25,595) | 292.7500 | 2,927,800.00 | - |
| 06/28/2005 | BOUGHT | GOOGLE INC | 25,595 | | 0 | 307.4353 | 7,870,342.20 | - |
| | | | 410,675 | (410,675) | | | 94,208,815.87 | 80,406,189.93 |

| | |
|---|---|
| **Net Gain (Loss) from Long/Short Positions** | **(13,802,625.94)** |
| Other Google Activity (Options) | 15,825.11 |
| **Net Google Activity** | **(13,786,800.83)** |

# Exhibit 11

|  |  |
| --- | --- |
| **Tenet Asset Management, LLC** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**Memorandum of Points and Authorities** in Support of Lobdell Capital Management LLC's Claim that it is Entitled to Receive a Distribution of Lobdell Partners' Capital Account as of May 31, 2005, and That It Has the Status of and is Entitled to All of the Remedies of a Creditor of Tenet Capital Partners Convertible Opportunities Fund, LP With Respect to the Foregoing Distribution

Issue #1:    Does the Delaware Revised Uniform Limited Partnership Act, as amended (the "Act") permit the general partner of a Delaware limited partnership to enter into a side agreement with one or more, but not all, of its limited partners?

Answer #1:    Yes. The Act permits the general partner of a Delaware limited partnership to enter into side agreements with one or more, but not all, of its limited partners.

The Delaware Revised Uniform Limited Partnership Act, as amended (the "Act") is different than similar statutes of other states and the Revised Uniform Limited Partnership Act of 1976, as amended, on which the Act is based. Two of its most widely recognized differences, both of which are relevant to this discussion, are (1) the contractual flexibility permitted by the Act, and (2) the ability of the general partner to expand, restrict or eliminate its fiduciary duties by provisions in the partnership agreement.

The express policy of the Act, set forth in Sec. 17-1101(c) thereof, is to give maximum effect to the principle of freedom of contract and the enforceability of partnership agreements. See, *generally*, Lubaroff & Altman on Delaware Limited Partnerships. Thus, the policy of the Act, and the consistent position of the Delaware courts, is to enforce partnership agreements in accordance with their terms. Katell v. Morgan Stanley Group, Inc., C.A. No. 12343 (Del. Ch. June 8, 1993) (the policy of the Act is to enforce the specific terms of a partnership agreement). This is the policy even if the partnership agreement was drafted by the general partner without meaningful limited partner participation. SI Management L.P. v. Winninger, 707 A.2d 37 (del. 1998).

Under the Act, if a partnership agreement authorizes the general partner to enter into a side agreement for the partnership's benefit, such agreements constitute valid, binding obligations of the general partner and the partnership and they are enforceable according to their terms.

Issue # 2.    Was Tenet Asset Management, LLC authorized to enter into a side agreement with Lobdell Partners?

Answer #2.    Yes. The partnership agreement explicitly authorizes the general partner to enter into agreements such as the side agreement with Lobdell Partners.

The Amended and Restated Limited Partnership Agreement of Tenet Capital Partners Convertible Opportunities Fund, LP, a Delaware limited partnership, (the "Fund"), dated February 1, 2005 ("Partnership Agreement"), grants extensive powers to Tenet Asset

Management, LLC ("Tenet"), in its capacity as the Fund's general partner. Section 3.01(a) thereof states, in relevant part, that the "business and affairs of the [Fund] shall be managed exclusively by the General Partner." In furtherance of the general partner's managerial powers, Section 3.02(v) thereof authorizes the general partner to "execute any agreement of any nature, necessary or incidental to the purposes of the [Fund] in accordance with the provisions of this [Partnership Agreement], the Memorandum and all applicable . . . laws and regulations."

Tenet entered into an agreement dated May 1, 2005 ("Agreement") with Lobdell Capital Management LLC ("Lobdell") which states, in relevant part, that it shall supplement the terms and provisions of the Partnership Agreement. The Agreement's purpose was to establish special withdrawal rights that were agreed to by Tenet and conferred upon Lobdell Partners in connection with an investment in the Fund by Lobdell Capital Partners LP ("Lobdell Partners"). The full text of the Agreement is attached as Exhibit A hereto.

To determine whether the Agreement was authorized by the Partnership Agreement, we must establish that the Agreement satisfied each of three tests set forth in the Partnership Agreement. These tests, and our bases for asserting that the Agreement satisfies each test, are as follows:

A.    The Agreement is incidental to the purposes of the Fund.

The Agreement facilitates the capital contribution of a limited partner. The Fund exists solely to attract and invest the capital of its limited partners. Without capital it could not operate. Surely nothing is more necessary or incidental to the purpose of the Fund.

B.    The Agreement is in accordance with the Partnership Agreement and the Memorandum.

Section 14.09 of the Partnership Agreement ("Amendments") states, in relevant part, that "the General Partner shall be authorized to enter into one or more side agreements with any Limited Partner (without notice or consent of any other Limited Partner) in order to implement or document the exercise of the General Partner's discretionary authority under Section 3.02(p) of this Agreement." Section 3.02(p) explicitly authorizes the General Partner to waive, reduce or change virtually all limitations or restrictions on capital contributions, withdrawals and other requirements imposed (by the Partnership Agreement) on limited partners of the Fund. The Agreement waives the lock-up period and varies the notice period, a restriction and a limitation, respectively, imposed on redemptions by the Partnership Agreement. Therefore, the Agreement is within the scope of Section 3.02(p) of the Partnership Agreement.

C.    The Agreement is in accordance with all applicable laws and regulations.

No law or regulation would bar enforcement of the Agreement in accordance with its terms, including the argument that the General Partner breached its fiduciary duties to the existing limited partners when it entered into the Agreement.

It is settled law in Delaware that the general partner of a Delaware limited partnership owes a fiduciary duty to the limited partnership and to the other partners in the limited partnership. Boxer v. Husky Oil Co., 429 A.2d 995 (Del. Ch. 1981). However, Delaware courts have recognized the possibility of partners contractually

2

limiting in a partnership agreement the scope of a general partner's fiduciary duty. Boxer v. Husky Oil Co., C.A. No. 6261 (Del. Ch. June 28, 1983) *revised on reh'g* C.A. 6261 (Del. Ch. Feb. 1, 1984) *aff'd*, 483 A.2d 633 (Del. 1984) (hereinafter, *Boxer II*). The holding in *Boxer II* was codified in 1990 by the addition of Sec. 17-1101(d) to the Act.

Taken together, Section 17-1101(d) of the Act and *Boxer II* make it clear that, in determining the scope of the fiduciary duties of a general partner of a Delaware limited partnership, the partnership agreement must be consulted since any definition of fiduciary duty arrived at by analogy to corporate law may have been modified in the partnership agreement. Ultimately, under Delaware law, a partnership agreement generally will control the answer to whether any duty has been breached. See Lubaroff & Altman.

As set forth above, and discussed in further detail below, the Partnership Agreement explicitly authorizes Tenet to enter into side agreements generally and, through such side agreements, to vary the restrictions and limitations on withdrawals by limited partners. In view of the policy of the Act to give maximum effect to the principle of freedom of contract and the enforceability of partnership agreements, and the explicit language of the Act in respect of the partners' ability to define the fiduciary duty of the general partner in the partnership agreement, it is clear that Tenet was acting within the scope of its express contractual authority in the Partnership Agreement and it did not breach its fiduciary duty to the Fund or the limited partners by entering into the Agreement. Thus, the Agreement was entered into in accordance with all applicable laws and regulations.

Issue #3:    Are the Agreement's special withdrawal rights enforceable?

Answer #3:    Yes. The Agreement and the special withdrawal rights are each explicitly and unambiguously authorized by the Partnership Agreement and, therefore, the Agreement is a valid, binding and enforceable obligation of the General Partner and the Partnership which is enforceable in accordance with its terms.

The Agreement confers special withdrawal rights upon Lobdell Partners which vary from the rights of other limited partners under the Partnership Agreement in three respects. It waives the one-year lock-up applicable to limited partner's capital contributions generally, it reduces the withdrawal notice period from thirty days to five business days, and it permits withdrawals from Lobdell Partners' capital account as of the first day of each month.

When Delaware courts have been called upon to enforce provisions of partnership agreements, they have noted that the starting point is to determine whether the provision is ambiguous. See, *e.g.*, Ca nterra v. Marriott Senior Living Services, Inc., C.A. No. 16498 (Del. Ch. Feb. 18, 1999). Under Delaware law, a contract is ambiguous only when the provision in controversy is reasonably or fairly susceptible to different interpretations or may have two or more different meanings. Id.

The starting point for analyzing Lobdell Partners' withdrawal rights is Section 7.01 of the Partnership Agreement, which states that a limited partner may withdraw all or any of its capital account to the extent provided in Section 7.02 thereof. Section 7.02 provides, in sum, that a limited partner is subject to a one-year lock-up and then may withdraw its capital account at the end of any quarter on thirty days prior written notice to the general partner and at such other times as the general partner may determine in its sole discretion (emphasis added). Section 3.02(p)

3

explicitly reinforces the general partner's right to modify the limited partners' withdrawal rights, and to vary them among limited partners. In relevant part, it explicitly authorizes "the General Partner . . . to waive . . . any notice period, minimum amount requirement, or other limitation or restriction imposed on . . . withdrawals of capital . . . regardless of whether such . . . waiver . . . operates for the benefit of the Partnership, the General Partner or fewer than all the Limited Partners." This language is clear, express and precise and, therefore, not open to interpretation. Tenet was authorized by the Partnership Agreement to grant special withdrawal rights to Lobdell Partners. The Agreement is equally precise and unambiguous as to the scope of Lobdell Partners' withdrawal rights.

