HUGHES HUBBARD & REED LLP

One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of
Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>      LEHMAN BROTHERS INC.,<br><br>               Debtor. | Case No. 08-01420 (SCC) SIPA |

**TRUSTEE'S TENTH INTERIM REPORT FOR THE PERIOD**
**JUNE 15, 2013 THROUGH FEBRUARY 14, 2014**

All information in this Report is based on information available to the Trustee at this time, but this information may be incomplete and should not be relied upon. This Report is not meant to be relied upon by investors or others as a complete description of the LBI estate, its condition (financial or otherwise), prospects, assets, or liabilities. The information in this Report will be updated, including corrections, if any, in future reports to the Court. The information in this Report is not prepared in accordance with U.S. generally accepted accounting principles. The realized value of certain assets may be zero or different from the estimates on which this Report is based. Selected balances and information contained herein have not and will not be subject to audit or review by external accountants. The Trustee reserves all rights to revise this Report.

## **TABLE OF CONTENTS**

EXECUTIVE SUMMARY ................................................................................................1

I. FINANCIAL CONDITION OF ESTATE ......................................................................5

II. GENERAL CREDITOR CLAIMS ADMINISTRATION ............................................6

III. BARCLAYS CAPITAL INC. ....................................................................................12

IV. CUSTOMER CLAIMS DISTRIBUTIONS ................................................................13

V. RESOLVING THE REMAINING NON-AFFILIATE DISPUTED
      CUSTOMER CLAIMS............................................................................................14

VI. LEHMAN BROTHERS AFFILIATES ......................................................................16

VII. ADDITIONAL RECOVERY EFFORTS AND BANKING
      MATTERS ..............................................................................................................20

VIII. CONTINUING ADMINISTRATIVE AND DOCUMENT
      REQUEST MATTERS ...........................................................................................21

IX. TAX MATTERS ........................................................................................................23

X. PROFESSIONAL RETENTION AND ADMINISTRATIVE
      EXPENSES.............................................................................................................24

XI. CONCLUSION...........................................................................................................25

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Under this Court's supervision and the oversight of the Securities Investor Protection Corporation the Trustee made substantial progress towards completion of the liquidation during the Report Period.

Notably, the Trustee distributed more than thirteen billion dollars, putting the estate on the precipice of completing one hundred percent distributions to all allowed customer claimants. Distributions to date exceed one hundred five billion dollars, by far the largest customer distribution in history and the largest distribution of any kind across the worldwide Lehman insolvency proceedings.

The Trustee's immediate attention and the estate's effort is focused principally on administering the largest and most complex general estate claims process of any broker-dealer failure. The primary goal of this proceeding is to resolve general creditor claims as quickly as possible to effect general estate distributions, and bring the liquidation to a state of substantial completion.

By December 31, 2013 more than thirteen thousand claims asserting more than one hundred and twenty seven billion dollars had been determined as nineteen billion three hundred million dollars of allowed claims, with one thousand five hundred claims asserting one billion six hundred million dollars on objections before the Court, and forty-three hundred remaining unresolved claims seeking thirteen billion six hundred million dollars (excluding contingent and unliquidated amounts).

Progress continues around-the-clock, with an additional one thousand five hundred claims resolved or put before the Court since year end. Such progress is the essential step towards general estate distributions, because it is consistent with the law

1

and is the most efficient, certain, and fair method to all claimants of narrowing reserves. In that connection the Trustee is devoting immediate and substantial effort to resolving contingent and unliquidated claims, with emphasis on those asserting secured and priority status.

Of these the largest are claims asserted by Barclays Capital Inc. in the litigation pending in the United States Court of Appeals for the Second Circuit and in its recently filed administrative priority claim. Reserves for the former amount to more than one-third of the assets in the estate, and amounts Barclays purports to seek as administrative priority are unliquidated, potentially precluding any unsecured distribution. Barring quantification of these claims through ongoing discussions and information sharing with Barclays in the near term, further litigation may arise with Barclays.

In addition to claims resolution, the Trustee continues to maximize all available assets. During the Report Period the estate implemented a transparent and competitive strategy to liquidate securities through the Trustee's professionals at BlackRock Financial Management Inc. and Miller Buckfire & Co. LLC. This process has realized $7.2 billion to the fund of customer property and general estate. The Trustee continues to liquidate securities through at market sales and public auctions, with the goal of reducing the estate entirely to cash in the coming weeks.

Simultaneously the estate works to resolve the very few remaining affirmative affiliate and third-party claims. In addition, subject to SIPC supervision and in consultation with regulators, the Trustee is assessing what, if any, excess of customer property and post-petition dividends and interest may become available to the general

2

estate.

Throughout the case the Trustee has endeavored to keep all parties in interest fully informed on the progress of the liquidation.  This includes daily interactions with scores of customers and creditors, regular public notices on the Trustee's website, quarterly reporting on the general estate, and interim reports like this one.  It also has included unprecedented access and commitment of estate resources to Lehman Brothers Holdings, Inc. as the estate's largest creditor, and regular meetings and information sharing with professionals representing an ad hoc group of distressed investors holding recently purchased unsecured claims in this estate, and claims in the Chapter 11 reorganization.

This Report summarizes these and other of the Trustee's substantial activities and accomplishments during the Report Period for the benefit of customers and all other creditors in this liquidation, which the Court has called "perhaps the most successful in history."[1]  Among other matters, during the Report Period, the Trustee:

- Distributed more than $13 billion to securities customers;

- Allowed 217 non-affiliate general creditor claims asserting $671 million in amounts of $132.7 million;

- Obtained 222 voluntary claim withdrawals asserting approximately $5.7 billion and filed 100 omnibus and other objections contesting 3,199 general creditor claims, of which approximately $4.5 billion was expunged by the end of 2013;

- Conducted public sales of more than $7.2 billion of securities, including $2 billion of securities in the general estate, in an effort to reduce  the LBI estate to cash and

---

1.   *In re Lehman Bros. Inc.*, No. 08-01420 (Bankr. S.D.N.Y.), Tr. of Hr'g, Jan. 8, 2014, at 54:5–6.

3

maximize the value of the general estate;

- Successfully negotiated the withdrawal of more than $100 million of non-affiliate disputed customer claims;

- Achieved settlements with Lehman Brothers Securities N.V. ("LBS"), Lehman Brothers Luxembourg S.A. ("LBLux"), Lehman Brothers (Luxembourg) Equity Finance S.A. ("LBEF") and Lehman Brothers Japan Inc. ("LBJ"); and

- Achieved settlements in principle with Lehman Brothers Capital GmbH ("LB Capital"), Lehman Brothers Pte. Ltd. ("LBPL") and Lehman Brothers Securities Taiwan Ltd. ("LBSTL"), and continues to work with other Lehman affiliates to resolve their claims.

At all points the Trustee and his professionals have acted in close consultation with SIPC, which by statute oversees all aspects of the liquidation including administration of the general estate, and must by statute approve many Trustee decisions. The Trustee also regularly consults with the United States Securities and Exchange Commission, the Federal Reserve Bank of New York, the Commodity Futures Trading Commission, and the Financial Industry Regulatory Authority, and routinely updates Congressional Committees.

1.      James W. Giddens (the "Trustee"), as trustee for the liquidation of Lehman Brothers Inc. ("LBI") under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. §§ 78aaa *et seq.*,[2] respectfully submits this Tenth Interim Report (this "Report") in accordance with the terms of the Order of the Court entered on November 7, 2008 (ECF No. 241), and pursuant to SIPA § 78fff-1(c).

2.      This Report covers the period from June 15, 2013 through February 14, 2014 (the "Report Period").[3]

3.      All Interim Reports, along with a complete docket, regular progress updates, and substantial other information about this liquidation, may be downloaded from the Trustee's website, www.lehmantrustee.com.

## I. FINANCIAL CONDITION OF ESTATE

4.      For information relating to the LBI estate's financial condition, see Exhibit 1.  This financial information reflects cash, cash equivalents, and other short-term liquid assets in the amount of $13.002 billion and securities (valued as of December 31, 2013) in the amount of $149 million.  All of these assets are currently under the Trustee's control.  These amounts include reserves for the Barclays litigation and other matters, as well as for post-Filing Date dividends and interest.

5.      This information is based on a reasonable approximation of the current market value of securities held by the Trustee.  As with all other financial information in this Report, the value of the securities is only an estimate, is unaudited, is subject to revision, and should not be relied upon.  Market values of securities are based on nationally recognized pricing services.  Where current market value is unavailable, the security is valued at zero.

### Asset Realization

6.      Consistent with his statutory duty and ongoing focus to maximize the value of the general estate, and with the supervision and consent of the Securities Investor Protection Corporation ("SIPC") and in consultation with major creditor

---

2.   Subsequent references to SIPA throughout this Report will omit "15 U.S.C."

3.   Prior reports covered the periods from: September 19, 2008 through May 29, 2009 (the "First Interim Report," ECF No. 1151); May 30, 2009 through November 11, 2009 (the "Second Interim Report," ECF No. 2055); November 12, 2009 through May 10, 2010 (the "Third Interim Report," ECF No. 3244); May 11, 2010 through October 26, 2010 (the "Fourth Interim Report," ECF No. 3842, *corrected by* ECF No. 3864); October 27, 2010 through April 22, 2011 (the "Fifth Interim Report," ECF No. 4245); April 23, 2011 through October 21, 2011 (the "Sixth Interim Report," ECF No. 4657); October 22, 2011 through April 20, 2012 (the "Seventh Interim Report," ECF No. 5035); April 21, 2012 through October 24, 2012 (the "Eighth Interim Report," ECF. No. 5394); and October 25, 2012 through June 14, 2013 (the "Ninth Interim Report," ECF No. 6527).

constituencies, the Trustee has implemented a strategy to liquidate securities that are not being distributed in kind to customers.

7.      In 2013, the Trustee retained BlackRock Financial Management Inc. ("BlackRock") to assist with the sale of the more liquid securities in order to generate cash necessary to pay customers one hundred percent.  That process is now complete and resulted in sales totaling more than $7 billion. BlackRock executed sales to minimize market disruption and maximize value, with aggregate sales above the volume-weighted average price.

8.      During the Report Period the Trustee retained Miller Buckfire & Co., LLC ("Miller Buckfire") to help sell the approximately 3,000 remaining securities (i.e., general estate securities and certain securities in the fund of customer property that are not being returned in-kind to customers).  To maximize value and to ensure a transparent process, the Trustee directed that all of these sales be completely public and open to all potential bidders.  During the Report Period, Miller Buckfire, with the assistance of its affiliate, Stifel Fixed Income ("Stifel"), sold several hundred securities through "at market" sales and weekly auctions.  Through 2013 year-end, settled cash proceeds from securities in this portfolio totaled approximately $200 million with an additional $80 million of proceeds settling in 2014.  All Trustee notices regarding the disposition of the securities sold in this initial sale period are available at www.lehmantrustee.com.

9.      In the coming weeks Miller Buckfire and Stifel will commence a sale process to auction specified groups of securities.  (*See* Notice Regarding Disposition of LBI Estate Securities, dated February 12, 2014, attached hereto as Exhibit 2.)   In an effort to assist bidders with their diligence of the securities subject to auction and to ensure transparency, certain information will be posted to an Intralinks data room.  The first three categories of securities to be auctioned will be structured products, municipal bonds, and certain Lehman Brothers-issued securities, which are expected to be followed by auctions of bankruptcy escrow securities, corporate bonds, and preferred equity securities.  For each category, the pool of securities for sale will be delivered to the winning bidder in its entirety.  Following these public auctions, the Trustee will liquidate the remaining securities through further auctions and/or other equally public and transparent processes designed to maximize value to the general estate.

## II.  GENERAL CREDITOR CLAIMS ADMINISTRATION

### Overview

10.      As detailed in prior reports (*see* Eighth Interim Report ¶ 8; Ninth Interim Report ¶ 31), the prospect of any meaningful general estate is a recent and welcome development in this liquidation.  Large affiliate customer claims for the first four years of this case threatened to prevent any assets being available to general creditors.  However, with settlements in principle reached in October 2012, in keeping with SIPA and section 704(a)(5) of the Bankruptcy Code, the Trustee began a preliminary assessment, and with those settlements final, the administration of the general estate began in earnest in April, through the deployment of a strategic plan of pursuing

consensual resolution of claims through settlements and voluntary claim withdrawals, filing objections, and ascertaining the validity and amount of allowable claims.

11.    The progress over this period is unprecedented.  (See Exhibit 3.)  As of December 31, 2013, the Trustee had resolved or filed objections to approximately 9,000 claims involving approximately $114 billion (and contingent and unliquidated amounts). As of December 31, 2013, the Trustee had received approximately 13,390 general creditor claims asserting an aggregate amount of approximately $127 billion (excluding contingent and unliquidated amounts).[4]  The Trustee had allowed general creditor claims in the amount of approximately $19.34 billion.  As of December 31, 2013, there were approximately 4,390 remaining unresolved claims asserting an aggregate amount of approximately $13.6 billion (excluding contingent and unliquidated amounts), and approximately 1,500 claims asserting an aggregate amount of approximately $1.6 billion subject to objections pending before the Court.

12.    As of December 31, 2013, the approximate dollar amount of all allowed and unresolved claims and claims pending before the Court was $34.55 billion, not including remaining contingent and unliquidated amounts.  Since December 31, 2013, an additional 1,500 claims have been resolved or put before the Court, and the Trustee has embarked on a plan to determine the remaining 2,890 unresolved claims at a substantially similar pace in the coming weeks.

## Consensual Resolution of Claims (Settlements)

13.    The Trustee has made significant progress in achieving the consensual resolution of claims through settlements.  As of December 31, 2013, the Trustee had reached settlements of 222 non-affiliate claims asserted in an aggregate amount of approximately $1.2 billion and ultimately allowed in an aggregate amount of approximately $154.7 million.

14.    Apart from the general creditor claims administration—including as part of the resolution of disputed customer claims and the Trustee's efforts to recover funds through trade close-outs, unwinds, collections on customer receivables, avoidance and preference actions, and other recovery efforts to date—the Trustee had as of December 31, 2013 entered settlements involving another 215 non-affiliate general creditor claims asserted in an aggregate amount of approximately $3 billion and allowed in an aggregate amount of approximately $594 million.

15.    Since December 31, 2013, the Trustee settled an additional 61 claims, and reached an agreement in principle, subject to acceptable documentation and Court approval, of six claims that each seek approximately $75 million in damages under a guaranteed investment contract with LBI.  The proposed settlement will result in the allowance of a single general unsecured claim totaling $24 million, and the disallowance and expungement of five related claims totaling $377.5 million, with a reduction of the

---

4.    This figure includes claims filed as general creditor claims and customer claims reclassified and converted to general creditor claims.

aggregated asserted secured amount of unresolved claims by approximately $292 million. The Trustee is in advanced stages of negotiations with claimants with respect to numerous other non-affiliate general creditor claims.

## Consensual Resolution of Claims (Voluntary Withdrawals & Claim Reductions)

16.    As of December 31, 2013, the Trustee had obtained the voluntary withdrawal of 387 non-affiliate general creditor claims asserting an aggregate amount of approximately $13.8 billion and additional contingent and unliquidated amounts. In addition, the Trustee has obtained voluntary reductions of the asserted amounts of unresolved claims that seek invalid amounts such as punitive damages or post-petition interest. To date, the Trustee has worked with claimants to cap claims at amounts less than the asserted amounts by more than $1.3 billion in the aggregate, while the Trustee continues work to fully resolve these claims. The Trustee also has obtained the voluntary withdrawal of asserted secured status with respect to more than $100 million in asserted secured amounts to date.

## Objections and Contested Claims

17.    The Trustee had filed 187 omnibus and other objections to 7,553 non-affiliate general creditor claims asserting an aggregate amount of approximately $21.2 billion as of December 31, 2013. Since then, at least 24 additional objections have been filed. Of the 1,539 claims that are subject to objections pending before the Court to date, approximately 400 have been contested.

18.    The Trustee's omnibus objection to indemnity or contribution claims by underwriters of LBHI securities was resolved in the Trustee's favor after a hearing on January 8, 2014. The Court ruled that the claims, involving settlements and defense costs of more than $300 million in aggregate, were subject to mandatory subordination under section 510(b) of the Bankruptcy Code. (*See* Mem. Op. Authorizing and Directing the Subordination of Claims of Claren Road Credit Master Fund Ltd. and Certain Underwriters, ECF No. 8127.) On January 31, 2014, the Court entered an order confirming the Trustee's determination of these claims. (ECF No. 8177.) The claimants appealed the order on February 14, 2014. (ECF Nos. 8237, 8239.)

19.    More than 300 of the contested claims are subject to the Trustee's six omnibus objections seeking to subordinate claims filed by former employees of LBI or its predecessors seeking deferred compensation pursuant to the Executive and Select Employees Plan, which by its terms subordinates the claims. The Trustee filed a motion for entry of an order to convert the omnibus objections with respect to the responding claimants to a consolidated adversary proceeding and to establish related procedures (ECF No. 8196). A hearing to consider this motion will be heard on February 27, 2014. At least $200 million is dispute.

20.    The contested claim objections also include the Trustee's omnibus objection to forty-one claims that seek to recover alleged damages relating to auction rate securities ("ARS") with an aggregated asserted value of approximately $1 billion.

To date, the Trustee has settled fourteen of the ARS claims subject to the objection, asserting an aggregate amount of $378.3 million, for allowed amounts in an aggregate of approximately $10 million. Discussions progress with other ARS claimants contesting the objection.

21.     Another significant group of contested claims (the "Equity Awards Claims") is subject to omnibus objections seeking to disallow and expunge claims for restricted stock units, contingent stock awards, contingent equity awards, stock options, and/or other equity-based awards (together, the "Equity Awards"), all of which were granted to employees of LBI and other Lehman entities as part of their compensation and provided employees with the right to shares of LBHI common stock on a future date upon the satisfaction of certain conditions.

22.     These omnibus objections seek to disallow and expunge the Equity Awards Claims on the basis that ownership of the Equity Awards represents an equity interest in LBHI, not LBI. The Trustee also has received a number of responses to omnibus objections seeking to subordinate and reclassify as equity interests claims for the delivery of Equity Awards owed to the claimant as a result of claimant's employment with LBI or with other Lehman entities (the "Accrued Equity Claims") pursuant to section 510(b) of the Bankruptcy Code, as the Accrued Equity Claims are based on the alleged pre-Filing Date right to receive accrued equity in LBHI.

23.     The responding claimants argue that the Equity Awards and Accrued Equity Claims represent claims for compensation owed to former LBI employees, and, as such, should not be disallowed and expunged or subordinated and reclassified. The Trustee has adjourned the hearings on these contested claim objections until the Trustee has completed filing objections to all of the remaining Equity Awards and Accrued Equity Claims (many of which are hybrid claims with multiple components). At least $10 million is dispute.

24.     Additionally, on July 11, 2013, the Court issued a memorandum opinion granting the Trustee's objection to late-filed claims, holding that the six-month time limitation for filing claims in SIPA cases is mandatory and must be strictly construed. *In re Lehman Bros. Inc.*, 493 B.R. 437 (Bankr. S.D.N.Y. 2013).

**<u>Alternative Dispute Resolution/Mediation</u>**

25.     While the relative number of contested claim objections has been modest, in order to streamline and make more efficient the process for resolving disputed general creditor claims, the Trustee sought to have the Court establish claims hearing procedures and alternative dispute resolution ("ADR") procedures for general creditor claims (the "ADR Procedures"), and on September 26, 2013, the Court entered an order establishing the procedures proposed by the Trustee. (ECF No. 7351.)

26.     The Trustee currently is mediating a multi-million dollar securities claim under the ADR Procedures, and is mediating one of the largest filed ARS claims in a joint mediation with LBHI under the ADR procedures established in the chapter 11 case.

9

The mediations to date have been useful in addressing obstacles to claims resolution, and the Trustee anticipates invoking the mediation procedures for additional disputed claims in the future.

**Administrative Claims**

27.    To further progress administration of the general estate, on August 28, 2013, the Trustee filed a motion to establish an administrative bar date to allow the Trustee to fix the amount of administrative priority claims—claims arising under sections 365(d)(3), 365(d)(5), or 503(b)(1) through (8) of the Bankruptcy Code— incurred by the LBI estate from the Filing Date through August 31, 2013.  (ECF No. 7147.)[5]

28.    On September 19, 2013, the Court entered an order establishing October 31, 2013 at 5:00 p.m. as the deadline or the bar date (the "Administrative Bar Date") for asserting such administrative claims against the LBI estate (the "Bar Date Order," ECF No. 7288).[6]  In accordance with the Bar Date Order, and in line with the Trustee's expectations, a total of eight administrative expense claims asserted in an aggregate value of at least approximately $108 million were filed prior to the Administrative Bar Date.  This includes the specified claim of Barclays Capital of approximately $103 million and its asserted unliquidated and unspecified claims, as described in Section III.

29.    Thirty additional claims that were filed prior to the establishment of the Administrative Bar Date also assert status as administrative claims in some amount. Thirteen of these claims asserting approximately $118 million have been expunged to date.  Pursuant to the Bar Date Order, certain parties holding potential administrative expense claims were not required to file such claims prior to the Administrative Bar Date.

**Secured and Priority Claims**

30.    As of December 31, 2013, there were approximately 340 claims asserting secured amounts of approximately $944.6 million in the aggregate, not including contingent and unliquidated amounts.  The increase in the asserted amount of secured claims as compared to the Trustee's October 2013 Quarterly Report (ECF No. 7574) is attributable to a claim amendment filed by the IRS on December 10, 2013, asserting a secured claim in the amount of approximately $395 million, the majority of which is alleged to be consolidated federal income tax.  Pursuant to the Court-ordered settlement agreement between the LBI Trustee and the LBHI entities (ECF No. 6020), LBHI is responsible for consolidated federal income taxes.  The Trustee is coordinating the

---

5.   Because the Trustee has been conducting a SIPA liquidation, rather than operating an ongoing business, he believes that only a narrow group of vendors, service providers, professionals and the like have incurred allowed administrative expenses in accordance with the Bankruptcy Code against LBI since the Filing Date.

6.   The deadline for the United States and its agencies to submit such claims was extended to November 18, 2013, pursuant to General Order M-460 entered by the Court on October 1, 2013.

resolution of this claim with LBHI. Another approximately $292 million of the aggregate asserted secured amount is attributable to six claims as to which the Trustee has reached an agreement in principle, subject to acceptable documentation and Court approval. (*See supra* ¶ 15.) The majority of the remaining secured amount is attributable to approximately ten claims that the Trustee is addressing.

31.    There were 518 remaining unresolved claims asserting priority amounts of approximately $170 million in the aggregate as of December 31, 2013. This is a reduction from 692 unresolved claims asserting priority amounts of approximately $207 million as of the Trustee's October 2013 Quarterly Report. The $240 million priority amount allowed as of December 31, 2013 is attributable to the allowed general creditor claim under the Court-approved settlement agreement dated as of February 21, 2013, among the LBI Trustee and the LBHI entities (ECF No. 6020).

**Additional Progress to Date**

32.    Since December 31, 2013, the Trustee also has completed his review and analysis of approximately 700 claims that he has determined are not objectionable and should be deemed allowed pursuant to Bankruptcy Code section 502(a). The aggregate amount of these claims is $51.7 million. These claims fall into the following categories: foreign currency transactions, soft dollars, TBAs, accounts payable, and employee claims. These claims have not been reflected as allowed on the register, and will be disclosed in a filing before the Court in advance of any general estate distribution.

**Remaining Unresolved Claims**

33.    The approximately 2,890 general creditor claims that remain unresolved to date predominantly consist of the following types: (i) administrative expense claims, (ii) employee claims, (iii) breach of contract, fraud, or other tort claims, (iv) financial products claims, (v) claims for non-LBI securities, (vi) accounts payable claims, (vii) director and officer indemnification claims, (viii) underwriter indemnification claims, (ix) tax claims, (x) underwriting fee claims, and (xi) other miscellaneous claims.

34.    The Trustee is currently reviewing the remaining unresolved administrative expense claims and will object to such claims where appropriate.

35.    The Trustee has substantially completed his legal and factual analysis of the remaining unresolved employee claims, financial products claims, claims for non-LBI securities, accounts payable claims, director and officer indemnification claims, and tax claims. The Trustee is working to resolve outstanding issues with respect to these claims so that they may be resolved consensually, placed on objections to expunge or allow the claims in reduced amounts and priorities, or it may be determined that some should be deemed allowable pursuant to Bankruptcy Code section 502(a).

36.    The Trustee has analyzed each of the remaining unresolved breach of contract, fraud, and other tort claims, and each of the underwriter indemnification claims and is either (i) in negotiations to reach a consensual resolution of the claims, (ii)

11

continuing to seek additional documentation and information necessary to determine the validity or amount of the claims, and/or (iii) preparing objections to the claims.

**Contingent and Unliquidated Claims**

37.     In addition to Barclays' administrative claim of approximately $103 million and its asserted unliquidated and unspecified claims, as described in Section III, a significant portion of the claims that remain unresolved to date assert contingent and unliquidated amounts.  This effectively precludes a general estate distribution, and their review, analysis, and resolution is a high priority for the Trustee.

## III.  BARCLAYS CAPITAL INC.

38.     The Trustee's dispute with Barclays Capital Inc. ("Barclays") over approximately $8 billion of "Disputed Assets" remains one of the primary obstacles to the final resolution of the LBI estate and the allocation and distribution of property to general creditors.[7]  The Trustee continues to maintain a significant reserve for this dispute.  As noted, it amounts to approximately one-third of the assets under the Trustee's control.

39.     Following 34 days of evidentiary hearings and arguments in the Bankruptcy Court, and extensive briefing and oral argument in the District Court, this vigorously contested matter was appealed to the United States Court of Appeals for the Second Circuit.  The Bankruptcy Court trial, the District Court appeal and the Second Circuit appeal have been discussed in previous interim reports.  (*See* Trustee's Seventh Interim Report § VIII; Trustee's Eighth Interim Report § VII; Trustee's Ninth Interim Report § IX.)

40.     On September 10, 2013, the parties advised the Second Circuit that, based on the Trustee's determination that he would be able to satisfy all allowed customer claims in full, the Trustee had paid Barclays the $769 million in Rule 15c3-3 Assets, thereby rendering Barclays' cross-appeal concerning those assets moot.  The Trustee has reduced the amount reserved for the litigation accordingly.

41.     The issues that currently remain pending before the Second Circuit consist of the Trustee's appeal from the District Court's opinion (i) affirming the award of Clearance Box Assets to Barclays, and (ii) reversing the Bankruptcy Court's judgment in favor of the Trustee and awarding the Margin Assets to Barclays.

42.     On October 30, 2013, one day before the bar date for administrative expense claims, Barclays filed an administrative expense claim against the LBI estate. In addition to seeking approximately $103 million in assets held by the estate, Barclays

---

7.   The Disputed Assets consist of: assets in LBI's Rule 15c3-3 customer reserve accounts (the "Rule 15c3-3 Assets"), margin and other assets that secured the exchange-traded derivatives that Barclays acquired in the sale (the "Margin Assets"), and certain assets in LBI's clearance boxes at the Depository Trust & Clearing Corporation (the "Clearance Box Assets").

also asserted "an unliquidated claim in an undetermined amount" for any other amounts that might be due to Barclays as part of the September 2008 sale of LBI assets to Barclays.

43.     The Trustee is working with Barclays in an attempt to narrow and quantify Barclays' unliquidated, indeterminate, and so far largely unsubstantiated administrative expense claim on a consensual basis.  As part of this effort, the Trustee is engaged in continuing discussions with Barclays and has provided Barclays with information that he believes should enable Barclays to clarify and define its claim.

44.     The Trustee seeks to consensually quantify Barclays' administrative expense claim in order to avoid the cost and delay of litigation.  However, because Barclays' claim stands as an obstacle to general estate distributions and to the substantial completion of the liquidation, the Trustee insists that this be resolved.  Accordingly, if the parties are unable to reach agreement in the coming weeks, additional litigation with Barclays may arise.

## IV.  CUSTOMER CLAIMS DISTRIBUTIONS

45.     During the Report Period, the Trustee effectuated one hundred percent distributions totaling more than $13 billion in cash and securities (valued as of September 19, 2008) to over 300 customer claimants with allowed net equity customer claims.  As detailed in the Trustee's allocation papers (ECF No. 4760, as updated and supplemented by ECF Nos. 5058, 5685, 5790), the Trustee also distributed post-Filing Date income ("PFI") to these claimants and to claimants who previously had received securities.

46.     As of December 31, 2013, the remaining unsatisfied allowed customer claims had a total value of approximately $335 million.  (*See* Exhibit 1).  Customer distributions have continued in 2014, reducing the total remaining allowed unsatisfied customer claim total to approximately $210 million as of the filing of this Report.  The remaining unsatisfied, allowed customer claims primarily relate to portions of claims otherwise subject to unresolved objections (*see* Section V), or liens asserted by Lehman Brothers International (Europe) ("LBIE").

47.     The Trustee worked closely with customer claimants and their banks and brokerage firms to reconcile the distribution amount and complete the transfer of property to them.  In one instance, where discussions with the customer regarding the appropriate distribution of its claim reached an impasse, the Trustee moved to confirm the Trustee's net equity valuation and method for satisfaction of an allowed customer claim (ECF No. 7754).  That matter is currently pending before the Court.

48.     In August 2013 the Trustee moved for and the Court approved procedures to expedite and conclude distributions to customer claimants.  (ECF Nos. 7144, 7287.)  Most customer claimants have since returned the documentation necessary to effectuate distributions, and other claims have been expunged pursuant to the Court's Order.  (ECF No. 8168.)  The Trustee is engaged with the remaining claimants with pending

13

objections to the Trustee's claim allowance, whether to the amount allowed or otherwise.

## V.  RESOLVING THE REMAINING NON-AFFILIATE DISPUTED CUSTOMER CLAIMS

49.     The Trustee is urgently pressing to resolve the remaining non-affiliate disputed customer claims.  The Trustee maintains reserves for all disputed customer claims, including the remaining non-affiliate claims (*see* Exhibit 1), which the Trustee monitors and adjusts as claims are litigated or otherwise resolved.  For information on the Trustee's claims adjudication procedures, see the Fourth Interim Report paragraphs 43-46.

### Repurchase Transactions
(35 remaining claims; approximately $325 million claimed)

50.     As detailed in previous reports, the Trustee has denied customer treatment to claims arising out of repurchase ("repo") agreements entered into with LBI.  Repos are contractual financing arrangements and these claims are for breach damages, rather than claims arising out of customer relationships.  The claims have been re-classified as claims against the general estate of LBI.  Currently, there are thirty-five objections pending (representing approximately $325 million in total value) that were filed by repo counterparties objecting to the Trustee's determination.  Of these, twenty-four claims totaling approximately $281 million (five of them, totaling approximately $198 million by the Test Case Claimants referred to below) arose from repo and reverse repo transactions that were "open" as of LBI's Filing Date.

51.     As previously reported, the Trustee and certain repo claimants with the largest claims by dollar amount (the "Test Case Claimants") have been litigating the question of whether repo claims are entitled to customer status.  The Trustee filed his motion to uphold his determination of the claims filed by the Test Case Claimants on April 6, 2012 ("Repo Motion," ECF No. 5007).  The Bankruptcy Court issued a memorandum decision granting the Trustee's Motion on June 25, 2013 (ECF No. 6594, published at *In re Lehman Bros., Inc.*, 492 B.R. 379 (Bankr. S.D.N.Y. 2013)).  On July 15, 2013, the Court entered an Order confirming the Trustee's determination (ECF No. 6791).  The Test Case Claimants filed notices of appeal from the Bankruptcy Court's decision.  (ECF Nos. 6793, 6885.)  The appeals have been consolidated and assigned to the Honorable Denise L. Cote of the United States District Court for the Southern District of New York.  Briefing on the appeals is complete, and the matter is *sub judice* in the District Court.

52.     In addition, as previously reported, the Trustee has filed a separate stipulation with certain other repo claimants who have filed objections but are not participating in the litigation with the Test Case Claimants (the "Non-Participating Claimants").  This stipulation binds the Trustee and the Non-Participating Claimants to any legal rulings made by the Bankruptcy Court or any appellate court with respect to the Test Case Claimants, except where the court expressly provides that its rulings shall

14

not apply to the Non-Participating Claimants, and requires the Trustee to offer any settlement to the Non-Participating Claimants on no less favorable terms than the terms, if any, offered to the Test Case Claimants, unless different settlement terms are justified by legal or factual distinctions.

**TBA and Forward Transactions**
(138 remaining claims; approximately $155.6 million claimed)

53.     Pursuant to the Court's Order Confirming the Trustee's Determination of Claims Related to TBA Contracts ("TBA Order," ECF No. 4814), during the Report Period, the Trustee resolved 342 claim objections based on unperformed forward contracts for the future purchase or sale of "to-be-announced" U.S. agency debt obligations ("TBA Contracts") as well as damages arising from unperformed forward contracts for the future purchase or sale of U.S. Treasury instruments ("Treasury Forwards").

54.     The Trustee is actively resolving the remaining twelve claim objections based on TBA Contracts and fifty-nine claim objections based on Treasury Forwards. With respect to sixty-seven claim objections with respect to collateral related to TBA Contracts or Treasury Forwards, the Trustee has undertaken substantial legal and factual research and anticipates resolving these claims by agreement, and if not, through litigation.

**Miscellaneous**
(4 remaining claims; approximately $38.5 million in dispute)

55.     The Trustee denied customer status to hundreds of claims because the claims were (i) not based on a relationship with LBI; (ii) based on an account that was empty as of the Filing Date; (iii) based on wages and compensation allegedly owed by LBI; or (iv) based on an account that transferred pursuant to the Court's December 14, 2009 Order Approving the Account Transfers.  (ECF No. 2338; *see also In re Lehman Brothers Inc.,* Case No. 1:10-cv-05740-RJS (S.D.N.Y. June 1, 2010).)  Many of the objections received in response to these determinations contended that the claimant is entitled to loss in value of their property suffered as a result of the Lehman collapse or alleged misconduct by LBI personnel prior to the Filing Date.  For further information on these categories of claims and objections, see the Fifth Interim Report paragraphs 56-61.

56.     In the Report Period, the Trustee filed a motion to uphold his determination to subordinate a customer claim for damages arising from LBI's failure to complete an agreement to buy certain LBHI bonds the last trading day before LBHI went bankrupt.  (ECF No. 7539.)  After a hearing on the matter, on January 27, 2014, the Court issued a memorandum opinion approving the Trustee's interpretation of section 510(b) of the Bankruptcy Code and subordinating the claim.  (ECF No. 8127.) On January 31, 2014, the Court entered an order confirming the Trustee's determination of the claim.  (ECF No. 8176.)  The claimant appealed the order on February 10, 2014. (ECF No. 8212.)

57.    During the Report Period, the Trustee also successfully negotiated the withdrawal of five objections with an approximate value of $100 million.  (*See e.g.*, ECF No. 7051.)  Of the hundreds of claims originally asserted, only four remain.  The Trustee has contacted these claimants in an attempt to resolve the remaining objections, if possible, without litigation.

### Foreign Currency Transactions (FX)
(2 remaining claims; approximately $12.2 million claimed)

58.    The Trustee has resolved nineteen claims based on foreign currency transactions totaling more than $154 million and two claims by a single entity remain. The Trustee is currently litigating these claims, and is engaged in discovery which is scheduled to conclude in the first quarter of 2014.

## VI.  LEHMAN BROTHERS AFFILIATES

59.    The Trustee made considerable progress in resolving affiliate claims during the Report Period.  As described in greater detail below, there are several settlements in principle that are in various stages of completion which, if completed, will dramatically reduce LBI's exposure to unresolved affiliate general creditor claims. Exhibit 3 incorporates approximately $3.7 billion of unresolved affiliate general creditor claims.  Assuming that all affiliate settlements in principle are consummated and become effective, the Trustee currently anticipates that the remaining unresolved affiliate claims will be resolved for less than $1.2 billion.

### Affiliate Claims – Resolved

60.    The Trustee resolved the principal Lehman affiliate claims, with claim amounts asserted among the various parties well in excess of $100 billion.  As the Court previously noted, the Trustee's settlements with LBHI and with LBIE in particular "represent[ed] a comprehensive consensual resolution of one of the most complex matters ever to be resolved in history, frankly, at least in the commercial sense."[8] During the Report Period the Trustee negotiated and documented additional settlements that resolved the larger of the remaining affiliate claims.

*Lehman Brothers Holdings Inc.*

61.    The settlement agreement among the Trustee and the LBHI Entities (the "LBI-LBHI Settlement Agreement") became effective on June 7, 2013.  (*See* ECF No. 6020.)  The Trustee has now completed the transfer of virtually all of the cash and securities in respect of the approximately $2 billion customer claim allowed under the LBI-LBHI Settlement Agreement.

---

8.    Tr. of Hr'g, Apr. 16, 2013, 41:23–42:1 (ECF No. 6124).

*Lehman Brothers International (Europe)*

62.     Following the settlement agreement (the "LBI-LBIE Settlement Agreement") among the Trustee, LBIE and its Joint Administrators, which became effective on June 7, 2013, the Trustee and his professionals have worked with LBIE and its professionals to effectuate the distribution of cash and securities to LBIE in accordance with the LBI-LBIE Settlement Agreement.  Through this process, the Trustee and LBIE have substantially resolved the remaining issues between the parties, including with respect to the logistics of the transfers and certain tax issues.  The Trustee has now completed the transfer of virtually all of the cash and securities under the LBI-LBIE Settlement Agreement.

63.     On October 7, 2013 the Trustee asked the Court to unseal certain schedules to the LBI-LBIE Settlement Agreement that were filed under seal with the Trustee's motion seeking approval of the settlement and expungement of certain duplicative claims.  (ECF No. 5787.)  Those schedules were unsealed by the Court on November 14, 2013.  (ECF No. 5823.)

*Lehman Brothers Securities N.V. (Netherlands Antilles (Curaçao))*

64.     The Trustee successfully negotiated and documented an agreement with the liquidators of Lehman Brothers Securities N.V. ("LBS") to settle and resolve all claims between LBI and LBS.  The settlement resolved LBS's customer claim, which LBS asserted has a value of approximately $10.9 million.  The settlement allowed LBS a customer claim of approximately $2.4 million.  The Court entered an order approving the settlement with LBS on July 18, 2013.  The order became final and non-appealable on August 1, 2013.

*Lehman Brothers Luxembourg S.A. and Lehman Brothers (Luxembourg) Equity Finance S.A.*

65.     The Trustee successfully negotiated and documented an agreement with the joint liquidators of Lehman Brothers Luxembourg S.A. ("LBLux") that settles and resolves all claims between LBI and LBLux.  The settlement resolves LBLux's general creditor claim, which LBLux asserted had a total value of approximately $13 billion. The settlement allows LBLux an unsecured non-priority general creditor claim of $158 million.  The Court entered an order approving the settlement with LBLux on July 17, 2013 and the order became final and non-appealable on August 1, 2013.  The settlement is now effective.

66.     The Trustee also successfully negotiated and documented an agreement with the joint liquidators of Lehman Brothers (Luxembourg) Equity Finance S.A. ("LBEF") to resolve all claims between LBI and LBEF, including LBEF's remaining customer claim, which LBEF asserted had a total value of approximately $78 million. The settlement allows LBEF a customer claim of $5 million.  The Court entered an order approving the settlement with LBEF on July 17, 2013 and the order became final and non-appealable on August 1, 2013.  The settlement is now effective.

17

*Lehman Brothers Japan*

67.     The Trustee negotiated and documented an agreement with the liquidators of Lehman Brothers Japan Inc. ("LBJ") and five other Japan-based affiliates (together, the "Japanese Entities") that settles and resolves all claims between LBI and the Japanese Entities.  The settlement resolves both the Japanese Entities' customer and general creditor claims, which the Japanese Entities asserted have a total value of approximately $543 million.  The settlement allows LBJ two customer claims with a total approximate value of $59 million and six unsecured non-priority general creditor claims with a total approximate value of $457 million.  The settlement also provides a proprietary claim for LBI against LBJ and the return of certain assets from LBJ and three Japanese exchanges.  The total recovery for LBI is valued at approximately $173 million as of January 16, 2014.  The Trustee filed a motion seeking approval of the settlement on January 24, 2014 (ECF No. 8118).  A hearing was held, and an Order approving the settlement was entered on February 7, 2014 (ECF No. 8202).  The settlement will become effective after the time to appeal the Order runs and Barclays provides a release letter to LBJ as contemplated by the settlement.

## Affiliate Claims – Resolved In Part or In Principle

68.     The following claims in aggregate involve several billion dollars of claims among LBI and these affiliates.  Their resolution in principle is significant progress toward substantial completion of the liquidation.

*Lehman Brothers Capital GmbH and Lehman Brothers Bankhaus AG (Germany)*

69.     The Trustee successfully negotiated an agreement in principle with the insolvency administrator of Lehman Brothers Capital GmbH ("LB Capital") to settle all claims between LBI and LB Capital.  No details about the agreement in principle are available at this time, and there is no assurance that an agreement among the parties will be consummated.

70.     As reported previously, the Trustee negotiated and documented a settlement with the insolvency administrator of Lehman Brothers Bankhaus AG (In Insolvenz) ("Bankhaus") to settle all claims between LBI and Bankhaus, including the German affiliate's asserted customer claims.  The proposed settlement resolves Bankhaus' asserted customer and general creditor claim.  The proposed settlement allows Bankhaus an unsecured non-priority general creditor claim of $550 million. The Trustee filed a motion seeking approval of the settlement on November 29, 2012.  (ECF No. 5493.)  LBHI filed an objection to the Trustee's motion on April 5, 2013.  The Trustee, Bankhaus, and LBHI continue to have discussions, which the Trustee believes will resolve the objection.

*Lehman Brothers Hong Kong Affiliates*

71.     The Trustee successfully negotiated an agreement in principle with the liquidators of the Hong Kong-based Lehman affiliates.  The proposed settlement resolves all claims between LBI and the twelve separate foreign LBI affiliate entities

18

under the control of the Hong Kong liquidators. The complex agreement in principle is subject to various approvals, including by the Bankruptcy Court. Because of confidentiality agreements between the parties, no details about the agreement in principle are available at this time and there is no assurance that an agreement among the parties will be consummated.

72.   On January 21, 2014, the Hong Kong court held a hearing concerning the enforceability of extended lien provisions in connection with the distribution of trust assets held by the Hong Kong affiliates. On January 23, 2014, the court issued a letter stating its intent to enter an order resolving these issues. The Trustee expects to execute a definitive agreement with the Hong Kong affiliates shortly after the Hong Kong court enters the expected order resolving the Hong Kong extended lien issues.

*Lehman Brothers Singapore Affiliates*

73.   The Trustee successfully negotiated an agreement in principle with the joint liquidators of Lehman Brothers Pte. Ltd. ("LBPL") to resolve all claims between LBI and LBPL, including LBPL's general creditor claims against LBI and LBI's trust and non-trust claims against LBPL. Because of confidentiality agreements between the parties, no details about the agreement in principle are available at this time and there is no assurance that an agreement among the parties will be consummated.

74.   The Trustee successfully negotiated an agreement in principle with the joint liquidators of Lehman Brothers Securities Taiwan Limited ("LBSTL") to resolve all claims between LBI and LBSTL, including LBI's asserted claim against LBSTL. The agreement in principle is subject to various approvals, including by the Bankruptcy Court. No details about the agreement in principle are available at this time, and there is no assurance that an agreement among the parties will be consummated.

75.   The Trustee continues to negotiate the resolution of the claims between LBI and the remaining fourteen Singapore-based affiliates, including Lehman Brothers Singapore Pte. Ltd., Lehman Brothers Finance Asia Pte. Ltd., Lehman Brothers Commodities Pte. Ltd., and Lehman Brothers Securities Pte. Ltd. The Trustee believes that considerable progress is being made. The Trustee's professionals are in regular contact with the liquidators of the Singapore affiliates and have agreed on the values of claims. The parties are working to complete the documentation for allowance of the various claims and the Trustee is hopeful that agreements can be executed in the next several months.

## Affiliate Claims – Continuing Efforts to Resolve

76.   The following claims involve several hundred million dollars of claims among LBI and these affiliates. On balance, the Trustee believes that the reconciliation and netting of these claims will result in much lower amounts at issue; nevertheless, the Trustee is aggressively pursuing their resolution in keeping with the effort to bring the estate to substantial completion.

*Lehman Brothers Australia Securities Pty Limited*

77.    The Trustee's professionals met with the professionals of Lehman Brothers Australia Securities Pty Limited ("LBAS") to discuss the status of claims between LBI and LBAS.  The Trustee sent a draft settlement agreement to LBAS on January 9, 2014 and is awaiting its response.  Based on current exchange rates, the Trustee expects to recover less than $22,000 from LBAS.

78.    The Trustee continued discussions during the Report Period with Lehman Brothers Australia Limited to advance the reconciliation process.  The Trustee expects the outcome of this process to be de minimis.

*Lehman Re (Bermuda)*

79.    Lehman Re filed an unsecured general creditor claim seeking an unspecified amount related to damages allegedly incurred from LBI's breach of a certain Master Repurchase Agreement between the parties and other intercompany receivables. On July 31, 2013, Lehman Re submitted an amended claim that asserted the claim was valued at $195 million.  The Trustee believes that Lehman Re overstated the value of its claim and is gathering evidence in support of that position.

*Lehman Brothers Europe Limited, Lehman Brothers Limited, and LB UK Re Holdings Limited (United Kingdom)*

80.    The Trustee is monitoring the proceedings of three U.K.-based affiliates: Lehman Brothers Europe Limited ("LBEL"), Lehman Brothers Limited ("LBL"), and LB UK Re Holdings Limited ("LB UK") (collectively, the "U.K. Entities").  The U.K. Entities filed general creditor claims against LBI, and LBI has claims against LBEL and LBL, including an asserted claim in the amount of approximately $116 million against LBEL.  On December 6, 2013, the Trustee received a distribution in the amount of approximately $10 million from LBEL.  To date, the Trustee has received a total of approximately $51 million in distributions from LBEL.

## VII.  ADDITIONAL RECOVERY EFFORTS AND BANKING MATTERS

81.    The Trustee collected approximately $167 thousand from close-outs and unwinds during the Report Period.  Details regarding the Trustee's close-out and unwind efforts, and procedures for reconciling and collecting amounts due to the LBI estate, are available in the Fourth Interim Report paragraphs 135-39.  The Trustee also collected approximately $54 million in customer receivables over the course of the liquidation. The Trustee has resolved ninety-seven percent of the preference claims held by the LBI estate, resulting in recoveries of approximately $4.4 million.  Only three preference claims remain.  In his effort to resolve them without the time and expense of litigation, the Trustee has amended the original Tolling and Forbearance agreements for two entities subject to suit and hopes to resolve these preference claims on a consensual basis if possible.  In addition, the Trustee commenced one preference action in the Report Period, and that matter is pending before the Court.

82.     The Trustee is pursuing the recovery of assets that are held by non-affiliate broker-dealers in Taiwan, South Korea and Malaysia.  The recovery of these exchange traded derivative assets has been complicated by local regulatory and/or legal barriers to the return of the assets.  As a result, the amount and timing of any recovery is not currently known.

83.     In accordance with the Stipulation and Order between LBHI and the Trustee With Respect to Joint Claims Asserted and Joint Adversary Proceedings Commenced Pursuant to Bankruptcy Code Sections 544, 547, 548 and 550 (ECF No. 3664), the Trustee continues to confer with LBHI regarding settlements affecting both LBI's and LBHI's interests in preferential transfers.

**Banking Matters**

84.     During the Report Period, the Trustee continued to work to transfer into his accounts at Union Bank, N.A. all remaining U.S. dollar and foreign currency balances held in legacy LBI bank accounts maintained at domestic and overseas banks and to close such accounts.  With the exception of certain accounts that remain linked to securities positions (which are in the process of being closed as the securities linked to such accounts are transferred to the Trustee's custody account at The Bank of New York Mellon) and certain accounts that remain open for administrative or related reasons, all legacy LBI bank accounts have been closed and the balances therein transferred to the Trustee.

## VIII.   CONTINUING ADMINISTRATIVE AND DOCUMENT REQUEST MATTERS

**Adversary Proceedings**

85.     The Trustee continues to enforce the automatic stay provisions of 11 U.S.C. § 362 and the LBI Liquidation Order with respect to new complaints that name LBI as a defendant but are filed outside the Bankruptcy Court in violation of the stay.  In most of these instances the Trustee has obtained dismissal of the action as against LBI.  For more information on this topic, see the Seventh Interim Report paragraphs 109-13.

**Government and Third Party Investigations**

86.     The Trustee continues to meet and coordinate regularly with regulators, including in particular the Securities and Exchange Commission.

87.     The flow of other requests to the Trustee for historical LBI information from dozens of federal, state, and local government agencies continues.  Cooperation with investigations by these agencies is of paramount importance to the Trustee and SIPC.  In addition, the Trustee has received and is responding in due course to a number of nonparty subpoenas issued in connection with various litigations and arbitrations around the United States.  Together, the Trustee has made a total of over 880 document productions in response to these governmental and non-party requests.  These productions represent a volume of documents over two million pages, in addition to 220

gigabytes of data in electronic form.  Notwithstanding an appreciation for regulators'
and litigants' need for LBI historical information, the productions continue to be a
significant expense for the LBI estate.

**Trustee's Investigation**

88.    The Trustee issued his Preliminary Investigation Report and
Recommendations ("Preliminary Report," ECF No. 3604) on August 25, 2010.  The
Preliminary Report addressed the broad topics of (i) the causes of LBI's demise and the
events and transactions that preceded it, (ii) challenges that have arisen in the largest
broker-dealer liquidation in history, and (iii) lessons learned from the LBI liquidation and
legislative, regulatory, and other policy recommendations for the future.  For additional
details about the Trustee's investigation, see the Seventh Interim Report Section XIII.
The Trustee may file a final report at the conclusion of the liquidation.

**Return of Misdirected Wires**

89.    The Trustee continues to receive and investigate requests for the return of
funds misdirected into LBI bank accounts.  For information regarding court-authorized
procedures implemented by the Trustee relating to the misdirected funds return process,
see the Sixth Interim Report paragraph 138.  As of March 29, 2013, the Trustee has
returned 951 individual wires, aggregating approximately $611 million, including $28
million returned in total during this Report Period.[9]  (*See* Exhibit 4.)

**Internal Controls, Bookkeeping, and Data Management**

90.    The Trustee employs administrative professionals who monitor estate
assets and who have established daily, monthly and ad hoc processes for this purpose.
These professionals rely on established controls for the payment and journaling of all
expenses, including recording payment instructions and supporting documentation,
reviewing time-entry diaries, and assessing the reasonableness of rates and bills for
services performed.  Accounting functions include reconciling cash balances and
securities positions on a daily basis, generating financial information for tax reporting,
processing journal entries to record transactions related to securities and cash
movements authorized by the Trustee, and providing the Trustee with point-in-time
information regarding the assets under his control.  These professionals also coordinate
with Bank of New York Mellon and Broadridge, key service providers for the LBI
estate,  and implement controls for securities held in the Trustee's vault.  For more
information regarding the Trustee's internal controls and bookkeeping, see the Eighth
Interim Report paragraphs 93-97.

91.    Consistent with the LBI Liquidation Order, which authorized the Trustee
to take possession of LBI's books and records (LBI Liquidation Order ¶ XIV, ECF No.
1), the Trustee has collected a vast amount of historical LBI data and migrated it to his

---

9.    Requests for returns of pre-petition transfers of misdirected funds are generally treated as bankruptcy
      claims subject to reconciliation in the General Creditor Claim process.

own information infrastructure. For more information regarding the Trustee's use and collection of data, see the Sixth Interim Report Section XV.

**Insurance**

92.     The Trustee has analyzed available insurance policies under which the LBI estate or customers could benefit to determine their applicability, including an excess surety bond issued to LBI by the Customer Asset Protection Company ("CAPCO"). The Trustee has conferred during the course of the liquidation with representatives of CAPCO and provided information, as requested and appropriate, regarding the progress of the customer claims process in connection with the excess surety bond. Because all allowed customers net equity claims will be paid in full, there should be no need for recourse by customers to the CAPCO bond.

## IX.  TAX MATTERS

93.     The Trustee's professionals continue to (i) monitor federal, state, and local tax audits, assessments and claims, (ii) respond to tax-related information requests from international, federal, state, and local authorities, and (iii) coordinate all tax reporting requirements with respect to LBI and the Trustee.

**The Lehman Consolidated and Combined Groups**

94.     Prior to the Commencement Date, and during the course of the SIPA Proceeding, LBI has been included in the consolidated federal income tax returns filed by the affiliated group of which LBHI is the common parent (the "Lehman Consolidated Group") and in similar continued groups for New York State and City and Florida.

95.     Under the terms of the LBI-LBHI Settlement Agreement, LBHI will indemnify LBI against all consolidated and combined tax ("Group Tax") liabilities for any periods (past, current, or future) during which LBI is a member of a combined or consolidated group with LBHI and/or any of its related Debtors. LBHI will continue to be responsible for filing Group Tax returns, and will also be responsible for managing any audits or disputes with respect to such taxes, and for any costs associated with such audits or disputes. Finally, LBHI will be entitled to any refunds or credits relating to Group Tax filings. As contemplated under the LBI-LBHI Settlement Agreement, on November 20, 2013 LBI ceased to be a member of the Lehman Consolidated Group.

**Tax Audits and Refund Claims**

96.     *Federal: general*. On December 10, 2013, the IRS filed amended proofs of claim in both the LBI and the LBHI proceedings totaling approximately $394 million, representing a reduction from the originally-filed claim, which had totaled approximately $2 billion. The reduction reflects (i) certain settlements between LBHI and the IRS with respect to consolidated income tax liabilities, and (ii) offsets by the IRS of certain non-consolidated taxes and penalties against a refund owed by the IRS to LBI. As noted above, under the terms of the LBI-LBHI Settlement Agreement, LBI will pay no portion of the claim that represents the Lehman Consolidated Group's

consolidated federal income tax liability (approximately $390 million). The non-consolidated income tax portion of the amended claim totals approximately $4.6 million, and approximately $2 million of the refund remains available for offset against this amount.

97.     *State and local: general.*  State and local tax claims filed in the SIPA Proceeding amounted to approximately $700 million. As of the date of this Report, settlements or withdrawals of claims have reduced the total claims to approximately $28 million. The Trustee's professionals are reviewing, analyzing and reconciling these claims for purposes of allowing, reducing or expunging, or disallowing the claims, as appropriate.

98.     *State and local audits: New Jersey.*  The State of New Jersey timely filed claims against LBI totaling approximately $25 million for corporate business tax and sales and use tax for pre-Filing Date periods. The Trustee filed a return for New Jersey corporation business tax for tax year 2007 that served as a claim for a refund of $6.6 million dollars, due to an overpayment of estimated taxes by LBI with respect to that tax year. The Trustee's tax professionals are finalizing a settlement with the State of New Jersey to resolve the State's claims and the refund request.

**Ongoing Compliance**

99.     The Trustee's professionals continue to work with LBHI's representatives to perform all required consolidated and combined tax filing requirements. Deloitte Tax continues to assist the Trustee in complying with all income tax filing requirements in jurisdictions where LBI files separate returns, and with all other tax filing requirements, including but not limited to sales and rent tax, in all jurisdictions, as well as all required information reporting, including any reporting that may be required with respect to distributions made by the Trustee.

## X.  **PROFESSIONAL RETENTION AND ADMINISTRATIVE EXPENSES**

100.     At the request of and in consultation with SIPC, nearly every professional firm and consultant retained by the Trustee has agreed to a voluntary public interest discount of at least ten percent or more from standard rates and has further agreed not to charge for a number of categories of expenses regularly paid to professionals in large bankruptcy proceedings, including overtime meals and after-hour travel services. In keeping with the SIPA statute, the services and fees of all professionals are closely reviewed by SIPC.

101.     During the Report Period, the Trustee continued to take measures to reduce the estate's costs for staff, infrastructure, and office expense. The Trustee negotiated further discounts from third-party vendors and other service providers in connection with documentation retention, and storage and technology necessary to facilitate distributions to customers and analyze general creditor claims. The Trustee further reduced transitional services paid to Barclays by over eighty percent. In addition, several estate professionals completed their assignments during the Report

Period, including special counsel Menaker & Herrmann LLP (ECF No. 7958) and Luxembourg special counsel Bonn Steichen & Partners (ECF No. 8164).

102. Administrative expenses disbursed as of December 31, 2013 total $1,056,864,000. Professional and consulting fees since the Filing Date in 2008 total $924,821,000 including $558,234,000 for Deloitte & Touche LLP and $296,177,000 for Hughes Hubbard & Reed LLP. Transitional services total $84,664,000 paid to Barclays and LBHI. The LBHI transition services agreement terminated under its terms on June 2, 2012. Rent, data storage, and other operational costs total $32,794,000.

## XI.  CONCLUSION

The foregoing report represents a summary of the status of this proceeding and the material events that have occurred from June 15, 2013 through February 14, 2014. It will be supplemented and updated with further interim reports.


Dated:  New York, New York
February 14, 2014

Respectfully submitted,

HUGHES HUBBARD & REED LLP


By:___/s/ James B. Kobak, Jr.___
A member of the firm

One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of
Lehman Brothers Inc.

# EXHIBIT 1

All information in this Report is based on information available to the Trustee at this time, but this information may be incomplete and should not be relied upon. This Report is not meant to be relied upon by investors or others as a complete description of the LBI estate, its condition (financial or otherwise), prospects, assets, or liabilities. The information in this Report will be updated, including corrections, if any, in future reports to the Court. The information in this Report is not prepared in accordance with U.S. generally accepted accounting principles. The realized value of certain assets may be zero or different from the estimates on which this Report is based. Selected balances and information contained herein have not and will not be subject to audit or review by external accountants. The Trustee reserves all rights to revise this Report.

**LEHMAN BROTHERS INC.**
**Summary of Assets**[1]
**As of December 31, 2013**

| Unaudited (USD in millions) | Fund of Customer Property | | General Estate | | Total | |
| --- | --- | --- | --- | --- | --- | --- |
| | Number of CUSIPs | Market Value | Number of CUSIPs | Market Value | Number of CUSIPs | Market Value |
| Cash and Cash Equivalents | | $         3,267 | | $         3,994 | | $         7,261[2] |
| Securities | 2,455 | 93[3][4] | 1,043 | 56[3] | 3,498 | 149[3] |
| **Total Assets** | | $         3,360 | | $         4,050 | | $         7,410[5] |

1. Assets as approved by the Court's April 16, 2013 Allocation Order (the "Allocation Order," ECF No. 6023). Future recoveries and release of reserves will accrete to the general estate. For example, the Trustee's recent settlement with Lehman Brothers Japan Inc., approved by the Court on February 7, 2014 (see Section VI of the Report), is expected to provide a recovery to the general estate of approximately $173 million. Differences from the Quarterly Report on the General Creditor Claims Process for the Period Ending September 30, 2013 (the "Second Quarterly Report," ECF No. 7574) are attributable to a number of factors, including proceeds from the sale of general estate securities (many of which had pricing included in prior reports' totals), disbursements, and reconciliation of assets properly part of the fund of customer property.

2. Assets do not include a separate cash reserve of $4.503 billion for the Barclays litigation and a separate cash reserve of $1.238 billion for post-petition dividends and interest. The post-petition dividends and interest reserve was not allocated under the Allocation Order. The Trustee anticipates filing a motion in the near future to allocate a portion of the post-petition dividends and interest reserve to the general estate.

3. Market values of securities, where available, were calculated as of December 31, 2013 using nationally recognized pricing services. Where pricing data from nationally recognized pricing services is unavailable, the security is valued at zero for the purposes of this Report. Subsequent valuations in future periods, in light of factors then prevailing, may result in significant changes in the values of these securities. At the time of any sales and settlements of securities, prices ultimately realized will depend on the demand and liquidity in the market at that time and may be materially higher than zero for some securities and higher or lower than current market values for other securities. The Trustee is now implementing a strategy to liquidate the remaining securities in the general estate, along with securities in the fund of customer property that are not being distributed in-kind to customers. Public notices regarding this transparent, open process are available at www.lehmantrustee.com.

4. Includes securities with a market value of approximately $87 million expected to be returned to customers in-kind through the customer claim distribution process.

5. Pursuant to 15 U.S.C. § 78fff-(2)(c)(1), customer property remaining after all customers are paid in full, if any, shall become part of the general estate. Due to ongoing litigation, assertions of liens, and other factors final customer distributions may not occur for many months. Until all disputed and contingent customer claims are resolved, the total customer obligations remain uncertain. The Trustee, in consultation with the Securities Investor Protection Corporation ("SIPC") and regulators, will continue to assess customer claim reserves to the extent it is possible to allocate any potential excess customer property to the general estate prior to a final customer distribution.

**The information and data included in this exhibit are derived from sources available to the Trustee and his professionals. This exhibit is based on the information available at this time. All amounts are unaudited, subject to revision, and should not be relied upon.**

**LEHMAN BROTHERS INC.**
**Fund of Customer Property**
**As of December 31, 2013**

Unaudited (USD in millions)

| | | |
|---|---|---|
| Customer Assets as Approved by the Allocation Order, Less Customer Distributions to Date | $ | 3,360 |
| Unsatisfied, Allowed Customer Claims[1] | | 335 |
| Reserves for Disputed Customer Claims[2] | | 716 |
| Contingencies[3] | | Unknown |

1.  Since December 31, 2013, as a result of ongoing distributions to customers this number has decreased to approximately $210 million. The remaining unsatisfied, allowed customer claims primarily relate the to portions of claims that are otherwise subject to unresolved objections or liens asserted by Lehman Brothers International (Europe).
2.  Includes reserves for the remaining non-affiliate disputed customer claims discussed in Section V of the Report, the remaining unresolved affiliate customer claims discussed in Section VI of the Report, and related customer claim contingencies.
3.  Customer distributions involve final reconciliations and accounting roll forwards up to the date of distribution to claimants.  The distribution process is therefore subject to market fluctuation, corporate actions, as well as valuation and other reconciliations.  Disputed claims are subject to ongoing litigation.  The Trustee must additionally reserve for these contingencies, some of which are unliquidated. Accordingly, the amounts ultimately needed for customer claim distributions may be materially higher, and this Report should not be relied upon to calculate potential customer excess or for any other purpose.

**The information and data included in this exhibit are derived from sources available to the Trustee and his professionals.  This exhibit is based on the information available at this time.  All amounts are unaudited, subject to revision, and should not be relied upon.**

# Financial Condition of the Estate – Summary of Securities on Hand as of December 31, 2013

|  | Number of CUSIPS (1) | Number of Shares / Par Value | Market Value (USD) |
|---|---|---|---|
| **BNYM** | | | |
| Corporate Equities | 2,080 | 241,502,959 | 114,406,426 |
| Corporate Bonds | 173 | 1,674,966,729 | 9,419,270 |
| Mortgage and asset-backed securities | 26 | 352,324,786 | 35,517 |
| Government and Agency Bonds | 21 | 500,458 | 422,147 |
| Other | 595 | 1,476,085,064 | - |
| Treasury Notes | 11 | 4,777,189,000 | 4,783,976,700 |
| | | | |
| **Union Bank** | | | |
| Corporate Equities | 1 | 32 | 1,210 |
| Mortgage and asset-backed securities | 6 | 1,707 | 1,870 |
| | | | |
| **Other  (DTC, Vault and Money Markets)** | | | |
| Corporate Equities | 153 | 39,742,741 | 24,289,791 |
| Corporate Bonds (2) | 3 | 13,343,784 | - |
| Mortgage Backed Securities | 84 | 28,170,838 | 108 |
| Other (2) | 141 | 760,083,046 | - |
| | | | |
| **TOTAL** | **3,294** | **9,363,911,144** | **4,932,553,039** |

(1) Total CUSIPs will not agree to details of securities on hand schedules as this schedule shows CUSIPs by location. Note that there may be the same CUSIPs at multiple locations.
   Further the sum of customers and general estate securities will not agree to this schedule as the same CUSIPs may be allocated to customers as well as general estate.
(2) Includes foreign securities for which market values are not available.

**The information and data included in this exhibit are derived from sources available to the Trustee and his professionals. This exhibit is based on the information available at this time. Market values of securities are calculated by the Trustee's professionals using nationally recognized pricing services. Where market data is not available within 30 days of the report date, the security is valued at zero. All amounts are unaudited, subject to revision, and should not be relied upon.**

# Details of Securities on Hand – Corporate Equities as of December 31, 2013
# Fund of Customer Property

| | Number of CUSIPS | Number of Shares | Market Value(USD) |
|---|---|---|---|
| **By Industry** | | | |
| Basic Materials | 70 | 724,705 | 269,775 |
| Communications | 145 | 7,569,217 | 3,038,662 |
| Consumer,cyclical | 118 | 16,151,006 | 6,453,046 |
| Consumer, Non-cyclical | 268 | 4,573,291 | 3,286,060 |
| Energy | 66 | 8,037,439 | 1,343,107 |
| Financial | 129 | 32,047,744 | 45,420,033 |
| Funds | 45 | 9,407,377 | 14,588,112 |
| Industrial | 119 | 3,814,119 | 3,345,815 |
| Technology | 87 | 1,504,568 | 8,513,122 |
| Utilities | 10 | 24,121 | 120,933 |
| Other | 693 | 15,206,116 | 1,505,234 |
| **Total** | **1,750** | **99,059,703** | **87,883,899** |
| | | | |
| **By Region** | | | |
| United States | 1,319 | 66,021,817 | 73,366,273 |
| Asia | 36 | 4,477,783 | 756,175 |
| Canada | 88 | 419,427 | 27,731 |
| Europe | 25 | 618,928 | 400,906 |
| Latin America | 31 | 20,187,953 | 3,922,434 |
| Other | 251 | 7,333,795 | 9,410,380 |
| **Total** | **1,750** | **99,059,703** | **87,883,899** |
| **By Ranking** | | | |
| Common | 1,704 | 95,128,597 | 48,258,567 |
| Preferred | 46 | 3,931,106 | 39,625,332 |
| **Total** | **1,750** | **99,059,703** | **87,883,899** |

| **Concentration (by Market Value)** | | | |
|---|---|---|---|
| Top 5 CUSIPS | | 11,133,157 | 63,775,152 |
| Top 20 CUSIPs | | 31,417,013 | 81,875,391 |
| # of CUSIPs representing 20% of Equity Portfolio | 1 | | |

**The information and data included in this exhibit are derived from sources available to the Trustee and his professionals. This exhibit is based on the information available at this time. Market values of securities are calculated by the Trustee's professionals using nationally recognized pricing services. Where market data is not available within 30 days of the report date, the security is valued at zero. All amounts are unaudited, subject to revision, and should not be relied upon.**

4

# Details of Securities on Hand – Corporate Equities as of December 31, 2013
# General Estate

| | Number of CUSIPS | Number of Shares | Market Value(USD) |
|---|---|---|---|
| **By Industry** | | | |
| Basic Materials | 34 | 735,051 | 490,670 |
| Communications | 96 | 49,895,255 | 662,473 |
| Consumer,cyclical | 66 | 2,730,712 | 44,271,800 |
| Consumer, Non-cyclical | 84 | 1,520,815 | 1,044,769 |
| Energy | 23 | 614,975 | 108,295 |
| Financial | 82 | 3,145,593 | 302,859 |
| Funds | 1 | 4 | 116 |
| Industrial | 53 | 2,453,484 | 2,350,790 |
| Technology | 37 | 7,602,433 | 1,551,023 |
| Utilities | 6 | 172,331 | 1,504 |
| Other | 160 | 113,315,376 | 29,229 |
| **Total** | **642** | **182,186,029** | **50,813,528** |
| | | | |
| **By Region** | | | |
| United States | 435 | 64,281,672 | 44,621,219 |
| Asia | 18 | 880,793 | 2,288,887 |
| Canada | 30 | 1,386,070 | 1,305,315 |
| Europe | 37 | 97,415,195 | 224,878 |
| Latin America | 28 | 2,667,219 | 2,373,229 |
| Other | 94 | 15,555,080 | - |
| **Total** | **642** | **182,186,029** | **50,813,528** |
| **By Ranking** | | | |
| Common | 603 | 180,004,668 | 8,074,224 |
| Preferred | 39 | 2,181,361 | 42,739,304 |
| **Total** | **642** | **182,186,029** | **50,813,528** |

| **Concentration (by Market Value)** | | | |
|---|---|---|---|
| Top 5 CUSIPS | | 1,686,328 | 48,113,224 |
| Top 20 CUSIPs | | 3,051,497 | 50,670,783 |
| # of CUSIPs representing 20% of Equity Portfolio | 1 | | |

**The information and data included in this exhibit are derived from sources available to the Trustee and his professionals. This exhibit is based on the information available at this time. Market values of securities are calculated by the Trustee's professionals using nationally recognized pricing services. Where market data is not available within 30 days of the report date, the security is valued at zero. All amounts are unaudited, subject to revision, and should not be relied upon.**

# Details of Securities on Hand – Corporate Bonds as of December 31, 2013
# Fund of Customer Property

| | AA- or Better | A- to A+ | BBB- to BBB+ | B- to BB+ | C- to CCC+ | DDD+ to D- | Not Rated/Not Available | Total |
|---|---|---|---|---|---|---|---|---|
| **CUSIP** | - | - | - | 2 | - | - | 79 | **81** |
| **Par Value** | - | - | - | 6,117,000 | - | - | 1,463,117,195 | **1,469,234,195** |
| **Market Value** | - | - | - | 3,277,803 | - | - | 1,240,886 | **4,518,689** |

| | Investment Grade | | | Non-Investment Grade | | | Not Rated/Not Available | | |
|---|---|---|---|---|---|---|---|---|---|
| **By Industry** | Number of CUSIPs | Par Value | Market Value (USD) | Number of CUSIPs | Par Value | Market Value (USD) | Number of CUSIPs | Par Value | Market Value (USD) |
| Basic Materials | - | - | - | - | - | - | 3 | 5,637,500 | 4 |
| Communications | - | - | - | - | - | - | 11 | 842,673,287 | - |
| Consumer,cyclical | - | - | - | - | - | - | 14 | 11,825,822 | - |
| Consumer, Non-cyclical | - | - | - | - | - | - | 5 | 3,885,200 | - |
| Energy | - | - | - | 2 | 6,117,000 | 3,277,803 | 1 | 300 | - |
| Financial | - | - | - | - | - | - | 7 | 5,664,200 | 1,240,879 |
| Other | - | - | - | - | - | - | 38 | 593,430,886 | 3 |
| **Total** | **-** | **-** | **-** | **2** | **6,117,000** | **3,277,803** | **79** | **1,463,117,195** | **1,240,886** |
| **By Region** | | | | | | | | | |
| United States | 41 | 860,441,745 | 28,381 | | | | | | |
| Canada | 2 | 37,800 | 4 | | | | | | |
| Europe | 2 | 9,600,000 | 1,212,500 | | | | | | |
| Latin America | 7 | 6,438,235 | 3,277,802 | | | | | | |
| Other (Incl. Asia) | 29 | 592,716,415 | - | | | | | | |
| **Total** | **81** | **1,469,234,195** | **4,518,689** | | | | | | |

| Concentration (by Market Value) | Number of CUSIPs | Par Value | Market Value (USD) |
|---|---|---|---|
| Top 5 CUSIPs | | 11,182,900 | 4,518,685 |
| Top 5 CUSIPs represent 99% of Market Value | | | |

**The information and data included in this exhibit are derived from sources available to the Trustee and his professionals. This exhibit is based on the information available at this time. Market values of securities are calculated by the Trustee's professionals using nationally recognized pricing services. Where market data is not available within 30 days of the report date, the security is valued at zero. All amounts are unaudited, subject to revision, and should not be relied upon.**

# Details of Securities on Hand – Corporate Bonds as of December 31, 2013
# General Estate

| | AA- or Better | A- to A+ | BBB- to BBB+ | B- to BB+ | C- to CCC+ | DDD+ to D- | Not Rated/Not Available | Total |
|---|---|---|---|---|---|---|---|---|
| **CUSIP** | 1 | - | 1 | 3 | - | - | 106 | **111** |
| **Par Value** | 400 | - | 100 | 179,000 | - | - | 218,896,818 | **219,076,318** |
| **Market Value** | 398 | - | 104 | 156,860 | - | - | 4,743,219 | **4,900,581** |

| By Industry | Investment Grade Number of CUSIPs | Par Value | Market Value (USD) | Non-Investment Grade Number of CUSIPs | Par Value | Market Value (USD) | Not Rated/Not Available Number of CUSIPs | Par Value | Market Value (USD) |
|---|---|---|---|---|---|---|---|---|---|
| Basic Materials | - | - | - | 1 | 110,000 | 85,250 | 2 | 1,152,786 | - |
| Communications | 1 | 100 | 104 | - | - | - | 8 | 29,984,961 | 287,650 |
| Consumer,cyclical | - | - | - | 1 | 44,000 | 46,860 | 10 | 62,071,640 | - |
| Consumer, Non-cyclical | - | - | - | - | - | - | 11 | 8,632,554 | 70,733 |
| Energy | - | - | - | - | - | - | 1 | 858,708 | - |
| Financial | 1 | 400 | 399 | - | - | - | 11 | 5,950,841 | - |
| Other | - | - | - | 1 | 25,000 | 24,750 | 63 | 110,245,328 | 4,384,836 |
| **Total** | **2** | **502** | **503** | **3** | **179,000** | **156,860** | **106** | **218,896,818** | **4,743,219** |
| **By Region** | | | | | | | | | |
| United States | 37 | 53,631,159 | 3,933,766 | | | | | | |
| Canada | 2 | 45,507,000 | - | | | | | | |
| Europe | 5 | 2,625,000 | 85,250 | | | | | | |
| Latin America | 6 | 8,667,126 | 298,900 | | | | | | |
| Other (Incl. Asia) | 61 | 108,646,033 | 582,665 | | | | | | |
| **Total** | **111** | **219,076,318** | **4,900,581** | | | | | | |

| Concentration (by Market Value) | Number of CUSIPs | Par Value | Market Value (USD) |
|---|---|---|---|
| Top 5 CUSIPs | | 709,000 | 496,448 |
| Top 20 CUSIPs | | 2,959,510 | 526,995 |
| # of CUSIPs representing 20% of Corporate Bonds Portfolio | 1 | | |

The information and data included in this exhibit are derived from sources available to the Trustee and his professionals. This exhibit is based on the information available at this time. Market values of securities are calculated by the Trustee's professionals using nationally recognized pricing services. Where market data is not available within 30 days of the report date, the security is valued at zero. All amounts are unaudited, subject to revision, and should not be relied upon.

7

# Details of Securities on Hand – Mortgage and Asset-Backed Securities as of December 31, 2013

## Fund of Customer Property

| | AA or Better | A to A+ | BBB- to BBB+ | B- to BB+ | C+ to CCC- | DDD+ to D | Not Rated/Not Available | Total |
|---|---|---|---|---|---|---|---|---|
| CUSIP | - | - | - | - | - | 1 | 93 | **94** |
| Par Value | - | - | - | - | - | 1,900,000 | 92,774,086 | **94,674,086** |
| Market Value | - | - | - | - | - | - | 37,388 | **37,388** |

| | Investment Grade | | | Non-Investment Grade/Default | | | Not Rated/Not Available | | |
|---|---|---|---|---|---|---|---|---|---|
| | Number of CUSIPs | Par Value | Market Value (USD) | Number of CUSIPs | Par Value | Market Value (USD) | Number of CUSIPs | Par Value | Market Value (USD) |
| ABS | - | - | - | - | - | - | 6 | 51,769,701 | - |
| CDO/CLO, CMBS, Other | - | - | - | - | - | - | - | - | - |
| CMO | - | - | - | - | - | - | 75 | 828,073 | - |
| MBS | - | - | - | 1 | 1,900,000 | - | 12 | 40,176,313 | 37,388 |
| Total | - | - | - | **1** | **1,900,000** | - | **93** | **92,774,086** | **37,388** |

| Concentration (by Market Value) | Number of CUSIPs | Par Value | Market Value (USD) |
|---|---|---|---|
| Top 5 CUSIPs | | 33,407 | 37,358 |
| Top 5 CUSIPs represent 99% of Market Value | | | |

**The information and data included in this exhibit are derived from sources available to the Trustee and his professionals. This exhibit is based on the information available at this time. Market values of securities are calculated by the Trustee's professionals using nationally recognized pricing services. Where market data is not available within 30 days of the report date, the security is valued at zero. All amounts are unaudited, subject to revision, and should not be relied upon.**

8

# Details of Securities on Hand – Mortgage and Asset-Backed Securities as of December 31, 2013

## General Estate

| | AA or Better | A to A+ | BBB- to BBB+ | B- to BB+ | C+ to CCC- | DDD+ to D | Not Rated/Not Available | Total |
|---|---|---|---|---|---|---|---|---|
| **CUSIP** | - | - | - | - | 1 | - | 19 | **20** |
| **Par Value** | - | - | - | - | - | - | 285,823,247 | **285,823,247** |
| **Market Value** | - | - | - | - | - | - | 108 | **108** |

| | Investment Grade | | | Non-Investment Grade/Default | | | Not Rated/Not Available | | |
|---|---|---|---|---|---|---|---|---|---|
| | Number of CUSIPs | Par Value | Market Value (USD) | Number of CUSIPs | Par Value | Market Value (USD) | Number of CUSIPs | Par Value | Market Value (USD) |
| **ABS** | - | - | - | 1 | - | - | 11 | 274,763,315 | - |
| **MBS** | - | - | - | - | - | - | 3 | 4,000,000 | - |
| **CMO** | - | - | - | - | - | - | 2 | 37,312 | 108 |
| **Other** | - | - | - | - | - | - | 3 | 7,022,620 | - |
| **Total** | - | - | - | 1 | - | - | 19 | 285,823,247 | 108 |

| Concentration (by Market Value) | Number of CUSIPs | Par Value | Market Value (USD) |
|---|---|---|---|
| Top 5 CUSIPs | | 48,459,920 | 108 |
| Top 5 CUSIPs represent 100% of Market Value | | | |

**The information and data included in this exhibit are derived from sources available to the Trustee and his professionals. This exhibit is based on the information available at this time. Market values of securities are calculated by the Trustee's professionals using nationally recognized pricing services. Where market data is not available within 30 days of the report date, the security is valued at zero. All amounts are unaudited, subject to revision, and should not be relied upon.**

9

# Details of Securities on Hand– Government and Agencies as of December 31, 2013
# Fund of Customer Property

| | No Maturity | Less Than 1 year | 1 – 5 years | 5 – 10 years | > 10 years | Matured | Total |
|---|---|---|---|---|---|---|---|
| **US Government** | | | | | | | |
| Number of CUSIPs | - | - | - | - | 2 | - | **2** |
| Par value | - | - | - | - | 47,160 | - | **47,160** |
| Market Value | - | - | - | - | 52,399 | - | **52,399** |
| **Latin America** | | | | | | | |
| Number of CUSIPs | - | - | - | - | 5 | 1 | **6** |
| Par value | - | - | - | - | 17,278 | 5,500 | **22,778** |
| Market Value | - | - | - | - | 70 | 4,256 | **4,326** |
| **Other** | | | | | | | |
| Number of CUSIPs | 2 | - | 1 | 1 | 3 | - | **7** |
| Par value | 101,700 | - | 75,000 | 1,250 | 100,002 | - | **277,952** |
| Market Value | | | 84,750 | 309 | 134,211 | - | **219,270** |
| **Total** | | | | | | | |
| Number of CUSIPs | 2 | - | 1 | 1 | 10 | 1 | **15** |
| Par Value | 101,700 | - | 75,000 | 1,250 | 164,440 | 5,500 | **347,890** |
| Market Value | - | - | 84,750 | 309 | 186,680 | 4,256 | **275,996** |

| Concentration (by Market Value) | Number of CUSIPs | Par Value | Market Value (USD) |
|---|---|---|---|
| Top 5 CUSIPs | | 249,659 | 275,996 |
| Top 5 CUSIPs represent 100% of Market Value | | | |

**The information and data included in this exhibit are derived from sources available to the Trustee and his professionals. This exhibit is based on the information available at this time. Market values of securities are calculated by the Trustee's professionals using nationally recognized pricing services. Where market data is not available within 30 days of the report date, the security is valued at zero. All amounts are unaudited, subject to revision, and should not be relied upon.**

10

# Details of Securities on Hand– Government and Agencies as of December 31, 2013

# General Estate

| | No Maturity | Less Than 1 year | 1 – 5 years | 5 – 10 years | > 10 years | Matured | Total |
|---|---|---|---|---|---|---|---|
| **US Government** | | | | | | | |
| Number of CUSIPs | - | - | - | - | - | - | - |
| Par value | - | - | - | - | - | - | - |
| Market Value | - | - | - | - | - | - | - |
| | | | | | | | |
| **Latin America** | | | | | | | |
| Number of CUSIPs | - | - | - | - | - | 1 | **1** |
| Par value | - | - | - | - | - | 65,500 | **65,500** |
| Market Value | - | - | - | - | - | 50,690 | **50,690** |
| | | | | | | | |
| **Other** | | | | | | | |
| Number of CUSIPs | - | - | - | 2 | - | 2 | **4** |
| Par value | - | - | - | 86,067 | - | 1,001 | **87,068** |
| Market Value | - | - | - | 95,460 | - | - | **95,460** |
| | | | | | | | |
| **Total** | | | | | | | |
| Number of CUSIPs | - | - | - | 2 | - | 3 | **5** |
| Par Value | - | - | - | 86,067 | - | 66,501 | **152,568** |
| Market Value | - | - | - | 95,460 | - | 50,690 | **146,150** |

| Concentration (by Market Value) | Number of CUSIPs | Par Value | Market Value (USD) |
|---|---|---|---|
| Top 5 CUSIPs | | 152,567 | 146,150 |
| Top 5 CUSIPs represent 100% of Market Value | | | |

**The information and data included in this exhibit are derived from sources available to the Trustee and his professionals. This exhibit is based on the information available at this time. Market values of securities are calculated by the Trustee's professionals using nationally recognized pricing services. Where market data is not available within 30 days of the report date, the security is valued at zero. All amounts are unaudited, subject to revision, and should not be relied upon.**

11

**EXHIBIT 2**

## Sixth Notice Regarding Disposition of LBI Estate Securities – February 12, 2014

James W. Giddens, Trustee for the liquidation of Lehman Brothers Inc. ("LBI") under the Securities Investor Protection Act, in keeping with his statutory duty and ongoing focus of maximizing the value of the LBI general estate, along with his counsel at Hughes Hubbard & Reed LLP, continues to implement a strategy to liquidate securities and raise cash for distributions to customers and general creditors.

With the advice and consent of the Securities Investor Protection Corporation and in consultation with advisors to major creditor constituencies, the Trustee retained Miller Buckfire & Co., LLC and Stifel Fixed Income to help sell all remaining securities.

In October, Miller Buckfire and Stifel Fixed Income began selling individual securities at the market and through four weekly auctions designed to maximize proceeds to the LBI estate. Through 2013 year-end, settled proceeds from securities in this portfolio total approximately $200 million ("Phase 1"), with approximately $80 million of additional proceeds settling in 2014.  The Phase 1 process is now complete.

Miller Buckfire and Stifel Fixed Income will now begin a process where pools of securities are sold through several rounds of auctions. The pool based marketing process will be competitive, transparent, and designed to maximize value for the LBI estate.

- Miller Buckfire/Stifel will introduce multiple pools of securities to the market at the same time. The first pools of securities to be sold are listed in Exhibit A. Winners will be announced the Monday following the close of the auction period.
- Bidders will bid on the entire pool. All securities will be delivered to the winning bidder. Securities will be delivered to the winning bidder as quickly as the satisfaction of potential administrative issues allow. The Trustee, Miller Buckfire and Stifel make no representation as to the transferability or ability to register sold securities in a specific timeframe.
- A list of the pool's securities will be made publicly available at the beginning of each auction period, the duration of which will be two or three weeks depending on the pool.
- The pools will have reserve prices set at the discretion of the Trustee and Miller Buckfire/ Stifel.

The commencement of the pooled auctions and composition of the pools may be adjusted from time to time. Sales inquiries can be made to:

<table>
<tr><td>Al Lhota</td><td>Matthew Stewart</td></tr>
<tr><td>Senior Managing Director</td><td>Vice President</td></tr>
<tr><td>alan@stifel.com</td><td>stewartma@stifel.com</td></tr>
<tr><td>T: 203-717-6524</td><td>T: 203-717-6483</td></tr>
</table>

**Media Contact for the Trustee**
Jake Sargent
jsargent@apcoworldwide.com
T: 202-569-5086

THE SECURITIES SOLD IN ANY AUCTION HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), AND MAY NOT BE OFFERED OR SOLD IN THE UNITED STATES OR TO, OR FOR THE BENEFIT OF, U.S. PERSONS ABSENT REGISTRATION UNDER, OR AN APPLICABLE EXEMPTION FROM, THE REGISTRATION REQUIREMENTS OF THE ACT AND APPLICABLE STATE SECURITIES LAW.  THIS PRESS RELEASE DOES NOT CONSTITUTE AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY THE AUCTION SECURITIES, AND SHALL NOT CONSTITUTE AN OFFER, SOLICITATION OR SALE IN ANY JURISDICTION IN WHICH, OR TO ANY PERSONS TO WHOM, SUCH OFFERING, SOLICITATION OR SALE WOULD BE UNLAWFUL.

Exhibit A

| Pool | Dates |
| --- | --- |
| Structured Products | Tuesday, February 18 – Friday, February 28 |
| Municipal Bonds | Tuesday, February 18 – Friday, February 28 |
| Lehman Paper | Tuesday, February 18 – Friday, February 28 |
| Bankruptcy Escrows | Monday, March 3 – Friday, March 21 |
| Corporate Bonds | Monday, March 3 – Friday, March 21 |
| Preferred Equities | Monday, March 3 – Friday, March 21 |

**EXHIBIT 3**

**LEHMAN BROTHERS INC.**

**Illustrative General Creditor Claims Exposure • Does Not Include Contingent and Unliquidated Amounts (*see* Report § II)**

**As of December 31, 2013**

| Unaudited (USD in millions) | Secured[2] | | Admin | | Priority | | Unsecured | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|
| | No. of Claims | Amount | No. of Claims | Amount | No. of Claims | Amount | No. of Claims | Amount | No. of Claims | Amount |
| Claims as Asserted[1] | 1,279 | $ 9,331.7 | 38 | $ 246.0 | 1,412 | $ 4,356.7 | 9,949 | $ 113,815.9 | 13,388 | $ 127,289.8 |
| Resolved Claims[3] | 457 | 8,024.8 | 13 | 118.2 | 711 | 4,149.6 | 5,149 | 99,889.4 | 7,460 | 112,072.6 |
| Claims Subject to Objections Pending Before the Court[4] | 480 | 362.3 | – | – | 183 | 37.2 | 1,276 | 1,498.5 | 1,536 | 1,611.4 |
| Unresolved Claims | 342 | $ 944.6 | 25 | $ 127.8 | 518 | $ 169.9 | 3,524 | $ 12,428.0 | 4,392 | $ 13,605.8 |
| | | | | | | | | | | |
| Claims Exposure: | | | | | | | | | | |
| Claims Allowed or Settled[5] | – | $ – | 2 | $ 0.3 | 16 | $ 240.0 | 754 | $ 19,092.4 | 838 | $ 19,332.7 |
| Claims Subject to Objections Pending Before the Court[4] | 480 | 362.3 | – | – | 183 | 37.2 | 1,276 | 1,498.5 | 1,536 | 1,611.4 |
| Unresolved Claims | 342 | 944.6 | 25 | 127.8 | 518 | 169.9 | 3,524 | 12,428.1 | 4,392 | 13,605.9 |
| Total | 822 | $ 1,306.9 | 27 | $ 128.1 | 717 | $ 447.1 | 5,554 | $ 33,019.0 | 6,766 | $ 34,550.0 |

1. Includes both affiliate and non-affiliate claims. Asserted claim amounts (secured, priority, administrative, unsecured, and total) are based on the B-10 forms as filed and in most cases do not ascribe value to unliquidated amounts. Certain claims are asserted for some combination or all of secured, priority, administrative, and unsecured status. Accordingly, total asserted amounts may not foot to a sum of the individual columns listing secured, priority, administrative, and unsecured status. For customer claims reclassified and converted to general creditor claims, asserted amounts are a preliminary data capture based on SIPC customer claim forms and are included in the aggregate asserted amounts; on the claims register, reclassified claim amounts are listed as unspecified even where the claimant listed a specific amount on the SIPC customer claim form. In some cases, the preliminary data capture has been corrected since the Trustee's October 2013 Quarterly Report (ECF No. 7574). Other differences between this Report and the Trustee's October 2013 Quarterly Report are due to a number of factors, including partial transfers of claims, disputed customer claims that have been resolved and become general creditor claims, and the establishment of the October 31, 2013 Administrative Bar Date (*see* Report § II). Disputed customer claims with unresolved objections may become part of the general creditor claims population; they are not included in these figures. Pursuant to the Administrative Claim Bar Date Order, certain parties holding potential administrative expense claims were not required to file such claims prior to the Administrative Claim Bar Date.
2. The increase in the asserted amount of secured claims as compared to the Trustee's October 2013 Quarterly Report is attributable to a claim amendment filed by the IRS on December 10, 2013, asserting a secured claim in the amount of approximately $395 million, the majority of which is alleged to be a consolidated federal income tax claim. Pursuant to the Court-ordered settlement agreement between the LBI Trustee and the LBHI entities (the "LBI-LBHI Settlement Agreement," *see* ECF No. 6020), LBHI is responsible for consolidated federal income taxes. The Trustee is coordinating with LBHI on the resolution of this claim.
3. Consists of 6,577 disallowed or expunged claims asserted in an aggregate amount of $50.7 billion (as reflected on the next slide), 838 allowed or settled claims asserted in an aggregate amount of $61.3 billion and ultimately allowed or settled in an aggregate amount of $19.3 billion, and 45 claims asserted in an aggregate amount of $7.6 million reclassified to equity interests that will not receive distributions.
4. Includes 197 claims subject to objections before the Court seeking to allow the claims in reduced amounts and priorities.
5. Does not include $14.189 billion of allowed subordinated claims under the settlement agreement with LBHI, for which the Trustee does not anticipate making any distributions. In the fourth quarter of 2013, 185 claims were allowed or settled under the Settlement Procedures Order (ECF No. 5847) for an aggregate value of $154.7 million. Thirty-three of the 185 claims are customer claims reclassified and converted to general creditor claims asserted in an aggregate amount of $14.5 million and allowed in an aggregate amount of $13.3 million. With respect to the allowed priority amount, $240 million is attributable to the allowed general creditor claims under the LBI-LBHI Settlement. The other 15 claims with allowed priority amounts are employee claims that amount to less than $8,000 and therefore are not reflected in the rounded figure above. The reduction in the allowed amount as compared to the Trustee's October 2013 Quarterly Report is attributable to calculation adjustments in connection with reflecting the LBI-LBHI Settlement Agreement.

**The information and data included in this exhibit are derived from sources available to the Trustee and his professionals. This exhibit is based on the information available at this time. All amounts are unaudited, subject to revision, and should not be relied upon.**

**LEHMAN BROTHERS INC.**

**General Creditor Claims Disallowed or Expunged in the Quarter and Cumulatively**[1]

**As of December 31, 2013**

**Unaudited (USD in millions)**

| Basis for Disallowance or Expungement | Cumulatively | | Within the 4th Quarter of 2013[2] | |
|---|---|---|---|---|
| | Number of Claims | Asserted Amount | Number of Claims | Asserted Amount |
| Duplicate or Amended and Superseded | 2,786 | $      11,641.9 | 92 | $      61.3 |
| Insufficient or No Supporting Documentation | 415 | 78.2 | 46 | 1.4 |
| Late-Filed | 74 | 2,525.7 | – | – |
| Schedule 2.05 to LBIE Agreement[3] | 59 | 3,359.0 | – | – |
| No Liability | 2,492 | 5,310.8 | 573 | 1,557.7 |
| JPMorgan Chase CDA Claim Subrogation[4] | 6 | 13,440.0 | – | – |
| Satisfied | 358 | 580.7 | 55 | 18.8 |
| Withdrawn by Claimant | 387 | 13,798.6 | 67 | 988.8 |
| **Total** | **6,577**[5] | **$      50,734.9** | **833**[6] | **$      2,628.0** |

1. **Does not include approximately 2,400 claims that the Trustee had resolved through settlements or that were still pending before the Court on objections as of December 31, 2013**. For customer claims reclassified to general creditor claims, asserted claim amounts are a preliminary data capture based on SIPC customer claim forms and are included in the aggregate asserted amounts; consistent with the claims register, in objections filed with the Court, claim amounts are listed as unspecified even where the claimant listed a specific amount on the SIPC customer claim form.

2. Does not include 7 objections to 142 claims asserting an aggregate amount of $90.5 million, filed between October 1, 2013 and October 15, 2013, which were included in the Trustee's October 2013 Quarterly Report.

3. Schedule 2.05 to the Lehman Brothers International (Europe) ("LBIE") Settlement Agreement includes general creditor claims asserted against LBI by LBIE customers, or other claimants with a relationship with LBIE, with respect to activity conducted with or through LBIE, and which were expunged by the Court (ECF No. 6022).

4. Pursuant to the Court-approved Collateral Disposition Agreement (the "CDA") between LBHI and certain JPMorgan entities, LBHI became subrogated to the claims of the JPMorgan entities against LBI to the full extent of payments made by LBHI or applied from its property to such claims. Pursuant to the LBI-LBHI Settlement Agreement, the Trustee agreed to allow claims that LBHI acquired via subrogation pursuant to the CDA in the amount of $1.5 billion. The LBI claims register was modified to reflect only the allowed general creditor claim amount contemplated by the LBI-LBHI Settlement Agreement, omitting claims that either were initially overstated or contingent claims that projected no actual liability to the LBI estate. The recording of this allowed claim on the LBI claims register is without prejudice to any rights of any other parties with respect to these claims, including but not limited to the rights established and preserved by the Court-approved Settlement Agreement dated as of April 20, 2011 among JPMorgan Chase Bank, N.A., JPMorgan Securities Inc., and JPMorgan Clearing Corp. and the Trustee (ECF No. 4356), and any rights established and preserved by the CDA.

5. 2,063 of the 6,577 claims are customer claims reclassified and converted to general creditor claims, asserted in the aggregate amount of $10.5 billion.

6. 130 of the 833 claims are customer claims reclassified and converted to general creditor claims, asserted in the aggregate amount of $0.9 billion.

**The information and data included in this exhibit are derived from sources available to the Trustee and his professionals. This exhibit is based on the information available at this time. All amounts are unaudited, subject to revision, and should not be relied upon.**

**EXHIBIT 4**

# Return of Misdirected Funds

- The Trustee continues to receive and investigate requests for the return of misdirected funds alleged to have been sent in error to LBI bank accounts.

- The Trustee implemented court-authorized procedures for return of misdirected wires:

  o The Protocol Regarding Misdirected Funds, together with Request Forms for the Return of Misdirected Funds, are available on the Trustee's website (www.lehmantrustee.com).

  o The Trustee may return misdirected funds of $250,000 or less without further court approval.

- A summary of Misdirected Funds returned to date is set forth below.

| POST-PETITION MISDIRECTED WIRE STATISTICS (THROUGH DECEMBER 31, 2013) | | |
|---|---|---|
| | Number of Wires | Approximate Amount (USD in millions) |
| **Returned** | | |
| • Court authorized | 409 | $602 |
| • Without further court authorization | 542 | $9 |
| **TOTAL** | **951** | **$611** |

| MISDIRECTED WIRES RETURNED IN THE REPORT PERIOD (BETWEEN APRIL 1, 2013 AND DECEMBER 31, 2013) | |
|---|---|
| Number of Wires | Approximate Amount (USD) |
| 5 | $28,140,000 |

**The information and data included in this exhibit are derived from sources available to the Trustee and his professionals. This exhibit is based on the information available at this time. All amounts are unaudited, subject to revision, and should not be relied upon.**