SCAROLA MALONE & ZUBATOV LLP
*Attorneys for the Individuals Identified in the
 Notice of Appearance at Docket No. 8234*
Richard J.J. Scarola
Alexander Zubatov
1700 Broadway
41st Floor
New York, NY  10019
Tel.: (212) 757-0007

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS INC.,<br><br>                                    Debtor. | Case No. 08-01420 (SCC) SIPA |

DECLARATION OF EDWIN McGUINN
IN OPPOSITION TO TRUSTEE'S MOTION DOCKET NO. 8196

EDWIN McGUINN declares under the penalties for perjury in accordance with 17 U.S.C. § 1746:

1. I am one of the individuals to whom this motion is directed and one of the participants in the Shearson Lehman Brothers Inc. ("Shearson") deferred compensation plan established by Shearson in or around, and effective in, 1985 known as the "Executive and Select Employee Plan" ("ESEP" or the "ESEP Plan"). I am also the Chair of The Unofficial Litigation Management Steering Committee for Certain Claimants of Lehman Brothers Inc. Who Were

Participants in the Executive and Select Employee Plan (the "Steering Committee"). The Steering Group is assisting a total of 340 participants in the ESEP Plan in protecting their rights here (the "Client Group").

2. In July 2013, the Trustee began to file and serve upon members of the Client Group certain papers entitled Omnibus Objections seeking subordination of Client Group member claims to the claims of general unsecured creditors. The Client Group began to organize a defense, and contacted the Trustee's counsel to raise objection to this improper procedure – specifically, that such effort to seek subordination of our claims could be made only through an adversary proceeding under applicable Bankruptcy Law. The Trustee's counsel promptly agreed that any effort by the Trustee to seek subordination of the claims of the Client Group members would be done by adversary proceedings. The Trustee has not commenced such adversary proceedings, however, and counsel for the members of the Client Group is filing the accompanying Memorandum opposing the Trustee's effort to continue to attempt to avoid the requirements of adversary proceedings in relation to our claims and any effort to have them treated as subordinated. I make this Declaration upon my personal knowledge in further opposition to the Trustee's motion, and to provide background concerning the ESEP Plan and the members and composition of the Client Group.

*The Client Group and the Claims in Issue*

3. The members of the Client Group are former employees of Shearson Lehman Brothers Inc. ("Shearson") who participated in a deferred compensation plan established by Shearson in or around, and effective in, 1985 known as the "Executive and Select Employee Plan" ("ESEP" or the "ESEP Plan"). The 340 individual members of the Client Group are listed in

2

the Exhibit to the Notice of Appearance filed by counsel on their behalf on February 13, 2014. Collectively, the claims of the members of the Client Group appear to total between $250 and $300 million. The Trustee does not have any dispute as to the validity of these claims (with, I understand, the possible exception of exceedingly minor instances of possible duplicative claim filings or similar clerical errors).

4. The losses to the members of the Client Group resulting from the bankruptcy, even without regard to the subordination issue now raised by the Trustee in an improper manner, have been deep and profound. The claimants comprising the Client Group each filed a valid claim for the amount owed to him or her in connection with the ESEP Plan – an amount which was calculated as of the date of the bankruptcy of Lehman Brothers Inc. ("LBI"). By way of background, however, the members of the Client Group, even if they were to be paid the full amount of their claims from the bankruptcy estate at 100 cents on the dollar, will have lost enormously more. Specifically, the amounts to which each participant was entitled, but for the bankruptcy in September 2008, would have continued to grow at the rate of approximately 11% per year until their entitlements had been paid in full. Some of the members of the Client Group had not yet reached retirement age as of the time of the bankruptcy and their entitlements would have grown enormously in the years since 2008 and in the years ahead. Those who had retired by the time of the bankruptcy filing similarly would still have had continuing accruals on their amounts on account under the ESEP Plan until they would have been paid in full under the Plan's terms (essentially, a period of 15 years from the time

payments began), and thus, their entitlements stood to grow significantly, as well.[1] The Client Group Steering Committee estimates that the average age of the ESEP participants was 66 at the time of the bankruptcy filing and 72 today, and that approximately 40 are widows/widowers or other survivors; it is plainly a group that, as a whole, is deeply into retirement years and correspondingly dependent upon retirement benefits.

5. Of course, none of the ESEP participants have received any of their payments due, or that would have become due, since the bankruptcy – even the amounts accrued as due and to be paid as of the time of the bankruptcy filing. And more, the substantial future earnings that would have accrued after the bankruptcy are apparently lost to the ESEP participants forever. For those retirees and potential retirees, including the 340-member Client Group represented here, a substantial future entitlement was wiped out by the bankruptcy and the remaining entitlement has been frozen and unpaid since September 2008.

6. Significantly, these payments were to be a very significant part, if not the only part, of the retirement entitlements for many of the members of the Client Group. Notably, to the extent any members participated in an ERISA-covered retirement plan through LBI or its affiliates subject to PBGC jurisdiction,[2] it is expected that whatever retirement entitlements might be available under those other plans will be paid at a rate substantially less than 100% (with widows/widower and other survivors paid only half of the remaining amount). Exacerbating the impact of the bankruptcy still further as to the Client Group members,

---

[1] Some members of the Client Group, though not yet at retirement age in September 2008, have of course reached retirement age since the bankruptcy, and most other participants will reach retirement age in the relatively near future.

[2] The ESEP Plan was not subject to such protections.

4

ironically, though not surprisingly, a significant number of them were also invested, by reason of their long association with the Lehman franchise, in various ways in LBI and its affiliates at the time of the bankruptcy[3] (or up until a point soon before the bankruptcy when values had plummeted), with the result that their non-retirement investment assets were diminished dramatically, if not decimated, by the bankruptcy.

7. For these reasons, the members of the Client Group are indeed now litigating over funds that are, as to each individual, important and, in the case of many, essential to their well-being. In these respects, the Client Group is distinguished from commercial parties litigating with the Trustee over what would be described as transfer of amounts across the balance sheets of major financial institutions.

Dared: February 20, 2014

_____/s/_____
Edwin McGuinn

---

[3] In fact, approximately 17 were still employed by LBI or its affiliates at the time of the bankruptcy filing.