**Hearing Date and Time: April 24, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Date and Time: March 21, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

---

**THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM. PARTIES RECEIVING THIS NOTICE OF THE TRUSTEE'S TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS SHOULD REVIEW THE OMNIBUS OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION AND/OR IN THE EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT THE TRUSTEE'S COUNSEL, KAREN M. CHAU, ESQ., AT (212) 837-6512.**

---

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>    LEHMAN BROTHERS INC.,<br><br><br>                                  Debtor. | Case No. 08-01420 (SCC) SIPA |

**NOTICE OF HEARING ON THE TRUSTEE'S TWO HUNDRED THIRTEENTH OBJECTION TO GENERAL CREDITOR CLAIMS**
**(EMPLOYEE CLAIMS)**

        **PLEASE TAKE NOTICE** that on February 28, 2014, James W. Giddens (the

"Trustee"), as trustee for the liquidation of the business of Lehman Brothers Inc. (the "Debtor"

or "LBI"), under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. § 78aaa

*et seq.* ("SIPA"), by and through his undersigned counsel, filed his two hundred thirteenth

omnibus objection to general creditor claims (the "Two Hundred Thirteenth Omnibus Objection

to General Creditor Claims"), and that a hearing to consider the Trustee's Two Hundred

Thirteenth Omnibus Objection to General Creditor Claims will be held before the Honorable

Shelley C. Chapman, United States Bankruptcy Judge, at the United States Bankruptcy Court,

Alexander Hamilton Customs House, Courtroom 621, One Bowling Green, New York, New

York 10004 (the "Bankruptcy Court"), on **April 24, 2014 at 10:00 a.m. (Prevailing Eastern

Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that responses, if any, to entry of the

order must (i) be in writing; (ii) state the name and address of the responding party and nature of

the claim or interest of such party; (iii) state with particularity the legal and factual bases of such

response; (iv) conform to the Federal Rules of Bankruptcy Procedure and Local Bankruptcy

Rules; (v) be filed with the Bankruptcy Court, together with proof of service, electronically, in

accordance with General Order M-399 by registered users of the Court's Electronic Case Filing

system, and by all other parties in interest, on a 3.5 inch disk, compact disk, or flash drive,

preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word

processing format no later than **March 21, 2014 at 4:00 p.m. (Prevailing Eastern Time)** (the

"Response Deadline"); and (vi) be served on (a) Hughes Hubbard & Reed LLP, One Battery

Park Plaza, New York, New York, 10004, Attn: Meaghan C. Gragg, Esq.; (b) Securities Investor

Protection Corporation, 805 Fifteenth Street, N.W., Suite 800, Washington, DC 20005, Attn:

Kenneth J. Caputo, Esq.; and (c) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York,

New York 10153, Attn: Maurice Horwitz, Esq. and Lori R. Fife, Esq., with a courtesy copy to

the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York

10004, Courtroom 621.

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served

with respect to the Trustee's Two Hundred Thirteenth Omnibus Objection to General Creditor

Claims or any claim set forth thereon, the Trustee may, on or after the Response Deadline,

submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed

to the Trustee's Two Hundred Thirteenth Omnibus Objection to General Creditor Claims, which

may be entered with no further notice or opportunity to be heard offered to any party.

Dated: New York, New York
      February 28, 2014

                HUGHES HUBBARD & REED LLP

                By: /s/ James B. Kobak, Jr.
                James B. Kobak, Jr.
                Christopher K. Kiplok
                Meaghan C. Gragg
                Karen M. Chau
                One Battery Park Plaza
                New York, New York 10004
                Telephone:  (212) 837-6000
                Facsimile:  (212) 422-4726
                Email:  kobak@hugheshubbard.com

                Attorneys for James W. Giddens,
                Trustee for the SIPA Liquidation of
                Lehman Brothers Inc.

**Hearing Date and Time: April 24, 2014, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Date and Time: March 21, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Attorneys for James W. Giddens
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| LEHMAN BROTHERS INC., | Case No. 08-01420 (SCC) SIPA |
| Debtor. | |

**THE TRUSTEE'S TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION**
**TO GENERAL CREDITOR CLAIMS (EMPLOYEE CLAIMS)**

**THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM. PARTIES RECEIVING THIS TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS SHOULD REVIEW THE OMNIBUS OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION AND/OR IN THE EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT THE TRUSTEE'S COUNSEL, KAREN M. CHAU, ESQ., AT (212) 837-6512.**

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

James W. Giddens (the "Trustee"), as Trustee for the liquidation of the business of

Lehman Brothers Inc. (the "Debtor" or "LBI") under the Securities Investor Protection Act of

1970 as amended, 15 U.S.C. § 78aaa *et seq.* ("SIPA"),[1] by and through his undersigned counsel,

respectfully represents as follows:

**RELIEF REQUESTED**

1.      The Trustee files this two hundred thirteenth omnibus objection to general

creditor claims (the "Two Hundred Thirteenth Omnibus Objection to General Creditor Claims")

pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), as

made applicable to this proceeding pursuant to sections 78fff(b) and 78fff-1(a) of SIPA, Rule

3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and this

Court's order approving procedures for the filing of omnibus objections to general creditor

claims filed in this SIPA proceeding (the "General Creditor Claim Objection Procedures Order,"

ECF No. 5441), seeking disallowance and expungement of the claims listed on Exhibit A

annexed hereto.  The Trustee's proposed order (the "Proposed Order") is annexed hereto as

Exhibit F.

2.      Each of the proofs of claim identified on Exhibit A (collectively, the "Employee

Claims" or "Claims")[2] asserts a claim for unpaid award amounts associated with the Lehman

---

1.    For convenience, subsequent references to SIPA may omit "15 U.S.C."

2.    Certain of the Claims also contain components that are not Employee Claims for the purposes of this Two
      Hundred Thirteenth Omnibus Objection to General Creditor Claims.  As indicated on Exhibit A, these portions
      of these Employee Claims are not affected by this Two Hundred Thirteenth Omnibus Objection to General

(Footnote continued on next page)

Brothers Partnership Account Plan (the "Employee Award Plan").  The Employee Award Plan

was a benefit program for former Lehman employees, pursuant to which all participants received

awards entitling them to potential payments from Lehman Brothers Holdings Inc. ("LBHI").  To

the extent that participants did not receive payments in connection with the awards, the rights of

the participants are no greater than those of unsecured general creditors of LBHI.  The LBI estate

has no liability with respect to unpaid Employee Award Plan awards.  Moreover, the right to

Employee Award Plan award payments from LBHI does not create a right to payment from or

claim against LBI, the debtor in this separate and distinct SIPA Proceeding (defined below).

       3.       In addition, certain of the Employee Claims, as indicated on Exhibit A, also assert

one or more of the following grounds for recovery which, for the reasons described below, the

Trustee disputes:

- Ownership of common stock in Lehman Brothers Holdings Inc. ("LBHI") (the "LBHI Equities").

  - LBI has no liability for LBHI Equities; the holders of LBHI Equities are shareholders of LBHI.  Ownership of LBHI Equities represents an equity interest in LBHI, not LBI, the debtor in this separate and distinct SIPA Proceeding.

- Equity interests in LBHI purportedly owned in the form of restricted stock units ("RSUs"), contingent stock awards ("CSAs"), contingent equity awards ("CEAs"), stock options, and/or other equity-related compensation (together, the "Equity Awards"), all of which were granted to employees of LBI and other Lehman entities as part of their compensation, and provided employees with the right to shares of LBHI common stock on a future date upon the satisfaction of certain conditions.

---

(Footnote continued from prior page)

Creditor Claims and shall remain on the register subject to the Trustee's right to object to these portions of the claims in the future.

      o  LBI has no liability for the Equity Awards.  Ownership of Equity Awards represents an equity interest in LBHI, not LBI, the debtor in this separate and distinct SIPA Proceeding.[3]

- Compensation including, but not limited to, wages (the "Claimed Compensation") claimed by non-LBI employees.

      o  LBI has no liability to non-LBI employees for Claimed Compensation.

- Pension benefits owed under the Lehman Brothers Holdings Inc. Pension Plan (the "LBHI Pension Plan").

      o  The Pension Benefit Guaranty Corporation ("PBGC") assumed responsibility of the LBHI Pension Plan, in accordance with Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  Under ERISA, LBI has no remaining liabilities for pension benefits owed pursuant to the LBHI Pension Plan.

- Ownership or the decline in value of 401(k) savings plan accounts (the "401(k) Accounts").

      o  The claimed 401(k) Accounts were not held at LBI.  Instead, the 401(k) Accounts were held in a separate trust and could be accessed by former employees at any time.  LBI has no liability for the value of the claimants' 401(k) Accounts and no liability for any loss in value of the claimants' 401(k) Accounts.

    4.     Each of the Employee Claims seeks to recover on one or more of the following

grounds: unpaid award amounts associated with the Employee Award Plan, LBHI Equities,

---

3.  The Trustee specifically reserves the right to object to any of the Equity Awards Claims which are not disallowed and expunged on the basis that the Equity Awards were not earned or awarded pursuant to employment with LBI.  Furthermore, as explained more fully below in footnote 7, even if ownership of the Equity Awards were to represent an equity interest in LBI (which it does not), ownership of the Equity Awards would not constitute a "claim" against LBI as that term is defined in section 101 of the Bankruptcy Code, and the Equity Awards Claims would be subject to reclassification as equity interests.

Equity Awards, 401(k) Accounts, Claimed Compensation not associated with employment by LBI, or pension benefits assumed by the PBGC, for which LBI has no liability.[4]

5.        The Trustee respectfully requests that the Claims be disallowed and expunged from LBI's general creditor claims register as indicated on Exhibit A.  The Trustee reserves all rights to object on any basis to any Claim as to which the Court does not grant the relief requested herein.

## JURISDICTION

6.        Following removal to this Court for all purposes as required for SIPA cases by section 78eee(b)(4) of SIPA, this Court has "all of the jurisdiction, powers, and duties conferred by [SIPA] upon the court to which application for the issuance of the protective decree was made."  15 U.S.C. § 78eee(b)(4).

7.        Venue is proper in this Court pursuant to SIPA section 78eee(a)(3) and 15 U.S.C. section 78aa.

## BACKGROUND

8.        On September 19, 2008 (the "Filing Date"), the Honorable Gerard E. Lynch, United States District Court, Southern District of New York, entered the Order Commencing Liquidation of LBI (the "LBI Liquidation Order," ECF. No. 1) pursuant to the provisions of SIPA in the case captioned *Securities Investor Protection Corporation v. Lehman Brothers Inc.*, Case No. 08-CIV-8119 (GEL).  The LBI Liquidation Order, *inter alia*, (i) appointed the Trustee for the liquidation of the business of LBI pursuant to section 78eee(b)(3) of SIPA; and (ii)

---

4.    As described above, certain of the Claims also contain components that are not Employee Claims and which are not affected by this Two Hundred Thirteenth Omnibus Objection to General Creditor Claims, as indicated on Exhibit A.  These portions of these claims shall remain on the register subject to the Trustee's right to object to these portions of the claims in the future.

removed the case to this Court for all purposes as required for SIPA cases by section 78eee(b)(4) of SIPA, in the case captioned *In re Lehman Brothers Inc.*, Case No. 08-01420 (JMP) (the "SIPA Proceeding").

9.      On November 7, 2008, the Court entered the Order Approving Form and Manner of Publication and Mailing of Notice of Commencement; Specifying Procedures and Forms for Filing, Determination, and Adjudication of Claims; Fixing a Meeting of Customers and Other Creditors; and Fixing Interim Reporting Pursuant to SIPA (the "Claims Process Order," ECF No. 241).  Beginning on December 1, 2008, consistent with SIPA section 78fff-2(a)(1), the Trustee mailed more than 905,000 claims packages with filing information to former LBI customers and other potential claimants and posted claims filing information on the Trustee's website (www.lehmantrustee.com) and SIPC's website (www.sipc.org).  The Trustee also published notice of the claims process in The New York Times, The Wall Street Journal and The Financial Times.

10.     Pursuant to SIPA section 78fff-2(a)(3) and the Customer Claims Process Order, customer claims seeking maximum protection under SIPA must have been received by the Trustee on or before January 30, 2009.  All customer claims and general creditor claims must have been received by the Trustee by June 1, 2009 and no claims of any kind will be allowed unless received by the Trustee on or before June 1, 2009 (the "Pre-Filing Date Bar Date").   In addition to the Pre-Filing Date Bar Date, on September 19, 2013, the Bankruptcy Court entered an order (the "Administrative Bar Date Order") that established October 31, 2013 (the "Administrative Bar Date") as the deadline to file a proof of claim for certain administrative expense claims against the LBI estate, as further described in the Administrative Bar Date Order, with respect to such administrative expenses arising between September 19, 2008 and August 31,

2013.  The Administrative Bar Date has now passed.  A copy of the Customer Claims Process

Order was made publicly available at www.lehmantrustee.com.  The Trustee's website allowed

claimants filing electronically to upload documents as part of their claim submission and thereby

comply with the instructions to include supporting documentation set forth in the Proof of Claim.

11.     On November 15, 2012, the Court entered the General Creditor Claim Objection

Procedures Order, which authorizes the Trustee, among other things, to file omnibus objections

to no more than 200 general creditor claims at a time, on various grounds, including the grounds

that the claims subject to the omnibus objection seek recovery of amounts for which LBI is not

liable.

## THE CLAIMS SHOULD BE DISALLOWED AND EXPUNGED

12.     A filed proof of claim is "deemed allowed, unless a party in interest . . . objects."

11 U.S.C. § 502(a).  If an objection refuting at least one of the claim's essential allegations is

asserted, the claimant has the burden to demonstrate the validity of the claim.  *See In re Oneida*

*Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, Ch. 11 Case

No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re*

*Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).  Moreover, section

502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to

the extent that "such claim is unenforceable against the debtor and property of the debtor, under

any agreement or applicable law."  11 U.S.C. § 502(b)(1).

13.     The Employee Claims are not valid claims against LBI.  Unless the Claims are

disallowed and expunged, parties who do not hold valid claims against the LBI Estate will

recover.

## I.     The Employee Award Plan Claims Should Be Disallowed And Expunged.

14.    Each of the Claims seeks unpaid amounts in connection with awards made to Employee Award Plan participants. The Employee Award Plan is governed by the terms set forth in the document titled *Lehman Brothers Partnership Account Plan Employees Through Vice President Level* (the "Employee Award Plan Document"), attached as Exhibit 1 to the Declaration of Stuart Mitchell annexed hereto as Exhibit B (the "Mitchell Declaration").

15.    The Employee Award Plan provided Lehman employees with a bonus in the form of awards representing certain private equity fund investments made by LBHI and its affiliates on behalf of the Employee Award Plan participants. (*See* Employee Award Plan Document; *see also Partnership Account: Share in Private Equity Investment Opportunities* (the "Employee Award Plan Summary"), attached as Exhibit 2 to the Mitchell Decl.)

16.    Employee Award Plan participants were automatically enrolled in the Employee Award Plan and subsequently entitled to potential payments from LBHI based on the return of a pool of investments. (*See* Employee Award Plan Document, 1-2; Employee Award Plan Summary, 2-3, 5-7.)

17.    To the extent award amounts were not paid, participants have rights no greater than those of general, unsecured creditors of LBHI. (*See* Employee Award Plan Document, 3 ("With respect to any payments not yet made to a Participant by [LBHI], nothing herein contained shall provide any Participant with any rights greater than those of a general, unsecured creditor of [LBHI].").)

18.    Consistent with the obligations of LBHI set forth in the Employee Award Plan Document, Employee Award Plan participants, including former employees of LBI, that filed claims for unpaid Employee Award Plan awards in the Chapter 11 Proceedings, received allowed

8

general unsecured claims.[5]  *See, e.g.*, Three Hundred Twenty-Seventh Omnibus Objection, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (SCC) (Bankr. S.D.N.Y. July 10, 2012) [ECF 29322].

19.     Neither the Employee Award Plan Document nor the Employee Award Plan Summary provides any indication that the LBI estate has any liability for the unpaid Employee Award Plan award amounts referenced in the Claims.  The holders of the Employee Award Plan Claims fail to articulate any legal or factual justification for asserting a claim against LBI.  The Employee Award Plan Document does not provide for a right to any recovery from the LBI estate for unpaid Employee Award Plan award amounts.  The right to an unsecured claim against LBHI does not give rise to a claim against or create an interest in LBI, the debtor in this separate and distinct SIPA Proceeding.  If the Employee Award Plan Claims remain on the claims register, parties with no valid claims against the LBI estate will recover.  Thus, the Trustee respectfully requests that the Court enter an order disallowing and expunging the portions of the Employee Claims based on the Employee Award Plan, as listed on Exhibit A.

## II.     The LBHI Equities Claim Should Be Disallowed And Expunged.

20.     The Claim numbered 7001154, identified under the heading "LBHI Equities Claim" on Exhibit A, asserts a claim against LBI based on the ownership of LBHI common stock.  LBHI Equities represent an equity interest in LBHI, not LBI, the debtor in this separate and distinct SIPA proceeding.  Ownership of LBHI Equities does not give rise to a claim against or equity interest in LBI.  Therefore, the Trustee requests that the Court enter an order disallowing and expunging in its entirety the portion of Claim 7001154 based on LBHI Equities.

---

5.  Several of the claimants asserting Employee Claims listed on Exhibit A have duplicative allowed general unsecured claims for unpaid Employee Award Plan awards in the Chapter 11 Proceedings.

III.    **The Equity Awards Claims Should Be Disallowed And Expunged.**

21.    Based on analysis by the Trustee's counsel of the claims identified as "Equity Awards Claims" on Exhibit A (the "Equity Awards Claims") and other relevant documents and materials,[6] the Trustee has identified the Equity Awards Claims as claims for which LBI is not liable, as the Equity Awards Claims seek recovery of equity interests (owned in the form of Equity Awards) in LBHI.

22.    The holders of the Equity Awards Claims fail to articulate any legal or factual justification for asserting a claim against LBI.  The Equity Awards gave claimants the right to acquire stock in LBHI, not LBI, and the Equity Awards Claims do not give rise to a claim against LBI.[7]  If the Equity Awards Claims remain on the claims register, parties who do not

---

6.    Documents reviewed by the Trustee's counsel include agreements governing the Equity Awards, plans and prospectus governing the use of Equity Awards by LBI and other Lehman entities, and minutes of the committee responsible for approving the grant of and plans governing the Equity Awards.

7.    Even if the Equity Awards were to have given claimants an equity interest in LBI (which they do not), the Equity Awards Claims would be subject to reclassification as interests.  Section 501(a) of the Bankruptcy Code provides that a creditor may file a proof of claim and that an equity security holder may file a proof of interest. 11 U.S.C. § 501(a).  Contracts concerning a variety of stock-based transactions, including the right to acquire stock, qualify as equity securities under the Bankruptcy Code. *See, e.g.*, *In re Enron Corp.*, 341 B.R. 141, 162-63 (Bankr. S.D.N.Y. 2006) (holding that a "phantom" stock purchase program where delivery of shares was deferred for tax purposes qualified as a security for the purpose of distribution under the Bankruptcy Code). The Equity Awards gave claimants the right to acquire stock in LBHI after the satisfaction of certain conditions and thus must be deemed "equity securities" under the Bankruptcy Code.

In addition, even if the holders of the Equity Awards Claims were to have articulated any legal or factual justification for asserting a claim against LBI based on the Equity Awards (which they have not), these claims would be subordinated pursuant to section 510 of the Bankruptcy Code on several grounds.  First, certain of the Equity Awards are governed by agreements which provided that, in the event of a bankruptcy of LBHI, all claims arising from, in connection with, or in any way relating to any failure to deliver shares of common stock shall have the same priority as, and no greater priority than, common stock interests in LBHI.  Subordination agreements such as these are enforceable in bankruptcy.  11 U.S.C. § 510(a); *see, e.g.*, *In re Leasing Consultants, Inc.*, 2 B.R. 165, 168 (Bankr. E.D.N.Y. 1980), citing *In re Credit Indus. Corp.*, 366 F.2d 402, 407 (2d Cir. 1966).  Second, any claim arising from the Equity Awards would be subject to subordination under section 510(b) of the Bankruptcy Code, which provides that for purposes of distribution, a claim for damages arising from the purchase or sale of a security shall have the same priority as the security.  11 U.S.C. § 510(b). The grant of securities as part of compensation packages qualifies as "a purchase or sale" of a security for the purposes of section 510(b).  *See, e.g.*, *Spirnak v. Motors Liquidation Co. GUC Trust (In re Motor Liquidation*

(Footnote continued on next page)

hold valid claims against the LBI estate will recover.  Thus, the Trustee requests that the Court

enter an order disallowing and expunging in their entirety the Equity Awards Claims.

**IV.    The Non-LBI Employee Claims Should Be Disallowed And Expunged.**

23.    Based on analysis by the Trustee's counsel of the general creditor claims filed on

the claims register in this case and maintained by the Trustee's claims agent, including the terms

of any employment contracts filed in connection with the general creditor claims, certain

information from the LBI general claims register as maintained by the Trustee's claims agent,

and records of the LBI estate, as further described in the declaration of Karen M. Chau, an

associate at Hughes Hubbard & Reed LLP, annexed hereto as Exhibit C, the Trustee has

identified the claims listed under the heading "Non-LBI Employee Claim" on Exhibit A (the

"Non-LBI Employee Claims") as claims for which LBI is not liable, as the claimants identified

in the Non-LBI Employee Claims were not employed by LBI during the periods in which the

Claimed Compensation was awarded or earned.

24.    A claim against a Lehman entity other than LBI does not result in a claim against,

or a right to payment from, LBI.  Neither the records of the LBI estate nor the Non-LBI

Employee Claims themselves establish any ground for liability on the part of LBI for the Non-

LBI Employee Claims.  If the Non-LBI Employee Claims remain on the claims register, parties

who do not hold valid claims against the LBI estate will recover.  Thus, the Trustee requests that

---

(Footnote continued from prior page)

*Co.)*, No. 11 Civ. 7893(DLC), 2012 WL 398640, at \*4 (S.D.N.Y. Feb. 7, 2012); *In re WorldCom, Inc.*, No. 02-13533(AJG), 2006 WL 3782712, at \*5-6 (S.D.N.Y. Dec. 21, 2006).  "Physical possession of the security is not required for a claim based upon that security to be subordinated."  *Enron*, 341 B.R. at 163 (citing *American Broad. Sys. v. Nugent (In re Betacom of Phoenix, Inc.)*, 240 F.3d 823, 829-30 (9th Cir. 2001)).  Therefore, as this Court held in *Enron*, claims for the payment of damages in connection with equity-related awards granted to employees as a component of compensation must be subordinated under section 510(b) of the Bankruptcy Code.  *Id.*

the Court enter an order disallowing and expunging in their entirety the Non-LBI Employee

Claims.

**V.       The Assumed Pension Claim Should Be Disallowed And Expunged.**

25.       The claim identified under the heading "Assumed Pension Claim" on Exhibit A

(the "Assumed Pension Claims") assert a claim against the LBI estate premised on amounts due

under the LBHI Pension Plan.  The LBHI Pension Plan was terminated by its sponsor in

December 2008, and the PBGC became the trustee for the Plan on June 17, 2009.

26.       As a consequence of the termination of the LBHI Pension Plan, and pursuant to

§ 4062(a) and (b) of ERISA, the Plan's sponsors were liable only to the PBGC for "the total

amount of the unfunded benefit liabilities" and are not redundantly liable to any other party for

claims arising under the terminated plan.[8] 29 U.S.C. § 1362.  Therefore, under ERISA, the

holder of the Assumed Pension Claim does not have a legal right to assert a claim or collect any

amounts from the LBI estate in respect of amounts due under the LBHI Pension Plan.[9]

27.       Therefore, the Trustee requests the Court enter an order disallowing and

expunging in its entirety the Assumed Pension Claim.

---

8.   On June 3, 2009, the Court approved a settlement agreement (the "PBGC Settlement") with the PBGC
     regarding the LBHI Pension Plan and affecting Lehman Brothers Holdings, Inc., LBI, and the other Lehman
     affiliates and subsidiaries (collectively, the "Lehman Group").  Under the PBGC Settlement, the PBGC agreed
     to withdraw all claims it had filed related to the LBHI Plan in exchange for, *inter alia*, a lump sum payment by
     the Lehman Group.

9.   The Court has granted similar relief in the Chapter 11 reorganization of Lehman Brothers Holdings, Inc. with
     respect to claims based on pension liabilities related to the LBHI Plan.  *See*, *e.g.*, *Order Granting [Chapter 11]
     Debtors' One Hundred Tenth Omnibus Objection to Claims (No Liability Pension Claims)*, ECF No. 16343;
     *Order Granting [Chapter 11] Debtor's One Hundred Seventy-Fifth Omnibus Objection to Claims (No Liability
     Pension Claims)*, ECF No. 20632.

## VI.    The 401(k) Claims Should Be Disallowed And Expunged.

28.    Based on analysis by the Trustee's professionals of the general creditor claims filed on the claims register in this case and maintained by the Trustee's claims agent, as described in the declaration of Timothy Hurley, a Principal of Deloitte Transactions and Business Analytics LLP, annexed hereto as Exhibit D (the "Hurley Declaration"), the Trustee has identified the claim identified under the heading "401(k) Claim" on Exhibit A (the "401(k) Claim") as a claim for which LBI is not liable because the 401(k) Claims are based either on the ownership of 401(k) savings accounts not held at LBI or on losses associated with such 401(k) savings plan accounts.  The 401(k) Accounts were held in a separate trust, which was administered by Fidelity Management Trust Company ("Fidelity") in its role as trustee.  *See* Lehman Brothers Savings Plan Summary Plan Description, attached hereto as Exhibit E, at pp. 2, 22.  This trust is not an asset of the LBI estate and was not held at LBI on the Filing Date.[10]

29.    The claimants' 401(k) Accounts presently contain or contained a variety of financial products, including stocks and bonds that were issued by companies unrelated to LBI and funds that are in no way connected to LBI.  Losses associated with 401(k) savings accounts not held at LBI do not give rise to a valid claim against LBI.  Thus, as the 401(k) Claims fail to assert any grounds for liability on the part of LBI, the Trustee requests that the 401(k) Claims be disallowed and expunged in their entirety.

30.    The 401(k) Accounts also may contain common stock in LBHI or funds which invest or invested in LBHI common stock.  As discussed above in Section II, ownership of LBHI

---

10.  The Trustee does not have access to information regarding the 401(k) Accounts after the Filing Date, and therefore does not know where the 401(k) Accounts are currently held, whether the trust still exists, or whether the trust is still managed by Fidelity.

common stock represents an equity interest in LBHI, not LBI, the debtor in this separate and distinct proceeding.

31.    The holder of the 401(k) Claim fails to articulate any legal or factual justification for asserting a claim against LBI.  If the 401(k) Claim remains on the claims register, the potential exists for recovery by a party who does not hold a valid claim against the LBI estate. Thus, the Trustee requests that the Court enter an order disallowing and expunging in its entirety the 401(k) Claim.

## RESERVATION OF RIGHTS

32.    The Trustee reserves all rights to object on any other basis to any Claim or any portion of any Claim for which the Court does not grant the relief requested herein.

## NOTICE

33.    Notice of this Two Hundred Thirteenth Omnibus Objection to General Creditor Claims has been provided to (i) each claimant listed on Exhibit A via First-Class Mail and (ii) the list of parties requesting notice of pleadings in accordance with the Court's Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures and Related Relief entered by the Court on July 13, 2010 (ECF No. 3466), and will be immediately available for inspection upon filing with the Court at the Trustee's website, www.lehmantrustee.com.  The Trustee submits that no other or further notice need be provided.

## NO PRIOR RELIEF REQUESTED

34.    No previous request for the relief requested herein has been made by the Trustee to this or any other Court.

## <u>CONCLUSION</u>

For the reasons stated herein, the Trustee respectfully requests entry of an order granting

the relief requested herein and such other and further relief as is just.


Dated:    New York, New York
              February 28, 2014

<div style="margin-left: 40%;">

HUGHES HUBBARD & REED LLP

By: <u>/s/ James B. Kobak, Jr.</u>
James B. Kobak, Jr.
Christopher K. Kiplok
Meaghan C. Gragg
Karen M. Chau
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726
Email:  <u>kobak@hugheshubbard.com</u>


Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of
Lehman Brothers Inc.

</div>

**EXHIBIT A**

# IN RE LEHMAN BROTHERS INC., CASE NO: 08-01420 (SCC) SIPA

## TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION: EXHIBIT A – EMPLOYEE CLAIMS

| Claim Type | Trustee's Proposed Reason for Disallowance |
|---|---|
| 401(k) Claim | No legal or factual justification for asserting a claim against LBI.  LBI is not liable for the claimed 401(k) account or for losses associated with such account. |
| Assumed Pension Claim | No legal or factual justification for asserting a claim against LBI.  The claimed pension benefits were owed under a qualified pension plan which was assumed by the Pension Benefits Guaranty Corporation and LBI has no liability for such benefits. |
| Employee Award Plan Claim | No legal or factual justification for asserting a claim against LBI.  The Employee Award Plan provided a right to payment from LBHI, not LBI, the debtor in this separate and distinct SIPA Proceeding. |
| Equity Awards Claim | No legal or factual justification for asserting a claim against LBI.  The claimed Equity Awards constitute equity interests in LBHI, not LBI, the debtor in this separate and distinct SIPA Proceeding. |
| LBHI Equities Claim | No legal or factual justification for asserting a claim against LBI.  The claimed stock constitutes an equity interest in LBHI, not LBI, the debtor in this separate and distinct SIPA Proceeding. |
| Non-LBI Employee Claim | No legal or factual justification for asserting a claim against LBI.  The Claimed Compensation was not earned or awarded pursuant to employment with LBI. |

_____

* Claim includes unspecified amounts (i.e., amounts not specified by the claimant, amounts listed in a foreign currency, unliquidated amounts and/or amounts listed as "unknown", "$0.00*", "unascertainable", "undetermined", or where no dollar amounts were entered in the spaces provided on the proof of claim form), or is a customer claim reclassified to a general creditor claim, which, consistent with the general creditor claims register, is listed as unspecified even where the claimant listed a specific amount on the SIPC customer claim form.

## IN RE LEHMAN BROTHERS INC., CASE NO: 08-01420 (SCC) SIPA

## TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION: EXHIBIT A – EMPLOYEE CLAIMS

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | EMPLOYEE AWARD PLAN CLAIM | EQUITY AWARDS CLAIM | NON-LBI EMPLOYEE CLAIM | 401(K) CLAIM | LBHI EQUITIES CLAIM | ASSUMED PENSION CLAIM |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | BLAIR, MELODY<br>F/K/A MELODY W. LI<br>25 SPINNAKER<br>IRVINE, CA  92614 | 7001154 | 1/30/2009 | $45,000.00[1] | X | X | | | X | |
| 2 | CALLIES, GUILLEMETTE<br>43, RUE DE LA FERME<br>NEUILLY-SUR-SEINE 92  F92200<br>FRANCE | 592 | 12/30/2008 | $12,482.00 | X | X | | | | |
| 3 | DICKINSON, JOSEPH R<br>17 CARLY COURT<br>MONROE, NJ  08831 | 7001371 | 4/19/2009 | $909.00 | X | X | | | | |
| 4 | GRAY, JAMES B<br>23 BLUE LEAVES AVENUE<br>NETHERNE ON THE HILL<br>COULSDON, SURREY  CRS 1NY<br>UNITED KINDOM | 4497 | 5/13/2009 | $67,342.00 | X | X | X | | | |
| 5 | GRAY, JAMES B<br>23 BLUE LEAVES AVENUE<br>NETHERNE ON THE HILL<br>COULSDON, SURREY  CRS 1NY<br>UNITED KINDOM | 9007260 | 5/13/2009 | UNSPECIFIED* | X | X | X | | | |

---

[1]   The portion of claim number 7001154 that is asserting a claim for unused vacation in the amount of $3,384.62 is not affected by this objection, and shall remain active on the claims register, subject to the Trustee's right to object to this portion of the claim in the future.

---

* Claim includes unspecified amounts (i.e., amounts not specified by the claimant, amounts listed in a foreign currency, unliquidated amounts and/or amounts listed as "unknown", "$0.00*", "unascertainable", "undetermined", or where no dollar amounts were entered in the spaces provided on the proof of claim form), or is a customer claim reclassified to a general creditor claim, which, consistent with the general creditor claims register, is listed as unspecified even where the claimant listed a specific amount on the SIPC customer claim form.

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | EMPLOYEE AWARD PLAN CLAIM | EQUITY AWARDS CLAIM | NON-LBI EMPLOYEE CLAIM | 401(K) CLAIM | LBHI EQUITIES CLAIM | ASSUMED PENSION CLAIM |
|---|---|---|---|---|---|---|---|---|---|---|
| 6 | JAMIESON, ELISABETH DIANE 25 WARWICK MANSIONS CROMWELL CRESCENT LONDON  SW59QR UNITED KINGDOM | 7001100 | 1/30/2009 | $29,294.00 | X | X | | | | |
| 7 | JENKINS, INIGO LEWIS FRASER 4 MONTAGU HOUSE 33 PADDINGTON STREET LONDON  W1U 4HF UNITED KINGDOM | 7000994 | 1/30/2009 | $466,889.00 | X | X | | | | |
| 8 | MERCADO, BRIAN R 1155 BRICKELL BAY DRIVE APT 1208 MIAMI, FL  33131 | 7001116 | 1/30/2009 | $20,619.96 | X | X | | X | | |
| 9 | MIRANDA, JORGE 241 SHERMAN AVENUE, APT. 2B NEW YORK, NY  10034 | 3498 | 1/29/2009 | UNSPECIFIED* | X | X | | | | X |
| 10 | PATEL, BHAVNA 19 DORSET DRIVE KENILWORTH, NJ  07033-1416 | 805 | 1/9/2009 | $24,200.00 | X | X | | | | |
| 11 | RAMADAN, ZAKY S PO BOX 750134 FOREST HILLS, NY  11375 | 8003264 | 1/30/2009 | UNSPECIFIED* | X | X | | | | |

---

* Claim includes unspecified amounts (i.e., amounts not specified by the claimant, amounts listed in a foreign currency, unliquidated amounts and/or amounts listed as "unknown", "$0.00*", "unascertainable", "undetermined", or where no dollar amounts were entered in the spaces provided on the proof of claim form), or is a customer claim reclassified to a general creditor claim, which, consistent with the general creditor claims register, is listed as unspecified even where the claimant listed a specific amount on the SIPC customer claim form.

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | EMPLOYEE AWARD PLAN CLAIM | EQUITY AWARDS CLAIM | NON-LBI EMPLOYEE CLAIM | 401(K) CLAIM | LBHI EQUITIES CLAIM | ASSUMED PENSION CLAIM |
|---|---|---|---|---|---|---|---|---|---|---|
| 12 | RUELA, JOSE M 36 FIFTH STREET NORTH ARLINGTON, NJ 07031 | 8003093 | 1/30/2009 | UNSPECIFIED* | X | X | | | | |
| 13 | RYAN, KATHERINE SUSAN 99-16 157TH AVENUE HOWARD BEACH, NY 11414 | 7000531 | 1/26/2009 | $94,326.89[2] | X | | | | | |
| 14 | SEWARDS, MARK 326 ALEXANDRA PARK ROAD WOODGREEN LONDON, MDDSX N22 7BD UNITED KINGDOM | 8000934 | 1/6/2009 | UNSPECIFIED* | X | X | | | | |
| 15 | SHAPIRO, CHERYL ANNE 3855 WOODCLIFF ROAD SHERMAN OAKS, CA 91403 | 7001339 | 1/22/2009 | $16,855.00 | X | X | | | | |
| 16 | THAMBIMUTHU, RAJARATNAM 4 VAN DYCK AVENUE NEW MALDEN, SURREY KT3 5NQ UNITED KINGDOM | 2613 | 1/30/2009 | UNSPECIFIED* | X | X | | | | |
| 17 | TODARO, ALICIA 197 BAY 43RD STREET BROOKLYN, NY 11214 | 7000758 | 1/29/2009 | $15,040.00 | X | X | | | | |
| 18 | WITKIN, MICHAEL 53 SHORT HILLS CIR APT 1B MILLBURN, NJ 07041 | 9005896 | 2/2/2009 | UNSPECIFIED* | X | X | | | | |
| | Total | | | $792,957.85 | | | | | | |

[2]    The portion of claim number 7000531 that is asserting a claim for severance in the amount of $94,326.89 is not affected by this objection, and shall remain active on the claims register, subject to the Trustee's right to object to this portion of the claim in the future

* Claim includes unspecified amounts (i.e., amounts not specified by the claimant, amounts listed in a foreign currency, unliquidated amounts and/or amounts listed as "unknown", "$0.00*", "unascertainable", "undetermined", or where no dollar amounts were entered in the spaces provided on the proof of claim form), or is a customer claim reclassified to a general creditor claim, which, consistent with the general creditor claims register, is listed as unspecified even where the claimant listed a specific amount on the SIPC customer claim form.

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re

LEHMAN BROTHERS INC.,

                              Debtor.

---

Case No. 08-01420 (SCC) SIPA

**DECLARATION OF STUART MITCHELL IN SUPPORT OF**
**THE TRUSTEE'S TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION TO**
**GENERAL CREDITOR CLAIMS (EMPLOYEE CLAIMS)**

Pursuant to 28 U.S.C. § 1746, I, Stuart Mitchell, hereby declare as follows:

      1.      I am an attorney duly admitted to practice in this Court and an associate at the law firm of Hughes Hubbard & Reed LLP, attorneys for James W. Giddens (the "Trustee"), trustee for the SIPA liquidation of Lehman Brothers Inc.  I submit this declaration in support of the Trustee's two hundred thirteenth omnibus objection to general creditor claims (the "Objection").

      2.      Attached hereto as Exhibit 1 is a true and correct copy of the document setting forth the terms of the Lehman Brothers Partnership Account Plan titled *Lehman Brothers Partnership Account Plan Employees Through Vice President Level* attached as Exhibit C to the Three Hundred Twenty-Seventh Omnibus Objection to Claims (Partnership and Other Employee Claims) filed in the chapter 11 proceedings of LBHI and certain debtor affiliates.  *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (SCC) (Bankr. S.D.N.Y. July 10, 2012) [ECF 29322] (the "327th LBHI Omnibus Objection").

3.      Attached hereto as <u>Exhibit 2</u> is a true and correct copy of *Partnership Account:*

*Share in Private Equity Investment Opportunities*, the booklet summarizing the Lehman Brothers

Partnership Account Plan, attached as <u>Exhibit D</u> to the 327th LBHI Omnibus Objection.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 28, 2014.


By: <u>/s/ Stuart Mitchell            </u>
Stuart Mitchell
Associate, Hughes Hubbard & Reed LLP

**EXHIBIT 1**

# LEHMAN BROTHERS PARTNERSHIP ACCOUNT PLAN
# EMPLOYEES THROUGH VICE PRESIDENT LEVEL

## SECTION 1 – DEFINITIONS

For purposes of the Plan, the capitalized terms shall have the meanings ascribed to them in Appendix A.

## SECTION 2 – PURPOSE

The purpose of the Plan is to attract and retain Eligible Employees by providing them with the opportunity to receive additional compensation, subject to the terms of the Plan, based on the performance of certain investments made by the Company and its Affiliates.

## SECTION 3 – ADMINISTRATION

The Plan shall be administered by the Committee, which shall be authorized: to determine whether Awards will be granted; to select Participants from among Eligible Employees; to determine Base Awards and Leverage Amounts; to identify Portfolio Investments; to interpret the Plan; to establish, amend and rescind any rules and regulations relating to the Plan; to determine the terms and provisions of each Award Certificate; to make all determinations necessary or advisable for the administration of the Plan; and to correct any defect, supply any omissions or reconcile any inconsistency in the Plan or in any Award Certificate in the manner and to the extent it shall deem desirable. The actions and determinations of the Committee in the administration of the Plan shall be final and conclusive with respect to all parties. The Committee may, in its sole discretion (i) delegate any of its responsibilities hereunder, and (ii) alter the terms of the Plan as it may deem necessary, in the case of Eligible Employees subject to the laws of any foreign jurisdiction, to give effect to the intent of the Plan.

## SECTION 4 – PARTICIPATION IN THE PLAN; EFFECT OF PARTICIPATION

4.1  Participation in the Plan. For each Award Period, the Committee may grant an Award to any Eligible Employee, at its sole discretion. Each Eligible Employee to whom such an Award is granted shall be a Participant with respect to such Award Period and shall receive an Award Certificate specifying the terms and conditions of such Participant's Award (including the Base Award and the Leverage Amount).

4.2  Designation of Portfolio Investments; Deemed Investment of Awards. The Committee shall designate those investments that shall be treated as Portfolio Investments for each Award Period and the percentage of each Award that is deemed invested in each such Portfolio Investment.

4.3  Effect of Award. Subject to the terms of the Plan, the grant of an Award shall entitle a Participant to a payment or payments under Section 6, based on the amount credited to the Participant's Account for the applicable Award Period under Section 6.

## SECTION 5 – VESTING OF A PARTICIPANT'S ACCOUNT

5.1  General Rule. Each Participant's Account with respect to a particular Award Period, net of any reduction for amounts credited to the Company, shall vest fully upon the earlier of:

(a)  The third anniversary of the beginning of that Award Period, but only if the Participant has remained Continuously Employed by a Participating Company from the date the Award relating to that Award Period is granted until such third anniversary date; or

(b)  The Participant's death, Disability or Retirement after the beginning of that Award Period and prior to such third anniversary date; provided however that if, prior to the third anniversary of the beginning of the Award Period, an individual whose separation from employment was a Retirement becomes employed in a regular full-time capacity by a Competitor, such individual's Account shall thereupon be forfeited in full.

5.2  Special Vesting Rule. In the case of a Participant who (x) is an Analyst or Associate, or has been determined, in the sole discretion of the Committee, to be covered by the provisions of this Section 5.2, and (y) incurs a Break in Service prior to becoming fully vested in his or her Account pursuant to Section 5.1(a), the following rules shall apply.

(a)  Upon the commencement of the Break in Service, such individual shall no longer be a Participant.

(b)  Upon meeting all of the following conditions, such individual shall be restored to Participant status:

(i)  Such individual separated from employment by a Participating Company in good standing;

(ii)  The purpose of the separation was to matriculate in an Approved MBA Program or other educational program approved in writing by the Committee in its sole discretion;

(iii)  The individual subsequently graduated from (A) an Approved MBA Program and receives the degree of Master of Business Administration or (B) another educational program approved in writing by the Committee;

(iv) A Participating Company (in its sole discretion) extended to the individual a written offer of reemployment, such reemployment to commence following such graduation;

(v) The individual accepted such offer of reemployment and was reemployed by a Participating Company not later than the earlier of (A) the fourth anniversary of such individual's separation or (B) one year after such graduation;

(vi) The individual had not been employed in a regular full-time capacity by a Competitor at any time after his or her separation and before his or her reemployment; and

(vii) The individual remained Continuously Employed by a Participating Company for at least one year following his or her date of reemployment.

(c) If an individual is restored to Participant status, pursuant to Section 5.2(b), he or she shall (i) be treated, for purposes of Section 5.1, as if he or she had been Continuously Employed throughout his or her Break in Service; (ii) receive, as soon as practicable after restoration to Participant status, those cash payments that the Participant would have received under the Plan had he or remained Continuously Employed (without payment of any additional Interest Equivalents to reflect any delay in payment that would not have occurred had he or she actually remained Continuously Employed); and (iii) be eligible for any additional payments thereafter becoming due to such Participant under the Plan.

5.3  Additional Provisions. Except as provided in this Section 5 or as otherwise prescribed by the Committee, an individual shall no longer be a Participant and such individual's Account shall be forfeited in full upon separation from employment by the Company and its Affiliates prior to becoming vested. The Committee may at any time in its sole discretion accelerate the vesting of any Account.

## SECTION 6 – CREDITING AMOUNTS TO A PARTICIPANT'S ACCOUNT; PAYMENTS

6.1  Determination of Participant's Return. As Return is realized with respect to each Portfolio Investment, the Committee shall determine the portion of such Return it deems attributable to the Participant, pro-rata based on the percentage of such Participant's Award for the Award Period that is deemed invested in such Portfolio Investment, and credit such Return to the Participant's Account.

6.2  Use of Amounts Credited to Participant's Account. The Return credited to a Participant's Account for a Award Period shall, after giving effect to all amounts previously so credited under this Section 6.2:

(a) first, be credited to and retained by the Company until the Company has been credited with an amount equal, in the aggregate, to the Company Return for that Award Period and the preceding Award Period, in that order;

(b) second, be credited to and retained by the Company until the Company has been credited with an amount equal, in the aggregate, to the Participant's entire Leverage Amount for that Award Period and the preceding Award Period, in that order;

(c) third, remain credited to the Participant's Account, up to an amount equal, in the aggregate, to the Base Award;

(d) fourth, be credited to and retained by the Company until it has been credited with an amount equal to such percentage as may be designated by the Committee pursuant to clause (e) below of the sum of:

(i) the Company Return credited pursuant to Section 6.2(a); plus

(ii) the cumulative amounts credited to the Company under this Section 6.2(d); and

(e) fifth, be divided between the Company and the Participant as designated by the Committee for that Award Period.

6.3  Interest Equivalents. Interest Equivalents shall be added to the net amounts credited to a Participant's Account (i.e., those amounts not credited to the Company), when and as determined by the Committee.

6.4  Payments to Participants. Subject to the terms of the Plan, from time to time at the sole discretion of the Committee, the Company shall pay the Participant, in cash, the vested amounts in the Participant's Account.

6.5  Special Distribution Options After Five Years. If any Portfolio Investments remain unliquidated as of the fifth anniversary of the first day of the Award Period to which such Portfolio Investments relate, or any subsequent anniversary thereof, then the Company shall have the right, but not the obligation, to pay, within 120 days after any such anniversary date, an amount in cash equal to all or a portion of the Participant's vested deemed interest in such Portfolio Investments based on their valuation prices, as determined by the Committee in its sole discretion, and giving effect to the allocations between the Company and the Participant set forth in Section 6.2. The Committee may determine, in its sole discretion, that the provisions of this Section 6.5 may be utilized, before or after the fifth anniversary referred to above, to assist the Company or an Affiliate in meeting its withholding obligations.

2

## SECTION 7 – WITHHOLDING AND OFFSET

The Company shall have the right to deduct from all amounts payable to any Participant any taxes or other amounts required by law to be withheld therefrom, and any amounts the Participant owes to the Company or any of its Affiliates.

## SECTION 8 – NON-TRANSFERABILITY

No Award and no portion of the Participant's Account hereunder shall be assignable or transferable, and no right or interest of any Participant in any amount or Participant's Account may be pledged or shall be subject to any lien, obligation or liability of the Participant, except as set forth herein.

## SECTION 9 – NO RIGHT TO EMPLOYMENT OR CONTINUED PLAN PARTICIPATION

No person shall have any claim or right to be granted an Award and the grant of an Award shall not be construed as giving a Participant the right to be retained in the employ of the Company or any of its Affiliates or, if separated, to be reemployed by the Company or its Affiliates or to be eligible for any subsequent Awards. Further, the Company and its Affiliates expressly reserve the right at any time to terminate or reemploy a Participant free from any liability or any claim under the Plan, except as provided herein or in any Award Certificate. The granting of any Award hereunder shall not have the effect of obligating the Company and its Affiliates to make any particular investments, nor shall such grant constitute a guaranty that the entire Award will be applied for the benefit of a Participant. The decision whether to invest any amounts in Portfolio Investments will be solely in the discretion of the Committee.

## SECTION 10 – AMENDMENT OR TERMINATION

The Board of Directors of the Company or the Committee may amend, suspend or terminate the Plan at any time.

## SECTION 11 – UNFUNDED STATUS OF PLAN; STATUS OF PAYMENTS

The Plan is intended to constitute an unfunded incentive compensation plan. With respect to any payments not yet made to a Participant by the Company, nothing herein contained shall provide any Participant with any rights that are greater than those of a general, unsecured creditor of the Company. No payments under this Plan shall be taken into account in determining a Participant's benefits under any compensation, pension or welfare plan, program or arrangement maintained by the Company or any Affiliate.

## SECTION 12 – WAIVER

No failure on the part of the Company, any Affiliate, the Committee or the Board of Directors to exercise, and no delay in exercising, any right or power under the Plan shall operate as a waiver of any such right or power; nor shall any single or partial exercise preclude any other or further exercise of a right or power or the exercise of any other right or power.

## SECTION 13 – SEVERABILITY

Each provision of the Plan will be interpreted in such manner as to be valid and effective but if any provision shall be ruled invalid or unenforceable by any court of competent jurisdiction, the invalidity or unenforceability of such provision shall not affect any of the remaining provisions of the Plan and the invalid terms shall be deemed to be replaced by a valid term which most closely reflects the intent of the Plan.

## SECTION 14 – GOVERNING LAW

The validity, construction and effect of the Plan, the Award Certificates, and any rules and regulations relating to the Plan or an Award Certificate shall be determined in accordance with the laws of the State of New York, without reference to conflicts of law. This Plan is not subject to the provisions of the Employee Retirement Income Security Act of 1974, as amended.

## SECTION 15 – LIABILITY

No member of the Committee and no director, officer or employee of the Company or any of its Affiliates shall be liable to any person for any action taken or omitted in connection with the administration of the Plan unless attributable to his or her own fraud or willful misconduct; nor shall the Company be liable to any person for any such action unless attributable to fraud or willful misconduct on the part of a director, officer or employee of the Company or one of its Affiliates.

## SECTION 16 – EFFECTIVE DATE

The Plan shall be effective as of July 1, 2000 and shall continue until terminated by the Board of Directors of the Company or the Committee.

---

## APPENDIX A

(1) "Account" shall mean a bookkeeping account maintained for each Participant, to which the Participant's Return and Interest Equivalents shall be credited. A separate Account shall be maintained for each Award Period.

(2) "Affiliate" shall mean a person or entity controlling, controlled by, or under common control with the Company.

(3) "Analyst" shall mean an individual having an undergraduate degree enrolled in one of the formal programs for the employment of such individuals maintained by the Company and its Affiliates, as determined by the Committee.

(4) "Approved MBA Program" shall mean a program of higher education leading to the award of the degree of Master of Business Administration at an accredited institution of higher education approved by the Committee for purposes of this Plan.

3

(5) "Associate" shall mean an individual having a graduate degree or approved equivalent business experience enrolled in one of the formal programs for the employment of such individuals maintained by the Company and its Affiliates, as determined by the Committee.

(6) "Award" shall mean, with respect to any Participant, the aggregate of the Base Award and the Leverage Amount with respect to a particular Award Period.

(7) "Award Certificate" shall mean a document that evidences the grant of an Award under the Plan (including the Base Award and any Leverage Amount) and that, together with the Plan, establishes the terms and conditions of such grant.

(8) "Award Period" shall mean a designated period of time with respect to which Awards are granted and with respect to which the Committee designates Portfolio Investments. The initial Award Period will be July 1, 2000 through December 31, 2001. Any Award Period may be extended in the sole discretion of the Committee.

(9) "Base Award" shall mean that part of an Award (exclusive of any Leverage Amount) that is designated by the Committee to be treated as if it were invested in Portfolio Investments.

(10) "Break in Service" shall mean a separation from employment with a Participating Company for any reason and for any period of time.

(11) "Committee" shall mean the Executive Committee (Non-Board) of the Company.

(12) "Company" shall mean Lehman Brothers Holdings Inc. and any successor thereto, whether by merger, consolidation, purchase of substantially all its assets or otherwise.

(13) "Company Return" shall mean a cumulative return (compounded annually) payable to the Company with respect to the Leverage Amount, at a rate of return on such Leverage Amount equal to such rate as may be prescribed by the Committee from time to time.

(14) "Competitor" shall mean any person or entity (including any company and its affiliates) engaged in any business activity that is materially competitive with any business carried on by the Company or an Affiliate at such time, as determined in the sole discretion of the Committee.

(15) "Continuously Employed" shall mean employed continuously, without a Break in Service, as determined by the Committee in its sole discretion.

(16) "Disability" shall mean a disability under both the Company's U.S. Long-Term Disability Insurance Plan and Social Security Act (or the equivalent plans or laws), as determined by the Committee in its sole discretion.

(17) "Eligible Employee" shall mean (i) any regular, full-time employee of a Participating Company below the level of Managing Director or Senior Vice President (or equivalent) not including any individual who is not actively employed due to Disability or has given or received a notice of termination of employment, all as determined by the Committee in its sole discretion, or (ii) such other employees of a Participating Company as may be designated by the Committee, in its sole discretion.

(18) "Interest Equivalents" shall mean interest credited at such rate as may be prescribed by the Committee from time to time.

(19) "Leverage Amount" shall mean that part of an Award, if any, designated by the Committee to be treated as the equivalent of a non-recourse loan to the Participant, which is to be treated as if it were invested in the applicable Portfolio Investments, thus affecting the Participant's Return. The Leverage Amount for the first Award Period under the Plan shall equal the product of ten times a Participant's Base Award. The Leverage Amount for any subsequent Award Periods shall be determined by the Committee in its sole discretion.

(20) "Participant" shall mean an Eligible Employee to whom the Committee has granted an Award under the Plan for a particular Award Period.

(21) "Participating Company" shall mean the Company and each of its Affiliates, but shall not include any company that the Committee determines shall not participate in the Plan.

(22) "Plan" shall mean the Lehman Brothers Partnership Account Plan—Employees through Vice President Level.

(23) "Portfolio Investments" shall mean those investments made (or deemed made) by the Company or any of its Affiliates that are designated by the Committee to be included for purposes of determining payments in respect of Awards granted for such Period.

(24) "Retirement" shall mean a termination of employment which meets the criteria for retirement under the Company's qualified defined benefit pension plan.

(25) "Return" shall mean, with respect to each Portfolio Investment, any amounts received (or deemed received) from time to time by the Company or any of its Affiliates.

4

**EXHIBIT 2**

# Partnership Account



SHARE IN PRIVATE EQUITY
INVESTMENT OPPORTUNITIES

# INSIDE THIS BOOKLET

2   Share in Lehman Brothers' Investment Success

5   Investments Chosen for Growth Potential

8   Your Award Certificate Shows Your Starting Point

10   Timeline: Investing During the Award Period

11   Timeline: When Your Account Vests

13   Timeline: How Your Payments Are Determined

15   Timeline: When You Receive Payments

17   Example

19   For Your Reference

**HOW VALUABLE IS THE PARTNERSHIP ACCOUNT?**

*Turn to the Example on page 17 to see how valuable the Partnership Account could be to you, based on various scenarios.*

# SHARE IN LEHMAN BROTHERS' INVESTMENT SUCCESS



*Lehman Brothers is pleased to provide you with this booklet outlining the details of the **Lehman Brothers Partnership Account Plan**. Through the Partnership Account, all employees can benefit from the Firm's experience and expertise in private equity investing.*

## ALL EMPLOYEES JOIN IN INVESTMENT OPPORTUNITIES

Lehman Brothers has a long and successful track record in private equity investments. Over the years, the Firm has provided senior-level employees with opportunities to invest along with outside investors in the merchant banking and venture capital funds. Investors in these funds have to meet income or net worth requirements set by the U.S. Securities and Exchange Commission.

With the introduction of the Partnership Account, the Firm is extending the opportunity to share in the success of these investments to employees up through the Vice President level — without requiring you to invest any of your own money. Lehman Brothers is establishing a portfolio of investments and will provide you with cash payments as if you were to invest directly in the portfolio yourself.

Extending this unique compensation program to all Lehman Brothers employees underscores the value the Firm places on all of our contributions, and reaffirms Lehman Brothers' commitment to being among the best places to work.

### WHAT IS PRIVATE EQUITY INVESTING?

Unlike publicly traded stocks, which are listed on exchanges, such as the New York Stock Exchange or the London Stock Exchange, private equity investments are not available to the general investing public. Instead, they are offered only to institutional investors (such as Lehman Brothers) and to individual investors who have a high level of investing knowledge and experience.

Private equity portfolios might contain the following investment types:

◇ Start-ups, companies that are being formed to develop and market a business idea, and early and later-stage venture capital;

◇ Privately owned, or in certain cases publicly owned, companies with prospects for continuing growth;

◇ Leveraged and management buyouts, where a group of investors buys an established company financed principally with debt, by providing equity capital or other money that is designed to earn equity-like returns.

2

## THE PARTNERSHIP ACCOUNT CAN DELIVER SIGNIFICANT VALUE

In this booklet, you'll find out how valuable the Partnership Account can be as a result of these distinctive features:

◇ **When Lehman Brothers' Partnership Account portfolio investments succeed, you share in the success.** Lehman Brothers selects Partnership Account investments with the potential to generate high returns. You will receive payments based upon the returns on these investments.

◇ **There's no risk to you.** You don't contribute any of your own money, so you have nothing to lose.

◇ **The Firm supplies the capital and the expertise.** Any money invested in the Partnership Account portfolio comes from Lehman Brothers, and the Firm's experienced professionals identify investments and manage the portfolio.

◇ **After three years, your account is fully vested.** As long as you remain a Lehman Brothers employee for three years following the Partnership Account inception date, you are entitled to receive any payments made under the program.

◇ **The Firm plans to make ongoing Partnership Account offerings.** The first Partnership Account will make investments over the next 18 months; the Firm then plans to establish new Partnership Accounts annually around the time bonuses are announced. This gives you an ongoing opportunity to participate in the Firm's investment success.

To many Lehman Brothers employees, portfolios like the one held by the Partnership Account are new and unfamiliar. It's important for every participant to clearly understand how the program works. For that reason, this booklet gives a plain English explanation of the program. For the legal provisions that govern the program, please see the enclosed Lehman Brothers Partnership Account Plan Document.

### NO ACTION OR CONTRIBUTIONS REQUIRED

You don't need to enroll in the Partnership Account, contribute any money, or take any other action. If you are a full-time employee on active status with Lehman Brothers or a consolidated subsidiary, at a level up to and including Vice President, you take part in the program automatically. The enclosed Partnership Account Award Certificate verifies that you are a participant.

3

LEHMAN BROTHERS

# A WORD ABOUT INVESTMENT RISK

Lehman Brothers intends to invest the Partnership
Account portfolio in highly speculative investments.
There are no guarantees that the investments select-
ed will be successful. And, of course, it's not possible
to accurately predict how soon they might deliver
investment returns.

Lehman Brothers has created the Partnership
Account because the Firm believes it could give
you substantial rewards over time. However, as you
read this booklet, keep in mind that while the
program has the potential to provide you with
large payments, it's also possible that you might not
receive payments at all, or that payments might be
spread out over many years.



**4**



**You don't need to take any action to participate
in the Partnership Account.**

# INVESTMENTS CHOSEN FOR GROWTH POTENTIAL



*Through the Partnership Account, Lehman Brothers puts the Firm's extensive investment experience and analytical resources to work for you by investing primarily in private equity investments. These investments, while high risk, offer a unique opportunity for high investment returns.*

The Partnership Account is modeled on investments offered to sophisticated private investors and to the Firm's senior-level employees. The Firm has created several private equity funds for institutional and high-net-worth individual investors over the years and has a history of generating substantial returns. *However, past performance does not guarantee future results.*

---

**WHAT IS THE PARTNERSHIP ACCOUNT FOR SENIOR-LEVEL EMPLOYEES?**

Lehman Brothers offers a different type of Partnership Account to the Firm's senior-level employees (those at the level of Vice President, or equivalent, and above) who meet income or net worth requirements set by the U.S. Securities and Exchange Commission. Though the two programs are different, they will share the same investment portfolio. This means that your payments from the Partnership Account are based on the performance of the same investments as the ones in the investment fund for the Firm's senior-level employees.

---

### SETTING ALLOCATIONS AND MAKING INVESTMENT DECISIONS

The Lehman Brothers Executive Committee has established a special committee, called the Partnership Account Allocation Committee, to set the overall investment strategy for the Partnership Account portfolio and to monitor its ongoing performance. The Partnership Account Allocation Committee is made up of senior Lehman Brothers employees and is chaired by Michael McKeever, Head of the Firm's Private Equity Division.

The Partnership Account Allocation Committee determines the amounts to be invested among broad investment categories. The categories include investments managed by Lehman Brothers and, in some cases, by managers not affiliated with the Firm.

5

LEHMAN BROTHERS

In each investment category, a manager and an investment team are responsible for identifying potential investments, conducting due diligence investigations, and making recommendations to the Private Equity Investment Committee (a committee separate from the Partnership Account Allocation Committee). The Private Equity Investment Committee is comprised of senior Lehman Brothers employees and is responsible for the oversight and approval of all private equity investments at Lehman Brothers.

See the chart on page 7 for a summary of the investment categories, describing the types of investments included in each category, its history at Lehman Brothers, and the individuals responsible for investments in each category.

Additionally, the Partnership Account portfolio may include investments in new Lehman Brothers funds targeting investments in different asset categories.

PARTNERSHIP ACCOUNT

---

### PARTNERSHIP ACCOUNT INVESTMENT CATEGORIES

| Investment Category | Description | Management |
|---|---|---|
| MERCHANT BANKING | Private equity investments in established, well-managed companies in the United States and throughout the world.<br><br>The oldest and most established area of principal investment activity at Lehman Brothers. Most recently, raised the $2.0 billion Lehman Brothers Merchant Banking Partnership II in September 1997. | Alan Washkowitz, Managing Director and Head of the Firm's Merchant Banking Group. |
| VENTURE CAPITAL | Growth-oriented equity or equity-related investments in privately-held companies.<br><br>Established in 1995. Formed the $350 million Lehman Brothers Venture Partnership in April 1999 to invest in mid- to later-stage venture companies with limited operating histories and to provide growth capital to more mature operating companies. | Michael Odrich, Managing Director and Head of the Venture Capital Group. |
| COMMUNICATIONS | Private equity and equity-related investments in early-stage, growth-oriented companies in communications services and related industries, which are well positioned to capitalize on rapid changes in that field.<br><br>Currently raising Lehman Brothers Communications Partnership, anticipated to have committed capital totaling approximately $800 million. | W. James Peet, Managing Director and Head of the Communications Fund. |
| REAL ESTATE | Direct private equity investments in properties, real estate companies and service businesses ancillary to the real estate industry, primarily in North America, as well as in western and central Europe.<br><br>Currently raising Lehman Brothers Real Estate Partnership, anticipated to have committed capital of $1 billion and to close during the Partnership Account's award period. | Raymond Mikulich and Mark Walsh, Managing Directors and co-Heads of the Real Estate Fund. |
| FIXED INCOME | A portfolio of proprietary debt oriented investments with returns comparable to those generated by other private equity or equity related investments.<br><br>These may include investments in high yield debt securities, high leverage bank loans, emerging markets debt, tax-exempt debt, distressed securities, mezzanine debt instruments and securitized debt instruments. | Manager and investment team to be appointed to manage investments in this category, within the Private Equity Division. |
| FUND OF FUNDS | Direct investments in leveraged buyout, venture capital, and other investment funds managed by firms not affiliated with Lehman Brothers. | Manager and investment team to be appointed. |
| SPECIAL SITUATIONS | Any investment opportunities that meet the objectives of the Partnership Account and do not fit into the other asset categories. | As each opportunity arises, an investment project manager and an investment team will be appointed. |

7

LEHMAN BROTHERS

# YOUR AWARD CERTIFICATE SHOWS YOUR STARTING POINT



*The total amount shown on your personalized Partnership Account Award Certificate represents the investment amount at work for you. You will receive payments based on the investment performance of this total amount.*

The total amount shown on your Award Certificate is made up of two parts: your **base award** and the **leverage amount.** Before you begin participating in the Partnership Account, Lehman Brothers first sets the amount of your base award. Then the Firm adds leverage — essentially, an amount that represents borrowed capital — to increase the total amount that goes to work for you. The leverage amount provided for you is ten times the base award.

Please keep in mind that the total award amount is not literally your property. Rather, Lehman Brothers uses the total amount as a basis for determining the amount of payments you will receive.

## BASE AWARD AND LEVERAGE WORK TOGETHER

The illustration below shows how your base award is added to the leverage amount to form the total amount Lehman Brothers puts to work for you.



*Base Award + Leverage Amount = Total Amount at Work for You*

For example, assume your total Partnership Account award is $10,000. The $10,000 is made up of one part base award and 10 parts leverage.

| EXAMPLE: PARTNERSHIP ACCOUNT STARTING POINT | |
|---|---|
| Base Award | $909 |
| Leverage Amount | $9,091 |
| Total Amount at Work | $10,000 |
| Leverage Ratio (leverage-to-base) | 10-to-1 |

8

In addition to receiving payments from investment returns on the total award amount, you also receive payments equal to the base award — as long as the Partnership Account portfolio returns are sufficient and you meet the program's other requirements. However, the leverage amount is not paid out to you under any circumstances. Instead, it is "repaid" to the Firm.

## LEVERAGE MEANS MORE POTENTIAL GROWTH

By adding the leverage amount, Lehman Brothers puts more money to work in the Partnership Account portfolio. It's similar to when investors borrow money (for example, through a margin account) that they then invest. This technique allows them to invest a larger amount and thus increase their potential gains. Although the Partnership Account leverage amount is "repaid" to Lehman Brothers with interest, if the investments perform well, the leverage amount can magnify the payments to you.

### LOOKING FOR AN EVERYDAY EXAMPLE OF HOW LEVERAGE WORKS?

Using leverage to purchase an investment is like taking a bank loan to buy a house. When you buy a house, you make a down payment. The bank lends you the remaining money — this is your leverage.

Now, suppose you sell the house at a profit. You're required to pay back the loan amount, plus interest, to the bank. But the profit from the sale is yours to keep. That's how a small amount of money up front can produce returns that reflect a much larger investment.

*This example is intended only to give a simplified explanation of how leverage works. The Partnership Account offers advantages that a home mortgage does not — for example, you receive profits on portfolio assets without taking an ownership interest, and you are protected from personal loss.*

Lehman Brothers charges interest on the leverage amount it provides. For the Partnership Account 2000-2001, the interest rate charged is Lehman Brothers' long-term cost of funds. On June 15, 2000, this interest rate stood at 7.8%.

## YOUR AWARD CERTIFICATE SHOWS THE AMOUNT AT WORK FOR YOU

Your personalized Partnership Account Award Certificate, enclosed in this package, shows the maximum amount Lehman Brothers can put to work for you in the Partnership Account, including your base award and the leverage amount. The amount on your Award Certificate depends on your level within the Firm.

**Turn to your personalized Award Certificate, included in this package, to find the amount at work for you in the Partnership Account.**

9

# T I M E L I N E :   I N V E S T I N G   D U R I N G   T H E   A W A R D   P E R I O D



*Lehman Brothers intends to invest the amount shown on your Award Certificate over the 18-month period from July 1, 2000 through December 31, 2001 — known as the **award period.***

**July 1, 2000**

*December 31, 2001*

Throughout the award period, the Partnership Account Allocation Committee determines the allocation of assets among the investment categories described on page 7.

Within the category allocations, Lehman Brothers investment management teams identify potential investments. The investments are then subject to review and approval by the Private Equity Investment Committee.

The goal of the investment management teams is to select an exceptionally attractive portfolio of investments for the full amount of your Partnership Account award during the award period. However, if the Partnership Account is not fully invested or committed by December 31, 2001, the Firm may

decide to extend the award period. If your award amount is not fully invested, the total amount at work for you could be smaller than the total amount shown on your Partnership Account Award Certificate. The payments you will receive from the Partnership Account will be based upon the amount actually invested.

If the award amount is fully invested before the end of the award period, the Firm may decide to launch the next Partnership Account before December 31, 2001.

PARTNERSHIP ACCOUNT

# TIMELINE: WHEN YOUR ACCOUNT VESTS



*Your Partnership Account is 100% vested three years after the inception date (that is, on July 1, 2003), as long as you remain continuously employed by Lehman Brothers through that date.*

July 1, 2000                                                                                          July 1, 2003

Once you're vested, you're entitled to receive payments under the program from that time forward, even if you later leave the Firm. You will then automatically receive Partnership Account payments when other participants do.

Under the Partnership Account, vesting means you have a right to receive the returns generated by the portfolio investments, but it does not mean you have a direct ownership interest in any of the underlying portfolio investments.

11

---

### PURSUING AN ADVANCED DEGREE?

If you participate in the Partnership Account and leave before the vesting date to attend an approved degree program, special vesting provisions apply. The purpose of the special provisions is to ensure that employees who return to Lehman Brothers after receiving an MBA or other approved degree still benefit from participating in the Partnership Account.

Under these special provisions, your Partnership Account may vest after you receive your degree, return to Lehman Brothers, and are re-employed by the Firm for one full year. Your account will not vest earlier than the three-year anniversary of the inception date. For the provisions to take effect, you must:

♦ be an employee in good standing when you leave;

♦ leave the Firm to pursue an MBA or other degree approved by Lehman Brothers and successfully complete your degree program;

◊ receive a written offer of employment from Lehman Brothers;

◊ return to the Firm within four years of leaving and within one year after graduating;

◊ not have held a full-time job with a competing firm before returning; and

◊ be re-employed by the Firm for one full year.

If your future plans include returning to Lehman Brothers after attending school on a full-time basis, talk with your divisional Human Resources representative about the effect on your Partnership Account balance.

LEHMAN BROTHERS

Your account vests immediately if you're an active employee and one of the following events occurs after the inception date but before the vesting date:

◇ you retire after meeting the conditions for retirement under the Firm's qualified defined benefit pension plan, and you do not go to work for a competitor before July 1, 2003;

◇ your employment ends as a result of a disability (as defined in the enclosed plan document) or in the event of your death.

**If you leave Lehman Brothers before you are vested, your Partnership Account is forfeited.**

If you've left the Firm to pursue an approved degree, and while doing so, you become disabled or die, you are not entitled to the special vesting provisions above, and your Partnership Account is forfeited.

Additionally, if you leave Lehman Brothers or are terminated for any reason before you are vested on July 1, 2003, you receive no payments under the program, and your Partnership Account is forfeited.

12



PARTNERSHIP ACCOUNT

# TIMELINE: HOW YOUR PAYMENTS ARE DETERMINED



*As Partnership Account portfolio investments are sold, the payments you receive are determined as if the proceeds were allocated according to the following schedule.*

*July 1, 2000*              *Ongoing*





13

## A STEP-BY-STEP GUIDE TO ALLOCATING INVESTMENT PROCEEDS

The allocation schedule shown above is essentially for bookkeeping purposes only. No actual cash will change hands — except the payments made to you. The schedule shows only how Lehman Brothers determines the amount of your payments through the Partnership Account.

**Step 1:** Investment proceeds are first used to "pay" the interest costs on your leverage amount.

**Step 2:** Investment proceeds are next used to "repay" your full leverage amount. Repayments are made as investment proceeds are realized. This reduces your leverage amount as quickly as possible and lowers the interest costs on your leverage.

**Step 3:** Investment proceeds are then credited to your Partnership Account, up to the amount of your base award. If investment proceeds are not sufficient, you might not receive payment of the full amount of the base award.

**Step 4:** Any remaining investment proceeds are allocated between your Partnership Account and Lehman Brothers.

◇ The Firm's share, called its **carried interest,** is calculated so that, in most cases, the Firm receives 10% of all **profits** generated by the Partnership Account portfolio. Profits include all gains on investments, before interest charged on the leverage amount. (The purpose of the carried interest is to reimburse the Firm for the cost incurred in managing the investment portfolio.) For certain investments, particularly in the Fund of Funds category, the Firm's carried interest may be less than 10%.

◆ Your Partnership Account is credited with the remaining investment profits — generally, this means 90% of all profits from investments after interest charged on the leverage amount.

Please keep in mind that Partnership Account investments are considered high-risk. If the investments perform poorly, you might not receive any payments from the program. However, under no circumstances will Lehman Brothers ask you to contribute money to your Partnership Account.

**14**

---

### WHY DOES THE FIRM RECEIVE CARRIED INTEREST?

Investment managers that identify and manage the assets in private equity funds typically receive a management fee, plus a portion of the profits generated on fund investments. The manager's portion is known as carried interest and generally totals between 20% and 25% of all investment profits. Lehman Brothers serves as investment manager for the Partnership Account portfolio — but the Firm has decided to waive the management fee and to limit its carried interest to just 10%. In the Fund of Funds category, the carried interest received by Lehman Brothers will be reduced.

---

## REPAYMENT OF LEVERAGE IN FUTURE PARTNERSHIP ACCOUNTS

In future years, the program will contain a provision for **cross-collateralization.** Under this provision, any unpaid leverage that might be left in your account from a previous award period could be paid out of the current Partnership Account's investment proceeds. This might occur if the previous Partnership Account has not yet repaid all of its leverage amount out of its own investment proceeds. The cross-collateralization provision helps reduce the financial risk to Lehman Brothers, in exchange for the high level of leverage it extends to employees in the Partnership Account.

# TIMELINE: WHEN YOU RECEIVE PAYMENTS



*The Firm intends to keep Partnership Account portfolio investments at work for you until they reach their full value. Achieving maximum growth potential on these portfolio investments generally requires holding them for the long term. Then, as investments are liquidated, you receive cash payments.*



July 1, 2003                                                                                          Ongoing

## IF INVESTMENTS ARE LIQUIDATED BEFORE THE VESTING DATE

You receive payments only after you become fully vested. However, some investments could be liquidated and proceeds could be realized by the Firm before the end of the vesting period (that is, before July 1, 2003). In that event the proceeds will continue to earn a return, but payments to you will be deferred until the vesting date.

## IF INVESTMENTS ARE LIQUIDATED AFTER THE VESTING DATE

Most likely, you will receive the full value of your Partnership Account gradually, following the three-year vesting date. That's because the private equity investments on which your payments will be based generally take additional time to mature. Therefore,

**You receive Partnership Account statements to help you keep track of investment performance.**

15

any payments you receive upon vesting may represent only a fraction of the total amount you may ultimately receive under the Partnership Account.

After July 1, 2003, Lehman Brothers anticipates combining investment proceeds into periodic payments that you will receive once each year.

## IF INVESTMENTS ARE LIQUIDATED AFTER YOU LEAVE LEHMAN BROTHERS

As long as you are fully vested, you receive ongoing payments automatically whenever they are made — even if you are no longer a Lehman Brothers employee.

LEHMAN BROTHERS

## STATEMENTS HELP YOU TRACK INVESTMENT PERFORMANCE

During the vesting period and beyond, Lehman Brothers will send you account statements, to help you keep track of the Partnership Account portfolio's investment performance. However, it might not always be possible to accurately state the value of certain portfolio investments. Many portfolio investments remain valued at cost until an event occurs that suggests a different valuation is appropriate.

## OPTION TO COMPLETE PAYMENTS AFTER FIVE YEARS

Five years from the start of the award period (that is, on July 1, 2005), Lehman Brothers can decide to make full payments under the Partnership Account based on the fair value of any remaining investments in the portfolio, as determined by the Firm. The Firm also can decide to pay an amount equal to the fair value of the portfolio on any future anniversary of this date. In essence, the Firm can make the payments that would be required if all investments were liquidated at their fair value. This option allows the Firm to close out the Partnership Account 2000-2001 after a period of five years.

## TAX TREATMENT OF PAYMENTS

Payments you receive through the Partnership Account are considered taxable compensation income at the time you receive them. The payments are subject to ordinary income tax rates. Lehman Brothers will withhold tax from your payments as required by law in the United States and other countries.

If you are an employee in the United States, you are subject to FICA tax (that is, Social Security and Medicare taxes) at the time your Partnership Account vests — even if you do not receive a cash payment under the program at that time. To help you manage the tax withholding liability, Lehman Brothers plans to advance the tax payment money to the IRS on your behalf. The amount of the tax will then be withheld from your next bonus check or from other payments that may be due to you.

16

PARTNERSHIP ACCOUNT

# E X A M P L E



*The Partnership Account provides payments to you based on the performance of portfolio investments. Look over the example on the next page to see how the Partnership Account can add to the other parts of your Lehman Brothers compensation.*

---

**WHAT DOES THE EXAMPLE SHOW?**

The following hypothetical example is intended to illustrate the possible payments that you could receive from participating in a single Partnership Account. Keep in mind that you do not receive the amount shown on your Award Certificate — your maximum payment equals your base award plus the applicable portion of returns from Partnership Account investments.

---

The example uses the following assumptions:

◇ $10,000 Award Certificate

◇ Full payment after four years

◇ 7.8% interest cost on leverage amount

◇ Before income taxes and FICA

Naturally, if these assumptions and rates of return are different from actual results, your Partnership Account payments will be different from the dollar amounts shown.

17



LEHMAN BROTHERS

*Your Payments Vary Depending on Rate of Return*

| | Allocation Schedule | 25% Rate of Return | 40% Rate of Return |
|---|---|---|---|
| JULY 1, 2000 | Award period begins | $909 base award <br> + $9,091 leverage amount <br> $10,000 total | $909 base award <br> + $9,091 leverage amount <br> $10,000 total |
| | Total investment proceeds <br> *($10,000 invested, compounded annually)* | $24,414 | $38,416 |
| STEP 1 | Interest cost on leverage amount <br> *(7.8% x $9,091, compounded annually)* | - $3,186 | - $3,186 |
| STEP 2 | Leverage amount credited to Firm <br> **(equals amount shown above)** | - $9,091 | - $9,091 |
| STEP 3 | Base award credited to employee <br> **(equals amount shown above)** | - $909 | - $909 |
| STEP 4 | Allocation of profits <br> ◇ Firm's share <br> *(10% x [total investment proceeds - $10,000])* | - $1,441 | - $2,842 |
| | ◇ Employee's share <br> *(Total investment proceeds – Steps 1 through 4)* | $9,787 | $22,389 |
| JULY 1, 2004 | **Total employee cash payment** <br> *(Step 3 + Step 4)* | **$10,696** | **$23,298** |

18

# FOR YOUR REFERENCE

The Employee Partnership Account is a bonus plan; as such
it is not subject in any way to the provisions of the Employee
Retirement Income Security Act of 1974 (ERISA), as amended.

The Employee Partnership Account may be amended, suspended,
or terminated at any time.

In the event of any conflict between the plan documents
(including, but not limited to, the Award Certificate and the
Employee Partnership Account Plan Document) and the
information in this booklet, the plan documents will govern.

Nothing in this booklet or the plan documents shall be construed
to create or imply any contract of employment between you and
Lehman Brothers or any affiliate, any right to continue to be
employed by Lehman Brothers or any affiliate, or any right to
be re-employed if your employment terminates.

The Partnership Account is *unfunded,* which means no assets
are actually held in trust or dedicated to the Partnership Account.
From the time you become entitled to receive payments through
the Partnership Account, you do not have rights greater than
those of a general, unsecured creditor of the Firm. All payments
to you will be made by Lehman Brothers out of its general
corporate funds, and you have no interest in any specific
investments made by Lehman Brothers in connection with
the Partnership Account.

Partnership Account payments are not considered eligible
compensation under the Lehman Brothers Stock Award Program,
any Lehman Brothers retirement plan, the Tax Deferred Savings
Plan, or any of the Firm's medical, disability, life insurance, or
other insurance plans.

You may want to consult your local tax authorities or personal tax
consultant for details on the impact of tax laws in effect at the
time your benefits become taxable.

If you have any questions about the Partnership Account in
general or about your personalized Award Certificate, call the
Compensation Department at 212-526-5126 (5-5126).

19

**EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| LEHMAN BROTHERS INC., | Case No. 08-01420 (SCC) SIPA |
| Debtor. | |

**DECLARATION OF KAREN M. CHAU IN SUPPORT OF**
**THE TRUSTEE'S TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION TO**
**GENERAL CREDITOR CLAIMS (EMPLOYEE CLAIMS)**

Pursuant to 28 U.S.C. § 1746, I, Karen M. Chau, hereby declare as follows:

1.    I am an attorney duly admitted to practice in this Court and an associate at the firm of Hughes Hubbard & Reed LLP, attorneys for James W. Giddens (the "Trustee"), as trustee for the liquidation of the business of Lehman Brothers, Inc. ("LBI" or the "Debtor") under the Securities Investor Protection Act of 1970, as amended ("SIPA").

2.    I submit this declaration (the "Declaration") in support of the two hundred thirteenth omnibus objection to general creditor claims (the "Two Hundred Thirteenth Omnibus Objection to General Creditor Claims").

3.    On behalf of the Trustee, I have participated in the analysis of the general creditor proofs of claim (the "Proofs of Claim") listed as "Non-LBI Employee Claims" on Exhibit A annexed to the Two Hundred Thirteenth Omnibus Objection to General Creditor Claims, including the terms of any employment contracts attached to the Proofs of Claim, certain information from the LBI general claims register as maintained by the Trustee's claims agent, and records of the LBI estate.

4.    Based on the analysis of the Proof of Claim referenced above, the Trustee has determined that the Proofs of Claim listed on Exhibit A as "Non-LBI Employee Claims" assert a

claim for compensation including, but not limited to, wages (the "Claimed Compensation") for which LBI is not liable, as the claimed compensation was not earned or awarded pursuant to employment with LBI.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 28, 2014

/s/ Karen M. Chau

Karen M. Chau
Associate, Hughes Hubbard & Reed LLP

**EXHIBIT D**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
|       LEHMAN BROTHERS INC., | Case No. 08-01420 (SCC) SIPA |
|                          Debtor. | |

## DECLARATION OF TIMOTHY HURLEY IN SUPPORT OF THE TRUSTEE'S TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS (EMPLOYEE CLAIMS)

Pursuant to 28 U.S.C. § 1746, I, Timothy Hurley, hereby declare as follows:

1.      I am a Principal of Deloitte Transactions and Business Analytics LLP.  James W. Giddens (the "Trustee"), as trustee for the SIPA liquidation of Lehman Brothers Inc. ("LBI"), has duly authorized me to make and submit this declaration (the "Declaration") in support of the Trustee's two hundred thirteenth omnibus objection to general creditor claims (the "Two Hundred Thirteenth Omnibus Objection to General Creditor Claims").[1]

2.      The facts set forth in this Declaration are based upon my personal knowledge, upon information and belief, and/or upon the proofs of claim listed on Exhibit A attached to the Two Hundred Thirteenth Omnibus Objection to General Creditor Claims, certain information from the LBI general claims register as maintained by the Trustee's claim agent, and certain information from the books and records of the LBI estate (the "Books and Records"), analyzed by me or other personnel under my supervision and direction.  If called and sworn as a witness, I could and would testify competently to the matters set forth herein.

---

1.   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the motion.

3.      In the context of my services for the Trustee, I am involved in assisting with the

Trustee's general creditor claim reconciliation process.  Accordingly, I and personnel under my

supervision and direction have analyzed the claims asserted against the LBI estate listed on

Exhibit A and the claim asserted against the LBI estate listed under the heading "401(k) Claim"

on Exhibit A annexed to the Two Hundred Thirteenth Omnibus Objection to General Creditor

Claims (the "Proofs of Claim"), certain information from the Books and Records, and the LBI

general claims register as maintained by Trustee's claims agent.

4.      Based on our analysis referred to in paragraphs 2 and 3 above, the claim listed on

Exhibit A and marked as a "401(k) Claim" asserts a claim based upon 401(k) savings plan

accounts (the "401(k) Accounts").  The Books and Records do not show that LBI held securities

or cash related to the 401(k) Accounts on behalf of the claimants listed on the Proof of Claim

listed as "401(k) Claim" on the Filing Date.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on February 28, 2014

                                                    /s/ Timothy Hurley
                                                    Timothy Hurley
                                                    Principal, Deloitte Transactions and Business
                                                    Analytics LLP

**EXHIBIT E**

# Lehman Brothers Savings Plan

*Summary Plan Description*
*January 1, 2008*

**This document constitutes part of a prospectus covering securities that have been registered under the Securities Act of 1933.**

Lehman Brothers Savings Plan Summary Plan
Description.................................................................2
    Plan Document Controlling ..........................................2
Eligibility ...................................................................3
Joining the Plan .........................................................3
    Types of Accounts and Contributions ...........................3
    Participation .............................................................3
Contributions .............................................................3
    "Pay" .......................................................................4
    Limits on Elective Deferrals.........................................4
    Catch-Up Contributions...............................................4
    Reduction of Elective Deferral Limit - Important for
    New Employees..........................................................4
Employer Contributions—Basic and Matching ...............5
    Twelve Month Service Requirement ..........................5
    Eligibility upon Reemployment...................................5
    Types of Employer Contributions...............................5
    Examples ..................................................................5
    In this example $3,000 of the annual contribution
    represents money actually contributed by the
    Participant; the other $3,000 is the Employer
    Contribution..............................................................6
    Vesting in Employer Contributions.............................6
    Form of Contribution/Investment................................6
Military Service ...........................................................6
Rollover Contributions ................................................6
Your Investments........................................................6
    Investing in a Company Stock Fund ............................7
    Life Cycle Funds........................................................7
    Information Available..................................................7
    Section 404(c) Plan ...................................................8
    Investment Performance Summary ............................9
    Investment of Current Contributions .........................10
    Valuation Date(s) ....................................................10
Benefit Statements ...................................................10
Designating a Beneficiary...........................................10
    Domestic Partners ...................................................10
    New Designations Required after Plan Mergers......11
Changing Your Elections ............................................11
    Changing Your Contribution Rate .............................11
    Suspending Your Contributions ...............................11
    Changing Investment of Future Contributions .........11
    Transferring Existing Account Balances ...................11
    Limitations on Transfers...........................................12
    Redemption Fees ....................................................12
    Blackout Periods .....................................................12
Vesting.....................................................................12
    Years of Vesting......................................................12
    Service with Affiliates...............................................12
    Additional Vesting Rules...........................................12
    Breaks in Service .....................................................12
    Military Leave ..........................................................13
    Forfeiture of Non-vested Employer Basic and
    Matching Contributions.............................................13
Withdrawals ..............................................................13
    Withdrawal from your Rollover Accounts .................13
    Age 59-1/2 Withdrawals...........................................13
    Hardship Withdrawals .............................................13
    Immediate and Significant Financial Need..............14
    How to Apply for a Hardship Withdrawal ................14

Minimum Required Distributions................................14
Tax Consequences of Withdrawals ..........................14
After-Tax Contributions in Accounts Transferred from
    E.F. Hutton Plans...................................................14
Final Distributions.....................................................14
    Distribution upon Termination of Employment or
    Disability .................................................................14
    Distribution upon Death ...........................................15
    Valuation.................................................................15
    Payment Procedures ...............................................15
    Restrictions on Resale of Common Stock ...............16
    Incompetent or Missing Payees................................16
    Miscellaneous .........................................................16
Tax Consequences of Withdrawals/Distributions.........16
    Withdrawal of After-tax Contributions ......................16
    Withdrawal of Roth Contributions .............................16
    Stock Distributions ..................................................17
Plan Loans ...............................................................17
Non-Alienation of Benefits/Qualified Domestic Relations
Orders .....................................................................18
Voting of Common Stock and Other Securities ...........18
Expenses..................................................................18
Top-Heavy Plans ......................................................18
Special Provisions Applicable to Former Neuberger
Berman Plan Participants...........................................18
    Pension Account .....................................................19
    In-service withdrawals from your Profit Sharing
    Account ...................................................................19
    New Beneficiary Designations Required .................19
    Domestic Partners ...................................................19
    Spousal rights to Pension Account ...........................19
    Additional Forms of Death Benefits Available for
    Pension and Profit Sharing Accounts .....................19
    Withdrawal of After-tax Contributions ......................19
Benefit Claims and Appeal Procedure ........................20
Plan Amendment or Termination ...............................20
Your Rights Under ERISA...........................................20
    Prudent Actions by Plan Fiduciaries.........................21
    Enforce Your Rights.................................................21
    Assistance With Your Questions ..............................21
Administrative Facts ..................................................21
    Plan Name ..............................................................21
    Plan Sponsor ..........................................................21
    Participating Employers ...........................................21
    Employer Identification Number................................21
    Plan Number ...........................................................21
    Plan Type ................................................................21
    Plan Administrator....................................................21
    Trust Fund ...............................................................22
    Plan Year ................................................................22
    Payment of Benefits.................................................22
    Agent for Service of Legal Process .........................22
Securities Act of 1933 ...............................................22
Tax Effects of the Plan on the Company ....................22
Information about the Company and the Company's
Common Stock...........................................................22
Lehman Brothers Retirement Service Center .............24
Lehman Brothers Intranet ..........................................24

# Lehman Brothers Savings Plan Summary Plan Description

The Lehman Brothers Savings Plan ("Plan") is a 401(k) plan that provides you with an easy and convenient way to save toward your retirement. There have been various changes to the for 2008 including:

- The addition of a new Roth 401(k) contribution feature to the Plan (see the "Contributions" section on page 3)

- The 50% limit on investments in the Lehman Brothers Common Stock Fund has been reduced to 20% (see the "Your Investments" section on page 6)

- Basic and Employer Contributions for the 2007 and later plan years will be invested according to the employee's investment elections (see the "Employer Contributions – Basic and Matching" section on page 5)

- The Plan's default investment option has been changed to the Fidelity Freedom Fund available through the Plan with the target date that "best" corresponds to the participant's 65th birthday.

By participating in the Plan through traditional pre-tax contributions, you receive an immediate tax benefit since you are saving with tax-deferred dollars. In other words, your Plan contributions are automatically deducted from your paycheck before they are taxed.

By participating in the Plan through Roth contributions, you have the potential of withdrawing your contributions, along with the investment experience on these contributions, tax-free.   Unlike traditional 401(k) contributions, Roth contributions are automatically deducted from your paycheck on an *after-tax* basis.

You can choose to have both your pre-tax and Roth contributions invested among a variety of investment funds, each with a varying level of risk. Lehman Brothers Holdings Inc. ("Company") and its participating affiliates (together referred to as the "Employers") may also make contributions to the Plan on behalf of Participants who meet certain eligibility requirements.

You will not be taxed on your traditional pre-tax contributions, any Employer contributions or any investment earnings until you receive a distribution from the Plan. A distribution of these amounts when you terminate employment is taxable (and if you terminate before age 55 and take your distribution before age 59-1/2, may be subject to an additional 10% tax) unless "rolled over." You may generally continue the tax-deferred status of these funds by rolling over your distribution to an individual retirement account (IRA) or to a new employer's eligible retirement plan.

Roth 401(k) contributions, including any investment performance on these contributions, can be withdrawn tax-free as long as the withdrawal is a qualified distribution (at least 5 tax years from your first Roth 401(k) contribution and you have attained age 59 ½ , become disabled, or are deceased).

The Employee Benefit Plans Committee ("Committee"), which is the Plan administrator, has designated Fidelity Investments ("Fidelity") as the recordkeeper for the Plan and as its representative to discharge a number of its responsibilities under the Plan. Fidelity has established the Lehman Brothers Retirement Service Center ("Plan's Service Center") for you to obtain information regarding the Plan and to assist in the processing of the transactions outlined in this Summary Plan Description. To access the Plan's Service Center, log on to Fidelity's NetBenefits™ web site at netbenefits.fidelity.com, or call 1-866-Lehman6 (1-866-534-6266).

In addition to enrolling in the Plan, you may make and change elections to your investment fund options, access information about the Plan, and access your account through the Plan's Service Center.

**Plan Document Controlling**

This booklet is the summary plan description for the Plan, as amended through December 31, 2007. The booklet summarizes the most important provisions of the Plan, but it does not provide all the details of the Plan. These can be found in the official Plan document. The Plan document is always used in cases requiring a legal interpretation of the Plan. If there is any difference between the Plan document (as in effect at the relevant time) and this booklet, your rights will be based on the provisions of the Plan document. However, your rights under the Plan document may be modified as required or permitted under applicable law to take account of changes in Plan operation that are made to reflect changes in applicable law even if these changes have not yet been formally reflected in the Plan document. You may obtain a copy of the Plan document from the Plan's Service Center.

If you have any questions about any information in this booklet, contact the Plan's Service Center.

The Company reserves the right to amend the Plan, in whole or in part, at any time, or to terminate it at any time with or without prior notice.

Nothing in the Plan or in this Summary Plan Description constitutes or reflects any contract of continuing employment or alters in any way the "at-will" nature of

each employee's employment with the Employers. Nothing in the Plan or in this Summary Plan Description affects your Employer's ability to treat you without regard to its effect on your benefits under the Plan.

# Eligibility

You are eligible to participate in the Plan on your first day of employment by an Employer if you are paid on an hourly, salaried or commission basis, except if (1) you are employed outside of the United States, unless you are paid through a U.S. based payroll in U.S. dollars, (2) you are employed in a special purpose program (such as student intern), (3) you do not have a valid Social Security Number, or (4) you are a leased employee, or you perform services for an Employer under an arrangement in which you are treated as a consultant, an independent contractor or an employee of another entity.

# Joining the Plan

## Types of Accounts and Contributions

Most participants will have multiple accounts under the Plan (collectively, the "accounts"), each containing a specific type of contribution that is separated for recordkeeping purposes:

- Before-Tax Account and Catch-up Contributions Account ("Before-Tax Accounts")

- Roth 401(k) Account and Roth Catch-up Contributions Account ("Roth Accounts")

- Employer Contributions Account

- Rollover Account

- After-Tax Rollover Account

These accounts hold, as applicable, the following respective types of contributions (and any investment gains or losses you may have had on these contributions):

- Before-Tax Contributions and Catch-Up Contributions (collectively, "Before-Tax Contributions");

- Roth Contributions and Roth Catch-Up Contributions (collectively, "Roth Contributions");

- Employer Basic Contributions and Employer Matching Contributions (collectively, "Employer Contributions"); and

- Before-Tax Rollover Contributions and After-Tax Rollover Contributions (collectively, "Rollover Contributions").

## Participation

If you are eligible to participate in the Plan, you may begin making Before-Tax or Roth Contributions by enrolling through the Plan's Service Center by contacting Fidelity NetBenefits™ at netbenefits.fidelity.com or by calling Fidelity at 1-866-Lehman6 . By enrolling in the Plan you authorize your payroll deductions to begin and you become a Plan Participant. Your contributions will continue until you change your election through the Plan's Service Center at netbenefits.fidelity.com or the phone number above, or they are suspended (such as when a limitation on the amount you may contribute becomes applicable). If you do not make Before-Tax or Roth Contributions to the Plan but you are eligible to receive an Employer Basic Contribution, you will become a Plan Participant as of the date the first Employer Basic Contribution is credited to your Employer Contributions account under the Plan.

You may rollover a qualifying distribution you receive from another plan, as either a participant, a surviving spouse, or an alternate payee ("Rollover Contribution"), as described in the section entitled "Rollover Contributions" on page 6. Your Rollover Contributions are tracked separately within your Plan account(s), and you will be asked to specify the investment fund(s) in which you want your Rollover Contribution initially invested. If you are not already a Plan Participant, you will become a Plan Participant as of the date the Plan receives your Rollover Contribution.

When you become a Participant, you will be asked to make your investment elections and name a beneficiary to receive your account balance if you should die (see the section entitled "Designating a Beneficiary" on page 9).

Your right to make contributions to the Plan will cease when you are no longer employed by an Employer or are transferred to an ineligible employment status.

# Contributions

You can contribute between 1% and 50% (in 1% increments) of your Pay to the Plan as Before-Tax or as Roth Contributions. You must select the percentage of your Pay you wish to contribute in each payroll period, whether the contributions will be Before-Tax Contributions or Roth Contributions, and specify the investment fund(s) in which you want your contributions invested. Payroll deductions of your contributions will begin as soon as administratively practicable after your enrollment process is completed, which is usually two to three weeks after your instructions are received. Contributions are only made through payroll deduction subject to the percentage limits outlined above.

By making Before-Tax Contributions, you defer paying federal (and in most states, state and local) income taxes on the portion of your Pay that is reduced by your Before-Tax Contributions. However, your Before-Tax Contributions do not reduce your Social Security taxes or benefits, or any other pay-related benefits such as life insurance and disability coverage, or pension plan benefits.

By making Roth Contributions, you will not have the benefit of tax deferral now but you will have the potential to receive a tax free withdrawal from the Plan in the future.  Roth Contributions do not affect your taxable income.

### "Pay"

"Pay" means the total cash earnings you receive from an Employer in a Plan Year, determined before taxes and before giving effect to any salary reduction agreement. "Pay" does not include any compensation deferred or credited during the calendar year under any non-tax-qualified deferred compensation program, severance, other post-termination payments, any foreign currency earnings, or earnings that are paid in stock. In accordance with Internal Revenue Service ("IRS") regulations, the Pay taken into consideration under the Plan is subject to an annual maximum limit ($230,000 for 2008, subject to subsequent cost of living adjustments).

Contributions are subject to the availability of Pay after other required deductions are taken, such as your contribution to the Lehman Brothers Group Insurance Plan and other welfare plans, and any withholding from Pay required by law.

### Limits on Elective Deferrals

The total amount of Before-Tax and Roth Contributions are subject by law to an annual maximum dollar amount ("Elective Deferral Limit").  The Elective Deferral Limit for calendar year 2008 is $15,500.  The elective deferral limit may be increased in future years by the IRS.

The Elective Deferral Limit applies to all Before-Tax and Roth Contributions and similar contributions you make to any other employer-sponsored savings or profit-sharing plan in a calendar year. Once you reach the Elective Deferral Limit under this Plan, your contributions under this Plan will be suspended automatically for the rest of the year (but will resume with the first payroll period of the following year, unless you elect to continue to suspend your contributions as described in the section "Changing Your Elections" on page 10).

The Internal Revenue Code may further limit the contributions made on behalf of individuals who are deemed "highly compensated employees." If you are

affected by these limitations, the Plan's Service Center will notify you.

### Catch-Up Contributions

If you will be age 50 or older by the end of a Plan Year and wish to contribute more than the Elective Deferral Limit for that Plan Year (discussed above) or more than 50% of your Pay, you may make additional "Catch-Up Contributions" to the Plan. You may make a Catch-Up Contribution each pay period of between 1% and 25% of your eligible compensation by making a separate election through the Plan's Service Center by contacting Fidelity NetBenefits™ at netbenefits.fidelity.com or by calling Fidelity at 1-866-Lehman6.  The maximum annual Catch-Up Contribution for calendar years 2008 is $5,000.   The annual Catch-up Contribution limit may be increased in future years by the IRS.

When electing to make Catch-Up contributions, you must select the percentage of your Pay you wish to contribute in each payroll period and whether the contributions will be Before-Tax Contributions or Roth Contributions,  Note that you Before-Tax/Roth election may be different than your election for your regular contributions towards the Elective Deferral Limit.

You may make Catch-Up Contributions before or after you have already reached one of the otherwise applicable contribution limits.

### Reduction of Elective Deferral Limit - Important for New Employees

You are responsible for monitoring compliance with the Elective Deferral Limit and Catch-up Contribution limit in any year in which you are participating in another employer's plan. For example, if you start contributing under the Plan in a year during which you made before-tax or roth contributions to a prior employer's 401(k) plan, your Elective Deferral Limit and/or Catch-up Contribution limit under this Plan will be reduced by the contributions you made to that other plan in the same year.

If you exceed the Elective Deferral Limit or Catch-up Contribution limit because you made contributions to another employer's plan, you may request a return of Before-Tax or Roth Contributions you made during the year that exceed the limit. Your request must be made to the Plan's Service Center no later than February 15 of the year following the year in which the excess Before-Tax or Roth Contributions were contributed to the Plan. Your request must include a statement that the Elective Deferral Limit will be exceeded unless the excess Before-Tax or Roth Contributions are returned and your agreement to forfeit any Employer Matching

Contributions credited to your account in the Plan and attributable to such excess contributions. Any excess Before-Tax or Roth Contributions that may be returned to you will be returned by April 15 of the year following the year in which such contributions were made to this Plan. Excess contributions not distributed to you under this procedure will be included in your current taxable income, will remain in the Plan and will also be taxable upon later distribution from the Plan.

# Employer Contributions—Basic and Matching

The Employer will make an Employer Contribution for Basic and Matching Participants as described below. A "Basic Participant" for a Plan Year in which an Employer Contribution is made is a Participant who (1) was originally hired prior to January 1 of the Plan Year, (2) has at least one year of service as of the end of that Plan Year, (3) is on the Employer's payroll on the last day of that Plan Year, and (4) is not:

- an hourly, salaried or commissioned employee whose "Compensation" exceeds $50,000; or

- in any position excluded by the Employer as described in the Employer's job classifications.

A "Matching Participant" for a Plan Year in which an Employer Contribution is made is a Participant who (1) was originally hired prior to January 1 of that Plan Year, (2) has at least one year of service as of the end of that Plan Year, (3) was a U.S. benefits eligible employee at some point during that Plan Year, (4) is employed by Lehman Brothers Holdings Inc. or certain of its affiliates which it treats as within its "control group" for these purposes on the last day of that Plan Year, (5) has Compensation of $200,000 or less, and (6) is not a Basic Participant.

The "Compensation" used to determine your eligibility for Employer Contributions is "W-2 earnings" (i.e., the amounts that are reportable on your IRS Form W-2 as earnings) plus any contributions made to the Plan.

## Twelve Month Service Requirement

A "year of service" generally means a 12-month period, beginning with the month you start work for an Employer, during which you remain employed by an Employer or an affiliate. A break in service of less than a year will count toward the required 12-month period, but not toward meeting the requirement of employment at year-end. Service with an 80% or more owned subsidiary of the Company generally counts for the purpose, whether or not the subsidiary participates in the Plan. For special rules that may apply to service with

certain prior employers or before the affiliate was acquired, please contact the Plan's Service Center.

## Eligibility upon Reemployment

If you leave the Employer and are later reemployed as an employee eligible to participate in the Plan, you will be eligible for Employer Contributions in the year you are rehired if all of other Employer Contribution requirements are met, and (i) you previously made contributions to the Plan or were otherwise vested in any amounts under the Plan, or (ii) your break in service was less than five years. Otherwise, you will generally be required to meet the 12 months of service requirement again in the same manner as a new employee. Please contact the Lehman Brothers HR Service Center at 212-526-2363 for any questions you have regarding your individual situation.

## Types of Employer Contributions

There are two types of Employer Contributions — Employer Basic Contributions and Employer Matching Contributions. Participants may be eligible to receive Employer Contributions as follows.

| Type of Participant | Type of Contribution |
|---|---|
| Basic Participant | Basic Contribution of $500 |
| | Matching Contribution equal to the Participant's Before-Tax and Roth Contributions for the Plan Year to a maximum of $3,500 |
| Matching Participant | No Basic Contribution |
| | Matching Contribution equal to the Participant's Before-Tax and Roth Contributions for the Plan Year to a maximum of $4,000 |

A Plan Participant who is neither a Basic Participant nor a Matching Participant is not eligible to receive either Employer Basic or Matching Contributions.

## Examples

**Example One:** The following is an illustration of Employer Contributions made to the account of a Basic Participant whose Pay is $30,000 and who has contributed 5% of Pay as Before-Tax Contributions.

| | |
|---|---|
| Before-Tax Contributions | $1,500 |
| Employer Matching Contribution (up to first $3,500 of Before-Tax Contributions) | $1,500 |

| | |
|---|---|
| Employer Basic Contribution | $500 |
| Total of Before-Tax and Employer Contributions | $3,500 |

In this example only $1,500 of the annual contribution represents money actually contributed by the Participant; the other $2,000 is the Employer Contribution.

**Example Two:** The following is an illustration of Employer Contributions made to the account of a Matching Participant whose Pay is $60,000 and who contributed 5% of Pay as Roth Contributions.

| | |
|---|---|
| Roth Contributions | $3,000 |
| Employer Matching Contribution (up to first $4,000 of Roth Contributions) | $3,000 |
| Total of Roth and Employer Contributions | $6,000 |

In this example $3,000 of the annual contribution represents money actually contributed by the Participant; the other $3,000 is the Employer Contribution.

**Vesting in Employer Contributions**

You will become fully vested (have a nonforfeitable right) to Employer Contributions made on your behalf for Plan Years beginning on and after January 1, 2005 once you have 3 years of vesting service. (Employer Contributions for years prior to 2005 are fully vested regardless of your years of service.) If you leave before you have 3 years of vesting service, you will forfeit all non-vested Employer Contributions once you take distribution of your account or your break in service is five years or greater. (see the section entitled "Vesting" on page 11)

**Form of Contribution/Investment**

The Employer Contributions allocated to your account are invested in accordance with your investment elections for your Before-Tax/Roth Contribution accounts..

# Military Service

If you terminate employment to enter eligible military service, credit for vesting will be given for that service if you return to the Company in the period your reemployment rights are protected by law. Upon your return, you will be entitled to make Before-Tax or Roth Contributions for the period of military service and receive related Employer Contributions, up to the amount permitted had you continued in employment. For more information, please contact the Plan's Service Center.

# Rollover Contributions

If you are a Plan Participant or you are eligible to become a Plan Participant, you may make a contribution to the Plan of certain qualifying rollover distributions. Rollover Contributions may include eligible rollover distributions from qualified plans, IRAs, 403(b) tax-sheltered annuities, 457 deferred compensation plans sponsored by governmental entities, and direct transfers of after-tax contributions from another such plan. Rollover Contributions to your Roth 401(k) account may come from another Roth 401(k) or Roth 403(b) account. Roth IRA rollovers are not permitted. If you are your spouse's beneficiary under any such plan (or are entitled to a portion of your spouse's benefits under such a plan pursuant to a qualified domestic relations order), an eligible rollover distribution you receive from such plan (but not from an IRA) upon the death of your spouse (or as an alternate payee under such order) may be similarly rolled over to the Plan.

To make a Rollover Contribution, you must comply with the Plan procedures (which can be obtained through the Plan's Service Center). You must provide written certification to the Plan's Service Center (that is satisfactory to the Plan's Service Center) that such contribution is eligible for rollover to this Plan. In addition, you must elect how your rollover contribution is to be invested. This election is separate from the investment election you make for your Before-Tax or Roth Contributions. You may not elect to invest more than 20% of your Rollover Contribution in the Lehman Brothers Common Stock Fund. Any elections you later make to transfer amounts between investment funds will apply to all contributions credited to your Plan account(s), including Rollover Contributions.

# Your Investments

The Plan is based on the premise that individual Participants (or their beneficiaries) have many differing financial situations, retirement goals, and risk tolerances, and are consequently best able to determine the investments most appropriate to their own situation. Accordingly, each Participant or beneficiary has the responsibility to make his or her own decisions as to the investment of the assets in his or her own account(s).

The Plan offers you the opportunity to consider a broad range of different investment funds for the investment of your account balances — all with varying degrees of risk. You elect your initial investment fund choices through the Plan's Service Center when you begin participating in the Plan and/or when you make a Rollover Contribution to the Plan. You may then change your selections as described in the section entitled "Changing Your Elections."

Please note that your investment elections for your contributions will apply to your Before-Tax Contributions, Roth Contributions, Catch-Up Contributions, Roth Catch-Up Contributions and any loan repayments you make to the plan (as described in the section "Plan Loans" on page 16).

In choosing any investment fund for your account(s) under the Plan, you should realize that you may be investing in securities whose market values will change — down as well as up. Therefore, there is no guarantee that the money you put into the funds will retain its original value or that your account(s) will grow while in these funds.

Presently, you may invest your account balances in any of the funds listed under the heading "Investment Performance Summary", subject to any restrictions imposed by a particular fund as described in the information provided for the fund and the restrictions described below on investments in the Company Stock funds. You may invest your entire account(s) in one fund, or divide your investments among several funds subject to the limitations described under the heading "Transferring Existing Account Balances." Except for the Lehman Brothers Common Stock Fund, which is created by the express terms of the Plan, the Committee may add or eliminate funds or investment alternatives at any time.

Certain investment funds have restrictions on transfers into and out of such funds and may charge a fee for transfers made prior to a minimum holding period. For further information regarding the restrictions or fees, contact the Plan's Service Center.

### Investing in a Company Stock Fund

For your long-term retirement security, you should give careful consideration to the importance of a well-balanced and diversified investment portfolio, taking into account all your assets, income and investments. The Lehman Brothers Common Stock Fund is invested exclusively in the common stock of a single company.[1] Each of the other investment funds is invested in a number of securities (such as stocks, bonds, fixed rate contracts, etc. depending on the fund's investment objective), not just the stocks or bonds of one company. There is a risk to holding substantial portions of your assets in the securities of any one company, as individual securities tend to have wider price swings, up and down, than investments in diversified funds.

---

[1] The Lehman Brothers Common Stock Fund maintains a small reserve invested in short-term fixed income investments for liquidity purposes.

### Life Cycle Funds

The available investment funds include "Life Cycle Funds" -- a series of Fidelity Freedom Funds which invest in other Fidelity mutual funds to produce different mixes of equity and fixed income investments, depending on the "target retirement date" adopted by the Fund. Each Fund moves gradually to a more conservative asset allocation over time. If you wish to use this approach to investing, please note that the "target retirement date" you use in selecting among the various Freedom Funds need not be your planned retirement date. For example, if you expect to keep your funds invested in the Plan while you take partial distributions over an extended period following retirement, you should consider whether or not to select in whole or in part a Fund or Funds that have a target retirement date at some time after your retirement.

### Information Available

Fund prospectuses and historical performance for each of the investment options are available from the Plan's Service Center at netbenefits.fidelity.com or 1-866-Lehman6 (1-866-534-6266). You should obtain and read this information carefully before you invest.

On request, the Plan's Service Center will provide you with: the latest information available regarding annual operating expenses of each investment option (e.g., investment management fees, administrative fees, transaction costs) which reduce the rate of return and the aggregate amount of such expenses expressed as a percentage of average net assets of the investment options; copies of any prospectuses, financial statements and reports, and of any other materials relating to the investment options to the extent such information is provided to the Plan; information concerning the past and current investment performance of each investment option, determined, net of expenses, on a reasonable and consistent basis; a list of the assets comprising the portfolio of each option other than mutual funds, the value of each such asset (or the proportion of the investment option which it comprises), and, with respect to each such asset which is a fixed rate investment contract issued by a bank, savings and loan association or insurance company, the name of the issuer of the contract, the term of the contract and the rate of return on the contract; and information concerning the value of units in each investment option credited to your account.

In providing you with information about the investment funds, through the Plan's Service Center or otherwise, neither the Committee nor the Company is acting in an advisory capacity with regard to your investment in any particular fund, nor guaranteeing that any fund will meet

its investment objective. You should consider your own investment goals and, if necessary, consult your own investment adviser for advice on the selection of any particular fund.

**Section 404(c) Plan**

This Plan is intended to constitute a plan described in Section 404(c) of the Employee Retirement Security Act of 1974, as amended (ERISA) and the regulations promulgated thereunder. Section 404(c) applies to plans, (such as this Plan), under which participants (or beneficiaries) exercise investment control over the assets in their individual accounts. In an ERISA 404(c) plan, the Plan fiduciaries are generally relieved of liability under Part 4 of Title I of ERISA for losses that are the direct and necessary result of a participant's (or beneficiary's) own investment decisions.

The following table presents investment performance information for each of the funds presented as the percentage increase or decrease in the asset value of the fund. The rates reflect the reinvestment of dividends and interest. Please remember that past performance is neither a guarantee nor necessarily an indication of future returns.

## Investment Performance Summary

| | 1/1/2007-12/31/2007 | 1/1/2006-12/31/2006 | 1/1/2005-12/31/2005 |
|---|---|---|---|
| Allianz CCM Emerging Companies Fund – Institutional Class | 2.57% | 6.01% | 7.23% |
| American Funds Capital World Growth and Income | 17.43% | 22.23% | 14.62% |
| Calamos Growth Fund A | 23.26% | 1.45% | 6.47% |
| Century Sm Cap Sel I | 2.85% | 9.58% | 4.04% |
| Fidelity Asset Manager | 6.33% | 9.19% | 4.03% |
| Fidelity Capital & Income Fund | 3.82% | 13.04% | 5.04% |
| Fidelity Diversified International | 16.03% | 22.52% | 17.23% |
| Fidelity Freedom 2010 Fund® | 7.43% | 9.46% | 5.92% |
| Fidelity Freedom 2015 Fund® | 7.82% | 10.36% | 7.01% |
| Fidelity Freedom 2020 Fund® | 8.54% | 11.61% | 7.75% |
| Fidelity Freedom 2025 Fund® | 8.64% | 11.84% | 8.19% |
| Fidelity Freedom 2030 Fund® | 9.27% | 12.90% | 8.62% |
| Fidelity Freedom 2035 Fund® | 9.27% | 12.94% | 9.04% |
| Fidelity Freedom 2040 Fund® | 9.31% | 13.49% | 9.06% |
| Fidelity Freedom 2045 Fund®* | 9.50% | 9.00% | N/A |
| Fidelity Freedom 2050 Fund®* | 9.77% | 9.00% | N/A |
| Fidelity Large Cap Stock Fund | 13.09% | 12.96% | 7.48% |
| Fidelity Low-Priced Stock Fund | 3.16% | 17.76 | 8.85 |
| Fidelity Select Portfolio: Biotechnology Portfolio | 2.65% | 3.60% | 8.78% |
| Fidelity Select Portfolio: Health Care Portfolio | 12.45% | 4.98 | 16.88 |
| Fidelity Select Portfolio: Technology Portfolio | 19.78% | 7.51% | 4.92% |
| Fidelity Select Portfolio: Telecommunications Portfolio | 8.20% | 26.78% | 5.15% |
| Fidelity U.S. Bond Index Fund | 5.40% | 4.33% | 2.26% |
| Hartford Capital Appreciation Fund Class A | 16.83% | 16.61% | 15.55% |
| Lehman Brothers High Income Bond Fund | 1.61% | 8.00% | 1.62% |
| Lehman Brothers Common Stock Fund | -15.27% | 22.60% | 46.70% |
| MFS Value Fund | 7.61% | 20.67% | 6.22% |
| Neuberger Berman Genesis Fund – Investor Class | 21.89% | 7.31% | 16.37% |
| Neuberger Berman International Fund | 2.92% | 25.18% | 23.96% |
| Neuberger Berman Partners Fund - Investor Class | 10.10% | 13.19% | 17.99% |
| Neuberger Berman Socially Responsive Fund | 7.48% | 14.44% | 7.58% |
| Neuberger Berman Value Equity Fund | 9.36% | 8.80% | 20.49% |
| PIMCO Total Return Fund - Administrative Class | 8.81% | 3.74% | 2.63% |
| Stable Value Fund | 4.87% | 4.73% | 4.38% |
| Templeton Developing Markets Trust - Class A | 28.77% | 28.29% | 28.20% |
| T. Rowe Price Mid Cap Value Fund | 0.60% | 20.24% | 7.73% |
| Vanguard Total Stock Market Index | 5.55% | 15.63% | 6.09% |
| Vanguard Institutional Index Fund | 5.47% | 15.78% | 4.91% |

* The Fidelity Freedom 2045 and 2050 Funds have an inception date of June 1, 2006.

The returns shown in this Investment Performance Summary reflect expenses the investment fund managers charged during the respective periods (which can be found in the prospectus for each fund), but do not reflect the Plan administrative expenses (discussed on page 17) that may have been chargeable against each account for the same periods. Generally, such expenses could range from as little as 0% to as much as 0.2% per year. The actual return you experience may differ based on the timing of contributions, transfers, and withdrawals.

### Investment of Current Contributions

You may invest your Rollover Contributions, Before-Tax Contributions, or Roth Contributions in any one or more of the Funds available in 1% increments. However, no more than 20% of your contributions may be directed to the Lehman Brothers Common Stock Fund. If you fail to designate where you would like your contributions invested, they will be invested in the default fund as designated by the Committee, which currently is the Fidelity Freedom Fund with the target date that "best" corresponds to your 65th birthday.

### Valuation Date(s)

Your interest in any investment fund is based on your proportionate share of all of the Plan's investments in that fund, determined on a daily basis by the Plan's recordkeeper using a unit accounting method. As of the end of each day the New York Stock Exchange ("NYSE") is open (i.e., each "Valuation Date"), your account will be adjusted by (1) contributions made to or withdrawals made from your account(s), if any, and (2) your share of any increase or decrease in asset values and any interest, dividends and other earnings earned by each investment fund in which your account(s) is invested.

It should be noted that events may occur that could disrupt the daily valuation of accounts, and that there is no guarantee that the adjustments described above will take place within the intended time frame.

The earnings on each investment fund are reinvested in that fund.

## Benefit Statements

A statement of your account is always available to you. This statement includes detailed information on your account balance including your account balance and recent account activity.

You can create your own statement online through Fidelity's NetBenefits™ web site at www.netbenefits.fidelity.com. You can also request a statement by speaking to a Fidelity representative who can create and mail you a statement of your account. You can reach a Fidelity representative via telephone at 1-866-Lehman6 (1-866-534-6266).

## Designating a Beneficiary

If you should die while you have an undistributed balance under the Plan, your beneficiary will receive the value of your account under the Plan. If you are married, your spouse is your beneficiary unless you designate a different beneficiary with your spouse's notarized consent. You may change your designated beneficiary at any time, subject to your spouse's consent if you are married. If you fail to designate a beneficiary and you have no surviving spouse, payment will be made to your estate.

If you are single and later marry, your spouse will become your beneficiary automatically, and you must file a new designation of beneficiary form with your spouse's consent if you wish to continue any prior designation in effect (or designate any new beneficiary other than your spouse). To name or change a beneficiary, contact the Plan's Service Center for the necessary forms.

### Domestic Partners

To the extent permitted by law, your domestic partner has the same rights as a spouse under the Plan. For example, if you enter into a domestic partnership as described below, your partner will become your beneficiary unless, after he or she becomes your partner, you designate a different beneficiary and obtain your partner's notarized consent to that designation.

Under the applicable tax laws, however, your domestic partner does not have the same right as a spouse to rollover a distribution from the Plan to another employer's plan and you may not rollover into the Plan any amounts you receive as the beneficiary of your domestic partner. For the same reason, minimum required distributions discussed on page 13 may be calculated differently for participants with domestic partners rather than spouses.

A domestic partner is an individual who is not related to you, but who is living with you on a continuous basis and who has a close and committed personal relationship with you. Domestic partnerships include civil unions and same-sex marriages that are legally valid in the jurisdiction in which entered into. In order for a domestic partnership to be valid, neither you nor your domestic partner can be married to another person (even if legally separated), or have a domestic partnership with another person.

For the Plan to recognize your domestic partnership, you must do one of the following:

- If your domestic partnership is a civil union or same-sex marriage, you may (but are not required to) provide a copy of your certificate of civil union or marriage to the Lehman Brothers HR Service Center.

- If you have registered your domestic partnership with a governmental body pursuant to state or local law authorizing such registration, you may (but are not required to) provide a copy of your valid domestic partnership registration to the Lehman Brothers HR Service Center.

- If you do not have a certificate of civil union or marriage or registration of domestic partnership with a governmental body, you must register your domestic partnership with the Lehman Brothers HR Service Center by completing a Lehman Brothers Declaration of Domestic Partnership form and filing it with the Lehman Brothers HR Service Center. The Declaration of Domestic Partnership form is available on the Lehman Brothers intranet site or by contacting the Lehman Brothers HR Service Center at (212) 526-2363.

- A domestic partnership ends upon filing a Termination of Domestic Partnership form with the HR Service Center. You can obtain a Termination of Domestic Partnership form from the Life @ Lehman page on LehmanLive under 'Frequently Requested Forms' or from the Lehman Brothers HR Service Center.

A domestic partnership ends when the civil union, marriage, or domestic partnership is terminated according to the provisions of the governing body that established the domestic partnership. If the domestic partnership was registered through the Lehman Brothers HR Service Center, it will continue to be recognized by the Plan until a Termination of Domestic Partnership form is filed with the HR Service Center. You can obtain a Termination of Domestic Partnership form from the Life @ Lehman page on LehmanLive under 'Frequently Requested Forms' or from the Lehman Brothers HR Service Center.

### New Designations Required after Plan Mergers

In general, beneficiary designations filed by a Participant under predecessor plans will no longer apply after a merger of those plans into this Plan. If your account under a prior plan was transferred to this Plan, you must therefore file new beneficiary designations under this Plan, which will apply both to your accounts transferred from the prior plan and your accounts for contributions under this Plan. If you are married or have a domestic partner, your spouse or domestic partner must provide a written notarized consent to designation of any different beneficiary, as described above.

## Changing Your Elections

### Changing Your Contribution Rate

You may want to increase or decrease the amount of your future contributions to the Plan. You may change your Before-Tax, Roth, Catch-Up, and/or Roth Catch-Up Contribution rates at any time through the Plan's Service Center. Your request will be processed as soon as administratively possible.

### Suspending Your Contributions

You may suspend your Before-Tax, Roth, Catch-Up, and/or Roth Catch-Up Contribution at any time through the Plan's Service Center. Your request will be processed as soon as administratively possible.

If you voluntarily suspend your contributions to the Plan, you may later resume contributing to the Plan at any time. You must make a request to resume through the Plan's Service Center. Your request will be processed as soon as administratively possible.

### Changing Investment of Future Contributions

Over time, you may want to change the investment direction of your future contributions. At any time, you may change the investment options in which your future contributions will be invested. You must request such change through the Plan's Service Center. Your request will be processed as soon as administratively possible.

### Transferring Existing Account Balances

You may transfer all or part of your existing account balance(s) (which includes any Before-Tax Contributions, Roth Contributions, Catch-Up Contributions, Roth Catch-Up Contributions, Employer Contributions and Rollover Contributions) from one investment fund to any of the other investment funds, subject to any restrictions applicable to a particular investment fund.

Transfers may be made in 1% increments of your total account balance or in fixed dollar amounts, as prescribed by the Committee.

Asset transfers into the Lehman Brothers Common Stock Fund are not allowed if, once the asset transfer is processed, your balance in this fund would exceed 20% of your total account balance.

You may transfer amounts between investment funds through the Plan's Service Center. Normally, if your request is made on a day in which the NYSE is open,

11

and the request is made prior to close of trading for that day, the amount to be transferred from a fund will be based on the value of your account(s) under the Plan as of the close of the NYSE on that day. Otherwise, the amount to be transferred from a fund will be based on the value of your account(s) under the Plan as of the close of the NYSE on the next day the NYSE is open for trading.

However, it is possible that a systems failure or other unexpected event may prevent the processing of investment transfers, in which case every effort will be made to process investment elections as soon as possible after the problem is resolved, but the Plan will have no obligation to reconstruct what would have occurred had the problem not arisen.

Keep in mind that this type of transfer does not affect the investment direction of your future contributions.

### Limitations on Transfers

Although you may normally make transfers on any day the NYSE is open, the sponsor of an Investment Fund or the Committee may impose restrictions on transfers in or out of any given Investment Fund.  Restrictions may also be needed to comply with applicable law.  You will be notified if any such restriction applies to your account.

### Redemption Fees

Certain investment funds impose redemption fees on shares not held for at least a minimum period.  These are referenced in the summary of investment fund options provided to participants (and their beneficiaries) through the Plan's Service Center at www.netbenefits.fidelity.com or 1-866-Lehman6 (1-866-534-6266) and explained more fully in the prospectus for the investment fund.

### Blackout Periods

Blackout Periods are imposed when the Company holds undisclosed material information that it has not disseminated to the public. The period prior to and surrounding an earnings announcement is the most recurrent Blackout Period. Blackout Periods may be imposed prior to other corporate announcements if they are deemed to be material.

During a Blackout Period you may not transfer any part of your existing account balance(s) into or out of the Lehman Brothers Common Stock Fund.

# Vesting

Vesting is your non-forfeitable right to receive the value of your Plan account(s) when you terminate employment. You are immediately 100% vested in your

Before-Tax and Roth Contributions and in your Employer Contributions for all plan years up to 2004. All Employer Contributions made for the 2005 and later Plan Years will be subject to a three-year vesting requirement. Once you have three years of service, you will be 100% vested in your Employer Contributions. If you have three years of service on the date the Employer Contribution is made, you will be immediately 100% vested in that Employer Contribution.

### Years of Vesting

Years of vesting service are made up of 12-month periods, generally beginning with the month you are hired and ending with the month you terminate employment. For any month in which you work at least one hour, you will be credited with a full month of service. Once you complete the three year vesting requirement, you are 100% vested in your Employer Contributions.

**Example:** If your hire date was October 6, 2005, and you continue to be actively employed by the Firm through September 1, 2008, you will have 36 months – or 3 years – of vesting service on September 1, 2008 and become 100% vested on that date.

### Service with Affiliates

Generally, your service with 80% or more directly or indirectly owned subsidiaries of the Company will count toward vesting whether or not the subsidiary participates in the Plan.  For special rules that may apply to service with certain prior employers or before the affiliate was acquired, please contact the Plan's Service Center.

### Additional Vesting Rules

Vesting service may also include certain periods when you are not actively employed by the Firm. For example, if you terminate employment and return within a twelve month period, you will be credited with vesting service for the period you were not with the Firm. In addition, you will generally continue to earn vesting service during a paid or unpaid leave of absence.

### Breaks in Service

If you leave the Employer and are later employed by an Employer or an Affiliate, you will retain credit for your prior vesting service if (i) you previously made contributions to the Plan or were otherwise vested in any amounts under the Plan, or (ii) your break in service was less than five years. Otherwise, your vesting service on rehire may be determined in the same manner as for a new employee. Please contact the Lehman Brothers HR Service Center at 212-526-2363 for any questions you have regarding your individual situation.

**Military Leave**

If you incur a break in service because of qualified military leave, you will receive credit for vesting purposes for your time of qualified leave.  Please call the Lehman Brothers HR Service Center for additional information.

**Forfeiture of Non-vested Employer Basic and Matching Contributions**

If you leave the Firm before you have three years of vesting service, you will not be entitled to receive any Employer Contributions you received for the 2005 and later Plan years. This non-vested portion of your account balance will be forfeited when you receive a distribution of the remainder of your account balance (whether made directly to you or as a direct rollover to an IRA or another employer plan).

If you do not receive such a distribution within five years of your date of termination, the non-vested portion of your Account will be forfeited irrevocably on the fifth anniversary of your termination.

If you should  forfeit the non-vested portion of your Employer Contributions Account and are then  rehired by an Employer or Affiliate within five years of termination, the forfeited amount will be restored (i.e., credited to your Employer Contributions Account) if you repay the amount of the prior distribution within five years of the date or rehire.

Upon such rehire, you will  be credited for your prior years of vesting service to determine when you are fully vested in your restored (or otherwise remaining) Employer Contributions Account if you had  made contributions or were previously at least partially vested in your  Account.

All forfeitures will be used to pay plan expenses or applied to reduce future Employer Contributions.

# Withdrawals

You may make the following types of withdrawals from the Plan while you are employed by an Employer or an affiliate:

- The balances of either or both of your Rollover Account and After-Tax Rollover Account;

- If you are age 59-1/2 or older, the vested balance of all your Plan accounts; or

- If you have a financial "hardship," an amount from your Before-Tax and Roth Accounts needed to satisfy such hardship.

These withdrawals are subject to certain limitations, as described below.

If you wish to make a withdrawal, you should contact the Plan's Service Center. Withdrawals will be paid in a single lump sum cash payment as soon as administratively practicable.  However, if a portion of the account from which the withdrawal is made is invested in Company stock, you may elect to receive such stock in lieu of cash (except in the case of hardship withdrawals). Procedures for electing to receive stock in lieu of cash can be obtained from the Plan's Service Center.

**Withdrawal from your Rollover Accounts**

You may withdraw all or a part of the balance of either or both your Rollover Account and After-Tax Rollover Account, for any reason, while you are employed by an Employer or an affiliate. The withdrawal will be taken pro rata from the investment funds in which the account is invested.

**Age 59-1/2 Withdrawals**

If you are age 59-1/2 or older, you can withdraw all or part of the vested balance of your Plan account(s), for any reason, while you are employed by an Employer or an affiliate.

Withdrawals will be made from your accounts in the following order: Rollover Account, After-Tax Rollover Account, Regular Before-Tax Account, Catch-Up Contributions Account, Employer Contributions Account, Roth After-Tax Account, and Roth Catch-Up Account. Unless otherwise elected, withdrawals will be made pro rata from the investment funds in which these accounts are invested.

**Hardship Withdrawals**

You may withdraw your Before-Tax Contributions and Roth Contributions, as well as your pre-1989 investment earnings on such Contributions, and, to the extent needed, your Catch-Up and Roth Catch-Up Contributions, while you are employed by an Employer or an affiliate if you meet certain IRS requirements for a "hardship withdrawal." You may make a hardship withdrawal from your account(s) under the Plan if:

- The Committee determines that you have an "immediate and heavy financial need" (as described below).

- Your withdrawal amount is at least $1,000 (or 100% of the available amount, if less).

- The following conditions apply to hardship withdrawals:

   o  You cannot withdraw any post-1988 earnings attributable to your Before-Tax Accounts. You also cannot withdraw any Employer Contributions.

o  You must first take all withdrawals and loans available to you under the Plan and all other plans of your Employer and its affiliates.

o  Only the minimum amount required to satisfy the financial need (plus taxes where applicable) will be distributed.

**Immediate and Significant Financial Need**

A qualifying "immediate and heavy financial need" is limited to the needs as set forth in the safe harbor provisions of the IRS code.  The following is a summary of those provisions:

- Costs associated with the purchase of your principal residence (other than mortgage payments).

- Unreimbursed medical expenses for you, your spouse, or your dependents.  (Note that hardship withdrawals are not available for expenses of a type that are not tax-deductible, such as cosmetic surgery.)

- Payment of the next 12 months' tuition and related educational fees (including room and board, but not books) for college or post-graduate education for you, your spouse, or your dependents.

- Payment to prevent eviction from or foreclosure of a mortgage on your principal residence.

- Payments for funeral or burial expenses for a Participant's deceased parent, spouse, child or dependent.

- Expenses to repair casualty loss damage to the Participant's principal residence.

The amount withdrawn may include amounts necessary to pay federal, state, or local income taxes or penalties reasonably anticipated to result from your withdrawal.

If the Committee approves your hardship withdrawal request:

- your participation in the Plan will be suspended for six months (at the end of that period you will have to re-enroll to participate in the Plan), and

- your contributions to any deferred compensation plans, stock option or stock purchase arrangements, will be similarly suspended.

Note:  Suspension could affect your ability to receive all or a portion of any Employer Contributions made under this Plan.

Your approved hardship withdrawal will be taken pro rata from the investment funds in which your Before-Tax Accounts are invested.

**How to Apply for a Hardship Withdrawal**

Any requests for a hardship withdrawal must be accompanied by the necessary forms, plus any necessary documentation to support the financial hardship.  The forms can be obtained from the Plan's Service Center.

If you apply for a hardship withdrawal, you should contact the Plan's Service Center well in advance of the date you need the funds to allow ample time for processing.  For purchase of a primary residence, application must be made prior to closing.

**Minimum Required Distributions**

Federal law prescribes a "required beginning date" for distributions, which is generally April 1 after the calendar year in which the Participant attains age 70-1/2 (or, for Participants remaining employed beyond that year, April 1 after the year the Participant terminates employment).

A minimum  distribution is required for that and all subsequent calendar years, in the amount of the Participant's  account balance at the start of the year divided by a number representing the joint life and last survivor expectancy of the Participant and a hypothetical beneficiary ten years younger.

Minimum distributions to active employees that began when required under prior law are now optional so long as the Participant continues employment.

**Tax Consequences of Withdrawals**

Withdrawals have potentially adverse tax consequences (see section entitled "Certain Tax Consequences of Withdrawals/Distributions" on page 15) which you should consider before you elect a withdrawal.

**After-Tax Contributions in Accounts Transferred from E.F. Hutton Plans**

Withdrawals of after-tax amounts transferred from an E.F. Hutton Plan are not taxable. Contact the Plan's Service Center for more information.

# Final Distributions

**Distribution upon Termination of Employment or Disability**

Upon your termination of employment with all Employers and affiliates or upon your permanent disability (as determined under the terms of your Employer's long-term disability plan), you are entitled to a distribution of the vested amount credited to your account(s) under the Plan. If the total value of your account(s) does not exceed $1,000, distribution will be made as soon as practicable after you elect whether you want your

distribution made directly to you, or in whole or in part as a direct rollover to an IRA or another employer's plan. The distribution will be based on the value of your account(s) as of the Valuation Date on which your request is processed. (If your election is not received by the date prescribed by the Committee, distribution will be made to you in cash less applicable withholding, based on the Valuation Date prescribed by the Committee.)

If your accounts exceed the $1,000 limit, distribution will be made only if and when you elect to receive distribution. If you are not fully vested, distribution may be made of your entire vested account(s).  If you are fully vested, you may elect full distribution of your account or you may choose to receive partial distributions until your account(s) is fully distributed. Each distribution must be requested separately through the Plan's Service Center. However, after April 1 following the year you reach age 70-1/2 or retire (if later) -- i.e., the required beginning date described under Minimum Required Distributions above -- your distribution each year cannot be less than the minimum required as described under that heading. Distribution will be based on the value of your account(s) as of the Valuation Date on which your request is processed, and made as soon as administratively practicable following that date.

If your account(s) are invested in the Lehman Common Stock Fund, you may elect to receive the corresponding portion of your distribution in stock in lieu of cash. To receive distribution in stock, your request must be received by the Plan's Service Center prior to the Valuation Date on which your distribution is processed. If elected on a timely basis, distribution of whole shares of stock (and cash for partial shares) will be made as soon as administratively possible following the date on which your request is processed.

If you leave an Employer by reason of a transfer to an affiliate that is not participating in the Plan, contributions to your account(s) will be suspended but you may continue to vest in Employer Contributions previously made.  No distribution will be made, and your account(s) will continue to participate in the investment performance of the investment funds in which they are invested. You may change investment funds in the same manner, and subject to the same rules, as active Participants.

**Distribution upon Death**

Your accounts will be fully vested should you die while employed by an Employer or an Affiliate.

In the event of your death prior to the distribution of your account(s) under the Plan, your beneficiary will be entitled to receive the vested amount credited to your account(s). Distribution will be made as soon as practicable after the Plan's Service Center receives all information and elections necessary to make the distribution, or, if required elections are not timely made as of the date determined by the Committee as administratively practicable.

If your account balance exceeds $1,000, your beneficiary may elect to receive a distribution as a single lump sum or, if your accounts are fully vested, in partial distributions, the last of which shall be made no later than 5 years after your death.

If your account(s) are invested in the Lehman Common Stock Fund, your beneficiary may elect to receive the corresponding portion of the distribution in common stock in lieu of cash. To receive payment in stock, your beneficiary's request must be received by the Plan's Service Center prior to the Valuation Date on which their request for distribution is processed. If elected on a timely basis, distribution of whole shares of stock (and cash for partial shares) will be made as soon as administratively possible following the Valuation Date in which their request is processed.

**Valuation**

Amounts payable are based on the value of your account(s) under the Plan on the Valuation Date as of which the distribution is processed. No interest, earnings or losses are credited or paid with respect to the period between the Valuation Date and the actual date of payment. A "Valuation Date" occurs on any business day the NYSE is open.

You should be aware that daily valuation and the processing of transactions based on daily valuation is dependent on the availability of complete and accurate information, which may come from different sources. Since events may occur that could disrupt the daily valuation process, there is no guarantee that transactions will be processed or valuations adjusted at any given day or time.

**Payment Procedures**

No payment or distribution will be made until all distribution procedures and requirements have been complied with. Distribution procedures and requirements, including any required forms, may be obtained from the Plan's Service Center. All payments and distributions are subject to processing procedures of the Committee and, where applicable, various parties including the transfer agent for the shares of common stock payable under the Plan. Except as required by law (such as tax withholding requirements), no charges or deductions will be made upon the distribution or

withdrawal of all or part of your interest in the Plan, unless authorized by you.

**Restrictions on Resale of Common Stock**

A Plan Participant who is an affiliate (as defined under the federal securities laws) of the Company may not resell any Company common stock issued to him under the Plan except pursuant to an effective registration statement, pursuant to Rule 144 under the Securities Act of 1933, as amended, or otherwise pursuant to an applicable exemption. There are no such restrictions applicable to the resale of common stock by Plan Participants who are not affiliates of the Company. In addition, certain officers and directors may be subject to Section 16 of the Securities Exchange Act of 1934 and the applicable rules in connection with the reporting of Company common stock held under the Plan and their disposition.

**Incompetent or Missing Payees**

If the Committee determines that any Participant or beneficiary entitled to payment under the Plan is unable to care for his or her affairs, because of illness or accident or any other reason, it may direct payment to the spouse, legal representative of such person or any other person as so designated by the Committee. Any payment so made will constitute a complete discharge of the liabilities of the Plan to said Participant or beneficiary.

Your Plan benefits are payable only from the Plan's trust fund. If the Committee cannot locate any person to whom a benefit is due under the Plan, the benefit will be forfeited unless that person later makes a valid claim for such benefit before the Plan is terminated. **Until distribution of your account(s) is completed, it is important that you continue to notify the Company of all changes of address.**

**Miscellaneous**

The Plan may rely on the statements and representations of Participants and their beneficiaries and will not be liable for any loss resulting from such reliance.

The Plan does not confer any legal rights to continuation of employment, and the Employer may discharge a Participant without regard to the effect of such discharge under the Plan.

# Tax Consequences of Withdrawals/Distributions

A withdrawal or distribution from the Plan is generally subject to immediate 20% federal tax withholding and ordinary income taxes for the year of receipt, if such payment is not directly rolled over to an IRA or another employer's eligible retirement plan. If you choose to have the withdrawal or distribution paid to you directly, you will therefore receive only 80% of the payment; however, you may still rollover all or part of the entire amount to an IRA or another employer's eligible retirement plan within 60 days of receiving payment. If you choose to rollover 100% of the withdrawal or distribution amount, you must find other money within the 60-day period to replace the 20% that was withheld. If you rollover only the 80% that you received, you will be taxed on the 20% that was withheld.

In addition, payments prior to age 59-1/2 which are not rolled over to an IRA or another employer's eligible retirement plan are generally subject to a 10% additional tax, unless made following termination of employment at age 55 or later.

A hardship withdrawal cannot be rolled over and will be subject to 10% federal income tax withholding, unless you elect not to have such withholding apply. However, such an election will not avoid your income tax obligation, or the additional 10% tax on withdrawals prior to age 59-1/2, on the amount withdrawn. You should consider what (if any) withholding from your hardship withdrawal is desirable in order to avoid possible penalties for not paying estimated tax on your income.

Withdrawals and distributions subject to Federal income tax (e.g., not rolled over) are also generally subject to state and local income taxes where applicable.

The applicable tax laws, which include a special rule for stock distributions, as discussed below, are complex. You should consult a tax specialist to make sure you fully understand the consequences of different choices available to you and your tax liability upon any withdrawal or distribution.

**Withdrawal of After-tax Contributions**

Withdrawals from your Pension Account or Profit Sharing Account attributable to your after-tax contributions will be tax-free up to the amount of your total such contributions through December 31, 1986 (less any tax-free withdrawals made prior to the merger into the Plan).  Additional withdrawals with respect to your after-tax contributions will include associated investment earnings and be taxable to the extent of such earnings (unless rolled over).

**Withdrawal of Roth Contributions**

Withdrawals from your Roth 401(k) Account will be tax-free as long as the withdrawal is considered a qualified distribution.  A qualified distribution is one that is taken at

least 5 tax years from the year of your first Roth 401(k) contribution and after you have attained age 59-1/2, become disabled, or are deceased.

If you elect to take a "non-qualified" distribution from your Roth Contribution Account you will be taxed on the full distribution, including the value of the Roth contributions that were originally contributed to the Plan on an after-tax basis.

**Stock Distributions**

If you receive a lump sum distribution on termination of employment that includes shares of Company common stock, the value of the stock at distribution will be taxed to you to the extent it does not exceed the value when acquired for your account (unless you rollover the stock, or sale proceeds, within 60 days). If tax applies because you do not rollover, you will still not be taxed on the "Net Unrealized Appreciation" in the value of the stock until you sell or otherwise exchange the distributed stock, at which time the unrealized appreciation will be taxed as a long-term capital gain. Subsequent appreciation will be long-term or short-term capital gain, depending on the period for which the stock is held after distribution. The Net Unrealized Appreciation is the increase in the fair market value of the distributed stock over the value of the stock when acquired for your account. (This amount will appear on a tax form, Form 1099-R, which will be provided to you at the year-end following your distribution.) If you receive a distribution of after-tax contributions that includes shares of Company stock, the Net Unrealized Appreciation in that stock will similarly not be taxed at the time of distribution but only on subsequent disposition.

# Plan Loans

The Plan permits certain Plan Participants to obtain loans against their Plan account balances. To be eligible, you must be a Participant who is (1) an active employee of an Employer or affiliate and (2) paid on a U.S. payroll. You may borrow up to 50% of the balance of your account, subject to the following:

- You must borrow at least $1,000.

- Outstanding loan amounts may not exceed 50% of your total account balances or $50,000, whichever is less.

- You may not have more than two loans outstanding at any time.

- If you had a prior loan outstanding at any time in the last 12 months, a new loan cannot exceed $50,000 less the highest aggregate loan amount outstanding in the preceding 12 months.

- You will be charged a $35 processing fee for each loan, which will be automatically deducted from your account.

- You will be charged a $15 annual administration fee for each loan. This fee will be charged on a quarterly basis ($3.75 per calendar quarter) and will be automatically deducted from your account.

Interest rates for new loans are determined periodically. You will pay interest to your account on each loan at the rate of prime plus one percent. The interest rate on your loan will remain fixed for the life of the loan.

Generally, all loans must be repaid over 12 to 60 months in whole-month increments. The only exception is for loans for the purchase of a primary residence ("Primary Residence Loan"), which will be granted for up to 120 months if required supporting documentation (e.g., contract of sale) is provided.

You have the right to prepay your loans in full at any time without penalty but you cannot reamortize them.

When you request a loan, a loan package will be sent to you, which will include an Amortization Schedule that will detail the amount of each loan repayment and the total number of repayments required to pay your loan in full. Your loan repayment will be deducted from each regular paycheck on an after-tax basis and will continue until either your loan is paid in full or your employment status with the Employer or affiliate changes. You may not suspend your loan repayments for any reason while employed by an Employer or affiliate, unless you make an acceptable alternate arrangement for a period of unpaid leave of absence.

Your endorsement of your loan check will constitute your agreement to the terms of the loan, including the promissory note for the loan. If you request a loan with a repayment period of 12 to 60 months, no other documentation is required and you will receive your check approximately 5-7 business days after you request your loan. If you requested a Primary Residence Loan with a repayment period of 61 to 120 months, you need to submit required supporting documentation. You should receive your check approximately 5-7 business days after the receipt of the necessary documentation.

If you are no longer employed by an Employer or an affiliate for any reason prior to your loan being repaid, your entire outstanding balance must be repaid within 90 days following termination. You will be notified of this requirement and be given a definite date by which your loan must be repaid. If you do not repay your outstanding loan balance within 90 days of such notification or by the Valuation Date on which a final distribution of your account balance is processed, the

outstanding balance will become a taxable distribution at that time and will be reported to the IRS.

Please note that if your loan includes money from your Roth Accounts and your default does not satisfy the Roth qualified distribution requirements, the Roth portion of the default will also be considered a taxable distribution.

If you default on a loan repayment and the default is not cured within any applicable grace period, you will not be eligible for any further loans from the Plan.

To apply for a Plan loan, contact the Plan's Service Center.

## Non-Alienation of Benefits/Qualified Domestic Relations Orders

Your benefits and rights under the Plan are not subject to assignment, hypothecation, garnishment, appropriation, or any other type of alienation in any manner, except to the extent required by applicable federal law. Any attempt to do so will not be given any effect by the Plan. Generally, the only exceptions to this rule of non-alienation are benefits payable pursuant to a qualified domestic relations order ("QDRO") (as defined in Section 414(p)(1) of the Internal Revenue Code) and amounts payable pursuant to the enforcement of a federal tax levy or judgment for unpaid taxes (or other federal law).

Attorneys for parties to a divorce or similar proceeding who wish to affect your interest in the Plan should contact the Plan's Service Center to make certain that the appropriate documents are filed and that the court order in question is actually a QDRO that complies with governing legislation and applicable Plan provisions. A copy of the Plan procedures for determining whether a court-ordered assignment of your rights under the Plan to a spouse (or child or similar dependent) is a QDRO may be obtained from the Plan's Service Center.

## Voting of Common Stock and Other Securities

You will have the opportunity to vote on the shares of common stock of the Company and Investment Fund interests attributable to amounts credited to you under the Plan. In advance of a vote, the Company stock transfer agent will deliver proxy solicitation materials and voting instruction forms to you. Your voting instructions to the Company stock transfer agent as to how to vote the shares representing your proportionate interest in common stock of the Company held by the Plan will go directly to the Company stock transfer agent, who is independent of the Company. Your voting instructions

with respect to common stock of the Company will remain confidential. Only the Company stock transfer agent will know whether and how any participant votes.

Shares of common stock of the Company for which the Company stock transfer agent receives no voting instructions will be voted in the same proportion as shares for which the transfer agent receives instructions. Other Investment Fund interests for which the Trustee receives no instructions will not be voted.

In the event of a tender or exchange offer for common stock of the Company, the Company stock transfer agent will deliver to you tender materials and tender instruction forms. You may tender or not tender the shares representing your proportionate interest in the stock held by the Plan by submitting instructions directly to the Company stock transfer agent. If you have chosen to tender shares, you are free until the tender offer is withdrawn to change or modify your decision by giving new instructions to the Company stock transfer agent. Your decision to tender or not to tender shares of Company stock will remain confidential information that the transfer agent will not share with the Company.

## Expenses

Except to the extent paid by the Employer, all expenses of administration of the Plan, including service provider fees where appropriate (such as trustee, recordkeeping, consulting, and legal fees) will be charged against the trust fund and will be debited against Participants' accounts.

## Top-Heavy Plans

A plan that primarily favors certain owners and officers may become a "top-heavy" plan, which requires special minimum benefits. In the unlikely event that this Plan becomes top-heavy, you will be notified.

## Special Provisions Applicable to Former Neuberger Berman Plan Participants

On June 14, 2004, the Neuberger Berman, LLC Pension Plan ("Pension Plan") and the Neuberger Berman, LLC Profit Sharing Plan ("Profit Sharing Plan") merged into the Lehman Brothers Savings Plan. As a result, your accounts in the Neuberger Plans were transferred to this Plan and held in a separate Pension Account or Profit Sharing Account, as applicable. Your Pension and Profit Sharing Accounts are fully vested and nonforfeitable.

In general, the rules set forth in the Plan and summarized above, relating to investments, loans, withdrawals and distributions from your Plan Accounts

18

and the like apply to your Pension and Profit Sharing Accounts. However, certain special rules apply to those accounts, as follows:

### Pension Account

In-service withdrawals from your Pension Account cannot be taken until you reach age 65.

Distributions after termination of employment (or in-service after you reach age 65) can be taken in the form of a lump sum distribution or as partial distributions. However, you must, if married, obtain the notarized written consent of your spouse to that distribution form. Otherwise, your Pension Account distribution will be made in the form of a "Qualified Joint and Survivor Annuity" (QJSA). A QJSA provides monthly payments for your life and, if you die survived by the spouse to whom you were married when payments began, a continuing annuity of one-half your monthly benefit for the life of your spouse. If you are single, or you are married and your spouse consents, you may also elect to receive distribution in the form of a monthly annuity for your life only. Please call the Plan Service Center at 1-866-Lehman6 (1-866-534-6266) to obtain the forms you and your spouse will need to complete.

If you are eligible to take a distribution from your Pension Account and any other account, your distribution will first come from your Pension Account, and then your Profit Sharing Account. Your other Plan accounts will be used to fund distributions after these two accounts have been fully paid to you.

### In-service withdrawals from your Profit Sharing Account

During employment, you may withdraw any amount from your after-tax contribution and rollover portions of your Profit Sharing Account. In addition, withdrawals after age 59½ of elective deferrals, profit sharing, and matching contributions held in your Profit Sharing Account may be taken at any time in whole or in part.

### New Beneficiary Designations Required

In general, beneficiary designations filed under the Pension Plan or Profit Sharing Plan no longer apply after the merger of those plans into this Plan. You must therefore file new beneficiary designations under this Plan, which will apply both to your Pension and Profit Sharing Accounts and your accounts for contributions under this Plan. If you are married, your spouse must provide a written notarized consent to designation of any different beneficiary, as described under "Designation a Beneficiary" on page 9.

### Domestic Partners

If you have a domestic partner, he or she is treated as your spouse for Plan purposes and as such automatically become the beneficiary of your Pension and Profit Sharing Accounts on the merger into the Plan, as well as the beneficiary of the balance of your Plan accounts, unless you obtain his or her consent to your designation of a different beneficiary (see "Domestic Partners" on page 9).

### Spousal rights to Pension Account

Prior to the year you reach age 35, your spouse is automatically the beneficiary of one-half of your Pension Account ("QPSA Portion"), in case you die while still employed with the Company; and the rules allowing you to designate a beneficiary for your Plan accounts with spousal consent only apply to the other one-half of your Pension Account. Starting with the year you reach age 35 (or when you terminate employment), you may, with your spouse's written consent, designate a different beneficiary for your QPSA Portion as well. See "Designating a Beneficiary" on page 9 for more information.

If your spouse is your designated beneficiary for any part of your Pension Account, he or she will receive payments in the form of a monthly life annuity, unless he or she elects a lump sum or partial payment or other special benefit form described below.

### Additional Forms of Death Benefits Available for Pension and Profit Sharing Accounts

In addition to the payment forms otherwise available under the Plan on death, your beneficiary may elect to receive benefits based on your Pension and Profit Sharing Accounts in the form of an annuity, which may have a guaranteed minimum number of payments, or in annual installments. Alternatively, annual installments may be paid to your beneficiary for up to 15 years, or for your beneficiary's life expectancy, whichever is less. If your beneficiary is your spouse, payments may extend for his or her life expectancy. Installments not paid to an individual may generally only be paid for 5 years or less.

### Withdrawal of After-tax Contributions

Withdrawals from your Pension Account or Profit Sharing Account attributable to your after-tax contributions will be tax-free up to the amount of your total such contributions through December 31, 1986 (less any tax-free withdrawals made prior to the merger into the Plan). Additional withdrawals with respect to your after-tax contributions will include associated investment earnings and be taxable to the extent of such earnings (unless rolled over).

19

# Benefit Claims and Appeal Procedure

If you believe you should have been paid more or different benefits or that you have not been treated properly under the Plan, you (or your authorized representative) can file a claim in writing. Your claim should be mailed to:

Employee Benefit Plans Committee
Lehman Brothers Holdings Inc.
Attention: 401(k) Claims
1301 Avenue of the Americas, 6th Floor
New York, NY 10019

If your claim is wholly or partially denied, you will receive a decision with reasons for the denial within 90 days. If special circumstances warrant, the Committee may extend the 90-day period for up to an additional 90 days (and will first advise you in writing of the extension and why it is needed).

If you believe that your benefit payment, denial, or other treatment is incorrect, you or your representative may appeal the decision in writing within 60 days after it is received by you. Written request for review of the decision should be sent to the Employee Benefit Plans Committee at the address listed above. If you file an appeal you have the right to:

1. Review all documents and records relevant to your claim, and

2. Send to the Committee written comments, documents, records and other information in support of your claim.

The Committee will conduct a review and notify you of its determination within 60 days of its receipt of your written request for review. If special circumstances warrant, the Committee may extend the 60-day period for up to an additional 60 days (and will first advise you in writing of the extension, why it is needed, and the date a decision is expected). The Committee has the discretion and authority to determine all questions of fact under the Plan and to interpret the Plan and to make all other interpretations and determinations necessary for the administration of the Plan.

You must complete all the above stages of review before you may sue for benefits in a civil court. If you wish to bring legal action in court to challenge an adverse determination on appeal you must file your suit within three years from the earlier of the date of the denial, or the date your cause of action first arose. Instead of bringing legal action in court, you and the Committee may agree to have your claim submitted to binding arbitration, subject to the same time limits that govern bringing an action in court.

# Plan Amendment or Termination

The Company, acting through the Committee (with respect to amendments) and the Compensation and Benefits Committee of the Board of Directors (with respect to either amendment or termination), reserves the right to amend, modify, suspend, or terminate the Plan at any time. The Company cannot by amendment or termination of the Plan reduce benefits previously credited to your account(s). However, the Company may act to reduce Employer Basic or Matching Contributions for any year prior to the time such contributions are actually paid into the Plan. If any such action results in a complete discontinuance of contributions under the Plan, Participants at the time of such action will be fully vested in their accounts (as will accounts of Participants affected by any partial termination of the Plan within the meaning of the Internal Revenue Code).

# Your Rights Under ERISA

As a participant in the Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA provides that all plan participants shall be entitled to:

Receive Information About Your Plan and Benefits

1. Examine, without charge, at the HR Service Center, Lehman Brothers Holdings Inc., 1301 Avenue of the Americas, 6th Floor, New York, New York 10019 and at other specified locations, all documents governing the Plan, including insurance contracts, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration;

2. Obtain, upon written request to the plan administrator, copies of documents governing the operation of the plan, including insurance contracts and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The administrator may make a reasonable charge for the copies;

3. Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary annual report; and

4. Obtain free of charge a statement of his or her account(s) under the Plan, showing the vested portion. Although this statement is not required to be given on request more than once every twelve (12) months, the Committee makes these statements accessible daily.

**Prudent Actions by Plan Fiduciaries**

In addition to creating rights for Plan Participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate this Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan Participants and beneficiaries. No one, including your employer, or any other person, may fire you or otherwise discriminate against you in any way for the purpose of preventing you from obtaining a benefit or exercising your rights under ERISA.

**Enforce Your Rights**

If your claim for a benefit under the plan is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules. (see the section entitled "Benefit Claims and Appeal Procedure").

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the Plan and do not receive them within 30 days, you may file suit in a Federal court. In such cases, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. In addition, if you disagree with the plan's decision or lack thereof concerning the qualified status of a domestic relations order, you may file suit in Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance With Your Questions**

If you have any questions about your plan, you should contact the plan administrator at the address listed below in the section entitled "Administrative Facts". If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

# Administrative Facts

This section includes information about the administration of the Plan. If you file a claim or request for information, you may need the information listed below.

**Plan Name**

Lehman Brothers Savings Plan

**Plan Sponsor**

Lehman Brothers Holdings Inc.
745 Seventh Avenue
New York, NY 10019

**Participating Employers**

A list may be obtained from the Plan's Service Center.

**Employer Identification Number**

13-3216325

**Plan Number**

003

**Plan Type**

The Plan is a profit-sharing plan that is intended to satisfy the applicable provisions of Code sections 401(a) and 401(k). The Plan is not insured by the Pension Benefit Guaranty Corporation (PBGC) because the PBGC only insures defined benefit-type pension plans and this Plan is a defined contribution-type pension plan.

**Plan Administrator**

The Plan is administered by the Employee Benefit Plans Committee (called the "Committee" in this booklet) which is appointed by the Compensation and Benefits Committee of the Board of Directors of Lehman Brothers Holdings Inc. The Committee is responsible for the operation and administration of the Plan. It has full discretion and authority to make all decisions in connection with the administration of the Plan, including but not limited to decisions concerning eligibility to participate in the Plan and concerning benefits to which any Participant or beneficiary is entitled, as well as with regard to Plan interpretation and determination of any fact under the Plan. You can contact the Plan Administrator by writing to:

Employee Benefit Plans Committee
c/o Lehman Brothers Holdings Inc.
1301 Avenue of the Americas, 6th Floor
New York, NY 10019

**Trust Fund**

All Employee and Employer contributions under the Plan are held in the Lehman Brothers Savings Plans Trust. The Trustee is Fidelity Management Trust Company, whose address is:

Fidelity Management Trust Company
82 Devonshire St.
Boston, MA 02109

**Plan Year**

The Plan year is the calendar year.

**Payment of Benefits**

The Trustee pays benefits as directed by:

Fidelity Investments Institutional Services
Company, Inc.
82 Devonshire St.
Boston, MA 02109

**Agent for Service of Legal Process**

A legal action against the Plan may be started by serving the Plan Administrator at the address given above. Legal process may also be served on the Trustee.

# Securities Act of 1933

The Company has registered under the Securities Act of 1933 an indeterminate amount of interests in the Plan and 5,000,000 shares of Company common stock that may be purchased with Plan contributions.

# Tax Effects of the Plan on the Company

Before-Tax Contributions, Roth Contributions and Employer Contributions made on behalf of Participants may be deducted from the income of the Employer for tax purposes.

# Information about the Company and the Company's Common Stock

The following documents, previously filed by the Company with the Securities and Exchange Commission ("Commission") pursuant to the Securities Exchange Act of 1934 (the "Exchange Act") contain important information about the Company and the Company's common stock, and are incorporated by reference into this prospectus:

The Company's Annual Report on Form 10-K for the fiscal year ended November 30, 2006, filed with the Commission on February 13, 2007 pursuant to Section 13 or 15(d) of the Exchange Act, the Company's Quarterly Report on Form 10-Q for the quarterly period ended August 31, 2006, filed with the Commission on October 10, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Quarterly Report on Form 10-Q for the quarterly period ended May 31, 2006, filed with the Commission on July 10, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Quarterly Report on Form 10-Q for the quarterly period ended February 28, 2006, filed with the Commission on April 10, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on February 2, 2007 pursuant to Section 13 or 15(d) of the Exchange Act, the Company's Current Report on Form 8-K, filed with the Commission on February 9, 2007 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on February 2, 2007 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on January 31, 2007 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on January 19, 2007 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on December 29, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on December 28, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on December 27, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on December 21 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on December 14, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on December 12, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on December 7, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on December 4, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on December 1, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission

on November 22, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on November 13, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on November 13, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on October 30, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on October 27, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on October 25, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on October 24, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on October 2, 2006 pursuant to Section 13 or 15(d) of the Exchange Act;

the Company's Current Report on Form 8-K, filed with the Commission on September 15, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on September 13, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on August 30, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on August 16, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on August 3, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on July 26, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on July 21, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on July 3, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on January 30, 2004 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on June 29, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on June 12, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on May 31, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on May 30, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form

8-K, filed with the Commission on May 24, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on May 3, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on April 25, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on April 4, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on March 31, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on March 31, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on March 28, 2006 pursuant to Section 13 or 15(d) of the Exchange Act ; the Company's Current Report on Form 8-K, filed with the Commission on March 24, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on March 16, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on March 15, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on March 10, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on March 10, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on March 3, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on February 28, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on February 21, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on February 10, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on January 26, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on January 23, 2006 pursuant to Section 13 or 15(d) of the Exchange Act; the Company's Current Report on Form 8-K, filed with the Commission on January 17, 2006 pursuant to Section 13 or 15(d) of the Exchange Act.

In addition, each other document filed by the Company or by the Plan pursuant to Section 13(a), 13(c), 14 or 15(d) of the Exchange Act after the date of this booklet and prior to the termination of the Company's offering of Plan interests and common stock in connection with the

Plan shall be automatically incorporated by reference into this booklet and constitute part of the aforementioned prospectus from the date of filing of such document. In the event of any inconsistency between any information in this booklet and any document incorporated by reference, the latest information shall prevail and shall be deemed to replace any prior inconsistent information.

## Lehman Brothers Retirement Service Center

Any questions you have may be directed to the Plan's Service Center. In addition, any information you need about the Plan, Plan procedures, your accounts, eligible investments, loans and withdrawals and other matters may be obtained from the Plan's Service Center.

The Plan's Service Center can be reached through the Fidelity's NetBenefits™ website netbenefits.fidelity.com or by calling 1-866-Lehman6 (1-866-534-6266).

You may obtain the following documents from the Plan's Service Center without charge:

1. Any document which has been incorporated by reference into this booklet and prospectus (other than exhibits to such documents, unless such exhibits are specifically incorporated by reference into such documents);

2. All reports, proxy statements and other communications distributed by the Company to its stockholders generally;

3. Any other documents which the Company is required to deliver to you pursuant to Rule 428(b) under the Securities Act of 1933;

4. The Plan document;

5. This booklet; and

6. Fund prospectuses and other Fund information.

## Lehman Brothers Intranet

Lehman Brothers employees with access may be notified about updates and changes to the foregoing documents through the Lehman Brothers e-mail system.

**EXHIBIT F**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| LEHMAN BROTHERS INC., | Case No. 08-01420 (SCC) SIPA |
| Debtor. | |

**[PROPOSED] ORDER GRANTING THE TRUSTEE'S TWO HUNDRED THIRTEENTH**
**OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS**
**(EMPLOYEE CLAIMS)**

Upon the two hundred thirteenth omnibus objection to claims, dated February 28,

2014 (the "Two Hundred Thirteenth Omnibus Objection to General Creditor Claims"),[1] of James

W. Giddens (the "Trustee"), as trustee for the liquidation of Lehman Brothers Inc. (the "Debtor"

or "LBI") under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. § 78aaa *et*

*seq.* ("SIPA"), seeking entry of an order, pursuant to section 502(b) of title 11 of the United

States Code (the "Bankruptcy Code"), as made applicable to this proceeding pursuant to sections

78fff(b) and 78fff-1(a) of SIPA, and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure,

disallowing and expunging the Employee Claims on the grounds that LBI does not have any

liability, in whole or in part, all as more fully described in the Two Hundred Thirteenth Omnibus

Objection to General Creditor Claims; and due and proper notice of the Two Hundred Thirteenth

Omnibus Objection to General Creditor Claims having been provided, and it appearing that no

other or further notice need be provided; and the Court having found and determined that the

relief sought in the Two Hundred Thirteenth Omnibus Objection to General Creditor Claims is in

---

1.    Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the objection.

the best interests of LBI, its estate, its customers and creditors, and all parties in interest and that

the legal and factual bases set forth in the Two Hundred Thirteenth Omnibus Objection to

General Creditor Claims establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

**ORDERED** that the relief requested in the Two Hundred Thirteenth Omnibus

Objection to General Creditor Claims is granted; and it is further

**ORDERED** that, pursuant to section 502(b) of the Bankruptcy Code, the

Employee Claims listed on Exhibit 1 are disallowed and expunged, as indicated in Exhibit 1,

with prejudice; and it is further

**ORDERED** that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.

Dated: New York, New York
_____ 2014

_____
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**

IN RE LEHMAN BROTHERS INC., CASE NO: 08-01420 (SCC) SIPA

TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION: EXHIBIT 1 – EMPLOYEE CLAIMS

| Claim Type | Trustee's Proposed Reason for Disallowance |
|---|---|
| 401(k) Claim | No legal or factual justification for asserting a claim against LBI.  LBI is not liable for the claimed 401(k) account or for losses associated with such account. |
| Assumed Pension Claim | No legal or factual justification for asserting a claim against LBI.  The claimed pension benefits were owed under a qualified pension plan which was assumed by the Pension Benefits Guaranty Corporation and LBI has no liability for such benefits. |
| Employee Award Plan Claim | No legal or factual justification for asserting a claim against LBI.  The Employee Award Plan provided a right to payment from LBHI, not LBI, the debtor in this separate and distinct SIPA Proceeding. |
| Equity Awards Claim | No legal or factual justification for asserting a claim against LBI.  The claimed Equity Awards constitute equity interests in LBHI, not LBI, the debtor in this separate and distinct SIPA Proceeding. |
| LBHI Equities Claim | No legal or factual justification for asserting a claim against LBI.  The claimed stock constitutes an equity interest in LBHI, not LBI, the debtor in this separate and distinct SIPA Proceeding. |
| Non-LBI Employee Claim | No legal or factual justification for asserting a claim against LBI.  The Claimed Compensation was not earned or awarded pursuant to employment with LBI. |

_____

* Claim includes unspecified amounts (i.e., amounts not specified by the claimant, amounts listed in a foreign currency, unliquidated amounts and/or amounts listed as "unknown", "$0.00*", "unascertainable", "undetermined", or where no dollar amounts were entered in the spaces provided on the proof of claim form), or is a customer claim reclassified to a general creditor claim, which, consistent with the general creditor claims register, is listed as unspecified even where the claimant listed a specific amount on the SIPC customer claim form.

IN RE LEHMAN BROTHERS INC., CASE NO: 08-01420 (SCC) SIPA

TWO HUNDRED THIRTEENTH OMNIBUS OBJECTION: EXHIBIT 1 – EMPLOYEE CLAIMS

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | EMPLOYEE AWARD PLAN CLAIM | EQUITY AWARDS CLAIM | NON-LBI EMPLOYEE CLAIM | 401(K) CLAIM | LBHI EQUITIES CLAIM | ASSUMED PENSION CLAIM |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | BLAIR, MELODY<br>F/K/A MELODY W. LI<br>25 SPINNAKER<br>IRVINE, CA  92614 | 7001154 | 1/30/2009 | $45,000.00[1] | X | X | | | X | |
| 2 | CALLIES, GUILLEMETTE<br>43, RUE DE LA FERME<br>NEUILLY-SUR-SEINE 92  F92200<br>FRANCE | 592 | 12/30/2008 | $12,482.00 | X | X | | | | |
| 3 | DICKINSON, JOSEPH R<br>17 CARLY COURT<br>MONROE, NJ  08831 | 7001371 | 4/19/2009 | $909.00 | X | X | | | | |
| 4 | GRAY, JAMES B<br>23 BLUE LEAVES AVENUE<br>NETHERNE ON THE HILL<br>COULSDON, SURREY  CRS 1NY<br>UNITED KINDOM | 4497 | 5/13/2009 | $67,342.00 | X | X | X | | | |
| 5 | GRAY, JAMES B<br>23 BLUE LEAVES AVENUE<br>NETHERNE ON THE HILL<br>COULSDON, SURREY  CRS 1NY<br>UNITED KINDOM | 9007260 | 5/13/2009 | UNSPECIFIED* | X | X | X | | | |

---

[1]    The portion of claim number 7001154 that is asserting a claim for unused vacation in the amount of $3,384.62 is not affected by this objection, and shall remain active on the claims register, subject to the Trustee's right to object to this portion of the claim in the future.

---

* Claim includes unspecified amounts (i.e., amounts not specified by the claimant, amounts listed in a foreign currency, unliquidated amounts and/or amounts listed as "unknown", "$0.00*", "unascertainable", "undetermined", or where no dollar amounts were entered in the spaces provided on the proof of claim form), or is a customer claim reclassified to a general creditor claim, which, consistent with the general creditor claims register, is listed as unspecified even where the claimant listed a specific amount on the SIPC customer claim form.

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | EMPLOYEE AWARD PLAN CLAIM | EQUITY AWARDS CLAIM | NON-LBI EMPLOYEE CLAIM | 401(K) CLAIM | LBHI EQUITIES CLAIM | ASSUMED PENSION CLAIM |
|---|---|---|---|---|---|---|---|---|---|---|
| 6 | JAMIESON, ELISABETH DIANE<br>25 WARWICK MANSIONS<br>CROMWELL CRESCENT<br>LONDON  SW59QR<br>UNITED KINGDOM | 7001100 | 1/30/2009 | $29,294.00 | X | X | | | | |
| 7 | JENKINS, INIGO LEWIS FRASER<br>4 MONTAGU HOUSE<br>33 PADDINGTON STREET<br>LONDON  W1U 4HF<br>UNITED KINGDOM | 7000994 | 1/30/2009 | $466,889.00 | X | X | | | | |
| 8 | MERCADO, BRIAN R<br>1155 BRICKELL BAY DRIVE<br>APT 1208<br>MIAMI, FL  33131 | 7001116 | 1/30/2009 | $20,619.96 | X | X | | X | | |
| 9 | MIRANDA, JORGE<br>241 SHERMAN AVENUE, APT. 2B<br>NEW YORK, NY  10034 | 3498 | 1/29/2009 | UNSPECIFIED* | X | X | | | | X |
| 10 | PATEL, BHAVNA<br>19 DORSET DRIVE<br>KENILWORTH, NJ  07033-1416 | 805 | 1/9/2009 | $24,200.00 | X | X | | | | |
| 11 | RAMADAN, ZAKY S<br>PO BOX 750134<br>FOREST HILLS, NY  11375 | 8003264 | 1/30/2009 | UNSPECIFIED* | X | X | | | | |

* Claim includes unspecified amounts (i.e., amounts not specified by the claimant, amounts listed in a foreign currency, unliquidated amounts and/or amounts listed as "unknown", "$0.00*", "unascertainable", "undetermined", or where no dollar amounts were entered in the spaces provided on the proof of claim form), or is a customer claim reclassified to a general creditor claim, which, consistent with the general creditor claims register, is listed as unspecified even where the claimant listed a specific amount on the SIPC customer claim form.

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | EMPLOYEE AWARD PLAN CLAIM | EQUITY AWARDS CLAIM | NON-LBI EMPLOYEE CLAIM | 401(K) CLAIM | LBHI EQUITIES CLAIM | ASSUMED PENSION CLAIM |
|---|---|---|---|---|---|---|---|---|---|---|
| 12 | RUELA, JOSE M<br>36 FIFTH STREET<br>NORTH ARLINGTON, NJ 07031 | 8003093 | 1/30/2009 | UNSPECIFIED* | X | X | | | | |
| 13 | RYAN, KATHERINE SUSAN<br>99-16 157TH AVENUE<br>HOWARD BEACH, NY 11414 | 7000531 | 1/26/2009 | $94,326.89[2] | X | | | | | |
| 14 | SEWARDS, MARK<br>326 ALEXANDRA PARK ROAD<br>WOODGREEN<br>LONDON, MDDSX N22 7BD<br>UNITED KINGDOM | 8000934 | 1/6/2009 | UNSPECIFIED* | X | X | | | | |
| 15 | SHAPIRO, CHERYL ANNE<br>3855 WOODCLIFF ROAD<br>SHERMAN OAKS, CA 91403 | 7001339 | 1/22/2009 | $16,855.00 | X | X | | | | |
| 16 | THAMBIMUTHU, RAJARATNAM<br>4 VAN DYCK AVENUE<br>NEW MALDEN, SURREY KT3 5NQ<br>UNITED KINGDOM | 2613 | 1/30/2009 | UNSPECIFIED* | X | X | | | | |
| 17 | TODARO, ALICIA<br>197 BAY 43RD STREET<br>BROOKLYN, NY 11214 | 7000758 | 1/29/2009 | $15,040.00 | X | X | | | | |
| 18 | WITKIN, MICHAEL<br>53 SHORT HILLS CIR APT 1B<br>MILLBURN, NJ 07041 | 9005896 | 2/2/2009 | UNSPECIFIED* | X | X | | | | |
| | Total | | | $792,957.85 | | | | | | |

---

[2]    The portion of claim number 7000531 that is asserting a claim for severance in the amount of $94,326.89 is not affected by this objection, and shall remain active on the claims register, subject to the Trustee's right to object to this portion of the claim in the future

---

* Claim includes unspecified amounts (i.e., amounts not specified by the claimant, amounts listed in a foreign currency, unliquidated amounts and/or amounts listed as "unknown", "$0.00*", "unascertainable", "undetermined", or where no dollar amounts were entered in the spaces provided on the proof of claim form), or is a customer claim reclassified to a general creditor claim, which, consistent with the general creditor claims register, is listed as unspecified even where the claimant listed a specific amount on the SIPC customer claim form.