To: US Bankruptcy Court Southern District of New York

From: Robert Cohen

Re: Claim number 1809  Case No. 08-01420 (JMP) SIPA

Date: 3/6/14

Sir:

I oppose the disallowance and expungement of this claim because the claim is incorrect.   I have
enclosed the documentation showing the details on this deferred compensation case on behalf of my
mother (REHA COHEN) the beneficiary.  We are missing two years of payments.  I will be out of the
country from March 12-28th and will not be able to attend the hearing in March.

Sincerely,

Robert Cohen

Cell 415-850-2030

**THIS IS A NOTICE REGARDING YOUR CLAIM. YOU MUST READ IT
AND TAKE ACTION IF YOU DISAGREE WITH THE OBJECTION.**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

*Stu Mitchell
212-837 6809*

In re

**LEHMAN BROTHERS INC.,**

Debtor.

**Case No. 08-01420 (JMP) SIPA**

**NOTICE OF HEARING ON TRUSTEE'S TWO HUNDREDTH
OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS
(NO LIABILITY CLAIMS)**

**CLAIM(S) TO BE DISALLOWED & EXPUNGED**

**COHEN, REBA**

| Name/Address of Claimant | Claim Number | Date Filed | Total Amount Claimed | Basis for Objection & Reason for Proposed Disallowance |
|---|---|---|---|---|
| COHEN, REBA<br>9102 W. BAY HARBOR DR., APT 6DW<br>BAY HARBOR ISLANDS, FL 33154 | 1809 | 1/27/2009 | $44,823.72 | No legal or factual justification for asserting a claim against LBI.<br><br>The claimed securities were not issued or guaranteed by LBI. |

PLEASE TAKE NOTICE that, on January 31, 2014, James W. Giddens, as Trustee (the "Trustee") for the liquidation of the business of Lehman Brothers Inc. ("Debtor" or "LBI") filed his Two Hundredth Omnibus Objection to General Creditor Claims (No Liability Claims) (the "Objection") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The category of claim objection applicable to you is identified in the table above in the column entitled "Basis for Objection & Reason for Proposed Disallowance."

The Objection requests that the Bankruptcy Court expunge and disallow one or more of your claims listed above under CLAIM(S) TO BE DISALLOWED & EXPUNGED on the ground that the LBI estate has no liability for the claim asserted. **Any claim that the Bankruptcy Court expunges and disallows will be treated as if it had not been filed and you will not be entitled to any distribution on account thereof.**

If you do NOT oppose the disallowance and expungement of your claim(s) listed above under CLAIM(S) TO BE DISALLOWED & EXPUNGED, then you do NOT need to file a written response to the Objection and you do NOT need to appear at the hearing.

If you DO oppose the disallowance and expungement of your claim(s) listed above under CLAIM(S) TO BE DISALLOWED & EXPUNGED, then you MUST file with the Court and serve on the parties listed below a written response to the Objection that is received on or before 4:00 p.m. Prevailing Eastern Time on February 21, 2014 (the "Response Deadline"). *MARCH 7th*

Your response, if any, must contain at a minimum the following: (i) a caption setting forth the name of the Bankruptcy Court, the name of the Debtor, the case number and the title of the Objection to which the response is directed; (ii) the name of the claimant and description of the basis for the amount of the claim; (iii) a concise statement setting forth the reasons why the claim should not be disallowed, expunged, reduced, or reclassified for the reasons set forth in the Objection, including, but not limited to, the specific factual and legal bases upon which you will rely in opposing the Objection; (iv) all documentation or other evidence of the claim, to

the extent not included with the proof of claim previously filed with the Bankruptcy Court, upon which you will rely in opposing the Objection; (v) the address(es) to which the Trustee must return any reply to your response, if different from that presented in the proof of claim; and (vi) the name, address, and telephone number of the person (which may be you or your legal representative) possessing ultimate authority to reconcile, settle, or otherwise resolve the claim on your behalf.

The Bankruptcy Court will consider a response only if the response is timely filed, served, and received. A response will be deemed timely filed, served, and received only if the original response is actually received on or before the Response Deadline by: (i) the chambers of the Honorable Shelley C. Chapman, One Bowling Green, New York, New York 10004, Courtroom 621; (ii) Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York, 10004, Attn: Meaghan C. Gragg, Esq.; (iii) Securities Investor Protection Corporation, 805 Fifteenth Street, N.W., Suite 800, Washington, DC 20005, Attn: Kenneth J. Caputo, Esq.; and (iv) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Maurice Horwitz, Esq. and Lori R. Fife, Esq.

A hearing will be held on March 27, 2014 to consider the Objection. The hearing will be held at 10:00 a.m. Prevailing Eastern Time in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, Courtroom 621. If you file a written response to the Objection, you should plan to appear at the hearing. The Trustee reserves the right, however, to adjourn the hearing on the Objection with respect to your claim(s). If the Trustee does adjourn the hearing with respect to your claim(s), then the hearing will be held at a later date. If the Trustee does not adjourn the hearing with respect to your claim(s), then a hearing on the Objection will be conducted on the above date.

If the Bankruptcy Court does NOT disallow and expunge your claim(s) listed above under CLAIM(S) TO BE DISALLOWED & EXPUNGED, then the Trustee has the right to object on other grounds to the claim(s) (or to any other claims you may have filed) at a later date. You will receive a separate notice of any such objections.

You may participate in a hearing telephonically provided that you comply with the Court's instructions (including, without limitation, providing prior written notice to counsel for the Trustee and any statutory committees), which can be found on the Court's website at www.nysb.uscourts.gov.

If you wish to view the complete Objection, you can do so on the Court's electronic docket for LBI's case, which is posted on the internet (i) at www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov), and (ii) for free at www.lehmantrustee.com, the Trustee's dedicated website. If you have any questions about this notice or the Objection, or if you would like to request a complete copy of the Objection at the Trustee's expense, please contact the Trustee's approved claims agent Epiq Bankruptcy Solutions, LLC at (866) 841-7868. CLAIMANTS SHOULD NOT CONTACT THE CLERK OF THE BANKRUPTCY COURT TO DISCUSS THE MERITS OF THEIR CLAIMS.

DATED:    January 31, 2014
          New York, New York

Meaghan C. Gragg
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

ATTORNEYS FOR JAMES W. GIDDENS,
TRUSTEE FOR THE SIPA LIQUIDATION OF
LEHMAN BROTHERS INC.

# LEHMAN BROTHERS

June 20, 1995

Mr. Arthur A. Cohen
6511 N. Lake Drive
Milwaukee, WI 53217

Dear Mr. Cohen:

The Benefit Plans Committee has reviewed your request to defer commencement of your annual installments from the Executive and Select Employees Plan (ESEP).

The Committee has agreed to allow you to defer these payments until you attain age 65. Therefore, you will receive your first installment under the ESEP on or about July 10, 1996.

If you have any questions, please do not hesitate to contact me at (212)526-3052.

Sincerely,

Lynn Currey
Senior Pension Administrator

a:lclet/1

# LEHMAN BROTHERS

April 4, 2008

Ms. Reha Cohen
9102 W. Bay Harbor Drive
Apt. 6DW
Bay Harbor Islands, FL 33154

Dear Ms. Cohen:

Our records indicate that you are scheduled to receive a deferred compensation
payment during the taxable year 2008.

Enclosed please find a Form W-4P for calendar year 2008. This form is required to be
completed if you would like the tax withholding from your deferred compensation payment
to differ from standard withholding. Please review the enclosed material and return
the completed Form W-4P no later than June 30, 2008.

If you would like standard withholding from your deferred compensation payment there
is nothing to be done at this time.

If you have any questions or require additional assistance please do not hesitate to
contact me by phone at (212) 320-7977 or by e-mail at erin.dsouza@lehman.com.

Sincerely,

Erin D'Souza

LEHMAN BROTHERS INC.
1301 AVENUE OF THE AMERICAS, 6TH FLOOR, NEW YORK, NY 10019

# LEHMAN BROTHERS

July 10, 2007

Ms. Reha Cohen
9102 W. Bay Harbor Drive
Apt. 6DW
Bay Harbor Islands, FL 33154

Dear Ms. Cohen:

Enclosed please find a check in the gross amount of $22,804.62. This payment represents the twelfth of fifteen annual installments payable from the Lehman Brothers Executive and Select Employees Plan (ESEP) in which you are a beneficiary. Pursuant to the letter and W-4P that was mailed to you, unless otherwise indicated this payment is subject to Federal income tax.

The Federal estimated tax rules provide that penalties may be applicable if your withholding and estimated tax payments are insufficient.

Please note this payment is taxable as ordinary income upon receipt and cannot be rolled over into an Individual Retirement Account (IRA) as this is a non-qualified plan distribution. For further tax information, we suggest that you consult your tax advisor.

If you have any questions please contact me at (212) 320-7045 or by e-mail at diane.papaleonardos@lehman.com.

Sincerely,

Diane Papaleonardos

NO.

00004
AA38063549
ORIGINATING SYSTEM : 7V
We have this day debited your account

BP: ESTATE/BEN PAYMENT 7/10/07

07/03/07 040-00010-1-2 *****$22,344.16
RR# 099
BP: ESTATE/BEN PAYMENT 7/10/07

ESTATE & BENEFICIARY
NON-QUALIFIED PAYMENTS
ACCOUNTING SERVICES
70 HUDSON ST 10TH FLOOR
JERSEY CITY NJ  07302-4585

LEHMAN BROTHERS INC.
70 HUDSON STREET
10TH FLOOR, PAYROLL DEPARTMENT
JERSEY CITY, NJ 07302-4585

EXHIBIT E

## DESIGNATION OF BENEFICIARY

Pursuant to paragraph 6 of the Deferred Compensation Agreement dated
September 25, 1985, between Shearson Lehman Brothers Inc. and me, I request
that any amount payable to me at or after the time of my death be paid to
the following designated beneficiary or beneficiaries as follows:

| Name Of Beneficiary | Relationship To Me | Address Of Beneficiary | % Of Amount To Be Paid To Beneficiary |
|---|---|---|---|
| *(handwritten)* | | | 100% |

If the foregoing designated beneficiary or one or more of the bene-
ficiaries predeceases me, I request that any amount payable to such des-
ignated beneficiary or beneficiaries be paid to the following contingent
beneficiary or beneficiaries as follows:

| Name Of Contingent Beneficiary | Relationship To Me | Address Of Contingent Beneficiary | % of Amount To Be Paid To Contingent Beneficiary |
|---|---|---|---|
| *(handwritten)* Bob | | | 50% |
| *(handwritten)* Tom | | | 50% |

2/6/86
/Date

_____
Signature

11. <u>Binding Effect.</u>

This agreement shall be binding upon Employee and Employee's heirs and legal representatives and upon Shearson and Shearson's successors and assigns. Employee's rights hereunder, including rights to receive payments, are not assignable.

SHEARSON LEHMAN BROTHERS INC.
for itself or as agent

By: _____

EMPLOYEE

_____

September 25, 1985

# ESEP OPTION ILLUSTRATIONS

| | | | |
|---|---|---|---|
| *Executive Name:* | Arthur A. Cohen | *Total Deferral:* | 64,000.00 |
| *Date Of Birth:* | 07/01/31 | *VDCP Transfer Amount:* | 64,000.00 |

*Account Balance (With Interest At 11%) At 8/31/90:*      107,131.08

## ACCOUNT BALANCE COMPARISON – ESTIMATED AS OF 8/31/2000

| | Option 1 | Option 2 | Option 3 | Option 4 |
|---|---|---|---|---|
| *Balance At 8/31/2000* | 304,190 | 348,009 | 348,009 | 348,009 |

## PAYMENT PROJECTION

| | Option 1 | Option 2 | Option 3 | Option 4 |
|---|---|---|---|---|
| *Date Payments Begin* | 07/01/96  * | 07/01/96  * | 09/01/2000 | 09/01/2001 |
| *Annual Payment* | 24,674 | 28,559 | 348,009 | 62,858 |
| *Number Of Payments* | 15 | 15 | 1 | 10 |
| *Total Payments* | 370,110 | 428,385 | 348,009 | 628,580 |
| *Annual Death Payment* (In Lieu Of Regular Payments) | 24,674 | 28,559 | 348,009 | 62,858 |
| *Number Of Payments* | 15 | 15 | 1 | 10 |
| *Annual Payment While Disabled* (In Addition To Regular Payments) | 24,000 | 24,000 | 24,000 | 24,000 |

*Option 1 – Original ESEP  /  11% Annual Interest  /  Payments Begin At Retirement*
*Option 2 – Amended ESEP  /  Moody's Crediting Rate  /  Payments Begin At Retirement*
*Option 3 – Amended ESEP  /  Moody's Crediting Rate  /  Payment On 9/1/2000*
*Option 4 – Amended ESEP  /  Moody's Crediting Rate  /  Payments Begin On 9/1/2001*

\* – Assumes Retirement At Age 65

NOTE: Moody's Crediting Rate (i.e. Moody's Rate+3%) of 12.50% used in above estimates.
These are financial estimates for illustration purposes only. See Summary for
details (including the AMEXCO guarantee).

EXHIBIT D

ELECTION OF DEFERRED COMPENSATION
PAYMENTS IN THE EVENT OF TERMINATION
UNDER PARAGRAPH 4

In the event this agreement is terminated pursuant to paragraph 4, I elect to receive all amounts credited to my deferred compensation account as follows:

_____ a lump sum payment as soon as practicable following termination of this agreement (subject to the subordination provisions of paragraph 9).

_Castro llC_ a lump sum payment as soon as practicable following termination of employment (subject to the subordination provisions of paragraph 9).

**EXHIBIT A**

NAME:                    Arthur A. Cohen

TOTAL AMOUNT DEFERRED UNDER THE

EXECUTIVE AND SELECT EMPLOYEES PLAN:    $64,000.00

**EXHIBIT B**

## ILLUSTRATION OF PAYMENTS

### PURSUANT TO PARAGRAPH 2

The projected payments illustrated in this Exhibit are estimated figures which are subject to later adjustment to account for variations in the interest crediting rate. The rate used to calculate these estimates is the Moody's Crediting Rate for 1989, plus an additional 3 percentage points (12.50%) projected forward to the age stated below.

| RETIREMENT AT AGE | ANNUAL PAYABLE BENEFIT |
|---|---|
| 65 | $28,559 |

**EXHIBIT C**

---

**I.    DEFINITION OF TOTAL DISABILITY FOR PURPOSES OF DEFERRED COMPENSATION AGREEMENT**

---

"Total disability" means incapacity of Employee resulting from bodily injury or disease which prevents Employee from engaging in any gainful occupation. During the first 24 months of such disability, "occupation" shall mean all of the material and substantial daily duties of Employee's regular occupation; however, after the first 24 months, "occupation" shall mean all of the material and substantial daily duties of any occupation for which Employee is or may be suited by education, training or experience, provided that (a) the total disability must (i) have been existing for six months and (ii) not have resulted directly from injuries (x) willfully and intentionally self-inflicted or (y) while Employee was in the military, naval or air force of country at war or (z) flying as a pilot of any aircraft or device for aerial navigation, except while flying in a regularly scheduled commercial aircraft, and (b) Employee has provided such written proof of Employee's total disability as Employer has requested from time to time. "War" means any declared war, undeclared war, or international police action with force of arms by any country, the United Nations, or any other assembly of nations.

<u>**EXHIBIT D**</u>

---

### DESIGNATION OF BENEFICIARY

---

Pursuant to paragraph 6 of the Deferred Compensation Agreement dated September 1, 1990, between Shearson Lehman Brothers Inc. and me, I request that any amount payable to me at or after the time of my death be paid to the following designated beneficiary or beneficiaries as follows:

| Name of Beneficiary | Relationship To Me | Address of Beneficiary | % of Amount To Be Paid to Beneficiary |
|---|---|---|---|
| REHA COHEN | WIFE | 6511 N. LAKE DR MILWAUKEE, WI 53217 | 100% |

If the foregoing designated beneficiary or one or more of the beneficiaries predeceases me, I request that any amount payable to such designated beneficiary or beneficiaries be paid to the following contingent beneficiary or beneficiaries as follows:

| Name of Contingent Beneficiary | Relationship To Me | Address of Contingent Beneficiary | % of Amount To Be Paid to Contingent Beneficiary |
|---|---|---|---|
| RUPERT H. COHEN | SON | 6511 N. LAKE DR MILWAUKEE, WI 53217 | 50% |
| LAURA A. COHEN | DAUGHTER | | 50% |

12/13/90
_____
Date

_____
Signature

any other exchange, board of trade, clearing association or similar organization of which Shearson is a member and which requires such reference as a condition to inclusion of the amounts credited to the deferred compensation account hereunder in Shearson's net capital as computed for the purposes of such organization.

      (h)    Commodity Futures Trading Commission ("CFTC") Regulations.

References in this agreement to the Exchange or Examining Authority shall also be deemed to refer to the organization(s) designated as the self-regulatory organization(s) (also known as DSRO) of Shearson pursuant to a plan filed with the CFTC pursuant to Regulation 1.52 under the CEA to the extent such references are required as a condition to inclusion of the amounts credited to a deferred compensation account hereunder in Shearson's net capital as computed for purposes of such organization(s).

      (i)    Use of Amounts Deferred.

The amounts credited to the deferred compensation account hereunder shall be dealt with in all respects as capital of Shearson, shall be subject to the risks of the business, and may be deposited in an account or accounts in Shearson's name in any bank or trust company.

    11.    Binding Effect.

This agreement shall be binding upon Employee and Employee's heirs and legal representatives and upon Shearson and Shearson's successors and assigns.  Employee's rights hereunder, including rights to receive payments, are not assignable.

                  **SHEARSON LEHMAN BROTHERS INC.**

By: _____

            **EMPLOYEE**

_____

NAME: Arthur A. Cohen

**EXHIBIT C**

I.    DEFINITION OF TOTAL DISABILITY FOR PURPOSES OF
      DEFERRED COMPENSATION AGREEMENT

"Total disability" means incapacity of Employee resulting from bodily injury or disease which prevents Employee from engaging in any gainful occupation. During the first 24 months of such disability, "occupation" shall mean all of the material and substantial daily duties of Employee's regular occupation; however, after the first 24 months, "occupation" shall mean all of the material and substantial daily duties of any occupation for which Employee is or may be suited by education, training or experience, provided that (a) the total disability must (i) have been existing for six months and (ii) not have resulted directly from injuries (x) willfully and intentionally self-inflicted or (y) while Employee was in the military, naval or air force of country at war or (z) flying as a pilot of any aircraft or device for aerial navigation, except while flying in a regularly scheduled commercial aircraft, and (b) Employee has provided such written proof of Employee's total disability as Employer has requested from time to time. "War" means any declared war, undeclared war, or international police action with force of arms by any country, the United Nations, or any other assembly of nations.

II.    AMOUNT OF DISABILITY PAYMENTS

The annual amount of disability benefits payable under paragraph 2(c) shall be $24,000.

# Memorandum

Shearson Lehman Brothers Inc



**SHEARSON LEHMAN BROTHERS**

An American Express company

Date: SEPTEMBER 2, 1985

From: ROBERT E. GENIRS
CHAIRMAN, ESEP COMMITTEE

To: ARTHUR COHEN

Subject: <u>EXECUTIVE AND SELECT EMPLOYEES PLAN (ESEP)</u>

This is a confidential invitation to participate in the Executive and Select Employees Plan (ESEP), a nonqualified deferred compensation program offered by Shearson Lehman Brothers to executives and other select high–income employees.  We view this program to be one of the most attractive deferred compensation plans available in the securities industry.

The program is being offered this year to eligible employees.  Shearson Lehman Brothers cannot guarantee that this type of program will be offered in subsequent years and, therefore, the firm reserves the right to amend or terminate this deferred compensation program due to unforeseen events.

## Deferral Amount

Based on objective criteria established by the firm, you may elect to defer **a maximum amount\*** of $16,000  in each of the years 1985 through 1988 inclusive, for a total deferral commitment of $ 64,000. You may elect to defer a lesser amount, rounded to the nearest $1,000, but not less than $5,000 per year.  Your total deferral commitment is frozen and is not subject to change at a later date.  The amount you defer represents pretax income and, therefore, will not be reflected on your W–2 income statement.

These deferrals may be made from future compensation payments including salary, bonus and/or commissions, beginning October 1, 1985 and ending December 31, 1988.  Alternatively, if you are a participant in the Voluntary Deferred Compensation Plan ("VDCP"), you and the firm may agree to utilize certain amounts previously deferred under the VDCP to fund your ESEP deferral commitment.

## Benefits

In exchange for your pretax deferrals as explained above, ESEP will provide an  **11% compound return** from the date of deferral until one of the following events triggering payment:

* Retirement – a specific dollar amount payable in 15 equal annual installments commencing at any age after 55,

* Death – a benefit paid to your beneficiary which is equal to your retirement benefit, and

* Disability – an annual disability benefit of 37½ % of your total four year commitment.

\*If this offering is oversubscribed, Shearson Lehman Brothers reserves the right to reduce the maximum deferral amount on a pro rata basis.

## Retirement

Deferrals until retirement will compound annually at 11% and will be paid to you in 15 annual install-
ments commencing at retirement. Depending on the age at which you retire, which may be any
age between 55 and 65, your installment payments will be adjusted accordingly.

The table below illustrates a range of projected benefits payable based on four $10,000 annual
deferrals (total of $40,000).

| Entry Age | Annual Installment Benefit For 15 Years | | | Total Benefit | | |
|---|---|---|---|---|---|---|
| | At 55 | At 60 | At 65 | At 55 | At 60 | At 65 |
| 30 | $ 58,613 | $ 98,767 | $ 166,428 | $ 879,195 | $1,481,505 | $2,496,420 |
| 35 | 34,784 | 58,613 | 98,767 | 521,760 | 879,195 | 1,481,505 |
| 40 | 20,643 | 34,784 | 58,613 | 309,645 | 521,760 | 879,195 |
| 45 | 12,250 | 20,643 | 34,784 | 183,750 | 309,645 | 521,760 |
| 50 | 7,270 | 12,250 | 20,643 | 109,050 | 183,750 | 309,645 |
| 55 | N/A | 7,270 | 12,250 | N/A | 109,050 | 183,750 |
| 60 | N/A | N/A | 7,270 | N/A | N/A | 109,050 |

You may elect to accelerate these deferrals (see discussion under "Deferral Options"), and to the
extent that you exercise this option, benefit payments will increase accordingly.

## Death

If you die prior to commencement of benefits, your designated beneficiary will be paid the 15
annual installments you would have received as a retirement benefit at age 65, commencing as soon
as practicable after your death.

If you die subsequent to commencement of benefits, your designated beneficiary will be paid the
balance of the annual installments, if any, in the amount determined at the time benefits commenced.

## Disability

If you become completely disabled, you will receive annual payments of 37½ % of your total four year
commitment. Disability benefits will continue until either age 65 retirement or death benefits
commence. For instance, if you elect to defer $25,000 for each of four years, you would
receive an annual disability benefit of $37,500 until either retirement or death benefits commence.

## Vesting - Early Termination of Employment

You will be fully vested in the ESEP after five years of plan participation.  If you are no longer employed with the firm for any reason (other than retirement, death or disability) prior to five years of participation in ESEP, all amounts deferred to the date of your termination will be paid to you with interest credited at the lesser of 5% or the 30 day T-bill rate in a lump sum.

## Deferral Options

You may fund your total deferral commitment through two sources - certain amounts deferred under the VDCP and/or future compensation payments.

### VDCP Account

You and the firm may agree to utilize certain amounts previously deferred under the VDCP for purposes of funding 100%, 50% or 25% of your total ESEP deferral commitment.  This method of funding must be requested before September 13, 1985; otherwise deferrals must be made out of future compensation.

Your account balance under the VDCP as of June 30, 1985 is $ 146,117

**NOTE: Any accelerations of deferrals will begin to accrue interest immediately, thereby increasing your benefit payments accordingly.**

Examples:

| Age | Deferral | 15 Annual Payments at 65 | Total Payments |
|-----|----------|--------------------------|----------------|
| 29 | $10,000 per year for four years | $ 184,735 | $ 2,771,025 |
| | $40,000 in 1985 | 214,576 | 3,218,640 |
| 39 | $50,000 per year for four years | 325,303 | 4,879,545 |
| | $200,000 in 1985 | 377,853 | 5,667,795 |
| 49 | $25,000 per year for four years | 57,283 | 859,245 |
| | $100,000 in 1985 | 66,537 | 998,055 |

The balance of your total commitment must be funded with future compensation payments as discussed in the following section.

ARTHUR COHEN                    1

## Future Compensation

Deferrals may be made in equal monthly installments during the defined periods or during two window periods in which accelerated payments are permitted. The schedules are designed to offer maximum flexibility in planning your deferrals and are listed below.

The first two deferral periods are: (1) October 1, 1985 through December 31, 1985, and (2) January 1, 1986 through December 31, 1986 – for a total of 15 months. You must defer at least 50% of your total commitment by December 31,1986. In late 1986, you will be asked to choose your deferral schedule for the remaining two periods, 1987 and 1988. You must defer at least 25% in 1987 and 25% in 1988. The window periods referred to above (October through December 1985 and January through March 1987) provide an attractive opportunity to accelerate your deferral commitment for the express purpose of maximizing your retirement benefits.

Set forth below are several examples of potential deferral schedules:

1.  50%      Equal payments October, November and December 1985
    50%      Equal payments January, February and March 1987

2.  50%      Equal payments October, November and December 1985
    25%      Equal monthly payments during 1987
    25%      Equal monthly payments during 1988

3.  50%      Equal monthly payments October 1985 through December 1986
    25%      Equal monthly payments during 1987
    25%      Equal monthly payments during 1988

4.  50%      Equal monthly payments October 1985 through December 1986
    50%      Equal payments January, February and March 1987

5.  25%      Equal payments October, November and December 1985
    25%      Equal monthly payments during 1986
    50%      Equal payments January, February and March 1987

6.  25%      Equal payments October, November and December 1985
    25%      Equal monthly payments during 1986
    25%      Equal monthly payments during 1987
    25%      Equal monthly payments during 1988

7.  100%     Equal payments October, November and December 1985

## Distributions

Installment benefit payments will commence on the earlier of your elected retirement date, death or disability.   **NO HARDSHIP WITHDRAWALS OR LOANS ARE PERMITTED UNDER ESEP.**



## Insurability

Your eligibility for this program is dependent upon the firm being able to obtain an insurance policy on your life.  At that time individual deferred compensation agreements between you and Shearson Lehman Brothers will be executed.  In most circumstances, no medical examination will be required.

## Tax and Benefits Implications

Generally, benefits are subject to income tax.  Death benefits may be subject to estate taxation.  We suggest that you consult with your personal tax advisor to assess the implications of your own situation.

Amounts deferred under ESEP will not be included in determining benefit entitlements under other Shearson Lehman group insurance and deferred compensation plans.  For example, deferrals which reduce taxable compensation to less than $300,000 will result in a reduction in pension benefit accruals for the year in which deferral occurs.

## Other

Under your deferred compensation agreement you will be an unsecured, subordinated creditor of Shearson Lehman Brothers with no rights under the insurance policy.  Shearson Lehman Brothers is the sole owner and beneficiary of the life insurance policy.

If because of changes in the tax law, Shearson Lehman Brothers is unable to provide the benefits outlined above, the value of your deferred compensation to date will be paid out to you according to one of the following elections:

- Immediate lump-sum payment

- Continued deferral until the earlier of retirement or termination of service

A schedule of seminars which will be held in New York is included  in this package.  Conference call meetings will also be scheduled at locations not sponsoring seminars so that you have an opportunity to review all terms and provisions of the plan and participate in question-and-answer sessions.  Please withhold all questions until you attend a seminar or conference call meeting.


**ALL ELECTION FORMS MUST BE COMPLETED AND RETURNED NO LATER THAN FRIDAY, SEPTEMBER 13, 1985 TO THE ATTENTION OF:**

> **Susan Curry, ESEP Committee, Benefits Department**
> **Shearson Lehman Brothers Inc**
> **125 Broad Street - 8th Floor**
> **New York, NY 10004**

*[handwritten: DISCRETION OF PARTICIPANT WHEN PAYMENT STARTS"]*

*[handwritten: SCC-522-0012]*

## THE SHEARSON LEHMAN BROTHERS INC.
## EXECUTIVE AND SELECT EMPLOYEES PLAN ("ESEP")
## SUMMARY OF ESEP ALTERNATIVES

Set forth below is a description of several optional amendments being offered to eligible participants in ESEP (the "Amendments"). This description is intended to provide eligible participants with detailed information about the Amendments so that each eligible participant can make an informed decision about whether or not to elect one of the Amendments. **Each participant should read this information carefully, and consult with a financial or tax advisor before making a decision.**

Please refer to your <u>original</u> ESEP deferred compensation agreement (the "ESEP Agreement") and certain related documents for a complete description of the terms and conditions of ESEP as currently in effect. Any description of the provisions of the ESEP Agreement contained herein is qualified in its entirety by reference to such documents.

## Eligibility to Elect an Amendment

All ESEP participants, <u>subject to certain exceptions</u>, are eligible to elect <u>one</u> of the Amendments which, if elected, will apply thereafter to his ESEP Agreement. Each participant by electing an Amendment will **irrevocably** agree to alter his ESEP Agreement to conform with the selected Amendment.

Any individual who is not a current, active employee of Shearson Lehman Brothers Inc., or an affiliate ("Shearson"), is <u>excluded</u> from eligibility for electing an Amendment. Similarly, any individual whose employment with Shearson terminates, for any reason, prior to the effective date (as described under "Other Important Considerations") of an elected Amendment will nullify an otherwise effective election. For example, if a participant were to die after electing an Amendment but prior to its effective date, death payments would be made in accordance with the original ESEP Agreement.

Further, the Chief Executive Officer of Shearson or his delegate (hereinafter "Senior Management") retains the right, prior to execution of the amended ESEP Agreement and in his absolute discretion, to accept or reject any otherwise eligible participant's election of an Amendment. Accordingly, any election of an Amendment is subject to the approval of Senior Management after the election is received by Shearson.

## Method of Electing an Alternative

Enclosed with this description is an election form (the "Election Form") which eligible participants must use to elect an alternative. The Election Form must be completed by checking <u>one</u> of the appropriate boxes and returning it in the enclosed, self-addressed envelope. <u>Please Note</u> - all eligible participants must

complete and return the Election Form even if you do not elect one of the Amendments (Option 2, 3 or 4).

Any participant who does not complete and return the Election Form, on a timely basis, will be deemed to have elected <u>no amendment</u> (Option 1). **The completed Election Form must be actually received by Shearson no later than September 28, 1990, 5:00 P.M. New York City time, in order to effect an Amendment to the ESEP Agreement. Copies sent by facsimile or telecopy are <u>not</u> acceptable.**

Following timely receipt of participants' completed Election Forms, Amendments will be incorporated in the ESEP Agreements, where applicable, and then mailed to participants. Those participants receiving amended ESEP Agreements will be required to sign the amended documents and to return one copy promptly to Shearson.

All provisions of the ESEP Agreement not affected by the Amendment will remain in full force and effect.

**Amounts Deferred Under ESEP Remain Unchanged**

None of the alternatives permits any change in the amounts of compensation previously deferred under ESEP. The alternatives do not permit any participant to either (i) defer additional compensation or (ii) receive currently any compensation previously deferred. For instance, if a participant deferred $100,000 of compensation under ESEP in 1985, the participant may not elect to receive currently any amounts in his ESEP deferred compensation account.

**The Alternatives**

Set forth below is a description of the four alternatives, including the Amendments being offered to eligible participants. Please review each of the Amendments carefully to determine which of the Amendments you wish to elect, if any.

Enclosed is a personalized illustration (using simplified assumptions) showing how the new crediting rate (which applies to all of the Amendments) will affect the amounts you will ultimately receive under the amended ESEP Agreement. Because the new crediting rate is a <u>floating rate</u>, the precise amount of retirement and/or death payments cannot be projected. Accordingly, the payments in the illustration would differ from the payments actually received because the assumed rate in the example may vary each year. The new crediting rate for any calendar year will equal the published Moody's Corporate Bond Yield Average, plus an additional 3 percentage points (the "Moody's Crediting Rate").

2

## Option 1 - The Original ESEP Option

The Election Form lists Option 1 as no amendment to the ESEP Agreement. If you decide to retain your ESEP Agreement in its current form, simply check the box for Option 1 and sign, date and return the Election Form. If you elect Option 1, no changes will be made to your ESEP Agreement, and the American Express Company guarantee (as described later) will not apply to any of the deferred compensation payable under that ESEP Agreement.

## Option 2 - The Retirement Option (15 annual installments)

If a participant elects this alternative, the following amendments will apply to the ESEP Agreement:

**Deferred Compensation Paid at Retirement.** The participant will receive all amounts credited to the ESEP deferred compensation account in substantially equal installments (subject to variations in the Moody's Crediting Rate) commencing at retirement (see the definition of retirement under "Other Important Considerations"). The number of installment payments will be governed by the ESEP Agreement; that is, 15 annual installments.

**Payment on Other Termination of Employment.** If a participant's employment with Shearson terminates for any reason other than retirement, death, or disability, payment of his ESEP deferred compensation account will be made as soon as practicable after termination in one lump sum. Interest at the Moody's Crediting Rate will be credited on the account through the last day of the month preceding payment.

**Death Payments.** If a participant dies prior to commencement of his retirement payments, his designated beneficiary will receive, as the full entitlement under ESEP, 15 substantially equal, annual installments. For purposes of calculating the death payments to be made to a deceased participant's beneficiary, the aggregate amount payable will be equal to the sum of (i) the value of the deferred compensation account at the beginning of the month in which death occurs, and (ii) the projected increase in the date of death value of the account over the installment payment period based upon the Moody's Crediting Rate in effect for the last full calendar year before death.

**Disability Payments.** If a participant becomes disabled, he will receive disability payments (prorated to account for partial years of disability) as currently provided under the ESEP Agreement.

**Crediting Rate for Interest.** Beginning with the effective date of the Amendment, the rate used to annually credit interest to the ESEP deferred compensation account will be the Moody's Crediting Rate. The Moody's Crediting Rate will be adjusted as of each January 1 following the effective date of the Amendment and will be used to

3

credit interest for the calendar year just ended. Prior to the effective date of the Amendment, the 11% crediting rate under the ESEP Agreement will remain in effect.

**American Express Company Guarantee.** The American Express Company guarantee will apply to the collection by the participant of his deferred compensation payments under the Amendment, to the extent such payments are due on or before August 9, 2000. If installment payments extend beyond August 9, 2000, the guarantee will not apply. If a participant's employment with Shearson terminates for any reason other than death, disability, retirement, or involuntary termination without cause (as defined below), the guarantee will lapse at such termination. For additional information concerning the American Express Company guarantee, see "Other Important Considerations" below.

## Option 3 - Lump Sum 2000 Option

If a participant elects this alternative, the following amendments will apply to the ESEP Agreement:

**Deferred Compensation Paid in a Lump Sum.** The participant will receive all amounts credited to the ESEP deferred compensation account in one lump sum payment. Shearson will make the lump sum payment as soon as practicable after the earlier to occur of (i) August 9, 2000 or (ii) the termination of the participant's employment with Shearson for <u>any reason</u> (including retirement) other than disability. In the event of disability, the participant will receive his ESEP deferred compensation account upon the earliest to occur of (i) August 9, 2000, (ii) death or (iii) failure to qualify for continued disability payments under ESEP, <u>unless</u> the participant is rehired by Shearson. *

**Death Payments.** If a participant dies prior to August 9, 2000 while employed by Shearson or while disabled, his designated beneficiary will receive, as the full entitlement under ESEP, in one lump sum, the projected amount the participant would have received on August 9, 2000. For purposes of calculating the death payment to be made to a deceased participant's beneficiary, the amount payable will be equal to the sum of (i) the value of the deferred compensation account at the beginning of the month in which death occurs, and (ii) the projected increase in the date of death value of the account through August 9, 2000 based upon the Moody's Crediting Rate in effect for the last full calendar year before death.

---

\* For example, under the ESEP Agreement disability benefits must cease at age 65. A disabled participant who attains age 65 before August 9, 2000 would be paid the lump sum deferred compensation upon attaining age 65.

4

**Disability Payments.** If a participant becomes disabled before August 9, 2000, he will receive disability payments (prorated to account for partial years of disability) as currently provided under the ESEP Agreement. Disability payments will cease in any event, however, when the participant becomes entitled to receive the lump sum deferred compensation payment under the Amendment.

**Crediting Rate for Interest.** Beginning with the effective date of the Amendment, the rate used to annually credit interest to the ESEP deferred compensation account will be the Moody's Crediting Rate. The Moody's Crediting Rate will be adjusted as of each January 1 following the effective date of the Amendment and will be used to credit interest for the calendar year just ended. Prior to the effective date of the Amendment, the 11% crediting rate under the ESEP Agreement will remain in effect.

**American Express Company Guarantee.** The American Express Company guarantee will apply to the collection by the participant of his deferred compensation payment under the Amendment, to the extent such payments are due on or before August 9, 2000. If a participant's employment with Shearson terminates for any reason other than death, disability, retirement, or involuntary termination without cause (as defined below), the guarantee will lapse at such termination. For additional information concerning the American Express Company guarantee, see "Other Important Considerations" below.

## Option 4 - Ten Annual Installments Option

If a participant elects this alternative, the following amendments will apply to the ESEP Agreement:

**Deferred Compensation Paid in Ten Annual Installments.** The participant will receive all amounts credited to his ESEP deferred compensation account in 10 substantially equal, annual installments (subject to variations in the Moody's Crediting Rate). Installment payments will commence upon the earlier to occur of (i) August 9, 2001 or (ii) termination of employment as a result of death or retirement. In the event of disability, the participant will commence receiving his ESEP deferred compensation account upon the earliest to occur of (i) August 9, 2001, (ii) death or (iii) the failure to qualify for continued disability payments under ESEP, unless the participant is rehired by Shearson.

**Payment on Other Termination of Employment.** If a participant's employment with Shearson terminates for any reason other than retirement, death, or disability, payment of his ESEP deferred compensation account will be made as soon as practicable after termination in one lump sum. Interest at the Moody's Crediting Rate will be credited on the account through the last day of the month preceding payment.

5

**Death Payments.** If a participant dies prior to the commencement of the ten-year installment payments his designated beneficiary will receive, as the full entitlement under ESEP, 10 substantially equal, annual installments. For purposes of calculating the death payments to be made to a deceased participant's beneficiary, the aggregate amount payable will be equal to the sum of (i) the value of the deferred compensation account at the beginning of the month in which death occurs, and (ii) the projected increase in the date of death value of the account over the installment payment period based upon the Moody's Crediting Rate in effect for the last full calendar year before death.

**Disability Payments.** If a participant becomes disabled before August 9, 2001, he will receive disability payments (prorated to account for partial years of disability) as currently provided under the ESEP Agreement. Disability payments will cease, however, when the participant becomes entitled to commence receiving the deferred compensation payments under the Amendment.

**Crediting Rate for Interest.** Beginning with the effective date of the Amendment, the rate used to annually credit interest to the ESEP deferred compensation account will be the Moody's Crediting Rate. The Moody's Crediting Rate will be adjusted as of each January 1 following the effective date of the Amendment and will be used to credit interest for the calendar year just ended. Prior to the effective date of the Amendment, the 11% crediting rate under the ESEP Agreement will remain in effect.

**American Express Company Guarantee.** The American Express Company guarantee will apply to the collection by the participant of his ESEP account balance as of August 9, 2000 and during the ten-year installment period such account balance is payable. For purposes of determining the duration of the guarantee, each installment payment will be deemed to consist entirely of the ESEP account balance as of August 9, 2000, until such amount is fully paid. If a participant's employment with Shearson terminates for any reason other than death, disability, retirement, or involuntary termination without cause (as defined below), the guarantee will lapse at such termination. For additional information concerning the American Express Company guarantee, see "Other Important Considerations" below.

## Other Important Considerations

**American Express Company Guarantee.** The American Express Company guarantee under ESEP is intended to allow eligible participants to collect their ESEP deferred compensation payments if Shearson is unable to fulfill its payment obligations. Attached to this summary as Attachment I is a copy of the provisions of the guarantee adopted by the American Express Company Board of Directors which you should review carefully. The guarantee provisions will be

6

incorporated in the amended ESEP Agreements.

**Shearson Subordinated Debt.**  Shearson's deferred compensation obligations will continue to be treated as subordinated debt for net capital calculations under New York Stock Exchange Rules.

**Effective Date of Amendments.**  Upon proper completion of all necessary documents and acceptance of them by Senior Management, an Amendment will become effective September 1, 1990.

**Definition of Retirement.**  For purposes of The Retirement Option (Option 2), retirement shall mean the earlier of (i) the attainment of age 65 or the date of actual termination if later or (ii) termination of employment after attainment of age 55 and, subject to Shearson's consent, submission of an irrevocable letter from the participant designating the date retirement benefits should commence. If Shearson does not consent to the irrevocable letter's date of commencement, retirement payments will commence immediately.

**Involuntary Termination Without Cause.**  An involuntary termination is "without cause" unless it arises out of a felony conviction (or failure to contest prosecution for a felony) or conduct which, in the sole discretion of Senior Management, constitutes the willful and continued failure by the participant substantially to perform his employment duties and obligations or the willful engaging by the participant in conduct which is injurious to Shearson, American Express Company or any of their affiliates.

mmt  L:\HOME\pe\mmt\WPDOCS\pak073pe.frm   080790

## Attachment I – American Express Company Guarantee of Certain SLH Deferred Compensation Payments (as approved by the American Express Company Board of Directors on June 25, 1990)

The Guarantee shall be subject to these provisions:

1. The Guarantee shall cover payments that become payable under the Plans (as defined) during a period of ten years beginning as of the Effective Time of the Merger, on account balances (whether vested or unvested) as of the Effective Time of the Merger, plus interest-equivalents that will accrue on such account balances during the ten years, except as otherwise provided for in this Exhibit.

2. Excluded from the Guarantee are account balances of participants (i) who are not current, active employees of SLH or its affiliates at the Effective Time of the Merger, (ii) whose employment terminates during the period of the Guarantee for any reason other than death, disability, retirement or involuntary termination without cause or (iii) who, during the period of the Guarantee, violate the Code of Conduct of American Express Company and its subsidiaries, as applicable, or violate any applicable code of conduct or other policies (that relate to matters such as, business ethics, compliance with laws and regulations, and proprietary information and trade secrets).

3. Excluded from the Guarantee are new monies deferred under the Plans after the Effective Time of the Merger and future interest-equivalents credited on such monies.

4. In order to be eligible for the Guarantee, a participant in the ESEP and the Lehman Program must elect to accept certain amendments to the ESEP and the Lehman Program as approved by the Compensation, Benefits and Nominating Committee of the Company.

5. An exception to the 10-year time limit on the Guarantee is under the ESEP and the Lehman Program (as they will be amended), where a participant may elect 10 annual installment payments beginning in 2001, with the Guarantee covering the account balance for such participant as of the tenth anniversary of the Effective Time of the Merger. The Guarantee on such amount shall expire upon the first date installment payments totaling such guaranteed amount have been made to such a participant.

6. Amexco retains the right to be released from the Guarantee, without recourse by the participants, to the extent it causes an unaffiliated, creditworthy entity to assume the Guarantee in the event of significant changes in legislative, regulatory, tax or accounting conditions. *SALE & CAN IT WAIVE LIAB.*

7. Amexco retains the right to be released from the Guarantee, without recourse by the participants, in the event of, and effective immediately prior to, any amendment or termination of one or more of the Plans or related documents during the period of the Guarantee, which amendment or termination has not been approved in writing by the Chief Executive Officer, the President or an Executive Vice President of the Company.

8. The Chief Executive Officer or the General Counsel of the Company are authorized to interpret, construe and administer the terms and conditions of the Guarantee.

mmt  L:\HOME\pe\mmt\WPDOCS\pak178pe.frm    082390

**COMPARISON OF OPTIONS**

**(For comparison only; refer to Summary of ESEP Alternatives for more details)**

| Component | Option 1 | Option 2 | Option 3 | Option 4 |
|---|---|---|---|---|
| Annual interest rate credited | 11% | Moody's + 3% | Moody's + 3% | Moody's + 3% |
| Collection of payments to be made through 8/9/2000 guaranteed by AMEXCO * | No | Yes | Yes | Yes |
| Collection of payments of 8/9/2000 account balance guaranteed after 8/9/2000 | No | No | No | Yes |
| Payments upon your retirement (at least age 55) | 15 equal annual installments commencing at retirement. | 15 annual installments commencing at retirement. | If retire prior to 8/9/2000, lump sum payment equal to your account balance. | Receive 10 annual installments beginning at the earlier of 8/9/2001 or retirement. |

* - For complete details on the terms and conditions of the guarantee, please refer to the Summary of ESEP Alternatives.

| Component | Option 1 | Option 2 | Option 3 | Option 4 |
|---|---|---|---|---|
| Payments if you terminate employment prior to retirement | 15 equal annual installments commencing at retirement. | Lump sum payment at termination equal to account balance. | Same as Option 2. | Same as Option 2. |
| Payments upon your death | Your beneficiary will receive 15 annual installments (or remaining payments if payments have already begun). | Same as Option 1 but using Moody's rate + 3% to project the remaining death payments. | Projected value of lump sum at 8/9/2000. | 10 annual installments using projected value for starting balance and Moody's rate + 3% for payment stream. |
| Payments upon your disability | Annual payments equal to 37 1/2% of your original ESEP deferral until earlier of age 65 or death. | Same as Option 1. | If disabled before 8/9/2000, same as Option 1. Disability payments end with lump sum payment. | Same as Option 1 but disability payments end with first of the 10 annual installments. |

# Memorandum

Shearson Lehman Brothers Inc





**Date:** January 24, 1986

**From:** Susan F. Curry

**To:** Participants in The Executive and Select
Employees Plan (ESEP)

**Subject:** ESEP Contracts

Enclosed is a copy of your deferred compensation contract with Shearson Lehman Brothers which will evidence your participation in the Executive and Select Employees Plan (ESEP). This contract sets forth all important provisions of ESEP including participation, payment of deferred compensation and subordination rules. In addition, a prospectus for ESEP is provided for your further information.

An estimation of your annual retirement benefit (at ages 55, 60 and 65) is provided in Exhibit B assuming a 15 year payment schedule. Please note that for this purpose, the benefit was determined based on your total deferral commitment and assumes a funding pattern of 25% per year in each of the four years 1985 through 1988. When your deferral commitment is complete, a rider to the contract will be issued which provides the exact annual retirement benefit based on your actual funding pattern. This rider will replace the estimated figures now reported in Exhibit B.

Please execute the contract by signing both copies of the signature page and return both original copies to me in the enclosed self-addressed envelope as soon as possible, but no later than February 7, 1986. After execution by Shearson Lehman Brothers, an original copy will be returned to you.

You must also complete both copies of Exhibit D (Election of Deferred Compensation Payments in the Event of Plan Termination) and Exhibit E (Designation of Beneficiary) which are included in this package. Please retain one set and return the second original set with the signature pages. For estate planning purposes, we suggest you consult with your personal tax advisor before designating a beneficiary.

If you have any questions, please contact me at (212) 323-7319 or Erin Conway at (212) 323-4818.

Enclosures

EXECUTIVE AND SELECT EMPLOYEES
DEFERRED COMPENSATION AGREEMENT

Shearson Lehman Brothers Inc., (Shearson) for itself and as agent for certain of its subsidiaries as provided in paragraph 8, which together may be referred to hereinafter as the (Employer) and Arthur Cohen (Employee) agree as follows:

### 1. Deferred Compensation.

Certain compensation, the amount and description of which is set forth in Exhibit A attached hereto, shall be deferred according to the terms and conditions of this agreement. All or a portion of such compensation may have been previously deferred under Shearson's Voluntary Deferred Compensation Plan (VDCP) and if so, any such previously deferred amounts shall henceforth be deferred in accordance with the terms and conditions of this agreement. In consideration of this agreement, Employee relinquishes all rights under the VDCP with respect to the amount of deferred compensation, if any, set forth in Exhibit A which is further deferred hereunder. Any part of the total amount deferred pursuant to Exhibit A which is not attributable to the VDCP shall be deferred from compensation to which Employee would otherwise be entitled from the Employer during the balance of calendar year 1985 and calendar years 1986 through 1988.

Any portion of the total amount to be deferred hereunder which is not deferred during 1985 and 1986 will be deferred in calendar years 1987 and 1988 and the form of such deferral will be elected by Employee no later than December 31, 1986.

### 2. Deferred Compensation Payments.

Subject to the provisions of paragraphs 3, 4, 5(a) and 9, in consideration of the deferrals provided for in paragraph 1 Shearson shall make the following payments to Employee or Employee's beneficiary or beneficiaries designated according to paragraph 6:

(a)  If Employee is living on the date that payments to Employee provided for in this subparagraph (a) are to commence, Shearson shall make fifteen (or fewer number as determined by the Administrative Committee of the Board of Directors) consecutive equal annual payments to Employee or in the event of Employee's death after the commencement of payments to Employee's designated beneficiary or beneficiaries as follows:

   (i)  The first of these payments shall be made on the date that Employee reaches age 65 (or, if later, his actual retirement from Shearson) or on any earlier date of retirement after Employee reaches age 55 and prior to the date Employee reaches age 65 which date of retirement is specified in a written notice delivered by Employee to Shearson no later than 60 days prior to such specified date.

  (ii)  The remaining fourteen payments (or fewer number of payments as the case may be) shall be made on the fourteen (or fewer) succeeding anniversary dates of the date such payments commence as provided in clause (i) above.

 (iii)  If these payments commence when Employee reaches age 65, the amount of each payment shall be the amount specified in Exhibit B hereto attached.*  If these payments commence prior to Employee reaching age 65, the amount of each payment shall be an amount determined by using the same rate of interest used to determine payments commencing at age 65.  For purposes of illustration, Exhibit B contains examples of estimated amounts payable if commencement occurs at age 55 or 60 respectively.  Payments which commence after age 65 shall be determined in a similar manner.

(b)  If Employee dies prior to the date that payments to Employee provided for in subparagraph (a) above are to commence (except in the case of suicide as described below), Shearson shall make fifteen (or fewer as the case may be) consecutive annual payments to Employee's designated

*    The payments set forth in Exhibit B are estimated figures which are subject to later adjustment to account for the timing of deferrals and/or a payment schedule shorter than fifteen years.

- 2 -

beneficiary or beneficiaries in an amount equal to the amount Employee
would have received had he survived, completed his compensation deferral at
the rate of 25% per year for each of the calendar years 1985 through 1988
(unless such Employee elected to defer entirely from the VDCP), and com-
menced receiving payments at age 65. The first of these payments shall be
made as soon as practicable after Shearson receives appropriate notice and
proof of Employee's death, and the remaining payments shall be made on the
fourteen (or fewer as the case may be) succeeding anniversary dates of the
first of such payments. However, in the event Employee dies as a result of
suicide within two years after the effective date of this agreement, Em-
ployee's designated beneficiary or beneficiaries shall be entitled to re-
ceive hereunder, only the amount of compensation deferred by Employee under
this agreement plus interest credited in the same manner as provided in
paragraph 3 below.

(c)  If Employee becomes totally disabled (as defined in Exhibit C
attached hereto) prior to retirement, in addition to any other disability
benefits to which Employee may be entitled, Shearson shall pay Employee
1/12th of the amount set forth in Exhibit C for each full month of dis-
ability from the date Employee ceases to be an employee because of such
total disability until the earlier of Employee's death or the date the
payments to Employee provided for in subparagraph (a) above are to commence
but in no event later than attainment of age 65.  If an Employee becomes
totally disabled prior to the completion of his compensation deferrals as
set forth in paragraph 1, such Employee's retirement benefit shall be de-
termined under paragraph 2 as if such Employee completed his compensation
deferrals at the rate of 25% per year for each of the calendar years 1985
through 1988.

3.  Payments Prior to Vesting or Effective Date.
If Employee dies or becomes totally disabled before this agreement
becomes effective as provided in paragraph 7, or if prior to September 25,
1990 Employee ceases to be an employee of the Employer or of an affiliate
for any reason whatsoever (including termination of employment by Shearson

with or without cause) other than death, total disability or retirement*,
(a) subsequent deferrals and withholding of compensation provided for in
paragraph 1 shall cease, and (b) Shearson shall have no obligation of any
kind hereunder except to pay Employee, or Employee's designated beneficiary
or beneficiaries if Employee is deceased, as promptly as practicable an
amount equal to the amount of compensation theretofore deferred and/or
withheld as provided in paragraph 1 plus interest thereon at an annual rate
equal to the lesser of 5% or the weekly 90-day Treasury Bill auction rate
(on a discounted basis) averaged over a 12 month period ending on the date
of payment.  Such interest shall be compounded annually on a calendar year
basis and shall be credited with respect to the average daily balance in
the deferred compensation account each calendar year.

    4.  Termination.

    The Administrative Committee of Shearson has the right (if the Admin-
istrative Committee also terminates those similar agreements with its other
Employees which become effective on or about the effective date of this
agreement) to terminate this agreement, and Shearson's and Employee's
obligations hereunder, at any time by giving Employee, or Employee's desig-
nated beneficiary or beneficiaries if Employee is deceased, written notice
to that effect.  In that event, Shearson shall pay Employee or Employee's
designated beneficiary or beneficiaries not less than the amount of com-
pensation theretofore deferred and/or withheld as provided in paragraph 1
plus interest thereon at an annual rate equal to the lesser of 5% or the
weekly 90-day Treasury Bill auction rate (on a discounted basis) averaged
over a 12 month period ending on the date of payment elected by Employee
pursuant to Exhibit D.  Such interest shall be compounded annually on a
calendar year basis and shall be credited with respect to the average daily
balance in the deferred compensation account each calendar year.  However,
if economically feasible upon such termination, Shearson intends to credit

*    For purposes of this agreement, retirement shall be determined by the
Administrative Committee of the Board of Directors of Shearson (Administra-
tive Committee) and if Employee is over the age of 60 upon the effective
date of this agreement, the Administrative Committee may apply special
rules regarding retirement.

- 4 -

Employee's deferred compensation account with interest on the amount of compensation theretofore deferred and/or withheld at an annual compounded rate of 11% up to the date of termination. Notwithstanding the foregoing, any amounts that become payable as a result of termination may not be paid before the earlier of one year after the date of termination or some other date consented to by the New York Stock Exchange.

5. <u>Miscellaneous Provisions.</u>

Employee understands and agrees that:

(a) Notwithstanding any other provisions of this agreement, payments of compensation deferred hereunder shall not, unless otherwise permitted by the Administrative Committee commence within one year after the later of the date of deferral or the date the subordination provisions of paragraph 9 apply with respect to such deferral.

(b) Notwithstanding any other provisions of this agreement, no payments to Employee pursuant to paragraph 2(a) shall commence prior to September 25, 1990, unless the Administrative Committee otherwise consents.

(c) For each year that there is a deferral of compensation hereunder which otherwise would be paid in such year, there may be a reduction in pension benefits accrued to Employee under Shearson's qualified pension plan.

(d) The payments to be made by Shearson to Employee hereunder are unsecured subordinated obligations of Employer only, and Employee is only a general subordinated creditor of Shearson in that respect.

(e) Shearson shall establish a deferred compensation account to which will be credited amounts of deferred compensation and any interest thereon.

(f) The deferral and withholding of compensation provided for herein are irrevocable unless the Administrative Committee otherwise consents.

(g) Shearson is not assuring Employee of continued employment by Shearson during all or any part of the period covered by this agreement or otherwise.

(h) Shearson has relied, in entering into this agreement, on information supplied by Employee to Shearson and Employee warrants that all information supplied is accurate and complete. In the event Employee made any material misrepresentations or omissions in the information, Shearson's

- 5 -

sole obligation under this agreement shall be to pay Employee (or Employee's beneficiary) an amount equal to the amount of compensation theretofore deferred and/or withheld as provided in paragraph 1 plus interest thereon at an annual rate equal to the lesser of 5% or the weekly 90-day Treasury Bill auction rate (on a discounted basis) averaged over a 12 month period ending on the date of discovery of the material misrepresentation or omission. Such interest shall be compounded annually and shall be credited with respect to the average balance in the deferred compensation account each year based upon the amount in the account at the end of each quarter.

(i) This agreement and all other similar agreements which become effective shall be interpreted and construed by the Administrative Committee and the determination of the Administrative Committee as to any disputed question shall be conclusive, except that any controversy arising out of or relating to the subordination provisions of paragraph 9, shall be submitted to and settled by arbitration pursuant to the Constitution and Rules of the New York Stock Exchange ("Exchange"). Shearson and Employee shall be conclusively bound by such arbitration. All administrative duties arising in connection with this agreement and all other similar agreements shall be performed by a person or persons delegated such duties by the Administrative Committee.

6. <u>Beneficiary Designation.</u>

Employee may designate a beneficiary or beneficiaries entitled to receive any of the payments to be made by Shearson hereunder if Employee dies. This designation, which is attached hereto as Exhibit E may be revoked or changed by Employee at any time. Any such designation, revocation or change shall be in writing, signed by Employee and delivered to Shearson. If Employee does not designate a beneficiary (or contingent beneficiary) to which payments are to be made after the death of Employee, or if any designated beneficiary (or contingent beneficiary) for payments does not survive Employee, payments by Shearson subsequent to the death of Employee shall be made as provided herein to Employee's estate. If a designated beneficiary (or contingent beneficiary) survives Employee but dies prior to the completion of the payments contemplated to be made hereunder to such beneficiary, the unpaid portion of those payments shall be

paid by Shearson to the designated beneficiary's estate or if applicable to the contingent beneficiary's estate.

### 7. Effective Date.

This agreement shall become effective on September 25, 1985, unless Shearson gives Employee written notice otherwise prior to March 31, 1986; however no interest or other earning shall accrue on any amounts to be deferred hereunder until such amounts are actually deferred.

### 8. Parties to Agreement.

This agreement is between Employee and Shearson or a subsidiary or affiliate of Shearson for which Shearson is acting as agent hereunder, whichever is Employee's actual employer as of the date hereof. If Employee's actual employer changes from Shearson to a subsidiary or affiliate of Shearson or from a subsidiary or affiliate of Shearson to Shearson or another subsidiary or affiliate of Shearson, thereafter Employee's employer for purposes of this agreement shall be the new employer.

### 9. Subordination Provisions.

(a) Subordination of Payment Obligation. Shearson's obligation to pay amounts credited to the Employee's deferred compensation account on the date such payment is otherwise due and payable in accordance with the terms of the agreement (the "Fixed Payment Date") shall be suspended and shall not mature for any period of time during which after giving effect to such payment (together with (1) the payment of any other obligation of Shearson payable at or prior to such payment and (2) the return of any Secured Demand Note and the collateral therefor held by Shearson and returnable at or prior to such payment):

    (i)   if Shearson is not operating pursuant to the alternative net capital requirements provided for in paragraph (f) of Rule 15c3-1 of the Securities Exchange Act of 1934 (hereinafter the "Rule"), the aggregate indebtedness of Shearson would exceed 1200 per centum of its net capital (or its "adjusted net capital" as defined in the regulations under the Commodity Exchange Act), as those terms are defined in the Rule as in effect at the time payment is to be made or such lesser per centum as may be made

- 7 -

applicable to Shearson from time to time by the New York Stock Exchange, Inc. ("Exchange") (or other domestic exchange, board of trade, clearing association or similar organization of which Shearson is a member) or a domestic governmental agency or body having appropriate authority plus an amount equal to the guaranty deposits with clearing organizations, other than the Chicago Board of Trade, which were included in current assets under Section 211 of the Chicago Board of Trade Capital Requirements ("Section 211"), to the extent such deposits cannot be used for margin purposes, plus the amount computed in accordance with Chicago Board of Trade Regulation 221.05; or

(ii)  if Shearson is operating pursuant to the alternative net capital requirements provided for in paragraph (f) of the Rule, the net capital of Shearson (or its "adjusted net capital" as defined in the regulations under the Commodity Exchange Act) would be less than the greater of: (x) 5 per centum of aggregate debit items computed in accordance with Exhibit A to Rule 15c3-3 under the Securities Exchange Act of 1934 (the "Act") or any successor rule as in effect at the time payment is to be made plus an amount equal to the guaranty deposits with clearing organizations, other than the Chicago Board of Trade, which were included in current assets under Section 211, to the extent such deposits cannot be used for margin purposes, plus the amount computed in accordance with Chicago Board of Trade Regulation 221.05, (y) if Shearson is registered as a futures commission merchant with the Commodities Futures Trading Commission, 6 per centum of the funds required to be segregated pursuant to the Commodity Exchange Act ("CEA") and the regulations promulgated thereunder, less the market value of commodity options purchased by option customers on or subject to the rules of a contract market, provided, however, the deduction for each option customer shall be limited to the amount of customer funds in such option customer's account (if greater), plus an amount equal to the guaranty deposits with clearing organizations, other than the Chicago Board of Trade, which were included in current assets under Section 211, to the extent such deposits cannot be used for margin purposes, plus the amount computed in

accordance with Chicago Board of Trade Regulation 221.05, or (z)
such greater per centum as may be made applicable to Shearson
from time to time by the Exchange (or any other domestic ex-
change, board of trade, clearing association or similar organiz-
ation of which Shearson is a member) or a domestic governmental
agency or body having appropriate authority; or

(iii)   Shearson's net capital (or its "adjusted net capital" as defined
in the regulations under the CEA), as defined in the Rule or any
successor rule as in effect at the time payment is to be made,
would be less than 120 per centum of any minimum dollar amount
required by the Rule (or the regulations under the CEA as in
effect at such time), plus an amount equal to the guaranty
deposits with clearing organizations, other than the Chicago
Board of Trade, which were included in current assets under
Section 211, to the extent such deposits cannot be used for
margin purposes, plus the amount computed in accordance with
Chicago Board of Trade Regulation 221.05, or such greater dollar
amount as may be made applicable to Shearson by the Exchange (or
any other domestic exchange, board of trade, clearing association
or similar organization of which Shearson is a member) or a
domestic governmental agency or body having appropriate
authority; or

(iv)   if Shearson guarantees, endorses, carries or clears specialist or
market maker transactions in options listed on a national secu-
rities exchange or facility of a national securities association,
the amounts required to be deducted and maintained as required by
the provisions of paragraphs (a)(6)(v), (a)(7)(iv) or
(c)(2)(x)(b)(1) of the Rule would exceed 1000 per centum of its
net capital (or its "adjusted net capital" as defined in the
regulations under the CEA), as defined in the Rule as in effect
at the time such payment is made or such lesser per centum as may
be made applicable to Shearson by the Exchange (or any other
domestic exchange, board of trade, clearing association or
similar organization of which Shearson is a member) or a domestic
governmental agency or body having appropriate authority.

During any such suspension Shearson shall, as promptly as is consistent with the protection of its customers, reduce its business to a condition whereby the amounts the payment of which has been suspended could be paid (together with (1) the payment of any other obligation of Shearson payable at or prior to the payment of such amounts and (2) the return of any Secured Demand Note and the collateral therefor held by Shearson and returnable at or prior to the payment of such amounts) without Shearson's net capital being below the applicable minimums set forth in subparagraphs 9(a)(i) through (iv) above or its "adjusted net capital" being below the amount required as aforesaid, at which time Shearson shall pay the amounts credited to Employee's deferred compensation account the payment of which has been suspended plus accrued interest on not less than 5 days' prior written notice to the Exchange. The first day on which under paragraph 2 hereof or under this subparagraph (a) Shearson has an obligation to pay amounts is hereinafter referred to as the "payment date". If pursuant to the terms hereof Shearson's obligation to pay amounts credited to the Employee's deferred compensation account is suspended, Shearson recognizes and agrees that Shearson may be summarily suspended by the Exchange. Shearson agrees that, if its obligation to pay amounts credited to the Employee's deferred compensation account is ever suspended for a period of six months, it will promptly take whatever steps are necessary to effect a rapid and orderly complete liquidation of its business.

(b)  Repayment by Employee of Payments Made on Payment Date.

If payment is made of all or any part of the amounts credited to the Employee's deferred compensation account on the payment date and if immediately after any such payment Shearson's net capital is less than the applicable minimums set forth in subparagraphs 9(a)(i) through (iv), Employee agrees irrevocably, for himself, his beneficiaries, heirs and assigns, (whether or not Employee had any knowledge or notice of such fact at the time of any such payment) to repay to Shearson, its successors or assigns, the sum so paid, to be held by Shearson pursuant to the provisions hereof as if such payment had never been made; provided, however, that any suit for the recovery of any such payment must be commenced within two years of the date of such payment.

- 10 -

(c)  Limitations on Withdrawals.

No payment of all or any portion of amounts credited to the deferred
compensation account shall be made prior to the Fixed Payment Date unless
Shearson shall have received the prior written permission of the Exchange
after consultation with the Securities and Exchange Commission if the
Exchange deems such consultation appropriate.  Furthermore, no such payment
shall be made if after giving effect thereto (and to all other payments of
principal of outstanding subordination agreements of Shearson, including
the return of any Secured Demand Note and the collateral therefor held by
Shearson, the maturity or accelerated maturity of which are scheduled to
occur within six months after the date such payment is to occur, or on or
prior to the date on which Employee has elected to receive payment of the
amounts credited to his deferred compensation account disregarding such
proposed payment, whichever date is earlier) without reference to any
projected profit or loss of Shearson:

(i)  if Shearson is not operating pursuant to the alternative net
capital requirements provided for in paragraph (f) of the Rule,
the aggregate indebtedness of Shearson would exceed 1000 per
centum of its net capital (or its "adjusted net capital" as
defined in the regulations under the CEA), as those terms are
defined in the Rule as in effect at the time such payment is to
be made; or such lesser per centum as may be made applicable to
Shearson from time to time by the Exchange (or any other domestic
exchange, board of trade, clearing association or similar organ-
ization of which Shearson is a member) or a domestic governmental
agency or body having appropriate authority, plus an amount equal
to the guaranty deposits with clearing organizations, other than
the Chicago Board of Trade, which were included in current assets
under Section 211, to the extent such deposits cannot be used for
margin purposes, plus the amount computed in accordance with
Chicago Board of Trade Regulation 221.05; or

(ii)  if Shearson is operating pursuant to such alternative net capital
requirement, its net capital (or its "adjusted net capital" as
defined in the regulations under the CEA) would be less than the
greater of: (x) 5 per centum of aggregate debit items as those

- 11 -

terms are defined in Exhibit A to Rule 15c3-3 of the Securities
Exchange Act or any successor rule as in effect at such time,
plus an amount equal to the guaranty deposits with clearing
organizations, other than the Chicago Board of Trade, which were
included in current assets under Section 211, to the extent such
deposits cannot be used for margin purposes, plus the amount
computed in accordance with Chicago Board of Trade Regulation
221.05, or (y) if Shearson is registered as a futures commission
merchant with the Commodity Futures Trading Commission, 7 per
centum of the funds required to be segregated pursuant to the CEA
and the regulations promulgated thereunder, less the market value
of commodity options purchased by option customers on or subject
to the rules of a contract market, provided, however, the deduc-
tion for each option customer shall be limited to the amount of
customer funds in such option customer's account (if greater),
plus an amount equal to the guaranty deposits with clearing
organizations, other than the Chicago Board of Trade, which were
included in current assets under Section 211, to the extent such
deposits cannot be used for margin purposes, plus the amount
computed in accordance with Chicago Board of Trade Regulation
221.05, or (z) such greater per centum as may be made applicable
to Shearson from time to time by the Exchange (or any other
domestic exchange, board of trade, clearing association or sim-
ilar organization of which Shearson is a member) or a domestic
governmental agency or body having appropriate authority; or

(iii)   Shearson's net capital (or its "adjusted net capital" as defined
in the regulations under the CEA), as defined in the Rule or any
successor rule as in effect at the time payment is to be made,
would be less than 120 per centum of any minimum dollar amount
required by the Rule (or the regulations under the CEA as in
effect at such time), plus an amount equal to the guaranty de-
posits with clearing organizations, other than the Chicago Board
of Trade, which were included in current assets under Section
211, to the extent such deposits cannot be used for margin pur-
poses, plus the amount computed in accordance with Chicago Board
of Trade Regulation 221.05, or such greater dollar amount as may

- 12 -

be made applicable to Shearson by the Exchange (or any other
domestic exchange, board of trade, clearing association or sim-
ilar organization of which Shearson is a member) or a domestic
governmental agency or body having appropriate authority; or

(iv)   if Shearson guarantees, endorses, carries or clears specialist or
market maker transactions in options listed on a national sec-
urities exchange or facility of a national securities associa-
tion, the amounts required to be deducted and maintained as
required by the provisions of paragraphs (a)(6)(v), (a)(7)(iv) or
(c)(2)(x)(b)(1) of the Rule would exceed 1000 per centum of its
net capital (or its "adjusted net capital" as defined in the
regulations under the Commodity Exchange Act), as defined in the
Rule as in effect at the time such payment is made or such lesser
per centum as may be made applicable to Shearson by the Exchange
(or any other exchange, board of trade, clearing association or
similar organization of which Shearson is a member) or a domestic
governmental agency or body having appropriate authority; or

If such payment is made of all or any part of the amounts credited to
the Employee's deferred compensation account on or prior to the Fixed
Payment Date and if Shearson's net capital is less than the amount required
to permit such payment pursuant to the previously cited provisions of this
subparagraph (c), Employee agrees irrevocably (whether or not Employee had
any knowledge or notice of such fact at the time of any such payment) to
repay Shearson, its successors or assigns, the sum so paid to be held by
Shearson pursuant to the provisions hereof as if such payment had never
been made; provided, however, that any suit for the recovery of any such
payment must be commenced within two years of the date of such payment.

(d)  General Subordination.
Employee irrevocably agrees that the obligations of Shearson hereunder
with respect to the payment of amounts credited to his deferred compen-
sation account are and shall be subordinate in right of payment and subject
to the prior payment or provision for payment in full of all claims of all
other present and future creditors of Shearson whose claims are not simi-
larly subordinated (claims under this agreement shall rank pari passu with

claims similarly subordinated) and to claims which are now or hereafter expressly stated in the instruments creating such claims to be senior in right of payment to claims arising under this agreement, arising out of any matter or event occuring prior to the payment date of the amounts credited to Employee's deferred compensation account under this agreement. In the event of the appointment of a receiver or trustee of Shearson or in the event of its insolvency, liquidation pursuant to the Securities Investor Protection Act of 1970 ("SIPA") or otherwise, its bankruptcy, assignment for the benefit of creditors, reorganization whether or not pursuant to bankruptcy laws, or any other marshalling of the assets and liabilities of Shearson, the Employee shall not be entitled to participate or share, ratably or otherwise, in the distribution of the assets of Shearson until all claims of all other present and future creditors of Shearson, whose claims are senior to claims arising under this agreement, have been fully satisfied or provision has been made therefor.

(e)  Specific Subordination: Ranking of Obligations Under the Agreement with Other Indebtedness of Shearson.  Anything to the contrary in this agreement notwithstanding:

(i)  Employee will not be entitled to receive any payment in respect of amounts credited to his deferred compensation account or to participate in the distribution of assets of Shearson in respect thereof if such payment or distribution would constitute a violation of the express terms of any Senior Subordinated Debt (or any agreement under or pursuant to which the same may be outstanding);

(ii)  the right of Employee to receive any payment in respect of amounts credited to his deferred compensation account will be subordinated to claims of the holders of Senior Subordinated Debt so that, in the case of any distribution of assets of Shearson in complete or partial liquidation, reorganization, arrrangement or other marshalling of assets and liabilities of Shearson, no such distribution or payment will be made with respect to amounts credited to Employee's deferred compensation account unless and until the principal of and interest on the Senior Subordinated Debt are paid in full; and

- 14 -

(iii)   Employee shall promptly return to Shearson any amounts (whether
        cash, securities or otherwise) received from Shearson if the
        payment by Shearson of such amounts constituted a violation of
        the express terms of any Senior Subordinated Debt (or any agree-
        ment under or pursuant to which the same may be outstanding).

The term "Senior Subordinated Debt" as used herein shall mean and
include all indebtedness of Shearson (other than Shearson's obligations
under its guarantees of $84,000. aggregate principal amount of the 10%
Guaranteed (Junior Subordinated) Convertible Notes due 1986 - 87 of Boston
Group Holdings, Inc., Shearson's obligations under its subordinated as-
sumption agreement with respect to certain debts of Lehman Brothers Kuhn
Loeb Holdings, Inc. in the aggregate principal amount of $48,000,000., and
other than Shearson's Voluntary Deferred Compensation Plan, Financial
Consultant's Deferred Compensation Plan, Branch Manager's Deferred Compen-
sation Plan and those similar agreements with other Employees each of which
rank pari passu with the obligation of Shearson under this agreement) con-
stituting part of its Net Capital (as defined in the Rule as from time to
time in effect), and shall include without limitation thereto the indebt-
edness represented by Shearson's 10 3/4% Senior Subordinated Debentures,
subject to minimum annual redemptions from the original $35,000,000. due,
of which $1,750,000. is due from September 1, 1988 through September 1, 2002
with the balance coming due September 1, 2003 and outstanding October 1, 1985
in the aggregate principal amount of $30,821,000., Shearson's 15% Subordi-
nated Note with American Express Company due 1984 - 1994 and outstanding on
October 1, 1985 in the aggregate principal amount of $144,243,000.,
Shearson's 15 1/4% Senior Subordinated Notes due December 1, 1990 and out-
standing on October 1, 1985 in the aggregate principal amount of $60,000,000.,
Shearson's 13 1/8% Senior Subordinated Loan due March 15, 1994 and outstanding
on October 1, 1985 in the aggregate principal amount of $97,800,000.,
Shearson's obligations in respect of the Shearson/American Express N.V.'s
12 1/8% Guaranteed Notes due March 15, 1994, issued in the original aggre-
gate principal amount of $100,000,000., Shearson's 12 1/2% Senior Subordi-
nated Notes due October 15, 1994 and outstanding on October 1, 1985 in the
aggregate principal amount of $150,000,000., Shearson's 11 5/8% Senior
Subordinated Notes due May 15, 2005 and outstanding on October 1, 1985 in

- 15 -

the aggregate principal amount of $100,000,000., Shearson's Senior Subordinated Notes with various maturity dates between September 30, 1986 and March 31, 1987 in the aggregate principal amounts of $50,000,000., Shearson's obligations in respect of the 10 3/4% Subordinated Notes and 15 1/4% Subordinated Notes held by various subsidiaries of Shearson, unless, in each case, in the instrument evidencing or creating the same, or in any agreement under or pursuant to which it shall be outstanding, such indebtedness shall be declared not to be Senior Subordinated Debt.  Senior Subordinated Debt (and any agreement under or pursuant to which the same may be outstanding) may be amended, the commitment under such agreements may be increased, provisions thereof may be waived, time of payment of the Senior Subordinated Debt may be extended and other indulgences granted to Shearson in respect thereof all from time to time without notice to or further assent of the Employee under the Agreement.

   (f)  No Reliance on Exchange.  Employee irrevocably agrees and acknowledges that:

   (i)   entrance into this agreement is not being made in reliance upon the standing of Shearson as a member organization of the Exchange or upon the Exchange's surveillance of Shearson's financial position or its compliance with the constitution, rules and practices of the Exchange;

   (ii)  Employee is not relying upon the Exchange to provide any information concerning or relating to Shearson and the Exchange has no responsibility to disclose to Employee any information concerning or relating to Shearson which it may now, or at any future time, have; and

   (iii) neither the Exchange, its Special Trust Fund, nor any director, officer, trustee or employee of the Exchange or said Trust Fund shall be liable to Employee with respect to this Agreement or the payment of amounts credited to Employee's deferred compensation account.

   (g)  Examining Authority.
Upon termination of Shearson as a member of the Exchange, the references herein to Exchange will be deemed to refer to Examining Authority.

- 16 -

The term Examining Authority shall refer to such regulatory body having responsibility for inspecting or examining Shearson for compliance with financial responsibility requirements under Section 9(c) of SIPA and Section 17(d) of the Act. Reference herein to Exchange or Examining Authority shall also be deemed to refer to the Chicago Board of Trade and to any other exchange, board of trade, clearing association or similar organization of which Shearson is a member and which requires such reference as a condition to inclusion of the amounts credited to the deferred compensation account hereunder in Shearson's net capital as computed for the purposes of such organization.

(h)  Commodity Futures Trading Commission ("CFTC") Regulations.
References in this agreement to the Exchange or Examining Authority shall also be deemed to refer to the organization(s) designated as the self-regulatory organization(s) (also known as DSRO) of Shearson pursuant to a plan filed with the CFTC pursuant to Regulation 1.52 under the CEA to the extent such references are required as a condition to inclusion of the amounts credited to a deferrred compensation account hereunder in Shearson's net capital as computed for purposes of such organization(s).

(i)  Use of Amounts Deferred.
The amounts credited to the deferred compensation account hereunder shall be dealt with in all respects as capital of Shearson, shall be subject to the risks of the business, and may be deposited in an account or accounts in Shearson's name in any bank or trust company.

10.  Investments by Shearson.
In connection with this agreement, Employee hereby agrees to cooperate with Shearson, as may be necessary, to acquire in the name of Shearson any life insurance contract, annuity contract or other investment in which Shearson in its absolute discretion may choose to invest for purposes of meeting its obligations under this agreement.

- 17 -

EXHIBIT A

## ESEP CONFIRMATION

NAME: Arthur Cohen

SOCIAL SECURITY:  399 26 1313

DEPT. #: 589   NAME: Milwaukee, WI

THIS CONFIRMS YOUR PARTICIPATION IN THE 1985 EXECUTIVE
AND SELECT EMPLOYEES PLAN (ESEP).

SUMMARY OF YOUR ELECTIONS

TOTAL DEFERRAL AMOUNT        $64,000

TRANSFER FROM VDCP          $64,000

TO BE DEFERRED IN 3 EQUAL MONTHLY
INSTALLMENTS October 1985 - December 1985          $    0

TO BE DEFERRED IN 15 EQUAL MONTHLY
INSTALLMENTS October 1985 - December 1986          $    0

TO BE DEFERRED IN 12 EQUAL MONTHLY
INSTALLMENTS January 1986 - December 1986          $    0

BALANCE TO BE DEFERRED DURING 1987 & 1988          $    0

DEFERRALS FROM COMMISSION CHECKS WILL BEGIN WITH THE OCTOBER
10th CHECK.

CONTRACTS AND OPPORTUNITY TO UPDATE BENEFICIARY DESIGNATION
INFORMATION WILL FOLLOW SHORTLY.

INQUIRIES AND INFORMATION:

SUSAN CURRY - (212) 323-7319

EXHIBIT B

ILLUSTRATION OF PAYMENTS
PURSUANT TO PARAGRAPH 2

NOTE:   The projected payments illustrated in this Exhibit are interim
estimates which may be adjusted to reflect the time period within
which your actual deferral occurs.  The assumptions used to
calculate these estimates are an 11% rate of interest compounded
annually and credited to amounts deferred as if your total de-
ferral is made in four annual increments of 25% per year, begin-
ning on September 25, 1985 and continuing for the next three
anniversaries of such date.

| RETIREMENT AT AGE | ANNUAL BENEFIT PAYABLE |
|---|---|
| 65 | $21,196 |
| 60 | $12,579 |
| 55 | $      0 |

EXHIBIT C

I.          DEFINITION OF TOTAL DISABILITY FOR PURPOSES
            ___OF DEFERRED COMPENSATION AGREEMENT____

        "Total disability" means incapacity of Employee resulting from bodily
injury or disease which prevents Employee from engaging in any gainful
occupation.  During the first 24 months of such disability, "occupation"
shall mean all of the material and substantial daily duties of Employee's
regular occupation; however, after the first 24 months, "occupation" shall
mean all of the material and substantial daily duties of any occupation for
which Employee is or may be suited by education, training or experience,
provided that (a) the total disability must (i) have been existing for six
months and (ii) not have resulted directly from injuries (x) willfully and
intentionally self-inflicted or (y) while Employee was in the military,
naval or air force of country at war or (z) flying as a pilot of any air-
craft or device for aerial navigation, except while flying in a regularly
scheduled commercial aircraft, and (b) Employee has provided such written
proof of Employee's total disability as Employer has requested from time to
time.  "War" means any declared war, undeclared war, or international
police action with force of arms by any country, the United Nations, or any
other assembly of nations.

II.         AMOUNT OF DISABILITY PAYMENTS

        The annual amount of disability benefits payable under paragraph 2(c)
shall be $24,000 unless Employee fails to fulfill his total deferral
commitment under paragraph 1 for any reason other than becoming totally
disabled.

# SHEARSON LEHMAN BROTHERS

AMERICAN EXPRESS ®

# Memorandum

**DATE:** December 5, 1990

**TO:** ESEP Participants

**FROM:** Patrick Wilkinson

**SUBJECT:** ESEP Contracts

Attached is your amended Executive and Select Employees Plan
Deferred Compensation Agreement, based on the new option you
selected.  Please review this document carefully and return the
signature page (page 16) along with the beneficiary designation
form to:

Shearson Lehman Brothers
Pension Deferred Compensation - ESEP
388 Greenwich Street - 7th Floor
New York, NY  10013

Please return this no later than December 31, 1990.

If you have any questions, please call Anne Marie Devoti at
(212) 464-2584.

SP4:ah


**SHEARSON LEHMAN BROTHERS**

**Memorandum**

DATE:    January 3, 1991

TO:    ESEP Participants

FROM:    Sandra Pemberton

SUBJECT:    Executive and Select Employees Plan Amended Contract (Exhibit C)

You should have recently received your amended Executive and Select Employees Plan Deferred Compensation agreement which contained several exhibits.  The amount of your disability benefit was inadvertently omitted on Exhibit C.  Therefore, enclosed is a revised Exhibit C, which states your annual disability amount for your records.

Please accept our apologies for any inconvenience this may have caused you, and if you have any questions, please contact Anne Marie DeVoti at (212) 464-2584.

AD3:ah

## EXECUTIVE AND SELECT EMPLOYEES
## DEFERRED COMPENSATION AGREEMENT
### *Amended Effective September 1, 1990*
### THE RETIREMENT OPTION

Shearson Lehman Brothers Inc., (Shearson) for itself and as agent for certain of its subsidiaries as provided in paragraph 10, which together may be referred to hereinafter as the (Employer) and Arthur A. Cohen (Employee) agree as follows:

1.    Deferred Compensation.

Certain compensation, the amount of which is set forth in Exhibit A to this agreement, has been deferred according to the terms and conditions of a previous Executive and Select Employees Deferred Compensation Agreement, and all of such compensation will continue to be deferred according to the terms and conditions of this agreement.

2.    Deferred Compensation Payments.

Subject to the provisions of paragraphs 3, 4, 5(a) and 10, in consideration of the deferrals provided for in paragraph 1 Shearson shall make the following payments to Employee or Employee's beneficiary or beneficiaries designated according to paragraph 7:

(a)    If Employee is living on the date that payments to Employee provided for in this subparagraph (a) are to commence, Shearson shall make fifteen (or fewer number as determined by the Administrative Committee of the Board of Directors or its delegate ("Administrative Committee")) substantially equal, annual payments to Employee or in the event of Employee's death after the commencement of payments to Employee's designated beneficiary or beneficiaries as follows:

(i)    The first of these payments shall be made on the date that Employee reaches age 65 (or, if later, his actual retirement from Employer) or on any earlier date of employment termination after Employee reaches age 55 and, subject to the Administrative Committee's consent, submission of an

irrevocable letter by the Employee designating the date payments should commence. If the Administrative Committee does not consent to the Employee's designated date of commencement, the payments will commence as soon as practicable after such termination.

(ii)     The remaining fourteen payments (or fewer number of payments as the case may be) shall be made on the fourteen (or fewer) succeeding anniversary dates of the date such payments commence as provided in clause (i) above.

(iii)    If these payments commence when Employee reaches age 65, the amount of each payment shall be approximately the amount specified in Exhibit B to this agreement.* Payments which commence either after or before age 65 shall be determined in a similar manner.

(b)     If Employee dies prior to the date that payments to Employee provided for in subparagraph (a) above are to commence, Shearson shall make fifteen (or fewer as the case may be) substantially equal, annual payments to Employee's designated beneficiary or beneficiaries in an amount equal to the sum of (i) the value of the Employee's deferred compensation account at the beginning of the month in which death occurs and (ii) the projected increase in the date of death value of the account up to age 65 and over the installment payment period based upon the Moody's Crediting Rate in effect for the last full calendar year before death. The first of these payments shall be made as soon as practicable after Shearson receives appropriate notice and proof of Employee's death, and the remaining payments shall be made on the fourteen (or fewer as the case may be) succeeding anniversary dates of the first of such payments.

---

*        The payments set forth in Exhibit B are estimated figures which are subject to later adjustment to account for variations in the interest crediting rate and a payment schedule shorter than fifteen years. For purposes of this agreement, the interest crediting rate for any calendar year will be the published Moody's Corporate Bond Yield Average, plus an additional 3 percentage points (the Moody's Crediting Rate").

(c)    If Employee becomes totally disabled (as defined in Exhibit C attached hereto) prior to retirement, in addition to any other disability benefits to which Employee may be entitled, Shearson shall pay Employee 1/12th of the amount set forth in Exhibit C with respect to annual disability payments for each full month of disability from the date Employee ceases to be an employee because of such total disability until the earlier of Employee's death or the date the payments to Employee provided for in subparagraph (a) above are to commence but in no event later than attainment of age 65.

3.    Payments Prior to Retirement, Death or Disability.

If Employee's employment with Employer terminates for any reason, other than death, disability or retirement, Shearson shall have no obligation of any kind hereunder except to pay Employee, as promptly as practicable after termination, the value of Employee's deferred compensation account as of August 31, 1990, plus all interest accrued thereon at the Moody's Crediting Rate beginning on September 1, 1990 through the last day of the month preceding payment.

4.    Termination.

The Administrative Committee has the right (if the Administrative Committee also terminates all those similar agreements with other Employees which become (or became) effective on or before the effective date of this amended agreement) to terminate this agreement, and Employer's and Employee's obligations hereunder, at any time by giving Employee written notice to that effect.  In that event, Employer shall pay Employee the value of Employee's deferred compensation account as of August 31, 1990, plus all interest accrued thereon at the Moody's Crediting Rate beginning on September 1, 1990 through the last day of the month preceding payment (less any amounts previously distributed). Notwithstanding the foregoing, any amounts that become payable as a result of termination can not be paid before the earlier of one year after the date of termination or some other date consented to by the New York Stock Exchange and the Chicago Board of Trade.

5.    Miscellaneous Provisions.

Employee understands and agrees that:

(a)    Notwithstanding any other provisions of this agreement, payments of compensation deferred hereunder shall not, unless otherwise permitted by the Administrative Committee, commence within one year after the later of the date of

-3-

deferral or the date the subordination provisions of paragraph 10 apply with respect to such deferral.

(b)    For each year that there is a deferral of compensation hereunder which otherwise would be paid in such year, there may be a reduction in pension benefits accrued to Employee under Shearson's qualified pension plan. ~ *[handwritten annotation]*

(c)    The payments to be made by Shearson to Employee hereunder are unsecured subordinated obligations of Shearson only, and Employee is only a general *[handwritten annotation]* subordinated creditor of Shearson in that respect.

(d)    Shearson shall establish a deferred compensation account to which will be credited amounts of deferred compensation and any interest thereon.

(e)    The deferral and withholding of compensation provided for herein are irrevocable unless the Administrative Committee otherwise consents.

(f)    Shearson is not assuring Employee of continued employment by Shearson during all or any part of the period covered by this agreement or otherwise.

(g)    This agreement and all other similar agreements which become effective shall be interpreted and construed by the Administrative Committee and the determination of the Administrative Committee as to any disputed question shall be conclusive, except that any controversy arising out of or relating to the subordination provisions of paragraph 10, shall be submitted to and settled by arbitration pursuant to the Constitution and Rules of the New York Stock Exchange. Shearson and Employee shall be conclusively bound by such arbitration. All administrative duties arising in connection with this agreement and all other similar agreements shall be performed by a person or persons delegated such duties by the Administrative Committee.

6.    Beneficiary Designation.

Employee may designate a beneficiary or beneficiaries entitled to receive any of the payments to be made by Shearson hereunder if Employee dies. This designation, which is attached hereto as Exhibit D may be revoked or changed by Employee at any time. Any such designation, revocation or change shall be in writing, signed by Employee and delivered to Shearson. If Employee does not designate a beneficiary (or contingent beneficiary) to which payments are to be made after the death of Employee, or if any designated beneficiary (or contingent beneficiary) for payments does not survive Employee, payments by Shearson subsequent to the death of Employee shall be made to Employee's estate. If a designated beneficiary (or contingent beneficiary) survives Employee but dies

prior to the completion of the payments contemplated to be made hereunder to such beneficiary, the unpaid portion of those payments shall be paid by Shearson to the designated beneficiary's estate or if applicable to the contingent beneficiary's estate.

7.    <u>American Express Company Guarantee</u>.

Attached hereto as Exhibit E is a copy of the American Express Company guarantee which will apply in certain circumstances to the collection by the participant of his deferred compensation payments due under this agreement.  The provisions of such guarantee will be governed solely by reference to the terms of Exhibit E as approved by the American Express Company board of directors.

8.    <u>Effective Date</u>.

Upon proper execution by the parties, this agreement shall become effective on September 1, 1990.

9.    <u>Parties to Agreement</u>.

This agreement is between Employee and Shearson or a subsidiary or affiliate of Shearson for which Shearson is acting as agent hereunder, whichever is Employee's actual employer as of the date hereof.  If Employee's actual employer changes from Shearson to a subsidiary or affiliate of Shearson or from a subsidiary or affiliate of Shearson to Shearson or another subsidiary or affiliate of Shearson, thereafter Employee's employer for purposes of this agreement shall be the new employer.

10.    <u>Subordination Provisions</u>.

(a)    <u>Suspension of Payment Obligation</u>.  Shearson's obligation to pay amounts credited to the Employee's deferred compensation account on the date such payment is otherwise due and payable in accordance with the terms of the agreement (the "Fixed Payment Date") shall be suspended and shall not mature for any period of time during which after giving effect to such payment (together with (1) the payment of any other obligation of Shearson payable at or prior to such payment and (2) the return of any Secured Demand Note and the collateral therefor held by Shearson and returnable at or prior to such payment):

(i)    if Shearson is not operating pursuant to the alternative net capital requirements provided for in paragraph (f) of Rule

15c3-1 of the Securities Exchange Act of 1934 (hereinafter the "Rule"), the aggregate indebtedness of Shearson would exceed 1200 per centum of its net capital (or its "adjusted net capital" as defined in the regulations under the Commodity Exchange Act), as those terms are defined in the Rule as in effect at the time payment is to be made or such lesser per centum as may be made applicable to Shearson from time to time by the New York Stock Exchange, Inc. ("Exchange") (or other domestic exchange, board of trade, clearing association or similar organization of which Shearson is a member) or a domestic governmental agency or body having appropriate authority plus an amount equal to the guaranty deposits with clearing organizations, other than the Chicago Board of Trade, which were included in current assets under Section 211 of the Chicago Board of Trade Capital Requirements ("Section 211"), to the extent such deposits cannot be used for margin purposes, plus the amount computed in accordance with Chicago Board of Trade Regulation; or

(ii)    if Shearson is operating pursuant to the alternative net capital requirements provided for in paragraph (f) of the Rule, the net capital of Shearson (or its "adjusted net capital" as defined in the regulations under the Commodity Exchange Act) would be less than the greater of: (x) 5 per centum of aggregate debit items computed in accordance with Exhibit A to Rule 15c3-3 under the Securities Exchange Act of 1934 (the "Act") or any successor rule as in effect at the time payment is to be made plus an amount equal to the guaranty deposits with clearing organizations, other than the Chicago Board of Trade, which were included in current assets under Section 211, to the extent such deposits cannot be used for margin purposes, plus the amount computed in accordance with Chicago Board of Trade Regulation, (y) if Shearson is registered as a futures commission merchant with the Commodities Futures Trading Commission, 6 per centum of the funds required to be

segregated pursuant to the Commodity Exchange Act ("CEA") and the regulations promulgated thereunder and the foreign futures or foreign options secured amounts, less the market value of commodity options purchased by option customers on or subject to the rules of a contract market, or foreign board of trade provided, however, the deduction for each option customer shall be limited to the amount of customer funds in such option customer's account(s) and foreign futures and foreign options secured amounts (if greater), plus an amount equal to the guaranty deposits with clearing organizations, other than the Chicago Board of Trade, which were included in current assets under Section 211, to the extent such deposits cannot be used for margin purposes, plus the amount computed in accordance with Chicago Board of Trade Regulation, or (z) such greater per centum as may be made applicable to Shearson from time to time by the Exchange (or any other domestic exchange, board of trade, clearing association or similar organization of which Shearson is a member) or a domestic governmental agency or body having appropriate authority; or

(iii)    Shearson's net capital (or its "adjusted net capital" as defined in the regulations under the CEA), as defined in the Rule or any successor rule as in effect at the time payment is to be made, would be less than 120 per centum of any minimum dollar amount required by the Rule (or the regulations under the CEA as in effect at such time), plus an amount equal to the guaranty deposits with clearing organizations, other than the Chicago Board of Trade, which were included in current assets under Section 211, to the extent such deposits cannot be used for margin purposes, plus the amount computed in accordance with Chicago Board of Trade Regulation, or such greater dollar amount as may be made applicable to Shearson by the Exchange (or any other domestic exchange, board of trade, clearing association or similar organization of which Shearson

is a member) or a domestic governmental agency or body having appropriate authority; or

(iv)    if Shearson guarantees, endorses, carries or clears specialist or market maker transactions in options listed on a national securities exchange or facility of a national securities association, the amounts required to be deducted and maintained as required by the provisions of paragraphs (a)(6)(v), (a)(7)(iv) or (c)(2)(x)(b)(1) of the Rule would exceed 1000 per centum of its net capital (or its "adjusted net capital" as defined in the regulations under the CEA), as defined in the Rule as in effect at the time such payment is made or such lesser per centum as may be made applicable to Shearson by the Exchange (or any other domestic exchange, board of trade, clearing association or similar organization of which Shearson is a member) or a domestic governmental agency or body having appropriate authority.

During any such suspension Shearson shall, as promptly as is consistent with the protection of its customers, reduce its business to a condition whereby the amounts the payment of which has been suspended could be paid (together with (1) the payment of any other obligation of Shearson payable at or prior to the payment of such amounts and (2) the return of any Secured Demand Note and the collateral therefor held by Shearson and returnable at or prior to the payment of such amounts) without Shearson's net capital being below the applicable minimums set forth in subparagraphs 10(a)(i) through (iv) above or its "adjusted net capital" being below the amount required as aforesaid, at which time Shearson shall pay the amounts credited to Employee's deferred compensation account the payment of which has been suspended plus accrued interest on not less than 5 days prior written notice to the Exchange. The first day on which under paragraph 2 hereof or under this subparagraph (a) Shearson has an obligation to pay amounts is hereinafter referred to as the "payment date." If pursuant to the terms hereof Shearson's obligation to pay amounts credited to the Employee's deferred compensation account is suspended, Shearson recognizes and agrees that Shearson may he summarily suspended by the Exchange. Shearson agrees that, if its obligation to pay amounts credited to the Employee's deferred compensation account is ever suspended for a period of six months, it

will promptly take whatever steps are necessary to effect a rapid and orderly complete liquidation of its business.

(b)    Repayment by Employee of Payments Made on Payment Date.

If payment is made of all or any part of the amounts credited to the Employee's deferred compensation account on the payment date and if immediately after any such payment Shearson's net capital is less than the applicable minimums set forth in subparagraphs 10(a)(i) through (iv), Employee agrees irrevocably, for himself, his beneficiaries, heirs and assigns, (whether or not Employee had any knowledge or notice of such fact at the time of any such payment) to repay to Shearson, its successors or assigns, the sum so paid, to be held by Shearson pursuant to the provisions hereof as if such payment had never been made; provided, however, that any suit for the recovery of any such payment must be commenced within two years of the date of such payment.

(c)    Limitations on Withdrawals.

No payment of all or any portion of amounts credited to the deferred compensation account shall be made prior to the Fixed Payment Date unless Shearson shall have received the prior written permission of the Exchange after consultation with the Securities and Exchange Commission if the Exchange deems such consultation appropriate. Furthermore, no such payment shall be made if after giving effect thereto (and to all other payments of principal of outstanding subordination agreements of Shearson, including the return of any Secured Demand Note and the collateral therefor held by Shearson, the maturity or accelerated maturity of which are scheduled to occur within six months after the date such payment is to occur, or on or prior to the date on which Employee has elected to receive payment of the amounts credited to his deferred compensation account disregarding such proposed payment, whichever date is earlier) without reference to any projected profit or loss of Shearson:

  (i)    if Shearson is not operating pursuant to the alternative net capital requirements provided for in paragraph (f) of the Rule, the aggregate indebtedness of Shearson would exceed 1000 per centum of its net capital (or its "adjusted net capital" as defined in the regulations under the CEA), as those terms are defined in the Rule as in effect at the time such payment is to be made; or such lesser per centum as may be made applicable to

Shearson from time to time by the Exchange (or any other domestic exchange, board of trade, clearing association or similar organization of which Shearson is a member) or a domestic governmental agency or body having appropriate authority, plus an amount equal to the guaranty deposits with clearing organizations, other than the Chicago Board of Trade, which were included in current assets under Section 211, to the extent such deposits cannot be used for margin purposes, plus the amount computed in accordance with Chicago Board of Trade Regulation; or

(ii)   if Shearson is operating pursuant to such alternative net capital requirement, its net capital (or its "adjusted net capital" as defined in the regulations under the CEA) would be less than the greater of: (x) 5 per centum of aggregate debit items as those terms are defined in Exhibit A to Rule 15c3-3 of the Securities Exchange Act or any successor rule as in effect at such time, plus an amount equal to the guaranty deposits with clearing organizations, other than the Chicago Board of Trade, which were included in current assets under Section 211, to the extent such deposits cannot be used for margin purposes, plus the amount computed in accordance with Chicago Board of Trade Regulation, or (y) if Shearson is registered as a futures commission merchant with the Commodity Futures Trading Commission, 7 per centum of the funds required to be segregated pursuant to the CEA and the regulations promulgated thereunder and the foreign futures or foreign options secured amounts, less the market value of commodity options purchased by option customers on or subject to the rules of a contract market or foreign board of trade, provided, however, the deduction for each option customer shall be limited to the amount of customer funds in such option customer's account(s) and foreign futures and foreign options secured amounts (if greater), plus an amount equal to the guaranty deposits with clearing organizations, other than the

Chicago Board of Trade, which were included in current assets under Section 211, to the extent such deposits cannot be used for margin purposes, plus the amount computed in accordance with Chicago Board of Trade Regulation, or (z) such greater per centum as may be made applicable to Shearson from time to time by the Exchange (or any other domestic exchange, board of trade, clearing association or similar organization of which Shearson is a member) or a domestic governmental agency or body having appropriate authority; or

(iii)    Shearson's net capital (or its "adjusted net capital" as defined in the regulations under the CEA), as defined in the Rule or any successor rule as in effect at the time payment is to be made, would be less than 120 per centum of any minimum dollar amount required by the Rule (or the regulations under the CEA as in effect at such time), plus an amount equal to the guaranty deposits with clearing organizations, other than the Chicago Board of Trade, which were included in current assets under Section 211, to the extent such deposits cannot he used for margin purposes, plus the amount computed in accordance with Chicago Board of Trade Regulation, or such greater dollar amount as may be made applicable to Shearson by the Exchange (or any other domestic exchange, board of trade, clearing association or similar organization of which Shearson is a member) or a domestic governmental agency or body having appropriate authority; or

(iv)    if Shearson guarantees, endorses, carries or clears specialist or market maker transactions in options listed on a national securities exchange or facility a national securities association, the amounts required to be deducted and maintained as required by the provisions of paragraphs (a)(6)(v), (a)(7)(iv) or (c)(2)(x)(b)(1) of the Rule would exceed 1000 per centum of its net capital (or its "adjusted net capital" as defined in the regulations under the Commodity Exchange Act), as defined in the Rule as in effect at the time

such payment is made or such lesser per centum as may be made applicable to Shearson by the Exchange (or any other exchange, board of trade, clearing association or similar organization of which Shearson is a member) or a domestic governmental agency or body having appropriate authority; or

If such payment is made of all or any part of the amounts credited to the Employee's deferred compensation account on or prior to the Fixed Payment Date and if Shearson's net capital is less than the amount required to permit such payment pursuant to the previously cited provisions of this subparagraph (c), Employee agrees irrevocably (whether or not Employee had any knowledge or notice of such fact at the time of any such payment) to repay Shearson, its successors or assigns, the sum so paid to be held by Shearson pursuant to the provisions hereof as if such payment had never been made; provided, however, that any suit for the recovery of any such payment must be commenced within two years of the date of such payment.

(d)    General Subordination.

Employee irrevocably agrees that the obligations of Shearson hereunder with respect to the payment of amounts credited to his deferred compensation account are and shall be subordinate in right of payment and subject to the prior payment or provision for payment in full of all claims of all other present and future creditors of Shearson whose claims are not similarly subordinated (claims under this agreement shall rank pari passu with claims similarly subordinated) and to claims which are now or hereafter expressly stated in the instruments creating such claims to be senior in right of payment to claims arising under this agreement, arising out of any matter or event occurring prior to the payment date of the amounts credited to Employee's deferred compensation account under this agreement. In the event of the appointment of a receiver or trustee of Shearson or in the event of its insolvency, liquidation pursuant to the Securities Investor Protection Act of 1970 ("SIPA") or otherwise, its bankruptcy, assignment for the benefit of creditors, reorganization whether or not pursuant to bankruptcy laws, or any other marshalling of the assets and liabilities of Shearson, the Employee shall not be entitled to participate or share, ratably or otherwise, in the distribution of the assets of Shearson until all claims of all other present and future creditors of Shearson, whose claims are senior to claims arising under this agreement, have been fully satisfied or provision has been made therefor.

- 12 -

(e)    Specific Subordination: Ranking of Obligations Under the Agreement with Other Indebtedness of Shearson.    Anything to the contrary in this agreement notwithstanding:

(i)    Employee will not be entitled to receive any payment in respect of amounts credited to his deferred compensation account or to participate in the distribution of assets of Shearson in respect thereof if such payment or distribution would constitute a violation of the express terms of any Senior Subordinated Debt (or any agreement under or pursuant to which the same may be outstanding);

(ii)    the right of Employee to receive any payment in respect of amounts credited to his deferred compensation account will be subordinated to claims of the holders of Senior Subordinated Debt so that, in the case of any distribution of assets of Shearson in complete or partial liquidation, reorganization, arrangement or other marshalling of assets and liabilities of Shearson, no such distribution or payment will be made with respect to amounts credited to Employee's deferred compensation account unless and until the principal of and interest on the Senior Subordinated Debt are paid in full; and

(iii)    Employee shall promptly return to Shearson any amounts (whether cash, securities or otherwise) received from Shearson if the payment by Shearson of such amounts constituted a violation of the express terms of any Senior Subordinated Debt (or any agreement under or pursuant to which the same may be outstanding).

The term "Senior Subordinated Debt" as used herein shall mean and include all indebtedness of Shearson (other than Shearson's obligations under Shearson's Voluntary Deferred Compensation Plan, Financial Consultant's Deferred Compensation Plan, Branch Manager's Deferred Compensation Plan and those similar agreements with other Employees each of which rank pari passu with the obligations of Shearson under this agreement) constituting part of its Net Capital (as defined in the Rule as from time to time in effect), and shall include without limitation thereto the indebtedness represented by

- 13 -

Shearson's obligations under the Dai-Ichi Kangyo Bank Ltd. Senior Subordinated Notes due December 31, 1991 and outstanding on June 30, 1990 in the aggregate principal amount of $100,000,000; Shearson's obligation under the Continental Bank Senior Subordinated Notes of which $250,000,000 is due December 31, 1990 and $50,000,000 is due December 31, 1991, and outstanding on June 30, 1990 in the aggregate principal amount of $300,000,000; Shearson's 10 3/4% Senior Subordinated Debentures, subject to minimum annual redemptions from the original $35,000,000 due, of which $1,750,000 is due from September 1, 1988 through September 1, 2002, under a mandatory sinking-fund, with the balance coming due September 1, 2003 and outstanding on June 30, 1990 in the aggregate principal amount of $22,557,000; Shearson's 7 7/8% Senior Subordinated Notes due August 15, 1993 and outstanding on June 30, 1990 in the aggregate principal amount of $200,000,000; Shearson's 9 3/8% Senior Subordinated Notes due June 15, 1993 and outstanding on June 30, 1990 in the aggregate principal amount of $150,000,000; Shearson's 12 1/2% Senior Subordinated Notes due October 15, 1994 and outstanding on June 30, 1990 in the aggregate principal amount of $150,000,000; Shearson's 15% Subordinated Note with American Express Company due April 1, 1994 and outstanding on June 30, 1990 in the aggregate principal amount of $144,243,000; Shearson's 8 3/4% Senior Subordinated Debentures due March 1, 1996 and outstanding on June 30, 1990 in the aggregate principal amount of $100,000,000; Shearson's Senior Subordinated Money Market Notes, Series A outstanding on June 30, 1990 in the aggregate principal amount of $100,000,000; Shearson's 10 3/4% Senior Subordinated Notes due April 29, 1996 and outstanding on June 30, 1990 in the aggregate principal amount of $96,233,000; Shearson's 9 1/2% Senior Subordinated Notes due June 15, 1997 and outstanding on June 30, 1990 in the aggregate principal amount of $200,000,000; Shearson's 10% Senior Subordinated Notes due May 15, 1999 and outstanding on June 30, 1990 in the aggregate principal amount of $200,000,000; Shearson's 9 7/8% Senior Subordinated Notes due October 15, 2000 and outstanding on June 30, 1990 in the aggregate principal amount of $200,000,000; Shearson's 11 5/8% Senior Subordinated Debentures due May 15, 2005 and outstanding on June 30, 1990 in the aggregate principal amount of $100,000,000; Shearson's obligations in respect of its 10 3/4% Senior Subordinated Note due September 1, 2003 and its 8.65% Senior Subordinated Notes due December 1, 1991 held by various subsidiaries of Shearson; and Shearson's obligations in respect of its Floating Rate Subordinated Notes outstanding on June 30, 1990 in the aggregate principal amount of $585,000,00 and its 10 3/4% Subordinated Note outstanding on June 30, 1990 in the aggregate principal amount of $200,000,000 held by

Shearson Lehman Funding Corp., and indirect wholly owned subsidiary of Shearson Lehman Hutton Holdings Inc.; unless, in each case, in the instrument evidencing or creating the same, or in any agreement under or pursuant to which it shall be outstanding, such indebtedness shall be declared not to be Senior Subordinated Debt. Senior Subordinated Debt (and any agreement under or pursuant to which the same may be outstanding) may be amended, the commitment under such agreements may be increased, provisions thereof may be waived, time of payment of the Senior Subordinated Debt may be extended and other indulgences granted to Shearson in respect thereof all from time to time without notice to or further assent of the Employee under the Agreement.

  (f) <u>No Reliance on Exchange</u>. Employee irrevocably agrees and acknowledges that:

    (i) entrance into this agreement is not being made in reliance upon the standing of Shearson as a member organization of the Exchange or upon the Exchange's surveillance of Shearson's financial position or its compliance with the constitution, rules and practices of the Exchange;

    (ii) Employee is not relying upon the Exchange to provide any information concerning or relating to Shearson and the Exchange has no responsibility to disclose to Employee any information concerning or relating to Shearson which it may now, or at any future time, have; and

    (iii) neither the Exchange, its Special Trust Fund, nor any director, officer, trustee or employee of the Exchange or said Trust Fund shall be liable to Employee with respect to this Agreement or the payment of amounts credited to Employee's deferred compensation account.

  (g) <u>Examining Authority</u>.

  Upon termination of Shearson as a member of the Exchange, the references herein to Exchange will be deemed to refer to Examining Authority. The term Examining Authority shall refer to such regulatory body having responsibility for inspecting or examining Shearson for compliance with financial responsibility requirements under Section 9(c) of SIPA and Section 17(d) of the Act. Reference herein to Exchange or