**Presentment Date and Time: March 28, 2014 at 12:00 p.m. (Prevailing Eastern Time)**
**Objection Deadline:  March 27, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS INC.,<br><br>Debtor. | Case No. 08-01420 (SCC) SIPA |

**NOTICE OF PRESENTMENT OF REVISED PROPOSED ORDER, PURSUANT TO
SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7042, TO
CONVERT CERTAIN CONTESTED
OMNIBUS OBJECTIONS TO A CONSOLIDATED
ADVERSARY PROCEEDING AND ESTABLISH RELATED PROCEDURES**

**PLEASE TAKE NOTICE THAT** James W. Giddens (the "Trustee"), Trustee

for the SIPA Liquidation of Lehman Brothers Inc., by and through his undersigned attorneys,

Hughes Hubbard & Reed LLP ("HHR"), will present the revised proposed Order, Pursuant to

Section 105 of the Bankruptcy Code and Bankruptcy Rule 7042, to Convert Certain Contested

Omnibus Objections to a Consolidated Adversary Proceeding and Establish Related Procedures

(the "Revised Proposed Procedures Order") for signature to the Honorable Shelley C. Chapman,

United States Bankruptcy Judge, in chambers, at the United States Bankruptcy Court for the

Southern District of New York, the Alexander Hamilton United States Customs House, One

Bowling Green, New York, New York 10004, on **March 28, 2014 at 12:00 p.m. (Prevailing Eastern Time)**.

      **PLEASE TAKE FURTHER NOTICE THAT** the Revised Proposed Procedures Order incorporates the Court's statements regarding the Motion of the Trustee for Entry of an Order, Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 7042, to Convert Certain Contested Omnibus Objections to a Consolidated Adversary Proceeding and Establish Related Procedures (the "Motion," ECF No. 8196) at a hearing on the Motion conducted on February 27, 2014. The proposed Revised Proposed Procedures Order is annexed hereto as Exhibit 1 and proposed changes from the version annexed to the Motion are reflected in a blackline annexed hereto as Exhibit 2.

      **PLEASE TAKE FURTHER NOTICE THAT** objections, if any, to entry of the Revised Proposed Procedures Order must (i) be in writing; (ii) state the name and address of the objecting party and nature of the claim or interest of such party; (iii) state with particularity the legal and factual bases of such objection; (iv) conform to the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules; (v) be filed with the Bankruptcy Court, together with proof of service, electronically, in accordance with General Order M-399 (available at the Court's website, www.nysb.uscourts.gov) by registered users of the Court's Electronic Case Files system, and by all other parties in interest, on a 3.5 inch disk or CD-ROM, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format no later than **March 27, 2014 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline"); and (vi) be served on (a) Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York, 10004, Attn: James C. Fitzpatrick, Esq. and Jeffrey S. Margolin, Esq.; (b) Securities Investor Protection Corporation, 805 Fifteenth Street, N.W., Suite 800, Washington,

DC 20005, Attn: Kenneth J. Caputo, Esq.; and (c) Weil Gotshal & Manges LLP, 767 Fifth

Avenue, New York, New York 10153, Attn: Lori R. Fife, Esq. and Maurice Horwitz, with a

courtesy copy to the chambers of the Honorable Shelley C. Chapman, United States Bankruptcy

Court, One Bowling Green, New York, New York 10004.  Unless objections are received by the

Objection Deadline, the Revised Proposed Procedures Order may be entered without a hearing.

Dated: New York, New York
      March 21, 2014

                       HUGHES HUBBARD & REED LLP

                       By:   /s/ James C. Fitzpatrick
                            James B. Kobak, Jr.
                            James C. Fitzpatrick
                            Jeffrey S. Margolin
                            Meaghan C. Gragg
                       One Battery Park Plaza
                       New York, New York 10004
                       Telephone:  (212) 837-6000
                       Facsimile:  (212) 422-4726
                       Email:  kobak@hugheshubbard.com

                       Attorneys for James W. Giddens, Trustee for
                       the SIPA Liquidation of Lehman Brothers
                       Inc.

# <u>Exhibit 1</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re<br><br>LEHMAN BROTHERS INC.,<br><br><div align="right">Debtor.</div> | Case No. 08-01420 (SCC) SIPA |

## [PROPOSED] ORDER, PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7042, TO CONVERT CERTAIN CONTESTED OMNIBUS OBJECTIONS TO A CONSOLIDATED ADVERSARY PROCEEDING AND ESTABLISH RELATED PROCEDURES

Upon the Motion of James W. Giddens, as trustee for the liquidation of Lehman Brothers Inc. ("LBI") under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), for entry of an Order, pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7042, to Convert Certain Contested Omnibus Objections to a Consolidated Adversary Proceeding and Establish Related Procedures, dated February 6, 2014 (the "Motion"),[1] all as more fully described in the Motion; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of LBI, its estate, its customers and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore,

IT IS HEREBY:

ORDERED, that the Motion is granted as provided herein; and it is further

ORDERED, that the Omnibus Objections are hereby converted to the ESEP

---

1.   Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

Adversary Proceeding, a single, consolidated adversary proceeding, in which the portions of the

Omnibus Objections annexed hereto as Exhibit 1 are deemed to be sufficient in lieu of an

adversary complaint (the "Converted Complaint") solely as to the Claimants who have

responded either formally or informally to indicate their opposition to the Trustee's Omnibus

Objections (collectively, the "Respondents").

ORDERED that the following procedures shall apply solely to the ESEP

Adversary Proceeding and Converted Complaint:

(a)     The Trustee shall serve this order (the "Procedures Order") on all Respondents via overnight delivery within two business days of issuance of the Procedures Order and such service shall be deemed good and sufficient, in lieu of service of a summons and complaint. No separate summons shall be issued in connection with the ESEP Adversary Proceeding by the Clerk of the Court;

(b)     Respondents shall have thirty days from the date of entry of the Procedures Order to respond to the Converted Complaint or to supplement their respective Omnibus Objection Responses;

(c)     All provisions of the Bankruptcy Rules governing adversary proceedings shall govern the ESEP Adversary Proceeding and Converted Complaint, except as provided herein;

(d)     On or before April 30, 2014, the Trustee and the Respondents are directed to confer with respect to the submission of a jointly-proposed scheduling order and discovery plan. No discovery requests or dispositive motions shall be served through and until the date thereof, and no dispositive motions shall be served without permission of the Court;

(e)     This Court shall hold a status conference regarding discovery and related matters on May 28, 2014 at 10:00 a.m. (Prevailing Eastern Time);

(f)     The provisions of the ADR Order shall not apply as to these Omnibus Objections; and

(g)     The Trustee and Respondents may, upon notice and hearing, seek Court approval to modify these procedures; and it is further

ORDERED that, other than as expressly set forth herein, the rights of the Trustee and the Respondents, including any defenses or grounds for objection, and any other party in interest with respect to the Deferred Compensation Claims are expressly preserved and unaffected by this Procedures Order; and it is further

ORDERED that, other than with respect to the Deferred Compensation Claims filed by the Respondents, this Procedures Order shall have no effect on any other customer or general creditor claims or any pending or future motions or objections (omnibus or otherwise) related thereto; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from or related to this Procedures Order.

Dated: New York, New York
_____, 2014

_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1**

TO THE HONORABLE SHELLY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

James W. Giddens (the "Trustee"), as Trustee for the liquidation of the business

of Lehman Brothers Inc. ("LBI" or the "Debtor") under the Securities Investor Protection Act of

1970 as amended, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), by and through his undersigned counsel,

respectfully represents as follows:

## RELIEF REQUESTED

1.     The Trustee files this omnibus objection to general creditor claims (the

"Omnibus Objection") pursuant to sections 502(b) and 510(a) of title 11 of the United States

Code (the "Bankruptcy Code"), as made applicable to this proceeding pursuant to sections

78fff(b) and 78fff-1(a) of SIPA, Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"),  and this Court's order approving procedures for the filing of omnibus

objections to general creditor claims filed in this SIPA proceeding (the "General Creditor Claim

Objection Procedures Order," ECF No. 5441), seeking to subordinate the claims of claimants

who have responded either formally or informally to indicate their opposition to six omnibus

objections pending before the Court (collectively, the "Deferred Compensation Claims" or the

"Claims").[1]

---

[1].    The six Omnibus Objections are:  (1) the Trustee's one hundred twelfth omnibus objection to general creditor claims (subordinated claims), filed on July 19, 2013 (ECF No. 6847); (2) the Trustee's one hundred thirteenth omnibus objection to general creditor claims (subordinated claims), filed on July 23, 2013 (ECF No. 6865); (3) the Trustee's one hundred fourteenth omnibus objection to general creditor claims (subordinated claims), filed on July 23, 2013 (ECF No. 6866); (4) the Trustee's one hundred thirty-eighth omnibus objection to general creditor claims (subordinated claims), filed on September 16, 2013 (ECF No. 7264);  (5) the Trustee's one hundred forty-seventh omnibus objection to general creditor claims (subordinated claims), filed on October 3, 2013 (ECF No. 7388); and (6) the Trustee's one hundred ninety-eighth omnibus objection to general creditor claims (employee claims), filed on January 28, 2014 (ECF No. 8153) to the extent that the one hundred ninety-eighth omnibus objection to general creditor claims which seeks to subordinate the portion of a claim which constitutes an ESEP claim.

2.      The Claims, as filed by, collectively, the "Deferred Compensation Claimants") seek to recover compensation deferred by LBI employees pursuant to the Executive and Select Employees Plan, as amended (the "ESEP"),[2] which was offered to certain executives of LBI and other highly-compensated LBI employees.

3.      Each of the Deferred Compensation Claimants agreed that his or her benefits under the ESEP would be subordinate to payment in full of LBI's unsubordinated obligations, including those owed to LBI's general unsecured creditors.  The Trustee respectfully requests that this Court enforce the ESEP and rank LBI's obligations, if any, to the Deferred Compensation Claimants junior to all unsubordinated liabilities of LBI.

## JURISDICTION AND VENUE

4.      Following removal to this Court for all purposes as required for SIPA cases by section 78eee(b)(4) of SIPA, this Court has "all of the jurisdiction, powers, and duties conferred by [SIPA] upon the court to which application for the issuance of the protective decree was made." 15 U.S.C. § 78eee(b)(4).

5.      Venue is proper in this Court pursuant to SIPA section 78eee(a)(3) and 15 U.S.C. § 78aa.

## THE ESEP

6.      The ESEP was one of several deferred compensation plans offered only to a limited group of LBI executives and other highly-compensated employees.  The ESEP became

---

2.   A true and correct copy of the ESEP is attached hereto as Exhibit A.  LBI amended the ESEP Agreement on September 1, 1990 to allow beneficiaries to elect one of four distribution schemes:  (i) "Retirement Option – 15 Installments"; (ii) "Lump Sum 2000 Option"; (iii) "Ten Annual Installments Option"; or (iv) the distribution schedule provided in the original ESEP.   A true and correct copy of the ESEP Irrevocable Election Form enumerating these amendments is attached hereto as Exhibit B.  None of these amendments substantively altered the governing subordination provisions of the ESEP.

effective in 1985 and was funded through employees' voluntary compensation deferrals from 1985 through 1988.

7.     In a section titled "Subordination Provisions," the Deferred Compensation Claimants explicitly agreed to subordinate distribution of any accrued benefits to payment in full of all of LBI's unsubordinated creditors:

> Employee irrevocably agrees that the obligations of [LBI] hereunder with respect to the payment of amounts credited to his deferred compensation account are and shall be subordinate in right of payment and subject to the prior payment or provision for payment in full of all claims of all other present and future creditors of [LBI] whose claims are not similarly subordinated . . . .

ESEP Agreement § 9(d).

8.     Section 9(d) further specifically requires subordination of claims arising under the ESEP to claims of unsubordinated creditors in the event of a SIPA liquidation:

> In the event of . . . liquidation pursuant to [SIPA] . . . , the Employee *shall not* be entitled to participate or share, ratably or otherwise, in the distribution of the assets of [LBI] *until all claims of all other present and future creditors of [LBI], whose claims are senior to claims arising under this agreement, have been fully satisfied or provision has been made therefor.*

*Id.* (emphases added).[3]

9.     Each Deferred Compensation Claimant also agreed that "payments to be made by [LBI] to Employee hereunder are unsecured subordinated obligations of Employer only, and employee is only a general subordinated creditor of [LBI] in that respect." *Id*. § 5(d).

### THIS COURT SHOULD ENFORCE THE ESEP AND SUBORDINATE THE DEFERRED COMPENSATION CLAIMS

10.     Based on analysis by the Trustee's counsel of the Deferred Compensation Claims and other relevant documents and materials, the Trustee has identified the Claims as

---

3     The ESEP also sets forth other specific instances of subordination inapplicable here.

governed by valid, binding, and enforceable subordination provisions which subordinate the

Deferred Compensation Claims to payment in full of, *inter alia*, all general unsecured creditors

and other unsubordinated liabilities of LBI.

11.    Section 510(a) of the Bankruptcy Code provides that a "subordination

agreement is enforceable in a case under this title to the same extent that such agreement is

enforceable under applicable nonbankruptcy law."  11 U.S.C. § 510(a).  Courts have routinely

held that the "enforcement of lawful subordination agreements by Bankruptcy Courts does not

offend the policy of equal distribution of the bankrupt's estate." *In re Leasing Consultants, Inc.*,

2 B.R. 165, 168 (Bankr. E.D.N.Y. 1980), *citing In re Credit Industrial Corp.*, 366 F.2d 402, 407

(2d Cir. 1966); *see also Highland Park CDO I Grantor Trust, Series A v. Wells Fargo Bank,*

*N.A.*, No. 08 Civ. 5723 (NRB), 2009 WL 1834596 (S.D.N.Y. June 16, 2009) (enforcing a

contractual subordination agreement governed by New York law in determining the priority of

bankruptcy distributions); *Levine v. Resolution Trust Corp. (In re Coronet Capital Co.)*, No. 94

Civ. 1187 (LAP), 1995 WL 429494, at *4 (S.D.N.Y. July 20, 1995) (collecting cases and noting

that subordination agreements are generally enforced in bankruptcy).  Under general contract law

principles, when a subordination agreement is unambiguous, the parties' rights are governed

exclusively by that agreement.  *In re Leasing Consultants, Inc.*, 2 B.R. at 169; *see also In re*

*Coronet Capital Co.*, 1995 WL 429494, at *4-8.

12.    The Deferred Compensation Claims are based upon the ESEP, which

explicitly and specifically subordinates the Deferred Compensation Claims.  These provisions

alerted each of the Deferred Compensation Claimants that claims to the individual accounts

would be subordinated to, and be subject to risk of, senior creditors and satisfaction in full of

those claims.  Accordingly, the Trustee respectfully requests that the Court classify the Deferred

Compensation Claims, whether liquidated, unliquidated, or undetermined, as subordinated to payment in full of all of LBI's unsecured general creditor claims.

## <u>RESERVATION OF RIGHTS</u>

13.    The Trustee reserves all rights to object on any other basis to any Deferred Compensation Claim or any portion of any Deferred Compensation Claim. The Trustee further expressly reserves the right to object to the value of the Claims.

## <u>CONCLUSION</u>

For the reasons stated herein, the Trustee respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.

**Exhibit A**

EXECUTIVE AND SELECT EMPLOYEES
DEFERRED COMPENSATION AGREEMENT

Shearson Lehman Brothers Inc., (Shearson) for itself and as agent for certain of its subsidiaries as provided in paragraph 8, which together may be referred to hereinafter as the (Employer) and ███████████ (Employee) agree as follows:

1.  Deferred Compensation.
Certain compensation, the amount and description of which is set forth in Exhibit A attached hereto, shall be deferred according to the terms and conditions of this agreement.  All or a portion of such compensation may have been previously deferred under Shearson's Voluntary Deferred Compensation Plan (VDCP) and if so, any such previously deferred amounts shall henceforth be deferred in accordance with the terms and conditions of this agreement.  In consideration of this agreement, Employee relinquishes all rights under the VDCP with respect to the amount of deferred compensation, if any, set forth in Exhibit A which is further deferred hereunder. Any part of the total amount deferred pursuant to Exhibit A which is not attributable to the VDCP shall be deferred from compensation to which Employee would otherwise be entitled from the Employer during the balance of calendar year 1985 and calendar years 1986 through 1988.

Any portion of the total amount to be deferred hereunder which is not deferred during 1985 and 1986 will be deferred in calendar years 1987 and 1988 and the form of such deferral will be elected by Employee no later than December 31, 1986.

2.  Deferred Compensation Payments.
Subject to the provisions of paragraphs 3, 4, 5(a) and 9, in consideration of the deferrals provided for in paragraph 1 Shearson shall make the following payments to Employee or Employee's beneficiary or beneficiaries designated according to paragraph 6:

- 1 -

(a)  If Employee is living on the date that payments to Employee pro-
vided for in this subparagraph (a) are to commence, Shearson shall make
fifteen (or fewer number as determined by the Administrative Committee of
the Board of Directors) consecutive equal annual payments to Employee or in
the event of Employee's death after the commencement of payments to Employ-
ee's designated beneficiary or beneficiaries as follows:

   (i)  The first of these payments shall be made on the date that Em-
        ployee reaches age 65 (or, if later, his actual retirement from
        Shearson) or on any earlier date of retirement after Employee
        reaches age 55 and prior to the date Employee reaches age 65
        which date of retirement is specified in a written notice de-
        livered by Employee to Shearson no later than 60 days prior to
        such specified date.

  (ii)  The remaining fourteen payments (or fewer number of payments as
        the case may be) shall be made on the fourteen (or fewer) suc-
        ceeding anniversary dates of the date such payments commence as
        provided in clause (i) above.

 (iii)  If these payments commence when Employee reaches age 65, the
        amount of each payment shall be the amount specified in Exhibit B
        hereto attached.*  If these payments commence prior to Employee
        reaching age 65, the amount of each payment shall be an amount
        determined by using the same rate of interest used to determine
        payments commencing at age 65.  For purposes of illustration,
        Exhibit B contains examples of estimated amounts payable if com-
        mencement occurs at age 55 or 60 respectively.  Payments which
        commence after age 65 shall be determined in a similar manner.

(b)  If Employee dies prior to the date that payments to Employee
provided for in subparagraph (a) above are to commence (except in the case
of suicide as described below), Shearson shall make fifteen (or fewer as
the case may be) consecutive annual payments to Employee's designated

*   The payments set forth in Exhibit B are estimated figures which are
subject to later adjustment to account for the timing of deferrals and/or a
payment schedule shorter than fifteen years.

beneficiary or beneficiaries in an amount equal to the amount Employee
would have received had he survived, completed his compensation deferral at
the rate of 25% per year for each of the calendar years 1985 through 1988
(unless such Employee elected to defer entirely from the VDCP), and com-
menced receiving payments at age 65.  The first of these payments shall be
made as soon as practicable after Shearson receives appropriate notice and
proof of Employee's death, and the remaining payments shall be made on the
fourteen (or fewer as the case may be) succeeding anniversary dates of the
first of such payments.  However, in the event Employee dies as a result of
suicide within two years after the effective date of this agreement, Em-
ployee's designated beneficiary or beneficiaries shall be entitled to re-
ceive hereunder, only the amount of compensation deferred by Employee under
this agreement plus interest credited in the same manner as provided in
paragraph 3 below.

    (c)  If Employee becomes totally disabled (as defined in Exhibit C
attached hereto) prior to retirement, in addition to any other disability
benefits to which Employee may be entitled, Shearson shall pay Employee
1/12th of the amount set forth in Exhibit C for each full month of dis-
ability from the date Employee ceases to be an employee because of such
total disability until the earlier of Employee's death or the date the
payments to Employee provided for in subparagraph (a) above are to commence
but in no event later than attainment of age 65.  If an Employee becomes
totally disabled prior to the completion of his compensation deferrals as
set forth in paragraph 1, such Employee's retirement benefit shall be de-
termined under paragraph 2 as if such Employee completed his compensation
deferrals at the rate of 25% per year for each of the calendar years 1985
through 1988.

    3.  Payments Prior to Vesting or Effective Date.
    If Employee dies or becomes totally disabled before this agreement
becomes effective as provided in paragraph 7, or if prior to September 25,
1990 Employee ceases to be an employee of the Employer or of an affiliate
for any reason whatsoever (including termination of employment by Shearson

with or without cause) other than death, total disability or retirement\*,
(a) subsequent deferrals and withholding of compensation provided for in
paragraph 1 shall cease, and (b) Shearson shall have no obligation of any
kind hereunder except to pay Employee, or Employee's designated beneficiary
or beneficiaries if Employee is deceased, as promptly as practicable an
amount equal to the amount of compensation theretofore deferred and/or
withheld as provided in paragraph 1 plus interest thereon at an annual rate
equal to the lesser of 5% or the weekly 90-day Treasury Bill auction rate
(on a discounted basis) averaged over a 12 month period ending on the date
of payment.  Such interest shall be compounded annually on a calendar year
basis and shall be credited with respect to the average daily balance in
the deferred compensation account each calendar year.

    4.  <u>Termination.</u>

The Administrative Committee of Shearson has the right (if the Admin-
istrative Committee also terminates those similar agreements with its other
Employees which become effective on or about the effective date of this
agreement) to terminate this agreement, and Shearson's and Employee's
obligations hereunder, at any time by giving Employee, or Employee's desig-
nated beneficiary or beneficiaries if Employee is deceased, written notice
to that effect.  In that event, Shearson shall pay Employee or Employee's
designated beneficiary or beneficiaries not less than the amount of com-
pensation theretofore deferred and/or withheld as provided in paragraph 1
plus interest thereon at an annual rate equal to the lesser of 5% or the
weekly 90-day Treasury Bill auction rate (on a discounted basis) averaged
over a 12 month period ending on the date of payment elected by Employee
pursuant to Exhibit D.  Such interest shall be compounded annually on a
calendar year basis and shall be credited with respect to the average daily
balance in the deferred compensation account each calendar year.  However,
if economically feasible upon such termination, Shearson intends to credit

\*    For purposes of this agreement, retirement shall be determined by the
Administrative Committee of the Board of Directors of Shearson (Administra-
tive Committee) and if Employee is over the age of 60 upon the effective
date of this agreement, the Administrative Committee may apply special
rules regarding retirement.

Employee's deferred compensation account with interest on the amount of compensation theretofore deferred and/or withheld at an annual compounded rate of 11% up to the date of termination.  Notwithstanding the foregoing, any amounts that become payable as a result of termination may not be paid before the earlier of one year after the date of termination or some other date consented to by the New York Stock Exchange.

5.  Miscellaneous Provisions.

Employee understands and agrees that:

(a) Notwithstanding any other provisions of this agreement, payments of compensation deferred hereunder shall not, unless otherwise permitted by the Administrative Committee commence within one year after the later of the date of deferral or the date the subordination provisions of paragraph 9 apply with respect to such deferral.

(b) Notwithstanding any other provisions of this agreement, no payments to Employee pursuant to paragraph 2(a) shall commence prior to September 25, 1990, unless the Administrative Committee otherwise consents.

(c) For each year that there is a deferral of compensation hereunder which otherwise would be paid in such year, there may be a reduction in pension benefits accrued to Employee under Shearson's qualified pension plan.

(d) The payments to be made by Shearson to Employee hereunder are unsecured subordinated obligations of Employer only, and Employee is only a general subordinated creditor of Shearson in that respect.

(e) Shearson shall establish a deferred compensation account to which will be credited amounts of deferred compensation and any interest thereon.

(f) The deferral and withholding of compensation provided for herein are irrevocable unless the Administrative Committee otherwise consents.

(g) Shearson is not assuring Employee of continued employment by Shearson during all or any part of the period covered by this agreement or otherwise.

(h) Shearson has relied, in entering into this agreement, on information supplied by Employee to Shearson and Employee warrants that all information supplied is accurate and complete.  In the event Employee made any material misrepresentations or omissions in the information, Shearson's

sole obligation under this agreement shall be to pay Employee (or Employee's beneficiary) an amount equal to the amount of compensation theretofore deferred and/or withheld as provided in paragraph 1 plus interest thereon at an annual rate equal to the lesser of 5% or the weekly 90-day Treasury Bill auction rate (on a discounted basis) averaged over a 12 month period ending on the date of discovery of the material misrepresentation or omission.  Such interest shall be compounded annually and shall be credited with respect to the average balance in the deferred compensation account each year based upon the amount in the account at the end of each quarter.

(i) This agreement and all other similar agreements which become effective shall be interpreted and construed by the Administrative Committee and the determination of the Administrative Committee as to any disputed question shall be conclusive, except that any controversy arising out of or relating to the subordination provisions of paragraph 9, shall be submitted to and settled by arbitration pursuant to the Constitution and Rules of the New York Stock Exchange ("Exchange").  Shearson and Employee shall be conclusively bound by such arbitration.  All administrative duties arising in connection with this agreement and all other similar agreements shall be performed by a person or persons delegated such duties by the Administrative Committee.

6. Beneficiary Designation.

Employee may designate a beneficiary or beneficiaries entitled to receive any of the payments to be made by Shearson hereunder if Employee dies.  This designation, which is attached hereto as Exhibit E may be revoked or changed by Employee at any time.  Any such designation, revocation or change shall be in writing, signed by Employee and delivered to Shearson.  If Employee does not designate a beneficiary (or contingent beneficiary) to which payments are to be made after the death of Employee, or if any designated beneficiary (or contingent beneficiary) for payments does not survive Employee, payments by Shearson subsequent to the death of Employee shall be made as provided herein to Employee's estate.  If a designated beneficiary (or contingent beneficiary) survives Employee but dies prior to the completion of the payments contemplated to be made hereunder to such beneficiary, the unpaid portion of those payments shall be

paid by Shearson to the designated beneficiary's estate or if applicable to the contingent beneficiary's estate.

### 7. Effective Date.

This agreement shall become effective on September 25, 1985, unless Shearson gives Employee written notice otherwise prior to March 31, 1986; however no interest or other earning shall accrue on any amounts to be deferred hereunder until such amounts are actually deferred.

### 8. Parties to Agreement.

This agreement is between Employee and Shearson or a subsidiary or affiliate of Shearson for which Shearson is acting as agent hereunder, whichever is Employee's actual employer as of the date hereof.  If Employee's actual employer changes from Shearson to a subsidiary or affiliate of Shearson or from a subsidiary or affiliate of Shearson to Shearson or another subsidiary or affiliate of Shearson, thereafter Employee's employer for purposes of this agreement shall be the new employer.

### 9. Subordination Provisions.

(a) Suspension of Payment Obligation.  Shearson's obligation to pay amounts credited to the Employee's deferred compensation account on the date such payment is otherwise due and payable in accordance with the terms of the agreement (the "Fixed Payment Date") shall be suspended and shall not mature for any period of time during which after giving effect to such payment (together with (1) the payment of any other obligation of Shearson payable at or prior to such payment and (2) the return of any Secured Demand Note and the collateral therefor held by Shearson and returnable at or prior to such payment):

   (i)  if Shearson is not operating pursuant to the alternative net capital requirements provided for in paragraph (f) of Rule 15c3-1 of the Securities Exchange Act of 1934 (hereinafter the "Rule"), the aggregate indebtedness of Shearson would exceed 1200 per centum of its net capital (or its "adjusted net capital" as defined in the regulations under the Commodity Exchange Act), as those terms are defined in the Rule as in effect at the time payment is to be made or such lesser per centum as may be made

applicable to Shearson from time to time by the New York Stock
Exchange, Inc. ("Exchange") (or other domestic exchange, board of
trade, clearing association or similar organization of which
Shearson is a member) or a domestic governmental agency or body
having appropriate authority plus an amount equal to the guaranty
deposits with clearing organizations, other than the Chicago
Board of Trade, which were included in current assets under
Section 211 of the Chicago Board of Trade Capital Requirements
("Section 211"), to the extent such deposits cannot be used for
margin purposes, plus the amount computed in accordance with
Chicago Board of Trade Regulation 221.05; or

(ii)   if Shearson is operating pursuant to the alternative net capital
requirements provided for in paragraph (f) of the Rule, the net
capital of Shearson (or its "adjusted net capital" as defined in
the regulations under the Commodity Exchange Act) would be less
than the greater of: (x) 5 per centum of aggregate debit items
computed in accordance with Exhibit A to Rule 15c3-3 under the
Securities Exchange Act of 1934 (the "Act") or any successor rule
as in effect at the time payment is to be made plus an amount
equal to the guaranty deposits with clearing organizations, other
than the Chicago Board of Trade, which were included in current
assets under Section 211, to the extent such deposits cannot be
used for margin purposes, plus the amount computed in accordance
with Chicago Board of Trade Regulation 221.05, (y) if Shearson is
registered as a futures commission merchant with the Commodities
Futures Trading Commission, 6 per centum of the funds required to
be segregated pursuant to the Commodity Exchange Act ("CEA") and
the regulations promulgated thereunder, less the market value of
commodity options purchased by option customers on or subject to
the rules of a contract market, provided, however, the deduction
for each option customer shall be limited to the amount of cus-
tomer funds in such option customer's account (if greater), plus
an amount equal to the guaranty deposits with clearing organiza-
tions, other than the Chicago Board of Trade, which were included
in current assets under Section 211, to the extent such deposits
cannot be used for margin purposes, plus the amount computed in

accordance with Chicago Board of Trade Regulation 221.05, or (z) such greater per centum as may be made applicable to Shearson from time to time by the Exchange (or any other domestic exchange, board of trade, clearing association or similar organization of which Shearson is a member) or a domestic governmental agency or body having appropriate authority; or

(iii)   Shearson's net capital (or its "adjusted net capital" as defined in the regulations under the CEA), as defined in the Rule or any successor rule as in effect at the time payment is to be made, would be less than 120 per centum of any minimum dollar amount required by the Rule (or the regulations under the CEA as in effect at such time), plus an amount equal to the guaranty deposits with clearing organizations, other than the Chicago Board of Trade, which were included in current assets under Section 211, to the extent such deposits cannot be used for margin purposes, plus the amount computed in accordance with Chicago Board of Trade Regulation 221.05, or such greater dollar amount as may be made applicable to Shearson by the Exchange (or any other domestic exchange, board of trade, clearing association or similar organization of which Shearson is a member) or a domestic governmental agency or body having appropriate authority; or

(iv)   if Shearson guarantees, endorses, carries or clears specialist or market maker transactions in options listed on a national securities exchange or facility of a national securities association, the amounts required to be deducted and maintained as required by the provisions of paragraphs (a)(6)(v), (a)(7)(iv) or (c)(2)(x)(b)(1) of the Rule would exceed 1000 per centum of its net capital (or its "adjusted net capital" as defined in the regulations under the CEA), as defined in the Rule as in effect at the time such payment is made or such lesser per centum as may be made applicable to Shearson by the Exchange (or any other domestic exchange, board of trade, clearing association or similar organization of which Shearson is a member) or a domestic governmental agency or body having appropriate authority.

- 9 -

During any such suspension Shearson shall, as promptly as is consistent with the protection of its customers, reduce its business to a condition whereby the amounts the payment of which has been suspended could be paid (together with (1) the payment of any other obligation of Shearson payable at or prior to the payment of such amounts and (2) the return of any Secured Demand Note and the collateral therefor held by Shearson and returnable at or prior to the payment of such amounts) without Shearson's net capital being below the applicable minimums set forth in subparagraphs 9(a)(i) through (iv) above or its "adjusted net capital" being below the amount required as aforesaid, at which time Shearson shall pay the amounts credited to Employee's deferred compensation account the payment of which has been suspended plus accrued interest on not less than 5 days' prior written notice to the Exchange.  The first day on which under paragraph 2 hereof or under this subparagraph (a) Shearson has an obligation to pay amounts is hereinafter referred to as the "payment date".  If pursuant to the terms hereof Shearson's obligation to pay amounts credited to the Employee's deferred compensation account is suspended, Shearson recognizes and agrees that Shearson may be summarily suspended by the Exchange. Shearson agrees that, if its obligation to pay amounts credited to the Employee's deferred compensation account is ever suspended for a period of six months, it will promptly take whatever steps are necessary to effect a rapid and orderly complete liquidation of its business.

(b)  Repayment by Employee of Payments Made on Payment Date.

If payment is made of all or any part of the amounts credited to the Employee's deferred compensation account on the payment date and if immediately after any such payment Shearson's net capital is less than the applicable minimums set forth in subparagraphs 9(a)(i) through (iv), Employee agrees irrevocably, for himself, his beneficiaries, heirs and assigns, (whether or not Employee had any knowledge or notice of such fact at the time of any such payment) to repay to Shearson, its successors or assigns, the sum so paid, to be held by Shearson pursuant to the provisions hereof as if such payment had never been made; provided, however, that any suit for the recovery of any such payment must be commenced within two years of the date of such payment.

(c)  <u>Limitations on Withdrawals.</u>

No payment of all or any portion of amounts credited to the deferred compensation account shall be made prior to the Fixed Payment Date unless Shearson shall have received the prior written permission of the Exchange after consultation with the Securities and Exchange Commission if the Exchange deems such consultation appropriate.  Furthermore, no such payment shall be made if after giving effect thereto (and to all other payments of principal of outstanding subordination agreements of Shearson, including the return of any Secured Demand Note and the collateral therefor held by Shearson, the maturity or accelerated maturity of which are scheduled to occur within six months after the date such payment is to occur, or on or prior to the date on which Employee has elected to receive payment of the amounts credited to his deferred compensation account disregarding such proposed payment, whichever date is earlier) without reference to any projected profit or loss of Shearson:

   (i)  if Shearson is not operating pursuant to the alternative net capital requirements provided for in paragraph (f) of the Rule, the aggregate indebtedness of Shearson would exceed 1000 per centum of its net capital (or its "adjusted net capital" as defined in the regulations under the CEA), as those terms are defined in the Rule as in effect at the time such payment is to be made; or such lesser per centum as may be made applicable to Shearson from time to time by the Exchange (or any other domestic exchange, board of trade, clearing association or similar organization of which Shearson is a member) or a domestic governmental agency or body having appropriate authority, plus an amount equal to the guaranty deposits with clearing organizations, other than the Chicago Board of Trade, which were included in current assets under Section 211, to the extent such deposits cannot be used for margin purposes, plus the amount computed in accordance with Chicago Board of Trade Regulation 221.05; or

   (ii)  if Shearson is operating pursuant to such alternative net capital requirement, its net capital (or its "adjusted net capital" as defined in the regulations under the CEA) would be less than the greater of: (x) 5 per centum of aggregate debit items as those

terms are defined in Exhibit A to Rule 15c3-3 of the Securities
Exchange Act or any successor rule as in effect at such time,
plus an amount equal to the guaranty deposits with clearing
organizations, other than the Chicago Board of Trade, which were
included in current assets under Section 211, to the extent such
deposits cannot be used for margin purposes, plus the amount
computed in accordance with Chicago Board of Trade Regulation
221.05, or (y) if Shearson is registered as a futures commission
merchant with the Commodity Futures Trading Commission, 7 per
centum of the funds required to be segregated pursuant to the CEA
and the regulations promulgated thereunder, less the market value
of commodity options purchased by option customers on or subject
to the rules of a contract market, provided, however, the deduc-
tion for each option customer shall be limited to the amount of
customer funds in such option customer's account (if greater),
plus an amount equal to the guaranty deposits with clearing
organizations, other than the Chicago Board of Trade, which were
included in current assets under Section 211, to the extent such
deposits cannot be used for margin purposes, plus the amount
computed in accordance with Chicago Board of Trade Regulation
221.05, or (z) such greater per centum as may be made applicable
to Shearson from time to time by the Exchange (or any other
domestic exchange, board of trade, clearing association or sim-
ilar organization of which Shearson is a member) or a domestic
governmental agency or body having appropriate authority; or

(iii)   Shearson's net capital (or its "adjusted net capital" as defined
in the regulations under the CEA), as defined in the Rule or any
successor rule as in effect at the time payment is to be made,
would be less than 120 per centum of any minimum dollar amount
required by the Rule (or the regulations under the CEA as in
effect at such time), plus an amount equal to the guaranty de-
posits with clearing organizations, other than the Chicago Board
of Trade, which were included in current assets under Section
211, to the extent such deposits cannot be used for margin pur-
poses, plus the amount computed in accordance with Chicago Board
of Trade Regulation 221.05, or such greater dollar amount as may

be made applicable to Shearson by the Exchange (or any other domestic exchange, board of trade, clearing association or similar organization of which Shearson is a member) or a domestic governmental agency or body having appropriate authority; or

(iv)   if Shearson guarantees, endorses, carries or clears specialist or market maker transactions in options listed on a national securities exchange or facility of a national securities association, the amounts required to be deducted and maintained as required by the provisions of paragraphs (a)(6)(v), (a)(7)(iv) or (c)(2)(x)(b)(1) of the Rule would exceed 1000 per centum of its net capital (or its "adjusted net capital" as defined in the regulations under the Commodity Exchange Act), as defined in the Rule as in effect at the time such payment is made or such lesser per centum as may be made applicable to Shearson by the Exchange (or any other exchange, board of trade, clearing association or similar organization of which Shearson is a member) or a domestic governmental agency or body having appropriate authority; or

If such payment is made of all or any part of the amounts credited to the Employee's deferred compensation account on or prior to the Fixed Payment Date and if Shearson's net capital is less than the amount required to permit such payment pursuant to the previously cited provisions of this subparagraph (c), Employee agrees irrevocably (whether or not Employee had any knowledge or notice of such fact at the time of any such payment) to repay Shearson, its successors or assigns, the sum so paid to be held by Shearson pursuant to the provisions hereof as if such payment had never been made; provided, however, that any suit for the recovery of any such payment must be commenced within two years of the date of such payment.

(d)   <u>General Subordination.</u>

Employee irrevocably agrees that the obligations of Shearson hereunder with respect to the payment of amounts credited to his deferred compensation account are and shall be subordinate in right of payment and subject to the prior payment or provision for payment in full of all claims of all other present and future creditors of Shearson whose claims are not similarly subordinated (claims under this agreement shall rank pari passu with

claims similarly subordinated) and to claims which are now or hereafter expressly stated in the instruments creating such claims to be senior in right of payment to claims arising under this agreement, arising out of any matter or event occuring prior to the payment date of the amounts credited to Employee's deferred compensation account under this agreement. In the event of the appointment of a receiver or trustee of Shearson or in the event of its insolvency, liquidation pursuant to the Securities Investor Protection Act of 1970 ("SIPA") or otherwise, its bankruptcy, assignment for the benefit of creditors, reorganization whether or not pursuant to bankruptcy laws, or any other marshalling of the assets and liabilities of Shearson, the Employee shall not be entitled to participate or share, ratably or otherwise, in the distribution of the assets of Shearson until all claims of all other present and future creditors of Shearson, whose claims are senior to claims arising under this agreement, have been fully satisfied or provision has been made therefor.

(e)  Specific Subordination: Ranking of Obligations Under the Agreement with Other Indebtedness of Shearson.  Anything to the contrary in this agreement notwithstanding:

   (i)  Employee will not be entitled to receive any payment in respect of amounts credited to his deferred compensation account or to participate in the distribution of assets of Shearson in respect thereof if such payment or distribution would constitute a vio- lation of the express terms of any Senior Subordinated Debt (or any agreement under or pursuant to which the same may be out- standing);

   (ii)  the right of Employee to receive any payment in respect of amounts credited to his deferred compensation account will be subordinated to claims of the holders of Senior Subordinated Debt so that, in the case of any distribution of assets of Shearson in complete or partial liquidation, reorganization, arrrangement or other marshalling of assets and liabilities of Shearson, no such distribution or payment will be made with respect to amounts credited to Employee's deferred compensation account unless and until the principal of and interest on the Senior Subordinated Debt are paid in full; and

(iii)   Employee shall promptly return to Shearson any amounts (whether
cash, securities or otherwise) received from Shearson if the
payment by Shearson of such amounts constituted a violation of
the express terms of any Senior Subordinated Debt (or any agree-
ment under or pursuant to which the same may be outstanding).

The term "Senior Subordinated Debt" as used herein shall mean and
include all indebtedness of Shearson (other than Shearson's obligations
under its guarantees of $84,000. aggregate principal amount of the 10%
Guaranteed (Junior Subordinated) Convertible Notes due 1986 - 87 of Boston
Group Holdings, Inc., Shearson's obligations under its subordinated as-
sumption agreement with respect to certain debts of Lehman Brothers Kuhn
Loeb Holdings, Inc. in the aggregate principal amount of $48,000,000., and
other than Shearson's Voluntary Deferred Compensation Plan, Financial
Consultant's Deferred Compensation Plan, Branch Manager's Deferred Compen-
sation Plan and those similar agreements with other Employees each of which
rank pari passu with the obligation of Shearson under this agreement) con-
stituting part of its Net Capital (as defined in the Rule as from time to
time in effect), and shall include without limitation thereto the indebt-
edness represented by Shearson's 10 3/4% Senior Subordinated Debentures,
subject to minimum annual redemptions from the original $35,000,000. due,
of which $1,750,000. is due from September 1, 1988 through September 1, 2002
with the balance coming due September 1, 2003 and outstanding October 1, 1985
in the aggregate principal amount of $30,821,000., Shearson's 15% Subordi-
nated Note with American Express Company due 1984 - 1994 and outstanding on
October 1, 1985 in the aggregate principal amount of $144,243,000.,
Shearson's 15 1/4% Senior Subordinated Notes due December 1, 1990 and out-
standing on October 1, 1985 in the aggregate principal amount of $60,000,000.,
Shearson's 13 1/8% Senior Subordinated Loan due March 15, 1994 and outstanding
on October 1, 1985 in the aggregate principal amount of $97,800,000.,
Shearson's obligations in respect of the Shearson/American Express N.V.'s
12 1/8% Guaranteed Notes due March 15, 1994, issued in the original aggre-
gate principal amount of $100,000,000., Shearson's 12 1/2% Senior Subordi-
nated Notes due October 15, 1994 and outstanding on October 1, 1985 in the
aggregate principal amount of $150,000,000., Shearson's 11 5/8% Senior
Subordinated Notes due May 15, 2005 and outstanding on October 1, 1985 in

the aggregate principal amount of $100,000,000., Shearson's Senior Subordinated Notes with various maturity dates between September 30, 1986 and March 31, 1987 in the aggregate principal amounts of $50,000,000., Shearson's obligations in respect of the 10 3/4% Subordinated Notes and 15 1/4% Subordinated Notes held by various subsidiaries of Shearson, unless, in each case, in the instrument evidencing or creating the same, or in any agreement under or pursuant to which it shall be outstanding, such indebtedness shall be declared not to be Senior Subordinated Debt.  Senior Subordinated Debt (and any agreement under or pursuant to which the same may be outstanding) may be amended, the commitment under such agreements may be increased, provisions thereof may be waived, time of payment of the Senior Subordinated Debt may be extended and other indulgences granted to Shearson in respect thereof all from time to time without notice to or further assent of the Employee under the Agreement.

    (f)  <u>No Reliance on Exchange.</u>  Employee irrevocably agrees and acknowledges that:

       (i)   entrance into this agreement is not being made in reliance upon the standing of Shearson as a member organization of the Exchange or upon the Exchange's surveillance of Shearson's financial position or its compliance with the constitution, rules and practices of the Exchange;

     (ii)   Employee is not relying upon the Exchange to provide any information concerning or relating to Shearson and the Exchange has no responsibility to disclose to Employee any information concerning or relating to Shearson which it may now, or at any future time, have; and

   (iii)   neither the Exchange, its Special Trust Fund, nor any director, officer, trustee or employee of the Exchange or said Trust Fund shall be liable to Employee with respect to this Agreement or the payment of amounts credited to Employee's deferred compensation account.

    (g)  <u>Examining Authority.</u>

Upon termination of Shearson as a member of the Exchange, the references herein to Exchange will be deemed to refer to Examining Authority.

- 16 -

The term Examining Authority shall refer to such regulatory body having responsibility for inspecting or examining Shearson for compliance with financial responsibility requirements under Section 9(c) of SIPA and Section 17(d) of the Act.  Reference herein to Exchange or Examining Authority shall also be deemed to refer to the Chicago Board of Trade and to any other exchange, board of trade, clearing association or similar organization of which Shearson is a member and which requires such reference as a condition to inclusion of the amounts credited to the deferred compensation account hereunder in Shearson's net capital as computed for the purposes of such organization.

   (h)  Commodity Futures Trading Commission ("CFTC") Regulations.
   References in this agreement to the Exchange or Examining Authority shall also be deemed to refer to the organization(s) designated as the self-regulatory organization(s) (also known as DSRO) of Shearson pursuant to a plan filed with the CFTC pursuant to Regulation 1.52 under the CEA to the extent such references are required as a condition to inclusion of the amounts credited to a deferrred compensation account hereunder in Shearson's net capital as computed for purposes of such organization(s).

   (i)  Use of Amounts Deferred.
   The amounts credited to the deferred compensation account hereunder shall be dealt with in all respects as capital of Shearson, shall be subject to the risks of the business, and may be deposited in an account or accounts in Shearson's name in any bank or trust company.

   10.  Investments by Shearson.
   In connection with this agreement, Employee hereby agrees to cooperate with Shearson, as may be necessary, to acquire in the name of Shearson any life insurance contract, annuity contract or other investment in which Shearson in its absolute discretion may choose to invest for purposes of meeting its obligations under this agreement.

**Exhibit B**

| Hire date | Today's date | Dept. No. | Social Security Number |
|---|---|---|---|
| Office Phone No. | PRINT, First Name, Initial, Last Name | | |
| Department or Branch | | | Maiden Name |



Arnout
9/27/90
AMD



## SHEARSON LEHMAN BROTHERS INC.
## EXECUTIVE AND SELECT EMPLOYEES PLAN (ESEP)
## IRREVOCABLE ELECTION FORM

### INSTRUCTIONS:

Set forth below are four alternatives Shearson Lehman Brothers Inc. ("Shearson Lehman") is offering to you as an eligible participant in ESEP. By selecting one of the alternatives, you will determine the circumstances under which your participation in ESEP will continue in the future. Each alternative is fully explained in the ESEP summary of alternative amendments enclosed with this form, and you are urged to study all of the alternatives carefully.

Once you have read the summary description and inserted the information requested in the caption above, select one option by checking the box applicable to your choice - do not check more than one box. **This election is binding and irrevocable, and your ESEP deferred compensation agreement will be amended (where applicable) based upon your election. The amended ESEP agreement (incorporating the American Express Company guarantee) will govern your rights under ESEP.**

Shearson Lehman will amend your ESEP deferred compensation agreement to conform with your election (where applicable) and will send you the amended deferred compensation agreement for execution. Any participant who does not sign and return on a timely basis (i) this election form and (ii) the amended ESEP deferred compensation agreement will be deemed to have elected Option 1 - namely to remain in the original ESEP agreement.

**Completed election forms must be received by Shearson Lehman no later than September 28, 1990, 5:00 P.M. New York City time - no exceptions will be allowed. Copies sent by facsimile or telecopier will not be accepted.**

### Check One Box Below:

☑  Option 1.  (Original ESEP Option)

I agree to remain in the original ESEP with <u>no amendments</u> to my deferred compensation agreement and no American Express Company guarantee.

☐  Option 2.  (Retirement Option - 15 installments)

I agree to the following amendments to my ESEP deferred compensation agreement:

(a)    The rate used to annually credit interest on my deferred compensation account will be an adjustable rate (adjusted annually) based on the published "Moody's Corporate Bond Yield Average" plus an additional 3 percentage points (the "Moody's Crediting Rate").

(b)    All amounts credited to my deferred compensation account will be payable, commencing at retirement (as defined in the amended agreement), in 15 substantially equal, annual installments (subject to variations in the Moody's Crediting Rate).

(c)    Upon termination of my employment with Shearson Lehman (or its affiliates) for any reason other than disability, retirement, or death, all amounts credited to my deferred compensation account will be payable as soon as practicable in one lump sum payment.

(d)    The total amount of any death payments that may become payable under my ESEP deferred compensation agreement shall be determined according to the amended ESEP deferred compensation agreement, which will include a projected Moody's Crediting Rate to be used in determining death payments.

(e)    Subject to certain limitations, American Express Company will guarantee the collection of all payments under my ESEP deferred compensation agreement, subject to my eligibility for the guarantee in the future.

☐    Option 3.    (Lump Sum 2000 Option)

I agree to the following amendments to my ESEP deferred compensation agreement:

(a)    The rate used to annually credit interest on my deferred compensation account will be an adjustable rate (adjusted annually) based on the Moody's Crediting Rate.

(b)    All amounts credited to my ESEP deferred compensation account will be payable in one lump sum on the earlier of (i) August 9, 2000 or (ii) the termination of my employment with Shearson Lehman (or its affiliates) for any reason, other than disability.

2

(c)    The lump sum death payment that may become payable under my ESEP deferred compensation agreement shall be equal to the _projected_ amount I would have received (in one lump sum) on August 9, 2000. See Option 2(d) above concerning the determination of the death payment.

(d)    The amount of each disability payment under my ESEP deferred compensation agreement shall remain _unchanged_. However, disability payments would be made only up to the date my ESEP deferred compensation account is paid as provided under paragraph 3(b) above.

(e)    Subject to certain limitations, American Express Company will guarantee the collection of all payments under my ESEP deferred compensation agreement, subject to my eligibility for the guarantee in the future.

☐    Option 4.    (Ten Annual Installments Option)

I agree to the following amendments to my ESEP deferred compensation agreement:

(a)    The rate used to annually credit interest on my ESEP deferred compensation account will be an adjustable rate (adjusted annually) based on the Moody's Crediting Rate.

(b)    All amounts credited to my ESEP deferred compensation account will be payable in 10 substantially equal, annual installments commencing on the earlier of (i) August 9, 2001 or (ii) termination of my employment with Shearson Lehman (or its affiliates) as a result of death or retirement.

(c)    All amounts credited to my ESEP deferred compensation account will be payable in one lump sum upon termination of my employment with Shearson Lehman (or its affiliates) for any reason, other than retirement, death, or disability.

3

(d)     The total amount of any death payments that may become payable under my ESEP deferred compensation agreement shall be determined according to the amended ESEP deferred compensation agreement, which will include the projected amount I would have received commencing on August 9, 2001.  See Option 2(d) above concerning the determination of death benefit.

(e)     The amount of each disability payment under my ESEP deferred compensation agreement shall remain unchanged. However, disability payments would be made only up to the date my ESEP deferred compensation account commences payment as provided under paragraph 4(b).

(f)     Subject to certain limitations, American Express Company will guarantee the collection of all amounts credited to my ESEP deferred compensation account as of August 9, 2000 and payable in installments, subject to my eligibility for the guarantee in the future. Each installment payment will be deemed to consist entirely of the ESEP account balance as of August 9, 2000 until the guaranteed amount is fully paid out. The guarantee will not apply to interest earnings on my ESEP deferred compensation account after August 9, 2000.

ESEP Participant

_____

Signature

_____

Please Print Name

Date: _____

Return this completed Form in the enclosed,
self-addressed envelope to Shearson Lehman Brothers Inc.
Pension-Deferred Compensation Department
388 Greenwich Street,  7th Floor
New York,  New York 10013

4

# **Exhibit 2**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

LEHMAN BROTHERS INC.,                                          Case No. 08-01420 (SCC) SIPA

                                                      Debtor.

## [PROPOSED] ORDER, PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7042, TO CONVERT CERTAIN CONTESTED OMNIBUS OBJECTIONS TO A CONSOLIDATED <u>ADVERSARY PROCEEDING AND ESTABLISH RELATED PROCEDURES</u>

Upon the Motion of James W. Giddens, as trustee for the liquidation of Lehman

Brothers Inc. ("<u>LBI</u>") under the Securities Investor Protection Act of 1970, as amended, 15

U.S.C. §§ 78aaa *et seq.* ("<u>SIPA</u>"), for entry of an Order, pursuant to Section 105(a) of the

Bankruptcy Code and Bankruptcy Rule 7042, to Convert Certain Contested Omnibus Objections

to a Consolidated Adversary Proceeding and Establish Related Procedures, dated February 6,

2014 (the "<u>Motion</u>"),[1] all as more fully described in the Motion; and due and proper notice of the

Motion having been provided, and it appearing that no other or further notice need be provided;

and the Court having found and determined that the relief sought in the Motion is in the best

interests of LBI, its estate, its customers and creditors, and all parties in interest and that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and

after due deliberation and sufficient cause appearing therefore,

IT IS HEREBY:

ORDERED, that the Motion is granted ~~in its entirety~~<u>as provided herein</u>; and it is

---

1.    Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

further

ORDERED, that the Omnibus Objections are hereby converted to the ESEP

Adversary Proceeding, a single, consolidated adversary proceeding, in which the portions of the

Omnibus Objections annexed hereto as Exhibit 1 are deemed to be sufficient in lieu of an

adversary complaint (the "Converted Complaint") solely as to the Respondents.Claimants who

have responded either formally or informally to indicate their opposition to the Trustee's

Omnibus Objections (collectively, the "Respondents").

ORDERED that the following procedures shall apply solely to the ESEP

Adversary Proceeding and Converted Complaint:

(a)    The Trustee shall serve this order (the "Procedures Order") on all
Respondents via overnight delivery within two business days of
issuance of the Procedures Order and such service shall be
deemed good and sufficient, in lieu of service of a summons and
complaint.  No separate summons shall be issued in connection
with the ESEP Adversary Proceeding by the Clerk of the Court;

(b)    Respondents shall have thirty (30) days from the date of entry of
the Procedures Order (subject to further extension as agreed upon
by the Trustee and any Respondent) to respond to the Converted
Complaint or to supplement their respective Omnibus Objection
Responses;

(c)    All provisions of the Bankruptcy Rules governing adversary
proceedings shall govern the ESEP Adversary Proceeding and
Converted Complaint, except as provided herein;

(d)    On or before April 30, 2014, the Trustee and the Respondents are
directed to confer with respect to the submission of a jointly-
proposed scheduling order and discovery plan.  No discovery
requests or dispositive motions shall be served through and until
the date thereof, and no dispositive motions shall be served without
permission of the Court;

(e)    This Court shall hold a status conference regarding discovery and
related matters at the LBI claims hearing scheduled foron May
1428, 2014.  No discovery or dispositive motions shall be served
through and until the date thereof; at 10:00 a.m. (Prevailing

Eastern Time);

    (f)    The provisions of the ADR Order shall not apply as to these Omnibus Objections; and

    (g)    The Trustee and Respondents may, upon notice and hearing, seek Court approval to modify these procedures; and it is further

ORDERED that, other than as expressly set forth herein, the rights of the Trustee and the Respondents, including any defenses or grounds for objection, and any other party in interest with respect to the Deferred Compensation Claims are expressly preserved and unaffected by this Procedures Order; and it is further

ORDERED that, other than with respect to the Deferred Compensation Claims filed by the Respondents, this Procedures Order shall have no effect on any other customer or general creditor claims or any pending or future motions or objections (omnibus or otherwise) related thereto; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from or related to this Procedures Order.

Dated: New York, New York
       _____, 2014

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT 1</u>**

TO THE HONORABLE SHELLY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

James W. Giddens (the "Trustee"), as Trustee for the liquidation of the business of Lehman Brothers Inc. ("LBI" or the "Debtor") under the Securities Investor Protection Act of 1970 as amended, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), by and through his undersigned counsel, respectfully represents as follows:

**RELIEF REQUESTED**

1.      The Trustee files this omnibus objection to general creditor claims (the "Omnibus Objection") pursuant to sections 502(b) and 510(a) of title 11 of the United States Code (the "Bankruptcy Code"), as made applicable to this proceeding pursuant to sections 78fff(b) and 78fff-1(a) of SIPA, Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),  and this Court's order approving procedures for the filing of omnibus objections to general creditor claims filed in this SIPA proceeding (the "General Creditor Claim Objection Procedures Order," ECF No. 5441), seeking to subordinate the claims of claimants who have responded either formally or informally to indicate their opposition to six omnibus objections pending before the Court (collectively, the "Deferred Compensation Claims" or the "Claims").[1]

---

[1].    The six Omnibus Objections are:  (1) the Trustee's one hundred twelfth omnibus objection to general creditor claims (subordinated claims), filed on July 19, 2013 (ECF No. 6847); (2) the Trustee's one hundred thirteenth omnibus objection to general creditor claims (subordinated claims), filed on July 23, 2013 (ECF No. 6865); (3) the Trustee's one hundred fourteenth omnibus objection to general creditor claims (subordinated claims), filed on July 23, 2013 (ECF No. 6866); (4) the Trustee's one hundred thirty-eighth omnibus objection to general creditor claims (subordinated claims), filed on September 16, 2013 (ECF No. 7264);  (5) the Trustee's one hundred forty-seventh omnibus objection to general creditor claims (subordinated claims), filed on October 3, 2013 (ECF No. 7388); and (6) the Trustee's one hundred ninety-eighth omnibus objection to general creditor claims (employee claims), filed on January 28, 2014 (ECF No. 8153) to the extent that the one hundred ninety-eighth omnibus objection to general creditor claims which seeks to subordinate the portion of a claim which constitutes an ESEP claim.

2.      The Claims, as filed by, collectively, the "Deferred Compensation Claimants") seek to recover compensation deferred by LBI employees pursuant to the Executive and Select Employees Plan, as amended (the "ESEP"),[2] which was offered to certain executives of LBI and other highly-compensated LBI employees.

3.      Each of the Deferred Compensation Claimants agreed that his or her benefits under the ESEP would be subordinate to payment in full of LBI's unsubordinated obligations, including those owed to LBI's general unsecured creditors.  The Trustee respectfully requests that this Court enforce the ESEP and rank LBI's obligations, if any, to the Deferred Compensation Claimants junior to all unsubordinated liabilities of LBI.

## JURISDICTION AND VENUE

4.      Following removal to this Court for all purposes as required for SIPA cases by section 78eee(b)(4) of SIPA, this Court has "all of the jurisdiction, powers, and duties conferred by [SIPA] upon the court to which application for the issuance of the protective decree was made." 15 U.S.C. § 78eee(b)(4).

5.      Venue is proper in this Court pursuant to SIPA section 78eee(a)(3) and 15 U.S.C. § 78aa.

## THE ESEP

6.      The ESEP was one of several deferred compensation plans offered only to a limited group of LBI executives and other highly-compensated employees.  The ESEP became

---

2.   A true and correct copy of the ESEP is attached hereto as Exhibit A.  LBI amended the ESEP Agreement on September 1, 1990 to allow beneficiaries to elect one of four distribution schemes:  (i) "Retirement Option – 15 Installments"; (ii) "Lump Sum 2000 Option"; (iii) "Ten Annual Installments Option"; or (iv) the distribution schedule provided in the original ESEP.   A true and correct copy of the ESEP Irrevocable Election Form enumerating these amendments is attached hereto as Exhibit B.  None of these amendments substantively altered the governing subordination provisions of the ESEP.

effective in 1985 and was funded through employees' voluntary compensation deferrals from 1985 through 1988.

7.    In a section titled "Subordination Provisions," the Deferred Compensation Claimants explicitly agreed to subordinate distribution of any accrued benefits to payment in full of all of LBI's unsubordinated creditors:

> Employee irrevocably agrees that the obligations of [LBI] hereunder with respect to the payment of amounts credited to his deferred compensation account are and shall be subordinate in right of payment and subject to the prior payment or provision for payment in full of all claims of all other present and future creditors of [LBI] whose claims are not similarly subordinated . . . .

ESEP Agreement § 9(d).

8.    Section 9(d) further specifically requires subordination of claims arising under the ESEP to claims of unsubordinated creditors in the event of a SIPA liquidation:

> In the event of . . . liquidation pursuant to [SIPA] . . . , the Employee *shall not* be entitled to participate or share, ratably or otherwise, in the distribution of the assets of [LBI] *until all claims of all other present and future creditors of [LBI], whose claims are senior to claims arising under this agreement, have been fully satisfied or provision has been made therefor.*

*Id.* (emphases added).[3]

9.    Each Deferred Compensation Claimant also agreed that "payments to be made by [LBI] to Employee hereunder are unsecured subordinated obligations of Employer only, and employee is only a general subordinated creditor of [LBI] in that respect." *Id*. § 5(d).

## THIS COURT SHOULD ENFORCE THE ESEP AND SUBORDINATE THE DEFERRED COMPENSATION CLAIMS

---

3    The ESEP also sets forth other specific instances of subordination inapplicable here.

10.     Based on analysis by the Trustee's counsel of the Deferred Compensation Claims and other relevant documents and materials, the Trustee has identified the Claims as governed by valid, binding, and enforceable subordination provisions which subordinate the Deferred Compensation Claims to payment in full of, *inter alia*, all general unsecured creditors and other unsubordinated liabilities of LBI.

11.     Section 510(a) of the Bankruptcy Code provides that a "subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a). Courts have routinely held that the "enforcement of lawful subordination agreements by Bankruptcy Courts does not offend the policy of equal distribution of the bankrupt's estate." *In re Leasing Consultants, Inc.*, 2 B.R. 165, 168 (Bankr. E.D.N.Y. 1980), *citing In re Credit Industrial Corp.*, 366 F.2d 402, 407 (2d Cir. 1966); *see also Highland Park CDO I Grantor Trust, Series A v. Wells Fargo Bank, N.A.*, No. 08 Civ. 5723 (NRB), 2009 WL 1834596 (S.D.N.Y. June 16, 2009) (enforcing a contractual subordination agreement governed by New York law in determining the priority of bankruptcy distributions); *Levine v. Resolution Trust Corp. (In re Coronet Capital Co.)*, No. 94 Civ. 1187 (LAP), 1995 WL 429494, at *4 (S.D.N.Y. July 20, 1995) (collecting cases and noting that subordination agreements are generally enforced in bankruptcy). Under general contract law principles, when a subordination agreement is unambiguous, the parties' rights are governed exclusively by that agreement. *In re Leasing Consultants, Inc.*, 2 B.R. at 169; *see also In re Coronet Capital Co.*, 1995 WL 429494, at *4-8.

12.     The Deferred Compensation Claims are based upon the ESEP, which explicitly and specifically subordinates the Deferred Compensation Claims. These provisions alerted each of the Deferred Compensation Claimants that claims to the individual accounts

would be subordinated to, and be subject to risk of, senior creditors and satisfaction in full of those claims.  Accordingly, the Trustee respectfully requests that the Court classify the Deferred Compensation Claims, whether liquidated, unliquidated, or undetermined, as subordinated to payment in full of all of LBI's unsecured general creditor claims.

### RESERVATION OF RIGHTS

13.    The Trustee reserves all rights to object on any other basis to any Deferred Compensation Claim or any portion of any Deferred Compensation Claim. The Trustee further expressly reserves the right to object to the value of the Claims.

### CONCLUSION

For the reasons stated herein, the Trustee respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just.