Hearing Date and Time:  July 16, 2014 at 10:00 a.m. (Prevailing Eastern Time)
Response Date and Time:  June 25, 2014 at 4:00 p.m. (Prevailing Eastern Time)

---

**THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM.  PARTIES RECEIVING THIS NOTICE OF THE TRUSTEE'S TWO HUNDRED THIRTY-NINTH OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS SHOULD REVIEW THE OMNIBUS OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION AND/OR IN THE EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT THE TRUSTEE'S COUNSEL, JORDAN E. PACE, ESQ., AT (212) 837-6467.**

---

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:(212) 837-6000
Facsimile: (212) 422-4726

*Attorneys for James W. Giddens,*
*Trustee for the SIPA Liquidation of Lehman Brothers Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>　　　LEHMAN BROTHERS INC.,<br><br>　　　　　　　　　　　　Debtor. | Case No.:  08-01420 (SCC) SIPA |

**NOTICE OF HEARING ON**
**THE TRUSTEE'S TWO HUNDRED THIRTY-NINTH**
**OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS**

**PLEASE TAKE NOTICE** that on June 4, 2014, James W. Giddens (the "Trustee"), as trustee for the liquidation of the business of Lehman Brothers Inc. (the "Debtor" or "LBI"), under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), by and through his undersigned counsel, filed his two hundred thirty-ninth omnibus objection to general creditor claims (the "Two Hundred Thirty-Ninth Omnibus Objection to General Creditor Claims"), and that a hearing to consider the Trustee's Two Hundred Thirty-Ninth Omnibus Objection to General Creditor Claims will be held before the

Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the United States

Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 623, One Bowling Green,

New York, New York 10004 (the "Bankruptcy Court"), on **July 16, 2014 at 10:00 a.m.**

**(Prevailing Eastern Time)** (the "Hearing").

      **PLEASE TAKE FURTHER NOTICE** that responses, if any, to the Trustee's

Two Hundred Thirty-Ninth Omnibus Objection to General Creditor Claims must:  (i) be in

writing; (ii) state the name and address of the responding party and nature of the claim or interest

of such party; (iii) state with particularity the legal and factual bases of such response;

(iv) conform to the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules; (v) be

filed with the Bankruptcy Court, together with proof of service, electronically, in accordance

with General Order M-399 by registered users of the Court's Electronic Case Filing system, and

by all other parties in interest, on a 3.5 inch disk, compact disk, or flash drive, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format no later than **June 25, 2014 at 4:00 p.m. (Prevailing Eastern Time)** (the "Response

Deadline"); and (vi) be served on (a) Hughes Hubbard & Reed LLP, One Battery Park Plaza,

New York, New York 10004, Attn: Robert B. Funkhouser, Esq.; (b) the Securities Investor

Protection Corporation, 805 Fifteenth Street, N.W., Suite 800, Washington, DC 20005, Attn:

Kenneth J. Caputo, Esq.; and (c) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York,

New York 10153, Attn: Maurice Horwitz, Esq. and Lori R. Fife, Esq., with a courtesy copy to

the chambers of the Honorable Shelley C. Chapman, Courtroom 623, One Bowling Green, New

York New York 10004.

      **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and

served with respect to the Trustee's Two Hundred Thirty-Ninth Omnibus Objection to General

Creditor Claims or any claim set forth thereon, the Trustee may, on or after the Response

Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed

order annexed to the Trustee's Two Hundred Thirty-Ninth Omnibus Objection to General

Creditor Claims, which may be entered with no further notice or opportunity to be heard offered

to any party.

Dated: New York, New York
June 4, 2014

HUGHES HUBBARD & REED LLP

By: /s/ James B. Kobak, Jr.
    James B. Kobak, Jr.
    Christopher K. Kiplok
    Robert B. Funkhouser
    Meaghan C. Gragg
    Jordan E. Pace
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile:  (212) 422-4726
E-mail: kobak@hugheshubbard.com

*Attorneys for James W. Giddens,*
*Trustee for the SIPA Liquidation of*
*Lehman Brothers Inc.*

**Hearing Date and Time: July 16, 2014 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Date and Time: June 25, 2014 at 4:00 p.m. (Prevailing Eastern Time)**

HUGHES HUBBARD & REED LLP

One Battery Park Plaza

New York, New York 10004

Telephone:(212) 837-6000

Facsimile: (212) 422-4726

*Attorneys for James W. Giddens,*
*Trustee for the SIPA Liquidation of Lehman Brothers Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:

        LEHMAN BROTHERS INC.,

                      Debtor.

Case No.:  08-01420 (SCC) SIPA

---

**THE TRUSTEE'S TWO HUNDRED THIRTY-NINTH**
**OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS**

**THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM.  PARTIES RECEIVING THIS TWO HUNDRED THIRTY-NINTH OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS SHOULD REVIEW THE OMNIBUS OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION AND/OR IN THE EXHIBIT ATTACHED THERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).**

**IF YOU HAVE QUESTIONS, PLEASE CONTACT THE TRUSTEE'S COUNSEL, JORDAN E. PACE, ESQ., AT (212) 837-6467.**

# TABLE OF CONTENTS

RELIEF REQUESTED..................................................................................................... 1

JURISDICTION AND VENUE ....................................................................................... 2

BACKGROUND ............................................................................................................. 3

THE CLAIMS SHOULD BE DISALLOWED AND EXPUNGED ............................. 5

    A.    The Claims Should Be Disallowed and Expunged to the Extent
        They Claim Indemnification ................................................................... 6

        1.    The Claims Do Not Include Sufficient Documentation to
            Ascertain the Validity of Their Claims for Indemnification..................... 6

        2.    The Claims Are Subject to Mandatory Disallowance as
            Contingent Claims for Reimbursement to the Extent They
            Claim Indemnification .............................................................. 8

    B.    LBI Is Not Liable to the Claimants for the Funds Claimed In the
        Claims ............................................................................................ 10

RESERVATION OF RIGHTS ....................................................................................... 11

NOTICE......................................................................................................................... 11

NO PRIOR RELIEF REQUESTED .......................................................................... 12

CONCLUSION............................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re Adelphia Commc'ns Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660
   (Bankr. S.D.N.Y. Feb. 20, 2007) ........................................................................5

*Ashford v. Consol. Pioneer Mortg. (In re Consol. Pioneer Mortg.)*, 178 B.R. 222 (B.A.P.
   9th Cir. 1995), *aff'd*, 91 F.3d 151 (9th Cir. 1996) ........................................6

*In re Drexel Burnham Lambert Grp. Inc.*, 148 B.R. 982 (Bankr. S.D.N.Y. 1992) .................8

*In re GCO Servs., LLC*, 324 B.R. 459 (Bankr. S.D.N.Y. 2005) .................................8, 9

*In re MF Global Holdings Ltd.*, No. 11-15059 (MG), 2012 WL 5499847 (Bankr.
   S.D.N.Y. Nov. 13, 2012) ....................................................................................6

*In re Mid-Am. Waste Sys, Inc.*, 228 B.R. 816 (Bankr. D. Del. 1999) ...........................10

*In re Minbatiwalla*, 424 B.R. 104 (Bankr. S.D.N.Y. 2010) .....................................6

*In re Oneida Ltd.*, 400 B.R. 384 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Peter J. Solomon
   Co. v. Oneida Ltd.*, No. 09 Civ. 2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y.
   Jan. 22, 2010) ...........................................................................................5, 6

*In re Provincetown-Boston Airlines, Inc.*, 72 B.R. 307 (Bankr. M.D. Fla. 1987) ...............9

*In re Rockefeller Ctr. Props.*, 272 B.R. 524 (Bankr. S.D.N.Y. 2000) ...........................5

*Sorenson v. Drexel Burnham Lambert Grp. (In re Drexel Burnham Lambert Grp., Inc.)*,
   146 B.R. 92 (S.D.N.Y. 1992) .........................................................................8, 9

*In re Wedtech Corp.*, 85 B.R. 285 (Bankr. S.D.N.Y. 1988) .....................................8

*In re Wedtech Corp.*, 87 B.R. 279 (Bankr. S.D.N.Y. 1988) .....................................8

STATUTES AND RULES

11 U.S.C. § 502......................................................................................... *passim*

11 U.S.C. § 510.........................................................................................10, 12

15 U.S.C. § 78aa ...........................................................................................2

15 U.S.C. § 78aaa *et seq.* .................................................................................1

15 U.S.C. § 78eee .......................................................................................2, 3

## TABLE OF AUTHORITIES

### (Continued)

**Page(s)**

15 U.S.C. § 78fff ........................................................................................................................1

15 U.S.C. § 78fff-1 ....................................................................................................................1

15 U.S.C. § 78fff-2 ....................................................................................................................3

Del. Code Title 8, § 145 ............................................................................................................9

Fed. R. Bankr. P. 3001 ...........................................................................................................1, 5

Fed. R. Bankr. P. 3007 ...........................................................................................................1, 5

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

James W. Giddens (the "Trustee"), as Trustee for the liquidation of the business of

Lehman Brothers Inc. (the "Debtor" or "LBI") under the Securities Investor Protection Act of

1970, as amended, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"),[1] by and through his undersigned

counsel, respectfully represents as follows:

## RELIEF REQUESTED

1.       The Trustee files this two hundred thirty-ninth omnibus objection to general

creditor claims (the "Two Hundred Thirty-Ninth Omnibus Objection to General Creditor

Claims") pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy

Code"), as made applicable to this proceeding pursuant to sections 78fff(b) and 78fff-1(a) of

SIPA, Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

and this Court's order approving procedures for the filing of omnibus objections to general

creditor claims filed in this SIPA proceeding (the "General Creditor Claim Objection Procedures

Order," ECF No. 5441), seeking disallowance and expungement of the claims listed on

Exhibit A annexed hereto (collectively, the "Claims").  The Trustee's proposed order (the

"Proposed Order") is annexed hereto as Exhibit D.

2.       The Claims are based, in part, on claims by former officers of LBI (collectively,

the "Claimants")[2] seeking indemnification or advancement of unspecified defense costs and

payments (including attorneys' fees, judgments, fines, and amounts paid in settlement).  The

Trustee's counsel have examined the Claims and have determined that, with regard to their

---

1.   For convenience, subsequent references to SIPA may omit "15 U.S.C."

2.   None of the Claims alleges any relationship between any individual Claimant and LBI.  Based on publicly
     available information and the books and records of LBI, the Trustee believes each Claimant to be a former
     officer of LBI.

claims for indemnification, each of the proofs of claim fails to comply with Bankruptcy Rule

3001(c) and with the instructions included with the official proof of claim form, as they do not

include sufficient documentation to allow the Trustee to ascertain the validity of each claim.

Specifically, the Claims lack any evidence that the Claimants have actually paid any defense

costs or payments, or that LBI is liable for any such defense costs or payments.  The Claims do

not, therefore, constitute valid prima facie claims for indemnification.  In addition, the Claims

appear to assert contingent claims for reimbursement disallowed by section 502(e)(1)(B) of the

Bankruptcy Code to the extent they claim indemnification.

3.     The Claims also each seek to recover interests in or losses associated with one or

more partnership funds or related funds (collectively, the "Funds").  The Funds identified in the

Claims are corporate entities separate from LBI and are not debtors in this SIPA Proceeding.

Interests in the non-debtor Funds do not create a claim against LBI.  There is no indication that

LBI is a general partner in any of the Funds.  LBI has no liability for any interests or losses

related to the Funds referenced in the Claims.

4.     Accordingly, the Trustee requests that the Claims be disallowed and expunged in

their entirety.  The Trustee reserves all of his rights to object on any basis to any Claim as to

which the Court does not grant the relief requested herein.

**JURISDICTION AND VENUE**

5.     Following removal to this Court for all purposes as required for SIPA cases by

section 78eee(b)(4) of SIPA, this Court has "all of the jurisdiction, powers, and duties conferred

by [SIPA] upon the court to which application for the issuance of the protective decree was

made."  SIPA § 78eee(b)(4).

2

6.     Venue is proper in this Court pursuant to SIPA § 78eee(a)(3) and 15 U.S.C. § 78aa.

## **BACKGROUND**

7.     On September 19, 2008 (the "Filing Date"), the Honorable Gerard E. Lynch, United States District Court, Southern District of New York, entered the Order Commencing Liquidation (the "LBI Liquidation Order," ECF No. 1) pursuant to the provisions of SIPA in the case captioned *Securities Investor Protection Corporation v. Lehman Brothers Inc.*, Case No. 08-CIV-8119 (GEL).  The LBI Liquidation Order, *inter alia*, (i) appointed the Trustee for the liquidation of the business of LBI pursuant to section 78eee(b)(3) of SIPA; and (ii) removed the case to this Court for all purposes as required in SIPA cases by section 78eee(b)(4) of SIPA, in the case captioned *In re Lehman Brothers Inc.*, Case No. 08-01420 (JMP) (the "SIPA Proceeding").

8.     On November 7, 2008, the Court entered the Order Approving Form and Manner of Publication and Mailing of Notice of Commencement; Specifying Procedures and Forms for Filing, Determination, and Adjudication of Claims; Fixing a Meeting of Customers and Other Creditors; and Fixing Interim Reporting Pursuant to SIPA (the "Claims Process Order," ECF No. 241).  Beginning on December 1, 2008, consistent with SIPA § 78fff-2(a)(1), the Trustee mailed more than 905,000 claims packages with filing information to former LBI customers and other potential claimants (the "Claims Process Notice") and posted claims filing information on the Trustee's website (www.lehmantrustee.com) and SIPC's website (www.sipc.org).  The Trustee also published notice of the claims process in *The New York Times*, *The Wall Street Journal*, and *The Financial Times*.

3

9.      Pursuant to SIPA § 78fff-2(a)(3) and the Claims Process Order, customer claims

seeking maximum protection under SIPA must have been received by the Trustee on or before

January 30, 2009.  All customer claims and general creditor claims must have been received by

the Trustee by June 1, 2009 and no claims of any kind will be allowed unless received by the

Trustee on or before June 1, 2009 (the "Bar Date").  In addition to the Bar Date, on September

19, 2013, the Bankruptcy Court entered an order (the "Administrative Bar Date Order") that

established October 31, 2013 (the "Administrative Bar Date") as the deadline to file a proof of

claim for certain administrative expense claims against the LBI estate, as further described in the

Administrative Bar Date Order, with respect to such administrative expenses arising between

September 19, 2008 and August 31, 2013.  The Administrative Bar Date has now passed.  A

copy of the Claims Process Order was made publicly available at www.lehmantrustee.com.  The

Trustee's website allowed claimants filing electronically to upload documents as part of their

claim submissions and thereby comply with the instructions to include supporting documentation

set forth in the Proof of Claim.

10.      The Bankruptcy Rules' Official Form 10 (the "Claim Form"), the standardized

proof of claim form which was approved for use in this case in the Claims Process Order,

requires general creditor claimants to "[a]ttach redacted copies of any documents that support the

claim."  (Claim Form at 1.)  Furthermore, instructions included with the Claim Form under the

heading "Items to be completed in Proof of Claim form" required creditors to "[a]ttach to [the]

proof of claim form redacted copies documenting the existence of the debt and of any lien

securing the debt."  (Claim Form at 2.)  The Claim Form also instructed claimants to explain the

absence of documentation "[i]f the documents are not available."  (Claim Form at 1.)  The

Trustee's website allowed claimants filing electronically to upload documents as part of their

claim submission and thereby comply with the instructions to include supporting documentation set forth in the Claim Form. The Claims Process Order also put claimants on notice that they should submit supporting documentation with their claims.

11.     On November 15, 2012, the Court entered the General Creditor Claim Objection Procedures Order, which authorizes the Trustee, among other things, to file omnibus objections to no more than 200 general creditor claims at a time, on various grounds including those set forth in Bankruptcy Rule 3007(d) and, additionally, on the ground that the claims "do not include sufficient documentation to ascertain the validity of the Claim." (General Creditor Claim Objection Procedures Order at 2.)

## THE CLAIMS SHOULD BE DISALLOWED AND EXPUNGED

12.     A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Peter J. Solomon Co. v. Oneida Ltd.*, No. 09 Civ. 2229 (DC), 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); *In re Adelphia Commc'ns Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000). Moreover, section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).

### A.     The Claims Should Be Disallowed and Expunged to the Extent They Claim Indemnification

#### 1.     The Claims Do Not Include Sufficient Documentation to Ascertain the Validity of Their Claims for Indemnification

13.     Bankruptcy Rule 3001(c)(1) requires that, "when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim."  Fed. R. Bankr. P. 3001(c)(1).  Claims filed in accordance with the rules "shall constitute prima facie evidence of the validity and amount of the claim."  Fed. R. Bankr. P. 3001(f); *see In re Oneida Ltd.*, 400 B.R. at 389; *see also In re MF Global Holdings Ltd.*, No. 11-15059 (MG), 2012 WL 5499847, at *3 (Bankr. S.D.N.Y. Nov. 13, 2012).  If a claim fails to comply with the requirements of Bankruptcy Rule 3001, it is not entitled to prima facie validity.  *Ashford v. Consol. Pioneer Mortg. (In re Consol. Pioneer Mortg.)*, 178 B.R. 222, 226-27 (B.A.P. 9th Cir. 1995) (holding that since the claimants failed to comply with Rule 3001(c), their claim could not constitute prima facie evidence of validity under Rule 3001(f)), *aff'd*, 91 F.3d 151 (9th Cir. 1996).  Further, this Court and others in the Second Circuit have held that "claims can be disallowed for failure to support the claim with sufficient evidence . . . because absent adequate documentation, the proof of claim is not sufficient for the objector to concede the validity of a claim."  *In re Minbatiwalla*, 424 B.R. 104, 119 (Bankr. S.D.N.Y. 2010).

14.     Each of the Claims contains a nearly identical claim for indemnification:

> [Claimant] (the "Claimant") is filing this proof of claim as a general unsecured creditor, for contingent, unliquidated claims for indemnification (of, *inter alia*, expenses (including attorneys' fees), judgments, fines, and amounts paid in settlement), advancement of defense costs and investment losses ("Claims"), including without limitation related to or arising out of any litigation commenced against Claimant that is now pending or may be commenced, pursuant to Article VII of the Restated Certificate of Incorporation of Lehman Brothers Inc. (as amended) (the "Certificate of Incorporation").

(Proof of Claim No. 5813, Attachment ¶ 1, attached as <u>Exhibit 1</u> to the Declaration of Jordan E.

Pace, annexed hereto as <u>Exhibit B</u> (the "<u>Pace Decl.</u>").)  Each Claim attaches LBI's Certificate of

Incorporation and related filings with the Delaware Secretary of State.  The proofs of claim

provide no detail or documentation with respect to the existence, origin, or amount of any

defense costs or payments or the identity or nature of any litigation underlying the defense costs

or payments.

15.    None of the Claimants has attempted to amend or supplement their respective

proofs of claim at any point over the past five years.  The Trustee's counsel sent letters to each of

the Claimants or their counsel requesting additional information and documentation, and giving

each Claimant a fourteen-day deadline to respond.  None of the Claimants submitted any further

information or documentation by the deadline or in the interim since the expiration of the

deadline.

16.    The Claims lack information necessary to determine the validity of the claims for

indemnification and the Claimants have failed to provide sufficient information or

documentation.  The Trustee cannot, therefore, determine even the threshold question of whether

any of the Claimants has actually paid any defense costs or payments for which they may be

entitled to indemnification or advancement (assuming numerous other conditions precedent are

satisfied).  Indeed, the Claimants have not identified any action or proceeding that has the

potential to give rise to an obligation on the part of LBI to indemnify or advance defense costs or

payments to any of the Claimants.[3]  Accordingly, the Trustee requests that the Court disallow

and expunge the Claims to the extent they claim indemnification.

---

3.  None of the Claimants is a party to the actions consolidated before Judge Kaplan under the caption *In re
Lehman Brothers Securities and ERISA Litigation*, No. 09-MD-2017 (LAK) (S.D.N.Y.) (the "<u>Lehman
Securities MDL</u>").

### 2. The Claims Appear to Assert Contingent Claims for Reimbursement to the Extent They Claim Indemnification

17. As the claims themselves state, the Claims were "contingent" when filed. Because none of the Claimants has submitted any documentation to show otherwise, it appears that their claims are still contingent. Section 502(e)(1)(B) of the Bankruptcy Code mandates the disallowance of "any claim for reimbursement or contribution of an entity that is liable with the debtor . . . to the extent that . . . such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance." 11 U.S.C. § 502(e)(1)(B).

18. Mandatory disallowance under section 502(e)(1)(B) applies when: (i) the claim seeks "reimbursement or contribution"; (ii) the claimant is "liable with the debtor" on the claims in the underlying action; and (iii) the claim is "contingent at the time of its allowance or disallowance." *In re Drexel Burnham Lambert Grp. Inc.*, 148 B.R. 982, 985 (Bankr. S.D.N.Y. 1992) (hereinafter "*Drexel II*"); *see also In re GCO Servs., LLC*, 324 B.R. 459, 465 (Bankr. S.D.N.Y. 2005). Applying this test, both the District Court and this Court have disallowed claims for indemnification of defense costs and payments from officers in previous bankruptcy proceedings. *See generally Sorenson v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 146 B.R. 92, 95-97 (S.D.N.Y. 1992) (hereinafter "*Drexel I*"); *In re Wedtech Corp.*, 85 B.R. 285 (Bankr. S.D.N.Y. 1988) (hereinafter "*Wedtech I*").

19. The Claims expressly seek indemnification of defense costs and payments. "Because 'the concept of reimbursement includes indemnity,' any claims for indemnification also fall within the scope of the first prong of § 502(e)(1)(B)." *In re GCO Servs., LLC*, 324 B.R. at 465 (quoting *Wedtech I*, 85 B.R. at 289).

20. Regarding the second prong, "[t]he proper standard for determining if the claimant is liable with the debtor is whether 'the causes of action in the underlying lawsuit assert

claims upon which, if proven, the debtor could be liable but for the automatic stay.'"  *Drexel II*,

148 B.R. at 986 (quoting *In re Wedtech Corp.*, 87 B.R. 279, 284 (Bankr. S.D.N.Y. 1988)).  Since

none of the Claimants has indicated what litigation or litigations underlie their claims, it is

unclear what causes of action have been asserted against the Claimants.  Nonetheless, Article VII

of LBI's Certificate of Incorporation only applies to actions brought against an individual "by

reason of the fact that he is or was a director, officer, employee or agent" of LBI.  (Cert. of

Incorp. of Lehman Bros. Inc. art. VII, ¶ 1, attached as <u>Exhibit 2</u> to the Pace Decl.)  In such cases,

LBI also would be potentially liable under *respondeat superior* or other vicarious liability

theories, therefore satisfying the co-liability requirement.  *See generally Drexel I*, 146 B.R. at 92

(debtor co-liable for purposes of section 502(e)(1)(B) on *respondeat superior* theory).  LBI also

may be directly co-liable with the Claimants on claims against them in their capacity as LBI

personnel, including securities-related causes of action.  LBI therefore would be potentially co-

liable with the Claimants on any claims falling within the Article VII indemnification provision.

21.    Finally, "[a] claim is contingent where it 'has not yet accrued and . . . is dependent

upon some future event that may never happen.'"  *In re GCO Servs., LLC*, 324 B.R. at 466

(quoting *In re Provincetown-Boston Airlines, Inc.*, 72 B.R. 307, 310 (Bankr. M.D. Fla. 1987)).

Without sufficient documentation from the Claimants, there is no indication that any of them has

yet incurred any defense costs or payments, much less paid any judgments or settlements.

Moreover, indemnification under Delaware law requires a court order, success on the merits, or

"a determination that indemnification of the present or former director, officer, employee or

agent is proper in the circumstances because the person has met the applicable standard of

conduct . . . ."  Del. Code tit. 8, § 145(d); *see also* Cert. of Incorp. art. VII ¶ 1 (applying

Delaware law to indemnification rights.)  None of the Claimants has established any of these

prerequisites, leaving their claims against LBI unaccrued and thus contingent.  *See Drexel I*, 146

B.R. at 97 (disallowing claim because "Appellant's claim for defense costs arises out of the

underlying lawsuit against the claimant, and the debtor's liability for these defense costs is

contingent on findings of good faith that must be made in the underlying lawsuit").  Accordingly,

because the Claimants have not shown that their claims are not contingent, the Trustee requests

that the Court disallow and expunge the Claims to the extent they claim indemnification.[4]

### B. LBI Is Not Liable to the Claimants for the Funds Claimed In the Claims

22.     Each of the Claims also includes a claim for investment losses related to one or

more of the Funds.  (*See* Pace Decl. Ex. 1 Attachment ¶¶ 1-2.)  The Funds are:  (i) Lehman

Brothers Real Estate Partners, L.P. ("LBREP I"); (ii) Lehman Brothers Real Estate Partners II,

L.P. ("LBREP II"); (iii) Lehman Brothers Real Estate Partners III, L.P. ("LBREP III");

(iv) Lehman Brothers Real Estate Mezzanine Partners, L.P. ("LBREMP I"); (v) Lehman

Brothers Real Estate Mezzanine Partners II, L.P. ("LBREMP II"); and (vi) Lehman Brothers

Archstone Associates, L.P. ("Archstone").[5]

23.     As described in the declaration of Timothy Hurley, a Principal of Deloitte

Transactions and Business Analytics LLP, annexed hereto as Exhibit C, the Trustee's

professionals analyzed the Claims, certain information from the LBI general claims register as

maintained by the Trustee's claims agent, certain documents relating to the Funds from the

---

4.  Even if any of the Claims could be substantiated and were no longer contingent, they may be subject to mandatory subordination under section 510(b) of the Bankruptcy Code to the extent they seek indemnification of defense costs or payments related to any action arising out of the purchase or sale of the securities of LBI or its affiliates.  *In re Mid-Am. Waste Sys, Inc.*, 228 B.R. 816, 824 (Bankr. D. Del. 1999) (Congress intended "to subordinate the indemnification claims of officers, directors, and underwriters for both liability and expenses incurred in connection with the pursuit of claims for rescission or damages by purchasers or sellers of the debtor's securities").

5.  Lehman Brothers Archstone Associates, L.P., which is one of the Funds referenced in the Claims, is a different entity from Archstone Trust (formerly known as Archstone-Smith Operating Trust).

books and records of the LBI estate, and documents available to the public filed with the SEC as applicable to the securities and Funds identified in the Claim.  Based on this analysis, the Trustee has determined that LBI is not liable for the investment loss claims in the Claims.  The Funds are corporate entities separate from LBI and are not debtors in the SIPA Proceeding.  There is no indication that LBI is a general partner in any of the Funds.  An interest in a non-debtor Fund does not create a claim against or a right to payment from the LBI estate.

24.    Accordingly, the Trustee requests that the Court disallow and expunge the Claims in their entirety.

## **RESERVATION OF RIGHTS**

25.    The Claims may be objectionable on a number of additional grounds.  The Trustee reserves all rights to object on any other basis to any Claim or any portion of any Claim for which the Court does not grant the relief requested herein.  The Trustee further reserves all rights to seek other relief, including subordination pursuant to section 510 of the Bankruptcy Code.

## **NOTICE**

26.    Notice of this Two Hundred Thirty-Ninth Omnibus Objection to General Creditor Claims has been provided to:  (i) each claimant listed on Exhibit A via first-class mail; and (ii) the list of parties requesting notice of pleadings in accordance with the Court's Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(a) and 9007 Implementing Certain Notice and Case Management Procedures and Related Relief entered by the Court on July 13, 2010 (ECF No. 3466), and will be immediately available for inspection upon filing with the Court  at the Trustee's website, www.lehmantrustee.com.  The Trustee submits that no other or further notice need be provided.

## NO PRIOR RELIEF REQUESTED

27.     No previous request for the relief requested herein has been made by the Trustee

to this or any other Court.

## CONCLUSION

28.     For the reasons stated herein, the Trustee respectfully requests entry of an order

granting the relief requested herein and such other and further relief as is just.


Dated: New York, New York
       June 4, 2014

                                        HUGHES HUBBARD & REED LLP


                                        By: /s/ James B. Kobak, Jr.
                                           James B. Kobak, Jr.
                                           Christopher K. Kiplok
                                           Robert B. Funkhouser
                                           Meaghan C. Gragg
                                           Jordan E. Pace
                                        One Battery Park Plaza
                                        New York, New York 10004
                                        Telephone: (212) 837-6000
                                        Facsimile:  (212) 422-4726
                                        E-mail: kobak@hugheshubbard.com

                                        *Attorneys for James W. Giddens,*
                                        *Trustee for the SIPA Liquidation of*
                                        *Lehman Brothers Inc.*

**EXHIBIT A**

# IN RE LEHMAN BROTHERS INC., CASE NO: 08-01420 (SCC) SIPA

## TWO HUNDRED THIRTY-NINTH OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS:

### EXHIBIT A - CLAIMS

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | TRUSTEE'S REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|
| 1 | COHEN, KENNETH<br>ATTN: GEORGE B. SOUTH III<br>DLA PIPER LLP (USA)<br>1251 AVENUE OF THE AMERICAS, 25TH FLOOR<br>NEW YORK, NY  10020-1104 | 5813 | 6/1/2009 | $10,950.00 | CLAIM LACKS SUFFICIENT DOCUMENTATION. CLAIM IS A CONTINGENT CLAIM FOR REIMBURSEMENT.<br><br>THERE IS NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI.  THE PARTNERSHIP FUND INTERESTS CLAIMED REPRESENT INTERESTS IN A CORPORATE ENTITY OR ENTITIES THAT ARE NOT DEBTORS IN THIS SIPA PROCEEDING.  LBI IS NOT A GENERAL PARTNER IN THE PARTNERSHIP FUND OR FUNDS REFERENCED IN THE CLAIM. |
| 2 | HUGHSON, PAUL<br>ATTN: GEORGE B. SOUTH III<br>DLA PIPER LLP (USA)<br>1251 AVENUE OF THE AMERICAS, 25TH FLOOR<br>NEW YORK, NY  10020-1104 | 5814 | 6/1/2009 | $10,950.00 | CLAIM LACKS SUFFICIENT DOCUMENTATION. CLAIM IS A CONTINGENT CLAIM FOR REIMBURSEMENT.<br><br>THERE IS NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI.  THE PARTNERSHIP FUND INTERESTS CLAIMED REPRESENT INTERESTS IN A CORPORATE ENTITY OR ENTITIES THAT ARE NOT DEBTORS IN THIS SIPA PROCEEDING.  LBI IS NOT A GENERAL PARTNER IN THE PARTNERSHIP FUND OR FUNDS REFERENCED IN THE CLAIM. |

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | TRUSTEE'S REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|
| 3 | KRAVETZ, LARRY J.<br>181 HAVILAND ROAD<br>STAMFORD, CT 06903 | 5974 | 6/1/2009 | $10,950.00 | CLAIM LACKS SUFFICIENT DOCUMENTATION. CLAIM IS A CONTINGENT CLAIM FOR REIMBURSEMENT.<br><br>THERE IS NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI. THE PARTNERSHIP FUND INTERESTS CLAIMED REPRESENT INTERESTS IN A CORPORATE ENTITY OR ENTITIES THAT ARE NOT DEBTORS IN THIS SIPA PROCEEDING. LBI IS NOT A GENERAL PARTNER IN THE PARTNERSHIP FUND OR FUNDS REFERENCED IN THE CLAIM. |
| | Total | | | $32,850.00 | |

\* Claim includes unspecified amounts (i.e., amounts not specified by the claimant, amounts listed in a foreign currency, unliquidated amounts and/or amounts listed as "unknown", "$0.00", "unascertainable", "undetermined", or where no dollar amounts were entered in the spaces provided on the proof of claim form).

**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

          LEHMAN BROTHERS INC.,

                     Debtor.

Case No. 08-01420 (SCC) SIPA

### DECLARATION OF JORDAN E. PACE IN SUPPORT
### OF THE TRUSTEE'S TWO HUNDRED THIRTY-NINTH
### <u>OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS</u>

Pursuant to 28 U.S.C. § 1746, I, Jordan E. Pace, hereby declare as follows:

1.      I am an attorney duly admitted to practice in this Court and an associate at the law firm of Hughes Hubbard & Reed LLP, attorneys for James W. Giddens, trustee for the SIPA liquidation of Lehman Brothers Inc.  I submit this declaration in support of the Trustee's two hundred thirty-ninth omnibus objection to general creditor claims (the "<u>Objection</u>").

2.      Attached hereto as Exhibit 1 is a true and correct copy of proof of claim number 5813 that was filed in this matter on behalf of Kenneth Cohen.

3.      Attached hereto as Exhibit 2 is a true and correct copy of the Certificate of Incorporation of Lehman Brothers Inc. that was attached to each proof of claim that is subject to the Objection.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 4, 2014.

                                    /s/ Jordan E. Pace
                                     Jordan E. Pace

**EXHIBIT 1**

**Filed: USBC - Southern District of New York
SIPC v. Lehman Brothers Inc.
08-01420 (JMP)**

RECEIVED

JUN 0 1 2009

LEGAL SERVICES

**Bankruptcy Claim #**                    **000005813**

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT   Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Lehman Brothers Inc. | Case Number: 08-1420 (JMP) SIPA |
|---|---|

**NOTE:** *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property): Mr. Kenneth Cohen | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|

Name and address where notices should be sent:

Mr. Jeremy Johnson
DLA Piper LLP (US), 1251 Avenue of the Americas, 25th Floor
New York, NY 10020-1104

Telephone number:
(212) 335-4762

Court Claim Number:_____
(If known)

Filed on:_____

Name and address where payment should be sent (if different from above):

Mr. Kenneth Cohen
50 Grosvenor Road
Short Hills, NJ 07078

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:** $_____ contingent / unliquidated

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** indemnification, advancement of defense costs, and investment losses
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

    **3a. Debtor may have scheduled account as:** _____
    (See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
**Describe:**

**Value of Property:** $_____  **Annual Interest Rate** _____ %

**Amount of arrearage and other charges as of time case filed included in secured claim,
if any:** $_____  **Basis for perfection:** _____

**Amount of Secured Claim:** $_____  **Amount Unsecured:** $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☑ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ 10,950.00

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 05/29/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY

JUN – 1 2009 |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B 10 (Official Form 10) (12/08) – Cont.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

## _____DEFINITIONS_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10)

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## _____INFORMATION_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

## ADDENDUM TO PROOF OF CLAIM

## LEHMAN BROTHERS INC., Case No. 08-1420 (JMP) SIPA

1.      Mr. Kenneth Cohen (the "Claimant") is filing this proof of claim as a general unsecured creditor, for contingent, unliquidated claims for indemnification (of, *inter alia*, expenses (including attorneys' fees), judgments, fines, and amounts paid in settlement), advancement of defense costs and investment losses ("Claims"), including without limitation related to or arising out of any litigation commenced against Claimant that is now pending or may be commenced, pursuant to Article VII of the Restated Certificate of Incorporation of Lehman Brothers Inc. (as amended) (the "Certificate of Incorporation").[1]  In addition, there may be other documentation not currently available to the Claimant that will further support this Claim.

2.      Supporting documentation regarding the investment losses the Claimant has incurred are attached as Exhibit "B".  A portion of the investment losses may be entitled to priority as claims for wages, salaries, or commissions earned within 180 days before the earlier of the filing of the bankruptcy petition or cessation of debtor's business pursuant to 11 U.S.C. §507 (a)(4).

3.      These Claims are general unsecured claims.  Claimant reserves the right to amend or supplement this proof of claim in any respect, to fix or liquidate any Claims stated herein, to specify and quantify expenses or other charges or Claims incurred by Claimant, to assert any additional claim for priority, and to file additional proofs of claim for additional claims.

---

[1]      A copy of, *inter alia*, the Restated Certificate of Incorporation of Lehman Brothers Inc. (as amended) is annexed hereto as Exhibit "A" and is incorporated herein by reference.

4.    The execution and filing of this proof of claim is not a waiver of any of Claimant's rights including, without limitation, the right to move to withdraw the reference with respect to the subject matter of these Claims or otherwise, and any right to trial by jury that Claimant may have in any civil proceeding arising in or related to this case, nor is it a consent to jurisdiction of this or any court except with respect to the allowance of these Claims asserted herein.

**Exhibit A**

# Delaware

PAGE 1

## The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS FILED FROM AND INCLUDING THE RESTATED CERTIFICATE OR A MERGER WITH A RESTATED CERTIFICATE ATTACHED OF "LEHMAN BROTHERS INC." AS RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

RESTATED CERTIFICATE, CHANGING ITS NAME FROM "SHEARSON LOEB RHOADES INC." TO "SHEARSON/AMERICAN EXPRESS INC.", FILED THE THIRD DAY OF SEPTEMBER, A.D. 1981, AT 9 O'CLOCK A.M.

CERTIFICATE OF MERGER, FILED THE TWENTY-THIRD DAY OF MARCH, A.D. 1982, AT 9:20 O'CLOCK A.M.

CERTIFICATE OF MERGER, FILED THE FOURTH DAY OF JUNE, A.D. 1982, AT 1:15 O'CLOCK P.M.

CERTIFICATE OF MERGER, FILED THE SEVENTH DAY OF OCTOBER, A.D. 1983, AT 4 O'CLOCK P.M.

CERTIFICATE OF AMENDMENT, CHANGING ITS NAME FROM "SHEARSON/AMERICAN EXPRESS INC." TO "SHEARSON LEHMAN/AMERICAN EXPRESS INC.", FILED THE ELEVENTH DAY OF MAY, A.D. 1984, AT 1 O'CLOCK P.M.

CERTIFICATE OF OWNERSHIP, FILED THE TWENTY-EIGHTH DAY OF



0620706  8100X

071013719

Harriet Smith Windsor
Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 5997392

DATE: 09-13-07

# Delaware

**PAGE  2**

## The First State

DECEMBER, A.D. 1984, AT 10 O'CLOCK A.M.

CERTIFICATE OF OWNERSHIP, FILED THE THIRTY-FIRST DAY OF JANUARY, A.D. 1985, AT 10 O'CLOCK A.M.

CERTIFICATE OF AMENDMENT, CHANGING ITS NAME FROM "SHEARSON LEHMAN/AMERICAN EXPRESS INC." TO "SHEARSON LEHMAN BROTHERS INC.", FILED THE FIFTEENTH DAY OF MARCH, A.D. 1985, AT 10 O'CLOCK A.M.

CERTIFICATE OF OWNERSHIP, FILED THE THIRTIETH DAY OF MAY, A.D. 1985, AT 10 O'CLOCK A.M.

CERTIFICATE OF MERGER, FILED THE ELEVENTH DAY OF JULY, A.D. 1986, AT 11 O'CLOCK A.M.

CERTIFICATE OF OWNERSHIP, FILED THE TWENTY-FOURTH DAY OF DECEMBER, A.D. 1986, AT 10 O'CLOCK A.M.

CERTIFICATE OF AMENDMENT, FILED THE FIFTEENTH DAY OF OCTOBER, A.D. 1987, AT 10 O'CLOCK A.M.

CERTIFICATE OF AMENDMENT, CHANGING ITS NAME FROM "SHEARSON LEHMAN BROTHERS INC." TO "SHEARSON LEHMAN HUTTON INC.", FILED THE TWENTY-NINTH DAY OF JANUARY, A.D. 1988, AT 10 O'CLOCK A.M.

CERTIFICATE OF MERGER, FILED THE SIXTH DAY OF APRIL, A.D. 1988, AT 10 O'CLOCK A.M.

0620706  8100X

071013719

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

**AUTHENTICATION: 5997392**

**DATE: 09-13-07**

# Delaware

PAGE 3

## The First State

CERTIFICATE OF OWNERSHIP, FILED THE TWENTY-SECOND DAY OF JUNE, A.D. 1989, AT 10 O'CLOCK A.M.

CERTIFICATE OF OWNERSHIP, FILED THE SECOND DAY OF OCTOBER, A.D. 1989, AT 8:30 O'CLOCK A.M.

CERTIFICATE OF AMENDMENT, CHANGING ITS NAME FROM "SHEARSON LEHMAN HUTTON INC." TO "SHEARSON LEHMAN BROTHERS INC.", FILED THE FIRST DAY OF AUGUST, A.D. 1990, AT 8:30 O'CLOCK A.M.

CERTIFICATE OF AMENDMENT, CHANGING ITS NAME FROM "SHEARSON LEHMAN BROTHERS INC." TO "LEHMAN BROTHERS INC.", FILED THE SECOND DAY OF AUGUST, A.D. 1993, AT 8:30 O'CLOCK A.M.

CERTIFICATE OF MERGER, FILED THE TWENTY-SEVENTH DAY OF MAY, A.D. 1994, AT 10 O'CLOCK A.M.

CERTIFICATE OF OWNERSHIP, FILED THE THIRTY-FIRST DAY OF AUGUST, A.D. 1995, AT 10 O'CLOCK A.M.

CERTIFICATE OF CHANGE OF REGISTERED AGENT, FILED THE FOURTEENTH DAY OF MARCH, A.D. 1996, AT 9 O'CLOCK A.M.

CERTIFICATE OF DESIGNATION, FILED THE THIRTIETH DAY OF APRIL, A.D. 1996, AT 9 O'CLOCK A.M.



0620706 8100X

071013719

Harriet Smith Windsor
Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 5997392

DATE: 09-13-07

FILED

SEP 3 1981

*[signature]*
SECRETARY OF STATE

## RESTATED CERTIFICATE OF INCORPORATION

### OF

### SHEARSON LOEB RHOADES INC.

#### Under Section 245 of the Delaware General Corporation Law

We, Sanford I. Weill, Chairman of the Board, and Barbara C. Kullen, Secretary, of Shearson Loeb Rhoades Inc., a corporation existing under the laws of the State of Delaware (the "Corporation"), do hereby certify as follows:

FIRST: That the Corporation was originally incorporated under the name Carter, Berlind & Weill, Inc. on January 21, 1965.

SECOND: That the amendments to the Corporation's Certificate of Incorporation, as heretofore restated and amended and supplemented, effected by this Certificate are as follows:

1. To change the name of the Corporation to Shearson/American Express Inc.

2. To reduce the authorized capital stock of the Corporation.

3. To eliminate the right and option of the Corporation to purchase shares of its Common Stock acquired by employees upon the exercise of options.

4. To empower the Board of Directors of the Corporation to determine the net book value of shares of Common Stock whenever the Corporation elects to issue Preferred Stock in exchange for shares of Common Stock held by an "approved person" or a "parent" which ceases to qualify as such.

5. To provide that dividends may not be declared which would impair capital.

6. To omit the names and addresses of incorporators.

7. To eliminate, as duplicative of statutory law, provisions to the effect that (a) the Corporation is to have perpetual existence, (b) stockholders will not be subject to the payment of corporate debts, and (c) no preemptive rights exist.

8. To conform the provisions relating to indemnification and transactions between the Corporation and its officers and directors to the Delaware General Corporation Law as currently in effect.

9. To provide that the election of directors need not be by ballot.

THIRD: That the amendments and the restatement of the Certificate of Incorporation, as heretofore restated and amended and supplemented, have been duly adopted in accordance with the provisions of Sections 242 and 245 of the General Corporation Law of the State of Delaware.

FOURTH: That the text of the Certificate of Incorporation of the Corporation, as heretofore restated and amended and supplemented, is hereby restated, as further amended by this Certificate, to read in full as follows:



# RESTATED CERTIFICATE OF INCORPORATION

## OF

## SHEARSON/AMERICAN EXPRESS INC.

Pursuant to the General Corporation Law of the State of Delaware

### ARTICLE I

#### NAME

The name of the corporation (hereinafter referred to as the "Corporation") is:

SHEARSON/AMERICAN EXPRESS INC.

### ARTICLE II

#### REGISTERED OFFICE AND REGISTERED AGENT

The registered office of the Corporation in the State of Delaware is located at No. 100 West Tenth Street, in the City of Wilmington, County of New Castle. The name and address of its registered agent is The Corporation Trust Company, No. 100 West Tenth Street, Wilmington, Delaware 19801.

### ARTICLE III

#### CORPORATE PURPOSES AND POWERS

The nature of the business of the Corporation and the objects and purposes to be transacted, promoted or carried on by it are:

(a) To engage in the securities business, including each and every field, portion and aspect thereof, in any and all capacities whatsoever. As used in this certificate the term "securities" shall include bonds, debentures, notes, bills, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts, certificates of interest or participations ir any profit-sharing agreement, collateral trust certificates, pre-organization certificates or subscriptions, investment contracts, voting trust certificates, fractional undivided interests in oil, gas or other mineral rights, certificates of deposit or certificates of interest or participation in, temporary or interim certificates for, receipts for, guarantees of, or warrants or rights to subscribe to or purchase, any of the foregoing, or any other instruments or interests in the nature of securities of any kind whatsoever, issued or created by any person or public authority; the term "person" shall include any person, partnership, firm, corporation, company, joint stock company, syndicate, association, trust or other business organization, domestic or foreign; the term "public authority" shall include the United States of America and any other country or nation and any state, territory, province, dominion, protectorate, possession, colony, dependency, municipality, district, or other political subdivision, branch, agency or instrumentality thereof; and the term "issuer" shall include any person or public authority issuing, creating or responsible for any securities.

(b) To act as an underwriter, broker, trader or investor in or with respect to securities.

(c) To purchase, subscribe for, acquire, hold, own, lend, sell, exchange, assign, transfer, mortgage, pledge, hypothecate, guarantee, deal in and otherwise effect any and all transactions, of any kind, character or description whatsoever, in or with respect to securities.

(d) To hold as custodian, nominee or otherwise securities belonging to others, and to exercise while the holder or owner of securities all the rights, powers and privileges of ownership, including the right to vote thereon and give consents with respect thereto, whether by proxy or otherwise.

(e) To do any and all acts and things necessary, advisable or desirable for the preservation, protection, improvement and enhancement in value of any securities held or owned by the Corporation or in which the Corporation is interested, and to aid by loan, subsidy, guaranty or otherwise the issuers of such securities or any other person in which the Corporation is interested.

(f) To render advisory, investigatory, supervisory, investment, managerial or other services to any person or public authority, whether or not in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person or public authority or in connection with the issuance, underwriting, sale or distribution of any securities, and to act as an investment advisor, pursuant to an investment advisory contract or otherwise, to any investment company or common trust fund or to any other person or public authority.

(g) To cause, and to promote or take charge of, the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person or public authority.

(h) To maintain with and for customers accounts with respect to securities and/or commodities of any kind, character or description whatsoever, including margin accounts, and to guarantee the signatures of customers and others.

(i) To make and issue any and all trust, depositary, interim and other receipts and certificates of deposit for any securities or interest therein.

(j) To acquire and hold membership in, or otherwise secure membership or trading privileges on, any securities exchange, board of trade, commodities exchange; clearing corporation or association, or similar institutions located within or without the United States, and to acquire and hold membership in any association of brokers, securities dealers or commodities dealers, or in any other organization or association.

(k) To purchase or otherwise acquire, borrow, hold, own, lend, mortgage, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal and real property of every kind, character and description whatsoever, and any interests therein or instruments evidencing rights to acquire such interests, either as principal or as a factor or broker, or as commercial, sales, business, or financial agent or representative, general or special, or in any other capacity whatsoever for the account of any person or public authority, and in connection therewith or otherwise to guarantee any and all obligations relating to transactions made on any commodities exchange, board of trade or similar institution.

(l) To buy, sell and deal in foreign exchange and in notes, open accounts and other similar evidences of debt.

(m) To act in any capacity whatsoever as financial, commercial or business agent, factor, broker or representative, general or special, for any person or public authority.

(n) To engage in any business or transaction relative to petroleum, petroleum products, gas and other minerals and mineral products, and to purchase or otherwise acquire, hold, own, lease, sell or otherwise dispose of, exercise, exchange, mortgage, pledge, explicit, drill upon, deal in and otherwise turn to account any and all lands and interests in lands in, on or under which petroleum, gas and other minerals are or may be located and any and all interests in petroleum, petroleum products, gas and other minerals and mineral products.

(o) To transact a general real estate agency and brokerage business, including acting as agent, broker or attorney in fact for any person or public authority in sale and leaseback transactions and generally in buying, selling and dealing in real property and any interests and estates therein, on commission or otherwise; renting and managing of estates; making, arranging for or obtaining loans

2

upon such property; and supervising, managing and protecting such property and all loans, interests in and claims affecting the same.

(p) To engage in any commercial, mercantile, manufacturing, industrial or trading business of any kind, character or description whatsoever, and to do all things incidental to such business.

(q) To make, enter into and carry out any arrangements with any person or public authority; to obtain therefrom or otherwise to acquire, whether by purchase, lease, assignment or otherwise, any powers, rights, privileges, immunities, franchises, guaranties, grants and concessions; and to acquire, hold, own, exercise, exploit, dispose of or realize upon the same, all in connection with any business, object or purpose of the Corporation.

(r) To cause or allow the legal title to, or any legal or equitable interest in, any security or any other real or personal property of the Corporation to remain or be vested or registered in the name of any other person, whether upon trust for or as agent or nominee of the Corporation or otherwise for its account or benefit.

(s) To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority in the carrying on of any business, object or purpose of the Corporation.

(t) To acquire all or any part of the goodwill, rights, properties and business of any person engaged in any business, object or purpose similar to any business, object or purpose which the Corporation is authorized to transact, promote or carry on, to pay for the same in cash or in any security or securities issued by the Corporation or any other person or otherwise; to hold, conduct, utilize and in any manner dispose of the whole or any part of the goodwill, rights, properties or business so acquired; and to assume in connection therewith any liabilities or obligations of such person.

(u) To borrow money for any business, object or purpose of the Corporation from time to time without limit as to amount; to draw, make, accept, endorse, execute and issue promissory notes, drafts, bills of exchange, warrants, bonds, debentures and other negotiable or non-negotiable instruments and evidences of indebtedness; to secure the payment thereof and of the interest thereon by any mortgage on, or any pledge, conveyance or assignment in trust of, the whole or any part of the assets of the Corporation, real, personal or mixed, including contract rights, whether at the time owned or thereafter acquired; and to sell, assign, mortgage, pledge or otherwise dispose of any securities issued by the Corporation for any business, object or purpose of the Corporation. To lend to others any of its money or other property, with or without security, and to guarantee the loans and obligations of others, in each case for any business, object or purpose of the Corporation and from time to time without limit as to amount.

(v) To purchase, hold, sell, transfer, reissue or cancel shares of its own capital stock or any other securities issued by it.

(w) To do everything necessary, proper, advisable or convenient for the accomplishment of any of the purposes or the attainment of any of the objects or the furtherance of any of the powers herein provided for and to do every other act and thing incidental thereto or in connection therewith.

(x) To engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

## ARTICLE IV

### CAPITAL STOCK

*Shares and Classes Authorized.* The aggregate number of shares of capital stock of all classes which the Corporation shall have authority to issue is twenty thousand (20,000) shares, of which ten thousand (10,000) shares are to be Common Stock of the par value of ten cents ($.10) each and ten thousand (10,000) shares are to be Preferred Stock of the par value of ten cents ($.10) each.

3

*Description of Capital Stock.* The voting powers, designations, preferences and relative participating, optional or other special rights, and the qualifications, limitations or restrictions thereof, of the classes of stock of the Corporation which are fixed by this Certificate of Incorporation, and the authority vested in the Board of Directors to fix by resolution or resolutions providing for the issue of Preferred Stock and the voting powers, designations, preferences and relative participating, optional or other special rights, and the qualifications, limitations or restrictions thereof, of the shares of Preferred Stock which are not fixed by the Certificate of Incorporation, are as follows:

## PREFERRED STOCK

1. The Preferred Stock may be issued from time to time in one or more series, each such series to have such distinctive designation or title as may be fixed by the Board of Directors prior to the issuance of any shares thereof. Each such series may differ from every other series already outstanding as may be determined from time to time by the Board of Directors prior to the issuance of any shares thereof, in any or all of the following, but in no other, respects:

(a) The rate of dividend, if any, which the Preferred Stock of any such series shall be entitled to receive, whether the dividends of such series shall be cumulative or non-cumulative and, if such dividends shall be cumulative, the date from which they shall be cumulative.

(b) The right or obligation, if any, of the Corporation to redeem shares of Preferred Stock of any series and the amount per share which the Preferred Stock of any such series shall be entitled to receive in case of the redemption thereof, and the right of the Corporation, if any, to reissue any such shares after the same shall have been redeemed.

(c) The amount per share which the Preferred Stock of any such series shall be entitled to receive in case of the voluntary liquidation, dissolution or winding up of the Corporation, or in case of the involuntary liquidation, dissolution or winding up of the Corporation.

(d) The right, if any, of the holders of Preferred Stock of any such series to convert the same into other classes of stock, and the terms and conditions of such conversion.

(e) The voting power, if any, of the holders of Preferred Stock of any series, and the terms and conditions under which they may exercise such voting power.'

(f) The terms of the sinking fund or fund of a similar nature, if any, to be provided for the Preferred Stock of any such series.

The description and terms of the Preferred Stock of each series in respect of the foregoing particulars shall be fixed and determined by the Board of Directors by appropriate resolution or resolutions at or prior to the time of the authorization of the issue of the original shares of each such series.

2. In case the stated dividends and the amounts payable on liquidation, dissolution or winding up of the Corporation are not paid in full, the stockholders of all series of the Preferred Stock shall share ratably in the payment of dividends, including accumulations, if any, in accordance with the sums which would be payable on such shares if all dividends were declared and paid in full, and in any distribution of assets other than by way of dividends, in accordance with the sums which would be payable on such distribution if all sums payable were discharged and paid in full.

3. The holders of the Preferred Stock shall be entitled to receive, when and as declared by the Board of Directors, out of funds legally available therefor, preferential dividends in cash at, but not exceeding, the annual rate fixed for each particular series. The holders of the Preferred Stock shall not be entitled to receive any dividends thereon other than dividends referred to in this paragraph 3.

4. So long as any of the Preferred Stock remains outstanding, in no event shall any dividend whatever, whether in cash or other property (other than in shares of Common Stock), be paid or declared on the Common Stock by the Corporation unless (a) the full dividends of the Preferred Stock for all past dividend periods from the respective date or dates on which they became cumulative shall have been paid

4

and the full dividend thereon for the then current quarter-yearly dividend period shall have been paid or declared and a sum set apart sufficient for the payment thereof, and (b) if at any time the Corporation is obligated to retire or redeem shares of any series of the Preferred Stock pursuant to a sinking fund or a fund of a similar nature or otherwise, all arrears, if any, in respect of the retirement or redemption of the Preferred Stock of all such series shall have been made good. Subject to the foregoing provisions and not otherwise, such dividends (payable in cash, stock or otherwise) as may be determined by the Board of Directors may be declared and paid on the Common Stock in accordance with paragraph 8 of this Article IV, as the case may be, from time to time out of the remaining funds of the Corporation legally available therefor, and the Preferred Stock shall not be entitled to participate in any such dividend, whether payable in cash, stock or otherwise. No limitations, conditions or restrictions whatever are imposed by the provisions of this paragraph 4 upon the purchase or redemption or other acquisitions by the Corporation of any class or classes of any capital stock of the Corporation.

5. In the event of any liquidation, dissolution or winding up of the Corporation, whether voluntary or involuntary, before any distribution or payment shall be made to the holders of the Common Stock, the holders of the Preferred Stock of each series shall be entitled to be paid in cash the applicable liquidation price per share determined in the manner, or in the amount, fixed at the time of the original authorization of issuance of shares of such respective series, together with a sum, in the case of each share of the Preferred Stock, computed at the annual dividend rate for the series of which the particular share is a part from the date on which dividends on such share became cumulative to the date fixed for such distribution or payment less the aggregate amount of all dividends theretofore and on such distribution or payment date paid thereon. If such payment shall have been made in full to the holders of the Preferred Stock, the remaining assets and funds of the Corporation shall be distributed among the holders of the Common Stock.

6. Notice of every redemption of Preferred Stock at the option of the Board of Directors shall be mailed at least 30 days in advance of the date determined by the Board of Directors for such redemption (herein called the "redemption date") to each holder of shares so to be redeemed at his address as the same shall appear on the books of the Corporation as of the date of mailing such notice. Such notice shall state the redemption date and the class and number of shares to be redeemed. The holder or holders of the shares of such stock to be redeemed shall deliver the certificate or certificates representing such shares, properly endorsed for transfer, to the Corporation at its principal place of business on the redemption date, against payment therefor. Any Federal or State documentary stamp tax payable on the transfer to the Corporation of the shares to be redeemed shall be paid by the Corporation. The shares of such stock to be redeemed shall be selected in such manner as the Board of Directors may determine, it being expressly understood that any such redemption need not be ratable among the holders of any class or classes of the Corporation's capital stock and may be limited to all or part of the shares of one or more classes of the stock held by one or more holders of stock. The Board of Directors shall have full power and authority, subject to the limitations and provisions herein contained, to prescribe the terms and conditions upon which such stock shall be redeemed from time to time. If any notice of redemption shall have been given as aforesaid, and if on or before the redemption date the funds necessary for such redemption shall have been set aside by the Corporation, separate and apart from its other funds, in trust for the pro rata benefit of the holder or holders of the shares so called for redemption, then, from and after the redemption date, notwithstanding that any certificates for shares of stock so called for redemption shall not have been surrendered for cancellation, the shares represented thereby shall not be deemed outstanding, the right to receive any dividends thereon shall cease to accrue from and after the redemption date and all rights of the holder or holders of the shares of stock so called for redemption shall forthwith, after the redemption date, cease and terminate, excepting only the right to receive the amount payable in respect of such redemption but without interest. Any moneys so set aside by the Corporation and unclaimed at the end of five years from the redemption date shall, to the extent permitted by applicable law, revert to the general funds of the Corporation, after which reversion such funds shall become contributions to the capital of the Corporation and the holder or holders of such shares shall have no further claim or right to such funds.

5

## COMMON STOCK

7.  Except as otherwise required by law and except as expressly provided in this Certificate of Incorporation or in any resolution or resolutions adopted by the Board of Directors pursuant to authority expressly vested in it by the foregoing provisions of this Article IV with respect to the Preferred Stock, the holders of the Common Stock (i) shall have the exclusive voting rights for the election of directors and for all other purposes, each holder of Common Stock being entitled to one vote for each share thereof held by such holder except as otherwise required by law, and (ii) shall be entitled to receive dividends declared payable in such property or shares of the capital stock of the Corporation when and as declared by the Board of Directors.

## ARTICLE V

### RESTRICTIONS ON DIVIDENDS AND OTHER PAYMENTS

1.  Notwithstanding any other provision contained herein, the Corporation shall not be required to declare or pay any dividend, or redeem, purchase or make any other payment or distribution in respect of, any share of its capital stock if such declaration, payment, redemption, purchase or other payment or distribution would be contrary to any term or provision then in effect of (i) any constitution or any rule or regulation of any securities or commodities exchange, board of trade, clearing corporation or association or any similar organization of which the Corporation is a member or with which it has trading or other privileges, or (ii) any rule or regulation of the Securities and Exchange Commission, including without limitation Rule 15c3-1 under the Securities Exchange Act of 1934, or of any other governmental body having appropriate authority, or (iii) any evidence of indebtedness of the Corporation or any agreement under or pursuant to which any indebtedness of the Corporation shall be outstanding, or (iv) any applicable law (including without limitation the General Corporation Law of Delaware).

2.  No dividend shall be declared or paid which shall impair the capital of the Corporation nor shall any distribution of assets be made to any holder of the Corporation's capital stock unless the value of the assets of the Corporation remaining after such payment or distribution is at least equal to the aggregate of its debts and liabilities, including capital.

## ARTICLE VI

### RIGHT OF CORPORATION TO EXCHANGE SHARES
### OF PREFERRED STOCK FOR SHARES OF COMMON STOCK

1.  In order to enable the Corporation to qualify for trading privileges or other privileges on any of the various securities exchanges, boards of trade, commodities exchanges, clearing corporations or associations and/or other similar organizations located within or without the United States, whether as a member corporation thereof or otherwise, and to continue so qualified in good standing, and in order to insure that the business of the Corporation will be carried on in a manner consonant with the Corporation's responsibilities to the public as an organization so qualified, all shares of stock of the Corporation shall at all times be held subject to all of the agreements, conditions and restrictions set forth in this Certificate of Incorporation, the provisions of which shall at all times apply equally both to an original holder of shares and to each and every subsequent holder thereof, except as herein specifically otherwise provided, and each holder of shares of stock of the Corporation by the acceptance of a stock certificate representing such shares agrees with the Corporation and with each other holder of shares of the Corporation, in consideration of such agreement of each such other holder, to such agreements, conditions and restrictions, as hereinafter set forth.

2.  Whenever a holder of shares of Common Stock of the Corporation is required to be approved by the constitution or rules of the New York Stock Exchange or any other securities exchange, board of trade, commodities exchange, clearing corporation or association, or similar organization in which the Corporation has membership privileges (collectively referred to as the "Exchange") and such holder fails or ceases to be so approved, the Corporation is hereby authorized at its option to issue shares of Preferred Stock authorized by Article IV in exchange for shares of outstanding Common Stock of the Corporation held by such holder, the Preferred Stock to have a voluntary liquidation preference equal to the aggregate

6

net book value of the shares of Common Stock of the Corporation so exchanged, as determined by the Board of Directors; *provided, however*, that the number of shares of Common Stock so exchanged shall not exceed that number of shares required to reduce such person's ownership of Common Stock below that level at which a holder of Common Stock is required to be approved. Such Preferred Stock shall not have general voting powers and shall not be convertible into Common Stock or other capital stock or securities of the Corporation having general voting powers.

3. Whenever any parent of the Corporation within the meaning of the constitution or rules of the Exchange fails or ceases to satisfy the requirements of the constitution or rules of the Exchange with respect to a parent, the Corporation is hereby authorized at its option to issue shares of its Preferred Stock authorized by Article IV in exchange for shares of outstanding Common Stock of the Corporation held by such parent, the Preferred Stock to have a voluntary liquidation preference equal to the aggregate net book value of the shares of Common Stock of the Corporation so exchanged, as determined by the Board of Directors; *provided, however*, that the number of shares of Common Stock so exchanged shall not exceed that number of shares required to reduce such parent's direct or indirect ownership of such Common Stock below that level which enables such parent to exercise a controlling influence over the management or policies of the Corporation. Such Preferred Stock shall not have general voting powers and shall not be convertible into Common Stock or other capital stock or securities having general voting powers.

4. Whenever shares of Common Stock are to be exchanged as provided in paragraphs 2 and 3 of this Article VI, the Corporation shall forthwith mail by first class registered mail written notice of exchange at least 30 days in advance of the date designated for such exchange (herein called the exchange date) to the holder of shares of Common Stock of the Corporation so to be exchanged at his address as it appears on the books of the Corporation. Such notice shall state the time and place of the exchange and the number of shares of Preferred Stock and Common Stock of the Corporation to be exchanged, and give the designations, preferences and relative, participating, optional or other special rights and qualifications, limitations or restrictions of the Preferred Stock. After the notice of exchange has been given as aforesaid and after the Board of Directors has duly authorized the shares of Preferred Stock to be issued in exchange for the shares of Common Stock of the Corporation, the person who is required to be approved by the Exchange or the parent within the meaning of the constitution and rules of the Exchange, as the case may be, holding such shares of Common Stock of the Corporation shall surrender on the exchange date the certificate or certificates for the shares of Common Stock of the Corporation so required to be exchanged. Notwithstanding that any certificate for shares of Common Stock of the Corporation required to be exchanged has not been surrendered for exchange, such person or parent shall cease to possess after the exchange date any of the rights of holders of Common Stock of the Corporation with respect to such shares called for exchange, except the right to receive the shares of Preferred Stock. Nothing herein shall be deemed to affect the right of any such holder to sell or otherwise dispose of his shares of Common Stock of the Corporation prior to the exchange date and in the event the holder, before the exchange date, sells or otherwise disposes of the number of shares required to be exchanged, the exchange shall not take place.

5. The net book value of any shares of stock of the Corporation exchangeable for Preferred Stock pursuant to the provisions of paragraphs 2 or 3 of this Article VI shall be determined by the Corporation as of the end of the month used by the Corporation for accounting purposes next following the month used by the Corporation for accounting purposes during which the event occurs which gives rise to such right and option of the Corporation, as set forth in paragraph 1 of this Article VI, or as of the close of the fiscal year of the Corporation in which such event occurs, whichever shall occur earlier irrespective of when the Corporation receives actual knowledge of the event giving rise thereto.

## ARTICLE VII

### INDEMNIFICATION

. The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership,

7

joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of *nolo contendere* or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

2.   The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against expenses (including attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Corporation and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of his duty to the Corporation unless and only to the extent that the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which such court shall deem proper.

3.   To the extent that a director, officer, employee or agent of the Corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in paragraphs 1 or 2 of this Article VII or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith.

4.   Any indemnification under paragraph 1 or 2 of this Article VII (unless ordered by a court) shall be made by the Corporation only as authorized in the specific case upon a determination that indemnification of the director, officer, employee or agent is proper in the circumstances because he has met the applicable standard of conduct set forth in paragraph 1 or 2 of this Article VII, as the case may be. Such determination shall be made (1) by the Board of Directors by a majority vote of a quorum consisting of directors who were not parties to such action, suit or proceeding, or (2) if such a quorum is not obtainable, or, even if obtainable a quorum of disinterested directors so directs, by independent legal counsel in a written opinion, or (3) by the stockholders.

5.   Expenses incurred in defending a civil or criminal action, suit or proceeding may be paid by the Corporation in advance of the final disposition of such action, suit or proceeding as authorized by the Board of Directors in the specific case upon receipt of an undertaking by or on behalf of the director, officer, employee or agent to repay such amount unless it shall ultimately be determined that he is entitled to be indemnified by the Corporation as authorized in this Article VII.

6.   The indemnification provided by this Article VII shall not be deemed exclusive of any other rights to which a person seeking indemnification may be entitled under any by-law, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in his official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such person.

7.   The Corporation shall, to the extent authorized by the Board of Directors, purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against him and incurred by him in any such capacity, or arising out of his status as such, whether or not the

8

Corporation would have the power to indemnify him against such liability under the provisions of the Delaware General Corporation Law.

8.   For purposes of this Article VII, references to "the Corporation" shall include, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its directors, officers, and employees or agents, so that any person who is or was a director, officer, employee or agent of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, shall stand in the same position under the provisions of this Article VII with respect to the resulting or surviving corporation as he would have with respect to such constituent corporation if its separate existence had continued.

9.   For purposes of this Article VII, references to "other enterprises" shall include employee benefit plans; references to "fines" shall include any excise taxes assessed on a person with respect to an employee benefit plan; and references to "serving at the request of the Corporation" shall include any service as a director, officer, employee or agent of the corporation which imposes duties on, or involves services by, such director, officer, employee or agent with respect to an employee benefit plan, its participants, or beneficiaries; and a person who acted in good faith and in a manner he reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan shall be deemed to have acted in a manner "not opposed to the best interests of the Corporation" as referred to in this Article VII.

## ARTICLE VIII

### TRANSACTIONS WITH DIRECTORS AND OFFICERS

No contract or transaction between the Corporation and one or more of its directors or officers, or between the Corporation and any other corporation, partnership, association or other organization in which one or more of its directors or officers are directors or officers, or have a financial interest, shall be void or voidable solely for this reason, or solely because the director or officer is present at or participates in the meeting of the board or committee thereof which authorizes the contract or transaction, or solely because his or their votes are counted for such purpose, if (a) the material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the Board of Directors or the committee, and the Board of Directors or the committee in good faith authorizes the contract or transaction by the affirmative votes of a majority of the disinterested directors, even though the disinterested directors be less than a quorum, or (b) the material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the stockholders entitled to vote thereon, and the contract or transaction is specifically approved in good faith by vote of the stockholders, or (c) the contract or transaction is fair as to the Corporation as of the time it is authorized, approved or ratified by the Board of Directors, a committee thereof, or the stockholders.   Common or interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or of a committee which authorizes the contract or transaction.

## ARTICLE IX

### RELIANCE BY DIRECTORS ON REPORTS AND
### CERTIFICATES OF OFFICERS AND OTHERS

A director of the Corporation will not be liable to any person on account of any action undertaken by him as such director or as a member of any committee of the Board of Directors in reliance in good faith upon the existence of any fact or circumstance reported or certified to the Board of Directors of the Corporation or to any committee of said Board, of which he is a member, by any officer of the Corporation or by any independent auditor, engineer or consultant retained or employed as such by the Board of Directors of the Corporation or by such committee.

9

## ARTICLE X

### COMPROMISE OR ARRANGEMENT BETWEEN
### CORPORATION AND ITS CREDITORS OR STOCKHOLDERS

Whenever a compromise or arrangement is proposed between the Corporation and its creditors or any class of creditors and/or between the Corporation and its stockholders or any class of them, any court of equitable jurisdiction within the State of Delaware may, on the application in a summary way of the Corporation or of any creditor or stockholder thereof, or on the application of any receiver or receivers appointed for the Corporation under the provisions of Section 291 of Title 8 of the Delaware Code or on the application of trustees in dissolution or of any receiver or receivers appointed for the Corporation under the provisions of Section 279 of Title 8 of the Delaware Code order a meeting of the creditors or class of creditors, and/or of the stockholders or class of stockholders of the Corporation, as the case may be, to be summoned in such manner as the said court directs. If a majority in number representing three-fourths in value of the creditors or class of creditors, and/or of the stockholders or class of stockholders of the Corporation, as the case may be, agree to any compromise or arrangement and to any reorganization of the Corporation as a consequence of such compromise or arrangement, the said compromise or arrangement and the said reorganization shall, if sanctioned by the court to which the said application has been made, be binding on all the creditors or class of creditors, and/or on all the stockholders or class of stockholders of the Corporation, as the case may be, and also on the Corporation.

## ARTICLE XI

### LOCATION OF BOOKS

The books of the Corporation may be kept, subject to any applicable statutory provision, outside the State of Delaware at such place or places as may be, from time to time, designated by the Board of Directors or in the By-Laws of the Corporation.

## ARTICLE XII

### SUBMISSION OF DISPUTES TO ARBITRATION

So long as the Corporation shall be a member or allied member of the New York Stock Exchange, any dispute with regard to the interpretation or application of the provisions of Article V of this Certificate of Incorporation shall be submitted to arbitration by the New York Stock Exchange in accordance with the customs, rules and regulations of said New York Stock Exchange at the time prevailing, and the decision of such arbitration shall be binding and conclusive upon the parties to any such dispute. If the Corporation shall not be a member or allied member of the New York Stock Exchange, such dispute shall be submitted to arbitration in the City of New York, New York, in accordance with the rules and regulations of the American Arbitration Association.

## ARTICLE XIII

### POWER OF DIRECTORS TO AMEND BY-LAWS

In furtherance and not in limitation of the powers conferred by statute, the Board of Directors of the Corporation is expressly authorized to make, alter, amend or repeal the By-Laws of the Corporation, except as otherwise expressly provided in any By-Laws of the Corporation made by the holders of the capital stock of the Corporation entitled to vote thereon. Any By-Law may be made, altered, amended or repealed by the holders of the capital stock of the Corporation entitled to vote thereon at any annual meeting or at any special meeting called for that purpose.

## ARTICLE XIV

### ELECTION OF DIRECTORS WITHOUT BALLOT

The election of directors need not be by ballot unless the By-Laws of the Corporation so provide.

10

In Witness Whereof, this Restated Certificate of Incorporation has been executed on the 3rd day of September, 1981.

SHEARSON LOEB RHOADES INC.

By ...............................................................

Sanford I. Weill
Chairman of the Board

ATTEST:

Barbara C. Kullen
Secretary

11

CERTIFICATE OF MERGER

MERGING

THE F & M CORPORATION

INTO

SHEARSON/AMERICAN EXPRESS INC.


(Pursuant to Section 251(c) of the Delaware
General Corporation Law)


**FILED**

MAR 23 1982 *9:20AM*

*[signature]* C. Kenton
SECRETARY OF STATE


SHEARSON/AMERICAN EXPRESS INC., a corporation organized and existing under the laws of the State of Delaware, HEREBY CERTIFIES AS FOLLOWS:

FIRST:  The name and state of incorporation of each of the constituent corporations is as follows:

SHEARSON/AMERICAN EXPRESS INC., a
Delaware corporation

and

THE F & M CORPORATION, a Delaware
corporation

SECOND:  A Plan of Reorganization and Agreement of Merger, dated as of March 1, 1982 (the "Merger Agreement"), has been approved, adopted, certified, executed and acknowledged by each of the constituent corporations in accordance with Section 251(c) of the Delaware General Corporation Law.

THIRD:  SHEARSON/AMERICAN EXPRESS INC. shall be the surviving corporation and shall retain the name SHEARSON/ AMERICAN EXPRESS INC.

**00003**

FOURTH:  The Certificate of Incorporation of
SHEARSON/AMERICAN EXPRESS INC. as presently in effect shall
be the Certificate of Incorporation of the surviving corpora-
tion.

FIFTH:  Copies of the Merger Agreement, as exe-
cuted in counterpart, are on file at the principal place of
business of SHEARSON/AMERICAN EXPRESS INC., Two World Trade
Center, New York, New York 10048.

SIXTH:  A copy of the Merger Agreement will be
furnished by SHEARSON/AMERICAN EXPRESS INC., on request and
without cost, to any stockholder of either constitutent
corporation.

Dated:  March 12, 1982

                    SHEARSON/AMERICAN EXPRESS INC.

                    By_____
                         Peter A. Cohen
                         Vice Chairman

ATTEST:

_____
    Barbara C. Kullen
        Secretary

00004            -2-

FILED

JUN 4 1982  1:15 P.M

*Steven C. Kenton*
SECRETARY OF STATE

CERTIFICATE OF MERGER

MERGING

THE ROBINSON-HUMPHREY COMPANY, INC.

INTO

SHEARSON/AMERICAN EXPRESS INC.

(Pursuant to Section 252(c) of the Delaware
General Corporation Law)

SHEARSON/AMERICAN EXPRESS INC., a corporation organized
and existing under the laws of the State of Delaware, HEREBY
CERTIFIES AS FOLLOWS:

FIRST:  The name and state of incorporation of each of
the constituent corporations is as follows:

| NAME | STATE OF INCORPORATION |
|------|------------------------|
| SHEARSON/AMERICAN EXPRESS INC. | Delaware |
| THE ROBINSON-HUMPHREY COMPANY, INC. | Georgia |

SECOND:  An Agreement and Plan of Merger, dated as of
May 12, 1982 (the "Merger Agreement"), has been approved, adopted,
certified, executed and acknowledged by each of the constituent
corporations in accordance with Section 252(c) of the Delaware
General Corporation law.

THIRD:  SHEARSON/AMERICAN EXPRESS INC. shall be the
surviving corporation and shall retain the name SHEARSON/AMERICAN
EXPRESS INC.

C0002

FOURTH:  The certificate of incorporation of SHEARSON/ AMERICAN EXPRESS INC. as presently in effect shall be the certificate of incorporation of the surviving corporation.

FIFTH:  An executed copy of the Merger Agreement is on file at the principal place of business of SHEARSON/AMERICAN EXPRESS INC., Two World Trade Center, New York, New York 10048.

SIXTH:  A copy of the Merger Agreement will be furnished by SHEARSON/AMERICAN EXPRESS INC. on request and without cost  to any stockholder of either constituent corporation.

SEVENTH:  The authorized capital stock of the constituent corporation which is not a corporation of the State of Delaware is as follows:

| Corporation | Class | Number of Shares | Par value per share |
|---|---|---|---|
| THE ROBINSON-HUMPHREY COMPANY, INC. | Voting Common Stock | 1,000,000 | $4.00 |
| | Non-Voting Class A Common Stock | 500,000 | $4.00 |
| | Preferred Stock | 100,000 | $50.00 |

Dated: June 4 , 1982

SHEARSON/AMERICAN EXPRESS INC.

By: _____
Peter A. Cohen
Vice Chairman

ATTEST:

_____
Barbara C. Kullen
Secretary

C0003

-2-

8302800346

FILED
OCT 7 1983

CERTIFICATE OF MERGER

MERGING

DAVIS, SKAGGS & CO., INC.

INTO

SHEARSON/AMERICAN EXPRESS INC.

(Pursuant to Section 251(c) of the Delaware
General Corporation Law)

SHEARSON/AMERICAN EXPRESS INC., a corporation organized and existing under the laws of the State of Delaware, HEREBY CERTIFIES AS FOLLOWS:

FIRST: The name and state of incorporation of each of the constituent corporations is as follows:

SHEARSON/AMERICAN EXPRESS INC.,
a Delaware corporation

and

DAVIS, SKAGGS & CO., INC.,
a Delaware corporation

SECOND: A Plan of Reorganization and Agreement of Merger, dated as of October 1, 1983 (the "Merger Agreement"), has been approved, adopted, certified, executed and acknowledged by each of the constituent corporations in accordance with Section 251(c) of the Delaware General Corporation Law.

THIRD: SHEARSON/AMERICAN EXPRESS INC. shall be the surviving corporation and shall retain the name SHEARSON/AMERICAN EXPRESS INC.

00002

FOURTH:  The Certificate of Incorporation of SHEARSON/AMERICAN EXPRESS INC. as presently in effect shall be the Certificate of Incorporation of the surviving corporation.

FIFTH:  Copies of the Merger Agreement, as executed in counterpart, are on file at the principal place of business of SHEARSON/AMERICAN EXPRESS INC., Two World Trade Center, New York, New York 10048.

SIXTH:  A copy of the Merger Agreement will be furnished by SHEARSON/AMERICAN EXPRESS INC., on request and without cost, to any stockholder of either constituent corporation.

Dated:  October 1, 1983

                              SHEARSON/AMERICAN EXPRESS INC.

                              By: _____
                                     Jeffrey B. Lane
                                     Vice Chairman

ATTEST:

_____
    Barbara C. Kullen
       Secretary

-2-

C0003

72/328052

FILED

MAY 11 19__  1PM

CERTIFICATE OF AMENDMENT TO RESTATED CERTIFICATE
OF INCORPORATION OF SHEARSON/AMERICAN EXPRESS INC.

SHEARSON/AMERICAN EXPRESS INC., a Delaware Corporation
having its registered office at No. 100 West Tenth Street, in
the City of Wilmington, in the County of New Castle (the
"Corporation"), hereby certifies to the Secretary of State of
the State of Delaware that:

FIRST:  Article I of the Restated Certificate of
Incorporation of the Corporation is hereby amended so as to
read in its entirety as follows:

"Name

The name of the corporation (hereinafter referred
to as the "Corporation") is:

SHEARSON LEHMAN/AMERICAN EXPRESS INC."

SECOND:  The Board of Directors of the Corporation,
by requisite vote adopted a resolution which set forth the fore-
going amendment to the Restated Certificate of Incorporation,
in accordance with Section 242 of the General Corporation Law
of the State of Delaware, declaring that the amendment to the
Restated Certificate of Incorporation as proposed was advisable
and directing that it be submitted for action thereon by the
sole stockholder of the Corporation.

THIRD:  The amendment has been consented to and authorized
and approved by the holder of all the issued and outstanding
stock of the Corporation, entitled to vote, by a written consent

00007

given in accordance with the provisions of Section 228 of the
General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, Shearson/American Express Inc.
has caused this Certificate to be signed on this _11th_ day of
May, 1984 in its name and on its behalf by its Chairman of the
Board and attested by its Assistant Secretary, pursuant to
Section 103(a) of the General Corporation Law of the State of
Delaware.

_____
Chairman of the Board

ATTEST: _____
Assistant Secretary

-2-

00008

CERTIFICATE OF OWNERSHIP AND MERGER

MERGING

CHILES, HEIDER & CO., INC.

INTO

SHEARSON LEHMAN/AMERICAN EXPRESS INC.

*****

**FILED**

DEC 28 1984

Shearson Lehman/American Express Inc., a corporation organized and existing under the laws of Delaware,

DOES HEREBY CERTIFY:

FIRST:  That this corporation was incorporated on the 21st day of January, 1965, pursuant to the General Corporation Law of the State of Delaware, the provisions of which permit the merger of a subsidiary corporation of another state into a parent corporation organized and existing under the laws of said state.

SECOND:  That this corporation owns all of the outstanding shares of Common Stock, par value $1 of the stock of Chiles, Heider & Co., Inc., a corporation incorporated on the 10th day of April, 1970, pursuant to the Nebraska Business Corporation Act of the State of Nebraska.

THIRD:  That this corporation, by the following resolutions of the Executive Committee of the Board of Directors, duly adopted by unanimous written consent of its members, dated as of December 20, 1984 filed with the minutes of the board, determined to and did merge into itself said Chiles, Heider & Co., Inc.:

> RESOLVED, that Shearson Lehman/American Express Inc. merge, and it hereby does merge into itself said Chiles, Heider & Co., Inc., and assumes all of its obligations; and

> FURTHER RESOLVED, that the merger shall be effective upon the date of filing with the Secretary of State of Delaware; and

> FURTHER RESOLVED, that the proper officers of this corporation be and they hereby are directed to make and execute a Certificate of Ownership and Merger setting forth a copy of the resolutions to merge said Chiles, Heider & Co., Inc. and assume its liabilities and obligations, and the date of adoption thereof, and to cause the same to be filed with the Secretary of State and a certified copy recorded in the office of the Recorder of Deeds of New Castle County and to do all acts and things whatsoever, whether within or without the State of Delaware,

which may be in anywise necessary or proper to effect
said merger.

FOURTH;  Anything herein or elsewhere to the contrary
notwithstanding this merger may be amended or terminated and abandoned by
the board of directors of Shearson Lehman/American Express Inc. at any
time prior to the date of filing the merger with the Secretary of State.

IN WITNESS WHEREOF, said Shearson Lehman/American Express Inc. has
caused this certificate to be signed by __Philip J. Roblin, Jr.__
its __Executive Vice President__ , and attested by __Isabel A. Dempsey__ , its Assistant
Secretary, this __27th__ day of __Dec.__ , 1984.

                                    Shearson Lehman/American Express Inc.

                                    By _____
                                       Philip J. Roblin, Jr.
                                       Executive Vice President

By _____
   Assistant Secretary

8500310173

FICED

## CERTIFICATE OF OWNERSHIP AND MERGER

JAN 31 1985

### MERGING

### LEHMAN BROTHERS KUHN LOEB INCORPORATED

### INTO

### SHEARSON LEHMAN/AMERICAN EXPRESS INC.

(Pursuant to Section 253 of the Delaware
General Corporation Law)

SHEARSON LEHMAN/AMERICAN EXPRESS INC., a corporation
organized and existing under the laws of the State of Delaware,
HEREBY CERTIFIES AS FOLLOWS:

First:  SHEARSON LEHMAN/AMERICAN EXPRESS INC. owns one
hundred percent (100%) of the outstanding shares of each class
of stock of LEHMAN BROTHERS KUHN LOEB INCORPORATED, a Maryland
corporation.

Second:  On January 29, 1985 the Executive Committee of
the Board of Directors of SHEARSON LEHMAN/AMERICAN EXPRESS INC.
adopted resolutions, which

resolutions provide that LEHMAN BROTHERS KUHN LOEB INCORPORATED
shall be merged into SHEARSON LEHMAN/AMERICAN EXPRESS INC. in
accordance with the terms of a certain Agreement of Merger
between SHEARSON LEHMAN/ AMERICAN EXPRESS INC. and LEHMAN
BROTHERS KUHN LOEB INCORPORATED, which Agreement of Merger
provides, among other things, that SHEARSON LEHMAN/AMERICAN
EXPRESS INC. shall assume all of the obligations of LEHMAN
BROTHERS KUHN LOEB INCORPORATED.

00014

Third: ARTICLE III, Section 1 of the By-Laws of SHEARSON LEHMAN/AMERICAN EXPRESS INC. gives the Executive Committee of the Board of Directors of SHEARSON LEHMAN/AMERICAN EXPRESS INC. the authority to adopt a certificate of ownership and merger pursuant to Section 253 of the Delaware Corporation Law.


DATED:  January 29, 1985

SHEARSON LEHMAN/AMERICAN
EXPRESS INC.

By: _____
     Peter A. Cohen
     President

ATTEST:

_____
Isabel Dempsey
Assistant Secretary

-2-

CC015

FILED

72507.7002

MAR 15 1985

## CERTIFICATE OF AMENDMENT TO RESTATED CERTIFICATE OF INCORPORATION OF SHEARSON LEHMAN/AMERICAN EXPRESS INC.

SHEARSON LEHMAN/AMERICAN EXPRESS INC., a Delaware corporation having its registered office at Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, in the County of New Castle (the "Corporation"), hereby certifies to the Secretary of State of the State of Delaware that:

FIRST: Article I of the Restated Certificate of Incorporation of the Corporation is hereby amended so, as to read in its entirety as follows:

"Name

The name of the corporation (hereinafter referred to as the 'Corporation') is:

SHEARSON LEHMAN BROTHERS INC."

SECOND: The Board of Directors of the Corporation by requisite vote adopted a resolution which set forth the foregoing amendment to the Restated Certificate of Incorporation, in accordance with Section 242 of the General Corporation Law of the State of Delaware, declaring that the amendment to the Restated Certificate of Incorporation as proposed was advisable and directing that it be submitted for action thereon by the sole stockholder of the Corporation.

00062

THIRD:  The amendment has been consented to and authorized and approved by the holder of all the issued and outstanding stock of the Corporation, entitled to vote, by a written consent given in accordance with the provisions of Section 228 of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, Shearson Lehman/American Express Inc. has caused this Certificate to be signed on this 6th day of March, 1985 in its name and on its behalf by its Chairman of the Board and attested by its Secretary or an Assistant Secretary, pursuant to Section 103(a) of the General Corporation Law of the State of Delaware.

_____
Peter A. Cohen
Chairman of the Board

ATTEST: _____
[Assistant] Secretary

000013        -2-

725150037

## CERTIFICATE OF OWNERSHIP AND MERGER

### MERGING

### SHEARSON LEHMAN/AMERICAN EXPRESS REAL ESTATE CORPORATION

### INTO

### SHEARSON LEHMAN BROTHERS INC.

FILED

MAY 30 1985

* * * * *

Shearson Lehman Brothers Inc., a corporation organized and existing under the laws of Delaware,

DOES HEREBY CERTIFY:

FIRST: That this corporation was incorporated on the day of January 21, 1965, pursuant to the General Corporation Law of the State of Delaware.

SECOND: That this corporation owns all of the outstanding shares of the stock of Shearson Lehman/American Express Real Estate Corporation, a corporation incorporated on the 31st day of March, 1978, pursuant to the Business Corporation Law of the State of New York.

THIRD: That this corporation, by unanimous written consent of the Executive Committee of the board of Directors adopted on the 7TH day of May , 1985, determined to and did merge into itself said Shearson Lehman/American Express Real Estate Corporation.

RESOLVED, that Shearson Lehman Brothers Inc. merge, and it hereby does merge into itself said Shearson Lehman/American Express Real Estate Corporation, and assumes all of its obligations; and

FURTHER RESOLVED, that the merger shall be effective upon the date of filing with the Secretary of State of Delaware.

FURTHER RESOLVED, that the proper officers of this corporation be and they hereby are directed to make and execute a Certificate of Ownership and Merger setting forth a copy of the resolutions to merge said Shearson Lehman/American Express Real Estate Corporation and assume its liabilities and obligations, and the date of adoption thereof, and to cause the same to be filed with the Secretary of State and a certified copy recorded in the office of the Recorder of Deeds of New Castle County and to do all acts and things whatsover, whether within or without the State of Delaware, which may be in anywise necessary or proper to effect said merger; and

FOURTH: Anything herein or elsewhere to the contrary notwithstanding this merger may be amended or terminated and abandoned by the Executive Committee of the board of directors of Shearson Lehman
Brothers Inc. at any time prior to the date of filing the merger with the Secretary of State.

IN WITNESS WHEREOF, said Shearson Lehman Brothers Inc. has caused this certificate to be signed by Vice-Chairman of the Board of Directors and attested by Barbara C. Kullen its Secretary this 29th day of      May          , 1985.

By _____

Vice-Chairman of the Board of Directors
Jeffrey B. Lane

ATTEST:

By _____
Secretary
Barbara C. Kullen

8601920104

**FILED** 11 AM

JUL 11 1986

*signature*

SECRETARY OF STATE

DELAWARE

CERTIFICATE OF MERGER

OF

SHEARSON LEHMAN CONSTRUCTION INC.

INTO

SHEARSON LEHMAN BROTHERS INC.

\* \* \* \* \* \* \*

The undersigned corporation

DOES HEREBY CERTIFY:

FIRST:  That the name and state of incorporation of each of the constituent corporations of the merger is as follows:

| NAME | STATE OF INCORPORATION |
|---|---|
| Shearson Lehman Construction Inc. | New York |
| Shearson Lehman Brothers Inc. | Delaware |

SECOND:  That a Plan and Agreement of Merger between the parties to the merger has been approved, adopted, certified, executed and acknowledged by each of the constituent corporations in accordance with the requirements of subsection (c) of section 252 of the General Corporation Law of the State of Delaware.

THIRD:  That the name of the surviving corporation of the merger is Shearson Lehman Brothers Inc., a Delaware corporation.

FOURTH:  That the Restated Certificate of Incorporation of Shearson Lehman Brothers Inc., a Delaware corporation shall be the Restated Certificate of Incorporation of the surviving corporation.

FIFTH:  That the executed agreement of merger is on file at the principal place of business of the surviving corporation.  The address of said principal place of business is World Financial Center, American Express Tower, 19th Floor, New York, New York 10285.

SIXTH:  That a copy of the Plan and Agreement of Merger will be furnished on request and without cost to any shareholder of any constituent corporation.

SEVENTH:  The authorized capital stock of each foreign corporation which is a party to the merger is as follows:

| Corporation | Class | Number of Shares | Par value per share |
|---|---|---|---|
| Shearson Lehman Construction Inc. | Common | 1,000 | $1.00 |

EIGHTH:  The effective date of the merger shall be ~~the~~ July 11, 1986. ~~later of (i) the date of filing of this Certificate with the~~ Secretary of State of the State of Delaware ~~and (ii) the date of~~ filing of a Certificate of ~~Merger~~ regarding this merger with the Secretary of ~~State~~ of the State of New York, but in no event ~~later than 90 days from the date of filing hereof.~~

Dated:  July 7, 1986

SHEARSON LEHMAN BROTHERS INC.

By _____
    Peter A. Cohen, President

ATTEST:

By _____
    George J. Moeschlin, III
    Assistant Secretary

C0003

-2-

866358097

## CERTIFICATE OF OWNERSHIP AND MERGER

### MERGING

### BCCR Corp.

### INTO

### Shearson Lehman Brothers Inc.

* * * * *

FILED
DEC 24 1986 10 Am

*[signature]*
SECRETARY OF STATE

     Shearson Lehman Brothers Inc., a corporation organized and existing under the laws of Delaware ("Corporation"),

     DOES HEREBY CERTIFY:

     FIRST: That this Corporation was incorporated on the 21st day of January, 1965, pursuant to the General Corporation Law of the State of Delaware.

     SECOND: That this Corporation owns all of the outstanding shares of the stock of BCCR Corp., a corporation incorporated on the 16th day of June, 1986, pursuant to the General Corporation Law of the State of Delaware.

     THIRD: That this Corporation, by duly adopting the following resolutions by Unanimous Written Consent of the Board of Directors on the 19th day of December, 1986, determined to and did merge into itself said BCCR Corp.:

     RESOLVED, That Shearson Lehman Brothers Inc. merge, and it hereby does merge into itself said BCCR Corp., and assumes all of its obligations; and

     FURTHER RESOLVED, that the merger shall become effective on the date filed with the Secretary of State of Delaware.

     FURTHER RESOLVED, that the proper officers of this corporation be and they hereby are directed to make and execute a Certificate of Ownership and Merger setting forth a copy of the resolutions to merge

said BCCR Corp. and assume its liabilities and obligations, and the date of adoption thereof, and to cause the same to be filed with the Secretary of Sate and a certified copy recorded in the office of the Recorder of Deeds of New Castle County and to do all acts and things whatsoever, whether within or without the State of Delaware, which may be in anywise necessary or proper to effect said merger; and

FOURTH: Anything herein or elsewhere to the contrary notwithstanding this merger may be amended or terminated and abandoned by the board of directors of Shearson Lehman Brothers Inc. at any time prior to the date of filing the merger with the Secretary of State.

IN WITNESS WHEREOF, said Shearson Lehman Brothers Inc. has caused this certificate to be signed Peter A. Cohen its President and attested by George J. Moeschlin, III, its Assistant Secretary , this 19th day of December, 1986.

Shearson Lehman Brothers Inc.

by _____

Peter A. Cohen
President

ATTEST:

By _____

George J. Moeschlin, III
Assistant Secretary

7272880S1

**FILED**

CERTIFICATE OF AMENDMENT TO RESTATED CERTIFICATE
OF INCORPORATION OF SHEARSON LEHMAN BROTHERS INC.

OCT 15 1987

SHEARSON LEHMAN BROTHERS INC., a Delaware corporation
having its registered office at Corporation Trust Center, 1209 Orange
Street, in the City of Wilmington, in the County of New Castle (the
"Corporation"), hereby certifies to the Secretary of State of the State of
Delaware that:

FIRST: Article VII of the Restated Certificate of Incorporation
of the Corporation is hereby amended so as to read in its entirety as
follows:

"ARTICLE VII
INDEMNIFICATION

1.   The Corporation shall indemnify to the fullest extent permitted
under and in accordance with the laws of the State of Delaware any
person who was or is a party or is threatened to be made a party to any
threatened, pending or completed action, suit or proceeding, whether
civil, criminal, administrative or investigative by reason of the fact that
he is or was a director, officer, employee or agent of the Corporation,
or is or was serving at the request of the Corporation as a director,
officer, trustee, employee or agent of or in any other capacity with
another corporation, partnership, joint venture, trust or other
enterprise, against expenses (including attorneys' fees), judgments,
fines and amounts paid in settlement actually and reasonably incurred by
him in connection with such action, suit or proceeding if he acted in
good faith and in a manner he reasonably believed to be in or not
opposed to the best interests of the Corporation, and, with respect to

any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful.

2.    Expenses incurred in defending a civil or criminal action, suit or proceeding shall (in the case of any action, suit or proceeding against a director of the Corporation) or may (in the case of any action, suit or proceeding against an officer, trustee, employee or agent) be paid by the Corporation in advance of the final disposition of such action, suit or proceeding as authorized by the Board upon receipt of an undertaking by or on behalf of the indemnified person to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the Corporation as authorized in this Article.

3.    The indemnification and other rights set forth in this ARTICLE VII shall not be exclusive of any provisions with respect thereto in the By-Laws or any other contract or agreement between the Corporation and any officer, director, employee or agent of the Corporation.

4.    Neither the amendment nor repeal of this ARTICLE VII, Section 1, 2 or 3, nor the adoption of any provision of this Restated Certificate of Incorporation inconsistent with ARTICLE VII, Section 1, 2 or 3, shall eliminate or reduce the effect of this ARTICLE VII, Sections 1, 2 and 3, in respect of any matter occurring prior to such amendment, repeal or adoption of an inconsistent provision or in respect of any cause of action, suit or claim relating to any such matter which would have given rise to a right of indemnification or right to receive expenses pursuant to this ARTICLE VII, Section 1, 2 or 3, if such provision had not been

so amended or repealed or if a provision inconsistent therewith had not been so adopted.

5.  No director shall be personally liable to the Corporation or any stockholder for monetary damages for breach of fiduciary duty as a director, except for any matter in respect of which such director (a) shall be liable under Section 174 of the General Corporation Law of the State of Delaware or any amendment thereto or successor provision thereto, or (b) shall be liable by reason that, in addition to any and all other requirements for liability, he:

> (i)   shall have breached his duty of loyalty to the Corporation or its stockholders;

> (ii)  shall not have acted in good faith or, in failing to act, shall not have acted in good faith;

> (iii) shall have acted in a manner involving intentional misconduct or a knowing violation of law or, in failing to act, shall have acted in a manner involving intentional misconduct or a knowing violation of law; or

> (iv)  shall have derived an improper personal benefit.

If the General Corporation Law of the State of Delaware is amended after April 1, 1987 to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director

of the Corporation shall be eliminated or limited to the fullest extent permitted by the General Corporation Law of the State of Delaware, as so amended.

Neither the amendment nor repeal of this ARTICLE VII, Section 5, nor the adoption of any provision of this Restated Certificate of Incorporation inconsistent with this ARTICLE VII, Section 5, shall eliminate or reduce the effect of this ARTICLE VII, Section 5, in respect of any matter occurring, or any cause of action, suit or claim that, but for this ARTICLE VII, Section 5, would accrue or arise, prior to such amendment, repeal or adoption of an inconsistent provision."

SECOND: The Board of Directors of the Corporation by requisite vote adopted a resolution which set forth the foregoing amendment to the Restated Certificate of Incorporation, in accordance with Section 242 of the General Corporation Law of the State of Delaware, declaring that the amendment to the Restated Certificate of Incorporation as proposed was advisable and directing that it be submitted for action thereon by the sole stockholder of the Corporation.

THIRD: The amendment has been consented to and authorized and approved by the holder of all the issued and outstanding stock of the Corporation, entitled to vote, by a written consent given in accordance with the provisions of Section 228 of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, Shearson Lehman Brothers Inc. has caused this Certificate to be signed on this 31st day of August, 1987 in its name and on its behalf by its Chairman of the Board and attested by its Secretary, pursuant to Section 103(a) of the General Corporation Law of the State of Delaware.

Peter A. Cohen
Chairman of the Board

ATTEST:

Secretary

FILED

888029035

JAN 29 1988

# CERTIFICATE OF AMENDMENT TO RESTATED CERTIFICATE OF INCORPORATION OF SHEARSON LEHMAN BROTHERS INC.

SHEARSON LEHMAN BROTHERS INC., a Delaware Corporation having its registered office at Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, in the County of New Castle (the "Corporation"), hereby certifies to the Secretary of State of the State of Delaware that:

FIRST:   Article I of the Restated Certificate of Incorporation of the Corporation is hereby amended so as to read in its entirety as follows:

"Name

The name of the corporation (hereinafter referred to as the "Corporation") is:

SHEARSON LEHMAN HUTTON INC."

SECOND: The Board of Directors of the Corporation by requisite vote adopted a resolution which set forth the foregoing amendment to the Restated Certificate of Incorporation, in accordance with Section 242 of the General Corporation Law of the State of Delaware, declaring that the amendment to the Restated Certificate of Incorporation as proposed was advisable and directing that it be submitted for action thereon by the sole stockholder of the Corporation.

THIRD:  The amendment has been consented to and authorized and approved by the holder of all the issued and outstanding stock of the Corporation, entitled to vote, by a written consent given in accordance with the provisions of Section 228 of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, Shearson Lehman Brothers Inc. has caused this Certificate to be signed on this 28th day of January, 1988 in its name and on its behalf by a Vice Chairman of the Board and attested by its Secretary, pursuant to Section 103(a) of the General Corporation Law of the State of Delaware.

Vice Chairman of the Board
David S. Hershberg

ATTEST:
Secretary
Isabel A. Dempsey

888098052

FILED 10:14M
APR 6 1988

SECRETARY OF STATE

### CERTIFICATE OF MERGER
### MERGING
### SHEARSON PEPPER INC.
### INTO
### SHEARSON LEHMAN HUTTON INC.
#### (Pursuant to Section 251(c) of the Delaware
#### General Corporation Law)

SHEARSON LEHMAN HUTTON INC., a corporation organized and existing under the laws of the State of Delaware, HEREBY CERTIFIES AS FOLLOWS:

FIRST:    The name and state of incorporation of each of the constituent corporations is as follows:

SHEARSON LEHMAN HUTTON INC.,
a Delaware corporation

and

SHEARSON PEPPER INC.
a Delaware corporation.

SECOND:  An Agreement of Merger, dated as of March 31, 1988 (the "Merger Agreement"), has been approved, adopted, certified, executed and acknowledged by each of the constituent corporations in accordance with Section 251(c) of the Delaware General Corporation Law.

THIRD:  SHEARSON LEHMAN HUTTON INC. shall be the surviving corporation and shall retain the name SHEARSON LEHMAN HUTTON INC.

FOURTH:  The Restated Certificate of Incorporation of SHEARSON LEHMAN HUTTON INC. as presently in effect shall be the Restated Certificate of Incorporation of the surviving corporation.

FIFTH:    Copies of the Merger Agreement, as executed in counterpart, are on file at the principal place of business of SHEARSON LEHMAN HUTTON INC., World Financial Center, New York, New York 10285.

SIXTH:  A copy of the Merger Agreement will be furnished by SHEARSON LEHMAN HUTTON INC., on request and without cost to any stockholder of any constituent corporation.

DATED:  March 31, 1988

SHEARSON LEHMAN HUTTON INC.

By: _____
David S. Hershberg
Vice Chairman
of the Board

ATTEST:

_____
Isabel A. Dempsey

729173053

# CERTIFICATE OF OWNERSHIP AND MERGER

## MERGING

### LEHMAN MANAGEMENT CO., INC.

### INTO

### SHEARSON LEHMAN HUTTON INC.

**FILED**

**JUN 22 1989**

*[signature]*

SECRETARY OF STATE

\* \* \* \* \*

Shearson Lehman Hutton Inc., a corporation organized and existing under the laws of Delaware,

DOES HEREBY CERTIFY:

FIRST: That this corporation was incorporated on the 21st day of January, 1965, pursuant to the General Corporation Law of the State of Delaware.

SECOND: That this corporation owns all of the outstanding shares of the stock of Lehman Management Co., Inc. ("LEMCO"), a corporation incorporated on the 27th day of January, 1975, pursuant to the Business Corporation Law of the State of New York.

THIRD: That this corporation, by unanimous written consent of the Executive Committee of the Board of Directors adopted the following resolutions on the 6th day of June, 1989, determined to and did merge into itself said LEMCO:

WHEREAS, Shearson Lehman Hutton Inc. ("Shearson") the sole shareholder of Lehman Management Co., Inc. ("LEMCO") desires to merge LEMCO into itself;

NOW THEREFORE, be it

RESOLVED, that Shearson Lehman Hutton Inc. merge into itself said LEMCO, in accordance with an Agreement of Merger, which is on file with the minutes of Shearson Lehman Hutton Inc. at Two World Trade Center, 105th Floor, New York, New York 10048; and

FURTHER RESOLVED, that the merger shall be effective upon the date of filing with the Secretary of State of Delaware; and

FURTHER RESOLVED, that the proper officers of this corporation be and they hereby are directed to make and execute a Certificate of Ownership and Merger setting forth a copy of the resolutions to merge said LEMCO and assume its liabilities and obligations, and the date of adoption thereof, and to cause the same to be filed with the Secretary of State and a certified copy recorded in the office of the Recorder of Deeds of New Castle County and to do all acts and things whatsover, whether within or without the

State of Delaware, which may be in anywise necessary or proper to effect said merger.

FOURTH: Anything herein or elsewhere to the contrary notwithstanding this merger may be amended or terminated and abondoned by the Executive Committee of the Board of Directors of Shearson Lehman Hutton Inc. at any time prior to the date of filing the merger with the Secretary of State.

IN WITNESS WHEREOF, said Shearson Lehman Hutton Inc. has caused this certificate to be signed by Isabel A. Dempsey, Senior Vice President and attested by Eileen M. Bannon, its Assistant Secretary, this 21st day of June, 1989.

By: _____
      Isabel A. Dempsey
      Senior Vice President

ATTEST:

By: _____
    Eileen M. Bannon
    Assistant Secretary

– 2 –

899275089

CERTIFICATE OF OWNERSHIP AND MERGER

MERGING

SHEARSON ASSET MANAGEMENT INC.

BERNSTEIN-MACAULAY INC.

SHEARSON MANAGEMENT INC.

INTO

SHEARSON LEHMAN HUTTON INC.

* * * * *

FILED

DEC 8 1989

Shearson Lehman Hutton Inc., a corporation organized and existing under the laws of Delaware (the "Corporation"),

DOES HEREBY CERTIFY:

FIRST:   That this Corporation was incorporated on the 21st day of January, 1965, pursuant to the General Corporation Law of the State of Delaware.

SECOND: That this Corporation owns all of the outstanding shares of the stock of Shearson Asset Management Inc. ("SAMI"), a corporation incorporated on the 16th day of November, 1962, pursuant to the General Corporation Law of the State of Delaware and further;

That this Corporation owns all of the outstanding shares of the stock of Bernstein-Macaulay, Inc. ("BMI") and Shearson Management Inc. ("SMI"), corporations incorporated, respectively, on the 14th day of February, 1934 and the 6th day of April, 1967, pursuant to the Business Corporation Law of the State of New York.

THIRD:   That this Corporation, by Unanimous Written Consent of the Executive Committee of the Board of Directors adopting the following resolutions on the 20th day of September, 1989, determined to and did merge into itself said SAMI, BMI and SMI.

WHEREAS, Shearson Lehman Hutton Inc. ("Shearson"), the sole shareholder of Shearson Asset Management Inc. ("SAMI"), Bernstein-Macaulay, Inc. ("BMI") and Shearson Management Inc. ("SMI") desires to merge SAMI, BMI and SMI into itself;

NOW THEREFORE, be it

RESOLVED, that Shearson Lehman Hutton Inc. merge into itself, SAMI; and

FURTHER RESOLVED, that Shearson Lehman Hutton Inc. merge into itself, BMI; and

FURTHER RESOLVED, that Shearson Lehman Hutton Inc. merge into itself, SMI; and

FURTHER RESOLVED, that these mergers shall be effective upon the date of filing with the Secretary of State of Delaware; and

FURTHER RESOLVED, that the proper officers of the corporation be, and hereby are, directed and authorized to execute the Certificate of Ownership and Merger, substantially in the form attached hereto as an Exhibit, setting forth a copy of these resolutions and the date of adoption thereof, and to cause the same to be filed with the Secretary of State and a certified copy recorded in the office of the Recorder of Deeds of New Castle County; and

FURTHER RESOLVED, that the proper officers of the Corporation be, and hereby are, authorized to execute any and all documents, and to take any and all actions, whether within or without the State of Delaware, which may be necessary or proper to effect the merger, and such documents and actions are hereby ratified and confirmed as the act and deed of the Corporation.

FOURTH: Anything herein or elsewhere to the contrary notwithstanding this merger may be amended or terminated and abandoned by the Executive Committee of the Board of Directors of Shearson Lehman Hutton Inc. at any time prior to the date of filing the merger with the Secretary of State.

IN WITNESS WHEREOF, said Shearson Lehman Hutton Inc. has caused this certificate to be signed by Kenneth F. Khoury, Senior Vice President and attested by Eileen M. Bannon, its Assistant Secretary, this _22_ day of September, 1989.

By: _____
Kenneth F. Khoury
Senior Vice President

ATTEST:

By: _____
Eileen M. Bannon
Assistant Secretary

- 2 -

1302/3003

## CERTIFICATE OF AMENDMENT
## TO RESTATED CERTIFICATE OF INCORPORATION OF SHEARSON LEHMAN HUTTON INC.

SHEARSON LEHMAN HUTTON INC., a Delaware Corporation (the "Corporation") having its registered office at Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, in the County of New Castle, hereby certifies to the Secretary of State of the State of Delaware that:

FIRST:    Article I of the Restated Certificate of Incorporation of the Corporation is hereby amended so as to read in its entirety as follows:

"Name

The name of the corporation (hereinafter referred to as the "Corporation") is:

SHEARSON LEHMAN BROTHERS INC."

SECOND:    The Board of Directors of the Corporation by requisite vote adopted a resolution which set forth the foregoing amendment to the Restated Certificate of Incorporation, in accordance with Section 242 of the General Corporation Law of the State of Delaware, declaring that the amendment to the Restated Certificate of Incorporation as proposed was advisable and directing that it be submitted for action thereon by the sole stockholder of the Corporation.

# FILED

AUG 1 1990

*[signature]*
SECRETARY OF STATE

8:30 A

THIRD:   The amendment has been consented to and authorized and approved by the holder of all the issued and outstanding stock of the Corporation, entitled to vote, by a written consent given in accordance with the provisions of Section 228 of the General Corporation Law of the State of Delaware.

FOURTH:   This Certificate of Amendment of the Restated Certficate of Incorporation shall be effective on August 1, 1990.

IN WITNESS WHEREOF, Shearson Lehman Hutton Inc. has caused this Certificate to be signed on this 19th day of July, 1990 in its name and on its behalf by a Vice Chairman of the Board and attested by its Secretary, pursuant to Section 103(a) of the General Corporation Law of the State of Delaware.

David S. Hershberg
Vice Chairman

ATTEST: Maureen Boyan
Maureen Boyan
Secretary

FROM CORPORATION TRUST COMPANY                    MON AUG 02' 93 08:58/ST. 08:57/NO. 3560228500 P  2
STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 08:30 AM 08/02/1993
723214036 - 620706

CERTIFICATE OF AMENDMENT

OF

CERTIFICATE OF INCORPORATION

OF

SHEARSON LEHMAN BROTHERS INC.

Shearson Lehman Brothers Inc., a Delaware corporation (the "Corporation"), having its registered office at Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, in the County of New Castle, hereby certifies to the Secretary of State of the State of Delaware that:

FIRST: The Article I of the Restated Certificate of Incorporation of the Corporation is hereby amended so as to read in its entirety as follows:

"Name
The name of the corporation (herinafter referred to as the "Corporation" is:  Lehman Brothers Inc."

SECOND: The Board of Directors of the Corporation by requisite vote adopted a resolution which sets forth the foregoing amendment to the Certificate of Incorporation, in accordance with Section 242 of the General Corporation Law of the State of Delaware, declaring that the amendment to the Certificate of Incorporation as proposed was advisable and directing that it be submitted for action thereon by the sole stockholder of the Corporation.

THIRD: The amendment has been consented to and authorized and approved by the holder of all the issued and outstanding stock of the Corporation, entitled to vote, by a written consent given in accordance with the provisions of Section 228 of the General Corporation Law of the State of Delaware.

FOURTH:  This Certificate of Amendment of the Certificate of Incorporation shall be effective on filing _____.

IN WITNESS WHEREOF, Shearson Lehman Brothers Inc. has caused this Certificate to be signed on this *2nd* day of *August, 1993* in its name and on its behalf by Karen C. Manson, its Senior Vice President and attested by Eileen M. Bannon, its Assistant Secretary, pursuant to 103(a) of the General Corporation Law of the State of Delaware.

                    SHEARSON LEHMAN BROTHERS INC.


                    _____
                    Karen C. Manson
                    Senior Vice President


ATTESTED:

By  _____
    Eileen M. Bannon
    Assistant Secretary

arj L:\HOME\œ\cmb\WPDOCS\cmb174pe.cop   042193

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 10:00 AM 05/27/1994
944095520 - 620706

CERTIFICATE OF OWNERSHIP AND MERGER

MERGING

OS INTERNATIONAL INC.

AND

FOSTER & MARSHALL INC.

INTO

LEHMAN BROTHERS INC.

LEHMAN BROTHERS INC., a corporation organized and existing under the laws of Delaware,

DOES HEREBY CERTIFY:

FIRST: That this corporation was incorporated on the 21st day of January 1965, pursuant to the General Corporation Law of the State of Delaware.

SECOND: That this corporation owns all of the outstanding shares of the stock of OS INTERNATIONAL INC., a corporation incorporated on the 12th day of October, 1983, pursuant to the Business Corporation Law of the State of New York, and FOSTER & MARSHALL INC., a corporation incorporated on the 14th day of February, 1961, pursuant to the Business Corporation Act of the State of Washington.

THIRD: That this corporation, by the following resolutions of its Board of Directors, duly adopted by the unanimous written consent of its members   on May 21, 1994, filed with the minutes of the Board, determined to and did merge into itself OS INTERNATIONAL INC. and FOSTER & MARSHALL INC.:

RESOLVED, that LEHMAN BROTHERS INC. merge, and it hereby does merge into itself OS INTERNATIONAL INC. and FOSTER & MARSHALL INC., and assumes all of its obligations; and

FURTHER RESOLVED, that the proper officers of this corporation be and they hereby are directed to make and execute a Certificate of Ownership and Merger setting forth a copy of the resolutions to merge OS INTERNATIONAL INC. and FOSTER & MARSHALL INC., and assume its liabilities and obligations, and to cause the same to be filed with the

Secretary of State and a certified copy recorded in the office of the Recorder of Deeds of New Castle County and to do all acts and things whatsoever, whether within or without the State of Delaware, which may be in anywise necessary or proper to effect said merger.

FOURTH: Anything herein or elsewhere to the contrary notwithstanding, this merger may be amended or terminated and abandoned by the Board of Directors of LEHMAN BROTHERS INC. at any time prior to the date of filing the merger with the Secretary of State.

IN WITNESS WHEREOF, said LEHMAN BROTHERS INC. has caused this Certificate to be signed by Karen C. Manson, its Senior Vice President, and attested by Eileen M. Bannon, its Assistant Secretary, this ___21st___ day of ___May___, 1994.

Lehman Brothers Inc.

Karen C. Manson-Senior Vice President

Eileen M. Bannon-Assistant Secretary

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 10:00 AM 08/31/1995
950197959 - 620706

# CERTIFICATE OF OWNERSHIP AND MERGER

## MERGING

## LEHMAN GOVERNMENT SECURITIES INC.

## INTO

## LEHMAN BROTHERS INC.

Lehman Brothers Inc., a corporation organized and existing under the laws of Delaware (the "Corporation"),

**DOES HEREBY CERTIFY:**

**FIRST:** That this Corporation was incorporated on January 21, 1965, pursuant to the General Corporation Law of the State of Delaware.

**SECOND:** That this Corporation owns all of the outstanding shares of the stock of Lehman Government Securities Inc. ("LGSI"), a corporation incorporated on September 21, 1972, pursuant to the Business Corporation Law of the State of New York.

**THIRD:** That this Corporation, by Unanimous Written Consent of the Executive Committee of the Board of Directors adopting the following resolutions as of the 31st day of August, 1995, determined to and did merge into itself said LGSI.

**WHEREAS,** the Corporation, the sole shareholder of Lehman Government Securities Inc. ("LGSI"), desires to merge LGSI into itself;

**NOW THEREFORE,** be it

**RESOLVED,** that the Corporation merge LGSI into itself and assume all of its liabilities and obligations; and

**FURTHER RESOLVED,** that the proper officers of the Corporation are each hereby directed and authorized to execute a Certificate of Ownership and Merger, setting forth a copy of these resolutions and the date of adoption thereof, in such form as any officer shall approve, and to cause the same to be filed on such date as any proper officer of the Corporation shall determine with the Secretary of State and a certified copy recorded in the office of the Recorder of Deeds of New Castle County; and

**FURTHER RESOLVED,** that the proper officers of the Corporation are each hereby authorized to execute, deliver and file any and all documents, and to take any and all actions, whether within or without the State of Delaware, which may be necessary, appropriate or desirable to effect the merger, and such documents and actions are hereby ratified and confirmed as the act and deed of the Corporation; and

**FURTHER RESOLVED,** anything herein or elsewhere to the contrary notwithstanding this merger may be abandoned by the proper officers of the Corporation at any time prior to the date of filing this merger with the Secretary of State.

Dated: August 31, 1995

<div style="text-align:center">LEHMAN BROTHERS INC.</div>

By: _____
Name: Karen C. Manson
Title:  Senior Vice President

By: _____
Name: Eileen Bannon
Title:  Assistant Secretary

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 03/14/1996
960074136 - 620706

## CERTIFICATE OF CHANGE OF LOCATION OF REGISTERED OFFICE
## AND OF REGISTERED AGENT

It is hereby certified that:

1.    The name of the corporation (hereinafter called the "corporation") is

### LEHMAN BROTHERS INC

2.    The registered office of the corporation within the State of Delaware is hereby changed to 1013 Centre Road, City of Wilmington 19805, County of New Castle.

3.    The registered agent of the corporation within the State of Delaware is hereby changed to The Prentice-Hall Corporation System, Inc., the business office of which is identical with the registered office of the corporation as hereby changed.

4.    The corporation has authorized the changes hereinbefore set forth by resolution of its Board of Directors.

Signed on *March 5*, 19 *96*.

*Eileen M. Bannon*

Eileen M. Bannon, Assistant Secretary

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 04/30/1996
960125082 - 620706

CERTIFICATE OF DESIGNATIONS, POWERS,
PREFERENCES AND RIGHTS
OF THE
FLOATING RATE PREFERRED STOCK
($10,000 liquidation preference per share)

OF

LEHMAN BROTHERS INC.

Pursuant to Section 151 of the
General Corporation Law of the State of Delaware

LEHMAN BROTHERS INC., a Delaware corporation having its registered office at 1209 Orange Street, in the City of Wilmington, in the County of New Castle (the "Corporation"). HEREBY CERTIFIES that resolutions were duly adopted by the Board of Directors of the Corporation pursuant to the authority conferred upon the Board of Directors of the Corporation by the provisions of the Restated Certificate of Incorporation of the Corporation, as follows:

RESOLVED, that the Corporation be, and it hereby is, authorized to offer, issue and sell a series of Preferred Stock of the Corporation and the Board of Directors hereby fixes the designation, number of shares, voting powers and the other powers, preferences and relative, participating, optional or other special rights, and the qualifications, limitations and restrictions thereof (in addition to those set forth in the Certificate of Incorporation of the Corporation which may be applicable to such series) as follows:

1.    Designation and Number of Shares.  The designation of such series shall be the Floating Rate Preferred Stock (the "Floating Rate Preferred Stock") and the authorized number of shares constituting such series shall be one hundred (100).  The Board reserves the right by from time to time to increase or decrease the number of shares that constitute the Floating Rate Preferred Stock (but not below the number of shares thereof then outstanding) within the limitations provided by law, this resolution and the Restated Certificate of Incorporation.

2.    Dividends.  Dividends on each share of Floating Rate Preferred Stock shall be cumulative from the date of initial issuance of such share and shall be payable annually, when and as declared by the Board of Directors or a duly authorized committee thereof out of funds legally available therefor, in cash on April 15 of each year, commencing April 15, 1997 (each a "Dividend Payment Date"), to holders of record on such record date, not exceeding 30 days preceding the payment thereof, as shall be fixed by the Board of Directors or a duly authorized committee thereof, at a rate equal to the Federal Funds Daily Rate in effect on the record date less 0.25% per annum per share on the liquidation preference of $10,000 per share. If any date on which dividends would otherwise be payable shall be or be declared a national or New York State holiday, or if banking institutions in the State of New York shall be closed because of a banking moratorium or otherwise on such date, then the Dividend Payment Date shall be the next succeeding day on which such banks shall be open. Accumulated and unpaid dividends shall not bear interest.

If there shall be outstanding shares of any other class or series of preferred stock of the Corporation ranking on a parity as to dividends with the Floating Rate Preferred Stock, the Corporation, in making any dividend payment on account of arrears on the Floating Rate Preferred Stock or such other class or series of preferred stock, shall make payments ratably upon all outstanding shares of Floating Rate Preferred Stock and such other class or series of preferred stock in proportion to the respective amounts of dividends in arrears upon all such outstanding shares of Floating Rate Preferred Stock and such other class or series of preferred stock to the date of such dividend payment.

3.    Liquidation Preference.  In the event of any liquidation, dissolution or winding up of the Corporation, voluntary or involuntary, the holders of the Floating Rate Preferred Stock shall be entitled to receive out of the assets of the Corporation available for distribution to its stockholders, before any distribution of assets is made to the holders of the common stock or any other shares of stock of the Corporation ranking as to such distribution junior to the Floating Rate Preferred Stock, an amount equal to $10,000 per share (the "Liquidation Preference) plus an amount equal to any accrued and accumulated but unpaid dividends thereon to the date of final distribution.  The holders of the Floating Rate Preferred Stock shall not be entitled to receive the Liquidation Preference and such accrued dividends, however, until the liquidation preference of any other class of stock of the Corporation ranking senior to the Floating Rate Preferred Stock as to rights upon liquidation, dissolution or winding up shall have been paid (or a sum set aside therefor sufficient to provide for payment) in full.

After payment of the full amount of the Liquidation Preference and such dividends, the holders of shares of Floating Rate Preferred Stock will not be entitled to any further participation in any distribution of assets by the Corporation.  If, upon any voluntary or involuntary liquidation, dissolution or winding up of the Corporation, the assets available for distribution shall be insufficient to pay in full the amounts payable with respect to the Floating Rate Preferred Stock and any other shares  shall share ratably in accordance with the respective amounts which would be payable on such shares if all amounts payable thereon were paid in full.  Consolidation or merger of the Corporation with or into one or more other corporations, or a sale, whether for cash, shares of stock, securities or properties, of all or any part of the Corporation's assets shall not be considered a liquidation, dissolution or winding up of the Corporation within the meaning of this Section 3 if the preferences of the holders of shares of Floating Rate Preferred Stock are not impaired thereby.

4.    Conversion.  The Floating Rate Preferred Stock is not convertible into, or exchangeable for, other securities or property.

5.    Voting Rights.  The Floating Rate Preferred Stock shall have no voting rights except as otherwise required by law.

6.    Redemption  The shares of Floating Rate Preferred Stock owned by any holder of record may be redeemed by the Corporation at any time at its option and subject to New York Stock Exchange approval at an amount equal to $10,000 per share plus, in each case, an amount equal to all and accumulated and unpaid dividends to, but excluding, the date fixed for redemption, upon the occurrence of any of the following events:  (i) without the prior written consent of the Corporation the holder of such shares ceases to clear all of its securities transactions through the Corporation, (ii) dissolution, bankruptcy or insolvency of such holder, (iii) any violation by such holder of any agreement made by such holder with the Corporation or if the holder has been determined by any of the exchanges or associations or other institutions with which the Corporation has or may have membership privileges or other privileges to have violated any agreement made by such holder therewith, (iv) the holder shall have been suspended or expelled from any of the exchanges or associations or other institutions with which the Corporation has membership privileges, (v) such holder ceases to be considered a "creditor" as defined in Regulation T promulgated by the Board of Governors of the Federal Reserve System pursuant to the Securities Exchange Act of 1934, or (vi) the Corporation shall determine in good faith that it is necessary or desirable for the welfare of the Corporation or the attainment of a corporate objective that such holder shall cease to be such a holder.

The holders of shares of Floating Rate Preferred Stock at the close of business on a Dividend Payment Record Date shall be entitled to receive the dividend payable on such shares on the corresponding Dividend Payment Date notwithstanding the call for redemption thereof (except that holders of shares called for redemption on a date occurring between such Record Date and the Dividend Payment Date shall not be entitled to receive such dividend on such Dividend Payment Date) or the Corporation's default in payment of the dividend due on such Dividend Payment Date.

In the event the Corporation shall redeem shares of Floating Rate Preferred Stock, written notice of such redemption shall be given by first class mail, postage prepaid, mailed not less than 30 days nor more than 60 days prior to the redemption date, to each holder of record of the shares to be redeemed at such holder's address as the same appears on the stock books of the Corporation; provided, however, that no failure to give such notice nor any defect therein shall affect the validity of the proceeding for the redemption of any shares of Floating Rate Preferred Stock to be redeemed except as to the holder to whom the Corporation has failed to mail said notice or except as to the holder whose notice was defective. Each such notice shall state: (a) the redemption date; (b) the number of shares of Floating Rate Preferred Stock to be redeemed and, if less than all the shares held by such holder are to be redeemed from such holder, the number of shares to be redeemed from such holder; (c) the redemption price and any accumulated and unpaid dividends to the redemption date; (d) the place or places where certificates for such shares are to be surrendered for payment of the redemption price; and (e) that dividends on the shares to be redeemed will cease to accrue on such redemption date (unless the Corporation shall default in providing funds for the payment of the redemption price of the shares called for redemption at the time and place specified in such notice).

7.    Rights of First Refusal.    If at any time after the date hereof a holder of shares of Preferred Stock (the "Seller") desires to cease clearing operations through the Corporation and receives an offer to purchase any or all of its shares of Preferred Stock (the "Offered Shares") from an entity (the "Prospective Purchaser") that desires to begin or increase its clearing operations through the Corporation, and if the Seller desires to accept such offer, the Seller shall give prompt written notice (a "Notice of Offer") to the Corporation which Notice of Offer shall include the terms of the sale and the name of the Prospective Purchaser. The Notice of Offer shall be deemed to be an irrevocable offer to sell the Offered Shares to the Corporation, and the Corporation shall have the irrevocable and exclusive option, to buy all but not less than all of the Offered Shares at a price equal to the liquidation value plus accumulated dividends, if any.

Within ninety (90) days following the date on which the Corporation receives the Notice of Offer (the "Notice Date"), the Corporation shall notify the Seller whether the Corporation elects to purchase the Offered Shares (a "Corporation Acceptance"). If the Seller does not receive a Corporation Acceptance within such 90-day period, the Corporation shall be deemed to have declined to purchase any of the Offered Shares and within 10 days of the expiration of such 90-day period shall furnish the Seller with a written consent approving the sale of the Offered Shares to the Prospective Purchaser A Corporation Acceptance shall be deemed to be an irrevocable commitment to purchase the Offered Shares from the Seller.

Upon the exercise by the Corporation of its right of first refusal in accordance with this paragraph 7, the Corporation shall be legally obligated to consummate the purchase and sale contemplated thereby and shall use its best efforts to secure any approvals required in connection therewith. If the Corporation does not exercise its right of first refusal with respect to all of the Offered Shares within the time specified for such exercise, the Seller shall be free upon the receipt of a written consent from the Corporation , during a period of ninety (90) days following the expiration of the last day for such exercise, to sell the Offered Shares, but only to the Prospective Purchaser specified in the Notice of Offer.

The closing of the purchase of any Shares by the Corporation pursuant to this paragraph 7 shall take place on such date within 30 days after the expiration of the 90-day period following the Notice Date. The Corporation shall deliver to the Seller, in full payment of the purchase price for the shares of Preferred Stock purchased by the Corporation, cash or other immediately available funs in the full amount of the purchase price.

8.    Designation by Corporation of Other Purchasers.    Whenever the Corporation shall be entitled to purchase any shares of Preferred Stock upon the exercise of any right or option arising pursuant hereto, the Corporation may designate such other person or persons as purchasers of all or any part of such shares.

9    Restrictions on Transfer.    The shares of Preferred Stock shall be issued only in the name of the beneficial owner, and no transfer of such shares shall be effected except on the stock books of the Corporation upon surrender of the stock certificates duly endorsed, and all shares of the Preferred Stock shall at all times be held subject to all agreements and restrictions set forth in this Certificate of Designations and in the Restated Certificate

-3-

of Incorporation, as amended from time to time, the provisions of which shall at all times apply equally both as to an original holder of shares and to each and every subsequent holder thereof, and each holder of shares of the Preferred Stock, by the acceptance of a stock certificate representing shares of the Corporation's Preferred Stock, agrees with the Corporation and with each other holder of shares of Preferred Stock, in consideration of such agreement of each such other holder of shares of Preferred Stock, to such agreements, conditions and restrictions as contained in this Certificate of Designations and in the restated Certificate of Incorporation.

10.    <u>Reissuance of Shares</u>    Shares of Floating Rate Preferred Stock that have been issued and reacquired in any manner, including shares purchased or redeemed, shall (upon compliance with any applicable provisions of the laws of the State of Delaware) have the status of authorized and unissued shares of the class of Preferred Stock undesignated as to Floating Rate and may be redesignated and reissued as part of any series of the preferred stock.

IN WITNESS WHEREOF, Lehman Brothers Inc. has caused this certificate to be signed by Jennifer Marre, Vice President, and attested by Karen C. Manson, its Secretary, this 30th day of April, 1996.

Jennifer Marre, Vice President

ATTEST:

Karen C. Manson, Secretary

11153

-4-

**Exhibit B**

The following three memorandums, dated September 11, 2008, should have been paid, but were never received by the Claimant due to the bankruptcy.

# LEHMAN BROTHERS

## MEMORANDUM

TO:         Kenneth Cohen

FROM:       Mike Odrich
            Brett Bossung
            Mark Newman

DATE:       September 11, 2008

CC:         Mark Walsh
            Ruth Horowitz
            Robert Shaw
            Rodolpho Amboss
            Eileen Sullivan

SUBJECT:    Finder's Payment for Investment in Sunset Villas

Based on your Notional Interest in Lehman Brothers Real Estate Partners, L.P. and its affiliated investment partnerships a distribution is due to you as follows:

Notional Interest          $2,445

| | |
|---|---:|
| Pro-Rata Share of Distribution | $26,512 |
| Less Outstanding Notional Interest in Portfolio Investment | (9,077) |
| Gross Proceeds | 17,435 |
| Less Lehman Cost of Capital (charged on outstanding Notional Interest) | (2,445) |
| Net Proceeds (before taxes) | $14,990 |

Please remember that your distribution will be on a pre-tax basis and therefore Lehman is obligated to withhold payroll-related taxes on any proceeds due to you.

This payment is expected to be included in your payroll check from Lehman on or about January 31, 2009.

Please e-mail robert.shaw@lehman.com if you have any questions.

*never received*

# LEHMAN BROTHERS

## MEMORANDUM

TO:        Kenneth Cohen

FROM:    Mike Odrich
           Brett Bossung
           Mark Newman

DATE:     September 11, 2008

CC:        Mark Walsh
           Ruth Horowitz
           Rodolpho Amboss
           Robert Shaw
           Eileen Sullivan

SUBJECT:  Finder's Payment for Investment in Southeastern Office Portfolio

Based on your Notional Interest in Lehman Brothers Real Estate Partners II, L.P. and its affiliated investment partnerships a distribution is due to you as follows:

| | | |
|---|---|---|
| Notional Interest | $0 | |
| Pro-Rata Share of Distribution | | $747 |
| Less Outstanding Notional Interest in Portfolio Investment | | . |
| Net Proceeds (before taxes) | | $747 |

Please remember that your distribution will be on a pre-tax basis and therefore Lehman is obligated to withhold payroll-related taxes on any proceeds due to you.

This payment is expected to be included in your payroll check from Lehman, on or about January 31, 2009
Please e-mail robert.shaw@lehman.com if you have any questions.

*never received*

# LEHMAN BROTHERS

## MEMORANDUM

TO:        Kenneth Cohen

FROM:      Mike Odrich
           Brett Bossung
           Mark Newman

DATE:      September 11, 2008

CC:        Mark Walsh
           Ruth Horowitz
           Rodolpho Amboss
           Robert Shaw
           Eileen Sullivan

SUBJECT:   Finder's Payment for Investment in 237 Park Avenue

---

Based on your Notional Interest in Lehman Brothers Real Estate Partners II, L.P. and its affiliated investment partnerships a distribution is due to you as follows:

| | |
|---|---|
| Notional Interest | $0 |
| Pro-Rata Share of Distribution | $935 |
| Less Outstanding Notional Interest in Portfolio Investment | - |
| Net Proceeds (before taxes) | $935 |

Please remember that your distribution will be on a pre-tax basis and therefore Lehman is obligated to withhold payroll-related taxes on any proceeds due to you.

This payment is expected to be included in your payroll check from Lehman, on or about January 31, 2009

Please e-mail robert.shaw@lehman.com if you have any questions.

*Note received*

The following documents represent interests that were granted and are still outstanding

unless otherwise indicated.

# LEHMAN BROTHERS

## MEMORANDUM

| | |
|---|---|
| TO: | Kenneth Cohen |
| FROM: | Mike Odrich<br>Raymond Mikulich<br>Mark Walsh |
| DATE: | July 10, 2006 |
| CC: | Ruth Horowitz<br>Jerry Truzzolino<br>Maxine Gruner<br>Eileen Sullivan<br>Rodolpho Amboss |
| SUBJECT: | Granting of Percentage Interest in Real Estate Fund II Portfolio Investments |

In recognition of your contribution to investments made by Lehman Brothers Real Estate Partners L.P. II and its affiliated investment partnerships ("Real Estate Partners II" or "Partners II"). Lehman Brothers hereby grants you a notional participation or percentage interest in Real Estate Partners II's interest ("Your Notional Interest") in the portfolio investment(s) identified on the following page (each a "Portfolio Investment").

After the return of the full amount of capital invested in a Portfolio Investment, then upon any subsequent distribution by Real Estate Partners II with respect to such Portfolio Investment, and provided the cumulative return on the Portfolio Investment equals or exceeds 15% per annum, Lehman Brothers will pay to you a cash amount (if any) equal to Your Notional Percentage of Partners II's Interest in the distribution in excess of the Amount of Real Estate Partners II's Investment in the Portfolio Investment net of any reasonable reserve determined by Lehman Brothers.

You are under no obligation to make any capital contribution to Lehman Brothers with respect to the Portfolio Investment or Your Notional Interest therein. However, payments to be made to you in connection with Your Notional Interest are conditioned on your continuing employment in good standing with Lehman Brothers.

If you die, become disabled or achieve full career vesting (as those terms are defined in the Lehman Brothers Holdings' Stock Award Program) prior to the time of a distribution with respect to a Portfolio Investment, you will be entitled to receive 100% of such payment from Lehman Brothers.

Payments to be made to you as set forth herein may not be transferred, assigned or pledged by you to any other person under any circumstances whatsoever without the prior written consent of Lehman Brothers, but shall be made to your successors or assignees in the event of your death.

| Date | Portfolio Investment | Amount of Real Estate Partners II's Investment[1] | Your Notional Interest in the Portfolio Investment[1] | Percentage of Partners' Interest |
|------|---------------------|---------------------------|----------------------------|------------------------|
| 6/17/05 | Marblehead Coastal | $59,100,000 | $59,100 | 0.10% |
| 7/20/05 | 237 Park Ave | $55,000,000 | $55,000 | 0.10% |
| 7/22/05 | Southeastern Office Portfolio | $8,000,000 | $8,000 | 0.10% |
| 8/5/05 | Lytle Creek | $13,600,000 | $13,600 | 0.10% |
| 10/5/05 | Lion Gables Apartment Fund | $100,000,000 | $100,000 | 0.10% |
| 11/10/05 | Elmwood Condomimiums | $24,800,000 | $24,800 | 0.10% |
| 11/21/05 | Dallas Multi Family Portfolio | $13,600,000 | $13,600 | 0.10% |

(1) Amounts shown represent total estimated fundings, however, your interest will apply to total actual fundings net of any portfolio investment leverage.

# LEHMAN BROTHERS

## MEMORANDUM

| | |
|---|---|
| TO: | Kenneth Cohen |
| FROM: | Mike Odrich |
| | Raymond Mikulich |
| | Mark Walsh |
| DATE: | July 10, 2006 |
| CC: | Ruth Horowitz |
| | Jerry Truzzolino |
| | Maxine Gruner |
| | Eileen Sullivan |
| | Rodolpho Amboss |
| SUBJECT: | Granting of Percentage Interest in Real Estate Fund II Portfolio Investments |

In recognition of your contribution to investments made by Lehman Brothers Real Estate Partners L.P. II and its affiliated investment partnerships ("Real Estate Partners II" or "Partners II"), Lehman Brothers hereby grants you a notional participation or percentage interest in Real Estate Partners II's interest ("Your Notional Interest") in the portfolio investment(s) identified on the following page (each a "Portfolio Investment").

After the return of the full amount of capital invested in a Portfolio Investment, then upon any subsequent distribution by Real Estate Partners II with respect to such Portfolio Investment, and provided the cumulative return on the Portfolio Investment equals or exceeds 15% per annum, Lehman Brothers will pay to you a cash amount (if any) equal to Your Notional Percentage of Partners II's Interest in the distribution in excess of the Amount of Real Estate Partners II's Investment in the Portfolio Investment net of any reasonable reserve determined by Lehman Brothers.

You are under no obligation to make any capital contribution to Lehman Brothers with respect to the Portfolio Investment or Your Notional Interest therein. However, payments to be made to you in connection with Your Notional Interest are conditioned on your continuing employment in good standing with Lehman Brothers.

If you die, become disabled or achieve full career vesting (as those terms are defined in the Lehman Brothers Holdings' Stock Award Program) prior to the time of a distribution with respect to a Portfolio Investment, you will be entitled to receive 100% of such payment from Lehman Brothers.

Payments to be made to you as set forth herein may not be transferred, assigned or pledged by you to any other person under any circumstances whatsoever without the prior written consent of Lehman Brothers, but shall be made to your successors or assignees in the event of your death.

| Date | Portfolio Investment | Amount of Real Estate Partners II's Investment[1] | Your Notional Interest in the Portfolio Investment | Percentage of Partners' Interest |
|---|---|---|---|---|
| 11/4/04 | SunCal Master | $117,000,000 | $117,000 | 0.10% |
| 11/19/04 | Charles Street | $28,100,000 | $28,100 | 0.10% |
| 2/14/05 | Tishman Hotels | $120,400,000 | $120,400 | 0.10% |

[1] Amounts shown represent total estimated fundings, however, your interest will apply to total actual fundings net of any portfolio investment leverage.

# LEHMAN BROTHERS

## MEMORANDUM

| | |
|---|---|
| **TO:** | Kenneth Cohen |
| **FROM:** | Raymond Mikulich<br>Mark Walsh |
| **DATE:** | December 9, 2002 |
| **CC:** | Mike Odrich<br>Steven Berkenfeld<br>Ruth Horowitz<br>Fred Steinberg<br>Elizabeth Arreglado |
| **SUBJECT:** | Granting of Percentage Interest in a Real Estate Fund Portfolio Investments |

In recognition of your contribution to investments made by Lehman Brothers Real Estate Partners L.P. and its affiliated investment partnerships ("Real Estate Partners" or "Partners"), Lehman Brothers hereby grants you a notional participation or percentage interest in Real Estate Partners' interest ("Your Notional Interest") in the portfolio investments identified below (each a "Portfolio Investment").

| | | Your Notional | |
|---|---|---|---|
| **Portfolio Investment** | **Amount of Real Estate Partners' Investment** | **Interest in the Portfolio Investment** | **Percentage of Partners' Interest** |
| 11 West 42nd Street | $48,044,326 | $48,044 | 0.10% |
| 1301 Avenue of the Americas | $31,733,164 | $31,733 | 0.10% |
| 1325 G Street | $11,272,455 | $11,272 | 0.10% |
| 1900 East Ocean Boulevard | $8,180,239 | $8,180 | 0.10% |
| Dark Horse | $7,762,696 | $7,763 | 0.10% |
| Pacific Pointe | $8,389,823 | $8,390 | 0.10% |
| Corona Pointe | $12,249,962 | $12,250 | 0.10% |
| Pasadena Portfolio (a) | $25,384,587 | $25,385 | 0.10% |
| Verde Mont Villas | $3,975,144 | $3,975 | 0.10% |
| West Covina | $13,125,593 | $13,126 | 0.10% |

(a) Amounts shown represent total estimated fundings for this Portfolio Investment. Partners has funded $19,484,587 to date. Your Interest will apply to all actual fundings made for this Portfolio Investment.

- 2 -

After the return of the full amount of capital invested in a Portfolio Investment, then upon any subsequent distribution by Real Estate Partners with respect to such Portfolio Investment, and provided the cumulative return on the Portfolio Investment equals or exceeds 15% per annum, Lehman Brothers will pay to you a cash amount (if any) equal to Your Notional Percentage of Partners' Interest in the distribution in excess of the Amount of Real Estate Partners' Investment in the Portfolio Investment, less Private Equity's cost for the capital represented by Your Notional Interest in the Portfolio Investment and net of any reasonable reserve determined by Lehman Brothers.

You are under no obligation to make any capital contribution to Lehman Brothers with respect to the Portfolio Investment or Your Notional Interest therein. However, payments to be made to you in connection with Your Notional Interest are conditioned on your continuing employment with Lehman Brothers based upon the schedule set forth below.

If you are an employee of Lehman Brothers in good standing at the time Real Estate Partners makes any distribution with respect to a Portfolio Investment, you will receive such payment from Lehman Brothers.

If you are not an employee of Lehman Brothers in good standing at the time of a distribution with respect to a Portfolio Investment, for whatever reason (including without limitation your voluntary resignation or your termination by Lehman Brothers with or without cause), you will be entitled to receive the following percentages of the payment you would otherwise have received if you were an employee at such time:

| | |
|---|---|
| (i)    If your employment terminated prior to the third anniversary of the Closing Date of the Portfolio Investment .......... | 0% |
| (ii)    If your employment terminated on or following the third anniversary of the Closing Date of the Portfolio Investment, but prior to the fourth anniversary of the Closing Date of the Portfolio Investment ............................................... | 50% |
| (iii)    If your employment terminated on or following the fourth anniversary of the Closing Date of the Portfolio Investment, but prior to the fifth anniversary of the Closing Date of the Portfolio Investment................................................... | 75% |
| (iv)    If your employment terminated on or following the fifth anniversary of the Closing Date of the Portfolio Investment. | 100% |

However, if you die, become disabled or achieve full career vesting (as those terms are defined in the Lehman Brothers Holdings' Stock Award Program) prior to the time of a distribution with respect to a Portfolio Investment, you will be entitled to receive 100% of such payment from Lehman Brothers.

Payments to be made to you as set forth herein may not be transferred, assigned or pledged by you to any other person under any circumstances whatsoever without the prior written consent of Lehman Brothers, but shall be made to your successors or assignees in the event of your death.

# LEHMAN BROTHERS

## MEMORANDUM

| | |
|---|---|
| **To:** | Kenneth Cohen |
| **From:** | Raymond Mikulich |
| | Mark Walsh |
| **Date:** | December 9, 2002 |
| **Cc:** | Mike Odrich |
| | Steven Berkenfeld |
| | Ruth Horowitz |
| | Fred Steinberg |
| | Elizabeth Arreglado |
| **Subject:** | Granting of Percentage Interest in a Real Estate Fund Portfolio Investments |

In recognition of your contribution to investments made by Lehman Brothers Real Estate Partners L.P. and its affiliated investment partnerships ("Real Estate Partners" or "Partners"), Lehman Brothers hereby grants you a notional participation or percentage interest in Real Estate Partners' interest ("Your Notional Interest") in the portfolio investments identified below (each a "Portfolio Investment").

| | | Your Notional | |
|---|---|---|---|
| **Portfolio Investment** | **Amount of Real Estate Partners' Investment** | **Interest in the Portfolio Investment** | **Percentage of Partners' Interest** |
| Ocean III | $19,182,121 | $19,182 | 0.10% |
| Catalina and Belamar | $3,806,000 | $3,806 | 0.10% |
| The Oaks and Riverside (a) | $19,988,854 | $19,989 | 0.10% |
| Lincoln Crossing | $21,567,600 | $21,568 | 0.10% |
| South Florida Portfolio | $17,969,861 | $17,970 | 0.10% |
| Commerce Office Park | $9,891,369 | $9,891 | 0.10% |
| 1500 Gateway (Boynton) | $7,725,000 | $7,725 | 0.10% |
| Arizona Office Portfolio | $8,002,273 | $8,002 | 0.10% |
| Oak Creek | $8,464,500 | $8,465 | 0.10% |
| Sunset Villas | $9,000,000 | $9,000 | 0.10% |

(a) Amounts shown represent total estimated fundings for this Portfolio Investment. Partners has funded $17,169,854 to date. Your Interest will apply to all actual fundings made for this Portfolio Investment.

- 2 -

After the return of the full amount of capital invested in a Portfolio Investment, then upon any subsequent distribution by Real Estate Partners with respect to such Portfolio Investment, and provided the cumulative return on the Portfolio Investment equals or exceeds 15% per annum, Lehman Brothers will pay to you a cash amount (if any) equal to Your Notional Percentage of Partners' Interest in the distribution in excess of the Amount of Real Estate Partners' Investment in the Portfolio Investment, less Private Equity's cost for the capital represented by Your Notional Interest in the Portfolio Investment and net of any reasonable reserve determined by Lehman Brothers.

You are under no obligation to make any capital contribution to Lehman Brothers with respect to the Portfolio Investment or Your Notional Interest therein. However, payments to be made to you in connection with Your Notional Interest are conditioned on your continuing employment with Lehman Brothers based upon the schedule set forth below.

If you are an employee of Lehman Brothers in good standing at the time Real Estate Partners makes any distribution with respect to a Portfolio Investment, you will receive such payment from Lehman Brothers.

If you are not an employee of Lehman Brothers in good standing at the time of a distribution with respect to a Portfolio Investment, for whatever reason (including without limitation your voluntary resignation or your termination by Lehman Brothers with or without cause), you will be entitled to receive the following percentages of the payment you would otherwise have received if you were an employee at such time:

| | |
|---|---|
| (i)     If your employment terminated prior to the third anniversary of the Closing Date of the Portfolio Investment .......... | 0% |
| (ii)     If your employment terminated on or following the third anniversary of the Closing Date of the Portfolio Investment, but prior to the fourth anniversary of the Closing Date of the Portfolio Investment ............................................ | 50% |
| (iii)     If your employment terminated on or following the fourth anniversary of the Closing Date of the Portfolio Investment, but prior to the fifth anniversary of the Closing Date of the Portfolio Investment.............................................. | 75% |
| (iv)     If your employment terminated on or following the fifth anniversary of the Closing Date of the Portfolio Investment. | 100% |

However, if you die, become disabled or achieve full career vesting (as those terms are defined in the Lehman Brothers Holdings' Stock Award Program) prior to the time of a distribution with respect to a Portfolio Investment, you will be entitled to receive 100% of such payment from Lehman Brothers.

Payments to be made to you as set forth herein may not be transferred, assigned or pledged by you to any other person under any circumstances whatsoever without the prior written consent of Lehman Brothers, but shall be made to your successors or assignees in the event of your death.

# LEHMAN BROTHERS

## MEMORANDUM

| | |
|---|---|
| TO: | Kenneth Cohen |
| FROM: | Mike Odrich |
| | Brett Bossung |
| | Yon Cho |
| DATE: | October 12, 2007 |
| CC: | Mark Walsh |
| | Mark Newman |
| | Ruth Horowitz |
| | Rodolpho Amboss |
| | Robert Shaw |
| SUBJECT: | Granting of Percentage Interest in Real Estate Mezzanine Fund Portfolio Investments |

In recognition of your contribution to investments made by Lehman Brothers Real Estate Mezzanine Partners L.P. and its affiliated investment partnerships ("Real Estate Mezzanine" or "Mezzanine"), Lehman Brothers hereby grants you a notional participation or percentage interest in Real Estate Mezzanine's interest ("Your Notional Interest") in the portfolio investment(s) identified on the following page (each a "Portfolio Investment").

After the return of the full amount of capital invested in a Portfolio Investment, then upon any subsequent distribution by Real Estate Mezzanine with respect to such Portfolio Investment, and provided the cumulative return on the Portfolio Investment equals or exceeds 12.5% per annum, Lehman Brothers will pay to you a cash amount (if any) equal to Your Notional Percentage of Mezzanine's interest in the distribution in excess of the amount of Real Estate Mezzanine's Investment in the Portfolio Investment net of any reasonable reserve determined by Lehman Brothers.

You are under no obligation to make any capital contribution to Lehman Brothers with respect to the Portfolio Investment or Your Notional Interest therein. However, payments to be made to you in connection with Your Notional Interest are conditioned on your continuing employment in good standing with Lehman Brothers.

If you die, become disabled or achieve full career vesting (as those terms are defined in the Lehman Brothers Holdings' Stock Award Program) prior to the time of a distribution with respect to a Portfolio Investment, you will be entitled to receive 100% of such payment from Lehman Brothers.

Payments to be made to you as set forth herein may not be transferred, assigned or pledged by you to any other person under any circumstances whatsoever without the prior written consent of Lehman Brothers, but shall be made to your successors or assignees in the event of your death.

| | | | Your Notional | |
| --- | --- | --- | --- | --- |
| Date | Portfolio Investment | Amount of Real Estate Mezzanine's Investment [1] | Interest in the Portfolio Investment | Percentage of Partners' Interest |
| 2/27/07 | Wilshire Club View | $15,185,000 | $22,778 | 0.1500% |

(1) Amounts shown represent total estimated fundings, however, your interest will apply to total actual fundings net of any portfolio investment leverage.

# LEHMAN BROTHERS

## MEMORANDUM

TO:         Kenneth Cohen

FROM:       Raymond Mikulich
            Mark Walsh

DATE:       March 8, 2004

CC:         Mike Odrich
            Steven Berkenfeld
            Ruth Horowitz
            Fred Steinberg
            Elizabeth Arreglado
            Eileen Sullivan

SUBJECT:    Granting of Percentage

In recognition of your contribution to investments made by Lehman Brothers Real Estate Partners L.P. and its affiliated investment partnerships ("Real Estate Partners" or "Partners"), Lehman Brothers hereby grants you a notional participation or percentage interest in Real Estate Partners' interest ("Your Notional Interest") in the portfolio investment(s) identified on the following page (each a "Portfolio Investment").

After the return of the full amount of capital invested in a Portfolio Investment, then upon any subsequent distribution by Real Estate Partners with respect to such Portfolio Investment, and provided the cumulative return on the Portfolio Investment equals or exceeds 15% per annum, Lehman Brothers will pay to you a cash amount (if any) equal to Your Notional Percentage of Partners' Interest in the distribution in excess of the Amount of Real Estate Partners' Investment in the Portfolio Investment, less Private Equity's cost for the capital represented by Your Notional Interest in the Portfolio Investment and net of any reasonable reserve determined by Lehman Brothers.

You are under no obligation to make any capital contribution to Lehman Brothers with respect to the Portfolio Investment or Your Notional Interest therein. However, payments to be made to you in connection with Your Notional Interest are conditioned on your continuing employment with Lehman Brothers based upon the schedule set forth below.

If you are an employee of Lehman Brothers in good standing at the time Real Estate Partners makes any distribution with respect to a Portfolio Investment, you will receive such payment from Lehman Brothers.

If you are not an employee of Lehman Brothers in good standing at the time of a distribution with respect to a Portfolio Investment, for whatever reason (including without limitation your voluntary resignation or your termination by Lehman Brothers with or without cause), you will be entitled to receive the following percentages of the payment you would otherwise have received if you were an employee at such time:

| | |
|---|---|
| (i) If your employment terminated prior to the third anniversary of the Closing Date of the Portfolio Investment | 0% |

| | |
|---|---|
| (ii) If your employment terminated on or following the third anniversary of the Closing Date of the Portfolio Investment, but prior to the fourth anniversary of the Closing Date of the Portfolio Investment | 50% |

| | |
|---|---|
| (iii) If your employment terminated on or following the fourth anniversary of the Closing Date of the Portfolio Investment, but prior to the fifth anniversary of the Closing Date of the Portfolio Investment | 75% |

| | |
|---|---|
| (iv) If your employment terminated on or following the fifth anniversary of the Closing Date of the Portfolio Investment | 100% |

However, if you die, become disabled or achieve full career vesting (as those terms are defined in the Lehman Brothers Holdings' Stock Award Program) prior to the time of a distribution with respect to a Portfolio Investment, you will be entitled to receive 100% of such payment from Lehman Brothers.

Payments to be made to you as set forth herein may not be transferred, assigned or pledged by you to any other person under any circumstances whatsoever without the prior written consent of Lehman Brothers, but shall be made to your successors or assignees in the event of your death.

| Portfolio Investment | | Amount of Real Estate Partners' Investment | Your Notional Interest in the Portfolio Investment | Percentage of Partners' Interest |
|---|---|---|---|---|
| Northlake Residential | (b) | $28,500,000 | $28,500 | 0.10% |
| Oak Valley | (c) | $24,500,000 | $24,500 | 0.10% |
| Wyndham Mezzanine Loan | | $60,000,000 | $60,000 | 0.10% |
| Midtown Plaza | | $13,300,000 | $13,300 | 0.10% |
| IBM Gaithersburg | | $16,800,000 | $16,800 | 0.10% |
| DASCO | | $10,000,000 | $10,000 | 0.10% |
| Caruth at Lincoln Park | | $12,700,000 | $12,700 | 0.10% |
| Mid-Wilshire Portfolio | | $3,750,000 | $3,750 | 0.10% |

(b) Amounts shown represent total estimated fundings for this Portfolio Investment. $10.9mm has been funded to date. Your interest will apply to all actual fundings made for this Portfolio Investment.

(c) Amounts shown represent total estimated fundings for this Portfolio Investment. $8.9mm has been funded to date. Your interest will apply to all actual fundings made for this Portfolio Investment.

-2-

# LEHMAN BROTHERS

## MEMORANDUM

| | |
|---|---|
| TO: | Kenneth Cohen |
| FROM: | Mike Odrich<br>Raymond Mikulich<br>Mark Walsh |
| DATE: | March 6, 2006 |
| CC: | Ruth Horowitz<br>Jerry Truzzolino<br>Maxine Gruner<br>Eileen Sullivan |
| SUBJECT: | Granting of Percentage Interest in Real Estate Fund II Portfolio Investments |

In recognition of your contribution to investments made by Lehman Brothers Real Estate Partners L.P. II and its affiliated investment partnerships ("Real Estate Partners II" or "Partners II"), Lehman Brothers hereby grants you a notional participation or percentage interest in Real Estate Partners II's interest ("Your Notional Interest") in the portfolio investment(s) identified on the following page (each a "Portfolio Investment").

After the return of the full amount of capital invested in a Portfolio Investment, then upon any subsequent distribution by Real Estate Partners II with respect to such Portfolio Investment, and provided the cumulative return on the Portfolio Investment equals or exceeds 15% per annum, Lehman Brothers will pay to you a cash amount (if any) equal to Your Notional Percentage of Partners II's Interest in the distribution in excess of the Amount of Real Estate Partners II's Investment in the Portfolio Investment, less Private Equity's cost for the capital represented by Your Notional Interest in the Portfolio Investment and net of any reasonable reserve determined by Lehman Brothers.

You are under no obligation to make any capital contribution to Lehman Brothers with respect to the Portfolio Investment or Your Notional Interest therein. However, payments to be made to you in connection with Your Notional Interest are conditioned on your continuing employment with Lehman Brothers based upon the schedule set forth below.

If you are an employee of Lehman Brothers in good standing at the time Real Estate Partners II makes any distribution with respect to a Portfolio Investment, you will receive such payment from Lehman Brothers.

If you are not an employee of Lehman Brothers in good standing at the time of a distribution with respect to a Portfolio Investment, for whatever reason (including without limitation your voluntary resignation or your termination by Lehman Brothers with or without cause), you will be entitled to receive the following percentages of the payment you would otherwise have received if you were an employee at such time:

| | |
|---|---|
| (i) If your employment terminated prior to the third anniversary of the Closing Date of the Portfolio Investment | 0% |
| (ii) If your employment terminated on or following the third anniversary of the Closing Date of the Portfolio Investment, but prior to the fourth anniversary of the Closing Date of the Portfolio Investment | 50% |
| (iii) If your employment terminated on or following the fourth anniversary of the Closing Date of the Portfolio Investment, but prior to the fifth anniversary of the Closing Date of the Portfolio Investment | 75% |
| (iv) If your employment terminated on or following the fifth anniversary of the Closing Date of the Portfolio Investment | 100% |

However, if you die, become disabled or achieve full career vesting (as those terms are defined in the Lehman Brothers Holdings' Stock Award Program) prior to the time of a distribution with respect to a Portfolio Investment, you will be entitled to receive 100% of such payment from Lehman Brothers.

Payments to be made to you as set forth herein may not be transferred, assigned or pledged by you to any other person under any circumstances whatsoever without the prior written consent of Lehman Brothers, but shall be made to your successors or assignees in the event of your death.

| Date | Portfolio Investment | Amount of Real Estate Partners II's Investment[1] | Your Notional Interest in the Portfolio Investment | Percentage of Partners' Interest | |
|---|---|---|---|---|---|
| 6/17/05 | Marblehead Coastal | $59,100,000 | $59,100 | 0.10% | |
| 7/20/05 | 237 Park Ave | $55,000,000 | $55,000 | 0.10% | |
| 7/22/05 | Southeastern Office Portfolio | $8,000,000 | $8,000 | 0.10% | *pd partial* |
| 8/5/05 | Lytle Creek | $13,600,000 | $13,600 | 0.10% | |
| 10/5/05 | Lion Gables Apartment Fund | $100,000,000 | $100,000. | 0.10% | |
| 11/10/05 | Elmwood Condomimiums | $24,800,000 | $24,800 | 0.10% | |
| 11/21/05 | Dallas Multi Family Portfolio | $13,600,000 | $13,600 | 0.10% | |

(1) Amounts shown represent total estimated fundings, however, your interest will apply to total actual fundings.

# LEHMAN BROTHERS

## MEMORANDUM

| | |
|---|---|
| TO: | Kenneth Cohen |
| FROM: | Mike Odrich |
| | Brett Bossung |
| | Yon Cho |
| DATE: | June 14, 2006 |
| CC: | Ruth Horowitz |
| | Jerry Truzzolino |
| | Maxine Gruner |
| | Eileen Sullivan |
| SUBJECT: | Granting of Percentage Interest in Real Estate Mezzanine Fund Portfolio Investments |

In recognition of your contribution to investments made by Lehman Brothers Real Estate Mezzanine Partners L.P. and its affiliated investment partnerships ("Real Estate Mezzanine" or "Mezzanine"), Lehman Brothers hereby grants you a notional participation or percentage interest in Real Estate Mezzanine's interest ("Your Notional Interest") in the portfolio investment(s) identified on the following page (each a "Portfolio Investment").

After the return of the full amount of capital invested in a Portfolio Investment, then upon any subsequent distribution by Real Estate Mezzanine with respect to such Portfolio Investment, and provided the cumulative return on the Portfolio Investment equals or exceeds 12.5% per annum, Lehman Brothers will pay to you a cash amount (if any) equal to Your Notional Percentage of Mezzanine's interest in the distribution in excess of the amount of Real Estate Mezzanine's Investment in the Portfolio Investment net of any reasonable reserve determined by Lehman Brothers.

You are under no obligation to make any capital contribution to Lehman Brothers with respect to the Portfolio Investment or Your Notional Interest therein. However, payments to be made to you in connection with Your Notional Interest are conditioned on your continuing employment in good standing with Lehman Brothers.

However, if you die, become disabled or achieve full career vesting (as those terms are defined in the Lehman Brothers Holdings' Stock Award Program) prior to the time of a distribution with respect to a Portfolio Investment, you will be entitled to receive 100% of such payment from Lehman Brothers.

Payments to be made to you as set forth herein may not be transferred, assigned or pledged by you to any other person under any circumstances whatsoever without the prior written consent of Lehman Brothers, but shall be made to your successors or assignees in the event of your death.

| Date | Portfolio Investment | Amount of Real Estate Mezzanine's Investment [1] | Your Notional Interest in the Portfolio Investment | Percentage of Partners' Interest |
|---|---|---|---|---|
| 4/6/04 | Chatsworth Park Apts. | $5,300,000 | $7,950 | 0.15% |
| 3/7/05 | Minnesota Office Portfolio | $25,500,000 | $38,250 | 0.15% |
| 7/30/04 | Regatta at Lakeshore East | $16,700,000 | $25,050 | 0.15% |
| 7/12/05 | Sears Tower | $14,900,000 | $22,350 | 0.15% |
| 12/16/04 | Summit Belmont Apts | $2,100,000 | $3,150 | 0.15% |
| 5/13/04 | Haverhill Apts. | $3,400,000 | $5,100 | 0.15% |
| 12/9/04 | The Duo | $15,600,000 | $23,400 | 0.15% |
| 7/5/05 | Icon | $22,400,000 | $33,600 | 0.15% |
| 3/18/05 | 50 Lansing St. | $9,000,000 | $13,500 | 0.15% |
| 4/1/05 | La Cima | $19,162,952 | $28,744 | 0.15% |
| 5/5/05 | Quality Inn Times Square | $7,200,000 | $10,800 | 0.15% |
| 5/20/04 | El Toro / Heritage Fields | $78,500,000 | $117,750 | 0.15% |
| 12/1/04 | Ocean Marine | $17,900,000 | $26,850 | 0.15% |
| 6/2/05 | BPG Mid-Atlantic Portfolio | $28,300,000 | $42,450 | 0.15% |
| 8/25/04 | Plaza Harbour Island | $8,900,000 | $13,350 | 0.15% |
| 8/19/04 | The Peninsula | $15,100,000 | $22,650 | 0.15% |
| 6/14/05 | Loft 5 | $10,100,000 | $15,150 | 0.15% |

450,094

(1) Amounts shown represent total estimated fundings, however, your interest will apply to total actual fundings net of any portfolio investment leverage.

# LEHMAN BROTHERS

## MEMORANDUM

| | |
|---|---|
| TO: | Kenneth Cohen |
| FROM: | Mike Odrich<br>Brett Bossung<br>Yon Cho |
| DATE: | September 11, 2008 |
| CC: | Mark Walsh<br>Mark Newman<br>Ruth Horowitz<br>Rodolpho Amboss<br>Robert Shaw |
| SUBJECT: | Granting of Percentage Interest in Real Estate Mezzanine Fund Portfolio Investments |

In recognition of your contribution to investments made by Lehman Brothers Real Estate Mezzanine Partners L.P. and its affiliated investment partnerships ("Real Estate Mezzanine" or "Mezzanine"), Lehman Brothers hereby grants you a notional participation or percentage interest in Real Estate Mezzanine's interest ("Your Notional Interest") in the portfolio investment(s) identified on the following page (each a "Portfolio Investment").

After the return of the full amount of capital invested in a Portfolio Investment, then upon any subsequent distribution by Real Estate Mezzanine with respect to such Portfolio Investment, and provided the cumulative return on the Portfolio Investment equals or exceeds 12.5% per annum, Lehman Brothers will pay to you a cash amount (if any) equal to Your Notional Percentage of Mezzanine's interest in the distribution in excess of the amount of Real Estate Mezzanine's Investment in the Portfolio Investment net of any reasonable reserve determined by Lehman Brothers. An express condition to any such payment is that you continue to remain actively employed by Lehman Brothers or any of its subsidiaries through and including the applicable Payment Date. Any such payment shall be made as soon as practicable, but in no event later than two and a half months following the close of the year in which such distribution occurs.

You are under no obligation to make any capital contribution to Lehman Brothers with respect to the Portfolio Investment or Your Notional Interest therein. However, payments to be made to you in connection with Your Notional Interest are conditioned on your continuing employment in good standing with Lehman Brothers.

Not withstanding any of the above, if you die, become disabled or achieve full career vesting (as that term is defined in the Lehman Brothers Equity Award Program) prior to the time of a distribution with respect to a Portfolio Investment, you will be entitled to receive 100% of such payment from Lehman Brothers.

Payments to be made to you as set forth herein may not be transferred, assigned or pledged by you to any other person under any circumstances whatsoever without the prior written consent of Lehman Brothers, but shall be made to your successors or assignees in the event of your death.

| Date | Portfolio Investment | Amount of Real Estate Mezzanine's Investment [1] | Your Notional Interest in the Portfolio Investment | Percentage of Partners' Interest |
|------|---------------------|---------|---------|---------|
| 1/17/07 | Hutto Mixed Use | $26,900,000 | $45,730 | 0.1700% |
| 1/31/07 | Troon North Golf Course | $7,900,000 | $13,430 | 0.1700% |
| 2/27/07 | North Beach Towers | $18,300,000 | $31,110 | 0.1700% |
| 5/30/07 | Novare Credit Facility | $51,400,000 | $87,380 | 0.1700% |
| 5/31/07 | Wolf Laurel | $20,900,000 | $35,530 | 0.1700% |
| 7/3/07 | Heritage Golf Group / TPC Portfolio | $6,000,000 | $10,200 | 0.1700% |
| 7/3/07 | Park Lane | $30,100,000 | $51,170 | 0.1700% |
| 3/30/07 | Xanadu Meadowlands | $41,500,000 | $70,550 | 0.1700% |
| 7/31/07 | Trump Hollywood | $23,000,000 | $39,100 | 0.1700% |
| 9/10/07 | Domino | $60,400,000 | $102,680 | 0.1700% |
| 10/24/07 | Catalyst | $33,000,000 | $56,100 | 0.1700% |
| 9/26/07 | Miami Green Office Condominiums | $5,600,000 | $9,520 | 0.1700% |
| 11/26/07 | Aqua | $32,000,000 | $54,400 | 0.1700% |
| 11/26/07 | Chelsea Holiday Inn Express | $6,000,000 | $10,200 | 0.1700% |
| 11/6/07 | Hard Rock Hotel & Casino | $65,000,000 | $110,500 | 0.1700% |
| 11/19/07 | LA Live | $37,500,000 | $63,750 | 0.1700% |

(1) Amounts shown represent total estimated fundings, however, your interest will apply to total actual fundings net of any portfolio investment leverage.

**LEHMAN BROTHERS**
**MEMORANDUM**

TO:        Kenneth Cohen

FROM:    Mike Odrich
           Brett Bossung
           Mark Newman

DATE:    September 11, 2008

CC:        Mark Walsh
           Ruth Horowitz
           Rodolpho Amboss
           Robert Shaw

SUBJECT:  Granting of Percentage Interest in Real Estate Fund II Portfolio Investments

In recognition of your contribution to investments made by Lehman Brothers Real Estate Partners II and its affiliated investment partnerships ("Real Estate Partners II" or "Partners II"), Lehman Brothers hereby grants you a notional participation or percentage interest in Real Estate Partners II interest ("Your Notional Interest") in the portfolio investment(s) identified on the following page (each a "Portfolio Investment").

After the return of the full amount of capital invested in a Portfolio Investment, then upon any subsequent distribution by Real Estate Partners II with respect to such Portfolio Investment, and provided the cumulative return on the Portfolio Investment equals or exceeds 15% per annum, Lehman Brothers will pay to you a cash amount (if any) equal to Your Notional Percentage of Partners II interest in the distribution in excess of the amount of Real Estate Partners II Investment in the Portfolio Investment net of any reasonable reserve determined by Lehman Brothers. An express condition to any such payment is that you continue to remain actively employed by Lehman Brothers or any of its subsidiaries through and including the applicable Payment Date. Any such payment shall be made as soon as practicable, but in no event later than two and a half months following the close of the year in which such distribution occurs.

You are under no obligation to make any capital contribution to Lehman Brothers with respect to the Portfolio Investment or Your Notional Interest therein. However, payments to be made to you in connection with Your Notional Interest are conditioned on your continuing employment in good standing with Lehman Brothers.

Not withstanding any of the above, if you die or become disabled (as that term is defined in the Lehman Brothers Equity Award Program) prior to the time of a distribution with respect to a Portfolio Investment, you will be entitled to receive 100% of such payment from Lehman Brothers.

Payments to be made to you as set forth herein may not be transferred, assigned or pledged by you to any other person under any circumstances whatsoever without the prior written consent of Lehman Brothers, but shall be made to your successors or assignees in the event of your death.

| | | Amount of Real Estate Partners II Investment [1] | Your Notional | |
| Date | Portfolio Investment | | Interest in the Portfolio Investment | Percentage of Partners' Interest |
|---|---|---|---|---|
| 1/26/07 | Sweetwater | $22,200,000 | $11,100 | 0.0500% |
| 1/11/07 | Capstar Hotel Portfolio | $25,000,000 | $12,500 | 0.0500% |
| 5/17/07 | Rosslyn Portfolio | $42,500,000 | $21,250 | 0.0500% |
| 1/19/07 | Chicago Independent Hotel | $24,600,000 | $12,300 | 0.0500% |

(1) Amounts shown represent total estimated fundings, however, your interest will apply to total actual fundings net of any portfolio investment leverage.

## SCHEDULE OF PARTICIPATION IN GENERAL PARTNERSHIP CARRIED INTEREST FOR:

**Cohen, Ken**

*$/0,000 - Finders Frees*

For:

- Lehman Brothers Real Estate Partners II;
- Lehman Brothers Real Estate Mezzanine Partners;
- The 4 transactions known as "Master 3";
- Archstone Partners;

  (collectively, the "2007 Partnerships") and

And for:
the following proposed Partnerships:

- Lehman Brothers Real Estate Partners III;
- Lehman Brothers Real Estate Mezzanine Partners II;

  (collectively, the "2008 Partnerships")

|         | CAPITAL AT WORK | POINTS    |
|---------|-----------------|-----------|
| **TOTAL** | $1,072,125    | 0.0408 %  |

| 2007 PARTNERSHIPS        | CAPITAL AT WORK | POINTS   |
|--------------------------|-----------------|----------|
| LBREP 2                  | $               | 0.0000 % |
| LBREM 1                  | $               | 0.0000 % |
| MASTER 3                 | $               | 0.0000 % |
| ARCHSTONE                | $61,875         | 0.0248 % |
| TOTAL 2007 PARTNERSHIPS  | $61,875         | 0.0043 % |

| 2008 PARTNERSHIPS        | CAPITAL AT WORK | POINTS   |
|--------------------------|-----------------|----------|
| LBREP 3                  | $702,750        | 0.0750 % |
| LBREM 2                  | $307,500        | 0.1250 % |
| TOTAL 2008 PARTNERSHIPS  | $1,010,250      | 0.0854 % |

Provided that you have worked full time and have not resigned or been terminated from Lehman Brothers (the "Firm") for cause prior to December 31, 2007 for the 2007 Partnerships and prior to December 31, 2008 for the 2008 Partnerships, you will be eligible to purchase a portion of the Firm's General Partnership interests and it's share of the profits (the "General Partnership Carried Interest") in the 2007 Partnerships and the 2008 Partnerships described above.

NOTE: PAGE 2 IS NOT PRINTED. THIS PAGE IS THE SAME FOR EVERYONE

*1/09 buy-in date - vest every quarter over 36 months. By 1/09 will be 12 months vested*

**Cohen, Kenneth**

| | |
|---|---|
| **From:** | Brett and Mark |
| **Sent:** | Wednesday, February 06, 2008 10:33 PM |
| **Subject:** | Carried Interest Letters |

All:

Mark and I understand that packages were delivered with documents regarding portions of the Carried Interest Program for 2007. Unfortunately, these documents were delivered prior to the delivery of an individual summary sheet that everyone in the carry program should have received (or will receive within the next day) which outlines and summarizes your carried interest in each of the partnerships, the summary terms of the carry program and other relevant information.

These summary sheets, along with the individual conversations with your direct manager, will hopefully answer any questions people may have regarding your carry participation.

In addition, as part of the package you received, was a request to make a payment to invest in the 2007 Partnerships, one of which was the Archstone investment. At this time, we are not requiring the payment be made for the Archstone investment. This payment will occur in the future once the structure and nature of the investment is finalized. If you have already made a payment to the firm, this will be returned to you. If you have not yet made the payment, please subtract the amount to be made for Archstone from the total amount requested.

If you have any questions relating to any of the material you have received, please do not hesitate to ask questions and feel free to discuss any questions or concerns with your manager directly.

Thanks

Brett and Mark

Brett Bossung and Mark H. Newman,
Global Co-Heads of Real Estate Private Equity
BB: +1 212 526 5350
MHN: +44 20 710 24207

1

# Lehman Brothers Archstone Associates, L.P.
## One Point Person Schedule

| | Archstone Commitment | | LP Share 99.0% | | GP Share 1.0% |
|---|---|---|---|---|---|
| **Investment funded during 2007** | | | | | |
| Archstone | $ 245,900,000 | $ | 243,441,000 | $ | 2,459,000 |

| **Allocation of Capital Call:** | Investment |
|---|---|
| A. Allocation of Capital Called during 2007 | $ 2,459,000 |
| B. Calculated on 20 points of GP Carry (1/20) | 5.00% |
| C. Cost per 1 Point of GP Carry based on Current Capital Call (A / B) | $ 122,950 |

## Lehman Brothers Archstone Associates, L.P.

### Interest Schedule for Ken Cohen

#### Dated as of December 31, 2007

*Defined terms used herein have the meanings set forth in the Amended and Restated Limited Partnership Agreement (the "Agreement") of Lehman Brothers Archstone Associates L.P. (the "Partnership"). Pursuant to the Agreement, the General Partner shall update this Interest Schedule as required from time to time to reflect changes to your Interest in the Partnership. Pursuant to the Agreement, future grants of Sharing Percentages in Portfolio Investments, Transaction Fees and Prospective Transaction Fees shall and future payment notices requiring capital contributions may be set forth in a new Interest Schedule.*

| | | |
|---|---|---:|
| 1. | Total capital commitment by members to the entity for which the Partnership acts as Managing Member ("REPE Archstone GP Holdings LLC") | $ 245,900,000.00 |
| 2. | 1% Managing Member capital commitment to REPE Archstone GP Holdings LLC | $ 2,459,000.00 |
| 3. | Capital contributions by REPE Archstone GP Holdings LLC to fund Portfolio Investments listed on Schedule A plus expenses | $ 245,900,000.00 |
| 4. | Capital Contributed by the Partnership as Managing Member of REPE Archstone GP Holdings LLC | $ 2,459,000.00 |
| 5. | Your Sharing Percentage Portfolio Investments, Transaction Fees and Prospective Transaction Fees listed in Schedule A attached hereto | 0.124% |
| 6. | **Your required Capital Contributions to the Partnership pursuant to this notice (line 4 multiplied by line 5)** | $ 3,043.01 |
| 7. | Your aggregate Cost of Carry in respect of your required Capital Contributions pursuant to line 6 | 55.67 |
| 8. | **Your required aggregate payment (sum of lines 6 and 7)** | $ 3,098.68 |
| 9. | The date on which the aggregate payment pursuant to this notice is due | February 7, 2008 |

Prepared by:

*Deborah Nordell*

Deborah Nordell

## Real Estate Wire Instructions

| | |
|---|---|
| Account Name: | Lehman Brothers Inc. |
| Bank Name: | JP Morgan Chase Bank NA |
| Account No.: | ███4-221 |
| ABA Number: | 021000021 |
| For Further Credit to | |
| Account Name: | Lehman Brothers Capital Calls ⌐ RE |
| Account Number: | ███5660 |

**Cohen, Kenneth**

| | |
|---|---|
| **From:** | Archer, Mary Pat |
| **Sent:** | Wednesday, October 08, 2008 3:30 PM |
| **To:** | Cohen, Kenneth |
| **Subject:** | Finders awards |
| **Attachments:** | Finders awards template v2.xls |

Hi,

Attached is what they had for you. I do not know if some have paid off or not. Thanks, mpa



Finders awards
template v2.xls...

1

| | | | | | |
|---|---|---|---|---|---|
| LBREP I | Kenneth Cohen | 3131 | | 11/28/2001 | 11 West 42nd Street |
| LBREP I | Kenneth Cohen | 3131 | | 11/28/2001 | 1301 Avenue of the Americas |
| LBREP I | Kenneth Cohen | 3131 | | 11/28/2001 | 1325 G Street |
| LBREP I | Kenneth Cohen | 3131 | | 11/30/2001 | 1900 East Ocean Blvd. |
| LBREP I | Kenneth Cohen | 3131 | | 11/28/2001 | Corona Pointe |
| LBREP I | Kenneth Cohen | 3131 | | 11/28/2001 | Dark Horse |
| LBREP I | Kenneth Cohen | 3131 | | 11/28/2001 | Pacific Pointe |
| LBREP I | Kenneth Cohen | 3131 | | 11/28/2001 | Pasadena Portfolio |
| LBREP I | Kenneth Cohen | 3131 | | 11/20/2001 | Verde Mont Villas |
| LBREP I | Kenneth Cohen | 3131 | | 11/28/2001 | West Covina Portfolio |
| LBREP I | Kenneth Cohen | 3131 | | 9/26/2002 | 1500 Gateway Blvd. |
| LBREP I | Kenneth Cohen | 3131 | | 10/16/2002 | Arizona Portfolio |
| LBREP I | Kenneth Cohen | 3131 | 12/9/2002 | 5/28/2002 | Catalina and Belmar |
| LBREP I | Kenneth Cohen | 3131 | 12/9/2002 | 9/10/2002 | Commerce Office Park |
| LBREP I | Kenneth Cohen | 3131 | 12/9/2002 | 6/18/2002 | Lincoln Crossing |
| LBREP I | Kenneth Cohen | 3131 | 12/9/2002 | 5/28/2002 | Mid-Wilshire Portfolio |
| LBREP I | Kenneth Cohen | 3131 | 12/9/2002 | 1/4/2002 | Oak Creek |
| LBREP I | Kenneth Cohen | 3131 | 12/9/2002 | 2/28/2002 | Ocean III |
| LBREP I | Kenneth Cohen | 3131 | 12/9/2002 | 9/19/2002 | South Florida Portfolio |
| LBREP I | Kenneth Cohen | 3131 | 12/9/2002 | 2/13/2003 | Sunset Villas |
| LBREP I | Kenneth Cohen | 3131 | 12/9/2002 | 6/10/02 & 10/2/02 | Riverside and The Oaks |
| LBREP I | Kenneth Cohen | 3131 | 12/9/2002 | 10/15/2003 | Caruth at Lincoln Park |
| LBREP I | Kenneth Cohen | 3131 | 12/9/2002 | 9/30/2003 | The Dasco Portfolio |
| LBREP I | Kenneth Cohen | 3131 | 12/9/2002 | 9/30/2003 | IBM Facility |
| LBREP I | Kenneth Cohen | 3131 | 12/9/2002 | 7/31/2003 | Midtown Plaza |
| LBREP I | Kenneth Cohen | 3131 | 12/9/2002 | 7/22/2003 | Northlake Residential |
| LBREP I | Kenneth Cohen | 3131 | 12/9/2002 | 11/13/2003 | Oak Valley Champions |
| LBREP I | Kenneth Cohen | 3131 | 12/9/2002 | 6/11/2003 | Wyndham Mezzanine Loan |
| LBREP I | Kenneth Cohen | 3131 | 3/8/2004 | 4/21/2004 | 1200 Brickell Avenue |
| LBREP I | Kenneth Cohen | 3131 | 3/8/2004 | 10/27/2004 | 300 Spear Street |
| LBREP I | Kenneth Cohen | 3131 | 5/6/2005 | 5/6/2005 | Hawthorn Condominiums |
| LBREP I | Kenneth Cohen | 3131 | 5/6/2005 | 8/30/2004 | Bond Street |
| LBREP I | Kenneth Cohen | 3131 | 5/6/2005 | 11/5/2004 | College Park |
| LBREP I | Kenneth Cohen | 3131 | 5/6/2005 | 12/6/2004 | Kilani |
| LBREP I | Kenneth Cohen | 3131 | 5/6/2005 | 1/20/2004 | Palms at Kilani |
| LBREP I | Kenneth Cohen | 3131 | 5/6/2005 | 11/5/2004 | Landmark Portfolio |
| LBREP I | Kenneth Cohen | 3131 | 5/6/2005 | 1/9/2004 | Odyssey Condominiums |
| LBREP I | Kenneth Cohen | 3131 | 5/6/2005 | 2/2/2004 | Sheraton Old San Juan |

| | | | | | |
|---|---|---|---|---|---|
| LBREP I | Kenneth Cohen | | 5/6/2005 | 5/6/2005 | 9/24/2004 Palatine Condominiums |
| LBREP I | Kenneth Cohen | | 5/6/2005 | 5/6/2005 | 6/9/2004 Waterstone Place |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 10/10/2005 Chatsworth Park Apts. |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 10/11/2005 Duo Condominiums |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 10/11/2005 El Toro / Heritage Fields |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 10/11/2005 Haverhill Apts. |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 10/11/2005 La Cima |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 10/11/2005 Minnesota Office Portfolio |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 10/11/2005 Ocean Marine Yacht Club |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 10/11/2005 Quality Hotel Times Square |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 10/11/2005 Sears Tower |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 10/11/2005 Summit Belmont Apts. |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 10/11/2005 The Icon |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 10/11/2005 The Lansing |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 10/11/2005 The Regatta |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 12/28/2005 Loft 5 |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 12/28/2005 Plaza Harbour Island |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 12/28/2005 The Peninsula at St. Johns |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 12/29/2005 BPG Mid-Atlantic Portfolio |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 5/4/2006 Rockville Town Square |
| LBREM I | Kenneth Cohen | 8131 | 6/14/2006 | 6/14/2006 | 5/30/2006 660 Madison Avenue |
| LBREM I | Kenneth Cohen | 8131 | 5/31/2007 | 5/31/2007 | 6/7/2006 Comstock at Fremont |
| LBREM I | Kenneth Cohen | 8131 | 5/31/2007 | 5/31/2007 | 6/6/2006 Ashton Woods Apts. |
| LBREM I | Kenneth Cohen | 8131 | 5/31/2007 | 5/31/2007 | 9/18/2006 Jefferson at Congressional Village |
| LBREM I | Kenneth Cohen | 8131 | 5/31/2007 | 5/31/2007 | 1/15/2006 Trilogy Condominiums |
| LBREM I | Kenneth Cohen | 8131 | 5/31/2007 | 5/31/2007 | 1/17/2006 Metropolitan Warner Center |
| LBREM I | Kenneth Cohen | 8131 | 5/31/2007 | 5/31/2007 | 10/23/2007 ACC4 |
| LBREM I | Kenneth Cohen | 8131 | 5/31/2007 | 5/31/2007 | 12/13/2006 Sofitel Hotel Portfolio |
| LBREM I | Kenneth Cohen | 8131 | 10/11/2007 | 10/11/2007 | 2/27/2007 Wilshire Club View |

**EXTREMELY URGENT** Please Rush To Addressee



PRESS HARD. *YOU ARE MAKING 3 COPIES.*

FROM: (PLEASE PRINT)

Gregory Chludzinski, Esq.
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020

PHONE: 212 335-4608

FOR PICKUP OR TRACKING
Visit **WWW.usps.com**
Call 1-800-222-1811

Postage $ 1.30

Total Postage & Fees $
1.30

TO: (PLEASE PRINT)

Lehman Brothers Inc. Claims
Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5015
New York, NY

PHONE 866 841-7868

**RECEIVED**
JUN 01 2009

EXPRESS MAIL

Mailing Label
Label 11-8, March 2004

Post Office To Addressee

UNITED STATES POSTAL SERVICE

NEW YORK, N.Y. 10...
MAY 29 2009
FIRST CLASS

UNITED STATES POSTAGE
$ 18.30
PITNEY BOWES
02 1A
0004396594
MAY 29 2009
MAILED FROM ZIP CODE 10020

*L 1-800-222-1811*



**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York  10020-1104
www.dlapiper.com

Jeremy R. Johnson
jeremy.johnson@dlapiper.com
**T**  212.335.4762
**F**  212.884.8562

May 29, 2009

Lehman Brothers Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5015
New York, NY 10150-5015

**Re:    Proof of Claim - Mr. Kenneth Cohen**

Enclosed please find the United States Bankruptcy Court Proof of Claim form, Addendum and supporting
documentation for Mr. Kenneth Cohen's claim in regards to the Lehman Brothers Inc. SIPA liquidation
proceeding (case number: 08-1420 (JMP) SIPA).

We have provided a second copy of the Proof of Claim form, please stamp it and return it to me in the
enclosed self addressed stamped envelope.

Please don't hesitate to contact me if you have any questions regarding this filing.  Thank you for your
assistance in this matter.

Very truly yours,

Jeremy R. Johnson

**EXHIBIT 2**

# Delaware

PAGE    1

## The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS FILED FROM AND INCLUDING THE RESTATED CERTIFICATE OR A MERGER WITH A RESTATED CERTIFICATE ATTACHED OF "LEHMAN BROTHERS INC." AS RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

RESTATED CERTIFICATE, CHANGING ITS NAME FROM "SHEARSON LOEB RHOADES INC." TO "SHEARSON/AMERICAN EXPRESS INC.", FILED THE THIRD DAY OF SEPTEMBER, A.D. 1981, AT 9 O'CLOCK A.M.

CERTIFICATE OF MERGER, FILED THE TWENTY-THIRD DAY OF MARCH, A.D. 1982, AT 9:20 O'CLOCK A.M.

CERTIFICATE OF MERGER, FILED THE FOURTH DAY OF JUNE, A.D. 1982, AT 1:15 O'CLOCK P.M.

CERTIFICATE OF MERGER, FILED THE SEVENTH DAY OF OCTOBER, A.D. 1983, AT 4 O'CLOCK P.M.

CERTIFICATE OF AMENDMENT, CHANGING ITS NAME FROM "SHEARSON/AMERICAN EXPRESS INC." TO "SHEARSON LEHMAN/AMERICAN EXPRESS INC.", FILED THE ELEVENTH DAY OF MAY, A.D. 1984, AT 1 O'CLOCK P.M.

CERTIFICATE OF OWNERSHIP, FILED THE TWENTY-EIGHTH DAY OF



0620706    8100X

071013719

Harriet Smith Windsor
Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 5997392

DATE: 09-13-07

# Delaware

PAGE   2

### The First State

DECEMBER, A.D. 1984, AT 10 O'CLOCK A.M.

CERTIFICATE OF OWNERSHIP, FILED THE THIRTY-FIRST DAY OF
JANUARY, A.D. 1985, AT 10 O'CLOCK A.M.

CERTIFICATE OF AMENDMENT, CHANGING ITS NAME FROM "SHEARSON
LEHMAN/AMERICAN EXPRESS INC." TO "SHEARSON LEHMAN BROTHERS
INC.", FILED THE FIFTEENTH DAY OF MARCH, A.D. 1985, AT 10
O'CLOCK A.M.

CERTIFICATE OF OWNERSHIP, FILED THE THIRTIETH DAY OF MAY,
A.D. 1985, AT 10 O'CLOCK A.M.

CERTIFICATE OF MERGER, FILED THE ELEVENTH DAY OF JULY, A.D.
1986, AT 11 O'CLOCK A.M.

CERTIFICATE OF OWNERSHIP, FILED THE TWENTY-FOURTH DAY OF
DECEMBER, A.D. 1986, AT 10 O'CLOCK A.M.

CERTIFICATE OF AMENDMENT, FILED THE FIFTEENTH DAY OF
OCTOBER, A.D. 1987, AT 10 O'CLOCK A.M.

CERTIFICATE OF AMENDMENT, CHANGING ITS NAME FROM "SHEARSON
LEHMAN BROTHERS INC." TO "SHEARSON LEHMAN HUTTON INC.", FILED
THE TWENTY-NINTH DAY OF JANUARY, A.D. 1988, AT 10 O'CLOCK A.M.

CERTIFICATE OF MERGER, FILED THE SIXTH DAY OF APRIL, A.D.
1988, AT 10 O'CLOCK A.M.



0620706  8100X

071013719

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 5997392

DATE: 09-13-07

# Delaware

PAGE 3

### The First State

CERTIFICATE OF OWNERSHIP, FILED THE TWENTY-SECOND DAY OF JUNE, A.D. 1989, AT 10 O'CLOCK A.M.

CERTIFICATE OF OWNERSHIP, FILED THE SECOND DAY OF OCTOBER, A.D. 1989, AT 8:30 O'CLOCK A.M.

CERTIFICATE OF AMENDMENT, CHANGING ITS NAME FROM "SHEARSON LEHMAN HUTTON INC." TO "SHEARSON LEHMAN BROTHERS INC.", FILED THE FIRST DAY OF AUGUST, A.D. 1990, AT 8:30 O'CLOCK A.M.

CERTIFICATE OF AMENDMENT, CHANGING ITS NAME FROM "SHEARSON LEHMAN BROTHERS INC." TO "LEHMAN BROTHERS INC.", FILED THE SECOND DAY OF AUGUST, A.D. 1993, AT 8:30 O'CLOCK A.M.

CERTIFICATE OF MERGER, FILED THE TWENTY-SEVENTH DAY OF MAY, A.D. 1994, AT 10 O'CLOCK A.M.

CERTIFICATE OF OWNERSHIP, FILED THE THIRTY-FIRST DAY OF AUGUST, A.D. 1995, AT 10 O'CLOCK A.M.

CERTIFICATE OF CHANGE OF REGISTERED AGENT, FILED THE FOURTEENTH DAY OF MARCH, A.D. 1996, AT 9 O'CLOCK A.M.

CERTIFICATE OF DESIGNATION, FILED THE THIRTIETH DAY OF APRIL, A.D. 1996, AT 9 O'CLOCK A.M.



0620706   8100X

071013719

_Harriet Smith Windsor_
Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 5997392

DATE: 09-13-07

**RESTATED CERTIFICATE OF INCORPORATION**

OF

**SHEARSON LOEB RHOADES INC.**

Under Section 245 of the Delaware General Corporation Law

F I L E D

SEP 3 1981

*[signature]*
SECRETARY OF STATE

We, Sanford I. Weill, Chairman of the Board, and Barbara C. Kullen, Secretary, of Shearson Loeb Rhoades Inc., a corporation existing under the laws of the State of Delaware (the "Corporation"), do hereby certify as follows:

First: That the Corporation was originally incorporated under the name Carter, Berlind & Weill, Inc. on January 21, 1965.

Second: That the amendments to the Corporation's Certificate of Incorporation, as heretofore restated and amended and supplemented, effected by this Certificate are as follows:

1. To change the name of the Corporation to Shearson/American Express Inc.

2. To reduce the authorized capital stock of the Corporation.

3. To eliminate the right and option of the Corporation to purchase shares of its Common Stock acquired by employees upon the exercise of options.

4. To empower the Board of Directors of the Corporation to determine the net book value of shares of Common Stock whenever the Corporation elects to issue Preferred Stock in exchange for shares of Common Stock held by an "approved person" or a "parent" which ceases to qualify as such.

5. To provide that dividends may not be declared which would impair capital.

6. To omit the names and addresses of incorporators.

7. To eliminate, as duplicative of statutory law, provisions to the effect that (a) the Corporation is to have perpetual existence, (b) stockholders will not be subject to the payment of corporate debts, and (c) no preemptive rights exist.

8. To conform the provisions relating to indemnification and transactions between the Corporation and its officers and directors to the Delaware General Corporation Law as currently in effect.

9. To provide that the election of directors need not be by ballot.

Third: That the amendments and the restatement of the Certificate of Incorporation, as heretofore restated and amended and supplemented, have been duly adopted in accordance with the provisions of Sections 242 and 245 of the General Corporation Law of the State of Delaware.

Fourth: That the text of the Certificate of Incorporation of the Corporation, as heretofore restated and amended and supplemented, is hereby restated, as further amended by this Certificate, to read in full as follows:



# RESTATED CERTIFICATE OF INCORPORATION

## OF

## SHEARSON/AMERICAN EXPRESS INC.

---

**Pursuant to the General Corporation Law of the State of Delaware**

---

### ARTICLE I

#### NAME

The name of the corporation (hereinafter referred to as the "Corporation") is:

**SHEARSON/AMERICAN EXPRESS INC.**

### ARTICLE II

#### REGISTERED OFFICE AND REGISTERED AGENT

The registered office of the Corporation in the State of Delaware is located at No. 100 West Tenth Street, in the City of Wilmington, County of New Castle. The name and address of its registered agent is The Corporation Trust Company, No. 100 West Tenth Street, Wilmington, Delaware 19801.

### ARTICLE III

#### CORPORATE PURPOSES AND POWERS

The nature of the business of the Corporation and the objects and purposes to be transacted, promoted or carried on by it are:

(a) To engage in the securities business, including each and every field, portion and aspect thereof, in any and all capacities whatsoever. As used in this certificate the term "securities" shall include bonds, debentures, notes, bills, evidences of indebtedness, shares of stock, warrants, options, rights, certificates, receipts, certificates of interest or participations in any profit-sharing agreement, collateral trust certificates, pre-organization certificates or subscriptions, investment contracts, voting trust certificates, fractional undivided interests in oil, gas or other mineral rights, certificates of deposit or certificates of interest or participation in, temporary or interim certificates for, receipts for, guarantees of, or warrants or rights to subscribe to or purchase, any of the foregoing, or any other instruments or interests in the nature of securities of any kind whatsoever, issued or created by any person or public authority; the term "person" shall include any person, partnership, firm, corporation, company, joint stock company, syndicate, association, trust or other business organization, domestic or foreign; the term "public authority" shall include the United States of America and any other country or nation and any state, territory, province, dominion, protectorate, possession, colony, dependency, municipality, district, or other political subdivision, branch, agency or instrumentality thereof; and the term "issuer" shall include any person or public authority issuing, creating or responsible for any securities.

(b) To act as an underwriter, broker, trader or investor in or with respect to securities.

(c) To purchase, subscribe for, acquire, hold, own, lend, sell, exchange, assign, transfer, mortgage, pledge, hypothecate, guarantee, deal in and otherwise effect any and all transactions, of any kind, character or description whatsoever, in or with respect to securities.

(d) To hold as custodian, nominee or otherwise securities belonging to others, and to exercise while the holder or owner of securities all the rights, powers and privileges of ownership, including the right to vote thereon and give consents with respect thereto, whether by proxy or otherwise.

(e) To do any and all acts and things necessary, advisable or desirable for the preservation, protection, improvement and enhancement in value of any securities held or owned by the Corporation or in which the Corporation is interested, and to aid by loan, subsidy, guaranty or otherwise the issuers of such securities or any other person in which the Corporation is interested.

(f) To render advisory, investigatory, supervisory, investment, managerial or other services to any person or public authority, whether or not in connection with the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person or public authority or in connection with the issuance, underwriting, sale or distribution of any securities, and to act as an investment advisor, pursuant to an investment advisory contract or otherwise, to any investment company or common trust fund or to any other person or public authority.

(g) To cause, and to promote or take charge of, the promotion, organization, reorganization, recapitalization, liquidation, consolidation or merger of any person or public authority.

(h) To maintain with and for customers accounts with respect to securities and/or commodities of any kind, character or description whatsoever, including margin accounts, and to guarantee the signatures of customers and others.

(i) To make and issue any and all trust, depositary, interim and other receipts and certificates of deposit for any securities or interest therein.

(j) To acquire and hold membership in, or otherwise secure membership or trading privileges on, any securities exchange, board of trade, commodities exchange, clearing corporation or association, or similar institutions located within or without the United States, and to acquire and hold membership in any association of brokers, securities dealers or commodities dealers, or in any other organization or association.

(k) To purchase or otherwise acquire, borrow, hold, own, lend, mortgage, pledge, turn to account in any manner, import, export, sell, distribute or otherwise dispose of, and generally to deal in, commodities and products (including any future interest therein) and merchandise, articles of commerce, materials, personal and real property of every kind, character and description whatsoever, and any interests therein or instruments evidencing rights to acquire such interests, either as principal or as a factor or broker, or as commercial, sales, business, or financial agent or representative, general or special, or in any other capacity whatsoever for the account of any person or public authority, and in connection therewith or otherwise to guarantee any and all obligations relating to transactions made on any commodities exchange, board of trade or similar institution.

(l) To buy, sell and deal in foreign exchange and in notes, open accounts and other similar evidences of debt.

(m) To act in any capacity whatsoever as financial, commercial or business agent, factor, broker or representative, general or special, for any person or public authority.

(n) To engage in any business or transaction relative to petroleum, petroleum products, gas and other minerals and mineral products, and to purchase or otherwise acquire, hold, own, lease, sell or otherwise dispose of, exercise, exchange, mortgage, pledge, explcit, drill upon, deal in and otherwise turn to account any and all lands and interests in lands in, on or under which petroleum, gas and other minerals are or may be located and any and all interests in petroleum, petroleum products, gas and other minerals and mineral products.

(o) To transact a general real estate agency and brokerage business, including acting as agent, broker or attorney in fact for any person or public authority in sale and leaseback transactions and generally in buying, selling and dealing in real property and any interests and estates therein, on commission or otherwise; renting and managing of estates; making, arranging for or obtaining loans

2

upon such property; and supervising, managing and protecting such property and all loans, interests in and claims affecting the same.

(p) To engage in any commercial, mercantile, manufacturing, industrial or trading business of any kind, character or description whatsoever, and to do all things incidental to such business.

(q) To make, enter into and carry out any arrangements with any person or public authority; to obtain therefrom or otherwise to acquire, whether by purchase, lease, assignment or otherwise, any powers, rights, privileges, immunities, franchises, guaranties, grants and concessions; and to acquire, hold, own, exercise, exploit, dispose of or realize upon the same, all in connection with any business, object or purpose of the Corporation.

(r) To cause or allow the legal title to, or any legal or equitable interest in, any security or any other real or personal property of the Corporation to remain or be vested or registered in the name of any other person, whether upon trust for or as agent or nominee of the Corporation or otherwise for its account or benefit.

(s) To enter into any lawful arrangements for sharing profits, union of interest, reciprocal concession or cooperation with any person or public authority in the carrying on of any business, object or purpose of the Corporation.

(t) To acquire all or any part of the goodwill, rights, properties and business of any person engaged in any business, object or purpose similar to any business, object or purpose which the Corporation is authorized to transact, promote or carry on, to pay for the same in cash or in any security or securities issued by the Corporation or any other person or otherwise; to hold, conduct, utilize and in any manner dispose of the whole or any part of the goodwill, rights, properties or business so acquired; and to assume in connection therewith any liabilities or obligations of such person.

(u) To borrow money for any business, object or purpose of the Corporation from time to time without limit as to amount; to draw, make, accept, endorse, execute and issue promissory notes, drafts, bills of exchange, warrants, bonds, debentures and other negotiable or non-negotiable instruments and evidences of indebtedness; to secure the payment thereof and of the interest thereon by any mortgage on, or any pledge, conveyance or assignment in trust of, the whole or any part of the assets of the Corporation, real, personal or mixed, including contract rights, whether at the time owned or thereafter acquired; and to sell, assign, mortgage, pledge or otherwise dispose of any securities issued by the Corporation for any business, object or purpose of the Corporation. To lend to others any of its money or other property, with or without security, and to guarantee the loans and obligations of others, in each case for any business, object or purpose of the Corporation and from time to time without limit as to amount.

(v) To purchase, hold, sell, transfer, reissue or cancel shares of its own capital stock or any other securities issued by it.

(w) To do everything necessary, proper, advisable or convenient for the accomplishment of any of the purposes or the attainment of any of the objects or the furtherance of any of the powers herein provided for and to do every other act and thing incidental thereto or in connection therewith.

(x) To engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

## ARTICLE IV

### CAPITAL STOCK

*Shares and Classes Authorized.* The aggregate number of shares of capital stock of all classes which the Corporation shall have authority to issue is twenty thousand (20,000) shares, of which ten thousand (10,000) shares are to be Common Stock of the par value of ten cents ($.10) each and ten thousand (10,000) shares are to be Preferred Stock of the par value of ten cents ($.10) each.

3

*Description of Capital Stock.* The voting powers, designations, preferences and relative participating, optional or other special rights, and the qualifications, limitations or restrictions thereof, of the classes of stock of the Corporation which are fixed by this Certificate of Incorporation, and the authority vested in the Board of Directors to fix by resolution or resolutions providing for the issue of Preferred Stock and the voting powers, designations, preferences and relative participating, optional or other special rights, and the qualifications, limitations or restrictions thereof, of the shares of Preferred Stock which are not fixed by the Certificate of Incorporation, are as follows:

## PREFERRED STOCK

1.  The Preferred Stock may be issued from time to time in one or more series, each such series to have such distinctive designation or title as may be fixed by the Board of Directors prior to the issuance of any shares thereof.  Each such series may differ from every other series already outstanding as may be determined from time to time by the Board of Directors prior to the issuance of any shares thereof, in any or all of the following, but in no other, respects:

( a ) The rate of dividend, if any, which the Preferred Stock of any such series shall be entitled to receive, whether the dividends of such series shall be cumulative or non-cumulative and, if such dividends shall be cumulative, the date from which they shall be cumulative.

( b ) The right or obligation, if any, of the Corporation to redeem shares of Preferred Stock of any series and the amount per share which the Preferred Stock of any such series shall be entitled to receive in case of the redemption thereof, and the right of the Corporation, if any, to reissue any such shares after the same shall have been redeemed.

( c ) The amount per share which the Preferred Stock of any such series shall be entitled to receive in case of the voluntary liquidation, dissolution or winding up of the Corporation, or in case of the involuntary liquidation, dissolution or winding up of the Corporation.

( d ) The right, if any, of the holders of Preferred Stock of any such series to convert the same into other classes of stock, and the terms and conditions of such conversion.

( e ) The voting power, if any, of the holders of Preferred Stock of any series, and the terms and conditions under which they may exercise such voting power.

( f ) The terms of the sinking fund or fund of a similar nature, if any, to be provided for the Preferred Stock of any such series.

The description and terms of the Preferred Stock of each series in respect of the foregoing particulars shall be fixed and determined by the Board of Directors by appropriate resolution or resolutions at or prior to the time of the authorization of the issue of the original shares of each such series.

2.  In case the stated dividends and the amounts payable on liquidation, dissolution or winding up of the Corporation are not paid in full, the stockholders of all series of the Preferred Stock shall share ratably in the payment of dividends, including accumulations, if any, in accordance with the sums which would be payable on such shares if all dividends were declared and paid in full, and in any distribution of assets other than by way of dividends, in accordance with the sums which would be payable on such distribution if all sums payable were discharged and paid in full.

3.  The holders of the Preferred Stock shall be entitled to receive, when and as declared by the Board of Directors, out of funds legally available therefor, preferential dividends in cash at, but not exceeding, the annual rate fixed for each particular series.  The holders of the Preferred Stock shall not be entitled to receive any dividends thereon other than dividends referred to in this paragraph 3.

4.  So long as any of the Preferred Stock remains outstanding, in no event shall any dividend whatever, whether in cash or other property (other than in shares of Common Stock), be paid or declared on the Common Stock by the Corporation unless (a) the full dividends of the Preferred Stock for all past dividend periods from the respective date or dates on which they became cumulative shall have been paid

4

and the full dividend thereon for the then current quarter-yearly dividend period shall have been paid or declared and a sum set apart sufficient for the payment thereof, and (b) if at any time the Corporation is obligated to retire or redeem shares of any series of the Preferred Stock pursuant to a sinking fund or a fund of a similar nature or otherwise, all arrears, if any, in respect of the retirement or redemption of the Preferred Stock of all such series shall have been made good. Subject to the foregoing provisions and not otherwise, such dividends (payable in cash, stock or otherwise) as may be determined by the Board of Directors may be declared and paid on the Common Stock in accordance with paragraph 8 of this Article IV, as the case may be, from time to time out of the remaining funds of the Corporation legally available therefor, and the Preferred Stock shall not be entitled to participate in any such dividend, whether payable in cash, stock or otherwise. No limitations, conditions or restrictions whatever are imposed by the provisions of this paragraph 4 upon the purchase or redemption or other acquisitions by the Corporation of any class or classes of any capital stock of the Corporation.

5. In the event of any liquidation, dissolution or winding up of the Corporation, whether voluntary or involuntary, before any distribution or payment shall be made to the holders of the Common Stock, the holders of the Preferred Stock of each series shall be entitled to be paid in cash the applicable liquidation price per share determined in the manner, or in the amount, fixed at the time of the original authorization of issuance of shares of such respective series, together with a sum, in the case of each share of the Preferred Stock, computed at the annual dividend rate for the series of which the particular share is a part from the date on which dividends on such share became cumulative to the date fixed for such distribution or payment less the aggregate amount of all dividends theretofore and on such distribution or payment date paid thereon. If such payment shall have been made in full to the holders of the Preferred Stock, the remaining assets and funds of the Corporation shall be distributed among the holders of the Common Stock.

6. Notice of every redemption of Preferred Stock at the option of the Board of Directors shall be mailed at least 30 days in advance of the date determined by the Board of Directors for such redemption (herein called the "redemption date") to each holder of shares so to be redeemed at his address as the same shall appear on the books of the Corporation as of the date of mailing such notice. Such notice shall state the redemption date and the class and number of shares to be redeemed. The holder or holders of the shares of such stock to be redeemed shall deliver the certificate or certificates representing such shares, properly endorsed for transfer, to the Corporation at its principal place of business on the redemption date, against payment therefor. Any Federal or State documentary stamp tax payable on the transfer to the Corporation of the shares to be redeemed shall be paid by the Corporation. The shares of such stock to be redeemed shall be selected in such manner as the Board of Directors may determine, it being expressly understood that any such redemption need not be ratable among the holders of any class or classes of the Corporation's capital stock and may be limited to all or part of the shares of one or more classes of the stock held by one or more holders of stock. The Board of Directors shall have full power and authority, subject to the limitations and provisions herein contained, to prescribe the terms and conditions upon which such stock shall be redeemed from time to time. If any notice of redemption shall have been given as aforesaid, and if on or before the redemption date the funds necessary for such redemption shall have been set aside by the Corporation, separate and apart from its other funds, in trust for the pro rata benefit of the holder or holders of the shares so called for redemption, then, from and after the redemption date, notwithstanding that any certificates for shares of stock so called for redemption shall not have been surrendered for cancellation, the shares represented thereby shall not be deemed outstanding, the right to receive any dividends thereon shall cease to accrue from and after the redemption date and all rights of the holder or holders of the shares of stock so called for redemption shall forthwith, after the redemption date, cease and terminate, excepting only the right to receive the amount payable in respect of such redemption but without interest. Any moneys so set aside by the Corporation and unclaimed at the end of five years from the redemption date shall, to the extent permitted by applicable law, revert to the general funds of the Corporation, after which reversion such funds shall become contributions to the capital of the Corporation and the holder or holders of such shares shall have no further claim or right to such funds.

5

## COMMON STOCK

7. Except as otherwise required by law and except as expressly provided in this Certificate of Incorporation or in any resolution or resolutions adopted by the Board of Directors pursuant to authority expressly vested in it by the foregoing provisions of this Article IV with respect to the Preferred Stock, the holders of the Common Stock (i) shall have the exclusive voting rights for the election of directors and for all other purposes, each holder of Common Stock being entitled to one vote for each share thereof held by such holder except as otherwise required by law, and (ii) shall be entitled to receive dividends declared payable in such property or shares of the capital stock of the Corporation when and as declared by the Board of Directors.

## ARTICLE V

### RESTRICTIONS ON DIVIDENDS AND OTHER PAYMENTS

1. Notwithstanding any other provision contained herein, the Corporation shall not be required to declare or pay any dividend, or redeem, purchase or make any other payment or distribution in respect of, any share of its capital stock if such declaration, payment, redemption, purchase or other payment or distribution would be contrary to any term or provision then in effect of (i) any constitution or any rule or regulation of any securities or commodities exchange, board of trade, clearing corporation or association or any similar organization of which the Corporation is a member or with which it has trading or other privileges, or (ii) any rule or regulation of the Securities and Exchange Commission, including without limitation Rule 15c3-1 under the Securities Exchange Act of 1934, or of any other governmental body having appropriate authority, or (iii) any evidence of indebtedness of the Corporation or any agreement under or pursuant to which any indebtedness of the Corporation shall be outstanding, or (iv) any applicable law (including without limitation the General Corporation Law of Delaware).

2. No dividend shall be declared or paid which shall impair the capital of the Corporation nor shall any distribution of assets be made to any holder of the Corporation's capital stock unless the value of the assets of the Corporation remaining after such payment or distribution is at least equal to the aggregate of its debts and liabilities, including capital.

## ARTICLE VI

### RIGHT OF CORPORATION TO EXCHANGE SHARES
### OF PREFERRED STOCK FOR SHARES OF COMMON STOCK

1. In order to enable the Corporation to qualify for trading privileges or other privileges on any of the various securities exchanges, boards of trade, commodities exchanges, clearing corporations or associations and/or other similar organizations located within or without the United States, whether as a member corporation thereof or otherwise, and to continue so qualified in good standing, and in order to insure that the business of the Corporation will be carried on in a manner consonant with the Corporation's responsibilities to the public as an organization so qualified, all shares of stock of the Corporation shall at all times be held subject to all of the agreements, conditions and restrictions set forth in this Certificate of Incorporation, the provisions of which shall at all times apply equally both to an original holder of shares and to each and every subsequent holder thereof, except as herein specifically otherwise provided, and each holder of shares of stock of the Corporation by the acceptance of a stock certificate representing such shares agrees with the Corporation and with each other holder of shares of the Corporation, in consideration of such agreement of each such other holder, to such agreements, conditions and restrictions, as hereinafter set forth.

2. Whenever a holder of shares of Common Stock of the Corporation is required to be approved by the constitution or rules of the New York Stock Exchange or any other securities exchange, board of trade, commodities exchange, clearing corporation or association, or similar organization in which the Corporation has membership privileges (collectively referred to as the "Exchange") and such holder fails or ceases to be so approved, the Corporation is hereby authorized at its option to issue shares of Preferred Stock authorized by Article IV in exchange for shares of outstanding Common Stock of the Corporation held by such holder, the Preferred Stock to have a voluntary liquidation preference equal to the aggregate

6

net book value of the shares of Common Stock of the Corporation so exchanged, as determined by the Board of Directors; *provided, however*, that the number of shares of Common Stock so exchanged shall not exceed that number of shares required to reduce such person's ownership of Common Stock below that level at which a holder of Common Stock is required to be approved. Such Preferred Stock shall not have general voting powers and shall not be convertible into Common Stock or other capital stock or securities of the Corporation having general voting powers.

3. Whenever any parent of the Corporation within the meaning of the constitution or rules of the Exchange fails or ceases to satisfy the requirements of the constitution or rules of the Exchange with respect to a parent, the Corporation is hereby authorized at its option to issue shares of its Preferred Stock authorized by Article IV in exchange for shares of outstanding Common Stock of the Corporation held by such parent, the Preferred Stock to have a voluntary liquidation preference equal to the aggregate net book value of the shares of Common Stock of the Corporation so exchanged, as determined by the Board of Directors; *provided, however*, that the number of shares of Common Stock so exchanged shall not exceed that number of shares required to reduce such parent's direct or indirect ownership of such Common Stock below that level which enables such parent to exercise a controlling influence over the management or policies of the Corporation. Such Preferred Stock shall not have general voting powers and shall not be convertible into Common Stock or other capital stock or securities having general voting powers.

4. Whenever shares of Common Stock are to be exchanged as provided in paragraphs 2 and 3 of this Article VI, the Corporation shall forthwith mail by first class registered mail written notice of exchange at least 30 days in advance of the date designated for such exchange (herein called the exchange date) to the holder of shares of Common Stock of the Corporation so to be exchanged at his address as it appears on the books of the Corporation. Such notice shall state the time and place of the exchange and the number of shares of Preferred Stock and Common Stock of the Corporation to be exchanged, and give the designations, preferences and relative, participating, optional or other special rights and qualifications, limitations or restrictions of the Preferred Stock. After the notice of exchange has been given as aforesaid and after the Board of Directors has duly authorized the shares of Preferred Stock to be issued in exchange for the shares of Common Stock of the Corporation, the person who is required to be approved by the Exchange or the parent within the meaning of the constitution and rules of the Exchange, as the case may be, holding such shares of Common Stock of the Corporation shall surrender on the exchange date the certificate or certificates for the shares of Common Stock of the Corporation so required to be exchanged. Notwithstanding that any certificate for shares of Common Stock of the Corporation required to be exchanged has not been surrendered for exchange, such person or parent shall cease to possess after the exchange date any of the rights of holders of Common Stock of the Corporation with respect to such shares called for exchange, except the right to receive the shares of Preferred Stock. Nothing herein shall be deemed to affect the right of any such holder to sell or otherwise dispose of his shares of Common Stock of the Corporation prior to the exchange date and in the event the holder, before the exchange date, sells or otherwise disposes of the number of shares required to be exchanged, the exchange shall not take place.

5. The net book value of any shares of stock of the Corporation exchangeable for Preferred Stock pursuant to the provisions of paragraphs 2 or 3 of this Article VI shall be determined by the Corporation as of the end of the month used by the Corporation for accounting purposes next following the month used by the Corporation for accounting purposes during which the event occurs which gives rise to such right and option of the Corporation, as set forth in paragraph 1 of this Article VI, or as of the close of the fiscal year of the Corporation in which such event occurs, whichever shall occur earlier irrespective of when the Corporation receives actual knowledge of the event giving rise thereto.

## ARTICLE VII

### INDEMNIFICATION

The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership,

7

joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of *nolo contendere* or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

2.  The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against expenses (including attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Corporation and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of his duty to the Corporation unless and only to the extent that the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which such court shall deem proper.

3.  To the extent that a director, officer, employee or agent of the Corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in paragraphs 1 or 2 of this Article VII or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith.

4.  Any indemnification under paragraph 1 or 2 of this Article VII (unless ordered by a court) shall be made by the Corporation only as authorized in the specific case upon a determination that indemnification of the director, officer, employee or agent is proper in the circumstances because he has met the applicable standard of conduct set forth in paragraph 1 or 2 of this Article VII, as the case may be. Such determination shall be made (1) by the Board of Directors by a majority vote of a quorum consisting of directors who were not parties to such action, suit or proceeding, or (2) if such a quorum is not obtainable, or, even if obtainable a quorum of disinterested directors so directs, by independent legal counsel in a written opinion, or (3) by the stockholders.

5.  Expenses incurred in defending a civil or criminal action, suit or proceeding may be paid by the Corporation in advance of the final disposition of such action, suit or proceeding as authorized by the Board of Directors in the specific case upon receipt of an undertaking by or on behalf of the director, officer, employee or agent to repay such amount unless it shall ultimately be determined that he is entitled to be indemnified by the Corporation as authorized in this Article VII.

6.  The indemnification provided by this Article VII shall not be deemed exclusive of any other rights to which a person seeking indemnification may be entitled under any by-law, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in his official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such person.

7.  The Corporation shall, to the extent authorized by the Board of Directors, purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against him and incurred by him in any such capacity, or arising out of his status as such, whether or not the

8



Corporation would have the power to indemnify him against such liability under the provisions of the Delaware General Corporation Law.

8. For purposes of this Article VII, references to "the Corporation" shall include, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its directors, officers, and employees or agents, so that any person who is or was a director, officer, employee or agent of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, shall stand in the same position under the provisions of this Article VII with respect to the resulting or surviving corporation as he would have with respect to such constituent corporation if its separate existence had continued.

9. For purposes of this Article VII, references to "other enterprises" shall include employee benefit plans; references to "fines" shall include any excise taxes assessed on a person with respect to an employee benefit plan; references to "serving at the request of the Corporation" shall include any service as a director, officer, employee or agent of the corporation which imposes duties on, or involves services by, such director, officer, employee or agent with respect to an employee benefit plan, its participants, or beneficiaries; and a person who acted in good faith and in a manner he reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan shall be deemed to have acted in a manner "not opposed to the best interests of the Corporation" as referred to in this Article VII.

## ARTICLE VIII

### TRANSACTIONS WITH DIRECTORS AND OFFICERS

No contract or transaction between the Corporation and one or more of its directors or officers, or between the Corporation and any other corporation, partnership, association or other organization in which one or more of its directors or officers are directors or officers, or have a financial interest, shall be void or voidable solely for this reason, or solely because the director or officer is present at or participates in the meeting of the board or committee thereof which authorizes the contract or transaction, or solely because his or their votes are counted for such purpose, if (a) the material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the Board of Directors or the committee, and the Board of Directors or the committee in good faith authorizes the contract or transaction by the affirmative votes of a majority of the disinterested directors, even though the disinterested directors be less than a quorum, or (b) the material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the stockholders entitled to vote thereon, and the contract or transaction is specifically approved in good faith by vote of the stockholders, or (c) the contract or transaction is fair as to the Corporation as of the time it is authorized, approved or ratified by the Board of Directors, a committee thereof, or the stockholders. Common or interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or of a committee which authorizes the contract or transaction.

## ARTICLE IX

### RELIANCE BY DIRECTORS ON REPORTS AND CERTIFICATES OF OFFICERS AND OTHERS

A director of the Corporation will not be liable to any person on account of any action undertaken by him as such director or as a member of any committee of the Board of Directors in reliance in good faith upon the existence of any fact or circumstance reported or certified to the Board of Directors of the Corporation or to any committee of said Board, of which he is a member, by any officer of the Corporation or by any independent auditor, engineer or consultant retained or employed as such by the Board of Directors of the Corporation or by such committee.

9

## ARTICLE X

### COMPROMISE OR ARRANGEMENT BETWEEN
### CORPORATION AND ITS CREDITORS OR STOCKHOLDERS

Whenever a compromise or arrangement is proposed between the Corporation and its creditors or any class of them and/or between the Corporation and its stockholders or any class of them, any court of equitable jurisdiction within the State of Delaware may, on the application in a summary way of the Corporation or of any creditor or stockholder thereof, or on the application of any receiver or receivers appointed for the Corporation under the provisions of Section 291 of Title 8 of the Delaware Code or on the application of trustees in dissolution or of any receiver or receivers appointed for the Corporation under the provisions of Section 279 of Title 8 of the Delaware Code order a meeting of the creditors or class of creditors, and/or of the stockholders or class of stockholders of the Corporation, as the case may be, to be summoned in such manner as the said court directs. If a majority in number representing three-fourths in value of the creditors or class of creditors, and/or of the stockholders or class of stockholders of the Corporation, as the case may be, agree to any compromise or arrangement and to any reorganization of the Corporation as a consequence of such compromise or arrangement, the said compromise or arrangement and the said reorganization shall, if sanctioned by the court to which the said application has been made, be binding on all the creditors or class of creditors, and/or on all the stockholders or class of stockholders of the Corporation, as the case may be, and also on the Corporation.

## ARTICLE XI

### LOCATION OF BOOKS

The books of the Corporation may be kept, subject to any applicable statutory provision, outside the State of Delaware at such place or places as may be, from time to time, designated by the Board of Directors or in the By-Laws of the Corporation.

## ARTICLE XII

### SUBMISSION OF DISPUTES TO ARBITRATION

So long as the Corporation shall be a member or allied member of the New York Stock Exchange, any dispute with regard to the interpretation or application of the provisions of Article V of this Certificate of Incorporation shall be submitted to arbitration by the New York Stock Exchange in accordance with the customs, rules and regulations of said New York Stock Exchange at the time prevailing, and the decision of such arbitration shall be binding and conclusive upon the parties to any such dispute. If the Corporation shall not be a member or allied member of the New York Stock Exchange, such dispute shall be submitted to arbitration in the City of New York, New York, in accordance with the rules and regulations of the American Arbitration Association.

## ARTICLE XIII

### POWER OF DIRECTORS TO AMEND BY-LAWS

In furtherance and not in limitation of the powers conferred by statute, the Board of Directors of the Corporation is expressly authorized to make, alter, amend or repeal the By-Laws of the Corporation, except as otherwise expressly provided in any By-Laws of the Corporation made by the holders of the capital stock of the Corporation entitled to vote thereon. Any By-Law may be made, altered, amended or repealed by the holders of the capital stock of the Corporation entitled to vote thereon at any annual meeting or at any special meeting called for that purpose.

## ARTICLE XIV

### ELECTION OF DIRECTORS WITHOUT BALLOT

The election of directors need not be by ballot unless the By-Laws of the Corporation so provide.

10

In WITNESS WHEREOF, this Restated Certificate of Incorporation has been executed on the 3rd day of September, 1981.

SHEARSON LOEB RHOADES INC.

By ................................................

Sanford I. Weill
Chairman of the Board

ATTEST:

Barbara C. Kullen
Secretary

11

**FILED**

MAR 23 1982 *9:20AM*

*Eleanor C. Keebler*
SECRETARY OF STATE

CERTIFICATE OF MERGER

MERGING

THE F & M CORPORATION

INTO

SHEARSON/AMERICAN EXPRESS INC.

(Pursuant to Section 251(c) of the Delaware
General Corporation Law)

SHEARSON/AMERICAN EXPRESS INC., a corporation organized and
existing under the laws of the State of Delaware, HEREBY
CERTIFIES AS FOLLOWS:

FIRST: The name and state of incorporation of
each of the constituent corporations is as follows:

SHEARSON/AMERICAN EXPRESS INC., a
Delaware corporation

and

THE F & M CORPORATION, a Delaware
corporation

SECOND: A Plan of Reorganization and Agreement of
Merger, dated as of March 1, 1982 (the "Merger Agreement"),
has been approved, adopted, certified, executed and
acknowledged by each of the constituent corporations in
accordance with Section 251(c) of the Delaware General
Corporation Law.

THIRD: SHEARSON/AMERICAN EXPRESS INC. shall be
the surviving corporation and shall retain the name SHEARSON/
AMERICAN EXPRESS INC.

**00003**

FOURTH:  The Certificate of Incorporation of SHEARSON/AMERICAN EXPRESS INC. as presently in effect shall be the Certificate of Incorporation of the surviving corporation.

FIFTH:  Copies of the Merger Agreement, as executed in counterpart, are on file at the principal place of business of SHEARSON/AMERICAN EXPRESS INC., Two World Trade Center, New York, New York 10048.

SIXTH:  A copy of the Merger Agreement will be furnished by SHEARSON/AMERICAN EXPRESS INC., on request and without cost, to any stockholder of either constitutent corporation.

Dated: March 22, 1982

                                SHEARSON/AMERICAN EXPRESS INC.

                                By _____
                                      Peter A. Cohen
                                      Vice Chairman

ATTEST:

_____
      Barbara C. Kullen
      Secretary

00004                    -2-

FILED

JUN 4 1982  *1:15 P.M*

*Shaw C. Kenton*
SECRETARY OF STATE

CERTIFICATE OF MERGER

MERGING

THE ROBINSON-HUMPHREY COMPANY, INC.

INTO

SHEARSON/AMERICAN EXPRESS INC.

(Pursuant to Section 252(c) of the Delaware
General Corporation Law)

SHEARSON/AMERICAN EXPRESS INC., a corporation organized
and existing under the laws of the State of Delaware, HEREBY
CERTIFIES AS FOLLOWS:

FIRST:  The name and state of incorporation of each of
the constituent corporations is as follows:

| NAME | STATE OF INCORPORATION |
|------|------------------------|
| SHEARSON/AMERICAN EXPRESS INC. | Delaware |
| THE ROBINSON-HUMPHREY COMPANY, INC. | Georgia |

SECOND:  An Agreement and Plan of Merger, dated as of
May 12, 1982 (the "Merger Agreement"), has been approved, adopted,
certified, executed and acknowledged by each of the constituent
corporations in accordance with Section 252(c) of the Delaware
General Corporation law.

THIRD:  SHEARSON/AMERICAN EXPRESS INC. shall be the
surviving corporation and shall retain the name SHEARSON/AMERICAN
EXPRESS INC.

C0002

FOURTH:  The certificate of incorporation of SHEARSON/
AMERICAN EXPRESS INC. as presently in effect shall be the certifi-
cate of incorporation of the surviving corporation.

FIFTH:  An executed copy of the Merger Agreement is on
file at the principal place of business of SHEARSON/AMERICAN
EXPRESS INC., Two World Trade Center, New York, New York 10048.

SIXTH:  A copy of the Merger Agreement will be furnished
by SHEARSON/AMERICAN EXPRESS INC. on request and without cost  to
any stockholder of either constituent corporation.

SEVENTH:  The authorized capital stock of the constituent
corporation which is not a corporation of the State of Delaware is
as follows:

| Corporation | Class | Number of Shares | Par value per share |
|---|---|---|---|
| THE ROBINSON-HUMPHREY COMPANY, INC. | Voting Common Stock | 1,000,000 | $4.00 |
|  | Non-Voting Class A Common Stock | 500,000 | $4.00 |
|  | Preferred Stock | 100,000 | $50.00 |

Dated: June 4 , 1982

SHEARSON/AMERICAN EXPRESS INC.

By: _____
Peter A. Cohen
Vice Chairman

ATTEST:

Barbara C. Kullen
Secretary

C0003                    -2-

8302800346

FILED
OCT 7 1983

## CERTIFICATE OF MERGER

### MERGING

### DAVIS, SKAGGS & CO., INC.

### INTO

### SHEARSON/AMERICAN EXPRESS INC.

(Pursuant to Section 251(c) of the Delaware
General Corporation Law)

SHEARSON/AMERICAN EXPRESS INC., a corporation organized and

existing under the laws of the State of Delaware, HEREBY

CERTIFIES AS FOLLOWS:

FIRST:  The name and state of incorporation of each of

the constituent corporations is as follows:

SHEARSON/AMERICAN EXPRESS INC.,
a Delaware corporation

and

DAVIS, SKAGGS & CO., INC.,
a Delaware corporation

SECOND:  A Plan of Reorganization and Agreement of

Merger, dated as of October 1, 1983 (the "Merger Agreement"),

has been approved, adopted, certified, executed and acknowledged

by each of the constituent corporations in accordance with

Section 251(c) of the Delaware General Corporation Law.

THIRD:  SHEARSON/AMERICAN EXPRESS INC. shall be the

surviving corporation and shall retain the name

SHEARSON/AMERICAN EXPRESS INC.

00002

FOURTH:  The Certificate of Incorporation of SHEARSON/AMERICAN EXPRESS INC. as presently in effect shall be the Certificate of Incorporation of the surviving corporation.

FIFTH:  Copies of the Merger Agreement, as executed in counterpart, are on file at the principal place of business of SHEARSON/AMERICAN EXPRESS INC., Two World Trade Center, New York, New York 10048.

SIXTH:  A copy of the Merger Agreement will be furnished by SHEARSON/AMERICAN EXPRESS INC., on request and without cost, to any stockholder of either constituent corporation.

Dated:  October 1, 1983

SHEARSON/AMERICAN EXPRESS INC.

By: _____
Jeffrey B. Lane
Vice Chairman

ATTEST:

_____
Barbara C. Kullen
Secretary

-2-

C0003

FILED

MAY 11 1994  *PM*

## CERTIFICATE OF AMENDMENT TO RESTATED CERTIFICATE
## OF INCORPORATION OF SHEARSON/AMERICAN EXPRESS INC.

SHEARSON/AMERICAN EXPRESS INC., a Delaware Corporation having its registered office at No. 100 West Tenth Street, in the City of Wilmington, in the County of New Castle (the "Corporation"), hereby certifies to the Secretary of State of the State of Delaware that:

FIRST:  Article I of the Restated Certificate of Incorporation of the Corporation is hereby amended so as to read in its entirety as follows:

"Name

The name of the corporation (hereinafter referred to as the "Corporation") is:

SHEARSON LEHMAN/AMERICAN EXPRESS INC."

SECOND:  The Board of Directors of the Corporation by requisite vote adopted a resolution which set forth the foregoing amendment to the Restated Certificate of Incorporation, in accordance with Section 242 of the General Corporation Law of the State of Delaware, declaring that the amendment to the Restated Certificate of Incorporation as proposed was advisable and directing that it be submitted for action thereon by the sole stockholder of the Corporation.

THIRD:  The amendment has been consented to and authorized and approved by the holder of all the issued and outstanding stock of the Corporation, entitled to vote, by a written consent

00007

given in accordance with the provisions of Section 228 of the
General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, Shearson/American Express Inc.
has caused this Certificate to be signed on this 11th day of
May, 1984 in its name and on its behalf by its Chairman of the
Board and attested by its Assistant Secretary, pursuant to
Section 103(a) of the General Corporation Law of the State of
Delaware.

_____
Chairman of the Board

ATTEST: _____
Assistant Secretary

-2-

00008

FILED

DEC 20 1984    104

CERTIFICATE OF OWNERSHIP AND MERGER

MERGING

CHILES, HEIDER & CO., INC.

INTO

SHEARSON LEHMAN/AMERICAN EXPRESS INC.

\*\*\*\*\*

Shearson Lehman/American Express Inc., a corporation organized and existing under the laws of Delaware,

DOES HEREBY CERTIFY:

FIRST:  That this corporation was incorporated on the 21st day of January, 1965, pursuant to the General Corporation Law of the State of Delaware, the provisions of which permit the merger of a subsidiary corporation of another state into a parent corporation organized and existing under the laws of said state.

SECOND:  That this corporation owns all of the outstanding shares of Common Stock, par value $1 of the stock of Chiles, Heider & Co., Inc., a corporation incorporated on the 10th day of April, 1970, pursuant to the Nebraska Business Corporation Act of the State of Nebraska.

THIRD:  That this corporation, by the following resolutions of the Executive Committee of the Board of Directors, duly adopted by unanimous written consent of its members, dated as of December 20, 1984 filed with the minutes of the board, determined to and did merge into itself said Chiles, Heider & Co., Inc.:

>     RESOLVED, that Shearson Lehman/American Express
> Inc. merge, and it hereby does merge into itself said
> Chiles, Heider & Co., Inc., and assumes all of its
> obligations; and
>
>     FURTHER RESOLVED, that the merger shall be
> effective upon the date of filing with the Secretary
> of State of Delaware; and
>
>     FURTHER RESOLVED, that the proper officers of
> this corporation be and they hereby are directed to
> make and execute a Certificate of Ownership and
> Merger setting forth a copy of the resolutions to
> merge said Chiles, Heider & Co., Inc. and assume its
> liabilities and obligations, and the date of adoption
> thereof, and to cause the same to be filed with the
> Secretary of State and a certified copy recorded in
> the office of the Recorder of Deeds of New Castle
> County and to do all acts and things whatsoever,
> whether within or without the State of Delaware,

which may be in anywise necessary or proper to effect said merger.

FOURTH; Anything herein or elsewhere to the contrary notwithstanding this merger may be amended or terminated and abandoned by the board of directors of Shearson Lehman/American Express Inc. at any time prior to the date of filing the merger with the Secretary of State.

IN WITNESS WHEREOF, said Shearson Lehman/American Express Inc. has caused this certificate to be signed by  Philip J. Hoblin, Jr.  its  Executive Vice President , and attested by  Isabel A. Dempsey  its  Assistant Secretary, this  27th day of  Dec.  , 1984.

Shearson Lehman/American Express Inc.

By _____
Philip J. Hoblin, Jr.
Executive Vice President

ATTEST:

By _____
Assistant Secretary

8500310173

FILED

JAN 31 1985

*Michael Harkin*
*Secretary of State*

## CERTIFICATE OF OWNERSHIP AND MERGER

### MERGING

### LEHMAN BROTHERS KUHN LOEB INCORPORATED

### INTO

### SHEARSON LEHMAN/AMERICAN EXPRESS INC.

(Pursuant to Section 253 of the Delaware
General Corporation Law)

SHEARSON LEHMAN/AMERICAN EXPRESS INC., a corporation
organized and existing under the laws of the State of Delaware,
HEREBY CERTIFIES AS FOLLOWS:

First:  SHEARSON LEHMAN/AMERICAN EXPRESS INC. owns one
hundred percent (100%) of the outstanding shares of each class
of stock of LEHMAN BROTHERS KUHN LOEB INCORPORATED, a Maryland
corporation.

Second:  On January 29, 1985 the Executive Committee of
the Board of Directors of SHEARSON LEHMAN/AMERICAN EXPRESS INC.
adopted resolutions, which
resolutions provide that LEHMAN BROTHERS KUHN LOEB INCORPORATED
shall be merged into SHEARSON LEHMAN/AMERICAN EXPRESS INC. in
accordance with the terms of a certain Agreement of Merger
between SHEARSON LEHMAN/ AMERICAN EXPRESS INC. and LEHMAN
BROTHERS KUHN LOEB INCORPORATED, which Agreement of Merger
provides, among other things, that SHEARSON LEHMAN/AMERICAN
EXPRESS INC. shall assume all of the obligations of LEHMAN
BROTHERS KUHN LOEB INCORPORATED.

00014

Third: ARTICLE III, Section 1 of the By-Laws of SHEARSON LEHMAN/AMERICAN EXPRESS INC. gives the Executive Committee of the Board of Directors of SHEARSON LEHMAN/AMERICAN EXPRESS INC. the authority to adopt a certificate of ownership and merger pursuant to Section 253 of the Delaware Corporation Law.

DATED: January 29, 1985

SHEARSON LEHMAN/AMERICAN EXPRESS INC.

By: _____
Peter A. Cohen
President

ATTEST:

_____
Isabel Dempsey
Assistant Secretary

-2-

FILED

725077002

MAR 15 1985

CERTIFICATE OF AMENDMENT TO RESTATED CERTIFICATE
OF INCORPORATION OF SHEARSON LEHMAN/AMERICAN EXPRESS INC.

SHEARSON LEHMAN/AMERICAN EXPRESS INC., a Delaware corporation having its registered office at Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, in the County of New Castle (the "Corporation"), hereby certifies to the Secretary of State of the State of Delaware that:

FIRST: Article I of the Restated Certificate of Incorporation of the Corporation is hereby amended so as to read in its entirety as follows:

"Name

The name of the corporation (hereinafter referred to as the 'Corporation') is:

SHEARSON LEHMAN BROTHERS INC."

SECOND: The Board of Directors of the Corporation by requisite vote adopted a resolution which set forth the foregoing amendment to the Restated Certificate of Incorporation, in accordance with Section 242 of the General Corporation Law of the State of Delaware, declaring that the amendment to the Restated Certificate of Incorporation as proposed was advisable and directing that it be submitted for action thereon by the sole stockholder of the Corporation.

000062

THIRD:   The amendment has been consented to and authorized and approved by the holder of all the issued and outstanding stock of the Corporation, entitled to vote, by a written consent given in accordance with the provisions of Section 228 of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, Shearson Lehman/American Express Inc. has caused this Certificate to be signed on this 6th day of March, 1985 in its name and on its behalf by its Chairman of the Board and attested by its Secretary or an Assistant Secretary, pursuant to Section 103(a) of the General Corporation Law of the State of Delaware.

Peter A. Cohen
Chairman of the Board

ATTEST:

(Assistant) Secretary

00003        -2-

725 (540537

CERTIFICATE OF OWNERSHIP AND MERGER

MERGING

SHEARSON LEHMAN/AMERICAN EXPRESS REAL ESTATE CORPORATION

INTO

SHEARSON LEHMAN BROTHERS INC.

FILED

MAY 30 1985

* * * * *

Shearson Lehman Brothers Inc., a corporation organized and existing under the laws of Delaware,

DOES HEREBY CERTIFY:

FIRST: That this corporation was incorporated on the day of January 21, 1965, pursuant to the General Corporation Law of the State of Delaware.

SECOND: That this corporation owns all of the outstanding shares of the stock of Shearson Lehman/American Express Real Estate Corporation, a corporation incorporated on the 31st day of March, 1978, pursuant to the Business Corporation Law of the State of New York.

THIRD: That this corporation, by unanimous written consent of the Executive Committee of the board of Directors adopted on the day of May , 1985, determined to and did merge into itself said Shearson Lehman/American Express Real Estate Corporation.

RESOLVED, that Shearson Lehman Brothers Inc. merge, and it hereby does merge into itself said Shearson Lehman/American Express Real Estate Corporation, and assumes all of its obligations; and

FURTHER RESOLVED, that the merger shall be effective upon the date of filing with the Secretary of State of Delaware.

FURTHER RESOLVED, that the proper officers of this corporation be and they hereby are directed to make and execute a Certificate of Ownership and Merger setting forth a copy of the resolutions to merge said Shearson Lehman/American Express Real Estate Corporation and assume its liabilities and obligations, and the date of adoption thereof, and to cause the same to be filed with the Secretary of State and a certified copy recorded in the office of the Recorder of Deeds of New Castle County and to do all acts and things whatsover, whether within or without the State of Delaware, which may be in anywise necessary or proper to effect said merger; and

FOURTH:  Anything herein or elsewhere to the contrary notwithstanding this merger may be amended or terminated and abandoned by the Executive Committee of the board of directors of Shearson Lehman
Brothers Inc. at any time prior to the date of filing the merger with the Secretary of State.

IN WITNESS WHEREOF, said Shearson Lehman Brothers Inc. has caused this certificate to be signed by Vice-Chairman of the Board of Directors and attested by Barbara C. Kullen its Secretary this 29th day of    May        , 1985.

By _____
Vice-Chairman of the Board of Directors
Jeffrey B. Lane

ATTEST:

By _____
Secretary
Barbara C. Kullen

8601920104

**FILED** 11:00

JUL 11 1986

*M.W.Hole*
SECRETARY OF STATE

**DELAWARE**

### CERTIFICATE OF MERGER

OF

### SHEARSON LEHMAN CONSTRUCTION INC.

INTO

### SHEARSON LEHMAN BROTHERS INC.

\* \* \* \* \* \* \* \*

The undersigned corporation

DOES HEREBY CERTIFY:

FIRST:  That the name and state of incorporation of each of the constituent corporations of the merger is as follows:

| NAME | STATE OF INCORPORATION |
|------|------------------------|
| Shearson Lehman Construction Inc. | New York |
| Shearson Lehman Brothers Inc. | Delaware |

SECOND:  That a Plan and Agreement of Merger between the parties to the merger has been approved, adopted, certified, executed and acknowledged by each of the constituent corporations in accordance with the requirements of subsection (c) of section 252 of the General Corporation Law of the State of Delaware.

THIRD:  That the name of the surviving corporation of the merger is Shearson Lehman Brothers Inc., a Delaware corporation.

FOURTH:  That the Restated Certificate of Incorporation of Shearson Lehman Brothers Inc., a Delaware corporation shall be the Restated Certificate of Incorporation of the surviving corporation.

FIFTH:  That the executed agreement of merger is on file at the principal place of business of the surviving corporation.  The address of said principal place of business is World Financial Center, American Express Tower, 19th Floor, New York, New York 10285.

SIXTH:  That a copy of the Plan and Agreement of Merger will be furnished on request and without cost to any shareholder of any constituent corporation.

SEVENTH:  The authorized capital stock of each foreign corporation which is a party to the merger is as follows:

| Corporation | Class | Number of Shares | Par value per share |
|---|---|---|---|
| Shearson Lehman Construction Inc. | Common | 1,000 | $1.00 |

EIGHTH:  The effective date of the merger shall be ~~the~~ July 11 , 1986. ~~later of (i) the date of filing of this Certificate with the~~ Secretary of State of the State of Delaware ~~and~~ (ii) the date of filing of a Certificate of ~~Merger~~ regarding this merger with the Secretary of ~~State~~ of the State of New York, but in no event ~~later than 90 days from the date of filing hereof~~.

Dated:  July 7 , 1986

SHEARSON LEHMAN BROTHERS INC.

By_____
Peter A. Cohen, President

ATTEST:

By_____
George J. Moeschlin, III
Assistant Secretary

C0003

-2-

866358097

CERTIFICATE OF OWNERSHIP AND MERGER

MERGING

BCCR Corp.

INTO

Shearson Lehman Brothers Inc.

* * * * *

FILED
DEC 24 1986  10 Am

SECRETARY OF STATE

Shearson Lehman Brothers Inc., a corporation organized and existing under the laws of Delaware ("Corporation"),

DOES HEREBY CERTIFY:

FIRST: That this Corporation was incorporated on the 21st day of January, 1965, pursuant to the General Corporation Law of the State of Delaware.

SECOND: That this Corporation owns all of the outstanding shares of the stock of BCCR Corp., a corporation incorporated on the 16th day of June, 1986, pursuant to the General Corporation Law of the State of Delaware.

THIRD: That this Corporation, by duly adopting the following resolutions by Unanimous Written Consent of the Board of Directors on the 19th day of December, 1986, determined to and did merge into itself said BCCR Corp.:

RESOLVED, That Shearson Lehman Brothers Inc. merge, and it hereby does merge into itself said BCCR Corp., and assumes all of its obligations; and

FURTHER RESOLVED, that the merger shall become effective on the date filed with the Secretary of State of Delaware.

FURTHER RESOLVED, that the proper officers of this corporation be and they hereby are directed to make and execute a Certificate of Ownership and Merger setting forth a copy of the resolutions to merge

said BCCR Corp. and assume its liabilities and obligations, and the date of adoption thereof, and to cause the same to be filed with the Secretary of Sate and a certified copy recorded in the office of the Recorder of Deeds of New Castle County and to do all acts and things whatsoever, whether within or without the State of Delaware, which may be in anywise necessary or proper to effect said merger; and

FOURTH: Anything herein or elsewhere to the contrary notwithstanding this merger may be amended or terminated and abandoned by the board of directors of Shearson Lehman Brothers Inc. at any time prior to the date of filing the merger with the Secretary of State.

IN WITNESS WHEREOF, said Shearson Lehman Brothers Inc. has caused this certificate to be signed Peter A. Cohen its President and attested by George J. Moeschlin, III, its Assistant Secretary , this 19th day of December, 1986.

Shearson Lehman Brothers Inc.

by _____

Peter A. Cohen
President

ATTEST:

By _____

George J. Moeschlin, III
Assistant Secretary

7272880651

**FILED**

OCT 15 1987

## CERTIFICATE OF AMENDMENT TO RESTATED CERTIFICATE OF INCORPORATION OF SHEARSON LEHMAN BROTHERS INC.

SHEARSON LEHMAN BROTHERS INC., a Delaware corporation having its registered office at Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, in the County of New Castle (the "Corporation"), hereby certifies to the Secretary of State of the State of Delaware that:

FIRST: Article VII of the Restated Certificate of Incorporation of the Corporation is hereby amended so as to read in its entirety as follows:

"ARTICLE VII
INDEMNIFICATION

1.    The Corporation shall indemnify to the fullest extent permitted under and in accordance with the laws of the State of Delaware any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, trustee, employee or agent of or in any other capacity with another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to

any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful.

2. Expenses incurred in defending a civil or criminal action, suit or proceeding shall (in the case of any action, suit or proceeding against a director of the Corporation) or may (in the case of any action, suit or proceeding against an officer, trustee, employee or agent) be paid by the Corporation in advance of the final disposition of such action, suit or proceeding as authorized by the Board upon receipt of an undertaking by or on behalf of the indemnified person to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the Corporation as authorized in this Article.

3. The indemnification and other rights set forth in this ARTICLE VII shall not be exclusive of any provisions with respect thereto in the By-Laws or any other contract or agreement between the Corporation and any officer, director, employee or agent of the Corporation.

4. Neither the amendment nor repeal of this ARTICLE VII, Section 1, 2 or 3, nor the adoption of any provision of this Restated Certificate of Incorporation inconsistent with ARTICLE VII, Section 1, 2 or 3, shall eliminate or reduce the effect of this ARTICLE VII, Sections 1, 2 and 3, in respect of any matter occurring prior to such amendment, repeal or adoption of an inconsistent provision or in respect of any cause of action, suit or claim relating to any such matter which would have given rise to a right of indemnification or right to receive expenses pursuant to this ARTICLE VII, Section 1, 2 or 3, if such provision had not been

so amended or repealed or if a provision inconsistent therewith had not been so adopted.

5. No director shall be personally liable to the Corporation or any stockholder for monetary damages for breach of fiduciary duty as a director, except for any matter in respect of which such director (a) shall be liable under Section 174 of the General Corporation Law of the State of Delaware or any amendment thereto or successor provision thereto, or (b) shall be liable by reason that, in addition to any and all other requirements for liability, he:

> (i)  shall have breached his duty of loyalty to the Corporation or its stockholders;

> (ii)  shall not have acted in good faith or, in failing to act, shall not have acted in good faith;

> (iii)  shall have acted in a manner involving intentional misconduct or a knowing violation of law or, in failing to act, shall have acted in a manner involving intentional misconduct or a knowing violation of law; or

> (iv) shall have derived an improper personal benefit.

If the General Corporation Law of the State of Delaware is amended after April 1, 1987 to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director

of the Corporation shall be eliminated or limited to the fullest extent permitted by the General Corporation Law of the State of Delaware, as so amended.

Neither the amendment nor repeal of this ARTICLE VII, Section 5, nor the adoption of any provision of this Restated Certificate of Incorporation inconsistent with this ARTICLE VII, Section 5, shall eliminate or reduce the effect of this ARTICLE VII, Section 5, in respect of any matter occurring, or any cause of action, suit or claim that, but for this ARTICLE VII, Section 5, would accrue or arise, prior to such amendment, repeal or adoption of an inconsistent provision."

SECOND: The Board of Directors of the Corporation by requisite vote adopted a resolution which set forth the foregoing amendment to the Restated Certificate of Incorporation, in accordance with Section 242 of the General Corporation Law of the State of Delaware, declaring that the amendment to the Restated Certificate of Incorporation as proposed was advisable and directing that it be submitted for action thereon by the sole stockholder of the Corporation.

THIRD: The amendment has been consented to and authorized and approved by the holder of all the issued and outstanding stock of the Corporation, entitled to vote, by a written consent given in accordance with the provisions of Section 228 of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, Shearson Lehman Brothers Inc. has caused this Certificate to be signed on this <u>31st</u> day of August, 1987 in its name and on its behalf by its Chairman of the Board and attested by its Secretary, pursuant to Section 103(a) of the General Corporation Law of the State of Delaware.

Peter A. Cohen
Chairman of the Board

ATTEST:
Secretary

FILED

888029035

JAN 29 1988

_SECRETARY OF STATE_

## CERTIFICATE OF AMENDMENT TO RESTATED CERTIFICATE OF INCORPORATION OF SHEARSON LEHMAN BROTHERS INC.

SHEARSON LEHMAN BROTHERS INC., a Delaware Corporation having its registered office at Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, in the County of New Castle (the "Corporation"), hereby certifies to the Secretary of State of the State of Delaware that:

FIRST:    Article I of the Restated Certificate of Incorporation of the Corporation is hereby amended so as to read in its entirety as follows:

"Name

The name of the corporation (hereinafter referred to as the "Corporation") is:

SHEARSON LEHMAN HUTTON INC."

SECOND: The Board of Directors of the Corporation by requisite vote adopted a resolution which set forth the foregoing amendment to the Restated Certificate of Incorporation, in accordance with Section 242 of the General Corporation Law of the State of Delaware, declaring that the amendment to the Restated Certificate of Incorporation as proposed was advisable and directing that it be submitted for action thereon by the sole stockholder of the Corporation.

THIRD:  The amendment has been consented to and authorized and approved by the holder of all the issued and outstanding stock of the Corporation, entitled to vote, by a written consent given in accordance with the provisions of Section 228 of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, Shearson Lehman Brothers Inc. has caused this Certificate to be signed on this 28th day of January, 1988 in its name and on its behalf by a Vice Chairman of the Board and attested by its Secretary, pursuant to Section 103(a) of the General Corporation Law of the State of Delaware.

Vice Chairman of the Board
David S. Hershberg

ATTEST:
Secretary
Isabel A. Dempsey

888098052

FILED
*10AM*

APR 8 1988

*[signature]*
~~SECRETARY OF STATE~~

### CERTIFICATE OF MERGER
### MERGING
### SHEARSON PEPPER INC.
### INTO
### SHEARSON LEHMAN HUTTON INC.
(Pursuant to Section 251(c) of the Delaware
General Corporation Law)

SHEARSON LEHMAN HUTTON INC., a corporation organized and existing under the laws of the State of Delaware, HEREBY CERTIFIES AS FOLLOWS:

FIRST:    The name and state of incorporation of each of the constituent corporations is as follows:

SHEARSON LEHMAN HUTTON INC.,
a Delaware corporation

and

SHEARSON PEPPER INC.
a Delaware corporation.

SECOND: An Agreement of Merger, dated as of March 31, 1988 (the "Merger Agreement"), has been approved, adopted, certified, executed and acknowledged by each of the constituent corporations in accordance with Section 251(c) of the Delaware General Corporation Law.

THIRD:   SHEARSON LEHMAN HUTTON INC. shall be the surviving corporation and shall retain the name SHEARSON LEHMAN HUTTON INC.

FOURTH:   The Restated Certificate of Incorporation of SHEARSON LEHMAN HUTTON INC. as presently in effect shall be the Restated Certificate of Incorporation of the surviving corporation.

FIFTH:    Copies of the Merger Agreement, as executed in counterpart, are on file at the principal place of business of SHEARSON LEHMAN HUTTON INC., World Financial Center, New York, New York 10285.

SIXTH:   A copy of the Merger Agreement will be furnished by SHEARSON LEHMAN HUTTON INC., on request and without cost, to any stockholder of any constituent corporation.

DATED:   March 31, 1988

SHEARSON LEHMAN HUTTON INC.

By: *[signature]*
David S. Hershberg
Vice Chairman
of the Board

ATTEST:

*[signature]*
Isabel A. Dempsey

*729173053*

## CERTIFICATE OF OWNERSHIP AND MERGER

### MERGING

### LEHMAN MANAGEMENT CO., INC.

### INTO

### SHEARSON LEHMAN HUTTON INC.

**FILED**

**JUN 22 1989**

*SECRETARY OF STATE*

\* \* \* \* \*

Shearson Lehman Hutton Inc., a corporation organized and existing under the laws of Delaware,

DOES HEREBY CERTIFY:

FIRST:    That this corporation was incorporated on the 21st day of January, 1965, pursuant to the General Corporation Law of the State of Delaware.

SECOND: That this corporation owns all of the outstanding shares of the stock of Lehman Management Co., Inc. ("LEMCO"), a corporation incorporated on the 27th day of January, 1975, pursuant to the Business Corporation Law of the State of New York.

THIRD:    That this corporation, by unanimous written consent of the Executive Committee of the Board of Directors adopted the following resolutions on the 6th day of June, 1989, determined to and did merge into itself said LEMCO:

WHEREAS, Shearson Lehman Hutton Inc. ("Shearson") the sole shareholder of Lehman Management Co., Inc. ("LEMCO") desires to merge LEMCO into itself;

NOW THEREFORE, be it

RESOLVED, that Shearson Lehman Hutton Inc. merge, into itself said LEMCO, in accordance with an Agreement of Merger, which is on file with the minutes of Shearson Lehman Hutton Inc. at Two World Trade Center, 105th Floor, New York, New York  10048; and

FURTHER RESOLVED, that the merger shall be effective upon the date of filing with the Secretary of State of Delaware; and

FURTHER RESOLVED, that the proper officers of this corporation be and they hereby are directed to make and execute a Certificate of Ownership and Merger setting forth a copy of the resolutions to merge said LEMCO and assume its liabilities and obligations, and the date of adoption thereof, and to cause the same to be filed with the Secretary of State and a certified copy recorded in the office of the Recorder of Deeds of New Castle County and to do all acts and things whatsover, whether within or without the

State of Delaware, which may be in anywise necessary or proper to effect said merger.

FOURTH: Anything herein or elsewhere to the contrary notwithstanding this merger may be amended or terminated and abondoned by the Executive Committee of the Board of Directors of Shearson Lehman Hutton Inc. at any time prior to the date of filing the merger with the Secretary of State.

IN WITNESS WHEREOF, said Shearson Lehman Hutton Inc. has caused this certificate to be signed by Isabel A. Dempsey, Senior Vice President and attested by Eileen M. Bannon, its Assistant Secretary, this 21st day of June, 1989.

By: _____
     Isabel A. Dempsey
     Senior Vice President

ATTEST:

By: _____
    Eileen M. Bannon
    Assistant Secretary

- 2 -

899275069

### CERTIFICATE OF OWNERSHIP AND MERGER

#### MERGING

SHEARSON ASSET MANAGEMENT INC.

BERNSTEIN-MACAULAY INC.

SHEARSON MANAGEMENT INC.

#### INTO

SHEARSON LEHMAN HUTTON INC.

FILED

**DEC 8** 1989

* * * * *

Shearson Lehman Hutton Inc., a corporation organized and existing under the laws of Delaware (the "Corporation"),

DOES HEREBY CERTIFY:

FIRST:   That this Corporation was incorporated on the 21st day of January, 1965, pursuant to the General Corporation Law of the State of Delaware.

SECOND: That this Corporation owns all of the outstanding shares of the stock of Shearson Asset Management Inc. ("SAMI"), a corporation incorporated on the 16th day of November, 1962, pursuant to the General Corporation Law of the State of Delaware and further;

That this Corporation owns all of the outstanding shares of the stock of Bernstein-Macaulay, Inc. ("BMI") and Shearson Management Inc. ("SMI"), corporations incorporated, respectively, on the 14th day of February, 1934 and the 6th day of April, 1967, pursuant to the Business Corporation Law of the State of New York.

THIRD:   That this Corporation, by Unanimous Written Consent of the Executive Committee of the Board of Directors adopting the following resolutions on the 20th day of September, 1989, determined to and did merge into itself said SAMI, BMI and SMI.

WHEREAS, Shearson Lehman Hutton Inc. ("Shearson"), the sole shareholder of Shearson Asset Management Inc. ("SAMI"), Bernstein-Macaulay, Inc. ("BMI") and Shearson Management Inc. ("SMI") desires to merge SAMI, BMI and SMI into itself;

NOW THEREFORE, be it

RESOLVED, that Shearson Lehman Hutton Inc. merge into itself, SAMI; and

FURTHER RESOLVED, that Shearson Lehman Hutton Inc. merge into itself, BMI; and

FURTHER RESOLVED, that Shearson Lehman Hutton Inc. merge into itself, SMI; and

FURTHER RESOLVED, that these mergers shall be effective upon the date of filing with the Secretary of State of Delaware; and

FURTHER RESOLVED, that the proper officers of the corporation be, and hereby are, directed and authorized to execute the Certificate of Ownership and Merger, substantially in the form attached hereto as an Exhibit, setting forth a copy of these resolutions and the date of adoption thereof, and to cause the same to be filed with the Secretary of State and a certified copy recorded in the office of the Recorder of Deeds of New Castle County; and

FURTHER RESOLVED, that the proper officers of the Corporation be, and hereby are, authorized to execute any and all documents, and to take any and all actions, whether within or without the State of Delaware, which may be necessary or proper to effect the merger, and such documents and actions are hereby ratified and confirmed as the act and deed of the Corporation.

FOURTH: Anything herein or elsewhere to the contrary notwithstanding this merger may be amended or terminated and abandoned by the Executive Committee of the Board of Directors of Shearson Lehman Hutton Inc. at any time prior to the date of filing the merger with the Secretary of State.

IN WITNESS WHEREOF, said Shearson Lehman Hutton Inc. has caused this certificate to be signed by Kenneth F. Khoury, Senior Vice President and attested by Eileen M. Bannon, its Assistant Secretary, this 22 day of September, 1989.

By: _____
Kenneth F. Khoury
Senior Vice President

ATTEST:

By: _____
Eileen M. Bannon
Assistant Secretary

- 2 -

1302/2003

## CERTIFICATE OF AMENDMENT
### TO RESTATED CERTIFICATE OF INCORPORATION OF SHEARSON LEHMAN HUTTON INC.

SHEARSON LEHMAN HUTTON INC., a Delaware Corporation (the "Corporation") having its registered office at Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, in the County of New Castle, hereby certifies to the Secretary of State of the State of Delaware that:

FIRST:    Article I of the Restated Certificate of Incorporation of the Corporation is hereby amended so as to read in its entirety as follows:

"Name

The name of the corporation (hereinafter referred to as the "Corporation") is:

SHEARSON LEHMAN BROTHERS INC."

SECOND:    The Board of Directors of the Corporation by requisite vote adopted a resolution which set forth the foregoing amendment to the Restated Certificate of Incorporation, in accordance with Section 242 of the General Corporation Law of the State of Delaware, declaring that the amendment to the Restated Certificate of Incorporation as proposed was advisable and directing that it be submitted for action thereon by the sole stockholder of the Corporation.

## FILED

AUG 1 1990

SECRETARY OF STATE

8:30 A

THIRD:    The amendment has been consented to and authorized and approved by the holder of all the issued and outstanding stock of the Corporation, entitled to vote, by a written consent given in accordance with the provisions of Section 228 of the General Corporation Law of the State of Delaware.

FOURTH:    This Certificate of Amendment of the Restated Certficate of Incorporation shall be effective on August 1, 1990.

IN WITNESS WHEREOF, Shearson Lehman Hutton Inc. has caused this Certificate to be signed on this 19 th day of July, 1990 in its name and on its behalf by a Vice Chairman of the Board and attested by its Secretary, pursuant to Section 103(a) of the General Corporation Law of the State of Delaware.

David S. Hershberg
Vice Chairman

ATTEST:

Maureen Boyan
Secretary

FROM CORPORATION TRUST COMPANY          (MON) 08. 93' 08:58/ST. 08:57/NO. 3560228500 P 2

SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 08:30 AM 08/02/1993
723214036 - 620706

CERTIFICATE OF AMENDMENT

OF

CERTIFICATE OF INCORPORATION

OF

SHEARSON LEHMAN BROTHERS INC.


Shearson Lehman Brothers Inc., a Delaware corporation (the "Corporation"), having its registered office at Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, in the County of New Castle, hereby certifies to the Secretary of State of the State of Delaware that:

FIRST:  The Article I of the Restated Certificate of Incorporation of the Corporation is hereby amended so as to read in its entirety as follows:

"Name
The name of the corporation (herinafter referred to as the "Corporation" is:  Lehman Brothers Inc."

SECOND:  The Board of Directors of the Corporation by requisite vote adopted a resolution which sets forth the foregoing amendment to the Certificate of Incorporation, in accordance with Section 242 of the General Corporation Law of the State of Delaware, declaring that the amendment to the Certificate of Incorporation as proposed was advisable and directing that it be submitted for action thereon by the sole stockholder of the Corporation.

THIRD:  The amendment has been consented to and authorized and approved by the holder of all the issued and outstanding stock of the Corporation, entitled to vote, by a written consent given in accordance with the provisions of Section 228 of the General Corporation Law of the State of Delaware.

FOURTH:  This Certificate of Amendment of the Certificate of Incorporation shall be effective on filing_____.

FROM CORPORATION TRUST COMPANY                     MON 08 93 08:59/ST. 08:57/NO. 3560228500 P 3

IN WITNESS WHEREOF, Shearson Lehman Brothers Inc. has caused this Certificate to be signed on this _2nd_ day of _August_, _1993_ in its name and on its behalf by Karen C. Manson, its Senior Vice President and attested by Eileen M. Bannon, its Assistant Secretary, pursuant to 103(a) of the General Corporation Law of the State of Delaware.

SHEARSON LEHMAN BROTHERS INC.

_____
Karen C. Manson
Senior Vice President

ATTESTED:

By _____
Eileen M. Bannon
Assistant Secretary

arj  L:\HOME\cr\cmb\WPDOCS\cmb174pe.cop   042193

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 10:00 AM 05/27/1994
944095520 - 620706

CERTIFICATE OF OWNERSHIP AND MERGER

MERGING

OS INTERNATIONAL INC.

AND

FOSTER & MARSHALL INC.

INTO

LEHMAN BROTHERS INC.

LEHMAN BROTHERS INC., a corporation organized and existing under the laws of Delaware,

DOES HEREBY CERTIFY:

FIRST: That this corporation was incorporated on the 21st day of January 1965, pursuant to the General Corporation Law of the State of Delaware.

SECOND: That this corporation owns all of the outstanding shares of the stock of OS INTERNATIONAL INC., a corporation incorporated on the 12th day of October, 1983, pursuant to the Business Corporation Law of the State of New York, and FOSTER & MARSHALL INC., a corporation incorporated on the 14th day of February, 1961, pursuant to the Business Corporation Act of the State of Washington.

THIRD: That this corporation, by the following resolutions of its Board of Directors, duly adopted by the unanimous written consent of its members on May 21, 1994, filed with the minutes of the Board, determined to and did merge into itself OS INTERNATIONAL INC. and FOSTER & MARSHALL INC.:

RESOLVED, that LEHMAN BROTHERS INC. merge, and it hereby does merge into itself OS INTERNATIONAL INC. and FOSTER & MARSHALL INC., and assumes all of its obligations; and

FURTHER RESOLVED, that the proper officers of this corporation be and they hereby are directed to make and execute a Certificate of Ownership and Merger setting forth a copy of the resolutions to merge OS INTERNATIONAL INC. and FOSTER & MARSHALL INC., and assume its liabilities and obligations, and to cause the same to be filed with the

Secretary of State and a certified copy recorded in the office of the Recorder of Deeds of New Castle County and to do all acts and things whatsoever, whether within or without the State of Delaware, which may be in anywise necessary or proper to effect said merger.

FOURTH: Anything herein or elsewhere to the contrary notwithstanding, this merger may be amended or terminated and abandoned by the Board of Directors of LEHMAN BROTHERS INC. at any time prior to the date of filing the merger with the Secretary of State.

IN WITNESS WHEREOF, said LEHMAN BROTHERS INC. has caused this Certificate to be signed by Karen C. Manson, its Senior Vice President, and attested by Eileen M. Bannon, its Assistant Secretary, this ___21st___ day of ____May_____, 1994.

Lehman Brothers Inc.

Karen C. Manson-Senior Vice President

Eileen M. Bannon-Assistant Secretary

08/25/95  15:48  ᴸᴱᴴᴹᴬᴺ ᴮᴿᴼ. ᴿᴱᴾᴼ        STATE OF DELAWARE  ᴺᴼ.255  ᴾ.22
                                    SECRETARY OF STATE
                                    DIVISION OF CORPORATIONS
                                    FILED 10:00 AM 08/31/1995
                                    950197959 - 620706

# CERTIFICATE OF OWNERSHIP AND MERGER

## MERGING

## LEHMAN GOVERNMENT SECURITIES INC.

## INTO

## LEHMAN BROTHERS INC.

Lehman Brothers Inc., a corporation organized and existing under the laws of Delaware (the "Corporation"),

**DOES HEREBY CERTIFY**:

**FIRST**: That this Corporation was incorporated on January 21, 1965, pursuant to the General Corporation Law of the State of Delaware.

**SECOND**: That this Corporation owns all of the outstanding shares of the stock of Lehman Government Securities Inc. ("LGSI"), a corporation incorporated on September 21, 1972, pursuant to the Business Corporation Law of the State of New York.

**THIRD**: That this Corporation, by Unanimous Written Consent of the Executive Committee of the Board of Directors adopting the following resolutions as of the 31st day of August, 1995, determined to and did merge into itself said LGSI.

**WHEREAS**, the Corporation, the sole shareholder of Lehman Government Securities Inc. ("LGSI"), desires to merge LGSI into itself;

**NOW THEREFORE**, be it

**RESOLVED**, that the Corporation merge LGSI into itself and assume all of its liabilities and obligations; and

**FURTHER RESOLVED**, that the proper officers of the Corporation are each hereby directed and authorized to execute a Certificate of Ownership and Merger, setting forth a copy of these resolutions and the date of adoption thereof, in such form as any officer shall approve, and to cause the same to be filed on such date as any proper officer of the Corporation shall determine with the Secretary of State and a certified copy recorded in the office of the Recorder of Deeds of New Castle County; and

**FURTHER RESOLVED,** that the proper officers of the Corporation are each hereby authorized to execute, deliver and file any and all documents, and to take any and all actions, whether within or without the State of Delaware, which may be necessary, appropriate or desirable to effect the merger, and such documents and actions are hereby ratified and confirmed as the act and deed of the Corporation; and

**FURTHER RESOLVED,** anything herein or elsewhere to the contrary notwithstanding this merger may be abandoned by the proper officers of the Corporation at any time prior to the date of filing this merger with the Secretary of State.

Dated: August 31, 1995

<div style="margin-left: 40%;">

LEHMAN BROTHERS INC.

By: _____
Name: Karen C. Manson
Title: Senior Vice President

By: _____
Name: Eileen Bannon
Title: Assistant Secretary

</div>

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 03/14/1996
960074136 - 620706

## CERTIFICATE OF CHANGE OF LOCATION OF REGISTERED OFFICE AND OF REGISTERED AGENT

It is hereby certified that:

1.    The name of the corporation (hereinafter called the "corporation") is

### LEHMAN BROTHERS INC

2.    The registered office of the corporation within the State of Delaware is hereby changed to 1013 Centre Road, City of Wilmington 19805, County of New Castle.

3.    The registered agent of the corporation within the State of Delaware is hereby changed to The Prentice-Hall Corporation System, Inc., the business office of which is identical with the registered office of the corporation as hereby changed.

4.    The corporation has authorized the changes hereinbefore set forth by resolution of its Board of Directors.

Signed on *March 5* , 19*96* .


_Eileen M. Bannon_

Eileen M. Bannon, Assistant Secretary

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 04/30/1996
960125082 - 620706

CERTIFICATE OF DESIGNATIONS, POWERS,
PREFERENCES AND RIGHTS
OF THE
FLOATING RATE PREFERRED STOCK
($10,000 liquidation preference per share)

OF

LEHMAN BROTHERS INC.

Pursuant to Section 151 of the
General Corporation Law of the State of Delaware

LEHMAN BROTHERS INC., a Delaware corporation having its registered office at 1209 Orange Street, in the City of Wilmington, in the County of New Castle (the "Corporation"). HEREBY CERTIFIES that resolutions were duly adopted by the Board of Directors of the Corporation pursuant to the authority conferred upon the Board of Directors of the Corporation by the provisions of the Restated Certificate of Incorporation of the Corporation, as follows:

RESOLVED, that the Corporation be, and it hereby is, authorized to offer, issue and sell a series of Preferred Stock of the Corporation and the Board of Directors hereby fixes the designation, number of shares, voting powers and the other powers, preferences and relative, participating, optional or other special rights, and the qualifications, limitations and restrictions thereof (in addition to those set forth in the Certificate of Incorporation of the Corporation which may be applicable to such series) as follows:

1.    Designation and Number of Shares. The designation of such series shall be the Floating Rate Preferred Stock (the "Floating Rate Preferred Stock") and the authorized number of shares constituting such series shall be one hundred (100). The Board reserves the right by from time to time to increase or decrease the number of shares that constitute the Floating Rate Preferred Stock (but not below the number of shares thereof then outstanding) within the limitations provided by law, this resolution and the Restated Certificate of Incorporation.

2.    Dividends. Dividends on each share of Floating Rate Preferred Stock shall be cumulative from the date of initial issuance of such share and shall be payable annually, when and as declared by the Board of Directors or a duly authorized committee thereof out of funds legally available therefor, in cash on April 15 of each year, commencing April 15, 1997 (each a "Dividend Payment Date"), to holders of record on such record date, not exceeding 30 days preceding the payment thereof, as shall be fixed by the Board of Directors or a duly authorized committee thereof, at a rate equal to the Federal Funds Daily Rate in effect on the record date less 0.25% per annum per share on the liquidation preference of $10,000 per share  If any date on which dividends would otherwise be payable shall be or be declared a national or New York State holiday, or if banking institutions in the State of New York shall be closed because of a banking moratorium or otherwise on such date, then the Dividend Payment Date shall be the next succeeding day on which such banks shall be open  Accumulated and unpaid dividends shall not bear interest.

If there shall be outstanding shares of any other class or series of preferred stock of the Corporation ranking on a parity as to dividends with the Floating Rate Preferred Stock, the Corporation, in making any dividend payment on account of arrears on the Floating Rate Preferred Stock or such other class or series of preferred stock, shall make payments ratably upon all outstanding shares of Floating Rate Preferred Stock and such other class or series of preferred stock in proportion to the respective amounts of dividends in arrears upon all such outstanding shares of Floating Rate Preferred Stock and such other class or series of preferred stock to the date of such dividend payment.

3.    Liquidation Preference.  In the event of any liquidation, dissolution or winding up of the Corporation, voluntary or involuntary, the holders of the Floating Rate Preferred Stock shall be entitled to receive out of the assets of the Corporation available for distribution to its stockholders, before any distribution of assets is made to the holders of the common stock or any other shares of stock of the Corporation ranking as to such distribution junior to the Floating Rate Preferred Stock, an amount equal to $10,000 per share (the "Liquidation Preference) plus an amount equal to any accrued and accumulated but unpaid dividends thereon to the date of final distribution.  The holders of the Floating Rate Preferred Stock shall not be entitled to receive the Liquidation Preference and such accrued dividends, however, until the liquidation preference of any other class of stock of the Corporation ranking senior to the Floating Rate Preferred Stock as to rights upon liquidation, dissolution or winding up shall have been paid (or a sum set aside therefor sufficient to provide for payment) in full.

After payment of the full amount of the Liquidation Preference and such dividends, the holders of shares of Floating Rate Preferred Stock will not be entitled to any further participation in any distribution of assets by the Corporation.  If, upon any voluntary or involuntary liquidation, dissolution or winding up of the Corporation, the assets available for distribution shall be insufficient to pay in full the amounts payable with respect to the Floating Rate Preferred Stock and any other shares  shall share ratably in accordance with the respective amounts which would be payable on such shares if all amounts payable thereon were paid in full.  Consolidation or merger of the Corporation with or into one or more other corporations, or a sale, whether for cash, shares of stock, securities or properties, of all or any part of the Corporation's assets shall not be considered a liquidation, dissolution or winding up of the Corporation within the meaning of this Section 3 if the preferences of the holders of shares of Floating Rate Preferred Stock are not impaired thereby.

4.    Conversion.  The Floating Rate Preferred Stock is not convertible into, or exchangeable for, other securities or property.

5.    Voting Rights.  The Floating Rate Preferred Stock shall have no voting rights except as otherwise required by law.

6.    Redemption  The shares of Floating Rate Preferred Stock owned by any holder of record may be redeemed by the Corporation at any time at its option and subject to New York Stock Exchange approval at an amount equal to $10,000 per share plus, in each case, an amount equal to all and accumulated and unpaid dividends to, but excluding, the date fixed for redemption, upon the occurrence of any of the following events:  (i) without the prior written consent of the Corporation the holder of such shares ceases to clear all of its securities transactions through the Corporation, (ii) dissolution, bankruptcy or insolvency of such holder, (iii) any violation by such holder of any agreement made by such holder with the Corporation or if the holder has been determined by any of the exchanges or associations or other institutions with which the Corporation has or may have membership privileges or other privileges to have violated any agreement made by such holder therewith, (iv) the holder shall have been suspended or expelled from any of the exchanges or associations or other institutions with which the Corporation has membership privileges, (v) such holder ceases to be considered a "creditor" as defined in Regulation T promulgated by the Board of Governors of the Federal Reserve System pursuant to the Securities Exchange Act of 1934, or (vi) the Corporation shall determine in good faith that it is necessary or desirable for the welfare of the Corporation or the attainment of a corporate objective that such holder shall cease to be such a holder.

The holders of shares of Floating Rate Preferred Stock at the close of business on a Dividend Payment Record Date shall be entitled to receive the dividend payable on such shares on the corresponding Dividend Payment Date notwithstanding the call for redemption thereof (except that holders of shares called for redemption on a date occurring between such Record Date and the Dividend Payment Date shall not be entitled to receive such dividend on such Dividend Payment Date) or the Corporation's default in payment of the dividend due on such Dividend Payment Date.

In the event the Corporation shall redeem shares of Floating Rate Preferred Stock, written notice of such redemption shall be given by first class mail, postage prepaid, mailed not less than 30 days nor more than 60 days prior to the redemption date, to each holder of record of the shares to be redeemed at such holder's address as the same appears on the stock books of the Corporation; provided, however, that no failure to give such notice nor any defect therein shall affect the validity of the proceeding for the redemption of any shares of Floating Rate Preferred Stock to be redeemed except as to the holder to whom the Corporation has failed to mail said notice or except as to the holder whose notice was defective. Each such notice shall state: (a) the redemption date; (b) the number of shares of Floating Rate Preferred Stock to be redeemed and, if less than all the shares held by such holder are to be redeemed from such holder, the number of shares to be redeemed from such holder; (c) the redemption price and any accumulated and unpaid dividends to the redemption date; (d) the place or places where certificates for such shares are to be surrendered for payment of the redemption price; and (e) that dividends on the shares to be redeemed will cease to accrue on such redemption date (unless the Corporation shall default in providing funds for the payment of the redemption price of the shares called for redemption at the time and place specified in such notice).

7.      Rights of First Refusal.    If at any time after the date hereof a holder of shares of Preferred Stock (the "Seller") desires to cease clearing operations through the Corporation and receives an offer to purchase any or all of its shares of Preferred Stock (the "Offered Shares") from an entity (the "Prospective Purchaser") that desires to begin or increase its clearing operations through the Corporation, and if the Seller desires to accept such offer, the Seller shall give prompt written notice (a "Notice of Offer") to the Corporation which Notice of Offer shall include the terms of the sale and the name of the Prospective Purchaser. The Notice of Offer shall be deemed to be an irrevocable offer to sell the Offered Shares to the Corporation, and the Corporation shall have the irrevocable and exclusive option, as hereinafter provided, to buy all but not less than all of the Offered Shares at a price equal to the liquidation value plus accumulated dividends, if any.

Within ninety (90) days following the date on which the Corporation receives the Notice of Offer (the "Notice Date"), the Corporation shall notify the Seller whether the Corporation elects to purchase the Offered Shares (a "Corporation Acceptance"). If the Seller does not receive a Corporation Acceptance within such 90-day period, the Corporation shall be deemed to have declined to purchase any of the Offered Shares and within 10 days of the expiration of such 90-day period shall furnish the Seller with a written consent approving the sale of the Offered Shares to the Prospective Purchaser   A Corporation Acceptance shall be deemed to be an irrevocable commitment to purchase the Offered Shares from the Seller.

Upon the exercise by the Corporation of its right of first refusal in accordance with this paragraph 7, the Corporation shall be legally obligated to consummate the purchase and sale contemplated thereby and shall use its best efforts to secure any approvals required in connection therewith. If the Corporation does not exercise its right of first refusal with respect to all of the Offered Shares within the time specified for such exercise, the Seller shall be free upon the receipt of a written consent from the Corporation , during a period of ninety (90) days following the expiration of the last day for such exercise, to sell the Offered Shares, but only to the Prospective Purchaser specified in the Notice of Offer.

The closing of the purchase of any Shares by the Corporation pursuant to this paragraph 7 shall take place on such date within 30 days after the expiration of the 90-day period following the Notice Date. The Corporation shall deliver to the Seller, in full payment of the purchase price for the shares of Preferred Stock purchased by the Corporation, cash or other immediately available funs in the full amount of the purchase price.

8.      Designation by Corporation of Other Purchasers.    Whenever the Corporation shall be entitled to purchase any shares of Preferred Stock upon the exercise of any right or option arising pursuant hereto, the Corporation may designate such other person or persons as purchasers of all or any part of such shares.

9      Restrictions on Transfer.   The shares of Preferred Stock shall be issued only in the name of the beneficial owner, and no transfer of such shares shall be effected except on the stock books of the Corporation upon surrender of the stock certificates duly endorsed, and all shares of the Preferred Stock shall at all times be held subject to all agreements and restrictions set forth in this Certificate of Designations and in the Restated Certificate

-3-

of Incorporation, as amended from time to time, the provisions of which shall at all times apply equally both as to an original holder of shares and to each and every subsequent holder thereof, and each holder of shares of the Preferred Stock, by the acceptance of a stock certificate representing shares of the Corporation's Preferred Stock, agrees with the Corporation and with each other holder of shares of Preferred Stock, in consideration of such agreement of each such other holder of shares of Preferred Stock, to such agreements, conditions and restrictions as contained in this Certificate of Designations and in the restated Certificate of Incorporation.

10.    <u>Reissuance of Shares</u>    Shares of Floating Rate Preferred Stock that have been issued and reacquired in any manner, including shares purchased or redeemed, shall (upon compliance with any applicable provisions of the laws of the State of Delaware) have the status of authorized and unissued shares of the class of Preferred Stock undesignated as to Floating Rate and may be redesignated and reissued as part of any series of the preferred stock.

IN WITNESS WHEREOF, Lehman Brothers Inc. has caused this certificate to be signed by Jennifer Marre, Vice President, and attested by Karen C. Manson, its Secretary, this 30th day of April, 1996.

Jennifer Marre, Vice President

ATTEST:

Karen C. Manson, Secretary

11153

-4-

**EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| In re: |
|       LEHMAN BROTHERS INC., |
|                    Debtor. |

Case No.:  08-01420 (SCC) SIPA

**DECLARATION OF TIMOTHY HURLEY IN SUPPORT**
**OF THE TRUSTEE'S TWO HUNDRED THIRTY-NINTH**
**OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS**

Pursuant to 28 U.S.C. § 1746, I, Timothy Hurley, hereby declare as follows:

1.      I am a Principal of Deloitte Transactions and Business Analytics LLP.  James W. Giddens (the "Trustee"), as trustee for the SIPA liquidation of Lehman Brothers Inc. ("LBI"), has duly authorized me to make and submit this declaration (the "Declaration") in support of the Trustee's two hundred thirty-ninth omnibus objection to general creditor claims (the "Two Hundred Thirty-Ninth Omnibus Objection to General Creditor Claims").[1]

2.      The facts set forth in this Declaration are based upon my personal knowledge, upon information and belief, and/or upon certain proofs of claim, certain information from the LBI general claims register as maintained by the Trustee's claim agent, certain documents relating to the partnership funds (the "Funds") referenced in the claims (the "Claims") included on Exhibit A annexed to the Two Hundred Thirty-Ninth Omnibus Objection to General Creditor Claims from the books and records of the LBI estate (the "Fund Documents"), and documents available to the public filed with the United States Securities and Exchange Commission (the

---

1.   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Two Hundred Thirty-Ninth Omnibus Objection to General Creditor Claims.

"SEC").  If called and sworn as a witness, I could and would testify competently to the matters set forth herein.

3.      In the context of my services for the Trustee, I am involved in assisting with the Trustee's general creditor claim reconciliation process.  Accordingly, I and personnel under my supervision and direction have analyzed the Claims, certain information from the LBI general claims register as maintained by the Trustee's claims agent, the Fund Documents related to the Funds, documents available to the public filed with the SEC as applicable to the securities and Funds referenced in the Claims (the "SEC Documents"), and certain documents from the books and records of the LBI estate.

4.      Based on our analysis referred to in paragraphs 2 and 3 above, the Fund Documents and the SEC Documents show no indication that LBI was a general partner of the following Funds referenced in the Claims:  (i) Lehman Brothers Real Estate Partners, L.P.; (ii) Lehman Brothers Real Estate Partners II, L.P.; (iii) Lehman Brothers Real Estate Partners III, L.P.; (iv) Lehman Brothers Real Estate Mezzanine Partners, L.P.; and (v) Lehman Brothers Real Estate Mezzanine Partners II, L.P.

5.      As part of our analysis referred to in paragraphs 2 and 3 above, and at the direction of the Trustee's counsel, we analyzed publicly available documents filed with the SEC to identify documents which included the terms "Lehman Brothers Archstone Associates"[2] and/or "Archstone Associates," including but not limited to Form D Notice of Sale of Sale of Securities, Private Placement Memoranda, Partnership Agreements, Limited Partnership

---

2.  I understand from the Trustee's counsel that Lehman Brothers Archstone Associates, L.P., which is one of the Funds referenced in the Claims, is a different entity from Archstone Trust (formerly known as Archstone-Smith Operating Trust).

Agreements, Amended and Restated Partnership or Limited Partnership Agreements, and identified none.

6.      As part of our analysis referred to in paragraphs 2 and 3 above, and at the direction of the Trustee's counsel, we analyzed certain of the books and records of the LBI estate to identify documents which included the terms "Lehman Brothers Archstone Associates" and/or "Archstone Associates," including but not limited to Private Placement Memoranda, Partnership Agreements, Limited Partnership Agreements, Amended and Restated Partnership or Limited Partnership Agreements, and identified none.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 4, 2014

_____/s/ Timothy Hurley_____
Timothy Hurley
Principal, Deloitte Transactions and
    Business Analytics LLP

**EXHIBIT D**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re

LEHMAN BROTHERS INC.,

Debtor.

Case No. 08-01420 (SCC) SIPA

---

### [PROPOSED] ORDER GRANTING
### THE TRUSTEE'S TWO HUNDRED THIRTY-NINTH
### OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS

Upon the two hundred thirty-ninth omnibus objection to claims, dated June 4, 2014 (the "Two Hundred Thirty-Ninth Omnibus Objection to General Creditor Claims"),[1] of James W. Giddens (the "Trustee"), as trustee for the liquidation of Lehman Brothers Inc. (the "Debtor" or "LBI") under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. §§ 78aaa *et seq.* ("SIPA"), seeking entry of an order, pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), as made applicable to this proceeding pursuant to sections 78fff(b) and 78fff-1(a) of SIPA, and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking to disallow and expunge the Claims, as more fully described in the Two Hundred Thirty-Ninth Omnibus Objection to General Creditor Claims; and due and proper notice of the Two Hundred Thirty-Ninth Omnibus Objection to General Creditor Claims having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Two Hundred Thirty-Ninth Omnibus Objection to General Creditor Claims is in the best interests of LBI, its estate, its customers and creditors, and all parties in interest and that the legal and factual bases set forth in

---

1. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Two Hundred Thirty-Ninth Omnibus Objection to General Creditor Claims.

the Two Hundred Thirty-Ninth Omnibus Objection to General Creditor Claims establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is

> **ORDERED** that the relief requested in the Two Hundred Thirty-Ninth Omnibus

Objection to General Creditor Claims is granted; and it is further

> **ORDERED** that, pursuant to section 502(b) of the Bankruptcy Code, the claims

listed on Exhibit 1 are disallowed and expunged in their entirety with prejudice; and it is further

> **ORDERED** that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.


Dated: New York, New York
      _____ __, 2014

                            _____
                            HONORABLE SHELLEY C. CHAPMAN,
                            UNITED STATES BANKRUPTCY JUDGE

IN RE LEHMAN BROTHERS INC., CASE NO: 08-01420 (SCC) SIPA

TWO HUNDRED THIRTY-NINTH OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS:

EXHIBIT 1 - CLAIMS

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | TRUSTEE'S REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|
| 1 | COHEN, KENNETH<br>ATTN: GEORGE B. SOUTH III<br>DLA PIPER LLP (USA)<br>1251 AVENUE OF THE AMERICAS, 25TH FLOOR<br>NEW YORK, NY  10020-1104 | 5813 | 6/1/2009 | $10,950.00 | CLAIM LACKS SUFFICIENT DOCUMENTATION. CLAIM IS A CONTINGENT CLAIM FOR REIMBURSEMENT.<br><br>THERE IS NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI.  THE PARTNERSHIP FUND INTERESTS CLAIMED REPRESENT INTERESTS IN A CORPORATE ENTITY OR ENTITIES THAT ARE NOT DEBTORS IN THIS SIPA PROCEEDING.  LBI IS NOT A GENERAL PARTNER IN THE PARTNERSHIP FUND OR FUNDS REFERENCED IN THE CLAIM. |
| 2 | HUGHSON, PAUL<br>ATTN: GEORGE B. SOUTH III<br>DLA PIPER LLP (USA)<br>1251 AVENUE OF THE AMERICAS, 25TH FLOOR<br>NEW YORK, NY  10020-1104 | 5814 | 6/1/2009 | $10,950.00 | CLAIM LACKS SUFFICIENT DOCUMENTATION. CLAIM IS A CONTINGENT CLAIM FOR REIMBURSEMENT.<br><br>THERE IS NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI.  THE PARTNERSHIP FUND INTERESTS CLAIMED REPRESENT INTERESTS IN A CORPORATE ENTITY OR ENTITIES THAT ARE NOT DEBTORS IN THIS SIPA PROCEEDING.  LBI IS NOT A GENERAL PARTNER IN THE PARTNERSHIP FUND OR FUNDS REFERENCED IN THE CLAIM. |

| | NAME / ADDRESS OF CLAIMANT | CLAIM NUMBER | DATE FILED | TOTAL CLAIM DOLLARS | TRUSTEE'S REASON FOR PROPOSED DISALLOWANCE |
|---|---|---|---|---|---|
| 3 | KRAVETZ, LARRY J.<br>181 HAVILAND ROAD<br>STAMFORD, CT  06903 | 5974 | 6/1/2009 | $10,950.00 | CLAIM LACKS SUFFICIENT DOCUMENTATION. CLAIM IS A CONTINGENT CLAIM FOR REIMBURSEMENT.<br><br>THERE IS NO LEGAL OR FACTUAL JUSTIFICATION FOR ASSERTING A CLAIM AGAINST LBI.  THE PARTNERSHIP FUND INTERESTS CLAIMED REPRESENT INTERESTS IN A CORPORATE ENTITY OR ENTITIES THAT ARE NOT DEBTORS IN THIS SIPA PROCEEDING.  LBI IS NOT A GENERAL PARTNER IN THE PARTNERSHIP FUND OR FUNDS REFERENCED IN THE CLAIM. |
| | Total | | | $32,850.00 | |

2

_____
* Claim includes unspecified amounts (i.e., amounts not specified by the claimant, amounts listed in a foreign currency, unliquidated amounts and/or amounts listed as "unknown", "$0.00", "unascertainable", "undetermined", or where no dollar amounts were entered in the spaces provided on the proof of claim form).