Gerard Uzzi
Eric K. Stodola
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000
Facsimile: (212) 822-5670

Attorneys for the Ad Hoc Group
of LBI Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
**LEHMAN BROTHERS INC.,**　　　　　　　　　: 　　Case No. 08-01420 (SCC)
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　Debtor.　　　　　　:
---------------------------------------------------------------x

**THE AD HOC GROUP OF LBI CREDITORS' STATEMENT IN SUPPORT AND
COMMENT IN RESPECT OF THE TRUSTEE'S MOTION FOR AN ORDER
PURSUANT TO SECTIONS 105(a), 502(a), 502(c) AND 726 OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULE 3009 (I) ESTABLISHING A FINAL RESERVE
FOR SECURED, ADMINISTRATIVE AND PRIORITY CLAIMS, (II) ALLOWING
CERTAIN SECURED, ADMINISTRATIVE AND PRIORITY CLAIMS, (III)
AUTHORIZING THE TRUSTEE TO SATISFY ALLOWED SECURED,
ADMINISTRATIVE AND PRIORITY CLAIMS, AND RELATED RELIEF**

　　　　The Ad Hoc Group of LBI Creditors (the "Group"), by and through its undersigned counsel, hereby submits this statement in support and comment in respect of the motion (the "Motion") of James W. Giddens (the "Trustee"), as trustee for the liquidation of the business of Lehman Brothers Inc. ("LBI") under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. sections 78aaa *et seq.* ("SIPA"), pursuant to sections 105(a), 502(a), 502(c) and 726 of the Bankruptcy Code and Bankruptcy Rule 3009 (I) establishing a final reserve for Secured, Administrative and Priority Claims, (II) allowing certain Secured, Administrative and Priority Claims, (III) authorizing the Trustee to satisfy Secured, Administrative and Priority Claims, and

related relief.  In support of the Motion the Group respectfully represents as follows:

## STATEMENT

1.     The members of the Group hold more than $7.4 billion of general creditor claims against LBI and $40.6 billion of general unsecured claims against its affiliate, Lehman Brothers Holdings Inc. ("LBHI").  As large third-party stakeholders of the Lehman enterprise and, in particular, the LBI general estate, the Group and its professionals have worked closely with the Trustee and his professionals and appreciate the cooperation that has been extended.  The Group believes that the Motion represents an important step in the right direction and should be approved.[1]

2.     As set forth in the Motion, ample authority exists to support the establishment of reserves for disputed claims and the payment of interim distributions for creditors of the general estate.  Indeed, a SIPA trustee, which is subject to the same duties as a chapter 7 trustee, is expressly charged with a duty to liquidate the assets of the debtor's estate "as expeditiously as is compatible with the best interest of parties in interest."  See 11 U.S.C. § 704(a)(1) (emphasis added); 15 U.S.C. § 78fff-1(b); see also 15 U.S.C. § 78fff-1(a) (providing that a SIPA trustee is "vested with the same powers . . . as a trustee in a case under title 11").[2]  Related to this duty is the corresponding obligation to make distributions as quickly as practicable.  FED. R. BANKR. P. 3009 (providing that "dividends to creditors shall be paid as promptly as practicable").  In satisfying this obligation, a trustee may make interim distributions to creditors.  See 9 Colliers on Bankruptcy ¶3009.01 (16th ed. 2002) ("Rule 3009 contemplates that there may be multiple

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[2]    Section 78fff-1(b) provides that, "[t]o the extent consistent with the provisions of this chapter, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 under title 11."  15 U.S.C. § 78fff-1(b).

2

dividends during a chapter 7 case. This is consistent with the mandate of the rule that 'dividends to creditors shall be paid as promptly as practicable.'"); see also, e.g., In re Flagship Global Health, Inc., Case No. 08-13246 (Bankr. S.D.N.Y. Mar. 15, 2010) [Docket No. 66] (granting motion of chapter 7 trustee for authority to make interim distribution); In re Energy Cooperative, Inc., 173 B.R. 363, 372-73 (N.D. Ill. 1994) (same).

3. The relief sought by the Trustee is not particularly unique. Courts in this district and others have permitted a chapter 7 trustee to establish reserves and make interim distributions in a number of cases. For instance, in In re Flagship Global Health, Inc., the court authorized a chapter 7 trustee to make an interim distribution to the creditors of Flagship Global Health, Inc., subject to the establishing appropriate reserves for disputed claims against the debtor. Flagship Global, Case No. 08-13246 (Bankr. S.D.N.Y. Mar. 15, 2010) (Peck, J.) [Docket No. 66].

4. Similarly, in In re Asia Global Crossings Ltd., a chapter 7 trustee sought and received authority to establish reserves for disputed claims, certain administrative expenses, certain allowed claims and unknown or unquantifiable claims against the estates of Asia Global Crossing Ltd. ("ACG") and Asia Global Crossing Development Company and to make an interim distribution to the creditors of the estate of ACG. Asia Global, Case Nos. 02-15749, 02-15750 (Bankr. S.D.N.Y. Nov. 18, 2004) (Bernstein, J.) [Docket Nos. 517 and 548].

5. As well, in In re Edison Bros. Stores, Inc., a chapter 7 trustee sought and received authority to establish an aggregate reserve for disputed claims and make interim distributions to holders of general unsecured claims. Edison Bros., Case Nos. 99-528 – 536 (Bankr. D. Del. July 27, 2001) [Docket No. 2485]. In each of these three cases, Flagship, Asia Global Crossings, and Edison Bros., the trustees relied on largely the same authority the Trustee does here.

6. While LBI's proceeding may be larger and generally more complex than most

3

liquidating bankruptcy cases, the act of establishing reserves and making interim distributions is not itself complex and is no different than what is done in nearly every large bankruptcy case. Indeed, one need look no further than the chapter 11 cases of LBHI and certain of its affiliates for an example of how material periodic distributions can and have been made in the most complicated set of liquidating cases that have ever existed. As such, the Group believes that the relief requested by the Trustee is appropriate and the Court should grant the Motion.

7. The Group notes that only two objections to the motion remain outstanding, one of which was filed by the IRS (the "Objector"). The objections should be overruled.[3] The Objector asserts that there is no authority for the relief sought by the Trustee. As discussed above, however, ample authority exists. The Objector also appears to be questioning the sufficiency of the reserve proposed for it. The Trustee has agreed to amend the schedules to the Motion to add a reserve for the Objector's claim in the amount of $2.5 million, an amount which the Group understands exceeds the amount the Objector could actually recover from LBI. As the Trustee notes, any remaining amounts the Objector might theoretically claim are already being reserved for by LBHI, pursuant to a stipulation that remains subject to this Court's jurisdiction. To the extent that the Objector continues to press its Objection, it should be required to explain why the Trustee's proposed reserve is not sufficient.

8. Finally, the Group cautions that while the Motion represents an important step towards resolving the LBI general estate, it is only one step in that direction and that the Motion by itself will not permit LBI's general unsecured creditors to receive interim distributions. In this regard, the Group urges the Trustee to request, in the immediate near term, authority to establish reserves for all unresolved or unliquidated general unsecured claims and make interim

---

[3] With respect to the objection filed by Mr. Peters, the Group understands that Mr. Peters' claim is neither a secured nor priority claim. Therefore, the Group agrees with the Trustee that there is no legal basis to support Mr. Peters' objection.

4

distributions on account of all allowed general unsecured claims. As this Motion demonstrates, such relief is neither controversial nor complicated, but the results would be extraordinary. After nearly six years in bankruptcy, the Trustee is in possession of billions of dollars of otherwise distributable value that, with further relief, should be made available to holders of general unsecured claims. Although general unsecured creditors of the chapter 11 debtors have been receiving distributions for more than two years, general unsecured creditors of LBI have received nothing. While the Group is cognizant of the challenges that the Trustee has faced as well as the many accomplishments he and his professionals have achieved, any delay in distributions when they can otherwise be made – and they can, as this Motion amply demonstrates – is inconsistent with the mandate that "dividends to creditors shall be paid as promptly as possible."

Dated:  June 16, 2014
        New York, New York

Respectfully submitted,

MILBANK, TWEED, HADLEY & M$^c$CLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Gerard Uzzi
Eric K. Stodola

By: /s/ Gerard Uzzi
Gerard Uzzi

Attorneys for the Ad Hoc Group
of LBI Creditors