SHOOK, HARDY & BACON L.L.P.
1155 F Street, N.W., Suite 200
Washington, DC 20004
Phone: (202) 783-8400
Fax: (202) 783-4211369
Kenneth E. Chase, Esq.
*Attorneys for Brett Ersoff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
In re:                                                                 :

LEHMAN BROTHERS, INC.,                                                 :

                                                                          Case No. 08-01420 (SCC) SIPA
                            Debtor.                                    :

-----------------------------------------------------------------------X

## OPPOSITION OF BRETT ERSOFF TO THE TRUSTEE'S TWO HUNDRED THIRTY-SEVENTH OMNIBUS OBJECTION TO GENERAL CREDITOR CLAIMS (EMPLOYMENT CLAIMS)

Claimant Brett Ersoff ("Ersoff") submits this opposition to the Trustee's Two Hundred Thirty-Seventh Omnibus Objection to General Creditor Claims to the extent it seeks to disallow and expunge Mr. Ersoff's claim no. 2233 against Lehman Brothers Inc. ("LBI") as follows:[1]

**I.    BACKGROUND**

1.    Mr. Ersoff's claim no. 2233 ("Claim") is based on his employment agreement with LBI dated July 1, 2008 (the "Employment Agreement"), a copy of which is attached to his Claim.[2]

---

[1]    Counsel for LBI agreed to an extension of the date for Brett Ersoff to respond to the Two Hundred Thirty Seventh Omnibus Objection until July 7.

1

2.  The Employment Agreement is a letter agreement bearing the non-specific name "Lehman Brothers" at the top but, more precisely, indicating the entity "Lehman Brothers Inc." at the bottom of the first page. It is signed by Danielle Coppola, Vice President.

3.  Under the Employment Agreement Mr. Ersoff was to be paid a base salary for 2008 of $200,000, and then a bonus of $5.8 million if he met certain conditions.

4.  More specifically, the Employment Agreement recites the agreement between Mr. Ersoff and LBI in relevant part follows:

> "I am pleased to confirm the compensation terms we have agreed to with respect to your continuing employment by the Firm.
>
> Effective as of the date of this letter, for the performance year 2008 (the period ending November 30, 2008), your compensation will be as follows:
>
> o    An annualized base salary of $200,000, payable in bi-weekly installments of $7,692.31.
>
> o    A bonus in the amount of $5,800,000, less applicable deductions, payable at the time the Firm pays its annual 2008 bonus distribution (in or about January 2009).
>
> The foregoing base salary will be paid for all periods of your active employment with the Firm following the date of this letter in performance year 2008.  <u>The bonus amount set forth above will be paid at the time and in the amount stated except that such bonus will not be payable if you have failed to obtain and/or maintain in good standing all applicable licenses and registrations or if, before the date of scheduled payment, you have resigned or have been terminated from the Firm for Cause</u>.  For the purposes of this offer letter, "Cause" mains a termination of your employment by the Firm because of any of the following:  (i) misconduct, (ii) breach of Firm policies or rules, (iii) dishonesty, (iv) violation of laws or regulations, or (iv) substantial and continuing failure to perform employment duties or obligations satisfactorily.  The bonus amount set forth above may be reduced in the event of an approved leave of absence during the applicable performance year."

5.  Mr. Ersoff was paid his pro rata share of his 2008 salary by LBI, but despite the fact he met the conditions necessary to receive his bonus, LBI did not pay it, thereby depriving

---

[2]  Unless otherwise indicated, all capitalized terms have the same meaning as set forth in the Trustee's objection.

2

Mr. Ersoff of approximately 97% of his compensation for 2008. Thus, Mr. Ersoff's claim no. 2233 is for his $5.8 million 2008 bonus.

6. As the Trustee states, Mr. Ersoff, like all other claimants that are the subject of the Trustee's Objection, was a Transferred Employee, i.e., a "former employee[] ... who [was] transferred to Barclays Capital Inc. ("Barclays") following its acquisition of most of the assets of LBI ... in accordance with the Sale Order entered on September 20, 2008 that approved the purchase by Barclays under the terms of the Asset Purchase Agreement among Lehman Brothers Holdings Inc. ("LBHI"), LBI, LBI 745 LLC and Barclays dated as of September 16, 2008 (the "APA")." Trustee Objection ¶ 2.

7. In connection with Mr. Ersoff's transfer, he received an email from Michael Evans, Managing Director, Global Head of Human Resources for Barclays Capital (the "Evans Communication") stating, in relevant part:

> We are pleased to confirm our interest in having you join Barclays. The transactions gained court approval early Saturday morning and will close on Monday. As a result we are offering you employment with Barclays to begin on Monday, September 22, 2008.
>
> As a Barclays employee, you will continue to receive your current base salary or applicable commission based remuneration. In the next week or so, you will receive additional details concerning your employment if you work in an office outside the United States or if any special arrangements apply to your situation. You will be an "at will" employee of Barclays.

(emphasis added).

8. After Mr. Ersoff was transferred to Barclays pursuant to the APA, he was terminated in or around October 15, 2008.

6396567 v1

9. Mr. Ersoff then filed proof of claim no. 2233 against LBI for the sum of $5.8 million, representing the amount of bonus money still owed to him by LBI under the Employment Agreement.

## II. **DISCUSSION**

10. A "proof of claim executed and filed in accordance with these rules shall constitute <u>prima facie</u> evidence of the validity and amount of the claim." Fed. R. Bank. P. 3001(f). The "burden of going forward then shifts to the objector to produce evidence sufficient to negate the <u>prima facie</u> validity of the filed claim." <u>In re Spiegel, Inc.</u>, 03-11540, 2007 WL 2456626, *15 n.6 (S.D.N.Y. Aug. 22, 2007), <u>quoting In re Allegheny Int'l, Inc.,</u> 954 F.2d 167, 173-74 (3d Cir. 1992).

11. Here, the Trustee argues that Mr. Ersoff's claim should be expunged because:

   (i) Under the APA, Barclays allegedly agreed to assume all obligations for 2008 compensation bonuses;

   (ii) This Court has already ruled that LBI has no ongoing liabilities to Transferred Employees like Mr. Ersoff; and

   (iii) LBI has no liability for wages purportedly earned after the Filing Date because Mr. Ersoff was not actively employed by a Lehman entity after that time.

12. None of these arguments sustains the Trustee's burden to defeat Mr. Ersoff's claim.

    **A.    The Terms of the APA Have No Bearing on Mr. Ersoff's Claim Against LBI**

        **1.    The Court has Already Ruled that Barclays Did Not Assume Bonus Payment Obligations to Transferred Employees Like Mr. Ersoff.**

13. In <u>In re Lehman Bros. Holdings Inc.</u>, 2011 WL 722601 (Bankr. S.D.N.Y. Feb. 22, 2011), <u>aff'd,</u> 479 B.R. 268 (S.D.N.Y. 2012), <u>aff'd,</u> 513 Fed. Appx. 75 (2d Cir. 2013), this Court rejected the Trustee's argument that Barclays assumed bonus obligations under the APA for Transferred Employees who had specific guaranteed bonuses like Mr. Ersoff.

14. There, the employment agreement of plaintiff Mr. Coreth contained a provision guaranteeing bonus compensation similar to that of the Employment Agreement: "The Coreth Employment Agreement describes Coreth's compensation for performance years 2008 and 2009 to include an annualized base salary of $200,000 and a 'bonus in the amount of $9,800,000.'" <u>Id</u>. at *2 (quotation marks in original). Mr. Coreth, after being transferred to Barclays, received the same Evans Communication as did Mr. Ersoff, explaining that "[a]s a Barclays employee, you will continue to receive your current base salary or applicable commission based remuneration." <u>Id</u>. at *4.

15. After Barclays terminated Mr. Coreth as part of a reduction in force in December 2008 and offered him severance payments instead of his full guaranteed bonus pursuant to his agreement with LBI, Mr. Coreth sued to collect the full bonus.

16. The Bankruptcy Court dismissed Mr. Coreth's claim on several grounds. Mr. Coreth sought to assert third-party rights against Barclays under the APA, but the Court cited to the presence of a negating clause in the APA and found that prohibited Mr. Coreth from suing Barclays under the APA. <u>Id</u>. at *6.

5

17. Mr. Coreth also sought claims against Barclay on grounds that it had assumed the obligations of the seller (LBI) to him. The Court rejected that on grounds that the APA and Sale Order did not obligate Barclays to make guaranteed bonus payments under any Transferred Employee's employment agreement. The Court cited to the Sale Order which provided, "except for the Assumed liabilities, the transfer of the Purchased Asserts ... to Barclays under the APA shall not result in (i) Barclays having any liability or responsibility for any claim against Lehman." Id. at *7. The Court also explained that Article 9(b) of the APA "sets forth the extent of Barclays' obligations to provide severance payments and benefits to the Transferred Employees ...

> [Barclays] shall ... provide to each Transferred Employee whose employment is terminated [prior to December 31, 2008] by [Barclays] by reason of a "reduction in force" or a "job elimination" ... severance payments and benefits at levels that are no less favorable than such levels as the Transferred Employee would have been entitled to receive pursuant to the provisions of [Lehman's] severance plans or agreements covering such Transferred Employee as in effect immediately prior to the Closing.

Id. at *4 quoting Article 9(b) of the APA.

18. Mr. Coreth further sought claims against Barclays on grounds that his employment agreement with LBI had been incorporated into the Barclays employment offer. The Court rejected that argument because, "Coreth does not cite to any provision of the APA or the Sale Order where Barclays expressly assumes the Coreth Employment Agreement" and, "the written offer of employment from Barclays does not refer to the Coreth Employment Agreement and does not mention the bonus provisions of that agreement." Id. at 6-7.

19. Also on this point, the Court held, "in order to effect proper assumption of an executory contract such as the Coreth Employment Agreement, section 365 of the Bankruptcy

Code requires (i) a formal motion by a debtor seeking authorization for assumption of a contract and (ii) court approval of the assumption. 11 U.S.C. § 365(a)." Id.

20. Therefore, the Court has already rejected the Trustee's argument that Barclays assumed obligations to make guaranteed bonus payments under a Transferred Employee's employment contract with LBI.

### 2. Regardless of Whether Barclays Assumed an Obligation to Pay Mr. Ersoff his Bonus under the Employment Agreement, this does not Relieve LBI of the Obligation to make that Payment

21. Even if Barclays did assume the obligation to pay 2008 bonuses to Transferred Employees under the APA, the Trustee's argument that LBI is thereby no longer liable to Mr. Ersoff on such bonuses ignores basic contract law concerning the continuing obligations of an obligor who delegates responsibility to a third party.

22. Mr. Ersoff's claim is based on LBI's legal obligation to pay him his bonus for 2008 under the Employment Agreement.

23. Even assuming arguendo that Barclays did undertake the obligation to pay Mr. Ersoff his 2008 bonus, the arrangements between LBI and Barclays under the APA to pay Transferred Employees their bonuses did not relieve LBI of its obligations under the Employment Agreement.

24. While it is true, "as a general rule, that when rights are assigned, the assignor's interest in the rights assigned comes to an end"; [w]hen duties are delegated, however, the delegant's obligation does not end... The act of delegation ... does not relieve the delegant of the ultimate responsibility to see that the obligation is performed. If the delegate fails to perform, the delegant remains liable." Holland v Fahnestock & Co., Inc., 2002 WL 1774230 at *8

7

(S.D.N.Y. Aug. 1, 2002) report and recommendation adopted, 210 F.R.D. 487 (S.D.N.Y. 2002) quoting Contemporary Mission, Inc. v. Famous Music Corp., 557 F.2d 918, 924 (2d Cir. 1977).

25. Also, drawing on the familiar principle that while a contracting party can transfer its rights to an assignee, it cannot divest itself of obligations under that contract without obtaining the consent of the obligee,[3] it is clear the transfer of liabilities from the Lehman entities to Barclays was not effective as to Mr. Ersoff. The Trustee has clearly failed to meet his evidentiary burden as to this issue.

26. Finally, as referenced previously, the APA specifically contains a "negating clause," providing that "Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any Person or entity not a party to this Agreement ...." APA § 13.9. Thus, LBI, as a party to the APA, specifically agreed that Transferred Employees (such as Mr. Ersoff) had no right to enforce any of the obligations under the APA, and LBI cannot now argue that the Transferred Employees should look to Barclays to fulfill LBI's payment obligations to the Transferred Employees.

### B.    This Court has Not Ruled that LBHI has No Liability to Transferred Employees

27. Contrary to the Trustee's argument, this Court's statement in a 2011 Order dismissing LBHI's adversary proceeding against Barclays, that "Lehman no longer has any ongoing liabilities to the Transferred Employees for bonus compensation and can show no damages due to the alleged breach,"[4] does not bar Mr. Ersoff's claim, for at least three reasons.

---

[3]    See e.g., In re Chemtura Corp., 448 B.R. 635, 653 (Bankr. S.D.N.Y. 2011); see generally, Rosenthal Paper Company v. National Folding Box and Paper Company, 226 N.Y. 313, 326 (1919); Restatement (Second) of Contracts § 318(3) (unless obligee agrees to delegation of performance, the delegation does not affect the discharge of the delegating obligor),

[4]    In re Lehman Bros. Holdings Inc., 456 B.R. 213, 219 (Bankr. S.D.N.Y. 2011) (the "2011 Order")

8

28. First, the 2011 Order pertained to a dispute between LBHI and Barclays; Mr. Ersoff was not a party, meaning the decision has no preclusive effect on him. See Fulani v Bentsen, 862 F Supp. 1140, 1147 (S.D.N.Y. 1994) quoting Montana v. United States, 440 U.S. 147, 153 (1979) ("Under the doctrine of collateral estoppel, 'once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'") (emphasis added).

29. Second, the 2011 Order addressed the liabilities of LBHI to the Transferred Employees, and so is it is irrelevant to Mr. Ersoff's claims against LBI, which was his actual employer and counter-party to him under the Employment Agreement.

30. The 2011 Order dismissed LBHI's complaint that sought to recover the difference between the $2 billion the parties to the APA estimated Barclays would have to pay in bonuses and severance to Transferred Employees under Article 9.1(c) and the approximate $1.5 billion Barclays actually paid. When the Court ruled that "Lehman" did not have any liabilities to the Transferred Employees, it was referring to LBHI, not LBI, the entity against which Mr. Ersoff filed his claim herein.

31. Importantly, the Court recognized that Transferred Employees (like Mr. Ersoff) worked for LBI, not LBHI: "These claims all relate to certain liabilities assumed by Barclays Capital, Inc. ("Barclays") to pay bonus compensation to former employees of Lehman Brothers Inc. ("LBI") who became employees of Barclays (the "Transferred Employees") in connection with the acquisition of the North American broker-dealer business of LBI and Lehman Brothers Holdings Inc. ("Lehman" or "LBHI")." 456 B.R. at 214-15.

32.     Accordingly, the Court dismissed LBHI's claims against Barclays for alleged unpaid bonuses because LBHI could not show any damages, given that it was never liable for any compensation to Transferred Employees: "the critical missing ingredient in all of this is that Lehman [LBHI] is unable to show that it still has any ongoing liabilities to these employees. Without such a showing, Lehman has suffered no damages regardless of the actual amount of the employees that have been assumed by Barclays under the APA and paid to the Transferred Employees." 456 B.R. at 219.

33.     Third, the Trustee mischaracterizes the APA Adversary.  In the Adversary, the Trustee sought payment for the difference between the amount Barclays had actually paid in 2008 bonuses and the estimated total amount for bonuses assumed under the APA. The court in that decision simply determined that, as between Lehman and Barclays, Lehman had no right to recover because Lehman had failed to prove that it had been damaged since, at least as of that date, it had not actually paid out any bonuses which Barclays had assumed the obligation to satisfy. See 456 B.R. at 218-219.

34.     The structure of that opinion expressly contemplates that Lehman could have been compelled to satisfy employee bonus claims (all of which had been filed and were pending at the time of Judge Peck's decision) such as Mr. Ersoff's, and that upon making such a showing, Lehman would presumably have had the right to recover such payments from the party that had assumed that obligation in the APA.  However, inasmuch as the rights of employees with bonus claims were not before the court, Judge Peck had no occasion to adjudicate the rights of the employees to bind claimants such as Mr. Ersoff. Accordingly, reliance on the opinion cited above is entirely misplaced.

10

35. Finally, the fact that the 2011 Order does not bar Mr. Ersoff's claim is confirmed by the Stipulation and Order Amending the LBI Trustee's Adversary Complaint against Barclays signed by Judge Peck on July 15, 2011 (Adv. Proc. No. 09-01732, Docket No. 9). A copy of the 2008 Bonus Order is attached as Exhibit B to the Response to Trustee's Two Hundred Third Seventh Omnibus Objection to General Creditor Claims (Employment Claims) filed by P. Mathew Verghese (Doc. 9199).

36. In the 2008 Bonus Order, the Trustee admitted he had not yet determined which employees had not been paid their 2008 bonuses. See 2008 Bonus Order at p. 2.[5] The parties stipulated and agreed that the Trustee could bring those claims without prejudice once he determined which employees were still owed 2008 bonuses. See 2008 Bonus Order at p. 2.[6]

37. Thus, the proper treatment should be to allow Mr. Ersoff's claim in the full amount and have the Trustee refile his claims against Barclays to enforce the APA. If Barclays does indeed have a contractual obligation to pay the 2008 bonuses, then payment of the bonuses will not prejudice the estate as the Trustee can seek indemnification from Barclays.

38. This is what is contemplated in the Sale Order and the 2008 Bonus Order. The 2008 Bonus Order provided at ¶ 4 that:

> In the event it is determined that there are valid Employee Claims and as a result the Trustee brings a claim against Barclays for failure to pay bonus amounts under the APA, <u>the recovery sought by the Trustee in any such claim shall be the allowed amount of the Employee Claims</u>. If it is determined that there are no valid Employee Claims, the Trustee shall not file any claim against Barclays in connection with Barclays' alleged failure to pay bonus amounts under the APA. [emphasis added].

---

[5] "Whereas the Trustee has not determined the Employee Claims."

[6] "Whereas, the parties agree, based upon the terms set forth below, that the Trustee's Adversary Complaint is hereby amended to withdraw Count XI (Breach of Contract) to the extent it relates to Barclays' alleged failure to pay bonus amounts under the APA, and that this withdrawal is without prejudice to the Trustee's right to file a claim against Barclays for failure to pay bonus amounts under the APA in the event it is determined that there are valid Employee Claims."

11

6396567 v1

### C. The Trustee's Argument that the Fact Mr. Ersoff Was Not Actively Employed by LBI after the Filing Date Negates his Claim for Wages is Meritless

39. The Trustee argues that because Mr. Ersoff was not actively employed by a Lehman entity after his transfer to Barclays, he can no longer claim compensation after that date under the terms of his Employment Agreement.

40. Initially, it is noted that Mr. Ersoff is not claiming unpaid wages for his time that he worked at Barclays after leaving LBI as Barclays paid him his base salary. Mr. Ersoff is making claims only for the unpaid bonus payments, not wages, owed him under his Employment Agreement.

41. Otherwise, the July 1, 2008 Letter Agreement provides the bonus is payable unless Mr. Ersoff "failed to obtain and/or maintain in good standing all applicable licenses and registrations or if, before the date of scheduled payment, [Mr. Ersoff] have resigned or have been terminated from the Firm for Cause."

42. At all times Mr. Ersoff maintained his licenses and registrations, and did not resign and was not terminated for "cause", and there are <u>no</u> allegations by the Trustee to the contrary. Thus, even if Mr. Ersoff was not actively employed by Lehman after the bankruptcy filing, that would not affect his right to a bonus.

43. Also, the Agreement specifically accounted for this type of situation where Mr. Ersoff is terminated without "cause", stating that if his employment is terminated without cause before payment of the bonus, he will still get the bonus. <u>See</u> Letter Agreement attached to Mr. Ersoff's Claim ("For the avoidance of Doubt, in the event your employment is terminated by the Firm without Cause before the payment in full of the guaranteed minimum bonus for

12

performance year 2008, you will be paid on the applicable bonus payment date any unpaid guaranteed minimum bonus for such year . . .").

44.    Finally, if the Trustee's argument could be used to disallow Mr. Ersoff's bonus payment, LBI would have made an illusory promise to make that bonus payment.  Mr. Ersoff ceased working for LBI because it was winding up its affairs, not because he chose to resign. If LBI's causing Mr. Ersoff not to work at LBI full-time was a grounds for eliminating his bonus, that promise to pay would be deceptive given that LBI could simply terminate Mr. Ersoff without cause, thereby forcing him not to work there "full-time." It would be absurd for Mr. Ersoff to have agreed to a contract providing for $200,000 in base salary with the remaining 97% of his annual compensation coming in a bonus, if LBI had the unilateral ability to prevent him from achieving that bonus.

### III.    CONCLUSION

For the foregoing reasons, Mr. Ersoff respectfully requests that this Court deny the Trustee's Objection as it applies to him and sustain his Claim against LBI.

Dated: New York, New York
July 2, 2014

          SHOOK, HARDY & BACON L.L.P.

By: /s/ Kenneth E. Chase_____
Kenneth E. Chase
1155 F Street, NW, Suite 200
Washington, DC 20004
Telephone: (202) 639-5606
Facsimile: (202) 783-4211
Email: kchase@shb.com

and

SHOOK, HARDY & BACON L.L.P.
Mark Moedritzer
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
Email: mmoedritzer@shb.com

ATTORNEYS FOR BRETT ERSOFF