Hearing Date:     **March 11, 2015 at 10:00 a.m. (prevailing Eastern Time)**
Response Deadline:     **March 4, 2015 at 4:00 p.m. (prevailing Eastern Time)**

James B. Kobak, Jr.
Michael E. Salzman
Jeffrey M. Greilsheimer
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726
Email:  james.kobak@hugheshubbard.com
          michael.salzman@hugheshubbard.com
          jeffrey.greilsheimer@hugheshubbard.com

*Attorneys for James W. Giddens,*
*Trustee for the SIPA Liquidation of Lehman Brothers Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re

LEHMAN BROTHERS INC.,

Debtor.

Case No. 08-01420 (SCC) SIPA

---

## NOTICE OF MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT

**PLEASE TAKE NOTICE** that on February 17, 2015, James W. Giddens (the

"LBI Trustee"), as trustee for the liquidation of the business of Lehman Brothers Inc. ("Debtor

or "LBI") under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa *et seq.*, as

amended ("SIPA"), by and through his undersigned counsel, filed a motion pursuant to Rule

9019 of the Federal Rules of Bankruptcy Procedure for approval of a settlement agreement

entered into by the LBI Trustee and the Lehman Re Liquidators[1] (the "Motion"), and that a

hearing to consider the Motion, if necessary, will be held before the Honorable Shelley C.

Chapman, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander

Hamilton Custom House, Courtroom 621, One Bowling Green, New York, New York 10004

(the "Bankruptcy Court") on **March 11, 2015 at 10:00 a.m.** (prevailing Eastern time) or as soon

thereafter as counsel may be heard (the "Hearing").

                    **PLEASE TAKE FURTHER NOTICE** that objections, if any, to entry of the

order must (i) be in writing; (ii) state the name and address of the objecting party and nature of

the claim or interest of such party; (iii) state with particularity the legal and factual bases of such

objection; (iv) conform to the Federal Rules of Bankruptcy Procedure and Local Bankruptcy

Rules; (v) be filed with the Bankruptcy Court, together with proof of service, electronically, in

accordance with General Order M-399, by registered users of the Court's Electronic Case Files

system, and by all other parties in interest, on a 3.5 inch disk or CD-ROM, preferably in Portable

Document Format (PDF), WordPerfect or any other Windows-based word processing format no

later than **March 4, 2015 at 4:00 p.m.** (the "Objection Deadline"); and (vi) be served on (a)

Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York 10004, Attn:

James B. Kobak, Jr., Esq. and Jeffrey M. Greilsheimer, Esq.; (b) Securities Investor Protection

Corporation, 805 Fifteenth Street, N.W., Suite 800, Washington, DC 20005, Attn: Kenneth J.

Caputo, Esq.; (c) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153,

Attn: Robert J. Lemons, Esq. and Jacqueline Marcus, Esq.; and (d) Cadwalader, Wickersham &

Taft LLP, One World Financial Center, New York, New York 10281, Attn: Ingrid Bagby, Esq.

---

1.     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

and David E. Kronenberg, Esq.,  with a courtesy copy to the chambers of the Honorable Shelley

C. Chapman, Alexander Hamilton Custom House, Courtroom 621, One Bowling Green, New

York, New York 10004.

**PLEASE TAKE FURTHER NOTICE** that if no objections are timely filed and

served with respect to the Motion, the Debtor may, on or after the Objection Deadline, submit to

the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion, which may be entered with no further notice or opportunity to be heard offered to any

party.

Dated:      New York, New York
            February 17, 2015

                              HUGHES HUBBARD & REED LLP

                              By:  _/s/ Michael E. Salzman_____
                                    James B. Kobak, Jr.
                                    Michael E. Salzman
                                    Jeffrey M. Greilsheimer

                              One Battery Park Plaza
                              New York, New York 10004
                              Telephone:  (212) 837-6000
                              Facsimile:  (212) 422-4726
                              Email:  james.kobak@hugheshubbard.com
                                        michael.salzman@hugheshubbard.com
                                        jeffrey.greilsheimer@hugheshubbard.com

                              *Attorneys for James W. Giddens,*
                              *Trustee for the SIPA Liquidation of Lehman*
                              *Brothers Inc.*

| | |
|---|---|
| **Hearing Date:** | **March 11, 2015 at 10:00 a.m. (prevailing Eastern Time)** |
| **Response Deadline:** | **March 4, 2015 at 4:00 p.m. (prevailing Eastern Time)** |

James B. Kobak, Jr.
Michael E. Salzman
Jeffrey M. Greilsheimer
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
Email: james.kobak@hugheshubbard.com
　　　michael.salzman@hugheshubbard.com
　　　jeffrey.greilsheimer@hugheshubbard.com

*Attorneys for James W. Giddens,*
*Trustee for the SIPA Liquidation of Lehman Brothers Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>　　　LEHMAN BROTHERS INC.,<br><br>　　　　　　　　　　　　　　　Debtor. | Case No. 08-01420 (SCC) SIPA |

**MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY**
**PROCEDURE 9019 FOR ENTRY OF AN**
**ORDER APPROVING SETTLEMENT AGREEMENT**
**BETWEEN THE LBI TRUSTEE AND LEHMAN RE LTD.**

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ........................................................................................1

II. JURISDICTION AND VENUE ......................................................................................2

III. **BACKGROUND** ...........................................................................................................3

    A.  The Claims .............................................................................................................3

    B.  The Reconciliation Process ....................................................................................5

IV. THE SETTLEMENT AGREEMENT .............................................................................5

V.  RELIEF REQUESTED....................................................................................................6

VI. BASIS FOR RELIEF UNDER BANKRUPTCY RULE 9019...........................................6

VII. THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE AND
    EQUITABLE, AND IN THE BEST INTEREST OF THE LBI ESTATE.........................9

    A.  The Benefits Of The Settlement Agreement Greatly
        Outweigh The Possibility Of Success By Means Of Litigation .............................9

    B.  Litigation Is Likely To Be Complex, Protracted, And Expensive ..........................9

    C.  The Settlement Is In The Interests Of Creditors ...................................................10

    D.  The Parties Are Represented By
        Sophisticated And Experienced Professionals......................................................10

    E.  The Releases In The Settlement Agreement Are Reasonable And
        Necessary .............................................................................................................11

    F.  The Settlement Agreement Is The Product Of Arm's-Length Negotiation...........11

VIII. NOTICE.......................................................................................................................12

IX. NO PRIOR REQUEST .................................................................................................12

X.  CONCLUSION..............................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Chemtura Corp.*, 439 B.R. 561 (Bankr. S.D.N.Y. 2010) ........................................................7

*Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599 (2d Cir. 1983) ........................................6

*Fox v. Picard (In re Madoff)*, 848 F. Supp. 2d 469 (S.D.N.Y. 2012), *aff'd sub nom.*
    *Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 740 F.3d 81 (2d Cir.
    2014) ........................................................................................................................................8

*In re Hibbard Brown & Co.*, 217 B.R. 41 (Bankr. S.D.N.Y. 1998) ...............................................6

*In re Ionosphere Clubs, Inc.*, 156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir.
    1994) ........................................................................................................................................5

*JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter
    Commc'ns)*, 419 B.R. 221 (Bankr. S.D.N.Y. 2009) ...............................................................7

*In re MF Global Inc.*, No. 11-2790 (MG), 2012 WL 3242533 (Bankr. S.D.N.Y. Aug. 10,
    2012), *appeal dismissed sub nom. Hamann v. Giddens (In re MF Global Inc.)*, No. 12
    Civ. 8784(CM), 2013 WL 652421 (S.D.N.Y. Feb. 22, 2013) ...........................................6, 7, 8

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*,
    478 F.3d 452 (2d Cir. 2007) ...............................................................................................6, 7, 8

*Nellis v. Shugrue*, 165 B.R. 115 (S.D.N.Y. 1994) .........................................................................6

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390
    U.S. 414 (1968) ........................................................................................................................5

*In re Purofied Down Prods. Corp.*, 150 B.R. 519 (S.D.N.Y. 1993) ..............................................7

$R^2$ *Invs., LDC v. Charter Commc'ns, Inc. (In re Charter Commc'ns, Inc.)*, 449 B.R. 14
    (S.D.N.Y. 2011), *aff'd*, 691 F.3d 476 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2021
    (2013) .......................................................................................................................................7

*Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp.,
    Inc.)*, 134 B.R. 499 (Bankr. S.D.N.Y. 1991) ..........................................................................6

STATUTES AND RULES

15 U.S.C. § 78aa ............................................................................................................................3

15 U.S.C. § 78aaa ..........................................................................................................................1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

15 U.S.C. § 78eee ............................................................................................................2, 3

Bankruptcy Rule of Procedure 9019.......................................................................................1, 5, 8

James W. Giddens (the "LBI Trustee"), as trustee for the SIPA liquidation of

Lehman Brothers Inc. ("LBI") under the Securities Investor Protection Act of 1970, as amended

("SIPA")[1], 15 U.S.C. § 78aaa *et seq.*, by and through his undersigned counsel, hereby moves this

Court (the "Motion") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for approval of a settlement and compromise dated February 6, 2015, (the

"Settlement Agreement")[2] attached hereto as Exhibit A, between the LBI Trustee and Lehman

Re Ltd. (In Provisional Liquidation) ("Lehman Re"), acting through Garth Calow and Dan

Schwarzmann (the "Lehman Re Liquidators"), in their capacities as joint provisional liquidators

for the liquidation of Lehman Re, of all claims made by Lehman Re against LBI as described

below.

## I.    PRELIMINARY STATEMENT

1.    As a result of good faith negotiation, account reconciliation and

discussions of asset valuation between the LBI Trustee's professionals and the Lehman Re

Liquidators and their professionals, the LBI Trustee has achieved a settlement of claims made by

Lehman Re against the LBI estate.  Lehman Re asserted general creditor claims against LBI,

seeking a total of approximately $195 million.  The LBI Trustee challenged the validity,

propriety and valuation of these claims during the negotiations.  Ultimately, the LBI Trustee and

the Lehman Re Liquidators arrived at the economic resolution of their differences contained in

the Settlement Agreement.

---

1.  SIPA appears at 15 U.S.C. § 78aaa.  For convenience, subsequent references to SIPA will omit "15 U.S.C."

2.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement
    Agreement.

2.      To avoid the expense and uncertainty of litigation, the LBI Trustee and

Lehman Re have agreed to resolve Lehman Re's claims in accordance with the terms set forth in

the Settlement Agreement.  The LBI Trustee believes that the compromises embodied in the

Settlement Agreement are a reasonable resolution of Lehman Re's claims.  If approved, the

Settlement Agreement will allow Lehman Re's claims on a reduced basis by providing for an

allowed non-priority general unsecured creditor claim for Lehman Re in the amount of

approximately $125 million, representing a 36% reduction from the amount claimed by Lehman

Re.  All other aspects of the claims filed by Lehman Re are disallowed and will be expunged as

specified in the Settlement Agreement.  The settlement is the result of Lehman Re's cooperation

in providing support for its valuation of its claims and the Parties' extensive due diligence and

arm's-length, good faith negotiations to reach an appropriate compromise and to avoid costly

litigation. The settlement resolves all claims between LBI and Lehman Re consistent with the

approach taken by the LBI Trustee in settling claims by and against LBI's other former affiliates.

## II.    <u>JURISDICTION AND VENUE</u>

3.      On September 19, 2008 (the "Filing Date"), the Honorable Gerard E.

Lynch, Judge of United States District Court for the Southern District of New York, entered an

Order Commencing Liquidation (the "LBI Liquidation Order," ECF No. 1) pursuant to the

provisions of SIPA in the case captioned *Securities Investor Protection Corp. v. Lehman

Brothers Inc.*, No. 08-CIV-8119 (GEL).

4.      The LBI Liquidation Order (i) appointed the LBI Trustee for the

liquidation of the business of LBI pursuant to SIPA § 78eee(b)(3); (ii) appointed counsel to the

LBI Trustee pursuant to section 78eee(b)(3); and (iii) removed this case to this Court pursuant to

section 78eee(b)(4), in the case captioned *In re Lehman Brothers Inc.*, No. 08-01420 (JMP).

5.      Following removal to this Court, this Court has "all of the jurisdiction, powers, and duties conferred by [SIPA] upon the court to which the application for the issuance of the protective decree was made."  SIPA § 78eee(b)(4).  Venue is proper in this Court pursuant to SIPA § 78eee(a)(3) and 15 U.S.C. § 78aa.

## III.    **BACKGROUND**

6.      Lehman Re is a wholly owned indirect subsidiary of LBHI and an affiliate of LBI based in Bermuda.  On September 23, 2008, a winding-up proceeding was commenced on behalf of Lehman Re in the Supreme Court of Bermuda (the "Bermuda Court").  On the same day, Peter C.B. Mitchell and D. Geoffrey Hunter were appointed as the initial joint provisional liquidators for Lehman Re by order of the Bermuda Court.   The Bermuda Court subsequently appointed Dan Schwarzmann and Garth Calow as successor joint provisional liquidators for Lehman Re on April 8, 2010 and July 19, 2011, respectively.

7.      As part of the LBI Trustee's statutory duties, the LBI Trustee engaged in an extensive effort to understand the economic relationship between LBI and Lehman Re.  The LBI Trustee received and evaluated the claims submitted by Lehman Re in this case.

### A.    **The Claims**

8.      On May 30, 2009, Lehman Re submitted General Creditor Claim No. 5504 seeking contingent, unliquidated amounts relating to repurchase transactions entered into by Lehman Re, LBI, and Lehman Brothers Commercial Paper Inc. ("LCPI") pursuant to a Master Repurchase Agreement (the "MRA") dated July 9, 1999 entered into by the three entities. Lehman Re asserted that under the MRA, LBI and LCPI would agree to sell certain securities to Lehman Re and to repurchase those securities back from Lehman Re at a future date.

9.      On June 1, 2009, Lehman Re submitted General Creditor Claim No. 5731, which duplicated its claims in General Creditor Claim No. 5504.

10.      On July 31, 2013, Lehman Re submitted General Creditor Claim No. 6368 seeking in total $194,989,761.19 as an amendment to General Creditor Claim No. 5504. Specifically, Lehman Re sought $189,758,738.19 related to repurchase transactions entered into by Lehman Re and LBI pursuant to the MRA and $5,231,023.00 relating to a balance owed in a non-trading intercompany account.

11.      With respect to the MRA claim, Lehman Re asserted that it purchased twenty-five securities from LBI (the "Repo Securities") for the total price of $273,401,607.78 prior to the Filing Date that LBI was obligated to repurchase from Lehman Re for at least the same total price pursuant to the MRA.  Lehman Re asserted that LBI defaulted on September 18, 2008 and failed to satisfy its repurchase obligations, thereby causing Lehman Re to retain possession of the Repo Securities.  Lehman Re asserted damages in the amount of $189,758,738.19, representing the contract repurchase price less $83,642,869.59, Lehman Re's asserted value for the Repo Securities as of September 18, 2008.[3]

12.      On May 29, 2009, Aetna Life Insurance Company ("Aetna") submitted General Creditor Claim No. 4970 seeking unliquidated amounts relating to assets that LBI allegedly managed on behalf of Lehman Re.   Aetna asserted that the assets were held in a collateral trust established by Lehman Re for Aetna's benefit pursuant to a Coinsurance Agreement dated December 17, 1999 entered into between Aetna and Lehman Re.  On June 3, 2013, Aetna transferred 100% of the claim to CCP Credit Acquisition Holdings, L.L.C. (ECF

---

3. According to Lehman Re, its valuation for the Repo Securities comprised: (1) the actual prices procured in sales of fifteen of the securities on the market during the period September 22, 2008 to March 3, 2009 and (2) valuation of the remaining ten unsold securities as calculated by third parties.

No. 6315) and Centerbridge Special Credit Partners II, L.P. (ECF No. 6316) (together with CCP Credit Acquisition Holdings, L.L.C., "Centerbridge").

### B.    The Reconciliation Process

13.    The LBI Trustee's professionals have made a substantial effort to reconcile Lehman Re's claims with LBI's books and records.  Although the Parties engaged in good faith negotiations and were able to make substantial progress in reconciling the claims asserted by Lehman Re, differences remained concerning the valuation of the Repo Securities.

14.    The Settlement Agreement provides a final resolution of all legal and factual issues between LBI and Lehman Re.  By settling these claims, the LBI Trustee is able to avoid the expense, risk and delay that would be associated with litigation and the need to reserve for possible unfavorable outcomes of that litigation when making distributions.  Thus, the settlement benefits the creditors of LBI by reducing the outstanding claims against LBI's general estate and will aid the LBI Trustee in making distributions.

15.    In addition, the parties are exchanging mutual full releases of all other claims against each other.[4]  Thus, if the Settlement Agreement becomes effective, all that will remain of the Parties' relationship will be the LBI Trustee's obligation to make distributions on account of the claim allowed pursuant to the Settlement Agreement.

### IV.    THE SETTLEMENT AGREEMENT

16.    The principal terms of the proposed Settlement Agreement provide Lehman Re with an allowed non-priority general unsecured creditor claim against LBI in the amount of approximately $125 million.  Additionally, the Settlement Agreement also requires

---

4.    The precise terms of the parties' agreement are reflected in the Settlement Agreement.

that Centerbridge withdraw with prejudice General Creditor Claim Nos. 4970 and 4970-1 as a

condition to the settlement becoming effective.

**V.     RELIEF REQUESTED**

17.     The LBI Trustee has determined that litigating the value of Lehman Re's

claim against LBI, with the associated risks and costs, would not be in the best interest of LBI's

estate. By this Motion, the LBI Trustee requests approval of the Settlement Agreement pursuant

to Bankruptcy Rule 9019.

**VI.    BASIS FOR RELIEF UNDER BANKRUPTCY RULE 9019**

18.     Under Bankruptcy Rule 9019, a court may approve a settlement if it is fair

and equitable and in the best interests of the estate. *See In re Ionosphere Clubs, Inc.*, 156 B.R.

414, 426 (S.D.N.Y. 1993) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer*

*Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)), *aff'd*, 17 F.3d 600 (2d Cir. 1994). In

determining whether a settlement meets this standard, a court should be apprised of all "factors

relevant to a full and fair assessment of the wisdom of the proposed compromise." *TMT Trailer*

*Ferry*, 390 U.S. at 424. As a general matter, "[s]ettlements and compromises are favored in

bankruptcy as they minimize costly litigation and further parties' interests in expediting the

administration of the bankruptcy estate." *In re MF Global Inc.*, No. 11-2790 (MG) SIPA, 2012

WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012), *appeal dismissed sub nom. Hamann v.*

*Giddens* (*In re MF Global Inc.*), No. 12 Civ. 8784(CM), 2013 WL 652421 (S.D.N.Y. Feb. 22,

2013); *see also Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium*

*Operating LLC)*, 478 F.3d 452, 455 (2d Cir. 2007) (stating that settlements are important in

bankruptcy because they "help clear a path for the efficient administration of the bankrupt

estate").

19.    "A decision to either accept or reject a [particular] compromise and settlement is within the sound discretion of the Court." *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  It is appropriate for the Court to "consider the opinions of the trustee or debtor and their counsel that [a] settlement is fair and equitable." *Nellis v. Shugrue*, 165 B.R. 115, 122 (S.D.N.Y. 1994) (affirming bankruptcy court's approval of settlement agreement) (citations omitted).  Deference should be given to an agreement reached "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (approving settlement agreement and overruling objections thereto); *see also Shugrue*, 165 B.R. at 123 ("[T]he general rule [is] that settlements are favored. . . .").

20.    In determining whether to approve a settlement, the Court need not assess "the minutia of each and every claim." *Shugrue*, 165 B.R. at 123.  Rather, the Court should "canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (internal quotation marks omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) (stating that the court need not conduct a "mini-trial" on the merits when making a determination of reasonableness).  In evaluating the necessary facts, a court may credit the opinion of the debtor, parties to the settlement, and their professionals.  *See In re Purofied Down Prods. Corp.*, 150 B.R. at 522-23; *In re Chemtura Corp.,* 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010) (internal quotation marks omitted); *see also MF Global Inc.*, 2012 WL 3242533, at *5 (recognizing that although courts have the discretion to approve settlements, the business judgment of the debtor in recommending a settlement should be considered).

7

21.    In the Second Circuit, courts "evaluate whether a proposed settlement is in the best interests of the estate and fair and equitable by applying the [seven] factors set forth in *In re Iridium Operating LLC*." *JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns)*, 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009) (citing *In re Iridium Operating LLC*, 478 F.3d at 462), *appeal dismissed sub nom. R$^2$ Invs., LDC v. Charter Commc'ns, Inc. (In re Charter Commc'ns, Inc.)*, 449 B.R. 14 (S.D.N.Y. 2011), *aff'd*, 691 F.3d 476 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2021 (2013).  Those seven factors are:

1.    the balance between the litigation's possibility of success and the settlement's future benefits;

2.    the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

3.    the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

4.    whether other parties in interest support the settlement;

5.    the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;

6.    the nature and breadth of releases to be obtained by officers and directors; and

7.    the extent to which the settlement is the product of arm's-length bargaining.

*In re Iridium Operating LLC*, 478 F.3d at 462 (internal quotation marks omitted).

22.    In SIPA liquidations, courts in the Second Circuit have applied the *Iridium* analysis in determining whether a settlement falls within the range of reasonableness prescribed by Bankruptcy Rule 9019.  *See, e.g.*, *Fox v. Picard (In re Madoff)*, 848 F. Supp. 2d 469, 487-88

(S.D.N.Y. 2012), *aff'd sub nom. Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 740 F.3d 81 (2d Cir. 2014); *In re MF Global Inc.*, 2012 WL 3242533, at *6-7.

23.     As set forth below, each of the *Iridium* factors weighs decisively in favor of this Court's approval of the Settlement Agreement.

## VII.    THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE AND EQUITABLE, AND IN THE BEST INTEREST OF THE LBI ESTATE

24.     The Settlement Agreement is the product of arm's-length negotiations between the LBI Trustee and the Lehman Re Liquidators with the assistance of their valuation professionals, represents the parties' good faith compromise of their disputes, and achieves resolutions in the best interests of the LBI estate.

### A.    The Benefits Of The Settlement Agreement Greatly Outweigh The Possibility Of Success By Means Of Litigation

25.     The benefits of the Settlement Agreement greatly outweigh the possibility of success in litigation between the LBI Trustee and Lehman Re (and the prospects to LBI's other creditors of a loss by the LBI Trustee).  The Settlement Agreement resolves Lehman Re's general creditor claims with finality at an amount well below the asserted amount, thereby preserving maximum value for the LBI general estate.

### B.    Litigation Is Likely To Be Complex, Protracted, And Expensive

26.     The proposed settlement is the product of significant effort to reconcile Lehman Re's substantial claims against the LBI estate and come to an agreement regarding the value of the Repo Securities, which were not traded on any exchange.  Despite these efforts, the Parties still had good faith differences of opinion related to the value of the Repo Securities. Without the benefit of the Settlement Agreement, the LBI Trustee will need to initiate litigation that would likely require (i) complex securities valuation and (ii) divert significant resources and

attention of the LBI Trustee and his professionals.  The Settlement Agreement avoids the costs and inherent uncertainty attendant to litigation.

### C.    The Settlement Is In The Interests Of Creditors

27.    The Settlement Agreement is in the interests of creditors because it provides Lehman Re with an allowed claim on a reduced basis.  Under the Settlement Agreement, Lehman Re will have a non-priority general unsecured creditor claim in the amount of approximately $125 million, representing a 36% reduction of its asserted amount.

### D.    The Parties Are Represented By Sophisticated And Experienced Professionals

28.    The Parties are represented by highly regarded law firms and financial advisors with significant relevant experience in SIPA liquidations and Chapter 11 reorganizations.  In addition to this liquidation, the LBI Trustee has been appointed by the United States District Courts for the Southern and Eastern Districts of New York to serve as trustee in the liquidations of MF Global Inc., Weis Securities, Inc., Hanover Square Securities Group, Inc., A.R. Baron & Co., Inc., and New Times Securities Services, Inc.  As a result, the LBI Trustee has significant experience in analyzing the facts, legal principles, and practical aspects of the SIPA liquidation and claims process as well as litigating and negotiating complex SIPA customer and creditor disputes.  (Declaration of Christopher K. Kiplok, dated February 17, 2015 (the "Kiplok Decl.") at ¶ 6.)

29.    The LBI Trustee has hired experienced and highly qualified legal, accounting, and other professionals, all of whom have substantial relevant experience with resolving complex insolvencies.  The LBI Trustee has retained, among others, Hughes Hubbard & Reed LLP ("Hughes Hubbard"), Deloitte & Touche LLP, and Deloitte Tax LLP (subsidiaries

of Deloitte LLP, and referred to collectively as "Deloitte"), and Miller Buckfire & Co., LLC

("Miller Buckfire"):

- <u>Hughes Hubbard</u>: Hughes Hubbard brings over 40 years of experience in administering and liquidating financial institutions under SIPA and enjoys a preeminent national and international reputation in this field.  In the last decade alone, the LBI Trustee and Hughes Hubbard, in consultation with SIPC, have administered three other SIPA liquidations.
- <u>Deloitte</u>: Deloitte offers a broad range of financial advisory services and is known as one of the premier, "Big Four" accounting firms.
- <u>Miller Buckfire</u>:  Miller Buckfire is an internationally recognized investment bank providing advisory and research capabilities on recapitalizations, acquisitions, sales and divestitures, and debt and equity financing transactions, including valuation of securities.

(Kiplok Decl. ¶ 7.)

30.    The LBI Trustee's professionals played major roles in the negotiation and evaluation of the Settlement Agreement.  (Kiplok Decl. ¶ 8.)  The Lehman Re Liquidators retained Cadwalader, Wickersham & Taft LLP, which has provided advice in connection with the Settlement Agreement and is well-respected in a variety of complex commercial practice areas, and Blackrock, Inc., which provided advice on valuation of certain of the Repo Securities.

**E.**    **The Releases In The Settlement Agreement Are Reasonable And Necessary**

31.    Pursuant to the Settlement Agreement, the LBI Trustee and Lehman Re provide for general releases of claims against each other (including the Parties' administrators, members, partners, directors, officers, employees, agents, advisors, and representatives).  These releases are reasonable in scope and necessary to accomplish the certain resolution of Lehman Re's claims. (Kiplok Decl. ¶ 18.)

**F.**    **The Settlement Agreement Is The Product Of Arm's-Length Negotiation**

32.    The Settlement Agreement was negotiated at arm's length and in good faith throughout the course of the parties' discussions.  It represents the parties' compromise of

their disputes with the principal goal of reaching a cooperative and consensual result that would provide the best outcome for the parties' respective estates. (Kiplok Decl. ¶ 19.)

33.    Accordingly, the LBI Trustee respectfully submits that the settlements and compromises embodied in the Settlement Agreement are appropriate in light of the relevant factors, are fair and equitable, fall well within the range of reasonableness, and represent a benefit to LBI's creditors and all parties in interest. For these reasons, the Settlement Agreement should be approved.

## VIII.    <u>NOTICE</u>

34.    The LBI Trustee has provided notice of the Motion pursuant to the Amended Case Management Order entered in this proceeding (ECF No. 3466). The LBI Trustee submits that no other or further notice need be given.

## IX.    <u>NO PRIOR REQUEST</u>

35.    No previous request for the relief sought herein has been made to this Court or any other court.

X.    __CONCLUSION__

WHEREFORE, the LBI Trustee respectfully requests that the Court (i) enter the proposed Order substantially in the form attached as Exhibit B approving the Settlement Agreement, and (ii) grant such additional and further relief as the Court deems just and appropriate.

Dated:    New York, New York
          February 17, 2015

                                    HUGHES HUBBARD & REED LLP

                                    By: /s/ Michael E. Salzman
                                        James B. Kobak, Jr.
                                        Michael E. Salzman
                                        Jeffrey M. Greilsheimer

                                    One Battery Park Plaza
                                    New York, New York 10004
                                    Telephone: (212) 837-6000
                                    Facsimile: (212) 422-4726
                                    Email:    james.kobak@hugheshubbard.com
                                              michael.salzman@hugheshubbard.com
                                              jeffrey.greilsheimer@hugheshubbard.com

                                    *Attorneys for James W. Giddens, Trustee for
                                    the SIPA Liquidation of Lehman Brothers Inc.*

# <u>EXHIBIT A</u>

## SETTLEMENT AGREEMENT
## BETWEEN LBI TRUSTEE AND LEHMAN RE

This Settlement Agreement[1] is made and entered into as of February 6, 2015 between the LBI Trustee and Lehman Re, acting by the Lehman Re Joint Provisional Liquidators.

### RECITALS

WHEREAS, on September 19, 2008, the Honorable Gerard E. Lynch, District Judge of the United States District Court for the Southern District of New York, entered the LBI Liquidation Order which, among other things, (i) appointed the LBI Trustee for the liquidation of the business of LBI pursuant to SIPA § 78eee(b)(3) and (ii) removed the case to the Bankruptcy Court pursuant to SIPA § 78eee(b)(1);

WHEREAS, on September 23, 2008, a winding-up proceeding was commenced on behalf of Lehman Re in the Supreme Court of Bermuda and Peter C.B. Mitchell and D. Geoffrey Hunter were appointed as the initial joint provisional liquidators for Lehman Re;

WHEREAS, the Bermuda Court appointed Dan Schwarzmann and Garth Calow as successor joint provisional liquidators for Lehman Re on April 8, 2010 and July 19, 2011, respectively;

WHEREAS, on August 6, 2009, the Lehman Re Joint Provisional Liquidators filed a Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding in the Bankruptcy Court, and by Order dated September 24, 2009, the Bankruptcy Court granted such recognition and other related relief;

WHEREAS, Lehman Re filed Claims against LBI in the LBI SIPA Proceeding; and

WHEREAS, the Parties are desirous of resolving all disputes and issues between the LBI Trustee and Lehman Re so as to avoid extensive, uncertain and expensive litigation;

NOW, THEREFORE, in consideration of the recitals stated above, the agreements, promises and warranties set forth below and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

### ARTICLE I.  DEFINITIONS, CONSTRUCTION & INTERPRETATION

Section 1.01    *Definitions.*  Capitalized terms used herein shall have the following meanings:

**Affiliate** has the meaning ascribed to it in Section 101(2) of the Bankruptcy Code.

**Asset** means, as the context requires, property, rights, Claims and assets, including securities and money.

---

[1] Capitalized terms are used as defined in the Definitions in Section 1.01 herein.

1

**Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of New York.

**Bankruptcy Court Approval** means the entry (a) in the LBI SIPA Proceeding, of a Final Order of the Bankruptcy Court approving the Settlement Agreement and granting the LBI Trustee authority to perform this Settlement Agreement, perform all obligations hereunder and comply with the terms of this Settlement Agreement and (b) in the Lehman Re Chapter 15 Proceeding, of a Final Order of the Bankruptcy Court approving the Settlement Agreement and granting the Lehman Re Joint Provisional Liquidators authority to perform this Settlement Agreement, perform all obligations hereunder and comply with the terms of the Settlement Agreement.

**Bermuda Avoidance Actions** means all avoidance actions and causes of action which may be brought by Lehman Re against any Lehman Re Released Party pursuant to applicable Bermuda Law.

**Bermuda Court** means the Supreme Court of Bermuda.

**Bermuda Court Approval** means the entry of a Final Order of the Bermuda Court approving this Settlement Agreement and granting the Lehman Re Joint Provisional Liquidators authority to perform this Settlement Agreement, perform all obligations hereunder and comply with the terms of the Settlement Agreement.

**Bermuda Law** means the laws of Bermuda.

**Business Day** means any day that is not a Saturday, Sunday, United States federal holiday, a New York state holiday, a Bermuda national holiday or a public holiday in Bermuda.

**Claim** means: (i) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (ii) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy (or right to payment to which it gives rise) is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Conditions to Effectiveness** means the occurrence of each of the following events: (i) Bankruptcy Court Approval; (ii) Bermuda Court Approval; and (iii) withdrawal with prejudice of Claims Nos. 4970 and 4970-1 filed on the docket in the LBI SIPA Proceeding.

**Effective Date** means the first Business Day after the last Condition to Effectiveness has occurred or has otherwise been waived in writing by the Parties.

**Encumbrance** means any interest or equity of any Person (including any right to acquire, option or right of pre-emption) or any mortgage, charge, pledge, lien (including an Extended Lien Claim), assignment, hypothecation, option, restriction, right of first refusal, right of pre-emption, third-party right or interest, other right that encumbers or restricts the entitlement of the owner or holder of an Asset until one or more obligations owed to another Person are discharged in full, other encumbrance or security interest or arrangement of any kind, or another type of

2

preferential arrangement (including, without limitation, a title transfer or retention arrangement) having similar effect and any agreement or obligation to create or grant any of the aforesaid.

**Execution Date** means the date this Settlement Agreement is executed by all Parties.

**Extended Lien Asset** means any securities, money or other asset held by a Holding Affiliate that are subject to an Extended Lien Provision.

**Extended Lien Claim** means a Claim based upon an Extended Lien Provision to recover an Extended Lien Asset.

**Extended Lien Claimant** means any Lehman Entity that may assert, or have, a Security Interest in one or more Extended Lien Assets held by or for a Holding Affiliate.

**Extended Lien Provision** means a term of an agreement between a Holding Affiliate and an Ownership Claimant that confers a Security Interest in respect of securities, money or other assets in relation to debts owed by such Ownership Claimant to such Holding Affiliate and any other Lehman Entity.

**Final Order** means an order of the Bankruptcy Court, a competent Bermuda court or any other court of competent jurisdiction that:

  i. is in full force and effect;

  ii. has not been reversed or vacated; and

  iii. as to which the time to appeal, petition for certiorari, and move for reargument or rehearing has expired and (A) as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or (B) in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been timely sought, such appeal, writ of certiorari, or reargument or rehearing shall have been withdrawn, denied or resolved by the highest court to which such order was appealed or from which certiorari, rehearing or reargument was sought; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure, any analogous rule under Bermuda law, or any other applicable law, may be filed with respect to such order shall not prevent such order from being a Final Order.

**Holding Affiliate** means a Lehman Entity that holds assets for the benefit of one or more other Lehman Entities.

**LBHI** means Lehman Brothers Holdings Inc.

**LBI** means Lehman Brothers Inc.

**LBI Extended Lien Asset** means any Extended Lien Asset in respect of which LBI is an Ownership Claimant.

3

**LBI Liquidation Order** means the Order Commencing Liquidation, entered September 19, 2008, by the Honorable Gerard E. Lynch, District Judge of the United States District Court for the Southern District of New York, pursuant to the provisions of SIPA in the case captioned *SIPC v. LBI*, Case No. 08-CIV-8119 (GEL).

**LBI Released Claim** means all claims, demands, rights, duties, remedies, judgments, executions, debts, damages, liabilities, causes of action, costs, expenses, and Claims, of every kind, nature, character and description whatsoever, whether accrued or unaccrued, known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, certain or contingent, whether based on contract, federal, state, local, statutory or common law (including Bermuda Law) or any other law, rule or regulation of any jurisdiction, or otherwise, that have been, could have been or might hereafter be asserted in any action, suit or proceeding, whether directly, indirectly, representatively or in any other capacity, in law or in equity, by the LBI Releasing Parties against any of the LBI Released Parties arising out of or in any way related to any members of the former Lehman Brothers group (including, without limitation, the business activities, assets or liabilities thereof). The release of the LBI Released Claims by the LBI Releasing Parties shall be a waiver and relinquishment, to the fullest extent permitted by law, of all provisions, laws and rules limiting relinquishment of unknown or unsuspected claims, including the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR"

and any and all provisions, rights and benefits of any similar statute or common law rule of any other jurisdiction. The term LBI Released Claim shall specifically include, without limitation: (i) any administrative expense claim arising under applicable Bermuda Law or US Bankruptcy Law, (ii) any US Avoidance Action or Bermuda Avoidance Action, (iii) any right of subrogation, and (iv) any Claim based upon any Extended Lien Provision; the term LBI Released Claim shall specifically not include any Non-Party Claim.

**LBI Released Parties** means the following Persons: (i) Lehman Re, (ii) the Lehman Re Joint Provisional Liquidators, (iii) all past and present employees, professionals and advisors of Lehman Re and the Lehman Re Joint Provisional Liquidators (solely in such capacity), respectively, and (iv) all successors, assigns, heirs, and personal representatives, and all past and present officers, directors, employees, agents, representatives, consultants, financial advisors, accountants and attorneys, of each Person referred to in this definition (solely in such capacity); except to the extent that any of the foregoing Persons referred to in this definition was an employee of a Lehman Entity and is obligated to LBI on a promissory note, in which case such Person shall not be an LBI Released Party.

**LBI Releasing Parties** means the LBI Trustee, on behalf of himself, the LBI estate, his successors and assigns, and any entity claiming through or on behalf of the LBI Trustee or LBI.

**LBI SIPA Proceeding** means the SIPA liquidation of LBI pending in the Bankruptcy Court and captioned *In re Lehman Brothers Inc.*, 08-01420 (SCC) SIPA.

**LBI Trustee** means James W. Giddens, as trustee in the SIPA liquidation of LBI, without personal liability and solely in his capacity as trustee and on behalf of LBI.

**Lehman Entity** means LBHI and any entity that was directly or indirectly owned or controlled by LBHI on September 15, 2008.

**Lehman Re** means Lehman Re Ltd., a Bermuda corporation in liquidation.

**Lehman Re Accounts** means any Lehman Re accounts held at LBI on September 19, 2008.

**Lehman Re Allowed Claim** means the Claim of Lehman Re in Section 3.01 which is allowed pursuant to this Settlement Agreement.

**Lehman Re Case** means the winding-up proceeding commenced on behalf of Lehman Re on September 23, 2009 in the Bermuda Court.

**Lehman Re Claim** means proof of claim no. 5504, as amended by proof of claim no. 6368, which was filed by Lehman Re against LBI and relates to certain alleged obligations under a master repurchase agreement and certain alleged intercompany obligations and all other Claims that have been or could have been asserted by Lehman Re against LBI.

**Lehman Re Chapter 15 Case** means the proceeding pending in the Bankruptcy Court captioned *In re: Dan Schwarzmann and Garth Calow as Joint Provisional Liquidators of Lehman Re Ltd., Debtor in a Foreign Proceeding*, 09-14884 (SCC).

**Lehman Re Extended Lien Asset** means any Extended Lien Asset in respect of which Lehman Re is an Ownership Claimant.

**Lehman Re Joint Provisional Liquidators** means Dan Schwarzmann and Garth Calow, without personal liability and solely in their capacity as Bermuda Court appointed joint provisional liquidators in the liquidation of Lehman Re, and any other duly appointed predecessors or successors.

**Lehman Re Released Claim** means all claims, demands, rights, duties, remedies, judgments, executions, debts, damages, liabilities, causes of action, costs, expenses, and Claims, of every kind, nature, character and description whatsoever (other than the Lehman Re Allowed Claim), whether accrued or unaccrued, known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, certain or contingent, whether based on contract, federal, state, local, statutory or common law (including Bermuda Law) or any other law, rule or regulation of any jurisdiction, or otherwise, that have been, could have been or might hereafter be asserted in any action, suit or proceeding, whether directly, indirectly, representatively or in any other capacity, in law or in equity, by the Lehman Re Releasing Parties against any of the Lehman Re Released Parties arising out of or in any way related to any members of the former Lehman Brothers group (including, without limitation, the business activities, assets or liabilities

thereof). The release of the Lehman Re Released Claims by the Lehman Re Releasing Parties shall be a waiver and relinquishment, to the fullest extent permitted by law, of all provisions, laws and rules limiting relinquishment of unknown or unsuspected claims, including the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR"

and any and all provisions, rights and benefits of any similar statute or common law rule of any other jurisdiction. The term Lehman Re Released Claim shall specifically include, without limitation: (i) any administrative expense claim arising under applicable Bermuda Law or US Bankruptcy Law, (ii) any US Avoidance Action or Bermuda Avoidance Action, (iii) any right of subrogation, and (iv) any Claim based upon any Extended Lien Provision; the term Lehman Re Released Claim shall specifically not include the Lehman Re Allowed Claim and any Non-Party Claim.

**Lehman Re Released Parties** means the following Persons: (i) LBI, (ii) the LBI Trustee, (iii) SIPC, (iv) all past and present employees, professionals and advisors of SIPC, LBI and the LBI Trustee, respectively, and (v) all successors, assigns, heirs, and personal representatives, and all past and present officers, directors, employees, agents, representatives, consultants, financial advisors, accountants and attorneys, of each Person referred to in this definition (in such capacity); except to the extent that any of the foregoing Persons referred to in this definition was an employee of a Lehman Entity and is obligated to Lehman Re on a promissory note, in which case such Person shall not be a Lehman Re Released Party.

**Lehman Re Releasing Party** means Lehman Re, on behalf of itself, its estate, its successors and assigns, and any Person claiming through or on behalf of Lehman Re (including the Lehman Re Joint Provisional Liquidators).

**Non-Party Claim** means any Claim of a Party against any Person other than a Party, including without limitation any such Claim arising from the guaranty of an obligation of a Party.

**Ownership Claimant** means a Lehman Entity that has asserted a claim for securities, assets or money held in an account under its name at a Holding Affiliate.

**Parties** means, collectively, the LBI Trustee, Lehman Re and the Lehman Re Joint Provisional Liquidators.

**Party** means the LBI Trustee, Lehman Re or the Lehman Re Joint Provisional Liquidators.

**Person** means an individual, partnership, government entity, corporation, limited liability company, limited liability partnership or any other entity.

**Security Interest** mean any legal, equitable, contractual or possessory interest (or equivalent under any relevant legal system) of a Person in an Extended Lien Asset that is in the nature of a lien, pledge, charge or other right that encumbers or restricts the entitlement of the owner or holder of such Extended Lien Asset until one or more obligations owed to such Person are discharged in full.

**Settlement Agreement** means this agreement.

**SIPA** means the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. § 78aaa *et seq.*, in effect as of September 19, 2008.

**SIPC** means the Securities Investor Protection Corporation.

**Supervisory Judge** means the judge presiding in the Lehman Re Case.

**US$** means the lawful currency of the United States of America.

**US Avoidance Action** means (i) any and all actions under US Bankruptcy Law seeking the avoidance of a transfer or obligation, including Sections 542-553 of the US Bankruptcy Code; and (ii) similar actions under other applicable law.

**US Bankruptcy Code** means title 11 of the United States Code.

**US Bankruptcy Law** means the US Bankruptcy Code, SIPA and any other law applicable in the LBI SIPA Proceeding or the Lehman Re Chapter 15 Proceeding.

Section 1.02   *Construction.* This Settlement Agreement shall be interpreted according to the following rules of construction:

(a)   This Settlement Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party, and any rule or maxim of construction to such effect shall not apply to this Settlement Agreement.

(b)   Words or terms expressed in the plural include the singular and vice versa.

(c)   Words importing a gender include every gender.

(d)   The word "including" does not limit the generality of any preceding words.

(e)   The word "or" shall not be exclusive.

Section 1.03   *Non-Severability.* Each of the provisions of this Settlement Agreement is an integrated, essential and non-severable part of this Settlement Agreement.

Section 1.04   *Headings.* The headings utilized in this Settlement Agreement are for convenience only and shall in no way affect the construction, meaning or interpretation hereof.

Section 1.05   *Binding Effect; Successor and Assigns.*

(a) Any declaration or statement of the LBI Trustee shall only be made in his capacity and function as the LBI Trustee and shall in no circumstance be construed as being a declaration or statement of the LBI Trustee on his own and personal behalf.

(b) Any declaration or statement of the Lehman Re Joint Provisional Liquidators shall only be made in their respective capacities and functions as the Lehman Re Joint Provisional Liquidators, and shall in no circumstance be construed as being a declaration or statement of the Lehman Re Joint Provisional Liquidators on their own and personal behalf.

(c) This Settlement Agreement shall inure to the benefit of, be binding upon and enforceable by and against the Parties and their respective successors and permitted assigns.

Section 1.06   *Entire Agreement*. This Settlement Agreement constitutes the entire and only agreement of the Parties concerning the subject matter hereof. This Settlement Agreement supersedes and replaces any and all prior or contemporaneous verbal or written agreements between the Parties concerning the subject matter hereof.

Section 1.07   *No Oral Modifications.* This Settlement Agreement may not be modified or amended except by written agreement of the Parties. No waiver of any provision of this agreement shall be valid unless in writing signed by the waiving Party. No waiver of any breach of any term or provision of this Settlement Agreement shall be construed as a waiver of any subsequent breach.

Section 1.08   *No Admission of Liability*. Each Party acknowledges that this Settlement Agreement effects a settlement of potential Claims and counterclaims some or all of which are denied and contested, and that nothing contained herein shall be construed as an admission of liability or wrongdoing.

## ARTICLE II.   EFFECTIVENESS

Section 2.01   *Effectiveness*. This Settlement Agreement shall be effective on and from the Effective Date.

Section 2.02   *Counterparts.* This Settlement Agreement may be executed in counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement. The signatures of all of the Parties need not appear on the same counterpart. A copy or a facsimile of a signature shall be binding upon the signatory as if it were an original signature.

## ARTICLE III.   SETTLEMENT OF CLAIMS

Section 3.01   *Lehman Re Allowed Claim*. On and after the Effective Date, the Lehman Re Claim shall be allowed as a non-priority general unsecured claim in the amount of US$125,231,023.00 (one hundred twenty-five million, two hundred thirty-one thousand twenty-three U.S. dollars) against the estate of LBI and paid, without reserve or holdback (except to the extent that any Person not a Party to this Settlement Agreement asserts prior to Bankruptcy Court Approval that the Lehman Re Claim (or any balance underlying it) is subject, in whole or in part, to an Encumbrance), at the same cumulative percentage and in the same type and manner (including, without limitation, the timing of payments and distributions) provided for the

8

payment of all other allowed non-priority general unsecured claims in the LBI SIPA Proceeding (the "Lehman Re Allowed Claim"). The Lehman Re Allowed Claim shall not be subject to disallowance, recharacterization, dispute, reconsideration, objection, reduction, counterclaim, subordination, setoff, offset, recoupment, defenses or impairments of any kind. As soon as practicable after the Effective Date, the LBI Trustee shall make a distribution to the holder of the Lehman Re Allowed Claim that is the same as the distribution(s) that Lehman Re would have received in respect of the Lehman Re Allowed Claim if the Lehman Re Allowed Claim had been allowed prior to such distribution(s) being made in the LBI SIPA Proceeding.

Section 3.02    *Expungement and Disallowance of Claims*.  Other than as provided for in Section 3.01 or Article VIII, any and all Claims which have been, or could be, asserted by Lehman Re or the LBI Trustee against each other, in any proceeding or forum, shall be expunged, disallowed and released in accordance with Article VIII.

### ARTICLE IV.        EXTENDED LIENS

Section 4.01    *LBI Trustee's Release of Extended Liens*.  The LBI Trustee:

(a)  Waives and releases any Claim, right and entitlement that LBI or the LBI Trustee may have to the exercise of any Extended Lien Provision or enforcement of any Encumbrance over any Lehman Re Extended Lien Asset.

(b)  Covenants and agrees that he shall not, on behalf of himself, LBI or for the benefit of another Person, apply or exercise, or seek the application or exercise of any Extended Lien Provision or enforcement of any Encumbrance or right of set-off or counterclaim or any similar or analogous procedure or right in respect of any Lehman Extended Lien Asset.

Section 4.02    *Lehman Re's Release of Extended Liens*.  Lehman Re:

(a)  Waives and releases any Claim, right and entitlement that Lehman Re or the Lehman Re Joint Provisional Liquidators may have to the exercise of any Extended Lien Provision or enforcement of any Encumbrance over any LBI Extended Lien Asset.

(b)  Covenants and agrees that it shall not, on behalf of itself or for the benefit of another Person, apply or exercise, or seek the application or exercise of any Extended Lien Provision or enforcement of any Encumbrance or right of set-off or counterclaim or any similar or analogous procedure or right in respect of any LBI Extended Lien Asset.

### ARTICLE V. COVENANTS, REPRESENTATIONS & WARRANTIES

Section 5.01    *Covenants, Representations & Warranties by the LBI Trustee*.  In order to induce Lehman Re and the Lehman Re Joint Provisional Liquidators to enter into and perform their obligations under this Settlement Agreement, the LBI Trustee hereby covenants, represents, warrants and acknowledges as follows:

(a)  *Bankruptcy Court Approval*.  As soon as practicable after execution of this Settlement Agreement, the LBI Trustee shall seek Bankruptcy Court Approval.

9

(b) *Authority.* Subject to Bankruptcy Court Approval, (i) the LBI Trustee has the power and authority to execute, deliver and perform his obligations under this Settlement Agreement and to bind the LBI estate, and to consummate the transactions contemplated herein; and (ii) the execution, delivery and performance of this Settlement Agreement by the LBI Trustee and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of the LBI Trustee and no other proceedings on the part of the LBI Trustee are necessary to authorize and approve this Settlement Agreement or any of the transactions contemplated herein.

(c) *Validity.* Subject to Bankruptcy Court Approval, this Settlement Agreement has been duly executed and delivered by the LBI Trustee and constitutes the legal, valid and binding agreement of the LBI Trustee, enforceable against LBI and the LBI Trustee in accordance with its terms.

(d) *Authorization of Governmental Authorities and Creditors.* Subject to Bankruptcy Court Approval, no action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by the LBI Trustee pursuant to this Settlement Agreement, other than as provided herein.

(e) *No Reliance Other Than Representations, Warranties & Covenants.* The LBI Trustee and LBI, acting through the LBI Trustee: (i) is a sophisticated party with respect to the subject matter of this Settlement Agreement, (ii) has been represented and advised by legal counsel in connection with this Settlement Agreement, (iii) has adequate information concerning the matters that are the subject of this Settlement Agreement, (iv) acknowledges that he has entered into this Settlement Agreement voluntarily and of his own choice and not under coercion or duress, and (v) has independently and without reliance upon Lehman Re, the Lehman Re Joint Provisional Liquidators or any officer, employee, agent, counsel or other representative thereof, and based on such information as the LBI Trustee has deemed appropriate, made his own analysis and decision to enter into this Settlement Agreement, provided, that the LBI Trustee has relied upon the express representations, warranties and covenants of Lehman Re and the Lehman Re Joint Provisional Liquidators in this Settlement Agreement.

Section 5.02  *Covenants, Representations & Warranties by Lehman Re.* In order to induce the LBI Trustee to enter into and perform his obligations under this Settlement Agreement, each of the Lehman Re Joint Provisional Liquidators and Lehman Re hereby covenants, represents, warrants and acknowledges as follows:

(a) *Court Approval.* As soon as practicable after execution of this Settlement Agreement, Lehman Re, acting through the Lehman Re Joint Provisional Liquidators, shall seek Bermuda Court Approval and Bankruptcy Court Approval.

(b) *Authority.* Subject to Bermuda Court Approval and Bankruptcy Court Approval, (i) Lehman Re has the power and authority to execute, deliver and perform its obligations under this Settlement Agreement, and to consummate the transactions contemplated herein; and (ii) the execution, delivery and performance of this Settlement Agreement by

Lehman Re and the consummation of the transactions contemplated herein have been duly authorized by all necessary action on the part of Lehman Re and no other proceedings on the part of Lehman Re are necessary to authorize and approve this Settlement Agreement or any of the transactions contemplated herein.

(c) *Validity.* Subject to Bermuda Court Approval and Bankruptcy Court Approval, this Settlement Agreement has been duly executed and delivered by Lehman Re and constitutes the legal, valid and binding agreement of Lehman Re, enforceable against Lehman Re in accordance with its terms.

(d) *Authorization of Governmental Authorities and Creditors.* Subject to Bermuda Court Approval and Bankruptcy Court Approval, no action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by Lehman Re and/or the Lehman Re Joint Provisional Liquidators pursuant to this Settlement Agreement, other than as provided herein.

(e) *No Reliance Other Than Representations, Warranties & Covenants.* The Lehman Re Joint Provisional Liquidators and Lehman Re acting through the Lehman Re Joint Provisional Liquidators (i) are sophisticated parties with respect to the subject matter of this Settlement Agreement, (ii) have been represented and advised by legal counsel in connection with this Settlement Agreement, (iii) have adequate information concerning the matters that are the subject of this Settlement Agreement, (iv) acknowledge that they have entered into this Settlement Agreement voluntarily and of their own choice and not under coercion or duress, and (v) have independently and without reliance upon the LBI Trustee or any of the LBI Trustee's or LBI's respective affiliates or any officer, employee, agent, counsel or other representative thereof, and based on such information as each of the Lehman Re Joint Provisional Liquidators and Lehman Re has deemed appropriate, made its own analysis and decision to enter into this Settlement Agreement, provided, that each of the Lehman Re Joint Provisional Liquidators and Lehman Re has relied upon the express representations, warranties and covenants of the LBI Trustee in this Settlement Agreement.

(f) *Title; No Prior Transfer of Claims.*

(i) As of the Execution Date, Lehman Re owns and has good title to the Lehman Re Allowed Claim, free and clear of any and all liens, security interests, participations or Encumbrances created or incurred by or against Lehman Re and has not transferred or assigned to any other person the Lehman Re Allowed Claim that is the subject of this Settlement Agreement or any other Claim that it submitted in the LBI SIPA Proceeding, in whole or in part.

(ii) After the Effective Date, Lehman Re may sell, transfer or assign the Lehman Re Allowed Claim, or any rights or interests arising thereunder (including, without limitation, any rights or interests under the Settlement Agreement), in whole or in part, to one or more transferees; provided, that any transferee of such Lehman Re Allowed Claim agrees in writing (through the form attached hereto as Exhibit 1 (the "LBI

11

Undertaking")) that the terms of this Settlement Agreement shall be binding in all respects upon and shall govern its acts and those of any successor transferees. This subsection (ii) shall constitute consent by the LBI Trustee to any sale, transfer or assignment of the Lehman Re Allowed Claim, or any rights or interests arising thereunder (including, without limitation, any rights or interests under the Settlement Agreement), in whole or in part, that complies with this subsection.

## ARTICLE VI.     CONTRACTS

Section 6.01    *Contracts*.  Any contract or agreement (other than this Settlement Agreement) that is between (i) LBI or the LBI Trustee, and (ii) Lehman Re or any Lehman Re Joint Provisional Liquidator, shall be rejected pursuant to section 365 of the Bankruptcy Code or otherwise terminated.  Any Claim that arises from the rejection or termination of such contract or agreement is deemed to be satisfied in full by the terms and provisions of this Settlement Agreement.

## ARTICLE VII.     CONTINUING CO-OPERATION

Section 7.01    Until the earlier of the conclusion of the Lehman Re Case or the LBI SIPA Proceeding, if either Lehman Re or LBI makes a reasonable request for information or documentation from the other Party for the purpose of resolving Claims of Affiliates and other creditors, the recipient of such request shall make a good faith search for such information or documentation and shall deliver to the requesting Party any such non-privileged information or documentation as long as (i) the expenses associated with such efforts do not exceed a de minimis amount, or (ii) the requesting Party agrees to pay for such reasonable expenses. Notwithstanding anything to the contrary contained herein or in the LBI Undertaking, all agreements and obligations with respect to this Section 7.01 shall remain the sole and exclusive agreement and obligation of the Parties, and shall not bind any successors or assigns of the Parties.

## ARTICLE VIII.     RELEASES

Section 8.01    *LBI Release*.

(a) In consideration for Lehman Re's execution of this Settlement Agreement and in exchange for the obligations of Lehman Re and the Lehman Re Joint Provisional Liquidators under this Settlement Agreement, including the mutual release provisions of this Article VIII, effective upon the occurrence of the Effective Date, each of the LBI Releasing Parties hereby irrevocably releases, discharges and acquits, fully and forever, each of the LBI Released Parties from any and all LBI Released Claims.

(b) Nothing in this Settlement Agreement shall operate as a release or waiver of any LBI Non-Party Claim.

Section 8.02    *Lehman Re Release*.

(a) In consideration for the LBI Trustee's execution of this Settlement Agreement and in exchange for the obligations of LBI and the LBI Trustee under this Settlement

12

Agreement, including the allowance of the Lehman Re Allowed Claim and the mutual release provisions of this Article VIII, effective upon the occurrence of the Effective Date, each of the Lehman Re Releasing Parties hereby irrevocably releases, discharges and acquits, fully and forever, each of the Lehman Re Released Parties from any and all Lehman Re Released Claims.

(b) Nothing in this Settlement Agreement shall operate as a release or waiver of any Lehman Re Non-Party Claim.

Section 8.03   *Interpretation of Releases.*  For the avoidance of any doubt, nothing in this agreement shall be interpreted or construed (a) as a release or waiver of any claim for breach of any provision of this Settlement Agreement that occurs after the Effective Date; or (b) as a release or waiver that impairs or restricts the ability to assert, pursue or prove Non-Party Claims, including Non-Party Claims that arise with respect to or are related to the Lehman Re Allowed Claim, the Lehman Re Released Claims or the LBI Released Claims.

## ARTICLE IX.     TERMINATION

Section 9.01   *Automatic Termination.*  This Settlement Agreement shall automatically terminate upon the occurrence of any of the following events: (i) the entry of a Final Order denying Bankruptcy Court Approval, (ii) the entry of a Final Order denying Bermuda Court Approval.

Section 9.02   *The LBI Trustee's Right to Terminate.*  The LBI Trustee shall have the right to terminate this Settlement Agreement before the Effective Date by written notice to Lehman Re consistent with Article XI hereof if there is a material breach of the representations, warranties or covenants of Lehman Re hereunder, and Lehman Re shall fail to cure such breach within ten (10) Business Days following written notice of such breach from the LBI Trustee.

Section 9.03   *Lehman Re's Right to Terminate.*  Lehman Re shall have the right to terminate this Settlement Agreement before the Effective Date by written notice to the LBI Trustee consistent with Article XI if there is a material breach of the representations, warranties or covenants of the LBI Trustee hereunder, and the LBI Trustee shall fail to cure such breach within ten (10) Business Days following written notice of such breach from the Lehman Re Joint Provisional Liquidators.

Section 9.04   *Effect of Termination.*  In the event that this Settlement Agreement is terminated in accordance with its terms, then neither this Settlement Agreement, nor any motion or other pleading filed in the Bankruptcy Court or Bermuda Court with respect to the approval of this Settlement Agreement, shall have any *res judicata,* evidentiary or collateral estoppel effect or be of any force or effect. Each of the Parties' respective interests, rights, remedies and defenses shall be restored without prejudice as if this Settlement Agreement had never been executed (except as to this Section) and the Parties hereto shall be automatically relieved of any further obligations hereunder.  Except as expressly provided herein, this Settlement Agreement and all communications and negotiations among the Parties with respect hereto or any of the transactions contemplated hereunder are without waiver of or prejudice to the Parties' rights and remedies and the Parties hereby reserve all claims, defenses and positions that they may have with respect to each other.

13

## ARTICLE X. VENUE AND CHOICE OF LAW

Section 10.01 *Venue*.

(a) To the maximum extent permissible by law, the Parties expressly consent and submit to the exclusive jurisdiction of the Bankruptcy Court over any actions or proceedings relating to the enforcement or interpretation of this Settlement Agreement and any Party bringing such action or proceeding shall bring such action or proceeding in the Bankruptcy Court.

(b) Each of the Parties agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

(c) If the Bankruptcy Court refuses or abstains from exercising jurisdiction over the enforcement of this Settlement Agreement and/or any actions or proceedings arising hereunder or thereunder, then the Parties agree that venue shall be in any court in the State of New York having proper jurisdiction.

(d) Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Settlement Agreement with the Bankruptcy Court or with any other state or federal court located within the County of New York in the State of New York; and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(e) Each Party irrevocably consents to service of process in the manner provided for notices in Article XI hereof.  Nothing in this Settlement Agreement will affect the right, or requirement, of any Party to this Settlement Agreement to serve process in any other manner permitted or required by applicable law.

Section 10.02 *Choice of Law*.  This Settlement Agreement and all claims and disputes arising out of or in connection with this Settlement Agreement, shall be governed by and construed in accordance with the laws of the State of New York and US Bankruptcy Law, without regard to choice of law principles to the extent such principles would apply a law other than that of the State of New York or US Bankruptcy Law.

## ARTICLE XI.    NOTICES

All notices and other communications given or made pursuant to this Settlement Agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next Business Day, (c) three days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one Business Day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt.  All communications shall be sent:

14

To the LBI Trustee at:

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004
Attn:   James B. Kobak, Jr. & Jeffrey M. Greilsheimer
Email: kobak@hugheshubbbard.com
        greilshe@hugheshubbard.com

To Lehman Re:

Lehman Re Ltd.
c/o PricewaterhouseCoopers Ltd
P.O. Box HM 1171
Hamilton, HM EX, Bermuda
Attn:   Alison Tomb
Email: alison.tomb@bm.pwc.com

With a copy (which shall not constitute notice) to:

Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, NY 10281
Attn:   Ingrid Bagby and David Kronenberg
Email: ingrid.bagby@cwt.com
        david.kronenberg@cwt.com

or to such other address as may have been furnished by a Party to the other Party by notice given
in accordance with the requirements set forth above.

### ARTICLE XII.   EXPENSES

The fees and expenses incurred by each Party (including the fees of any attorneys,
accountants, investment bankers, financial advisors or any other professionals engaged by such
Party) in connection with this Settlement Agreement and the transactions contemplated hereby,
whether or not the transactions contemplated hereby are consummated, shall be paid by such
Party.

### ARTICLE XIII.   NO PERSONAL LIABILITY

Section 13.01  *LBI Trustee*.  The Parties accept and agree that this Settlement Agreement and all
actions and measures contained herein do not give rise to any personal liability on the part of the
LBI Trustee, his firm and its partners and employees, and their representatives or other
professional advisors, and to the extent any such personal liability existed, the Parties explicitly
waive any and all potential rights and claims against them, their firm and its partners and
employees, and their representatives and other professional advisors.  Any claim by a Party
against the LBI Trustee or LBI arising under or relating to this Settlement Agreement with

respect to the Lehman Re Allowed Claim shall only be satisfied out of the assets of the LBI general estate.

Section 13.02 *Lehman Re Joint Provisional Liquidators.* The Lehman Re Joint Provisional Liquidators were appointed by the Bermuda Court to manage Lehman Re's affairs, business, and properties as agents and without personal liability. Additionally, neither the Lehman Re Joint Provisional Liquidators, nor any agent, advisor, representative, Affiliate, employee, partner, servant, trustee, attorney, or other person acting on behalf of, or otherwise related to or affiliated with the Lehman Re Joint Provisional Liquidators, nor any agent, advisor, representative, Affiliate, employee, director, partner, member, beneficiary, investor, servant, shareholder, trustee, attorney, or other person acting on behalf of, otherwise related to or affiliate with Lehman Re shall have any personal liability directly or indirectly, under or in connection with: (a) this Settlement Agreement, (b) any agreement made or entered into under or pursuant to the provisions of this Settlement Agreement, or (c) any amendment or amendments to any of the foregoing made at any time or times, heretofore or hereafter. Any claim by a Party against the Lehman Re Joint Provisional Liquidators or Lehman Re arising under or relating to this Settlement Agreement shall only be satisfied out of the assets of the insolvency estate of Lehman Re.

Section 13.03 Each Party, on behalf of itself and its successors and assigns, hereby waives any right to bring any claims related to this Settlement Agreement against individual persons.

## ARTICLE XIV.    WAIVER OF JURY TRIAL

EACH OF THE PARTIES HERETO HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS SETTLEMENT AGREEMENT OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS SETTLEMENT AGREEMENT OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS SETTLEMENT AGREEMENT AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS SETTLEMENT AGREEMENT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS ARTICLE XIV IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER. THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS SETTLEMENT AGREEMENT.

16

James. W. Giddens, as SIPA Trustee for the
Liquidation of Lehman Brothers Inc.

By: _____ Jeffrey M. Greilsheimer

Title:   Counsel

Lehman Re Ltd., a Bermuda corporation in
liquidation

By: _____ Garth Calow, in his capacity as a Joint
Provisional Liquidator of Lehman Re
Ltd., without personal liability

EXHIBIT 1
Form of Claim Transfer

[Insert Date]

James W. Giddens, as trustee for the
  liquidation of Lehman Brothers Inc. under the
  Securities Investor Protection Act of 1970, as amended
c/o Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York  10004
USA
Attn: James B. Kobak. Jr. Christopher K. Kiplok and Jeffrey M. Greilsheimer

Dear Sirs:

Reference is hereby made to that certain Settlement Agreement, dated February 6, 2015, between Lehman Re Ltd. ("Lehman Re") and the LBI Trustee (the "Settlement Agreement"). All capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Settlement Agreement.

The undersigned ("Transferee") proposes to acquire from [Insert name of transferor to Transferee] ("Transferor") the following rights under the Settlement Agreement (collectively, the "Subject Rights", and such proposed transfer to Transferee, the "Transfer"): Transferor's right, title and interest in, to and under (i) $_____ of the Lehman Re Allowed Claim and, (ii) to the extent related thereto, all of Transferor's rights.

Transferee agrees that (a) all terms and provisions of the Settlement Agreement shall be binding in all respects upon Transferee and any subsequent transferees of Transferee with respect to any of the Subject Rights, and shall govern their respective acts, in each case as though Transferee or any such successor transferee (as the case may be) was, with respect to any Lehman Re Allowed Claim (or any part thereof), Lehman Re, and (b) without limiting the generality of clause (a), all waivers and releases of Lehman Re pursuant to the Settlement Agreement shall be binding against Transferee, and transferees of Transferee with respect to any of the Subject Rights.

Prior to, upon and after the Transfer, Transferee may make an assignment or transfer of any of the Subject Rights (or any interest therein), in whole or in part, if (and only if): (a) such assignment and transfer is in accordance with Section 5.02(f)(ii) of the Settlement Agreement; (b) such assignment or transfer will not release Transferee from any of its obligations under this Letter, which shall remain in full force and effect; (c) such assignment or transfer shall comply with applicable securities laws; and (d) prior to or simultaneously with the consummation of such assignment or transfer, the Person (as such term is defined in the Settlement Agreement) to whom such assignment or transfer is to be made or is being made (the "Subsequent Transferee") executes (as the "undersigned" thereunder) and delivers to the LBI Trustee a copy of this undertaking (in relation to such Subject Rights desired to be so assigned or transferred) agreeing to be bound by this LBI Undertaking as if such Subsequent Transferee were the original Transferee. Any assignment or transfer, or purported assignment or transfer of the Subject

Rights (or interest therein), in whole or in part, in violation of this paragraph shall be null and void and of no force or effect.

Transferee hereby irrevocably and unconditionally waives and releases and in any event covenants not to assert in the LBI SIPA Proceeding, solely to the extent based upon, arising out of or relating to the Subject Rights, (a) any claim that it may now or hereafter have (or now or hereafter believes it may have) against the LBI estate on the basis of having made a "substantial contribution", or any similar claim against the LBI estate and (b) any claim that it may now or hereafter have (or now or hereafter believes it may have) against the LBI estate (on any basis) for fees or expenses of any nature.

This Letter shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflict of laws provision that would require the application of the law of any other jurisdiction).  The Bankruptcy Court shall have exclusive jurisdiction over any and all disputes arising out of or otherwise relating to this Letter.  Should the Bankruptcy Court abstain from exercising its jurisdiction or be found not to have jurisdiction over a matter relating to this Agreement, such matter shall be adjudicated in either a federal district court in the State of New York or a state court in the State of New York, and Transferee waives any objection with respect to the laying of venue of or defense of convenience of forum with respect to such courts.  Transferee consents to service of process by certified mail at its address listed below its signature below.

This Letter may not be amended or modified in any respect without the written consent of the LBI Trustee.  For the avoidance of doubt, nothing in this Letter (i) imposes or shall impose, any liability or obligation on the LBI Trustee (including, without limitation, any obligation to recognize any assignment or transfer, or purported assignment or transfer, of any Subject Right) or (ii) limits or qualifies, or shall limit or qualify, any right or defense of the LBI Trustee, and no instrument delivered pursuant to this Letter shall have any such effect; provided, however, that upon delivery of this Letter by Transferee to the LBI Trustee, the LBI Trustee shall be deemed to have consented to this Transfer in accordance with Section 5.02(f)(ii) of the Settlement Agreement.

Very truly yours,

[Insert name of "Transferee"]


By: _____
Name:
Title:
Address for service of process:
[Insert address for service of process]

2

# **EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

          LEHMAN BROTHERS INC.,

                           Debtor.

Case No. 08-01420 (SCC) SIPA

## [PROPOSED] ORDER APPROVING SETTLEMENT AGREEMENT
## BETWEEN THE LBI TRUSTEE AND LEHMAN RE LTD.

Upon the motion dated February 17, 2015 (the "Motion," ECF No. [TBD])[1] of

James W. Giddens (the "LBI Trustee"), as trustee for the liquidation of the business of Lehman

Brothers Inc. ("LBI") under the Securities Investor Protection Act of 1970, as amended

("SIPA"), 15 U.S.C. §§ 78aaa *et seq.*, seeking entry of an order pursuant to Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the Settlement

Agreement entered into by the LBI Trustee and Lehman Re through the Lehman Re Liquidators,

and the Declaration of Christopher K. Kiplok, dated February 17, 2015, in support of the Motion;

and the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with SIPA § 78eee(b)(4); and venue being proper in this Court pursuant to SIPA

§ 78eee(a)(3) and 15 U.S.C. § 78aa; and due and proper notice of the Motion having been

provided in accordance with the Amended Case Management Order; and a reasonable

opportunity to object or be heard regarding the Motion having been afforded to all such parties;

and it appearing that no other or further notice needs to be provided; and the relief requested in

---

1.     Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

the Motion being appropriate and in the best interests of the LBI estate, its creditors, and all

parties in interest; and sufficient cause appearing therefor, it is

ORDERED that the Court having determined and found that the terms set forth in

the Settlement Agreement are reasonable and appropriate and consummation of the transactions

contemplated by the Settlement Agreement is in the best interests of the LBI estate and its

creditors, the Motion is GRANTED; and it is further

ORDERED that Lehman Re shall have an allowed non-priority general unsecured

creditor claim against LBI in the amount of US$125,231,023.00 (one hundred twenty-five

million, two hundred thirty-one thousand twenty-three U.S. dollars); and it is further

ORDERED that any and all Claims asserted by Lehman Re against LBI shall be

expunged, disallowed and released except as stated above in accordance with the Settlement

Agreement; and it is further

ORDERED that, in accordance with 11 U.S.C. § 362(a) and the LBI Liquidation

Order (ECF No. 1), Lehman Re shall not pursue any recovery against LBI assets or property,

wherever located or held, in respect of the Lehman Re Allowed Claim that is the subject of this

Order; and it is further

ORDERED that any objections to the Motion that have not otherwise been

withdrawn or resolved are overruled; and it is further

ORDERED that pursuant to Bankruptcy Rule 9019, the compromises and

settlements described in the Motion and contemplated by and provided for in the Settlement

Agreement are approved; and it is further

ORDERED that the LBI Trustee is authorized to take any and all actions

reasonably necessary to consummate the Settlement Agreement and perform any and all

obligations contemplated therein; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: New York, New York
          _____, 2015


_____

HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE