HEARING DATE AND TIME: APRIL 22, 23 AND 24, 2015 AT 10:00 A.M. (PREVAILING EASTERN TIME)
RESPONSE DEADLINE: APRIL 10, 2015 AT 5:00 P.M. (PREVAILING EASTERN TIME)

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
David J. Mark
Ross Shank
1633 Broadway
New York, New York  10019
Telephone:     (212) 506-1700
Facsimile:     (212) 506-1800

*Attorneys for Richard S. Hajdukiewicz*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

————————————————————— :
                                                    :
In re:                                              :
                                                    :
        LEHMAN BROTHERS INC.,           :        Case No. 08-01420 (SCC) SIPA
                                                    :
                             Debtor.        :
————————————————————— :

**PRE-HEARING BRIEF OF RICHARD S. HAJDUKIEWICZ REGARDING MERITS
HEARING ON TRUSTEE'S OBJECTION TO CLAIM NOS. 4725, 4856, 4470 AND 6107**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT .......................................................................... 1

STATEMENT OF RELEVANT FACTS .............................................................. 2

    A.    The LBI Employment Agreement ..................................................... 2

    B.    Termination by LBI ........................................................................... 4

    B.    Employment by Barclays .................................................................. 6

    C.    The Separation Agreement ................................................................ 6

    D.    The Coreth Action............................................................................. 7

    E.    The Objections .................................................................................. 8

ARGUMENT ...................................................................................................... 9

    A.    Mr. Hajdukiewicz Is Entitled to his Guaranteed Bonus for Performance Year 2008 .............................................................................................. 9

    B.    There is No Basis for the Trustee's Objections ................................. 9

        1.    The Barclays Payment Does Not Reduce LBI's Obligations to the Employee ........................................................................................... 9

        2.    The Employee Claim Is Not Subject to Subordination ......................... 11

        3.    The Employee Claim Has Not Been Released...................................... 16

    C.    The Employee Claim Should Be Allowed ...................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Capital Access Serv. Corp. v. Muessel*,
    28 A.D.3d 395, 814 N.Y.S.2d 139 (N.Y. App. Div. 2006) ...................................................11

*Arrowgrass Master Fund Ltd. v. Bank of N.Y. Mellon*,
    106 A.D.3d 582 (N.Y. App. Div. 1st Dep't 2013)................................................................17

*Cardinal Holdings, Ltd. v. Indotronix Int'l Corp.*,
    73 A.D.3d 960, 902 N.Y.S.2d 123 (2d Dep't 2010) ............................................................16

*Coreth v. Barclays Capital Inc. (In re Lehman Bros. Holdings Inc.)*,
    479 B.R. 268 (S.D.N.Y. 2012)..............................................................................................10

*Coreth v. Barclays Capital Inc. (In re Lehman Bros. Holdings Inc.)*,
    Nos. 09-1045, 09-1130, 2011 Bankr. LEXIS 632 (Bankr. S.D.N.Y. Feb. 22, 2011),
    *aff'd*, 479 B.R. 268 (S.D.N.Y. 2012), *aff'd*, 513 Fed. Appx. 75, 2013 U.S. App.
    LEXIS 4548 (2d Cir. 2013) ...............................................................................................7, 8

*Douglas v. Stamco*,
    363 Fed. Appx. 100 (2d Cir. 2010) ......................................................................................16

*In re Enron Corp.*,
    341 B.R. 141 (Bankr. S.D.N.Y. 2006) .................................................................................15

*Harding v. Naseman*,
    No. 07-8767, 2008 U.S. Dist. LEXIS 92813 (S.D.N.Y. Nov. 13, 2008) .............................10

*John St. Leasehold LLC v. FDIC*,
    No. 94-797, 1996 U.S. Dist. LEXIS 19050 (S.D.N.Y. Dec. 20, 1996)................................10

*Kimso Apts., LLC v. Gandhi*,
    65 A.D.3d 1196, 885 N.Y.S.2d 422 (2d Dep't 2009) ....................................................16, 17

*In re Lehman Bros. Holdings Inc.*,
    445 B.R. 143 (Bankr. S.D.N.Y. 2011) ...................................................................................4

*In re Lehman Bros. Holdings Inc.*,
    519 B.R. 47 (Bankr. S.D.N.Y. 2014) ..............................................................................14, 15

*Malinowski v. Wall St. Source, Inc.*,
    No. 09-9592, 2011 U.S. Dist. LEXIS 139059 (S.D.N.Y. Dec. 2, 2011)..............................11

*MBIA Ins. Corp. v. Cooperatieve Centrale Raiffeisen-Boerenleenbank B.A.*,
    No. 09-10093, 2011 U.S. Dist. LEXIS 31307 (S.D.N.Y. Mar. 25, 2011)............................18

*In re MF Global Holdings, Ltd.*,
    Case No. 11-15059 (MG) (Bankr. S.D.N.Y. Aug. 6, 2014) ................................................. 16

*Musman v. Modern Deb*,
    50 A.D.2d 761, 377 N.Y.S.2d 17 (N.Y. App. Div. 1975) ..................................................... 11

*N.Y. v. Nat'l Serv. Indus., Inc.*,
    460 F.3d 201 (2d Cir. 2006) ............................................................................................. 17

*Plath v. Justus*,
    28 N.Y.2d 16, 268 N.E.2d 117 (1971) .............................................................................. 16

*Rombro v. Dufrayne (In re Med Diversified, Inc.)*,
    461 F.3d 251 (2d Cir. 2006) ......................................................................................... 14, 15

*Schwan-Stabilo Cosmetics GmbH & Co. v. PacificLink Int'l Corp.*,
    401 F.3d 28 (2d Cir. 2005) ............................................................................................. 14

*Sterling Inv. Servs., Inc. v. 1155 Nobo Assoc., LLC*,
    30 A.D.3d 579, 818 N.Y.S.2d 513 (App. Div. 2006) .......................................................... 18

**Statutes**

11 U.S.C. § 365 .................................................................................................................. 8, 9

11 U.S.C. § 502(b) .............................................................................................................. 18

11 U.S.C. § 510(b) ................................................................................................... 2, 11, 13, 15

Richard S. Hajdukiewicz, by his undersigned counsel, hereby submits his pre-hearing brief in advance of the Merits Hearing scheduled to commence on April 22, 2015. For the reasons that follow and based on evidence to be heard at the hearing, the *Trustee's Amended Objection to the General Creditor Proofs of Claim Filed by 1EE LLC, as Assignee (Claim No. 4856), Wayne Judkins (Claim No. 4470), Richard Hajdukiewicz (Claim No. 4725), and J. Robert Chambers (Claim No. 6107)* [Docket No. 10685] (the "Amended Objection"), should be denied as to Mr. Hajdukiewicz and Mr. Hajdukiewicz's claim[1] should be allowed as amended.

## PRELIMINARY STATEMENT

This dispute stems from a straightforward employment scenario easily resolved by black letter law. Mr. Hajdukiewicz was an employee of LBI with a written contract providing for a guaranteed bonus for performance year 2008 (the "Employee Claim"), payable unless he was terminated for cause. He was terminated by LBI, not for cause, then offered and accepted employment with Barclays. Barclays later terminated Mr. Hajdukiewicz and entered into a severance agreement with him. He had no duty to mitigate damages and there is no basis to contend that his severance agreement with Barclays benefited LBI. The fact that LBI and Barclays were parties to an asset purchase agreement is irrelevant to the Employee Claim because there is no legal or factual basis to suggest that LBI assumed its agreement with Mr. Hajdukiewicz and assigned it to Barclays. The only bearing the APA has on this dispute is that,

---

[1]     The Employee Claim is asserted in the Proof of Claim filed on October 24, 2014 (the "Amended Proof of Claim") [Hajdukiewicz Ex. 9], which amends Proof of Claim number 4725 (the "Bar Date Claim") [Hajdukiewicz Ex. 8], dated May 18, 2009. The Amended Proof of Claim corrects an error in the Bar Date Claim to increase the amount of the claim to the amount owed under the Employment Agreement.

as stipulated between LBI and Barclays, LBI may have a claim against Barclays for the amount of Mr. Hajdukiewicz's allowed claim.[2]

Mr. Hajdukiewicz's release of Barclays (the "Barclays Release") does not extend to LBI and the Trustee's contrary interpretation is inconsistent with the separation agreement between Mr. Hajdukiewicz and Barclays (the "Separation Agreement"). The Trustee's argument that Mr. Hajdukiewicz's guaranteed 2008 bonus should be subordinated under section 510(b) of the Bankruptcy Code seeks to retroactively cast the Employee Claim as a claim for failure to issue a security when, in fact, under the terms of the Employment Agreement, it is a claim for a specific dollar amount. Finally, there is no basis to reduce the Employee Claim for amounts received from Barclays which were in satisfaction of Barclays' separate obligation to Mr. Hajdukiewicz and are not attributable to amounts owed to him by LBI.

In the absence of any supportable objection to the Employee Claim, the Employee Claim should be allowed.

## STATEMENT OF RELEVANT FACTS

### A.    The LBI Employment Agreement

1.    Claimant Richard Hajdukiewicz joined Lehman Brothers in late 2007 when a former colleague recruited him from HSBC. He executed a letter agreement (the "Employment Agreement") confirming the terms of his employment by Lehman Brothers Inc. ("LBI") on September 18, 2007. [Hajdukiewicz Ex. 1.]  His actual start date was December 18, 2007. [Hajdukiewicz Ex. 3 at 2.]  At LBI, Mr. Hajdukiewicz was a managing director and, among other

---

[2]    [*See* Hajdukiewicz Ex. 6, *Stipulation Tolling the Statute of Limitations with Respect to Any Claim by the Trustee Against Barclays for Failure to Pay Bonus Amounts Under the APA*, dated September 17, 2014.]

things, worked with producers and consumers of metals, advising them on risk management strategies.

2.      For the period from December 1, 2006 through November 30, 2007 (the "2007 Performance Year"), the Employment Agreement entitled Mr. Hajdukiewicz to a bi-weekly base salary which was the equivalent of $200,000 per year and a bonus in the amount of $2,110,000. [Hajdukiewicz Ex. 1 at 1.]   For the performance year 2008, defined as December 1, 2007 through November 30, 2008 (the "2008 Performance Year"), the Employment Agreement entitled Mr. Hajdukiewicz to a biweekly base salary which was the equivalent of $200,000 per year and a minimum bonus in the amount of $1,910,000.  [Hajdukiewicz Ex. 1 at 1.]  **LBI's obligation to pay Mr. Hajdukiewicz's bonuses was not contingent on the availability of any pool of funds or his continued employment by LBI.**

3.      Under the Employment Agreement, the bonus payment for the 2008 Performance Year was due "on or about January 31, 2009" unless Mr. Hajdukiewicz failed to maintain applicable licenses or was terminated for Cause.  [Hajdukiewicz Ex. 1 at 1.]  The Employment Agreement defines "Cause" as "misconduct, breach of Firm policies or rules, dishonesty, violation of laws or regulations, or substantial and continuing failure to perform employment duties or obligations satisfactorily."  [*Id.*]

4.      The Employment Agreement further provided that:

At the firm's discretion, a portion of your 2007, 2008 and future years' total compensation (combined base salary, bonus, and other compensation) will be payable in conditional equity awards (restricted stock units, options, and/or other equity-based awards) pursuant to the Firm's Equity Award Program as then generally in effect for employees with your position and corporate title.

[Hajdukiewicz Ex. 1 at 1-2.]

3

5.      In early 2008, Mr. Hajdukiewicz received his bonus for the 2007 Performance

Year solely in cash because he was not working for LBI on the December 8, 2007 grant date for

2007 Equity Awards.  [Hajdukiewicz Ex. 3 at 2.]

**B.      Termination by LBI**

6.      On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI") filed a

voluntary petition for bankruptcy relief pursuant to Chapter 11 of the Bankruptcy Code.

7.      On September 16, 2008, LBHI, LBI and LB 745 LLC (collectively, "Lehman"),

and Barclays Capital Inc. ("Barclays") entered into an Asset Purchase Agreement (the "APA"),

pursuant to which Barclays agreed to purchase certain assets and undertake certain obligations

related to LBI's North-American broker-dealer and investment banking operations.  *See In re

Lehman Bros. Holdings Inc.*, 445 B.R. 143, 149-51 (Bankr. S.D.N.Y. 2011).

8.       Mr. Hajdukiewicz was terminated by LBI in connection with the transaction

contemplated by the APA on September 19, 2008 (the "Termination Date").  [Transcript of

Deposition of Christopher K. Kiplok, as Rule 30(b)(6) witness for the Trustee, March 19, 2015

("Kiplok Tr.") 111:2-4 ("I believe the employees' employment, generally speaking, ended on

September 19, 2008.")]  (*See Trustee's Two Hundred Sixty-Seventh Omnibus Objection to

General Creditor Claims (Employee Claims)* [Docket No. 10097] (the "Original Objection") ¶

14.)  There is no dispute that the termination by LBI was "without Cause" under the terms of the

Employment Agreement.  Accordingly, under the terms of the Employment Agreement, the full

amount of the minimum bonus became due and payable in January 2009.

9.      Following termination by LBI, Mr. Hajdukiewicz's 2008 bonus payment was

payable only in cash.  Although the Employment Agreement gave LBI discretion to tender a

portion of compensation in equity awards, the terms of the Equity Award Program foreclosed

that option as of the Termination Date.  The Equity Award Program that the Trustee claims was

then in effect[3] provided that "[a]ny bonus-eligible employee whose employment terminates prior

to the Year-end Grant Date, or who is otherwise not eligible for a year-end bonus, will not be

eligible for a year-end equity award." [Trustee Ex. 2 at 8.] The Year-end Grant Date was "a

date to be determined by the Compensation and Benefits Committee of the Board of Directors

during the fourth quarter" of 2008. [Trustee Ex. 2 at 5.] In fact, the Year-end Grant date was

never set. [*See* Kiplok Tr. 96:5-28 ("Q: But the trustee has no information whatsoever based on

Lehman's books and records that there was ever a grant date established, is that right? A:

When, for 2008? Q: For 2008. A: That's correct.").] The grant date couldn't have been set

because the Compensation and Benefits Committee of the Board of Directors (the

"Compensation Committee") never met to set the date. [Kiplok Tr. 101:3-13.] Without a grant

date, there is also no way to price an award under LBI's Equity Award program.

10.     When the Compensation Committee had met earlier in 2008, in April, it was

concerned that the stock price would be too low for there to be enough shares to fund the equity

award program so it considered alternatives. [Hajdukiewicz Ex. 7 at 5 ("The Committee also

discussed potential deferred compensation program alternatives in the event there were

insufficient shares for the year-end equity awards.").] When the Compensation Committee

envisioned this problem, LBI's stock was trading at about $40 per share. [*See* Kiplok Tr.

109:15-25.] If the Compensation Committee had met in the fourth quarter of 2008 and set a

grant date at the same time in December 2008 as it had in December 2007[4], at that point

---

[3]     [*See* Kiplok Tr. 274:20-25 (acknowledging Trustee's Ex. 2 was 2008 Equity Award Program referred to in the Employment Agreement).]

[4]     [*See* Hajdukiewicz Ex. 3 at 2 ("The grant date is set by the executive compensation committee each year. This year it was December 8, 2007.").]

Lehman's stock was trading for 4 cents a share and there were an insufficient number of shares available to make equity awards in accordance with the program. [Kiplok Tr. 102:12-104:4.]

11.     At all times, LBI had discretion to make payments under the Employment Agreement in cash. [Hajdukiewicz Ex. 1 at 1.] [Kiplok Tr. 45:16-47:7; 50:5-12.]

**B.    Employment by Barclays**

12.     Mr. Hajdukiewicz received an email notifying him of the combination of Barclays and Lehman on September 20, 2008. [Hajdukiewicz Ex. 4.] On September 22, 2008, he received an email offering him employment with Barclays. [Hajdukiewicz Ex. 5]. He accepted that offer.

**C.    The Separation Agreement**

13.     In October 2008, Barclays presented Mr. Hajdukiewicz with "an agreement ('Separation Agreement') concerning your separation from employment by Barclays Capital." [Hajdukiewicz Ex. 2 at 1.] The Separation Agreement was executed on October 14, 2008. The Separation Agreement provided, among other things, that Barclays would make certain benefits payments to Mr. Hajdukiewicz in exchange for his "Waiver and General Release". [*Id.*] Payments by Barclays under the Separation Agreement included a "special lump sum payment in the total amount of $422,000 less withholding, payroll tax and any other applicable deductions to be paid on or about February 22, 2009" (the "Barclays Payment"). [*Id.*] Mr. Hajdukiewicz understood the lump sum payment to be a reasonable severance for a managing director such as himself.

14.     The Waiver and General Release which Barclays obtained from Mr. Hajdukiewicz provided as follows:

    In exchange for the payments and benefits set forth in my Separation Agreement,
    I hereby release Barclays Capital (the "Bank"), and all of its past and /or present

divisions, affiliates, parents, subsidiaries, officers, directors, stockholders, trustees, employees, agents, representatives, administrators, attorneys, insurers, fiduciaries, **predecessors**, successors and assigns, in their individual and/or representative capacities (hereinafter collectively referred to as "the Barclays Group"), from any and all causes of action, suits, agreements, promises, damages, disputes, controversies, contentions, differences, judgments, claims and demands of any kind whatsoever ("Claims") which I or my heirs, executors, administrators, successors and assigns ever had, now have or may have against the Barclays Group, whether known or unknown to me, by reason of my employment and/or cessation of my employment, with the Bank **or with Lehman Brothers**, or otherwise involving facts which occurred on or prior to the effective date of this Waiver and General Release, except to the extent that any such Claim concerns an allegation that the Bank has failed to make the payment(s) set forth above.

[Hajdukiewicz Ex. 2, Waiver and General Release at 1 (emphasis added).]

15.     The Barclays Release provided Barclays with, among other things, Mr. Hajdukiewicz's release of any potential age-discrimination claims he might have had in connection with the Older Workers Benefit Protection Act. [Hajdukiewicz Ex. 2, *Disclosure Information Provided Pursuant to the Older Workers Benefit Protection Act.*]

### D.     The Coreth Action

16.     Maximilian Coreth and Olivia Bam, both former employees of LBI, commenced separate actions against Barclays alleging breach of contract under the APA (the "Coreth Action"). On February 22, 2011, the Bankruptcy Court granted Barclays' motion to dismiss both complaints. *Coreth v. Barclays Capital Inc. (In re Lehman Bros. Holdings Inc.)*, Nos. 09-1045, 09-1130, 2011 Bankr. LEXIS 632 (Bankr. S.D.N.Y. Feb. 22, 2011), *aff'd*, 479 B.R. 268, 273 (S.D.N.Y. 2012), *aff'd*, 513 Fed. Appx. 75, 2013 U.S. App. LEXIS 4548 (2d Cir. 2013).

17.     The Bankruptcy Court held that Coreth and Bam lacked standing to assert claims under the APA because they were not parties to that agreement and because the agreement contained a no third-party beneficiary clause, which the Bankruptcy Court concluded, was a decisive bar to enforcement of the agreement by third parties. *Id.* at *25, 27. The Bankruptcy Court also held that Coreth and Bam had failed to state viable claims against Barclays because

LBI did not assume and assign their employment agreements to Barclays.  *Id.* at *24, 28-29.
This decision has been affirmed by both the District Court and the Court of Appeals.

E.    **The Objections**

18.    On October 7, 2014, the Trustee filed the Original Objection.  In the Original
Objection, the Trustee objected to the Employee Claim solely on the basis that 2008 bonuses
were assumed by Barclays pursuant to the APA.  (Original Objection ¶¶ 16-22.)

19.    On October 27, 2014, Claimant filed the *Response of Richard S. Hajdukiewicz to
Trustee's Two Hundred Sixty-Seventh Omnibus Objection to General Creditor Claim
(Employment Claims)* [Docket No. 10252] (the "Original Response").  The Original Response,
among other things, showed that LBI never assigned the Employment Agreement to Barclays in
the APA and certainly it did not assume and assign the Employment Agreement in accordance
with Section 365 of the Bankruptcy Code and, thus, remains liable for the Employee Claim.  (*See*
Original Response ¶¶ 19-21.)

20.    On November 10, 2014, the Trustee filed a *Notice of Status Conference on
Trustee's (I) Two Hundred Thirty-Seventh Omnibus Objection to General Creditor Claims
(Employee Claim), (II) Two Hundred Fifty-First Omnibus Objection to General Creditor Claim
(Employee Claims), (III) Two Hundred Sixty-Seventh Omnibus Objection to General Creditor
Claim (Employee Claims), for Each, Solely as to Certain Claims, and (IV) Objection to the
General Creditor Proof of Claim of Robert J. Chambers (Claim No. 6107)* [Docket No. 10402]
(the "Notice of Status Conference").  At the status conference held on December 10, 2014, the
Court approved a schedule for resolving the Employee Claim in conjunction with the Trustee's
objections to the claims of similarly situated LBI employees.

21.    On December 17, 2014, the Trustee filed the Amended Objection.

22.     By Order dated December 30, 2014, this Court scheduled a Merits Hearing on the Employee Claim to be held April 22, 23 and 24, 2015.  [Docket No. 10780.]

23.     The parties engaged in discovery which concluded on March 27, 2015, pursuant to the *Second Scheduling Order Regarding Trustee's Objection to Claim Nos. 4725, 4856, 4470 and 6107*, entered March 18, 2015 [Docket No. 11513].

## ARGUMENT

### A.     Mr. Hajdukiewicz Is Entitled to his Guaranteed Bonus for Performance Year 2008

24.     Mr. Hajdukiewicz was an employee of LBI with a written contract providing for a guaranteed bonus, payable unless he was terminated for cause.  He was terminated by LBI, then offered and accepted employment with Barclays.  Barclays then terminated Mr. Hajdukiewicz and entered into a severance agreement with him.  He had no duty to mitigate damages and there is no basis to contend that his severance agreement with Barclays benefited LBI.  Thus, LBI is obligated to him for damages resulting from the rejection of his contract.  [*See* Kiplok Tr. 139:24-140:16.]

### B.     There is No Basis for the Trustee's Objections

#### 1.     The Barclays Payment Does Not Reduce LBI's Obligations to the Employee

27.     The Amended Objection incorrectly asserts that the Employee Claim should be reduced by a severance package that Mr. Hajdukiewicz received from Barclays following his termination by Barclays.  (Amended Objection ¶¶ 28-29.)

28.     LBI never assigned the Employment Agreement to Barclays in the APA and certainly it did not assume and assign the Employment Agreement in accordance with Section 365 of the Bankruptcy Code and, thus, remains liable for the Employee Claim.  (*See* Original Response ¶¶ 19-21.)  Nothing in the APA put employees on notice that accepting employment

with Barclays would forfeit claims under their contracts with LBI.  [Kiplok Tr. 153:13-22; 168:3-11.]

29.     The APA did, however, set forth "Barclays's obligation to 'continue to employ' or 'offer employment to' all active LBI employees."  *Coreth v. Barclays Capital Inc. (In re Lehman Bros. Holdings Inc.)*, 479 B.R. 268, 277 (S.D.N.Y. 2012); (APA § 9.1(a)).  LBI does not dispute that Mr. Hajdukiewicz accepted Barclays' employment offer.

30.     "[W]here the language of a settlement agreement is clear, effect must be given to the intent of the parties as indicated by the language employed."  *Harding v. Naseman*, No. 07-8767, 2008 U.S. Dist. LEXIS 92813, at *20 (S.D.N.Y. Nov. 13, 2008) (quotations omitted).  The Separation Agreement is clear that it "is an agreement . . . concerning [Mr. Hajdukiewicz's] separation from employment by Barclays Capital,"  that provided for Mr. Hajdukiewicz to "receive a special lump sum payment in the total amount of $422,000 less withholding, payroll tax and any other applicable deductions to be paid on or about February 22, 2008." [Hajdukiewicz Ex. 2 at 1.]  Nothing in the Separation Agreement states or suggests that Barclays intended to satisfy an obligation owed by *LBI* to Mr. Hajdukiewicz.  Although the Trustee contends that LBI delegated performance of its bonus obligations to Barclays, (Amended Objection ¶ 28 n.8), the Separation Agreement, a contract to which LBI is not a party, shows no such intention.  "New York law requires that the parties' intent to benefit a third party must be shown on the face of the agreement."  *John St. Leasehold LLC v. FDIC*, No. 94-797, 1996 U.S. Dist. LEXIS 19050, at *29 (S.D.N.Y. Dec. 20, 1996).

31.     The payments Mr. Hajdukiewicz received from Barclays, therefore, were in satisfaction of Barclays' separate obligation to Mr. Hajdukiewicz and are not attributable to amounts owed to Mr. Hajdukiewicz by LBI.  Moreover, the payment Mr. Hajdukiewicz received

10

from Barclays pursuant to the Separation Agreement does not mitigate his damages. New York

cases are clear that there is no duty to mitigate in the context of a severance clause. *See, e.g.*,

*Malinowski v. Wall St. Source, Inc.*, No. 09-9592, 2011 U.S. Dist. LEXIS 139059, at *5-6

(S.D.N.Y. Dec. 2, 2011) ("[W]hen an employment contract contains a severance clause, New

York courts view such a clause as 'in essence a liquidated damages clause' that 'fixes the

exposure of the employer following a discharge without cause and thus serves to remove [such a

case] from the ordinary rule requiring the employee to mitigate damages.'") (quoting *Musman v.

Modern Deb*, 50 A.D.2d 761, 377 N.Y.S.2d 17, 19 (N.Y. App. Div. 1975)); *see also Am. Capital

Access Serv. Corp. v. Muessel*, 28 A.D.3d 395, 814 N.Y.S.2d 139, 140 (N.Y. App. Div. 2006) (a

severance provision in an employment agreement functions as a liquidated damages clause,

fixing damages and exempting party seeking recovery from duty to mitigate).

32.    At the Merits Hearing, the Trustee will likely argue that Barclays used LBI's

severance program to calculate its severance payment to Mr. Hajdukiewicz and, therefore,

Barclays' severance payment satisfies LBI's obligations to Mr. Hajdukiewicz. To the contrary,

how Barclays chose to calculate the payments it offered former employees is irrelevant in light

of the conspicuous failure of LBI to assume and assign Mr. Hajdukiewicz's Employment

Agreement. Regardless of how Barclays calculated its severance payments, the Separation

Agreement was a settlement in which Barclays settled Mr. Hajdukiewicz's potential employment

claims related to his termination, including potential Older Workers Benefit Protection Act

claims.

## 2.    **The Employee Claim Is Not Subject to Subordination**

33.    In the Amended Objection, the Trustee also seeks to subordinate the Employee

Claim under section 510(b) of the Bankruptcy Code, linking together faulty factual assumptions

and inapposite caselaw to inaccurately portray the Employee's guaranteed bonus as equity. As

will be shown at the Merits Hearing, Mr. Hajdukiewicz's claim is a claim for cash that the

Trustee cannot retroactively turn into a claim for equity.  Above all else, there is no basis to find

that Mr. Hajdukiewicz bargained for the risk that underlies the principal of subordination.

Moreover, any discretion LBI had to make equity awards under the Employment Agreement was

a dead letter as of the Termination Date.

34.    The Amended Objection misstates the situation when it proclaims that "the terms

of the 2008 Equity Award Program *call for* 60 percent[5] of Mr. Hajdukiewicz's guaranteed bonus

to be paid in conditional equity awards."  (Amended Objection ¶ 25 (emphasis added).)  The

2008 Equity Award Program did not "call for" any of Mr. Hajdukiewicz's guaranteed bonus to

be paid under its terms.  Materials reflecting the 2008 Equity Award Program make clear that the

bonus-eligible employee's compensation remains subject to the written agreement between LBI

and Mr. Hajdukiewicz.  [Trustee Ex. 2 at 8 ("In case of termination of employment of . . .

individuals with a written compensation guarantee, any year-end equity awards will be treated in

accordance with the relevant plan provisions or terms of the written compensation guarantee.").]

The Employment Agreement merely gave LBI discretion to pay a portion of the stated

$1,910,000 bonus in equity awards.  [Hajdukiewicz Ex. 1 at 1.]

35.    More significantly, the evidence shows that LBI never exercised the discretion to

compensate Mr. Hajdukiewicz with equity for his 2008 bonus.   It couldn't have.  The Equity

Award Program did not apply to employees terminated prior to the Year-end Grant Date.

[Trustee Ex. 2 at 8.]  The Trustee admits the Year-end Grant Date was never set, [Kiplok Tr.

113:13-14.], and acknowledges the employees were terminated on September 19, 2008.  [Kiplok

---

[5]    During discovery the Trustee also conceded that the table cited by the Trustee as the source of the 60%
figure had been superseded by a table Mr. Hajdukiewicz had received by email that sets a lower cap for equity
awards, if made.  [*See* Kiplok Tr. 277:8-23, 278:18-279:5 (Mr. Foukas acknowledging email table and stating that
there is "no dispute that's the number that has been used").]

Tr. 111:2-4.]  Given that Mr. Hajdukiewicz was clearly terminated prior to the Year-end Grant

Date, he was not eligible for the Equity Award Program, thus, LBI could only satisfy its

obligations under the Employment Agreement by paying cash.

36.    There is also no reason to believe LBI could or would exercise "discretion" to set

aside the grant date requirement of the Equity Award Program.  For example, none of Mr.

Hajdukiewicz's 2007 bonus was given in the form of equity because his December 18, 2007 start

date fell after the December 8, 2007 grant date, even though his contract had been entered into in

September 2007.  [Hajdukiewicz Ex. 3 at 2.]

37.    Even assuming the Equity Award Program did not include the provision

excluding terminated employees, without a grant date, there is obviously no way to price an

award.  [*See* Kiplok Tr. 84:14-20.]  With Lehman stock trading for a fraction of a dollar as it was

when Mr. Hajdukiewicz was terminated, it would be impossible to use equity to fund bonuses

because there were simply not enough shares available.  Thus, LBI's discretion to compensate

Mr. Hajdukiewicz with equity was neither applicable to bonus-eligible employees terminated in

September 2008 nor even theoretically feasible.  However, that did not relieve LBI of its

obligations under the Employment Agreement.  LBI remained obligated to compensate Mr.

Hajdukiewicz with cash.

38.    Thus, the Employee Claim is simply not an equity interest that section 510(b)

subordinates.  Section 510(b) of the Bankruptcy Code provides that "a claim arising from

rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for

damages arising from the purchase or sale of such a security" shall be subordinated.  11 U.S.C. §

510(b).  Section 510(b) requires subordination "only if [claimant] (1) took on the risk and return

expectation of a shareholder, rather than a creditor, or (2) seeks to recover a contribution to the

equity pool presumably relied upon by creditors in deciding whether to extend creditor to the

debtor." *Rombro v. Dufrayne (In re Med Diversified, Inc.)*, 461 F.3d 251, 256 (2d Cir. 2006).

Mr. Hajdukiewicz took no such risk and seeks no such recovery.

39.    Even if LBI had the option to tender the 2008 bonus in the form of equity awards,

LBI would have had to compensate Mr. Hajdukiewicz with stock of the value stipulated in the

Employment Agreement and the Trustee does not suggest that LBI could have satisfied the 2008

Bonus obligations with stock that was worthless at the time it was awarded.  A party in breach of

a contract that affords alternative performances cannot satisfy its obligations by providing a

worthless performance.  *Schwan-Stabilo Cosmetics GmbH & Co. v. PacificLink Int'l Corp.*, 401

F.3d 28, 34 (2d Cir. 2005) ("We agree that while it may have been proper for defendants to

tender shares in satisfaction of the indemnification provision when the duty to indemnify arose,

having breached the provision, defendants may not now rely on a contractual clause that would

allow them effectively to avoid paying for their breach.").

40.    Nor is the Trustee's attempt to extend precedent in the LBHI bankruptcy cases

concerning issued Restricted Stock Units ("RSUs") to a fundamentally different factual situation

availing.  In the decision in *In re Lehman Brothers Holdings Inc.*, this Court determined that

employees who "were holding RSUs that had been granted to them for services performed from

2003 through 2008" could not show that their claims should not be classified as equity.  519 B.R.

47, 50, 59 (Bankr. S.D.N.Y. 2014).  The critical difference between the RSU claimants in LBHI

and Mr. Hajdukiewicz is that, here, no equity had been issued prior to the commencement of this

proceeding, and, because the Employment Agreement provided for payment, in the alternative,

in cash, it is not a claim for failure to issue securities.  To put it differently, Mr. Hajdukiewicz

did not bargain for a fixed number of shares; he bargained for a fixed amount of cash or its

14

equivalent in stock.  Until and unless an RSU award was made he did not assume the risk of a

decline in the value of the stock which is an essential component of a claim subject to section

510(b) of the Bankruptcy Code.

41.    As acknowledged by the Trustee and discussed above, any discretion LBI had to

issue RSUs had not been exercised before these cases commenced.  In fact, this is a distinction

this Court explicitly made in rejecting certain RSU claimants' argument that the contractual

alternative of payment in cash distinguished their claims from equity:

> [T]he RSU Claimants' argument that they have claims for alternative performance
> ignores the fact that Lehman already paid them the compensation they were due
> in the form of RSUs.  Once those RSUs were paid, as they were here, the RSU
> Claimants had no right to any other mode of performance – in the form of cash or
> otherwise.

519 B.R. at 63-64.  Therefore, Mr. Hajdukiewicz's claim is not a claim based on a security, and

this fact renders inapposite the Trustee's citation to *In re Enron Corp.*, where claimants were

"seeking to recoup damages suffered in connection with the *ownership* of employee stock

options."  341 B.R. 141, 145 (Bankr. S.D.N.Y. 2006) (emphasis added).

42.    Finally, the Trustee's cases standing generally for the proposition that section

510(b) extends to claims based on the failure to issue securities (*see* Amended Objection ¶ 33) do

not address how the Employee Claim can constitute a claim in connection with a security when

the securities that could be issued would be worthless and the availability of alternative

performance in cash is the only performance that would satisfy the party's obligation under the

contract.  *In re Med Diversified, Inc.*, 461 F.3d at 253 (claim for failure to issue common stock to

satisfy share exchange under agreement between company and terminated executive with no

cash alternative); *In re Lehman Bros. Holdings Inc.*, 519 B.R. 47 at 64 n.18 (citing *Med

Diversified* and finding claims for unissued commission-based RSUs would be subject to 510(b)

subordination but not discussing whether commission contracts contemplated alternative

15

payment in cash); *In re MF Global Holdings, Ltd.*, Case No. 11-15059 (MG) (Bankr. S.D.N.Y.

Aug. 6, 2014) at 10 (noting employer had discretion to make cash payment but without

addressing whether employer could satisfy obligations with worthless stock).

### 3.    The Employee Claim Has Not Been Released

43.    There is no basis for the Trustee's contention that Mr. Hajdukiewicz's release of

Barclays somehow inures to the benefit of LBI.  "A release is a contract, and its construction is

governed by contract law."  *Cardinal Holdings, Ltd. v. Indotronix Int'l Corp.*, 73 A.D.3d 960,

962, 902 N.Y.S.2d 123, 126 (2d Dep't 2010) (citations omitted).  In order to determine the

parties' intent with respect to the release, the release provisions "should be construed in the

context of the whole agreement, and their words considered not in isolation but in light of the

obligation as a whole and the intention of the parties as manifested thereby."  *Kimso Apts., LLC

v. Gandhi*, 65 A.D.3d 1196, 1197, 885 N.Y.S.2d 422 (2d Dep't 2009); *see also Plath v. Justus*,

28 N.Y.2d 16, 268 N.E.2d 117 (1971).  When read in its entirety, the Separation Agreement

makes clear that the parties did not intend to, and did not release, LBI.  Mr. Hajdukiewicz had no

intention of releasing LBI when he signed the Barclays Agreement.

44.    The Trustee plucks the term "predecessor" out of the boilerplate list of parties

related to Barclays that are covered by the release and argues that LBI should be read as a

"predecessor" of Barclays.  (Amended Objection ¶ 41.)  LBI was not a "predecessor" of Barclays

as evidenced by among other things that Barclays did not assume liabilities under Mr.

Hajdukiewicz's and other employee contracts.  (*See* ¶ 28, above.)  By the same token, neither

was Barclays LBI's successor by virtue of Barclays' acquisition of LBI's assets.  *Douglas v.

Stamco*, 363 Fed. Appx. 100, 101 (2d Cir. 2010) ("Under both New York law and traditional

common law, a corporation that purchases the assets of another corporation is generally not

liable for the seller's liabilities.") (quoting *N.Y. v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d

Cir. 2006)).

45.     Essentially, the Trustee relies on a single word in a lengthy document to argue

that Barclays and Mr. Hajdukiewicz "intended" to release LBI, whereas the plain language of the

provision and the agreement as a whole establishes a contrary intent.  *See Kimso Apts.*, 65

A.D.3d at 1197 ("The record demonstrates that the releases were part of a larger settlement

agreement entered into between the parties in a federal action . . . [a]ccordingly, the releases

should be construed in the context of the whole agreement").  If it were the intention of the

parties to release LBI, they would have explicitly and unequivocally done so.  They would not

have buried the commercially significant release of a culpable party like LBI in boilerplate

language that on its face is intended to include only entities closely related to the parties to the

document, which LBI was not.

46.     The case cited by the Trustee for a broad reading of the term "predecessor" is

consistent with an understanding of the Barclays Release that avoids surreptitiously including a

release of LBI in the boilerplate.  That case, *Arrowgrass Master Fund Ltd. v. Bank of New York

Mellon*, concerning whether the release of a successor indenture trustee released its

"predecessor", premises its holding on the understanding that "single clauses cannot be

construed by taking them out of their context and giving them an interpretation apart from the

contract of which they are a part."  106 A.D.3d 582, 583 (N.Y. App. Div. 1st Dep't 2013)

(citations omitted).  Here, not only does it strain credulity to suggest the transferred employees

would compromise potential claims against LBI without such release being explicit, but, in

addition, the specific reference to "Lehman Brothers" in the Barclays Release makes clear that,

had the parties to the release intended to release Lehman Brothers or LBI, those entities would

have been explicitly mentioned.  [Hajdukiewicz Ex. 2, Waiver and General Release at 1 ("I hereby release Barclays Capital (the 'Bank') . . . from any and all causes of action . . . by reason of my employment, and/or cessation of my employment, with the Bank or with Lehman Brothers . . . .")].  *See, e.g.*, *MBIA Ins. Corp. v. Cooperatieve Centrale Raiffeisen-Boerenleenbank B.A.*, No. 09-10093, 2011 U.S. Dist. LEXIS 31307, at *25 (S.D.N.Y. Mar. 25, 2011) ("Under accepted canons of contract construction, where certain language is omitted from a provision but placed in other provisions, it must be assumed that the omission was intentional.") (quoting *Sterling Inv. Servs., Inc. v. 1155 Nobo Assoc., LLC*, 30 A.D.3d 579, 818 N.Y.S.2d 513, 516 (App. Div. 2006)).

## C.      The Employee Claim Should Be Allowed

47.     In the absence of any other ground for the Amended Objection, the Court should enter an order allowing the Employee Claim.  11 U.S.C. § 502(b) ("if [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount").

18

WHEREFORE, for the reasons set forth herein, Mr. Hajdukiewicz respectfully requests

that the Court overrule the Amended Objection and enter an Order allowing the Employee Claim

and granting to Mr. Hajdukiewicz such other and further relief deemed just and proper.

Dated: New York, New York
   April 10, 2015

           Respectfully submitted,

           KASOWITZ, BENSON, TORRES
             & FRIEDMAN LLP
           By:  /s/ David J. Mark
           David J. Mark
           Ross Shank
           1633 Broadway
           New York, New York 10019
           Telephone:  (212) 506-1700
           Facsimile:   (212) 506-1800

           *Attorneys for Richard S. Hajdukiewicz*