Response Deadline:  July 1, 2015 at 4:00 p.m. (prevailing Eastern Time)
Hearing Date:  July 22, 2015 at 10:00 a.m. (prevailing Eastern Time)

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile:  (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| LEHMAN BROTHERS INC., | Case No. 08-01420 (SCC) SIPA |
| Debtor. | |

**NOTICE OF TRUSTEE'S MOTION FOR AN ORDER**
**REGARDING CERTAIN FORWARD CONTRACT CLAIMS**

**PLEASE TAKE NOTICE** that on May 21, 2015, James W. Giddens (the

"Trustee"), as Trustee for the liquidation of the business of Lehman Brothers Inc. ("LBI" or the

"Debtor"), by and through his undersigned counsel, filed a motion (the "Motion"), for entry of an

order regarding certain Forward Contract claims, as further described in the Motion.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held

before the Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the United States

Bankruptcy Court for the Southern District of New York, Courtroom 623, One Bowling Green,

New York, New York, 10004 (the "Bankruptcy Court"), on **July 22, 2015 at 10:00 a.m.**

(Prevailing Eastern Time) or as soon thereafter as counsel may be heard (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that responses, if any, to entry of the

Order must (i) be in writing; (ii) state the name and address of the objecting party and nature of

the claim or interest of such party; (iii) state with particularity the legal and factual bases of such

objection; (iv) conform to the Federal Rules of Bankruptcy Procedure and Local Bankruptcy

Rules; (v) be filed with the Bankruptcy Court, together with proof of service, electronically, in accordance with General Order M-399, by registered users of the Court's Electronic Case Filing System, and by all other parties in interest, on a 3.5 inch disk, compact disk, or flash drive, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format no later than **July 1, 2015 at 4:00 p.m.** (Prevailing Eastern Time) (the "Response Deadline"); and (vi) be served on (a) Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, New York, 10004, Attn: Christopher K. Kiplok, Esq. and Jeffrey S. Margolin, Esq.; (b) the Securities Investor Protection Corporation, 805 Fifteenth Street, N.W., Suite 800, Washington, D.C., 20005, Attn: Kenneth J. Caputo, Esq.; and (c) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Maurice Horwitz, Esq., with a courtesy copy to the chambers of the Honorable Shelley C. Chapman, United States Bankruptcy Court, Courtroom 623, One Bowling Green, New York, New York, 10004.

   **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Motion, the Trustee may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which may be entered with no further notice of opportunity to be heard offered to any party.

Dated:   New York, New York
         May 21, 2015

HUGHES HUBBARD & REED LLP

By:  /s/ *James B. Kobak, Jr.*
         James B. Kobak, Jr.
         Christopher K. Kiplok
         Eleni D. Theodosiou-Pisanelli
     One Battery Park Plaza
     New York, New York 10004
     Telephone:  (212) 837-6000
     Facsimile:  (212) 422-4726
     Email:  kobak@hugheshubbard.com


     Attorneys for James W. Giddens,
     Trustee for the SIPA Liquidation of
     Lehman Brothers Inc.

**Response Deadline:  July 1, 2015 at 4:00 p.m. (prevailing Eastern Time)**
**Hearing Date:  July 22, 2015 at 10:00 a.m. (prevailing Eastern Time)**

HUGHES HUBBARD & REED LLP

One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| | Case No. 08-01420 (SCC) SIPA |
| LEHMAN BROTHERS INC., | |
| Debtor. | |

**TRUSTEE'S MOTION FOR AN ORDER**
**REGARDING CERTAIN FORWARD CONTRACT CLAIMS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................2

BACKGROUND ...............................................................................................................4

JURISDICTION AND VENUE ..........................................................................................6

STATEMENT OF FACTS .................................................................................................6

      A.    THE NATURE OF TREASURY FORWARD CONTRACTS............................6

      B.    THE MASTER SECURITIES FORWARD TRANSACTION
           AGREEMENT................................................................................................7

      C.    TREASURY FORWARD CONTRACTS ON LBI'S BOOKS AND
           RECORDS .....................................................................................................8

ARGUMENT ...................................................................................................................9

      I.    THE COURT SHOULD UPHOLD THE TRUSTEE'S
           DETERMINATION THAT FORWARD CONTRACTS ARE NOT
           CUSTOMER CLAIMS UNDER SIPA. .............................................................9

           A.    Customer Status Under SIPA is Construed Narrowly in Accordance with
                 the Statutory Purpose. ................................................................................9

           B.    Entrustment of Securities or Cash to a Broker or Dealer is a "Bright Line"
                 Test and an Essential Element of Customer Claims Under SIPA. ............10

           C.    LBI's Books and Records Confirm that LBI Held No Property for the
                 Accounts of the Claimants. ......................................................................12

           D.    Contract Damages are Not Customer Claims Under SIPA. ......................13

      II.    THE GC CLAIMS SHOULD BE ALLOWED AS UNSECURED
           GENERAL CREDITOR CLAIMS........................................................................14

      III.    THE RESOLVED CLAIMS SHOULD BE EXPUNGED IN THEIR
           ENTIRETY ....................................................................................................15

NOTICE        .....................................................................................................16

NO PRIOR RELIEF REQUESTED ..................................................................................16

CONCLUSION................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re A.R. Baron*, 226 B.R. 790 (Bankr. S.D.N.Y. 1998) ...............................................11

*In re Adler, Coleman Clearing Corp.*, 195 B.R. 266 (Bankr. S.D.N.Y. 1996) .....................12, 14

*In re Adler, Coleman Clearing Corp.*, 204 B.R. 111 (Bankr. S.D.N.Y. 1997) .............................9

*In re Adler, Coleman Clearing Corp.*, 211 B.R. 486 (Bankr. S.D.N.Y. 1997) ..........................12

*In re First Interregional Equity Corp.*, 290 B.R. 265 (Bankr. D.N.J. 2003)................................9

*In re Hanover Square Sec.*, 55 B.R. 235 (Bankr. S.D.N.Y. 1985) ................................10

*In re Klein, Maus & Shire, Inc.*, 301 B.R. 408 (Bankr. S.D.N.Y. 2003).................................10, 14

*In re Lehman Brothers Inc.*, 433 B.R. 127 (Bankr. S.D.N.Y. 2010) ...............................12

*In re Lehman Brothers Inc.*, 462 B.R. 53 (Bankr. S.D.N.Y. 2011) ....................................... *passim*

*Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277 B.R. 520 (Bankr. S.D.N.Y. 2002) ..............................................................................................................9

*In re MV Secs., Inc.*, 48 B.R.156 (Bankr. S.D.N.Y. 1985) ......................................9, 14

*In re Omni Mut., Inc.*, 193 B.R. 678 (Bankr. S.D.N.Y. 1996)......................................10

*SEC v. F.O. Baroff Co.*, 497 F.2d 280 (2d Cir. 1974) ...................................................10

*SEC v. Kelly, Andrews & Bradley, Inc.*, 385 F. Supp. 948 (S.D.N.Y. 1974) ..............................14

*SEC v. Kenneth Bove & Co.*, 378 F. Supp. 697 (S.D.N.Y. 1974)...................................11

*SEC v. Packer, Wilbur & Co.*, 498 F.2d 978 (2d Cir. 1974) ..........................................9

*SIPC v. Bernard L. Madoff Inv. Secs. LLC (In re Bernard L. Madoff Inv. Secs. LLC)*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010).............................................................................10

*SIPC v. Morgan, Kennedy & Co.*, 533 F.2d 1314 (2d Cir. 1976)...................................9

*SIPC v. Pepperdine Univ. (In re Brentwood Sec., Inc.)*, 925 F.2d 325 (9th Cir. 1991) ............9, 11

*SIPC v. Wise (In re Stalvey & Assocs.)*, 750 F.2d 464 (5th Cir. 1985)......................................9, 11

**STATUTES AND RULES**

11 U.S.C. § 105(a) ................................................................................................16

11 U.S.C. § 502(b) .............................................................................................14, 15

11 U.S.C. § 502(g)(2) ........................................................................................14, 15

11 U.S.C. § 562 .................................................................................................14, 15

15 U.S.C. § 78aa ...................................................................................................6

15 U.S.C. §§ 78aaa et. seq. ...................................................................................1

15 U.S.C. § 78eee(a)(3) .........................................................................................6

15 U.S.C. § 78eee(b)(3) .........................................................................................5

15 U.S.C. § 78eee(b)(4) ......................................................................................5, 6

15 U.S.C. § 78fff-(2)(a)(1) ....................................................................................12

15 U.S.C. § 78fff-2(b) ...........................................................................................12

15 U.S.C. § 78lll(2) .............................................................................................8, 10

Fed. R. Bankr. P. 1015(c) ....................................................................................16

Fed. R. Bankr. P. 9007 ........................................................................................16

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| LEHMAN BROTHERS INC., | Case No. 08-01420 (SCC) SIPA |
| Debtor. | |

## TRUSTEE'S MOTION FOR AN ORDER
## REGARDING CERTAIN FORWARD CONTRACT CLAIMS

James W. Giddens (the "Trustee"), as trustee for the liquidation of the business of

Lehman Brothers Inc. ("LBI" or the "Debtor") under the Securities Investor Protection Act of

1970, as amended ("SIPA"), 15 U.S.C. §§ 78aaa *et. seq.*,[1] by and through his undersigned

counsel, respectfully requests entry of an order (i) upholding the Trustee's determination that

claims related to unperformed forward contracts for the future purchase or sale of "to be

announced" U.S. agency debt obligations ("TBA Contracts" or "TBAs") and U.S. treasury debt

obligations ("Treasury Forward Contracts" or "Treasury Forwards" together with TBA

Contracts, "Forward Contracts") are not customer claims under SIPA; (ii) allowing certain

claims listed on **Schedule 1** hereto (the "GC Claims") arising (in whole or in part) out of

Forward Contracts as unsecured general creditor claims in the amounts listed on **Schedule 1**; and

---

1.    Hereinafter all references to SIPA will replace "15 U.S.C." with "SIPA."

(iii) expunging the claims listed on **Schedule 2** hereto (the "Resolved Claims," together with the GC Claims, the "Claims" filed by the "Claimants").  In support of this Motion, the Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

1.     The Claims subject to this Motion are currently part of advanced negotiations and an ongoing cooperative reconciliation process.  Many, if not all, will be resolved without the need of Court intervention.  However, in the interest of concluding the liquidation as promptly as possible, this Motion has been filed and will be heard to the extent the Claims cannot be resolved consensually.

2.     The Forward Contracts are agreements in which the parties promised to buy or sell at a future date U.S. agency or treasury debt obligations.  Forward Contracts are not traded on any securities or commodities exchange or registered with the Securities and Exchange Commission (the "SEC").  Rather, they are bilateral agreements between arms-length counterparties, frequently memorialized in an industry-standard contract, the Master Securities Forward Transaction Agreement.

3.     The Trustee's Motion seeks confirmation of the Trustee's position that claims for damages arising out of unperformed Forward Contracts are not customer claims under SIPA.  Particularly, the Trustee seeks confirmation of his determination that the Claims are not customer claims under SIPA because no property was either delivered or entrusted to LBI on account of these Forward Contracts.  Without the actual entrustment of property to LBI, the Claims fail to establish the essential element of customer status under SIPA.

4.     One distinguishing feature of the Forward Contracts is that they contemplate delayed delivery, typically with an interval of several weeks between the time of contracting (the "Trade Date") and the time for performance (the "Settlement Date") when

2

simultaneous "delivery-versus-payment" exchange of cash and securities would occur. The claims subject to the Motion are based on Forward Contracts that were executory or "open" on September 19, 2008 (the "Filing Date") because the agreed Settlement Date had not yet arrived. Accordingly, as of the Filing Date, no securities or cash had been exchanged—the Claimants who had promised to buy on the Settlement Date never transferred any cash, while those who had promised to sell never delivered any securities to LBI.

5.       Because no cash or securities belonging to the Claimants were in the possession of LBI, the Claimants do not seek the return of property but instead seek contract damages. Taking advantage of "safe harbor" exceptions to the SIPA stay, the Claimants deemed LBI's SIPA filing an event of default and terminated their open Forward Contracts. The resulting loss calculations, based primarily on the differences between the price of replacing the contract and the price agreed upon with LBI prior to the Filing Date, are essentially benefit-of-the-bargain contract damages arising from LBI's default. Some Claimants also assert a right to recover consequential damages (including, for example, attorneys' fees) resulting from LBI's "failure to complete the transactions."

6.       The Forward Contracts at issue in the Claims include both TBA Contracts and Treasury Forward Contracts. The question of whether claims for damages arising under TBA Contracts are customer claims has already been considered and decided in this SIPA liquidation. *See In re Lehman Brothers Inc.*, 462 B.R. 53 (Bankr. S.D.N.Y. 2011) (the "TBA Dispute"). The Bankruptcy Court, taking this issue as a matter of first impression, determined that claims for damages arising under TBA Contracts are not customer claims under SIPA and that TBA Contracts themselves do not properly fit within the definition of security under SIPA. *Id.* The Treasury Forward Contracts differ from the TBA Contracts only in that they are forward

contracts for the future purchase or sale of U.S. treasuries rather than forward contracts for U.S. agency debt obligations.  In both circumstances, no entrustment of property occurred.  Like TBA Contracts, the Treasury Forward Contracts do not fit within the definition of security under SIPA.  Therefore, in accordance with this Court's decision in the TBA Dispute, the Court should confirm the Trustee's determination denying customer status to the Claims.

7.    The Motion seeks an order upholding the Trustee's determination that the Claims do not qualify for customer claim status under SIPA.  However, based on analysis by the Trustee's counsel of each of the GC Claims and certain information from LBI books and records, as further described in the Declaration of Anson B. Frelinghuysen, dated May 19, 2015 (the "ABF Declaration"), the Trustee has determined that the GC Claims listed on **Schedule 1** should be allowed as unsecured general creditor claims in the amounts listed on the schedule.

8.    Based on analysis by the Trustee's counsel of each of the Resolved Claims and certain information from the LBI books and records, the Trustee has determined that the LBI estate is not liable for the Resolved Claims listed on **Schedule 2**.  Therefore, the Trustee requests that the Resolved Claims, which either partially or entirely arise out of Forward Contracts, should be expunged in their entirety.

## **BACKGROUND**

9.    On September 19, 2008, the Honorable Gerard E. Lynch, United States District Court Judge for the Southern District of New York, entered the Order Commencing Liquidation of LBI (the "LBI Liquidation Order," ECF No. 1) finding that LBI's customers were in need of protection and commencing liquidation of LBI pursuant to the provisions of SIPA, in the case captioned Securities Investor Protection Corp. v. Lehman Brothers Inc., Case No. 08-CIV-8119 (GEL).

10.     The LBI Liquidation Order, *inter alia*: (i) appointed James W. Giddens as Trustee for the liquidation of the business of LBI pursuant to SIPA § 78eee(b)(3), and (ii) removed the case to this Court as required for SIPA cases by SIPA § 78eee(b)(4) (the "SIPA Proceeding").

11.     The stay arising under paragraphs three through six of the LBI Liquidation Order exempts "the *contractual* right of a *creditor* to liquidate, terminate, or accelerate a securities contract . . . [or] forward contract."  (LBI Liquidation Order ¶ VIII(B) (emphasis added).)

12.     In an effort to recover value to the LBI estate, the Trustee and his professionals worked with many counterparties and their counsel to settle, on a consensual basis, the closeout value from the unwinding of certain financial products transactions, including Forward Contracts (the "Unwind Process").  (*See* Trustee's Fourth Interim Report for the Period May 11, 2010 through October 26, 2010, ECF No. 3842, at ¶¶ 135–39.)

13.     On November 7, 2008, upon the Trustee's motion, the Court entered the Order Approving Form and Manner of Publication and Mailing of Notice of Commencement; Specifying Procedures and Forms for Filing, Determination, and Adjudication of Claims; Fixing a Meeting of Customers and Creditors; and Fixing Interim Reporting Pursuant to SIPA (the "LBI Claims Process Order," ECF No. 241).

14.     Each of the Claimants listed on **Schedule 1** and **Schedule 2** asserted a customer claim for amounts allegedly due from LBI related to one or more open Forward

Contracts.[2]  The Trustee issued determination notices denying customer status under SIPA and reclassifying the asserted customer claims as general creditor claims in unspecified amounts. Each Claimant filed an objection to the Trustee's determination.  This Motion seeks (i) confirmation of the Trustee's determinations that the Claims are not "customer claims" under SIPA and to expunge any objections related thereto, (ii) to allow the GC Claims as general unsecured claims in the amount listed on **Schedule 1**, and (iii) to expunge the Resolved Claims listed on **Schedule 2**.

## JURISDICTION AND VENUE

15.    Following removal to this Court, this Court has "all of the jurisdiction, powers, and duties conferred by [SIPA] upon the court to which the application for the issuance of the protective decree was made."  SIPA § 78eee(b)(4).

16.    Venue is proper in this Court pursuant to SIPA § 78eee(a)(3) and 15 U.S.C. § 78aa.

## STATEMENT OF FACTS

17.    The following factual summary is based on the Claims themselves and the supporting documentation attached thereto, and the exhibits to the ABF Declaration.

## A.    THE NATURE OF TREASURY FORWARD CONTRACTS

18.    Treasury Forward Contracts are bilateral agreements to buy or sell U.S. treasury securities at a future date.  As with other forward contracts, while the contract is "open" (*i.e.*, during the interval between Trade Date and Settlement Date), a contracting party may enter

---

2.    In some instances, the Claims included other elements that were allowed or disallowed on a basis not addressed in the present Motion.  For the avoidance of doubt, the present Motion seeks confirmation of the Trustee's determinations pertaining to Treasury Forward Contracts and insofar as it denied customer status under SIPA and reclassified the Treasury Forward Contract portion of each affected claim.  To the extent that any portion of a Claim arose from TBA Contracts, the Court has already upheld the Trustee's determination that TBA Contract claims are not customer claims under SIPA.  (*See, supra* ¶ 6.)

into one or more offsetting contracts that is known in the industry as "pairing-off."  *See In re*

*Lehman Brothers Inc.*, 462 B.R. at 60.  The effect of the offsetting trade is to fix a notional gain

or loss on the paired contracts without any securities changing hands, resulting in a net payable

or receivable between the parties that is not due until the Settlement Date.[3]

19.    Each of the Treasury Forward Contracts were open, or wholly

unperformed, as of the Filing Date because either the Settlement Date had not yet occurred or the

Treasury Forward Contract had failed to settle (neither side completed delivery on the Settlement

Date).

## B.    THE MASTER SECURITIES FORWARD TRANSACTION AGREEMENT

20.    Parties to Treasury Forward Contracts, frequently use the MSFTA, an

industry-standard agreement promulgated by the Bond Market Association.  *See In re Lehman*

*Brothers Inc.*, 462 B.R. at 59.  A standard MSFTA, together with its annexes, is attached as

**Exhibit A** to the ABF Declaration.  Standard industry terms for Treasury Forward Contracts are

reflected in the MSFTA, which sets forth in detail the parties' contractual relationship, covering

warranties, performance, default, default remedies, collateralization, and other matters.  Treasury

Forward Contracts are to be "settled on a delivery-versus-payment basis and payment shall be

made to seller in immediately available funds," and "none of the Seller's property interest in the

Securities shall pass to Buyer until such delivery and payment are made."  (*See* MSFTA § 5(a).)

This form of simultaneous exchange settlement—where neither party holds property belonging

to the other—termed "DVP" (delivery-versus-payment) or "RVP" (receive-versus-payment)

---

3.    For example, on Day 1, A agrees to **buy** on a given Settlement Date 100 units from B at a certain price (the initial contract).  On Day 30, A agrees to **sell** 100 units to B on the same Settlement Date at a different price (the pair-off contract).  The amount payable on the Settlement Date is the difference between the price of the initial contract and the pair-off contract.  Together, the two offsetting Treasury Forward Contracts negate the need for the actual delivery of securities on the Filing Date.

depending on the point of view—is designed to reduce or avoid altogether the risk that a party

will receive securities or cash but not complete its own obligation to perform.

21.      Defaults, including any "Act of Insolvency" by a party, are fully defined,

and contractual remedies following default are set forth in detail.  (*See* MSFTA at §§ 7, 8.)

Significantly, even where insolvency causes a default, no reference is made to extra-contractual

remedies under SIPA or otherwise.  The contractual default remedies include recovery of

damages equal to the cost of "entering into replacement transactions and entering into or

terminating hedge transactions," as well as "legal or other expenses" and interest.  (*See id.* at

§ 7.)  Absent the posting of collateral with the defaulting party, there is no right to claim any

specific property.

## C.    TREASURY FORWARD CONTRACTS ON LBI'S BOOKS AND RECORDS

22.      Under SIPA, a broker dealer's "books and records" are the presumptive

starting place for determining the nature and extent of obligations to customers.  (*See, infra* ¶¶

31-33.)  Here, LBI's books and records show that no cash or securities were transferred or

"entrusted" to LBI by the Claimants, and that no securities were "received, acquired or held by

[LBI] . . . from or for the securities accounts of such persons" within the meaning of SIPA

Section 78*lll*(2).

23.      Treasury Forward Contracts were recorded in periodic account statements

maintained in LBI's information systems.  These statements had separate sections detailing the

investment activity and status of the account for the relevant period.  Statements included only

those sections needed to record activity and status for the relevant period.

24.      Examining a sample Claimant client statement (attached as **Exhibit B** to

the ABF Declaration) shows that LBI did not hold any cash or securities in the accounts of the

Claimants on the Filing Date.  The opening and closing cash balances are zero, and there is no

8

"Portfolio Detail" section, reflecting that LBI held no securities or other assets for the Claimant.

True to the structure and purpose of the Forward Contracts, this delivery-versus-payment

account was devoid of any customer property on the Filing Date.

## ARGUMENT

## I.    THE COURT SHOULD UPHOLD THE TRUSTEE'S DETERMINATION THAT FORWARD CONTRACTS ARE NOT CUSTOMER CLAIMS UNDER SIPA.

### A.    Customer Status Under SIPA is Construed Narrowly in Accordance with the Statutory Purpose.

25.    It has long been settled that SIPA does not "protect all creditors of a

brokerage firm against all losses" in the event of the broker-dealer's insolvency, only customers

as defined in the statute.  *In re Adler, Coleman Clearing Corp.*, 204 B.R. 111, 121 (Bankr.

S.D.N.Y. 1997); *SEC v. Packer, Wilbur & Co.*, 498 F.2d 978, 983 (2d Cir. 1974).  It is also

"well-established in the Second Circuit that a claimant bears the burden of proving that he or she

is a 'customer' under SIPA."  *Mishkin v. Siclari (In re Adler, Coleman Clearing Corp.)*, 277

B.R. 520, 557, n.162 (Bankr. S.D.N.Y. 2002).   The same rule is followed in other circuits.  *E.g.*,

*SIPC v. Pepperdine Univ. (In re Brentwood Sec., Inc.)*, 925 F.2d 325, 328 (9th Cir. 1991)

(holding that the burden of proof in a SIPA proceeding rests with the party seeking customer

status); *In re First Interregional Equity Corp.*, 290 B.R. 265, 272 (Bankr. D.N.J. 2003).

26.    The term customer is "not used in the colloquial sense of 'one who buys or

trades,'" but instead is a "shorthand designation for those eligible under SIPA to receive special

protection."  *SIPC v. Wise (In re Stalvey & Assocs.)*, 750 F.2d 464, 468 (5th Cir. 1985).  This

special status is to be construed narrowly in light of the statutory purpose.  *E.g.*, *SIPC v. Morgan,*

*Kennedy & Co.*, 533 F.2d 1314, 1316–18 (2d Cir. 1976) ("customer" definition is narrowly

interpreted); *In re MV Secs., Inc.*, 48 B.R.156, 160 (Bankr. S.D.N.Y. 1985) (explaining that the

Second Circuit has approved a narrow interpretation of the "customer" definition in SIPA); *In re*

9

*Hanover Square Sec.*, 55 B.R. 235, 238 (Bankr. S.D.N.Y. 1985); *In re Klein, Maus & Shire, Inc.*,

301 B.R. 408, 418 (Bankr. S.D.N.Y. 2003) (collecting cases); *In re Omni Mut., Inc.*, 193 B.R.

678, 680 (Bankr. S.D.N.Y. 1996) (noting that "customer" is a "term of art" that "should be

construed narrowly"); *see also SIPC v. Bernard L. Madoff Inv. Secs. LLC (In re Bernard L.*

*Madoff Inv. Secs. LLC)*, 424 B.R. 122, 141 (Bankr. S.D.N.Y. 2010) ("[c]ustomer property

consists of a limited amount of funds that are available for distribution" and that the distribution

of customer property is a "zero-sum game").

27.     Nor is it sufficient that a claimant had one or more trading relationships

with the debtor, some of which may involve actual customer status.  As stated by the Second

Circuit, SIPA "contemplates that a person may be a 'customer' with respect to some of his

claims for cash or shares, but not with respect to others."  *SEC v. F.O. Baroff Co.*, 497 F.2d 280,

282 n.2 (2d Cir. 1974).  Under these established principles, the Claimants bear the burden of

showing that their damages claims for the breach of open Forward Contracts falls within the

carefully defined scope of customer claims under SIPA.

**B.      Entrustment of Securities or Cash to a Broker or Dealer is a "Bright Line"
Test and an Essential Element of Customer Claims Under SIPA.**

28.     SIPA defines the term "customer" as one who has a claim for "**securities**

**received, acquired, or held by the debtor** in the ordinary course of its business as a broker or

dealer **from or for the securities accounts** of such person **for safekeeping, with a view to sale,**

**to cover consummated sales, pursuant to purchases, as collateral, security, or for purposes**

**of effecting transfer**."  SIPA § 78*lll*(2)(A) (emphasis added).

29.     Courts have held that the actual entrustment of securities or cash into the

possession of a debtor is a "Bright Line" test that separates customer claims from all other

claims.  Such entrustment does not occur in the case of open Treasury Forward Contracts.  In the

10

absence of "actual receipt, acquisition or possession of the property of a claimant by the brokerage firm under liquidation" a claimant is not entitled to customer protection under SIPA. *In re Stalvey & Assocs.*, 750 F.2d 464, 469 (5th Cir. 1985) (quoting *SEC v. Kenneth Bove & Co.*, 378 F. Supp. 697, 699 (S.D.N.Y. 1974)).  *See also In re Brentwood Sec.*, 925 F.2d at 327 (An investor is a customer "only if he has entrusted cash or securities to a broker-dealer who becomes insolvent; if an investor has not so entrusted cash or securities, he is not a customer and therefore not entitled to recover from the SIPC trust fund.").  In the TBA Dispute, the Bankruptcy Court found it compelling that the claimants could not show that "the purchase, sale or 'pairing-off' of a TBA Contract . . . ever involved the delivery or entrustment of any property to [the debtor]." *In re Lehman Brothers Inc.*, 462 B.R. at 58.

30.    The Claimants have not met their burden of establishing that the Treasury Forward Contracts are entitled to protected customer treatment (*see In re A.R. Baron*, 226 B.R. 790, 795 (Bankr. S.D.N.Y. 1998)), because they have not identified any property transferred to LBI with respect to an open Treasury Forward Contract.  The reason for this failure is evident: there was none.  Thus, when the Claimants entered into Treasury Forward Contracts with LBI that remained wholly executory and unperformed on the Filing Date, they deposited no cash with LBI and did not transfer any securities.  Instead, the Claimants exchanged contractual promises with LBI, with no payment or delivery due until the Settlement Date.  Consistent with the no-entrustment approach, the Claimants used the industry-standard DVP settlement method, where such delivery as might occur under non-paired Treasury Forward Contracts is subject to receipt of the counterparty's securities or funds.

C.     **LBI's Books and Records Confirm that LBI Held No Property for the Accounts of the Claimants.**

31.     Under SIPA, a trustee is required to determine a "customer" claim based on the "net equity" of the customer as shown on the books and records of the debtor.[4]  SIPA § 78fff-2(b); *see also In re Adler, Coleman Clearing Corp.*, 211 B.R. 486, 489 (Bankr. S.D.N.Y. 1997) (explaining that the "value of a customer's account, or its 'net equity', is the measure of its preferred SIPA customer claim").   "Net equity" is determined under SIPA by "calculating the sum which would have been owed by the debtor to such customer if the debtor had liquidated . . . all securities positions of such customer" less any indebtedness such customer might owe to the debtor as of the filing date.  SIPA § 78*lll*(11).  *See In re Lehman Brothers Inc.*, 433 B.R. 127, 133 (Bankr. S.D.N.Y. 2010) ("As is clear from the definition, net equity is calculated as of the filing date."); *In re Adler, Coleman Clearing Corp.*, 195 B.R. 266, 270 (Bankr. S.D.N.Y. 1996) (explaining that "[a] customer's account is valued as of the date the SIPA liquidation is commenced").

32.     In the TBA Dispute, the Court held that "[Claims] arising out of purchases and sales of TBAs fail to qualify for 'net equity' treatment based on securities or cash in their accounts for the simple reason that it is not possible to compute a 'net equity' claim for accounts such as these that do not hold any securities or cash."  *In re Lehman Brothers Inc.*, 462 B.R. at 63.  The Claims are no different; the accounts do not hold any securities or cash, making computation of 'net equity' claims impossible.  An analysis of the books and records of LBI

---

4.   SIPA gives primacy to the "books and records" of the debtor as the evidentiary basis for claimed entitlements under the Act.  *See, e.g.*, SIPA § 78fff-2(b) (customer payment determinations may be made "insofar as such obligations are ascertainable from the books and records of the debtor . . . ."); SIPA § 78fff-(2)(a)(1) ("Notice to be mailed to each person who, from the books and records of the debtor, appears to have been a customer of the debtor . . . .").

shows that while the Claimants' accounts were used to invest in and engage in trading activity

with Treasury Forward Contracts, no cash and no securities were actually entrusted to or held by

LBI for these Treasury Forward Contracts.  (*See, e.g.*, ABF Decl. at Ex. B (providing an example

of an account with both TBAs and Treasury Forwards).)

33.     Additionally, the Claimants' account statements separately classify

activity related to the Treasury Forward Contracts from cash, securities, and other investments

actually held by LBI.  While Treasury Forward Contracts appear under sections titled

"Transaction Details" and "Transaction Details-Future Settlements," they do not appear within a

section titled "Portfolio Detail," which would list all assets held by Lehman with respect to the

account.  This is similar to the situation found in the TBA Dispute, where the Court found it

significant that claimants' account statements referenced TBA Contracts within the same

sections ("Transaction Details" and "Transaction Details-Future Settlements") but not within the

section titled "Portfolio Detail."  *In re Lehman Brothers Inc.*, 462 B.R. at 60-61.  Given the

similarities between the account statements examined by the court in the TBA Dispute and here,

it follows that "without identified property in the hands of [the debtor], there can be no claim

against the estate for the recovery of such property."  *Id.* at 57-58.

**D.     Contract Damages are Not Customer Claims Under SIPA.**

34.     Similar to the account statements in the TBA Dispute, the Claimants'

statements establish that they are only claiming contract damages arising out of LBI's failure —

as a result of its insolvency — to perform its obligations under the Treasury Forward Contracts

(*i.e.* to make payment of the pair-off amounts on the Settlement Dates).  *See In re Lehman

Brothers Inc.*, 462 B.R. at 62 (finding that the claims arising out of open TBA Contracts are "not

claims for the recovery of property held for the customer, but rather claims for breach of TBAs"

and that such claims are contract claims).  Contract damage claims, without more, are not

13

customer claims under SIPA.  *See, e.g.*, *id.* (claims arising out of breaching TBA Contracts are contract claims and not entitled to SIPA protection); *In re MV Secs., Inc.*, 48 B.R. at 160 ("SIPA does not protect customer claims based on fraud or breach of contract."); *In re Klein, Maus & Shire*, 301 B.R. at 421 ("Because claims for damages do not involve the return of customer property entrusted to the broker they are not the claims of 'customers' under SIPA."); *In re Adler Coleman Clearing Corp.*, 195 B.R. 266, 275 (Bankr. S.D.N.Y. 1996) (breach of contract claims are "not customer claims entitled to priority under SIPA"); *SEC v. Kelly, Andrews & Bradley, Inc.*, 385 F. Supp. 948, 952-53 (S.D.N.Y. 1974) ("To require the Trustee to use SIPC funds to pay damages for a breach of contract claim against the debtor would . . . only serve to give a windfall to those who are general creditors based upon breach of contract claims.").

35.     Claiming contract damages rather than property actually entrusted to LBI, the Claims do not as a matter of law meet SIPA's definition of customer claims.  Therefore, the Trustee's position that the Claims should be reclassified as claims against the general estate should be confirmed.

## II.    THE GC CLAIMS SHOULD BE ALLOWED AS UNSECURED GENERAL CREDITOR CLAIMS.

36.     Bankruptcy Code section 502(b) provides, in relevant part, that a court should determine the amount of a claim subject to an objection "as of the date of the filing of the petition, and shall allow such claim in such amount."  11 U.S.C. § 502(b)(1).  In case of claims where damages are calculated in accordance with Bankruptcy Code section 562, damages "are measured as of the earlier of 'the date of such rejection' or 'the date of such liquidation, termination, or acceleration.'"  11 U.S.C. § 562; *see also* 11 U.S.C. § 502(g)(2) ("A claim for damages calculated in accordance with section 562 shall be allowed under subsection (a), (b), or (c), or disallowed under subsection (d) or (e) [of section 502], as if such claim had arisen before

14

the date of the filing of the petition.").    A claim may not be allowed to the extent that "such

claim is unenforceable against the debtor and property of the debtor, under any agreement or

applicable law."  11 U.S.C. § 502(b)(1).

37.    To the extent a Claim arises out of the rejection, liquidation, termination,

or acceleration of a forward contract, such as the Forward Contracts underlying the GC Claims,

the claim would be calculated pursuant to Bankruptcy Code section 562 and allowed in such

amount pursuant to Bankruptcy Code section 502(g)(2).

38.    Based on analysis by the Trustee's professionals or counsel of each of the

Claims listed on **Schedule 1**, certain information from the LBI claims register as maintained by

the Trustee's claims agent, and certain information from the Books and Records, as further

described in the ABF Declaration, the Trustee has determined that the claims should be allowed

in (and certain of the Claims must be reduced to) the amounts listed on **Schedule 1**.  (*See* ABF

Decl. ¶¶ 4-7.)

## III.    THE RESOLVED CLAIMS SHOULD BE EXPUNGED IN THEIR ENTIRETY

39.    Based on analysis by the Trustee's counsel of each of the Resolved

Claims, certain information from LBI books and records, and certain information provided by

the Trustee's professionals, the Trustee has determined that the transactions underlying the

Resolved Claims were resolved through the Unwind Process by prior agreement with the Trustee

in the form of a stipulation, settlement, release, and/or payment made to the Trustee.  (*See* ABF

Decl. ¶ 8.)

40.    The holders of the Resolved Claims fail to articulate any separate legal or

factual justification for asserting a claim against LBI.  If the Resolved Claims remain on the

claims register, parties who do not hold valid claims against the LBI estate will recover.  Thus,

the Trustee requests that the Court enter an order disallowing and expunging in their entirety the Resolved Claims listed on **Schedule 2**.

## NOTICE

41.    Notice of this motion has been provided to (i) each Claimant; and (ii) the list of parties requesting notice of pleadings in accordance with the Court's Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures and Related Relief entered by the Court on July 13, 2010 (ECF No. 3466), and will be immediately available for inspection upon filing with the Court at the Trustee's website, www.lehmantrustee.com.  The Trustee submits that no other or further notice need be provided.

## NO PRIOR RELIEF REQUESTED

42.    No prior motion for the relief requested herein has been made to this or any other court.

## CONCLUSION

For the reasons stated herein, the Trustee respectfully requests entry of the proposed Order attached hereto as **Exhibit A** granting the relief requested herein and grant such additional and further relief as the Court deems just and proper.

Dated:    New York, New York
          May 21, 2015

HUGHES HUBBARD & REED LLP

By:   */s/ James B. Kobak, Jr.*
      James B. Kobak, Jr.
      Christopher K. Kiplok
      Eleni D. Theodosiou-Pisanelli
      One Battery Park Plaza
      New York, New York 10004
      Telephone:  (212) 837-6000
      Facsimile:  (212) 422-4726
      Email:  kobak@hugheshubbard.com


      Attorneys for James W. Giddens, Trustee for
      the SIPA Liquidation of Lehman Brothers
      Inc.

## SCHEDULE 1

| CLAIM NO. | CLAIMANT | ECF OBJ. | PROPOSED ALLOWED GC AMOUNT |
|---|---|---|---|
| 7000750 | ANDREW L KICINSKI | 2599, 2468 | $    330,920.85 |
| 800002350 | INTERNATIONAL PAPER - STOCKSPLUS | 2468 | $    104,531.00 |
| 800002472 | KELLOGG COMPANY MASTER RETIREMENT TRUST | 2436, 2412 | $    152,455.00 |
| 800002518 | PIMCO DIVERSIFIED INCOME FUND | 3358 | $        3,801.00 |
| 800002520 | PIMCO UNCONSTRAINED BOND FUND | 2239, 2412 | $      13,688.00 |
| 800002534 | PIMCO FAR EAST (EX-JAPAN) STOCKSPLUS® TR STRATEGY F | 2412 | $        5,757.00 |
| 800002543 | PIMCO INTERNATIONAL STOCKSPLUS® TR STRATEGY FUND (U | 2436, 2412 | $      81,863.00 |
| 800002737 | PCM FUND, INC. | 2413 | $    434,661.00 |
| 800002746 | FIXED INCOME SHARES SERIES M | 2239, 2413 | $    430,485.77 |
| 800002261 | WEST OF ENGLAND SHIP OWNERS MUTUAL INSURANCE | 2412 | $      60,526.00 |
| 800001641 | WHEATON FRANCISCAN SERVICES, INC.INVESTMENT T | 3773 | $      23,435.00 |
| 900005812 D: 900004032 | STICHTING BLUE SKY ACTVE LONG DURATION | 2770 | $ 2,340,806.00 |
| 800001916 | PL INFLATION MANAGED FUND | 4329 | $      73,195.00 |
| 800001612 | CAPITAL GUIDANCE (FUND) LTD. | 2412 | $        8,439.00 |
| 800002622 | PIMCO CAYMAN GLOBAL EX-JAPAN (YEN-HEDGED) BON | 2468 | $    293,490.00 |
| 800004106 | PIMCO CAYMAN GLOBAL MULTIPLE REAL RETURN FUND | 2412 | $      62,139.00 |
| 800002588 | PIMCO CAYMAN GLOBAL LIBOR PLUS (YEN-HEDGED) F | 2658 | $    123,300.00 |
| 800002590 | PIMCO CAYMAN GLOBAL CREDIT LIBOR PLUS FUND | 2412 | $    671,630.00 |
| 800002606 | PIMCO LUXEMBOURG COMMODITY REAL RETURN STRATEGY FUND | 2658 | $    138,149.00 |

| CLAIM NO. | CLAIMANT | ECF OBJ. | PROPOSED ALLOWED GC AMOUNT |
|---|---|---|---|
| 800002943 | PIMCO COMMODITIESPLUS TRUST II | 2412 | $   59,340.00 |
| 800001459 | ROGERSCASEY TARGET SOLUTIONS | 2658 | $   38,895.28 |
| 800002793 | ARIEL REINSURANCE COMPANY, LTD. | 2512 | $   25,070.00 |
| 800001812 | PRUDENTIAL MORALLY RESPONSIBLE CORE PLUS BOND | 2412 | $   20,652.00 |
| 800001747 | BAHA'I WORLD CENTER | 2563 | $   18,706.00 |
| 800002819 | AST ADVANCED STRATEGIES PORTFOLIO - ADVANCED STRAT I | 2412 | $   238,286.00 |
| 800003971 | BANK OF CHINA OF THE PEOPLE'S REPUBLIC OF CHINA | 2239, 2412 | $   117,023.00 |
| 800003423 | ALLIANZGI KAG A/C 550049 | 2592 | $        937.50 |
| 800003445 | ALLIANZGI KAG A/C 551342 DBI OAD | 2593 | $   15,937.50 |
| 800001874 | MISSOURI LAGERS | 2559, 2626, 2468 | $   503,463.00 |
| 800001827 | KANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM | 2239 | $ 1,682,969.00 |

## SCHEDULE 2

| CLAIM NO. | CLAIMANT | ECF OBJ. |
|---|---|---|
| **800001703** | NEBRASKA INVESTMENT COUNCIL O/B/O STATE OF NE | 2412 |
| **900004326** | MICROSOFT CORPORATION | 2396 |
| **900004327** | MICROSOFT CORPORATION | 2460 |
| **900004341** | MICROSOFT CORPORATION | 2459 |
| **800001841** | HEWLETT-PACKARD COMPANY | 2669 |
| **800002035** | ABU DHABI INVESTMENT COUNCIL | 2436, 2412 |
| **800001526** | ORANGE COUNTY EMPLOYEES RETIREMENT SYSTEM | 3151 |
| **800003213** | AMERICAN EXPRESS RETIREMENT PLAN | 2631 |
| **800004098**<br>**D: 800004291** | GMAM GROUP PENSION TRUST I MULTI SECTOR-US/FOREIGN | 3081 |

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

LEHMAN BROTHERS INC.,

Case No. 08-01420 (SCC) SIPA

Debtor.

### [PROPOSED] ORDER GRANTING THE TRUSTEE'S MOTION
### FOR AN ORDER REGARDING CERTAIN FORWARD CONTRACT CLAIMS

Upon the motion dated May 21, 2015 (the "Motion")[5] of James W.

Giddens (the "Trustee"), as Trustee for the liquidation of the business of Lehman Brothers Inc.

("LBI" or the "Debtor"), seeking entry of an order (i) upholding the Trustee's determination of

claims related to Forward Contracts, (ii) allowing the claims listed on **Schedule 1** hereto as

unsecured general creditor claims, and (iii) expunging the claims listed on **Schedule 2** hereto, as

more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and

the relief requested therein in accordance with SIPA § 78eee(b)(4); and venue being proper

before this Court pursuant to SIPA § 78eee(a)(3) and 15 U.S.C. §78aa; and due and proper notice

of the Motion having been provided in accordance with the Amended Case Management Order;

and it appearing that no other or further notice need be provided; and the Court having found and

determined that the relief requested in the Motion is appropriate and in the best interests of the

LBI estate, its customers, its creditors, and all parties in interest; and is in accordance with the

LBI Claims Process Order; and sufficient cause appearing therefore, it is

---

1.    Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

**ORDERED**, that the Motion is GRANTED; and it is further

**ORDERED**, that claims in this proceeding based on open Forward Contracts that did not involve transfers of cash or securities to LBI by the claimants prior to the Filing Date are not customer claims within the meaning of SIPA; and it is further

**ORDERED**, that the Trustee's determination that the claims listed on **<u>Schedule 1</u>** and **<u>Schedule 2</u>** hereto as they relate to Forward Contracts are not customer claims under SIPA is hereby confirmed; and it is further

**ORDERED**, that the objections corresponding thereto are hereby overruled with prejudice; and it is further

**ORDERED**, that the claims listed on **<u>Schedule 1</u>** hereto are allowed as unsecured general creditor claims in the amounts set forth on **<u>Schedule 1</u>**; and it is further

**ORDERED**, that the claims listed on **<u>Schedule 2</u>** are disallowed and expunged in their entirety with prejudice; and it is further

**ORDERED**, that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated:    New York, New York
_____, 2015

_____
UNITED STATES BANKRUPTCY JUDGE

## SCHEDULE 1

| CLAIM NO. | CLAIMANT | ECF OBJ. | PROPOSED ALLOWED GC AMOUNT |
|---|---|---|---|
| 7000750 | ANDREW L KICINSKI | 2599, 2468 | $ 330,920.85 |
| 800002350 | INTERNATIONAL PAPER - STOCKSPLUS | 2468 | $ 104,531.00 |
| 800002472 | KELLOGG COMPANY MASTER RETIREMENT TRUST | 2436, 2412 | $ 152,455.00 |
| 800002518 | PIMCO DIVERSIFIED INCOME FUND | 3358 | $ 3,801.00 |
| 800002520 | PIMCO UNCONSTRAINED BOND FUND | 2239, 2412 | $ 13,688.00 |
| 800002534 | PIMCO FAR EAST (EX-JAPAN) STOCKSPLUS® TR STRATEGY F | 2412 | $ 5,757.00 |
| 800002543 | PIMCO INTERNATIONAL STOCKSPLUS® TR STRATEGY FUND (U | 2436, 2412 | $ 81,863.00 |
| 800002737 | PCM FUND, INC. | 2413 | $ 434,661.00 |
| 800002746 | FIXED INCOME SHARES SERIES M | 2239, 2413 | $ 430,485.77 |
| 800002261 | WEST OF ENGLAND SHIP OWNERS MUTUAL INSURANCE | 2412 | $ 60,526.00 |
| 800001641 | WHEATON FRANCISCAN SERVICES, INC.INVESTMENT T | 3773 | $ 23,435.00 |
| 900005812 D: 900004032 | STICHTING BLUE SKY ACTVE LONG DURATION | 2770 | $ 2,340,806.00 |
| 800001916 | PL INFLATION MANAGED FUND | 4329 | $ 73,195.00 |
| 800001612 | CAPITAL GUIDANCE (FUND) LTD. | 2412 | $ 8,439.00 |
| 800002622 | PIMCO CAYMAN GLOBAL EX-JAPAN (YEN-HEDGED) BON | 2468 | $ 293,490.00 |
| 800004106 | PIMCO CAYMAN GLOBAL MULTIPLE REAL RETURN FUND | 2412 | $ 62,139.00 |
| 800002588 | PIMCO CAYMAN GLOBAL LIBOR PLUS (YEN-HEDGED) F | 2658 | $ 123,300.00 |
| 800002590 | PIMCO CAYMAN GLOBAL CREDIT LIBOR PLUS FUND | 2412 | $ 671,630.00 |
| 800002606 | PIMCO LUXEMBOURG COMMODITY REAL RETURN STRATEGY FUND | 2658 | $ 138,149.00 |
| 800002943 | PIMCO COMMODITIESPLUS TRUST II | 2412 | $ 59,340.00 |

| CLAIM NO. | CLAIMANT | ECF OBJ. | PROPOSED ALLOWED GC AMOUNT |
|---|---|---|---|
| 800001459 | ROGERSCASEY TARGET SOLUTIONS | 2658 | $ 38,895.28 |
| 800002793 | ARIEL REINSURANCE COMPANY, LTD. | 2512 | $ 25,070.00 |
| 800001812 | PRUDENTIAL MORALLY RESPONSIBLE CORE PLUS BOND | 2412 | $ 20,652.00 |
| 800001747 | BAHA'I WORLD CENTER | 2563 | $ 18,706.00 |
| 800002819 | AST ADVANCED STRATEGIES PORTFOLIO - ADVANCED STRAT I | 2412 | $ 238,286.00 |
| 800003971 | BANK OF CHINA OF THE PEOPLE'S REPUBLIC OF CHINA | 2239, 2412 | $ 117,023.00 |
| 800003423 | ALLIANZGI KAG A/C 550049 | 2592 | $ 937.50 |
| 800003445 | ALLIANZGI KAG A/C 551342 DBI OAD | 2593 | $ 15,937.50 |
| 800001874 | MISSOURI LAGERS | 2559, 2626, 2468 | $ 503,463.00 |
| 800001827 | KANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM | 2239 | $ 1,682,969.00 |

## SCHEDULE 2

| CLAIM NO. | CLAIMANT | ECF OBJ. |
|---|---|---|
| 800001703 | NEBRASKA INVESTMENT COUNCIL O/B/O STATE OF NE | 2412 |
| 900004326 | MICROSOFT CORPORATION | 2396 |
| 900004327 | MICROSOFT CORPORATION | 2460 |
| 900004341 | MICROSOFT CORPORATION | 2459 |
| 800001841 | HEWLETT-PACKARD COMPANY | 2669 |
| 800002035 | ABU DHABI INVESTMENT COUNCIL | 2436, 2412 |
| 800001526 | ORANGE COUNTY EMPLOYEES RETIREMENT SYSTEM | 3151 |
| 800003213 | AMERICAN EXPRESS RETIREMENT PLAN | 2631 |
| 800004098 D: 800004291 | GMAM GROUP PENSION TRUST I MULTI SECTOR-US/FOREIGN | 3081 |