HEARING DATE AND TIME: JULY 21, 2015 AT 10:00 A.M. (PREVAILING EASTERN TIME)
RESPONSE DEADLINE: JULY 10, 2015

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
David J. Mark
Ross Shank
1633 Broadway
New York, New York 10019
Telephone:     (212) 506-1700
Facsimile:     (212) 506-1800

*Attorneys for Richard S. Hajdukiewicz*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— :
                                                              :
In re:                                                     :
                                                              :
        LEHMAN BROTHERS INC.,               :        Case No. 08-01420 (SCC) SIPA
                                                              :
                                Debtor.              :
                                                              :
———————————————————————— :

**RICHARD S. HAJDUKIEWICZ'S POST-HEARING BRIEF REGARDING MERITS**
**HEARING ON TRUSTEE'S OBJECTION TO CLAIM NOS. 4725, 4856, 4470 AND 6107**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 3

A.   Mr. Hajdukiewicz Is Entitled to his Guaranteed Bonus for Performance
     Year 2008 ............................................................................................................ 3

B.   There is No Basis for the Trustee's Objections .................................................. 4

  1.   The Barclays Payment Does Not Reduce LBI's Obligations to the
       Employee ....................................................................................................... 4

  2.   The Employee Claim Is Not Subject to Subordination ........................... 9

  3.   The Employee Claim Has Not Been Released ...................................... 14

C.   The Employee Claim Does Not Seek Compensation for Equity Interests .......... 18

D.   The Employee Claim Should Be Allowed ........................................................ 18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp.*,
No. 02-41729, 2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20, 2007)..............................4

*Am. Capital Access Serv. Corp. v. Muessel*,
28 A.D.3d 395, 814 N.Y.S.2d 139 (N.Y. App. Div. 2006) ................................................8, 9

*Arrowgrass Master Fund Ltd. v. Bank of N.Y. Mellon*,
106 A.D.3d 582 (N.Y. App. Div. 1st Dep't 2013) .........................................................16, 17

*Barclays Bank of N.Y. v. Goldman*,
517 F. Supp. 403 (S.D.N.Y. 1981)................................................................................8

*Bayerische Hypo-Und Vereinsbank AG v. Banca Nazionale Del Lavoro (In re Enron Corp.)*,
292 B.R. 752 (Bankr. S.D.N.Y. 2003) ........................................................................8

*Cardinal Holdings, Ltd. v. Indotronix Int'l Corp.*,
73 A.D.3d 960, 902 N.Y.S.2d 123 (2d Dep't 2010) .............................................................14

*Coreth v. Barclays Capital Inc. (In re Lehman Bros. Holdings Inc.)*,
479 B.R. 268 (S.D.N.Y. 2012)..............................................................................4, 5

*Coreth v. Barclays Capital Inc. (In re Lehman Bros. Holdings Inc.)*,
Nos. 09-1045, 09-1130, 2011 Bankr. LEXIS 632 (Bankr. S.D.N.Y. Feb. 22, 2011),
*aff'd*, 479 B.R. 268 (S.D.N.Y. 2012), *aff'd*, 513 Fed. Appx. 75, 2013 U.S. App.
LEXIS 4548 (2d Cir. 2013) ...........................................................................6, 7

*Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*,
634 F.3d 79 (2d Cir. 2010) ..................................................................................7

*Douglas v. Stamco*,
363 Fed. Appx. 100 (2d Cir. 2010) ............................................................................15

*In re Enron Corp.*,
341 B.R. 141 (Bankr. S.D.N.Y. 2006) ........................................................................14

*Harding v. Naseman*,
No. 07-8767, 2008 U.S. Dist. LEXIS 92813 (S.D.N.Y. Nov. 13, 2008) .................................5

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.*,
889 F.2d 1274 (2d Cir. 1989).................................................................................8

*John St. Leasehold LLC v. FDIC*,
No. 95-10174, 1996 U.S. Dist. LEXIS 19050 (S.D.N.Y. Dec. 20, 1996)................................5

*Kimso Apts., LLC v. Gandhi*,
   65 A.D.3d 1196, 885 N.Y.S.2d 422 (2d Dep't 2009) .................................... 15, 16

*In re Lehman Bros. Holdings Inc.*,
   519 B.R. 47 (Bankr. S.D.N.Y. 2014) ............................................................ 13, 14

*Malinowski v. Wall St. Source, Inc.*,
   No. 09-9592, 2011 U.S. Dist. LEXIS 139059 (S.D.N.Y. Dec. 2, 2011)................................. 8

*MBIA Ins. Corp. v. Cooperatieve Centrale Raiffeisen-Boerenleenbank B.A.*,
   No. 09-10093, 2011 U.S. Dist. LEXIS 31307 (S.D.N.Y. Mar. 25, 2011)............................ 17

*In re MF Global Holdings, Ltd.*,
   Case No. 11-15059 (MG) (Bankr. S.D.N.Y. Aug. 6, 2014)................................. 14

*Musman v. Modern Deb*,
   50 A.D.2d 761, 377 N.Y.S.2d 17 (N.Y. App. Div. 1975) .................................... 8

*N.Y. v. Nat'l Serv. Indus., Inc.*,
   460 F.3d 201 (2d Cir. 2006) ............................................................................ 16

*Plath v. Justus*,
   28 N.Y.2d 16, 268 N.E.2d 117 (1971) ........................................................... 15

*Rombro v. Dufrayne (In re Med Diversified, Inc.)*,
   461 F.3d 251 (2d Cir. 2006) ...................................................................... 12, 14

*Schwan-Stabilo Cosmetics GmbH & Co. v. PacificLink Int'l Corp.*,
   401 F.3d 28 (2d Cir. 2005) ........................................................................ 12, 13

*Sterling Inv. Servs., Inc. v. 1155 Nobo Assoc., LLC*,
   30 A.D.3d 579, 818 N.Y.S.2d 513 (App. Div. 2006).......................................... 17

*Vista Food Exch., Inc. v. Champion Foodservice, L.L.C.*,
   No. 14-804, 2014 U.S. Dist. LEXIS 108145 (S.D.N.Y. Aug. 4, 2014) ......................... 17, 18

**Statutes**

11 U.S.C. § 365.........................................................................................................7

11 U.S.C. § 502(b) ...................................................................................................18

11 U.S.C. § 510(b) ............................................................................................*passim*

**Other Authorities**

22A NY Jur Contracts § 475 (2014) ......................................................................6

Fed. R. Bankr. P. 3001(f) .......................................................................................4

Richard S. Hajdukiewicz, as claimant in the above-captioned chapter 11 cases whose claim is the subject of the *Trustee's Amended Objection to the General Creditor Proofs of Claim Filed by 1EE LLC, as Assignee (Claim No. 4856), Wayne Judkins (Claim No. 4470), Richard Hajdukiewicz (Claim No. 4725), and J. Robert Chambers (Claim No. 6107)* [Docket No. 10685] (the "<u>Amended Objection</u>"), respectfully submits the following Post-Hearing Brief.

## PRELIMINARY STATEMENT

Mr. Hajdukiewicz was an employee of LBI[1] with a written contract providing for a guaranteed bonus for performance year 2008 (the "<u>Employee Claim</u>"), payable unless he was terminated for cause. Like many LBI employees, his contract gave LBI an option to satisfy a portion of its bonus obligation in Restricted Stock Units ("<u>RSUs</u>") but, unlike RSU claims previously before this Court, the written contract provided in the alternative for payment in cash. This distinction is critical. As shown at the Merits Hearing, LBI never came close to making a grant of RSUs, thus, the Trustee's argument that Mr. Hajdukiewicz's guaranteed 2008 bonus should be subordinated under section 510(b) of the Bankruptcy Code seeks to retroactively cast the Employee Claim as a claim for failure to issue a security when, in fact, under the terms of the Employment Agreement, it is a claim for a specific dollar amount. Equally significant, a party, like LBI, in breach of a contract that provides for alternative performance may not live in a fantasy "breachland" and elect as damages the value of a performance that is worthless. Here, LBI had an obligation to make payments with a contractually agreed to dollar value and the only possible way LBI could have satisfied that obligation is in cash or in equity awards with the

---

[1] Capitalized terms used but not otherwise defined herein shall have the same meaning as set forth in *Richard S. Hajdukiewicz's Proposed Findings of Fact Regarding Trustee's Objection to Claim Nos. 4725, 4856, 4470 and 6107* (the "<u>FOF</u>") filed concurrently herewith.

same dollar value.  To put it another way, there is no basis to find that Mr. Hajdukiewicz

bargained for the security holder risk that underlies the principle of subordination.

In all other respects, this dispute concerns a straightforward employment claim easily

resolved by black letter law.  Mr. Hajdukiewicz was terminated by LBI, not for cause, and then

accepted employment with Barclays.  Barclays later terminated Mr. Hajdukiewicz and entered

into a severance agreement with him.  He had no duty to mitigate damages and there is no basis

to contend that his severance agreement with Barclays benefited LBI.  The fact that LBI and

Barclays were parties to an asset purchase agreement is irrelevant to the Employee Claim

because there is no legal or factual basis to suggest that LBI assumed its agreement with Mr.

Hajdukiewicz and assigned it to Barclays.  The only bearing the APA has on this dispute is that,

as stipulated between LBI and Barclays, LBI may have a claim against Barclays for the amount

of Mr. Hajdukiewicz's allowed claim.[2]

There is no basis to reduce the Employee Claim for amounts received from Barclays

which were in satisfaction of Barclays' separate obligation to Mr. Hajdukiewicz and are not

attributable to amounts owed to him by LBI.  The Trustee's fall back argument that LBI

delegated its bonus obligations to Barclays crosses the line from interpreting the separation

agreement between Mr. Hajdukiewicz and Barclays (the "Separation Agreement") to rewriting

the agreement.  The Trustee's evidence that Barclays had an unstated intention to satisfy

obligations it had to LBI when it offered separation agreements to former LBI employees is

irrelevant and the Trustee's delegation argument contradicts basic bankruptcy policy with regard

to the assumption and assignment of contracts.

---

[2]        [*See* FOF ¶ 19 n.1.]

2

Finally, the Trustee's interpretation of Mr. Hajdukiewicz's release of Barclays (the "Barclays Release") to extend the release to LBI is inconsistent with the Separation Agreement. LBI was not a "predecessor" of LBI, while Barclays' failure to explicitly make LBI a released party speaks volumes. Of course, Barclays, as drafter of the Separation Agreement, sought the widest possible release of **Barclays** and required that Mr. Hajdukiewicz release claims against Barclays in connection with his work for Lehman Brothers, but such a provision would not make LBI a released party. In any event, the inference the Trustee seeks should not be made against Mr. Hajdukiewicz, who did not draft the Barclays Release.

In the absence of any supportable objection to the Employee Claim, the Employee Claim should be allowed.

## ARGUMENT

### A.    Mr. Hajdukiewicz Is Entitled to his Guaranteed Bonus for Performance Year 2008

1.    Mr. Hajdukiewicz was an employee of LBI with a written contract providing for a guaranteed bonus in the amount of $1,910,000, payable unless he was terminated for cause. [FOF ¶ 1.] Although LBI had discretion to pay a portion of the guaranteed bonus with RSUs, Mr. Hajdukiewicz's contract required payment of a sum certain. [FOF ¶ 11.] LBI's discretion to pay a portion of the agreed amount of compensation in RSUs was also circumscribed by the terms of its Equity Awards Program and under that program the Compensation Committee was required to affirmatively exercise its discretion. [FOF ¶ 22.] Because the Compensation Committee never exercised its discretion by, among other things, setting a Year-end Grant Date, after which the risk of a decline in value of the RSU's would shift to the employees, Mr. Hajdukiewicz has, at all times, had a claim for a specific dollar amount, not a claim to RSUs.

2.    When Mr. Hajdukiewicz was terminated by LBI, he was offered and accepted employment with Barclays. [FOF ¶¶ 21, 25.] Barclays then terminated Mr. Hajdukiewicz and

entered into a severance agreement with him.  [FOF ¶ 27.]  He had no duty to mitigate damages

and there is no basis to contend that his severance agreement with Barclays benefited LBI.  Thus,

LBI is obligated to him for damages resulting from the rejection of his contract.  [*See* FOF ¶ 21.]

Mr. Hajdukiewicz timely filed a proof of claim for the unpaid bonus.[3]  [FOF ¶ 2.]

**B.    There is No Basis for the Trustee's Objections**

3.    The Trustee has not satisfied his burden of refuting the prima facie validity of Mr.

Hajdukiewicz's proof of claim.  Pursuant to Bankruptcy Rule 3001(f), a properly filed proof of

claim constitutes prima facie evidence of the validity and amount of the claim.  The Trustee, as

the party opposing the Employee Claim, has the burden of presenting sufficient evidence to

overcome this prima facie showing.  *See In re Adelphia Commc'ns Corp.*, No. 02-41729, 2007

Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007).

**1.    The Barclays Payment Does Not Reduce LBI's Obligations to the Employee**

4.    The Trustee has argued that the Employee Claim should be reduced by a

severance package that Mr. Hajdukiewicz received from Barclays following his termination by

Barclays.  (Amended Objection ¶¶ 28-29; *Pre-Trial Brief in Support of the Trustee's Amended*

*Objection to the General Creditor Proofs of Claim Filed by 1EE LLC, as Assignee (Claim No.*

*4856), Wayne Judgkins (Claim No. 4470), Richard Hajdukiewiccz (Claim No. 4725), and J.*

*Robert Chambers (Claim No. 6107)* [Docket No. 11975] (the "Trustee's Brief") ¶¶ 88-90).)

5.    The APA set forth "Barclays's obligation to 'continue to employ' or 'offer

employment to' all active LBI employees."  *Coreth v. Barclays Capital Inc. (In re Lehman Bros.*

---

[3]    Mr. Hajdukiewicz incorrectly stated the amount of the claim in the Bar Date Claim which was timely filed
prior to the entry of this Court's order setting a claims reserve.  [FOF ¶ 2.]  In the event the Court determines that
any of the Trustee's theories reducing the claim have merit, Mr. Hajdukiewicz submits that such reductions should
be calculated on the basis of the $1,910,000 guaranteed bonus provided for in the Employment Agreement and not
the incorrect amount stated in the Bar Date Claim.

*Holdings Inc.*), 479 B.R. 268, 277 (S.D.N.Y. 2012); (APA § 9.1(a)).  On September 22, 2008,

Mr. Hajdukiewicz received an email offering him employment with Barclays.  [FOF ¶ 25.]   He

accepted that offer.  [*Id.*]

6.    In October 2008, Barclays presented Mr. Hajdukiewicz with "an agreement

('Separation Agreement') concerning your separation from employment by Barclays Capital."

[FOF ¶ 27.]  The Separation Agreement was executed on October 14, 2008.  [*Id.*]

7.    The Separation Agreement is clear that it "is an agreement . . . concerning [Mr.

Hajdukiewicz's] separation from employment by Barclays Capital,"  that provided for Mr.

Hajdukiewicz to "receive a special lump sum payment in the total amount of $422,000 less

withholding, payroll tax and any other applicable deductions to be paid on or about February 22,

2008."  [FOF ¶ 27.]   "[W]here the language of a settlement agreement is clear, effect must be

given to the intent of the parties as indicated by the language employed."  *Harding v. Naseman*,

No. 07-8767, 2008 U.S. Dist. LEXIS 92813, at *20 (S.D.N.Y. Nov. 13, 2008) (quotations

omitted).  Nothing in the Separation Agreement states or suggests that Barclays intended to

satisfy an obligation owed by *LBI* to Mr. Hajdukiewicz.  Although the Trustee contends that LBI

delegated performance of its bonus obligations to Barclays, (Amended Objection ¶ 28 n.8;

Trustee's Brief ¶¶ 71-76), the Separation Agreement, a contract to which LBI is not a party,

shows no such intention.  "New York law requires that the parties' intent to benefit a third party

must be shown on the face of the agreement."  *John St. Leasehold LLC v. FDIC*, No. 95-10174,

1996 U.S. Dist. LEXIS 19050, at *29 (S.D.N.Y. Dec. 20, 1996).  The Separation Agreement

settled only Mr. Hajdukiewicz's potential employment claims related to his termination by

Barclays, including potential Older Workers Benefit Protection Act claims.  [FOF ¶ 31.]

8.    The Trustee's last ditch argument that LBI delegated payment of severance to Barclays ignores both the agreement and the Bankruptcy Code.  The Trustee went to great lengths to introduce testimony from Barclays employees that Barclays used LBI's severance program to calculate its severance payment to Mr. Hajdukiewicz and argued, therefore, that Barclays' severance payment satisfies LBI's obligations to Mr. Hajdukiewicz.  (Trustee Brief ¶¶ 88-90.)  Nonetheless, how Barclays chose to calculate the payments it offered former Lehman employees is irrelevant in light of LBI's decision not to assume and assign Mr. Hajdukiewicz's Employment Agreement.  This is so for at least three reasons.

9.    First, pursuant to the law concerning delegation, a party that accepts a delegation of obligations creates a third-party right of the obligee to enforce the delegated obligation. 22A NY Jur Contracts § 475 (2014) ("The delegation of a responsibility to another does not, ipso facto, discharge the obligation of the original obligor.  At best, the new obligation makes the obligee an intended beneficiary under the new arrangement.").  Here, Section 13.9 of the APA expressly disclaimed the creation of any third-party rights [FOF ¶ 20], and, in an action against Barclays by similarly situated employees with accrued claims against LBI pursuant to a written contract, this Court and the Second Circuit determined that employees have no right to enforce against Barclays any obligation for LBI employment compensation under the APA.  *Coreth v. Barclays Capital Inc. (In re Lehman Bros. Holdings Inc.)*, Nos. 09-1045, 09-1130, 2011 Bankr. LEXIS 632 (Bankr. S.D.N.Y. Feb. 22, 2011), *aff'd*, 479 B.R. 268, 273 (S.D.N.Y. 2012), *aff'd*, 513 Fed. Appx. 75, 2013 U.S. App. LEXIS 4548 (2d Cir. 2013).  Maximilian Coreth and Olivia Bam, both former employees of LBI, commenced separate actions against Barclays alleging breach of contract under the APA.  On February 22, 2011, the Bankruptcy Court granted Barclays' motion to dismiss both complaints.  *Id.*  The Bankruptcy Court held that Coreth and

6

Bam lacked standing to assert claims under the APA because they were not parties to that

agreement and because the agreement contained a no third-party beneficiary clause, which the

Bankruptcy Court concluded, was a decisive bar to enforcement of the agreement by third

parties.  2011 Bankr. LEXIS 632, at *25, 27.  The Bankruptcy Court also held that Coreth and

Bam had failed to state viable claims against Barclays because LBI did not assume and assign

their employment agreements to Barclays.  *Id.* at *24, 28-29.  This decision has been affirmed by

both the District Court and the Court of Appeals.

10.     Second, the Trustee's delegation argument conspicuously lacks citation to

bankruptcy cases.  This is not surprising because, in bankruptcy, executory contracts are dealt

with through the process of assumption and assignment defined in the Bankruptcy Code.  *See* 11

U.S.C. § 365 (Executory contracts and unexpired leases).  Even creative approaches to

restructuring problems must fit within the statutory framework of the Bankruptcy Code.  *Cf. Dish

Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*, 634 F.3d 79, 100 (2d Cir. 2010)

(consensual gifting could not skirt the absolute priority rule).  LBI never assigned the

Employment Agreement to Barclays in the APA and certainly it did not assume and assign the

Employment Agreement in accordance with Section 365 of the Bankruptcy Code and, thus,

remains liable for the Employee Claim.  (*See* Original Response ¶¶ 19-21; Trustee's Brief ¶ 94

("The Trustee does not dispute that LBI did not assign specific contracts to Barclays".).)

Furthermore, nothing in the APA put employees on notice that accepting employment with

Barclays would forfeit claims under their contracts with LBI.  [FOF ¶ 26.]

11.     Finally, the Trustee relies on extrinsic evidence to persuade the Court that the

guaranteed bonus is a double recovery.  As such the Trustee is resorting to parol evidence when

the contract is unambiguous.  New York law forbids the consideration of extrinsic evidence to

construe unambiguous contract terms.  *See, e.g.*, *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889

F.2d 1274, 1277 (2d Cir. 1989) ("If the terms of a contract are unambiguous, the obligations it

imposes are to be determined without reference to extrinsic evidence."); *Barclays Bank of N.Y. v.*

*Goldman*, 517 F. Supp. 403, 412 (S.D.N.Y. 1981) (granting summary judgment against party

seeking to offer evidence which "would necessarily vary or contradict the written terms of the

contract and is therefore inadmissible as a matter of law."); *Bayerische Hypo-Und Vereinsbank*

*AG v. Banca Nazionale Del Lavoro (In re Enron Corp.)*, 292 B.R. 752, 763 (Bankr. S.D.N.Y.

2003) (noting that a court "must give effect to the language used and will not refer to extrinsic

evidence for its interpretation" where neither party disputed that agreement was unambiguous).

The Separation Agreement is clear that the payments Mr. Hajdukiewicz received from Barclays

were in satisfaction of Barclays' separate obligation to Mr. Hajdukiewicz and are not attributable

to amounts owed to Mr. Hajdukiewicz by LBI.[4]

          12.      Moreover, the payment Mr. Hajdukiewicz received from Barclays pursuant to the

Separation Agreement does not mitigate his damages.  New York cases are clear that there is no

duty to mitigate in the context of a severance clause.  *See, e.g.*, *Malinowski v. Wall St. Source,*

*Inc.*, No. 09-9592, 2011 U.S. Dist. LEXIS 139059, at *5-6 (S.D.N.Y. Dec. 2, 2011) ("[W]hen an

employment contract contains a severance clause, New York courts view such a clause as 'in

essence a liquidated damages clause' that 'fixes the exposure of the employer following a

discharge without cause and thus serves to remove [such a case] from the ordinary rule requiring

the employee to mitigate damages.'") (quoting *Musman v. Modern Deb*, 50 A.D.2d 761, 377

N.Y.S.2d 17, 19 (N.Y. App. Div. 1975)); *see also Am. Capital Access Serv. Corp. v. Muessel*, 28

---

[4]        Certainly, Barclays did not tell Mr. Hajdukiewicz nor did he have the understanding that Barclays'
severance payments were made on behalf of LBI.  [FOF ¶ 28.]

8

A.D.3d 395, 814 N.Y.S.2d 139, 140 (N.Y. App. Div. 2006) (a severance provision in an

employment agreement functions as a liquidated damages clause, fixing damages and exempting

party seeking recovery from duty to mitigate).

### 2.    The Employee Claim Is Not Subject to Subordination

13.    The Trustee is also seeking to subordinate the Employee Claim under section

510(b) of the Bankruptcy Code, linking together faulty factual assumptions and inapposite

caselaw to inaccurately portray the guaranteed bonus as equity.  Mr. Hajdukiewicz's claim is a

claim for cash that the Trustee cannot retroactively turn into a claim for equity.  Above all else,

there is no basis to find that Mr. Hajdukiewicz bargained for the risk that underlies the principle

of subordination.  Moreover, any discretion LBI had to make equity awards under the

Employment Agreement was a dead letter as of the Termination Date.

14.    The Amended Objection misstates the situation when it proclaims that "the terms

of the 2008 Equity Award Program *call for* 60 percent[5] of Mr. Hajdukiewicz's guaranteed bonus

to be paid in conditional equity awards."  (Amended Objection ¶ 25 (emphasis added).)  The

2008 Equity Award Program did not "call for" any of Mr. Hajdukiewicz's guaranteed bonus to

be paid under its terms.  Materials reflecting the 2008 Equity Award Program make clear that the

bonus-eligible employee's compensation remains subject to the written agreement between LBI

and Mr. Hajdukiewicz, stating that "[i]n case of termination of employment of . . . individuals

with a written compensation guarantee, any year-end equity awards will be treated in accordance

with the relevant plan provisions or terms of the written compensation guarantee."  [FOF ¶ 22

---

[5]    During discovery the Trustee also conceded that the table cited by the Trustee as the source of the 60%
figure had been superseded by a table Mr. Hajdukiewicz had received by email that sets a lower cap for equity
awards, if made.  [*See* FOF ¶ 16.]

n.2.]  The Employment Agreement merely gave LBI discretion to pay a portion of the stated

$1,910,000 bonus in equity awards.  [FOF ¶ 13.]

15.    More significantly, the evidence shows that LBI never exercised the discretion to

compensate Mr. Hajdukiewicz with equity for his 2008 bonus.   It couldn't have.   The Equity

Award Program did not apply to employees terminated prior to the Year-end Grant Date.[6]  [FOF

¶ 22.]   The Trustee admits the Year-end Grant Date was never set, [FOF ¶ 22], and

acknowledges the employees were terminated on September 19, 2008.  [FOF ¶ 21.]   The grant

date couldn't have been set because the Compensation and Benefits Committee of the Board of

Directors (the "Compensation Committee") never met to set the date.  [FOF ¶ 22.]  Given that

Mr. Hajdukiewicz was clearly terminated prior to the Year-end Grant Date, he was not eligible

for the Equity Award Program, thus, LBI could only satisfy its obligations under the

Employment Agreement by paying cash.

16.    The Trustee contends that LBI "exercised" its discretion "by issuing schedules

that specified the percentage of Claimants' total compensation that was payable in equity awards

and by issuing its 2008 Equity Award Program." (Trustee's Brief ¶ 124.)   This contention is

contradicted by the plain terms of the Employment Agreement which explicitly states that equity

awards are discretionary and are subject to the awards program.    [FOF ¶ 13.]  At most, those

schedules established a maximum amount payable in RSUs.  Under the terms of the Equity

---

[6]    At the Merits Hearing, the Trustee contended that the materials describing the 2008 Equity Award Program
exclude employees with a written compensation guarantee when they state that employees terminated prior to the
year-end grant date will not be eligible for a year-end equity award.  [*See* Apr. 22 Tr. 48:23-49:5.] This is a highly
counter-intuitive interpretation in light of the testimony that the purpose of an equity program is to align employees'
interests with shareholders' interests.  [Apr. 22 Tr. 3-7.] The following sentence in the 2008 Equity Award Program
document provides that any year–end equity awards will be treated in accordance with "relevant plan provisions or
terms of the written compensation guarantee."  [FOF ¶ 22 n.3.]  This merely indicates that contractual provisions
will override the more general provision.  However, because Mr. Hajdukiewicz's Employment Agreement is silent
on the issue, the general principle applies.

Award Program the Compensation Committee was required to make an award and to set the

Year-end Grant Date to actually exercise its discretion to pay in RSUs.  Up until that time,

Lehman had discretion to pay guaranteed bonuses in cash and the Trustee's arguments to the

contrary are not supported by the parties' agreement.

17.    In fact, when the Compensation Committee had met earlier in 2008, in April, it

was concerned that the stock price would be too low for there to be enough shares to fund the

equity award program so it considered alternatives.  [FOF ¶ 23.]  When the Compensation

Committee envisioned this problem, LBI's stock was trading at about $40 per share.  [*Id.*]  If the

Compensation Committee had met in the fourth quarter of 2008 and set a grant date at the same

time in December 2008 as it had in December 2007, at that point Lehman's stock was trading for

4 cents a share and there were an insufficient number of shares available to make equity awards

in accordance with the program.  [*Id.*]  Given that the relevant stock price isn't known until the

time in the fourth quarter when the grant date is set, the Compensation Committee's

consideration of alternatives confirms that it understood it retained discretion to deal with the

exigencies of a reduced share price when it came time to decide whether or not to grant equity

awards.

18.    There is also no reason to believe LBI could have exercised "discretion" to set

aside the grant date requirement of the Equity Award Program.  For example, none of Mr.

Hajdukiewicz's 2007 bonus was given in the form of equity because his December 18, 2007 start

date fell after the December 8, 2007 grant date, even though his contract had been entered into in

September 2007.  [FOF ¶¶ 10, 14.]

19.    Even assuming the Equity Award Program did not include the provision

excluding terminated employees, without a grant date, there is obviously no way to price an

award.  [FOF ¶ 22.]   With Lehman stock trading for a fraction of a dollar as it was when Mr.

Hajdukiewicz was terminated, it would be impossible to use equity to fund bonuses because

there were simply not enough shares available.  Thus, LBI's discretion to compensate Mr.

Hajdukiewicz with equity was neither applicable to bonus-eligible employees terminated in

September 2008 nor even theoretically feasible.  However, that did not relieve LBI of its

obligations under the Employment Agreement.  LBI remained obligated to compensate Mr.

Hajdukiewicz in a specified dollar amount.

20.      Thus, the Employee Claim is simply not an equity interest that section 510(b)

subordinates to general claims.  Section 510(b) of the Bankruptcy Code provides that "a claim

arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the

debtor, for damages arising from the purchase or sale of such a security" shall be subordinated.

11 U.S.C. § 510(b).  Section 510(b) requires subordination "only if [claimant] (1) took on the

risk and return expectation of a shareholder, rather than a creditor, or (2) seeks to recover a

contribution to the equity pool presumably relied upon by creditors in deciding whether to extend

creditor to the debtor."  *Rombro v. Dufrayne (In re Med Diversified, Inc.)*, 461 F.3d 251, 256 (2d

Cir. 2006).  Mr. Hajdukiewicz took no such risk and seeks no such recovery.

21.      Even if LBI had the option to tender the 2008 bonus in the form of equity awards,

LBI would have had to compensate Mr. Hajdukiewicz with stock of the value stipulated in the

Employment Agreement and the Trustee does not suggest that LBI could have satisfied the 2008

Bonus obligations with stock that was worthless at the time it was awarded.  A party in breach of

a contract that affords alternative performances cannot satisfy its obligations by providing a

worthless performance.  *Schwan-Stabilo Cosmetics GmbH & Co. v. PacificLink Int'l Corp.*, 401

F.3d 28, 34 (2d Cir. 2005) ("We agree that while it may have been proper for defendants to

tender shares in satisfaction of the indemnification provision when the duty to indemnify arose, having breached the provision, defendants may not now rely on a contractual clause that would allow them effectively to avoid paying for their breach.").

22.     Nor is the Trustee's attempt to extend precedent in the LBHI bankruptcy cases concerning issued Restricted Stock Units ("RSUs") to a fundamentally different factual situation availing.  In the decision in *In re Lehman Brothers Holdings Inc.*, this Court determined that employees who "were holding RSUs that had been granted to them for services performed from 2003 through 2008" could not show that their claims should not be classified as equity.  519 B.R. 47, 50, 59 (Bankr. S.D.N.Y. 2014).  The critical difference between the RSU claimants in LBHI and Mr. Hajdukiewicz is that, here, no equity had been issued prior to the commencement of this proceeding, and, because the Employment Agreement provided for payment, in the alternative, in cash, it is not a claim for failure to issue securities.  To put it differently, Mr. Hajdukiewicz did not bargain for a fixed number of shares; he bargained for a fixed amount of cash or its equivalent in stock.  Until and unless an RSU award was made, he did not assume the risk of a decline in the value of the stock which is an essential component of a claim subject to section 510(b) of the Bankruptcy Code.

23.     As discussed above, any discretion LBI had to issue RSUs had not been exercised before these cases commenced.  In fact, this is a distinction this Court explicitly made in rejecting certain RSU claimants' argument that the contractual alternative of payment in cash distinguished their claims from equity:

> [T]he RSU Claimants' argument that they have claims for alternative performance ignores the fact that Lehman already paid them the compensation they were due in the form of RSUs.  Once those RSUs were paid, as they were here, the RSU Claimants had no right to any other mode of performance – in the form of cash or otherwise.

519 B.R. at 63-64.  Therefore, Mr. Hajdukiewicz's claim is not a claim based on a security, and this fact renders inapposite the Trustee's citation to *In re Enron Corp.*, where claimants were "seeking to recoup damages suffered in connection with the *ownership* of employee stock options."  341 B.R. 141, 145 (Bankr. S.D.N.Y. 2006) (emphasis added).

24.    Finally, the Trustee's cases standing generally for the proposition that section 510(b) extends to claims based on the failure to issue securities (*see* Amended Objection ¶ 33; Trustee's Brief ¶¶120-22) do not address how the Employee Claim can constitute a claim in connection with a security when the securities that could be issued would be worthless and the availability of alternative performance in cash is the only performance that would satisfy the party's obligation under the contract.  *In re Med Diversified, Inc.*, 461 F.3d at 253 (claim for failure to issue common stock to satisfy share exchange under agreement between company and terminated executive with no cash alternative); *In re Lehman Bros. Holdings Inc.*, 519 B.R. 47 at 64 n.18 (citing *Med Diversified* and finding claims for unissued commission-based RSUs would be subject to 510(b) subordination but not discussing whether commission contracts contemplated alternative payment in cash); *In re MF Global Holdings, Ltd.*, Case No. 11-15059 (MG) (Bankr. S.D.N.Y. Aug. 6, 2014) at 10 (noting employer had discretion to make cash payment but without addressing whether employer could satisfy obligations with worthless stock).

### 3.    The Employee Claim Has Not Been Released

25.    There is no basis for the Trustee's contention that Mr. Hajdukiewicz's release of Barclays somehow inures to the benefit of LBI.  "A release is a contract, and its construction is governed by contract law."  *Cardinal Holdings, Ltd. v. Indotronix Int'l Corp.*, 73 A.D.3d 960, 962, 902 N.Y.S.2d 123, 126 (2d Dep't 2010) (citations omitted).  In order to determine the parties' intent with respect to the Barclays Release, the release provisions "should be construed

in the context of the whole agreement, and their words considered not in isolation but in light of

the obligation as a whole and the intention of the parties as manifested thereby." *Kimso Apts.,*

*LLC v. Gandhi*, 65 A.D.3d 1196, 1197, 885 N.Y.S.2d 422 (2d Dep't 2009); *see also Plath v.*

*Justus*, 28 N.Y.2d 16, 268 N.E.2d 117 (1971).  When read in its entirety, the Separation

Agreement makes clear that the parties did not intend to, and did not release, LBI.

26.    The Waiver and General Release which Barclays obtained from Mr.

Hajdukiewicz provided as follows:

> In exchange for the payments and benefits set forth in my Separation Agreement,
> I hereby release Barclays Capital (the "Bank"), and all of its past and /or present
> divisions, affiliates, parents, subsidiaries, officers, directors, stockholders,
> trustees, employees, agents, representatives, administrators, attorneys, insurers,
> fiduciaries, **predecessors**, successors and assigns, in their individual and/or
> representative capacities (hereinafter collectively referred to as "the Barclays
> Group"), from any and all causes of action, suits, agreements, promises, damages,
> disputes, controversies, contentions, differences, judgments, claims and demands
> of any kind whatsoever ("Claims") which I or my heirs, executors, administrators,
> successors and assigns ever had, now have or may have against the Barclays
> Group, whether known or unknown to me, by reason of my employment and/or
> cessation of my employment, with the Bank **or with Lehman Brothers**, or
> otherwise involving facts which occurred on or prior to the effective date of this
> Waiver and General Release, except to the extent that any such Claim concerns an
> allegation that the Bank has failed to make the payment(s) set forth above.

[FOF ¶ 30.]

27.    The Trustee plucks the term "predecessor" out of the boilerplate list of parties

related to Barclays that are covered by the release and argues that LBI should be read as a

"predecessor" of Barclays.  (Amended Objection ¶ 41; Trustee's Brief ¶ 147.)  LBI was not a

"predecessor" of Barclays as evidenced by among other things that Barclays did not assume

liabilities under Mr. Hajdukiewicz's and other employee contracts.  (*See* ¶ 10, above.)  By the

same token, neither was Barclays LBI's successor by virtue of Barclays' acquisition of LBI's

assets.  *Douglas v. Stamco*, 363 Fed. Appx. 100, 101 (2d Cir. 2010) ("Under both New York law

and traditional common law, a corporation that purchases the assets of another corporation is

15

generally not liable for the seller's liabilities.") (quoting *N.Y. v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006)).

28.    The Trustee's assertion that reference to successor liability is inapposite because Mr. Hajdukiewicz did not limit his release to only those 'predecessors' whose liabilities Barclays assumed  (Trustee's Brief ¶ 148) misses the point that under the APA there is a fundamental discontinuity between Mr. Hajdukiewicz's employment by LBI and subsequent hiring by Barclays.  Barclays did not step into the shoes of LBI as Mr. Hajdukiewicz's employer but hired him as its own employee.  It is that absence of an assumed contract or acquired assets that undermines LBI's argument that Barclays was LBI's successor in any sense.

29.    Essentially, the Trustee relies on a single word in a lengthy document to argue that Barclays and Mr. Hajdukiewicz "intended" to release LBI, whereas the plain language of the provision and the agreement as a whole establishes a contrary intent.  *See Kimso Apts.*, 65 A.D.3d at 1197 ("The record demonstrates that the releases were part of a larger settlement agreement entered into between the parties in a federal action . . . [a]ccordingly, the releases should be construed in the context of the whole agreement").  If it were the intention of the parties to release LBI, they would have explicitly and unequivocally done so.  They would not have buried the commercially significant release of a culpable party like LBI in boilerplate language that on its face is intended to include only entities closely related to the parties to the document, which LBI was not.  Certainly, Mr. Hajdukiewicz had no intention of releasing LBI when he signed the Barclays Agreement.  [FOF ¶ 32.]

30.    The case cited by the Trustee for a broad reading of the term "predecessor" is consistent with an understanding of the Barclays Release that avoids surreptitiously including a release of LBI in the boilerplate.  That case, *Arrowgrass Master Fund Ltd. v. Bank of New York*

*Mellon*, concerning whether the release of a successor indenture trustee released its "predecessor", premises its holding on the understanding that "single clauses cannot be construed by taking them out of their context and giving them an interpretation apart from the contract of which they are a part." 106 A.D.3d 582, 583 (N.Y. App. Div. 1st Dep't 2013) (citations omitted). Here, not only does it strain credulity to suggest the transferred employees would compromise potential claims against LBI without such release being explicit, but, in addition, the specific reference to "Lehman Brothers" in the Barclays Release makes clear that, had the parties to the release intended to release Lehman Brothers or LBI, those entities would have been explicitly mentioned. [FOF ¶ 30.] *See, e.g.*, *MBIA Ins. Corp. v. Cooperatieve Centrale Raiffeisen-Boerenleenbank B.A.*, No. 09-10093, 2011 U.S. Dist. LEXIS 31307, at *25 (S.D.N.Y. Mar. 25, 2011) ("Under accepted canons of contract construction, where certain language is omitted from a provision but placed in other provisions, it must be assumed that the omission was intentional.") (quoting *Sterling Inv. Servs., Inc. v. 1155 Nobo Assoc., LLC*, 30 A.D.3d 579, 818 N.Y.S.2d 513, 516 (App. Div. 2006)). The Trustee's explanation for the reference to Lehman Brothers is that "LBI was specifically mentioned because it was the only one of Barclays' divisions … to have employed Hajdukiewicz." (Trustee's Brief ¶ 151.) Aside from missing the obvious fact that Barclays itself had employed Mr. Hajdukiewicz after he was terminated by LBI, this justification pales by comparison to the more likely explanation: of course, Barclays, as drafter of the Separation Agreement, would seek the widest possible release and insist Mr. Hajdukiewicz release claims against Barclays in connection with his work for Lehman Brothers, but such a provision would not make LBI a released party. In any event, the inference the Trustee seeks should not be made against Mr. Hajdukiewicz, the non-drafting party. *See, e.g.*, *Vista Food Exch., Inc. v. Champion Foodservice, L.L.C.*, No. 14-804, 2014 U.S.

17

Dist. LEXIS 108145 (S.D.N.Y. Aug. 4, 2014) ("[c]onstruing the clause in favor of the non-drafting party, as the Court must").

### C.      The Employee Claim Does Not Seek Compensation for Equity Interests

31.      At the Merits Hearing, the Trustee asked Mr. Hajdukiewicz whether he had received an equity award in July 2008.  [FOF ¶ 17.]  Mr. Hajdukiewicz did not recall receiving such an award and the spreadsheet that the Trustee showed him, Trustee's Ex. 58, did not refresh his recollection.  [*Id.*]  Nor does Trustee's Ex. 58 establish such an award was made.  (*See Letter to the Honorable Shelley C. Chapman Regarding Exhibits and Depositions Designations Related to the Merits Hearing*, dated May 12, 2015 [Docket No. 11992] at 5-6.)

32.      There is no dispute that Mr. Hajdukiewicz received equity awards to compensate him for HSBC shares which he was forfeiting to accept LBI's employment offer.  [FOF ¶ 15.] However, Mr. Hajdukiewicz has not asserted a claim in these cases on account of equity interests in LBI.[7]  [*Id.*]

### D.      The Employee Claim Should Be Allowed

33.      In the absence of any other ground for the Amended Objection, the Court should enter an order allowing the Employee Claim.  11 U.S.C. § 502(b) ("if [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount").

---

[7]      If the court were to find that Mr. Hajdukiewicz was granted equity in July 2008, such an award would reduce the potential year end equity award.

WHEREFORE, for the reasons set forth herein, Mr. Hajdukiewicz respectfully requests

that the Court overrule the Amended Objection and enter an Order allowing the Employee Claim

and granting to Mr. Hajdukiewicz such other and further relief deemed just and proper.

Dated: New York, New York
      June 10, 2015

                                  Respectfully submitted,

                                  KASOWITZ, BENSON, TORRES
                                    & FRIEDMAN LLP
                                  By:  /s/ David J. Mark
                                  David J. Mark
                                  Ross Shank
                                  1633 Broadway
                                  New York, New York 10019
                                  Telephone:   (212) 506-1700
                                  Facsimile:   (212) 506-1800

                                  *Attorneys for Richard S. Hajdukiewicz*

19