**Hearing Date: June 29, 2015 at 2:00 p.m. (prevailing Eastern Time)**

HUGHES HUBBARD & REED LLP

One Battery Park Plaza

New York, New York 10004

Telephone: (212) 837-6000

Facsimile: (212) 422-4726

Email: bill.maguire@hugheshubbard.com

*Attorneys for James W. Giddens, as Trustee*
*for the SIPA Liquidation of Lehman Brothers Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| LEHMAN BROTHERS INC., | Case No. 08-01420 (SCC) SIPA |
| Debtor. | |

**REPLY IN SUPPORT OF THE TRUSTEE'S MOTION PURSUANT TO**
**FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR ENTRY**
**OF AN ORDER APPROVING THE SETTLEMENT AGREEMENT AMONG**
**THE TRUSTEE, BARCLAYS CAPITAL INC., AND BARCLAYS BANK PLC**

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

I.      CHAMBERS' OBJECTION IS MERITLESS. ...................................................................2

      A.      The Benefits of the Settlement Outweigh the Benefits
           and Possibility of Success by Means of Further Litigation. ...................................4

      B.      Further Litigation Against Barclays Would Be Complex, Protracted,
           and Expensive, and Would Delay the Winding Down of LBI's Liquidation. .........7

      C.      The Settlement Is in the Best Interest of LBI's Creditors.......................................8

      D.      The Release of the Trustee's Potential Bonus
           Claim Against Barclays Is Reasonable and Necessary...........................................8

II.     THE TRUSTEE, BARCLAYS, AND LBIE HAVE AGREED
      TO REVISE THE SETTLEMENT AGREEMENT AND THE
      PROPOSED ORDER TO CLARIFY THAT THE SETTLEMENT
      WILL NOT PREJUDICE THE RIGHTS OF THIRD PARTIES. ....................................9

CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Air Line Pilots Ass'n, Int'l v. American Nat'l Bank & Trust Co. of Chicago
(In re Ionosphere Clubs, Inc.)*, 156 B.R. 414 (S.D.N.Y. 1993), *aff'd*,
17 F.3d 600 (2d Cir. 1994) .................................................................................2, 4

*Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599 (2d Cir. 1983) .......................3

*Geltzer v. Original Soupman Inc. (In re Soup Kitchen Int'l Inc.)*, 506 B.R. 29
(Bankr. E.D.N.Y. 2014) .............................................................................................6

*HSBC Bank USA, Nat'l Ass'n v. Fane (In re MF Global Inc.)*, 466 B.R. 244
(Bankr. S.D.N.Y. 2012) ..........................................................................................3, 6

*In re Purofied Down Prods. Corp.*, 150 B.R. 519 (S.D.N.Y. 1993) ................................3

*JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter
Commc'ns)*, 419 B.R. 221 (Bankr. S.D.N.Y. 2009) .................................................3

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*,
478 F.3d 452 (2d Cir. 2007) .....................................................................................3

*Nellis v. Shugrue*, 165 B.R. 115 (S.D.N.Y. 1994) ..........................................................3

*Official Comm. of Unsecured Creditors of Int'l Distrib. Ctrs., Inc. v. James Talcott, Inc.
(In re Int'l Distrib. Ctrs., Inc.)*, 103 B.R. 420 (S.D.N.Y. 1989) .............................7

*Police & Fire Ret. Sys. of the City of Detroit v. Ambac Fin. Grp., Inc. (In re Ambac Fin.
Grp. Inc.)*, No. 10-B-15973 (SCC), 2011 WL 6844533 (S.D.N.Y. Dec. 29, 2011),
*aff'd*, 487 F. App'x 663 (2d Cir. 2012) .....................................................................3

*Smith v. Silverman (In re Smith)*, 645 F.3d 186 (2d Cir. 2011) .....................................7

STATUTES AND RULES

Federal Rule of Bankruptcy Procedure 9019 ..................................................................2

The Trustee submits this reply in support of his motion for approval of the Settlement Agreement between the Trustee and Barclays.[1]

## PRELIMINARY STATEMENT

1.      The Settlement Agreement represents a global resolution of all claims between the Trustee and Barclays that will result in the accretion of more than $610 million to LBI's general estate, will avoid the cost and uncertainty of continued litigation with Barclays, and will remove the single largest obstacle to winding down the liquidation of LBI.

2.      Notwithstanding these benefits, J. Robert Chambers objects to the Settlement Agreement.  Chambers is one of 71 former LBI employees who transferred to Barclays and filed claims against LBI for guaranteed 2008 bonuses (the "Bonus Claimants").  Chambers is one of eleven Bonus Claimants who have continued to litigate with the Trustee rather than settling their claims.  He is also the only Bonus Claimant, and indeed the only party, who has objected to the merits of the Settlement Agreement.

3.      In his objection ("Chambers' Objection"), Chambers seeks to sever the portions of the Settlement Agreement that he likes (including the release of hundreds of millions of dollars to LBI's general estate) from the portion of the Settlement Agreement that he does not like (*i.e.*, the Trustee's release of a potential $80 million claim against Barclays for failure to pay all of the bonuses that Barclays agreed to pay under the APA).  The Settlement Agreement does not, however, comprise a series of discrete and divisible transactions.  It is a single transaction in

---

1.   Capitalized terms not otherwise defined herein shall have the meaning attributed to them in the Trustee's Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 for Entry of an Order Approving the Settlement Agreement Among the Trustee, Barclays Capital Inc., and Barclays Bank PLC (the "Motion").

which the Trustee and Barclays each compromised on some issues to obtain a favorable result on other issues.

4.      The release of the Trustee's potential bonus claim against Barclays is among the consideration that Barclays is receiving for other parts of the Settlement Agreement that benefit the LBI estate, including the immediate release of some $580 million in reserves. The release of these reserves hinges on (i) Barclays' agreement that the Trustee will retain $80 million in Margin Assets that otherwise would be payable to Barclays under the District Court's Judgment, and (ii) Barclays' relinquishment of any claim it otherwise might have had against the Trustee in the event it is unable to collect assets that it is seeking from LBIE and other third parties.  In addition, Barclays has agreed to cooperate in the collection of more than $30 million held by DTCC that the Trustee has been unable to collect to date.  The Trustee would risk losing some or all of these benefits if the Settlement Agreement is not approved.

5.      Contrary to Chambers' presumption, the release of a potential bonus claim against Barclays cannot be stripped out of the Settlement Agreement while the Trustee retains all of the benefits that he obtained in exchange for, *inter alia*, that release.  Because the benefits of the Settlement Agreement significantly outweigh the benefits of continued litigation, Chambers' Objection should be overruled.

## I.      <u>CHAMBERS' OBJECTION IS MERITLESS</u>.

6.      A settlement should be approved under Bankruptcy Rule 9019 if it is fair and equitable and in the best interests of the estate.  *See Air Line Pilots Ass'n, Int'l v. American Nat'l Bank & Trust Co. of Chicago (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).  Courts in the Second Circuit "evaluate whether a proposed settlement is in the best interests of the estate and fair and equitable by applying the

[seven] factors set forth in *In re Iridium Operating LLC*." *JPMorgan Chase Bank, N.A. v.*

*Charter Commc'ns Operating, LLC (In re Charter Commc'ns)*, 419 B.R. 221, 252 (Bankr.

S.D.N.Y. 2009) (citing *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium*

*Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007)).

       7.     In considering the *Iridium* factors, courts are mindful that "settlements of

disputed claims facilitate the efficient functioning of the judicial system" and "also help clear a

path for the efficient administration of the bankrupt estate." *In re Iridium*, 478 F.3d at 455; *see*

*also HSBC Bank USA, Nat'l Ass'n v. Fane (In re MF Global Inc.)*, 466 B.R. 244, 247 (Bankr.

S.D.N.Y. 2012) ("Settlements and compromises are favored in bankruptcy as they minimize

costly litigation and further parties' interests in expediting the administration of the bankruptcy

estate."). Accordingly, proposed settlements are subject to a "lenient" standard of review

intended to "encourage courts to approve settlements in bankruptcy proceedings and related

actions." *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522-23 (S.D.N.Y. 1993); *Police &*

*Fire Ret. Sys. of the City of Detroit v. Ambac Fin. Grp., Inc. (In re Ambac Fin. Grp. Inc.)*,

No. 10-B-15973 (SCC), 2011 WL 6844533, at *7 (S.D.N.Y. Dec. 29, 2011) (proposed

settlements are subject to a "permissive" standard of review), *aff'd*, 487 F. App'x 663

(2d Cir. 2012).

       8.     When considering a proposed settlement, courts need neither assess "the

minutia of each and every claim," *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994), nor

conduct a "mini-trial" on the merits, *In re Purofied Down*, 150 B.R. at 522. Instead, courts

should "canvass the issues and see whether the settlement fall[s] below the lowest point in the

range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.

1983) (internal quotation omitted); *see also In re Ambac*, 2011 WL 6844533, at *2 ("courts are

to upset such settlements only in the face of considerable evidence suggesting that the agreement is unreasonable").

9.      Here, there is no doubt that the proposed settlement between the Trustee and Barclays is eminently reasonable and beneficial to the LBI estate.  Chambers' Objection rests on his attempt to compartmentalize the parts of the Trustee's global settlement with Barclays that benefit the LBI estate, attribute those benefits solely to the implementation of the District Court's Judgment, then ignore all of those benefits in arguing that the Trustee should not have agreed to release a potential claim against Barclays for failure to pay bonuses to former LBI employees (such as Chambers) who transferred to Barclays as part of Barclays' acquisition of LBI's investment banking and capital markets business.

10.      Chambers' logic is flawed, because the Court must consider "whether the Settlement Agreement *in its entirety* is appropriate for the . . . estate."  *In re Ionosphere*, 156 B.R. at 430 (emphasis added).  The release of a potential bonus claim was part of the consideration that the Trustee gave Barclays in exchange for the benefits that will accrue to the LBI estate under the overall agreement.  The consideration that the Trustee paid (including the release) cannot be analyzed in isolation from the benefits that the consideration bought.

11.      Because the Settlement Agreement as a whole is reasonable, Chambers' Objection should be overruled.

**A.      The Benefits of the Settlement Outweigh the Benefits
and Possibility of Success by Means of Further Litigation.**

12.      Chambers attempts to second-guess the merits of the Settlement Agreement by asserting that the $581 million to be released from the Trustee's litigation reserve under that agreement could be released even in its absence.  (Chambers' Objection ¶ 12.)  To the contrary, the amount to be released includes $80 million that Barclays would be entitled to under

4

the District Court's Judgment, as well as $255 million that the Judgment reserved Barclays' right

to seek from the Trustee if Barclays is unable to collect all of the assets it has claimed from

LBIE, Yuanta, Samsung, and Kenanga.  (*See* Kiplok Decl. ¶ 13.)

13.    Under the Settlement Agreement, Barclays has agreed that the Trustee will

retain the $80 million and that Barclays will not look to the LBI estate for the $255 million

regardless of the status of its efforts to collect assets from third parties.  The release of the

Trustee's potential bonus claim is part of the consideration that Barclays received for agreeing to

forego any claim to this $335 million.

14.    Chambers also makes a misguided attempt to dismiss the value of

Barclays' cooperation in collecting more than $30 million held by DTCC.  These funds are

proceeds of securities held by DTCC that the Trustee has been unable to collect because of the

possibility that Barclays could assert a claim to them based on its acquisition of LBI's assets.

(Supplemental Kiplok Decl. ¶ 5.)  By eliminating this concern, Barclays' agreement to cooperate

with the Trustee will facilitate the collection of the funds for the benefit of the LBI estate.  (*Id.*)

Again, the release of the Trustee's potential bonus claim was part of the consideration for

Barclays' agreement to cooperate with the Trustee's collection efforts.

15.    In addition to discounting the benefits of the Settlement Agreement,

Chambers overvalues the Trustee's potential bonus claim against Barclays.  First, the Trustee

estimates that the potentially allowable amount of claims for unpaid bonuses is approximately

$80 million (Supplemental Kiplok Decl. ¶ 7), far less than the hundreds of millions of dollars

that Chambers speculates is "likely" (Chambers' Objection ¶ 15).[2]  Second, the Trustee expects

that Barclays would have colorable defenses to a claim for failure to pay bonuses.

(Supplemental Kiplok Decl. ¶ 9.)

16.     Specifically, Barclays has indicated it would argue that its obligation to

pay employee bonuses under the APA was limited to the aggregate amount of LBI's bonus pool

accrual, and that it was not obligated to pay any specific amount to any specific employee.

(ECF No. 11077; Supplemental Kiplok Decl. ¶ 9.)  Barclays could also argue that the Trustee's

damages, and Barclays' maximum exposure, should not include amounts that are subject to

subordination and will not result in distributions from the LBI estate.  (Supplemental Kiplok

Decl. ¶ 10.)[3]  Indeed, Barclays could further argue that its maximum exposure should be capped

at the amount that the LBI estate actually distributes, rather than the approximately $80 million

that the Trustee believes is potentially allowable.  (*Id.* ¶ 11.)

17.     Accordingly, Chambers has failed to identify any reason to doubt, much

less override, the Trustee's business judgment that the benefits of the Settlement Agreement

outweigh the benefits of continued litigation.  *See Geltzer v. Original Soupman Inc. (In re Soup*

*Kitchen Int'l Inc.)*, 506 B.R. 29, 37 (Bankr. E.D.N.Y. 2014) (court "may give weight to the

trustee's opinion that the settlement is fair and equitable"); *In re MF Global*, 466 B.R. at 247

---

2.   Barclays paid most of the Bonus Claimants either all or part of the 2008 bonuses that LBI owed them, yet these
claimants have asserted claims for the full amount of their bonuses – without taking a reduction for the amount
that Barclays paid.  (Supplemental Kiplok Dec. ¶ 8.)  The Trustee has objected to the claims to the extent they
seek a double recovery of amounts that Barclays paid.  (*Id.*)  For example, the Trustee seeks to reduce
Chambers' claim by the $1 million that Barclays paid him in lieu of his 2008 bonus.  (*Id.*)  If the Bonus
Claimants were allowed to recover against the estate the full amount of their claims, including the amounts that
Barclays already paid, the allowed amount of their claims ultimately could be as high as $170 million.  (*Id.*)

3.   Of the approximately $80 million in bonuses that were not paid by Barclays, the Trustee believes that all but
approximately $40 million is subject to subordination because it was to be paid in restricted stock units.
(Supplemental Kiplok Decl. ¶ 11.)

(court should consider "business judgment of the debtor in recommending the settlement");

*Official Comm. of Unsecured Creditors of Int'l Distrib. Ctrs., Inc. v. James Talcott, Inc.*

*(In re Int'l Distrib. Ctrs., Inc.)*, 103 B.R. 420, 423 (S.D.N.Y. 1989) ("Indeed, a court may

approve a settlement even if it believes that the Trustee ultimately would be successful.").

### B.    Further Litigation Against Barclays Would Be Complex, Protracted, and Expensive, and Would Delay the Winding Down of LBI's Liquidation.

18.    Chambers presents a false choice in asserting that the Trustee is

"substituting" a litigation against the Bonus Claimants for what, according to Chambers, would

be a straightforward litigation with Barclays over Barclays' alleged failure to pay bonuses to the

Bonus Claimants.  (Chambers' Objection ¶ 13.)

19.    The Trustee's litigation with the Bonus Claimants over the extent to which

their claims are allowable and/or should be subordinated is independent of any claim that the

Trustee might bring against Barclays.  In other words, bringing a claim against Barclays would

not eliminate the need to determine the properly allowable amount and priority of the claims

asserted by the Bonus Claimants.

20.    Nor would litigation with Barclays over its alleged failure to pay bonuses

be as straightforward as Chambers suggests.  The claim would be subject to discovery, motion

practice, and potentially a trial before the Bankruptcy Court.  Any decision could be appealed by

right to the District Court, then to the Second Circuit.  Thus, the Trustee could have to wait years

to obtain a final, non-appealable judgment – during which time the LBI estate would face the

costs and delay attendant to litigation.  *See Smith v. Silverman (In re Smith)*, 645 F.3d 186, 190

(2d Cir. 2011) ("the trustee exercised his sound business judgment in declining to assume the

expense of raising and/or pursuing the legal claims identified by the appellants").

**C.**     **The Settlement Is in the Best Interest of LBI's Creditors.**

21.     Chambers again misapprehends the nature of the Settlement Agreement in claiming that he "does not object to the implementation of the [Margin Assets] judgment and concomitant release of funds from the reserve." (Chambers' Objection ¶ 14.)  As discussed above, the Settlement Agreement represents a global resolution of all disputes between the Trustee and Barclays, and the benefits of that global agreement significantly outweigh any benefits of continued litigation with Barclays. (*See supra* ¶¶ 12-17.)

**D.**     **The Release of the Trustee's Potential Bonus**
           **Claim Against Barclays Is Reasonable and Necessary.**

22.     As described above, the release of the Trustee's potential bonus claim against Barclays is a reasonable and necessary component of the global settlement of all pending and potential litigation between the Trustee and Barclays. (*See supra* ¶¶ 9-10, 12-14.)

23.     Chambers complains that the release is "fundamentally unfair" because he and other Bonus Claimants will not be paid "in full" for their claims against LBI. (Chambers' Objection ¶¶ 16-17.)  However, that would have been the case even if the Trustee had pursued, and prevailed on, a claim against Barclays for failure to pay their bonuses.  Chambers has a general unsecured claim against the LBI estate, which the Trustee has reserved for in full even though he believes that the claim is deficient for various reasons, including the fact that 65 percent of Chambers' claim is subject to mandatory subordination. (Supplemental Kiplok Decl. ¶ 12.)  If Chambers' claim is allowed, therefore, he will receive the same pro rata distribution as any other unsecured creditor.

24.     Any recovery from Barclays on a claim by the Trustee for failure to pay bonuses would have accreted to the general estate for the benefit of all general unsecured creditors, not Chambers alone – just like the $610 million that the Trustee is entitled to retain or

collect under the Settlement Agreement will benefit Chambers and all other general unsecured

creditors.

## II.    THE TRUSTEE, BARCLAYS, AND LBIE HAVE AGREED TO REVISE THE SETTLEMENT AGREEMENT AND THE PROPOSED ORDER TO CLARIFY THAT THE SETTLEMENT WILL NOT PREJUDICE THE RIGHTS OF THIRD PARTIES.

25.    After the Trustee filed the Motion, LBIE contacted the Trustee to request

certain revisions to the Settlement Agreement and proposed Order that would clarify the

reservation of LBIE's and Barclays' rights against each other with respect to Barclays' claims

against LBIE and the position between the Trustee and LBIE as a result of the Trustee's

Settlement Agreement with Barclays.  The Trustee, LBIE, and Barclays subsequently agreed to

revise the Settlement Agreement and proposed Order in a manner that is acceptable to each of

them.  In light of these revisions, the Trustee has been authorized to represent that LBIE supports

the settlement.  (Supplemental Kiplok Decl. ¶ 13.)  SIPC likewise supports the settlement.

(Kiplok Decl. ¶ 17.)

26.    Clean and redlined copies of the revised Settlement Agreement are

attached hereto as Exhibits A and B, respectively.  Clean and redlined copies of the revised

proposed Order are attached hereto as Exhibits C and D, respectively.[4]

---

4.    The Bank of Tokyo-Mitsubishi UFJ, Ltd. and Lloyds Bank plc (f/k/a Lloyds TSB Bank plc) (collectively, the "Interpleader Banks") have objected to the Settlement Agreement to the limited extent that it could be interpreted as prejudicing their rights; the Interpleader Banks do not object to the merits of the Settlement Agreement.  Although the Trustee and Barclays do not believe that the Settlement Agreement could be interpreted to prejudice the Interpleader Banks' rights in any way, the Trustee and Barclays are willing to accommodate the banks' concerns.  Accordingly, the Trustee and Barclays have offered to add certain language to the proposed Order that expressly reserves the Interpleader Banks' rights if they agree to withdraw their limited objection.  These negotiations are continuing, and the Trustee and Barclays reserve their right to respond to the banks' limited objection either before or at the hearing if those negotiations should prove unsuccessful.

9

## **CONCLUSION**

27.     Based on the foregoing, the Trustee respectfully requests that the Court

enter the proposed Order substantially in the form attached hereto as Exhibit C, and grant such

additional and further relief as the Court deems just and appropriate.

Dated:     New York, New York
           June 25, 2015

                              HUGHES HUBBARD & REED LLP

                              By:  /s/ William R. Maguire
                                     William R. Maguire

                              Samuel C. McCoubrey
                              One Battery Park Plaza
                              New York, New York 10004
                              Telephone:  (212) 837-6000
                              Facsimile:  (212) 422-4726
                              Email:  bill.maguire@hugheshubbard.com

                              *Attorneys for James W. Giddens, as Trustee*
                              *for the SIPA Liquidation of Lehman*
                              *Brothers Inc.*

**EXHIBIT A**

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

BOIES SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY  10022
Telephone:  (212) 446-2300

*Attorneys for James W. Giddens, as trustee for the SIPA liquidation of Lehman Brothers Inc.*

*Attorneys for Barclays Capital Inc. and Barclays Bank PLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re<br><br>         LEHMAN BROTHERS INC.,<br><br>                                    Debtor. | Case No. 08-01420 (SCC) SIPA |

---

**STIPULATION AND [PROPOSED] ORDER RESOLVING CLAIMS AMONG
THE TRUSTEE, BARCLAYS CAPITAL INC., AND BARCLAYS BANK PLC**

        This Stipulation and Order (the "Stipulation") is entered into on the date hereof by and between James W. Giddens (the "Trustee"), as trustee for the liquidation of Lehman Brothers Inc. ("LBI") under the Securities Investor Protection Act of 1970, as amended ("SIPA"), and Barclays Capital Inc. ("BCI") and Barclays Bank PLC ("Barclays Bank," and together with BCI, "Barclays").

**RECITALS**

        A.        WHEREAS, on September 19, 2008, the United States District Court for the Southern District of New York entered an order commencing a SIPA proceeding with respect to LBI, appointing the Trustee, and removing the case to the United States Bankruptcy Court for the Southern District of New York;

B.     WHEREAS, the Trustee and Barclays have been involved in litigation (the

"Litigation") in connection with (i) the Trustee's Motion for Relief Pursuant to the Sale Order or,

Alternatively, for Certain Limited Relief Under Rule 60(b), dated Sept. 15, 2009, ECF No. 1682,

(ii) the Trustee's adversary complaint and amended adversary complaint against Barclays, dated

Nov. 16, 2008 and July 15, 2011, respectively, Adv. Proc. 09-01732, ECF Nos. 1, 11,

(iii) Barclays' Motion to Enforce the Sale Order and Secure Delivery of All Undelivered Assets,

dated Jan. 29, 2010, ECF No. 2581, and (iv) an interpleader action that was commenced by the

Options Clearing Corporation in December 2008 in the Bankruptcy Court, captioned *The*

*Options Clearing Corporation v. Barclays Capital Inc., et, al.*, No. 08-1759 (Bankr. S.D.N.Y.)

(the "OCC Interpleader Action");

C.     WHEREAS, the Bankruptcy Court's decision in the Litigation has been

the subject of appeals and related proceedings in the District Court, Second Circuit, and United

States Supreme Court, *see In re Lehman Brothers Inc.*, Nos. 11-6052, 11-6053 (S.D.N.Y.); *In re*

*Lehman Brothers Holdings Inc.*, Nos. 12-2322, 12-2328, 12-2657, 12-2933 (2d Cir.); *Giddens v.*

*Barclays Capital Inc.*, No. 14-710 (U.S. Sup. Ct.);

D.     WHEREAS, the District Court entered a Judgment in the Litigation on

July 16, 2012 that awarded the Margin Assets[1] to Barclays;

E.     WHEREAS, the Second Circuit affirmed the District Court's Judgment on

August 5, 2014;

F.     WHEREAS, the United States Supreme Court denied the Trustee's

petition for a writ of certiorari on May 4, 2015;

---

1.    The term "Margin Assets" shall have the meaning attributed to it in the Litigation.

G.    WHEREAS, the Parties desire to resolve all issues between them;

H.    WHEREAS, the payments to be made by the Trustee hereunder reflect the Parties' agreed implementation of the District Court's Judgment and the orders entered in the Litigation, and the Parties have agreed upon a resolution of all other issues between them;

I.    WHEREAS, the payments to be made by the Trustee hereunder are for the completion of delivery of Purchased Assets under the Sale Order under which Barclays was found to be a good faith purchaser entitled to the protection of Section 363(m) of the Bankruptcy Code;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED BY THE PARTIES HERETO AND, UPON COURT APPROVAL, IT IS ORDERED THAT:

## STIPULATION

1.    The Recitals set forth above form an integral part of this Stipulation and are incorporated fully herein.

2.    Barclays represents and warrants that it is as of the date hereof, and will be as of the entry of an Order by the Bankruptcy Court approving this Stipulation (the "Approval Date"), the legal and beneficial owner of (i) any and all claims that were or could have been asserted or raised by BCI and/or Barclays Bank in the Litigation, (ii) without limiting the generality of clause (i), the Margin Assets (to the extent conveyed to BCI and/or Barclays Bank under the Asset Purchase Agreement among Lehman Brothers Holdings Inc., LBI, LB745 LLC, and BCI, dated September 16, 2008, as subsequently amended and clarified), and (iii) the Barclays LBIE ETD Claims (as such term is defined in the Settlement Agreement among the Trustee, Lehman Brothers International (Europe) ("LBIE") and the "Joint Administrators" (as defined therein), which the Court approved on April 16, 2013 (ECF No. 6021) (the "LBIE

Settlement Agreement").  Barclays further  represents and warrants that it has authority to enter

into this Stipulation.  The Trustee represents and warrants that he is as of the date hereof, and

will be as of the Approval Date, the legal and beneficial owner of any and all claims that were or

could have been asserted or raised by the LBI estate and/or the Trustee in the Litigation.  The

Trustee further represents and warrants that he has authority to enter into this Stipulation.

       3.     The Trustee represents and warrants that neither he nor his agents know of

the existence of any Margin Assets that he has not made Barclays and/or its agents aware of.

Barclays represents and warrants that neither Barclays nor its agents know of the existence of

any Margin Assets that it has not made the Trustee and/or his agents aware of.

       4.     Within five days of the Approval Date, the Trustee shall pay Barclays

$506,554,462, which represents (i) the value of the Margin Assets that he has collected from

third parties, less (ii) $80,000,000 (which amount shall be retained by the Trustee).  In addition,

the Trustee shall pay Barclays post-judgment interest on the $506,554,462 at the United States

federal post-judgment interest rate, pursuant to the Judgment entered by the District Court on

July 16, 2012 (the "District Court Judgment," No. 11-CV-6052 (S.D.N.Y.), ECF No. 42; No. 11-

CV-6053 (S.D.N.Y.), ECF No. 39).

       5.     Within five days of the Approval Date, the Trustee shall pay Barclays

$777,000,000 out of the "Dedicated Reserve" (as defined in the LBIE Settlement Agreement)

with respect to the Barclays LBIE ETD Claims.  The Trustee shall not pay any interest on this

amount.  Barclays consents and agrees that upon payment by the Trustee of the $777,000,000, (i)

the maximum aggregate undischarged liability of LBIE and/or the trustee of the UK statutory

trust of client money arising under CASS 7 in relation to LBIE (including the "LBIE Client

Money Trustee," as defined in the LBIE Settlement Agreement) to BCI and/or Barclays Bank,

with respect to the Barclays LBIE ETD Claims shall automatically, unconditionally, and

irrevocably be reduced by $777,000,000 and (ii) Barclays hereby releases LBIE (including the

LBIE Client Money Trustee) with respect to the Barclays LBIE ETD Claims in such amount.

For the avoidance of doubt, nothing herein affects, waives, releases or reduces Barclays' claim

against LBIE to interest relating to the $777,000,000 referenced in this Paragraph (or LBIE's

defenses thereto), and nothing herein affects, waives, releases or reduces Barclays' LBIE ETD

Claim against LBIE with respect to assets (and interest with respect thereto) in excess of the

$777,000,000 referenced in this Paragraph (or LBIE's defenses thereto).

       6.     Except for the reduction in, and release of, the maximum aggregate

undischarged liability of LBIE, and the receipt by Barclays of $777,000,000, with respect to the

Barclays LBIE ETD Claims provided for by the third sentence of paragraph 5 hereof, nothing in

this Stipulation shall act as collateral estoppel, res judicata or judicial estoppel as between

Barclays and LBIE, or prejudice the merits of any rights, defenses or arguments of Barclays or

LBIE against each other.  The Parties intend for LBIE (including the LBIE Client Money

Trustee) to be entitled to rely on the third and fourth sentences of paragraph 5 hereof, this

paragraph 6, and the first sentence of paragraph 16, as a third party beneficiary thereof.

       7.     Prior to making the payments referenced in paragraphs 4 and 5 above, the

LBI estate's reserve for the Litigation stands at approximately $1.868 billion.  Upon receipt of

the payments referenced in paragraphs 4 and 5 above, Barclays agrees that the Trustee may

release to the LBI general estate the entirety of the LBI estate's remaining reserve for the

Litigation.

       8.     From and after the Approval Date, the Trustee shall provide reasonable

cooperation to Barclays, consistent with his duties as Trustee, the District Court Judgment, and

other court orders, in Barclays' efforts to obtain any Margin Assets held by third parties, and any

interest Barclays may pursue against those third parties, including any such assets at LBIE,

approximately $93 million in Margin Assets from Yuanta (formerly known as Polaris),

approximately $4 million in Margin Assets from Samsung, and approximately $8 million in

Margin Assets from Kenanga; provided, however, that nothing herein shall require the Trustee to

take any action that would violate any obligation owed to LBIE (in any capacity) and/or the Joint

Administrators under the LBIE Settlement Agreement.  Notwithstanding any other provision of

this Stipulation, the Trustee will promptly pay to Barclays, and make no claim on, any such

Margin Assets that come into the Trustee's possession, custody, or control after the date that the

parties execute this Stipulation.  For the avoidance of doubt, while the approximately $4 million

in assets at Samsung that were held in LBI customer accounts constitute Margin Assets that

Barclays is entitled to collect and retain, the Trustee shall be entitled to collect and retain the

approximately $5 million in assets at Samsung that were held in LBI house account numbers

01532-037, 01532-060, 01532-367, 01532-375, and 01532-391.

        9.      Within five days of the Approval Date, the Trustee shall withdraw any

claims (including, without limitation, any statements of claim, cross-claims, or third party

claims) that he has asserted in the OCC Interpleader Action.  Furthermore, following the

Approval Date and upon completing a reconciliation of the proper amount of their claims, the

Trustee shall allow general unsecured creditor claim no. 4851, asserted by Bank of Tokyo

Mitsubishi ("BTM"), and general unsecured creditor claim no. 5452, asserted by Lloyds TSB

Bank PLC ("Lloyds"), in their reconciled amounts.  In the event that BTM or Lloyds disputes the

Trustee's reconciliation of their claims, the Trustee reserves all of his rights with respect to the

properly allowable amount of these claims, provided that in no event shall the Trustee deny all or

any portion of the TSB or Lloyds claims on the grounds that – or otherwise contend or take the

position that – Barclays bears responsibility for any portion of the reimbursement or other

obligations that underlie those claims.

10.    Barclays shall provide reasonable cooperation to the Trustee in collecting

approximately $36 million in assets held by the Depository Trust & Clearing Corporation to the

extent (and only to the extent) those assets relate to the following securities:

| CUSIP | QUANTITY |
|---|---|
| 83050G6Q7 | 8,300,000 |
| 89380EJQ6 | 219,000 |
| 86958TJS7 | 900,000 |
| 8265Q0SX1 | 22,500,000 |

11.    **Mutual General Releases.**    Upon receipt by Barclays of the payments

referenced in paragraphs 4 and 5 above, each of BCI and Barclays Bank, on the one hand, and

the Trustee and the LBI estate, on the other hand, unconditionally and irrevocably release the

other from any claims against the other that it may have ever had prior to the Approval Date,

may have at the Approval Date, or can, shall, or may have after the Approval Date, in each case,

for, upon, relating to, or otherwise in respect of any matter, cause, or thing whatsoever from the

beginning of the world to the Approval Date.  This paragraph shall be given full force and effect

according to each and all of its express terms and provisions, including without limitation in

relation to unknown or unsuspected claims and in relation to unknown or unsuspected facts or

circumstances that might give rise to a claim (notwithstanding any state statute that expressly

limits the effectiveness of a general release of unknown, unsuspected, or unanticipated claims).

Notwithstanding the preceding two sentences, however:

(i)    Barclays does not release its rights under Paragraph 6(b) of the  June 18, 2014

Stipulation and Order Regarding Customer and Administrative Expense Claims of Barclays

Capital Inc. (ECF No. 9244) (the "Administrative Claim Stipulation") with respect to the transfer

the securities identified on Schedule 1 of the Administrative Claim Stipulation with the notation

"(b)" (the "Peruvian Securities").

(ii)    Barclays does not release its rights under Paragraph 7 of the Administrative Claim

Stipulation with respect to the transfer to Barclays of the exchange seats and shares, and

the FINEX Permits, listed on Exhibit A to the "Administrative Claim" (as defined in the

Administrative Claim Stipulation).

(iii)    The Parties agree that the following continuing agreement provisions (or entire

agreements as noted) will remain in full force and effect and will be enforceable by the Parties

thereto:  APA Section 2.6(c) (Further Conveyances and Assumptions); APA Section 8.6(b)

(Confidentiality); APA Section 8.7 (Preservation of Records) together with Clarification Letter

Paragraph 15 (Records);  APA Section 8.9 (Trademark License) together with Clarification

Letter Paragraph 5 (License); APA Section 8.10 (Use of Purchased Intellectual Property); TSA

Amendment No. 1 between Barclays, the Trustee and LBHI, dated as of February 23, 2011 (for

the avoidance of doubt, however, the reference to the APA in Paragraph 8 thereof shall be

deemed to be limited to those sections of the APA previously specified in this paragraph); and

Section 2.07 of the LBI TSA.  In addition, but solely with respect to the provisions of the APA

and Clarification Letter previously specified in this paragraph or specified in clause (i) of

paragraph 11(iv) below, APA Article XIII (Miscellaneous) and the final paragraph of the

Clarification Letter will remain effective and enforceable.

(iv)    The Parties agree that the following continuing agreement provisions will remain

effective and enforceable by the Parties thereto solely with respect to the Purchased Intellectual

Property (as defined in the APA):  (i) APA Section 2.6(b) (Further Conveyances and

Assumptions) and APA Section 8.5(b) (Further Assurances); and (ii)(x) Article 3 of the

Intellectual Property Assignment Agreement among Lehman Brothers Holding Inc., Lehman

Brothers Inc., LB 745 LLC and Barclays Capital Inc., dated September 22, 2008 (the

"Assignment Agreement"), and (y) to the extent relevant to said Article 3, Article 4 of the

Assignment Agreement; provided, however, that the only action that the Trustee shall be

obligated to take pursuant to any of the provisions previously specified in this paragraph shall be

to execute and notarize any assignment or other document with respect to Purchased Intellectual

Property (including with respect to the trademarks and countries listed on Schedule 3) otherwise

required to be executed or notarized by the Trustee pursuant to such provisions that Barclays

prepares (at its sole cost) and specifically submits to the Trustee for signature by an authorized

signatory on behalf of LBI and the Trustee.  By providing any such document for signature,

Barclays will be deemed to have represented and warranted that the document merely effects or

enables the transfer or recordation of intellectual property rights sold under the APA, and

Barclays acknowledges that the Trustee will rely solely on this representation and warranty to

execute and deliver such document to Barclays.

(v)    Barclays does not release any future claims that may accrue after the date of this

Stipulation based upon any Misdirected Payment[2] that is actually received by the Trustee after

such date, but that should have been directed to Barclays for its own account or for the account

of its customers.

---

2.    A "Misdirected Payment" is any Distribution on (i) a security that was or is to be transferred to Barclays under
the PIM Settlement or the Administrative Claim Stipulation, or (ii) any other security that was actually received
by Barclays prior to the date of the Administrative Claim Stipulation (either for Barclays' own account or for
the account of former LBI customers who are now customers of Barclays).

(vi)     The Parties do not release:  (a) any rights of Barclays or Barclays' Affiliates with respect to duly filed claims in LBI's liquidation proceeding that they have purchased, or may in the future purchase, and that originally were filed by a person or entity other than Barclays or Barclays' Affiliates; (b) any rights of Barclays' Affiliates with respect to claims that they previously have duly filed in LBI's liquidation proceeding; and (c) any rights of the Trustee with respect to the claims referenced in clauses (a) and (b).

(vii)    The Trustee releases any claim he might have against Barclays relating to Barclays' alleged failure to pay compensation, including bonuses and severance, to former LBI employees who have asserted claims for such compensation in the LBI liquidation, only as provided by paragraph 14 of this stipulation.

12.     For the avoidance of doubt, the mutual general release in paragraph 11 hereof includes a release by each of BCI and Barclays Bank, on the one hand, and the Trustee and the LBI estate, on the other hand, of (i) any claims against the other that were or could have been asserted or raised in the Litigation, and (ii) any claims against the other that it may have ever had prior to the Approval Date, may have at the Approval Date, or can, shall, or may have after the Approval Date, in each case to any extent for, upon, relating to, or otherwise in respect of the Margin Assets (including without limitation any interest related thereto).  The Trustee also agrees not to appeal or otherwise challenge court rulings concerning the Margin Assets that have been entered prior to or as of the date hereof.

13.     For the further avoidance of doubt, any claims with respect to which Barclays' or the Trustee's rights are reserved hereunder will be subject to whatever otherwise applicable limitations, if any, that any final orders of the Bankruptcy Court (subject to appellate

rights) may provide as to claims asserted against the LBI estate or Barclays, respectively, including, without limitation, limiting the reserves that may be available to such claims.

14.    As of the date of a Final Order[3] approving this Stipulation, the Trustee unconditionally and irrevocably releases any claims against Barclays relating to Barclays' alleged failure to pay compensation, including bonuses and severance, to former LBI employees who have asserted claims for such compensation in the LBI liquidation.

15.    As of the Approval Date, each Party shall be relieved of any obligation to maintain a litigation hold in connection with any claim that was or could have been brought by any other Party.

16.    This Stipulation shall not be admissible in any litigation or other proceeding for any purpose other than enforcing its terms, provided that Barclays and/or LBIE may refer to or rely on this Stipulation, and it shall be admissible, in any litigation or other proceeding relating to Barclays' pursuit of and/or LBIE's defense against the claims referenced in paragraphs 5, 6, and 8 above.  For the avoidance of doubt, nothing in this Stipulation is intended to waive, release, or otherwise preclude either Party from enforcing its rights under this Stipulation, and each Party agrees that

---

3.    A "Final Order" shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket of such court, the operation or effect of which has not been stayed, reversed, or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending, *provided*, *however*, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rule of Civil Procedure, Bankruptcy Rule 9024, any similar local bankruptcy rule or any similar state statute or rule may be filed with respect to such order.

the other Party may take any action available at law or in equity to enforce the terms of this Stipulation.

17.     The Trustee agrees to promptly seek, and Barclays agrees to support, approval of this Stipulation in the Bankruptcy Court and affirmation of that approval through any and all appeals such that a Final Order approving this Stipulation is obtained as promptly as possible.

18.     No amendment, waiver, or modification of any provision of this Stipulation shall be effective unless the same shall be in writing and signed by the Parties.  The Parties agree that they shall execute such further documents, and take such further reasonable actions, as may be required to effect the terms of this Stipulation.

19.     This Stipulation may be signed in counterparts which, when taken as a whole, shall constitute one and the same document; and faxed or electronic signatures shall be deemed originals.

20.     Each individual signing this Stipulation on behalf of any Party hereto acknowledges and, with respect to his or her own signature below, warrants, and represents that he or she is authorized to execute this Stipulation in his or her representative capacity with binding effect, as reflected below and on behalf of the Party indicated.

21.     This Stipulation shall be governed by and shall be interpreted in accordance with the laws of the State of New York, except to the extent that the Bankruptcy Code or SIPA applies, without regard to New York's rules governing conflict of laws.

22.    The Bankruptcy Court shall have exclusive jurisdiction to interpret and

enforce this Stipulation.  The Parties consent to the jurisdiction of the Bankruptcy Court with

respect to the interpretation and enforcement of this Stipulation.

Dated: New York, New York
       June 5, 2015

HUGHES HUBBARD & REED LLP              BOIES SCHILLER & FLEXNER LLP


By:    _/s/ William R. Maguire_____        By:    _/s/ Jonathan D. Schiller___
       William R. Maguire                         Jonathan D. Schiller
       Samuel C. McCoubrey                        Hamish P.M. Hume
       One Battery Park Plaza                      Tricia J. Bloomer
       New York, New York 10004                    W. Todd Thomas
       Telephone:  (212) 837-6000                  575 Lexington Avenue
       Facsimile:  (212) 422-4726                  New York, NY  10022
                                                   Telephone:  (212) 446-2300


       *Attorneys for James W. Giddens,*           *Attorneys for Barclays Capital Inc.*
       *as trustee for the SIPA liquidation*       *and Barclays Bank PLC*
       *of Lehman Brothers Inc.*



**SO ORDERED** this ___ day of ____ 2015


_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

*Attorneys for James W. Giddens, as trustee for
the SIPA liquidation of Lehman Brothers Inc.*

BOIES SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY  10022
Telephone:  (212) 446-2300

*Attorneys for Barclays Capital Inc. and
Barclays Bank PLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re<br><br>　　　　LEHMAN BROTHERS INC.,<br><br>　　　　　　　　　　　　　　　　　　Debtor. | Case No. 08-01420 (SCC) SIPA |

**STIPULATION AND [PROPOSED] ORDER RESOLVING CLAIMS AMONG**
**THE TRUSTEE, BARCLAYS CAPITAL INC., AND BARCLAYS BANK PLC**

　　　　　　　This Stipulation and Order (the "Stipulation") is entered into on the date hereof by

and between James W. Giddens (the "Trustee"), as trustee for the liquidation of Lehman

Brothers Inc. ("LBI") under the Securities Investor Protection Act of 1970, as amended

("SIPA"), and Barclays Capital Inc. ("BCI") and Barclays Bank PLC ("Barclays Bank," and

together with BCI, "Barclays").

**RECITALS**

　　　　　　　A.　　　WHEREAS, on September 19, 2008, the United States District Court for

the Southern District of New York entered an order commencing a SIPA proceeding with respect

to LBI, appointing the Trustee, and removing the case to the United States Bankruptcy Court for

the Southern District of New York;

B.    WHEREAS, the Trustee and Barclays have been involved in litigation (the "Litigation") in connection with (i) the Trustee's Motion for Relief Pursuant to the Sale Order or, Alternatively, for Certain Limited Relief Under Rule 60(b), dated Sept. 15, 2009, ECF No. 1682, (ii) the Trustee's adversary complaint and amended adversary complaint against Barclays, dated Nov. 16, 2008 and July 15, 2011, respectively, Adv. Proc. 09-01732, ECF Nos. 1, 11, (iii) Barclays' Motion to Enforce the Sale Order and Secure Delivery of All Undelivered Assets, dated Jan. 29, 2010, ECF No. 2581, and (iv) an interpleader action that was commenced by the Options Clearing Corporation in December 2008 in the Bankruptcy Court, captioned *The Options Clearing Corporation v. Barclays Capital Inc., et, al.*, No. 08-1759 (Bankr. S.D.N.Y.) (the "OCC Interpleader Action");

C.    WHEREAS, the Bankruptcy Court's decision in the Litigation has been the subject of appeals and related proceedings in the District Court, Second Circuit, and United States Supreme Court, *see In re Lehman Brothers Inc.*, Nos. 11-6052, 11-6053 (S.D.N.Y.); *In re Lehman Brothers Holdings Inc.*, Nos. 12-2322, 12-2328, 12-2657, 12-2933 (2d Cir.); *Giddens v. Barclays Capital Inc.*, No. 14-710 (U.S. Sup. Ct.);

D.    WHEREAS, the District Court entered a Judgment in the Litigation on July 16, 2012 that awarded the Margin Assets[1] to Barclays;

E.    WHEREAS, the Second Circuit affirmed the District Court's Judgment on August 5, 2014;

F.    WHEREAS, the United States Supreme Court denied the Trustee's petition for a writ of certiorari on May 4, 2015;

---

1.    The term "Margin Assets" shall have the meaning attributed to it in the Litigation.

G.    WHEREAS, the Parties desire to resolve all issues between them;

H.    WHEREAS, the payments to be made by the Trustee hereunder reflect the

Parties' agreed implementation of the District Court's Judgment and the orders entered in the

Litigation, and the Parties have agreed upon a resolution of all other issues between them;

I.    WHEREAS, the payments to be made by the Trustee hereunder are for the

completion of delivery of Purchased Assets under the Sale Order under which Barclays was

found to be a good faith purchaser entitled to the protection of Section 363(m) of the Bankruptcy

Code;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED BY THE

PARTIES HERETO AND, UPON COURT APPROVAL, IT IS ORDERED THAT:

## STIPULATION

1.    The Recitals set forth above form an integral part of this Stipulation and

are incorporated fully herein.

2.    Barclays represents and warrants that it is as of the date hereof, and will be

as of the entry of an Order by the Bankruptcy Court approving this Stipulation (the "Approval

Date"), the legal and beneficial owner of (i) any and all claims that were or could have been

asserted or raised by BCI and/or Barclays Bank in the Litigation, (ii) without limiting the

generality of clause (i), the Margin Assets (to the extent conveyed to BCI and/or Barclays Bank

under the Asset Purchase Agreement among Lehman Brothers Holdings Inc., LBI, LB745 LLC,

and BCI, dated September 16, 2008, as subsequently amended and clarified), and (iii) the

Barclays LBIE ETD Claims (as such term is defined in the Settlement Agreement among the

Trustee, Lehman Brothers International (Europe) ("LBIE") and the "Joint Administrators" (as

defined therein), which the Court approved on April 16, 2013 (ECF No. 6021) (the "LBIE

Settlement Agreement").  Barclays further  represents and warrants that it has authority to enter

into this Stipulation.  The Trustee represents and warrants that he is as of the date hereof, and

will be as of the Approval Date, the legal and beneficial owner of any and all claims that were or

could have been asserted or raised by the LBI estate and/or the Trustee in the Litigation.  The

Trustee further represents and warrants that he has authority to enter into this Stipulation.

3.     The Trustee represents and warrants that neither he nor his agents know of

the existence of any Margin Assets that he has not made Barclays and/or its agents aware of.

Barclays represents and warrants that neither Barclays nor its agents know of the existence of

any Margin Assets that it has not made the Trustee and/or his agents aware of.

4.     Within five days of the Approval Date, the Trustee shall pay Barclays

$506,554,462, which represents (i) the value of the Margin Assets that he has collected from

third parties, less (ii) $80,000,000 (which amount shall be retained by the Trustee).  In addition,

the Trustee shall pay Barclays post-judgment interest on the $506,554,462 at the United States

federal post-judgment interest rate, pursuant to the Judgment entered by the District Court on

July 16, 2012 (the "District Court Judgment," No. 11-CV-6052 (S.D.N.Y.), ECF No. 42; No. 11-

CV-6053 (S.D.N.Y.), ECF No. 39).

5.     Within five days of the Approval Date, the Trustee shall pay Barclays

$777,000,000 out of the "Dedicated Reserve" (as defined in the LBIE Settlement Agreement)

with respect to the Barclays LBIE ETD Claims.  The Trustee shall not pay any interest on this

amount.  Barclays consents and agrees that upon payment by the Trustee of the $777,000,000, (i)

the maximum aggregate ~~amount that BCI and/or Barclays Bank may recover from~~undischarged

liability of LBIE~~,~~ and/or the trustee of the UK statutory trust of client money arising under CASS

7 in relation to LBIE (including the "LBIE Client Money Trustee," as defined in the LBIE

Settlement Agreement),) to BCI and/or Barclays Bank, with respect to the Barclays LBIE ETD

Claims shall automatically, unconditionally, and irrevocably be reduced by $777,000,000. and

(ii) Barclays hereby releases LBIE (including the LBIE Client Money Trustee) with respect to

the Barclays LBIE ETD Claims in such amount.  For the avoidance of doubt, nothing herein

affects, waives, releases or reduces Barclays' claim against LBIE to interest relating to the

$777,000,000 referenced in this Paragraph (or LBIE's defenses thereto), and nothing herein

affects, waives, releases or reduces Barclays' LBIE ETD Claim against LBIE with respect to

assets (and interest with respect thereto) in excess of the $777,000,000 referenced in this

Paragraph (or LBIE's defenses thereto).

6.    Subject toExcept for the reduction in, and release of, the maximum

aggregate amount of Barclays' recoveryundischarged liability of LBIE, and the receipt by

Barclays of $777,000,000, with respect to the Barclays LBIE ETD Claims provided for by the

third sentence of paragraph 5 hereof, and subject to the releases in paragraphs 11 and 12 hereof,

nothing in this Stipulation affects Barclays' claim against LBIE to interest fromshall act as

collateral estoppel, res judicata or judicial estoppel as between Barclays and LBIE relating to, or

prejudice the $777,000,000 referenced inmerits of any rights, defenses or arguments of Barclays

or LBIE against each other.  The Parties intend for LBIE (including the LBIE Client Money

Trustee) to be entitled to rely on the third and fourth sentences of paragraph 5 or any other

balances (or interest relating thereto) held by LBIEhereof, this paragraph 6, and the first sentence

of paragraph 16, as a third party beneficiary thereof.

7.    Prior to making the payments referenced in paragraphs 4 and 5 above, the

LBI estate's reserve for the Litigation stands at approximately $1.868 billion.  Upon receipt of

the payments referenced in paragraphs 4 and 5 above, Barclays agrees that the Trustee may

release to the LBI general estate the entirety of the LBI estate's remaining reserve for the

Litigation.

8.    From and after the Approval Date, the Trustee shall provide reasonable

cooperation to Barclays, consistent with his duties as Trustee, the District Court Judgment, and

other court orders, in Barclays' efforts to obtain any Margin Assets held by third parties, and any

interest Barclays may pursue against those third parties, including any such assets at LBIE,

approximately $93 million in Margin Assets from Yuanta (formerly known as Polaris),

approximately $4 million in Margin Assets from Samsung, and approximately $8 million in

Margin Assets from Kenanga; provided, however, that nothing herein shall require the Trustee to

take any action that would violate any obligation owed to LBIE (in any capacity) and/or the Joint

Administrators under the LBIE Settlement Agreement.  Notwithstanding any other provision of

this Stipulation, the Trustee will promptly pay to Barclays, and make no claim on, any such

Margin Assets that come into the Trustee's possession, custody, or control after the date that the

parties execute this Stipulation.  For the avoidance of doubt, while the approximately $4 million

in assets at Samsung that were held in LBI customer accounts constitute Margin Assets that

Barclays is entitled to collect and retain, the Trustee shall be entitled to collect and retain the

approximately $5 million in assets at Samsung that were held in LBI house account numbers

01532-037, 01532-060, 01532-367, 01532-375, and 01532-391.

9.    Within five days of the Approval Date, the Trustee shall withdraw any

claims (including, without limitation, any statements of claim, cross-claims, or third party

claims) that he has asserted in the OCC Interpleader Action.  Furthermore, following the

Approval Date and upon completing a reconciliation of the proper amount of their claims, the

Trustee shall allow general unsecured creditor claim no. 4851, asserted by Bank of Tokyo

Mitsubishi ("BTM"), and general unsecured creditor claim no. 5452, asserted by Lloyds TSB

Bank PLC ("Lloyds"), in their reconciled amounts.  In the event that BTM or Lloyds disputes the

Trustee's reconciliation of their claims, the Trustee reserves all of his rights with respect to the

properly allowable amount of these claims, provided that in no event shall the Trustee deny all or

any portion of the TSB or Lloyds claims on the grounds that – or otherwise contend or take the

position that – Barclays bears responsibility for any portion of the reimbursement or other

obligations that underlie those claims.

10.    Barclays shall provide reasonable cooperation to the Trustee in collecting

approximately $36 million in assets held by the Depository Trust & Clearing Corporation to the

extent (and only to the extent) those assets relate to the following securities:

| CUSIP | QUANTITY |
|-------|----------|
| 83050G6Q7 | 8,300,000 |
| 89380EJQ6 | 219,000 |
| 86958TJS7 | 900,000 |
| 8265Q0SX1 | 22,500,000 |

11.    **Mutual General Releases.**   Upon receipt by Barclays of the payments

referenced in paragraphs 4 and 5 above, each of BCI and Barclays Bank, on the one hand, and

the Trustee and the LBI estate, on the other hand, unconditionally and irrevocably release the

other from any claims against the other that it may have ever had prior to the Approval Date,

may have at the Approval Date, or can, shall, or may have after the Approval Date, in each case,

for, upon, relating to, or otherwise in respect of any matter, cause, or thing whatsoever from the

beginning of the world to the Approval Date.  This paragraph shall be given full force and effect

according to each and all of its express terms and provisions, including without limitation in

relation to unknown or unsuspected claims and in relation to unknown or unsuspected facts or

circumstances that might give rise to a claim (notwithstanding any state statute that expressly

limits the effectiveness of a general release of unknown, unsuspected, or unanticipated claims).

Notwithstanding the preceding two sentences, however:

(i)      Barclays does not release its rights under Paragraph 6(b) of the  June 18, 2014

Stipulation and Order Regarding Customer and Administrative Expense Claims of Barclays

Capital Inc. (ECF No. 9244) (the "Administrative Claim Stipulation") with respect to the transfer

the securities identified on Schedule 1 of the Administrative Claim Stipulation with the notation

"(b)" (the "Peruvian Securities").

(ii)     Barclays does not release its rights under Paragraph 7 of the Administrative Claim

Stipulation with respect to the transfer to Barclays of the exchange seats and shares, and the

FINEX Permits, listed on Exhibit A to the "Administrative Claim" (as defined in the

Administrative Claim Stipulation).

(iii)    The Parties agree that the following continuing agreement provisions (or entire

agreements as noted) will remain in full force and effect and will be enforceable by the Parties

thereto:  APA Section 2.6(c) (Further Conveyances and Assumptions); APA Section 8.6(b)

(Confidentiality); APA Section 8.7 (Preservation of Records) together with Clarification Letter

Paragraph 15 (Records);  APA Section 8.9 (Trademark License) together with Clarification

Letter Paragraph 5 (License); APA Section 8.10 (Use of Purchased Intellectual Property); TSA

Amendment No. 1 between Barclays, the Trustee and LBHI, dated as of February 23, 2011 (for

the avoidance of doubt, however, the reference to the APA in Paragraph 8 thereof shall be

deemed to be limited to those sections of the APA previously specified in this paragraph); and

Section 2.07 of the LBI TSA.  In addition, but solely with respect to the provisions of the APA

and Clarification Letter previously specified in this paragraph or specified in clause (i) of

paragraph 11(iv) below, APA Article XIII (Miscellaneous) and the final paragraph of the

Clarification Letter will remain effective and enforceable.

(iv)    The Parties agree that the following continuing agreement provisions will remain

effective and enforceable by the Parties thereto solely with respect to the Purchased Intellectual

Property (as defined in the APA):  (i) APA Section 2.6(b) (Further Conveyances and

Assumptions) and APA Section 8.5(b) (Further Assurances); and (ii)(x) Article 3 of the

Intellectual Property Assignment Agreement among Lehman Brothers Holding Inc., Lehman

Brothers Inc., LB 745 LLC and Barclays Capital Inc., dated September 22, 2008 (the

"Assignment Agreement"), and (y) to the extent relevant to said Article 3, Article 4 of the

Assignment Agreement; provided, however, that the only action that the Trustee shall be

obligated to take pursuant to any of the provisions previously specified in this paragraph shall be

to execute and notarize any assignment or other document with respect to Purchased Intellectual

Property (including with respect to the trademarks and countries listed on Schedule 3) otherwise

required to be executed or notarized by the Trustee pursuant to such provisions that Barclays

prepares (at its sole cost) and specifically submits to the Trustee for signature by an authorized

signatory on behalf of LBI and the Trustee.  By providing any such document for signature,

Barclays will be deemed to have represented and warranted that the document merely effects or

enables the transfer or recordation of intellectual property rights sold under the APA, and

Barclays acknowledges that the Trustee will rely solely on this representation and warranty to

execute and deliver such document to Barclays.

(v)    Barclays does not release any future claims that may accrue after the date of this Stipulation based upon any Misdirected Payment[2] that is actually received by the Trustee after such date, but that should have been directed to Barclays for its own account or for the account of its customers.

(vi)    The Parties do not release:  (a) any rights of Barclays or Barclays' Affiliates with respect to duly filed claims in LBI's liquidation proceeding that they have purchased, or may in the future purchase, and that originally were filed by a person or entity other than Barclays or Barclays' Affiliates; (b) any rights of Barclays' Affiliates with respect to claims that they previously have duly filed in LBI's liquidation proceeding; and (c) any rights of the Trustee with respect to the claims referenced in clauses (a) and (b).

(vii)    The Trustee releases any claim he might have against Barclays relating to Barclays' alleged failure to pay compensation, including bonuses and severance, to former LBI employees who have asserted claims for such compensation in the LBI liquidation, only as provided by paragraph 14 of this stipulation.

12.    For the avoidance of doubt, the mutual general release in paragraph 11 hereof includes a release by each of BCI and Barclays Bank, on the one hand, and the Trustee and the LBI estate, on the other hand, of (i) any claims against the other that were or could have been asserted or raised in the Litigation, and (ii) any claims against the other that it may have ever had prior to the Approval Date, may have at the Approval Date, or can, shall, or may have after the Approval Date, in each case to any extent for, upon, relating to, or otherwise in respect

---

2.    A "Misdirected Payment" is any Distribution on (i) a security that was or is to be transferred to Barclays under the PIM Settlement or the Administrative Claim Stipulation, or (ii) any other security that was actually received by Barclays prior to the date of the Administrative Claim Stipulation (either for Barclays' own account or for the account of former LBI customers who are now customers of Barclays).

of the Margin Assets (including without limitation any interest related thereto). The Trustee also agrees not to appeal or otherwise challenge court rulings concerning the Margin Assets that have been entered prior to or as of the date hereof.

13.    For the further avoidance of doubt, any claims with respect to which Barclays' or the Trustee's rights are reserved hereunder will be subject to whatever otherwise applicable limitations, if any, that any final orders of the Bankruptcy Court (subject to appellate rights) may provide as to claims asserted against the LBI estate or Barclays, respectively, including, without limitation, limiting the reserves that may be available to such claims.

14.    As of the date of a Final Order[3] approving this Stipulation, the Trustee unconditionally and irrevocably releases any claims against Barclays relating to Barclays' alleged failure to pay compensation, including bonuses and severance, to former LBI employees who have asserted claims for such compensation in the LBI liquidation.

15.    As of the Approval Date, each Party shall be relieved of any obligation to maintain a litigation hold in connection with any claim that was or could have been brought by any other Party.

16.    This Stipulation shall not be admissible in any litigation or other proceeding for any purpose other than enforcing its terms, provided that Barclays and/or LBIE may refer to or rely on this Stipulation, and it shall be admissible, in any litigation or other

---

3.    A "Final Order" shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket of such court, the operation or effect of which has not been stayed, reversed, or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending, *provided*, *however*, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rule of Civil Procedure, Bankruptcy Rule 9024, any similar local bankruptcy rule or any similar state statute or rule may be filed with respect to such order.

proceeding relating to Barclays' pursuit of and/or LBIE's defense against the claims referenced in ~~paragraph~~paragraphs 5, 6, and 8 above.  For the avoidance of doubt, nothing in this Stipulation is intended to waive, release, or otherwise preclude either Party from enforcing its rights under this Stipulation, and each Party agrees that the other Party may take any action available at law or in equity to enforce the terms of this Stipulation.

17.    The Trustee agrees to promptly seek, and Barclays agrees to support, approval of this Stipulation in the Bankruptcy Court and affirmance of that approval through any and all appeals such that a Final Order approving this Stipulation is obtained as promptly as possible.

18.    No amendment, waiver, or modification of any provision of this Stipulation shall be effective unless the same shall be in writing and signed by the Parties.  The Parties agree that they shall execute such further documents, and take such further reasonable actions, as may be required to effect the terms of this Stipulation.

19.    This Stipulation may be signed in counterparts which, when taken as a whole, shall constitute one and the same document; and faxed or electronic signatures shall be deemed originals.

20.    Each individual signing this Stipulation on behalf of any Party hereto acknowledges and, with respect to his or her own signature below, warrants, and represents that he or she is authorized to execute this Stipulation in his or her representative capacity with binding effect, as reflected below and on behalf of the Party indicated.

21.    This Stipulation shall be governed by and shall be interpreted in accordance with the laws of the State of New York, except to the extent that the Bankruptcy Code or SIPA applies, without regard to New York's rules governing conflict of laws.

22.    The Bankruptcy Court shall have exclusive jurisdiction to interpret and

enforce this Stipulation.  The Parties consent to the jurisdiction of the Bankruptcy Court with

respect to the interpretation and enforcement of this Stipulation.

Dated: New York, New York
       June 5, 2015

HUGHES HUBBARD & REED LLP                BOIES SCHILLER & FLEXNER LLP


By:    _/s/_____             By:    _/s/_____
       William R. Maguire                Jonathan D. Schiller
       Samuel C. McCoubrey                Hamish P.M. Hume
       One Battery Park Plaza             Tricia J. Bloomer
       New York, New York 10004           W. Todd Thomas
       Telephone:  (212) 837-6000         575 Lexington Avenue
       Facsimile:  (212) 422-4726         New York, NY  10022
                                          Telephone:  (212) 446-2300


       *Attorneys for James W. Giddens,*       *Attorneys for Barclays Capital Inc.*
       *as trustee for the SIPA liquidation*   *and Barclays Bank PLC*
       *of Lehman Brothers Inc.*



**SO ORDERED** this ___ day of ____ 2015


_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

LEHMAN BROTHERS INC.,

Debtor.

Case No. 08-01420 (SCC) SIPA

### [PROPOSED] ORDER APPROVING THE SETTLEMENT AGREEMENT AMONG THE TRUSTEE, BARCLAYS CAPITAL INC., AND BARCLAYS BANK PLC

**WHEREAS**, on June 5, 2015 James W. Giddens (the "Trustee"), as Trustee for

the liquidation of the business of Lehman Brothers Inc. ("LBI"), filed a motion (the "Motion")[1]

for entry of an order pursuant to Federal Rule of Bankruptcy Procedure 9019 approving the

Settlement Agreement between the Trustee and Barclays Capital Inc. and Barclays Bank PLC

(together, "Barclays");

**WHEREAS**, the Trustee and Barclays have been involved in litigation (the

"Litigation") in connection with (i) the Trustee's Motion for Relief Pursuant to the Sale Order or,

Alternatively, for Certain Limited Relief Under Rule 60(b), dated Sept. 15, 2009, ECF No. 1682,

(ii) the Trustee's adversary complaint and amended adversary complaint against Barclays, dated

Nov. 16, 2008 and July 15, 2011, respectively, Adv. Proc. 09-01732, ECF Nos. 1, 11,

(iii) Barclays' Motion to Enforce the Sale Order and Secure Delivery of All Undelivered Assets,

dated Jan. 29, 2010, ECF No. 2581, and (iv) an interpleader action that was commenced by the

Options Clearing Corporation in December 2008 in the Bankruptcy Court, captioned *The*

---

1. Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

*Options Clearing Corporation v. Barclays Capital Inc., et, al.*, No. 08-1759 (Bankr. S.D.N.Y.)

(the "OCC Interpleader Action");

WHEREAS, the Bankruptcy Court's decision in the Litigation has been the

subject of appeals and related proceedings in the District Court, Second Circuit, and United

States Supreme Court, *see In re Lehman Brothers Inc.*, Nos. 11-6052, 11-6053 (S.D.N.Y.); *In re*

*Lehman Brothers Holdings Inc.*, Nos. 12-2322, 12-2328, 12-2657, 12-2933 (2d Cir.); *Giddens v.*

*Barclays Capital Inc.*, No. 14-710 (U.S. Sup. Ct.);

WHEREAS, the District Court entered a Judgment in the Litigation on July 16,

2012 that awarded the Margin Assets[2] to Barclays;

WHEREAS, the Second Circuit affirmed the District Court's Judgment on

August 5, 2014;

WHEREAS, the United States Supreme Court denied the Trustee's petition for a

writ of certiorari on May 4, 2015;

WHEREAS, the Trustee and Barclays agreed in the Settlement Agreement that,

to implement the District Court's Judgment and the orders entered in the Litigation, the Trustee

would pay Barclays (i) $506,554,462 and post-judgment interest thereon at the United States

federal post-judgment interest rate, pursuant to the District Court's Judgment, and

(ii) $777,000,000 out of the Dedicated Reserve with respect to the Barclays LBIE ETD Claims;

WHEREAS, the Trustee and Barclays agreed in the Settlement Agreement that

upon payment by the Trustee of the $777,000,000 to Barclays (i) the maximum aggregate

undischarged liability of Lehman Brothers International (Europe) (in administration) ("LBIE")

and/or the trustee of the UK statutory trust of client money arising under CASS 7 in relation to

---

2.    The term "Margin Assets" shall have the meaning attributed to it in the Litigation.

LBIE (including the "LBIE Client Money Trustee," as defined in the LBIE Agreement) to

Barclays with respect to the Barclays LBIE ETD Claims shall automatically, unconditionally,

and irrevocably be reduced by $777,000,000; and (ii) Barclays shall release LBIE (including the

LBIE Client Money Trustee) with respect to the Barclays LBIE ETD Claims in such amount;

      **WHEREAS**, in furtherance of the Settlement Agreement between the Trustee and

Barclays, the Trustee, on the one hand, and LBIE and the Joint Administrators, on the other

hand, acknowledged and agreed that the Trustee's payment of the $777,000,000 to Barclays

pursuant thereto would reduce the Required Reserve Amount (as defined in the LBIE

Agreement) to zero and the date of such payment shall constitute the Dedicated Reserve

Termination Date (as defined in the LBIE Agreement), and that, upon the occurrence of the

Dedicated Reserve Termination Date, all of the Trustee's obligations to LBIE (in any capacity,

including without limitation as LBIE Client Money Trustee) and/or the Joint Administrators, and

all obligations of LBIE (in any capacity, including without limitation as LBIE Client Money

Trustee) and/or the Joint Administrators to the Trustee, under Article X of the LBIE Agreement

would be deemed to be fully discharged and released;

      **WHEREAS,** the Trustee and Barclays agreed in the Settlement Agreement that,

to implement the District Court's Judgment and the orders entered in the Litigation, the Trustee

would withdraw any claims (including, without limitation, any statements of claim, cross-claims,

or third party claims) that he has asserted in the OCC Interpleader Action and, upon completing a

reconciliation of the proper amount of their claims, allow general unsecured creditor claim no.

4851, asserted by Bank of Tokyo Mitsubishi, and general unsecured creditor claim no. 5452,

asserted by Lloyds TSB Bank PLC, in their reconciled amounts;

**WHEREAS**, the payments to be made and actions to be undertaken with respect to the OCC Interpleader Action by the Trustee under the Settlement Agreement are for the completion of delivery of Purchased Assets under the Sale Order under which Barclays was found to be a good faith purchaser entitled to the protection of Section 363(m) of the Bankruptcy Code; and

**WHEREAS**, in addition to implementing the District Court's Judgment and the orders entered in the Litigation, the Trustee and Barclays also agreed to resolve all other issues between them;

**NOW, THEREFORE**, upon the Trustee's Motion, and all related pleadings, filings, oral arguments, conferences, submissions and Court rulings, and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with SIPA § 78eee(b)(4); and venue being proper before this Court pursuant to SIPA § 78eee(a)(3) and 15 U.S.C. § 78aa; and due and proper notice of the Motion having been provided in accordance with the Amended Case Management Order; and a reasonable opportunity to object or be heard regarding the Motion having been afforded to all such parties; and it appearing that no other or further notice need be provided; and the relief requested in the Motion being appropriate and in the best interests of the LBI estate, its customers, its creditors, and all parties in interest; and sufficient cause appearing, it is hereby

**ORDERED**, that the Court having determined and found that the proposed Settlement Agreement is reasonable and appropriate, and that consummation of the transactions contemplated by the Settlement Agreement is in the best interests of the LBI estate, its customers and creditors, the Motion is granted; and it is further

**ORDERED**, that pursuant to Bankruptcy Rule 9019, the compromises and settlements described in the Motion and contemplated by and provided for in the Settlement Agreement are approved; and it is further

**ORDERED**, that any objections to the Motion that have not otherwise been withdrawn or resolved are overruled; and it is further

**ORDERED**, that, upon making the payments to Barclays that are required under the Settlement Agreement, the Trustee shall release to the LBI general estate the entirety of the LBI estate's remaining reserve for the Litigation; and it is further

**ORDERED**, that Barclays shall provide reasonable cooperation to the Trustee in collecting approximately $36 million in assets held by the Depository Trust & Clearing Corporation to the extent (and only to the extent) those assets relate to the following securities:

| CUSIP | QUANTITY |
|-------|----------|
| 83050G6Q7 | 8,300,000 |
| 89380EJQ6 | 219,000 |
| 86958TJS7 | 900,000 |
| 8265Q0SX1 | 22,500,000 |

; and it is further

**ORDERED**, that the Trustee shall provide reasonable cooperation to Barclays, consistent with his duties as Trustee, the District Court Judgment, and other court orders, in Barclays' efforts to obtain any Margin Assets held by third parties, and any interest Barclays may pursue against those third parties, including any such assets at LBIE, approximately $93 million in Margin Assets from Yuanta (formerly known as Polaris), approximately $4 million in Margin Assets from Samsung, and approximately $8 million in Margin Assets from Kenanga; provided, however, that nothing herein shall require the Trustee to take any action that would violate any

obligation owed to LBIE (in any capacity) and/or the Joint Administrators under the LBIE

Agreement; and it is further

**ORDERED**, that upon payment by the Trustee of the $777,000,000, (i) the maximum

aggregate undischarged liability of LBIE and/or the trustee of the UK statutory trust of client

money arising under CASS 7 in relation to LBIE (including the LBIE Client Money Trustee) to

BCI and/or Barclays Bank, with respect to the Barclays LBIE ETD Claims shall automatically,

unconditionally, and irrevocably be reduced by $777,000,000 and (ii) Barclays hereby releases

LBIE (including the LBIE Client Money Trustee) with respect to the Barclays LBIE ETD Claims

in such amount; and it is further

**ORDERED**, that, for the avoidance of doubt, nothing in the Settlement Agreement or in

this Order affects, waives, releases or reduces Barclays' claim against LBIE to interest relating to

the $777,000,000 referenced in the preceding paragraph (or LBIE's defenses thereto), and

nothing in the Settlement Agreement or in this Order affects, waives, releases or reduces

Barclays' LBIE ETD Claim against LBIE with respect to assets (and interest with respect

thereto) in excess of the $777,000,000 referenced in the preceding paragraph (or LBIE's

defenses thereto); and it is further

**ORDERED**, that except for the reduction in, and release of, the maximum aggregate

undischarged liability of LBIE, and the receipt by Barclays of $777,000,000, with respect to the

Barclays LBIE ETD Claims provided for by the third sentence of paragraph 5 of the Settlement

Agreement, nothing in the Settlement Agreement or in this Order shall act as collateral estoppel,

res judicata or judicial estoppel as between Barclays and LBIE, or prejudice the merits of any

rights, defenses or arguments of Barclays or LBIE against each other; and it is further

**ORDERED**, that LBIE (including the LBIE Client Money Trustee) is a third-party beneficiary entitled to rely on the third and fourth sentences of paragraph 5, paragraph 6 in its entirety and the first sentence of paragraph 16 of the Settlement Agreement; and it is further

**ORDERED**, that upon the payment of $777,000,000 by the Trustee to Barclays in accordance with the Settlement Agreement, the Required Reserve Amount shall be reduced to zero and the Dedicated Reserve Termination Date shall occur, and, at such time, all of the Trustee's obligations to LBIE (in any capacity, including without limitation as LBIE Client Money Trustee) and/or the Joint Administrators, and all obligations of LBIE (in any capacity, including without limitation as LBIE Client Money Trustee) and/or the Joint Administrators to the Trustee, under Article X of the LBIE Agreement will be deemed to be fully discharged and released; and it is further

**ORDERED**, that, while the approximately $4 million in assets at Samsung that were held in LBI customer accounts constitute Margin Assets that Barclays is entitled to collect and retain, the Trustee shall be entitled to collect and retain the approximately $5 million in assets at Samsung that were held in LBI house account numbers 01532-037, 01532-060, 01532-367, 01532-375, and 01532-391; and it is further

**ORDERED**, that, as of the date that this Order becomes a Final Order,[3] the Trustee shall unconditionally and irrevocably release any claims against Barclays relating to

---

3.    A "Final Order" shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket of such court, the operation or effect of which has not been stayed, reversed, or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending, *provided*, *however*, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rule of Civil Procedure, Bankruptcy Rule 9024, any similar local bankruptcy rule or any similar state statute or rule may be filed with respect to such order.

Barclays' alleged failure to pay compensation, including bonuses and severance, to former LBI

employees who have asserted claims for such compensation in the LBI liquidation; and it is

further

    **ORDERED**, that the Trustee is authorized to take any and all actions reasonably

necessary to consummate the Settlement Agreement; and it is further

    **ORDERED**, that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: New York, New York

   _____, 2015

        _____

        UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT D**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

LEHMAN BROTHERS INC.,

Debtor.

Case No. 08-01420 (SCC) SIPA

**[PROPOSED] ORDER APPROVING THE SETTLEMENT AGREEMENT AMONG
THE TRUSTEE, BARCLAYS CAPITAL INC., AND BARCLAYS BANK PLC**

**WHEREAS**, on June 5, 2015 James W. Giddens (the "Trustee"), as Trustee for

the liquidation of the business of Lehman Brothers Inc. ("LBI"), filed a motion (the "Motion")[1]

for entry of an order pursuant to Federal Rule of Bankruptcy Procedure 9019 approving the

Settlement Agreement between the Trustee and Barclays Capital Inc. and Barclays Bank PLC

(together, "Barclays");

**WHEREAS**, the Trustee and Barclays have been involved in litigation (the

"Litigation") in connection with (i) the Trustee's Motion for Relief Pursuant to the Sale Order or,

Alternatively, for Certain Limited Relief Under Rule 60(b), dated Sept. 15, 2009, ECF No. 1682,

(ii) the Trustee's adversary complaint and amended adversary complaint against Barclays, dated

Nov. 16, 2008 and July 15, 2011, respectively, Adv. Proc. 09-01732, ECF Nos. 1, 11,

(iii) Barclays' Motion to Enforce the Sale Order and Secure Delivery of All Undelivered Assets,

dated Jan. 29, 2010, ECF No. 2581, and (iv) an interpleader action that was commenced by the

Options Clearing Corporation in December 2008 in the Bankruptcy Court, captioned *The*

---

1.   Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

**Formatted:** Footer

*Options Clearing Corporation v. Barclays Capital Inc., et, al.*, No. 08-1759 (Bankr. S.D.N.Y.) (the "OCC Interpleader Action");

WHEREAS, the Bankruptcy Court's decision in the Litigation has been the subject of appeals and related proceedings in the District Court, Second Circuit, and United States Supreme Court, *see In re Lehman Brothers Inc.*, Nos. 11-6052, 11-6053 (S.D.N.Y.); *In re Lehman Brothers Holdings Inc.*, Nos. 12-2322, 12-2328, 12-2657, 12-2933 (2d Cir.); *Giddens v. Barclays Capital Inc.*, No. 14-710 (U.S. Sup. Ct.);

WHEREAS, the District Court entered a Judgment in the Litigation on July 16, 2012 that awarded the Margin Assets[2] to Barclays;

WHEREAS, the Second Circuit affirmed the District Court's Judgment on August 5, 2014;

WHEREAS, the United States Supreme Court denied the Trustee's petition for a writ of certiorari on May 4, 2015;

WHEREAS, the Trustee and Barclays agreed in the Settlement Agreement that, to implement the District Court's Judgment and the orders entered in the Litigation, the Trustee would pay Barclays (i) $506,554,462 and post-judgment interest thereon at the United States federal post-judgment interest rate, pursuant to the District Court's Judgment, and (ii) $777,000,000 out of the Dedicated Reserve with respect to the Barclays LBIE ETD Claims;

**WHEREAS**, the Trustee and Barclays agreed in the Settlement Agreement that upon payment by the Trustee of the $777,000,000 to Barclays (i) the maximum aggregate undischarged liability of Lehman Brothers International (Europe) (in administration) ("LBIE") and/or the trustee of the UK statutory trust of client money arising under CASS 7 in relation to

---

2.    The term "Margin Assets" shall have the meaning attributed to it in the Litigation.

LBIE (including the "LBIE Client Money Trustee," as defined in the LBIE Agreement) to Barclays with respect to the Barclays LBIE ETD Claims shall automatically, unconditionally, and irrevocably be reduced by $777,000,000; and (ii) Barclays shall release LBIE (including the LBIE Client Money Trustee) with respect to the Barclays LBIE ETD Claims in such amount;

**WHEREAS**, in furtherance of the Settlement Agreement between the Trustee and Barclays, the Trustee, on the one hand, and LBIE and the Joint Administrators, on the other hand, acknowledged and agreed that the Trustee's payment of the $777,000,000 to Barclays pursuant thereto would reduce the Required Reserve Amount (as defined in the LBIE Agreement) to zero and the date of such payment shall constitute the Dedicated Reserve Termination Date (as defined in the LBIE Agreement), and that, upon the occurrence of the Dedicated Reserve Termination Date, all of the Trustee's obligations to LBIE (in any capacity, including without limitation as LBIE Client Money Trustee) and/or the Joint Administrators, and all obligations of LBIE (in any capacity, including without limitation as LBIE Client Money Trustee) and/or the Joint Administrators to the Trustee, under Article X of the LBIE Agreement would be deemed to be fully discharged and released;

**WHEREAS,** the Trustee and Barclays agreed in the Settlement Agreement that, to implement the District Court's Judgment and the orders entered in the Litigation, the Trustee would withdraw any claims (including, without limitation, any statements of claim, cross-claims, or third party claims) that he has asserted in the OCC Interpleader Action and, upon completing a reconciliation of the proper amount of their claims, allow general unsecured creditor claim no. 4851, asserted by Bank of Tokyo Mitsubishi, and general unsecured creditor claim no. 5452, asserted by Lloyds TSB Bank PLC, in their reconciled amounts;

Formatted: Font: Not Bold

**WHEREAS**, the payments to be made and actions to be undertaken with respect to the OCC Interpleader Action by the Trustee under the Settlement Agreement are for the completion of delivery of Purchased Assets under the Sale Order under which Barclays was found to be a good faith purchaser entitled to the protection of Section 363(m) of the Bankruptcy Code; and

**WHEREAS**, in addition to implementing the District Court's Judgment and the orders entered in the Litigation, the Trustee and Barclays also agreed to resolve all other issues between them;

**NOW, THEREFORE**, upon the Trustee's Motion, and all related pleadings, filings, oral arguments, conferences, submissions and Court rulings, and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with SIPA § 78eee(b)(4); and venue being proper before this Court pursuant to SIPA § 78eee(a)(3) and 15 U.S.C. § 78aa; and due and proper notice of the Motion having been provided in accordance with the Amended Case Management Order; and a reasonable opportunity to object or be heard regarding the Motion having been afforded to all such parties; and it appearing that no other or further notice need be provided; and the relief requested in the Motion being appropriate and in the best interests of the LBI estate, its customers, its creditors, and all parties in interest; and sufficient cause appearing, it is hereby

**ORDERED**, that the Court having determined and found that the proposed Settlement Agreement is reasonable and appropriate, and that consummation of the transactions contemplated by the Settlement Agreement is in the best interests of the LBI estate, its customers and creditors, the Motion is granted; and it is further

**ORDERED**, that pursuant to Bankruptcy Rule 9019, the compromises and settlements described in the Motion and contemplated by and provided for in the Settlement Agreement are approved; and it is further

**ORDERED**, that any objections to the Motion that have not otherwise been withdrawn or resolved are overruled; and it is further

**ORDERED**, that, upon making the payments to Barclays that are required under the Settlement Agreement, the Trustee shall release to the LBI general estate the entirety of the LBI estate's remaining reserve for the Litigation; and it is further

**ORDERED**, that Barclays shall provide reasonable cooperation to the Trustee in collecting approximately $36 million in assets held by the Depository Trust & Clearing Corporation to the extent (and only to the extent) those assets relate to the following securities:

| CUSIP | QUANTITY |
|-------|----------|
| 83050G6Q7 | 8,300,000 |
| 89380EJQ6 | 219,000 |
| 86958TJS7 | 900,000 |
| 8265Q0SX1 | 22,500,000 |

; and it is further

**ORDERED**, that the Trustee shall provide reasonable cooperation to Barclays, consistent with his duties as Trustee, the District Court Judgment, and other court orders, in Barclays' efforts to obtain any Margin Assets held by third parties, and any interest Barclays may pursue against those third parties, including any such assets at LBIE, approximately $93 million in Margin Assets from Yuanta (formerly known as Polaris), approximately $4 million in Margin Assets from Samsung, and approximately $8 million in Margin Assets from Kenanga; provided, however, that nothing herein shall require the Trustee to take any action that would violate any

obligation owed to LBIE (in any capacity) and/or the Joint Administrators under the LBIE

Agreement; and it is further

**ORDERED**, that upon payment by the Trustee of the $777,000,000, (i) the maximum

aggregate undischarged liability of LBIE and/or the trustee of the UK statutory trust of client

money arising under CASS 7 in relation to LBIE (including the LBIE Client Money Trustee) to

BCI and/or Barclays Bank, with respect to the Barclays LBIE ETD Claims shall automatically,

unconditionally, and irrevocably be reduced by $777,000,000 and (ii) Barclays hereby releases

LBIE (including the LBIE Client Money Trustee) with respect to the Barclays LBIE ETD Claims

in such amount; and it is further

**ORDERED**, that, for the avoidance of doubt, nothing in the Settlement Agreement or in

this Order affects, waives, releases or reduces Barclays' claim against LBIE to interest relating to

the $777,000,000 referenced in the preceding paragraph (or LBIE's defenses thereto), and

nothing in the Settlement Agreement or in this Order affects, waives, releases or reduces

Barclays' LBIE ETD Claim against LBIE with respect to assets (and interest with respect

thereto) in excess of the $777,000,000 referenced in the preceding paragraph (or LBIE's

defenses thereto); and it is further

**ORDERED**, that except for the reduction in, and release of, the maximum aggregate

undischarged liability of LBIE, and the receipt by Barclays of $777,000,000, with respect to the

Barclays LBIE ETD Claims provided for by the third sentence of paragraph 5 of the Settlement

Agreement, nothing in the Settlement Agreement or in this Order shall act as collateral estoppel,

res judicata or judicial estoppel as between Barclays and LBIE, or prejudice the merits of any

rights, defenses or arguments of Barclays or LBIE against each other; and it is further

**ORDERED**, that LBIE (including the LBIE Client Money Trustee) is a third-party beneficiary entitled to rely on the third and fourth sentences of paragraph 5, paragraph 6 in its entirety and the first sentence of paragraph 16 of the Settlement Agreement; and it is further

**ORDERED**, that upon the payment of $777,000,000 by the Trustee to Barclays in accordance with the Settlement Agreement, the Required Reserve Amount shall be reduced to zero and the Dedicated Reserve Termination Date shall occur, and, at such time, all of the Trustee's obligations to LBIE (in any capacity, including without limitation as LBIE Client Money Trustee) and/or the Joint Administrators, and all obligations of LBIE (in any capacity, including without limitation as LBIE Client Money Trustee) and/or the Joint Administrators to the Trustee, under Article X of the LBIE Agreement will be deemed to be fully discharged and released; and it is further

**ORDERED**, that, while the approximately $4 million in assets at Samsung that were held in LBI customer accounts constitute Margin Assets that Barclays is entitled to collect and retain, the Trustee shall be entitled to collect and retain the approximately $5 million in assets at Samsung that were held in LBI house account numbers 01532-037, 01532-060, 01532-367, 01532-375, and 01532-391; and it is further

**ORDERED**, that, as of the date that this Order becomes a Final Order,[3] the Trustee shall unconditionally and irrevocably release any claims against Barclays relating to

---

3.    A "Final Order" shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket of such court, the operation or effect of which has not been stayed, reversed, or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending, *provided*, *however*, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rule of Civil Procedure, Bankruptcy Rule 9024, any similar local bankruptcy rule or any similar state statute or rule may be filed with respect to such order.

Barclays' alleged failure to pay compensation, including bonuses and severance, to former LBI

employees who have asserted claims for such compensation in the LBI liquidation; and it is

further

       **ORDERED**, that the Trustee is authorized to take any and all actions reasonably

necessary to consummate the Settlement Agreement; and it is further

       **ORDERED**, that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated:  New York, New York
      _____, 2015

                _____
                UNITED STATES BANKRUPTCY JUDGE

**Formatted:** Keep with next