**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

      LEHMAN BROTHERS INC.,

                    Debtor.

Case No. 08-01420 (SCC) SIPA

### SUPPLEMENTAL DECLARATION OF CHRISTOPHER K. KIPLOK IN FURTHER SUPPORT OF THE TRUSTEE'S MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR ENTRY OF AN ORDER APPROVING THE SETTLEMENT AGREEMENT AMONG THE TRUSTEE, BARCLAYS CAPITAL INC., AND BARCLAYS BANK PLC

I, Christopher K. Kiplok, declare that the following is true and correct:

1.      I am a partner in the firm of Hughes Hubbard & Reed LLP, attorneys for James W. Giddens (the "Trustee"), as trustee for the liquidation of the business of Lehman Brothers Inc. ("LBI") under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. § 78aaa *et seq.*

2.      I submit this supplemental declaration in further support of the Trustee's Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 for Entry of an Order Approving the Settlement Agreement Among the Trustee, Barclays Capital Inc., and Barclays Bank PLC (the "Motion").[1]

3.      Based on my direct participation in and knowledge of the liquidation of the business of LBI and the litigation with Barclays, and review of work by others also involved

---

1.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

in the liquidation and the litigation, I have knowledge of the facts and representations set forth in the Trustee's reply in support of the Motion.

4.      J. Robert Chambers is one of 71 former LBI employees who transferred to Barclays and filed claims against LBI for guaranteed 2008 bonuses (the "Bonus Claimants"). Chambers is one of eleven Bonus Claimants who have continued to litigate with the Trustee rather than settling their claims.

5.      The Settlement Agreement includes an agreement by Barclays to cooperate with the Trustee in collecting more than $30 million held by the DTCC. These funds are proceeds of securities held by DTCC that the Trustee has been unable to collect because of the possibility that Barclays could assert a claim to them based on its acquisition of LBI's assets. Barclays' agreement to cooperate with the Trustee will facilitate the collection of the funds for the benefit of the LBI estate.

6.      The Settlement Agreement also includes a release of the Trustee's potential claim against Barclays for failure to pay bonuses to former LBI employees in accordance with the APA. The Trustee believes this release is a reasonable and necessary component of the global settlement of all pending and potential litigation between the Trustee and Barclays.

7.      The Trustee estimates that the potentially allowable amount of claims for unpaid bonuses is approximately $80 million.

8.      Barclays paid most of the Bonus Claimants either all or part of the 2008 bonuses that LBI owed them. However, these claimants have asserted claims for the full amount of their bonuses and failed to take a reduction for the amount that Barclays paid. The Trustee has objected to the claims to the extent they seek a double recovery of amounts that Barclays

2

paid. For example, the Trustee seeks to reduce Chambers' claim by the $1 million that Barclays paid him in lieu of his 2008 bonus. If the Bonus Claimants were allowed to recover against the estate the full amount of their claims, including the amounts that Barclays already paid, the allowed amount of their claims ultimately could be as high as $170 million.

9.      The Trustee expects that Barclays would have colorable defenses to a claim for failure to pay bonuses. Barclays has indicated that it would argue that its obligation to pay employee bonuses under the APA was limited to the aggregate amount of LBI's bonus pool accrual, and that it was not obligated to pay any specific amount to any specific employee.

10.      Barclays could also argue that the Trustee's damages, and Barclays' maximum exposure, should not include amounts that are subject to subordination and will not result in distributions from the LBI estate.

11.      In addition, Barclays could argue that its maximum exposure should be capped at the amount that the LBI estate actually distributes, rather than the approximately $80 million that the Trustee believes is potentially allowable. Of the approximately $80 million in bonuses that were not paid by Barclays, the Trustee believes that all but approximately $40 million is subject to subordination because it was to be paid in restricted stock units.

12.      Chambers has a general unsecured claim against the LBI estate, which the Trustee has reserved for in full even though he believes the claim is deficient for various reasons, including the fact that 65 percent of Chambers' claim is subject to mandatory subordination. If Chambers' claim is allowed, he will be entitled to the same pro rata distribution as any other unsecured creditor.

13.      After the Trustee filed the Motion, LBIE contacted the Trustee to request certain revisions to the Settlement Agreement and proposed Order that would clarify the

reservation of LBIE's and Barclays' rights against each other with respect to Barclays' claims

against LBIE and the position between the Trustee and LBIE as a result of the Trustee's

Settlement Agreement with Barclays.  The Trustee, LBIE, and Barclays subsequently agreed to

revise the Settlement Agreement and proposed Order in a manner that is acceptable to each of

them.  In light of these revisions, LBIE has authorized me to represent that it supports the

settlement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:    June 25, 2015
                New York, New York

_____
                        Christopher K. Kiplok

4