SCAROLA MALONE & ZUBATOV LLP
*Attorneys for the 344 Individuals Identified
in the Notices of Appearance
at ECF Dkt. Nos. 8234, 8905 & 9549*
Richard J.J. Scarola
Alexander Zubatov
1700 Broadway
41st Floor
New York, NY 10019
Tel.: (212) 757-0007

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re

    LEHMAN BROTHERS INC.,

             Debtor.

Case No. 08-01420 (SCC) SIPA

Memorandum of Law of the 344 Individuals Identified
in the Notices of Appearance at ECF Dkt. Nos. 8234, 8905 and 9549
in Opposition to the Trustee's Motions for Reclassification

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

*Preliminary Statement* .............................................................................................................. 1

*Statement of Relevant Facts* ..................................................................................................... 3

*Argument* .................................................................................................................................. 5

    THIS COURT SHOULD DENY THESE MOTIONS BECAUSE THE TRUSTEE
    HAS FAILED TO COME FORWARD WITH ANY EVIDENCE OR ARGUMENT
    REBUTTING THE ASSERTION OF SECURED STATUS IN THE PROOFS OF CLAIM ............ 5

*Conclusion* .............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*DeSena v. Pavel*
   289 Fed. Appx. 426 (2d Cir. 2008) ..................................................................... 3

*Feldberg v. Quechee Lakes Corp.*
   463 F.3d 195 (2d Cir. 2006) ......................................................................... 3, 11

*In re Dana Corp.*
   574 F.3d 129 (2d Cir. 2009) ............................................................................. 7

*In re DJK Residential LLC*
   416 B.R. 100 (Bankr. S.D.N.Y. 2009) ............................................................... 10

*In re Reilly*
   245 B.R. 768 (Bankr. App. 2d Cir. 2000), *aff'd*, 242 F.3d 367 (2d Cir. 2000) .............. 10

*Keefe v. Shalala*
   71 F.3d 1060 (2d Cir. 1995) ............................................................................ 12

*Knipe v. Skinner*
   999 F.2d 708 (2d Cir. 1993) ............................................................................ 12

*Nat'l Labor Relations Bd. v. Star Color Plate Serv.*
   843 F.2d 1507 (2d Cir. 1988) .......................................................................... 12

*United States v. Letscher*
   83 F.Supp.2d 367 (S.D.N.Y. 1999) .................................................................. 12

**Statutes**

11 U.S.C. §502 ............................................................................................. 5, 6

11 U.S.C. §541 ................................................................................................ 9

**Rules**

F.R.B.P. 3001 ................................................................................................ 10

F.R.B.P. 7056 .................................................................................................. 7

F.R.B.P. 8013 .............................................................................................. 3, 8

F.R.B.P. 9014 .................................................................................................. 6

L.R. 7056-1 .................................................................................................... 7

L.R. 9014-1 .................................................................................................... 7

The 344 Individuals Identified in the Notices of Appearance at ECF Dkt. Nos. 8234, 8905 & 9459, who have claims against the debtor arising out of deferred compensation entitlements (the "DC Claimants"), by their counsel, Scarola Malone & Zubatov LLP, submit this Memorandum in opposition to the Trustee's motions (ECF Dkt. No. 12655 & 12656)[1] to reclassify certain deferred compensation claims from secured to general unsecured status.

*Preliminary Statement*

1. These are motions by the Trustee to have 360 claims filed as "secured" in Proofs of Claim reclassified as "unsecured." The law in such a situation, as described below, is crystal clear in holding that the filed Proofs of Claim constitute *prima facie* evidence of the claims' validity, and the party objecting to the claims as filed must come forward with evidence in support of its position before the burden of persuasion is shifted back to the claimant. Here, however, the Trustee has not attempted to make any showing whatsoever or to offer any cognizable legal argument as a basis on which the claims should be reclassified. Instead, remarkably, the Trustee would have the claims at issue reclassified through nothing more than its bald assertion that the Trustee and its counsel have "determined" the claims should not be reclassified, Trustee's Br., ¶21 — with this unexplained "determination" affecting tens of millions of dollars. In fact, the vast majority of the Proofs of Claim in issue

---

[1] The two motions are identical in most respects and, per the Trustee's explanation, are made separately in accordance with this Court's standing order permitting no more than 200 claims to be addressed in any single objection, because there are 360 total claims being addressed in the two motions. *See* ECF Dkt. No. 12655, at The Trustee's Motion to Reclassify Certain Deferred Compensation Claims as Unsecured Non-Priority General Creditor Claims, dated September 2, 2015 ("Trustee's Br."), ¶1, n.2. All citations herein to the Trustee's motions will be to the first of the two filed motions (ECF Dkt. No. 12655), though the arguments made here pertain to both of the substantially identical motions.

were prepared by bankruptcy counsel[2] and stated detailed reasons those claims should have secured status. *See* Declaration of Richard J.J. Scarola in Opposition to the Trustee's Motion for Reclassification ("Scarola Decl."), ¶3. In lieu of any actual pertinent legal argument as to the issues raised in the Proofs of Claim, the Trustee uses disingenuous elisions and incomplete quotations unbecoming of any litigant, much less a fiduciary, by means of which the Trustee has sought to concoct a topsy-turvy legal landscape in which the burdens are 180° reversed from what statutory law and settled caselaw plainly provide for in this situation: despite making no showing against the claims' present classification, the Trustee contends the burden is *already* on the DC Claimants to demonstrate the validity of their claims. *See* Trustee's Br., ¶¶18, 20, 22. That is not the law.

2. Having turned the applicable procedural law on its head, the Trustee then absurdly comes forward with this bald, never explained assertion, which, if nothing else, must be recognized for unapologetic presumptuousness:

> "*Based on analysis by the Trustee's counsel* of each of the Claims and their supporting documents, including the ESEP Agreements, *the Trustee has determined* that the Claims that assert secured status should be reclassified from secured to general unsecured claims because the claimants do not possess a lien on any property in which the Debtor has an interest, and therefore are not entitled to secured status under Bankruptcy Code section 506(a)."

Trustee's Br., ¶21 (emphasis added). The Trustee does not bother to describe, much less expand upon, its counsel's "analysis" or "determination" in any way, but rather, would have this Court adopt that unproffered internal analysis as a basis upon which to reclassify what it calculates to measure more than $250 million in claims.

---

[2] The vast majority of the Proofs of Claim in issue were prepared and filed by the well-respected bankruptcy law firm Hennigan Bennett & Dorman LLP ("HBD"), setting forth identical bases for each claim for secured treatment. Scarola Decl., ¶3. The DC Claimants understand HBD ceased to exist by reason of various mergers some years after the Proofs of Claim were filed. *See id.*

2

3. This glib absence of analysis or legal argument by the Trustee to support these motions not only ignores governing authority but also defies the most basic norms, standards and conventions of the legal process, in which every litigant is expected to adduce explicit reasoning in support of legal conclusions, as the clear rules of this Court and law of this Circuit hold. *See* F.R.B.P. 8013(a)(2)(A) ("A motion must state with particularity the grounds of the motion, the relief sought, and the legal arguments necessary to support it"); *DeSena v. Pavel*, 289 Fed. Appx. 426, 428 (2d Cir. 2008) ("Rule 7 of the Federal Rules of Civil Procedure requires that motions … 'state with particularity the grounds for seeking the order.' Fed.R.Civ.P. 7(b)(1)(B). Where appellants have 'failed to give any indication of the grounds' for a post-judgment motion, we have concluded that no relief from the judgment is available"); *Feldberg v. Quechee Lakes Corp.*, 463 F.3d 195, 197 (2d Cir. 2006) ("The motion must … apprise the court and the opposing party of the grounds upon which [relief] is sought").

4. It also goes without saying that the DC Claimants cannot be expected to respond to the Trustee's counsel's undisclosed internal analysis. This fact, by itself, is sufficient to deny the motions at issue.

5. For all these reasons, as described further below, the Trustee's motions should be denied.

*Statement of Relevant Facts*

6. The underlying claims against which the Trustee's motions are directed are for deferred compensation totaling between $250 and $300 million under a defined benefit plan per which compensation earned by the DC Claimants –– 344 former executives of the Shearson Lehman Brothers Inc. ("Shearson") — was withheld from their paycheck and placed

3

into deferred compensation pursuant to the terms of an Executive and Select Employees Deferred Compensation Agreement, entered into by each of the DC Claimants with Shearson in 1985 (the "ESEP Agreement"). *See* Scarola Decl., ¶2. (A copy of the ESEP Agreement is attached as Exhibit C to the Trustee's motions.) It appears not to be disputed that Shearson used this earned compensation to purchase life insurance on the life on each of the DC Claimants. *See id.*

7. The Trustee admits and does not dispute that the DC Claimants validly filed timely Proofs of Claim, *see* Trustee Br., ¶13, and that these Proofs of Claim assert that the underlying claims are secured. *See id.* The Trustee also admits that most of the Proofs of Claim addressed in these motions set forth, *inter alia*, the following specific bases for claiming secured status (and the Trustee quotes this passage from the Proofs of Claim — which appeared in identical form in the Proofs of Claim filed by HBD — in substantial part):

> "[Claimant] believes that the amounts contributed to the Plan by [Claimant] and/or withheld from [Claimant's] compensation pursuant to the Plan were used to purchase life insurance for the purpose of funding the payments due under the Plan. This claim is a secured claim to the extent of the value of such insurance policies if it is determined that (a) [the Claimant] has an interest in such life interest in such life insurance policies either by reason of the [ESEP Agreement] and/or the custom and actual practice of the parties thereto; (b) such life insurance policies are determined to be [ESEP] Plan assets in accordance with the protections and provisions of the Employee Retirement Income Security Act of 1974 and that in accordance with applicable law, such life insurance policies may be used only for the exclusive benefit of [the ESEP Claimant] and are not property of the Debtor's estate; or (c) sections 541(b)(7) and/or (8) of the Bankruptcy Code apply to the amounts withheld by the Debtor or contributed by the [ESEP Claimant] to the Debtor under the ESEP Plan and/or the life insurance policies obtained by the Debtor using the amounts withheld by the Debtor or contributed by the [ESEP Claimant] in accordance with the [ESEP Plan]."

Trustee Br., ¶13 & Ex. B at Addendum, p. 1.

4

*Argument*

## THIS COURT SHOULD DENY THESE MOTIONS BECAUSE THE TRUSTEE HAS FAILED TO COME FORWARD WITH ANY EVIDENCE OR ARGUMENT REBUTTING THE ASSERTION OF SECURED STATUS IN THE PROOFS OF CLAIM

8. As discussed above, the Trustee has completely misstated the governing procedural principles and evidentiary burdens to make it appear that the burden is on the DC Claimants to come forward with proof of secured status rather than on the Trustee to present evidence refuting the allegation of secured status made in the filed Proofs of Claim. When the burden is placed back where it belongs — on the Trustee — it dictates a clear result as far as these motions are concerned: the Trustee has failed to come forward and, indeed, has not even *attempted* to come forward, with any argument, much less evidence, that would refute the assertion of secured status made in the Proofs of Claim. As such, the Trustee's motions must be denied.

9. The Trustee's misstatements of the law include the following. The Trustee begins its analysis with this wholly misleading statement of the governing procedural principles as to the presumptions with regard to a properly filed proof of claim: "A filed proof of claim is 'deemed allowed, unless a party in interest … objects.' 11 U.S.C. §502(a). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim." Trustee's Br., ¶18. This statement deliberately conveys the misimpression that the Trustee's *mere assertion* of an objection (*i.e.*, a statement in the nature of "I object!") is sufficient to shift the burden to the claimant. The Trustee then parlays this incorrect statement of the law into a statement about what the claimant "must demonstrate" to assert a secured claim, *id.* at ¶20, based upon which incorrect assertion then, in turn, the Trustee proclaims that "[t]he Claims do not

5

provide any evidence that they have any security interest or that any security interest has been perfected." *Id.* at ¶22. Ultimately, of course, the Trustee rests on some unknown, behind-the-curtain, "analysis by the Trustee's counsel" that is not explained or even articulated, but is purported to require deference to the Trustee's and its counsel's "determin[ation] that the Claims that assert secured status should be reclassified." *Id.* at ¶21. The basis, if any, for that internal "determination" is, of course, not described at all, and that assertion by the Trustee is both (i) insufficient to shift any duty to the DC Claimants and (ii) insufficient as the basis for a motion that could properly be granted.

10. The Trustee's motions are, at bottom, a bizarre house of cards which cannot stand because they omit any form of response whatsoever to the DC Claimants' asserted bases for secured status.

11. The Trustee's first salvo in erecting that house is to cite 11 U.S.C. §502(a) for the proposition that a claim is deemed allowed unless a party in interest objects while omitting any mention of the very next paragraph of the statute, 11 U.S.C. §502(b), which clearly states, in relevant part, that "if such objection is made, the court, *after notice and a hearing*, shall determine the amount of such claim ....." (Emphasis added.) This proposition is wholly consistent with Rule 9014(a) which states that "[i]n a contested matter not otherwise governed by these rules, relief shall be requested by motion, and *reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought*," (emphasis added). Rule 9014(c) makes various ordinary discovery rules and principles embodied in the Federal Rules of Civil Procedure applicable here as well: "[U]nless the court directs otherwise, the following rules shall apply:  7009, 7017, 7021, 7025, 7026, 7028–7037,

6

7041, 7042, 7052, 7054-7056, 7064, 7069, and 7071."[3] If a party believes no relevant facts are in dispute and seeks summary judgment, see Rule 7056, L.R. 7056-1 (requiring, *inter alia*, a pre-motion conference and statement of undisputed facts), the opposing party is, of course, entitled to any relevant discovery. See, e.g., In re Dana Corp., 574 F.3d 129, 148-49 (2d Cir. 2009) (holding that a bankruptcy court was wrong to grant summary judgment without allowing the opposing party full discovery, and that "a party against which summary judgment is sought must be afforded 'a reasonable opportunity to elicit information within the control of his adversaries'").

12. But here, the Trustee has not even made a submission in the nature of a summary judgment motion, even while complaining that the DC Claimants have failed to adduce *documentary evidence* supporting the assertion of secured status. See Trustee's Br., ¶21. As discussed below, there has been no discovery, and any documents relevant to these issues would be in the Trustee's own possession.

13. While ignoring in its limited discussion the actual content of the Proofs of Claim, and despite making no argument in the nature of summary judgment, the Trustee nonetheless quotes the critical language from the Proofs of Claim prepared by HBD and included in most of the Proofs of Claim at issue as the bases for secured status (the language quoted in the *Statement of Relevant Facts* above and reproduced again here below):

> "[Claimant] believes that the amounts contributed to the Plan by [Claimant] and/or withheld from [Claimant's] compensation pursuant to the Plan were used to purchase life insurance for the purpose of funding the payments due under the Plan. This claim is a secured claim to the extent of the value of such insurance policies if it is determined that (**a**) [the Claimant] has an interest in such life interest in

---

[3] Rule 9014-1 also clarifies that "[u]nless the Court orders otherwise, Rules 7(b) and 24 of the Federal Rules of Civil Procedure, as incorporated in Bankruptcy Rules 7007 and 7024, respectively, and Local Bankruptcy Rules 7005-1, 7007-1, 7016-1, 7024-1, 7026-1, 7027-1, 7030-1, 7033-1, 7034-1, 7036-1, 7052-1, 7055-1, 7055-2, and 7056-1, shall apply in contested matters."

7

such life insurance policies either by reason of the [ESEP Agreement] and/or the custom and actual practice of the parties thereto; (**b**) such life insurance policies are determined to be [ESEP] Plan assets in accordance with the protections and provisions of the Employee Retirement Income Security Act of 1974 and that in accordance with applicable law, such life insurance policies may be used only for the exclusive benefit of [the ESEP Claimant] and are not property of the Debtor's estate; or (**c**) sections 541(b)(7) and/or (8) of the Bankruptcy Code apply to the amounts withheld by the Debtor or contributed by the [ESEP Claimant] to the Debtor under the ESEP Plan and/or the life insurance policies obtained by the Debtor using the amounts withheld by the Debtor or contributed by the [ESEP Claimant] in accordance with the [ESEP Plan]."

Trustee Br., ¶13 & Ex. B at Addendum, p. 1 (emphasis added in bold).[4]

14. But beyond adducing, without substantive comment, this bare quotation of the Proofs of Claim, the Trustee does not even so much as mention that any of these three points were specifically articulated in most of the Proofs of Claim in issue. This is an utter abdication of the responsibility in F.R.B.P. 8013(a)(2)(A), and the cases, a movant has to set forth with particularity the grounds for requested relief and the legal arguments necessary to support it.

15. Significantly, the DC Claimants' counsel, before these motions were made, asked the Trustee's counsel squarely and directly to identify what arguments it might have in response to the three specifically articulated bases for secured status, but, just as in the Trustee's motion papers, no substance was offered on these points. *See* Scarola Decl., ¶4.

---

[4] Ironically, the Trustee makes one, though only one, legal argument as to one aspect of a few of the Proofs of Claim in issue. It is ironic, because it establishes the Trustee's understanding of its need to make argument or present evidence to challenge a proof of claim's assertion of secured status — yet it ignores all of the articulated bases in the HBD Proofs of Claim while devoting three paragraphs, *see* Trustee's Br., ¶¶23-25, to targeting only a single and simple-to-overcome issue raised in a small number of claims. Specifically, apparently some small number of claimants, generally those who filed *pro se* without the assistance of HBD, incorrectly checked a box on the Proof of Claim forms to the effect that the deferred compensation in question was earned within the last 180 days. That is self-evidently not the case given that there is no dispute that the ESEP Agreements were entered into in the mid-1980s. Yet that point — what one might call the lowest of low-hanging fruit — is the only substantive point the Trustee makes as to any of the possible bases for secured treatment articulated in the various Proofs of Claim.

8

The inquiry was met with the answer to the DC Claimants' counsel only that "it seems like we have a fundamental disagreement about these claims and whether or not my email addresses the issues. I don't think further discussion of this is likely to lead to anything except needless delay."[5] *See id.* There has, of course, been no discovery on the matters raised by these motions. *See id.* at ¶5. As to these specifications in the HBD Proofs of Claim, and to points (a) and (b) in the Proofs of Claim pertaining to insurance policies in particular, the Trustee's counsel tacitly acknowledged that the Proofs of Claim raise a number of issues concerning the life insurance policies, and stated to the DC Claimants' counsel: "[W]e do not believe the ultimate disposition of the [life insurance policies] has any bearing on these issues, *[but] I am nonetheless looking into that and will provide you with the information you requested to the extent I am able.*"[6] *See id.* (emphasis added). Yet nothing at all was provided after this e-mail. *See id.* With regard to point (c) in the Proofs of Claim, the Trustee is simply silent as to 11 U.S.C. §541(b)(7) and (8), which raise relevant issues that do not appear to be resolved by any Second Circuit authority.

16.    These motions' complete failure to address the substantive bases for secured status articulated by the claimants is especially disingenuous and appalling in light of the Trustee's evasion of applicable legal principles. As noted above, the Trustee suggests that its mere *assertion* of an objection to the claims shifts the burden to the DC Claimants to prove the claims' validity. *See* Trustee's Br., ¶18. That is not the law. Rule 3001(f), which the Trustee ignores despite citing paragraph (d) of that same rule later in its brief (at ¶22 thereof), is entitled "Evidentiary Effect" and plainly states that "[a] proof of claim executed

---

[5] These comments are included in an e-mail on August 15, 2015, addressing other subjects; the full exchange is not submitted here, but of course could be at the Court's direction. *See id.*

[6] This quote is from the same e-mail quoted above and discussed in the preceding footnote. *See id.*

9

and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of that claim." Moreover, even a casual inspection of the cases the Trustee cites — but tellingly does not quote — for the proposition it advances belies that very proposition. *In re DJK Residential LLC*, 416 B.R. 100 (Bankr. S.D.N.Y. 2009), the first case it cites and the one from which it also pulls the other two citations in its string cite in ¶18, quotes Rule 3001(f) and, in fact, says the following:

> "The filing of a proof of claim constitutes 'prima facie evidence of the validity and amount of a claim.' Fed. R. Bankr.P. 3001(f). However, 'if the objector *produces "evidence* equal in force to the prima facie case ... which, *if believed, would refute* at least one of the allegations that is essential to the claim's legal sufficiency[,]" ' the burden of proof then shifts back to the claimant. *In re Oneida, Ltd.*, 400 B.R. 384 (Bankr. S.D.N.Y. 2009) (first alteration in original) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992)). The Claimant must then 'prove by a preponderance of the evidence that under applicable law the claim should be allowed.' *Id.*; *Helliwell v. George R. Burrows, Inc. (In re George R Burrows, Inc.)*, 156 F.2d 640, 641 (2d Cir. 1946) ('[A]s soon as the trustee introduced *any substantial evidence* in opposition the claimants needed to establish by a preponderance of all the evidence that the claims as filed were based on facts which entitled the claimants to their allowance under the law. The burden of over-all proof was then on the claimants.'). *See also Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000); *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000)."

*Id.* at 104-05 (emphasis added); *see also In re Reilly*, 245 B.R. 768 (Bankr. App. 2d Cir. 2000), *aff'd*, 242 F.3d 367 (2d Cir. 2000) (holding that the objecting party had shifted the burden back to the party asserting the claim *only after offering testimonial evidence,* as "[a] properly executed and filed proof of claim constitutes prima facie evidence of the validity of the claim. *See* Fed. R. Bankr.P. 3001(f). To overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of

10

the allegations essential to the claim .... Once the Appellee offered the evidence refuting the allegations in the proof of claim, the burden shifted to the Appellant. The ultimate burden always rests with the claimant" (citations omitted)). This is on top of the general proposition, described above, that any movant cannot merely urge a conclusion upon the Court, but rather, "must ... apprise the court and the opposing party of the grounds upon which [relief] is sought." *Feldberg*, *supra*, at 197.

17.     The law is, thus, clear that, contrary to the Trustee's blatant and apparently knowing misstatements of the procedural law, the filed Proofs of Claim created a *prima facie* presumption in the claims' favor, and if the Trustee wishes to object to such claims and shift the burden of persuasion back to the DC Claimants, it is incumbent upon it to muster actual evidence or, at a minimum, some directly responsive legal argument that, if believed or accepted, would refute the claims. The Trustee has not even attempted to do this, and instead, as described above, has attempted to invert the burden, resting upon an unsupported contention that the DC Claimants have failed to "provide any evidence that they have any security interest,"[7] Trustee's Br., ¶22, and the still-more unsupported contention that

---

[7] The Trustee adds, in a one-sentence footnote without citation, that "[i]n fact, the ESEP Agreements state that payments made under the agreements are 'unsecured.'" Trustee's Br., ¶22, n.6. For a number of reasons, this offhand, uncited, footnoted reference cannot be the basis on which the Trustee is relying on these motions. To be clear, the Trustee *cannot* rely upon it, because it has said it would not, and because if it did so, this would directly result in the potential for inconsistent outcomes as between the matters pending on these motions and the matters pending as part of the adversary proceeding the Trustee initiated in this Court in an attempt to subordinate these same claimants' claims and which is now the subject of an appeal pending before Judge Edgardo Ramos of the Southern District of New York. *See* Scarola Decl., ¶6. In the context of that proceeding, the DC Claimants have, as a defense to the Trustee's effort to subordinate their claims, challenged the Trustee's right to invoke the ESEP Agreement against them on various bases, including, *inter alia*, the debtor's material breach of that Agreement. *See id.* As the Trustee acknowledges, *see* Trustee's Br., ¶¶16-17, the DC Claimants have contended that these issues must be resolved by either an arbitrator, as called for by the parties' agreements, or else by a federal district court rather than the bankruptcy court due to the need to resolve substantial issues of federal law in addressing the substantive aspects of the parties' adversary proceeding. In seeking to ensure that these motions would not risk inconsistent rulings on the matters pending before Judge Ramos and apparently out of a concern that he would not take umbrage at their making these present motions to reclassify claims in light of the matters addressed to him on appeal and in the accompanying motion to withdraw the reference, the Trustee's

11

"the Trustee has determined that the Claims that assert secured status should be reclassified." *Id.* at ¶21.

18. The well-stated HBD Proofs of Claim, of course, fly in the face of the Trustee's own statement that "[t]he Claims do not provide any evidence that they have any security interest," Trustee's Br. at ¶21, and the Trustee offers nothing in the way of actual evidence or legal argument rebutting the assertion of secured status on any of the multiple bases here alleged.[8]

19. While the Trustee further asserts that "[n]one of the Claimants has submitted any *document* evidencing the perfection of a security interest or lien on the assets of LBI," *id.* (emphasis added), the law, as above, requires *the Trustee, not the DC Claimants*, to come forward with evidence rebutting the claims at this stage. Moreover, nearly all documents relevant to the debtor's treatment of the deferred compensation at issue and the life insurance policies connected with such compensation are in the possession of the Trustee,

---

counsel represented to Judge Ramos that "[t]he reclassification from secured to unsecured would have no effect on any of the pending issues, and we would make that explicit, that it's without prejudice to all of the arguments that both sides are making." *See* Trustee's Ex. D at 15 & Scarola Decl., ¶6. The Trustee also stated in a June 25, 2015 letter to Judge Ramos, attached as Scarola Decl., Ex. A, that "these [reclassification] issues are independent from the issues pending before your Honor in the Appeal and Motion (and thereby not stayed by the Proceedings)." However, if the Trustee were to attempt to rely here on provisions in the very agreement the enforceability of which is being challenged as part of the adversary proceeding, this would, of course, improperly raise the very same issues now on appeal, risk inconsistent outcomes and be entirely inconsistent with the Trustee's counsel's unequivocal representations to Judge Ramos. The DC Claimants, therefore, understand that the Trustee is not relying on any language in the ESEP Agreement as a basis for reclassification here.

[8] Any attempt by the Trustee to muster such evidence on reply should be rejected, as it would represent an ambush and utterly defeat the requirement that the DC Claimants receive notice and an opportunity to be heard on a motion of this nature. The Trustee cannot come forward with relevant matter on reply and then be heard to complain that the DC Claimants have not rebutted any such newly adduced arguments or evidence. *See Keefe v. Shalala,* 71 F.3d 1060, 1066 n. 2 (2d Cir. 1995) (stating that normally the court "will not consider arguments raised for the first time in a reply brief"); *Knipe v. Skinner,* 999 F.2d 708, 711 (2d Cir. 1993) (stating that "[a]rguments may not be made for the first time in a reply brief"); *Nat'l Labor Relations Bd. v. Star Color Plate Serv.,* 843 F.2d 1507, 1510 n. 3 (2d Cir. 1988) (rejecting a party's "attempts to raise for the first time [a new question] in its reply brief"); *United States v. Letscher,* 83 F.Supp.2d 367, 377 (S.D.N.Y. 1999) (stating that a new argument is not a basis for granting summary judgment "because arguments raised in reply papers are not properly a basis for granting relief").

12

not the DC Claimants, and, again, there has been no discovery pertinent to this matter. But above all, the Trustee has not even made a legal argument. As such, the Trustee's protest that the DC Claimants have not "submitted any document" is purely disingenuous.

20. The Trustee's motions to reclassify the claims at issue must be denied.

*Conclusion*

For the foregoing reasons, the Trustee's motions should be denied, and this Court should enter an order denying those motions and ordering such further relief in favor of the DC Claimants and against the Trustee as it deems just and proper.

Dated: New York, New York
September 30, 2015

SCAROLA MALONE & ZUBATOV LLP

By: _____
Richard J.J. Scarola
Alexander Zubatov
*Attorneys for the 344 Individuals Identified
in the Notices of Appearance
at ECF Dkt. Nos. 8234, 8905 & 9549*
1700 Broadway
41st Floor
New York, NY  10019
Tel.: (212) 757-0007

13