UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS INC.,<br><br>Debtor. | |
| JAMES W. GIDDENS, as Trustee for the SIPA Liquidation of Lehman Brothers Inc.,<br><br>Plaintiff,<br><br>– against –<br><br>344 INDIVIDUALS, Identified in the Notices of Appearance of Bankruptcy Court ECF Dkt. Nos. 8234, 8905 and 9459, REHA COHEN, JAMES KNIPP, JOHN H. LANG, ROBERT D. MORRISON, MANNES M. SHALOWITZ, JOHN VALDRIGHI,<br><br>Defendants. | Case No. 08-01420 (SCC) SIPA |

**MEMORANDUM DECISION ON (I) TRUSTEE'S MOTION FOR
SUMMARY JUDGMENT WITH RESPECT TO THE EXECUTIVE
AND SELECT EMPLOYEES PLAN ADVERSARY PROCEEDING AND
(II) EMPLOYEES' CROSS-MOTION FOR SUMMARY JUDGMENT**

A P P E A R A N C E S:

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
By:     James C. Fitzpatrick, Esq.
        Karen M. Chau, Esq.

*Attorneys for James W. Giddens, as Trustee for the SIPA Liquidation of Lehman Brothers Inc.*

1

SCAROLA ZUBATOV SCHAFFZIN PLLC
1700 Broadway
41st Floor
New York, NY 10019
Tel.: (212) 757-0007
By:   Richard J.J. Scarola, Esq.
      Alexander Zubatov, Esq.

*Attorneys for the 344 Individuals Identified in the Notices of Appearance at ECF Dkt. Nos. 8234, 8905, and 9549*

**SHELLEY C. CHAPMAN**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is a dispute involving the characterization of certain deferred compensation claims of 349[1] former Shearson Lehman Brothers Inc. ("Shearson") executives and select employees (collectively, the "Employees"). The narrow legal issue presented is whether the Employees' deferred compensation claims are subordinate to claims of general unsecured creditors of Lehman Brothers Inc. ("LBI") pursuant to the terms of the Executive and Select Employees Deferred Compensation Plan (the "ESEP Agreements")[2] governing such deferred compensation.

**BACKGROUND**

The basic facts are not in dispute and are as follows:

In 1985, the Employees entered into the ESEP Agreements with Shearson pursuant to which the Employees agreed to defer portions of their compensation in exchange for benefits to be paid by Shearson under the ESEP Agreements upon the Employees' retirements. The ESEP Agreements contained a number of specific provisions relating to the subordination of the Employees' right to payment. First, Section 5(d) of the ESEP Agreements provides in relevant part that:

> [P]ayments to be made by Shearson to Employee hereunder are unsecured subordinated obligations of Employer only, and Employee is only a general subordinated creditor of Shearson in that respect.

---

[1] On July 13, 2017, the Court received a letter from the Trustee (ECF No. 14337) informing the Court that Ms. Reha Cohen was inadvertently not served with the Trustee's Motion (as defined below). Accordingly, while Ms. Cohen is listed in the case caption of this decision, the ruling contained herein shall not apply to Ms. Cohen at this time.

[2] A representative copy of one of the ESEP Agreements is annexed to the Declaration of Richard J.J. Scarola (ECF No. 14194) as Exhibit A.

3

ESEP Agreements, § 5(d). "Employer" is defined in the preamble of the ESEP Agreements as Shearson for itself or as agent for certain of its subsidiaries. Additionally, Section 9(d) of the ESEP Agreements provides that:

> Employee irrevocably agrees that the obligations of Shearson hereunder with respect to the payment of amounts credited to his deferred compensation account are and shall be subordinate in right of payment and subject to the prior payment or provision for payment in full of all claims of all other present and future creditors of Shearson whose claims are not similarly subordinated . . . In the event of . . . liquidation pursuant to [SIPA] . . . the Employee shall not be entitled to participate or share, ratably or otherwise, in the distribution of the assets of Shearson until all claims of all other present and future creditors of Shearson, whose claims are senior to claims arising under this agreement, have been fully satisfied or provision has been made therefor.

ESEP Agreements, § 9(d).

Finally, Section 11 of the ESEP Agreements provides that each "[a]greement shall be binding upon Employee and Employee's heirs and legal representatives and upon Shearson and Shearson's successors and assigns." ESEP Agreements, § 11.

Between 1985, when the parties entered into the ESEP Agreements, and the commencement of the LBI liquidation under SIPA in 2008, Shearson, like many corporations, was involved in a number of significant corporate events, including a number of name changes. In 1988, "Shearson Lehman Brothers Inc." changed its name to "Shearson Lehman Hutton Inc." *See* Decl. of T. Sisson, Ex. 2, annexed as Ex. C to Chau Decl. (as defined below). In 1990, Shearson Lehman Hutton Inc. changed its name to "Shearson Lehman Brothers Inc." *Id.* Finally, in 1993, "Shearson Lehman Brothers Inc." changed its name to "Lehman Brothers Inc.," referred to herein as LBI. *Id.* Thus, while LBI may loosely be referred to as a "successor" of Shearson, the corporate history leaves no doubt that LBI is the corporation "f/k/a" or formerly known as Shearson.

4

In May 2009, the Employees submitted claims against LBI for payment of deferred compensation based on the ESEP Agreements. *See, e.g.*, Proof of Claim No. 7001872. Through six omnibus objections to claims, the Trustee objected to the Employees' claims and sought to reclassify them as subordinated based on the subordination provisions of the ESEP Agreements. (ECF Nos. 6847 (filed July 19, 2013), 6865 (filed July 23, 2013), 6866 (filed July 23, 2013), 7264 (filed September 16, 2013), 7388 (filed October 3, 2013) and 8153 (filed January 28, 2014)). The Employees objected to the omnibus objections as being procedurally improper under the Federal Rules of Bankruptcy Procedure. *See* Decl. of E. McGuinn, ¶ 2, annexed as Ex. B to Scarola Decl. (as defined below). In order to address such objections, the Trustee agreed to resolve the claims objections via an adversary proceeding, and, on February 6, 2014, he filed a motion to convert the claim objections to a consolidated adversary proceeding. (ECF No. 8196.) On April 1, 2014, the Court entered an order granting the Trustee's motion. (ECF No. 8576.) The Trustee then served the conversion order (to which the adversary complaint was annexed) on the Employees. Consistent with the relief sought in the omnibus objections, the adversary complaint seeks to subordinate the Employees' claims pursuant to sections 502(b) and 510(a) of the Bankruptcy Code.

On April 29, 2014, the Employees filed an answer, which they amended on November 10, 2016. (ECF No. 8783; ECF No. 13966.)

On June 6, 2014, the Employees filed a motion seeking to compel arbitration of the subordination dispute under the ESEP Agreements. (ECF Nos. 9067, 9068, and 9069). The Court entered an order denying their motion on August 11, 2014 (ECF No. 9617.) The Court's order denying arbitration was affirmed by the District Court by order dated September 30, 2015. *In re Lehman Bros. Holdings, Inc.*, 2015 WL 5729645 (S.D.N.Y. Sept. 30, 2015). By order

5

dated October 6, 2016, the Second Circuit affirmed the decision of the District Court. 663 F. App'x 65 (2d Cir. 2016). Undaunted in their efforts to have another court preside over the dispute, in November 2014, the Employees also filed a motion to withdraw the reference and have this dispute determined in the District Court. The District Court (Ramos, J.) denied the motion to withdraw in December 2016. (A transcript of the December 1, 2016 hearing before Judge Ramos is annexed to a letter to the Court filed at ECF No. 14076).

On January 13, 2017, the Trustee, seeking to end years of litigation over these claims, filed a Motion for Summary Judgment with Respect to the Executive and Select Employees Plan Adversary Proceeding (the "Trustee's Motion") arguing that the Employees' claims should be subordinated pursuant to the plain language of the ESEP Agreements and Section 510(a) of the Bankruptcy Code. (ECF No. 14128.) In connection with the Trustee's Motion, the Trustee also filed (i) Trustee's Local Bankruptcy Rule 7056-1 Statement of Material Facts as to Which There is No Genuine Dispute and (ii) Declaration of Karen Chau in Support of the Trustee's Motion (the "Chau Decl."). (ECF No. 14129; ECF No. 14131.)

On March 10, 2017, the Employees filed a Memorandum of Law of the 344 Individuals Identified in the Notices of Appearances at ECF Dkt. Nos. 8234, 8905 and 9459 in Opposition to the Trustee's Motion for Summary Judgment and in Support of their Cross-Motion for Summary Judgment (the "Employees' Motion"), arguing that the Employees' claims should be deemed "unsubordinated." (ECF No. 14196.) In connection with the Employees' Motion, the Employees also filed (i) the Affidavit of Robert E. Genirs; (ii) the Declaration of Richard J.J. Scarola in Opposition to the Trustee's Motion for Summary Judgment and in Support of the Cross-Motion for Summary Judgment of the 344 Individuals Identified in the Notices of Appearances at ECF Dkt. Nos. 8234, 8905 and 9459 (the "Scarola Decl."); and (iii) Local

6

Bankruptcy Rule 7056-1 Counterstatement to the Trustee's Statement of Facts as to Which There Is No Material Dispute and Statement of Additional Material Facts as to Which There Is No Genuine Dispute. (ECF No. 14193; ECF No. 14194; ECF No. 14195.) The Trustee filed a reply (the "Trustee's Reply") (ECF No. 14220) and a response to the Employees' statement of facts (ECF No. 14221), to which the Employees filed a further reply (the "Employees' Reply"). (ECF No. 14253.)

The Court heard oral argument on the Trustee's Motion and the Employees' Motion on July 12, 2017. As this Court has stated on numerous occasions when addressing issues relating to the claims of former Lehman employees, it is never a good day when the claims of such employees are set aside. For many, expected compensation for years of dedicated service disappeared in an instant in September 2008. The Trustee nonetheless has obligations under the law to administer the LBI case in accordance with applicable law, as does the Court. Accordingly, while the Court (and undoubtedly the Trustee) are sympathetic to the plight of the Employees, the Court finds no basis on which the Employees' claims can be allowed as unsubordinated general unsecured claims. The Court's analysis is as follows.

**DISCUSSION**

Under Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, a party may move for summary judgment on any claim or any portion of a claim. Fed. R. Civ. P. 56(a). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Neshewat v. Salem*, 365 F. Supp. 2d. 508, 517 (S.D.N.Y. 2005). A fact is material "if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of New York*, 746

F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Where there are no disputes of material fact, "[t]he proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment." *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002).

Here, there are no disputes of material fact. The Trustee and the Employees agree on the language of the ESEP Agreements but differ in their interpretation and application of the subordination provisions. The Trustee seeks to enforce the subordination provisions as written; in contrast, the Employees argue that LBI is barred from enforcing such subordination provisions because (i) LBI is not a continuation of Shearson as the named party under the ESEP Agreements; (ii) LBI breached the ESEP Agreements; and (iii) the ESEP Agreements were executory contracts which were automatically rejected and are therefore unenforceable.

The Court finds no ambiguity in the language of the subordination provisions of the ESEP Agreements. Accordingly, there is no need to resort to parole evidence of any kind as to intent or as to any other issue pertaining to the ESEP Agreements. None of the Employees' arguments has merit. Simply put, the subordination provisions are enforceable by LBI because LBI and Shearson are one in the same, and any alleged breach of the ESEP Agreements or rejection of them by LBI is irrelevant.

I. **The Unambiguous Language Of The ESEP Agreements Provides For The Subordination of The Employees' Claims.**

Where an agreement is unambiguous, a court is to enforce the contract according to its plain terms. *See Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465-66 (2d Cir. 2010). By his motion, the Trustee argues that summary judgment is appropriate on the issue of whether the Employees' claims are subordinated under Section 510(a) of the Bankruptcy

8

Code because the unambiguous language of the ESEP Agreements provides that payments to be made by Shearson thereunder constitute subordinated unsecured obligations. *See* ESEP Agreements, §§ 5(d), 9(d).

The Employees do not contest that the Employees and Shearson agreed to subordinate claims for deferred compensation. But, they say, LBI is not Shearson. They argue that LBI is not entitled to enforce the subordination provisions because (i) as a result of numerous significant events in the corporate history of Shearson/LBI, LBI is not the same Shearson entity that is the Employees' counterparty under the ESEP Agreements or (ii) even if LBI is a successor to Shearson, the subordination provisions of the ESEP Agreements do not apply to Shearson's successors and, therefore, such provisions cannot be enforced by LBI.

### A.     LBI Is A Continuation Of The Shearson Entity With Which Employees Contracted.

As noted by Judge Ramos in his decision denying the Employees' motion to withdraw the reference, "in resolving the parties' dispute, [this] court must decide whether Shearson and the debtor, LBI, are the same or different entities for the purposes of the subordination provision." December 1, 2016 Hr'g Tr. 39:22-40:1 (annexed to ECF No. 14076). Indeed, this is the crux of the issue before the Court.

Relying solely on citations to Wikipedia, the Employees point to the following events as indications that the corporation known as Shearson in 1985 has changed so significantly that LBI could not be considered the same entity that entered into the ESEP Agreements: (i) a $1 billion merger with E.F. Hutton in 1988 in which "Shearson Lehman Brothers Inc." changed its name to "Shearson Lehman Hutton Inc.;" (ii) the subsequent sale of the E.F. Hutton business in 1990 after which the corporation changed its name back to "Shearson Lehman Brothers Inc.;" (iii) an asset sale of the Shearson retail brokerage and asset management business to Primerica, which

9

merged into Smith Barney, creating Smith Barney Shearson; and (iv) the spin-off and separation from American Express of the resulting, remaining business which is now LBI. *See* Employees' Motion, pp. 73-75; Employees' Reply, pp. 11-24.

Even assuming the Wikipedia-listed events occurred as described, the Trustee correctly points out that none of those events morphed the corporation into a *separate legal entity* named Lehman Brothers Inc. As the Trustee argues, "none of [these events] changed the corporation into what [the Employees] themselves acknowledge is necessary for a corporate successor to arise: 'another corporation.'" Trustee's Reply, p. 4. The Shearson of 1985 was the same Shearson of 1990 notwithstanding a merger and intervening name change to Shearson Lehman Hutton Inc.; the continuity in the "Shearson Lehman" name of the corporation indicates continuity of the legal entity.

The Employees also attempt to link (a) the 1993 name change which removes "Shearson" from the corporate name to (b) the sale or spinoff by American Express of all of its asset management and retail brokerage business, but they have presented no evidence to support the conclusion that such sale created a new successor entity in LBI or that there was a dissolution or new incorporation of the Shearson/LBI corporation at any point during the relevant time period. Rather, as the Trustee correctly points out, the terms Shearson and LBI can (and must) be used interchangeably because the legal entity retained its corporate existence from before the time of the ESEP Agreements up until the SIPA liquidation. *See* Trustee's Reply, p. 4.

The Employees do not appear to dispute that Shearson was the surviving entity of any of the corporate events to which they refer, and under Delaware law, the surviving entity retains its own property, rights and privileges and does not become its own successor. *Texaco Refining and Marketing, Inc. v. Delaware River Basin Commission*, 824 F.Supp. 500, 507 (D. Del. 1993)

10

(finding "[a] statutory merger . . . results in a combination of the two corporations with the surviving corporation attaining the property, rights, and privileges of the absorbed corporation, as well as retaining its own property, rights, and privileges"), *aff'd*, 30 F.3d 1488 (3d Cir. 1994).

Further, the change from "Shearson Lehman Brothers Inc." to "Lehman Brothers Inc." in 1993 was solely a name change, as evidenced by the Certificate of Amendment of Certificate of Incorporation of Shearson Lehman Brothers Inc. filed with the Secretary of State of the State of Delaware on August 2, 1993. *See* Decl. of T. Sisson, Ex. 2, annexed as Ex. C to Chau Decl. The Certificate of Amendment references a change in the name of the corporation and makes no reference to a corresponding dissolution of the corporation or to the formation of a new corporation, both of which would be critical to the creation of a "successor." It is also noteworthy that all of the events noted by the Employees are documented through filings with the Delaware Secretary of State under the same registered company number. It is well-established that the change of a corporate name has no legal significance. *See, e.g.,* 6 Fletcher Cyc. Corp. § 2456 (stating that "[a] change of name by a corporation has no more effect upon the identity of the corporation than a change of name by a natural person has upon the identity of such person"). Accordingly, the Court finds that Shearson and LBI are the same legal entity.

### B.    Even If LBI Were A "Successor" to Shearson, The Subordination Provisions Would Still Apply To LBI.

Even if LBI were considered to be a continuation of Shearson after these events, the Employees further argue that LBI would at most be considered a "successor" to Shearson. *See* Employees' Motion, pp. 73-75; Employees' Reply, pp. 11-24. The Employees contend that the Trustee has "admitted" that LBI is a successor to Shearson in public filings that the Trustee had made in this case and with the Securities and Exchange Commission. *See* Employees' Motion, pp. 67-70; Employees' Reply, pp. 7-11. The Court does not agree that the Trustee's use of the

11

term "successor" in SEC filings or filings in this case can be characterized as judicial admissions unless such statements were made in respect of a legal question of successorship at issue. The context makes clear that, to the extent that the term "successor" was used with regard to the characterization of LBI in pleadings or other filings, it was being used in the colloquial sense only.

Assuming, *arguendo,* that LBI is not the same legal entity as Shearson but is instead a successor to Shearson, LBI would nonetheless be entitled to enforce the rights and obligations set forth in the subordination provisions of the ESEP Agreements. It is hornbook law that a "successor" steps into the shoes of its predecessors with all the rights and obligations that entail. *Gessler v. Sobieski Destylarnia S.A.*, No. 06CIV6510HB, 2007 WL 1295671, at *4 (S.D.N.Y. May 3, 2007), *rev'd on different grounds sub nom., Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86 (2d Cir. 2009).

Notwithstanding applicable law, the Employees argue that the parties to the ESEP Agreements agreed that the subordination provisions would not apply to Shearson's successors because the language in those provisions only refers to "Shearson" and not to "Shearson and its successors and assigns" as it does in other places in the agreement. *See* Employees' Motion, pp.75-86. The Employees seek to parse the agreement into provisions that continue to apply to LBI (*i.e.*, the obligation to pay deferred compensation) and those that only applied to the now defunct Shearson (*i.e.*, the subordination provisions). Besides being logically flawed and logistically untenable, these arguments ignore the simple fact that the ESEP Agreements contain a clear and unambiguous successor provision. Section 11 of the ESEP Agreements, which is entitled "Binding Effect," specifically states, in relevant part, that the "*agreement shall be binding upon Employee and Employee's heirs and legal representatives and upon Shearson and*

12

*Shearson's successors and assigns.*" ESEP Agreements, § 11.  The Employees argue that such language is ambiguous because it differs from so-called standard boilerplate language that an agreement "is binding upon, and *inures to the benefit of*" successors and assigns. *See* Employees' Reply, p. 27.  Since Section 11 omits these purportedly key words, the Employees interpret the ESEP Agreements to mean that only the *obligations*, and none of the *rights* under the agreements, including the "right" to subordinate payments, passes on to successors.  To bolster this interpretation, the Employees point to revisions in subsequent deferred compensation agreements with LBI which replaced the term "Shearson" in the subordination section of the agreement with the defined term "Company" (the definition of which included "successors"). *See* Employees' Motion, pp. 77-78; Employees' Reply, pp. 8-9.  As previously noted, however, such extraneous evidence can only be considered if the subject language is ambiguous.  It is not.

Section 11 of the ESEP Agreements, which states, in relevant part, that the "*agreement shall be binding upon Employee and Employee's heirs and legal representatives and upon Shearson and Shearson's successors and assigns*" unambiguously binds the parties' successors and assigns.  "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation . . . unless each is a reasonable interpretation." *Law Debenture*, 595 F.3d at 467 (citations omitted).  The Court is unpersuaded by the Employees' creative but ultimately convoluted construction of the ESEP Agreements.  The Court finds that the ESEP Agreements, including all rights and obligations thereunder, are binding on Shearson's successors.

II. **LBI's Alleged Breaches of The ESEP Agreements Do Not "Unsubordinate" The Employees' Claims.**

The Employees assert that under New York law, a party's performance under a contract is excused where the other party has committed a material breach. *Merrill Lynch & Co. Inc. v.*

13

*Allegheny Energy, Inc.* 500 F.3d 171, 186 (2d Cir. 2007). The Employees claim that LBI materially breached the ESEP Agreements by failing to (i) comply with federal tax law; (ii) maintain an administrative committee; and (iii) "right the ship," which refers to the duty of LBI to take certain steps to ensure the solvency of the company, including the suspension of ESEP payments due thereunder, in the event that net capital falls below certain federal regulatory reserve requirements. Employees' Motion, pp. 15-33. The Employees further argue that the second and third alleged breaches were particularly significant because, had LBI not breached those duties, LBI could have avoided insolvency or at least a dispute over subordination. *See* Employees' Motion, pp. 16-17. The Employees contend that, as a result of such material breaches, LBI is barred from enforcing the subordination provisions in the ESEP Agreements. The Trustee argues – and the Court agrees – that the alleged breaches are irrelevant as a matter of law; even assuming the Employees' allegations to be true, none provides a basis for unsubordination of the Employees' claims.

First, as the Trustee points out, the Employees rely heavily on case law that is inapposite because each case cited by the Employees demonstrates only that a material breach excuses the other party's *performance*. *See* Trustee's Reply, pp. 12-15. Here, the Trustee has neither sought to recover damages from the Employees nor has he sought to compel any performance by them; instead, he seeks to classify the Employees' claims in the manner required by the ESEP Agreements. The Employees argue that the Trustee's contention is a "distinction without a difference" because the Trustee is attempting to enforce a contractual provision, which they describe as "specific performance of the now-extinguished subordination provisions." Employees' Motion, n. 16. The Court disagrees with the Employees' creative but flawed characterization of the subordination provisions in the ESEP Agreements as "specific

14

performance." The enforcement of a contractual provision which sets forth the priority of deferred compensation payments in the event of a liquidation is not akin to the enforcement of a contractual provision requiring a party to *perform* an obligation (such as a standstill provision or payment for services rendered).

Second, the Trustee contends that even if the Employees were making an affirmative claim against LBI for breach (which they are not) and they were successful, contractual provisions are routinely enforced even where they operate to benefit the allegedly breaching party. *See* Trustee's Motion, pp. 15-17 (citing to *Betal Environmental Corp. v. Local Union No. 78, Asbestos, Lead & Hazardous Waste Laborers*, 162 F. Supp. 2d 246, 260 (S.D.N.Y.2001) (finding that where an unambiguous contract provision excluded recovery of lost profits or overhead expenses, the breaching defendant had no liability for such damages); *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 317-18 (S.D.N.Y.2002) (dismissing a claim for consequential damages in favor of the breaching defendant where such damages were excluded by the terms of the contract)). Although the Employees have not made an affirmative claim for breach of the ESEP Agreements, they nevertheless argue that the subordination provisions are ineffective because of LBI's alleged breaches of the ESEP Agreements. The Trustee submits that such argument effectively amounts to an argument that the subordination provisions (or the ESEP Agreements as a whole) should be rescinded, and an action for rescission could not result in the un-subordination of their claims. *See* Trustee's Motion, pp. 18-19. Since the Employees have not brought a claim for rescission, the question is not before the Court and the Court need not address this issue.

Additionally, and dispositively, the Trustee points out that a claim arising from an affirmative breach of an obligation related to or arising from a subordinated contractual claim

15

would itself be subordinated. *See* Trustee's Motion, pp. 17-18. Were that not the case, a party alleging a claim for breach in connection with a claim subordinated under Section 510 of the Bankruptcy Code would be able to leap-frog up the Code's priority scheme. *See In re Alta+Cast, LLC*, 301 B.R. 150, 154 (Bankr. D. Del. 2003) (finding that where the debtor had breached an employment agreement by failing to give the employee a promissory note which was subordinated under the employment agreement, the employee was "not entitled to be in a better position because of the Debtor's breach than he would [have been] if the Debtor had fully performed") (citations omitted). The law could not be clearer on this point. *See also Wisnouse v. Telsey*, 367 F. Supp. 855, 857-58 (S.D.N.Y. 1973) (holding that a customer was entitled to return of his securities from a liquidating broker dealer but that the judgment was subordinated to the rights of the general creditors as agreed upon under the securities agreement); *Minority Equity Capital Co. v. Jackson*, 798 F. Supp. 200, 202 (S.D.N.Y. 1992) (awarding a judgment to a creditor pursuant to a note but holding that collection on that judgment was deferred until the defendant satisfied senior debts, as required by a governing subordination agreement).

Thus, even assuming *arguendo* that LBI had breached the ESEP Agreements on any of the grounds alleged by the Employees, the subordination provisions of the ESEP Agreements would still be operable and any breach of contract claim would at most result in a subordinated claim for damages. Any claim by the Employees against LBI for breach of contract should not put the Employees in a better position than they would have occupied had the contract been fulfilled according to its terms. Accordingly, the Employees' claims that LBI breached the ESEP Agreements are irrelevant to whether the Employees' claims for unpaid deferred compensation should be subordinated.

**III.    The Employees' Executory Contract Arguments are Irrelevant to the Question of Subordination.**

The Employees argue that enforcement of the subordination provisions is barred because the ESEP Agreements constitute executory contracts which were rejected pursuant to Section 365(d)(1) of the Bankruptcy Code.  The Employees assert that the ESEP Agreements constitute executory contracts because both the Trustee and the Employees retain unperformed obligations under the agreements, such as (i) LBI's obligation to pay the Employees' pension benefits and to maintain an administrative committee and (ii) the Employees' obligations to repay LBI any deferred compensation payouts which would have resulted in a violation of the net capital threshold requirements under the ESEP Agreements, and to cooperate with LBI for the purpose of securing life insurance.  *See* Employees' Motion, pp. 53-56.  In support of their contention, the Employees specifically cite to, among others, Judge Peck's decision in *In re Lehman Brothers Holdings Inc.*, 422 B.R. 407, 416 (Bankr. S.D.N.Y. 2010) in which this Court stated that outstanding obligations to make payments pursuant to swap agreements constituted sufficient grounds to find that the contracts in question were executory.  *See* Employees' Motion, p. 57.  Because the ESEP Agreements allegedly were executory contracts which were not assumed by the Trustee, the Employees argue that such agreements were automatically rejected, and the Trustee cannot now seek to enforce the subordination clauses thereunder.  *See* Employees' Motion, pp. 53-65.

While the Trustee maintains that the ESEP Agreements are not executory contracts, the Trustee does not seek summary judgment on this point inasmuch as he believes that it is unnecessary for the Court to decide this issue.  Notwithstanding, and even assuming, *arguendo*, that the ESEP Agreements are executory contracts that were rejected, the Trustee argues that the subordination provisions set forth in the agreements would remain operative.  The extensive case

17

law cited by the Trustee provides ample support for the well-established principle that rejection of an executory contract does not retroactively invalidate its provisions. *See* Trustee's Reply, pp. 20-22 (citing *In re Continental Airlines*, 981 F.2d 1450, 1459 (5th Cir. 1993) (finding that rejection of an executory contract "does not invalidate the contract, or treat the contract as if it did not exist."); *In re Lavigne*, 114 F.3d 379, 386-87 (2d Cir. 1997) (stating that "[r]ejection is not the power to release, revoke, repudiate, void, avoid, cancel or terminate, or even to breach, contract obligations"); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687, 703 (Bankr. S.D.N.Y. 1992) (holding that "[r]ejection merely frees the estate from the obligation to perform; it does not make the contract disappear" and rejection does not "vaporize" or otherwise avoid interests created by the underlying contract)). Accordingly, even if the ESEP Agreements are executory contracts that were rejected, the Court finds that any such rejection would not affect the enforceability of the terms of such agreements, including the subordination provisions contained therein. At this time, the Court makes no determination as to whether or not the ESEP Agreements are executory contracts that were rejected because it finds that such characterization would have no effect on the priority of the Employees' claims arising from the ESEP Agreements.

      For all of the foregoing reasons, (i) the Trustee's Motion is granted; and (ii) the Employees' Motion is denied. The parties are directed to submit an order consistent with this Decision.

Dated: July 13, 2017
New York, New York

                                          /s/ Shelley C. Chapman
                                          UNITED STATES BANKRUPTCY JUDGE