HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>     LEHMAN BROTHERS INC.,<br><br><br>                         Debtor. | Case No. 08-01420 (SCC) SIPA |


## SUMMARY SHEET[1]

| | |
|---|---|
| **Name and Role of Applicant:** | Hughes Hubbard & Reed LLP<br>Counsel to the Trustee |
| **Application Period:** | October 1, 2019 to December 31, 2019 |
| **Fees Requested for Counsel:** | $1,411,893.45 |
| **Expenses Requested for Counsel:** | $37,775.11 |
| **Blended Hourly Rate for Fees Requested During Application Period:** | $731.48 |
| **Prior Fees and Expenses Approved for Counsel on Interim Basis:** | $409,672,425.75 |
| **Prior Fees Held-Back and Unpaid Subject to Court Approval:** | $250,000.00 |

---

1.  Fees reflect a voluntary ten percent (10%) discount from Hughes Hubbard & Reed LLP's standard rates of $156,947.55 at the request of the Securities Investor Protection Corporation ("SIPC").  In addition, there were voluntary reductions in the amount of $17,321.85 in fees and $12,608.23 in expenses written off prior to the submission of monthly invoices to SIPC.  There was an additional reduction of $634.50 after submission of invoices to SIPC.  The Trustee seeks compensation as a member of Hughes Hubbard & Reed LLP and will not seek separate trustee commissions pursuant to section 326 of the Bankruptcy Code.

### Hours, Rates, and Fees for Services Rendered from October 1, 2019 through December 31, 2019

#### Trustee

| Name | Department | Law School Graduation | Hours | Rate | Fees |
|------|------------|----------------------|-------|------|------|
| J W Giddens | Bankruptcy | 1966 | 77.40 | $1,305.00 | $101,007.00 |
| **Total Trustee** | | | **77.40** | | **$101,007.00** |

#### Partner and Counsel

| Name | Department | Law School Graduation | Hours | Rate | Fees |
|------|------------|----------------------|-------|------|------|
| W Beausoleil | Litigation | 1996 | 4.50 | $967.50 | $4,353.75 |
| C Cohen | Litigation | 1995 | 6.70 | $990.00 | $6,633.00 |
| J Fitzpatrick | Litigation | 1996 | 73.60 | $990.00 | $72,864.00 |
| A Frelinghuysen | Bankruptcy | 2007 | 64.80 | $832.50 | $53,946.00 |
| C Kiplok | Bankruptcy | 2000 | 278.70 | $1,035.00 | $288,454.50 |
| A F Fowler | Corporate | 1998 | 2.50 | $945.00 | $2,362.50 |
| J McGoey | Litigation | 2005 | 115.50 | $810.00 | $93,555.00 |
| W Stein | Litigation | 1977 | 11.50 | $1,170.00 | $13,455.00 |
| **Total Partner and Counsel** | | | **557.80** | | **$535,623.75** |

#### Associates

| Name | Department | Law School Graduation | Hours | Rate | Fees |
|------|------------|----------------------|-------|------|------|
| E Beitler | Bankruptcy | 2016 | 48.40 | $585.00 | $28,314.00 |
| K Chau | Litigation | 2011 | 223.50 | $787.50 | $176,006.25 |
| B Cohen | Litigation | 2015 | 189.90 | $652.50 | $123,909.75 |
| J Cohen | Tax | 2014 | 29.90 | $697.50 | $20,855.25 |
| E Diers | Bankruptcy | 2011 | 3.70 | $787.50 | $2,913.75 |
| C Harbus | Litigation | 2018 | 23.70 | $427.50 | $10,131.75 |
| K Jones | Litigation | 2019 | 24.40 | $427.50 | $10,431.00 |
| J Margolin | Bankruptcy | 2002 | 255.10 | $787.50 | $200,891.25 |
| D Nuzzaci | Litigation | 2015 | 13.10 | $652.50 | $8,547.75 |
| N Velonis | Bankruptcy | 2018 | 123.50 | $427.50 | $52,796.25 |
| C Whelan | Bankruptcy | 2018 | 277.40 | $427.50 | $118,588.50 |
| **Total Associate** | | | **1,212.60** | | **$753,385.50** |

**Paralegals**

| Name | Hours | Rate | Fees |
|------|-------|------|------|
| C Catoe | 47.20 | $265.50 | $12,531.60 |
| N Garton | 35.20 | $265.50 | $9,345.60 |
| **Total Paralegal** | **82.40** | | **$21,877.20** |
| **TOTAL Requested** | **1,930.20** | | **$1,411,893.45** |

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

LEHMAN BROTHERS INC.,                    Case No. 08-01420 (SCC) SIPA

                                  Debtor.

**THIRTY-FIRST APPLICATION OF HUGHES HUBBARD & REED LLP FOR
ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM
OCTOBER 1, 2019 THROUGH DECEMBER 31, 2019**

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

        Hughes Hubbard & Reed LLP ("HHR"), as counsel to James W. Giddens (the

"Trustee")[2] as Trustee for the liquidation of Lehman Brothers Inc. ("Debtor" or "LBI"), submits

its thirty-first application (the "Application") for an order pursuant to section 78eee(b)(5) of the

Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78eee(b)(5),[3] sections 330 and 331 of

the Bankruptcy Code, and Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), allowing and awarding interim compensation for services performed by

---

2.   The Trustee seeks compensation as a member of HHR and will not seek separate trustee commissions pursuant
     to section 326 of the Bankruptcy Code.

3.   References hereinafter to provisions of SIPA shall omit "15 U.S.C."

HHR for the period commencing October 1, 2019 through December 31, 2019 (the "Application Period") in the amount of $1,411,893.45 for professional services rendered by HHR during the Application Period and  $37,775.11 as reimbursement of HHR's actual and necessary expenses incurred during the Application Period.  This represents voluntary reductions and write-offs of $17,321.85 in fees and $12,608.23 in expenses.  A ten percent (10%) holdback for the Application Period of $141,189.34 will be subject to future Court order.  In support of the Application, HHR respectfully represents:

**PRELIMINARY STATEMENT**

1.      During the Application Period, HHR, under this Court's supervision and with the oversight of the Securities Investor Protection Corporation ("SIPC"), significantly advanced the four remaining main LBI estate workstreams:  (i) litigation related to the Executive and Select Employee Deferred Compensation Plan ("ESEP"); (ii) monetization and recovery of legacy assets; (iii) reduction of administrative expense through the Trustee's final data abandonment plan; and (iv) preparation of the estate for closure.

2.      First, there are 381 remaining disputed general creditor claims related to the ESEP, which were asserted in an aggregate capped amount of $271 million.  On October 24, 2018, the claimants filed a notice of appeal to the Second Circuit of the District Court's Order affirming this Court's order granting the Trustee's motion for summary judgment seeking to classify the ESEP claims as contractually subordinate and denying the claimants' cross-motion (the "Subordination Appeal").  During the Application Period, the parties argued the Subordination Appeal before the Second Circuit.  On November 1, 2019, the Second Circuit issued a Summary Order and Judgment affirming this Court's and the District Court's orders. 344 Individuals v. Giddens, Case No. 18-3188 (2d Cir. Nov. 1, 2019, ECF No. 66) (the "Second

Circuit Subordination Order"). The Second Circuit Subordination Order became final and effective on January 31, 2020.

3.  This Court granted the Trustee's motion to reclassify as unsecured approximately $260 million of the ESEP claims that had been asserted with secured or priority status (ECF No. 13053). The ESEP claimants appealed to the District Court. On September 30, 2019, the District Court entered an order affirming this Court's order. 344 Individuals v. Giddens, Case No. 15-cv-09670 (PGG) (S.D.N.Y. Sept. 30, 2019, ECF No. 19) (the "District Court Reclassification Order"). During the Application Period, the claimants appealed the District Court Reclassification Order to the Second Circuit. 344 Individuals v. Giddens, Case No. 19-3245 (2d Cir. 2019) (the "Reclassification Appeal"). The Reclassification Appeal is fully briefed and awaiting oral argument.

4.  The ESEP claimants also initiated an adversary proceeding in which they contend that certain assets in unliquidated amounts related to the ESEP are not part of the LBI estate and that those assets, plus unspecified interest, costs, and fees, should be turned over to the ESEP claimants. *The LBI Deferred Compensation Defense Steering Committee v. Giddens*, Case No. 19-01368 (SCC) (Bankr. S.D.N.Y. Oct. 7, 2019) (the "Second ESEP Adversary Proceeding"). If claimants prevail in the Second ESEP Adversary Proceeding, assets currently considered LBI estate assets would be deemed outside the estate and no longer available to creditors. HHR prepared the Trustee's motion to dismiss the Second ESEP Adversary Proceeding and filed it with the Court on November 6, 2019 (Id. at ECF 5). The Trustee's motion is *sub judice*.

5.  Second, HHR pursued contingent and unliquidated claims in certain antitrust class action settlements. HHR also marshaled certain distributions for the LBI estate from securities class action settlements. Other efforts included final sweeps of banks and other

depositories for residual assets, maintaining the best possible return on estate assets despite declining rates, and reducing other residual assets to cash.

6.      Third, HHR evaluated additional electronic databases and hard copy documents to determine whether they are necessary to assist the Trustee's professionals in concluding the liquidation.  Based on this analysis, HHR prepared the Trustee's tenth data abandonment motion, which was filed with the Court on November 26, 2019 (the "Tenth Data Abandonment Motion") (ECF No. 15031).  The Tenth Data Abandonment Motion sought Court authority to abandon and destroy fifty-two (52) LBI electronic systems and related databases containing approximately 366 gigabytes of data.  The Court entered an order approving the Tenth Data Abandonment Motion on December 18, 2019 (the "Tenth Data Abandonment Order") (ECF No. 15051).  To date, the Trustee has abandoned over 263 terabytes of data resulting in annual savings of over $2.3 million.

7.      HHR also advanced further cost-savings initiatives as to LBI records. HHR determined that migrating the remaining "live" relativity database of legacy LBI communications and documents and third-party document productions to two sets of electronic storage media maintained by Deloitte Financial Advisory Services LLP ("Deloitte") would save the estate an additional $1 million per year.  HHR prepared the Trustee's motion seeking this Court's authority to migrate the database, which was filed with the Court on November 26, 2019 (the "Data Migration Motion") (ECF No. 15048.)  The Court entered an order approving the Data Migration Motion on December 18, 2019 (the "Data Migration Order") (ECF No. 15048).

8.      Fourth, HHR also prepared for, upon the final resolution of the ESEP litigation, the prompt closure of the estate, and advanced the potential creation, if appropriate, of a post-closing vehicle to administer certain contingent and unliquidated assets (*e.g.*, claims pending against the antitrust class action settlement funds).

9.      The Trustee's ability to call on the resources of HHR in multiple areas

during the Application Period allowed the Trustee to continue winding down the LBI estate.

HHR respectfully asks that the Court grant this Application and allow interim compensation for

professional services performed and reimbursement of expenses as requested.

## BACKGROUND

10.     On September 19, 2008 (the "Filing Date"), the Honorable Gerard E.

Lynch, Judge of the United States District Court for the Southern District of New York, entered

the Order Commencing Liquidation (the "LBI Liquidation Order") pursuant to the provisions of

SIPA in the case captioned Securities Investor Protection Corporation v. Lehman Brothers Inc.,

Case No. 08-CIV-8119 (GEL) (S.D.N.Y. 2008).

11.     The LBI Liquidation Order (i) appointed the Trustee for the liquidation of

the business of the Debtor pursuant to section 78eee(b)(3) of SIPA; (ii) appointed HHR counsel

to the Trustee pursuant to section 78eee(b)(3) of SIPA; and (iii) removed this case to this Court

pursuant to section 78eee(b)(4) of SIPA.

12.     On November 7, 2008, the Court entered the Order Regarding

Disinterestedness of the Trustee and Counsel to the Trustee (ECF No. 243) finding that the

Trustee and HHR are disinterested pursuant to section 78eee(b)(6) of SIPA, section 327(a) of the

Bankruptcy Code, and Bankruptcy Rule 2014(a) and are therefore in compliance with the

disinterestedness requirement in section 78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy

Code, and Bankruptcy Rule 2014(a).[4]

---

4.    HHR subsequently filed the Supplemental Declarations on Behalf of Hughes Hubbard & Reed LLP Regarding
      Disinterestedness of Counsel (ECF Nos. 1627, 2656, 3141, 3287, 4121, 7415, 11807, 14381, 14452, 14590,
      14997, 15032).

13.     On December 17, 2019 the Court entered the Twelfth Amended Order
Pursuant to Section 78eee(b)(5) of SIPA, Sections 105, 330 and 331 of the Bankruptcy Code,
Bankruptcy Rule 2016(a) and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing
Interim Monthly Compensation of Trustee and Hughes Hubbard & Reed LLP (the "Twelfth
Amended Administrative Fee Order," ECF No. 15046).  Pursuant to the Twelfth Amended
Administrative Fee Order, the Court authorized the Trustee to pay all remaining unpaid fees
requested in HHR's monthly statements through September 2019, excluding fees voluntarily
written-off at the request of SIPC, except for $250,000.00, which was held back pending further
order of the Court.

14.     In accordance with all applicable orders and guidelines described herein,
HHR has filed thirty prior applications for allowance of interim compensation and
reimbursement of expenses incurred in prior Application Periods (the "Prior Interim
Applications").  The annexed schedule hereto as Exhibit A identifies the Prior Interim
Applications and the orders entered with respect to such applications:

## COMPENSATION REQUESTED

15.     HHR submits that the fees and disbursements requested are reasonable and
necessary.  SIPC, through its detailed analysis of HHR's monthly professional fee and expense
requests, supports approval of this application, and by statute is owed due deference for its
recommendation.  Accordingly, HHR respectfully requests that the Court grant this Application
and allow interim compensation for professional services performed and reimbursement for
expenses incurred during the Application Period as requested.  The declaration of Christopher K.
Kiplok, Esq. in further support of the fees and disbursements requested herein is annexed hereto
as Exhibit B.

16.     The Trustee expended 77.40 hours in the rendition of professional services, and HHR expended 1,852.80 hours in the rendition of professional and paraprofessional services on behalf of the Trustee during the Application Period, resulting in a blended hourly rate of $731.48 for fees incurred.

17.     At SIPC's request, HHR's fees in this case reflect a ten percent (10%) public interest discount from HHR's standard rates. This discount has resulted in a voluntary reduction during the Application Period of $156,947.55. Prior to filing this Application, HHR provided SIPC with monthly fee statements setting forth HHR's fees for services rendered and expenses incurred during the Application Period.[5] There were voluntary reductions in the amount of $17,321.85 in fees and $12,608.23 in expenses prior to the submission of monthly invoices to SIPC. In addition, $634.50 was written off after submission of invoices to SIPC. HHR's fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

18.     Exhibit C annexed hereto provides a schedule of the expenses for which reimbursement is requested. The requested expenses are customarily charged to and paid by HHR's bankruptcy and non-bankruptcy clients. In addition, HHR has not charged for a number of categories of expenses regularly charged to and paid by HHR's clients, and other bankruptcy estates in this District, including overtime meals and after-hours travel services. These amounts combine to a voluntary reduction of $12,608.23.

---

5.  The United States Trustee does not play a role in a SIPA proceeding as to professional compensation matters or otherwise. See, e.g., Bankruptcy Rule 2002(k). Such function is generally mirrored by SIPC's role in the proceeding.

19.      <u>Exhibit D</u> annexed hereto is a summary by project categories of services performed by HHR.

20.      There is no agreement or understanding between the Trustee, or HHR and any other person, other than members of HHR, for sharing of compensation to be received for services rendered in this case.

21.      To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not classified or processed prior to the preparation of this Application, HHR reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

22.      Overall, in accordance with the Twelfth Amended Administrative Fee Order, SIPC has authorized the Trustee to effectuate payment to HHR from estate funds on hand totaling $1,270,704.11 in fees and $37,775.11 in expenses incurred during the Application Period.  These amounts respectively represent ninety percent (90%) of fees and one hundred percent (100%) of expenses, as authorized in the Twelfth Amended Administrative Fee Order, after accounting for voluntary reductions in connection with the monthly invoices.  As a result, as further described above, $141,189.34 in fees have been held back and have not been paid to HHR.  HHR seeks allowance of fees and expenses during the Application Period totaling $1,411,893.45 in fees and $37,775.11 in expenses.  (If this Application is granted, the total amount of fees held back and unpaid through the end of the Application Period will be $391,189.34.)

## SUMMARY OF SERVICES PERFORMED DURING APPLICATION PERIOD

23.      During the Application Period, HHR continued to marshal LBI assets and advance all litigation before appellate courts as quickly as possible in order to close the estate, and concluded the Trustee's sixth distribution on allowed unsecured claims.

24.    <u>ESEP Claims</u>.  The 381 remaining contested claims were subject to a single consolidated adversary proceeding before this Court.  These claims seek deferred compensation pursuant to the ESEP.  The Trustee sought to treat the ESEP claims as subordinate pursuant to the terms of the ESEP.  The claims are capped at approximately $271 million—of which more than $260 million is asserted and fully reserved for as secured.  On September 26, 2018, the District Court entered an order affirming this Court's order granting the Trustee's motion for summary judgment seeking to treat the ESEP claims as contractually subordinate and denying the claimants' cross-motion.  See <u>344 Individuals v. Giddens</u>, No. 17-6246 (AT) (S.D.N.Y. Sept. 26, 2018) (ECF No. 17) (the "<u>District Court Order</u>").  On October 24, 2018, the claimants filed a notice of appeal to the Second Circuit.  See <u>344 Individuals v. Giddens</u>, Case No. 18-3188 (2d Cir. 2018) (ECF No. 1).

25.    During the Application Period, HHR, in consultation with SIPC, prepared for oral argument before the Second Circuit in the Subordination Appeal, which occurred on October 21, 2019.  On November 1, 2019, the Second Circuit issued the Subordination Order.

26.    This Court granted the Trustee's motions to reclassify as unsecured the ESEP claims that claimants had asserted with secured or priority status (ECF No. 13053).  The ESEP claimants appealed to the District Court.  See <u>344 Individuals v. Giddens</u>, Case No. 15-cv-09670 (PGG) (S.D.N.Y.).  The District Court issued the Reclassification Order on September 30, 2019.  As described above, the claimants appealed to the Second Circuit.

27.    During the Application Period, HHR prepared for appellate litigation in the Reclassification Appeal.  The Reclassification Appeal is fully briefed and awaiting oral argument.

28.    During the Application Period, HHR researched the causes of action asserted by the ESEP claimants in the Second ESEP Adversary Proceeding.  Based on HHR's

research during the Application Period, HHR promptly prepared and filed the Trustee's motion

to dismiss the Second ESEP Adversary Proceeding on November 6, 2019.  Id. at ECF No. 5.

HHR then analyzed the claimants' opposition to the Trustee's motion, prepared the Trustee's

reply brief, and filed the reply with the Court on January 21, 2020.  Id. at ECF No. 17.  The

Trustee's motion is *sub judice*.

29.    Affirmative Recoveries.  HHR advanced LBI's proofs of claim to

participate in settlements arising from six antitrust litigations involving allegations of collusive

manipulation of several financial industry benchmarks and instruments, as well as misconduct by

financial institutions in the foreign exchange market.  Subsequent to the Application Period, the

Trustee received notice of a forthcoming distribution of approximately $1.1 million for LBI's

claim in the settlements in the ISDAfix Antitrust Litigation.  Alaska Electrical Pension Fund v.

Bank of America, N.A., No. 14-cv-7126 (JMF) (S.D.N.Y. 2014).  In addition, HHR actively

monitored for other antitrust settlements in which the LBI estate could potentially participate.

30.    HHR also managed the portfolio of claims asserted on behalf of the LBI

estate in securities class action settlements as to which the Trustee has not yet received a

determination or an initial distribution.  HHR further monitored for other security class action

litigations where the LBI estate may have a claim.

31.    HHR continued outreach program to major banks, depositories, mutual

fund groups, and proxy agents requesting that they conduct a final sweep of their accounts and

transfer to the Trustee any and all LBI or predecessor firm property.  Most counterparties have

been responsive to the request.  After the Application Period, the Trustee recovered

approximately $702,000 in LBI property from State Street Bank and Trust Company.

32.    Tax Matters.  During the Application Period, HHR negotiated and

documented a Closing Agreement between the Trustee and New York State Department of

Taxation and Finance ("<u>DTF</u>"), which resolved the DTF's audit of the net operating losses reported on LBI's 2014 and 2015 New York franchise tax returns.  The Court entered an order approving the Closing Agreement on December 18, 2018 (ECF No. 15049).  Pursuant to the Closing Agreement, LBI would be able to shelter at least $1.34 billion of estate income allocated to New York State before incurring a New York State franchise tax liability.  The Closing Agreement allows LBI to avoid the expense, risk and delay that would be associated with litigation with the DTF and furthers the Trustee's closure plan.

33.    <u>Cost Control and Wind-Down</u>.  HHR and SIPC outlined the steps necessary to make a final distribution and close the estate within nine months of the resolution of the sole remaining claims litigation and related adversary proceeding in correspondence to the Court, which was filed on April 30, 2019 (ECF No. 14905).

34.    During the Application Period, HHR advanced preparations of a post-closing vehicle to potentially administer certain LBI estate assets, the collection of which may extend beyond the estate's closure.  HHR continued data abandonment procedures described herein and consolidation of estate administrative functions.

35.    During the Application Period, the Trustee and HHR actively supervised Deloitte and Epiq Corporate Restructuring LLC ("<u>Epiq</u>"), the only additional remaining estate professionals, in the continued effort to reduce administrative costs and further the efficient administration of the LBI estate.  This oversight included preparation of the 2020 administrative budget, and reviewing staffing and technology resources in light of the progress of the liquidation.

36.    <u>Reporting</u>.  The Trustee has regularly provided updates on the liquidation directly to claimants through a status report to the Court at the December 17, 2019 omnibus hearing, interim reporting (ECF No. 15018), and liquidation balance sheets (ECF Nos. 15019,

14

15059). Most importantly, the Trustee and HHR have consulted and worked closely with SIPC

in all aspects of the liquidation.

## DETAILED DESCRIPTION OF SERVICES

37.    A more detailed overview of certain of the significant services rendered by

HHR, including the Trustee, during the Application Period follows, organized in accordance

with HHR's internal system of project or work codes.[6]

    a.   Asset Disposition (031164.00003):

- Identified residual assets, determined asset valuations, and monetized certain assets.

- Conducted an outreach program to major banks, depositories, mutual fund groups, and proxy agents requesting that they conduct a final sweep of their accounts and transfer to the Trustee any and all LBI or predecessor firm property.

- Identified residual assets, determined asset valuations, and monetized certain assets, including an approximately $136,000 recovery from a legacy LBI interest in a liquidated Massachusetts limited partnership vehicle.

- Recovered LBI unclaimed funds from Georgia, Pennsylvania, Utah, and the Providence of Quebec aggregating approximately $173,000 and asserted claims currently pending with California, Delaware, Louisiana, Massachusetts, and Oregon.

- Conducted, in coordination with a search firm, a final search for unclaimed property that may be held by other states.

    b.   Banking and Cash Management (031164.00005):

- Obtained best possible return on estate assets at MFUG Union Bank, N.A., despite declining interest rates.

- Marshaled and coordinated the management of LBI assets for the benefit of the estate.

---

6.    The Trustee's Twenty-First Interim Report for the Period April 1, 2019 Through September 30, 2019 and Quarterly Report on the General Creditor Claims Process (ECF No. 15018) and the Lehman Brothers Inc. Liquidation Balance Sheets as of September 30, 2019 and December 31, 2019 (ECF Nos. 15019, 15059) provide further detail of the estate's achievements and milestones met during the Application Period.

- Considered further consolidation of the estate bank accounts in preparation for closing of the estate.

c.  Business Operations/Strategic Planning (031164.00008):

- Supervised Deloitte and Epiq in an effort to further reduce administrative expenditures and reviewed accounting, consulting, and technology workstreams to ensure maximum estate efficiency.

- Conducted oversight of the LBI data center maintained at Deloitte and related technology projects undertaken by Deloitte.

- Monitored the 2019 administrative budget and prepared monthly budgetary reporting.

- Prepared the 2020 administrative budget.

- Examined estate workstreams on a weekly basis in furtherance of completing certain tasks while awaiting the conclusion of the remaining claims litigation and related adversary proceeding.

- Implemented certain measures outlined in the April 30, 2019 correspondence to the Court to prepare the estate for a clear and complete closure at the appropriate time.

d.  Case Administration and Fee Applications (031164.00009 and 00015):

- Coordinated with the Court regarding the December 17, 2019 omnibus hearing, and monitored the docket for case developments.

- Prepared the HHR Thirtieth Fee Application, which was filed with the Court on November 22, 2019 (ECF No. 15026) and approved by the Court on December 18, 2019 (ECF No. 15050).

- Obtained Court approval of the Twelfth Amended Administrative Fee Order.

e.  General Creditor Claims Administration (031164.00011 and 00049):

- Prepared for oral argument in the Second Circuit Subordination Appeal, which took place on October 21, 2019.  As described above, on November 1, 2019, the Second Circuit issued the Second Circuit Subordination Order.

- Analyzed the District Court Reclassification Order, which was entered by the District Court on September 30, 2019.

- Prepared for further appellate litigation in the Reclassification Appeal before the Second Circuit.

- Evaluated and researched the claims asserted in the Second ESEP Adversary Proceeding.

- Drafted the Trustee's motion to dismiss the Second ESEP Adversary Proceeding.

- Analyzed the ESEP claimants' opposition to the Trustee's motion to dismiss the Second ESEP Adversary Proceeding and researched reply points.

- Monitored general creditor claims trading activity and coordinated with Epiq regarding updates to the general creditor claims register.

f.   Customer Inquiries, Research, and Document Management (031164.00012):

- Responded to inquiries related to distributions on allowed unsecured claims and related matters.

- Responded to telephone calls and correspondence from customers, creditors, and other parties-in-interest.

- Conducted team data and document management.

g.   LBHI and LBIE Matters (031164.00021 and 00022):

- Monitored certain LBHI matters for potential ramifications for the LBI estate.

- Pursued a recovery in LBI's interest in a $230 million judgment against Saad Trading, Contracting, and Financial Services Co. (the "Saad Notes") with Lehman Brothers International (Europe), the Saad Notes' other owner.

h.   Litigation (Class-Action Claims and Other Litigation) (31164.00023):

- Advanced LBI's proofs of claim in certain antitrust and securities class action litigations.

- Responded to certain inquiries from class action administrators regarding LBI claims asserted in pending class actions.

- Coordinated with administrators regarding LBI distributions in certain proceedings and marshaled certain distributions.

- Analyzed potential LBI claims in additional antitrust and securities class actions in the United States and Europe.

- Responded to a third-party subpoena served on the Trustee in a California Superior Court proceeding.

i.    Fee Matters of Other Professionals (31164.00028):

- Monitored fee requests from Deloitte and Epiq.

j.    Regulatory Matters (31164.00029):

- Coordinated regularly with SIPC and regulators regarding the wind-down and closure planning and related matters.

k.    Tax and Employee Benefit Matters (31164.00030):

- Conducted settlement discussions with the DTF related to the DTF's audit of net operating losses reported on LBI's 2014 and 2015 New York State franchise tax returns.

- Documented and finalized a Closing Agreement and motion for Court authority to approve the closing agreement, which were filed with the Court on December 9, 2019 (ECF No. 15036).

- Obtained hearing of this motion on shortened notice in furtherance of the Trustee's closure planning (ECF No. 15039).

- Responded to and resolved certain creditor inquiries to the motion.

- Obtained Court approval of the motion (ECF No. 15049) and effectuated the Closing Agreement.

- Advised the Trustee in complying with LBI's income tax filings.

- Responded to tax-related information requests from various tax authorities.

- Coordinated all tax withholding and reporting requirements with respect to LBI and the Trustee.

l.    Trustee's Interim Reports to the Court (031164.00032):

- Prepared the Trustee's Twenty-First Interim Report for the Period April 1, 2019 Through September 30, 2019 and Quarterly Report on the General Creditor Claims Process (ECF No. 15018).

- Prepared the LBI Liquidation Balance Sheet as of June 30, 2019 (ECF No. 14950).

  m. <u>Barclays Matters (031164.00033)</u>:

- Evaluated LBI's contractual rights to acquire three (3) boxes of Lehman hardcopy engagement letters and other client correspondence from the period 1994 to 2008 owned by Barclays Capital Inc.   The Court entered an order on February 4, 2020 authorizing the Trustee to abandon this contractual right (ECF No. 15061).

  n. <u>Distribution Matters (031164.00047)</u>:

- Conducted planning regarding a potential future distribution and evaluated estate reserves in connection with the same.

  o. <u>Post-Closing Vehicle (031164.00052)</u>:

- Advanced the possible creation of a post-closing vehicle for certain contingent and unliquidated assets such as the claims in the antitrust settlement funds that may take substantial time to monetize through sale or collection.

- Refined certain draft corporate documents to support the creation of a potential post-closing vehicle.

- Updated research on corporate governance and tax issues in connection with preparation of the corporate documents.

- Evaluated certain administrative matters in connection with post-closing vehicle.

  p. <u>Data Abandonment (031164.00053)</u>:

- Prepared the Tenth Data Abandonment Motion.

- Obtained entry of the Tenth Data Abandonment Order.  The Order has been fully effectuated.

- Prepared the Data Migration Motion.

- Obtained entry of the Data Migration Order.  The Order has been fully effectuated.

- Conducted regular meetings with SIPC and Deloitte to identify all data and documents that must be retained under SIPC and other regulatory rules post-closing, while completely abandoning and destroying all other estate data in order to achieve a complete discharge at closing with no go forward costs.

## ACTUAL AND NECESSARY EXPENSES INCURRED BY HHR

38.    As set forth in Exhibit C, HHR seeks allowance of $37,775.11 in expenses

incurred in providing professional services during the Application Period.  It is HHR's practice

not to include charges for research services and express delivery and related expenditures in its

overhead, but rather to bill these expenses to clients.  These charges are intended to cover HHR's

direct operating costs, which are not incorporated into HHR's hourly billing rates.  Only clients

who actually use services of the types set forth in Exhibit C are separately charged for such

services.  This "unbundling" of such expenses results in a fairer allocation of such costs and

allows HHR to pass such costs on to each client in proportion to that client's use of such

services.

39.    Due to the distance of certain regulators, creditors, and other parties-in-

interest from HHR's New York offices, overnight delivery of documents and other materials was

required.  The actual expenses incurred in providing professional services were necessary,

reasonable, and justified under the circumstances to serve the needs of the estate and its

creditors.

40.    HHR has not charged for a number of categories of expenses regularly

charged to and paid by HHR's clients, including overtime meals and after-hours travel services.

### HHR'S REQUEST FOR INTERIM
### COMPENSATION SHOULD BE GRANTED

41.    HHR may submit applications to the Court for compensation for services

rendered and reimbursement for expenses during the course of the liquidation, which may be

done on an interim basis.  SIPA §§ 78eee(b)(5)(A)-(B).  Whenever an application for

compensation and reimbursement of expenses is filed, SIPC shall file its recommendation with

respect to such fees and expenses with the Court prior to the hearing on such application.  Id. at

§78eee(b)(5)(C).  The Court "shall place considerable reliance on the recommendation of SIPC" as to the allowances requested in such applications, and to the extent that such allowances are to be paid by SIPC, without reasonable expectation of recoupment, the Court shall award the amounts recommended by SIPC.  Id.; see e.g., Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 274 n.21 (1992) (recognizing that "SIPC's recommendation to court on trustee's compensation is entitled to 'considerable reliance' and is, under certain circumstances, binding").

42.    There will be sufficient funds available from the general estate to satisfy administrative expenses of the estate, including professional fees, without seeking to requisition funds from SIPC in order to pay these expenses.  In re Madoff, No. 08-1789, 2010 U.S. Dist. LEXIS 81492, at *15 (S.D.N.Y. Aug. 6, 2010) ("There are no grounds for differing opinions [as to whether the bankruptcy court is required to approve fee applications that SIPC recommended be approved] because [the issue] is directly addressed by SIPA—the court shall…place considerable reliance on the recommendation of SIPC.") (internal quotation marks omitted)); In re Donald Sheldon & Co., 153 B.R. 661, 668 (Bankr. S.D.N.Y. 1993) (SIPA requires…that "[w]e place considerable reliance on the recommendation of SIPC in ruling on [the Trustee's] application [for fees].") (internal quotation marks omitted).  As a result, in determining the allowance of HHR's compensation, while "considerable reliance" shall be placed on SIPC's recommendation, the Court must duly consider the nature, extent, and value of the services rendered.  SIPA § 78eee(b)(5)(C).

43.    HHR submits that its request for interim allowance of compensation is reasonable and complies with the provisions of the Bankruptcy Code governing applications for compensation and reimbursement of expenses, pursuant to section 78eee(b)(5) of SIPA.

44.    In the instant case, HHR respectfully submits that the services for which it seeks compensation in this Application, as highlighted above, at the time rendered, were believed

to be necessary for and beneficial to LBI's estate, creditors, and other parties-in-interest.  HHR further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to these constituencies.  In sum, the services rendered by HHR were necessary and beneficial and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved.  Accordingly, approval of the compensation sought herein is warranted.

## **CONCLUSION**

HHR respectfully submits that the services rendered during the Application Period and accomplishments to date merit the approval of the fees and disbursements requested herein, and respectfully requests that the Court enter an Order: (i) allowing and awarding $1,411,893.45 as an interim payment for professional services rendered by HHR during the Application Period and $37,775.11 as an interim reimbursement of the actual and necessary costs and expenses incurred by HHR in connection with the rendition of such services; and (ii) granting HHR such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      April 20, 2020

HUGHES HUBBARD & REED LLP

By: */s/ Christopher K. Kiplok*
    Christopher K. Kiplok
    Jeffrey S. Margolin
    Erin E. Diers
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726
Email:  chris.kiplok@hugheshubbard.com

Attorneys for James W. Giddens, Trustee for
the SIPA Liquidation of Lehman Brothers
Inc.

## Exhibit A

## Prior Fee Orders

| Application | Order | | Interim Fees Approved | Interim Expenses Approved |
|---|---|---|---|---|
| First Interim Application | April 8, 2009 | ECF No. 953 | $14,255,186.91 | $213,706.28 |
| Second Interim Application | August 27, 2009 | ECF No. 1602 | $15,185,697.98 | $132,764.74 |
| Third Interim Application | January 15, 2010 | ECF No. 2527 | $24,754,288.10 | $253,544.54 |
| Fourth Interim Application | June 25, 2010 | ECF No. 3425[1] | $23,948,533.80 | $354,344.87 |
| Fifth Interim Application | December 14, 2010 | ECF No. 3977 | $22,782,301.85 | $403,977.87 |
| Sixth Interim Application | March 31, 2011 | ECF No. 4208 | $19,204,952.90 | $284,450.53 |
| Seventh Interim Application | September 13, 2011 | ECF No. 4561 | $24,513,073.00 | $306,987.70 |
| Eighth Interim Application | March 28, 2012 | ECF No. 4993 | $24,262,920.00 | $299,915.54 |
| Ninth Interim Application | July 18, 2012 | ECF No. 5170 | $24,613,867.95 | $272,874.38 |
| Tenth Interim Application | December 13, 2012 | ECF No. 5547 | $16,427,687.00 | $193,708.32 |
| Eleventh Interim Application | June 19, 2013 | ECF No. 6562 | $24,795,838.05 | $189,208.77 |
| Twelfth Interim Application | June 19, 2013 | ECF No. 6564 | $37,183,203.53 | $336,274.26 |
| Thirteenth Interim Application | December 23, 2013 | ECF No. 7959 | $13,289,860.00 | $86,577.44 |
| Fourteenth Interim Application | January 30, 2014 | ECF No. 8165 | $17,086,096.05 | $152,661.69 |
| Fifteenth Interim Application | June 19, 2014 | ECF No. 9195 | $14,799,716.20 | $181,713.53 |
| Sixteenth Interim Application | December 11, 2014 | ECF No. 10665 | $14,056,117.35 | $156,340.37 |
| Seventeenth Interim Application | May 21, 2015 | ECF No. 12124 | $15,478,486.65 | $228,765.54 |
| Eighteenth Interim Application | July 22, 2015 | ECF No. 12524 | $11,415,481.20 | $142,543.85 |
| Nineteenth Interim Application | February 26, 2016 | ECF No. 13360 | $6,917,321.43 | $73,661.64 |
| Twentieth Interim Application | June 6, 2016 | ECF No. 13670 | $5,916,119.90 | $48,172.38 |
| Twenty-First Interim Application | December 2, 2016 | ECF No. 14069 | $9,280,353.48 | $102,450.92 |
| Twenty-Second Interim Application | April 28, 2017 | ECF No. 14242 | $4,056,578.25 | $47,329.00 |
| Twenty-Third Interim Application | October 4, 2017 | ECF No. 14422 | $3,675,590.10 | $59,975.69 |
| Twenty-Fourth Interim Application | December 15, 2017 | ECF No. 14471 | $2,166,787.35 | $40,053.74 |
| Twenty-Fifth Interim Application | April 5, 2018 | ECF No. 14556 | $1,506,987.45 | $28,079.84 |

---

1. Includes allowance of $8,129,062.53 as interim compensation for professional services as provided in the Fourth Interim Fee Order that was previously held back in the prior Interim Fee Orders. The remainder of fees totaling $1,000,000.00 was held back and remains subject to approval by the Court.

| Application | Order | | Interim Fees Approved | Interim Expenses Approved |
|---|---|---|---|---|
| Twenty-Sixth Interim Application | August 14, 2018 | ECF No. 14663 | $2,245,693.95 | $9,550.45 |
| Twenty-Seventh Interim Application | December 4, 2018 | ECF No. 14803 | $2,779,435.35 | $34,131.69 |
| Twenty-Eighth Interim Application | April 10, 2019 | ECF No. 14899 | $1,291,135.50 | $9,114.26 |
| Twenty-Ninth Interim Application | July 16, 2019 | ECF No. 14937 | $2,186,788.50 | $30,704.34 |
| Thirtieth Interim Application | December 18, 2019 | ECF No. 15050 | $2,411,481.15 | $54,247.08 |

# **Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

       LEHMAN BROTHERS INC.,

                          Debtor.

Case No. 08-01420 (SCC) SIPA

## <u>DECLARATION OF CHRISTOPHER K. KIPLOK</u>

       Christopher K. Kiplok, hereby declares under penalty of perjury pursuant to section 1746 of title 28 of the United States Code:

       1.     I am an attorney duly admitted to the bar of this Court and I am a partner of the law firm Hughes Hubbard & Reed LLP ("<u>HHR</u>").  I submit this declaration in support of HHR's thirty-first application (the "<u>Application</u>"), as counsel to James W. Giddens as Trustee (the "<u>Trustee</u>") for the liquidation of Lehman Brothers Inc. ("<u>Debtor</u>" or "<u>LBI</u>"), for allowance of interim compensation and reimbursement of expenses rendered from October 1, 2019 through December 31, 2019 (the "<u>Application Period</u>").

       2.     HHR was retained as counsel for the Trustee pursuant to a Decree of the Honorable Gerard E. Lynch, Judge of the United States District Court for the Southern District of New York, dated September 19, 2008.

       3.     This liquidation proceeding has been and will continue to be conducted in accordance with the provisions of the Securities Investor Protection Act of 1970 ("<u>SIPA</u>"), 15 U.S.C. § 78aaa et seq., and to the extent consistent therewith, in accordance with Chapters 1, 3, and 5 and sub-chapters I and II of Chapter 7 of Title 11 of the United States Bankruptcy Code.

       4.     I submit this declaration pursuant to Bankruptcy Rule 2016(a) in support of HHR's application for allowance of compensation in the amount of $1,411,893.45 for

professional services rendered and reimbursement in the amount of $37,775.11 for necessary

expenses incurred during the Application Period.

5.        As the lead counsel at HHR who is supervising this matter, I am familiar

with such services and with these proceedings.  These statements are correct to the best of my

knowledge and belief.  Such knowledge and belief is based upon my direct involvement with and

supervision of many of the tasks described in the Application, review of Court filings, and

conversations I have conducted with partners and associates of HHR and upon records kept by

HHR in the normal course of business.

6.        I hereby certify that (i) I have read the Application; (ii) to the best of my

knowledge, information, and belief formed after reasonable inquiry, the Application complies

with the guidelines for fee applications under Bankruptcy Rule 2016(a); and (iii) the fees and

disbursements sought are billed at or below rates customarily billed to other clients of HHR.

7.        I hereby certify that members of the staff of the Securities Investor

Protection Corporation ("SIPC") will be provided with a copy of this Application.

8.        I hereby certify that members of the staff of SIPC have been provided with

monthly statements of fees and disbursements accrued during the Application Period.

9.        I hereby certify that (i) in providing reimbursable nonlegal services to the

estate, HHR does not make a profit on such services; and (ii) in seeking reimbursement for a

service which HHR justifiably purchased or contracted from a third party, HHR requests

reimbursement only for the amount billed to HHR by the third-party vendors and paid by HHR

to such vendors.

10.        It is HHR's practice not to include charges for conference calls, research

services, messenger services, and express delivery in its overhead, but rather to bill out these

expenses to clients.  This "unbundling" of such expenses results in a fairer allocation of such

2

costs and allows HHR to pass such costs on to each client in proportion to that client's use of

such services.  In this case, HHR has not charged for and does not seek allowance of a number of

categories of expenses regularly charged to and paid by HHR's clients, including overtime

meals, and after-hours travel services.

11.    HHR has not made any previous application for allowance of fees for

professional services rendered during the Application Period.

12.    No agreement exists or shall be made between HHR and any other person

respecting the division of compensation to be received for professional services rendered in

connection with this SIPA proceeding.

13.    No agreement or understanding prohibited by 18 U.S.C. § 155 has been

made or shall be made by HHR.

I declare under penalty of perjury under the laws of the United States that the

foregoing is true and correct to the best of my knowledge.

Executed on the 20th day of April, 2020

*/s/ Christopher K. Kiplok*
Christopher K. Kiplok

**Exhibit C**

## <u>Expenses Requested from October 1, 2019 through December 31, 2019</u>

| Description | Total Amount |
|---|---|
| Lexis, Westlaw, Search Services and Research Services | $37,304.94 |
| Express Delivery and Messenger Services | $470.17 |
| | |
| **TOTAL EXPENSES REQUESTED** | **$37,775.11** |

## Exhibit D

**Summary of Project Categories**
**from October 1, 2019 through December 31, 2019**

| Category | Time (Hours) | Total Fees |
|---|---|---|
| Asset Disposition | 24.20 | $20,941.65 |
| Banking and Cash Management | 11.30 | $6,984.45 |
| Business Operations/Strategic Planning | 164.60 | $162,405.00 |
| Case Administration | 14.40 | $7,268.40 |
| General Creditor Claims Administration | 8.80 | $3,178.80 |
| Customer Inquiries and Research | 43.60 | $29,808.90 |
| Fee Applications (HHR) | 64.80 | $39,370.95 |
| LBHI Matters | 10.40 | $7,589.25 |
| LBIE Matters | 4.70 | $4,745.25 |
| Litigation (Including Class-Action Claims) | 214.50 | $163,559.25 |
| Fee Matters of Other Professionals | 3.00 | $2,362.50 |
| Regulatory Matters | 19.60 | $20,232.00 |
| Tax and Employee Benefit Matters | 69.50 | $54,364.05 |
| Trustee's Interim Reports to Court | 57.60 | $47,683.80 |
| Barclays Claims | 6.20 | $4,145.40 |
| Distribution Methodologies and Questions | 165.30 | $114,878.25 |
| ESEP Claim Litigation | 820.90 | $564,221.70 |
| Post-Closing Vehicle | 70.30 | $48,456.00 |
| Data Abandonment | 156.50 | $109,697.85 |
| **TOTALS FEES REQUESTED** | **1,930.20** | **$1,411,893.45** |