HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| LEHMAN BROTHERS INC., | Case No. 08-01420 (SCC) SIPA |
| Debtor. | |

## SUMMARY SHEET[1]

| | |
|---|---|
| **Name and Role of Applicant:** | Hughes Hubbard & Reed LLP<br>Counsel to the Trustee |
| **Application Period:** | January 1, 2020 to June 30, 2020 |
| **Fees Requested for Counsel:** | $3,003,597.90 |
| **Expenses Requested for Counsel:** | $22,161.79 |
| **Blended Hourly Rate for Fees Incurred During Application Period:** | $775.61 |
| **Prior Fees and Expenses Approved for Counsel on Interim Basis:** | $411,122,094.31 |
| **Prior Fees Held-Back and Unpaid Subject to Court Approval:** | $391,189.34 |

---

1.  Fees reflect a voluntary ten percent (10%) discount from Hughes Hubbard & Reed LLP's standard rates of $333,953.60 at the request of the Securities Investor Protection Corporation ("SIPC").  In addition, there were voluntary reductions in the amount of $23,463.90 in fees and $6,358.26 in expenses written off prior to the submission of monthly invoices to SIPC.  An additional $1,984.50 was written off after submission of monthly invoices to SIPC.  The Trustee seeks compensation as a member of Hughes Hubbard & Reed LLP and will not seek separate trustee commissions pursuant to section 326 of the Bankruptcy Code.

### Hours, Rates, and Fees for Services Rendered from January 1, 2020 through June 30, 2020

#### Trustee

| Name | Department | Law School Graduation | Hours | Rate | Fees |
|------|-----------|----------------------|-------|------|------|
| J W Giddens | Bankruptcy | 1966 | 178.80 | $1,372.50 | $245,403.00 |
| **Total Trustee** | | | **178.80** | | **$245,403.00** |

#### Partner and Counsel

| Name | Department | Law School Graduation | Hours | Rate | Fees |
|------|-----------|----------------------|-------|------|------|
| C Cohen | Litigation | 1995 | 5.70 | $1,044.00 | $5,950.80 |
| S DiCesare | Litigation | 2003 | 2.40 | $427.50 | $1,026.00 |
| J Fitzpatrick | Litigation | 1996 | 87.60 | $1,044.00 | $91,454.40 |
| A Frelinghuysen | Bankruptcy | 2007 | 247.60 | $868.50 | $215,040.60 |
| S L Harrison | Tax | 1975 | 11.50 | $1,327.50 | $15,266.25 |
| C Kiplok | Bankruptcy | 2000 | 527.60 | $1,327.50 | $600,672.60 |
| J McGoey | Litigation | 2005 | 179.30 | $1,138.50 | $150,880.95 |
| W Stein | Litigation | 1977 | 1.80 | $841.50 | $2,227.50 |
| N Swerdloff P.A. | Litigation | 1984 | 20.00 | $1,237.50 | $20,880.00 |
| **Total Partner and Counsel** | | | **1,083.50** | | **$1,103,399.10** |

#### Associates

| Name | Department | Law School Graduation | Hours | Rate | Fees |
|------|-----------|----------------------|-------|------|------|
| E Beitler | Bankruptcy | 2016 | 93.70 | $675.00 | $63,247.50 |
| K Chau | Litigation | 2011 | 51.10 | $805.50 | $41,161.05 |
| B Cohen | Litigation | 2015 | 322.10 | $715.50 | $230,462.55 |
| J Cohen | Tax | 2014 | 28.10 | $765.00 | $21,496.50 |
| G Farrell | Litigation | 2008 | 73.90 | $805.50 | $59,526.45 |
| C Harbus | Litigation | 2018 | 27.40 | $540.00 | $14,796.00 |
| A Herman | Tax | 2012 | 5.50 | $675.00 | $3,712.50 |
| K Jones | Litigation | 2019 | 28.20 | $445.50 | $12,563.10 |
| J Margolin | Bankruptcy | 2002 | 649.00 | $805.50 | $522,769.50 |
| C Mills | Litigation | 2005 | 166.10 | $805.50 | $133,793.55 |
| V Sandoval | Litigation | 2019 | 137.80 | $445.50 | $61,389.90 |
| N Velonis | Bankruptcy | 2018 | 228.90 | $540.00 | $123,606.00 |
| C Whelan | Bankruptcy | 2018 | 554.70 | $540.00 | $299,538.00 |
| **Total Associate** | | | **2,366.50** | | **$1,588,062.60** |

**Paralegals**

| Name | Hours | Rate | Fees |
|------|-------|------|------|
| C Catoe | 216.30 | $279.00 | $60,347.70 |
| N Garton | 30.00 | $279.00 | $8,370.00 |
| **Total Paralegal** | **246.30** | | **$68,717.70** |
| **TOTAL INCURRED** | **3,875.10** | | **$3,005,582.40** |
| **TOTAL REQUESTED** | | | **$3,003,597.90** |

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Attorneys for James W. Giddens,
Trustee for the SIPA Liquidation of Lehman Brothers Inc.


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

LEHMAN BROTHERS INC.,                          Case No. 08-01420 (SCC) SIPA

                                    Debtor.


### THIRTY-SECOND APPLICATION OF HUGHES HUBBARD & REED LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM JANUARY 1, 2020 THROUGH JUNE 30, 2020

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Hughes Hubbard & Reed LLP ("HHR"), as counsel to James W. Giddens (the

"Trustee")[1] as Trustee for the liquidation of Lehman Brothers Inc. ("Debtor" or "LBI"), submits

its thirty-second application (the "Application") for an order pursuant to section 78eee(b)(5) of

the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78eee(b)(5),[2] sections 330 and 331

of the Bankruptcy Code, and Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), allowing and awarding interim compensation for services performed by

---

1. The Trustee seeks compensation as a member of HHR and will not seek separate trustee commissions pursuant to section 326 of the Bankruptcy Code.

2. References hereinafter to provisions of SIPA shall omit "15 U.S.C."

HHR for the period commencing January 1, 2020 through June 30, 2020 (the "Application

Period") in the amount of $3,003,597.90 for professional services rendered by HHR during the

Application Period and $22,161.79 as reimbursement of HHR's actual and necessary expenses

incurred during the Application Period.  This represents voluntary reductions and write-offs of

$23,463.90 in fees and $6,358.26 in expenses.  A ten percent (10%) holdback for the Application

Period of $300,359.79 will be subject to future Court order.  In support of the Application, HHR

respectfully represents:

## PRELIMINARY STATEMENT

1.      As a result of the progress achieved during the Application Period, HHR,

under this Court's supervision and with the oversight of the Securities Investor Protection

Corporation ("SIPC"), is in the position to effectuate a seventh interim distribution of

approximately $49 million to LBI's general unsecured creditors.  This will be in addition to the

more than nine billion dollars already distributed and will bring total general unsecured claim

recoveries to approximately 39.97%, an achievement far in excess of any reasonable expectation

during the midst of Lehman's collapse and the financial crisis of the Great Recession.

2.      HHR made the seventh interim distribution possible due to HHR's

continued progress in marshaling LBI legacy assets, including antitrust and securities class-

action claims, and the release of administrative reserves based on the overall progress of the

liquidation towards closure.  HHR has continued ongoing initiatives to reduce to administrative

expenses, including through Court-approved data abandonment and contractual abandonment

motions paired with several strategic storage initiatives.

3.      Based on HHR's efforts, upon final resolution of the litigation related to

the Executive and Select Employee Deferred Compensation Plan ("ESEP"), HHR will be in a

position to effectuate the prompt closure of the estate.

4.    During the Application Period, HHR continued to advance the ESEP litigation.  First, the ESEP claimants' Second Circuit appeal of this Court's and the District Court's orders reclassifying as unsecured approximately $260 million of the ESEP claims is fully briefed.  344 Individuals v. Giddens, Case No. 19-3245 (2d Cir. 2019) (the "Reclassification Appeal").  The Second Circuit will conduct oral argument for the Reclassification Appeal on October 19, 2020.

5.    Second, on June 15, 2020, this Court issued a Memorandum Opinion and Order granting the Trustee's motion to dismiss the ESEP claimants' adversary proceeding in which they contended that their deferred compensation amounts are not assets of the LBI estate and should be turned over to them (the "Memorandum Opinion and Order").  The LBI Deferred Compensation Defense Steering Committee v. Giddens, Case No. 19-01368 (SCC) (Bankr. S.D.N.Y. June 15, 2020) (ECF No. 29) (the "Second ESEP Adversary Proceeding").  The ESEP claimants appealed the Memorandum Opinion and Order.  Id. at ECF No. 32.  On July 20, 2020, the Court entered an order granting the Trustee's motion for certification of a direct appeal to the Second Circuit.  Id. at ECF No. 48.  Thereafter, the Trustee, pursuant to 28 U.S.C. § 158(d)(2)(A), petitioned the Second Circuit for permission for direct appeal.  The Trustee's petition is currently sub judice.  The LBI Deferred Compensation Defense Steering Committee v. Giddens, Case No. 20-2358 (2d Cir. 2020).

6.    Throughout the COVID-19 Pandemic, HHR has advanced all LBI workstreams toward conclusion as HHR has maintained a robust virtual office to ensure continued prompt and efficient administration of the LBI estate.  HHR respectfully asks that the Court grant this Application and allow interim compensation for professional services performed and reimbursement of expenses as requested.

## BACKGROUND

7.      On September 19, 2008 (the "Filing Date"), the Honorable Gerard E.

Lynch, Judge of the United States District Court for the Southern District of New York, entered

the Order Commencing Liquidation (the "LBI Liquidation Order") pursuant to the provisions of

SIPA in the case captioned Securities Investor Protection Corporation v. Lehman Brothers Inc.,

Case No. 08-CIV-8119 (GEL) (S.D.N.Y. 2008).

8.      The LBI Liquidation Order (i) appointed the Trustee for the liquidation of

the business of the Debtor pursuant to section 78eee(b)(3) of SIPA; (ii) appointed HHR counsel

to the Trustee pursuant to section 78eee(b)(3) of SIPA; and (iii) removed this case to this Court

pursuant to section 78eee(b)(4) of SIPA.

9.      On November 7, 2008, the Court entered the Order Regarding

Disinterestedness of the Trustee and Counsel to the Trustee (ECF No. 243) finding that the

Trustee and HHR are disinterested pursuant to section 78eee(b)(6) of SIPA, section 327(a) of the

Bankruptcy Code, and Bankruptcy Rule 2014(a) and are therefore in compliance with the

disinterestedness requirement in section 78eee(b)(3) of SIPA, section 327(a) of the Bankruptcy

Code, and Bankruptcy Rule 2014(a).[3]

10.     On December 17, 2019 the Court entered the Twelfth Amended Order

Pursuant to Section 78eee(b)(5) of SIPA, Sections 105, 330 and 331 of the Bankruptcy Code,

Bankruptcy Rule 2016(a) and Local Bankruptcy Rule 2016-1 Establishing Procedures Governing

Interim Monthly Compensation of Trustee and Hughes Hubbard & Reed LLP (the "Twelfth

Amended Administrative Fee Order," ECF No. 15046).  Pursuant to the Twelfth Amended

---

3.   HHR subsequently filed the Supplemental Declarations on Behalf of Hughes Hubbard & Reed LLP Regarding
     Disinterestedness of Counsel (ECF Nos. 1627, 2656, 3141, 3287, 4121, 7415, 11807, 14381, 14452, 14590,
     14997, 15032).

Administrative Fee Order, the Court authorized the Trustee to pay all remaining unpaid fees requested in HHR's monthly statements through September 2019, excluding fees voluntarily written-off at the request of SIPC, except for $250,000.00, which was held back pending further order of the Court.

11.    In accordance with all applicable orders and guidelines described herein, HHR has filed thirty-one prior applications for allowance of interim compensation and reimbursement of expenses incurred in prior Application Periods (the "Prior Interim Applications").  The annexed schedule hereto as Exhibit A identifies the Prior Interim Applications and the orders entered with respect to such applications:

## COMPENSATION REQUESTED

12.    HHR submits that the fees and disbursements requested are reasonable and necessary.  SIPC, through its detailed analysis of HHR's monthly professional fee and expense requests, supports approval of this application, and by statute is owed due deference for its recommendation.  Accordingly, HHR respectfully requests that the Court grant this Application and allow interim compensation for professional services performed and reimbursement for expenses incurred during the Application Period as requested.  The declaration of Christopher K. Kiplok, Esq. in further support of the fees and disbursements requested herein is annexed hereto as Exhibit B.

13.    The Trustee expended 178.80 hours in the rendition of professional services, and HHR expended 3,696.30 hours in the rendition of professional and paraprofessional services on behalf of the Trustee during the Application Period, resulting in a blended hourly rate of $775.61 for fees incurred.

14.    At SIPC's request, HHR's fees in this case reflect a ten percent (10%) public interest discount from HHR's standard rates.  This discount has resulted in a voluntary

reduction during the Application Period of $333,953.60.  Prior to filing this Application, HHR

provided SIPC with monthly fee statements setting forth HHR's fees for services rendered and

expenses incurred during the Application Period.[4]  There were voluntary reductions in the

amount of $23,463.90 in fees and $6,358.26 in expenses prior to the submission of monthly

invoices to SIPC.  HHR's fees are reasonable based on the customary compensation charged by

comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a

competitive national legal market.

15.    Exhibit C annexed hereto provides a schedule of the expenses for which

reimbursement is requested.  The requested expenses are customarily charged to and paid by

HHR's bankruptcy and non-bankruptcy clients.  In addition, HHR has not charged for a number

of categories of expenses regularly charged to and paid by HHR's clients, and other bankruptcy

estates in this District, including overtime meals and after-hours travel services.  These amounts

combine to a voluntary reduction of $6,358.26.

16.    Exhibit D annexed hereto is a summary by project categories of services

performed by HHR.

17.    There is no agreement or understanding between the Trustee, or HHR and

any other person, other than members of HHR, for sharing of compensation to be received for

services rendered in this case.

18.    To the extent that time or disbursement charges for services rendered or

disbursements incurred relate to the Application Period, but were not classified or processed

---

4.    The United States Trustee does not play a role in a SIPA proceeding as to professional compensation matters or
otherwise.  See, e.g., Bankruptcy Rule 2002(k).  Such function is generally mirrored by SIPC's role in the
proceeding.

prior to the preparation of this Application, HHR reserves the right to request additional

compensation for such services and reimbursement of such expenses in a future fee application.

19.     Overall, in accordance with the Twelfth Amended Administrative Fee

Order, SIPC has authorized the Trustee to effectuate payment to HHR from estate funds on hand

totaling $2,703,238.11 in fees and $22,161.79 in expenses incurred during the Application

Period.  These amounts respectively represent ninety percent (90%) of fees and one hundred

percent (100%) of expenses, as authorized in the Twelfth Amended Administrative Fee Order,

after accounting for voluntary reductions in connection with the monthly invoices.  As a result,

as further described above, $300,559.79 in fees have been held back and have not been paid to

HHR.  HHR seeks allowance of fees and expenses during the Application Period totaling

$3,003,597.90 in fees and $22,161.79 in expenses.  (If this Application is granted, the total

amount of fees held back and unpaid through the end of the Application Period will be

$691.549.13.)

## SUMMARY OF SERVICES PERFORMED DURING APPLICATION PERIOD

20.     During the Application Period, HHR prepared for the seventh interim

distribution to general unsecured creditors, while continuing to marshal LBI assets and

attempting to resolve the ESEP litigation as quickly as possible in order to close the estate.

21.     <u>General Creditor Distributions</u>.  During the Application Period, HHR took

measures necessary to distribute funds to LBI's creditors.  HHR drafted the Trustee's Motion for

an Order to (I) Establish a Seventh Interim Distribution Fund for General Unsecured Creditor

Claims; (II) Release Reserves from the Fifth Interim Distribution Fund and the Sixth Interim

Distribution Fund; and (III) Make a Seventh Interim Distribution to Holders of Allowed

Unsecured Creditor Claims with a Record Date of June 30, 2020, which was filed with the Court

on July 23, 2020 (ECF No. 15128) (the "<u>Distribution Motion</u>").

22.     As described above, the Distribution Motion sought this Court's authority to effectuate distributions of approximately $49 million, constituting a return of 0.2176% on allowed general unsecured claims. The Court entered an order approving the Distribution Motion on August 18, 2020 (ECF No. 15138). The distribution will bring total payments to allowed general unsecured creditors up to approximately 39.97%, amounting to more than $9.075 billion distributed on allowed general unsecured claims. The distribution is scheduled to occur in mid-September 2020.

23.     ESEP Claims. This Court granted the Trustee's motions to reclassify as unsecured the approximately $260 million in ESEP claims that claimants had asserted with secured or priority status on November 12, 2015 (ECF No. 13053). The ESEP claimants appealed to the District Court. See 344 Individuals v. Giddens, Case No. 15-cv-09670 (PGG) (S.D.N.Y.). The District Court issued the Reclassification Order on September 30, 2019. As described above, the claimants appealed to the Second Circuit.

24.     During the Application Period, HHR engaged in appellate litigation in the Reclassification Appeal. HHR researched and drafted the Trustee's appellate brief, which was filed with the Second Circuit on March 5, 2020. Reclassification Appeal at ECF No. 51. The Reclassification Appeal is fully briefed and oral argument is scheduled for October 19, 2020.

25.     During the Application Period, HHR advanced the Trustee's motion to dismiss the Second ESEP Adversary Proceeding. HHR prepared the Trustee's reply brief, which was filed with the Court on January 21, 2020. Second ESEP Adversary Proceeding at ECF No. 17. HHR represented the Trustee at oral argument conducted by the Court regarding the Trustee's motion to dismiss on February 19, 2020. As described above, on June 15, 2020, the Court issued the Memorandum and Order dismissing the Second ESEP Adversary Proceeding. Thereafter, HHR has pursued a direct appeal to the Second Circuit.

26.    <u>Affirmative Recoveries</u>.  HHR advanced LBI's proofs of claim to participate in settlements arising from six (6) antitrust litigations involving allegations of collusive manipulation of several financial industry benchmarks and instruments, as well as misconduct by financial institutions in the foreign exchange market.  During the Application Period, the Trustee received a distribution of approximately $1.1 million for LBI's claim in the settlements in the ISDAfix Antitrust Litigation.  <u>Alaska Electrical Pension Fund v. Bank of America, N.A.</u>, No. 14-cv-7126 (JMF) (S.D.N.Y. 2014).  In addition, HHR actively monitored for other antitrust settlements in which the LBI estate could potentially participate.

27.    HHR also managed the portfolio of claims asserted on behalf of the LBI estate in securities class action settlements as to which the Trustee has not yet received a determination or an initial distribution.  HHR further monitored for other security class action litigations where the LBI estate may have a claim.

28.    HHR continued its outreach program to major banks, depositories, mutual fund groups, and proxy agents requesting that they conduct a final sweep of their accounts and transfer to the Trustee any and all LBI or predecessor firm property.  Most counterparties have been responsive to the request.  During the Application Period, the Trustee recovered approximately $702,000 in LBI property from State Street Bank and Trust Company.

29.    <u>Cost Control and Wind-Down</u>.  HHR and SIPC outlined the steps necessary to make a final distribution and close the estate within nine months of the resolution of the sole remaining claims litigation and related adversary proceeding in correspondence to the Court, which was filed on April 30, 2019 (ECF No. 14905).

30.    During the Application Period, HHR advanced preparations of a post-closing vehicle to potentially administer certain LBI estate assets, the collection of which may extend beyond the estate's closure.

31.     HHR continued to evaluate pre- and post-filing date documents and data maintained by the LBI estate. To date, the Trustee has abandoned over 263 terabytes of data resulting in over $2.3 million of annual savings.  The Trustee's professionals have also archived the relativity database in electronic storage media resulting in an additional savings of $1 million per year.

32.     During the Application Period, HHR coordinated with over twenty (20) estate professionals, who have performed services for the Trustee during the course of the liquidation, to ensure that (i) all LBI records in their possession have been returned to the estate for appropriate disposition; and (ii) any professional work product that they maintain, related to their retention, will be destroyed according to each firm's retention policies as the matters are closed.

33.     In connection with this exercise, HHR prepared a motion to abandon any LBI interest in 588 hard copy files and electronic media maintained by HHR in connection with the LBI proceedings, which was filed with the Court on April 27, 2020 (ECF No. 15092) (the "Eleventh Data Abandonment Motion").  The Court granted the motion on May 14, 2020 (ECF No. 15104) (the "Eleventh Data Abandonment Order").

34.     During the Application Period, the Trustee and HHR actively supervised Deloitte & Touche LLP ("Deloitte") and Epiq Corporate Restructuring LLC ("Epiq"), the only additional remaining estate professionals, in the continued effort to reduce administrative costs and further the efficient administration of the LBI estate.  This oversight included implementation of the 2020 administrative budget, and reviewing staffing and technology resources in light of the progress of the liquidation.

35.     Reporting.  The Trustee has regularly provided updates on the liquidation directly to claimants.  These updates have included the status report to the Court at the May 13,

2020 omnibus hearing, interim reporting (ECF No. 15094), and liquidation balance sheets (ECF

Nos. 15059, 15095, 15127).  Most importantly, the Trustee and HHR have consulted and worked

closely with SIPC in all aspects of the liquidation.

## DETAILED DESCRIPTION OF SERVICES

36.    A more detailed overview of certain of the significant services rendered by

HHR, including the Trustee, during the Application Period follows, organized in accordance

with HHR's internal system of project or work codes.[5]

    a.  Asset Disposition (031164.00003):

- Identified residual assets, determined asset valuations, and monetized certain assets.

- Conducted an outreach program to major banks, depositories, mutual fund groups, and proxy agents requesting that they conduct a final sweep of their accounts and transfer to the Trustee any and all LBI or predecessor firm property.  This resulted in the recovery of approximately $702,000 from State Street Bank and Trust Company.

- Recovered LBI unclaimed funds and asserted claims with the states of California, Delaware, Louisiana, Massachusetts, Michigan, Ohio, Oregon, Pennsylvania, and Texas.

- Conducted, in coordination with a search firm, a final search for unclaimed property that may be held by other states.

- Evaluated the potential disposition of remaining LBI assets in connection with estate closure planning.

    b.  Banking and Cash Management (031164.00005):

- Obtained the best possible return on estate assets at MFUG Union Bank, N.A., despite declining interest rates.

- Marshaled and coordinated the management of LBI assets for the benefit of the estate.

---

5.  The Trustee's Twenty-Second Interim Report for the Period October 1, 2019 Through March 31, 2020 and Quarterly Report on the General Creditor Claims Process (ECF No. 15094) and the Lehman Brothers Inc. Liquidation Balance Sheets as of March 31, 2020 and June 30, 2020 (ECF Nos. 15019, 15127) provide further detail of the estate's achievements and milestones met during the Application Period.

- Considered further consolidation of the estate bank accounts in preparation for closing the estate.

c. <u>Business Operations/Strategic Planning (031164.00008)</u>:

- Instituted work-from-home and other policies and procedures to allow LBI operations to continue in as close to an ordinary manner as possible.

- Supervised Deloitte and Epiq in an effort to further reduce administrative expenditures and reviewed accounting, consulting, and technology workstreams to ensure maximum estate efficiency.

- Conducted oversight of the LBI data center maintained at Deloitte and related technology projects undertaken by Deloitte.

- Monitored the 2020 administrative budget and prepared monthly budgetary reporting.

- Examined estate workstreams on a weekly basis in furtherance of completing certain tasks while awaiting the conclusion of the remaining claims litigation and related adversary proceeding.

- Implemented certain measures outlined in the April 30, 2019 correspondence to the Court to prepare the estate for a clear and complete closure at the appropriate time.

d. <u>Case Administration and Fee Applications (031164.00009 and 00015)</u>:

- Coordinated with the Court regarding the May 13, 2020 omnibus hearing, and monitored the docket for case developments.

- Prepared the HHR Thirty-First Fee Application, which was filed with the Court on April 20, 2020 (ECF No. 15088) and approved by the Court on May 14, 2020 (ECF No. 15105).

e. <u>General Creditor Claims Administration (031164.00011 and 00049)</u>:

- Analyzed the ESEP claimants' appellate brief in the Reclassification Appeal, which was filed with the Second Circuit on January 8, 2020. Reclassification Appeal at ECF No. 36.

- Researched and drafted the Trustee's appellate brief, which was filed with the Second Circuit on March 5, 2020.  <u>Id</u>. at ECF No. 51.

- Analyzed the ESEP claimants' reply brief, which was filed with the Second Circuit on April 9, 2020.  <u>Id</u>. at ECF No. 55.

- Prepared for and participated in the Second Circuit's mandatory mediation program regarding the Reclassification Appeal, including a half-day mediation session which occurred on April 13, 2020. The mediation did not result in a settlement of the litigation.

- Prepared for oral argument before the Second Circuit on the Reclassification Appeal which is scheduled for October 19, 2020.

- Analyzed the ESEP claimants' motion for recusal of the Court in the Second ESEP Adversary Proceeding , which was filed with the Court on January 14, 2020. Second ESEP Adversary Proceeding at ECF No. 16 (the "Recusal Motion").

- Researched and drafted the Trustee's opposition to the Recusal Motion, which was filed with the Court on January 24, 2020. Id. at ECF No. 22.

- Represented the Trustee at the hearing on the Recusal Motion before the Court, which occurred on January 28, 2020. The Court, for the reasons set forth on the record at the hearing, denied the Recusal Motion. Id. at ECF No. 25.

- Prepared the Trustee's reply brief in further support of his motion to dismiss the Second ESEP Adversary Proceeding, which was filed with the Court on January 21, 2020. Id. at ECF No. 17.

- Represented the Trustee at oral argument conducted by the Court regarding the Trustee's motion to dismiss on February 19, 2020.

- Analyzed the Memorandum Opinion and Order.

- Represented the Trustee at a status conference before the Court regarding the Second ESEP Adversary Proceeding, which occurred on June 24, 2020.

- Researched and drafted the Trustee's Motion for Certification of a Direct Appeal to the United States Court of Appeals for the Second Circuit Pursuant to 28 U.S.C. § 158(d)(2), which was filed with the Court in the Second ESEP Adversary Proceeding on July 1, 2020. Id. at ECF No. 36.

- Drafted the Trustee's motion to establish July 20, 2020 as the deadline (the "Third Supplemental Administrative Expense Claim Bar Date") to assert any supplemental administrative expense claims against the LBI estate arising during the period of March 1, 2018 through May 31, 2020. HHR filed the motion with the Court on June 1, 2020 (ECF No. 151108). The Court approved the Third Supplemental Administrative Expense Claim Bar Date on June 9, 2020 (ECF No. 15114).

- Responded to numerous inquiries regarding the Third Supplemental Administrative Expense Claim Bar Date. The Illinois Department of Employment Security filed an administrative expense claim against the LBI estate prior to the Bar Date.

f. <u>Customer Inquiries, Research, and Document Management (031164.00012)</u>:

- Responded to inquiries related to distributions on allowed unsecured claims and related matters.

- Responded to telephone calls and correspondence from customers, creditors, and other parties-in-interest.

- Conducted team data and document management.

g. <u>LBHI and LBIE Matters (031164.00021 and 00022)</u>:

- Monitored certain Lehman Brothers Holdings Inc. matters for potential ramifications for the LBI estate.

- Pursued a recovery in LBI's interest in a $230 million judgment against Saad Trading, Contracting, and Financial Services Co. (the "<u>Saad Notes</u>") with Lehman Brothers International (Europe), the Saad Notes' other owner.

h. <u>Litigation (Class-Action Claims and Other Litigation) (31164.00023)</u>:

- Advanced LBI's pending proofs of claim in certain antitrust and securities class action litigations.

- Responded to certain inquiries from class action administrators regarding LBI claims asserted in pending class actions.

- Coordinated with administrators regarding LBI distributions in certain proceedings and marshaled certain distributions, including the approximately $1.1 million distribution on LBI's claim in the ISDAfix Antitrust Litigation settlements.

- Researched and asserted three new securities class action claims on behalf of LBI.

- Analyzed potential LBI claims in additional antitrust and securities class actions in the United States and Europe

i. <u>Fee Matters of Other Professionals (31164.00028)</u>:

- Monitored fee requests from Deloitte and Epiq.

14

j.  <u>Regulatory Matters (31164.00029)</u>:

- Coordinated regularly with SIPC and regulators regarding the wind-down and closure planning and related matters.

k.  <u>Tax and Employee Benefit Matters (31164.00030)</u>:

- Advised the Trustee in complying with LBI's income tax filings.

- Responded to tax-related information requests from various tax authorities.

- Coordinated all tax withholding and reporting requirements with respect to LBI and the Trustee.

l.  <u>Trustee's Interim Reports to the Court (031164.00032)</u>:

- Prepared the Trustee's Twenty-Second Interim Report for the Period October 1, 2019 Through March 31, 2020 and Quarterly Report on the General Creditor Claims Process (ECF No. 15094).

- Prepared the LBI Liquidation Balance Sheet as of December 31, 2020 (ECF No. 15059).

- Prepared the LBI Liquidation Balance Sheet as of March 31, 2020 (ECF No. 15095).

- Conducted initial preparation of certain final estate reporting.

m.  <u>Barclays Matters (031164.00033)</u>:

- Evaluated LBI's contractual rights to acquire three (3) boxes of Lehman hardcopy engagement letters and other client correspondence from the period 1994 to 2008 owned by Barclays Capital Inc.  The Court entered an order on February 4, 2020 authorizing the Trustee to abandon this contractual right (ECF No. 15061).

n.  <u>Distribution Matters (031164.00047)</u>:

- Assessed the possibility of additional distributions based on progress made during the Application Period.

- Conducted initial planning for the seventh interim distribution.

- Drafted the Distribution Motion.

o.  <u>Post-Closing Vehicle (031164.00052)</u>:

- Advanced the possible creation of a post-closing vehicle for certain contingent and unliquidated assets such as the claims in the antitrust settlement funds that may take substantial time to monetize through sale or collection.

- Evaluated certain administrative matters in connection with post-closing vehicle.

p.  <u>Data Abandonment (031164.00053)</u>:

- Prepared the Eleventh Data Abandonment Motion.

- Obtained entry of the Eleventh Data Abandonment Order.

- Coordinated with estate professionals regarding the disposition, and where appropriate the destruction, of any LBI records in the professionals' possession.

- Conducted regular meetings with SIPC and Deloitte to identify all data and documents that must be retained under SIPC and other regulatory rules post-closing, while completely abandoning and destroying all other estate data in order to achieve a complete discharge at closing with no go forward costs.

**ACTUAL AND NECESSARY EXPENSES INCURRED BY HHR**

37.    As set forth in <u>Exhibit C</u>, HHR seeks allowance of $22,161.79 in expenses incurred in providing professional services during the Application Period.  It is HHR's practice not to include charges for research services and express delivery and related expenditures in its overhead, but rather to bill these expenses to clients.  These charges are intended to cover HHR's direct operating costs, which are not incorporated into HHR's hourly billing rates.  Only clients who actually use services of the types set forth in <u>Exhibit C</u> are separately charged for such services.  This "unbundling" of such expenses results in a fairer allocation of such costs and allows HHR to pass such costs on to each client in proportion to that client's use of such services.

38.     Due to the distance of certain regulators, creditors, and other parties-in-interest from HHR's New York offices, overnight delivery of documents and other materials was required.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the estate and its creditors.

39.     HHR has <u>not charged</u> for a number of categories of expenses regularly charged to and paid by HHR's clients, including <u>overtime meals</u> and <u>after-hours travel services</u>.

### HHR'S REQUEST FOR INTERIM COMPENSATION SHOULD BE GRANTED

40.     HHR may submit applications to the Court for compensation for services rendered and reimbursement for expenses during the course of the liquidation, which may be done on an interim basis.  SIPA §§ 78eee(b)(5)(A)-(B).  Whenever an application for compensation and reimbursement of expenses is filed, SIPC shall file its recommendation with respect to such fees and expenses with the Court prior to the hearing on such application.  <u>Id.</u> at §78eee(b)(5)(C).  The Court "shall place considerable reliance on the recommendation of SIPC" as to the allowances requested in such applications, and to the extent that such allowances are to be paid by SIPC, without reasonable expectation of recoupment, the Court shall award the amounts recommended by SIPC.  <u>Id.</u>; <u>see</u> <u>e.g.</u>, <u>Holmes v. Securities Investor Protection Corp.</u>, 503 U.S. 258, 274 n.21 (1992) (recognizing that "SIPC's recommendation to court on trustee's compensation is entitled to 'considerable reliance' and is, under certain circumstances, binding").

41.     There will be sufficient funds available from the general estate to satisfy administrative expenses of the estate, including professional fees, without seeking to requisition funds from SIPC in order to pay these expenses.  <u>In re Madoff</u>, No. 08-1789, 2010 U.S. Dist. LEXIS 81492, at *15 (S.D.N.Y. Aug. 6, 2010) ("There are no grounds for differing opinions [as

to whether the bankruptcy court is required to approve fee applications that SIPC recommended

be approved] because [the issue] is directly addressed by SIPA—the court shall…place

considerable reliance on the recommendation of SIPC.") (internal quotation marks omitted)); In

re Donald Sheldon & Co., 153 B.R. 661, 668 (Bankr. S.D.N.Y. 1993) (SIPA requires…that

"[w]e place considerable reliance on the recommendation of SIPC in ruling on [the Trustee's]

application [for fees].") (internal quotation marks omitted).  As a result, in determining the

allowance of HHR's compensation, while "considerable reliance" shall be placed on SIPC's

recommendation, the Court must duly consider the nature, extent, and value of the services

rendered.  SIPA § 78eee(b)(5)(C).

42.    HHR submits that its request for interim allowance of compensation is

reasonable and complies with the provisions of the Bankruptcy Code governing applications for

compensation and reimbursement of expenses, pursuant to section 78eee(b)(5) of SIPA.

43.    In the instant case, HHR respectfully submits that the services for which it

seeks compensation in this Application, as highlighted above, at the time rendered, were believed

to be necessary for and beneficial to LBI's estate, creditors, and other parties-in-interest.  HHR

further submits that the compensation requested herein is reasonable in light of the nature, extent,

and value of such services to these constituencies.  In sum, the services rendered by HHR were

necessary and beneficial and were consistently performed in a timely manner commensurate with

the complexity, importance, and nature of the issues involved.  Accordingly, approval of the

compensation sought herein is warranted.

## CONCLUSION

HHR respectfully submits that the services rendered during the Application

Period and accomplishments to date merit the approval of the fees and disbursements requested

herein, and respectfully requests that the Court enter an Order: (i) allowing and awarding

$3,003,597.90 as an interim payment for professional services rendered by HHR during the

Application Period and $22,161.79 as an interim reimbursement of the actual and necessary costs

and expenses incurred by HHR in connection with the rendition of such services; and (ii)

granting HHR such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      August 26, 2020

HUGHES HUBBARD & REED LLP

By:  */s/ Christopher K. Kiplok*
    Christopher K. Kiplok
    Jeffrey S. Margolin
    Elizabeth E. Beitler
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726
Email:  chris.kiplok@hugheshubbard.com

Attorneys for James W. Giddens, Trustee for
the SIPA Liquidation of Lehman Brothers
Inc.

**<u>Exhibit A</u>**

## **Prior Fee Orders**

| Application | Order | | Interim Fees Approved | Interim Expenses Approved |
|---|---|---|---|---|
| First Interim Application | April 8, 2009 | ECF No. 953 | $14,255,186.91 | $213,706.28 |
| Second Interim Application | August 27, 2009 | ECF No. 1602 | $15,185,697.98 | $132,764.74 |
| Third Interim Application | January 15, 2010 | ECF No. 2527 | $24,754,288.10 | $253,544.54 |
| Fourth Interim Application | June 25, 2010 | ECF No. 3425[1] | $23,948,533.80 | $354,344.87 |
| Fifth Interim Application | December 14, 2010 | ECF No. 3977 | $22,782,301.85 | $403,977.87 |
| Sixth Interim Application | March 31, 2011 | ECF No. 4208 | $19,204,952.90 | $284,450.53 |
| Seventh Interim Application | September 13, 2011 | ECF No. 4561 | $24,513,073.00 | $306,987.70 |
| Eighth Interim Application | March 28, 2012 | ECF No. 4993 | $24,262,920.00 | $299,915.54 |
| Ninth Interim Application | July 18, 2012 | ECF No. 5170 | $24,613,867.95 | $272,874.38 |
| Tenth Interim Application | December 13, 2012 | ECF No. 5547 | $16,427,687.00 | $193,708.32 |
| Eleventh Interim Application | June 19, 2013 | ECF No. 6562 | $24,795,838.05 | $189,208.77 |
| Twelfth Interim Application | June 19, 2013 | ECF No. 6564 | $37,183,203.53 | $336,274.26 |
| Thirteenth Interim Application | December 23, 2013 | ECF No. 7959 | $13,289,860.00 | $86,577.44 |
| Fourteenth Interim Application | January 30, 2014 | ECF No. 8165 | $17,086,096.05 | $152,661.69 |
| Fifteenth Interim Application | June 19, 2014 | ECF No. 9195 | $14,799,716.20 | $181,713.53 |
| Sixteenth Interim Application | December 11, 2014 | ECF No. 10665 | $14,056,117.35 | $156,340.37 |
| Seventeenth Interim Application | May 21, 2015 | ECF No. 12124 | $15,478,486.65 | $228,765.54 |
| Eighteenth Interim Application | July 22, 2015 | ECF No. 12524 | $11,415,481.20 | $142,543.85 |
| Nineteenth Interim Application | February 26, 2016 | ECF No. 13360 | $6,917,321.43 | $73,661.64 |
| Twentieth Interim Application | June 6, 2016 | ECF No. 13670 | $5,916,119.90 | $48,172.38 |
| Twenty-First Interim Application | December 2, 2016 | ECF No. 14069 | $9,280,353.48 | $102,450.92 |
| Twenty-Second Interim Application | April 28, 2017 | ECF No. 14242 | $4,056,578.25 | $47,329.00 |
| Twenty-Third Interim Application | October 4, 2017 | ECF No. 14422 | $3,675,590.10 | $59,975.69 |
| Twenty-Fourth Interim Application | December 15, 2017 | ECF No. 14471 | $2,166,787.35 | $40,053.74 |
| Twenty-Fifth Interim Application | April 5, 2018 | ECF No. 14556 | $1,506,987.45 | $28,079.84 |

---

1. Includes allowance of $8,129,062.53 as interim compensation for professional services as provided in the Fourth Interim Fee Order that was previously held back in the prior Interim Fee Orders. The remainder of fees totaling $1,000,000.00 was held back and remains subject to approval by the Court.

| Application | Order | | Interim Fees Approved | Interim Expenses Approved |
|---|---|---|---|---|
| Twenty-Sixth Interim Application | August 14, 2018 | ECF No. 14663 | $2,245,693.95 | $9,550.45 |
| Twenty-Seventh Interim Application | December 4, 2018 | ECF No. 14803 | $2,779,435.35 | $34,131.69 |
| Twenty-Eighth Interim Application | April 10, 2019 | ECF No. 14899 | $1,291,135.50 | $9,114.26 |
| Twenty-Ninth Interim Application | July 16, 2019 | ECF No. 14937 | $2,186,788.50 | $30,704.34 |
| Thirtieth Interim Application | December 18, 2019 | ECF No. 15050 | $2,411,481.15 | $54,247.08 |
| Thirty-First Interim Application | May 14, 2020 | ECF No. 15105 | $1,411,893.45 | $37,775.11 |

## Exhibit B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re

      LEHMAN BROTHERS INC.,

                          Debtor.

---

Case No. 08-01420 (SCC) SIPA

## DECLARATION OF CHRISTOPHER K. KIPLOK

      Christopher K. Kiplok, hereby declares under penalty of perjury pursuant to section 1746 of title 28 of the United States Code:

      1.      I am an attorney duly admitted to the bar of this Court and I am a partner of the law firm Hughes Hubbard & Reed LLP ("HHR").  I submit this declaration in support of HHR's thirty-second application (the "Application"), as counsel to James W. Giddens as Trustee (the "Trustee") for the liquidation of Lehman Brothers Inc. ("Debtor" or "LBI"), for allowance of interim compensation and reimbursement of expenses rendered from January 1, 2020 through June 30, 2020 (the "Application Period").

      2.      HHR was retained as counsel for the Trustee pursuant to a Decree of the Honorable Gerard E. Lynch, Judge of the United States District Court for the Southern District of New York, dated September 19, 2008.

      3.      This liquidation proceeding has been and will continue to be conducted in accordance with the provisions of the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. § 78aaa et seq., and to the extent consistent therewith, in accordance with Chapters 1, 3, and 5 and sub-chapters I and II of Chapter 7 of Title 11 of the United States Bankruptcy Code.

      4.      I submit this declaration pursuant to Bankruptcy Rule 2016(a) in support of HHR's application for allowance of compensation in the amount of $3,003,597.90 for

professional services rendered and reimbursement in the amount of $22,161.79 for necessary

expenses incurred during the Application Period.

5.      As the lead counsel at HHR who is supervising this matter, I am familiar

with such services and with these proceedings.  These statements are correct to the best of my

knowledge and belief.  Such knowledge and belief is based upon my direct involvement with and

supervision of many of the tasks described in the Application, review of Court filings, and

conversations I have conducted with partners and associates of HHR and upon records kept by

HHR in the normal course of business.

6.      I hereby certify that (i) I have read the Application; (ii) to the best of my

knowledge, information, and belief formed after reasonable inquiry, the Application complies

with the guidelines for fee applications under Bankruptcy Rule 2016(a); and (iii) the fees and

disbursements sought are billed at or below rates customarily billed to other clients of HHR.

7.      I hereby certify that members of the staff of the Securities Investor

Protection Corporation ("SIPC") will be provided with a copy of this Application.

8.      I hereby certify that members of the staff of SIPC have been provided with

monthly statements of fees and disbursements accrued during the Application Period.

9.      I hereby certify that (i) in providing reimbursable nonlegal services to the

estate, HHR does not make a profit on such services; and (ii) in seeking reimbursement for a

service which HHR justifiably purchased or contracted from a third party, HHR requests

reimbursement only for the amount billed to HHR by the third-party vendors and paid by HHR

to such vendors.

10.      It is HHR's practice not to include charges for conference calls, research

services, messenger services, and express delivery in its overhead, but rather to bill out these

expenses to clients.  This "unbundling" of such expenses results in a fairer allocation of such

costs and allows HHR to pass such costs on to each client in proportion to that client's use of

such services.  In this case, HHR has not charged for and does not seek allowance of a number of

categories of expenses regularly charged to and paid by HHR's clients, including overtime

meals, and after-hours travel services.

11.    HHR has not made any previous application for allowance of fees for

professional services rendered during the Application Period.

12.    No agreement exists or shall be made between HHR and any other person

respecting the division of compensation to be received for professional services rendered in

connection with this SIPA proceeding.

13.    No agreement or understanding prohibited by 18 U.S.C. § 155 has been

made or shall be made by HHR.

I declare under penalty of perjury under the laws of the United States that the

foregoing is true and correct to the best of my knowledge.

Executed on the 26th day of August, 2020.

*/s/ Christopher K. Kiplok*
Christopher K. Kiplok

**Exhibit C**

## Expenses Requested from January 1, 2020 through June 30, 2020

| Description | Total Amount |
|---|---|
| Delaware Annual Franchise Fee | $385.00 |
| Express Delivery, Messenger Services, Postage | $907.14 |
| Lexis, Westlaw, Search Services and Research Service | $20,309.65 |
| Telephonic Court Appearance Charges | $560.00 |
| **TOTAL EXPENSES REQUESTED** | **$22,161.79** |

# Exhibit D

**Summary of Project Categories**
**from January 1, 2020 through June 30, 2020**

| Category | Time (Hours) | Total Fees |
|---|---|---|
| Asset Disposition | 242.30 | $177,762.60 |
| Banking and Cash Management | 40.60 | $36,215.55 |
| Business Operations/Strategic Planning (Including Closure Plan) | 372.20 | $392,387.85 |
| Case Administration | 24.50 | $17,552.25 |
| General Creditor Claims Administration | 56.50 | $42,376.05 |
| Customer Inquiries and Research | 59.40 | $42,318.00 |
| Fee Applications (HHR) | 134.70 | $72,639.90 |
| LBHI Matters | 22.40 | $19,833.30 |
| LBIE Matters | 12.70 | $12,002.85 |
| Litigation (Including Class-Action Claims) | 409.30 | $332,472.60 |
| Fee Matters of Other Professionals | 14.60 | $11,760.30 |
| Regulatory Matters | 76.90 | $72,157.50 |
| Tax and Employee Benefit Matters | 67.50 | $56,644.20 |
| Trustee's Interim Reports to Court | 261.40 | $192,267.90 |
| Barclays Claims | 7.00 | $6,441.30 |
| Distribution Methodologies and Questions | 300.40 | $219,768.30 |
| ESEP Claim Litigation | 1,237.80 | $963,294.75 |
| Post-Closing Vehicle | 146.50 | $116,104.95 |
| Data Abandonment | 388.40 | $221,582.25 |
| **TOTALS FEES INCURRED** | **3,875.10** | **$3,005,582.40** |
| **TOTAL FEES REQUESTED** | | **$3,003,597.90** |