Notwithstanding that Tenet was authorized to grant Lobdell's special withdrawal rights, and clearly did so under the Agreement, there were various means under the Partnership Agreement by which Tenet could have prevented the Lobdell redemption[1]. As discussed below, however, Tenet did not invoke any of these means. Also, the Act could have prohibited the redemption under certain circumstances, also not applicable here.

First, Tenet could have declined the Redemption Notice on the grounds that Lobdell gave less than five business day's advance written notice as required by the Agreement. As stated above, however, Tenet did not do so. Rather, Tenet accepted the Redemption Notice in the exercise of its authority under the Partnership Agreement to waive all notice periods and restrictions on redemptions on a case by case basis (Section 3.02(p)).

Second, Tenet could have suspended withdrawals from the Fund under Section 7.03 of the Partnership Agreement. Under the penultimate sentence thereof, however, Tenet was obligated to notify the limited partners in writing of any such suspension. He did not do so.

Finally, Lobdell's withdrawal would have been invalidated under the Act, and thereby would have been unauthorized by the Partnership Agreement, if the withdrawal would have violated Sections 17-607 or 17-804 of the Act. Section 17-607 prohibits a distribution that would, in effect, render the partnership insolvent. The Lobdell withdrawal would not have had this effect. After giving effect to the Lobdell redemption, the fair value of the assets of the Fund would have exceeded the Fund's liabilities. Even if there had been any question as to the effect of Lobdell's redemption on the Fund's solvency, the Partnership Agreement provided other mechanisms for dealing with this outcome; e.g., it provides for the Fund to withhold 10% of the redemption proceeds pending the computation of the Fund's final net asset value by the Administrator and it authorizes the Fund to establish reserves for contingencies and decrease the redemption proceeds accordingly.

Section 17-804 is concerned with distributions in connection with the winding up of the partnership's affairs. This clearly is inapplicable. The Redemption Notice was given, and accepted by Tenet, prior to the appointment of the Receiver and the decision to wind up the Fund.

In sum, while the Partnership Agreement explicitly and unambiguously limits the limited partners' withdrawal rights, it also explicitly and unambiguously authorizes the general partner to waive these limitations and grant special withdrawal rights to a single limited partner (even if the special rights operate for the benefit of fewer than all the limited partners). The Agreement explicitly and unambiguously supplements the Partnership Agreement and grants special withdrawal rights to Lobdell Partners which are clear and unambiguous on it face. There is no

---

[1] Hereinafter, the words "redemption" and "withdrawal" are sometimes used interchangeably, each as the context requires, to refer to withdrawal of Lobdell Partners' capital account from the Fund.

ambiguity whatsoever in the meaning of Partnership Agreement as it was supplemented by the Agreement. Therefore, it is the policy of the Act to enforce it.

Issue #4:     <u>Did Lobdell withdraw from the Fund as of June 1, 2005?</u>

Answer #4:    <u>Yes. Lobdell delivered a redemption notice to Tenet in the manner set forth in the Partnership Agreement and it was accepted by Tenet.</u>

        A. <u>Lobdell delivered a redemption notice in proper form on May 26, 2005.</u>

Section 7.02 of the Partnership Agreement ("Withdrawal Procedures") states that requests for withdrawal shall be given to the general partner in writing (Sec. 7.02(a)) and they shall specify the dollar amount or percentage of value of the capital account to be withdrawn (Sec. 7.02(g)).

Martin Lobdell ("ML"), the manager of Lobdell Capital Management, LLC, informed Jon Hankins ("JH"), the manager of Tenet, by telephone on May 26, 2005 that Lobdell was electing to redeem 100% of Lobdell Partners' capital in the Fund as of May 31, 2005. During the course of this telephone call, JH agreed to permit the withdrawal pursuant to the discretionary authority given to the general partner under Sections 7.02(a) and 3.02(p) of the Partnership Agreement, notwithstanding the fact that May 26 was five calendar days from end of the month and the Agreement requires written notice be given five business days prior to the end of the month.

Lobdell confirmed its intention to withdraw its capital in writing later that day in a letter on Lobdell's letterhead from ML to Tenet (hereinafter referred to as the "Redemption Notice"). The Redemption Notice, attached hereto as <u>Exhibit B</u>, was delivered via facsimile to Tenet and Olympia Capital Associates, LP (the "Administrator"). The Redemption Notice states that it covers the redemption of 100% of Lobdell Partner's interest in the Fund, and otherwise satisfies all of the requirements under the Partnership Agreement as to form and content.

In an email to ML from the Administrator on May 26, the Administrator confirmed that it received the Redemption Notice. This email is attached as <u>Exhibit C</u>.

In a separate email to ML on May 27, JH confirmed that Tenet received the Redemption Notice on May 26. This email is attached as <u>Exhibit D</u>.

        B. <u>Tenet accepted the Redemption Notice.</u>

Tenet and the Administrator each have separate roles in processing the Fund's redemptions. Under the Partnership Agreement, Tenet is responsible for determining whether a request for redemption shall be approved. If approved, Tenet then directs the Administrator to process the redemption and disburse the redemption proceeds from the Fund. See the description of the Administration Agreement set forth in the Memorandum. In view of the separate roles of Tenet and the Administrator in the redemption process, their acts in respect of the Redemption Notice are separately described in the following paragraphs.

        1.    <u>Tenet accepted the Redemption Notice and directed the Administrator to redeem Lobdell Partners' capital account as of May 31, 2005 and disburse the redemption proceeds.</u>

In the email from the JH to ML dated May 27 (Exhibit D), JH states that he forwarded the [Redemption Notice] to the Administrator "for processing." This statement implies that the Redemption Notice was accepted by Tenet. Indeed, this is the only reasonable interpretation of this statement. If the Redemption Notice had not been accepted by Tenet, there would be no conceivable reason for forwarding it to the Administrator for processing.

In a letter from Tenet to the Administrator dated June 1 which, on information and belief, was delivered in response to the Administrator's request for JH to confirm Tenet's acceptance of the Redemption Notice in writing in accordance with the Administrator's usual and customary policies, JH stated: "Tenet Asset Management hereby authorizes the redemption of Lobdell Capital's capital allocation as of [M]ay 31, 2005." This letter is attached as Exhibit E.

In view of the foregoing, there can be no question that Tenet accepted the Redemption Notice as of May 31, 2005 and directed the Administrator to process it. As set forth above, JH stated so in a telephone call on May 26, impliedly confirmed his acceptance in an email on May 27 and explicitly confirmed Tenet's acceptance in writing on June 1. Moreover, JH said nothing, and there is no record of any conduct on his part during the days covered by these events, that suggests any other intention.

> 2.    The Administrator redeemed Lobdell Partners' capital account as of May 31, 2005.

The Administrator acknowledged receipt of the Redemption Notice in writing on May 26. In that email, the Administrator states that it will separately confirm "acceptance" when the Administrator receives a copy of the Agreement, which the Administrator had previously requested from Tenet. See Exhibit C.

On the early morning of May 31, the Administrator stated in a telephone call with ML that it was waiting to receive a copy of the Agreement and written confirmation from JH that the Redemption Notice had been accepted by Tenet. The Administrator also stated that it expected to wire funds to Lobdell Partners' bank account for the full value of its capital account later that day. No funds were wired on May 31 in fulfillment of this representation.

On June 1, the Administrator confirmed receipt of written instructions from Tenet (see Exhibit E). The Administrator faxed a copy of this letter to ML later that morning and, in a subsequent telephone call with ML, again stated that it would wire funds to Lobdell Partners' bank account later that day for "around" $3.6 million.[2] No funds were wired on June 1 in fulfillment of this representation.

During the next several days, there were several additional emails exchanged among JH, ML and the Administrator, all of which confirm that Lobdell Partners' capital account was redeemed as of May 31, but offer various explanations for the delay in wiring the redemption proceeds. In an email on June 2 from the Administrator to ML and JH, the Administrator states that the wire was delayed because the "5/31 capital account balance is not final as of yet." In an email later the same day from JH to the Administrator and ML, JH states that he was selling

---

[2] As this time, Lobdell was under the impression, based on information from Tenet and the Administrator, that this was the approximate value of Lobdell Partners' capital account. Lobdell did not learn of the Fund's substantial losses in May 2005 until June 17 when the Administrator released its estimate of the Fund's net asset value for May.

assets "so the wire can be completed." In the same email, JH further states the he previously represented to ML that "as soon as the trades are settled the wire would be sent out ASAP." Then, in an email on June 3 from the Administrator to ML, the Administrator states, "as soon as Jon raises the cash, I will be able to send you the wire."

Each of the foregoing emails has one thing in common—it proceeds from the assumptions that (1) the Redemption Notice was accepted by Tenet and (2) Lobdell Partners' capital account was being redeemed as of May 31, 2005. Indeed, there is nothing in any of this correspondence that questions whether the Redemption Notice was accepted, or the date as of which Lobdell Partners' capital account would be redeemed. Notwithstanding the fact that the redemption proceeds were never disbursed, the redemption was processed as evidenced by the record and the actions of each of the parties to the transaction. The record is clear. Indeed, if the Fund's net asset value had increased substantially in June, and Tenet took the position that Lobdell Partners' interest was redeemed in full as of May 31, 2005, the record offers ample support for this position. Tenet would have been justified in allocating all of June's gains to the capital accounts of the Fund's other limited partners on the grounds that Lobdell Partners redeemed 100% of its capital account on May 31.

Lobdell has never wavered in this position. On June 1, and each day thereafter, without knowing whether the Fund's trading during June was producing profits or additional losses, it took the same position consistently and unequivocally—its Redemption Notice was effective as of May 31. This is evidenced by a letter dated June 14, 2005 to the Administrator, which was delivered three days before the results of trading in June were known. This letter is attached as Exhibit F. To take any other position would, in effect, create a call option in favor of Tenet. Tenet would have had the power to "call" Lobdell Partners' interest in the Fund at any time during June at the value of its capital account as of May 31, 2005. This benefit of hindsight is inconsistent with the Partnership Agreement and clearly inequitable.

Issue #5: If Lobdell was entitled to a distribution from the Fund as of May 31, 2005, is it presently entitled to be treated as a creditor of the Fund?

Answer #5: Yes. Under the Act, a limited partner becomes a creditor of the company at the time it becomes entitled to a distribution.

This question can be answered under either of two theories: first, that Tenet's acceptance of the Redemption Notice entitled Lobdell to an interim distribution; and, second, that it resulted in Lobdell Partners' withdrawal from the Fund. Under either approach, the result is the same.

A. Tenet's acceptance of the Redemption Notice entitled Lobdell to an interim distribution.

Under Section 17-601 of the Act ("Interim Distributions"), a limited partner is entitled to receive distributions from a Delaware limited partnership before his withdrawal from the limited partnership and before the dissolution and winding up thereof "to the extent and at the times or upon the happening of the events specified in the partnership agreement." At the time the partner becomes entitled to a distribution from the partnership, under Section 17-606 of the Act "he or she has the status of, and is entitled to all remedies available to, a creditor of the limited partnership with respect to the distribution."

The "event specified in the partnership agreement" that entitled Lobdell to an interim distribution was the giving and acceptance of the Redemption Notice. The extent and timing of

7

the distribution are also explicitly and unambiguously set forth in the Partnership Agreement (as supplemented by the Agreement). The extent of the distribution is the value of its capital account. The timing of the distribution is 90% within 3 business days and the balance within 5 business days after the Administrator completes the monthly net asset value.

   **B. Tenet's acceptance of the Redemption Notice resulted in Lobdell Partners' withdrawal from the Fund.**

   We reach the same conclusion if the above-referenced redemption is viewed as a withdrawal from the Fund.[3] Under Section 17-603 of the Act, a limited partner is entitled to withdraw from a Delaware limited partnership "upon the happening of events specified in the partnership agreement and in accordance with the partnership agreement."

   The Partnership Agreement states in Section 7.02(d)(ii) that "[u]pon withdrawal of all of its Capital Account, a Limited Partner shall be deemed to have withdrawn from the Partnership." The Redemption Notice covers "100% of [Lobdell Partners'] interest in the Fund. Tenet accepted the Redemption Notice effective as of May 31, 2005. Thus, Lobdell should be deemed to have withdrawn from the Fund as of this date.

   We acknowledge that the relevant language of the Partnership Agreement is susceptible to more than one reasonable interpretation on this point. It is not clear whether the phrase "upon withdrawal of its Capital Account" should be interpreted narrowly—that is, withdrawal occurs when the partnership actually disburses the limited partner's capital, or interpreted broadly, i.e., withdrawal occurs on the effective date of the redemption, without regard to whether the redemption proceeds have actually been disbursed. We believe the latter interpretation is the proper interpretation and the most reasonable. Fortunately, however, there is no need to resolve this ambiguity in order to establish that Lobdell became entitled to a distribution as of May 31, 2005.

   Whether you adopt the view that Tenet's acceptance of the Redemption Notice entitled Lobdell to an interim distribution or to withdraw from the Fund, the result is the same. Under the first theory, Lobdell became entitled to a distribution under Section 17-601 of the Act ("Interim Distributions"). Under the second theory, Lobdell became entitled to a distribution under Section 17-604 of the Act ("Distribution upon Withdrawal"). Either way, the operative fact is Lobdell became entitled to a distribution and, thus, a creditor of the Fund under Section 17-606 of the Act ("Right to Distribution").

CONCLUSION

   Section 17-804(a) of the Act provides that upon winding up of a Delaware limited partnership, its assets shall be first distributed to the creditors of the partnership, including partners who are creditors, in satisfaction of the liabilities of the partnership. The Redemption Notice, which provided for the withdrawal of 100% of Lobdell Partners' interest in the Fund as of May 31, 2005, was accepted by Tenet on May 27, 2005. As of May 31, 2005, the effective date of the redemption, Lobdell Partners became a creditor of the Fund in the amount of the

---

[3] We distinguish between Lobdell's right to withdraw from the Fund, and its right to withdraw from Lobdell Partners' capital account in the Fund. The withdrawal of all of a limited partner's capital from a Delaware limited partnership is not, by itself, conclusive evidence that the partner has withdrawn from the partnership for all purposes. A limited partner may be required to take additional steps under the Act to "dissociate" with partnership and, thereby, withdraw as a limited partner.

8

distribution.  Therefore, upon winding up of the Fund, Lobdell is entitled to receive out of the assets of the Fund the value of Lobdell Partners' capital account as of May 31, 2005.

Susan E. Brune (SB 2262)
BRUNE & RICHARD LLP
80 Broad Street
New York, New York 10004
(212) 668-1900

Court-appointed receiver

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,                    :

                                  Plaintiff,           :       05 Civ. 5808 (KMW)

                                                       :

-against-                                              :       AFFIDAVIT
                                                               OF SERVICE
JON E. HANKINS,                                        :
TENET ASSET MANAGEMENT, LLC, and
TENET CAPITAL PARTNERS CONVERTIBLE                     :
OPPORTUNITIES FUND, LP,
                                                       :
                                  Defendants,
                                                       :

------------------------------------------------------------------------x
STATE OF NEW YORK            )
                            :     ss.
COUNTY OF NEW YORK           )

          I, Susan E. Brune, an attorney duly admitted to practice before the courts of the

State of New York, hereby certify that on this 29th day of July, 2005, I caused the foregoing

Declaration and Report of Receiver and proposed Order upon the counsel and investors on the

attached list by causing a true and correct copy thereof to be sent by hand to their offices or

Federal Express to the addresses listed.

                                                _____
                                                          Susan E. Brune

SEC v. Jon E. Hankins, Tenet Asset Management, LLC and Tenet Capital Partners Convertible Opportunities Fund, LP

| Recipient | Contact | For Investor | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|---|
| *Counsel* | | | | | | | |
| SEC | Scott Black | | 3 World Trade Center | | New York | NY | 10281 |
| Gersten, Savage, Kaplowitz, Wolf & Marcus, LLP | Barry Fertel | | 600 Lexington Avenue | 9th Floor | New York | NY | 10022 |
| *Investors* | | | | | | | |
| Jessee & Jessee | Tom Jessee | Robert L. Baker & Elinor Baker and Baker entities | 412 East Unaka Avenue | P.O. Box 997 | Johnson City | TN | 37605 |
| Betty W. Hankins | | Betty W. Hankins | 6515 Arborcrest Way | | Knoxville | TN | 37918 |
| Patricia N. Coleman | | Patricia N. Coleman | 2148 Longreen Rd. | | Kingsport | TN | 37660 |
| Sidley Austin Brown & Wood LLP | Greg Robbins | Mina Innovative Arbitrage Fund, LLC | 10 South Dearborn Street | | Chicago | IL | 60603 |
| Tamara Maslenkova | | Tamara Maslenkova | 251 Luce Hill Rd. #11 | | Stowe | VT | 05672 |
| RBC Alternative Assets, LP | Howard Sullivan III | RBC Alternative Assets, LP | One Liberty Plaza | 165 Broadway | New York | NY | 10006 |
| Wachovia Securities | Mary Lou Guttman, Esq. | Concord Minutemen (Cayman) Ltd. | 12 East 49th St. | NY 4015 | New York | NY | 10011 |
| Armadillo Partners, LLC | Michael Weprin | Armadillo Partners, LLC | 40 Random Farms Circle | | Chappaqua | NY | 10514 |
| Societe Generale | Ger Laffin | Aegis Holdings | 1221 Avenue of the Americas | | New York | NY | 10020 |
| Star Navigator, LP | Steve Dabbah | Mr. Dabbah and Star Navigator | 6 East 46th Street | Suite 300 | New York | NY | 10017 |
| The Securities Law Group | James E. Grand | Lobdell Capital Partners | 388 Market Street | Suite 400 | San Francisco | CA | 94111 |

Privileged and Confidential

Case 1:05-cv-05808-KMW   Document 27-5   Filed 07/29/05   Page 42 of 42

**EXHIBIT 10**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/18/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,                :
                                                                                        05 Civ. 5808 (KMW)
                    Plaintiff,                                                 :

                    -against-                                                :       [PROPOSED]
                                                                                        ORDER
JON E. HANKINS,                                                            :
TENET ASSET MANAGEMENT, LLC, and
TENET CAPITAL PARTNERS CONVERTIBLE            :
OPPORTUNITIES FUND, LP,
                                                                                    :
                    Defendants.
                                                                                    :
--------------------------------------------------------------------x

WHEREAS on June 22, 2005, pursuant to a complaint brought by the Securities and

Exchange Commission against defendants Jon E. Hankins, Tenet Asset Management, LLC and

Tenet Capital Partners Convertible Opportunities Fund, LP, the Court appointed Susan E. Brune

as Temporary Receiver for Tenet Asset Management, LLC, and Tenet Capital Partners

Convertible Opportunities Fund, LP, and

WHEREAS the Temporary Receiver has, by Declaration dated August 3, 2006, filed an

eighth report and

WHEREAS the Temporary Receiver has requested approval for disbursements from the

assets under the control of the Temporary Receiver, it is hereby

*[handwritten: and whereas the Court, by order dated September 22, 2006, stated that this Order would be entered if no objections were received by October 10, 2006, and no objections have been received,]*

1.        ORDERED that the Eighth Declaration and Report of Receiver dated August 3,

          2006 is accepted and approved; and it is further

2.        ORDERED that the Temporary Receiver may, pursuant to Section III of the June

          22, 2005 order appointing her, pay from the assets of the Temporary

          Receivership:

a)    Two invoices from Brune & Richard LLP, dated July 1, 2006, and August 1, 2006, respectively, for fees and disbursements for the Temporary Receivership, for counsel to the Temporary Receiver, for paralegal services and for expenses in the total amount of $32,256.81.

b)    An invoice from accountants Eisner LLP, dated March 27, 2006, for accounting services, in the amount of $13,152.00.

c)    An invoice from accountants Eisner, LLP, dated June 12, 2006, for accounting services to be rendered in connection with the preparation of the Fund's 2006 tax return and investor K-1s, in the amount of $6,000.00; and it is further

3.    ORDERED that the Temporary Receiver's proposed distribution as set forth in Exhibit D of the Eighth Declaration and Report of Receiver is hereby accepted and approved. The Temporary Receiver shall distribute the Fund's assets accordingly; and it is further

4.    ORDERED that, with the exception of retaining the authority to facilitate and sign the Fund's 2006 tax returns and to distribute the Fund's 2006 K-1s, this Temporary Receivership is terminated.

Dated:    New York, New York
Oct. 13, 2006

KIMBA M. WOOD
United States District Judge

2

**EXHIBIT 11**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,                       :

                       Plaintiff,                       :

           -against-                       :

JON E. HANKINS,                       :
TENET ASSET MANAGEMENT, LLC, and
TENET CAPITAL PARTNERS CONVERTIBLE           :
OPPORTUNITIES FUND, LP,

                   Defendants.                       :

                               :

05 Civ. 5808 (KMW)

SIXTH
DECLARATION
AND REPORT
OF RECEIVER

**ECF**

--------------------------------------------------------------------------------x

SUSAN E. BRUNE declares under penalty of perjury as follows:

1.     I am the temporary receiver appointed by the Court in the above-captioned matter, by an Order dated June 22, 2005. By order dated November 8, 2005, the Court directed me to notify all investors of my proposed distribution by November 14, 2005. I do so by way of this Report.

2.     Attached hereto are copies of certain pieces of correspondence that I have received to date in this matter and have not submitted in my earlier reports. Some may already have been submitted directly to the Court, but I include them here for the sake of completeness of the record. The correspondence is as follows: Letter of James E. Grand on behalf of Lobdell Capital Management LLC, dated September 16, 2005 (Exhibit A); Letter of Thomas C. Jessee on behalf of Robert and Elinor Baker, dated October 3, 2005 (Exhibit B); Letter of Mr. Jessee, dated October 25, 2005 (Exhibit C); Letter of Mr. Grand, dated October 27, 2005 (Exhibit D); Letter of Mr. Grand, dated November 1, 2005 (Exhibit E); Letter of Jack G. Martel on behalf of Lobdell

Capital Management LLC, dated November 4, 2005 (Exhibit F); Letter of Peter Ladig on behalf of RBC Alternative Assets, LP, dated November 4, 2005 (Exhibit G).

       3.     Also attached as Exhibit H is a schedule reflecting a proposed distribution of the receivership's $8,677,412.61 in assets. Not included in the distribution is the amount for the receivership's expenses ($62,576.75, as detailed in the Fifth Declaration and Report of Receiver) and $300,000 for the receivership's future expenses. Once the final tax filings are made and any additional expenses are deducted, I will propose a final distribution of whatever funds remain and a conclusion of this receivership.

Dated:      New York, New York
            November 11, 2005

                    /s/ Susan E. Brune
                    SUSAN E. BRUNE
                    Brune & Richard LLP
                    80 Broad Street
                    New York, NY 10004

                    Tel.: (212) 668-1900
                    Fax: (212) 668-0315

**CERTIFICATE OF SERVICE**

I, Susan E. Brune, hereby certify that on November 11, 2005, I caused a copy of

the Sixth Declaration and Report of Receiver, with exhibits, to be served by overnight Federal

Express upon the attached list.

_____/s/  Susan E. Brune_____
Susan E. Brune

Service List

Sixth Declaration and Report of Receiver
SEC v. Jon E. Hankins, et al., 05-civ-5808 (KMW)

November 11, 2005

**By Hand Delivery**

| Recipient | Contact | For Investor | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|---|
| Securities & Exchange Commission | Scott Black | | 3 World Financial Center | Room 4300 | New York | New York | 10281 |
| Gersten, Savage, Kaplowitz, Wolf & Marcus, LLP | Barry Fertel | | 600 Lexington Avenue | 9th Floor | New York | New York | 10022 |

**By Federal Express**

| Recipient | Contact | For Investor | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|---|
| Armadillo Partners, LLC | Michael Weprin | | 40 Random Farms Circle | | Chappaqua | New York | 10514 |
| Baldwin and McNamara | Pat Baldwin | Petitioners | 530 Oak Grove Avenue | Suite 207 | Menlo Park | California | 94025 |
| Betty W. Hankins | | | 6515 Arborcrest Way | | Knoxville | Tennessee | 37918 |
| George Eshoo | | Petitioners | 701 Marshall Street | Suite 500 | Redwood City | California | 94063 |
| Jessee & Jessee | Tom Jessee | Robert L. Baker & Elinor Baker and Baker Entities | 412 East Unaka Avenue | P.O. Box 997 | Johnson City | Tennessee | 37605 |
| Patricia N. Coleman | | | 2148 Longreen Road | | Kingsport | Tennessee | 37660 |
| RBC Alternative Assets, LP | Howard Sullivan, III | | One Liberty Plaza | 165 Broadway | New York | New York | 10006 |
| RBC Alternative Assets, LP | Ralph DeSena | | One Liberty Plaza | 165 Broadway | New York | New York | 10006 |
| Sidley Austin Brown & Wood LLP | Greg Robbins | Mina Innovative Arbitrage Fund, LLC | 10 South Dearborn Street | | Chicago | Illinois | 60603 |
| Societe Generale | Ger Laffin | Aegis Holdings | 1221 Avenue of the Americas | | New York | New York | 10020 |
| Star Navigator Fund, LP | Steve Dabbah | | 6 East 46th Street | Suite 300 | New York | New York | 10017 |
| Tamara Maslenkova | | | 6797 Willow Wood Drive | No. 6025 | Boca Raton | Florida | 33434 |
| The Securities Law Group | James E. Grand | Lobdell Capital Partners | 388 Market Street | Suite 400 | San Francisco | California | 94111 |
| Wachovia Securities | Mary Lou Guttman | Concord Minutemen (Cayman) Ltd. | 12 East 49th Street | NY 4015 | New York | New York | 10011 |
| Wachovia Securities | John Service | Concord Minutemen (Cayman) Ltd. | 12 East 49th Street | NY 4015 | New York | New York | 10011 |
| The Bayard Firm | Peter Ladig | RBC Alternative Assets, LP | 222 Delaware Avenue | Suite 900 | Wilmington | Delaware | 19899 |

# Exhibit H

**BRUNE RE: TENET CAPITAL PARTNERS CONVERTIBLE OPPORTUNITY FUND
PROPOSED INTERIM DISTRIBUTION**

| | | |
|---|---|---:|
| Value as of November 9, 2005 | | 8,739,989.36 |
| | | |
| Proposed Disbursements Relating to Costs of the Receivership | | |
| Brune & Richard LLP | | (33,979.39) |
| Eisner LLP | | (26,430.00) |
| Baker Donelson Bearman Caldwell & Berkowitz, PC | | (2,167.36) |
| | | (62,576.75) |
| | | |
| Adjusted Fund Value | | 8,677,412.61 |
| | | |
| Proposed Holdback for payment of creditors, tax preparation and legal fees | | (300,000.00) |
| | | |
| Proposed Amount to be Distributed | | 8,377,412.61 |

| | | |
|---|---:|---:|
| Baker Family Trust | 0.60% | 50,599.63 |
| Elinor M. Baker IRA | 0.25% | 21,344.14 |
| Robert L. Baker & Elinor M. Baker | 8.14% | 681,522.49 |
| Robert L. Baker IRA | 0.41% | 34,142.42 |
| Betty Hankins IRA | 0.46% | 38,801.77 |
| Baker Machinery | 3.53% | 295,806.58 |
| Patricia N. Coleman | 3.03% | 253,646.30 |
| Mina Innovative Arbitrage Fund | 0.00% | - |
| Tamara Maslenkova | 0.35% | 29,046.06 |
| RBC Alternative Assets | 40.67% | 3,407,450.12 |
| Concord Minutemen | 4.57% | 383,087.51 |
| Aegis Holdings Fbo Forrenstal | 14.34% | 1,201,492.99 |
| Armadillo Partners | 2.06% | 172,876.69 |
| Star Navigator | 1.30% | 108,740.83 |
| Steve Dabbah | 0.52% | 43,496.33 |
| Lobdell Capital Partners | 19.76% | 1,655,358.75 |
| | 100.00% | 8,377,412.61 |

**BRUNE RE: TENET CAPITAL PARTNERS CONVERTIBLE OPPORTUNITY FUND**
**ALLOCATION OF OWNERSHIP INTEREST (PROPOSED INTERIM DISTRIBUTION)**

| | Baker Family Trust | Elinor M. Baker IRA | Robert L. Baker & Elinor M.Baker | Robert L. Baker IRA | Betty Hankins IRA | Baker Machinery | Patricia N. Coleman | Mira Innovative Arbitrage Fund | Tamara Maslenkova | RBC Alternative Assets | Concord Minutemen | Aegis Holdings Fbo Ferential | Armadillo Partners | Star Navigator | Steve Dabbah | Lobdell Capital Partners | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Period 1** | | | | | | | | | | | | | | | | | |
| Gross Contributions/(Distributions) | 187,451.10 | 79,085.38 | 2,520,289.00 | 126,451.18 | - | - | - | - | - | - | - | - | - | - | - | - | 2,913,276.64 |
| Initial Percentage | 6.43% | 2.71% | 86.51% | 4.34% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| NAV Period 1 (3/31/04) | 187,479.18 | 79,097.23 | 2,520,686.50 | 126,470.10 | - | - | - | - | - | - | - | - | - | - | - | - | 2,913,713.00 |
| Ownership % | 6.43% | 2.71% | 86.51% | 4.34% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| **Period 2** | | | | | | | | | | | | | | | | | |
| NAV Period 2 (4/30/04) | 201,037.56 | 84,817.49 | 2,702,959.62 | 135,616.34 | - | - | - | - | - | - | - | - | - | - | - | - | 3,124,431.01 |
| Ownership % | 6.43% | 2.71% | 86.51% | 4.34% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| New Contributions/(Distributions) | | (16.01) | | 35.01 | 192,567.53 | 600,000.00 | | | | | | | | | | | 792,567.53 |
| Adjusted Capital Account | 201,037.56 | 84,802.48 | 2,702,959.62 | 135,651.35 | 192,567.53 | 600,000.00 | - | - | - | - | - | - | - | - | - | - | 3,917,018.54 |
| Adjusted Capital % | 5.13% | 2.16% | 69.01% | 3.46% | 4.92% | 15.32% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| **Period 3** | | | | | | | | | | | | | | | | | |
| NAV Period 3 (5/31/04) | 176,805.52 | 74,590.82 | 2,377,158.61 | 119,300.63 | 169,356.42 | 527,670.05 | - | - | - | - | - | - | - | - | - | - | 3,444,881.05 |
| Ownership % | 5.13% | 2.16% | 69.01% | 3.46% | 4.92% | 15.32% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| New Contributions/(Distributions) | | | | | | (6,000.00) | | | | | | | | | | | (6,000.00) |
| Adjusted Capital Account | 176,805.52 | 74,590.82 | 2,377,158.61 | 119,300.63 | 169,356.42 | 521,670.05 | - | - | - | - | - | - | - | - | - | - | 3,438,881.05 |
| Adjusted Capital % | 5.14% | 2.17% | 69.13% | 3.47% | 4.92% | 15.17% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| **Period 4** | | | | | | | | | | | | | | | | | |
| NAV Period 4 (6/15/04) | 169,887.49 | 71,662.63 | 2,284,145.40 | 114,832.65 | 162,729.86 | 501,266.85 | - | - | - | - | - | - | - | - | - | - | 3,304,524.88 |
| Ownership % | 5.14% | 2.17% | 69.13% | 3.47% | 4.92% | 15.17% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| New Contributions/(Distributions) | | | | | | | 859,477.29 | | | | | | | | | | 859,477.29 |
| Adjusted Capital Account | 169,887.49 | 71,662.63 | 2,284,145.40 | 114,832.65 | 162,729.86 | 501,266.85 | 859,477.29 | - | - | - | - | - | - | - | - | - | 4,163,802.17 |
| Adjusted Capital % | 4.08% | 1.72% | 54.86% | 2.76% | 3.91% | 12.04% | 20.64% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| **Period 5** | | | | | | | | | | | | | | | | | |
| NAV Period 5 (6/30/04) | 167,545.81 | 70,674.86 | 2,252,661.49 | 113,052.59 | 160,486.94 | 494,357.55 | 847,630.54 | - | - | - | - | - | - | - | - | - | 4,106,409.68 |
| Ownership % | 4.08% | 1.72% | 54.86% | 2.76% | 3.91% | 12.04% | 20.64% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| New Contributions/(Distributions) | | | 4,000.00 | | (2,000.00) | 239,000.00 | | | | | | | | | | | 241,000.00 |
| Adjusted Capital Account | 167,545.81 | 70,674.86 | 2,256,661.49 | 113,052.59 | 158,486.94 | 733,357.55 | 847,630.54 | - | - | - | - | - | - | - | - | - | 4,347,409.68 |
| Adjusted Capital % | 3.85% | 1.63% | 51.91% | 2.60% | 3.65% | 16.87% | 19.50% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |

**BRUNE RE: TENET CAPITAL PARTNERS CONVERTIBLE OPPORTUNITY FUND**
**ALLOCATION OF OWNERSHIP INTEREST (PROPOSED INTERIM DISTRIBUTION)**

| | Baker Family Trust | Elinor M. Baker IRA | Robert L. Baker & Elinor M.Baker | Robert L. Baker IRA | Betty Hankins IRA | Baker Machinery | Patricia N. Coleman | Mina Innovative Arbitrage Fund | Tamara Maslenkova | RBC Alternative Assets | Concord Minuteman | Aegis Holdings Fbo Forrestal | Armadillo Partners | Star Navigator | Steve Dabbah | Lockell Capital Partners | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Period 6** NAV Period 6 (7/31/04) | 247,096.47 | 104,231.24 | 3,328,123.08 | 166,729.89 | 233,738.31 | 1,081,055.50 | 1,290,666.03 | - | - | - | - | - | - | - | - | - | 6,411,507.32 |
| Ownership % | 3.85% | 1.63% | 51.91% | 2.60% | 3.65% | 16.87% | 19.50% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| New Contributions/(Distributions) | - | - | - | - | (2,000.00) | (28,500.00) | - | - | - | - | - | - | - | - | - | - | (30,500.00) |
| Adjusted Capital Account | 247,096.47 | 104,231.24 | 3,328,123.08 | 166,729.89 | 231,736.31 | 1,053,055.50 | 1,290,666.03 | - | - | - | - | - | - | - | - | - | 6,381,057.32 |
| Adjusted Capital % | 3.87% | 1.63% | 52.16% | 2.61% | 3.63% | 16.50% | 19.59% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| **Period 7** NAV Period 7 (8/31/04) | 256,810.13 | 108,328.69 | 3,458,955.57 | 173,284.24 | 240,846.14 | 1,094,452.16 | 1,299,227.37 | - | - | - | - | - | - | - | - | - | 6,531,904.30 |
| Ownership % | 3.87% | 1.63% | 52.16% | 2.61% | 3.63% | 16.50% | 19.59% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| New Contributions/(Distributions) | - | - | - | - | (2,000.00) | (20,000.00) | - | 487,500.00 | - | - | - | - | - | - | - | - | 465,500.00 |
| Adjusted Capital Account | 256,810.13 | 108,328.69 | 3,458,955.57 | 173,284.24 | 238,846.14 | 1,074,452.16 | 1,299,227.37 | 487,500.00 | - | - | - | - | - | - | - | - | 7,097,404.30 |
| Adjusted Capital % | 3.62% | 1.53% | 48.74% | 2.44% | 3.37% | 15.14% | 18.31% | 6.87% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| **Period 8** NAV Period 8 (9/30/04) | 237,579.09 | 100,216.58 | 3,199,934.25 | 160,307.98 | 220,960.32 | 993,892.81 | 1,201,935.69 | 450,993.92 | - | - | - | - | - | - | - | - | 6,565,520.44 |
| Ownership % | 3.62% | 1.53% | 48.74% | 2.44% | 3.37% | 15.14% | 18.31% | 6.87% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| New Contributions/(Distributions) | - | - | - | - | (67,000.00) | (20,000.00) | - | - | - | - | - | - | - | - | - | - | (87,000.00) |
| Adjusted Capital Account | 237,579.09 | 100,216.58 | 3,199,934.25 | 160,307.98 | 153,960.32 | 973,892.81 | 1,201,935.69 | 450,993.92 | - | - | - | - | - | - | - | - | 6,478,520.44 |
| Adjusted Capital % | 3.67% | 1.55% | 49.39% | 2.47% | 2.38% | 15.03% | 18.55% | 6.96% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| **Period 9** NAV Period 9 (10/31/04) | 229,819.26 | 98,816.75 | 3,091,376.99 | 154,869.56 | 148,737.24 | 940,950.06 | 1,161,180.21 | 435,694.03 | - | - | - | - | - | - | - | - | 6,259,124.10 |
| Ownership % | 3.67% | 1.55% | 49.39% | 2.47% | 2.38% | 15.03% | 18.55% | 6.96% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| Special Allocation | (524.64) | (221.31) | (7,066.32) | (354.01) | (339.99) | (2,150.84) | (2,654.20) | 13,311.28 | - | - | - | - | - | - | - | - | 250,994.69 |
| New Contributions/(Distributions) | - | - | - | - | - | 700,000.00 | - | (469,005.31) | - | - | - | - | - | - | - | - | |
| Adjusted Capital Account | 228,894.62 | 98,595.44 | 3,084,310.67 | 154,515.55 | 148,397.26 | 1,638,799.23 | 1,158,506.01 | - | - | - | - | - | - | - | - | - | 6,510,118.79 |
| Adjusted Capital % | 3.52% | 1.48% | 47.38% | 2.37% | 2.28% | 25.17% | 17.80% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| **Period 10** NAV Period 10 (12/28/04) | 178,976.87 | 75,466.75 | 2,410,625.54 | 120,765.77 | 115,983.85 | 1,280,847.39 | 905,461.38 | - | - | - | - | - | - | - | - | - | 5,088,157.55 |
| Ownership % | 3.52% | 1.48% | 47.38% | 2.37% | 2.28% | 25.17% | 17.80% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| New Contributions/(Distributions) | - | - | - | - | (2,000.00) | (20,000.00) | - | - | - | - | - | - | - | - | - | - | (22,000.00) |
| Adjusted Capital Account | 178,976.87 | 75,466.75 | 2,410,625.54 | 120,765.77 | 113,983.85 | 1,260,847.39 | 905,461.38 | - | - | - | - | - | - | - | - | - | 5,066,157.55 |
| Adjusted Capital % | 3.53% | 1.49% | 47.58% | 2.38% | 2.25% | 24.89% | 17.87% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |

**BRUNE RE: TENET CAPITAL PARTNERS CONVERTIBLE OPPORTUNITY FUND**
**ALLOCATION OF OWNERSHIP INTEREST [PROPOSED INTERIM DISTRIBUTION]**

| | Baker Family Trust | Elinor M. Baker IRA | Robert L. Baker & Elinor M Baker | Robert L. Baker IRA | Betty Harkins IRA | Baker Machinery | Patricia N. Coleman | Mina Innovative Arbitrage Fund | Tamara Maslenikova | RBC Alternative Assets | Concord Minuteman | Aegis Holdings Fbo Forrencial | Armadillo Partners | Star Navigator | Steve Dabbah | Lobell Capital Partners | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Period 11** | | | | | | | | | | | | | | | | | |
| NAV Period 11 (11/23/04) | 166,169.09 | 70,084.12 | 2,238,118.43 | 112,123.63 | 105,627.03 | 1,170,619.71 | 840,666.53 | - | - | - | - | - | - | - | - | - | 4,703,617.53 |
| Ownership % | 3.53% | 1.49% | 47.56% | 2.38% | 2.25% | 24.89% | 17.87% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| New Contributions/(Distributions) | - | - | - | - | 42,000.00 | - | - | - | 200,000.00 | - | - | - | - | - | - | - | 242,000.00 |
| Adjusted Capital Account | 166,169.09 | 70,084.12 | 2,238,118.43 | 112,123.63 | 147,627.03 | 1,170,619.71 | 840,666.53 | - | 200,000.00 | - | - | - | - | - | - | - | 4,945,617.53 |
| Adjusted Capital % | 3.36% | 1.42% | 45.25% | 2.27% | 2.99% | 23.67% | 17.00% | 0.00% | 4.04% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| **Period 12** | | | | | | | | | | | | | | | | | |
| NAV Period 12 (11/23/04) | 153,018.22 | 64,546.77 | 2,060,890.40 | 103,250.00 | 136,127.78 | 1,077,975.12 | 774,134.01 | - | 184,171.70 | - | - | - | - | - | - | - | 4,554,214.00 |
| Ownership % | 3.36% | 1.42% | 45.25% | 2.27% | 2.99% | 23.67% | 17.00% | 0.00% | 4.04% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| New Contributions/(Distributions) | - | - | - | - | (2,000.00) | (20,000.00) | - | - | - | - | - | - | - | - | - | - | (22,000.00) |
| Adjusted Capital Account | 153,018.22 | 64,546.77 | 2,060,890.40 | 103,250.00 | 134,127.78 | 1,057,975.12 | 774,134.01 | - | 184,171.70 | - | - | - | - | - | - | - | 4,532,214.00 |
| Adjusted Capital % | 3.38% | 1.42% | 45.47% | 2.28% | 2.96% | 23.34% | 17.08% | 0.00% | 4.06% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| **Period 13** | | | | | | | | | | | | | | | | | |
| NAV Period 13 (12/31/04) | 142,254.92 | 60,006.55 | 1,916,020.42 | 95,987.40 | 124,693.24 | 983,557.19 | 719,681.45 | - | 171,217.07 | - | - | - | - | - | - | - | 4,213,418.24 |
| Ownership % | 3.38% | 1.42% | 45.47% | 2.28% | 2.96% | 23.34% | 17.08% | 0.00% | 4.06% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| New Contributions/(Distributions) | - | - | - | - | (3,000.00) | (46,000.00) | - | - | 100,000.00 | - | - | - | - | - | - | - | 51,000.00 |
| Adjusted Capital Account | 142,254.92 | 60,006.55 | 1,916,020.42 | 95,987.40 | 121,693.24 | 937,557.19 | 719,681.45 | - | 271,217.07 | - | - | - | - | - | - | - | 4,264,418.24 |
| Adjusted Capital % | 3.34% | 1.41% | 44.93% | 2.25% | 2.85% | 21.99% | 16.88% | 0.00% | 6.36% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| **Period 14** | | | | | | | | | | | | | | | | | |
| NAV Period 14 (1/31/05) | 127,856.42 | 53,932.91 | 1,722,088.11 | 86,271.92 | 109,376.91 | 842,681.22 | 646,838.03 | - | 243,765.51 | - | - | - | - | - | - | - | 3,832,790.03 |
| Ownership % | 3.34% | 1.41% | 44.93% | 2.25% | 2.85% | 21.99% | 16.88% | 0.00% | 6.36% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| New Contributions/(Distributions) | - | - | - | - | (5,000.00) | (20,000.00) | - | - | - | 1,148,000.00 | - | - | - | - | - | - | 1,123,000.00 |
| Adjusted Capital Account | 127,856.42 | 53,932.91 | 1,722,088.11 | 86,271.92 | 104,375.91 | 822,681.22 | 646,838.03 | - | 243,765.51 | 1,148,000.00 | - | - | - | - | - | - | 4,955,790.03 |
| Adjusted Capital % | 2.58% | 1.09% | 34.75% | 1.74% | 2.11% | 16.60% | 13.05% | 0.00% | 4.92% | 23.16% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| **Period 15** | | | | | | | | | | | | | | | | | |
| NAV Period 15 (2/28/05) | 139,480.43 | 58,836.20 | 1,878,651.02 | 94,115.29 | 113,865.20 | 897,453.11 | 705,645.03 | - | 265,927.35 | 1,252,369.93 | - | - | - | - | - | - | 5,406,343.57 |
| Ownership % | 2.58% | 1.09% | 34.75% | 1.74% | 2.11% | 16.60% | 13.05% | 0.00% | 4.92% | 23.16% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |
| New Contributions/(Distributions) | - | - | - | - | (5,000.00) | (20,000.00) | - | - | - | 1,200,000.00 | 1,056,000.00 | - | - | - | - | - | 2,231,000.00 |
| Adjusted Capital Account | 139,480.43 | 58,836.20 | 1,878,651.02 | 94,115.29 | 108,865.20 | 877,453.11 | 705,645.03 | - | 265,927.35 | 2,452,369.93 | 1,056,000.00 | - | - | - | - | - | 7,637,343.57 |
| Adjusted Capital % | 1.83% | 0.77% | 24.60% | 1.23% | 1.43% | 11.49% | 9.24% | 0.00% | 3.48% | 32.11% | 13.83% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 100.00% |

**BRUNE RE: TENET CAPITAL PARTNERS CONVERTIBLE OPPORTUNITY FUND**
**ALLOCATION OF OWNERSHIP INTEREST (PROPOSED INTERIM DISTRIBUTION)**

| | Baker Family Trust | Elinor M. Baker IRA | Robert L. Baker & Elinor M.Baker | Robert L. Baker IRA | Betty Hankins IRA | Baker MacKelvey | Patricia N. Coleman | Mira Innovative Arbitrage Fund | Tamara Masterkova | RBC Alternative Assets | Concord Minuteman | Aegis Holdings Fbo Forestall | Armadillo Partners | Star Navigator | Steve Dabbah | Lobdell Capital Partners | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Period 16** | | | | | | | | | | | | | | | | | |
| NAV Period 16 (8/31/05) | 146,346.02 | 61,732.27 | 1,971,123.15 | 98,747.90 | 114,223.83 | 920,643.66 | 740,378.73 | - | 270,016.99 | 2,573,082.01 | 1,107,979.09 | - | - | - | - | - | 8,013,273.96 |
| Ownership % | 1.83% | 0.77% | 24.60% | 1.23% | 1.43% | 11.49% | 9.24% | 0.00% | 3.48% | 32.11% | 13.83% | | | | | 0.00% | 100.00% |
| New Contributions/(Distributions) | | | | | (2,000.00) | (20,000.00) | (3,000.00) | | (195,006.96) | 2,250,000.00 | | 3,475,000.00 | 500,000.00 | | | | 6,004,991.05 |
| Adjusted Capital Account | 148,346.02 | 61,732.27 | 1,971,123.15 | 98,747.90 | 112,223.83 | 900,643.66 | 737,378.73 | - | 84,008.04 | 4,623,082.01 | 1,107,979.09 | 3,475,000.00 | 500,000.00 | - | - | - | 14,016,284.71 |
| Adjusted Capital % | 1.04% | 0.44% | 14.06% | 0.70% | 0.80% | 6.42% | 5.26% | 0.00% | 0.60% | 34.41% | 7.90% | 24.79% | 3.57% | 0.00% | 0.00% | 0.00% | 100.00% |
| **Period 17** | | | | | | | | | | | | | | | | | |
| NAV Period 17 (4/30/05) | 116,330.81 | 49,071.13 | 1,566,850.53 | 78,494.94 | 89,207.00 | 715,923.81 | 586,144.13 | - | 66,776.19 | 3,633,679.49 | 880,735.24 | 2,762,285.85 | 397,451.20 | - | - | - | 11,143,152.32 |
| Ownership % | 1.04% | 0.44% | 14.06% | 0.70% | 0.80% | 6.42% | 5.26% | 0.00% | 0.60% | 34.41% | 7.90% | 24.79% | 3.57% | 0.00% | 0.00% | 0.00% | 100.00% |
| New Contributions/(Distributions) | | | | | | | (3,000.00) | | | 4,000,000.00 | | | | 250,000.00 | 100,000.00 | | 4,347,000.00 |
| Adjusted Capital Account | 116,330.81 | 49,071.13 | 1,566,850.53 | 78,494.94 | 89,207.00 | 715,923.81 | 583,144.13 | - | 66,776.19 | 7,633,679.49 | 880,735.24 | 2,762,285.85 | 397,451.20 | 250,000.00 | 100,000.00 | - | 15,480,192.32 |
| Adjusted Capital % | 0.75% | 0.32% | 10.12% | 0.51% | 0.58% | 4.62% | 3.76% | 0.00% | 0.43% | 50.57% | 5.69% | 17.83% | 2.57% | 1.61% | 0.65% | 0.00% | 100.00% |
| **Period 18** | | | | | | | | | | | | | | | | | |
| NAV Period 18 (5/5/05) | 110,041.81 | 46,418.28 | 1,482,144.55 | 74,251.40 | 84,384.35 | 677,220.03 | 551,618.60 | - | 63,168.08 | 7,410,389.76 | 833,121.55 | 2,612,953.09 | 375,964.47 | 236,484.67 | 94,593.87 | - | 14,662,734.52 |
| Ownership % | 0.75% | 0.32% | 10.12% | 0.51% | 0.58% | 4.62% | 3.76% | 0.00% | 0.43% | 50.57% | 5.69% | 17.83% | 2.57% | 1.61% | 0.65% | | 100.00% |
| New Contributions/(Distributions) | | | | | | | | | | | | | | | | 3,600,000.00 | 3,600,000.00 |
| Adjusted Capital Account | 110,041.81 | 46,418.28 | 1,482,144.55 | 74,251.40 | 84,384.35 | 677,220.03 | 551,618.60 | - | 63,168.08 | 7,410,389.76 | 833,121.55 | 2,612,953.09 | 375,964.47 | 236,484.67 | 94,593.87 | 3,600,000.00 | 18,262,734.52 |
| Adjusted Capital % | 0.60% | 0.25% | 8.12% | 0.41% | 0.46% | 3.71% | 3.02% | 0.00% | 0.35% | 40.60% | 4.56% | 14.32% | 2.06% | 1.30% | 0.52% | 19.72% | 100.00% |
| **Period 19** | | | | | | | | | | | | | | | | | |
| NAV Period 19 (5/31/05) | 64,898.25 | 27,374.80 | 874,082.54 | 43,789.15 | 49,764.97 | 399,384.94 | 325,312.52 | - | 37,252.65 | 4,370,204.52 | 491,326.57 | 1,540,967.56 | 221,721.95 | 139,464.89 | 55,785.96 | 2,123,070.34 | 10,763,999.82 |
| Ownership % | 0.60% | 0.25% | 8.12% | 0.41% | 0.46% | 3.71% | 3.02% | 0.00% | 0.35% | 40.60% | 4.56% | 14.32% | 2.06% | 1.30% | 0.52% | 19.72% | 100.00% |
| New Contributions/(Distributions) | | | | | | (20,000.00) | | | | | | | | | | | (20,000.00) |
| Adjusted Capital Account | 64,898.25 | 27,374.80 | 874,082.54 | 43,789.15 | 49,764.97 | 379,384.94 | 325,312.52 | - | 37,252.65 | 4,370,204.52 | 491,326.57 | 1,540,967.56 | 221,721.95 | 139,464.89 | 55,785.96 | 2,123,070.34 | 10,744,399.82 |
| Adjusted Capital % | 0.60% | 0.25% | 8.14% | 0.41% | 0.46% | 3.53% | 3.03% | 0.00% | 0.35% | 40.67% | 4.57% | 14.34% | 2.06% | 1.30% | 0.52% | 19.76% | 100.00% |
| **Period 20** | | | | | | | | | | | | | | | | | |
| NAV Period 20 (6/30/05) | 53,939.28 | 22,752.89 | 725,503.95 | 36,305.67 | 41,362.74 | 315,530.24 | 270,387.32 | - | 30,983.15 | 3,632,346.73 | 408,371.84 | 1,280,783.25 | 184,286.80 | 115,917.88 | 46,367.15 | 1,764,614.81 | 8,930,333.50 |
| Ownership % | 0.60% | 0.25% | 8.14% | 0.41% | 0.46% | 3.53% | 3.03% | 0.00% | 0.35% | 40.67% | 4.57% | 14.34% | 2.06% | 1.30% | 0.52% | 19.76% | 100.00% |
| **Period 21** | | | | | | | | | | | | | | | | | |
| NAV Period 21 (7/31/05) | 50,599.63 | 21,344.14 | 681,522.46 | 34,142.42 | 38,801.77 | 295,606.57 | 253,646.29 | - | 29,046.06 | 3,407,449.98 | 383,067.50 | 1,201,492.04 | 172,876.68 | 108,740.82 | 43,496.33 | 1,655,389.88 | 8,377,412.25 |
| Ownership % | 0.60% | 0.25% | 8.14% | 0.41% | 0.46% | 3.53% | 3.03% | 0.00% | 0.35% | 40.67% | 4.57% | 14.34% | 2.06% | 1.30% | 0.52% | 19.76% | 100.00% |

BRUNE RE: TENET CAPITAL PARTNERS CONVERTIBLE OPPORTUNITY FUND
SUMMARY OF NAV BY ALLOCATION PERIOD (PROPOSED INTERIM DISTRIBUTION)

| | 3/31/2004 | 4/30/2004 | 5/31/2004 | 6/15/2004 | 6/30/2004 | 7/31/2004 | 8/31/2004 | 9/30/2004 | 10/11/2004 | 10/23/2004 | 11/23/2004 | 11/30/2004 | 12/31/2004 | 1/31/2005 | 2/28/2005 | 3/31/2005 | 4/30/2005 | 5/2/2005 | 5/31/2005 | 6/30/2005 | 11/9/2005 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | | | | | | | | | | | | | | |
| Bear Stearns 951-15177 | | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 415 | 445 | 415 | 415 | 415 | 115 | | 115 | 115 | | |
| Bear Stearns 103-88018 | 2,913,713 | 3,303,240 | 3,426,542 | 3,285,264 | 4,089,867 | 6,389,457 | 6,572,432 | 6,011,421 | 5,806,749 | 5,027,717 | 4,660,909 | 4,465,506 | 4,203,053 | 3,785,003 | 5,384,336 | 7,995,444 | 5,840,324 | 5,817,249 | 10,650,402 | 8,844,938 | |
| Lehman Brothers | | | | | | | | | | | | | | | | | | | | | |
| Bank of America | | | | | | | | | | | | | | | | | 5,279,065 | 8,721,952 | | | |
| Olympia | | 7,717 | 5,096 | 2,596 | 98 | 6,253 | 513,756 | 828,883 | 425,444 | 34,110 | 52,132 | 35,132 | 106,236 | 38,694 | 1,062,889 | 3,980,126 | | | | | |
| Schl Dollar Account | | 5,846 | 12,828 | 16,030 | 16,030 | 24,932 | 32,801 | 24,221 | 26,515 | 26,515 | 32,162 | 32,162 | 709 | 11,877 | 12,588 | 12,588 | 373,763 | 113,534 | 93,597 | 65,396 | |
| Citibank | | | | | | | | | | | | | | | | | | | | | |
| **Sub-total: Fund Assets** | 2,913,713 | 3,317,019 | 3,444,881 | 3,304,325 | 4,106,410 | 6,401,057 | 7,119,404 | 6,565,920 | 6,259,124 | 5,088,158 | 4,745,618 | 4,554,214 | 4,310,418 | 3,832,790 | 6,460,344 | 11,988,274 | 11,493,152 | 14,652,735 | 10,744,400 | 8,930,334 | 8,739,999 |
| | | | | | | | | | | | | | | | | | | | | | |
| Fees Submitted w/5th Declaration | | | | | | | | | | | | | | | | | | | | | (62,577) |
| Proposed Holdback submitted with 3rd Declaration | | (192,588) | | | | | | | | | | | | | | | | | | | (300,000) |
| Due From (to) Partner [1] | | | | | | 10,500 | (487,500) | | | | (42,000) | | (97,000) | | (1,054,000) | (3,975,000) | (350,000) | | 20,000 | | |
| | | | | | | | | | | | | | | | | | | | | | |
| **Net Asset Value** | 2,913,713 | 3,124,431 | 3,444,881 | 3,304,325 | 4,106,410 | 6,411,557 | 6,631,904 | 6,565,920 | 6,259,124 | 5,088,158 | 4,703,618 | 4,554,214 | 4,213,418 | 3,832,790 | 5,406,344 | 8,013,274 | 11,143,152 | 14,652,735 | 10,764,400 | 8,930,334 | 8,377,412 |

[1] Adjusts NAV for partner contributions/withdrawals received or disbursed at the end of a month and reflected in the fund asset balance but assumed for purposes of determining net asset value to have occurred as of the first of next month.

1 of 1

**EXHIBIT 12**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,               :
                                                                         05 Civ. 5808 (KMW)
                         Plaintiff,                               :

              -against-                                      :        EIGHTH
                                                                         DECLARATION
                                                                 :       AND REPORT
JON E. HANKINS,                                               OF RECEIVER
TENET ASSET MANAGEMENT, LLC, and            :
TENET CAPITAL PARTNERS CONVERTIBLE        :        **ECF**
OPPORTUNITIES FUND, LP,
                                                                 :
                         Defendants.
                                                                 :
----------------------------------------------------------------------------x

SUSAN E. BRUNE declares under penalty of perjury as follows:

      1.    I am the temporary receiver appointed by the Court in the above-captioned

matter, by an Order dated June 22, 2005.  I write to propose final disbursements and to ask that

this receivership be terminated.

      2.    Tenet Asset Management, LLC has, through this receivership, filed its

final tax returns.  Tenet Capital Partners Convertible Opportunities Fund, LP (the "Fund"), has

also issued K-1s to investors for the year 2005.

      3.    Attached to this declaration are the final invoices for the receivership: two

invoices from Brune & Richard LLP in the total amount of $32,256.81 (Exhibit A), an invoice

from Eisner LLP in the amount of $13,152.00 (Exhibit B) and an invoice to retain Eisner LLP

for the preparation of the Fund's 2006 tax return and investor K-1s in the amount of $6,000.00

(Exhibit C).

      4.    I propose to pay the above-referenced invoices, and to disburse the

$302,110.39 remaining in the receivership as set forth in Exhibit D.  This distribution follows the

same formula as the January 23, 2006 distribution as set forth in Exhibit H of the Sixth

Declaration and Report of Receiver.

     5.    By Order dated March 23, 2006, this Court has entered judgment against

Jon E. Hankins in the total amount of $386,597.08.  Of that total, $256,597.08 is disgorgement

and prejudgment interest and $130,000 is a civil penalty.

     6.    In a submission dated April 26, 2006, Mr. Hankins has filed for

bankruptcy in U.S. Bankruptcy Court for the Eastern District of Tennessee (Knoxville).

     7.    I understand that the Securities and Exchange Commission's ("SEC")

judgment is not likely to be discharged in bankruptcy.  If the SEC is able to collect on the

judgment, as now does not appear to me to be likely, the SEC will easily be able to distribute any

funds available to investors, without the continuation of the receivership.  To this end, I have

transmitted the current contact information for all investors to the SEC.

     8.    All open business of this receivership having been concluded and

provisions for the preparation of the Fund's 2006 tax return and investor K-1s having been made,

I propose that the receivership be terminated as set forth in the accompanying proposed order.  It

has been a privilege to serve as receiver.


Dated:     New York, New York
           August 3, 2006

                                  SUSAN E. BRUNE
                                  Brune & Richard LLP
                                  80 Broad Street
                                  New York, New York 10004

                                  Tel.: (212) 668-1900
                                  Fax: (212) 668-0315

## CERTIFICATE OF SERVICE

I, Susan E. Brune, hereby certify that on August 3, 2006, I caused a copy of the

Eighth Declaration and Report of Receiver and Proposed Order to be served by overnight

Federal Express upon the attached list.

_____/s/  Susan E. Brune_____
Susan E. Brune

Service List

Eighth Declaration and Report of Receiver

July 20, 2006

SEC v. Jon E. Hankins, et al., 05-civ-5808 (KMW)

### By Federal Express

| Recipient | Contact | For Investor | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|---|
| Securities & Exchange Commission | Scott Black | | 3 World Financial Center | Room 4300 | New York | New York | 10281 |
| Gersten, Savage, Kaplowitz, Wolf & Marcus, LLP | Barry Fertel | | 600 Lexington Avenue | 9th Floor | New York | New York | 10022 |

### By Federal Express

| Recipient | Contact | For Investor | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|---|
| Armadillo Partners, LLC | Michael Weprin | | 40 Random Farms Circle | | Chappaqua | New York | 10514 |
| Baldwin and McNamara | Pat Baldwin | Petitioners | 530 Oak Grove Avenue | Suite 207 | Menlo Park | California | 94025 |
| Betty W. Hankins | | | 6515 Arborcrest Way | | Knoxville | Tennessee | 37918 |
| George Eshoo | | Petitioners | 701 Marshall Street | Suite 500 | Redwood City | California | 94063 |
| Jessee & Jessee | Tom Jessee | Robert L. Baker & Elinor Baker and Baker Entities | 412 East Unaka Avenue | P.O. Box 997 | Johnson City | Tennessee | 37605 |
| Patricia N. Coleman | | | 2148 Longreen Road | | Kingsport | Tennessee | 37660 |
| RBC Alternative Assets, LP | Howard Sullivan, III | | One Liberty Plaza | 165 Broadway | New York | New York | 10006 |
| RBC Alternative Assets, LP | Ralph DeSena | | One Liberty Plaza | 165 Broadway | New York | New York | 10006 |
| Sidley Austin Brown & Wood LLP | Greg Robbins | Mina Innovative Arbitrage Fund, LLC | 10 South Dearborn Street | | Chicago | Illinois | 60603 |
| Societe Generale | Ger Laffin | Aegis Holdings | 1221 Avenue of the Americas | | New York | New York | 10020 |
| Star Navigator Fund, LP | Steve Dabbah | | 6 East 46th Street | Suite 300 | New York | New York | 10017 |
| Tamara Maslenkova | | | 6797 Willow Wood Drive | No. 6025 | Boca Raton | Florida | 33434 |
| The Securities Law Group | James E. Grand | Lobdell Capital Partners | 388 Market Street | Suite 400 | San Francisco | California | 94111 |
| Wachovia Securities | Mary Lou Guttman | Concord Minutemen (Cayman) Ltd. | 12 East 49th Street | NY 4015 | New York | New York | 10011 |
| Wachovia Securities | John Service | Concord Minutemen (Cayman) Ltd. | 12 East 49th Street | NY 4015 | New York | New York | 10011 |
| The Bayard Firm | Peter Ladig | RBC Alternative Assets, LP | 222 Delaware Avenue | Suite 900 | Wilmington | Delaware | 19899 |

Case 1:05-cv-05808-KMW   Document 52   Filed 08/03/06   Page 4 of 4

# EXHIBIT
# D

**BRUNE RE: TENET CAPITAL PARTNERS CONVERTIBLE OPPORTUNITY FUND**
**PROPOSED FINAL DISTRIBUTION**

| | | |
|---|---|---|
| Value as of August 1, 2006 | | 353,519.20 |
| Accounts Payable: | | |
| Eisner LLP | | (13,152.00) |
| Eisner LLP | | (6,000.00) |
| Brune & Richard | | (27,990.51) |
| Brune & Richard | | (4,266.30) |
| | | (51,408.81) |
| | | |
| Final Amount to be Distributed | | 302,110.39 |

| | | |
|---|---|---|
| Baker Family Trust | 0.60% | 1,824.75 |
| Elinor M. Baker IRA | 0.25% | 769.72 |
| Robert L. Baker & Elinor M. Baker | 8.14% | 24,577.40 |
| Robert L. Baker IRA | 0.41% | 1,231.26 |
| Betty Hankins IRA | 0.46% | 1,399.29 |
| Baker Machinery | 3.53% | 10,667.52 |
| Patricia N. Coleman | 3.03% | 9,147.11 |
| Mina Innovative Arbitrage Fund | 0.00% | - |
| Tamara Maslenkova | 0.35% | 1,047.47 |
| RBC Alternative Assets | 40.67% | 122,881.18 |
| Concord Minutemen | 4.57% | 13,815.09 |
| Aegis Holdings Fbo Forrenstal | 14.34% | 43,328.83 |
| Armadillo Partners | 2.06% | 6,234.36 |
| Star Navigator | 1.30% | 3,921.46 |
| Steve Dabbah | 0.52% | 1,568.59 |
| Lobdell Capital Partners | 19.76% | 59,696.36 |
| | 100.00% | 302,110.39 |

**EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

LEHMAN BROTHERS INC.,

Debtor.

Case No. 08-01420 (SCC) SIPA

### [PROPOSED] ORDER GRANTING THE TRUSTEE'S OBJECTION TO
### THE PROOF OF CLAIM OF LOBDELL CAPITAL PARTNERS LP (CLAIM NO. 2387)

Upon the objection dated February 14, 2014 (the "Objection"),[1] of James W.

Giddens (the "Trustee"), as trustee for the liquidation of Lehman Brothers Inc. (the "Debtor" or

"LBI") under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. §§ 78aaa *et*

*seq.* ("SIPA"), seeking entry of an order, pursuant to section 502(b) of title 11 of the United

States Code (the "Bankruptcy Code"), as made applicable to this proceeding pursuant to sections

78fff(b) and 78fff-1(a) of SIPA, seeking to disallow and expunge the general creditor claim

represented by number 2387 (the "Claim") filed by Lobdell Capital Partners LP, as more fully

described in the Objection; and due and proper notice of the Objection having been provided,

and it appearing that no other or further notice need be provided; and the Court having found and

determined that the relief sought in the Objection is in the best interests of LBI, its estate, its

customers and creditors, and all parties in interest and that the legal and factual bases set forth in

the Objection establish just cause for the relief granted herein; and after due deliberation and

sufficient cause appearing therefor, it is

**ORDERED** that the relief requested in the Objection is granted; and it is further

---

1.  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Objection.

**ORDERED** that, pursuant to section 502(b) of the Bankruptcy Code, the Claim is

disallowed and expunged in its entirety with prejudice; and it is further

**ORDERED** that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.

Dated: New York, New York
         _____ __, 2014

_____
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE